**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES | ) | |
| | ) | Case No. 18 CV 1028 |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Judge Andrea R. Wood |
| | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| REYNALDO GUEVARA, et al. | ) | |
| | ) | JURY DEMAND |
| Defendants. | ) | |

**DEFENDANTS HALVORSEN, RUTHERFORD, TREVINO, BIEBEL, HARVEY,
DICKINSON, STANKUS, NAUJOKAS, AND MINGEY'S AMENDED ANSWER AND
<u>AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT[1]</u>**

Defendants Ernest Halvorsen, Robert Rutherford, Daniel Trevino, Robert Biebel, Mark

Harvey, Edwin Dickinson, Dennis Stankus, John Naujokas and Edward Mingey ("Answering

Defendants"), by their attorneys, The Sotos Law Firm, P.C., answer Plaintiff's Complaint as follows:

**INTRODUCTION**

1.      Plaintiff Arturo DeLeon-Reyes was wrongfully convicted of the 1998 double murder of

Mariano and Jacinta Soto, and the abduction of their infant daughter and 3-year old son. The crime

occurred in Chicago, Illinois.

**ANSWER:**      Answering Defendants admit that plaintiff was convicted of the 1998 double murder of
Mariano and Jacinta Soto, the abduction of their infant daughter and 3-year old son.
Answering Defendants further admit that the crime occurred in Chicago, Illinois.
Answering Defendants, on information and belief, deny the remaining allegations of this
paragraph.

---

[1] Answering Defendants make no response on behalf of deceased former Chicago Police Forensic Investigator
John Karalow or deceased former Chicago Police Sergeant Frank Cappitelli.

2. Plaintiff had nothing to do with the murders or abductions.

**ANSWER:** Answering Defendants, on information and belief, deny the allegations of this paragraph.

3. Indeed, despite a crime scene full of blood and other physical evidence, not one piece of that evidence has ever connected Plaintiff to the crime. None of the DNA and other forensic testing of physical evidence recovered from the crime scene has ever suggested that Plaintiff was a perpetrator.

**ANSWER:** Answering Defendants admit that the crime scene had blood evidence and other physical evidence. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations.

4. Instead, false evidence fabricated by Defendants caused Plaintiff's arrest, indictment, prosecution, and conviction.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

5. Included among that evidence was an involuntary and false confession attributed to Plaintiff, which was concocted and coerced by Defendants after 40 hours of abusive and illegal interrogation of a recently arrived Mexican immigrant who could not speak or understand English.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them and lack knowledge or information sufficient to admit or deny the remaining allegations.

6. Another man named Gabriel Solache was also wrongly convicted of these crimes. Solache had nothing to do with the Soto murders or abductions either.

**ANSWER:** Answering Defendants admit that a man named Gabriel Solache was also convicted of these crimes, but on information and belief, deny the remaining allegations in this paragraph.

7. Defendants fabricated confessions and coerced statements they knew to be false from Solache and other witnesses, which falsely implicated Plaintiff in the crime.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them and lack knowledge or information sufficient to admit or deny the remaining allegations.

8. In order to secure Plaintiff's wrongful prosecution and conviction, Defendants also suppressed and destroyed evidence that would have shown Plaintiff was innocent, as well as evidence

2

that could have been used to undermine the testimony of State's witnesses, including the testimony of Defendants themselves.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them and lack knowledge or information sufficient to admit or deny the remaining allegations.

9. As a result of Defendants' misconduct described in this Complaint, Plaintiff was wrongly convicted and was incarcerated for almost 20 years.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them and lack knowledge or information sufficient to admit or deny the remaining allegations.

10. He had come to the United States approximately three months before his ordeal began. Like so many other immigrants of all races and nationalities throughout American history, Plaintiff had come to work and to make a better future for his family. Plaintiff immediately found a job in Chicago, earning what he could and sending money back to Mexico to provide for his pregnant wife, young daughter, and nine siblings. But Plaintiff's pursuit of the American dream ended with his wrongful conviction.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny the allegations in this paragraph regarding Plaintiff's conviction being wrongful. Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

11. At all times while he was imprisoned, Plaintiff maintained his innocence, and he fought for his freedom.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

12. During post-conviction hearings, in response to questions about whether he physically abused Plaintiff during his interrogation, Defendant Reynaldo Guevara invoked his Fifth Amendment right not to incriminate himself. Evaluating that testimony, Cook County Judge James Obbish said that Defendant Guevara had told "bald face lies" and further stated that Guevara had "eliminated any possibility of being considered a credible witness in any proceeding."

3

**ANSWER:** Answering Defendants admit, on information and belief, that defendant Reynaldo Guevara did assert his Fifth Amendment rights upon advice of counsel at some point or points during the post-conviction hearings. Answering Defendants further admit, on information and belief, that Judge James Obbish did state the quoted statements with regard to the testimony of defendant Guevara regarding a specific matter. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

13. In December 2017, the Cook County State's Attorney dropped all charges against Plaintiff and his co-defendant Solache. After almost 20 years of wrongful incarceration, Plaintiff finally received his vindication.

**ANSWER:** Answering Defendants admit, on information and belief, that in December 2017, the Cook County State's Attorney dropped all charges against Plaintiff and Solache. Answering Defendants, on information and belief, deny the remaining allegations in this paragraph.

14. Plaintiff now seeks justice for the harm that the Defendants have caused and redress for the loss of liberty and the terrible hardship that Plaintiff has endured and continues to suffer as a result of the Defendants' misconduct.

**ANSWER:** Answering Defendants admit that Plaintiff and his attorneys have filed this lawsuit seeking monetary awards. Answering Defendants deny the allegations in this paragraph as they pertain to them and, on information and belief, deny the remaining allegation in this paragraph.

## JURISDICTION AND VENUE

15. This action is brought pursuant to 42 U.S.C. § 1983 and Illinois law to redress the Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

**ANSWER:** Answering Defendants admit that plaintiff has brought this action pursuant to 42 U.S.C. section 1983 and Illinois law alleging tortious conduct and deprivation of rights under the U.S. Constitution. Answering Defendants deny the allegations of misconduct in this paragraph as they pertain to them and, and lack knowledge or information sufficient to admit or deny the remaining allegations.

16. This Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:** Answering Defendants admit the allegations in this paragraph.

4

17.     Venue is proper under 28 U.S.C. § 1391(b). The events and omissions giving rise to Plaintiff's claims occurred within this judicial district, including the investigation, prosecution and trial resulting in Plaintiff's conviction. In addition, many if not all of the Defendants reside in this judicial district.

**ANSWER:**     Answering Defendants admit that venue is proper in this jurisdiction.   Answering Defendants deny that Dickinson resides in this judicial district and lack knowledge as to where the former Cook County States' Attorney Defendants reside.   Answering Defendants deny the allegations in this paragraph of misconduct as they pertain to them. Answering Defendants admit the remaining allegations in this paragraph.

## PARTIES

18.      Plaintiff Arturo DeLeon-Reyes is a Mexican citizen. At all times relevant to the events at issue in this Complaint, Plaintiff lived in Chicago and was imprisoned in various locations throughout Illinois for a crime he did not commit. At the time that this case was filed, Plaintiff resided in Illinois.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit the allegation in this paragraph regarding citizenship of plaintiff.   Answering Defendants deny, on information and belief, the allegations regarding plaintiff's innocence of the crime.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations.   Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

19.     At all times relevant to this case, Defendants Reynaldo Guevara, Ernest Halvorsen, Edwin Dickinson (Star No. 20682), R. Rutherford (Star No. 20720), Stankus (Star No. 15239), Naujokas (Star No. 3771), J. Karalow (Star No. 13247), Mark Harvey (Star No. 10582), Daniel Trevino, and other unknown law enforcement officers were police officers in the Chicago Police Department acting under color of law and within the scope of their employment for the City of Chicago.

**ANSWER:**     Answering Defendants admit the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

5

20.     At all relevant times, Defendants Edward Mingey, Biebel (Star No. 1545), F.J. Cappitelli and other unknown law enforcement officers supervised the officers in the preceding paragraph. Acting under color of law and within the scope of their employment for the City of Chicago, they facilitated, condoned, approved, and turned a blind eye to the constitutional violations committed by the officers in the preceding paragraph.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them and, and lack knowledge or information sufficient to admit or deny the remaining allegations.

21.     Defendants Guevara, Halvorsen, Dickinson, Stankus, Naujokas, Karalow, Harvery, Trevino, Mingey, Biebel, and Cappitelli are referred to collectively as the "Police Officer Defendants" throughout this Complaint.

**ANSWER:**     Answering Defendants admit the allegations in this paragraph.

22.     At all relevant times, Defendants Karin Wehrle, David Navarro, Heather Brualdi, Andrew Varga, and Thomas O'Malley were Assistant Cook County State's Attorneys. These Defendants are sued for actions they undertook, in conspiracy with the Police Officer Defendants, in their capacities as investigators and without probable cause to believe that Plaintiff had committed any crime. Defendants Wehrle, Navarro, Brualdi, Varga, and O'Malley are referred to collectively as the "Prosecutor Defendants" throughout this Complaint.

**ANSWER:**     Answering Defendants admit, on information and belief, that defendants Wehrle, Navarro, Bruladli, Varga and O'Malley were, at all relevant times to this complaint, Assistant Cook County State's Attorneys.   Answering Defendants further admit that plaintiff is referring to them collectively as "Prosecutor Defendants."   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

23.     Defendant City of Chicago is an Illinois municipal corporation and is and/or was the employer of each of the Police Officer Defendants. The City of Chicago is liable based on *respondeat superior* for the acts of the Police Officer Defendants. The City of Chicago is additionally responsible for the policies and practices of the Chicago Police Department.

6

**ANSWER:**    Answering Defendants, on information and belief, deny that this is a complete or accurate statement of the law regarding *respondeat superior*.   Answering Defendants, on information and belief, admit the remaining allegations in this paragraph.

24.    Defendant Cook County is a governmental entity within the State of Illinois, which provides funding for the Cook County State's Attorney's Office and which is responsible for paying any judgment entered against the Prosecutor Defendants.

**ANSWER:**    Answering Defendants, on information and belief, deny that this is a complete or accurate statement of the law regarding *respondeat superior*.   Answering Defendants, on information and belief, admit the remaining allegations in this paragraph.

25.    All Defendants are sued in their individual capacities unless otherwise noted.

**ANSWER:**    Answering Defendants admit the allegations in this paragraph.

## FACTS

### The Crime and Defendants Initial Investigation

26.    In March of 1998, Mariano and Jacinta Soto lived in a basement apartment in Chicago, along with their three-year old son Santiago and infant daughter, Maria.

**ANSWER:**    Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit the allegations in this paragraph.   Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

27.    On the morning of April 1, 1998, police officers conducting a well-being check at their apartment found the bodies of Mariano and Jacinta. In total, they had been stabbed more than 50 times. Jacinta was found lying face down in the bedroom; Mariano was found lying face up in the kitchen, with a number of defensive wounds on the back of both hands. The children were nowhere to be found.

**ANSWER:**    Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson, and Mingey admit, on information and belief, that on the morning of April 1, 1998, police officer conducted a well-being check and found the bodies of Mariano and Jacinta Soto.   Defendants Harvey, Stankus, and Naujokas lacks knowledge or information to admit or deny the allegations regarding the well-being check or what precipitated it.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson, Harvey, and Mingy further admit, on information and belief, that Jacinta was found lying face down in the bedroom and Mariano was found lying face up in the kitchen.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson, Harvey, and Mingy admit, on information and belief, that the children's location was unknown at that time.   Answering Defendants lack

7

knowledge or information sufficient to admit or deny the remaining allegations.

28.     Police suspected that the crime had occurred on or around March 28, 1998

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit the allegations in this paragraph.   Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

29.     The Police Officer Defendants investigated the crime scene.

**ANSWER:**     Answering Defendants admit that some of the defendant officers investigated the crime scene, but deny that all the defendant officers investigated the crime scene.

30.     Along with other Chicago police officers, they secured the house and began to gather the physical evidence left at the scene. Among other things, the Police Officer Defendants found two bloody knives and a butcher block at the scene, as well as blood-stained clothing and bed coverings, fingerprints throughout the house, broken glass, shoeprints in dried blood on the kitchen floor, and blood spatter on the bedroom wall. A police photographer took photographs of the scene. All of the evidence was collected and inventoried.

**ANSWER:**     Answering Defendants admit that the crime scene was secured, but deny that they initially secured the scene.   Answering Defendants admit some of the defendant officers found and/or documented evidence and admit the allegations of some of the items at the crime scene.   Answering Defendants admit that a forensic investigator took photographs of the crime scene.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations.

31.     None of the physical evidence discovered at the scene connected Plaintiff to the crime.

**ANSWER:**     Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

### Adriana Mejia

32.     On March 28, 1998, around the time the crime occurred, a woman named Adriana Mejia was picked up from the University of Illinois Hospital by her husband and sister-in-law, Rosauro and Guadalupe Mejia.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that on March 28, 1998 after the time the crime occurred,

8

Adriana Mejia was picked up from the University of Illinois Hospital by her husband and sister-in-law, Rosauro and Gaudalupe Mejia.  Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

33. The day before, on March 27, Adriana had been dropped off there supposedly to deliver a baby. She had been pretending for nine months that she was pregnant, lying to her family members. But when her family picked her up on March 28, she was holding a baby that she claimed was hers, and she was with a three-year-old boy who she claimed she was watching temporarily for another woman who had gone into labor at the hospital.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit the allegations in this paragraph.  Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

34. In reality, these children were Santiago and Maria Soto, who had been abducted from the crime scene after their parents were murdered.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit the allegations in this paragraph.  Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

35. Adriana Mejia's DNA was found all over the crime scene. After admitting that she had committed the murder and abduction, Adriana was convicted.

**ANSWER:** Answering Defendants admit that Adriana Mejia admitted her participation in the murders and abductions.  Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, that Adriana Mejia's DNA was found at the crime, but lack knowledge or information sufficient to admit or deny the remaining allegations.  Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the remaining allegations in this paragraph.

36. She is serving life in prison for the crimes to this day.

**ANSWER:** Answering Defendants admit, on information and belief, the allegations in this paragraph.

### Arturo DeLeon-Reyes

37. When Plaintiff came to the United States from Mexico three months before the Soto murders to work, he left behind his pregnant wife, young daughter, and nine siblings.

9

**ANSWER:**    Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

38.    His wife's aunt lived in Chicago, and so Plaintiff came to live first with her and her family.

**ANSWER:**    Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

39.    Plaintiff quickly found work, and he worked long hours six or seven days a week. He used some of the money that he had saved to rent a single room in a nearby apartment.

**ANSWER:**    Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

40.    The apartment in which he happened to rent a room belonged to Adriana and Rosauro Mejia.

**ANSWER:**    Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit, on information and belief, that the apartment in which plaintiff lived belonged to Adriana and Rosauro Mejia, but lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

41.    Plaintiff did not know the Mejias.

**ANSWER:**    Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

42.    Outside of his long work days, Plaintiff spent all of his free time with his wife's family.

**ANSWER:**    Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

43.    He had very little contact with the Mejias other than seeing them in passing on his way to or from work.

**ANSWER:**    Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

44.    Another Mexican immigrant named Gabriel Solache also had rented a room in the Mejias' apartment. Plaintiff had no prior relationship with Solache either.

10

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit, on information and belief, that another Mexican immigrant named Gabriel Solache lived in a room in Mejias' apartment, but lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

## Plaintiff Does the Right Thing

45. In the early morning hours of April 3, 1998, Plaintiff woke up and came out of his room when he overheard Rosauro and Adriana Mejia arguing in another room.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

46. Plaintiff could hear that the argument was about the three-year old boy that Mejia had said she was watching.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

47. Plaintiff told the Mejias that if there was a problem with the boy, they should take the boy to the police station. Plaintiff offered to go with them.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

48. Plaintiff and Solache escorted Rosauro Mejia and the boy to the 8th District Chicago police station.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit, on information and belief, the allegations in this paragraph. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

49. It would be the last time Plaintiff or Solache set foot outside as free men for nearly 20 years.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

11

**Defendants Interrogate Plaintiff and Fabricate a False Confession**

50.     Although Plaintiff and Solache had ensured that a missing boy was safely returned to

the police, as any responsible citizen would, the Defendants immediately treated them both as suspects.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit that at some point Plaintiff and Solache were considered suspects.  Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.  Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them, and lack knowledge or information to admit or deny the remaining allegations.

51.     There was no reason to suspect either of them of any crime. But instead of interviewing

them and learning those facts, Defendants began an unrelenting interrogation of both men.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny that there was no reason to suspect plaintiff or Solache of being involved in the crime.  Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them, and lack knowledge or information to admit or deny the remaining allegations.

52.     Defendants' interrogation of Plaintiff, which began in the morning hours of April 3,

1998 and continued over the next 40 hours, was an extreme and alarming abuse of police power. It was

a wholly illegal effort to secure a false confession from Plaintiff in violation of his constitutional rights,

by means of physical violence and psychological abuse and coercion.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit, on information and belief, that Plaintiff first came to a police station in the early morning hours of April 3, 1998 and was later charged after giving a statement to an Assistant State's Attorney in the early morning hours of April 5, 1998.  Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.  Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them and lack knowledge or information to admit or deny the remaining allegations.

53.     Defendants knew at all points during their interrogation that Plaintiff was a Mexican

immigrant who did not speak or understand English.

**ANSWER:**   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit that some of the defendants knew at the time plaintiff was in police custody he claimed to be a Mexican immigrant and that he could not speak or understand English.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the remaining allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.   Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them and lack knowledge or information to admit or deny the remaining in allegations.

54.     Throughout the interrogation, Plaintiff was in a setting and circumstances that were completely foreign to him. He was deprived of sleep and food. He was interrogated in multiple locations by different teams of interrogators. He was isolated and disoriented.

**ANSWER:**   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit Plaintiff was interviewed in more than one location and by more than one interviewer.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny Plaintiff was deprived of sleep or food.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

55.     During their interactions with Plaintiff, Defendants observed that Plaintiff did not understand English and they saw his other deficits created by their interrogation.

**ANSWER:**   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that Plaintiff did not speak English.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the remaining allegations pertaining to them and lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.   Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them and lack knowledge or information to admit or deny the remaining allegations.

56.     But Defendants took no steps to limit or to adapt their questioning of Plaintiff in response to these known vulnerabilities.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

57.     Instead, they did the opposite: they agreed among themselves and acted to exploit Plaintiff's vulnerabilities to secure a confession, regardless of whether it was true or false, and knowing that there was no evidence to suggest that Plaintiff was involved in the crime.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

58. At points during the interrogation, Defendant Guevara took the lead in interrogating Plaintiff. At other points, Plaintiff's interrogation was conducted by Defendants Rutherford, Dickinson and Trevino.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit, on information and belief, that at times Defendant Guevara conducted the interview of Plaintiff and at other times, Rutherford, Dickinson and Trevino were involved and/or present during the interview of Plaintiff. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

59. Among other things, Defendants committed the following misconduct during their interrogation of Plaintiff:

a. The interrogation began with physical violence and aggression. After remaining in an interrogation room with no windows—just a glass slit in the door—for an unknown amount of time, Defendant Guevara came into the room, immediately slapped Plaintiff across the face, and yelled at him about why he "did it."

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

b. Plaintiff had no idea what was going on, and indicated as much to Defendant Guevara. He knew that the three-year old had been reported missing, but he knew nothing else about the boy, he did not know the boy had been abducted, he did not know that an infant had also been abducted, and he knew nothing of the Soto murders.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny the allegations in this paragraph. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

c. Guevara handcuffed Plaintiff to the wall before leaving the room.

**ANSWER:** Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

14

d.      Defendant Guevara's use of violence immediately put Plaintiff in a state of immense fear and confusion.

**ANSWER:**      Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

e.      Defendants' physically violent and psychologically coercive tactics continued as the interrogation proceeded.

**ANSWER:**      Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

f.      At one point, Plaintiff was taken to a different room with Defendants Guevara and Trevino. Defendants Rutherford, Dickinson and others were in that room as well. Defendant Guevara got very close to Plaintiff's face and told Plaintiff that he was not cooperating and threatened that if Plaintiff did not start talking about his role in the crimes he would get the electric chair and would be put to death.

**ANSWER:**      Answering Defendants lacks knowledge or information sufficient to admit or deny the allegations in this paragraph.

g.      Plaintiff continued to deny any involvement in a crime.

**ANSWER:**      Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that Plaintiff initially denied involvement in the crimes. Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

h.      Defendant Guevara then grabbed Plaintiff by the arm forcefully and took him back to the interview room he had been in and again handcuffed him to the wall.

**ANSWER:**      Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey lack knowledge or information sufficient to admit or deny the allegations in this paragraph of when Plaintiff may have been handcuffed.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny the remaining allegations in this paragraph.   Defendants Harvey, Stankus, and Naujokas lack knowledge or information to admit or deny the allegations in this paragraph.

15

i.     Later, Defendant Guevara entered the interrogation room again and continued to interrogate Plaintiff about the crimes. Every time that Plaintiff denied involvement or responded that he did not know anything, Guevara slapped him across the face, each time harder than the last. This continued for an extended period. Plaintiff remained handcuffed throughout this beating.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

j.     In addition to the extreme physical abuse and threats that Plaintiff would be executed if he did not cooperate, Defendants forced Plaintiff to take off his clothes during the interrogation, reinforcing their total control and authority over him.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

k.     They also intentionally deprived Plaintiff of sleep throughout the interrogation. Plaintiff went to the police station around 4 a.m. on April 3, after a long day of work and less than a couple of hours of sleep. Defendants knew that Plaintiff had initially arrived at the police station in the middle of the night, and they kept him awake and handcuffed to the wall in a windowless interview room during his days-long interrogation. By the time Plaintiff's interrogation came to an end on April 5, Plaintiff had not slept more than a few hours since waking up on the morning of April 2. The enforced sleep deprivation heightened the already impermissibly coercive nature of the interrogation.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

l.     Defendants repeatedly and strenuously accused Plaintiff of the Soto murders and abductions over the course of the interrogation. Defendant Guevara, for example, screamed at Plaintiff repeatedly that he was guilty, often within inches of his face, in order to deliberately intimidate and frighten Plaintiff.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

16

m.      The rooms in which the interrogation took place were closed and locked, and, before the physical abuse began, the glass slit in the door to the interrogation room was covered up with paper so that Plaintiff could not see out and others could not see in.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny, on information and belief, that the glass window was covered with paper.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit, on information and belief, that the door was closed and sometimes locked.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.   Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph that pertain to them and lack knowledge or information sufficient to admit or deny the remaining allegations.

n.      Defendants also failed to give Plaintiff any effective Miranda warnings. At no point did Plaintiff knowingly or voluntarily waive his right to remain silent or his right to have counsel present at the interrogation.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny that Plaintiff did not knowingly or voluntarily waive his right to remain silent.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

60.     In the face of the extreme physical and psychological abuse and coercion described above, Plaintiff steadfastly maintained his innocence. Plaintiff told the Police Officer Defendants over and over that he did not know anything about the crime and that he was not involved in any way in the Soto murder and abduction. The Defendants ignored Plaintiff and brushed to the side evidence that corroborated Plaintiff's claims of innocence.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny that Plaintiff maintained his innocence. Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

17

61.     For example, at one point the Defendants came in and insisted that Plaintiff sign a form consenting to a search of his room in the apartment. Plaintiff signed the form, and the Defendants then searched his room and found nothing that implicated or connected Plaintiff to the crime in any way.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit that some of the named Defendants did request Plaintiff sign a consent to search form for his room, plaintiff consented and signed the form, and that some of the Defendants did search his room.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

62.     In the middle of the night of April 5, 1998, after 40 hours of abusive interrogation involving all of the events described above and more, Defendants finally broke Plaintiff's will and forced him to sign a statement that they had written implicating Plaintiff in the Soto murders and abductions.

**ANSWER:**     Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit that, on April 5, 1998, Plaintiff signed his statement implicating himself in the Soto murders and abductions.   Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations. Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

63.     Plaintiff was not the source of any of the details in the false confession Defendants obtained from him. In fact, Plaintiff did not know any of the details of the crimes. All of the facts related to the crime were fed to Plaintiff in his written statement by Defendants.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, and deny, on information and belief, the remaining allegations.

64.     In addition, Defendants Trevino and O'Malley wrote details of the crime into a false confession written in English (which Plaintiff could not read). Once Defendants had done this, they did not read the statement to Plaintiff in Spanish, or even give him a chance to review it. Instead, they told Plaintiff that they wanted to help him, and that to do so they needed Plaintiff to sign the document.

18

**ANSWER:** Defendants Halvorsen, Rutherford, Biebel, Dickinson and Mingey, on information and belief, deny the allegations in this paragraph. Defendant Trevino denies the allegations in this paragraph. Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as it pertains to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

65. After more than 40 hours of physical and psychological abuse, with his will broken and fearing further abuse, Plaintiff complied.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey admit that Plaintiff did sign his statement and deny the remaining allegations in this paragraph. Defendants Harvey, Stankus, and Naujokas deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

66. The Prosecutor Defendants were all present at the Area 5 Detective Division during Plaintiff's interrogation. Defendant O'Malley participated personally in the interrogation and drafting of the false statement.

**ANSWER:** Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, admit that the prosecutor defendants were present in the Area 5 Detective Division during part of the interviews with Plaintiff and Defendant O'Malley did take Plaintiff's statement. Defendants Halvorsen, Rutherford, Trevino, Biebel, Dickinson and Mingey, on information and belief, deny the remaining allegations in this paragraph. Defendants Harvey, Stankus, and Naujokas lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

### Additional Fabricated Statements Falsely Implicating Plaintiff

67. The same physically and psychologically abusive tactics were used on other individuals as well. These witnesses have testified on multiple occasions about being physically abused by the Police Officer Defendants during their interrogations. Those witnesses gave statements that Defendants knew to be false, and the Defendants suppressed information about their interactions with those witnesses.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

68. For example, in the aftermath of the crime, Defendants also interrogated Solache and used physically and psychologically abusive tactics as egregious as the ones used on Plaintiff in order

19

to get him to implicate himself and Plaintiff falsely in the crime.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

69. The Police Officer Defendants, including Defendants Guevara, Halvorsen, Dickinson, Rutherford, and Trevino, planned, coordinated and conspired to obtain false statements from Solache and others.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

70. The Prosecutor Defendants were present at the Area 5 Detective Division during the interrogations of Solache and other witnesses as well. During those interrogations and the interrogation of Plaintiff, the Prosecutor Defendants advised, urged, and ordered the Police Officer Defendants to continue the abusive and coercive interrogations even though it was plain to all involved that the interrogations were highly improper.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

### Additional Steps to Frame Plaintiff

71. Independent of Defendants' misconduct discussed above, the Police Officer Defendants took additional steps to frame Plaintiff.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

72. The Police Officer Defendants deliberately withheld evidence that further demonstrated Plaintiff's innocence.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

73.     For example, the Police Officer Defendants withheld evidence that witness statements implicating Plaintiff were false, including but not limited to Defendants' notes indicating that the witnesses implicating Plaintiff gave earlier statements that contradicted their statements implicating Plaintiff.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

74.     Moreover, the Police Officer Defendants destroyed exculpatory evidence that could have been used to demonstrate Plaintiff's innocence. The Police Officer Defendants, including Defendants Karalow and Harvey, crime lab technicians who photographed and inventoried evidence at the crime scene, suppressed or destroyed photographs of the crime scene because the photographs contradicted the facts of Plaintiff's false confession. To hide the fact that these crime scene photos existed, the Police Officer Defendants prepared police reports falsely claiming that the camera used at the crime scene had malfunctioned and the original crime scene photos were unusable. New crime scene photographs consistent with Plaintiff's false confession were taken weeks after the crime by Defendants Guevara, Stankus, and Naukokas.

**ANSWER:**     Answering Defendants admit forensic investigators Harvey and Karalow were assigned to process the crime scene, that the photographs taken on April 1, 1998 were not useable due to a malfunction, and that new crime scene photographs were taken at a later time by forensic investigators Stankus and Naujokas.   Answering Defendants deny the remaining allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

75.     After Plaintiff was forced to implicate himself in the Soto murder, the Police Officer Defendants produced a series of false and fraudulent police reports and related memoranda, which they inserted into their case file. These documents, which were evidence used to show Plaintiff's purported connection to the crime, contained statements and described events that were fabricated and that the Police Officer Defendants knew to be false. The Police Officer Defendants signed these reports, both as investigators and as supervisors, despite their knowledge that the information contained in those reports was entirely false.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

76.     The Police Officer Defendants concealed this misconduct from Plaintiff, his criminal defense attorneys, and the prosecutors involved in his criminal case, including the Prosecutor Defendants. Indeed, the Police Officer Defendants continue to this day to conceal evidence in their possession demonstrating Plaintiff's innocence; and they continue to hide their own fabrication of evidence.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

77.     In addition, on information and belief, the Police Officer Defendants suppressed and destroyed additional evidence still unknown to Plaintiff, which would also have shown Plaintiff's innocence.

**ANSWER:**      Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

78.     Supervisors of the Police Officer Defendants were aware of their misconduct, their suppression of evidence, and their fabrication of a case against Plaintiff. These supervisors nevertheless intentionally ignored the Police Officer Defendants' misconduct, and approved of arresting and prosecuting Plaintiff for a crime he did not commit, rather than directing the officers to find the person who had actually committed the crime. In addition, the supervisors of the Police Officer Defendants explicitly authorized their investigative misconduct.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them and, but lack knowledge or information sufficient to admit or deny the remaining allegations.

### Evidence of Plaintiff's Innocence Ignored

79.     In the midst of the misconduct described in this Complaint, Defendants willfully ignored and acted to undermine evidence that showed conclusively that Plaintiff had nothing to do with the Soto murders.

22

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

80. Defendants disregarded the fact that crime scene investigators had collected numerous pieces of physical evidence from the scene of the crime, but none of it—not a single fingerprint, shoeprint, drop of blood, item of clothing, bedsheet, or hair—connected Plaintiff to the crime. In fact, the only conclusion that can possibly be drawn from the physical evidence discovered at the crime scene is that Plaintiff could not have had anything to do with the crime.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

81. They also disregarded employee timesheets showing Plaintiff's long workdays the day of the crime and the day before, which made it impossible for him to have committed a violent double murder and double child abduction.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

82. Defendants completely disregarded the simple fact that Plaintiff had voluntarily come to the police station with the missing three-year old boy.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

83. In addition, Defendants ignored that the false confession they had written for Plaintiff was riddled with obviously false information that could not be squared with the evidence at the crime scene.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

84. Finally, DNA testing performed after Plaintiff's convictions on the physical evidence that was recovered from the crime scene excluded Plaintiff (and Solache) as the source of any of the physical evidence collected at the scene. Instead, DNA testing on the physical evidence revealed the presence of the victims' DNA, as well as the DNA of Adriana Mejia and the DNA profile of an

unidentified person. Still Defendants took no action to undo the wrongful conviction of Plaintiff that their misconduct had caused.

**ANSWER:** Answering Defendants admit they did not take personally any actions post plaintiff's conviction regarding DNA test results. Answering Defendants deny the allegations misconduct in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

### Plaintiff's Wrongful Conviction and Imprisonment

85. As a result of the Defendants' misconduct, Plaintiff was tried in the Circuit Court of Cook County. A jury convicted Plaintiff of first-degree double murder, aggravated kidnapping and home invasion. He was sentenced to life in prison without the possibility of parole.

**ANSWER:** Answering Defendants deny the allegations of misconduct in this paragraph as they pertain to them, but admit, on information and belief, the remaining allegations.

86. The State's case hinged upon Plaintiff's fabricated confession and statements that Defendants had fabricated from other witnesses. At trial, the State did not present any eyewitness testimony of any kind implicating Plaintiff in the crime, nor was there any physical evidence linking Plaintiff to the crime. Without Plaintiff's coerced statements, he would never have been convicted.

**ANSWER:** Answering Defendants deny the allegations of misconduct in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

87. Plaintiff was 23 years old when he was arrested and charged with the Soto murders and kidnapping. He would spend the next 19 years of his life behind bars, almost all of them in harsh and dangerous conditions in maximum-security facilities within the Illinois Department of Corrections.

**ANSWER:** Answering Defendants admit, on information and belief, that plaintiff was 23 years old when he was arrested on this underlying criminal matter and that he was in prison for approximately 19 years. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

88. Plaintiff's whole life was turned upside down without any warning. Almost half of his life as of the date of this Complaint has been consumed by the horror of his wrongful imprisonment.

24

**ANSWER:** Answering Defendants deny the allegations of misconduct in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

89.     Because of the Defendants' misconduct, Plaintiff's opportunity to be with and make a better life for his family was taken away, and his relationships with his wife, children, and the rest of his family were irreparably harmed.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

90.     Plaintiff was stripped of his young adulthood and deprived of opportunities to gain an education, to engage in meaningful labor, to develop skills and a career, and to pursue his interests and passions. Plaintiff has been deprived of all of the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

91.     Because Plaintiff had been sentenced to life in prison without parole, he feared that he would die alone inside the prison walls, never to see his family again.

**ANSWER:** Answering Defendants, on information and belief, admit that Plaintiff was sentenced to life in prison without parole, but lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

92.     In addition to the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty, the Defendants' misconduct continues to cause Plaintiff extreme physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and other physical and psychological effects.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

### Plaintiff's Exoneration

93.     On December 21, 2017, following post-conviction hearings, the Cook County State's

Attorney moved to dismiss all charges against Plaintiff, and Judge James Obbish of the Cook County

Circuit Court ordered him released from prison.

**ANSWER:** Answering Defendants admit, on information and belief, the allegations in this paragraph.

94. On the same day, the Cook County State's Attorney's Office dismissed all charges

against Solache.

**ANSWER:** Answering Defendants admit, on information and belief, the allegations in this paragraph.

### Policy and Practice of Prosecuting Innocent Persons in Violation of Due Process

95. The Chicago Police Department is responsible by virtue of its official policies for scores

of miscarriages of justice like that inflicted upon Plaintiff.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

96. Since 1986, no fewer than 70 cases have come to light in which Chicago police officers

have fabricated false evidence and/or have suppressed exculpatory evidence in order to cause the

convictions of innocent persons for serious crimes they not commit.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

97. These cases include many in which Chicago police officers used the same tactics that

Defendants employed against Plaintiff in this case, including: (1) using physically and psychologically

coercive tactics to obtain involuntary and false confessions; (2) fabricating witness statements; (3)

concealing exculpatory evidence; (4) manipulating witnesses in order to influence their testimony; and

(5) using other tactics to secure the arrest, prosecution and conviction of a person without probable

cause and without regard to the person's actual guilt or innocence.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

98. At all times relevant hereto, members of the Chicago Police Department, including the Defendants in this action, routinely manufactured evidence against innocent persons by coercing, manipulating, threatening, pressuring, and offering inducements to suspects and witnesses to obtain false statements implicating innocent persons, knowing full well that those statements were false. As a matter of widespread custom and practice, members of the Chicago Police Department, including the Defendants in this action, contrived false witness narratives that were fed to vulnerable witnesses, who then adopted those false witness narratives as their own for the purpose of wrongly convicting an innocent person. Furthermore, Chicago Police Department officers systematically suppressed exculpatory and/or impeaching material by concealing evidence that a witness was coerced, manipulated, threatened, pressured or offered inducements to make false statements.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

99. The municipal policy and practice described in the paragraphs above was recently described in a Federal Bureau of Investigation FD-302 Report of an interview with Assistant State's Attorney Terence Johnson. The Report documents, inter alia, that Chicago police detectives would feed information to witnesses and coach them through court-reported and handwritten statements, coerce witnesses into sticking to a detective's theory of the case, physically abuse witnesses, and work together to develop and rehearse false narratives so there were no inconsistencies in the witnesses' stories.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

100.    At all times relevant hereto, members of the Chicago Police Department, including the Defendants in this action, systematically suppressed exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed or hidden at the close of the investigation, rather than being maintained as part of the official file.

ANSWER:    Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

101.    Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including the named Defendants, concealed exculpatory evidence from Plaintiff.

ANSWER:    Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

102.    The existence of this policy and practice of suppressing exculpatory and/or impeaching material in clandestine files was established and corroborated in the cases of, *inter alia*, *Fields v. City of Chicago*, 1:10 Civ. 1168 (N.D. Ill.) and *Jones v. City of Chicago*, 87 Civ. 2536, 88 Civ. 1127 (N.D. Ill.).

ANSWER:    Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

103.    The policies and practices of file suppression at issue in *Fields* applied throughout the timeframe from the 1980s through the 2000s, including at the time of the Soto murders and investigation at issue here.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

104. In addition, a set of clandestine street files related to Area 5 homicides—the same Detective Division involved in this case—was found in the case of *Rivera v. City of Chicago*, 12 Civ. 4428 (N.D. Ill.).Those files, for a period in the 1980s and 1990s, contained exculpatory and impeaching evidence not turned over to criminal defendants.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

105. Put simply, the policy and practice of suppressing exculpatory and/or impeaching material evidence was alive and well at the time of the investigation into the Soto murder, including in the Area 5 Detective Division.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

106. The City of Chicago and the Chicago Police Department routinely failed to investigate cases in which Chicago Police Detectives recommended charging an innocent person with a serious crime, and no Chicago Police Officer has ever been disciplined as a result of his misconduct in any of those cases.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

107. Prior to and during the period in which Plaintiff was falsely charged and convicted with the Soto murders, the City of Chicago also operated a dysfunctional disciplinary system for Chicago Police Officers accused of serious misconduct. The City's Office of Professional Standards almost never imposed significant discipline against police officers accused of violating the civil and

29

constitutional rights of members of the public. The Chicago Police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in misconduct.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

108. As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence with the Chicago Police Department. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

109. As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the Chicago Police Department, officers (including the Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

110.    This includes Defendants in this case. By way of example, Defendants Guevara and Halvorsen have a long history of engaging in the kind of investigative misconduct that occurred in this case, including coercing confessions, manipulating witnesses, fabricating   evidence, and concealing evidence in the course of maliciously prosecuting innocent persons. There are dozens of known cases in which Guevara and/or Halvorsen has engaged in serious investigative misconduct, including many cases in which they have manipulated and coerced suspects and witnesses and fabricated and concealed evidence, as they did in this case. They engaged in such misconduct because they had no reason to fear that the City of Chicago and its Police Department would ever discipline them for doing so.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

111.    The City of Chicago and its Police Department also failed in the years prior to Plaintiff's wrongful charging and conviction to provide adequate training to Chicago Police Detectives and other officers in any of the following areas, among others:

a.    The constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

b.    The need to refrain from physical and psychological abuse, and manipulative and coercive conduct, in relation to suspects and witnesses.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

c.    The risks of wrongful conviction and the steps police officers should take to minimize risks.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

31

    d.      The risks of engaging in tunnel vision during investigation.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

    e.      The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

112.    The need for police officers to be trained in these areas was and remains obvious. The City's failure to train Chicago Police Officers as alleged in the preceding paragraph proximately caused Plaintiff's wrongful conviction and his injuries.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

113.    The City's failure to train, supervise, and discipline its officers, including Defendants Guevara, Halvorsen and other Police Officer Defendants, condones, ratifies, and sanctions the kind of misconduct that the Police Officer Defendants committed against Plaintiff in this case. Constitutional violations such as those that occurred in this case are encouraged and facilitated as a result of the City's practices and *de facto* polices, as alleged above.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

114.    The City of Chicago and final policymaking officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

115. The policies and practices described in the foregoing paragraphs were also approved by the City of Chicago policymakers, who were deliberately indifferent to the violations of constitutional rights described herein.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

### Defendant Guevara's History of Framing Innocent Persons

116. As a result of the policies and practices of the Chicago Police Department, described above, Defendant Guevara has framed dozens of other innocent men over the span of two decades. Like Plaintiff, these men have all lodged independent accusations of similar misconduct against him.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

117. As of the filing of this complaint, fourteen men have had their convictions thrown out as a result of Defendant Guevara's misconduct. Those men served hundreds of years in prison for crimes they did not commit. In addition to Plaintiff and Gabriel Solache, the other twelve men are Jacques Rivera, Juan Johnson, Jose Montanez, Armando Serrano, Jorge Pacheco, Roberto Almodovar, William Negron, Jose Maysonet, Angel Rodriguez, Santos Flores, Henry Johnson, and Thomas Sierra.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

118. Defendant Guevara has a long history of engaging in precisely the kind of investigative misconduct that occurred in this case, including abusive tactics, manipulation of witnesses, fabrication of evidence, and concealment of evidence in the course of maliciously prosecuting innocent persons. In addition to the cases in which individuals have been exonerated, there are dozens of other identified cases in which Defendant Guevara has engaged in serious investigative misconduct.

33

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

119.    Given this extensive history of misconduct and the City of Chicago's failure to meaningful disciplined Guevara and others, it is apparent that Guevara engaged in such misconduct because he had every reason to believe that the City of Chicago and its Police Department condoned his conduct.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

120.    Repeatedly, Defendant Guevara has also invoked his Fifth Amendment right not to answer any questions about allegations that he manipulated dozens of witnesses to provide false identifications because truthful responses could subject him to criminal liability, including every single instance of misconduct detailed below.

**ANSWER:** Answering Defendants admit, on information and belief, that Guevara has invoked his Fifth Amendment right not to answer questions regarding allegations of misconduct. Answering Defendants deny the allegations in this paragraph as they pertain to them, but lack knowledge or information sufficient to admit or deny the remaining allegations.

121.    Examples of Defendant Guevara's misconduct include:

a.    Bill Dorsch is a former Chicago police detective.   While serving with the Chicago police department, Dorsch was assigned to investigate a murder.   Several months after the murder occurred, Defendant Guevara brought two juveniles to the police station that purported to have witnessed a shooting and recorded the license place of the shooter. Based on the information provided, Detective Dorsch created a photo array for the juveniles to attempt to identify the shooter.   While the first juvenile was viewing the photo array, and before he identified any of the photographs, Defendant Guevara pointed to the suspect's photo and told the juvenile "that's him."   The juvenile then agreed with Guevara, saying that was the person who committed the shooting. Dorsch then directed Defendant Guevara to leave the room and had the other juvenile view the same photo array, and he was unable to make any identification. Based on the first juvenile's identification, the suspect was charged with

34

murder.   Subsequently, Dorsch spoke to the two juveniles without Defendant Guevara being present. The juveniles admitted that they had been paid to falsely claim that the suspect was the person responsible for the shooting.   After prosecutors spoke to the two juveniles, the suspect was released.

b.       Defendant Guevara's activities have drawn the interest of federal law enforcement officers. In 2001, the FBI authored a special report detailing the criminal activity of Chicago Police Officer Joseph Miedzianowski and his associates, including Defendant Guevara. The report details that Defendant Guevara, while acting in his capacity as a police officer, would apprehend drug and gun dealers and then allow them to "buy their way of trouble." According to the report, Guevara also took bribes to alter both positive and negative lineups of murder suspects. Finally, the report states that Guevara, using an attorney as a conduit, would receive cash in exchange for the ultimate dismissal of murder cases he investigated.

c.       In 1989, Defendant Guevara coerced Samuel Perez into falsely identifying Juan Johnson as the person who killed Ricardo Fernandez.   Defendant Guevara put Perez inside his car, showed Perez a photo of Juan Johnson, and told Perez that he wanted Juan Johnson to take the blame for the murder. Unsurprisingly, Perez subsequently falsely identified Johnson as a murderer.

d.       In 1989, Defendant Guevara also coerced Salvador Ortiz into making a false identification of Juan Johnson, which he later recanted.

e.       Juan Johnson was later exonerated and brought suit against Defendant Guevara. A federal jury found that Guevara framed Johnson for murder and awarded Johnson $21 million in damages.

f.       In 1989, Defendant Guevara coerced Virgilio Muniz into making a false identification by repeatedly threatening Muniz that if he did not identify Manuel Rivera as the murderer, Muniz would "go down for the murder."

35

g.      In 1989, Defendant Guevara coerced Virgilio Calderon Muniz (unrelated to Virgilio Muniz, described in the above paragraph) into making a false identification by telling him who to identify and making a veiled threat as to what would happen if he did not.

h.      In 1991, Defendant Guevara coerced Wilfredo Rosario into making a false identification and giving false testimony before the Grand Jury by threatening Rosario that if he did not identify Xavier Arcos as the murderer, Rosario would be "pinned" for the murder.   Guevara fed Rosario details of the crime, such as the number of shots fired, the type of vehicle used in the crime, and the participants in the crime. Rosario recanted his identification of Arcos at trial. Though Arcos was still found guilty of murder by a jury, the appellate court overturned the conviction based on the lack of sufficient evidence.

i.      In 1991, Defendant Guevara physically coerced sixteen year-old David Velazquez into making a false identification and giving false testimony by taking him to a rival gang's territory, beating him while chained to a wall at Area 5, and threatening to "get you for anything I can" if he did not talk. All of the false details of Velazquez's statement were provided by Guevara.

j.      In 1993, Defendant Guevara coerced an identification from Carl Richmond by threatening Richmond that he could make his life very uncomfortable if Richmond did not identify Robert Bouto as the murderer of one of Richmond's friends. Richmond, who was familiar with Guevara's tactics, believed that Guevara would honor this threat.

k.      In 1995, Defendant Guevara arrested Edwin Davila and, in an attempt to coerce a confession, chained him to the wall of an interrogation room and told him that he was going to frame him for murder.    After Davila told Guevara that he did not do it, Guevara forced Davila to participate in a lineup in which two witnesses identified Davila as the perpetrator, despite the fact that each of those witnesses had previously told the police that they had not been able to see the shooter.

36

l.      In 1991, Defendant Guevara told Efrain and Julio Sanchez to pick David Colon out of a lineup.   As a result, these men falsely claimed that Colon had committed murder, but later came forward to bring Defendant Guevara's misconduct to light.

m.      In 1995, Defendant Guevara coerced Evelyn Diaz into making a false identification and providing false testimony to the Grand Jury by threatening Diaz that if she did not identify Luis Serrano as the shooter, her children would be taken away by the Department of Children and Family Services.

n.      In 1995, Defendant Guevara told Luis Figueroa to falsely identify Angel Diaz as the perpetrator even though Figueroa did not see anything. Figueroa identified Diaz but recanted his identification at trial.

o.      In 1995, Defendant Guevara coerced Gloria Ortiz Bordoy into making a false statement and testifying falsely against Santos Flores at trial. During Ortiz Bordoy's six-to-eight hour interrogation, Guevara yelled in her face, threatened that her children would be taken by the Department of Children and Family Services, called her "the B word," and "raised his hand" saying that he "felt like smacking" her.   Finally, without reading its contents, Ortiz Bordoy signed a statement that the detectives wrote out for her because she just wanted to "get out of there."

p.      In 1995, Defendant Guevara coerced Rodolfo Zaragoza, who was a victim and an eyewitness to a crime, into making a false identification and providing false testimony. Zaragosa was intimidated by Guevara and identified Ricardo Rodriguez as the offender because Guevara told him that Rodriguez was the shooter.

q.      In 1995, Defendant Guevara engaged in misconduct when he told Jose Melendez to falsely identify Thomas Sierra as the shooter even though Melendez did not see the shooter. Melendez identified Sierra, but recanted his identification at trial.

r.      In 1996, Defendant Guevara coerced Maria Rivera into making a false identification of a man in a lineup by unzipping his pants and propositioning her. Rivera later told the prosecutor that

37

she had falsely identified an individual in a lineup at Guevara's direction. The prosecution later abandoned murder charges against the individual whom Rivera falsely identified in the lineup.

s.     In 1997, Defendant Guevara coerced Robert Ruiz into making a false identification. Guevara detained Ruiz repeatedly over the course of a ten-day period, locking him in an interrogation room without food, water, or a bathroom. Though Ruiz kept telling Guevara that he had not seen the shooter or the driver involved in the crime, Guevara told Ruiz whom to identify and what to say in his statement. Ruiz finally implicated Freddy and Concepcion Santiago in the murder because Ruiz believed that Guevara would continue to harass him until he changed his story. Ruiz recanted his identification at trial, and the judge found Freddy and Concepcion Santiago not guilty. The trial judge found it disturbing that Guevara was the lead detective in the case because the victim was Guevara's nephew.

t.     In 1997, Defendant Guevara withheld physical evidence and failed to disclose the exculpatory statements of witness Ruth Atonetty to Ariel Gomez. Gomez was accused of firing multiple shots from a car into a crowd. Ruth Antonetty told Guevara that she heard multiple shots coming from within the crowd, not from Gomez's vehicle. Guevara continued to pressure her to change her account, and when she would not, he told her he "had other witnesses" and "didn't need her." As a result, Ariel Gomez did not have access to key Brady material at his trial.

u.     In 1988, Defendant Guevara used suggestive tactics to force twelve-year-old Orlando Lopez to falsely identify Jacques Rivera as the person who shot Felix Valentin.   As a result, Rivera was convicted of murder.   In 2011, Lopez testified at an evidentiary hearing that he had never been able to identify Rivera as the murderer.   As a result, Rivera received a new trial.   Ultimately, the State's Attorney dropped all charges against Rivera, who was granted a certificate of innocence.

v.     Also during the Felix Valentin shooting investigation, Defendant Guevara falsely claimed that the victim of that shooting identified Jacques Rivera as his shooter before he died. Defendant Guevara claimed that the identification was made at a time that the victim was in a

medically-induced coma, unresponsive to any stimuli, and laying in a bed that was in constant motion to prevent his lungs from filling with fluid and killing him.

w.      In November 2001, Defendant Guevara's girlfriend, Judith Martinez, attended a trial in which Guevara was testifying and observed the testimony of trial witnesses.   She then conferred with Guevara, even though the Court had ordered all witnesses excluded from the courtroom to prevent collusion among the witnesses.

x.      In 2011, the first district granted Tony Gonzalez a post-conviction hearing on the basis that Defendant Guevara conducted an unduly suggestive lineup wherein he concocted an array in which Gonzalez's photo was the only one that stood out from the rest in a photo array.

y.      In 1982, Defendant Guevara and another officer arrested and physically assaulted Annie Turner for smoking on a bus.   Guevara called her a "bitch" and pushed her out the back door of the bus.   He twisted her arm, threatened to "snap" it, and handcuffed her so tightly that her skin broke. He also hit her across the face with a metal bracelet he was wearing and called her a "nigger bitch." Turner sought medical treatment and filed a complaint with the Office of Professional Standards.

z.      In 1982, Defendant Guevara and three other officers broke through Almarie Lloyd's locked front door and conducted a warrantless search of her home. When Lloyd asked who they were, she was told to shut up. The officers terrified Lloyd, her brother, and two children, and left the home in shambles. Lloyd filed a complaint with the Office of Professional Standards the next day.

aa.      In 1983, Defendant Guevara and other officers forcibly removed Leshurn Hunt from his home and handcuffed him to a ring in the wall at the police station where he was beaten about the head, face, and body until he confessed to murder and robbery charges. Hunt was detained for approximately 23 hours and deprived of food, water, and sleep until after he confessed.   Hunt sought medical treatment for his injuries and filed a complaint with the Office of Professional Standards. Witnesses who saw Hunt while in custody corroborated his claim of a beating by the police. The criminal court judge suppressed Hunt's confession, and a jury returned a favorable verdict in a related civil rights

39

action on Hunt's claim of excessive detention against the City of Chicago.

bb.     In 1984, Defendant Guevara and other officers physically assaulted Graciela Flores and her 13-year old sister Anna during a search of their home, during which the officers did not identify themselves as police. Guevara repeatedly slapped Graciela, called her a "bitch" and pulled her hair. As a result of this incident, Graciela's arm was put in a sling and she spent one week in the hospital.

cc.     In 1985, Defendant Guevara attempted to coerce a false statement from Reynaldo Munoz. Guevara handcuffed Munoz and put him in the back of a squad car. When Munoz denied knowing the people Guevara was asking about, Guevara repeatedly hit him in the mouth with his fist. Guevara then took Munoz to rival gang territory where he allowed rival gang members to spit on Munoz and beat Munoz about the head.

dd.     In 1986, Defendant Guevara threw Rafael Garcia against a car, struck him in the face several times, kicked him and hit him in the head. Garcia filed a complaint with the Chicago Police Department's Office of Professional Standards (OPS). Although Guevara denied the charges, Garcia's complaints were corroborated by physical evidence, as he was treated at the hospital for lacerations to the head. After an investigation into the incident, OPS found that Guevara had lied about the incident and recommended that Guevara be suspended for two days.

ee.     In 1986, Defendant Guevara and two other officers coerced a confession from Daniel Pena by beating him about the face and ribs with their hands and about the groin and thighs with flashlights during an interrogation. Pena was taken to see a doctor where he complained about being beaten by the police. The doctor found bruising to Pena's legs and abrasions and lacerations to Pena's nose. Family members corroborated Pena's claim that he had been beaten while in police custody.

ff.     In 1986, Defendant Guevara pulled over Melvin Warren because Warren cut him off while driving westbound on Augusta Boulevard. Guevara called Warren a "nigger dog" and "threatened to tear [Warren's] head off." Guevara hit Warren in the face with a closed fist and then forced him down into the front seat of his car and began to choke him. Two eyewitnesses confirmed

that Guevara initiated the beating. In response to this incident, Warren sought medical treatment and filed a complaint with the Office of Professional Standards (OPS). OPS sustained Warren's allegations that Guevara had physically and verbally assaulted him and recommended that Guevara be reprimanded.

gg.     In 1989, Defendant Guevara coerced a false confession from Victor Vera by transporting him to rival gang territory and threatening to release him unless he confessed to the murder of Edwin Castaneda. Fearing for his life, Vera agreed to falsely confess to a crime he knew nothing about.

hh.     In 1991, Defendant Guevara coerced David Rivera into signing a confession for murder by intimidation, threats, and inducements. Guevara told Rivera that if he confessed he would serve seven years in prison whereas if he did not confess, he would be sent away for fifty years. Guevara then promised Rivera that if he signed a statement, he could go home.

ii.     In 1991, Defendant Guevara coerced a false confession from Daniel Rodriguez through the use of threats and intimidation. While en route to the police station, Guevara threatened to harm Rodriguez's family if he did not cooperate. Once at Area 5, Rodriguez was chained to a wall, denied food, water, and use of a restroom, and beaten by Guevara's partner, Defendant Halvorsen in the chest and torso. Guevara provided details of the crime to Rodriguez to include in Rodriguez's false confession.

jj.     In 1992, Defendant Guevara engaged in misconduct when he interrogated Jacqueline Montanez (no relation to Plaintiff) without a youth officer present. The appellate court reversed and remanded Ms. Montanez's conviction for murder, noting that "not only was defendant interrogated before having an opportunity to confer with a concerned adult, but, worse, any opportunity to do so was effectively frustrated by police."

kk.     In 1993, Defendant Guevara arrested fifteen year old Eliezar Cruzado and threatened him with life imprisonment if he did not make a statement implicating himself in a murder. Guevara

41

also told Cruzado that he could go home and see his family again, but only if he agreed to make a statement. At the time, Cruzado had a limited ability to read and write.

ll.     In 1993, Defendant Guevara used physical force and threats to coerce a false confession from Adolfo Frias-Munoz. Over the course of a two-day interrogation, Frias-Munoz was handcuffed to a ring on the wall of the interrogation room, hit in the face with an open hand by Defendant Guevara, and beaten by two other officers. Though isolated in a locked interrogation room, Frias-Munoz could hear his wife screaming and his son crying in another room.   Guevara threatened Frias-Munoz that if he did not confess, his wife would go to prison and his children would be taken away.   Frias-Munoz, who did not speak English, agreed to give a statement to an assistant state's attorney. Frias-Munoz spoke in Spanish and Guevara translated the statement so that the prosecutor could write the statement in English. Frias-Munoz then signed a statement he could not read.

mm.     In 1994, Defendant Guevara, after 14 hours of interrogation, coerced a confession from Adrian Duta by hitting him in the face with an open palm, punching him in the stomach, and telling him he could go home if he signed a statement. When Duta's father came to see Duta at the station house, Duta was exhausted and crying and repeatedly said that he did not know what he had signed and had only signed the document so he could go home.   Duta complained to his father of being struck in the head and stomach by Guevara.

nn.     In 1995, Defendants Guevara and Halvorsen coerced a confession from 17-year-old Santos Flores after handcuffing him to the wall of a locked interview room and refusing his requests for an attorney. During the course of the 11-hour interrogation, Guevara yelled at him, slapped him numerous times on the side of his head, and told him that if he did not confess he would never see the light of day.   Flores eventually gave a statement to the police indicating his involvement in the crime. Flores's statement was ruled inadmissible on appeal on the grounds that it was elicited in violation of Miranda.

42

oo. In 1997, Defendant Guevara coerced a false confession from Voytek Dembski by beating him while chained to a wall in a locked interrogation room. Dembski, a Polish National who did not speak English, was interrogated by Guevara without Miranda warnings, without notification to the Polish consulate, and without a Polish language interpreter. Dembski could not read the statement he eventually signed as it was written in English.

pp. In 1998, Defendant Guevara repeatedly hit Rosauro Mejia in an attempt to coerce a confession from him. Mejia never confessed and was finally released after being held in custody for three days.

**ANSWER:** To the extent that these allegations are directed against them, Answering Defendants deny the allegations in this paragraph, and lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

122. As the examples above demonstrate, the City of Chicago failed to meaningfully discipline Defendants Guevara or Halvorsen, or other officers engaged in similar misconduct. The Police Officer Defendants engaged in the misconduct set forth in this Complaint because they knew that the City of Chicago and its Police Department tolerated and condoned such conduct.

**ANSWER:** To the extent that these allegations are directed against them, Answering Defendants deny the allegations in this paragraph, and lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

### COUNT I – 42 U.S.C. § 1983
### False Confession
### (Fifth Amendment and Fourteenth Amendments)

123. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

124. In the manner described more fully above, the Police Officer Defendants and the Prosecutor Defendants, acting as investigators and without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment, forced Plaintiff to make false statements

43

involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings, in violation of his rights secured by the Fifth and Fourteenth Amendments.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

125. In addition, the Police Officer Defendants and the Prosecutor Defendants, acting as investigators and without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, used physical violence and extreme psychological coercion in order to force Plaintiff to incriminate himself falsely and against his will in a crime he had not committed, in violation of his right to due process secured by the Fourteenth Amendment. This misconduct was so severe as to shock the conscience, it was designed to injure Plaintiff, and it was not supported by any conceivable governmental interest.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

126. In addition, the Police Officer Defendants and the Prosecutor Defendants, acting as investigators and without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, fabricated a false confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

127. Specifically, Police Officer Defendants and the Prosecutor Defendants conducted, participated in, encouraged, advised, and ordered an unconstitutional, multi-day interrogation of Plaintiff, using physical violence and psychological coercion, which overbore Plaintiff's will and resulting in him making involuntary statements implicating himself in the murders of Mariano and Jacinta Soto.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

128.   Those false incriminating statements were wholly fabricated by the Defendants and attributed to Plaintiff.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

129.   Those false incriminating statements were used against Plaintiff to his detriment throughout his criminal case. They were the reason that Plaintiff was prosecuted and convicted of the Soto murders.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

130.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

131.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

132.   The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph directed against them and the policy and practice of the Chicago Police Department more fully described in Count VII.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph Answering Defendants deny the allegations in this paragraph.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

**COUNT II – 42 U.S.C. § 1983**
**Fabrication of False Witness Statements**
**(Fourteenth Amendment)**

133. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

134. In the manner described more fully above, the Police Officer Defendants and the Prosecutor Defendants, acting as investigators and without probable cause to suspect Plaintiff of any crime, individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial and due process by fabricating witness statements implicating Plaintiff in crimes he did not commit, which Defendants knew to be false, and by suppressing their own misconduct and the circumstances in which these witness statements were obtained.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

135. Specifically, as set forth above, Defendants used physical violence and psychological abuse to obtain false witness statements from Solache and other witnesses implicating Plaintiff in the Soto murders.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

136. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

137.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

138.     The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph directed against them and the policy and practice of the Chicago Police Department more fully described in Count VII.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph Answering Defendants deny the allegations in this paragraph.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

### COUNT III – 42 U.S.C. § 1983
### Deprivation of Liberty without Probable Cause
### (Fourth and Fourteenth Amendments)

139.   Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**     Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

140.     In the manner described more fully above, the Police Officer Defendants, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, used false evidence that they had manufactured in order to accuse Plaintiff of criminal activity and cause the institution and continuation of criminal proceedings against Plaintiff, without probable cause.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

141.    In so doing, these Defendants caused Plaintiff to be deprived of his liberty without probable cause, in violation of his rights secured by the Fourth and Fourteenth Amendments.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

142.    These Defendants initiated and continued judicial proceedings against Plaintiff maliciously, resulting in injury.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

143.    The judicial proceedings against Plaintiff were terminated in his favor when the Cook County State's Attorney dismissed all charges against him.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

144.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

145.    As a result of the misconduct of the Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

146.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph directed against them and the policy and practice of the Chicago Police Department more fully described in Count VII.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph Answering Defendants deny the allegations in this paragraph.

48

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

**COUNT IV – 42 U.S.C. § 1983**
**Due Process**
**(Fourteenth Amendment)**

147.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

148.    As described in detail above, the Police Officer Defendants, while acting individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

149.    In the manner described more fully above, the Police Officer Defendants deliberately withheld exculpatory evidence from Plaintiff and from prosecutors (including the Prosecutor Defendants), among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

150.    The Police Officer Defendants also fabricated and manufactured evidence and solicited false evidence, fabricated police reports falsely implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff during his criminal case.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

151.    In addition, the Police Officer Defendants also destroyed evidence that would have demonstrated Plaintiff's innocence. These Defendants destroyed this evidence knowing that it had exculpatory value. In the alternative, these Defendants destroyed this potentially exculpatory evidence

49

in bad faith.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

152. In addition, based upon information and belief, the Police Officer Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

153. The Police Officer Defendants' misconduct directly resulted in the unjust and wrongful criminal prosecution and conviction of Plaintiff and the deprivation of Plaintiff's liberty, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

154. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

155. As a result of the misconduct of the Defendants described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

156. The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and the policy and practice of the Chicago Police Department more fully described in Count VII. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph Answering Defendants deny the allegations in this paragraph.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT V – 42 U.S.C. § 1983
### Failure to Intervene

157. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

158. In the manner described above, during the constitutional violations described herein, one or more of the Police Officer Defendants and Prosecutor Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

159. As a result of the Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress. These Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

160. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

161. As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

162.    The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph directed against them and the policy and practice of the Chicago Police Department more fully described in Count VII.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph Answering Defendants deny the allegations in this paragraph.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

### COUNT VI – 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

163.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

164.    The Police Officer Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

165.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

166.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

167.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

168.   As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

169.   The misconduct described in this Count by the Police Officer Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:**   Answering Defendants deny the allegations in this paragraph directed against them and the policy and practice of the Chicago Police Department more fully described in Count VII.   Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph Answering Defendants deny the allegations in this paragraph.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

**COUNT VII – 42 U.S.C. § 1983**
**Policy and Practice Claim Against the City of Chicago**

Count VII of Plaintiff's Complaint is not directed Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey, and therefore they answer Count VII only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.

170. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

171. As described more fully herein, the City of Chicago is liable for the violation of

Plaintiff's constitutional rights by virtue of its official policies.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

172. Plaintiff's injuries were caused by the express policies, absence of needed express

policies, and widespread practices and customs of the City of Chicago, as well as by the actions of

policy-making officials for the City of Chicago.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

173. At all times relevant to the events described in this Complaint and for a period of time

prior and subsequent thereto, the City of Chicago failed to promulgate proper or adequate rules,

regulations, policies, and procedures for: the conduct of interrogations and questioning of criminal

suspects by officers and agents of the Chicago Police Department and the City of Chicago; the

collection, documentation, preservation, testing, and disclosure of evidence; writing of police reports

and taking of investigative notes; obtaining statements and testimony from witnesses; and maintenance

of investigative files and disclosure of those files in criminal proceedings. In addition or alternatively,

the City of Chicago failed to promulgate proper and adequate rules, regulations, policies, and

procedures for the training and supervision of officers and agents of the Chicago Police Department

and the City of Chicago, with respect to the conduct of interrogations and the techniques to be used

when questioning criminal suspects, including juvenile suspects and witnesses.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

174.    These failures to promulgate proper or adequate rules, regulations, policies, and procedures were committed by officers and agents of the Chicago Police Department and the City of Chicago, including the Defendants.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

175.    In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the City of Chicago had notice of a widespread practice and custom by officers and agents of the Chicago Police Department and the City of Chicago under which individuals suspected of criminal activity, such as Plaintiff, were routinely coerced against their will to involuntarily implicate themselves in crimes that they had not committed. It was common that suspects interrogated in connection with investigations within the jurisdiction of the Chicago Police Department and the City of Chicago falsely confessed, under extreme duress and after suffering abuse, to committing crimes to which they had no connection.

**ANSWER:**     Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

176.    Specifically, at all relevant times and for a period of time prior thereto, there existed a widespread practice and custom among officers, employees, and agents of the City of Chicago, under which criminal suspects were coerced to involuntarily implicate themselves by various means, including but not limited to one or more of the following: (1) individuals were subjected to unreasonably long and uninterrupted interrogations, often lasting for many hours and even days; (2) individuals were subjected to actual and threatened physical or psychological violence; (3) individuals

55

were interrogated at length without proper protection of their constitutional right to remain silent; (4) individuals were forced to sign or assent to oral and written statements fabricated by the police; (5) officers and employees were permitted to lead or participate in interrogations without proper training and without knowledge of the safeguards necessary to ensure that individuals were not subjected to abusive conditions and did not confess involuntarily and/or falsely; and (6) supervisors with knowledge of permissible and impermissible interrogation techniques did not properly supervise or discipline police officers and employees such that the coercive interrogations continued unchecked.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

177. In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, the City of Chicago had notice of widespread practices by officers and agents of the Chicago Police Department and the City of Chicago, which included one or more of the following: (1) officers did not record investigative information in police reports, did not maintain proper investigative files, and/or did not disclose investigative materials to prosecutors and criminal defendants; (2) officers falsified statements and testimony of witnesses; (3) officers fabricated police reports and other false evidence implicating criminal defendants in criminal conduct; (4) officers failed to maintain and/or preserve evidence and/or destroyed evidence; and/or (5) pursued wrongful convictions through profoundly flawed investigations.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

178. These widespread practices, individually and/or together, were allowed to flourish because the leaders, supervisors, and policymakers of the City of Chicago directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control their officers, agents, and employees on proper interrogation techniques

56

and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiff.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

179. The above widespread practices and customs, so well settled as to constitute de facto policies of the City of Chicago, were able to exist and thrive, individually and/or together, because policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

180. As a result of the policies and practices of the City of Chicago and the Chicago Police Department, numerous individuals have been wrongly convicted of crimes that they did not commit.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

181. In addition, the misconduct described in this Count was undertaken pursuant to the policies and practices of the City of Chicago in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Chicago or were actually committed by persons with such final policymaking authority.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

182. Plaintiff's injuries were directly and proximately caused by officers, agents, and employees of the City of Chicago, including but not limited to the individually named Defendants, who acted pursuant to one or more of the policies, practices, and customs set forth above in engaging in the

misconduct described in this Count.

**ANSWER:** Answering Defendants deny the allegations in this paragraph directed against them and that they acted pursuant to the policies, practices, and customs alleged in this paragraph. Answering Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in paragraph.

**COUNT VIII – State Law Claim**
**Intentional Infliction of Emotional Distress**

183. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

184. The actions, omissions, and conduct of the Police Officer Defendants and the Prosecutor Defendants, acting as investigators and as set forth above, were extreme and outrageous.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

185. These actions were rooted in an abuse of power and authority and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

186. As a result of the Defendants' actions, Plaintiff suffered and continues to suffer emotional distress and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

**Count IX – State Law Claim**
**Malicious Prosecution**

187. Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

58

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

188. In the manner described above, the Police Officer Defendants, individually, jointly, or in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

189. In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

190. These judicial proceedings were instituted and continued maliciously, resulting in injury.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

191. The judicial proceedings against Plaintiff were terminated in his favor when the Cook County State's Attorney dismissed all charges against him.

**ANSWER:** Answering Defendants, on information and belief, admit the Cook County State's Attorney dismissed all charges against him and deny the remaining allegations.

192. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

193. As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## COUNT X – State Law Claim
## Civil Conspiracy

194.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

195.    As described more fully in the preceding paragraphs, the Police Officer Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

196.    The violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotional distress, were accomplished by Defendants' conspiracy.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

197.    The misconduct described in this Count was objectively unreasonable, was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:**    Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

198.    As a result of the Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering,

and other grievous and continuing injuries and damages as set forth above.

**ANSWER:** Answering Defendants deny the allegations in this paragraph as they pertain to them, and lack knowledge or information sufficient to admit or deny the remaining allegations.

WHEREFORE, Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey request judgment in their favor and against plaintiff, costs of suit and attorneys' fees, and such other relief as the court deems appropriate.

## Count XI – State Law Claim
### Indemnification

Count XI of Plaintiff's Complaint is not directed Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey, and therefore they answer Count XI only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.

199.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:** Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

200.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER:** Answering Defendants, on information and belief, admit the allegations in this paragraph.

201.    The Police Officer Defendants are or were employees of the Chicago Police Department, an agency of the City of Chicago, who acted within the scope of their employment in committing the misconduct described above.

**ANSWER:** Answering Defendants admit the allegations in this paragraph.

202.    The City is liable to indemnify any compensatory judgment awarded against the Police Officer Defendants.

**ANSWER:** Answering Defendants deny that they committed any torts that would require an award of compensatory damages, but admit that the City would be required to indemnify any compensatory judgment awarded against the Police Officer Defendants.

203.    Defendant Cook County is responsible for any judgment entered against the Prosecutor Defendants.

**ANSWER:**    Answering Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph.

## Count XII – State Law Claim
### *Respondeat Superior*

Count XII of Plaintiff's Complaint is not directed Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas and Mingey, and therefore they answer Count XII only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.

204.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

**ANSWER:**    Answering Defendants hereby reincorporate and reassert their answers to paragraphs of this complaint as though fully set forth herein.

205.    In committing the acts alleged in the preceding paragraphs, the Police Officer Defendants were employees of the City of Chicago and the Chicago Police Department, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:**    Answering Defendants admit that at all relevant times they were employees of the Chicago Police Department, acting within the scope of their employment and under color of law.   Answering Defendants deny any and all other remaining allegations in this paragraph as they pertain to them, including that they committed the acts alleged in the preceding paragraphs, and lack knowledge or information to admit or deny the remaining allegations.

206.    Defendant City of Chicago is liable as principal for all torts committed by their agents.

**ANSWER:**    Answering Defendants deny this is an accurate and complete statement of the law.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Answering Defendants were government officials, namely police officers, who perform discretionary functions. At all times material to the events alleged in plaintiff's complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted the answering Defendants, could have believed their actions to be lawful, in light of clearly established law and the

information that answering Defendants possessed. Answering Defendants are therefore entitled to qualified immunity on plaintiff's federal claims.

## Second Affirmative Defense

Answering Defendants are absolutely immune from civil liability for their testimony given in judicial proceedings in plaintiff's underlying criminal case. *Briscoe v. LaHue*, 460 U.S. 325, 330-31, 103 S.Ct. 1108, 1113 (1983); *Jurgensen v. Haslinger*, 295 Ill.App.3d 139, 141-42; 692 N.E.2d 347, 349-50 (3rd Dist. 1998).

## Third Affirmative Defense

To the extent Plaintiff is attempting to allege a Section 1983 claim for false confession, those claims are barred by the two-year statute of limitations for Section 1983 claims because they were not filed within two years after they accrued.

## Fourth Affirmative Defense

Plaintiff's claim under Illinois Law for intentional infliction of emotional distress (Count VI) is barred by the one-year statute of limitations under the Illinois Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101 because it was not filed within one year after it accrued.

## Fifth Affirmative Defense

Under the Illinois Tort Immunity Act, Answering Defendants are not liable for any of the state law claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute wilful and wanton conduct. 745 ILCS 10/2-202.

**Sixth Affirmative Defense**

As to plaintiff's state law claims, Answering Defendants are not liable for any claims alleged because their decisions regarding the investigation and/or the arrest of plaintiff were decisions that involved the determination of policy or exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when action in the exercise of such discretion even though abused.   745 ILCS 10/2-201.

**Seventh Affirmative Defense**

As to plaintiff's state law claims, Answering Defendants are not liable for any claims alleged because a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause. 745 ILCS 10/2-208.

**Eighth Affirmative Defense**

As to plaintiff's state law claims, Answering Defendants not liable for any claims alleged claims because a public employee, as such and acting within the scope of his/her employment, is not liable for an injury caused by the act or omission of another person.   745 ILCS 10/2-204.

**Ninth Affirmative Defense**

To the extent Plaintiff is attempting to allege a Section 1983 claim deprivation of liberty without probable cause pursuant the Fourth and Fourteenth Amendments, those claims are barred by the two-year statute of limitations for Section 1983 claims because they were not filed within two years after they accrued.

**Tenth Affirmative Defense**

Plaintiff's claims as alleged in his Complaint are barred in whole or in part by the applicable statute of limitations.

## Eleventh Affirmative Defense

Plaintiff has a duty to mitigate his damages, and any damages awarded to Plaintiff would be required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

## JURY DEMAND

Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Naujokas, Stankus and Mingey request a trial by jury.

Dated: September 14, 2018                    Respectfully submitted,

                                             /s/ *Josh M. Engquist*
                                             JOSH M. ENGQUIST, Attorney No. 06242849
                                             *One of the Attorneys for Individual Defendants*

James G. Sotos
Jeffrey N. Given
Joseph M. Polick
Josh M. Engquist
Caroline P. Golden
David A. Brueggen
Jeffrey R. Kivetz
The Sotos Law Firm, P.C.
550 E. Devon Avenue, Suite 150
Itasca, Illinois 60143
(630) 735-3300
jengquist@jsotoslaw.com

65

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on September 14, 2018, I electronically filed the foregoing **Defendants Halvorsen, Rutherford, Trevino, Biebel, Harvey, Dickinson, Stankus, Naujokas, and Mingey's Answer and Affirmative Defenses to Plaintiff's Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed below.

***Attorneys for Arturo Reyes:***
Jon Loevy
Steven Art
Anand Swaminathan
Rachel Brady
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
steve@loevy.com
anand@loevy.com
brady@loevy.com

***Attorneys for Gabriel Solache:***
Jan Susler
Ben H. Elson
John L. Stainthorp
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
jsusler@gmail.com
ben.elson79@gmail.com
stainthorp@gmail.com

***Attorney for Cook County Defendants:***
Christina C. Chojnacki
Yulia Nikolaevskaya
Cook County State's Attorney's Office
50 W. Washington St., Room 500
Chicago, IL 60602
(312) 603-3369
christina.chojnacki@cookcountyil.gov
yulia.nikolaevskaya@cookcountyil.gov

***Attorneys for City of Chicago:***
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654
(312) 494-1000
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com

***Attorneys for Defendant Guevara:***
James V. Daffada
Thomas M. Leinenweber
Kevin E. Zibolski
Justin L. Leinenweber
Leinenweber Baroni & Daffada, LLC
120 N. LaSalle St., Suite 2000
Chicago, IL 60602
(312) 663-3003
jim@ilesq.com
thomas@ilesq.com
kevin@ilesq.com
justin@ilesq.com

/s/ *Josh M. Engquist*
JOSH M. ENGQUIST, Attorney No. 6242849
*One of the Attorneys for Individual Defendants*