**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DE LEON-REYES, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | Case No. 18 CV 1028 |
| REYNALDO GUEVARA, et al., | ) | Chicago, Illinois |
| | ) | January 10, 2019 |
| Defendants. | ) | 11:00 a.m. |
| ------------------------------ | ) | |
| GABRIEL SOLACHE, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | Case No. 18 CV 2312 |
| CITY OF CHICAGO, et al., | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JEFFREY T. GILBERT, MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff
DeLeon-Reyes:      MR. SEAN STARR
Loevy & Loevy
311 N. Aberdeen St.
Third Floor
Chicago, IL  60607
(312) 243-5900
E-mail:  Sean@loevy.com

**PLEASE NOTIFY OF INCORRECT SPEAKER IDENTIFICATION**
NOTE:  FAILURE TO STAND NEAR THE MICROPHONE MAKES
PORTIONS UNINTELLIGIBLE AND INAUDIBLE

Transcriber:

KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Suite 2524-A
Chicago, Illinois  60604
Telephone:  (312) 435-5569
Kathleen_Fennell@ilnd.uscourts.gov

2

APPEARANCES: (Continued)

For the Plaintiff
Solache:                    MS. JANIS M. SUSLER
                            People's Law Offices
                            1180 North Milwaukee Avenue
                            Chicago, IL  60642
                            (773) 235-0070
                            E-mail: Jsusler@gmail.com

For the Defendant
Guevara:                    MR. THOMAS MORE LEINENWEBER
                            Leinenweber Baroni & Daffada, LLC
                            120 North LaSalle Street
                            Suite 2000
                            Chicago, IL  60602
                            (312) 663-3003
                            E-mail: Thomas@ilesq.com

For Individual Police
Officers other than
Guevara:                    MS. CAROLINE P. GOLDEN
                            The Sotos Law Firm, P.C.
                            141 W. Jackson Blvd.
                            #1240A
                            Chicago, IL  60604
                            (630) 735-3300
                            E-mail: Cgolden@jsotoslaw.com

For Cook County and
Defendants Wehrle,
Navarro, Brualdi,
Varga and O'Malley:         MS. YULIA NIKOLAEVSKAYA
                            Cook County State's Attorney's Office
                            50 W. Washington Street
                            Suite 500
                            Chicago, IL  60602
                            (312) 603-5440
                    E-mail: Yulia.nikolaevskaya@cookcountyil.gov

For the Defendant
City of Chicago:            MR. AUSTIN GORDON RAHE
                            Rock Fusco & Connelly, LLC
                            321 North Clark Street
                            Suite 2200
                            Chicago, IL  60654
                            (312) 494-1000
                            E-mail: Arahe@rfclaw.com

(Proceedings heard in open court:)

THE CLERK: 18 CV 1028, De Leon-Reyes versus Guevara for status, and 18 CV 2312, Solache versus the City of Chicago, et al., for status.

THE COURT: Good morning.

ALL PRESENT: Good morning, Your Honor.

THE COURT: Let's get -- hold on for a second.

Sorry, I need to stand and sit. Otherwise, I'm sitting all day. Used to be I was running through airports. Now I'm just sitting.

Okay. Let's get the appearances. I don't know who wants to start. Plaintiffs can start. That's a good place to start.

MS. SUSLER: Janis Susler for plaintiff Gabriel Solache.

MR. STARR: Sean Starr, S-E-A-N, S-T-A-R-R with two Rs for plaintiff Reyes.

MS. NIKOLAEVSKAYA: Yulia Nikolaevskaya, Assistant State's Attorney, spelled N-I-K-O-L-A-E-V-, as in Victor, S-K-A-Y-A for the County and ASAs Varga, Wehrle, former ASA O'Malley, Heather Brualdi and Dave Navarro.

MS. GOLDEN: Caroline Golden for the individual police officer defendants with the exception of Mr. Guevara.

MR. RAHE: Austin Rahe for the City. R-A-H-E is the last name.

MR. LEINENWEBER: Good morning, Judge, Tom Leinenweber on behalf of defendant Reynaldo Guevara.

THE COURT: Hi, everybody.

MS. GOLDEN: Good morning.

THE COURT: All right. I read the stuff you gave me. I want to make sure that I'm understanding what's going on and I'm doing what's necessary to move this along because -- so on the ESI with the City, not much happening, right?

MR. STARR: Right.

MR. RAHE: Well, it's moving along slowly but surely. We actually just got the documents, the 150 hits in this week, a day or two ago, and just looked at it yesterday. You know, none of -- nothing was relevant to this case at all, in our view.

(Phone ring tone.)

MS. GOLDEN: I don't know how to turn it off, sorry.

MR. RAHE: Most of the stuff in there or most of the hits were last names of, like, officers.

THE COURT: Okay.

MR. RAHE: And it was in their, like, email address. That was I would say a majority of the hits, just blast emails.

THE COURT: Well, the bigger question is, I mean, from the plaintiffs' perspective, I mean, this goes back a long time. I'm not sure -- I know you're covering your bases,

but I don't know how much, whether ESI is the place where this case is going to rise and fall. The question I had was is 150 hits okay? Do you have to go back to different things?

Where is this -- I know we're on -- ESI is a separate track than the other discovery, which I think is good, because if we were just doing this, we can hold everything up. But at some point you're going to determine you're spinning your wheels, or you've gotten what you can get from either the County or them, and then you're moving on, right?

MR. STARR: Yeah, of course. I think that the 150 hits is a response to a narrowed focus to see what kind of response it engendered. I don't think that's -- it's certainly not exhaustive of all of our search and requests, and we are willing to work with the City to navigate that further, you know, and if it turns up nothing, it turns up nothing.

But from our perspective, we do think there's a high likelihood there's something out there, given, you know, the fact that this case has gone through the post-conviction process during a period where people use email, and so we want to just exhaust our -- our options here and make sure that we do cover our bases, as you said, Judge.

We would like to see that 150 obviously subject to a privilege review, and we're waiting on that.

THE COURT: Do you still want, as to the City, do you

still want to file another report on January 14th, which is just Tuesday, or do you want to push that out some?

MR. STARR: I'm not shepherding the ESI, but I think that we can work that out maybe after court in the --

THE COURT: Well, I just would like to put a date here for your next report.

MR. RAHE: Sure.

THE COURT: I mean, I could put it the 21st.

MR. STARR: Yeah, we can kick it for another week.

THE COURT: The 21st, right?

MR. RAHE: Yeah.

THE COURT: I'm out of town anyway then and I can't set you for another status until a week at the end of January or early February anyway if we need one, okay?

MR. STARR: Okay. That's fair.

THE COURT: And then with respect to the Cook County State's Attorney's Office, there's more, but that stuff hasn't yet been produced. Is that still where stand?

MS. NIKOLAEVSKAYA: Well, Judge, we started with 10,000 hits, right?

THE COURT: Right.

MS. NIKOLAEVSKAYA: The email frequency counts returned were 100,000 for now, and that's a huge number.

THE COURT: Mmm. I don't know what that means.

MS. NIKOLAEVSKAYA: So they asked us to search some

terms, so we searched Reyes, Solache, Mejia, Soto, Guevara, case numbers, so they did the email frequency search, and the total email frequency count was 101,560.

THE COURT: Sorry, what does email frequency mean?

MS. NIKOLAEVSKAYA: So it's basically how many times -- and we're trying to figure out if it's -- how many times the combination of these words appear or how many emails it would appear in, because email search are the emails for the entire Cook County. It's not just for Cook County State's Attorneys -- well, it's for our office, but once again, Judge, so far, this is the number that we have received.

And then the plaintiffs' counsel also asked us what was the total number for all the terms combined, removing overlap between the searches, and then we will look and see what that number would be.

MR. STARR: And forgive me if I'm wrong, but I would assume that 101,000 number is going to come down if you eliminate the cumulatives. Am I misunderstanding that?

MS. NIKOLAEVSKAYA: Your guess is as good as mine.

MR. STARR: Okay. Okay.

MS. NIKOLAEVSKAYA: We're working with our MIT and I've been talking with Anand trying to figure out the best ways to search that.

But, Judge, once again, I just want to reiterate that those emails, you know, would most likely be emails from the

post-conviction era because the Cook County State's Attorney's Office did not use email in the '90s, Your Honor.

THE COURT: Right, but the wrongful conviction case, so that era could be relevant to these guys for what they're looking for.

MS. NIKOLAEVSKAYA: Right, Judge, and once again, once we figure out what the terms are, and obviously responsive documents would be produced.

THE COURT: Okay.

MR. STARR: And I think from our perspective, we're certainly willing to work with the County to narrow those search terms once we have a better idea of what that actual response is, and if those numbers are cumulative or if those numbers are noncumulative, and, like you said, if they're emails or if they're just number of times the words appear in the emails. Those are factors in our analysis.

MS. NIKOLAEVSKAYA: And, Judge, while we're working with that, I'm sure when we come out with the terms that we're going to be using for these ESI searches, at that point, we will be able to complete an ESI plan --

THE COURT: Yeah.

MS. NIKOLAEVSKAYA: -- because I know it's been in the works, but there's some obviously issues with that, not because of the terms, but other issues.

THE COURT: Okay. To me, I still think it's a good

idea to have you file reports because that means you have to talk to each other and then you have to say something. I don't know that the 21st, given what I'm hearing here that you're trying to figure out, the 21st is 11 days from now, right? I mean, maybe you need more time on that?

I just don't want another report that's -- I mean, I don't want a meaningless report, which I've put even until the last week of January.

MR. STARR: We don't want meaningless reports, we don't want to go through the motions either, but we do think that the reports help to, you know, motivate the parties to get this work done.

THE COURT: Okay.

MR. STARR: And so I'm okay with the 21st.

THE COURT: Okay.

MS. NIKOLAEVSKAYA: Judge, I mean, whatever works --

THE COURT: I'm going to give you a little bit more time because I'm out of town that week.

MR. STARR: Okay.

THE COURT: Okay? So I'm going to say the 24th, and potentially I could set you for another status hearing the following week then at the end of January just to see where we're going if we -- if we need one, so just -- let's just put a finger on that. I'll say 24th, okay?

Okay. To me that's what -- I mean, you're still

pushing that ball up the wall, all right?

So let's look at your other discovery stuff from your other joint status report. You've blocked out January 30th and the 4th, 5th, 11th and 13th for depositions, looks like for the State's Attorneys and individual officers. However, the individual defendants object to moving forward before the completion of various written discovery.

Plaintiffs are -- what's going on here with the deps? I mean, you've blocked out dates, but if nobody's going to be deposed on those dates, then it's not --

MS. GOLDEN: It was our objection, and our objection is not -- we think we can fill those dates with witnesses who won't likely be impacted by pending discovery. We still don't have the State's Attorney's Office file on this matter, so I think that to depose any -- you know, most of the individual defendants, it would be premature until we had the State's Attorney's Office file and possibly some other things, too.

But we're confident that we can fill these days and move forward in the case with other deponents. There's 145 people on their Rule 26(a) disclosures, so we can maybe do some of those witnesses.

And I think we can even get some more important witnesses done, too, but we just didn't want the report to suggest that we were ready to take any -- represent all of our clients at this point.

MR. STARR:  So we'd -- we'd like those dates --

THE COURT:  That's Mr. Starr --

MR. STARR:  Yes.

THE COURT:  -- with two Rs.

MR. STARR:  With two Rs.

We blocked out those dates because I believe all the attorneys from each office were the attorneys available. We're looking to depose in those dates, like the status report says, the State's Attorney defendants and the individual defendant officers, but, you know, I'll say that we're willing to work with you on who that is.  You know, some of the lesser significant defendants potentially we'd be willing to slide into those places.

We're waiting for both parties to get back to us on who is available.  That's where we left it last, as far as I understand it.

You know, as far as the State's Attorney file, I believe we're going to get it this week.

MS. NIKOLAEVSKAYA:  No.

MR. STARR:  No?

MS. NIKOLAEVSKAYA:  Judge, what I have indicated to people that, you know, the subpoena has been received and until -- and -- but, I mean, it didn't come to me.  It came to a different person in our office, and the move was not fast enough on that subpoena.

So we're taking this over, and what we have at this point is we started looking at the documents and they're being scanned, but I have never promised that we'd produce anything this week because there's at least one, two banker boxes we have to look through with the documents.

So it's not just going to be scanned in about a couple of minutes, but we are in process of responding to the subpoena, Your Honor, at this point. It might not be the best response, but we are moving the ball along.

THE COURT: Okay. I'm going to -- I want to address that a little bit. You guys want to weigh in on that at all?

MR. STARR: Yeah --

THE COURT: I don't have a motion in front of me. I understand that there was an issue as to whether the individual defendants can produce the State's Attorney's file, and so then you served a Rule 45 subpoena. The subpoena has been received. They have a subpoena. I can't remember what day it was received on.

I don't have a motion for rule to show cause why somebody should be held in contempt for not responding. That's a little premature. You're trying to play nice in the sandbox, and I understand that.

However, with the past as my guide, I do not want there to be too much of a delay or an unnecessary delay by the State's Attorney's Office in producing the documents that

you're talking about.

Two banker's boxes, whether they're going to be imaged or produced in actual documents, is not, in my view, voluminous or burdensome, okay? I mean, you know, maybe that's just coming from my experience of millions and millions of documents in civil litigation. So two banker's boxes, I could get a paralegal to get that done in a day, okay?

So -- and I also have experience with the State's Attorney's office, and you're on good paper with me, but sometimes stuff just gets slow walked if somebody is not ringing a bell.

So nobody's asking me to ring a bell yet, but I don't want this -- it seems to me that there's stuff in the State's Attorney's file that everybody's going to want to see, and the sooner we can get that stuff, the better.

So if you've identified it, I could either set a date now for it to be produced, or I could just give you this little speech, and, you know, set another status. But I want that stuff coming. I want it higher than lower on the pecking order of stuff they have to get done.

MS. NIKOLAEVSKAYA: Judge, I've rung the bell. It's on the highest order. The subpoena was sent by Sotos, and like I said, it is now within -- I am at the top of that, you know what I mean? There's nothing that we care more about at this point is but to produce these documents.

THE COURT: Okay.

MS. NIKOLAEVSKAYA: So I can tell you that. So the bell was rang by me.

If you set another status date, as I said, and what I also said is, you know, because some documents I have have been in some kind of a flood, they're mangled, so -- but at least we can produce in batches so everybody can receive it and start getting familiar with it.

MR. STARR: Okay. And, Your Honor, given counsel's representation, if we can set a date for production, we'd be happy with that.

THE COURT: Well, she's probably not comfortable giving you a date. She's probably comfortable with a status, right?

MS. NIKOLAEVSKAYA: Yes, Judge. And I understand, like, a lot of law firms have paralegals who can scan it in a day. We're slightly limited on resources.

THE COURT: No, I know, you're slightly limited because people don't even have computers. I get it.

MS. NIKOLAEVSKAYA: So -- but certainly, Judge, I can give you an update. Like I said, we should be able to have a batch of documents in a couple of weeks because we have to scan them and we have to obviously review them first, but I'm comfortable we'll be able to get it out within next two weeks.

THE COURT: Okay. So we've got a soft date of the

next two weeks.

MS. NIKOLAEVSKAYA: Thank you.

THE COURT: Right? And I can even put that in the order.

MS. NIKOLAEVSKAYA: It's going to be partial --

THE COURT: I'm going to have you back -- huh?

MS. NIKOLAEVSKAYA: It's going to be partial.

THE COURT: Well, I'm going to order rolling production for sure.

MS. NIKOLAEVSKAYA: Thank you.

THE COURT: But I'm going to set you for -- I'm going to be out of town, as I said. I'm going to set you for status right after I come back with a report to see where we are to see whether plaintiffs want something more heavy handed.

MS. NIKOLAEVSKAYA: Yes, Judge.

THE COURT: And I'm not yelling at you. I'm just -- just telling you.

MS. NIKOLAEVSKAYA: I understand.

THE COURT: Right.

MR. STARR: And, Your Honor, I just wanted to make note that I think the first date, you mentioned I believe earlier, that we've blocked off for depositions is January 30th. And so, you know, a date that gives all parties time, reasonable amount of time to review the file, I think, is in the best interests of everyone in this case.

THE COURT: Well, that works, right? I mean, two weeks is the 24th, which is the week before January 30th. It's tight, but, you know, everybody who does what you guys do and what I used to do is a deadline junkie anyway, so --

MS. GOLDEN: Well, and there's multiple witnesses that --

THE COURT: Yes.

MS. GOLDEN: -- can be presented for deposition --

THE COURT: Without those.

MS. GOLDEN: -- which we will not need the ESI for or the State's Attorney's file. I mean, there's 145 choices, some of which won't have anything to do with the State's Attorney's Office file.

THE COURT: Okay. This is what I'd like --

MS. GOLDEN: Third-party witnesses.

THE COURT: This is what I'd like to do. And you're standing here, are you standing here as representing the individual defendants, or are you representing the County also as a Rule 45 subpoena recipient?

MS. NIKOLAEVSKAYA: Well, at this point, I'm representing the County as individual defendants, Your Honor, but, like I said, because we have encountered this issue, I have taken it upon myself to look into it, Your Honor, because I don't want to stand here and tell you, well, there's nothing I can do about that --

THE COURT: Right.

MS. NIKOLAEVSKAYA: -- because that would not help anyone.

THE COURT: When did you serve your subpoenas, plaintiffs?

MS. GOLDEN: It was our subpoena.

THE COURT: Your subpoena, okay.

MS. GOLDEN: And it was served probably -- I would be guessing --

THE COURT: November? December? January?

MS. GOLDEN: No, Judge. I would -- here, hold on.

THE COURT: I mean, we were talking about this back in September.

MS. GOLDEN: September 19th, Judge.

THE COURT: September 19th.

Okay. This is what I'm going to say in my order. It's going to say the parties reported on their progress in producing -- in the progress of parties and third parties producing documents.

I know you guys served the subpoena and you're not pushing it right now and you're a co-defendant, but this is what I'd like to say. I'd like to say based upon the report in court, it appears to be reasonable -- it appears that the County reasonably can begin a substantial rolling production of documents called for by the subpoena and have a large

number of those documents produced by the 24th, right? Fair?

MS. NIKOLAEVSKAYA: Fair. I think it's fair.

THE COURT: At the next status hearing, an attorney representing the County as the recipient of the third-party subpoena shall appear.

MS. NIKOLAEVSKAYA: Okay, Judge.

THE COURT: Okay? Just because I don't want to put you in a bad position, but I want to have somebody here, and I'm okay if it's you, too.

MS. NIKOLAEVSKAYA: Okay.

THE COURT: Okay? I mean, but it would be a different hat, and I'm sensitive to the fact the plaintiffs didn't serve the subpoena, co-defendant did. Nobody's moving to enforce it. I get all that. I just want to make sure we're moving forward on this.

MS. NIKOLAEVSKAYA: Yes, Judge.

THE COURT: Okay?

I'm going to set you for status, just FYI, on the 31st at 10:45, okay? I'm probably -- maybe some of these will go away. Unless you have a deposition scheduled for that day, in which case I would move this, okay? And you can inform Brenda about that.

I'm happy to move that if you have a deposition scheduled for that day, but I just would like to find out where we're going on this, okay? If you have a dep scheduled,

I can move it. I can do you -- I can even --

MS. GOLDEN: That's not a date we set aside.

THE COURT: Okay.

MS. SUSLER: Can I just ask when you're away because if we have --

THE COURT: The 17th, I'm leaving the 17th, and I'm away the entire following week.

MS. SUSLER: I'm just asking because if, for some reason, we're not able to agree on who we can depose on the dates we've reserved, we may have to ask for your intervention. Hopefully, we won't need you, but just in case.

THE COURT: No, I'm -- okay. I'm not -- I'm going to be out of the country, so I'm not going to be able to do it. So you're going to have a duty magistrate judge or your district judge, but they're going to all wait for me to come back, okay?

But let me address that frankly, okay?

What do we have at 11:00? We had a detention hearing?

THE CLERK: Today?

THE COURT: Yeah.

THE CLERK: No. This is it for the morning.

THE COURT: Okay. So you guys are just watching? You're not here on a case.

UNIDENTIFIED MALE VOICE: No.

THE COURT: Thank you. Good.

Okay. So I'm taking a little bit more time with you.

Before I get to the deps, let me just make sure I understand what's going on.

So it says the prosecutor defendants have not yet responded to requests for production. Is that part from the subpoena?

MR. STARR: No, that's in conjunction -- well, we served all parties requests for production, and they have not responded to that. I assume that's because of the issues with the documents, but that's outstanding.

THE COURT: Okay. Anything you want me to do about that?

MR. STARR: We haven't filed anything yet, Judge. Like you said, we're trying to play nice here --

THE COURT: Right.

MR. STARR: -- and we're just trying to move this case along.

THE COURT: Right.

MR. STARR: You know, if you want to put a date --

THE COURT: Well, by the 30 -- I'm going to want -- I want to be firm but let you guys do what you need to do because I don't want to take control of your case.

MR. STARR: We would like a date in the order, if possible. I mean, you know --

THE COURT: Right, but you haven't talked about that date before stepping up here, right?

MR. STARR: Right, right.

THE COURT: I mean, I could require you to file in a week a report that states when the prosecutor defendants intend to -- will produce documents in response to the outstanding discovery requests.

Are you waiting for any of the other defendants?

MR. STARR: No.

THE COURT: Okay. So I would say by the 17th then, you all should confer and talk about what's realistic in terms of responses to written discovery.

MR. STARR: That's fine by us.

THE COURT: And also try and drill down any disputes you have, do your Rule 37.2, and then whoever is the -- you know, wants to put that in a motion, put it in a motion.

Hopefully, you'll work out all your problems, we don't need any motion practice, but on the 31st when we talk about discovery, maybe, you know -- I don't know. You may want to see the documents before you see if there's any problem, and you won't have the documents yet. I get it.

But file by the 17th when the County is going to -- you need both a written response to the discovery requests and production of documents, right?

MR. STARR: Correct.

THE COURT: So your report should say when -- if the County has not already responded to plaintiffs' requests for production of documents, file by the 17th a report that says when the County will respond to the requests for production and when the County will produce the documents or, alternatively, begin a rolling production of documents and complete production, all right?

MR. STARR: Yes, Judge.

THE COURT: I just want to get dates.

Okay. There's no other outstanding discovery issue.

MR. STARR: If it's possible, Judge, along the lines of dates, if we could get a date by which the defendants will produce who's available for depositions, I think that would help.

THE COURT: Well, let me go to that now, okay?

MR. STARR: Okay.

THE COURT: There's a minimal amount of help I can give you right now, all right, without sitting down with you and holding everybody's hand.

I understand the rationale of saying let's reserve the 30th and February 4th, 5th, 11th and 13th for deps, we're all available, okay?

Now we have to fill in who's going to be deposed on those dates. There's lots of people to be deposed. There's always going to be a difference of opinion as to who's going

to be deposed first.

Okay. I understand the rationale from Ms. Golden's clients that I have to at least see the State's Attorney file before my guys have to go under oath. I get that.

Maybe plaintiffs say I don't care what it says in there, I still want them to go under oath. I don't know, all right? I can't resolve that right now in terms of -- either as a matter of law or anything else, right?

Also, if you've got a big dispute as to who's going to go on what days, I'm not going to be able -- that's not a bench kind of thing here. I mean, if you get to the point where you really can't agree to stuff, then I need to take off the robe and sit down with you at a conference table on the record, and we've got to go through these hundred people and find out who's going to go when, okay?

Ms. Golden is very familiar with my preference, in cases where people can't work stuff out, to a deposition protocol. She did one in the *Abernathy* case, and I rewrote it to some extent, but there is -- you know, and every one's a little bit different.

But it's how you're going to be able to get these deps scheduled. There's a liaison for one side, a liaison for the other. They have to be when they're on the calendar. They can't come out, absent a court order or agreement of the parties. I'm not sure what we did, but you have that document

in *Abernathy*.

I don't know if I have to go there or not. I might have to go there here because there's so many deps to be taken. I don't mind going there, all right? But I don't have enough information to do that now, and it is reasonable without documents being produced where individuals are being sued personally to say I want to see some documents before I'm deposed. Sometimes that's the plaintiff's point of view, but I can understand how it could go differently.

I'm not going to make that call right now. If I have to make the call, it's not going to be made before January 30th, okay?

So one other way to do it is to try and get people who you can get on those days, not meaningless deps, but deps that you actually can take and move forward with but then continue to try and deal with this.

Talk about whether you need a deposition protocol, right, that says somebody on the plaintiffs' side is a liaison, somebody on the defendants' side. We don't have that one little guy in this case who's not in court or is important but has no money, so -- but, you know, you'd have a couple of defense counsel, but it would be people who then consult. They put it on the calendar. You send that calendar around every week. Everybody knows when the deps are going to be, which you could do it on a weekly basis, one week on, one week

off.  You could do it on days.

I'd put you out for a good 45 days in terms of scheduling depositions if we were going to do that, and that's one way to attack this in a more organized way than -- you know, so I get the -- I understand the dialogue that's going on.  We'd like to take these guys' depositions; no, we're not responding to your email, we're not responding to your phone call.  We don't know who's going to be deposed.  We got these dates.  Are we really going to depose people on these dates or not?

So I get that back-and-forth, and I'm happy to deal with it in any particular way, but I can't do it now.  And so when you say next week if we can't agree, I don't consider that an emergency motion, right?

We've got these dates.  We put them on the calendar a long time ago.  Now we can't agree who's going to go there.  Now we want the judge to decide this.

I probably wouldn't decide it as emergency motion if I was even here.  Instead, I'd go through this process that we're talking about to get there, and I doubt that a duty judge is going to do it either.

Who's your district judge?

And I don't know that Judge Wood would do it either if I wasn't here.  Okay?  So this is the way I think it has to go.

Questions? Concerns?

MR. STARR: No. I'll say from our perspective, we're committed to working together.

THE COURT: Yeah, you got good lawyers here. All across. Nobody is -- nobody is -- nobody has shown me in this case that they're obstructionist.

And based on other cases, I think we've got good lawyers here, and you should work it out. But these are hard things to work out even among good lawyers.

If you've got a hundred depositions to take or 60 or 70 depositions to take at various different places, maybe people out of town, you need to get a system to do it. And, you know, I would encourage you to look -- I mean, Ms. Golden can speak freely, permission to speak freely.

Do you think that kind of thing is helpful, the protocol, or do you push against it just because it's got too much structure?

MS. GOLDEN: No, I loved the way that it worked for us in *Abernathy*. I think it really helped us resolve that case.

I don't think we're -- we had a lot of problems communicating between counsel in that case, and we do not have that problem here. This -- I think it's -- we don't necessarily need to go there, but we -- I mean, everybody understands how that process works and would make -- you know,

ask you to go there if we needed to.

THE COURT: Okay. That's what I mean. I'm not -- you know, if I have to take control of the case, I will, but I really don't want to take control of the case if the lawyers can control it themselves with a little bit of guidance to move it forward like that, okay?

So if you need the help, call out. If not, okay.

So I don't know what's going to happen. I hope some stuff happens on the 30th, 4th, 5th, 11th and 13th. Certainly the 4th, 5th, 11th and 13th is plenty of time to get people on the docket and with these documents being produced, arguably even some of the important people.

And I'm a big fan, big fan, of the bottom down rather than the top up deposition taking. You know. You know, a lot of people say I've got to take the janitor before I can take the CEO, but sometimes taking the CEO means you don't have to take the janitor.

So I'm okay with that, too. There's different -- different strategies on this, okay?

All right. So I've got you on the 31st. Let me summarize where I think we are.

You're going to agree when you're going to get the County's responses and documents by the 17th. You have City documents already other than ESI?

MR. STARR: I believe --

MS. GOLDEN: Yes.

MR. STARR: Yeah, I believe we do, yeah.

MS. SUSLER: But there is a conversation about asking the City to ensure us that they have searched everywhere that we all know the documents are likely to reside.

THE COURT: Okay.

MS. SUSLER: Get that reassurance.

THE COURT: Okay.

MR. STARR: It is referenced in the status report, where we sent a letter to them last week.

THE COURT: I saw that.

And then we've got the County on the 17th, and then I'm encouraging, whatever my language was about trying to get your County documents by the 24th, but I don't think that language has a shell. It just has this is what we're trying to do, right?

Putting that in there for both -- I'm putting that in there also to help you maybe with the people you're talking about. This is what Gilbert said in terms of the County.

And I'd like you then to submit -- I think these are helpful to me, these reports frankly, even short. I would say if you get them filed by the 25th or even the morning of the 28th I would let you slide to.

The 28th is my first day back in the office, and so then I'm going to see you on the 31st. So I'd like to see

what you'd have to say.

MS. GOLDEN: A status report on discovery?

THE COURT: Yeah, a status report on discovery and what's going on and the ESI, too, that you wanted for the 14th, and then I put on the 21st, now moving to the 28th.

MR. STARR: So that's all wrapped into one status report?

THE COURT: I think it should be. Why not?

MR. STARR: Okay. On the 25th?

THE COURT: I did say the 25th. If you want to push to get it on the 25th, fine. I could also say by 10:00 a.m. on the 28th.

Would you rather have that?

MR. STARR: 25th is fine with the plaintiff.

THE COURT: Okay. I'll say the 25th, but if you get it to me on the morning of the 28th, it doesn't matter.

MR. STARR: Okay.

MS. GOLDEN: And I missed something. It's one report on all --

THE COURT: No. Let's keep them separate again, right? They've been separate. Let's do an ESI report and a discovery report.

MS. GOLDEN: And the ESI is the 25th.

THE COURT: And so is the discovery.

MS. GOLDEN: They're both the same.

THE COURT: Yeah.

MS. GOLDEN: Okay.

THE COURT: They're going to be short. They're going to be three-page things, this is what's going on. You know, you might put in there these are the people who are scheduled for deposition on the 5th, the 11th, the 13th, whatever.

These are the -- you know, the documents were produced. They weren't produced, but we've agreed to an extension on this. Just so that I don't -- I could read it and have it before everybody shows up, okay? It's not perfect, but sausage being made, okay?

Are we okay with this? Anything else I have to deal with?

MS. SUSLER: I don't think so.

THE COURT: Good. Thanks. I want to ask you a question.

MS. GOLDEN: Happy new year.

THE COURT: Happy new year to you, too.

(Which were all the proceedings heard.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitations of using a digital-recording system.

*/s/Kathleen M. Fennell*                    *January 27, 2019*
_____          _____
Kathleen M. Fennell                              Date
Official Court Reporter