# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff*, | ) | |
| | ) | Hon. Andrea R. Wood, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | Hon. Sunil R. Harjani, |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff*, | ) | |
| | ) | Hon. Andrea R. Wood, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Hon. Sunil R. Harjani, |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE CITY
OF CHICAGO'S MOTION TO BIFURCATE *MONELL* CLAIMS**

**INTRODUCTION**

Plaintiffs Arturo DeLeon-Reyes and Gabriel Solache spent decades in prison for crimes they did not commit. Their wrongful convictions are part of a now well-established pattern. Dozens of other men suffered the same fate in cases investigated by Defendant Reynaldo Guevara and Chicago Police officers at Area Five, including 19 men who have been exonerated after centuries of wrongful incarceration. Plaintiffs allege these were not isolated incidents. Instead, a common thread runs between them: the policies of the City of Chicago.

The City would like nothing more than to prevent discovery into this common thread. In this case and others concerning Guevara, the City has filed a form motion, asking the Court to exercise its discretion to bifurcate and stay the *Monell* claims, a form of relief highly disfavored in this District. But the Court should not allow the City to sit out cases that concern a deeply troubling scandal in the Chicago Police Department—namely, systematic misconduct by Guevara and his colleagues, a custom of coercing confessions through the use of physical force and psychological coercion, and a decades-long practice of suppressing exculpatory materials in street files. If *Monell* discovery is not permitted in cases like these, it is difficult to imagine when such discovery would ever be appropriate. Bifurcation should be denied for at least six reasons.

First, under established law and contrary to the City's argument, Plaintiffs' *Monell* claims do not depend on whether any individual Defendant is liable. The City knows this because twice recently federal juries have found it liable on the same *Monell* theory of systemically suppressing materials in street files, and that theory is independent of any finding of individual liability.

Second, bifurcation will not save time or resources. On the contrary, it would multiply the work of the Court and the parties, increase costs, and inconvenience witnesses. The *Monell* claims will be litigated regardless of the outcome of the individual case, and so bifurcation will only serve to duplicate the proceedings. That duplication would be particularly inefficient given that much of the

1

evidence relating to *Monell* claims is also relevant to the individual claims. Based on past experience, bifurcation spawns disputes about what is or is not "*Monell* discovery," further wasting time and resources. Moreover, bifurcation has been denied already in two similar Guevara cases concerning wrongful convictions in the years preceding Plaintiffs' wrongful convictions, meaning that discovery from those other cases can be used in this one, reducing any burden on the City.

Third, the City's argument that bifurcation is necessary to avoid prejudice to Defendants is incorrect and is also no reason to bifurcate discovery at this stage. The City identifies no real prejudice it will suffer. With respect to the individuals, most of the *Monell* evidence is admissible against them at trial without any danger of unfair prejudice. Moreover, any concern that they might be prejudiced can be managed with limiting instructions. And even if there were some danger of prejudice, it would not justify bifurcation at the start of the case. On the other hand, Plaintiffs would suffer great prejudice if the City's motion were granted, and that prejudice must be considered.

Fourth, the City's position cannot be adopted because it violates the Seventh Amendment. The City proposes that the Court would oversee discovery, decide dispositive motions, oversee a trial against individual Defendants, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial in each case. But two trials will necessarily require two separate juries to consider the same factual issues. The Seventh Amendment forbids that approach.

Fifth, the City's proposal of a "Limited Consent to Entry of Judgment," pursuant to which the City would deny liability but accept judgment against it if Plaintiffs first establish liability against the individual Defendants, is procedurally improper and it cannot be used to eliminate Plaintiffs' *Monell* claims. The City's proposed consent should be ignored.

Finally, there are important non-monetary reasons for the *Monell* claims to proceed. The City contends that once Plaintiffs have been awarded damages on their claims against the individual Defendants, there will be nothing more for them to obtain. But that is not the case. A verdict on the

2

*Monell* claims is an independent basis of liability that supports a judgment, and so the *Monell* claims have value for that reason as well. In addition, the City's policies at issue have been and remain terribly broken. Those policies, which have persisted well into the 21st Century, have imposed a cost in lives lost to wrongful incarceration that is staggering and that demands reform. Plaintiffs bring these suits in part to ensure that meaningful reforms take place.

## BACKGROUND

Plaintiffs were wrongly convicted of the 1998 double-murder of Mariano and Jacinta Soto, and the abduction of their infant daughter and 3-year-old son. No. 18 C 1028, Doc. 1 ¶¶ 1-14. They were framed by Guevara and his colleagues, who suppressed exculpatory evidence, fabricated evidence, and conducted torturous interrogations, extracting false confessions. *Id.* ¶¶ 50-78.

Guevara has pleaded his Fifth Amendment right not to incriminate himself in response to most questions about his misconduct during the Soto investigation. *Id.* ¶ 12. A Cook County judge considering whether to grant Plaintiffs relief characterized Guevara's testimony as "bald faced lies," and determined that he had "eliminated any possibility of [] being considered a credible witness in any proceeding." *Id.* Thereafter, the State's Attorney dropped all charges against Plaintiffs, ending nearly 20 years of wrongful incarceration. *Id.* ¶ 13.

Plaintiffs' wrongful convictions were also caused by the City's policies. *Id.* ¶¶ 95-122, 170-182. The violent and coercive interrogations committed by the Defendants are examples of a practice of torture, violence, and coercion endemic in Chicago Police stations, where innocent individuals were subjected to illegal tactics in order to obtain false confessions. *Id.* ¶¶ 97-98, 170-182. At all times that they fabricated and suppressed evidence, the individual Defendants acted pursuant to City policy. *Id.* In addition, the City failed to train, supervise, and discipline its officers—particularly Guevara, who engaged in a pattern of misconduct resulting in at least 19 wrongful convictions. *Id.* ¶¶ 107-113, 116-122.

3

Importantly here, the City had a policy under which important investigatory materials were kept in street files—a parallel system of clandestine files within the Chicago Police Department—which were never transmitted to state prosecutors, criminal defendants, or their attorneys. *Id.* ¶¶ 100-106. The street-files policy was not the product of individual acts of misconduct, it was a City-wide system of evidence suppression, which lasted from at least the early 1980s through the late 2000s. *Id.* Three federal juries have found the City liable for its street-files policy, in the years before, during, and after Plaintiffs' wrongful convictions. *Rivera v. Guevara*, No. 12 C 4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. Chicago*, 2017 WL 4553411, at *3-4 (N.D. Ill. Oct. 12, 2017); *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988).

## DISCUSSION

This Court has discretion to decide claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b); *Krocka v. Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999). Bifurcation is the exception, not the rule, and it should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); FED. R. CIV. P. 42(b), advisory cmts. ("[S]eparation of issues for trial is not to be routinely ordered[.]"); 7 FEDERAL PRACTICE & PROCEDURE § 2388 (2016); *A.L. Hansen Mfg. v. Bauer Products*, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004) ("[T]he decision to bifurcate centers on a balance of equities. However, this balance is weighted against bifurcation."). In considering bifurcation, the court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620.

Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored," *Awalt v. Marketti*, 2014

4

WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012). That is particularly so in cases of this type, where bifurcation is routinely denied.[1] The City has provided no justification for bifurcation.

**I. THE CITY'S LIABILITY DOES NOT DEPEND ON INDIVIDUAL LIABILITY, AND TRIALS ON THE *MONELL* CLAIMS WILL CERTAINLY TAKE PLACE**

The City argues that its own liability depends on a jury first finding individual liability. Dkt. 163 at 5-9. That is incorrect. "The actual rule," the Seventh Circuit said in *Thomas*, is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." 604 F.3d 293, 305 (7th Cir. 2010); *see also Swanigan v. Chicago*, 775 F.3d 953, 962 (7th Cir. 2015). Judges in this District analyze the propriety of bifurcation bearing in mind that a municipal policy can cause a constitutional deprivation even if a jury finds the individual officers not liable. *Bonds*, 2018 WL 1316720, at *4-5; *Pickett v. Dart*, 2014 WL919673 (N.D. Ill. Mar. 10, 2014); *Martinez*, 2011 WL 4686438, at *1; *Cage*, 2010 WL 3613981, at *1. Cases like these, in which a jury could find a policy caused a constitutional deprivation without finding misconduct by a particular officer, are different in kind from cases where municipal liability is premised on a particular officer's use of force, such as *Los Angeles v. Heller*, 475 U.S. 706 (1986).

The City contends that a *Monell* verdict is impossible without individual liability, but their brief does not explain why a verdict against the City would *necessarily* be inconsistent with a verdict in

---

[1] The City cites a couple of cases where bifurcation was granted, Dkt. 164 at 4-5, but it omits that the extreme weight of authority is against bifurcation. *Baskins v. Gilmore*, No. 17 C7566, Dkt. 135 (N.D. Ill. Mar. 25, 2019); *McIntosh v. Chicago*, No. 17 C 6357, Dkt. 101 (N.D. Ill. Feb. 13, 2019); *Brent-Bell v. Chicago*, No. 17 C 1099, Dkt. 140 (N.D. Ill. Feb. 5, 2019); *Prince v. Kato*, No. 18 C 2952, Dkt. 65 (N.D. Ill. Nov. 14, 2018); *Sierra v. Guevara*, No. 18 C. 3029, Dkt. 84 (N.D. Ill. Nov. 7, 2018); *Smith v. Burge*, No. 16 C 3404, Dkt. 205 (N.D. Ill. Aug. 9, 2018); *Rivera v. Guevara*, No. 12 C 4428, Dkt. 443 (N.D. Ill. May 18, 2018); *Hood v. Chicago*, No. 16 C 1970, Dkt. 86 (N.D. Ill. Jan. 9, 2017); *Estate of Loury*, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017); *Estate of McIntosh v. Chicago*, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015); *King v. Evans*, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Giles v. Ludwig*, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013); *Allison v. Gallagher*, 2012 WL 4760863, at *2 (N.D. Ill. Oct. 5, 2012); *Awalt*, 2012 WL 1161500; *Martinez v. Cook County*, 2011 WL 4686438, at *3-4 (N.D. Ill. Oct. 4, 2011); *Carter v. Dart*, 2011 WL 1466599, at *2-5 (N.D. Ill. Apr.18, 2011); *Clarett v. Suroviak*, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011); *Ott v. Milwaukee*, 2010 WL 5095305, at *2 (E.D. Wis. Dec. 8, 2010); *Cage v. Chicago*, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010); *Terry v. Cook County*, 2010 WL 2720754, at *1-3 (N.D. Ill. July 8, 2010); *Bell v. Chicago*, 2010 WL 432310, at *2-4 (N.D. Ill. Feb.3, 2010); *Bradley v. Chicago*, 2010 WL 432313 (N.D. Ill. Feb.3, 2010).

5

favor of the individuals. *Carter*, 2011 WL 1466599, at *3 ("[T]he fact that Plaintiff's *Monell* claim and his claims against the individual Defendants share a common element . . . is not sufficient to justify bifurcation."). Instead, the City focuses on Plaintiff's *Monell* theories that are premised on a finding of individual liability, while completely ignoring their *Monell* theories that are not. Dkt. 163 at 7-8. This is insufficient to justify bifurcation.

There is no doubt that *Monell* liability is possible here without a finding of individual liability. The City knows this is true because the lawyers representing the City here lost a *Monell* verdict last year in *Rivera*, which presented the same *Monell* street-files theory at issue here. The due-process verdict against the City in *Rivera* for systemic suppression of files was independent of the jury's findings with respect to Guevara and other individual defendants in that case. The same is true of the *Monell* street-files verdict against the City in *Fields*, 2017 WL 4553411, at *3-4.

And the same would be true in these cases. A verdict for Plaintiffs on their *Monell* theories that the City's file-keeping system prevented transmission of exculpatory investigative materials to the criminal justice system would be entirely consistent with a verdict that each individual Defendant did not personally suppress evidence. For example, a jury might find that the individuals put items of evidence where they were supposed to in Chicago Police Department files, but that the City had no mechanism for ensuring those files got turned over to Plaintiffs or attorneys involved in his criminal prosecution. In *Rivera* and *Fields*, the plaintiffs presented ample evidence showing how this happened as a matter of policy, but one example illustrates the point: The City responded to requests for documents and subpoenas through the so-called Subpoena Service Unit, which sometimes would (but sometimes would not) gather investigative materials from the detective Areas and other units of the Chicago Police Department where files were kept. No written policies governed that unit, and the civilian personnel working there received no training. As a result, one systemic problem in the relevant time frame was that the City's responses to subpoenas sent for

6

records excluded important evidence. The jury might find this City policy prevented Plaintiffs from receiving important investigative materials, even if individual Defendants did not suppress evidence.

*Monell* liability does not depend on individual liability, a verdict for the individuals will not necessarily dispose of the *Monell* claims, and *Monell* trials will be necessary no matter what. Judge Leinenweber recently heard argument from the City about bifurcating *Monell* claims in *McIntosh*—a wrongful conviction case involving the street-files *Monell* claim—and he denied bifurcation, reasoning, "It just seems to me that we're going to end up with *Monell* discovery anyway, so you might as well . . . get working on it." Ex. A (Transcript of *McIntosh* Hearing) at 19. The same is true here.[2] The relationship between the individual and municipal claims weighs against bifurcation.[3]

---

[2] Plaintiffs' street-files theories make this case different than those *Monell* cases cited by the City, such as *Veal v. Kachiroubas*, 2014 WL 321708, at *4 (N.D. Ill. Jan. 29, 2014), where the plaintiff alleged he was wrongly convicted solely because of a false confession; or *Clarett*, No. 09 C 6918, 2011 WL 37838, at *1 (N.D. Ill. Jan. 3, 2011), which concerned a traffic stop and alleged false arrest (and actually denied the motion to bifurcate). As *Heller* discussed in the excessive force context, 475 U.S. at 799, a claim of municipal liability that depends entirely on an act of an individual cannot proceed in the absence of individual liability.

In addition, while the City emphasizes the recent grant of bifurcation in *Montanez & Serrano v. Chicago*, Nos. 17 C 2869 & 4560 (N.D. Ill. Mar. 19, 2019), that ruling was based on a factual conclusion that the plaintiffs' claims against the City were entirely dependent on a jury finding the individual defendants liable, as well as other factors not present in this case. Dkt. 163-1, Ex. 6 at 5-7. The same factual conclusion is not warranted here, particularly given the allegations in Plaintiffs' complaints. Moreover, that factual conclusion in *Montanez & Serrano* represents a misunderstanding of the street-files theory. In that case (as in *Andersen v. Chicago*, 2016 WL 7240765, at *3-4 (N.D. Ill. Dec. 14, 2016), and *Williams v. Chicago*, 2018 WL 2561014, *11-12 (N.D. Ill. June 1, 2018)), courts decided that success on a street-files theory depended on an individual defendant creating and suppressing a street file. That misses the point. The City's street-files policy concerned failures *to transmit* street files to the criminal justice system, separate and apart from individual conduct. Police files are of course created by individuals, but the constitution is violated when those files are not turned over. In Chicago, street files were not handed over because the City policy prevented that from happening.

[3] Arguments against bifurcation are sometimes based on a contention that the City can still be liable for constitutional violations caused by municipal policies even if qualified immunity is granted to individuals. Though that argument is not necessary to deny bifurcation here, it has force. The City argues the individual Defendants are not entitled to immunity. Dkt. 163 at 8. But the same individuals before the Court here routinely claim immunity in wrongful conviction cases. *E.g.*, *Rivera v. Guevara*, 2018 WL 2183998, at *31; and the fact that the City says its officers will likely lose their claim of immunity is meaningless, unless the individuals actually disclaim immunity. If immunity is available to the individuals, then that too is a way that the City might be liable even if the individuals are not. *Thomas*, 604 F.3d at 305; *Bell*, 2010 WL 432310, at *3; *Martinez*, 2011 WL 4686438, at *2; *Cage*, 2010 WL 3613981, at *1; *Bradley*, 2010 WL 432313, at *3.

## II. BIFURCATION WILL DUPLICATE THE PROCEEDINGS, WASTE RESOURCES, AND INCONVENIENCE WITNESSES

Because the *Monell* claims in each of Plaintiffs' cases will be tried no matter what, the City's proposal means there would be two consecutive proceedings in each case. That would multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses—all with very little benefit. These factors also weigh against bifurcation.

### A. The City's Proposal Would Massively Waste Resources

If the proposed bifurcation were allowed, the parties would engage in two separate rounds of discovery—the first to develop the record necessary for the individual case, and the second to supplement that record with evidence necessary for the *Monell* claims. That would mean two depositions of Defendants and most other witnesses (one about the individual case, and a second about City policies and practices). There would be two rounds of written discovery. Two rounds of Rule 30(b)(6) depositions. Two rounds of expert reports, discovery, and depositions. And during these rounds of discovery there would be motion practice as disputes arose between the parties.

Following each round of discovery, there would be dispositive motions for the Court to resolve, which might need to be resolved separately, given that there are two Plaintiffs. In each case, there would be two rounds of briefing on *Daubert* motions, two separate filings of motions *in limine*, two pretrial orders, and two jury instruction conferences. All of this double (or quadruple) work would be avoided if the cases were litigated without bifurcation.

Perhaps most importantly, Defendants' plan would require two trials in each case. This would impose a huge burden on the Court, on witnesses, and on the parties. Each witness would be called twice in each case—once to talk about the facts of the individual case, and a second time to talk about the policies of the City and their impact on the case. Experts would have to fly in twice to testify. Exhibits would be introduced against the individual Defendants and then re-introduced against the City. There would be two rounds of opening statements and two rounds of closing

arguments. Again, each trial would bring another round of motion practice. Courts have decided in these circumstances that bifurcation makes little sense. *Cadiz v. Kruger*, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007); *Awalt*, 2012 WL 1161500, at *10; *Bell*, 2010 WL 432310, at *4.

Moreover, this massive duplication of proceedings and the attendant years-long delay in resolving the case would have occurred even though much of the evidence relevant to the *Monell* theories is admissible against the individual Defendants; and much of the evidence relevant to the individual claims at the first trial must also be presented at the second *Monell* trial. On the former point, evidence of a municipal policy is probative of whether individual Defendants engaged in a course of conduct consistent with those policies. *Coleman v. Peoria*, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcation because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices"). On the latter point, *Monell* requires proof that a policy was the moving force behind the constitutional violation, *Thomas*, 604 F.3d at 306, and so the *Monell* trial will require evidence about the underlying crimes, investigation, and wrongful convictions, *Houskins v. Sheahan,* 549 F.3d 480, 496 (7th Cir. 2008) (affirming decision not to bifurcate claims because they entailed "an overlap in the facts, evidence, and witnesses required").

Relatedly, the overlap between evidence relevant to claims against the individual Defendants and evidence relevant to *Monell* would spawn disputes that would not exist if bifurcation were denied. In past cases, following bifurcation, defendants have refused to provide discovery on grounds that it relates solely to *Monell* theories. When Judge Lee denied a nearly identical motion to bifurcate in *Sierra v. Guevara*, No. 18 C 3029 (N.D. Ill), he noted: "[I]n my experience, bifurcating *Monell* discovery only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery." Ex. B (Transcript of *Sierra* Hearing) at 4-5; *see also Ott*, 2010 WL 5095305, at *3 (denying bifurcation because it was "likely that bifurcating

9

discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims"). Bifurcation (or even phased discovery) in Plaintiffs' cases will "add unnecessary complexity and confusion to the discovery process" and where "discovery disputes are brewing." *Terry*, 2010 WL 2720754, at *3.

The City's proposal would increase the burden on the Court and parties, multiply costs of litigation, and inconvenience witnesses. These burdens would be imposed without any benefit.

### B. The City's Concerns About Burden Are Misplaced

The City's concerns about the burden of *Monell* discovery are misplaced. First, these concerns fall away once it is clear the *Monell* claims will be tried no matter what, such that the choice is between trying them together with other claims or in the separate proceedings described above.

Second, the City's judicial-economy argument is nothing more than an argument that *Monell* discovery is time consuming and expensive for the City. Dkt. 163 at 9-13. The City refers to the *Rivera* litigation (wrongly saying that the *Monell* discovery there was for naught and burying in a footnote that the City was found liable at trial, *id.* at 11 & n.4), and it complains that discovery was burdensome and trial was long. But the expense of defending against weighty municipal liability theories—theories on which the City has twice been found liable in wrongful conviction cases in the last two years—is not a justification for bifurcation. *Awalt*, 2012 WL 1161500, at *10 ("[T]he (often times extraordinary) costs associated with bringing a claim for municipal liability should not sway the Courts' consideration too far."). Moreover, properly analyzed, bifurcation will most likely increase the cost of prosecuting and defending the case as a whole. *Clipco v. Ignite Design*, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005).

Third, the City argues that eliminating the *Monell* claims will conserve judicial resources because adjudication of discovery, motions, and a trial of those claims will no longer be necessary. Dkt. 163 at 12. Not only is that flatly incorrect, for the reasons explained, but it is also a perverse

10

argument that a party should be able to achieve *de facto* dismissal of the claims against it, by way of a motion to bifurcate, by suggesting that it is burdensome for our court system to adjudicate those claims. Particularly so under a federal statute designed to ensure that there is municipal accountability for violations of civil rights. *Owen v. Independence*, 445 U.S. 622 (1980).

Fourth, the City overstates the burden of discovery necessary to try the *Monell* claims. Dkt. 163 at 10-12. Much of what the City will have to produce—whether written policies, Rule 30(b)(6) witnesses, employee records, or files—has been produced in other cases, including *Rivera* and *Fields*. *See Cadle*, 2015 WL 6742070, at *2 ("[T]he Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."). There is no doubt materials from other cases can be used here. Contrary to the City's suggestion, Dkt. 163 at 11, the policies at issue did not change between those the City was found liable for in *Fields* and *Rivera* and the time period relevant to these cases. In fact, the street-files practice started more than a decade before Plaintiffs' wrongful convictions and continued until at least a decade after. There is zero evidence of any intervening policy change.

Moreover, the City is conducting *Monell* discovery in multiple Guevara cases simultaneously: *Rivera*, where *Monell* discovery is complete; *Sierra*, where a motion to bifurcate was denied; *Gomez v. Guevara*, No. 18 C 3335 (N.D. Ill.), where a motion is pending; *Almodovar & Negron v. Guevara*, Nos. 18 C 2341 & 18 C 2701 (N.D. Ill.); and *Maysonet v. Guevara*, No. 18 C 2342 (N.D. Ill.). These cases all concern similar *Monell* claims, meaning that the City's burden discovery will be divided among many cases.[4] More generally, extensive discovery into Guevara and City polices from other post-conviction and civil actions has already been produced in these cases.

---

[4] For example, many of the Area Five homicide files and complaint register files that Plaintiffs seek in these cases have been produced in *Rivera* or would be produced in these pending cases anyway, covering almost the entire relevant time frame. Plaintiffs estimate that, given discovery in other cases, the City would likely have to produce just three years of homicide files—those from 1996 through 1998—in these two cases. Files from earlier years will have been produced in *Rivera*, *Sierra*, and *Gomez* (barring bifurcation there).

Fifth, to the extent that the City complains about the breadth of Plaintiffs' *Monell* discovery requests, that does not justify bifurcation. Plaintiffs have proposed compromises to obtain the discovery necessary to prove their claims. Ex. C (Correspondence). If a compromise is not reached, then the appropriate scope of discovery is an issue that should be resolved by the normal procedures imposed by the Rules, and not by eliminating the *Monell* claims. *Carter*, 2011 WL 1466599, at *5 (declining to bifurcate because "[t]o the extent that Plaintiff's *Monell* discovery requests are overly broad or would impose undue burden and expense, the court can tailor them as necessary").

The City's contention that *Monell* discovery will create unnecessary burden is wrong on two counts. It is wrong because the burden is necessary, as *Monell* theories will be tried no matter what. And it is also wrong because that burden is not as great as the City contends. *Cadiz*, 2007 WL 4293976, at *3 (if additional burden of discovery on a *Monell* claim was sufficient to require bifurcation, "courts always would bifurcate *Monell* claims (but they do not do so)").

## III. THE BALANCE OF PREJUDICE WEIGHS AGAINST BIFURCATION

The City also argues that without bifurcation, the Defendants will be prejudiced at trial. Dkt. 163 at 14-15. This argument is without merit and provides no justification for bifurcation. The only potential prejudice is to Plaintiffs if the *Monell* claims are bifurcated.

The argument that *Monell* evidence will prejudice the individual Defendants at trial should be rejected. As discussed already, a substantial portion of the *Monell* evidence will be directly relevant to Plaintiffs' claims against the individuals, and it is therefore not unfairly prejudicial at all. Moreover, even if there were a concern about prejudice to the individual Defendants at trial, that would not justify bifurcation. Instead, limiting instructions are the established mechanism for managing prejudice. FED. R. EVID. 105 (directing district courts to provide instructions to the jury "restrict[ing] the evidence to its proper scope"); *U.S. v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014); *McLaughlin v. State Farm*, 30 F.3d 861, 870-71 (7th Cir. 1994); *Awalt*, 2014 WL 1161500, at *13.

12

The City argues it will be unfairly prejudiced without bifurcation because it recently lost the trial in *Rivera*. Dkt. 163 at 15. Specifically, the City contends it presented a hurried defense in *Rivera*; it faced lots of *Monell* evidence; and it spent only 25 minutes on closing arguments. As result, the City concludes, it lost. *Id.* This argument is impossible to understand. First, the City lost the *Monell* claims in *Rivera* because the evidence that its policies caused violations of Rivera's rights was overwhelming. Second, even supposing the City was correct in its characterization, it cannot seriously be suggesting that because it recently lost a trial bifurcation is warranted the next time around. There is nothing *unfairly* prejudicial about losing. This argument should be rejected.

Finally, any prejudice avoided by bifurcation must be weighed against prejudice to Plaintiffs. *Houseman*, 171 F.3d at 1121. Here the only truly unfair prejudice is that which Plaintiffs would suffer if bifurcation were granted. First, because the "claims asserted by Plaintiff[s] are interwoven . . . it would be an unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials." *Ratliff v. Chicago*, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012). Second, bifurcation would cause long delays in the resolution of Plaintiffs' cases, and it would drive up the cost of the litigation. *Clipco*, 2005 WL 2861032, at *3; *Terry*, 2010 WL 2720754, at *2.

The risk of unfair prejudice to Defendants is extremely low, but the prejudice to Plaintiffs from bifurcation is obvious and pronounced. The balance of equities favors a unitary proceeding.

## IV. BIFURCATION WOULD VIOLATE THE SEVENTH AMENDMENT

In addition, the City's proposal would require two separate trials, in front of two separate juries, which would each consider the same issues. Both juries would be required to consider whether and how each Plaintiff's constitutional rights were violated by the suppression of evidence—the first to assess whether the individual Defendants violated their right to due process, and the second to assess whether the City's policies were the cause. The Seventh Amendment prohibits dividing issues in way that requires a second jury to reexamine an issue decided by the first.

13

*Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *see also Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996); 9A FEDERAL PRACTICE AND PROCEDURE § 2391 (2016). The City's proposal would therefore violate the Seventh Amendment as well.

## V.     THE "LIMITED CONSENT TO ENTRY OF JUDGMENT" IS IMPROPER

In an attempt to avoid the problems bifurcation creates, the City attaches what it calls a "Limited Consent to Entry of Judgment" to its motion, by which it states it would accept a judgment against it if the individual Defendants were found liable. Dkt. 163 at 9, 14 & Ex. 7. As the Seventh Circuit has observed, this so-called "consent" is not authorized by the Federal Rules, and it is procedurally deficient. *Swanigan*, 775 F.3d at 959-62. It is not a Rule 68 offer of judgment, because it does not satisfy Plaintiffs' demands. *Id.* It is not a Rule 16 stipulation agreed upon by the parties, both because it does not stipulate to any facts and because Plaintiffs reject it. Finally, it is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). As a result, the Court should disregard the City's proposed consent entirely.

## VI.    OTHER STRONG INTERESTS WEIGH AGAINST BIFURCATION

Lastly, Plaintiffs have other strong interests that weigh against bifurcation. For starters, the City contends that Plaintiffs have nothing to gain from a verdict against the City if they first succeed against the individual Defendants. Dkt. 163 at 13. But that is not so. A *Monell* verdict would independently support a judgment, even if the court of appeals reversed on individual liability, for example. Moreover, the City's argument cannot be countenanced because it amounts to an assertion that whenever a plaintiff can recover compensatory damages from an individual Defendant (or that Defendant's indemnitor), the potential for municipal liability should be erased. *Monell* decided that municipalities are liable only for policies; it did not decide they should never be liable at all.

Moreover, Plaintiffs have strong non-economic interest in preventing future constitutional violations, particularly wrongful convictions. Deterrence of constitutional misconduct is a fundamental purpose of section 1983. *Owen*, 445 U.S. at 627 ("[Section 1983] was intended not only to provide compensation to victims of past abuses, but to serve as a deterrent against future constitutional deprivations[.]"); *see also Monterey v. Del Monte Dunes*, 526 U.S. 687, 727 (1999); *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights." *Swanigan*, 775 F.3d at 962; *Medina v. Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2000). These cases concern wrongful convictions caused by City policies that deprived countless men of fair trials and allowed dangerous officers like Guevara to terrorize the community with impunity. The stakes in a civil rights lawsuit will rarely be higher than they are here, and the *Monell* claims at issue are of profound importance to future institutional reform. Courts have recognized that lawsuits like this "can be distinguished from other lawsuits against the City in which district courts have bifurcated *Monell* claims." *Smith*, No. 16 C 3404, Dkt. 205, at 2. The strong non-economic objectives of Plaintiffs' cases also weigh against bifurcation.

## CONCLUSION

The City cannot avoid litigation over its role in the misconduct alleged. It is responsible, as much as the other Defendants, for Plaintiffs' wrongful convictions. Plaintiff is entitled to discovery and a trial against the City. The City's motion should be denied.

RESPECTFULLY SUBMITTED,

| | |
|---|---|
| /s/ Steven Art | /s/ Ben Elson |
| *Attorneys for Arturo DeLeon-Reyes* | *Attorneys for Gabriel Solache* |
| Jon Loevy | Jan Susler |
| Anand Swaminathan | John L. Stainthorp |
| Steven Art | Ben H. Elson |
| Rachel Brady | People's Law Office |
| Sean Starr | 1180 N. Milwaukee Ave., 3rd Fl. |
| Loevy & Loevy | Chicago, IL 60642 |
| 311 N. Aberdeen, 3rd Fl. | (773) 235-0070 |
| Chicago, IL 60607 | |
| (312) 243-5900 | |
| steve@loevy.com | |

# CERTIFICATE OF SERVICE

I, Steven Art, an attorney, hereby certify that on April 3, 2019, I filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO THE CITY OF CHICAGO'S MOTION TO BIFURCATE *MONELL* CLAIMS using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Steven Art
*One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steven Art
Rachel Brady
Sean Starr
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900
steve@loevy.com