**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff,* | ) | |
| | ) | Hon. Andrea R. Wood, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.,* | ) | Hon. Sunil R. Harjani, |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff,* | ) | |
| | ) | Hon. Andrea R. Wood, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.,* | ) | Hon. Sunil R. Harjani, |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE CITY**
**OF CHICAGO'S MOTION TO BIFURCATE *MONELL* CLAIMS**

# EXHIBIT A

1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3   NORMAN McINTOSH,                    )
                                         )
 4              Plaintiff,               )
                                         )
 5              v.                       )  No. 17 CV 06357
                                         )
 6   CITY OF CHICAGO, et al.,            )  Chicago, Illinois
                                         )  February 13, 2019
 7              Defendants.              )  9:05 a.m.

 8                   TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE HARRY D. LEINENWEBER
 9
     APPEARANCES:
10
     For the Plaintiff:         LOEVY & LOEVY
11                              BY:  MR. ANAND SWAMINATHAN
                                311 North Aberdeen Street, Suite 300
12                              Chicago, Illinois 60607
                                (312) 243-5900
13
     For Defendant City:        REITER BURNS, LLP
14                              BY:  MR. DANIEL M. NOLAND
                                311 South Wacker Drive, Suite 5200
15                              Chicago, Illinois 60606
                                (312) 982-0090
16
     For Defendant Brannigan:   MR. T. ANDREW HORVAT
17                              Cook County State's Attorney's
                                Office
18                              50 West Washington Street, Suite 500
                                Chicago, Illinois 60601
19                              (312) 603-3362

20   For Defendant officers:    THE SOTOS LAW FIRM, P.C.
                                BY:  MR. JOSEPH M. POLICK
21                              141 West Jackson Boulevard, #1240A
                                Chicago, Illinois 60604
22                              (630) 735-3300

23   Court Reporter:          Judith A. Walsh, CSR, RDR, F/CRR
                              Official Court Reporter
24                            219 S. Dearborn Street, Room 1944
                              Chicago, Illinois 60604
25                            (312) 702-8865
                              judith_walsh@ilnd.uscourts.gov
```

1     (Proceedings heard in open court:)

2          THE CLERK:  17 C 6357, McIntosh versus City of

3     Chicago.

4          MR. NOLAND:  Good morning, Judge.  Dan Noland on

5     behalf of the City and the movant on the motion to bifurcate

6     which we're here on the continued motion to bifurcate.

7          MR. HORVAT:  Good morning, your Honor.  Andrew Horvat

8     on behalf of defendant Brannigan.

9          MR. SWAMINATHAN:  Anand Swaminathan on behalf of the

10    plaintiff, Norman McIntosh.

11         THE COURT:  This is here for status.

12         MR. NOLAND:  Right, Judge.  So we had -- about a

13    month ago, we had appeared on our motion to bifurcate.  We had

14    a relatively lengthy discussion with the Court about that.  It

15    was our position that the case should be bifurcated, the

16    City's position, on the street files claim because there's no

17    merit to the underlying claim.

18         You may remember, we showed you the pieces of paper

19    attached to our motion to bifurcate which the plaintiffs are

20    claiming were withheld and they're irrelevant.  So our

21    position on behalf of the City was, why would we do all the

22    street file discovery when it's more than likely the summary

23    judgment is going to be granted on that one.

24         The Court seemed to indicate at that time that it was

25    okay for the street files *Monell* case to go forward because

1    that's a little more discrete than the other *Monell* theory

2    that I'm about to get to in a second, and that is this failure

3    to discipline theory.  So we just don't think this is a

4    failure to discipline case.  The plaintiff's original theory

5    was regardless of the type of misconduct against an officer,

6    it's relevant to their *Monell* claim because it would

7    embolden --

8                THE COURT:  We have an additional --

9                MR. POLICK:  Sorry, Judge.  Joseph Polick on behalf

10   of the individual defendants.  I apologize for my tardiness.

11               MR. NOLAND:  (Continuing) -- because it would

12   embolden officers in general to commit misconduct.

13               So for instance, in this case, one of the detective

14   defendants is Joe Frugoli.  Frugoli, you may have remembered

15   from the newspapers, he had an alcohol issue.  He, while drunk

16   and off duty, drove into a couple of young adults and killed

17   them.

18               And so the plaintiff would, you know, apparently

19   include that within this case which is a lineup case.  The

20   plaintiff's allegation is that there's three witnesses who

21   recanted their identifications -- it's a 2001 case -- of the

22   plaintiff as the offender in this murder.  So our point to the

23   Court in our motion to bifurcate, it's way too broad.  It's

24   unlimited in scope.

25               And the Court seemed to agree with that concept, so

1    you ordered the plaintiff to narrow and file an amended

2    complaint relative to the failure to discipline claim.

3         Plaintiff then filed a notice about a week ago with

4    the Court.  And then we filed a response last night on this

5    topic.  The plaintiff is suggesting that they can limit their

6    failure to discipline claim to where officers lied or

7    manipulated witnesses or coerced suspects even though there's

8    no confession or allegation of coercing a suspect in this

9    case, coercing witnesses and some other -- and withholding

10   exculpatory information.

11        So we're here on the status of that today.  So in our

12   response, it's our position that plaintiff is still -- this

13   claim is still too broad and the discovery necessary to

14   litigate it, the claim, is still -- would take so much time

15   that it would overwhelm the underlying case.  And I can

16   explain a little bit about why it would take so long if

17   that -- if the Court is interested.

18        The plaintiffs, one of their requests would be to ask

19   for five years' worth of CRs of all the detectives in Area 1

20   about a certain -- on certain categories of CRs such as lying

21   or fabricating evidence or withholding evidence or, I guess,

22   coercing suspects even though that has nothing to do with this

23   case.

24        For us to -- the CPD to do that, it would be

25   burdensome.  First, they'd have to get a roster or they'd have

1    to figure out who the detectives were who came through Area 1

2    from '97 to 2001.  There is no yearbook.  There's no roster.

3    So we've got -- that would take a lot of investigation,

4    computer work, checking lists to figure out even who those

5    detectives were.

6            The next thing we'd have to do is we'd have to -- or

7    the CPD would have to check the various computer databases to

8    make sure that they can get all the CRs or identify the

9    complaint registers, the complaints against these detectives.

10           Now, the complaints, there isn't really a good

11   category to say, okay, this category goes to fabrication of

12   evidence, this category goes to withholding evidence.  So the

13   CPD and then us would have to pull those.  They'd have to pull

14   those CRs.  They're all in paper form at a dusty warehouse at

15   39th and Michigan.  They'd have to copy them.  They'd have to

16   give them to us.  We'd have to pour through them to see if

17   they have any relevance to the case.  We'd have to then redact

18   them which takes a ton of time, too.

19           THE COURT:  Why don't you give him a key to the

20   warehouse and tell him to go and --

21           MR. SWAMINATHAN:  I'd be happy to do it.

22           MR. NOLAND:  I'm sure that the plaintiff's firm would

23   love to have that but, Judge, of course, these are sensitive

24   law enforcement records, and the CPD would -- I think they'd

25   fire me.

1    MR. SWAMINATHAN:  So let me --

2    MR. NOLAND:  So then we'd have to get that to them.

3    So then the plaintiffs have that.  Then they'd need to do a

4    qualitative analysis to see whether or not any investigation

5    of these other unrelated cases should have been sustained.  So

6    if the plaintiff claims, all right -- or that were poorly

7    investigated, then we take a look at that and say, you know

8    what, it shouldn't have been sustained or it was a false

9    allegation, and we probably didn't sustain it.  And maybe we

10   need to interview the witnesses from that alleged -- that

11   case, and then there's -- it just engulfs the whole thing.

12        And then the kicker is, this case has got 14

13   defendants.  It's, what, 15 years, I think, reverse conviction

14   case that has all of the complexities involved.  We've already

15   got a street files claim that's going to take discovery as

16   well as *Monell* claim.

17        So the -- it's just going to engulf the case, and

18   then right now, we have a discovery cutoff of late April.

19   We've estimated in our papers this would take nine to 12

20   months to do all this work, and it may not even be that short.

21        So, you know, for all those reasons, Judge, we do

22   think this is a fishing expedition.  This isn't the type of --

23   this isn't a Florida case, the Frugoli case I just mentioned

24   where it's more of a narrowed *Monell* claim where we can figure

25   out, okay, yes, the CPD should have fired Frugoli earlier and

1   because they didn't because of alcohol-related reasons, maybe

2   there's a claim there.

3          This isn't that case.  They're fishing for something

4   on these officers or others to try to support that.  When it

5   really comes down to it, it's a lineup case.  The three kids

6   identified the plaintiff, and now that they say that they

7   didn't.  And so we just don't think that this -- this just

8   isn't a *Monell* case on failure to discipline, Judge.

9          MR. SWAMINATHAN:  So let me address this because I

10  think we're ignoring the context in which we're before you

11  today.  They filed a motion to bifurcate.  We said we'd like a

12  chance to respond to that in writing.  You said, let's hear

13  some argument and understand what's going on.  So we argued it

14  extensively as he noted.

15         You said at that last conference, "Look, I'm not

16  inclined to bifurcate *Monell* in this case.  I've heard your

17  arguments.  I'm not inclined to do it, but I do have some

18  concerns about the breadth of one of plaintiff's *Monell*

19  theories, this theory that has to do with a failure to

20  discipline officers and breadth of the potential CRs that

21  you'd be seeking."

22         So you instructed us to narrow that *Monell* claim

23  about a failure to discipline.  We filed a notice -- and if

24  your Honor hasn't had a chance to look at it, I have an extra

25  copy.  It's a short notice.  But basically, what it says is,

1  yes, Judge, we will notice -- we will narrow the *Monell* claim.

2  So to the extent they have a concern that plaintiff is saying,

3  every time Detective Frugoli or Detective Evans got a parking

4  ticket, we're going to claim that makes a claim, we're saying

5  to you very clearly, no, we're not going to say that.  Okay.

6         We are saying to you, we -- we say in our notice of a

7  narrowed *Monell* claim, our failure to discipline claim is

8  focused exclusively on Area 1.  That is the case -- that is

9  the area where this homicide case took place.  We'll focus

10 exclusively on homicide investigators.  We can put aside the

11 evidence technicians and sergeants and everybody else.

12        We'll focus exclusively on a three-year or five-year

13 period.  You pick.  We will focus on only the CR categories

14 that relate to this case:  False arrest of our client without

15 probable cause, manipulating lineups, manipulating witnesses,

16 fabricating evidence, withholding evidence, okay, the specific

17 things that we're alleging happened in this wrongful

18 conviction case.  Okay.

19        THE COURT:  There's four of them?

20        MR. SWAMINATHAN:  What's that?

21        THE COURT:  That's four different categories?

22        MR. SWAMINATHAN:  Yes.  So I've got, yes, I think

23 four:  Fabrications of evidence, withholdings of evidence --

24        THE COURT:  Manipulation of lineup.

25        MR. SWAMINATHAN:  Manipulations of lineups; and then

1    threats, promises, basically, mistreatment of witnesses;

2    coercion, mistreatment of witnesses and suspects, and for

3    that -- and there's probably one other category catchall which

4    is obviously relevant, which is instances of lying or deceit.

5    Okay.

6         Now, we have these officers' underlying CRs just for

7    our detectives, defendants in this case.  I would not be

8    pursuing this theory if these detectives didn't have a bunch

9    of CRs in their history because if they didn't have a bunch of

10   CRs in their history that were problematic, I'd be wasting my

11   time.  We're a civil rights firm, but we're a for-profit firm.

12   We'd be wasting our time.

13        So there is a reason we're pursuing this theory.  We

14   have the CRs for these officers.  They have rich histories.  I

15   won't go into them because of the confidentiality and

16   protective order that we have in place.  So we have narrowed

17   it.

18        Now, here's what's really important because there's a

19   context to this that is really problematic.  The City says, "I

20   don't like your failure to discipline theory.  You need to

21   narrow it.  It's not fair to us."

22        We come in and say, "We're happy to narrow it."  And

23   I didn't note one other thing about our narrowing that we

24   offered.  We said, "You can choose three years.  You can

25   choose five years.  You can choose these narrowed categories,

1    and you can pick every first, third, fifth, seventh, tenth

2    officer, whatever you want.  We can do it as a sample.  We

3    don't have to do every single person.  And we can make it even

4    less burdensome."

5           But we said, "The only thing we ask is if you're

6    going to do that, you have to commit that that's going to be a

7    representative sample.  You can't say, 'I'm going to give you

8    every seventh officer' and then come to trial and say, 'Hey,

9    it's too small a representative sample.  This sample is too

10   small.'"

11          We're willing to take all of them, but we're willing

12   to take a much smaller number if you're willing to agree that

13   that's a representative sample and you all say that's too

14   small a sample size.  So we do all of that.

15          Now, here's the problem.  The City says narrow it.

16   We narrow it, as narrow as we can possibly make it unique to

17   this case.  And now he stands up and says, "Wait a minute.

18   Plaintiff's narrowed theory, do you realize how burdensome it

19   would be to do this narrowed theory?"

20          So he forces us to narrow it, and then they come back

21   and say, "Oh, the narrowing is too burdensome because the CR

22   categories, they're not really identified by category" --

23          THE COURT:  Let me ask this.  How many homicide

24   investigators were there in the first Area 1 during, say, a

25   three-year period?  What would you guess?

1          MR. POLICK:  Judge, I can tell you from work on

2     another case where I did a list like this, we did a ten-year

3     period, and the list came to --

4          THE COURT:  We're talking about, he says he'll --

5          MR. SWAMINATHAN:  Three to five years.

6          MR. POLICK:  I'm just using the example I have.  We

7     came up with a list of 300 homicide investigators in that

8     ten-year period.  So if that's sort of a benchmark --

9          THE COURT:  So it would be substantially less, I

10     would think.

11          MR. POLICK:  Hopefully.

12          THE COURT:  I mean, how many homicide investigators

13     do you have, let's say, on a snapshot, let's say -- I don't

14     know what year we're talking about, but let's say 2008,

15     January 1.  How many homicide investigators in Area 1?

16          MR. POLICK:  That's the problem.  The police

17     department doesn't keep a yearbook, so you can't say, give us

18     the yearbook for 2008 and it tells you who all the homicide

19     investigators are that were assigned to that particular area

20     of detectives at the time.

21          So in the case I'm referring to, it literally took us

22     three months just to put a list together that the plaintiffs

23     and the defendants could agree to.  So it is a time-consuming

24     process.  I wish there was another way around it, but they

25     just don't keep the records that way.

1          MR. NOLAND:  And the concerning thing is the

2    categories that the plaintiffs are talking about.  They're

3    thrown in and it's like, oh, it's just five categories, but

4    it's awfully broad and vague:  Fabrication, lying.  Everything

5    could be lying if the officer denies the CR.

6          So, you know, withholding exculpatory evidence, they

7    already have a street files, their alleged street files claim,

8    so we're already dealing with that on another one.  False

9    arrest, I mean, it could be anybody who was ever arrested.

10          So it takes -- it's going to take so much time.  The

11    notion that this is -- that the defendant officers in this

12    case have some cache of CRs that if that were the -- if that

13    were accurate, then that would be the plaintiff's position in

14    that, okay, this CR should have been sustained.  So we haven't

15    seen that.

16          The burdensomeness -- and then the thing about it in

17    this case, it's unnecessary.  So we're throwing this

18    incredibly -- what we think is broad.  He's saying it's not as

19    broad as we think, but I don't hear him saying it's not going

20    to be a lot of work.

21          So we've already got 14 defendants, a complicated

22    reversed conviction case.  We've got a street files *Monell*

23    theory they're pursuing, and then we're going to throw in this

24    additional theory which is kind of a fishing expedition --

25          THE COURT:  Let me ask this.  This guy was a reversed

1    conviction?

2         MR. SWAMINATHAN:  2001, he spent 20 years, almost 20

3    years, and his conviction was in 2001 for -- conviction in

4    2002 for a 2001 murder.

5         THE COURT:  And what was the basis for the reversal?

6         MR. SWAMINATHAN:  The conviction was thrown out.  The

7    State's Attorney agreed to the dismissal of his conviction

8    based essentially on evidence from the three eyewitnesses who

9    all recanted and said, "I did not make -- my lineup

10   identification of him was false.  I did it because the officer

11   told me who to pick, and they told me this is the person who

12   did it, and that's the basis upon which I came forward."  In

13   each --

14        MR. NOLAND:  The State's Attorney's Office made no

15   finding that the officers committed any misconduct, so that

16   part of that is inaccurate.  What they based it on is that the

17   three witnesses had recanted.  There was no finding by the

18   State's Attorney's Office of any misconduct by the police

19   officers.

20        MR. SWAMINATHAN:  I'm not asserting there was a

21   finding.

22        THE COURT:  Okay.

23        MR. SWAMINATHAN:  The State's Attorney actually

24   doesn't make findings --

25        THE COURT:  I'm just trying to figure out how to

1    narrow this thing.

2           MR. SWAMINATHAN:  Let me say one other thing about

3    this, which there is a case that is being litigated with many

4    of these same firms, Hood versus City of Chicago.  It came

5    right -- it's the case was filed just a couple months or maybe

6    a year before this one.  Okay.  We're litigating the same

7    issue.

8           The City of Chicago has never said there is any

9    failure to discipline theory that they think is narrow enough

10   or appropriate.  They have never agreed to any production of

11   any CRs on a failure to discipline theory.  They always say

12   it's too broad, and then they always say it's too burdensome

13   when you agree to narrow it.

14          In Hood, we negotiated with these firms for two years

15   about this issue of getting CRs.  We said, "You want to limit

16   it to detectives?  Okay.  Limit it to detectives."  They took

17   forever, and then they came back and said, "You limit it to CR

18   categories."  We limited it to CR categories, and they said,

19   "Oh, sorry.  Limiting it to CR categories doesn't work."

20          And so what ended up happening is Judge Valdez put

21   her hands up and said, "City, I'm done with it.  Produce seven

22   years of CRs from Area 1.  Produce them all.  You say you

23   can't do it by CR category.  Produce them all for those seven

24   years."

25          What I'm saying is, whatever we do, let us not allow

1  assertions of, you must narrow, and then it's too burdensome

2  to narrow, prevent us from pursuing the theory that's

3  important --

4          THE COURT:  What's the defense?  What's the defense?

5          MR. NOLAND:  The defense in the case is, number one,

6  that there was the officer, the underlying case, the officers

7  did not commit the misconduct alleged that they committed.

8  The defense to the failure to discipline claim, we don't know

9  what the failure to discipline claim is at this point because

10 the reason we brought this motion is because we said, "What is

11 your failure to discipline claim?"

12         They articulated that theory that I started off with

13 today which is that any allegation of misconduct no matter

14 what the type of misconduct would lead to this.  And so our

15 defense to that is that that's just irrelevant, it doesn't

16 make any sense.  So --

17         THE COURT:  Well --

18         MR. NOLAND:  -- if they --

19         THE COURT:  He's dropped failure to discipline,

20 right?

21         MR. SWAMINATHAN:  We have narrowed the failure to

22 discipline theory to focusing on exactly what I told you:

23 These CR categories that we will limit it to.  And we will

24 say, based on these -- look, this is not complicated.  Our

25 firms have all litigated the *Monell* claim.  We're going to get

16

1    a copy of a set of CRs, and we're all going to hand them to an

2    expert who is going to do some analysis of these CRs.  The

3    work involved here is literally just picking a set of CRs,

4    producing them, and then handing them over to our experts to

5    do their work.

6            MR. NOLAND:  We completely disagree with it.  As I

7    articulated, the process to try to do this, to try to even

8    figure out who the detectives were at the time, and then we're

9    not going to accept some expert --

10          THE COURT:  Let me ask you this.  Your intention is

11    to file a motion for summary judgment?

12          MR. NOLAND:  Yes, absolutely.

13          THE COURT:  And when can you do that?  Discovery is

14    closed April 30th.

15          MR. NOLAND:  We could file a summary judgment on the

16    *Brady*-based due process claim probably in three weeks.  The

17    other claim, the claim of -- that the eyewitnesses were

18    allegedly manipulated into identifying Mr. McIntosh, the three

19    recanting witnesses have not been deposed yet, so I don't know

20    if there's going to be a basis to file a summary judgment.

21          THE COURT:  I was going to say, if you're ready to

22    file a motion for summary judgment on April 30th, I'd be more

23    inclined to let that run its -- because we can do that in

24    probably three or four months.

25          MR. NOLAND:  What I should -- I want to make it

1    clear.  We will be filing summary judgment for the City on --

2    and I think all the defendants were on this claim that

3    exculpatory information was withheld in a so-called street

4    file, no doubt about it.

5         What I don't know of whether or not, because these

6    three recanting witnesses have not been deposed, of whether or

7    not there will be a question of fact and whether or not we'd

8    have a basis to move for summary judgment on that particular

9    issue, on the whether or not the witnesses -- the lineups were

10   rigged, essentially.  I don't know if there's -- so I can't

11   commit to the Court that we'll be filing on that.

12        THE COURT:  My point is that you're probably going to

13   end up having a trial on that issue, which means that we're

14   going to have *Monell* anyway.

15        MR. SWAMINATHAN:  We are going to have a *Monell* --

16        MR. NOLAND:  I don't think we will.  We're very

17   confident in the *Brady*-based claim because we're able to

18   establish that.  As far as the --

19        THE COURT:  That part is easy, right.  As far as the

20   street files, you don't have a problem with the street files,

21   right?

22        MR. NOLAND:  Well, we do have a problem with the

23   street files but the Court -- I've heard the Court's comment.

24   There's going to be a lot of work.  We are -- we're actually

25   issuing some discovery in a subpoena relative to some other

1   documents.  So that still is going to be broad, but at least

2   it's something that we -- that is a little bit more

3   straightforward and I guess we can kind of understand.

4           The -- this claim, the -- you know, the alleged

5   rigging of lineups we really don't understand, and the way

6   they're trying to get at it through a failure to discipline,

7   there's a disconnect.  And when you throw that, the other work

8   in the case, we think that that aspect of the case should be

9   bifurcated and the case should go to trial.

10          We think what's going to be left is, you know, more

11  than likely depending on what these three eyewitnesses say

12  because they have given affidavits saying that they were told

13  to pick out Mr. McIntosh.  So there, depending on what they

14  say at dep, would likely be a trial on whether or not that's

15  true.

16          THE COURT:  So you're going to have a *Monell* claim

17  probably.

18          MR. NOLAND:  I don't think that there is -- well, we

19  don't think that there should be because we don't understand

20  what the failure to discipline *Monell* claim will be connected

21  to that.  That's just not a *Monell* claim.

22          THE COURT:  Well, it's manipulating witnesses,

23  withholding evidence --

24          MR. SWAMINATHAN:  Yes.

25          THE COURT:  -- and fabricating evidence.

1    MR. SWAMINATHAN:  Yes.

2    THE COURT:  It seems to me, you're going to have that

3 so --

4    MR. SWAMINATHAN:  We are going to have a trial on the

5 underlying claim.  We are going to have a trial on some of

6 these *Monell* theories that you just identified.  So we're

7 talking about --

8    THE COURT:  It seems to me that it's just not -- you

9 know, it's not feasible to bifurcate because we're going to

10 end up having a *Monell* claim anyway.

11   MR. NOLAND:  I can tell you, we will be filing a

12 summary judgment on *Monell*.  So if the Court allows this

13 motion -- this failure to discipline theory to proceed, there

14 is no doubt we're going to be filing a motion for summary

15 judgment --

16   THE COURT:  Well, yeah, I'm sure you will.

17   MR. NOLAND:  -- and we think it will be meritorious.

18   MR. SWAMINATHAN:  They basically do in every case.

19   THE COURT:  I'm sure you will.  It just seems to me

20 that we're going to end up with *Monell* discovery anyway, so

21 you might as well get it -- get working on it.

22   MR. SWAMINATHAN:  We have -- our view is, let's pick

23 a narrowed range that you want, and let's do it.  That's all

24 we care about.

25   THE COURT:  Okay.  He's willing to negotiate further

1  with narrowing as much as he can.  I assume they -- so anyway,

2  so the motion is denied.  Shall we have a status then?  When,

3  on April 30th?

4           MR. SWAMINATHAN:  Well, if you -- so you're saying

5  come back with a -- and negotiate with each other and see --

6           THE COURT:  Yes, negotiate, but I'm not -- I'm not

7  bifurcating the *Monell* issue.

8           MR. SWAMINATHAN:  So from our perspective, we would

9  essentially go forward on the narrowed theory as it's defined.

10          THE COURT:  As narrow as you can make it.  And as I

11  said, work with them.  So I'd suggest, let you go gather the

12  dust, but they don't want --

13          MR. SWAMINATHAN:  We're happy to do it.

14          THE COURT:  -- to do that.  That was my suggestion.

15          MR. NOLAND:  Judge, I can tell you that these are

16  sensitive law enforcement documents.  The City is not going to

17  allow the lawyer --

18          THE COURT:  Well, I appreciate that.  I was just

19  saying, but --

20          MR. NOLAND:  Judge, we will work in good faith with

21  the plaintiff's counsel as the Court has instructed, but we

22  can't -- depending on how the negotiations go, you know, I'm

23  still concerned about it based upon the allegation -- the

24  notice --

25          THE COURT:  I understand.  It's a problem.  And

1    *Monell* is --

2           MR. SWAMINATHAN:  I have only one request related to

3    this, which is we set some time limits.  In Hood, it took two

4    years.  So what I want to do is, I'm happy to negotiate with

5    counsel.  And I would like us to have a judge order us to do

6    it within two weeks.  Not that he's -- he is diligent and hard

7    working as counsel.  The City of Chicago, his client, drags

8    this out.

9           THE COURT:  Well, I know they do.

10          MR. SWAMINATHAN:  It needs a response --

11          THE COURT:  The City is -- I've been here for a

12   while, and I've had a lot of City cases.

13          MR. SWAMINATHAN:  If we're going to negotiate --

14          THE COURT:  Some more successful than others.

15          MR. NOLAND:  So, Judge, we've got this April 27th

16   cutoff.  I just --

17          THE COURT:  Well --

18          MR. NOLAND:  There's no way --

19          THE COURT:  I'm going to set a status.  That's not

20   set in stone.  You know, do the best you can.  And let's see

21   where you are on April 30th.  And that doesn't include the

22   *Monell* in discovery.

23          MR. SWAMINATHAN:  Thank you, Judge.

24          THE COURT:  But see if you can't get the fact

25   discovery for the claims out of the way by then.  So we'll

22

1    have a status.  Does April 30th work or is that --

2              THE CLERK:  May 1st.

3              THE COURT:  May 1st, May Day.

4              MR. SWAMINATHAN:  Thank you, Judge.

5              MR. NOLAND:  Thanks, Judge.

6         (Proceedings adjourned at 9:27 a.m.)

7                   * * * * * * *

8                  C E R T I F I C A T E

9         I, Judith A. Walsh, do hereby certify that the

10   foregoing is a complete, true, and accurate transcript of the

11   proceedings had in the above-entitled case before the

12   Honorable HARRY D. LEINENWEBER, one of the judges of said

13   Court, at Chicago, Illinois, on February 13, 2019.

14

15   */s/ Judith A. Walsh, CSR, RDR, F/CRR_____*    February 18, 2019

16   Official Court Reporter

17   United States District Court

18   Northern District of Illinois

19   Eastern Division

20

21

22

23

24

25