IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARTURO DeLEON-REYES,                    )
                                        )
             Plaintiff,                 )
                                        )
       -vs-                             )  No. 18 C 1028
                                        )
ERNEST HALVORSEN, et al.,               )  Chicago, Illinois
                                        )  March 27, 2019
             Defendants.                )  9:00 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ANDREA R. WOOD

APPEARANCES:

For Plaintiff Solace:      PEOPLE'S LAW OFFICE
                           1180 North Milwaukee Avenue
                           Chicago, Illinois  60642
                           BY:  MS. JAN SUSLER

For Plaintiff DeLeon
Reyes:                     LOEVY & LOEVY
                           311 North Aberdeen Street
                           Chicago, Illinois  60607
                           BY:  MR. SEAN STARR

For Defendant
Halvorsen:                 THE SOTOS LAW FIRM, P.C.
                           141 W. Jackson Boulevard
                           Chicago, Illinois  60604
                           BY:  MR. JOSH MICHAEL ENGQUIST

COLETTE M. KUEMMETH, CSR, RMR, FCRR
OFFICIAL COURT REPORTER
219 South Dearborn Street
Room 1928
Chicago, Illinois  60604
(312) 554-8931

APPEARANCES:   (Continued)

For Defendant City:          ROCK, FUSCO & CONNELLY, LLC
                             321 North LaSalle Street
                             Chicago, Illinois  60654
                             BY:  MS. EILEEN ELLEN ROSEN

(Proceedings heard in open court:)

THE CLERK:  18 CV 1028, DeLeon-Reyes versus Rivera, and 18 CV 2312, Solache versus City of Chicago.

MS. SUSLER:  Good morning, Judge.  Jan Susler for plaintiff Gabriel Solache.

MR. STARR:  Good morning, your Honor.  Sean Starr on behalf of the plaintiff Reyes.

MS. ROSEN:  Good morning, your Honor.  Eileen Rosen on behalf of defendant City of Chicago.

MR. ENGQUIST:  Good morning, your Honor.  Josh Engquist on behalf of defendants Rutherford, Mingey, Halvorsen, Stankus, Harvey, Biebel, Naujokas, Trevino, and Dickenson.

THE COURT:  Okay.  Good morning.  So this is here, I now have a motion seeking to bifurcate the Monell claim.  I take it that the plaintiffs oppose this request?

MR. STARR:  Yes, your Honor.  We ask that you deny the motion.  We think that the clear weight of authority is on our side, and we also think there's a number of practical reasons why denial of the motion makes sense.

THE COURT:  Are the defendants characterizing the discovery correctly?  I didn't get a chance to read through all of the exhibits, but they're suggesting that you're asking for information for a 35-year period.  Is that correct?

MR. STARR:  Your Honor, we narrowed the scope of what we're requesting.  We've provided a number of proposals to defendants.

And just for the record, your Honor, this is a Guevara case, and we're currently litigating a number of other Guevara cases that are from the same time period, one of which, the Sierra case, is a Judge Lee case.  Bifurcation motion was denied in that case, so we're working to narrow that case as well.  We think we provided very reasonable proposals that will eliminate the burden.

THE COURT:  What sort of proposals are you raising?

MR. STARR:  We're asking -- in Sierra we're asking for I believe five years.  Sierra is a '95 case, five years in advance of that, so '90 through '95.  We've provided a number of proposals that limit the number of CRs that we get, where we get the CRs from.

We think the parties can negotiate this to a place where the burden is alleviated and we can get what we need in order to prove our Monell claim.

THE COURT:  Why isn't one way to handle this to simply phase discovery so that once the evidence is developed as to the individual claim, if there is, for example, a motion for summary judgment to be had, then it can be made at that point before moving on to Monell?  Why is a formal bifurcation, even for trial, appropriate at this stage?

MS. ROSEN: Well, I can speak to that. So from the City's perspective, the necessity of a Monell claim in this case, in the Guevara case, is generally based upon the allegations that are being made in the case provide plaintiff with no additional damages, and all it does is serve to slow down the discovery in the case.

These allegations are that these police officers knowingly fabricated evidence, committed perjury, you know, used excessive force. These are not the types of claims where Monell discovery will help plaintiff with respect to the underlying claims. So that's why we think bifurcation, full bifurcation, is appropriate. If the Court is not willing to do that, then it definitely makes sense to phase the discovery in the way that you say and suggest.

What we know from other Guevara cases -- so plaintiff's counsel raised, Mr. Starr raised the Sierra case. In the Sierra case, plaintiff insisted that the City file its bifurcation motion immediately because they didn't want to delay, and we did. What we've now discovered is that as it relates to the so-called street files claim, which I think you're familiar with, which is the issue about the files --

THE COURT: I am.

MS. ROSEN: Mr. Sierra's criminal defense file is missing. The Cook County Public Defender's Office cannot locate it. So without that file, plaintiff will not be able

to prove that anything was withheld, because he can't go to his file and say look, these are the documents that I received but this is what's in the police files.  So we're going to deal with that in Sierra, but that's just an example.

And then in another case --

THE COURT:  Is it likely that there would be a basis for a summary judgment motion on the individual claims, or is that necessarily going to have to go to trial?

MR. ENGQUIST:  For some of the individuals I know right off the bat we'll have motions for summary judgment.  For some of them we may not.  It's unclear at this point.  But I know for like the forensic investigators we definitely will have a motion for summary judgment.

THE COURT:  Even for the individual claims I imagine the plaintiffs would take the position that a lot of the training materials and policy materials would be relevant anyway because it would speak to how those particular officers -- not necessarily evidence of a pattern or policy, but it gets to the particular officers who are accused of the misconduct, how they were trained and what was in their --

MS. ROSEN:  Sure, Judge.  And, of course, bifurcation wouldn't impact that.  To the extent that plaintiff would request the policies generally, I mean, the City produces them all the time with or without a Monell

claim.  To the extent that the plaintiffs want the training of the particular officers and what they were trained on, that's something that bifurcation wouldn't impact.  We could certainly provide it.

If the Monell claim would be you failed to train your police officers not to coerce confessions out of people, or you failed to train your police officers not to lie when you testify in court, okay?  So that would be the Monell component.

If the issue for plaintiff is you were trained to conduct your investigations in a proper constitutional way -- and of course I'm just generalizing -- but you didn't, so that goes to modus -- you know, knowledge, some kind of 404(b) thing, the City would certainly not say, okay, the bifurcation motion has been granted so we're not producing any written policies or practices from the era or not producing training of the particular police officers.

MR. STARR:  Judge, if I may.

THE COURT:  You may.

MR. STARR:  My first point is that the plaintiffs view the Monell liability as on one hand separate from the individual liability, and the other hand interlaced and overlapping.  We think that the authority is on our side as to we could show that there is a Monell liability even if we lose on the individual officers' liability.

The Thomas v. Cook County case, the Swanagan case says that, Judge Lee in Sierra agreed with us on that, and in another case that Ms. Susler's firm was on, the Smith case --

THE COURT:   What would be the theory of liability? Would it be then that there might be affirmative defenses applicable to individual officers that might lead to liability for the City but not for the individuals?

MR. STARR:   No.   It falls under the street files Monell claim, your Honor.   We believe that the City had a policy in place that created a system where an individual officer could have been acting constitutionally but his production -- his or her production of critical exculpatory information and evidence was turned over to the City, and the way the City's policies were set up, that evidence can never see the light of day.

And we believe we won that claim in the Rivera trial, your Honor, and in the Fields trial, and we believe there is a number of cases that are on our side in that regard, your Honor.

THE COURT:   Why isn't it a more efficient approach to phase the discovery so that perhaps some of the issues on individual liability can at least be narrowed so that you know if there are some defendants who might get out of the case on summary judgment, or some issues related to certain plaintiffs that gets focused, which might have the effect of

more focusing your Monell discovery?

MR. STARR:  That brings me to my second point, your Honor.  There is a significant overlap between a number of our other Monell claims and the individual liability, and we think that the evidence, the documents we're requesting, the discovery that we're looking for, addresses both of those.

And Judge Lee, in his order in the Sierra ruling, specifically noted that in his experience the disputes over what is Monell and what is non-Monell create a situation that extends the litigation, and it creates more of a burden on both parties.

Your Honor, that's how we see this case.  We don't see that phasing discovery is going to make this more efficient for anybody.  Because Sierra is a '95 case, we have another case, a '97 case, and this case is a '98 case, these are all Guevara cases, we're already getting a significant amount -- these parallel lawsuits are getting a significant amount of what we're seeking in Monell already.  So we're willing to narrow our request so that if we're getting '90 through '95 in Sierra, we only need '96, '97, and '98 in this case, your Honor.

And Judge Kocoras is set to rule on the other pending bifurcation motion, which we believe is going to give us '96 and '97.  So it could be that we're only going to ask for Monell discovery for 1998, your Honor.

MS. ROSEN: Let me just speak to a couple points that counsel made. He keeps talking about Judge Lee in Sierra. We have not reached any agreement yet in terms of the scope of any of the Monelle discovery. They issued the same discovery virtually that they issued here.

We are conducting Rule 37 conferences, but I expect at some point the Court is going to need to decide -- and it would be Magistrate Judge Weisman that's going to decide the scope in that case, but we're not there yet. So I want to put -- they don't have anything yet. So they don't have any files. There is no agreement on files.

With respect to other Guevara cases, Judge Shah just granted bifurcation in another Guevara case where the requests -- it was plaintiff's counsel's firm represented one of the parties, they had already narrowed the request, and Judge Shah said that the allegations, which are the same allegations in this case, are not the kind that lead to a Thomas-like Monell claim in any sense of the word. So he granted bifurcation.

As it relates to the street files component of it, not only has Judge Shah granted bifurcation, and -- I think we cited the transcript -- the allegation that police officers created or knew of Brady materials, and put them in the file, but somehow the City of Chicago is responsible only, and not the officers, because they didn't -- their

record-keeping system was such is not Thomas, because the officers have Brady obligations, and if they didn't tell those prosecutors about the information, and that's the same ruling Judge Kendall gave in a case called Anderson. That's not a Guevara case but has the same street files kind of claim. And there's two Kendall cases. So it's not accurate to equate this to a Thomas-like situation.

THE COURT: So one further question I have for the parties, and then I think I have the information I need. So I did see a reference in the defendants' motion to the possibility of entering into a limited consent and why that might weigh in favor of bifurcation. Let's assume that I'm not inclined to require the plaintiffs to accept such a limited consent judgment. Does that impact the defense argument for the efficiency here?

Because in other words, my concern with bifurcation is it may sound good from some perspectives now, but it does open up the possibility for extremely prolonged proceedings if you have to go all the way to trial on the individual claims and then potentially have to start over with Monell discovery to go all the way to trial again, so that the risk of prejudice due to delay is so great in that bifurcation situation that the risk of undue delay as a result of having to conduct Monell discovery now pales in comparison. And the way that I've always understood the City to try to address

that concern is to say, oh, we're going to enter into this consent and it won't matter.

Let's assume that I wouldn't be inclined to force such a consent on the plaintiffs. Doesn't that open the door to this possibility of extreme prejudice from having to prolong these proceedings for a really long time if there has to be two trials?

MS. ROSEN: Well, Judge, no. I mean, I think the limited consent gives plaintiffs some extra added measure of assurance that any judgment that a jury or a court were to award as it relates to the underlying claims would get satisfied. And really the only time a limited consent fills any kind of gap is if there is a qualified immunity defense.

But as I said, the allegations in this complaint do not in any way, shape, or form lend themselves to some kind of qualified immunity defense. There is no way that the officers could prevail and say, yeah, I lied in court because I thought I could, and I didn't realize that was against the law and unconstitutional, or, you know, I beat somebody into a confession because I didn't appreciate it.

So really, I mean, in some cases, yes, but what I'm saying is under the factual scenario in these cases, and it's -- you know, it is important to know that it is Guevara cases, and the allegations across the board in each of the cases that are currently pending are the same, so I don't

know that the consent is going to change anything. If plaintiffs prevail at trial they will get the dollar amount that's awarded. There is no added benefit for them at that point to go after the City, because the City is going to indemnify, except for punitive damages, which they can't.

THE COURT: I understand why -- what your argument is for why it's in the plaintiff's benefit to have a consent. That's why I was trying to take the consent off the table.

MS. ROSEN: That's even without the consent that would happen. The City has an obligation to indemnify, except for punitive damages, and none of this changes that dynamic.

MR. STARR: Judge, as far as the consent decree goes, we don't think it's authorized under the federal rules, and we feel like -- we also believe in two cases, the Swanagan case it was deemed to be an unacceptable proposal, and in the Smith case, which is in front of Judge St. Eve --

THE COURT: You don't have to argue --

MR. STARR: Okay.

THE COURT: -- the consent today --

MR. STARR: Okay.

THE COURT: -- because I don't think that's really where we are yet, and frankly, absent some authority that directs me that it needs to be entered, my inclination is generally not to do it.

MR. STARR:  Thank you.

THE COURT:  I think that plaintiffs who are seeking an actual judgment against a party, that there is some inherent value to that as opposed to being able to treat that party as just an indemnitor.  However, I haven't closed the book on that, so if I do need to hear argument on that in the future I will.

Here's what I'm going to do for today.  I want to take a look at the scope of the discovery here and all the exhibits, because the filing was thick, and I didn't get a chance to review it carefully before this morning's hearing.  So I will take the request for bifurcation under advisement.

Did the parties file a status report when the case was reassigned to Magistrate Judge Harjani?

MS. ROSEN:  Yes, we did, Judge.  And we were in front of him a couple weeks ago.  We have a status mid April.  We currently have a fact discovery date which we raised with him that the parties all agree we're not going to meet based on what's been going on, and we'll address that at the next status.  So he's managing the discovery, which has to date been focused on the underlying case.

THE COURT:  So what I will do is I'll make sure that I issue a ruling before you next see Judge Harjani so that he knows what he needs to do.  And I think you're due to see me again in any case on April 24th, which I think is

slightly after that period of time. So I'm going to keep that date on the calendar, and I'll take the motion under advisement for a separate ruling.

MR. STARR: Could I ask your Honor, would you like to know what our additional proposals to the defendant are? Would you like us to put that in writing for you?

THE COURT: If you would like the opportunity to file a brief response and you can do it in seven days, I'll give you an opportunity to do it.

But again, I'm somewhat familiar with these arguments. It comes up from time to time. My personal approach is that I think these things often need to be decided on a case-by-case basis in terms of what's efficient in individual cases.

So I think the arguments are often very similar, it's more a matter of looking at the individual claims that are at issue and what's going on in discovery.

MR. STARR: May I ask one more question? Did you say you intend to rule on this before April 24th?

THE COURT: I would hope before you next see Judge Harjani. Did you say that was --

MS. ROSEN: I believe April 16th.

THE COURT: So yes. That's why I'm giving you just a week, because I would like to be able to issue an order before you go see Judge Harjani on the 16th.

MR. STARR: We'll get it on file probably in less than seven days, your Honor.

MS. ROSEN: And Judge, as that relates to the narrow scope, I'm 99 percent certain that that proposal hasn't been made in this case. I think it was made --

MS. SUSLER: It was made yesterday.

MS. ROSEN: It was made yesterday? Okay. Well, I missed it.

THE COURT: Very well then. Okay. Thank you.

(End of proceedings.)

                C E R T I F I C A T E


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled case on March 27, 2019.




/s/Colette M. Kuemmeth___
    Court Reporter