**TRANSCRIBED FROM DIGITAL RECORDING**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARTURO DE LEON REYES,                        )
                                             )
            Plaintiff,                       )
                                             )
            vs.                              )  No. 18 C 1028
                                             )
REYNALDO GUEVARA, et al.,                    )
                                             )
            Defendants.                      )
-------------------------------------)
GABRIEL SOLACHE,                             )
                                             )
            Plaintiff,                       )
                                             )
            vs.                              )  No. 18 C 2312
                                             )
REYNALDO GUEVARA, et al.,                    )  Chicago, Illinois
                                             )  April 30, 2019
            Defendants.                      )  9:19 A.M.

TRANSCRIPT OF PROCEEDINGS - Status
BEFORE THE HONORABLE SUNIL R. HARJANI, Magistrate Judge

APPEARANCES:

For Plaintiff            LOEVY & LOEVY
DeLeon-Reyes:            311 North Aberdeen Street
                         Third Floor
                         Chicago, Illinois  60607
                         BY:  MS. RACHEL ELAINE BRADY


PAMELA S. WARREN, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 2342
Chicago, Illinois  60604
(312) 408-5100

**NOTE:  Please notify of correct speaker identification.
FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS
UNINTELLIGIBLE.**

**APPEARANCES:  Continued**


For Plaintiff Solache:        PEOPLE'S LAW OFFICES
                              1180 North Milwaukee Avenue
                              Chicago, Illinois  60642
                              BY:  MS. JANIS M. SUSLER


For Defendant Guevara:        LEINENWEBER, BARONI & DAFFADA, LLC
                              120 North LaSalle Street
                              Suite 2000
                              Chicago, Illinois  60602
                              BY:  MR. THOMAS MORE LEINENWEBER


For Defendants Varga,         COOK COUNTY STATE'S ATTORNEY
Brualdi, Wehrle, O'Malley     Civil Litigation Bureau
and Cook County:              50 West Washington Boulevard
                              Fifth Floor
                              Chicago, Illinois  60602
                              BY:  MR. EDWARD M. BRENER
                                   MS. YULIA NIKOLAEVSKAYA


For Defendants Biebel,        THE SOTOS LAW FIRM, P.C.
Naujokas, Stankus,            141 West Jackson Boulevard
Trevino, Dickinson,Harvey     Suite 1240A
Rutherford, and Halvorsen     Chicago, Illinois  60604
                              BY:  MR. JOSH MICHAEL ENGQUIST
                                   MS. CAROLINE P. GOLDEN


For Defendant Navarro:        REITER BURNS LLP
                              311 South Wacker Drive
                              Suite 5200
                              Chicago, Illinois  60606
                              BY:  MR. DANIEL JEROME BURNS


For Defendant Chicago:        ROCK FUSCO & CONNELLY, LLC
                              321 North Clark Street
                              Suite 2200
                              Chicago, Illinois  60654
                              BY:  MS. THERESA BEROUSEK CARNEY

(Proceedings held in open court:)

THE CLERK: 18 C 1208, De Leon-Reyes versus Guevara; and 18 C 2312, Solache versus City of Chicago.

THE COURT: Go ahead, please.

MS. SUSLER: Good morning, Judge. Jan Susler for the plaintiff Gabriel Solache.

MS. BRADY: Good morning, your Honor. Rachel Brady for the plaintiff Arturo Reyes.

MR. LEINENWEBER: Good morning, Judge. Tom Leinenweber on behalf of defendant Reynaldo Guevara.

MS. NIKOLAEVSKAYA: Assistant State's Attorney, Yulia Nikolaevskaya for defendants O'Malley, Brualdi, Varga, oh, and Wehrle and (unintelligible). Thank you.

MR. BRENER: Good morning, your Honor. Edward Brener, B-r-e-n-e-r, also on behalf of O'Malley, Brualdi, Varga, Wehrle, and Cook County.

THE COURT: Okay.

MR. ENGQUIST: Josh Engquist on behalf of all the remaining individual police officer defendants.

MS. GOLDEN: Caroline Golden for the same.

MS. CARNEY: Theresa Carney on behalf of the defendant City of Chicago.

MR. BURNS: Daniel Burns on behalf of the defendant Navarro.

THE COURT: Okay. So in this case I need to ask this

question.  Is that everybody?

(Laughter.)

THE COURT:  I'm never quite sure in this case if I have got everybody.  I have a list, and I track, but still not good enough.

Okay.  So I have had a chance to review your status report in some detail.  I have a couple of questions.

So, first of all, as you probably figured out, I have talked to Judge Wood about this case.  I know she denied the bifurcation but talked to you about phasing discovery a little bit.  I have seen your reports on your thought processes behind it.  Let me start with some questions.

First of all, with respect to the production from Bluhm, there is a line in here that I need to understand.  It said defendants object to Solache and/or Reyes reviewing any of these materials for work product privilege as the privilege belongs to Bluhm and not plaintiffs.

Can someone elaborate on that?

MR. ENGQUIST:  Well, there is going to be an initial -- there have already been, I think, an initial review by Bluhm.  It has been sent out to an outside agency by Bluhm to do a review for their work product and attorney-client privilege.

It is our understanding then it is going to go to Solache's attorneys for another review.  And they want to do

another review of both attorney -- for work product and for attorney-client privilege, and then another review after that with, I guess, Reyes's attorneys. So it is going through like at three to four sets of reviews.

The work product privilege really belongs to the firm itself, it belong to Bluhm. And you can't really have other firms doing subsequent reviews and deciding other things are work product after they have already made that determination.

I mean, I understand there is argument that they can be looking at it for attorney-client privilege issues. That's a different argument. But work product is different.

THE COURT: Okay. Plaintiffs's response.

MS. SUSLER: We will be looking at it for attorney-client.

THE COURT: Okay. That solves the issue.

I agree with both of you, the work product belongs to Bluhm, but the attorney client belongs to the client. So look for the appropriate things with respect to where you are in the case.

Okay. The second thing is I see that Bluhm will complete its discovery to the plaintiff by May 15th, and then you have agreements for about seven days after that to produce the documents.

What's your confidence level in Bluhm being able to pull this off?

MS. SUSLER: Well, our understanding, Judge, is that they have given it to this company that's doing the ruling -- Bluhm has already done or in waves doing its own review. So that when they give it to the company, the company then packages it in such a way so that we can then conduct our review.

I mean, they told us when they were going to do the first roll out. That happened on time. I -- you know, I don't know the company. I can't vouch for the company. I'm expecting that they will do what they say, but I can't guarantee.

THE COURT: Well, no one can guarantee it. But since you have had conversations with them, and I didn't require them to be here today, I wanted to get your confidence level, which sounds like it -- they should make it happen.

MS. SUSLER: We don't have any reason to doubt it.

THE COURT: Okay. The other question I have is with respect to the depositions. There are five depositions that are listed that defendants believe can go forward on Adcock, Alivas, Dalbke, Gandhi, Romin, and -- Romin and Soto.

Are those the depositions that the defendants wish to take? That list is on page 4 and 5.

MS. GOLDEN: We would eventually want to take them. I don't know that they would be -- you know, they are not the most critical depositions in the case, that's why we can take

them without this discovery, but we do want to take them.

THE COURT:  Okay.  And the list that's on page 3, that is plaintiffs's depositions that you wish to take.

MS. SUSLER:  Yes, Judge.

THE COURT:  Okay.

MS. SUSLER:  And there are like 30 between now and August.

MS. BRADY:  Actually, I think, your Honor, that those -- the list includes a set of witnesses that the parties had actually, based on rulings from you earlier, had to kind of draft -- decide who is going to take lead on what.

THE COURT:  Right.

MS. CARNEY:  So that's not just -- it is a more inclusive list, but it is not the total list of depositions that need to be taken.

MR. ENGQUIST:  Initially what we did is, after your Judge's ruling, we did the whole draft situation for like ten witnesses.

MS. CARNEY:  Correct.

MR. ENGQUIST:  And we went back and forth from ten. Those ten are included in here, and then they have added another 20 or so.

THE COURT:  Okay.

MS. SUSLER:  And clearly it is not the universe of the depositions that we'll want to take in the case.  It is like

the first round --

THE COURT: Got it.

MS. SUSLER: -- that I think you, Judge, suggested that we get moving on and agree to dates on.

THE COURT: Right.

Remind me again, what is our discovery cutoff in this case?

MS. SUSLER: Well, we haven't made their discovery cutoff, which I think you were waiting to reset it until we had a sense of. I think the Bluhm production is one of the things that's holding up the decision about what to do next in terms of discovery cutoff.

THE COURT: Okay. With respect to these post-conviction files, let me ask defendants, because you take a position that you can't take the depositions without -- you don't want to start them without those files.

Aren't most of these post-conviction files in the public record anyway?

MS. GOLDEN: Well, the pleadings are and the hearings are.

THE COURT: Yeah.

MS. GOLDEN: But certainly not any interviews they may have had with any of these people outside the confines of a courtroom. Those would be in the public record. This would be in their notes or sworn statement.

THE COURT: Wouldn't they have had to disclose all that in the post-conviction proceeding anyway? Whether it is through a hearing or briefing or exhibits, wouldn't that be out there?

MR. ENGQUIST: One would hope so, but not necessarily. Your Honor, this is the same position -- I know the plaintiffs said earlier that they would go forward with depositions (unintelligible) depositions early on because they didn't have the State's Attorneys's file. And then the second round is the State's Attorney file.

So it is the same idea. And one of the things that we're looking at too is what's missing for one file to the next file so we need (unintelligible) get the completeness of it.

And from what we have been told, the first round of production was a hundred some thousand pages. And we're expecting, based on the next round, to be another 400,000 pages of documents. And so that's -- it is a lot of -- we don't know what's in those documents (unintelligible) close to a half a million -- yeah, a half a million pages of documents.

THE COURT: What do you think is in them? In a typical post-conviction? Because you already have the criminal defense stuff, right? Are they producing the public record or you think they are producing more than that?

MR. ENGQUIST: They will be producing -- I am assuming a lot of public record documents. But it also -- we found in

other cases we have seen body recorded statements, we have seen video recorded statements, we have seen other things that popped up that we didn't even know about.

MS. GOLDEN: (Unintelligible) of interviews.

MR. ENGQUIST: Yeah. We have seen a lot of different things pop up just (unintelligible) litigation already.

MS. NIKOLAEVSKAYA: Judge, because these files are interrelated. It could be raising so much. But in the post-conviction proceeding, they bring in other cases as a collateral matter. So that's a combination of things that's out there. And they are not all public documents.

And, you know, when you're talking about public documents with the Cook County clerk, you can't just go online and get it either, right? Because we don't even know what's in those files itself.

I can't right now go to the Clerk's Office and say, can I look and see what's in there? That file is somewhere in the warehouse. It is going to be, honestly, I (unintelligible) waiting for a file for like weeks now.

THE COURT: Okay.

MS. SUSLER: Judge, if I might.

THE COURT: Yeah.

MS. SUSLER: I mean, I think you're on the right track, that most of the documents are going to be documents that are in the public record already. And the 404(b)

documents that I think that assistant State's Attorney was referring to, we have already produced an enormous universe of the Guevara documents that come not just from the Solache and Reyes cases, but from other cases that the Loevy firm has been involved in and that our firm has been involved in.

So I'm -- I don't know what's in the documents because we haven't seen them yet, but it seems like we need to get moving.

THE COURT: Well, let me ask this. The set of the depositions that you have scheduled for May, on page 3 of your (unintelligible) Document 100, are those people -- who are those people? Are they witnesses?

MS. NIKOLAEVSKAYA: No there is some plaintiff -- I mean, there is some defendants. My clients, (unintelligible) put in there, and I specifically told them that I would not be available until I review the documents.

MS. SUSLER: There is some people in that group that haven't even been disclosed as witnesses.

MS. GOLDEN: Clemente may have; Benjamin may have; (unintelligible) mandatory disclosures, but not in Rule 26(a)s. I imagine (unintelligible) related to the (unintelligible), but we have no information on them whatsoever.

MS. SUSLER: We did do a supplemental disclosure with those names.

MS. GOLDEN: Not all of them.

MS. SUSLER: I don't believe that there is anybody on this list that we haven't disclosed. If there is, we'll obviously fix that.

MS. GOLDEN: Okay. We need to fix that.

MS. SUSLER: I know we have done supplemental disclosures. And most of them are the family of (Unintelligible) Mejia, who is the person who pled guilty to the murders.

THE COURT: Okay. So here's -- let me tell you the general principle that I would like to happen, taking first the deposition schedule. I do think you should agree on a set of depositions that you can take in May that will not be significantly impacted by (unintelligible) production.

And I do think that starting June, you should start scheduling the remainder of the depositions. Because by then you're going to have the bulk of production from the Bluhm Legal Clinic, and you'll have a better sense of whether you're talking about mostly public files or something beyond that.

So from what I am seeing, you have got Mark Harvey and Alfredo Aranda as being acceptable to go forward with. And then you have Adcock, Alivas, Dalbke, Gandhi, Romin, and Soto. I think that should get you through the month of May by taking those depositions.

And then starting in the month of June, I think you need to come to an agreed schedule as to who should go first in

June, taking into consideration that the documents are trickling in.

I don't want to hold things up. At the same time I don't want to significantly prejudice the defendants on not having the documents they feel they need. With this schedule though, to the extent that you find something down the road that you feel you needed to confront a witness with, I would entertain a motion for leave to redepose on a limited basis certain topic areas that you felt that you didn't get a chance to depose on because the documents haven't been produced or, you know, for one reason or another. So I will give you that leave.

But what I don't want to do and what I'm not going to do is hold off on depositions until July or August. I do think the bulk is being produced. To the extent they're giving you the public record, that is available to everyone. I understand it is (unintelligible), but it is still public record.

So that is the principle going forward that I would like you to work with.

I have got eight depositions, eight deposition deponent names that I can -- that you can schedule for the month of May and start knocking those out. And then put together a schedule for June onwards. That is what I would like to see from your deposition schedule.

And I'll ask for an updated status report in a week on

that. So by April the 7th -- excuse me -- May the 7th. Same thing, give me an agreed upon schedule for the depositions with the deponent names and the dates. Okay?

I need it agreed upon. Like I said, I'm doing this with the caveat that to the extent you feel, the defendants, that something was not questioned on, I will grant you limited leave to redepose.

But that's the plan -- that's what the plan is I would like going forward.

MS. SUSLER: And I assume that should there be documents that are produced post deposition from the defendants to us, we would have the same ability to come in and move to redepose should that be necessary.

THE COURT: From the defendants to you?

MS. SUSLER: If the defendants produce documents after a deposition, and we find there is something we need to inquire that we weren't able to because we did not have a document --

THE COURT: I'm not going to go down that road right now. You know, we're talking specifically with the Bluhm documents, and those are -- that is what I am aware of right now. I'm not going to open up this loophole or this black hole for everyone to take new depositions. So we're going to put a pause on that, and I'm not going to say anything more.

Anything else with that particular plan that you would like to talk --

MR. ENGQUIST: That's fine, your Honor. I just wanted to let you know that we did try to figure that out. We thought that the first round of documents was going to be all case-specific stuff (unintelligible) other thing. And then we're told by both Bluhm and plaintiffs's counsel that the very last production is kind of a catch-all. We could have (unintelligible) guarantee what it would contain.

So that's one of the reasons why we were so hesitant because if no one can guarantee it wouldn't have anything to do with our case, then the very last production we were very nervous about. Just so you know, we did look at that option.

THE COURT: Yeah, I think -- I think -- like I said, I have given you the loophole, the caveat, the way out if something happens. Hopefully you have got enough that you know about your case and you have got the right documents that you can take a full deposition. All of you are experienced counsel. You know you get into situations where you look at some supplemental docs and you say, I don't need to question any more, I have covered this topic. So let's play that out, and let's see where it goes before -- rather than holding to the very end.

There is always a reason to hold back on depositions. I mean, you can always wait till you know -- and that's why I have people, you know, deposing people the last few days before discovery cutoff. There is always a reason to wait. In this

case there are too many depositions to wait, and so we need to get moving.

With respect to Monell discovery, I have looked at your various positions. Here's what I want to ask about. From the plaintiffs's perspective, the depositions that you have listed that you would like to take, are those solely on the merits of the individual claims or do they relate to Monell?

MS. SUSLER: Most of them are more incident type witnesses. But there is a lot of overlap in this case, Judge. And that's why we think that the staggering of the Monell discovery is not a very efficient way to approach it and it isn't anything that Judge Wood ordered when she denied bifurcation.

THE COURT: Okay. Let me ask you this, if you were to take Monell discovery, besides asking the right questions at the deposition, what else would you be doing?

MS. SUSLER: For Monell discovery?

THE COURT: Uh-huh.

MS. SUSLER: Well, there is some documents that we need. There is about a year -- the Loevy firm and our firm has, in other litigation, obtained a significant amount of the Monell discovery that we would need in this case.

And there is about one year, from 1997 to 1998 -- our case is 1998 -- that we don't have. So we would want to be looking at those documents and then determining whether those

would indicate any additional depositions that we don't already know about.

But basically it would be traditional Monell discovery, but it is going to be more limited in this case because of the vast amount of discovery we have already done in other litigation.

THE COURT: Okay. So you're talking about you will be asking (unintelligible) questions deposition, and they be some limited document request?

MS. SUSLER: There will be some -- there will probably be some 30(b)(6) depositions to fill in the gaps that we don't have from this particular time period.

THE COURT: Okay. And document requests?

MS. SUSLER: Yes.

THE COURT: To who?

MS. SUSLER: To the city.

THE COURT: Okay. Have you served those yet or not yet?

MS. SUSLER: There is outstanding discovery to the city and -- yeah, that and depending on what we get, there may be more.

THE COURT: Okay. So the -- Judge Wood has not bifurcated or stayed discovery. So the question is how do we just manage the process?

MS. CARNEY: If I could, your Honor, I'm a little

confused about what plaintiffs are talking about needing one additional year. Their document requests to the city in this case have encompassed a 20-year-time period.

The documents that they cite to in one of their bifurcation briefings, and in this status report from Guevara, is a crime that occurred ten years prior. So it wouldn't necessarily be in a relevant time period here.

We have had one 37.2 conference trying to limit this scope. However most of their limits required the city to some sort of stipulation that can't be articulated as to what they want the city to stipulate to. And, even so, the city is not really willing to stipulate about an unknown purpose.

So I'm not sure what year -- one year they are saying they need. Their document requests are extensive and expansive in regards to area files and investigative files from either the entire citywide or specifically Area 5 where this homicide occurred. And the only -- in front of Judge Wood, the only Monell claim that they could articulate that they would not need liability on one of the officers for is in fact this reported street file claim, which would require the production of these investigative files within the area.

So I think that's why the city is pushing for some staggered discovery. Obviously it doesn't preclude them from asking questions at -- I don't know what incident-related question -- or what Monell questions they could ask incident-

related witnesses.

But as far as the production of documents, that is a huge endeavor that we are just starting to do 37.2 conferences on to try to limit the scope to a relevant time period around this homicide and not a homicide that occurred ten years prior.

So I'm not sure what this one year that they claim they don't have. And, furthermore, that one year has not come up in our 37.2 conference in regards to this case either.

THE COURT: Okay. Well, I'll let you respond, and then I have some comments.

MS. SUSLER: Sure.

THE COURT: Go ahead.

MS. SUSLER: I was just going to suggest that maybe it isn't ripe for your -- for you today because we are doing some 37, Rule 37, discussion. And so I think we're not quite ready to make the decision about how the Monell discovery should go forward, other than, obviously, we can ask questions in depositions that are already scheduled to witnesses that are relevant to Monell.

But I feel like we're still having conversations about how to narrow the request and whether we can come to an agreement. So I think --

THE COURT: Well, here, let me tell you what I am thinking. I'm not going to necessarily make any ruling or enter any orders right now on that. I do think you need to

discuss it some more.

My preference is to do some phasing of discovery. But I'm not talking about (unintelligible) long time. I think all of you have enough work to do between now and the next several months with depositions. And certainly you are correct, if you are deposing someone for seven hours, you should just ask the relevant Monell questions, to the extent there are any, during the deposition to avoid redeposing that person.

Okay. But for the question of document request and more extensive discovery outside the scheduled depositions, my preference is to phase that in a certain way. And so I'll let you discuss how to phase it, whether we start it in July or August or September. You know, I'm not talking about long periods of time, but I am talking about a time period by which you can get through a bulk of depositions on the underlying case, the merits case, before you hit the Monell discovery. So that's why I would like you to put together a plan on, and then come back and report back to me what you have decided how to structure it.

MS. CARNEY: Do you want that in the status report that's due net week or can we have a little bit more time to --

THE COURT: No, I think you need more time than that.

MS. CARNEY: Yeah.

THE COURT: Yeah. And so I'll set a status in 30 days for us to talk about that.

Let's get that on the books.

THE CLERK:  Tuesday, May 28th.

THE COURT:  Okay.  And then same thing, on the 27th I would like a status report as to plan with respect to phasing Monell discovery.

MS. SUSLER:  On the 27th?

THE COURT:  Yeah.

MS. SUSLER:  Of May?

THE COURT:  Is that a holiday?

MR. LEINENWEBER:  It's Memorial Day, your Honor.

THE COURT:  Oh, sorry.  Nobody works on Memorial Day anymore?

(Laughter.)

THE COURT:  I'm kidding.

How about the 24th, a Friday?

Okay.  And, of course, to the extent you can, please try to make it agreed.  Everyone has got to compromise a little bit to get this done.  No one is going to get their way on everything.  So work towards some, you know, reasonable phasing plan that doesn't prejudice either of you substantially, and try to get something on the books and give it some structure.

So we have -- we have a status.  We have got two status reports coming my way.

Anything else we need to talk about?

MS. SUSLER:  Not from plaintiff.

THE COURT:  Okay.  Defendants?

MR. LEINENWEBER:  I don't believe so, Judge.

THE COURT:  Okay.  Thank you all.

MS. SUSLER:  Thank you.

MR. LEINENWEBER:  Thanks, your Honor.

(Which concluded the proceedings.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the digital recording of proceedings in the above-entitled matter to the best of my ability, given the limitation of using a digital-recording system.

*/s/Pamela S. Warren*                    May 7, 2019
Official Court Reporter                    Date
United States District Court
Northern District of Illinois
Eastern Division