# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 1028 |
| | ) | |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | JURY DEMAND |
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 2312 |
| | ) | |
| v. | ) | Reassigned to |
| | ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | JURY DEMAND |

**PLAINTIFFS ARTURO DeLEON-REYES' and GABRIEL SOLACHE'S
RESPONSES TO MANDATORY INITIAL DISCOVERY REQUESTS**

Plaintiff Arturo DeLeon-Reyes, by his attorneys, Loevy & Loevy, and Plaintiff

Gabriel Solache, by his attorneys Jan Susler, John Stainthorp and Ben Elson,

People's Law Office, pursuant to the Mandatory Initial Discovery Pilot Program,

hereby provide the following initial disclosures:

1.     The following people are likely to have discoverable information:

**Eruby Abrego**, current address and telephone number not known, has information
about Guevara's misconduct with respect to him and his case.

1

**Jerry Adcock**, current address and telephone number not known, a supervisor at the Plaintiff's place of employment Ready Metal Mfg. Co., 4500 W 47th St, Archer Heights, Chicago IL, in March 1998, has information, including about Plaintiff's work schedule at the time.

**Salvador Alivas**, current address and telephone number not known, Plaintiff's co-worker at the Ed Miniat meat packers plant in March 1998, has information about Plaintiff's work schedule and activities at the time.

**Roberto Almodovar**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, has information about Guevara and Mingey's misconduct with respect to him and his case.

**Alfredo Aranda**, current address and telephone number not known, a neighbor of the Soto family in March 1998, has information about the Soto family routine or lack thereof at the time.

**Rosa Aranda**, current address and telephone number not known, a niece of Mrs. Soto, has information about the Soto family and their physical appearance.

**Xavier Arcos**, current address and telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Viola Armigo Rouse,** Cook County Public Defender, 2650 South California Avenue 8th Floor, Chicago, IL 60608-5125, (773) 869-6989, has information about the discovery and trial of Solache.

**Officer Saul Basurto**, current address and telephone number not known, a CPD lockup keeper, has information about intake screening of Plaintiff and Solache on April 5, 1998.

**Dr. Nagamani Beligere**, current address and telephone number not known, a pediatrician, has information about the Soto children.

**Francisco Benitez**, Lawrence Correctional Center, Inmate No. B17018, has information about misconduct with respect to his case.

**Robert Biebel**, 6055 N. Kirkwood, Chicago, IL 60646, telephone number not known, a supervisory CPD officer, has information about the Soto investigation, Defendant Guevara and other defendants' misconduct with respect to Plaintiffs and many other people whose civil rights Guevara and the other Defendants violated, his knowledge of and participation in the CPD code of silence, and his knowledge of and participation in a pattern and practice of withholding exculpatory evidence.

**Elizabeth Boedeker**, Senior Research Scientist, Coordinator, Greater St. Louis Area Biotechnology, BioBench Contract Research Organization, St. Louis Community College, St. Louis Community College, an ISP forensic biologist, has information about the Soto investigation, including laboratory tests of items recovered.

**Officer William Brown**, current address and telephone number not known, a CPD officer, has information about the Soto investigation, including Plaintiff, Solache and Rosauro Mejia's transportation from one police station to another in April 1998.

**ASA Heather Brualdi**, c/o Office of the Cook County States Attorney, 2650 South California Ave 14c30 Suite, Chicago, IL 60608-5146, (773) 674-2700, an assistant state's attorney, has information about the Soto investigation, including her and Guevara taking a statement from Solache in April 1998.

**Robert Buoto**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, has information about Guevara and Halvorsen's misconduct with respect to him and his case.

**Judge Clarence L. Burch**, (312) 325-9000, has information about misconduct with respect to the homicide investigation of the Stanley Moody homicide.

**Francis J. Cappitelli,** deceased CPD officer, had information about the Soto investigation, including Defendant Guevara and other defendants' misconduct with respect to Plaintiffs and many other people whose civil rights Guevara and the other Defendants violated, his knowledge of and participation in the CPD code of silence, and his knowledge of and participation in a pattern and practice of withholding exculpatory evidence.

**Salvador Cicero,** current address and telephone number not known, a Consulate officer for Mexican Consulate, has information about what he would have done with respect to Plaintiffs if the Consulate had been notified they were in custody.

**Det. Harry Collins,** current address and telephone number not known, a CPD detective, has information about the Soto investigation, including evidence recovered at the crime scene, the interrogation of Adriana Mejia.

**David Colon**, current address and telephone number not known, has information about Guevara and Halvorsen's misconduct with respect to him and his case.

**Eliezar Cruzado**, current address and telephone number not known, with information about Guevara's misconduct with respect to his case.

**Cherie Dalbke**, UIC Division of Specialized Care for Children, Speech and Hearing

3

Consultant MC 419, 722 W. Maxwell, Suite 350 Chicago IL 60607-5017, was an audiologist at Cermak Health Services of Cook County, has information, including about Plaintiff Solache's hearing abilities or lack thereof.

**Arturo DeLeon Reyes**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, Plaintiff has information relevant to Defendants' misconduct, and as to damages, including the allegations in his Complaint.

**Voytek Demski**, current address and telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Angel Diaz**, current address and telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Evelyn Diaz**, 4821 W. Wolfram, Chicago, IL 60641, has information about the homicide investigation of Raul Rodriguez.

**Det. Edwin Dickinson**, 4016 Birkdale Drive, Lake Wales, FL, telephone number not known, a CPD detective, has information about the Soto investigation, including evidence recovered at the crime scene, and the interrogations of Plaintiffs and the Mejias, as well as his own misconduct and that of the other defendants.

**William Dorsch,** current address and telephone number not known, formerly an Area 5 detective, with information about Guevara's misconduct.

**Adrian Duta**, current address and telephone number not known, with information about Guevara's misconduct with respect to him and his case.

**Graciela Flores Gardner,** current address and telephone number not known, with information about Guevara's misconduct with respect to her and her family.

**Lilya Flores**, current address and telephone number not known, a CPD officer, has information about the Soto investigation, including the interrogations of Plaintiffs and the Mejias.

**Santos Flores**, current address and telephone number not known, has information about Guevara, Halvorsen, and Mingey's misconduct with respect to him.

**Adolfo Frias-Munoz**, Hill Correctional Center, P.O. Box 1700, Galesburg, IL 61402; current telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Dr. Yogesh Gandhi**, John H. Stroger, Jr. Hospital, Department of Neurosurgery, 1801 W Taylor St, Chicago, IL 60612, a neurosurgeon, has information about Plaintiff Solache's health and hearing or lack thereof.

**Wade Golub**, current address and telephone number not known, a Chicago Police officer, has information about Plaintiffs, Rosauro and the 3 year old at the 8th District.

**Ariel Gomez**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, has information about Guevara, Halvorsen, and Mingey's misconduct with respect to his him and his case.

**Tony Gonzalez**, has information about Guevara's misconduct with respect to his him and his case.

**Det. Reynaldo Guevara**, 3547 W. 57th Place, Chicago, IL, telephone number not known, a retired CPD detective, has information about the Soto investigation, his misconduct and that of other defendants with respect to Plaintiffs and many other people whose civil rights he violated, his CPD disciplinary history, his knowledge of and participation in the CPD code of silence, and his knowledge of and participation in a pattern and practice of withholding exculpatory evidence.

**Det. Ernest Halvorsen**, 3612 Dutch Creek Lane, Johnsburg, IL, telephone number not known, a retired CPD detective, has information about the Soto investigation, his misconduct and that of Defendant Guevara and other defendants with respect to Plaintiffs and many other people whose civil rights he violated, his CPD disciplinary history, his knowledge of and participation in the CPD code of silence, and his knowledge of and participation in a pattern and practice of withholding exculpatory evidence.

**Sgt. Edward Hanlon**, current address and telephone number not known, a CPD sergeant who has information about the Soto investigation, including when Plaintiffs were at the 8th District police station.

**Mark Harvey**, 10224 S. Prospect Ave., Chicago, IL 60643, telephone number not known, a CPD forensic investigator or evidence technician, has information about the Soto investigation, including photographing and processing the crime scene and resulting lack of photographs.

**Arthur F. Hill, Jr.,** Judge, 2650 S California Ave, Courtroom 600, Chicago, IL 60608, was assistant state's attorney, has information about discovery and trial of Plaintiffs.

**Kendall Hill**, 429 B. Weber Rd., 272, Romeoville, IL 60446, (815) 886-1718, has

information about misconduct with respect to the homicide investigation of Prudencio Cruz and William Sanchez.

**Leshurn Hunt**, current address and telephone number not known, with information about Guevara's misconduct with respect to him and his case.

**Karen Iwasaki**, current address and telephone number not known, a former Cook County assistant state's attorney with information about the aggravated battery of Jaime Navarro, the questioning of Adrian Duta, and the misconduct of Guevara.

**Demetrius Johnson**, 4949 W. St. Paul Ave., FL 1, Chicago, Illinois, has information about Guevara's misconduct with respect to his case.

**Juan Johnson**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, has information about Guevara and Mingey's misconduct with respect to him and his case.

**Henry Johnson**, current address and telephone number not known, has information about Guevara and Mingey's misconduct with respect to him and his case.

**John Karalow**, deceased, forensic investigator or evidence technician, had information about the Soto investigation, including photographing and processing the crime scene and resulting lack of photographs.

**William Kernan,** current address and telephone number not known, a CPD detective, has information about the Soto investigation, including the identification of the 3 year old, the investigation into Norma Salazar and whether she and Adriana Mejia were patients at University of Illinois Hospital, and the arrests of Plaintiffs and Rosauro Mejia.

**Curtis Kirkland**, 4806 W. Congress Pkwy, Chicago, Illinois, 1348 N. Lord Ave, Chicago, Illinois, has information about misconduct with respect to his case.

**Norman Larreta**, current address and telephone number not known, a Spanish language interpreter in employ of chief judge, has information about the translation of the CPD preprinted Miranda forms on the statements of Plaintiffs.

**Scott Lassar**, Sidley Austin LLP, 1 S Dearborn St, Chicago, IL 60603, has information about the misconduct of Guevara and Halvorsen.

**Dr. Barry Lifschultz**, Northwestern Feinberg School of Medicine, Ward Building Room 3-140, 303 E Chicago Avenue, Chicago IL 60611 312/503-8144, a pathologist, has information about autopsies conducted on Mr. and Mrs. Soto and the date and time of deaths.

**Almarie Lloyd**, current address and telephone number not known, has information about the misconduct of Guevara.

**Julio Lugo**, current address and telephone number not known, has information about Guevara's misconduct with respect to the homicide investigation of Jose Garcia.

**P.O. Ron Malczyk**, address and phone number not known, has information about Guevara and Halvorsen's misconduct in the homicide investigation of Noel Andujar.

**Carlos Martínez,** current address and telephone number not known, Adriana Mejia's brother, has information about Adriana and Rosaura at the time of the incident.

**Jose Maysonet**, current address and telephone number not known, has information about Guevara's misconduct with respect to his case.

**Det. Kevin McDonald,** current address and telephone number not known, a CPD detective, has information about the Soto investigation, including evidence recovered at the crime scene, and the interrogations of Plaintiff, Solache, and the Mejias.

**Guadalupe Mejia,** current address and telephone number not known, Rosauro Mejia's sister-in-law, has information about the Mejias, the Soto children in the Mejias' care, Defendants' misconduct and Plaintiffs' innocence.

**Horatio Mejia**, current address and telephone number not known, Rosauro Mejia's brother, has information about Adriana and Rosauro Mejia at the time of the incident.

**Jorge Mejia**, current address and telephone number not known, Rosauro Mejia's brother, has information about Adriana and Rosauro Mejia at the time of the incident.

**Manual Mejia**, current address and telephone number not known, Plaintiff Reyes' wife's brother-in-law, has information about Adriana and Rosauro Mejia at the time of the incident, as well as Plaintiffs' innocence.

**Rosauro Mejia**, current address and telephone number not known, former husband of Adriana Mejia, has information about Adriana Mejia, having Plaintiffs accompany him to take the 3 year old to police, treatment at hands of CPD at 8th District and Grand & Central, including Defendant Guevara's use of force and being

forced to sign a statement that was never adequately interpreted and that he did not understand.

**Jose Melendez**, FCI Lompoc, 3600 Guard Rd, Lompoc, CA 93436, has information about Guevara and Halvorsen's misconduct in the homicide investigation of Noel Andujar.

**Joseph Miedzianowski**, 11502-424, FCI Pekin, P.O. Box 5000, Pekin, IL 61555, has information about Guevara's misconduct in a number of cases, as well as his involvement in criminal conduct.

**Edward Mingey**, 7735 W. Jerome, Chicago, IL 60631, telephone number not known, a supervisory CPD officer, has information about the Soto investigation, Defendant Guevara and other defendants' misconduct with respect to Plaintiffs and many other people whose civil rights Guevara and the other Defendants violated, his knowledge of and participation in the CPD code of silence, and his knowledge of and participation in a pattern and practice of withholding exculpatory evidence.

**Jose Montanez**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, has information about Guevara, Halvorsen, and Mingey's misconduct with respect to him and his case.

**Phillip Mullane**, (773) 259-3188), has information about misconduct with respect to the homicide investigation of Marina Justice.

**Virgilio C. Munoz**, current address and telephone number not known, with information about Guevara's misconduct with respect to the homicide investigation of Edwin Casteneda.

**Warren G. Murdock**, Menard Correctional Center, A80834, P.O. Box 1000 Menard, IL 62259, has information about misconduct with respect to his case.

**Reynaldo Munoz**, current telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Johnny Musa**, current address and telephone number not known, a City of Chicago Fire Department firefighter / paramedic and paramedic at Cook County Jail, has information about a medical intake of Plaintiffs on April 6 at the jail.

**John Naujokas**, 5353 S. Newland, Chicago, IL 60638, current telephone number not known, a CPD officer, has information about the Soto investigation, including photographs of the crime scene taken after the coerced false statements from Plaintiffs.

**David Navarro**, Circuit Judge, Pretrial Division, Leighton Criminal Court Building, 2650 S. California Ave., Chicago, Illinois 60608, (773) 674-0513, a former a former Cook County Assistant State's Attorney, has information about the Soto investigation, including taking statements from Plaintiff Reyes.

**William Negron**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, has information about Guevara and Mingey's misconduct with respect to him and his case.

**Mohammed Omar**, current address and telephone number not known, has information about Guevara's misconduct in a number of cases, as well as his involvement in criminal conduct.

**Sal Ortiz**, 5455 W. Newport Ave., Chicago, IL 60641, with information about Guevara's misconduct with respect to the Ricardo Fernandez homicide investigation.

**John Quigley**, Ohio State University, Michael E. Moritz College of Law, 55 West 12th Avenue, Columbus, OH 43210, has information about the Vienna Convention.

**Thomas O'Malley**, USDHS/USCIS, 101 W. Congress Pkwy Ste 560, Chicago, IL 60605-1074, (312) 239-5946, a former Cook County Assistant State's Attorney, has information about the Soto investigation, including taking a statement from Plaintiff Reyes on April 4.

**Jorge Pacheco**, current address and telephone number not known, has information about Guevara, Halvorsen, and Mingey's misconduct with respect to him and his case.

**Samuel Perez**, 4106 N. Moody, Chicago, IL, has information about Guevara's misconduct with respect to the Ricardo Fernandez homicide investigation, and other cases.

**Timothy Rankins**, current address and telephone number not known, with information about Guevara and Halvorsen's misconduct with respect to the Rodrigo Vargas homicide investigation.

**Carl Richmond**, current address and telephone number not known, has information about Guevara and Halvorsen's misconduct in the homicide investigation of Salvado Ruvalcaba.

**Officer Rieff,** current address and telephone number not known, a Chicago Police officer with information about the Plaintiffs' and Rosauro's transport from 8th District to Grand & Central.

**David Rivera**, current address and telephone number not known, with information about Guevara's misconduct with respect to him.

**Jacques Rivera**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, with information about Guevara's misconduct with respect to him and his case.

**Jason Rivera**, current address and telephone number not known, with information about Guevara and Halvorsen's misconduct with respect to him.

**Angel Rodriguez**, current address and telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Daniel Rodriguez**, current address and telephone number not known, with information about Guevara's misconduct with respect to him and his case.

**Ricardo Rodriguez**, current address and telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Wilfred Rosario**, 2117 S. Ashland, First Floor, Chicago, has information about Guevara's misconduct with respect to him and the homicide investigation of Orlando Guirola.

**Dr. Ross Romin**, 2800 S California Ave # C, Chicago, IL 60608, a physician, has information about Plaintiff Solache's health as of May 1998 and services available at Cermak Health Services of Cook County.

**Sgt. Berscott Ruiz**, current address and telephone number not known, a CPD detective, has information about the Soto investigation, the crime scene, taking evidence from the crime scene, delivering it to Guevara and then inventorying it.

**Robert Ruiz**, 5660 W Grand Ave, Chicago, IL 60639, has information about Guevara's misconduct with respect to him and the homicide investigation of Oscar Arman (Pagan).

**Robert Rutherford**, 4908 W. Patterson Ave, #1, Chicago, IL 60641, telephone number not known, a CPD officer, has information about the Soto investigation, including evidence recovered at the crime scene, and the interrogations of Plaintiffs and the Mejias, as well as his own misconduct and that of the other defendants.

**Kennelly Saez**, current address and telephone number not known, has information about Guevara's misconduct with respect to him and the homicide investigation of Amy Merkes and Jorge Rodriguez.

**Norma Salazar,** current address and telephone number not known, named by Adriana Mejia, investigated by Chicago Police, and released.

**Efrain Sanchez**, 1714 W. Touhy Ave., Chicago, IL, has information about Guevara and Halvorsen's misconduct with respect to him and the homicide investigation of Michael Velez.

**Julio Sanchez**, current address and telephone number not known, has information about Guevara and Halvorsen's misconduct with respect to him and the homicide investigation of Michael Velez.

**Michael Sargent**, current address and phone number not known at this time, has information about misconduct with respect to his case.

**Armando Serrano**, c/o his counsel Jennifer Bonejan, has information about Guevara, Halvorsen, and Mingey's misconduct with respect to him and his case.

**Thomas Sierra**, c/o Loevy and Loevy, 311 North Aberdeen, 3rd Floor, Chicago, IL 60607, 312-243-5900, has information about Guevara, Halvorsen and Mingey's misconduct with respect to him and his case.

**Gabriel Solache,** c/o People's Law Office, 1180 N. Milwaukee, Chicago, IL 60642, 773.235.0070, has information has information relevant to Defendants' misconduct, and as to damages, including the allegations in his Complaint.

**Officer Juan Solis**, current address and telephone number not known, a CPD officer, has information about the Soto investigation, what took place at the 8th District while Plaintiffs and Rosauro Mejia were there, and their transport to Area 5.

**Jorge Soto**, current address and telephone number not known, brother of Mariano Soto, has information about the Soto investigation, the Soto family, the crime scene.

**Kevin Smith**, (708) 310-5588 address not known at this time, has information about misconduct with respect to the homicide investigation of Marina Justice.

**Dennis Stankus**, current address and telephone number not known, a CPD officer, has information about the Soto investigation, including photographs of the crime scene taken after the coerced false statements from Plaintiffs.

**Minnie Tenort**, current address and telephone number not known, was a paramedic at Cermak Hospital, has information about Cook County Jail intake evaluation of Adriana Mejia.

**Ramon Torres**, current address and telephone number not known, has information about Guevara's misconduct with respect to the homicide investigation of Jose Garcia.

**Y.O. Daniel Trevino**, 6886 N. Tonty Ave, Chicago, IL 60646, telephone number not known, a CPD officer, has information about the Soto investigation, including the custody of the Soto children, the interrogations of Plaintiffs and the Mejias, and Plaintiff Reyes' April 4 statement to ASA O'Malley.

**Annie Turner**, current address and telephone number not known, with information about Guevara misconduct with respect to her.

**Ferdinand Vargas**, current address and telephone number not known, with information about Guevara and police misconduct with respect to him.

**David Valentin**, current address and telephone number not known, a CPD officer, has information about the Soto investigation, including the crime scene.

**Andrew Varga**, Cook County State's Attorney's Office, 2650 S California Ave., Cook County State's Attorney's, Chicago, IL 60608-5146, (773) 674-2717, a Cook County Assistant State's Attorney, has information about the Soto investigation, including the interrogations of Plaintiffs and the Mejias, and about taking statements from Plaintiff Reyes.

**David Velazquez**, current address and telephone number not known, with information about Guevara's misconduct with respect to him.

**Victor Vera**, current telephone number not known, has information about Guevara's misconduct with respect to him and his case.

**Francisco Vincente**, current address and telephone number not known, with information about Guevara's misconduct with respect to multiple cases, including Armando Serrano, Jose Montanez, Robert Bouto and Geraldo Iglesias.

**Melvin Warren**, current address and telephone number not known, with information about Guevara's misconduct with respect to him, as memorialized in CR No. 150473.

**Karin Wehrle Dooley**, Cook County State's Attorney's Office, 5600 Old Orchard Road, Skokie, IL 60077-1051, 847-470-7300, a Cook County Assistant State's Attorney, has information about the Soto investigation, including taking statements from Plaintiff Reyes.

**Barbara Wilson**, deceased, an Illinois State Police DNA analyst, has information about the Soto investigation, including the DNA analysis based on standards provided.

**Rudy Rodolfo Zaragoza**, current address and telephone number not known, with information about Guevara's misconduct with in the homicide investigation of Rodney Kemppainen.

Plaintiffs' investigation continues. Plaintiffs also reserve the right to call any witnesses disclosed by Defendants.

> 2.      Persons who have given written or recorded statements relevant to any

party's claims or defenses include:

- Plaintiffs, Defendants, Adriana and Rosauro Mejia, and others, have given statements in police reports and Cook County assistant state's attorneys' reports related to the Soto murder, as well as in suppression hearings, trials, and post-conviction proceedings related to that crime. Such statements in the possession of Plaintiffs are being produced with these mandatory disclosures.

- The following witnesses have given sworn statements in various criminal trials, post-conviction hearings, and civil cases in which Defendant Guevara and other Defendants are accused of wrongful convictions and other acts of misconduct: Reynaldo Guevara, Ernest Halvorsen, Jacques Rivera, Wilfred Rosario, Carl Richmond, Kennelly Saez, Julio Lugo, Jose Melendez, Samuel Perez, Salvador Ortiz, Evelyn Diaz, William Dorsch, Robert Ruiz, Kennelly Saez, Virgilio Muniz, Efrain Sanchez, Luis Figueroa, Timothy Rankins, Adrian Duta, John Duta, Leshurn Hunt, Adlofo Frias Muniz, Francisco Vincente,

- Statements attributed to individuals in interviews and reports done by or on behalf of Scott Lassar.

- Statements attributed to Plaintiffs in medical records

Plaintiffs' investigation continues, and Plaintiffs reserve the right to supplement their responses as discovery proceeds.

> 3.      List of documents, electronically stored information, and tangible

things: Plaintiffs are producing documents with these initial disclosures. These

Solache/Reyes documents include, *inter alia*, the following:

- o Police reports
- o Autopsy report
- o Transcripts of criminal proceedings
- o DNA testing documents
- o Lab reports
- o Appellate court documents
- o Post-conviction documents, including hearing transcripts
- o 12/21/2017 Order vacating Plaintiffs' convictions

In addition to the above, Plaintiff Reyes has documents related to the Sidley Austin investigation into the misconduct of Defendant Guevara; documents, such as police reports, transcripts and statements, related to other cases involving misconduct by Defendants Guevara, Halvorsen, Mingey and others; and CPD investigative files and other police files containing evidence of a systemic failure to disclose material information to criminal defendants. Many of these documents are under a protective order; Plaintiffs seek to confer about the production of these materials.

Plaintiffs' investigation into this matter continues. Plaintiffs reserve the right to modify and supplement these documents as additional information becomes available.

4. Facts relevant to Plaintiffs' claims, and the legal theories upon which they are based:

Plaintiffs came to Defendants' attention when, on April 3, 1998, as good samaritans, they accompanied Rosauro Mejia and Arturo Reyes to the police station with a little boy who news media reported missing from the scene of his parents' murder. Plaintiffs were innocent, and knew nothing about the murders or kidnappings. Regardless, Plaintiffs were held for days under isolation, handcuffed,

14

deprived of food, water and sleep, and beaten and lied to by Defendant Guevara and other police defendants (Plaintiff Reyes alleges the involvement of the prosecutor defendants). Plaintiffs' wills were ultimately overcome, and they gave false inculpatory statements which were written in English, a language Plaintiffs could not speak, read or write. Guevara and other defendants also had exculpatory information they concealed from Plaintiffs, the prosecution and the courts, from the day of Plaintiffs' arrests continuing to the present.

As a result of Defendants' conduct and conspiracy, and in spite of the fact that there was no forensic evidence connecting either Plaintiff to the crimes – indeed there was DNA pointing to an unidentified male -- they were convicted of two murders and kidnappings that they did not commit. They both stayed in prison for almost two decades until their exonerations and release on December 21, 2017.

Plaintiffs were not the only innocent men whose wrongful convictions Defendant Guevara and the other defendants caused, and the City of Chicago and its police department had full knowledge of multiple allegations against Guevara and others. The policies, practices and customs of the City of Chicago and its police department, of a code of silence, of systemically withholding exculpatory evidence from criminal defendants, of coercing false confessions from criminal suspects, and of failing to adequately discipline, train and supervise officers, were the moving force behind the violations of Plaintiff's rights and the rights of at least 18 other wrongfully convicted men, using similar tactics of coercing false confessions and other false statements, and of other civilians that have alleged abuse.

Based on the actions above, each Plaintiff asserts claims under 42 U.S.C. § 1983 against the Individual Chicago Police Defendants for coerced confession, fabrication of false witness statements, deprivation of liberty without probable cause, violations of due process, and failure to intervene, and conspiracy. Plaintiff Reyes additionally asserts claims under 42 U.S.C. § 1983 against the Prosecutor Defendants for coerced confession and fabrication of false witness statements. Each Plaintiff asserts claims *Monell* policy and practice claims under 42 U.S.C. § 1983 against the City of Chicago. Each Plaintiff also asserts state law claims for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, respondeat superior and indemnification.

5. As a result of their wrongful prosecution and conviction, as well as years spent in prison for a crime they did not commit, Plaintiffs suffered and continue to suffer physical injuries, physical and emotional pain, psychological damage, anguish, humiliation, destruction of their reputations, loss of their young adulthood, disruption of their lives and intimate and family relationships, suspension of and interference with their ability to pursue an education, career, and their opportunity raise a family, and deprivation of all of the basic pleasures of human experience, including the freedom to live one's life as an autonomous human being. All of this damage has occurred of a nature and in an amount that cannot be quantified.

6. Plaintiffs have no documents subject to disclosure.

Plaintiffs reserve the right to supplement these disclosures as additional

16

information comes to light.

**RESPECTFULLY SUBMITTED,**

/s/Anand Swaminathan
*Counsel for Arturo DeLeon-Reyes*

Jon Loevy
Russell Ainsworth
Anand Swaminathan
Steve Art
Rachel Brady
Sean Starr
LOEVY & LOEVY
311 N. Aberdeen, 3rd floor
Chicago, IL 60607
(312) 243-5900


/s/ Jan Susler
Jan Susler
John L. Stainthorp
Ben H. Elson
PEOPLE'S LAW OFFICE
1180 N. Milwaukee, 3rd floor
Chicago, IL 60642
773.235.0070

*Attorneys for Plaintiff Gabriel Solache*

17

# Exhibit B

1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS

3                     EASTERN DIVISION

4   ARTURO DE LEON-REYES,          )
                            )

5            Plaintiff,     )
                            )

6              vs.         )  No. 18 C 1028
                            )

7   REYNALDO GUEVARA, et al.,    )
                            )

8           Defendants.    )
   ------------------------------------)

9   GABRIEL SOLACHE,           )
                            )

10           Plaintiff,     )
                            )

11             vs.         )  No. 18 C 2312
                            )

12   REYNALDO GUEVARA, et al.,    )  Chicago, Illinois
                            )  December 19, 2019

13           Defendants.    )  9:19 A.M.

14               TRANSCRIPT OF PROCEEDINGS - Status
      BEFORE THE HONORABLE SUNIL R. HARJANI, Magistrate Judge

15   APPEARANCES:

16

17   For Plaintiff        LOEVY & LOEVY
   DeLeon-Reyes:        311 North Aberdeen Street
                     Third Floor

18                   Chicago, Illinois  60607
                     BY:  MR. SEAN STARR

19

20                 TRANSCRIBED BY:

21             PAMELA S. WARREN, CSR, RPR
           1751 West Howard Street, Ste 183

22             Chicago, Illinois  60626
               (312) 823-0001

23              PSWCSR@gmail.com

24   **NOTE:  Please notify of correct speaker identification.**
   **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**

25   **UNINTELLIGIBLE.**

```
 1   APPEARANCES:  Continued

 2   For Plaintiff Solache:     PEOPLE'S LAW OFFICES
                                1180 North Milwaukee Avenue
 3                              Chicago, Illinois  60642
                                BY:  MS. JANIS M. SUSLER
 4
     For Defendant Guevara:     LEINENWEBER, BARONI & DAFFADA, LLC
 5                              120 North LaSalle Street
                                Suite 2000
 6                              Chicago, Illinois  60602
                                BY:  MR. MICHAEL JOHN SCHALKA
 7
     For Defendants Varga,      COOK COUNTY STATE'S ATTORNEY
 8   Brualdi, Wehrle, O'Malley  Civil Litigation Bureau
     and Cook County:           50 West Washington Boulevard
 9                              Fifth Floor
                                Chicago, Illinois  60602
10                              BY:  MR. EDWARD M. BRENER

11   For Defendants Biebel,     THE SOTOS LAW FIRM, P.C.
     Naujokas, Stankus,         141 West Jackson Boulevard
12   Trevino, Dickinson,        Suite 1240A
     Harvey, Rutherford,        Chicago, Illinois  60604
13   and Halvorsen              BY:  MS. CAROLINE P. GOLDEN

14   For Defendant Navarro:     REITER BURNS LLP
                                311 South Wacker Drive
15                              Suite 5200
                                Chicago, Illinois  60606
16                              BY:  MR. DANIEL JEROME BURNS

17   For Defendant Chicago:     ROCK FUSCO & CONNELLY, LLC
                                321 North Clark Street
18                              Suite 2200
                                Chicago, Illinois  60654
19                              BY:  MS. EILEEN ELLEN ROSEN

20   For Defendant Cook County:OFFICE OF THE COOK COUNTY
                                    STATE'S ATTORNEY
21                              Complex Litigation Section
                                500 Richard J. Daley Center
22                              Chicago, Illinois  60602
                                BY:  MR. RYAN GILLESPIE
23

24

25
```

3

1      (Proceedings held in open court:)

2           THE CLERK:  18 C 1028, DeLeon-Reyes versus Guevara, et

3      al., and 18 C 2312, Solache versus City of Chicago.

4           MR. STARR:  Good morning, your Honor.  Sean Starr on

5      behalf of plaintiff Reyes.

6           MS. SUSLER.  Jan Susler on behalf of plaintiff Gabriel

7      Solache.

8           MS. ROSEN:  Eileen Rosen on behalf of defendant City

9      of Chicago.

10           MS. GOLDEN:  Caroline Golden for the individual

11      officer defendants.

12           MR. SCHALKA:  Michael Schalka for defendant Guevara.

13           MR. BRENER:  Edward Brener, B-r-e-n-e-r, for Tom

14      O'Malley, Heather Brualdi, Andrew Varga, Karin Wehrle, and Cook

15      County.

16           MR. GILLESPIE:  Ryan Gillespie for the Cook County

17      defendants.

18           MR. BURNS:  Daniel Burns on behalf of defendant

19      Navarro.

20           THE COURT:  Okay.  Good morning all of you.

21           We're here for status.  Can you tell me the status of

22      your discovery?

23           MR. STARR:  It is ongoing, your Honor.  We have done a

24      number of depositions and have scheduled a number of additional

25      depositions since we were here last time.

```
 1              We are conferring about some requests for production,
 2      I believe, still, some documents that the city maybe has or
 3      doesn't have.
 4              And, yeah, I mean, we have a bunch of stuff scheduled
 5      for January and February.  The plaintiffs's deps have been
 6      scheduled.
 7              THE COURT:  Okay.
 8              MR. STARR:  That's where we're at.
 9              THE COURT:  Okay.  I'm with your -- I was with your
10      status report, and I wanted to see what had been accomplished.
11              Did Robert Biebel's deposition take place?
12              MR. STARR:  Yes, your Honor.
13              THE COURT:  David Navarro?
14              MR. BURNS:  No.
15              MS. SUSLER:  No.
16              THE COURT:  Edwin Dickinson?
17              MR. STARR:  No, your Honor.
18              THE COURT:  Rutherford?
19              MR. STARR:  Yes.
20              THE COURT:  And then Daniel Trevino is for tomorrow.
21              MR. STARR:  That's actually rescheduled.
22              MS. SUSLER:  That's rescheduled.
23              THE COURT:  Rescheduled?
24              MR. STARR:  Yeah.
25              THE COURT:  Okay.  Edward Mingey?
```

1          MR. STARR:  We're working on --

2          MS. ROSEN:  We're working on it.

3          MR. STARR:  We're working on scheduling it.

4          THE COURT:  All right.  And then you have the

5 plaintiffs's deps as the next one.

6          Okay.  What about the third party deps?  Adrien Mejia

7 (phonetic) took (unintelligible), right?

8          MR. STARR:  Yeah.

9          MS. ROSEN:  Correct.  That dep is complete.

10         THE COURT:  And then what about Leo Varga

11 (unintelligible)?

12         MR. STARR:  He was deposed.

13         THE COURT:  Deposed, okay.

14         Lourdes Rodriguez?

15         MR. STARR:  Deposed.

16         MS. ROSEN:  Deposed.

17         THE COURT:  Okay.  Raul DeLeara (phonetic)?

18         MR. STARR:  He was set for deposition here.  He came

19 to his deposition, and then he said that he wanted to have an

20 attorney, and so we're going to reschedule his dep.

21         THE COURT:  Is he getting his own attorney?

22         MR. STARR:  He has an attorney.  He contacted an

23 attorney during the deposition, and I don't know if he is going

24 to bring him or what, but he's going to get rescheduled.

25         THE COURT:  All right.  And then the CPD

1    (unintelligible) of Solice (phonetic) and Galoop (phonetic).

2            MR. STARR:  They were --

3            MS. ROSEN:  They were deposed.

4            THE COURT:  Raul Arronda?

5            MR. STARR:  He was rescheduled.

6            THE COURT:  So ball park, I know we haven't set a fact

7    discovery cutoff yet, we are going to need to at some point,

8    how many depositions per side do you anticipate that you have

9    left?

10            We'll go with plaintiffs.

11            MR. STARR:  It is a little difficult to tell, your

12    Honor.  I mean, I would say potentially there is 20 more

13    depositions between the two -- two sides --

14            THE COURT:  Two sides.

15            MR. STARR:  -- give or take.

16            MS. ROSEN:  (Unintelligible) the (unintelligible)

17    depend -- like some depend -- are dependent on what the other

18    people say and --

19            MR. STARR:  Exactly.

20            THE COURT:  Uh-huh.

21            MS. ROSEN:  Yeah.  And we haven't deposed the

22    plaintiffs yet so that could bring new names to the surface.

23            And then there is the issue of 404(b) witnesses.  So

24    that would be excluding that.  There are --

25            MR. STARR:  Yes.

1    MS. ROSEN:  There has not been a discussion between

2  the parties about the scope of the 404(b).  My recollection is

3  that there is -- I'm guestimating -- 30, 40, 50 404(b)

4  witnesses identified at this point.

5    THE COURT:  Okay.

6    MS. ROSEN:  So I believe there has been some

7  discussions between the officer defendants and plaintiffs about

8  mirroring that, but I could be confusing cases at the moment,

9  so --

10    MR. STARR:  Very preliminary discussions, yes.

11    MS. ROSEN:  Yes.

12    THE COURT:  Okay.  Baffles me too.

13    Okay.  So I think we need to -- and these depositions,

14  the 20 to 30 include Monell-related depositions as well?

15    MS. ROSEN:  No, Judge, because the Monell issue is

16  still sitting with Judge Seeger.

17    THE COURT:  Right, in terms of production of files,

18  with respect to the homicide files.  The CR files are not.

19    MS. ROSEN:  Correct.

20    THE COURT:  Right.  But I'm sorry, are you telling me

21  you are doing no Monell discovery at this time in terms of

22  depositions?

23    MR. STARR:  Well, I think that from the plaintiffs's

24  perspective, we asked some of the defendants Monell-related

25  questions.

```
 1              THE COURT:  Okay.

 2              MR. STARR:  So I wouldn't say there has been no

 3   discovery done on Monell.

 4              THE COURT:  Uh-huh.

 5              MR. STARR:  But we haven't taken any 30(b)(6)

 6   witnesses or any other specific Monell-only depositions.

 7              MS. ROSEN:  And I don't believe there has been a

 8   30(b)(6) notice even --

 9              MR. STARR:  No.

10              MS. ROSEN:  -- issued --

11              MR. STARR:  No, no.

12              MS. ROSEN:  -- yet.

13              THE COURT:  Okay.  Do you believe you need the

14   homicide files before you take the 30(b)(6) deposition?

15              MR. STARR:  I believe it's the general consensus, your

16   Honor.

17              THE COURT:  Okay.  So sounds to me that in order to

18   move this along, the 20 to 30 depositions you have left we need

19   to get some definitive schedule going as to -- how many

20   depositions are you thinking you're taking a month in the

21   months of January, February, and March, ball park?

22              MS. ROSEN:  Well, we have -- we have lots of travel

23   built in to --

24              MR. STARR:  There is -- yeah.

25              MS. ROSEN:  -- all of this.  So there is depositions
```

1    in California set right now for two witnesses.

2         THE COURT:  People who have moved away?

3         MS. ROSEN:  People that have moved away, that's

4    correct.

5         MR. STARR:  Florida.

6         MS. ROSEN:  There is Florida for some of the -- one or

7    two of the defendants.

8         THE COURT:  Uh-huh.

9         MS. SUSLER:  Mexico.

10        MS. ROSEN:  There is Mexico for the plaintiffs.

11        MR. STARR:  Wisconsin.

12        MS. ROSEN:  Wisconsin for some of the witnesses.

13        THE COURT:  Okay.

14        MS. ROSEN:  So --

15        MS. GOLDEN:  Colorado.

16        MR. STARR:  Colorado.

17        MS. ROSEN:  Colorado.

18        THE COURT:  Uh-huh.

19        MS. ROSEN:  So as far as the month of January goes, I

20   think we're probably at a couple a week, give or take,

21   depending on the travel issues right now is what we're looking

22   at.

23        THE COURT:  Okay.

24        MS. ROSEN:  And then February is a little more

25   difficult because that's when we're -- as we get to the end of

1    February, that's when we're planning to do the plaintiffs's

2    depositions, and that's going to be in Mexico.  And we're going

3    to be in Mexico probably for about a week because it is going

4    to be a three-day dep --

5              MS. SUSLER:  For each.

6              MS. ROSEN:  -- for each plaintiff.

7              THE COURT:  Uh-huh.  I remember that.

8              MS. ROSEN:  Yeah, so -- and then the second plaintiff

9    will go end of March.

10             THE COURT:  Okay.  Who is going first?

11             MR. STARR:  DeLeon-Reyes.

12             MS. ROSEN:  Reyes.

13             MR. STARR:  And, your Honor, if I may raise this, we

14   have conferred a little bit with the defendants on the -- on

15   the three days of the deposition.  We understand your order

16   calls for a day in between each deposition day talking to our

17   clients.  Given their -- their schedules and their life down in

18   Mexico, they asked to try to put that closer together.  They

19   are willing to do them back-to-back days.  So we're trying to

20   work out with defendants a schedule that means that we don't

21   necessarily spend seven -- six or seven days down in Mexico

22   twice --

23             MS. SUSLER:  For each plaintiff.

24             MR. STARR:  -- for each plaintiff, yeah.

25             THE COURT:  Yes.  Yes.

1       MR. STARR:  I know you said that if we agreed to

2  something, that would be fine.

3       THE COURT:  Agreed.  That's fine.  I gave you the

4  option in order to reduce the burden.  I ruled if it were just

5  a burden on the plaintiffs, but I gave you the option to work

6  it out yourself if you wanted to move it along.

7       MR. STARR:  Okay.

8       THE COURT:  So that's fine with me.

9       MS. ROSEN:  Okay.

10      MS. SUSLER:  We appreciate that.

11      MS. ROSEN:  And we're talking.  I don't think we can

12  do three straight days.  I think that's asking too much of

13  everybody.

14      THE COURT:  I think that's right for the lawyers

15  too --

16      MS. ROSEN:  Yeah.

17      MR. STARR:  Yeah.

18      THE COURT:  -- as well as the --

19      MR. STARR:  And we didn't --

20      MS. ROSEN:  Yeah.

21      MR. STARR:  And we said that yesterday.

22      MS. ROSEN:  Yeah, so there has been alternatives that

23  were offered by plaintiff, and we're discussing it.  So we're

24  trying to work it out.

25      THE COURT:  Okay.  All right.  So what I would like to

1   do -- I think the last deposition status report that I'm

2   working off of was one in October, October 21st of 2019.  I

3   would like to get an updated one with respect to your January,

4   February, March depositions that you have scheduled.  And I'd

5   also like to see depositions scheduled for the months of April

6   and May and see what those look like.

7           Obviously we have the holidays coming up, so I'll push

8   this out to January in terms of the filing of the report.

9   Let's say January 20th.  That sounds okay to everybody?

10          MR. STARR:  Ummm -- yeah.

11          MS. SUSLER:  I think we're in California --

12          MR. STARR:  Some of us are.

13          MS. SUSLER:  I am (unintelligible).

14          MR. STARR:  There is deps in this case on 20 and 21.

15          THE COURT:  20 and 21.

16          MS. GOLDEN:  If we could have another week after that.

17          MR. STARR:  That would be fine with us.

18          MS. GOLDEN:  Get back and collect.

19          THE COURT:  Uh-huh.  Okay.  So let's say the 27th.

20          MR. STARR:  Okay.

21          MS. ROSEN:  That's fine, Judge.

22          THE COURT:  But that will take you through May.

23          So I will set that for January -- I said the 27th, did

24  I say that?

25          MR. STARR:  Yeah.

1    MS. ROSEN:  Yes.

2    THE COURT:  Okay.

3    MR. STARR:  And just on the deps, your Honor, I

4  believe plaintiffs have asked for defendant Guevara's dep in

5  this case.  So that's just -- that's on the schedule

6  potentially as well.

7    THE COURT:  Okay.  All right.  So I'll take a look at

8  that report in terms of deps.

9    MR. STARR:  Yeah.

10    THE COURT:  In terms of the 404(b) witnesses, I think

11  you probably know I have ruled on this matter on the basis of

12  proportionality concerns a number of times in other cases and

13  have limited the plaintiff to ten 404(b) witnesses, with leave

14  to substitute those witnesses if you cannot find somebody, up

15  to a certain point.  At some point we get too close to the end

16  of discovery cutoff that you can no longer substitute.

17    I'm not ruling here.  I'm happy to take a fresh look

18  at it.  Every case is different.  And you might present

19  arguments that I have not reached before.  But I know I have

20  done it at least twice on proportionality concerns because my

21  view, generally, is that most district judges aren't going to

22  limit the amount of 404(b) that they allow to be admitted at

23  trial to a number of -- a limited number of events and a

24  limited number of witnesses so that the trial does not be

25  consumed by multiple other criminal conduct of other people

1    involving other defendants or individuals to a point where it

2    becomes cumulative and then 403 concerns start to infect the

3    trial.

4            But having said that, I think you already know that.

5    So you can -- why don't -- once you work it out.  And then you

6    can always bring me a motion if you are not able to.  Okay?

7            But what I would like to at least see is these 404(b)

8    witnesses start getting scheduled.  So do you think you can do

9    that too as part of your status report in January?

10            MS. ROSEN:  Sure.

11            MR. STARR:  Yeah.  I think we can certainly start to

12    begin to schedule them.

13            THE COURT:  Yeah.  Because I think the -- it makes

14    sense to try and get through as much of the individual claims

15    and the 404(b) witnesses the first part of 2020 before you get

16    your ruling on Monell, in which case then you can shift gears

17    to Monell, whatever the limitations are that come out of that,

18    if any.

19            On top of that you're still going to have to do expert

20    discovery at some point.  That right now is looking closer to

21    2021.

22            Does that sound about right?

23            MR. STARR:  That sounds about right, your Honor.

24            MS. ROSEN:  Yes.

25            THE COURT:  All right.  So the question for you with

1    that in mind is is that what you want to do?  Because we

2    haven't talked settlement in this case.  I know Judge Seeger

3    has ordered some letters.  I have a sense of what the numbers

4    might be from past cases and so do you.  All of you are very

5    experienced.  You do this for a living.

6              Do you see an avenue for talking settlement that can

7    shortcut this and not take us to 2021?

8              MR. STARR:  Well, there is an outstanding -- we had

9    submitted a demand letter --

10             THE COURT:  Okay.

11             MR. STARR:  -- and it was -- we're waiting for the

12   city.  I think you have till the 17th.

13             MS. ROSEN:  Yeah.  We have until January 17th to

14   respond.

15             MR. STARR:  Yeah.

16             THE COURT:  Okay.

17             MS. ROSEN:  So probably it makes sense for plaintiffs

18   to take a look at that.

19             MR. STARR:  I think we'll have a better answer for you

20   after that.

21             THE COURT:  After that?  Okay.

22             MR. GILLESPIE:  And, Judge, just to add, the Cook

23   County defendants have made a counter offer.

24             THE COURT:  Uh-huh.  Okay.  Very good.

25             MR. STARR:  And I think to get back to your question

1   about expert discovery, I think it is plaintiffs's perspective

2   that we potentially can get to that by the end of 2020.  I

3   mean, obviously we'll see how the schedule plays out.

4          THE COURT:  Yeah.

5          MR. STARR:  But I think we -- if we get these

6   depositions scheduled of January through May, that there is a

7   decent opportunity to do that.

8          THE COURT:  Yeah.  I think it really just depends what

9   you want to do with the Monell discovery.

10          MR. STARR:  That's fair enough.

11          THE COURT:  Which is, if you are trying to do what the

12   defendants think what you want to do, which is dive into every

13   single homicide file and try to prove some degree of a pattern

14   and practice in every file, that is a much longer lift.  If you

15   are trying to use an expert in some way in trying to summarize

16   and find opinions based upon file review, without the need for

17   depositions of each individual factual circumstance, that's

18   less of a lift.

19          So we're not going to know that until we see what the

20   scope is.  But I think that's going to be determined as to how

21   long your expert discovery takes, when it can be started.

22          Okay.  So I appreciate all your hard work on this.  I

23   know you have worked hard to move this case and schedule

24   depositions.  And given the extent of the amount of work you

25   have to do, all I can say is keep plugging away at it, keep

1  getting things scheduled.

2  We all know what the plan is going forward in terms of

3  how much work has to be done, and so I -- let's -- let me set a

4  status after your report is filed so we can talk about that,

5  which will be kind of early February, Lynette.

6  (Unintelligible colloquy.)

7  MS. ROSEN:  That's fine.

8  MR. STARR:  Yeah.

9  THE COURT:  Okay?  Very good.

10  Anything else?

11  MS. ROSEN:  Thanks, Judge.

12  THE COURT:  Okay.  Thank you.  Have a good holiday,

13  everybody.

14  MS. SUSLER:  Thank you.

15  MS. ROSEN:  You too.

16  MR. STARR:  You too have good holidays, Judge.

17  (Which concluded the proceedings.)

18  CERTIFICATE

19  I certify that the foregoing is a correct transcript
   from the digital recording of proceedings in the above-entitled
20  matter to the best of my ability, given the limitation of using
   a digital-recording system.

21

22  /s/ Pamela S. Warren                    January 25, 2020
   Official Court Reporter                       Date
   United States District Court
23  Northern District of Illinois
   Eastern Division

24

25

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | No. 18 C 1028 |
| Plaintiff, | ) | |
| | ) | Hon. Steven C. Seeger, |
| v. | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | Hon. Sunil R. Harjani, |
| | ) | Magistrate Judge |
| Defendants. | ) | |
| | | |
| GABRIEL SOLACHE, | ) | |
| | ) | No. 18 C 2312 |
| Plaintiff, | ) | |
| | ) | Hon. Steven C. Seeger, |
| v. | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, et al., | ) | Hon. Sunil R. Harjani, |
| | ) | Magistrate Judge |
| Defendants. | ) | |

## PLAINTIFFS' CORRECTED 404(b) WITNESS LIST

Pursuant to the Court's order, Rule 26, and the parties' discussions, Plaintiffs

hereby provide the following updated list of Rule 404(b) witnesses who Plaintiffs

may call live at trial, along with the cases with which each witness is associated,

the Defendants and other Chicago Police officers who worked on those cases, and

the years in which the investigations at issue took place. Plaintiffs' investigation

into these matters is ongoing, and they reserve their right to disclose additional

witnesses.

1

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Abrego | 1999 | Guevara, Wojcik, Bogucki, Halvorsen | Eruby Abrego, Nicasio Santiago |
| Almodovar/Negron | 1994 | Guevara, Halvorsen, Olszewski, Mingey, Olszewski, Siwa, Lohman, Rutherford, McDonald, Troken | Roberto Almodovar, Clarence Burch, Jackie Grande, William Negron, Kennelly Saez |
| Andino | 1994 | Guevara, Halvorsen, Koncz, Gawrys, Santopadre, Sanders | Carlos Andino, Christopher Smith, Kimberly Smith, Katherine Smith, Theresa Rios, Loretta Smith, Karen Cintron, Javier Estrada |
| Arcos/Martinez | 1991 | Guevara, Gawrys | Xavier Arcos, Rudy Martinez, Wilfredo Rosario |
| Bouto | 1993 | Guevara, Halvorsen, Mingey, Pang, Pergande, Maher, Pena, Marron, Hughes | Robert Bouto, Rey Lozado, Jacob Lozado, Carl Richmond, Francisco Vincente, Edwin Maldonado |
| Buzzo (OPS complaint) | 1986 | Guevara, Guzman, and Gawrys | Bill Buzzo, Steve Buzzo |
| Cardona | 1987 | Guevara | Gregorio Cardona, Robert Cardona |
| Carreon | | | Rodolfo Carreon |
| Childress (OPS complaint) | 1997 | Guevara, Brennan | Craig Childress |

2

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Colon | 1991 | Guevara | Charles Buchholz, David Colon, Efrain Sanchez, Julio Sanchez |
| Cruz, Allen | 1986 | | Allen Cruz, Israel Hernandez |
| Cruz, Jose | 1993 | Guevara, Halverson, Wojcik, Mingey, Riccio, Gawrys, Ferrari, McDonald | Jose Cruz, Pedro Jarmarillo |
| Cruzado, Eliezer | 1993 | Guevara, O'Neill, Figueroa | Javier Claudio, Diane Shalla, Tomika Vallo, Miguel Cruz, Eliezer Cruzado |
| Davila | 1995 | Guevara, Gawrys, Fallon, Johnston, Vukonich, Collin, Pena, Salon, Pergande | Edwin Davila, Michael Ybarra, Laura Patania, Ivar Valesco |
| Dembski | 1997 | Guevara, Halvorsen, Kazmierski | Voytek Dembski, Artur Ozarek, Herdus Zara |
| Diaz | 1995 | Guevara | Angel Diaz, Luis Figueroa |
| Duta | 1994 | Guevara | Adrian Duta, John Duta |
| Flores, Johnny | 1990 | Guevara, Paulnitsky, Villareal | Johnny Flores |
| Flores, Mario | 1984 | Guevara | Anna Flores, Graciela Flores Gardner, Mario Flores, Harry Gomez, Emillie Pelgado, Jose Negro, Vladimir Ramos, Nancy Lebron |

3

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Flores, Ramiro | 1986 | Guevara | Ramiro Flores |
| Flores, Santos | 1995 | Guevara, Halvorsen | Santos Flores, Gloria Ortiz Bourdoy, David Rivera, Nelson Rivera |
| Frias-Munoz | 1993 | Guevara, Dorsch | Adolfo Frias-Munoz |
| Garcia (OPS Complaint) | 1986 | Guevara | Rafael Garcia, Pedro Rodriguez, Malendez Angelo |
| Gaya/Ellison | 1996 | Guevara, Halvorsen, Brennan, Mason | Charles Ellison, Angel Gaya, Maria Rivera |
| Georgakapoulos | 1994 | Guevara | Sotirios Georgakapoulos, Angie Chiodires, Timothy Downs, Susan Shelton, Greg Faye |
| Giron | | Guevara | Martin Giron |
| Godinez | 1986 | Guevara, Paulnitsky | Walter Godinez, Julio Montes, Jean Rodriguez, Judy Centeno |
| Gomez | 1997 | Guevara, Ruiz, Pergande, Mingey, Biebel | Ariel Gomez, Ruth Antonetty, Maria Castro, Dragon Jovanovic, Jose Dominguez, Paul Yalda, John Yacoub |
| Gonzalez, Alfredo | 1990 | Guevara, Halvorsen, Mingey, Epplen, Montilla, Paulnitsky, DiFranc | Jose Maysonet, Alfredo Gonzales, Justino Cruz, Christopher Gossens, Efrain Cruz, Francisco Veras |
| Gonzalez, Delilah | | | Delilah Gonzalez |
| Gonzalez, Joaquin | 1985 | Guevara, Paulnitsky | Joaquin Gonzalez |

4

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Gonzalez, Nelson | | Guevara | Nelson Gonzalez |
| Gonzalez, Tony | 1998 | Guevara | Tony Gonzalez, Luis Marrero, Yesenia Rodriguez |
| Guevara, Magnaset | 1998 | Guevara | Magneset Guevara |
| Hauad, Jamie | | | Jamie Hauad |
| Hernandez, David | 1998 | | David Hernandez |
| Hernandez, Juan (CR) | | Guevara, Halvorsen, Wojcik | Juan Hernandez |
| Hernandez, Rosendo & Juan | 1997 | Guevara, Halvorsen, DeGraff, Bemis | Juan Hernandez, Rosendo Hernandez, Fred Rock, Jondalyn Fields, Mohamed Omar, Samuel Perez, Abraham Gutierrez, Nelson Pacheco, Desiree Dones, Hector Vasquez |
| Hernandez, Ruben | 1999 | Guevara | Ruben Hernandez, Mike Solac |
| Herrera | 1983 | | Sergio Herrera |
| Hunt | 1983 | Guevara, Jaglowski, Noon, Kaupert, Gaudio, Petrocelli | Leshurn Hunt, Rodney Hunt, Roberto Castillo |
| Hyde (OPS complaint) | 1991 | Guevara | Rosemary Hyde |
| Iglesias | 1993 | Guevara, Halvorsen, Gawrys, Riccio, Santopadre, Rutherford, McDonald, Zuniga, Assaf, Biebel | Francisco Vincente, Geraldo Iglesias, Rosendo Ochoa, Hugo Rodriguez |
| Johnson, Chad | 1998 | Guevara, Redman, Wodnicki, Graff, Beam, Wieland, Miedzianowski | Chad Johnson, Jose Flores, Willie Hobson, Jose Roman, Joseph Miedzianowski |

5

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Johnson, Demetrius | 1991 | Guevara, Mingey, Erikson | Aby Gonzalez, Demetrius Johnson, Madalia Reyes, Elizabeth Martinez |
| Johnson, Juan & Henry | 1989 | Guevara, Gawrys, Mingey | Henry Johnson, Juan Johnson, Sal Ortiz, Samuel Perez, Edwin Gomez, Guillermo Vasquez, Juan Michel, Armando Mendez |
| Johnson, Semara | 1996 | Guevara | Semara Johnson |
| Laboy, Hector | 2000 | Guevara | Hector Laboy |
| Lassar Investigation | n/a | Guevara | Scott Lassar |
| Laureano | 1991 | Guevara, Halvorsen | George Laureano, David Velasquez, Jason Rivera, Jason Velez, Daniel Rodriguez |
| Lloyd (OPS complaint) | 1982 | Guevara, Mingey, Noon | Almarie Lloyd, Job Lloyd |
| Lopez | 1992 | Guevara, Paulnitsky, Boyle | Allen Lopez |
| Martinez, John | 1999 | Guevara | John Martinez, Melony/Mellony Parker, Margarita Casiano |
| Martinez, Jossie (OPS complaint) | 1995 | Guevara, Koncz | Jossie Martinez, Juanita Martinez |
| Martino, Julio | | Guevara | Julio Martino |
| McDowell | 1997 | Guevara, Maher | Antonio McDowell |
| McMillan | 1985 | Guevara and others | Charles McMillan |
| Mejia (OPS complaint) | 1994 | Guevara, Gallegos | Adolfo Mejia |
| Miedzianowski | n/a | Guevara | Joseph Miedzianowski |
| Molina | | Guevara | Pablo Molina |

6

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Montanez/Serrano | 1993 | Guevara, Halvorsen, Mingey, Coghlan, Dillon | Jose Montanez, Timothy Rankin, Armando Serrano, Francisco Vincente, Wilda Vargus, Neida Serrano |
| Montanez, Carlos | 1991 | Guevara | Carlos Montanez |
| Montanez, Jacqueline & Mulero, Marilyn | 1992 | Guevara, Halvorsen | Jacqueline Montanez, Marilyn Mulero, Sandra Lorenzi, Yvette Rodriguez, Joan Roberts, Joann Santiago, Rhonda Riley |
| Morales | | Guevara | Edward Morales |
| Morrow | 1994 | | Mitchell Morrow |
| Munoz, Reynaldo | 1985 | Guevara, Halvorsen | Bouvier Garcia, Reynaldo Munoz, Evangelina Rivera, Lydia Mena, Migdalia Mena, Illalos Munoz, Tellifo Munoz |
| Omar | n/a | Guevara, Miedzianowski | Mohamed Omar |
| Oravetz | 1999 | Guevara | David Oravetz |
| Ortiz | 1989 | Guevara, Vucko | Edwin Ortiz, Marvin Taylor, Santiago Pagan, Pedro Aponte |
| Pacheco | 1993 | Guevara | Jorge Pacheco, Francisco Vincente |
| Pena | 1986 | Guevara, McCarthy | Daniel Pena, Amadoa Rivera, Daniel Ramirez, Jamie Velez |
| Perez (complaint) | 2002 | Guevara | Edgar Perez |
| Rivera, David | 1991 | Guevara, Boyle, Gawrys | David Rivera |

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Rivera, Jacques | 1988 | Guevara, Gawrys, Noon, Guzman, Fallon, Sparks, Zacharias, McLaughlin, Leonard, Mingey, Weingart, Rinaldi | Orlando Lopez, Dr. Arthur Sharkey |
| Rivera, Luis | | | Luis Rivera |
| Rivera, Manuel | 1989 | Guevara | Virgilio Calderon Muniz, Manuel Rivera, Vera Muniz, Sal Ortiz, Helean Loretta, Brown Tran, Daniel Gonzales, Maxwell Latwane |
| Rivera, Martin | 1999 | Guevara, Guerrero, Villardetia, Gawayrs, Zacharias, Vukonich Halverson | Martin Rivera |
| Rodriguez, Angel | 1997 | Guevara, Halvorsen, Woodall | Andrew Bolton, Angel Rodriguez |
| Rodriguez, Daniel | 1991 | Guevara, Halvorsen | Daniel Rodriguez, Jason Rivera, David Velasquez, Jason Velez, George Laureano |
| Rodriguez, Harry | 1987 | Guevara, Halvorsen | Harry Rodriguez |
| Rodriguez, Petra | 1989 | Guevara, Gawrys, Stasinopoulos, Riccio | Petra Rodriguez |

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Rodriguez, Ricardo | 1995 | Guevara, Halvorsen, Zurley, Epplen, Biebel, Mingey, M. Sanders, J. Mohan | Ricardo Rodriguez, Aurelio Martinez |
| Rosario, Adolfo | 1988 | Guevara, Gawrys, Conwell, Caporusso | Adolfo Rosario |
| Rosario, Anthony | 1994 | Guevara | Anthony Rosario |
| Salgado, Victor | | Guevara | Victor Salgado |
| Sanchez, Elvis | | Guevara | Elvis Sanchez |
| Sanchez, Ruben | 1991 | Guevara | Ruben Sanchez, Luis Cubero |
| Sanchez, Sonia (CR) | 1992 | Guevara | Carlos Sanchez, Norberto Sanchez, Sonia Sanchez |
| Sanders | | | James Sanders |
| Santiago | 1997 | Guevara | Jose Reyes, Robert Ruiz, Concepcion Santiago, Freddy Santiago |
| Serrano, Luis | 1995 | Guevara | Evelyn Diaz, Luis Serrano, Oscar Rodriguez, Francisco Peralta |
| Shatner | 1986 | Halvorsen | Darrin Shatner |
| Sierra | 1995 | Guevara, Halvorsen, Wojcik, McMurray, Figueroa, Mingey, Biebel, Cappitelli | Jose Melendez, Alberto Rodriguez, Thomas Sierra, Hector Montanez |
| Soto | 1981 | Guevara | James Soto |
| Suastegui | | Guevara | Manuel Suastegui |
| Ternoir | | Guevara | Matthew Ternoir |
| Turner (OPS complaint) | 1982 | Guevara | Annie Turner |
| Dorsch | | Guevara | William Dorsch |

| Case/Victim Name | Year of Investigation | Officers Involved | Witness Names |
|---|---|---|---|
| Vega | | Guevara, Halvorsen | Alan Vega |
| Velez | | | Jesus Velez |
| Vera | 1989 | Guevara | Virgilio Muniz, Victor Vera |
| Warren | 1986 | Guevara | Melvin Warren, Diane Rodriguez, Suki Suarez |
| Wilson | | Guevara | Robert Wilson, June Siler |

Dated: February 4, 2020

/s/ John Hazinski
*Attorney for Plaintiff Reyes*

10

Exhibit D

1    **TRANSCRIBED.   FROM DIGITAL RECORDING**

2
                    IN THE UNITED STATES DISTRICT COURT
3                      NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION
4
     PATRICK PRINCE,                       )
5                                          )
                   Plaintiff,              )
6                                          )
                   vs.                     )  No. 18 C 2952
7                                          )
     KRISTON KATO, et al.,                 )  Chicago, Illinois
8                                          )  May 9, 2019
                   Defendants.             )  9:31 A.M.
9
                    TRANSCRIPT OF PROCEEDINGS - Status
10      BEFORE THE HONORABLE SUNIL R. HARJANI, Magistrate Judge

11   APPEARANCES:

12   For the Plaintiff:         LOEVY & LOEVY
                                311 N. Aberdeen Street, Third Floor
13                              Chicago, Illinois  60607
                                BY:  MR. DAVID BENJAMIN OWENS
14
     For the Individual         BORKAN & SCAHILL, LTD.
15   Officers:                  20 South Clark Street, Suite 1700
                                Chicago, Illinois  60603
16                              BY:  MS. KRISTA ELANORE STALF
                                     MS. MISHA ITCHHAPORIA
17
     For Defendant City:        REITER BURNS LLP
18                              311 South Wacker Drive, Suite 5200
                                Chicago, Illinois  60606
19                              BY:  MR. DANIEL MATTHEW NOLAND

20
                         PAMELA S. WARREN, CSR, RPR
21                         Official Court Reporter
                          219 South Dearborn Street
22                                Room 2342
                          Chicago, Illinois   60604
23                             (312) 408-5100

24   **NOTE:  Please notify of correct speaker identification.**
     **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
25   **UNINTELLIGIBLE.**

2

```
1        (Proceedings held in open court:)

2            THE CLERK:  18 C 9252 (sic), Prince versus Kato.

3            MR. OWENS:  Good morning, your Honor.  I'm David B.

4   Owens, and I represent Patrick Prince, the plaintiff in this

5   case.

6            MS. STALF:  Good morning, your Honor.  Krista Stalf on

7   behalf of the individual defendant officers.

8            THE COURT:  Okay.

9            MS. ITCHHAPORIA:  Misha Itchhaporia also on behalf of

10  the individual defendant officers.

11           MR. NOLAND:  Good morning, your Honor.  Daniel Noland

12  for the City of Chicago.

13           THE COURT:  Okay.  Good morning to all of you.

14           So first off I have reviewed your status report

15  listing your dates for the depositions.  I did notice that you

16  had not identified all the deponents.

17           Can you tell me why?

18           MS. STALF:  We were at that point still filling them

19  in, and we have filled in some of those dates --

20           THE COURT:  Okay.

21           MS. STALF:  -- as we speak.

22           THE COURT:  Okay.  So I'm going to want to get an

23  updated report from you --

24           MS. STALF:  Sure.

25           THE COURT:  -- with as many, if not all, deponents.
```

3

1   And the reason I'm doing this, of course, is because you have a

2   lot of depositions in this case, and I need to be on -- ensure

3   that you are on track to meet your deadlines and then getting

4   things scheduled.

5           We have a September 27th deadline for fact discovery.

6   I have every intention of keeping that deadline.  I think I

7   have already stated no further extensions.  So we are going to

8   keep that deadline.

9           So how long do you need to file that updated status

10  report before me?

11          MR. OWENS:  We could probably do it in the next couple

12  days.  I mean, we were -- we have been actively filling in

13  those dates --

14          THE COURT:  Uh-huh.

15          MR. OWENS:  -- through the end of June.  We have

16  discussed availability through (unintelligible).  We have seen

17  each other every day this week, and so we are on the rails --

18          THE COURT:  Good.

19          MR. OWENS:  -- and moving forward.

20          THE COURT:  So let's say 5-16.  That's about a week.

21  5-16 for the updated report.

22          Okay.  I also recall there was an issue with respect

23  to the scope of the Rule 404(b) depositions and how many were

24  going to be taken and how that was going to be narrowed.

25          Have you resolved that?

```
 1          MR. OWENS:  We believe that we have reached probably

 2    an impasse on this issue.  I -- I can outline it now or I don't

 3    know if they wanted to bring a motion, something with respect

 4    to that.

 5          Our position is that the proposal that we put out

 6    there was that we would try to identify witnesses who would be

 7    potential -- potential live witnesses at trial.  That would be

 8    the universe of individuals who -- from which we would conduct

 9    oral discovery in this matter.

10          There is written discovery that defendants have been

11    extremely aggressive about sending subpoenas for tons and tons

12    of witnesses.  We tried to narrow it that way so that we can

13    create a universe of people who may potentially testify at

14    trial.  But the defendants reject that proposal saying that if

15    there is any -- going to be any possible mention of a witness,

16    even on cross examination, of an officer or via an expert

17    talking about the pattern of incidents, there -- they need to

18    do oral discovery on that person.

19          THE COURT:  So let me stop you there.  This is an

20    issue in every case where we have Loevy on one side and the

21    city on the other.  I have many of these cases.  Judges in this

22    district have many of these cases.  This is -- 404(b) is always

23    an issue.

24          My understanding is that you probably have worked this

25    out in the past.  This is not the first time this has come up.
```

1   So why is this case different?

2        MS. ITCHHAPORIA:  Your Honor, in this case it is

3   different because they have named 40 404(b) witnesses.  And all

4   the cases that we have had with their office they have named

5   about five or six.  We got to trial in a case before Judge Lee,

6   Judge Lee only allowed one of the witnesses to testify.

7        So with 40 404(b) witnesses identified in their

8   disclosures, contact information only provided for eight of

9   those witnesses, counsel is telling me, I may call some of

10  those witnesses live and may not call some of those witnesses

11  live, but I'm still going to ask my expert about it maybe or I

12  may ask your clients about it on the stand.

13       I'm at a loss of what to do at this point.  I have to

14  go ahead and obtain the documents's (unintelligible) to be able

15  to defend those 404(b) allegations and also to seek the

16  depositions of those 404(b) witnesses.

17       Counsel themselves have had and represented Mr. Prince

18  for over six years.  Some of those 404(b) witnesses were

19  disclosed in the post-conviction proceedings.  And to date we

20  still don't have contact information.

21       So I don't know if we're talking about witnesses in

22  the abstract to -- the defendants's position is it makes no

23  difference whether these witnesses are coming in live or not.

24  If they are disclosed by the plaintiff, we have to be able to

25  depose them in order to be -- to be able to present to the

6

1    Court a sufficient analysis under United States versus Gomez to

2    be able to identify the similarities, if there are any, between

3    the 404(b) allegations and the allegations that Mr. Prince

4    brings --

5         THE COURT:  Well, how would they come in?  If it is

6    not through a live witness, how would the information about

7    404(b) be presented?

8         MS. ITCHHAPORIA:  Plaintiff contends that he can ask

9    the defendant officers and third-party officers about it on the

10   witness stand during cross and through their expert.

11        THE COURT:  Okay.  So you have a client.  Your clients

12   are going to tell you what they know or don't know about that

13   particular 404(b) scenario.  What's the issue there?  You're

14   going to get the information, what your client is going to

15   say, right?

16        MS. ITCHHAPORIA:  Right.  And so I would then want to

17   depose the 404(b) witnesses to see what they're going to say.

18   They may not even have a memory of this incident --

19        THE COURT:  But a 404(b) --

20        MS. ITCHHAPORIA:  -- or they may have a firm

21   recollection.

22        THE COURT:  -- witness is a live witness put in in the

23   plaintiff's case in chief that doesn't go to character but is

24   offered for some other purpose, which the plaintiff has to show

25   a sufficient basis that there is either a pattern or a practice

1    or modus operandi or something or the other for a sufficient

2    basis to allow that to testify -- the person to testify.

3         So if the plaintiff narrows down a set of witnesses

4    that it chooses to present subject to the district court's

5    approval for 404(b) evidence, right, why isn't it enough to

6    just depose those people?  It is not 404(b) when it comes to

7    cross examination.  That's now how 404(b) evidence gets

8    admitted.

9         MS. ITCHHAPORIA:  Right.  But -- so I'm a little

10   (unintelligible) here as to what you are asking, your Honor.

11        THE COURT:  So I am -- why do you need to depose

12   everybody?

13        MS. ITCHHAPORIA:  Well, the 404(b) witnesses they have

14   named, because they haven't narrowed them down.  I don't know

15   who is going to be hitting the stand --

16        THE COURT:  Okay.

17        MS. ITCHHAPORIA:  -- or not hitting the stand.

18        THE COURT:  So why can't we do that?

19        MR. OWENS:  Well, that was our proposal.  What -- we

20   were trying to identify the universe of people that we would

21   possibly depose.  They said we need to depose everyone in the

22   entire --

23        THE COURT:  No.  No one is deposing anybody, everybody

24   here.  That's not happening.

25        Why can't you identify the 404(b) witnesses that you

1  intend to present to the district judge as live witnesses in

2  your case in chief?

3           MR. OWENS:  We can.  We have offered -- we have

4  offered to do that.

5           THE COURT:  How many?

6           MR. OWENS:  But that's -- we have a --

7           THE COURT:  There can't be 44.

8           MR. OWENS:  Absolutely.

9           THE COURT:  Don't kid me here.

10          MR. OWENS:  Ab- -- absolutely.

11          THE COURT:  What is it?

12          MR. OWENS:  We haven't reached the point of a specific

13  number at this point.  I mean, we could -- I should go back to

14  my team and talk about what.

15          But we have had, to clarify the record, we have named,

16  you know, the 40 -- like 30 or 40 witnesses in other cases.

17  This happened in another case involving the same detective, the

18  one that was mentioned and, you know, sort of the -- we have

19  been able to narrow this down.  I'm sure that we can come up

20  with a proposed number of potential witnesses that we might

21  call live.  And that's what we have -- and that's what we have

22  been proposing to them.  They haven't been willing to entertain

23  that.

24          THE COURT:  So here's what we're going to do.  You're

25  going to produce a report that identifies a narrow list of

1   people that you intend to call in your case in chief.  You and

2   I both know that Judge Lee is not going to give you a lot of

3   leeway on this.  You're going to have to pick your best

4   witnesses, and you're going to do a motion in limine.  He's

5   going to grant you -- you may get one, you may get two, you may

6   get three, I don't know.  But it is not going to be 40.  It is

7   certainly not going to be 30, 20, and probably not even ten.

8   In my experience you are going to be very narrowed in what the

9   404(b).

10          What you don't want is a mini trial on all this other

11   stuff, which is what every district court judge will tell you

12   when you get to 404(b).  So it is going to be limited.

13          So I need you to produce -- to meet and confer with

14   the other side and produce a -- by 5-16 the same report that we

15   have, an agreed list of your 404(b) witnesses.  And those are

16   people that will be -- that will allow to be deposed.  And

17   those are going to be people that you intend to call at trial.

18          You can always put a maybe list together.  But that's

19   always going to be 30, 40 or 50 people.  I need to know who

20   you're calling so we can limit the discovery on the

21   404(b). Okay?

22          MR. OWENS:  Absolutely.  And one thing we proposed,

23   your Honor, was that the three 404(b) witnesses who were

24   deposed in another case involving allegations against the same

25   officer, you know, that this office defended, that we don't

1  redepose those three people in this case.  And they are saying

2  we need to redepose them too.  So we'll -- we will do that.

3          THE COURT:  It is a different case.  They may have

4  other topics.  You can't stop them from asking what they feel

5  they fairly need in discovery.  So if they want to redepose

6  them, they can redepose them.  It might be the same stuff.  It

7  may not.  But they get a crack at it.

8          So I need an agreed list of the 404(b) witnesses you

9  intend to call at trial, and I'll take a look at what that

10 looks like.

11         And then I want to see you back here by the end of May

12 to keep this on track.

13         THE CLERK:  Thursday, May 30th at 9:15.

14         MS. STALF:  We have a dep in this case, and I believe

15 that dep is --

16         THE COURT:  Okay.

17         MS. STALF:  -- out of Chicago.  It is Mr. Green.

18         MR. OWENS:  He's here.

19         MS. STALF:  Oh, he's here?

20         MR. OWENS:  We can do it.

21         MS. STALF:  That's fine.

22         THE COURT:  Okay.  That's fine.  We'll pick another

23 date.

24         THE CLERK:  Wednesday, May --

25         MR. OWENS:  No, no, the 30th is --

```
 1              THE CLERK:  The 30th works?

 2              MR. OWENS:  The 30th is great.  I'll be out of the

 3     country, but -- until then so --

 4              THE COURT:  Okay.  So what date?

 5              THE CLERK:  May 30th at 9:15.

 6              THE COURT:  May 30th, 9:15.

 7              Okay.  And we'll talk about those reports at that

 8     time.

 9              MR. OWENS:  Thank you, your Honor.

10              THE COURT:  What else?  Not -- if you need to meet and

11     confer on things, so be it.  But I want to know what else is

12     percolating out there that is an issue.  Anything?

13              MR. OWENS:  Well, there are probably five other issues

14     that are percolating that we have been sort of conferring

15     about.

16              THE COURT:  Okay.

17              MR. OWENS:  Two with respect to Monell.

18              THE COURT:  Maybe I shouldn't ask that question

19     anymore.

20              MR. OWENS:  Several which related to damages,

21     scheduling of depositions out of state that we have been sort

22     of in active conference.  I think that the one that -- I

23     believe that we had reached some impasse on was the 404(b)

24     issue, and I think we can present that in the status.

25              THE COURT:  Okay.
```

1          MR. NOLAND:  And there is issues percolating with

2    respect to discussions that we have been having about limiting

3    the Monell claim and how that would look and whether the

4    parties can come to some meeting of the minds, at least

5    understanding, on that potential limit.  So we want to

6    discovery -- additional discovery will be necessary on that.

7          THE COURT:  Yeah, I mean, appreciate you bringing that

8    up.  I had that on my list.  I saw that bifurcation was denied

9    on the Monell.

10          So have you started Monell discovery yet?

11          MR. OWENS:  We have, your Honor.  So we have -- the --

12    sent some written discovery requests.  And then the city sent

13    some, you know, (unintelligible) the Monell-specific

14    interrogatories to us.  We responded to those in March.

15          At the time basically, you know, the city is like, how

16    are you going to -- we want you to narrow this claim.  We asked

17    the following question, which is, will the city stipulate that

18    a certain number of incidents over a certain period of time, if

19    a jury credited them, are sufficient to show a practice over --

20    a widespread practice.  Because if we can reach an agreement

21    about the number of instances, then we can sort of try to limit

22    the universe of who we're talking about.  So we -- that was in

23    March.

24          We had a 37.2 conference on that about a week ago.

25    The city was unable to give us a conceptual agreement to that.

1   The result of that conference was that we agreed to send a

2   follow-up proposed sort of outline stipulation on what that

3   would look like, even though we had sort of asked about it a

4   couple times.  And that, I think, is where things stand as far

5   as that issue.

6          MR. NOLAND:  So, yeah, they -- and it wasn't something

7   that we had been familiar with talking about before.  When they

8   talked about stipulations is generally speaking of what types

9   of, like a sample set of complaint registers that they may

10  request.  So they don't have to get 1500 complaint registers.

11  A sample set of the topics and the time frame so that they

12  could be gathered, potentially reviewed, and if the plaintiff

13  wants to pursue some sort of an expert issue, whether or not

14  there is any disciplinary, you know, failures or not.

15         This is a bit of -- this is a new one that we're

16  hearing from them, which is that they want to cherry pick and

17  identify, okay, if we can prove at trial that there has

18  been -- and they haven't given us a number or a time frame or a

19  topic.

20         Well, no, they did give us a topic.  It is four forced

21  confessions.  If they can prove X amount -- they haven't said

22  that would be -- over X period of time.  And they haven't said

23  what that would be.  And so on this call we said, oh, okay,

24  (unintelligible) the light bulb on, now we understand what they

25  are saying.

1    The big concern for us is that they might be going

2    back to, say, the Andrew Wilson case in 1982, which the Court

3    may be familiar with. It has been brought up from time to

4    time. And then kind of a whose who (unintelligible) little

5    cases that may have been in the news, throughout the news. So

6    -- or a lot of people represented by the plaintiff's law firm.

7    So, okay, we can prove this case, that case.

8         In any event, we had this discussion. We said, all

9    right, obviously we'll take any proposal to the city, but you

10   need to put it in writing so we can see exactly what we have

11   stipulated to and, you know, (unintelligible) agreed to do

12   that. And so once he does that, we'll give that to the city.

13   We'll get back to him to see whether or not there is some type

14   of way to work something like that out.

15        THE COURT: Here's what I don't want, I don't want

16   this to pass and then you don't come to an agreement, and then

17   you are exploding on Monell discovery and you're not making the

18   discovery cutoff.

19        So tell me how you're going to resolve this. Can we

20   set a time frame by which you can resolve this issue? That is,

21   by the next status you'll advise me -- I would like you to

22   advise me what you have agreed to and what Monell discovery you

23   need to take in the months of June and July to make your

24   cutoff. Is that fair?

25        MR. NOLAND: Sure. I think, yeah, that's fair.

1    MR. OWENS:  And there is another --

2    MR. NOLAND:  There is the other Monell issue.  As far

3  as we can understand, the Monell claim is extremely broad, and

4  that's one of our concerns that we brought up to plaintiff --

5    MR. OWENS:  (Unintelligible) brought this case and

6  stuff.

7    MR. NOLAND:  We think improperly so.  There is no way

8  it is going to trial that way, for the various reasons, you

9  can't just say police misconduct, throw it against the wall,

10  and let's go.

11    MR. OWENS:  (Unintelligible) --

12    MR. NOLAND:  So they need to tell us what it is.  And

13  the other --

14    THE COURT:  What is it?  Is it street files?

15    MR. OWENS:  There is -- yeah.  So I think that's what

16  Dan was ramping up to talk about, street files.

17    Right, Dan?

18    MR. NOLAND:  I was going to get into --

19    MR. OWENS:  Yeah.

20    THE COURT:  I mean, it is almost always --

21    MR. NOLAND:  I don't call them street files, but --

22    THE COURT:  Isn't it almost always street files these

23  days?

24    MR. OWENS:  There are a number of related issues we

25  have done multiple trials.  So what I would say is -- is we

1   have begun the process of trying to identify the universe.  And

2   what I -- what I have suggested was that we try to move this

3   forward.  So what I would propose here is that if the Court

4   wants us to try to resolve this issue about the

5   stipulation -- whether the city is willing to agree to a

6   potential -- to limit the universe with respect to the coerced

7   confession Monell issue, we will send something to them by the

8   time that we send the status report.

9           The -- I would just, for the record, disagree that

10  this is a new concept.  It is one I put specifically in my

11  responses in March.  I said, will the city agree to this idea?

12  Because previously the city said we'll never stipulate to the

13  idea that a certain number of incidents is -- constitute a

14  widespread practice.  And in fact Mr. Noland and I had a very,

15  very long conversation about the specific issue where he also

16  used the phrase cherry picking over two years ago in another

17  case.  So --

18          THE COURT:  Okay.  Just let me stop you there.

19          MR. OWENS:  Sure.

20          THE COURT:  So I appreciate the dispute.  I do have

21  a -- I appreciate the information.  I have a handle on what the

22  issues are.

23          But what I want you to do is, of course, to meet and

24  confer and report back to me how you narrowed it, what you have

25  agreed upon, and what kind of discovery you feel that you need

1    to take on Monell.

2              This is not a new issue.  You have done -- all done

3    this.  And this has been done multiple times in this building.

4    So there has got to be a way -- there is a way for you to

5    resolve this, and you should follow that path.

6              MR. NOLAND:  So what I am not sure is if there has

7    ever been at a trial where they have presented through an

8    expert without witnesses that -- that there has been other

9    claims where there has been coerced -- false coerced

10   confessions, and that that came in in the underlying trial

11   (unintelligible).  I don't remember something like that.

12             What there have been are the Brady based, what the

13   plaintiffs call, the street files or they are Brady-based

14   Monell claim of whether or not, and there has been a couple of

15   those trial recently.

16             That's going to be an important issue in our meet and

17   confer as to the Brady-based street files thing because we

18   don't -- we don't see that as even being in play here because

19   the plaintiffs aren't contesting that any of the material that

20   they have, but what -- of the documents -- we don't get need to

21   get into the details.

22             THE COURT:  Yeah, I think --

23             MR. NOLAND:  There is going to be (unintelligible)

24   contention on that, I think.  But we need to talk about it

25   further.

1      THE COURT:  Well, I can resolve it by motion if you

2  need me to.  But why don't you meet and confer.

3      Look, the reality is you are going to complete all

4  this discovery, and I'm going to have you in for a settlement

5  conference.  You know, what -- more than 90 percent of these

6  cases settle.

7      We all know the framework for settling it.  So work

8  the issues out among you, and then let's get ready for a

9  settlement conference what, I will expect, in the month of

10  August.  That would be my plan, unless somebody gives me some

11  major objection why we can't do it then.

12      Do you have an expert discovery schedule yet?

13      MR. NOLAND:  Can I just --

14      MR. OWENS:  No.

15      MR. NOLAND:  Here's what I need to say about

16  settlement conferences, Judge, from the city, is that they both

17  before -- we will just need to get a demand from the plaintiff.

18  We need to get that to the city so that they would have a, you

19  know, position on whether or not the (unintelligible) oh, you

20  know, like (unintelligible).

21      THE COURT:  I got you.

22      MR. NOLAND:  So, in any event, before I can say, okay,

23  yeah, they are willing to even, you know, discuss it.  But of

24  course we'll -- you know, if the Court would like to do it,

25  we'll do it.

1      THE COURT:  Yeah.  I mean, you have expert discovery

2  cutoff of September.  So I intend to keep that deadline.

3      MR. OWENS:  I think it is October.  That's the fact

4  discovery, I believe, your Honor, is September 27th.  And then

5  the expert discovery follows that.

6      MR. NOLAND:  Right.

7    (Discussion off the record.)

8      THE COURT:  Hang on a second.  Yeah, you're right.

9  September 27th.  I think I am looking at an old date.

10      What date did you have for expert discovery cutoff?

11      MR. OWENS:  The cutoff I thought was somewhere in

12  November.  I don't have it -- let me --

13      MS. ITCHHAPORIA:  I have a date (unintelligible).

14      MR. OWENS:  What date?

15      MS. ITCHHAPORIA:  November 29th cutoff.

16      MR. OWENS:  That sounds right.

17      MS. ITCHHAPORIA:  Fact discovery.  Maybe.

18      None of us have it properly calendared, your Honor.

19      THE COURT:  Okay.  We'll talk about that next time.

20  And I will look forward to your resolutions on this issue.

21      MR. OWENS:  Thank you, your Honor.

22      THE COURT:  Okay.

23      MS. STALF:  On more thing, your Honor.  I'm sorry.

24      THE COURT:  Yeah.

25      MS. STALF:  One more issue that we feel is ripe for

1    bringing before the Court is the issue of damages.  The

2    plaintiff has brought a claim for emotional damages and indeed

3    has an (unintelligible) claim.  We have issued some written

4    discovery to try to obtain identities of treaters, obtain

5    records pursuant to any treatment for emotional damages.

6         The plaintiff has objected to most of what we have

7    requested, asserting psychotherapist privilege.  We believe

8    that we're entitled to do discovery on this issue.  We can't

9    figure out what the contours of the emotional damages claim

10   are.  It is a flowers issue.  I don't know if it is a garden

11   variety emotional damages thing or if it goes into severe

12   emotional damages.

13        I don't know if your Honor wants us to bring a motion

14   before you.

15        THE COURT:  So with this request for medical records?

16        MS. STALF:  Yes.

17        THE COURT:  Okay.  So --

18        MS. STALF:  That's correct.

19        MS. ITCHHAPORIA:  And mental health.

20        MS. STALF:  Right.  Mental health more importantly.

21        THE COURT:  All right.  So this comes up all the time.

22   I have already written on this issue.  I have already granted

23   it in other cases.

24        A request, because you put it at issue, when a

25   plaintiff claims emotional distress, they put their therapy and

1   their psychological state and status at issue.  And generally

2   the defendants are allowed to explore and get the records.

3          So I'm not ruling on it, I am just telling you I have

4   already dealt with this issue in the past in similar cases such

5   as this.

6          So why don't you meet and confer on that, and then you

7   can bring it to my attention.

8          If you don't resolve it, bring a motion, and I'll rule

9   on it.  Okay?

10         MR. OWENS:  Thank you.

11         MS. STALF:  Thank you.

12         THE COURT:  Okay.  Thank you.

13         MR. NOLAND:  Thank you, Judge.

14      (Which concluded the proceedings.)

15                      CERTIFICATE

16         I certify that the foregoing is a correct transcript

17   from the digital recording of proceedings in the above-entitled

18   matter to the best of my ability, given the limitation of using

19   a digital-recording system.

20

21

22   */s/Pamela S. Warren*                    May 20, 2019
     Official Court Reporter                    Date
23   United States District Court
     Northern District of Illinois
24   Eastern Division

25

# Exhibit E

1   **TRANSCRIBED FROM DIGITAL RECORDING**

2                   IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                          EASTERN DIVISION

4   WAYNE WASHINGTON,                    )
                                         )
5              Plaintiff,                )
                                         )
6              vs.                       )  No. 16 C 1893
                                         )
7   CITY OF CHICAGO, et al.,             )
                                         )
8              Defendants.               )
    ------------------------------------)
9   TYRONE HOOD,                         )
                                         )
10             Plaintiff,                )
                                         )
11             vs.                       )  No. 16 C 1970
                                         )
12  CITY OF CHICAGO, et al.,             )  Chicago, Illinois
                                         )  June 13, 2019
13             Defendants.               )  10:06 A.M.

14          TRANSCRIPT OF PROCEEDINGS - Status and Motion
         BEFORE THE HONORABLE MARIA VALDEZ, Magistrate Judge
15
    APPEARANCES:
16
    For Plaintiff Washington: STEVEN A. GREENBERG, LTD.
17                            53 West Jackson Boulevard
                              Suite 1260
18                            Chicago, Illinois  6064
                              BY:  MR. STEVEN ALLEN GREENBERG
19
                    PAMELA S. WARREN, CSR, RPR
20                    Official Court Reporter
                    219 South Dearborn Street
21                          Room 2342
                    Chicago, Illinois   60604
22                       (312) 408-5100

23  **NOTE:  Please notify of correct speaker identification.**
    **FAILURE TO SPEAK DIRECTLY INTO THE MICROPHONE MAKES PORTIONS**
24

25

1    **APPEARANCES:  Continued**

2    For Plaintiff Hood:        LOEVY & LOEVY
                                311 North Aberdeen
3                               3rd Floor
                                Chicago, Illinois  60607
4                               BY:  MR. SCOTT ROBERT DRURY

5    For Defendant City:        THE SOTOS LAW FIRM, P.C.
                                141 W. Jackson Boulevard
6                               Suite 1240A
                                Chicago, Illinois  60604
7                               BY:  MR. JEFFREY NEIL GIVEN
                                     MR. JOSEPH M. POLICK, JR.
8
     For Defendant Officers:    ROCK RUSCO & CONNELLY, LLC
9                               321 North Clark Street
                                Suite 2200
10                              Chicago, Illinois  60654
                                BY:  MR. PATRICK R. MORAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings held in open court:)

2         THE CLERK:  16 C 1893, Washington versus Boudreau, et

3    al., status and motion hearing; and 16 C 1970, Hood versus City

4    of Chicago, et al., status and motion hearing.

5         MR. DRURY:  Good morning, your Honor.  Scott Drury,

6    D-r-u-r-y, on behalf of the plaintiff Tyrone Hood.

7         MR. GREENBERG:  Good morning, your Honor.  Steve

8    Greenberg on behalf of defendant Wayne Washington.

9         MR. MORAN:  Good morning, Judge.  Pat Moran on behalf

10   of the individual police officer defendants.

11        MR. GIVEN:  Good morning, your Honor.  Jeff Given on

12   behalf of the city.

13        MR. POLICK:  Good morning, your Honor.  Joseph Polick,

14   P-o-l-i-c-k, on behalf of the defendant City of Chicago.

15        THE COURT:  Good morning.  I had one more chance to

16   get rid of you with our new judge.  We tried our best.

17      (Laughter.)

18        MR. GIVEN:  We're glad to be here, your Honor.

19        THE COURT:  You know I joke with you.  You are my

20   second favorite case.

21        MR. MORAN:  Not the first?

22        MR. GIVEN:  And we -- I always express disappointment

23   that we're not number one.

24        THE COURT:  There is a number one, and then everybody

25   else is the second favorite case.

1          (Laughter.)

2          THE COURT:  That's what I tell my two children.

3          MR. GREENBERG:  That's what I usually am used to.  I'm

4     used to coming in second place all the time myself.

5          THE COURT:  Well, sometimes that works out.

6          All right.  I do know that there has been a motion

7     filed by the defendant City of Chicago.

8          And then we have a general status in light of the fact

9     discovery cutoff that we have right now of July 19th.

10          So if we want to deal with the motion, what's the

11     plaintiffs's position?

12          MR. DRURY:  Your Honor, with respect to the motion,

13     this is just a repackaged motion to bifurcate, which two

14     judges, Judge Shadur and Judge Wood, have already denied.  My

15     sense is that the defendants are going to be asking for

16     discovery extension past the current July 19th date.

17          We would ask that your Honor summarily deny this

18     motion, which has already been denied twice.  If the defendants

19     would be -- take up their issue of needing more time to conduct

20     discovery, but I don't really think it is worth the Court's

21     time or anyone's time to fully brief this issue.

22          MR. GIVEN:  Judge, may I respond very briefly?

23          THE COURT:  Yes.

24          MR. GIVEN:  We brought this motion specifically at the

25     direction of Judge Wood who, the last time we were in front of

1    her on motions to bifurcate and discussion of this very issue,

2    said -- and we attached the transcript -- have you talked to

3    Judge Valdez about structuring discovery in this case?  The

4    motion that we filed tracks specifically what she said we

5    should raise with you.

6          So I disagree with Mr. Drury's characterization of it.

7    And the motion, other than the merits, are what is stated in

8    the motion.

9          THE COURT:  All right.  So there is nothing further

10    that you want to put with respect to the merits of the motion.

11          MR. GIVEN:  Correct.  Only that I would add that I

12    think the rest of our discussion this morning is going to be

13    about July 19th and -- and the rest of what I will call the

14    non-street file discovery, which here's a preview:  We don't

15    think July 19th is a realistic date, so --

16          THE COURT:  Well, I will --

17          MR. GIVEN:  -- that's the only thing I would add.

18          THE COURT:  I'll deal with the motion.  The motion is

19    going to be denied.  And I do -- I appreciate the comments of

20    -- that you have articulated with respect to Judge Wood.  And I

21    take it only as I'm handling discovery, you deal with Judge

22    Valdez on this issue.

23          They -- there has been a few rulings already.  Judge

24    Wood had made a ruling.  Judge Shadur had made a ruling.  The

25    Court heard you out.  And in light of the previous rulings

1  denied it before.  So I'm going to deny it once again.  So the

2  motion is denied.

3          Now we can deal with the fact discovery cutoff issue.

4          MR. MORAN:  So on that issue, Judge, we have talked

5  and exchanged lists of deponents that we -- each side would

6  like to take still.  I think everybody is in agreement that we

7  will not accomplish all of this by July 19th.

8          The plaintiffs's version is that we should schedule

9  spot dates after July 19th basically but not push out the

10 discovery deadline.

11         We believe that another 90 days is going to be

12 required.

13         There are a number of witnesses.  It has been slow

14 going in the last 90 days.  There have been scheduled

15 depositions where people either did not show.  One deposition

16 did not -- or it took essentially three days to complete due to

17 the witnesses's scheduling and some documents that popped up

18 along the way.

19         We're not taking the position that either side has

20 been delaying anything.  It has been diligence we believe on

21 both sides.

22         THE COURT:  So how many more depositions need to be

23 taken?

24         MR. MORAN:  From the defense side -- and this is not

25 including 404(b) or the Monell discovery -- but just on the

7

 1    underlying claim, it is going to be roughly --

 2              MR. GIVEN:  Judge, I counted -- we exchanged --

 3              THE COURT:  Well, but so currently the fact discovery

 4    would include all of Monell and everything else.  So I'm asking

 5    for all of the discovery, the fact discovery, to be completed,

 6    what needs to be completed?

 7              MR. GIVEN:  Well, let me try to give you some of the

 8    contours to that, your Honor.  We -- we had a 37.2 conference

 9    yesterday, after which both sides exchanged lists of people

10    that they felt needed to be deposed in this case.  There are,

11    when you don't double count and account for the overlap, I have

12    come up with 35 deponents.  And as Mr. Moran was saying, that

13    does not include 404(b)s, of which we're having a dispute

14    because the plaintiffs currently list 18 404(b) witnesses and

15    have indicated that they don't intend to reduce that number any

16    further.

17              And so our position is we think that number is far too

18    high for lots of reasons.  But if you're going to insist on 18,

19    then we're going to depose all 18.

20              It also doesn't include -- and I don't think this will

21    be a big issue.  Mr. Washington currently lists, I think, 19

22    damage witnesses in his 26(a)s.  And I have spoken with

23    Mr. Greenberg, and he agrees that he's not going to call 19

24    damage witnesses.  So as he cuts those down, the number -- the

25    need to depose those will drop.

1          With regard to Monell, what I need to do is start this

2    process that's been explained in the motion of getting these

3    files from CPD and from the State's Attorney's Office.  I can

4    tell you that that is a lengthy process.  Interestingly, almost

5    always more from the State's Attorney's side.  But I'll begin

6    that this week.  And whether those will result in lots of

7    further depositions, I -- experience tends to say, no, that's

8    more of an expert issue.  But there may be deps of -- from the

9    State's Attorney's Office regarding the state of their files.

10   Maybe a 30(b)(6) witness or something like that.

11          THE COURT:  And plaintiff --

12          MR. GREENBERG:  Judge --

13          THE COURT:  -- or plaintiffs?

14          MR. GREENBERG:  -- on behalf of Mr. Washington, let me

15   address this.  I got asked yesterday for the first time to

16   narrow down damage witnesses.  I will be happy to do that in

17   short order.  But there hasn't really been any attempt before

18   to talk to those people.

19          And many of the people on the defendants's list, in

20   looking at them, have been around.  They have been known.  They

21   are around.  They could have tried to do these depositions over

22   the past few years.  There is --

23          THE COURT:  Like how many depositions do you have to

24   take?

25          MR. GREENBERG:  We don't have very many, Judge.  We

1  have got, I think, nine from -- from -- nine are on our list,

2  right?

3          MR. DRURY:  Eleven.

4          MR. GREENBERG:  We have got 11.

5          Your Honor, I'm sorry, 11 on our list.  Some of

6  whom -- a couple of those people we have been trying to depose

7  all along.  They haven't shown up.  We have got Marshal Morgan,

8  Sr., who is in the penitentiary who is probably just taking the

9  Fifth.

10          There is a retired judge.  She was the prosecutor on

11  the case.  I think I have got an address for her.  She's been

12  very hard to find, but I was able to get an address from her.

13          THE COURT:  We try to go underground when we are done

14  with our work.

15          MR. GREENBERG:  Yeah.  Right.

16     (Laughter.)

17          MR. GREENBERG:  Except I look in the obvious places

18  when I was trying to find her, which was the ARDC website.

19          THE COURT:  That would have been my first choice too.

20          MR. GREENBERG:  Yeah.  The -- but many of these people

21  have been known.  And I just think that it is just going to

22  continue ad nauseam.  And I object to any long continuance for

23  further discovery.

24          THE COURT:  What continuance would you agree to?

25          MR. GREENBERG:  I think we can get it done by July

1    19th.  I mean, I think we should try and get it done by July

2    19th.

3         The fact is it is then going to be years before we go

4    to trial on this case.  I mean, it is -- it is getting old, and

5    it is time to move it along.  And, you know, the defendants --

6    I am probably the most disadvantaged.  I have got two people on

7    the case.  Everyone else, they have lots of people.  I think we

8    can get it done.

9         MR. MORAN:  So one of the things, Judge, though is

10   that Mr. Greenberg's schedule has held us up on a number of

11   depositions.  We have had to reschedule so he can be there or

12   someone from his office can be there.

13        Marsha Escofrey (phonetic) is a witness who we tried

14   to get in three times.  She canceled three times.

15        There is a number of witnesses here who just -- dates

16   were reserved, and they didn't show up.  That's a date that

17   could have been used on somebody else.

18        So if counsel is going to say that, you know, we

19   haven't actively sought out people on here -- I didn't know we

20   were going to show up today and point fingers.  I thought,

21   frankly, it was just a debate over how much time to take.

22        But that -- we tried to get some of these people in --

23   a lot of these people in here.  And previously counsel for

24   Mr. Washington, we have had discussions, we have asked, give us

25   dates for these witnesses who are damage witnesses.  They are

1   family members.  I assume they are going to be produced by the

2   attorney for the plaintiff.

3        If we need to go out and subpoena people in Michigan

4   where these people apparently live, that's fine.  Then I will

5   assume Mr. Greenberg is not going to represent them for

6   purposes of the deposition.

7        Either way he's got 19 damages witnesses.  I doubt he

8   is really going to need that many people.  We have agreed to

9   reduce the number of 26(a)(1)s.  Both sides have tried to do

10  that.

11       So at this point to say we're going to fit all this in

12  by July 19th is -- it is just not true.  It is -- it is

13  unreasonable to even try.

14       And if that's the situation, then we're going to be

15  taking depositions every single day and, hopefully, all

16  attorneys will be available on every single date that we're

17  going to have to take depositions.  And we're not going to get

18  things like, I can't be there because of a hearing or a trial

19  or whatever.

20       MR. GREENBERG:  Judge, I wasn't --

21       THE COURT:  Sorry.

22       MR. GREENBERG:  Judge, I wasn't done --

23       THE COURT:  I'm sorry.

24       MR. GREENBERG:  -- when Mr. Moran --

25       THE COURT:  Hold on.

1          Okay.  I just want to make it clear, we have extended

2   discovery.  We have been aware of all of these issues.  I am

3   open to -- I'll give you another 30 days at this point, until

4   8-19.

5          If you want to -- if you want an extension beyond

6   that, I need to see that there has been substantial work done

7   in those two months.  And I mean, like, we only have a few

8   straggling that we need to get done.  That's my only opening

9   for you.  So it is in the middle -- it is going to be summer.

10  Everybody is going to be on vacation.  It is unfortunate.

11         I remember being in front of Judge Brian Barnett Duff

12  -- I have to make sure to get the three names -- Brian Barnett

13  Duff --

14      (Laughter.)

15      THE COURT:  -- and having to take multiple depositions

16  in a single day because we got -- we got backlogged.

17         I don't want to do that to anybody.  And I am always

18  mindful of that, my experience as a litigator.  But we do need

19  to move the case forward so you can key up any dispositive

20  motions and let the Judge, you know, deal with those

21  dispositive motions.

22         So I will give you the 30-day extension beyond the

23  July 19th to August 19th.  And I will bring you back in 30 days

24  to see how you are doing.

25      MR. GIVEN:  Judge, will you -- would the Court

1    entertain a motion with regard to the 404(b) witnesses given

2    where you are, with your order and our discussions with the

3    plaintiffs about trying to narrow these 18 404(b) witnesses?  I

4    want to move the issue quickly, and I'm not sure that the best

5    way to do that isn't just a motion with regard to --

6              THE COURT:  Is there a disagreement --

7              MR. GIVEN:  -- cut down --

8              THE COURT:  -- that you cannot cut down the 404(b)s?

9              MR. DRURY:  Your Honor, we -- we proposed back in

10   2018.  This was a generic list.  And since that time there has

11   really been no notices issued to depose these people.

12             THE COURT:  All right.  So it sounds like you can

13   discuss this with them.  You're open to it.

14             MR. DRURY:  Well, I don't know that it is going to be

15   narrowed any more.  We're happy to have the discussions.

16             Many of those witnesses have already been deposed by

17   their law firms.  We don't know that they really need to depose

18   them again.  And that's one of the things we have been

19   discussing with them.  But there has been, you know, little to

20   no effort for them to take these depositions.

21             MR. MORAN:  (Unintelligible).

22             MR. DRURY:  We're always open to discussions, your

23   Honor.

24             MR. MORAN:  Sure.  Here is the discussions that they

25   are open to:  They have had 50 some 404(b) witnesses and have

1   told us for months and months and months and months that they

2   were going to cut the list down.  So we waited so that we

3   weren't trying to take depositions of people who they were

4   going to cut.

5           When they finally cut the --

6           THE COURT:  When did you get the 18?

7           MR. MORAN:  Last week.

8           THE COURT:  Last week.  Okay.

9           MR. MORAN:  And we said that's too many.  And, your

10  Honor, I will -- I will tell you that --

11          THE COURT:  What's that -- who are these 404(b)

12  witnesses?  What -- you know, what roles --

13          MR. GREENBERG:  Other people who were similarly

14  framed, convicted of cases, convictions vacated.

15          THE COURT:  So my guess is that, you know, you have

16  been diligent, and you have some information about what they

17  might be saying.

18          MR. GREENBERG:  Many of them --

19          THE COURT:  You don't want to call 18 witnesses at

20  trial --

21          MR. GREENBERG:  Right.

22          THE COURT:  -- correct?

23          MR. GREENBERG:  Right.  Many of them have been

24  plaintiffs in cases that --

25          THE COURT:  You can pick the best ones that you want

1    to go forward with.

2              MR. GREENBERG:  We'll --

3              THE COURT:  There is some -- I mean, 18 is --

4              MR. GREENBERG:  Right.

5              THE COURT:  -- still a lot.  So I am going to ask you

6    to work on cutting that down.

7              MR. GREENBERG:  Okay.

8              THE COURT:  Thirty-day status?

9              THE CLERK:  We actually have 28 day.  July 11th at

10   10:00 A.M.

11             MR. GREENBERG:  Thank you, your Honor.

12             THE COURT:  So are your summers going to not be so

13   happy with your family?  It is what it is.

14             All right.  Thank you.

15             MR. DRURY:  Thank you, your Honor.

16             MR. MORAN:  Thank you, Judge.

17             MR. GREENBERG:  At 10:00 A.M.?

18             THE CLERK:  Yes, 10:00 A.M., yes.

19        (Which concluded the proceedings.)

20                          CERTIFICATE

21             I certify that the foregoing is a correct transcript
     from the digital recording of proceedings in the above-entitled
22   matter to the best of my ability, given the limitation of using
     a digital-recording system.
23   /s/ Pamela S. Warren                    August 1, 2019
     Official Court Reporter                 Date
24   United States District Court
     Northern District of Illinois
25   Eastern Division