# fIN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| | ) | Case No. 1:18-cv-01028 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 1:18-cv-02312 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendants' Motion to Limit Plaintiffs' 404(b) Discovery [*DeLeon-Reyes* 303, *Solache* 197][1] asks this Court to limit Plaintiffs to no more than five Rule 404(b) witnesses. Doc. [197] at 7. In ruling on this motion, the Court is presented with the question of what limits, if any, should be placed on discovery of Rule 404(b) witnesses in a wrongful conviction case. For the reasons stated below, the Court finds that discovery should be limited to ten Rule 404(b)

---

[1] The remainder of this Memorandum Opinion and Order cites to documents from the *Solache* docket, Case No. 1:18-cv-02312, unless otherwise noted.

witnesses that Plaintiff intends to call at trial. As a result, Defendants' motion is granted in part and denied in part.

## Background

In these separate lawsuits, consolidated for purposes of discovery, *see* Doc. [*DeLeon-Reyes* 49], Plaintiffs Arturo DeLeon-Reyes and Gabriel Solache claim that they were wrongfully convicted and that they served almost 20 years in prison for the 1998 double murder of Mariano and Jacinta Soto. Doc. [1]; Doc. [171] at 4. Plaintiffs assert that their convictions were the result of constitutional violations committed by Chicago police officers during the investigation of the Soto homicide. Doc. [171] at 4. Specifically, Plaintiffs bring claims under 42 U.S.C. § 1983 for coerced confession, fabrication of false witness statements, deprivation of liberty without probable cause, violations of due process, failure to intervene, and conspiracy. *Id.* Plaintiff DeLeon-Reyes additionally asserts 42 U.S.C. § 1983 claims against certain state prosecutors for coerced confession and fabrication of false witness statements. *Id.* Both Plaintiffs allege *Monell* policy and practice claims, as well as state law claims for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, *respondeat superior*, and indemnification. *Id.*

Defendants deny Plaintiffs were wrongfully convicted, deny the claims against them, and assert various affirmative defenses, such as qualified immunity, absolute immunity, a bar under *Heck v. Humphrey*, estoppel, statute of limitations, Illinois Tort Immunity Act, and failure to mitigate damages. Doc. [171] at 4.

## Discussion

In wrongful conviction cases, it has become commonplace for the plaintiff to seek to introduce evidence at trial regarding a defendant police officer's alleged bad acts towards other individuals besides the plaintiff. This "other acts" evidence is introduced pursuant to Rule 404(b)

2

of the Federal Rules of Evidence. Much sooner in the litigation, though, before the field of Rule 404(b) witnesses has been narrowed at trial, a wrongful conviction plaintiff discloses several, sometimes hundreds of, Rule 404(b) witnesses. These plentiful disclosures inevitably lead to discovery fights over which witnesses will actually be called at trial and thus which witnesses need to be deposed before the close of fact discovery. Plaintiffs here seek to disclose an essentially unlimited number of Rule 404(b) witnesses and argue that only a limited number of depositions need to be taken; Defendants seek to take depositions of any Rule 404(b) witness listed and thus seek leave to either depose all of them or narrow that list to five witnesses. Doc. [197].

Most importantly for this Court in managing discovery, Rule 26(b)(1) of the Federal Rules of Civil Procedure mandates that the Court ensure the pool of discoverable information is limited to relevant matters that are proportional to the needs of the case. Moreover, the law in this circuit surrounding Fed. R. Evid. 404(b), particularly the Seventh Circuit's *Gomez* decision, demonstrates the need for courts to place limits on the admission of Rule 404(b) evidence at trial. While the Court's province here is to manage discovery, and not trial, the Court is nevertheless mindful that its decision regarding the proper number of Rule 404(b) witnesses for discovery may impact the introduction of Rule 404(b) evidence at trial.

**I.     Fed. R. Evid. 404(b)**

Rule 404(b) of the Federal Rules of Evidence is a character evidence rule. It is titled "Crimes, Wrongs, or Other Acts" and is divided into two sections. The first section explains that evidence of a person's crimes, wrongs, or other acts cannot be used to prove the person's character via propensity: "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Put more simply, Rule 404(b)(1) prohibits a party from

3

offering evidence of a crime, wrong, or other act, to show merely that because the person committed a bad act in the past, the person has the propensity to commit the bad act at issue in the litigation.

However, the second section of Rule 404(b) instructs that evidence of a crime, wrong, or other act can be used for certain permissible, non-propensity purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Yet it is not enough that evidence of the other act merely be "connected to the defendant's knowledge, intent, or identity (or some other plausible non-propensity purpose)[.]" *United States v. Gomez*, 763 F.3d 845, 855 (7th Cir. 2014). For that reason, a proponent of Rule 404(b) evidence cannot "simply [ ] point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. Rather, the proponent must establish the relevance to a permitted purpose under Rule 404(b)(2) "through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id.* at 860.

In *Gomez*, the Seventh Circuit revisited its test for the admission of Rule 404(b) evidence and instructed trial courts to tighten the reins. Prior to *Gomez*, a four-part test was used:

> To determine if such evidence is admissible, the district court must engage in a four-pronged analysis and evaluate whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*Gomez*, 763 F.3d at 852 (quoting *United States v. Zapata*, 871 F.2d 616, 620 (7th Cir.1989)). The *Gomez* Court found that the four-part test had "ceased to be useful." *Id.* at 853. The old test, in

4

some ways, lacked an "adequate basis" in the Federal Rules of Evidence, which the court found "provides a clear roadmap for analysis." *Id.* Additionally, the Seventh Circuit found that under the four-part test, particularly in narcotics cases, "other-act evidence [was] too often admitted almost automatically, without consideration of the legitimacy of the purpose for which the evidence is to be used and the need for it." *Id.* (internal quotation marks and citations omitted).

The *Gomez* Court thus abandoned the old, four-part test and adopted "a more straightforward rules-based approach." 763 F.3d at 853. After *Gomez*, a proponent of Rule 404(b) evidence "must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Id.* at 860. The relevance to the permitted purpose must be established via a chain of reasoning that does not include the forbidden propensity inference. *Id.* If the proponent can satisfy that initial showing, then the trial court must weigh the probative value of the other-act evidence against the risk of unfair prejudice, pursuant to Fed. R. Evid. 403. *Id.* As part of the trial court's Rule 403 balancing test, the court must consider the degree to which the other act is actually contested, *id.*, because "if a defendant offers to concede or stipulate to the fact for which the evidence is offered, additional evidence may have little probative value." *Id.* at 857 (citing *Old Chief v. United States*, 519 U.S. 172, 191–92, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)).

Courts faced with Rule 404(b) evidence in the wrongful conviction context post-*Gomez* have accordingly limited the use of Rule 404(b) evidence at trial. *See, e.g.*, *Harris v. City of Chicago*, No. 14 C 4391, 2018 WL 2183992 (N.D. Ill. May 11, 2018) (denying motion for new trial, holding there was no error in barring prior bad acts evidence of defendant police officer under *Gomez*); *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *21–25 (N.D. Ill. June 12, 2015) (granting motion *in limine* to bar a plaintiff's proposed 404(b) witnesses who would testify

5

about a defendant police officer's prior bad acts involving an alleged "drop gun" scheme); Order on Motions *in Limine* at 17-19, *Bellamy v. City of Chicago*, 1:15-cv-02678 (N.D. Ill. May 18, 2016), ECF No. 98 (granting motion *in limine* to bar testimony of 404(b) witnesses who would testify about prior encounters with defendant police officer).

Defendants argue that, under *Gomez*, Plaintiffs' Rule 404(b) evidence is not likely to be admissible at trial. Doc. [197] at 6. Plaintiffs respond that their Rule 404(b) evidence will be admissible because there are "numerous propensity-free chains of reasoning that justify admission of [the] evidence," including demonstration of the Defendant officers' intent, opportunity, preparation and plan to extract false confessions, fabricate police reports, and suppress exculpatory evidence. Doc. [202] at 6-7. Plaintiffs further assert that the other-acts evidence will be admissible for the "non-propensity purpose of proving Plaintiffs' *Monell* claims." *Id.* at 7-8.

The admissibility of Plaintiffs' Rule 404(b) evidence is not before this Court in managing discovery. As Plaintiffs point out, admissibility cannot be decided before the evidence is discovered, Doc. [202] at 9, and "information within the scope of discovery 'need not be admissible in evidence to be discoverable.'" *Id.* at 2 (citing Fed. R. Civ. P. 26(b)(1)). Nevertheless, Rule 404(b) and the *Gomez* holding, while not controlling on this discovery decision, certainly signal the need to proceed with caution.

## II. The Proper Scope of Rule 404(b) Discovery under Fed. R. Civ. P. 26

This Court's charge is to manage discovery, and the Court "enjoy[s] extremely broad discretion" in doing so. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). *See Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012) ("District courts have broad discretion in supervising discovery . . . for they are much closer to the management of the case and the host of intangible and equitable factors that may be relevant in exercising such discretion."). Federal Rule

6

of Civil Procedure 26 governs the scope of civil discovery and allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Court "must limit the frequency or extent of discovery otherwise allowed by [the] rules" if "the discovery sought is unreasonably cumulative or duplicative" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 1 likewise directs that the civil rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. With these principles in mind, the Court considers the relevancy and proportionality of Plaintiffs' proposed Rule 404(b) witness testimony.

**A.  Relevancy**

Relevance, particularly in the discovery phase, is a low bar to meet. Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). In determining the scope of discovery under Rule 26, relevance is construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

For discovery purposes, Plaintiffs' proposed Rule 404(b) testimony meets the relevance standard. Plaintiffs' Corrected 404(b) Witness List, appended as Exhibit C to Defendants' motion, is a multi-page table listing 250 witnesses with the year of investigation, officers involved, and witness names for several cases. Doc. [197-1] at 38-47. Plaintiffs' Rule 404(b) list does not offer

specifics about what the listed witnesses will testify about. Rather, Plaintiffs assert generally that the witnesses might testify about the instances of misconduct of Defendant Guevara and his colleagues at Area Five in abusing the rights of other citizens, besides the Plaintiffs in this case. Doc. [202] at 1-2. Generally, the past crimes, wrongs, or other acts of the Defendants, if sufficiently similar to the acts described in Plaintiffs' complaints, could make it more likely that the Defendant officers had the intent, opportunity, preparation, or plan to extract false confessions, fabricate police reports, and suppress exculpatory evidence in connection with Plaintiffs' cases.[2] As the Plaintiffs also observe, Defendants could argue that they have never engaged in the type of misconduct alleged in this case, which could make the Rule 404(b) evidence relevant for impeachment purposes. *Id.* at 6. In any event, Defendants do not appear, at this point, to contest the relevance of Plaintiffs' Rule 404(b) evidence at the discovery phase of this case (but will likely contest its admissibility at trial). *See* Doc. [197] at 6. The Court finds, for purposes of discovery, Plaintiffs' proposed Rule 404(b) testimony is relevant evidence.

**B.     Proportionality**

Proportionality is the more significant concern in this case. Defendants state that Plaintiffs currently offer "no fewer than 250 witnesses to provide testimony about the Individual Officer Defendants' purported other crimes and wrongs in unrelated cases." Doc. [197] at 2. According

---

[2] Plaintiffs also argue they have brought *Monell* claims, such that evidence of these Defendant officers' prior bad acts demonstrate that Defendant City of Chicago allegedly had a widespread practice of abuse that led to Plaintiffs' constitutional injuries. However, *Monell* claims, if they are to be successful, will also require proof much beyond the actions of a few police officers to demonstrate an area-wide or department-wide policy, custom, or practice. *See Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015) ("But a *Monell* claim requires more than this; the gravamen is not individual misconduct by police officers (that is covered elsewhere under § 1983), but a *widespread practice* that permeates a critical mass of an institutional body. In other words, *Monell* claims focus on institutional behavior; for this reason, misbehavior by one or a group of officials is only relevant where it can be tied to the policy, customs, or practices of the institution.") Thus, while the Rule 404(b) evidence of these defendant officers' other alleged bad acts may contribute to establishing the *Monell* claims, the Court does not find Plaintiff's *Monell* argument *vis a vis* these Rule 404(b) witnesses to warrant the far-reaching discovery requested here.

to Defendants, Plaintiffs' Rule 404(b) witness list will require Defendants to depose each witness on the list, along with an equal or greater number of rebuttal witnesses. *Id.* at 5. The end result, Defendants assert, will be that a total of 500-1,000 witnesses and years of discovery will be added to the case. *Id.* For their part, Plaintiffs argue that Defendants overstate the burden associated with the Rule 404(b) witnesses, as correlating written discovery has already been produced, previous litigations involving Defendant Guevara included testimony from many of the same 404(b) witnesses, and any additional other-acts discovery will "inevitably take place in the at least nine other ongoing civil lawsuits against Defendant Guevara or in future litigation that has yet to commence." Doc. [202] at 8.

As stated above, the scope of discovery is limited to information that is non-privileged, relevant, and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Taking these one by one, the Court is convinced that 250 Rule 404(b) witnesses are too many, while 5 witnesses are too few for discovery purposes.

Beginning with the first proportionality factor, the "importance of the issues at stake in the action," the Court finds that discovery of some Rule 404(b) witnesses is certainly warranted. The issues at stake in these litigations are substantial. At a minimum, these cases involve allegations about murder, kidnapping, police brutality in the City of Chicago, and alleged wrongful convictions resulting in imprisonment of nearly 20 years for two individuals. These cases implicate not only the loss of liberty, but the legitimacy of the criminal justice system. *See Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 WL 467677, at *2 (N.D. Ill. Feb. 3, 2017). Hence, the first

9

proportionality factor demonstrates that a substantial amount of discovery is merited by the momentous issues at stake in these cases.

The second proportionality factor, the amount in controversy, also weighs in favor of granting significant Rule 404(b) discovery to Plaintiffs. Plaintiffs here seek compensatory damages, attorney's fees and costs against all Defendants, with punitive damages against the individual Defendants. Doc. [171] at 4. While Plaintiffs have represented that they cannot quantify the full extent of their damages, they estimate approximately two million dollars for each year they were incarcerated, which amounts to over $40 million for each case. That substantial dollar amount certainly calls for meaningful discovery efforts.

The impact of the third proportionality factor, the parties' relative access to relevant information, is not particularly applicable here. The witnesses at issue are third-party witnesses that are not in the control of either Plaintiffs or Defendants. Similarly, the fourth proportionality factor, the parties' relative resources, is likewise unhelpful to the Court. While Defendants likely have more resources than Plaintiffs, who are two individuals who had been unemployed for nearly 20 years by virtue of their imprisonments, the disparity in resources does not justify unlimited discovery. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("[C]onsideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party."). Further, deposing 250 Rule 404(b) witnesses would equally expend the resources of Plaintiffs as well as Defendants because Plaintiffs intend to call these witnesses in their case-in-chief and will actively participate in the depositions as well. The Court therefore finds that the parties' resources do not tip the scale one way or the other.

The final two proportionality factors, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit, are much more helpful in reaching the proper number of Rule 404(b) witnesses. To begin, the Rule 404(b) testimony proposed by Plaintiffs is not vital to determining the liability of Defendants because the other-acts evidence is otherwise tangential to the underlying facts of the murders at issue, the identity of the individuals that committed the crime, and the treatment of plaintiffs at the hands of the defendant officers. Rather, the evidence on Rule 404(b) will allegedly demonstrate a pattern or practice by the police officers in other investigations; Plaintiffs will then argue to the jury, in a non-propensity manner, that the pattern shows the wrongful conduct occurred here. On the spectrum of the importance of discovery in resolving the issues, the importance of the Rule 404(b) evidence is relatively low.

The Court further finds that the burden of deposing 250 Rule 404(b) witnesses outweighs the likely benefit of that discovery. Starting with the burden, discovery on such a substantial quantity of Rule 404(b) witnesses would be time-consuming, would greatly increase discovery costs, and would cause undue delays. Defendants "conservatively estimate that it would take no less than ten hours to evaluate, prepare for and take the depositions of each of Plaintiffs 250+ witnesses." Doc. [203] at 5. Plaintiffs assert that depositions are not needed for each Rule 404(b) witness.

In reality, both parties are fully aware that the district judge will not permit 250 witnesses to testify on Rule 404(b) matters at trial. The true crux of this dispute is that Plaintiffs are refusing to identify the Rule 404(b) witnesses they intend to call at trial now, and Defendants are stuck between: (1) guessing which witnesses will testify and taking only some depositions, or (2) taking all 250 depositions. Such dueling positions between the parties are unworkable in discovery,

particularly considering Rule 1's instruction that discovery should be conducted in a just, speedy and inexpensive manner. Fed. R. Civ. P. 1. Ignoring the fact that there is no chance 250 witnesses will be called at trial or permitting the depositions of 250 witnesses is neither just, speedy, nor inexpensive.

Concerning the need to take all witnesses' depositions, Plaintiffs contend that Defendants can simply look to past transcripts in other criminal, post-conviction, and civil proceedings involving Defendant Guevara to discern how the Rule 404(b) witnesses "would likely testify in any future proceeding[.]" Doc. [202] at 8. However, parties are entitled to explore and uncover information that may be introduced at trial during the discovery phase of litigation, so long as their approach is within the bounds of law. It is perfectly understandable that Defendants prefer to depose witnesses themselves, rather than rely on old transcripts involving different parties and lawyers. Counsel for Defendants may have a different plan of attack for these witnesses, or may wish to ask questions not contemplated by the prior deposing lawyers. Indeed, Plaintiffs genuinely have no legitimate basis to identify 250 Rule 404(b) witnesses, and then instruct Defendants on how to conduct discovery to prepare their own cases for trial. One of the goals of discovery is to ensure that there are no unfair surprises, and taking the deposition of a witness the other side intends to call is a one way to avoid an ambush at trial. The Court therefore agrees with Defendants that Plaintiffs' current list of Rule 404(b) witnesses is unduly burdensome.

Turning next to the benefit of the Rule 404(b) testimony, it appears outweighed by the burden of deposing 250 witnesses. As mentioned above, evidence regarding the prior bad acts of the Defendant Officers is tangential to the merits of these cases with respect to the individual claims. By its nature, Rule 404(b) evidence is about other acts that are not in the complaint. Like a cross examination under Fed. R. Evid. 608(b) or a conviction impeachment pursuant to Fed. R.

Evid. 609, non-propensity evidence under Rule 404(b) is admitted in a limited fashion due to prevalent Rule 403 concerns. *See United States v. Devery*, 935 F. Supp. 393, 406 (S.D.N.Y. 1996), *aff'd sub nom. United States v. Torres*, 128 F.3d 38 (2d Cir. 1997) ("As indicated in the Advisory Committee notes and developed in case law, Rule 608(b)'s discretionary analysis is circumscribed by the standard for the admissibility of evidence articulated in Rule 403 . . . ."); Fed. R. Evid. 609(a)(1)(A) (subjecting admission of conviction to Rule 403). Other-acts evidence implicates many of the Rule 403 concerns, including unfair prejudice, confusing the issues, and wasting time. Fed. R. Evid. 403. The risk that a jury will use the Rule 404(b) evidence for propensity purposes is significant even if admitted for non-propensity reasons, and particularly if its probative value is low, which in turn causes a high degree of unfair prejudice to defendants. Furthermore, evidence under Rule 404(b) could sidetrack the trial into time-consuming, confusing mini-trials about whether the alleged bad acts of these officers on other individuals actually occurred. Proving a coerced confession or a fabrication of evidence is no easy task—and each one of these allegations will likely be vigorously contested by defendants. Each time a new "other act" evidence is introduced, assuming it satisfies *Gomez*, the length and complexity of the trial is increased, as well as the risk of jury confusion. In light of these Rule 403 concerns, Rule 404(b) evidence is often admitted with jury instructions, so that juries are careful to consider the Rule 404(b) evidence for a limited purpose. *See Gomez*, 763 F.3d at 860 ("Appropriate jury instructions may help to reduce the risk of unfair prejudice inherent in other-act evidence.").

As in any case, time and resources are not endless. Without an agreement among the parties, it is left to this Court to decide the number of Rule 404(b) witnesses for discovery purposes that is proportional to the needs of these cases under Rule 26(b)(1). Plaintiffs contend that there is no basis to limit Rule 404(b) discovery under Rule 26(b), and that courts routinely permit

extensive other-acts discovery and defer admissibility questions to trial, citing to four cases from this district. Doc. [202] at 9-10. As an initial matter, Plaintiffs are wrong in claiming there is no basis to limit Rule 404(b) discovery under Rule 26(b). Rule 26(b) requires the court to limit the frequency or extent of discovery if the Court determines that the proposed discovery is not relevant or proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(C)(iii). Moreover, not one of the cases Plaintiffs cite illustrates a district court allowing hundreds of Rule 404(b) witnesses to be deposed in the discovery phase. *See Simon*, 2017 WL 467677, at *4 (plaintiff seeking "records, documents, ESI, Communications, and press releases from Northwestern" regarding defendants' investigations into alleged wrongful convictions); *Young v. City of Harvey*, No. 15 C 11596, 2016 WL 4158952, at *4 (N.D. Ill. Aug. 4, 2016) (plaintiff moving to compel interrogatory response to "information on other accusations and claims of retaliation, in violation of the Constitution, employment laws, or Illinois common law, that have been asserted against [Defendant] Eaves"); *Lanigan v. Babusch*, No. 11 C 3266, 2011 WL 5118301, at *2 (N.D. Ill. Oct. 27, 2011) (compelling answers to interrogatories and documents in response to requests for production on Rule 404(b) evidence); *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004) (plaintiff moving to compel personnel files and complaint histories of individual defendant officers). Plaintiffs' cases are thus inapposite to the Rule 26(b) decision before the Court.

Thus, the proportionality factors under Rule 26(b)(1) guide the Court to conclude that ten witnesses is the appropriate number of Rule 404(b) witnesses here. The importance of the issues at stake and the amount in controversy demonstrate that Defendants' suggestion of five witnesses is too little. The scope of discovery is generally larger than eventual admissibility at trial, and the Court must be mindful not to limit discovery too much that it diminishes the flexibility given to a party to discover information that may be relevant for trial. However, as explained above, the

burden of deposing 250 witnesses is not warranted by the lesser importance of Rule 404(b) evidence in resolving the issues in this case. The bulk of the parties' discovery efforts should go to the allegations of the complaint, namely the specific incidents alleged to have occurred to Plaintiffs at the hands of these individual Defendant Officers. Accordingly, Rule 26(b) dictates that a limit must be placed, and ten witnesses is the appropriate limit here. Plaintiffs are ordered to identify ten Rule 404(b) witnesses on their "will call" list, *i.e.* these are the witnesses that Plaintiffs intend to call at trial, subject to admissibility by the district judge. Only these "will call" witnesses may be deposed. The Court is also aware that these third-party witnesses are often difficult to find or may dodge service of deposition subpoenas. Thus, Plaintiffs will have until April 17, 2020 to substitute out witnesses on the "will call" list who cannot be located and served.

This Court has employed this procedure in both *Prince v. Kato*, 18-cv-02952 (N.D. Ill.), and *Fulton v. Foley, et al.*, 17-cv-08696 (N.D. Ill.), and has determined that it is an effective means of meeting both parties' concerns on Rule 404(b) witnesses. *See also Rivera v. Guevara, et al*, No. 12-cv-4428 (N.D. Ill.), Doc. [76] (requiring identification of ten Rule 404(b) witnesses in discovery), Doc. [600] (permitting a lesser number of Rule 404(b) witnesses to testify at trial). Indeed, both parties contend, in the alternative (if their primary arguments are rejected), that the Court's prior practice of limiting the number of Rule 404(b) witnesses to ten witnesses for discovery is an appropriate limitation. The Court does so here.

**III.  Impact on Trial**

The Court is not making a decision on the number of Rule 404(b) witnesses that can be called at trial. To do so this early in the case would be improper and also outside the bounds of this Court's authority in managing the discovery process only. However, the Court realizes that limiting the number of Rule 404(b) witnesses in discovery will likely limit the number of Rule

404(b) witnesses called at trial. For instance, the district judge may be reluctant to allow Plaintiffs fifteen to twenty Rule 404(b) witnesses in light of the fact that discovery was limited to ten Rule 404(b) witnesses, and that Defendants accordingly did not get an opportunity to depose the other witnesses. This concept is not unusual – the size of the pool in discovery always impacts the trial of the case. After all, discovery is not conducted in a vacuum. If the court supervising discovery denies a motion to compel for the production of documents, those documents are not introduced at trial. If a motion to compel a deposition is denied, the witness likely does not testify at trial. Thus, while the Court is cognizant of the ripple effects of its decisions in discovery, the Court is nevertheless bound by the relevancy and proportionality concerns outlined in Rule 26(b).

Furthermore, the Court's order of ten Rule 404(b) witnesses takes into account the impact at trial. In the Court's view, the district judge will likely allow fewer than ten witnesses on a Rule 404(b) matter, when considering admissibility under *Gomez* and Rule 403 concerns. Keeping that funneling effect in mind, the Court has ordered a larger number of witnesses to be deposed than say, three or five witnesses, which would significantly limit the options on Plaintiffs' Rule 404(b) evidence. In other words, the Court is expanding the number of Rule 404(b) witnesses in discovery to ensure that it is not unreasonably limiting the number of Rule 404(b) witnesses at trial, while still accounting for the proportionality concerns at play. In the worst case scenario, the district judge could reopen discovery shortly before trial to allow Defendants to depose the Rule 404(b) witnesses outside of the ten on the Plaintiffs' current "will call" list. Thus, any prejudice in allowing too few Rule 404(b) witnesses in discovery could be cured by the district judge at a later time, if necessary.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Limit Plaintiffs' 404(b) Discovery [*DeLeon-Reyes* 303, *Solache* 197], is granted in part and denied in part. Plaintiffs are limited to ten Rule 404(b) witnesses for purposes of discovery. By April 10, 2020, Plaintiffs shall produce their final list of ten Rule 404(b) witnesses to Defendants. By May 11, 2020, Plaintiffs shall substitute any witnesses on the "will call" list who cannot be located. This list shall include the necessary contact information for each Rule 404(b) witness, and each party is ordered to update the contact information within twenty-fours of receiving new contact information for each witness. The parties are granted leave to take the depositions of these ten Rule 404(b) witnesses, and are directed to schedule those depositions.

**SO ORDERED.**

Dated: March 18, 2020

                                                          Sunil R. Harjani
                                                          United States Magistrate Judge