**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | Magistrate Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Magistrate Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' JOINT MOTION TO QUASH PLAINTIFFS' SUBPOENAS

Defendants, the City of Chicago, Chicago Police Defendants Dickinson, Rutherford, Stankus, Naujokas, Harvey, Trevino, Mingey, Biebel, Theresa Karalow, as Special Representative of the Estate of John Karalow, Kevin Rodgers, as Special Representative of the Estate of Francis J. Cappitelli, and JoAnn Halvorsen, as Special Representative of the Estate of Ernest Halvorsen, Guevara, Cook County State's Attorney Defendants Wehrle, Brualdi, Varga, O'Malley and Cook County, by and through they respective undersigned attorneys, hereby move this Honorable Court to Quash four separate subpoenas issued by Plaintiffs. In support of this Motion, Defendants state as follows:

**BACKGROUND**

On December 12, 2020, counsel for Plaintiffs Solache and Reyes sent the undersigned counsel notice of their intent to subpoena 1) the Cook County State's Attorney's Office ("CCSAO"), (attached hereto as Exhibit A); 2) the Federal Bureau of Investigation, Chicago Division ("FBI"), (attached hereto as Exhibit B); 3) the United States Attorney's Office for the Northern District of Illinois ("USAO"), (attached hereto as Exhibit C); and 4) the United States Department of Justice, Civil Rights Division, Special Litigation Section ("DOJ") (attached hereto as Exhibit D). Specifically, the subpoena to the CCSAO seeks "[a]ll communications between agents or employees of the City of Chicago and any agents or employees of the Cook County State's Attorney's Office" regarding five different officers, two of which are not even defendants in this lawsuit, Joe Miedzianowski ("Miedzianowski") and his former partner, John Galligan ("Galligan"). *See,* Exhibit A. The subpoenas to the FBI and the USAO seek "[a]ll documents relating to any investigations or inquiries" conducted by the FBI or the USAO for Miedzianowski. *See,* Exhibit B and C. Thus, three of the four subpoenas seek information related to non-defendant former police officer Miedzianowski.

Miedzianowski, was convicted in 2001 along with 24 others, including, his former partner, Galligan as well as his mistress, after a years-long investigation into his criminal activities. Also among the defendants was Mohamed Omar, ("Omar") a well known Spanish Cobra. In 2001 Omar was convicted of racketerring and drug conspiracy, and subsequently sat for an interview with the FBI. That interview was memoralized by the FBI in a 302 Report ("302"). *See,* FBI 302 Report, attached hereto as Exhibit E. The 302 (the contents of which will be discussed more fully below) was first cited by Plaintiff Solache in his December 2003 post-conviction filing. *See,* December 3, 2003 Post-Conviction Petittion attached hereto as Exhibit F. While this document

has been produced over and over again in the Guevara cases (including by Plaintiff Reyes' counsel as early as 2013), since its production there has been no evidence developed to authenticate the document or its contents. What's more, all news articles from the time period indicate that all of the information regarding Omar was specifically kept under seal accordingly it is not clear how it first became available for repeated production since.

Moreover, Plaintiffs have developed no evidence to suggest that Guevara participated in or was even aware of Miedzianowski's criminal activity. In fact, the only evidence developed to date suggests that the Omar information was unreliable. Specifically, in *Rivera v. City of Chicago,* N.D. Ill. Case No. 12-CV-4428, another case where Guevara was named as a defendant, former CPD Commander of Internal Affairs, Robert Klimas, testified as a 30(b)(6) witness at plaintiff's request. He testified that after reviewing the 302 in preparation for his deposition, he investigated whether the FBI has opened any investigation based upon the allegations and determined that it had not and that Omar was found not to be credible by the USAO. *See,* Deposition of Robert Klimas, attached here to as Ex. G. at pp. 6:4-20, 12:19-24. Accordingly, three of the four subpoenas seek information related to Miedzianowski (in whole or in part), a non-defendant former police officer who has no connection to this case.

Finally, the one subpoena of the four that seeks information not related to Miedzianowski is directed to the DOJ and seeks information gathered during a "pattern or practice" investigation conducted from 2015 to 2017 of the Chicago Police Department ("CPD") which examined data related to allegations of police officer misconduct and ultimately led to the entry of a consent decree. *See,* Exhibit D.

For the reasons set forth below, the information sought by these four subpoenas is irrelevant to Plaintiffs' claims and, therefore, the discovery sought bears no importance in resolving the

issues in this case. Fed. R. Civ. P. 26(b)(1). The parties attempted to resolve their disputes but have been unsuccessful. Accordingly, Defendants asked that Plaintiffs' counsel inform all subpoena respondents of Defendants' objections, and Defendants now move to quash each subpoena.

## LEGAL STANDARD

Federal Rules of Civil Procedure 45 requires a court to quash or modify a subpoena if it "requires disclosure of privileged information or other protected matter" or "subjects someone to undue burden." Fed. R. Civ. P. 45(d)(3)(A). If the information sought would not "assist[] in the exploration of a material issue" in the case, then a subpoena should be quashed. *CSC Holdings Inc. v. Redisi,* 308 F.3d 988, 993 (7th Cir. 2002). When determing if a subpoena should be quashed, the Court must always consider the relevance of the subpoenaed material. *Pursley v. City of Rockford,* 2020 WL 1433827, *2. (W.D. Ill. March 24, 2020)(Jensen, MJ) *citing Third Degree Films, Inc., v. Does, 1-2010,* 2011 WL 4759283, at *1 (N.D. Ind. Oct. 6, 2011) ("However, implicit in the rule is the requirement that a subpoena seek relevant information."). Although the Seventh Circuit has not explicitly ruled that district courts may quash or modify a subpoena for seeking information irrelevant to the merits of a case, it has long recognized that courts have "wide discretion in limiting the scope of discovery to topics of ultimate relevance." *Stock v. Integrated Health Plan, Inc.,* 241 F.R.D 618, 621 (S.D. Ill. 2007). A subpoena can survive a motion to quash when it designates topics that are reasonably calculated to lead to admissible evidence. *Id.* A party may have standing to quash a subpoena addressed to another if the subpoena infringes on the movant's legitimate interests. *U.S. v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982) (holding that a prosecutor's standing rests upon its interests in preventing undue lengthening of the trial, undue harassment and a prejudicial over emphasis on credibility). Here, because each subponea seeks

irrelevant information, which serve only to harass and prejudice the Defendants, each of the subpoenas issued by Plaintiff infringes on the Defendants' legitimate interests.

## ARGUMENT

### I.    Plaintiffs' Subpoena to the CCSAO Should Be Quashed.

Plaintiffs' Subpoena to the CCSAO seeks "communications between any agents or employees of the City of Chicago and any agents or employees of the Cook County State's Attorney's Office that refer or relate to former Chicago Police officers Reynaldo Guevara, Ernest Halvorsen, Edward Mingey, Joseph Miedzianowski and/or John Galligan[.]" *See,* Ex. A.  During the parties' Rule 37 discussion, the City objected on the grounds that the subpoena sought irrelevant information and was overbroad as it was not limited in time.  In response, Plaintiffs offered to "identify" two time periods from which they would "initially seek records" (which still encompasses a twenty-year time period) and offered several purported bases of relevance, including that the information may lead to the discovery of similar misconduct, the City's notice of misconduct, the reasons why certain defendants have or have not asserted their Fifth Amendment rights and how purported misconduct affected prosecutorial decisions by the CCSAO. *See,* December 17, 2019 Email from John Hazinski, attached hereto as Ex. H.

### A.   Plaintiffs' Subponea to the CCSAO Seeks Information that is Protected by the Deliberate Process Privilege.

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *N.L.R.B. v. Sears, Roebuck & Co*., 421 U.S. 132, 150-51 (1975)).  To that end, the privilege shields "communications that are part of the decision-making process of a governmental agency." *Id.* (citing *Sears, Roebuck & Co.,* 421 U.S. at 150-52).   These communications include "documents reflecting advisory opinions, recommendations[,] and deliberations comprising part

of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). The deliberative process privilege applies if the documents are both "'pre-decisional' — generated before the adoption of an agency policy—and 'deliberative'—reflecting the give and take of the consultative process." *Holmes v. Hernandez*, 221 F. Supp. 3d 1011, 1016 (N. D. Ill. 2016) (quoting *Continental Illinois Nat'l Bank & Trust Co. v. Indemnity Ins. Co.*, 1989 U.S. Dist. LEXIS 13004, 1989 WL 135203, at *2 (N.D. Ill. Nov. 1, 1989)); *see also Patrick v. City of Chi.*, 111 F. Supp. 3d 909, 915 (N.D. Ill. 2015).

There is a two-step process for determining whether the deliberative process privilege applies. *Holmes*, 221 F. Supp. 3d at 1016; *Patrick*, 111 F. Supp. 3d at 915-916. First, the government must show that the privilege applies. *Holmes*, 221 F. Supp. 3d at 1016; *see also Evans*, 231 F.R.D. at 316; *Ferrell v. United States HUD*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). If the government makes out a *prima facie* case, the burden then shifts to the party seeking disclosure to establish "a particularized need" for the documents and that the party's need for the document outweighs the government's interest in confidentiality. *Holmes*, 221 F. Supp. 3d at 1016 (quoting Farley, 11 F.3d at 1389); *Patrick*, 111 F. Supp. 3d at 915.

Plaintiffs' subpoena seeking communications between the CCSAO and the City of Chicago is merely his latest effort to obtain privileged information related to the exercise of prosecutorial discretion by the CCSAO. The subpoena seeks communications over the course of a continuous twenty-year period (from 2001-2013, and 2013 to the present) between employees and agents of the CCSAO and the City of Chicago. However, the Seventh Circuit has recognized that the deliberative process privilege applies to situations where deliberative communications relate not to the creation of an agency policy, but to the way an agency should make a decision in a particular

6

case. *Farley,* 11 F.3d at 1389; *Hill v. City of Chicago*, 13 C 4847, 2015 U.S. Dist. LEXIS 190661, at *10-11 (N. D. Ill. May 28, 2015) (deliberations underlying a decision to bring criminal charges are privileged). As a result, Plaintiffs' subpoena, as written, seeks privileged information.

The CCSAO has the responsibility of evaluating the evidence, determining what offenses can properly be charged, and deciding whether to proceed to trial in a criminal case. These essential functions depend on prosecutors' pre-decisional, deliberative communications with law enforcement officers, such that Plaintiffs' subpoena runs afoul of the privilege. Plaintiffs' subpoena requests the CCSAO to tender any and all communications that refer or relate to Guevara, Halvorsen, Mingey, Miedzianowski and/or Galligan. But Plaintiffs have cast too wide a net, as the subpoena encompasses pre-decisional, deliberative communications which are essential to the CCSAO's decisions to pursue (or not pursue) charges or proceed to trial. This is true not only of Plaintiffs' criminal case (including the decision to contest Plaintiffs' post-conviction petitions), but also of any cases that Guevara, Halvorsen, Mingey, Miedzianowski and/or Galligan have worked on (or otherwise been a part of) from 2001 to the present. *See* Ex.A. What's more, Plaintiffs have actually articulated that one of their reasons for issuing the subpoena is to obtain this sort of privileged information; namely, whether and how alleged misconduct by law enforcement officers affected prosecutorial decision-making within the CCSAO. *See* Ex. H.

Granting Plaintiffs unfettered access to communications between the CCSAO and the City of Chicago would set a precedent for others similarly situated to seek discovery of the CCSAO's confidential information and allow them fodder for potential civil rights claims. Such disclosure would hinder the CCSAO's work of prosecuting criminal offenses and ensuring the integrity of convictions. Accordingly, the CCSAO is entitled to invoke the deliberative process privilege to

the extent that Plaintiff's subpoena seeks communications between agents or employees of the CCSAO and the City of Chicago that reflect the CCSAO's prosecutorial decision-making[1].

**B. Plaintiffs' Subponea Seeks Documents Protected by the Common Interest Privilege.**

Finally, the communications that Plaintiffs seek, to the extent they exist, are likely covered by the common-interest privilege as it applies to the work product doctrine. *See, Coachmen Industries Inv. V. Kemlite,* 2007 WL 3256654, *3 (N.D. Ind. 2007) (holding that the common-interest privilege extends to work-product even if the parties are engaged in separate litigation against the same adversary). Specifically, the CCSAO and the City are co-defendants not only in this litigation, but several others regarding Detective Guevara wherein similar allegations are being made pertaining to the conduct of the police and the Assistant State's Attorneys. *Id.* Communications between City attorneys and attorneys from the CCSAO regarding case strategy and defense would necessarily be work product covered by the common interest privilege even where that communication occurred prior to the filing of a lawsuit. *Id.* Accordingly, Plaintiffs subpoena to the CCSAO for communications should be quashed.

**C. Plaintiffs' Subpoena to the CCSAO is Unduly Burdensome.**

A party's right to obtain information by subpoena is not limitless. Under Fed. R. Civ. P. 45, upon timely motion, the issuing Court must quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv); *see also CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 993 (7th Cir. 2002); *EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 700 (7th Cir. 2002)). The Seventh Circuit has applied a relative hardship test in analyzing undue burden, considering whether the burden of compliance with a subpoena would exceed the benefit of production of the material sought by it. *Northwestern Memorial Hosp. v. Ashcroft,* 362 F. 3d 923,

---

[1] Defendant Navarro agrees with the relief requested in this motion.

927 & 933 (7th Cir. 2004). Further, courts may weigh a number of factors including "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are requested, and the burden imposed." *Morrow v. Air Ride Technologies, Inc.,* 2006 U.S. Dist. LEXIS 96651, 2006 WL 559288 at *2 (S.D. Ind. Mar. 6, 2006). Additionally, a person responding to a subpoena "need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 45(d)(1)(D).

At the outset, Plaintiffs' subpoena to the CCSAO is horrendously overbroad. The subpoena seeks "communications between any agents or employees of the City of Chicago and any agents or employees of the Cook County State's Attorney's Office that refer or relate to former Chicago Police officers Reynaldo Guevara, Ernest Halvorsen, Edward Mingey, Joseph Miedzianowski and/or John Galligan[.]" *See* Ex. A. During the parties' Rule 37.2 discussion, Plaintiffs limited the scope of the subpoena to "two time periods," specifically, 2001-2013 and 2013 to the present; however, Plaintiffs still seek communications for a continuous twenty-year period and has not placed any limitation on custodians. In that regard, the CCSAO would ostensibly be required to search the email communications of thousands of current and former employees, and divert significant resources (including hundreds of hours of attorney time) to conducting a privilege review. Beyond email communications the subpoena, as written, would potentially require the CCSAO to search for hard copies of communications which may be kept in the hundreds, or even thousands, of criminal case files upon which Guevara, Halvorsen, Mingey, Miedzianowski and/or Galligan worked. That would effectively force the CCSAO to not only generate a list of the criminal case files relating to those individuals, but also undertake efforts to track down each of those files, if they still exist. As a result, the subpoena is unduly burdensome on its face.

Furthermore, the subpoena to the CCSAO seeks a swath of irrelevant information. With respect to the subpoena's request for information related to Miedzianowski and Galligan, as articulated above, Miedzianowski and Galligan are not defendants in this case, and were not involved in the investigation of Plaintiffs for the Soto murders and kidnappings. Likewise, it is incomprehensible how communications between employees or agents of the CCSAO and the City of Chicago which occurred *after* the resolution of Plaintiffs' criminal case attendant to the Soto murders and kidnappings could be relevant to his claims against the Individual Defendants.

Additionally, Plaintiff has not articulated any connection between the effect of allegations of misconduct on the CCSAO's decision-making processes and his claims against the Individual Defendants in this case. To date, Plaintiffs have developed no evidence to suggest that the prosecutors' decision to approve charges for the Soto murders and kidnappings in the underlying criminal case has some nexus to the manner in which the CCSAO exercised its prosecutorial discretion in any other case. In summary, none of Plaintiffs' articulated bases for the subpoena indicate how the information sought is somehow probative of the issues in this lawsuit.

The burden of compliance with Plaintiffs' subpoena to the CCSAO would far exceed the benefit of production of the material sought by it. The overbreadth and timeframe of the subpoena alone impose an undue burden on the CCSAO, which is particularly unjustified in light of the fact that, as articulated above, the information sought bears little relevance (if any) to Plaintiffs' claims against Defendants in this lawsuit. To that end, Plaintiffs' steadfast refusal to narrow their request any further makes plain that his subpoena is designed for the improper purpose of harassing the CCSAO and the City of Chicago. Ultimately, Plaintiffs' own *ipse disit* that the CCSAO *could* possess some unidentified information bearing relevance to their claims does not make it so, and

this Court should not permit them to undertake a fishing expedition at the CCSAO's expense. This Court should therefore quash Plaintiffs' subpoena to the CCSAO.

**D. Plaintiff's Subponea to the CCSAO Seeks Documents that Are Irrelevant to Resolving the Issues in this Case.**

Furthermore, Plaintiffs fail to articulate how *any* of the desired communications, which to the extent they exist, occurred *after* the purported constitutional violations are relevant to their claims. For example, Plaintiffs state that the communications "may reveal evidence of the City's notice of Defendants' misconduct." Ex. H, at ¶1. However, the time frame that the subpoena seeks is from 2001 through the present. The underlying crime for which Plaintiffs were arrested, prosecuted and convicted occurred in 1998. It is incomprehensible how communications that occurred *after* the alleged constitutional violations could have put the City on notice that the Individual Defendants' were going to commit some sort of misconduct in 1998. Moreover, Plaintiffs' assertions that the email communications may explain the reasons various Individual Defendants have or have not asserted their Fifth Amendment rights, or how allegations of misconduct have affected prosecutorial decisions are also unavailing. Ex. H at ¶1. Plaintiffs have not and cannot explain why whether certain Individual Defendants have or have not asserted their Fifth Amendment rights is relevant to their claims. In fact, the Seventh Circuit has held that allowing a defendant to explain his decision to assert the Fifth Amendment is reversible error. *Ruiz-Cortez v. City of Chicago,* 931 F.3d 592, 603 (7th Cir. 2019) (holding that allowing a defendant to provide an explanation for why he was taking the Fifth Amendment at trial lead to an unfair trial for the plaintiff). Moreover, Plaintiffs do not explain how the effect of allegations of misconduct on prosecutorial decisions is in any way relevant to the claims against the prosecutor Defendants in this case or, for that matter, any of the City Defendants. In summary, none of these articulated bases indicate how the communications, to the extent they exist, *after* the events in

question could be relevant to proving that any of the police or prosecutor Defendants committed any constitutional violations in 1998 or that the City was on notice of a policy of failing to discipline its police officers prior to 1998. Although the relevance standard is broad, it is not infinitely broad, and discovery requests that will not lead to relevant facts should be quashed. *Ligas v. Maram,* 2007 WL 2316940, * 3 (N.D. Ill. 2007).

## II. The Documents Sought In Plaintiff's Subpoena to the FBI and the USAO Are Irrrelvant to Resolving the Issues.

Plaintiffs' subpoenas to the FBI and the USAO, seek all "documents relating to any investigations or inquiries conducted by the Federal Bureau of Investigation or the United States Attorney's Office for the Northern District of Illinois into former Chicago police officer Joseph Miedzianowski[.]" *See,* Ex. B and Ex. C respectively. During the parties' Rule 37 discussions regarding the relevance of this subpoena, Plaintiffs' stated that "there is reason to believe that Guevara was involved in Miedzianowski misconduct, as set out in documents produced in these cases." *See,* December 17, 2019 Email from John Hazinski attached hereto as Ex. H, at ¶2. However, as outlined briefly above, there is in fact no reason to believe that.

First, there is only one paragraph in the fifteen-page report pertaining to Guevara. Ex. E. That paragraph states Omar knew Guevara from the neighborhood, and that Guevara had a reputation for "messing with gang members[,]" and that Guevara was "said to have accepted bribes to change positive or negative identifications during line-ups for murder cases." Ex. E. This paragraph creates no connection between Guevara and Miedzianowski, much less a connection to Miedzianowksi's criminal activity such that all "documents relating to any investigations or inquiries conducted" by the FBI or the USAO into Miedzianowski could bear on, or reasonably lead to other matters that could bear on any issue that is or may be an issue in this case. *See generally, Elwell v. First Baptist Church of Hammond Indiana., Inc.,* 2017 WL 3262532 (N.D.

Ind. 2017). Second, Commander Klimas testified that the FBI and the AUSA who were directly involved in the investigation found Omar not credible and that since Omar was their informant, when the FBI chose not to open a separate investigation into Guevara, there was no internal CPD investigation into Omar's allegations against Guevara. *See,* Ex. G at 6:4-20, 12:19-24.

And, even without the benefit of Commander Klimas' testimony on this topic, the reasonable conclusion to be drawn from the fact that Guevara was never charged in connection with the Miedzianowski investigation is that there was no evidence developed connecting Guevara to Miedzianowski's criminal activity. Certainly, if the FBI had found Guevara was involved in Miedzianowski' s misconduct, it would have come to light during the years-long investigation and three month criminal trial, or Guevara would have been charged and prosecuted to the same extent as Miedzianowski (as evidenced by the prosecution of Miedzianowski' s partner as well as 24 othe defendants). *See,* Chicago Tribune Article "Rogue Cop Gets Life" published on January 25, 2003, attached hereto as Exhibit I.

Plaintiffs' mere assertions that the documents contain relevant information in order to prove that the documents contain relevant information is circular and fails to provide the court with a non-conjectured factual basis that the documents do in fact contain relevant information. *See e.g., Simon v. Northwestern University,* 2017 WL 66818, *4 (N.D. Ill. Jan. 6, 2017). Accordingly, the subpoenas issued to the FBI and the USAO infringe on the City's legitimate interests. Specifically, given the lack of relevance of the requested information, the purpose of each subpoena seems soley to harass and prejudice the City and Defendant Officers regarding unrelated conduct of non-defendant police officers. Accordingly, this Court should quash Plaintiffs' subpoenas to the FBI and USAO because they seek wholly irrelevant information that is not reasonably calculated to lead to admissible evidence. *See, Stock,* 241 F.R.D. at 621.

13

**III.    The Documents Sought In Plaintiff's Subpoena To The DOJ Are Irrelevant To Resolving The Issues In This Case.**

Plaintiffs' subpoena to the DOJ seeks, documents relating to its 2015 to 2017 investigation of the CPD that contain 1) "quantitative data or other information regarding the frequency of Chicago Police Officer misconduct, including but not limited to any complaint register ("CR") files;" 2) quantitative data or other information regarding the rates at which Chicago Police Officers are disciplined for misconduct;" and 3) "notes or records of interviews with officials within the Chicago Police Department who exercised policymaking authority regarding the training or discipline of Chicago Police Officers." *See,* Ex. D.  When asked to articulate the relevance of these requests, Plaintiffs simply stated that the documents are relevant to their *Monell* theories, "including the City's knowledge of and deliberate indifference to CPD officer misconduct."  Ex. H.  However, as indicated *supra,* the circular logic of Plaintiffs stating "this is relevant" and therefore it is, fails here as well.  *See, e.g. Simon,* 2017 WL 66818, *4.

Plaintiffs' claims stem from their arrest, prosecution and conviction for the 1998 murders of Mariano and Jacinta Soto.  This Court has determined that the relevant time period for purposes of Plaintiffs' *Monell* claim related to failure to discipline is 1995 through 1998.  Dkt. 224 at p. 23. The DOJ reviewed data from the January 2011 through March 2016 time period, thirteen years *after* Plaintiffs' arrests and criminal prosecutions took place.  Plaintiffs have failed to provide any relevant basis for requesting data regarding misconduct and discipline that occurred *after* the allegations contained within their complaints, nor can they.  Moreover, it is inexplicable how data from 2011 through 2016 could have informed the City's purported knowledge of and deliberate indifference to CPD officer misconduct occurring in 1998 and before.  Accordingly, this Court should quash Plaintiffs' subpoena to the DOJ which seeks irrelevant information that bears no importances on resolving the issues in this case.  *See, Stock,* 241 F.R.D. at 621.  Given the utter

14

lack of relevance, the subpoenaed information would only serve to put a prejudicial emphasis on unrelated accusations against the City and CPD as a whole. *See. e.g., U.S. v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982) (prosecutors standing rests upon its interests in preventing a prejudicial over emphasis on credibility). Accordingly, Plaintiffs' subpoena to the DOJ should be quashed.

WHEREFORE, Defendants respectfully request this Honorable Court quash the subpoenas issued to 1) the CCSAO; 2) the FBI; 3) the USAO; and 4) the DOJ, and for any other relief as this Court deems just and reasonable. In light of Second Amended General Order 20-0012, the Parties have agreed to a briefing schedule, specifically, Plaintiffs seek until April 22, 2020 for their response brief and Defendants seek until April 29, 2020 for their reply.

Date: April 15, 2020                          Respectfully Submitted,

KIMBERLY M. FOXX                              MARK A. FLESSNER
State's Attorney of Cook County               Corporation Counsel of the City of Chicago

By: */s/ Ryan Gillespie*                       By: */s/ Eileen E. Rosen*

Edward M. Brener                              Eileen R. Rosen
Ryan Gillespie                                Catherine M. Barber
Assistant State's Attorneys                   Theresa Berousek Carney
500 Richard J. Daley Center                   Special Assistant Corporation Counsel
Chicago, IL 60602                             **Rock Fusco & Connelly, LLC**
(312) 603-7379                                321 N. Clark Street, Suite 2200
Edward.brener@cookcountyil.gov                Chicago, IL
Ryan.gillespie@cookcountyil.gov               (312) 494 – 1000
*Attorneys for Individual Prosecutor*          erosen@rfclaw.com
*Defendants and Cook County*                   *Attorneys for Defendant City of Chicago*


s/ Thomas Leinenweber                         s/ Caroline Golden
Thomas M. Leinenweber                         James G. Sotos
James V. Daffada                              Caroline P. Golden
Kevin E. Zibolski                             Josh M. Engquist
Special Assistant Corporation Counsel         Special Assistant Corporation Counsel
**Leinenweber Baroni & Daffada LLC**          **Sotos Law Firm**
120 N. LaSalle St., Suite 2000                550 E. Devon, Suite 150
Chicago, IL 60602                             Itasca, IL 60143
*Attorneys for Individual Chicago Police*      *Attorneys for Individual Chicago Police*
*Defendant Guevara*                            *Defendants*