**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Hon. Sunil R. Harjani |
| Defendants. | ) | Magistrate Judge |
| | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | Hon. Sunil R. Harjani |
| Defendants. | ) | Magistrate Judge |
| | ) | |

**PLAINTIFFS' JOINT RESPONSE TO DEFENDANTS'
JOINT MOTION TO QUASH PLAINTIFFS' SUBPOENAS**

Plaintiffs Arturo DeLeon Reyes and Gabriel Solache, though their counsel, respectfully submit this response to Defendants' joint motion to quash Plaintiffs' subpoenas, stating in support as follows:

**INTRODUCTION**

Plaintiffs issued four subpoenas to nonparties seeking information that is directly relevant to their allegations, their development of 404(b) evidence, and their *Monell* claims. Specifically, they issued subpoenas to the FBI, the United States Attorney's Office, and the CCSAO, who have documents and communications related to Defendant Guevara's former coworkers Joseph

Miedzianowski and John Galligan, both of whom Guevara worked with, and both of whom went to federal prison for crimes committed while they were working with Guevara. Plaintiffs also issued subpoenas to the Department of Justice seeking the information collected during the DOJ investigation into Chicago Police Department's patterns and practices that led to officer misconduct.

Defendants object largely because they do not think this information is relevant, but they have no standing to raise this objection because they are not the subpoena recipients, nor do the subpoenas seek any information in which Defendants have an independent privilege. And in any event, this Court has already held that documents and communications like the ones Plaintiffs seek now are discoverable in this litigation. Therefore, this Court should deny Defendants' motion.

## BACKGROUND

Plaintiffs' subpoenas to the FBI, USAO, and CCSAO seek information relating to former Chicago police officers Miedzianowski and Galligan. ECF No. 320-1, Defs.' Exs. A, B, and C, at ECF Page Nos. 5-6, 11, and 16. According to the 302 report prepared by the FBI after an investigation into corruption, abuses of authority, and criminal activity within the Chicago Police Department's gang crimes unit, ECF No. 320-1, Defs.' Ex. E, at ECF Page Nos. 25-39, a former member of the Spanish Cobras street gang named Mohamed Omar revealed to federal law enforcement that Miedzianowski and Galligan were involved in a drug conspiracy with the Spanish Cobras for over a decade beginning in 1987. Their involvement included protecting gang members and drug deals, as well as selling and stealing drugs and firearms. *Id.*

Plaintiffs have a well-founded belief that Guevara was involved in this illicit activity. Guevara was a fellow gang crimes officer and there is plentiful evidence that he had a close

working relationship with Miedzianowski and Galligan, including from individuals who witnessed this involvement first-hand. That evidence includes the FBI 302 report of Mohammed Omar, which revealed that Guevara, too, participated in that conspiracy, and accepted bribes to release suspects in murder cases. Omar stated that Guevara's policy was to "catch a person with drugs or guns, but let them buy their way out of trouble," and that he "was also said to have accepted bribes to change positive or negative identifications during line-ups for murder cases." ECF No. 320-1, Defs. Ex. E, at ECF Page Nos. 37-38.

That evidence also includes affidavits from Jondalyn Fields and Frederick Rock. *See* Ex. A (Fields Affidavit); Ex. B (Rock Affidavit). Ms. Fields averred that in 1998 her friend and roommate Freddie Rock and her acquaintance Mohamed Omar were working with Miedzianowski and other Chicago police officers to sell drugs. Ex. A (Fields Affidavit) at 1. She says that Guevara and Miedzianowski called her home looking for Rock and visited Omar's restaurant, where she also saw Miedzianowski visiting. *Id.* at 1-2. Rock averred that he worked with Miedzianowski to sell drugs. Ex. B (Rock Affidavit) at 1. He also averred that Miedzianowski brought him to the gang crimes offices and introduced him to his "'very close friend'" Guevara, and that he observed several conversations in which Miedzianowski enlisted Guevara's help to shake down and frame another member of their drug business. *Id.* at 2-3. Defendant Ed Mingey was a supervisor over Miedzianowski, Galligan and Guevara, and was Guevara's supervising sergeant throughout the time Guevara was a gang crimes officer and a homicide detective. He has also testified that Miedzianowski and Guevara overlapped at Area 6 for a period of time. Ex. C (Mingey Dep. in *Gomez v. Guevara, et al.*, No. 18-cv-3335 (N.D. Ill.)), at 200:15-202:5, 204:11-205:13.

Thus, Guevara's ties to Miedzianowski and his opportunity to use police resources to participate in a criminal conspiracy are clear. So in pursuit of relevant 404(b) evidence and information supporting their *Monell* claims about the failure to supervise and discipline rogue police officers, Plaintiffs issued three subpoenas (to the CCSAO, the FBI, and the USAO) tailored narrowly to the federal investigations into Miedzianowski's criminal activity.

Plaintiffs also issued a subpoena to the Department of Justice seeking quantitative data and other information gathered during its three-year investigation into the Chicago Police Department's unconstitutional policies and practices, including information reflecting the frequency of CPD officer misconduct and discipline, and documents relating to officials who exercised policymaking authority regarding training or discipline of CPD officers. ECF No. 320-1, Defs.' Ex. D, at ECF Page Nos. 21-22.

Plaintiffs' subpoena to the CCSAO also seeks communications between the CCSAO and the City of Chicago relating to Guevara, Mingey, and Halvorsen.

Plaintiffs served notice of these subpoenas on December 11, 2019, and after a meet and confer, Plaintiff agreed to narrow the time frame of his subpoenas to include 2001 through the present. Defendants informed Plaintiffs on January 2, 2020 of their objections to Plaintiffs' subpoenas, and filed this motion to quash over three months later on April 15, 2020.

Defendants object on the basis that these subpoenas seek information that is irrelevant. But Defendants have no standing to make this objection. And in any event the information sought is clearly relevant 404(b) evidence and directly related to Plaintiffs' *Monell* claims and allegations against Guevara, Halvorsen, and Mingey.

## I. Defendants Do Not Have Standing to Object to Any Subpoenas on Relevance or Burden Grounds

Defendants object to these subpoenas largely on the ground that that they go beyond the scope of discovery allowed by Rule 26. But this Court may not quash any of Plaintiffs' subpoenas on that ground. Rule 45 allows a party to object to a nonparty subpoena when it seeks potentially privileged information or infringes on a party's privacy rights. Fed. R. Civ. P. 45(d)(3). Only the entity whose rights are implicated has standing to object to a subpoena, and it is well established that a party can object to a subpoena to a nonparty only on "privacy, privilege, and harassment" grounds. *Kessel v. Cook County*, No. 00 C 3980, 2002 WL 398506, at *2 (N.D. Ill. Mar. 14, 2002). With two exceptions, which Plaintiffs discuss below, Defendants do not assert that the subpoenas implicate any privilege, privacy interest, or right personal to any of them. "[I]nstead, they simply claim that the subpoenas are burdensome and seek irrelevant information …. Defendants, however, do not have standing to challenge the subpoenas on these grounds; only the non-party to whom the subpoena was directed can raise these challenges." *Piercy v. Wilhelmi*, No. 16-MC-43-NJR, 2016 WL 9176539, at *2 (S.D. Ill. June 17, 2016). Thus, Defendants' argument that the subpoenas are overly broad is "insufficient to confer standing under a Rule 45 motion to quash non-party subpoenas." *Buonavolanto v. LG Chem, Ltd.*, No. 18 C 2802, 2019 WL 8301068, at *2 (N.D. Ill. Mar. 8, 2019).

Defendants also object to the subpoena to the CCSAO on the ground that it creates an undue burden to the subpoena recipient. But, as with their relevance objections, Defendants have no standing to object on the ground that the subpoena creates a burden to a nonparty. *See Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) ("[A] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."); *Green v. Cosby*, 314 F.R.D. 164, 173 (E.D. Pa. 2016) ("Even if a defendant has

standing generally to quash a subpoena, he still lacks standing to challenge a third-party subpoena based on undue burden because it is the third-party that faces the burden of production and not the defendant."). Only the subpoena recipient can raise this objection. *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill 2013) (holding that "[r]elevance, burden or service objections fall to the subpoena's recipient to make" and such objections are "not enough to confer standing to object to [a non-party] subpoena."). Thus, this Court cannot quash Plaintiff's subpoena to the CCSAO on burden grounds.

## II.     The Subpoena to the CCSAO Does Not Seek Privileged Documents

Defendants also move to quash Plaintiffs' subpoena to the CCSAO on the ground that it implicates information protected by the deliberative-process privilege. This argument fails for two reasons. First, Defendants have no standing to raise this objection because the CCASO, not the Defendants, holds that privilege. Second, the subpoenas seek documents that are not protected by the deliberative-process privilege.

Deliberative-process privilege protects "communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). It is not a blanket privilege that protects all communication; it is applied narrowly. The privilege does not apply to "factual or objective material," or to documents that "an agency adopts . . . as its position on an issue." *Bahena v. City of Chicago*, No. 17 C 8532, 2018 WL 2905747, *4 (N.D. Ill. June 11, 2018) (internal quotation marks and citation omitted). Likewise, the privilege does not protect "factual narratives or synopses of what was recorded in police reports, pretrial motions, or trial transcripts…." *Patrick v. City of Chicago*, 111 F. Supp. 3d 909, 916 (N.D. Ill. 2015). It protects only communications within one agency that are "enmeshed with intra-agency deliberations." *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 187 (N.D. Ill. 2019).

In other words, it is the CCSAO itself—not the defendants—who holds the privilege. Because Defendants hold no independent privilege, they do not have standing under Rule 45 to move to quash the subpoena in the first place. Only the privilege holder can do that. *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."); *Uppal*, 124 F. Supp. 3d at 815.

Second, there is no evidence that any information sought from the CCSAO would be protected by this privilege. The subpoena seeks "All Communications between any agents or employees of the City of Chicago and any agents or employees of the Cook County State's Attorney's Office…that refer or relate to former Chicago Police officers Reynaldo Guevara, Ernest Halvorsen, Edward Mingey, Joseph Miedzianowski, and/or John Galligan…" for a limited time period.

In order to invoke the privilege, the agency asserting it—and in this case that agency would have to be the CCSAO itself—must make a prima facie showing that the privilege applies to each withheld document. Specifically, it must provide a declaration from someone within the agency who can verify that the information was in fact used to further a governmental decision about an agency policy rather than merely reflecting the outcome of the decision-making process or underlying factual discussions. *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953); *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004). The affidavit "must be made by someone with personal knowledge of the documents to which the privilege attaches, who can give reasons for the assertion of the privilege," and must "demonstrate…precise and certain reasons for preserving the confidentiality of the documents in question…."*Evans v. City of Chicago*, 231 F.R.D. 302, 318 (N.D. Ill. 2005); *see also Ferrell v. U.S. Dep't of Housing and*

*Urban Dev.*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). If the governmental agency establishes that the privilege applies, the movant can overcome the privilege by showing a particularized need for the documents. *Evans*, 231 F.R.D. at 318.

But Defendants provided no such declaration, so this Court has no way to evaluate whether any of the documents that the CCSAO is withholding forms the basis of a decision about government policy. Indeed, it seems likely that the bulk of these communications would be about factual matters themselves rather than decision-making processes behind agency policies or action.

Failing to meet the prima facie requirements, Defendants have failed as a matter of law to invoke the privilege. *See Anderson v. Marion Cty. Sheriff's Dep't*, 220 F.R.D. 555, 562 (S.D. Ind. 2004) (affidavit insufficient to invoke privilege when it does not "describe the precise and certain reasons for maintaining the confidentiality of those specific documents") (internal citation and quotation marks omitted).

There are additional reasons why the deliberative-process privilege does not apply here. First, the subpoena encompasses factual communications that are not related to any policy or decision-making process, including work that the CCSAO performed in connection with individual criminal prosecutions. Because these documents have nothing to do with government policymaking, they are the types of documents courts have held are not protected by the deliberative-process privilege. *See Rodriguez v. City of Chicago*, No. 17 cv 7248, at 6 (N.D. Ill., Aug. 1, 2019 Order) (certain communications that do not include "recommendations, suggestions, or opinions that could be framed as 'deliberative'" are not agency deliberations); *Bahena*, No. 17 C 8532, 2018 WL 2905747, at *4 (privilege does not protect factual or objective material). In short, a broad motion to quash a subpoena for all communications is untenable. *See*

*Enviro Tech Int'l, Inc.*, 371 F.3d at 375 (privilege applies only to decisions about agency policy). For this reason as well, the privilege does not apply.

### III.     Defendants Cannot Invoke the Common-Interest Doctrine

The Defendants' invocation of the common-interest doctrine also fails. The doctrine "allows attorneys representing different clients with identical legal interests to share *otherwise privileged* information without a resultant waiver." *McCullough v. Fraternal Order of Police, Chicago Lodge 7*, 304 F.R.D. 232, 239 (N.D. Ill. 2014) (emphasis in original). "The common interest doctrine is not, itself, a species of privilege; it is an exception to the general and familiar rule of waiver, which obtains when a client communicates with his attorney in the presence of a third person or shares privileged communications with a third party." *Id.* It protects only communications that would otherwise be privileged. *Id.* at 239-40; *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 106 F.R.D. 187, 192 (N.D. Ill. 1985) (noting that "any joint privilege still extends only to *confidential* communications from a client to his attorney" and does not apply to communications among co-parties). Defendants' argument therefore fails for two reasons.

First, because the common-interest doctrine does not create a freestanding privilege, the Defendants cannot rely on it without showing that the request seeks privileged information of some kind. For the reasons previously explained, the deliberative-process privilege does not apply. The same is true of attorney-client and work-product privileges, as this subpoena expressly excludes any communications that would be privileged, including"[c]ommunications between counsel of record for the City of Chicago and counsel of record for the Cook County State's Attorney's Office undertaken in the defense of any civil lawsuit in which agents or employees of both the City of Chicago and Cook County State's Attorney's Office were named defendants." This would include communications made in anticipation of a civil lawsuit.

Second, Plaintiffs' subpoena to the CCSAO seeks communications between the CCSAO and the City about certain defendants in this case and other rogue officers with known connections to them. There is nothing about the relationship between the City and the CCSAO that implicates any privilege, rendering the common interest doctrine irrelevant. Even though the City and the CCSAO have been codefendants in other civil cases, communications between codefendants are not protected by any privilege. *McCullough*, 304 F.R.D. at 239; *Schachar*, 106 F.R.D. at 192. Thus, this Court cannot quash the subpoena in order to prevent waiver of a privilege that does not exist.

## IV. The Documents Plaintiffs Seek are Relevant and Proportionate to the Needs of the Case

Given their lack of personal interest in the information sought, Defendants have no standing to challenge these subpoenas. But to the extent this Court wishes to consider whether the subpoenas seek information that meets the relevance/proportionality balancing test laid out in Rule 26, they clearly do. They seek a narrow set of information relating to Defendants' other acts, as well as information directly relevant to Plaintiffs' *Monell* claims and allegations against the individual defendants.

### a. Information Relating to Miedzianowski is Relevant

Earlier in this litigation, this Court noted that "[r]elevance, particularly in the discovery phase, is a low bar to meet." ECF No. 207, p. 7. The subpoenas to the FBI, the United States Attorney's Office, and the CCSAO seek documents and communications related to criminal activity of two of Guevara's known associates, Miedzianowski and Galligan, with whom he overlapped at the Gang Crimes Unit and with whom evidence suggests he was involved in criminal activity. *See* Ex. A (Fields Affidavit); Ex. B (Rock Affidavit); Ex. C (Mingey Dep. in *Gomez v. Guevara, et al.*, No. 18-cv-3335 (N.D. Ill.)), at 200:15-202:5, 204:11-205:13; ECF No.

10

320-1, Defs.' Ex. E (Report of Omar Interview) at ECF Page Nos. 25-39. Thus they have some evidence to support their theories, and now seek additional evidence to expound on them.

This is for good reason, since Defendants reveal in their motion that they intend to challenge the veracity of the evidence obtained to date. ECF No. 320, p. 3. They point out that a Chicago Police Department Rule 30(b)(6) designee, Robert Klimas, testified that he thought Omar's statements about Guevara were not credible. Defendants' self-serving statement is not a basis to shut down discovery; to the contrary, if Defendants are going to defend against Plaintiffs' allegations by arguing that its employees deemed allegations against Guevara not credible, Plaintiffs are entitled to discover the documents Mr. Kilmas reviewed in making that determination. Indeed, Defendants have made clear that the credibility of the evidence about Guevara's criminal acts is at issue; discovery is appropriate to permit each side to develop evidence on the issue, which is exactly what Plaintiffs' subpoenas seek.

The other-acts discovery Plaintiffs seek is clearly relevant. As this Court has already acknowledged, "the past crimes, wrongs, or other acts of the Defendants, if sufficiently similar to the acts described in Plaintiffs' complaints, could make it more likely that the Defendant officers had the intent, opportunity, preparation, or plan to extract false confessions, fabricate police reports, and suppress exculpatory evidence in connection with Plaintiffs' cases," Dkt. 207, p. 8, and the possibility that the Court will limit the introduction of some of this evidence at trial is not a basis to limit discovery at this early stage, *see id.*, p. 6.

### b. Information Relating to CRs and Other Misconduct is Relevant

As for the subpoena to the DOJ that seeks complaint register files ("CR") and other data on the frequency of officer misconduct, this Court has already found that CRs are relevant to Plaintiffs' *Monell* claims that the City failed to train, supervise, and discipline its police officers.

ECF No. 145, p. 21 ("These CR files are relevant to Plaintiffs' theory that the City had a policy of not training, supervising, and disciplining officers who engaged in misconduct similar to the alleged misconduct in these cases.") The City's only meaningful objection to discovery of CR files elsewhere in this litigation was based on the purported burden *on the City* to producing them. *See* ECF Nos. 111, 135. But the City faces no such burden here since the DOJ will be the entity producing them, and Defendants have no argument against the relevance of CR files.

As for the subpoena seeking communications between the City and CCSSAO regarding Defendants Halvorsen, Mingey, and Guevara, this request seeks information directly related to Plaintiffs' *Monell* claims and 404(b) discovery. For example, these communications may lead to the discovery of evidence showing the City was aware that Defendants and their colleagues engaged in misconduct in other cases, which would help Plaintiffs satisfy the notice element of their *Monell* claims. They may explain the reasons that various of the Defendants have and have not asserted their Fifth Amendment right to remain silent in response to questions in these and related cases. *See Padilla v. City of Chicago*, 932 F. Supp. 2d 907, 919 (N.D. Ill. 2013) (factfinder can draw negative inference from a witness's invocation of the Fifth, as long as invocation is based on a reasonable belief that truthful testimony could subject the witness to criminal liability).

These communications may also reveal information shared between the City and the Cook County State's Attorney's Office during investigations into Defendant Guevara's criminal activity, which would further support the notice element of their *Monell* claims. They may also show important information about Defendants' motivation and bias. For instance, police-officer defendants frequently defend lawsuits such as these by relying on the pristine reputation of the prosecutors that join the interrogations. Information about the closeness of the police and the

12

prosecutors and pressure exerted from one entity to another, for example, could help clarify and support Plaintiffs' claims. Thus the information sought in these subpoenas goes directly to Plaintiffs' claims, and is clearly relevant.

### c.   The Information Sought is Proportionate to the Needs of the Case

Without any meaningful dispute that the information sought in these subpoenas is relevant, this Court can (but need not, given that Defendants have no standing) consider whether the information sought is proportionate to the needs of the case. Courts routinely permit extensive relevant other-acts discovery. *See, e.g.*, *Simon v. Nw. Univ.*, No. 1:15-CV-1433, 2017 WL 467677, at *5 (N.D. Ill. Feb. 3, 2017); *Young v. City of Harvey*, No. 15 C 11596, 2017 WL 4158952, at *4 (N.D. Ill. Aug. 4, 2016) (permitting 404(b) discovery and noting that "this case is just at the discovery stage, so the Court is not making any final trial decisions on the admissibility of what is learned in discovery"); *Lanigan v. Babusch*, No. 11 C 3266, 2011 WL 5118301, at *2-3 (N.D. Ill. Oct. 27, 2011); *Vodak v. City of Chicago*, No. 03 C 2463, 2004 WL 1381043, at *5 (N.D. Ill. May 10, 2004) ("The personnel files and complaint histories of the individual defendant officers are relevant for purposes of discovery…. Moreover, disciplinary records containing any similar factual allegations may be relevant and admissible under Rule 404(b) to prove motive, intent, and/or modus operandi.").

Elsewhere in this litigation this Court has employed a multifactor test to evaluate whether the 404(b) and *Monell* discovery is proportionate to the needs of the cases. This Court has already concluded that "meaningful discovery efforts" are necessary given that "issues at stake in these litigations are substantial," and have $80 million of damages at stake. ECF No. 207, p. 9, 10.

Regarding the next proportionality factor—the parties' relative access to the relevant information—Defendants have an informational advantage. Defendants may already have access to some of the information sought in these subpoenas, and so are attempting to prevent Plaintiffs from accessing information that they have been unwilling or unable to produce themselves. This weighs in favor of disclosure. Once produced, the information will be available to all parties equally, and the only burden will be reviewing whatever documents are produced.

The only issue this Court would legitimately need to resolve in a proportionality analysis is whether the timeframe of Plaintiffs' subpoena to the CCSAO is appropriate.[1] Plaintiffs' subpoenas seek communications from the CCSAO about Guevara, Mingey, and Halvorsen from 2001 through the present. In the interest of resolving this dispute and expediting discovery, Plaintiff agrees to narrow this timeframe to 2010 through the present, since the CCSAO has previously informed Plaintiff that it does not have access to email communications prior to that time.

This timeframe is reasonable. Other Courts in the Northern District of Illinois have acknowledged that in wrongful conviction lawsuits with *Monell* claims, a "plaintiff's burden of proving a pattern or practice is a heavy one," and "thus he will need the files for some extended period of time." Ex. D (*Sierra v. Guevara, et al.*, No. 18-cv-3029 (N.D. Ill. Dec. 3, 2019), ECF No. 154) (granting discovery into five years of homicide files and CRs). Courts routinely grant Plaintiff discovery into years' worth of documents and communications in order to develop *Monell* evidence. *Id.*

---

[1] The other subpoenas seek a discrete set of documents gathered during specific investigations, and therefore have no temporal limitation. Defendants appear to have no objection to the timeframe of these other subpoenas.

This time frame also covers the internal investigation that the City conducted, through outside consultant Scott Lassar, into misconduct committed by Guevara in a number of criminal cases, including Plaintiffs'. Communications about those investigations, or the need for those investigations could have begun as early as 2010. And because the City hired Lassar to do the investigations, it is reasonable to assume that the City communicated with the CCSAO about Guevara's involvement in the cases being investigated. To the extent the communication involved Lassar's investigation into Plaintiffs' criminal cases (which Lassar did investigate), this information could be directly related to Plaintiffs' allegations. It likewise could generate relevant 404(b) evidence with respect to Lassar's investigations into other cases involving allegations of abuse or coerced confessions, and *Monell* evidence regarding patterns of misconduct and what the City knew about it. Thus, the information sought is relevant and the timeframe is reasonable.

## CONCLUSION

Because Defendants have no standing to object to these subpoenas, except on the grounds that certain communications from the CCSAO could be protected by the common-interest doctrine (which they are not), this Court need not consider any of Defendants' relevance or burden objections. But even considering relevance and burden, this Court must conclude, and in some instances already has concluded, that the information is relevant and discoverable. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' motion to quash Plaintiffs' subpoenas.


Dated: April 23, 2020

Respectfully submitted,

**ARTURO DELEON-REYES**

BY:     /s/ Rachel Brady_____
        *One of Plaintiff's Attorneys*

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steven Art
Rachel Brady
Sean Starr
John Hazinski
LOEVY & LOEVY
311 N. Aberdeen St.
(312) 243-5900
brady@loevy.com

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel Brady, an attorney, certify that on April 23, 2020, I filed the foregoing response using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Rachel Brady_____
*One of Plaintiff's Attorneys*