IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Hon. Sunil Harjani |
| Defendants. | ) | Magistrate Judge |
| | ) | |
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | Hon. Sunil Harjani |
| Defendants. | ) | Magistrate Judge |
| | ) | |

**PLAINTIFFS' JOINT MOTION FOR A PROTECTIVE ORDER TO DELAY,
OR, IN THE ALTERNATIVE, LIMIT THE DEPOSITION OF THIRD-PARTY
<u>WITNESS ADRIANA MEJIA</u>**

Plaintiffs Arturo DeLeon Reyes and Gabriel Solache, by their undersigned attorneys, submit this motion for a protective order, pursuant to Federal Rule of Civil Procedure 26(c), regarding the timing of the deposition of third-party witness, Adriana Mejia, stating in support as follows:

**INTRODUCTION**

1. The parties have conferred in attempt to resolve, without the need for court intervention, the scheduling of third-party witness Adriana Mejia's deposition.

1

Unfortunately, the parties have been unable to come to an agreement and are at impasse, with Defendants wanting to proceed with the deposition in early February and with Plaintiffs wishing to delay the deposition until it can be done safely and in person.

2. Plaintiffs now bring this motion regarding the timing of the Deposition of Adriana Mejia.

3. Plaintiffs' motion is brought in the context of the newly ordered discovery schedule. Judge Seeger set a fact discovery cutoff date of December 31, 2021, Dkts. 390 (*Reyes*) and 276 (*Solache*), and this Court then ordered that "the parties should note that it is the Court's intention that all non−Monell discovery be completed by June 2021 so that the parties can focus on any needed Monell discovery through the end of the year." Dkts. 391 (*Reyes*) and 277 (*Solache*).

4. The significance of Ms. Mejia's role in this case cannot be understated. Given the absolute lack of physical evidence connecting Plaintiffs to the crime scene and the fact that Defendant Guevara has asserted the Fifth Amendment and Defendant Halvorsen is deceased, Ms. Mejia is the sole known witness who could possibly give testimony incriminating Plaintiffs — testimony which Plaintiffs have consistently repudiated as coerced and fabricated.

5. Given her importance, Plaintiffs believe that it is important for their lawyers to attend the deposition in person. But we are in the midst of pandemic with infection and death rates currently at an all-time high. Travel is limited by guidelines at every level of government. Prisons are hot spots. Proceeding with the

deposition in three weeks in person will put counsel and personnel who attend the deposition, including the witness and prison personnel, at risk unreasonably.

6. At the same time, there is a light at the end of the tunnel and many of us will likely be vaccinated before long, permitting the deposition to proceed in the near future without the risk to human life. In this situation, Plaintiffs submit that a brief delay is warranted.

## BACKGROUND

7. Defendants first noticed Ms. Mejia for deposition on March 7, 2019. Following discussion, Defendants re-noticed Ms. Mejia for June 18, 2019, on which date, Defendants began to depose Ms. Mejia but the parties stopped the deposition after Ms. Mejia requested legal representation.

8. On June 25, 2019 Defendants filed motion to appoint counsel for Ms. Mejia. Dkt. 190 (*Reyes*) and 118 (*Solache*). Plaintiffs did not object.

9. On October 22, 2019, Ms. Mejia's deposition resumed. During that deposition, Ms. Mejia repeatedly invoked her 5th Amendment right to refuse to testify.

10. After waiting nearly a year to take any action, on August 4, 2020, Defendants filed a motion to compel Ms. Mejia to testify. Dkt. 354 (*Reyes*) and 246 (*Solache*). On September 29, 2020, this Court granted that motion. Dkt. 370 (*Reyes*) and 260 (*Solache*).

11. On December 15, 2020, Defendants' counsel sent an email issuing notice for an in-person deposition of Ms. Mejia.

12. On December 16, 2020, the parties filed a joint status report (Dkt. Nos. 389 (*Reyes*) and 275 (*Solache*)) that included information about the status of depositions. Included in that report was a reference to Ms. Mejia's deposition informing the Court that Ms. Mejia's deposition had been tentatively scheduled for February 4-5, 2021, but that "Plaintiff strongly prefers to take Ms. Mejia's deposition in person but is willing to reevaluate as we get closer to the scheduled dates." The status report further noted the "Parties anticipate asking the Court for additional hours to depose Ms. Mejia given its order at Dkt. 369."

13. On December 17, 2020, Defendants' counsel sent an email requesting that all parties tell them by December 23 who would be attending the deposition.

### The Parties Confer on Scheduling Ms. Mejia's Deposition

14. Plaintiff Solache's counsel Jan Susler responded that same day requesting to "wait a month to evaluate the possibility of scheduling a date when we can convene her deposition in-person." Ms. Susler furthermore requested a meet and confer. Exhibit 1, *Dec. 17, 2020 email from Jan Susler*.

15. Defendant City's counsel Eileen Rosen responded by asking Plaintiffs to confirm that they did not want to proceed with the February dates. Ex. 2, *Dec. 17, 2020 email from Eileen Rosen*.

16. Defendants' counsel Caroline Golden next responded that by January 5, 2021, Plaintiffs needed to let her know "whether you plan to attend in person" because the IDOC facility where Ms. Mejia is an inmate requires 30-day notice. Ex. 3, *Dec. 17, 2020 email from Caroline* Golden.

17. On December 28, 2020, Plaintiff Reyes's counsel Steve Art emailed Defendants to let them know Plaintiffs' position was that it was not safe to proceed with an in-person deposition of Ms. Mejia in early February. Ex.4, *Dec. 28, 2020 email from Steve Art*. Mr. Art further explained that Plaintiffs viewed Ms. Mejia's deposition as one that necessitated all counsel's in-person attendance and he reiterated Plaintiffs' request to confer about scheduling the deposition later in 2021 when it could be conducted safely. Ex. 4. Mr. Art cited current CDC, state and local guidelines which call for the suspension of visits to correctional facilities and emphasized that the risk was not only to Plaintiffs' and Defendants' counsel, but also to Ms. Mejia, her counsel, IDOC personnel, and any other individuals helping with the deposition. Ex. 4.

18. Defendants did not respond until January 4, at which time Ms. Golden refused to postpone Ms. Mejia's deposition and claimed that "Plaintiffs have not identified any prejudice to appearing remotely other than an anticipated difficulty presenting exhibits to the witness." Ex. 5, *Jan. 4, 2021 email from Caroline Golden*.

19. On January 5, the parties finally conferred via telephone. During the meet and confer, Plaintiff Reyes's counsel Sean Starr told Defendants that from a public safety perspective, Plaintiffs believe the parties should postpone the deposition, and from a strategic and logistical standpoint, Plaintiffs believe the deposition needs to be conducted in-person. Mr. Starr explained that attorneys and IDOC employees are considered essential workers who will have access to the vaccine sooner than the general population and requested that the parties should

5

work together to come to an agreement that is safe and fair. Mr. Starr stated that, ideally, the deposition could take place in the spring.

20. In response, Ms. Rosen stated that it was Defendants' were prejudiced by not having her deposition occur earlier in the litigation and asked if Plaintiffs were willing to agree to conduct the deposition fully remotely.

21. Mr. Starr reminded Defendants that the parties had attempted to and had taken Ms. Mejia's deposition on prior occasions and that Defendants had agreed to go forward with Plaintiff Reyes and most other depositions for many months without raising the issue of re-deposing Ms. Mejia.[1]

22. Mr. Starr also explained that Plaintiffs did not want to go forward with a fully remote deposition, but he nonetheless agreed to let Defendants know if Plaintiffs, in the alternative to delaying the deposition, would agree to a fully remote deposition. Defendants agreed to do the same and discuss whether they would be willing to proceed fully remotely.

23. The next day, January 6, Mr. Starr emailed Defendants telling them Plaintiffs' position had not changed—in their view the deposition needed to be done in person and should be delayed until it could occur in person. Ex. 6, *Jan. 6, 2021 email from Sean Starr*. Plaintiffs said that the "vaccine rollout and impending new federal administration, [makes Plaintiffs' counsel] confident [the parties] can collaboratively arrive at a place where it is safe for all counsel, all IDOC personnel, and Ms. Mejia to participate in an in-person deposition." Ex. 6.

---

[1] Plaintiff Solache's deposition had also been scheduled for March 23-27, 2020, in Mexico, but had to be cancelled because of COVID-related travel restrictions.

24. Defendants responded on January 7, dismissing Plaintiffs' concerns, and telling Plaintiffs that, "Defendants do not agree to postpone Ms. Mejia's deposition based on speculation about when Ms. Mejia, the lawyers and parties involved will be vaccinated." Ex. 7, *Jan. 7, 2021 email from Caroline Golden*.

25. Mr. Starr responded on January 8 that Plaintiffs intended to seek this Court's intervention and requested that Defendants, as promised, tell Plaintiffs their position on the possibility of a fully remote deposition. Ex. 8, *Jan. 8, 2021 email from Sean Starr*.

26. On January 12, Ms. Golden responded by explaining that Defendants were in fact planning on going forward, stating that "Counsel could appear in person or remotely via Zoom. Some defense counsel plan to appear in person, some plan to appear remotely. If Judge Harjani will not allow anyone to appear in person for the deposition, we would agree to depose her entirely remotely, provided the deposition is scheduled for February and the court reporter and translator are present with Ms. Mejia." Ex. 9, *Jan. 12, 2021 email from Caroline Golden*.

## ARGUMENT

27. Plaintiffs do not bring this motion to delay the litigation or prejudice Defendants. Instead, Plaintiffs bring this motion to heed recommendations of public health experts regarding the pandemic while putting all parties in the best possible position to depose the most significant third-party witness in this case.

28. Rule 26(c) gives the Court the necessary mechanism to do just that by "provid[ing] that this Court may, for good cause, issue an order to protect a party or

7

person from annoyance, embarrassment, oppression, or undue burden or expense.'" Fed.R.Civ.P. 26(c). *Learning Res., Inc. v. Playgo Toys Enterprises Ltd.*, 335 F.R.D. 536, 537–38 (N.D. Ill. 2020). Accordingly, this Court "is vested with 'broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Id.* quoting *Shockey v. Huhtamaki,* 280 F.R.D. 598, 600 (D. Kan. 2012).

29. Furthermore, "Federal Rule of Civil Procedure 30(b)(4) authorizes this Court in its discretion to order that a deposition 'be taken by telephone or other remote means.'" *Id.* citing Fed.R.Civ.P. 30(b)(4); *Usov v. Lazar,* No. 13 CIV 818, 2015 WL 5052497, at *1 (S.D.N.Y. Aug. 25, 2015); *Graham v. Ocwen Loan Servicing, LLC,* No. 16-80011-CIV, 2016 WL 7443288, at *1 (S.D. Fla. July 1, 2016) ("[C]ourts enjoy wide discretion to control and place appropriate limits on discovery, which includes authorizing depositions to be taken by remote means"). When exercising its discretion, this Court "must 'balance claims of prejudice and those of hardship and conduct a careful weighing of the relevant facts.'" *Id.* at 538 *Usov,* 2015 WL 5052497, at *1, *quoting RP Family, Inc. v. Commonwealth Land Title Ins. Co.,* No. 10 Civ. 1149, 2011 WL 6020154, at *3 (E.D.N.Y. Nov. 30, 2011).

30. Finally, this Court has also held that in circumstances where the "general concern over the risks posed by COVID-19 are heightened" it can order that health concerns created by the pandemic create good cause for the entry of an order requiring a deposition take place remotely. *Id.* at 538.

8

31. Plaintiffs maintain that the appropriate approach here is to delay Ms. Mejia's deposition until the spring, at which time the parties can reassess. This Court has discretion to control the mode and order of examination of witnesses, and to direct the parties to follow such a procedure. FED. R. EVID. 611; FED. R. CIV. P. 26(d), Advisory Committee Notes to 1970 Amendment ("The court may upon motion and by order grant priority in a particular case.").

**Public Safety Dictates that the Parties Delay Ms. Mejia's Deposition**

32. This Court should delay Ms. Mejia's deposition until spring 2021, at which time the parties should be in a better position to reevaluate the public health and safety circumstances and schedule the deposition.

33. Current Covid-19 statistics necessitate that the parties take a measured and safe approach. One need not look far to determine that this country and state are at a critical juncture when it comes to the virus. Among other significant data, the following statistics stand out:

- The U.S. reported its highest daily number of Covid-19 deaths on January 13, 2021 with more than 4,320 fatalities attributed to the virus.[2]
- Over the past week, the US has averaged more than 3,300 deaths every day, a jump of more than 217% from mid-November.[3]
- The CDC estimates that more than 90,000 Americans will die in the next three weeks.[4]
- In December, Illinois reported 4,212 deaths statewide, making it the state's deadliest month of the pandemic.[5]

---

[2] See https://www.cnn.com/interactive/2020/health/coronavirus-us-maps-and-cases/
[3] See https://www.cnn.com/2021/01/13/health/us-coronavirus-wednesday/index.html
[4] See https://www.cnn.com/2021/01/14/health/us-coronavirus-thursday/index.html
[5] https://www.chicagotribune.com/coronavirus/ct-coronavirus-illinois-positivity-rate-20210104-fao5ifeshjalnotkeqhqpttbre-story.html

- As recently as January 4, the statewide case positivity rate reached an average of 8.6%, an increase of 1.2 percentage points over the prior week and the highest it's been since the week ending Dec. 14.[6]
- Prisons serve as petri dishes for the uncontrolled spread of the virus, borne out by statistics in Illinois: There have been at least 8,828 cases of coronavirus reported among prisoners in Illinois, with at least 70 deaths from coronavirus reported among prisoners in Illinois; there have been at least 3,532 cases of coronavirus reported among Illinois prison staff.[7]

34. What differentiates this moment in time from the last 10 months of the pandemic, is the fact that, for the very first time, the current vaccine distribution rollout provides a real possibility that a return to normalcy might be on the horizon.

35. The CDC's Advisory Committee on Immunization Practices recently issued recommendations for who should be next to receive the vaccine after long-term care patients and frontline health care workers.[8]

36. In Illinois, people incarcerated and working in jails and prisons will be prioritized for Phase 1B vaccines along with people who are 65 and older, certain essential workers and people experiencing homelessness or residing in shelters, according to the plan released December 31 by the state health department.[9]

37. Lawyers are considered "other essential workers,"[10] and likely will be given access to vaccines during the 1C Phase following that.[11]

---

[6] Id.
[7] See https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons
[8] See https://www.cdc.gov/vaccines/acip/index.html
[9] See https://www.dph.illinois.gov/sites/default/files/COVID19/IL%20COVID-19%20Vaccination%20Plan%20V4%2012.31.2020.pdf
[10] See https://www.cisa.gov/sites/default/files/publications/ECIW_4.0_Guidance_on_Essential_Critical_Infrastructure_Workers_Final3_508_0.pdf
[11] See https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm695152e2-H.pdf

38. Governor Pritzker plans to announce this week when Illinois will begin to move into Phase 1B on a statewide basis.[12] The timeline for vaccination of the relevant individuals who must attend Ms. Mejia's deposition is relatively short, particularly compared to the amount of time that has passed between Ms. Mejia's original deposition and the present, including nearly a year in which Defendants took no action at all.

39. Reflecting the risk of infection, the Northern District of Illinois recently issued its Ninth Amended General Order, declaring that all jury trials would remain suspended and that all civil hearings shall be conducted by means of remotely unless an in-person hearing is required by law. See *Ninth Amended General Order 20-0012 In re: Coronavirus Covid-19 Public Emergency.*

40. Defendants' desire to conduct this deposition in-person in early February contravenes all legitimate public health recommendations and is, quite frankly, reckless. Not only is the health of counsel threatened, but so is the health of the witness, her appointed counsel, personnel at the prison, and court reporters, videographers, and translators who would also have to appear in person. The idea of cramming that many people into a single small room in a prison during a pandemic heightens the already significant risk of transmission.

---

[12] See https://www.nbcchicago.com/news/local/pritzker-to-announce-this-week-when-illinois-will-move-to-phase-1b-for-vaccinations/2413643/

11

## The Deposition Should Be Conducted In Person

41. The deposition of Mr. Mejia should take place in person with all parties present.

42. First, the witness is critically important. The parties litigated who would get to question the witness first; litigated whether she should have counsel; litigated whether she could assert the Fifth; and her testimony was instrumental to the criminal cases against Plaintiffs and will be of unparalleled importance here. To the extent possible, the parties must be allowed to examine and cross-examine the witness in person, with the opportunity to assess her demeanor and scrutinize her answers in a manner resembling an examination at trial. Indeed, this examination will become the examination that the parties rely upon extensively at trial—certainly for impeachment, and possibly in place of in-person trial testimony.

43. Second, conducting the deposition remotely presents all sorts of logistical challenges. There are numerous attorneys; the testimony must be translated; Ms. Mejia has separate counsel who will be advising her; there are myriad exhibits that must be presented during the questioning. Doing all of that remotely is next to impossible, and it certainly will create an unclear record for trial.

## Delaying the Deposition will not Prejudice the Parties

44. Defendants' insistence that any further delay will prejudice them, that all remaining fact discovery will be dictated by what Ms. Mejia testifies to, and that

all Plaintiffs' concerns can be effectively dealt with is belied by the procedural history.

45. To begin with, the parties have had some opportunity—albeit truncated—to depose Ms. Mejia. Defendants have conceded this point in prior filings, stating that "[i]n her deposition, Mejia chose to answer many questions critically relevant to the key issues in this litigation." Dkt. 345 (*Reyes*) p. 8.

46. Furthermore, Defendants have previously agreed to proceed with countless party and third-party depositions without raising any issue of prejudice regarding their inability to depose Ms. Mejia. Additionally, the parties have conducted extensive written and oral discovery without the benefit of Ms. Mejia's complete deposition testimony. In addition to taking Plaintiff Reyes's deposition and scheduling Plaintiff Solache's deposition, the parties have recently taken Defendant Guevara's deposition and have agreed in principle to take several other Defendant depositions.

47. Most importantly, Defendants waited nearly a year to ask this Court to consider a request to re-depose Ms. Mejia. Their position that there cannot be any further delay is contradicted by their litigation decisions over that year.

48. Conversely, Plaintiffs will be prejudiced if the deposition proceeds now and they must decide to attend remotely or risk their health. Plaintiffs have raised several strategic and logistical reasons why Ms. Mejia's deposition need be conducted in-person: she is the most critical third-party witness; her deposition testimony may become trial testimony because of her incarceration; all deposition

13

questions and testimony, and all documents shown the witness, would need be interpreted or translated during the deposition.

49. More importantly, third parties will be prejudiced if the deposition occurs right now in person. Ms. Mejia's counsel (who has expressed that she will not attend in person) will not be able to communicate with her client efficiently, and so her ability to conduct her court-appointed job and her client's entitlement to receive legal advice will be compromised. So, too, for the court reporter, videographers, and translators who would have to travel to a prison to put their health at risk.

50. Defendants' attempt to claim prejudice now is a veiled attempt to obfuscate the real reason they urgently wish to proceed with the deposition under current circumstances: they have a strategic advantage in knowing that Plaintiffs' firms will not currently allow in-person participation in depositions. As such, if any party were to be prejudiced, it would be Plaintiffs, who would be at an extreme disadvantage of having to depose Ms. Mejia remotely while Defendants' enjoyed in-person access to this exceptionally critical witness.

**If this Court Refuses to Enter a Protective Order or Requires Remote Attendance, Plaintiffs Request an Additional 7 Hours of Deposition Time**

51. Finally, if this Court refuses to delay Ms. Mejia's deposition or requires the parties to conduct the deposition entirely remotely, Plaintiffs request additional time to question her.

52. Ms. Mejia has on several occasions substantively changed her story about what happened. Because of this and because she was present during the Soto murders, Ms. Mejia is the most important non-defendant witness in this litigation.

14

Each version of the story she has given, and the inconsistencies between the various versions, will necessarily be the subject of thorough deposition questioning.

53. As explained, Ms. Mejia will testify in Spanish. Based on the parties' experience, it is no exaggeration to say that translation cuts in half the time available to ask questions. If the deposition is conducted completely remotely, that time will also be adversely impacted by all the logistical problems inherent with remote depositions taking place in a correctional center.

54. As it currently stands without any extension, Plaintiffs are operating with the understanding that each side will have 7 hours to question Ms. Mejia.[13] For all the reasons discussed above, Plaintiffs cannot adequately complete their questioning in that amount of time, and instead request a total of fourteen hours to question Ms. Mejia.

## CONCLUSION

55. For the reasons stated above, Plaintiffs respectfully request that this Court enter a protective order, pursuant to Federal Rule of Civil Procedure 26(c), delaying the deposition of Adriana Mejia or, in the alternative, limiting the deposition to remote participation for all parties. Plaintiffs furthermore request that if this Court allows the deposition to go forward February 4-5, it grant Plaintiffs an additional 7 hours of deposition time to question Ms. Mejia.

---

[13] This Court previously ordered additional time for Ms. Mejia's deposition under normal, pre-pandemic circumstances. Dkt. 273 (*Reyes*) 173 (*Solache*).

Respectfully Submitted,

/s/ Sean Starr
Arthur Loevy
Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Rachel Brady
John Hazinski
LOEVY & LOEVY
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900
*Attorneys for Plaintiff Reyes*


By: /s/ Jan Susler
Jan Susler
Ben H. Elson
People's Law Office
1180 N. Milwaukee Ave.,
3rd Floor
Chicago, IL 60642
(773) 235-0070
*Attorneys for Plaintiff Solache*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certify that on January 14, 2021, I served the foregoing on all counsel of record via ECF.

/s/ Sean Starr
*One of Plaintiff's Attorneys*
