IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| | ) | Case No. 1:18-cv-01028 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 1:18-cv-02312 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Sunil R. Harjani |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is third-party respondent Cook County State's Attorney's (CCSAO) Motion to Quash the Subpoena for the Deposition of Eric Sussman issued by Defendant City of Chicago. [*DeLeon-Reyes* 429, *Solache* 301].[1] The individual defendant officers in this wrongful conviction case seek to depose a former Cook County prosecutor in order to rebut the Plaintiffs' assertions that they are innocent of the crimes they were convicted of in 2000. The CCSAO moves to quash the subpoena, arguing that the deposition should be barred under the apex doctrine and

---

[1] The remainder of this Memorandum Opinion and Order cites to documents from the *DeLeon-Reyes* docket, Case No. 1:18-cv-01028, unless otherwise noted.

various privileges. The City objects and asks this Court to enforce the subpoena and deny the CCSAO's motion. For the reasons stated below, the CCSAO's motion to quash is granted in part and denied in part. Sussman's deposition shall proceed, but with the limitations set out by the Court below.

## Background

In these separate lawsuits, consolidated for purposes of discovery, *see* Doc. [49], Plaintiffs Arturo DeLeon-Reyes and Gabriel Solache claim that they were wrongfully convicted and that they served almost 20 years in prison for the 1998 double murder of Mariano and Jacinta Soto. Doc. [1]; Doc. [171] at 4. Plaintiffs assert that their convictions were the result of constitutional violations committed by Chicago police officers during the investigation of the Soto homicide. Doc. [171] at 4. Specifically, Plaintiffs bring claims under 42 U.S.C. § 1983 for coerced confession, fabrication of false witness statements, deprivation of liberty without probable cause, violations of due process, failure to intervene, and conspiracy. *Id.* Plaintiff DeLeon-Reyes additionally asserts 42 U.S.C. § 1983 claims against certain state prosecutors for coerced confession and fabrication of false witness statements. *Id.* Both Plaintiffs allege *Monell* policy and practice claims, as well as state law claims for malicious prosecution, intentional infliction of emotional distress, civil conspiracy, *respondeat superior*, and indemnification. *Id.*

Defendants deny Plaintiffs were wrongfully convicted, deny the asserted claims and assert various affirmative defenses, such as qualified immunity, absolute immunity, a bar under *Heck v. Humphrey*, estoppel, statute of limitations, Illinois Tort Immunity Act, and failure to mitigate damages. Doc. [171] at 4.

**Discussion**

Plaintiffs in wrongful conviction cases assert that constitutional violations caused them to be convicted of crimes they did not commit. Often, a wrongful conviction plaintiff will point to the post-conviction actions of the prosecuting government agency to demonstrate innocence, such as the prosecuting agency's dismissal of charges or a decision not to oppose a certificate of innocence. Defendants consequently seek discovery from the prosecuting agency to discover the reasons for the agency's postconviction actions and to rebut claims of factual innocence. So too here, the individual defendant officers seek the deposition of former Assistant State's Attorney Eric Sussman, who was involved in the postconviction decision in 2017 to dismiss Plaintiffs' criminal cases, and who indisputably has knowledge as to why the CCSAO dismissed those charges.

Third Party Respondent CCSAO has moved to quash the Sussman subpoena, arguing that Sussman does not have relevant, non-privileged information to offer, and that the deposition seeks information protected by the deliberative process, mental process, and work product privileges. Doc. [429]. In response, Defendants argue that the information sought is relevant, that the CCSAO's privilege objections are premature, and that the deliberative process privilege has been waived. Doc. [439]. The Court finds, as explained further below, that the evidence sought by the Sussman subpoena is relevant and not entirely shielded by privilege. The Court accordingly grants in part and denies in part the motion to quash; the Sussman deposition shall proceed under the limited parameters set forth by the Court below.

**I.      Relevance**

The CCSAO initially avers that the subpoena should be quashed because Sussman cannot provide any relevant non-privileged testimony. Relevance, particularly in the discovery phase, is

a low bar to meet. Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a)-(b). In determining the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure, relevance is construed broadly. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). After all, "[i]nformation within [the] scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

The Sussman subpoena seeks relevant information. Sussman was personally involved in the postconviction proceedings for Plaintiffs' cases and has demonstrated, on the record, that he knows why the CCSAO dismissed the charges against Plaintiffs. In a postconviction hearing in December 2017, after the trial court granted Plaintiffs' motion to suppress their confessions, Sussman moved for the entry of a *nolle prosequi*,[2] explaining:

> [T]here is not a doubt in my mind or the mind of any prosecutor who has worked on this case that Mr. Solache and Mr. Reyes are guilty of these heinous crimes, but because Detective Guevara was the lead investigator in this crime, and because he has repeatedly refused to testify truthfully, the State's Attorney's Office has no choice but to dismiss the case against Defendants Solache and Reyes, and we would ask the Court to *nolle* those charges.

Doc. [441-3] at 4. Years later in a deposition for the cases of *Fulton v. City of Chicago, et al.*, No. 17-cv-08696, and *Coleman v. City of Chicago, et al.*, No. 17-cv-00998, Sussman testified about the CCSAO's decision to dismiss all charges against Plaintiffs. Doc. [439-1] at 3-4. It is therefore

---

[2] Under Illinois law, a *nolle prosequi* is a "formal entry of record whereby the prosecuting attorney declares that he is unwilling to prosecute a case." *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 987 (N.D. Ill. 2009) (citing *Ferguson v. City of Chicago*, 213 Ill.2d 94, 101, 289 Ill. Dec. 679, 820 N.E.2d 455, 460 (Ill. 2004)). A *nolle prosequi* dismissal is "not a final disposition of the case, and will not bar another prosecution for the same offense. It is not an acquittal, but it is like a nonsuit or a discontinuance in a civil suit, and leaves the matter in the same condition in which it was before the commencement of the prosecution." *People v. Gill*, 379 Ill. App. 3d 1000, 1003, 886 N.E.2d 1043, 1046 (2008) (internal quotation marks and citation omitted). The Court accordingly treats the CCSAO's decision to enter a *nolle prosequi* as one in the same as the CCSAO's decision to dismiss the charges against Plaintiffs.

clear that Sussman has knowledge as to why the CCSAO dismissed Plaintiffs' cases, and that the reason is purportedly not actual innocence – which is exactly what the Defendants are looking for in discovery. The CCSAO's reasoning is, moreover, pertinent to Plaintiffs' malicious prosecution claims, in which Plaintiffs assert that Defendants perpetuated judicial proceedings against them without any genuine probable cause. *See* Doc. [328] ¶ 189 (complaining that Defendants "perpetuate[d] judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent"); Doc. [*Solache* 224] ¶ 99. As the Court stated in connection with a similar motion in the *Fulton* and *Coleman* cases, "the relevance is to allow defendants the opportunity in discovery to explore evidence designed to rebut [the] potential inference of innocence[.]." Transcript, *Fulton v. City of Chicago, et al.*, No. 17-cv-08696 (N. D. Ill. Dec. 4, 2020), ECF No. 293 at 7-8. *See also Harris v. City of Chicago*, No. 14 C 4391, 2018 WL 2183992, at *3 (N.D. Ill. May 11, 2018). The Court thus finds that the low bar for relevance is met here.

The CCSAO anticipates that Defendants will fish for Sussman's personal opinions about the Plaintiffs' alleged culpability, and that such questions are inappropriate and irrelevant. Doc. [429] at 5. According to the CCSAO, Sussman opinions regarding the instant litigation would invade the province of the jury. *Id.* Certainly, Sussman's personal feelings on the merits of this action, or the Plaintiffs' culpability for the underlying crime, appear irrelevant and likely inadmissible. Nevertheless, Sussman can still be questioned about public statements he made at the post-conviction hearing, and decisions on admissibility are for the trial court at a later time. More importantly, that is not the stated purpose for the deposition. For this Court's purposes in managing discovery, it is enough that Sussman can provide testimony on the CCSAO's reasoning

5

for dismissing the cases against Plaintiffs and that testimony is relevant to rebut Plaintiffs' claims of innocence.

**II.     Apex Doctrine**

The CCSAO also suggests that the apex doctrine bars Sussman's deposition. Doc. [429] at 4.  Under the apex doctrine, courts may protect high-level executives or senior ranking officials from being deposed if: (1) the official has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses; (3) the information can be garnered from other discovery methods; or (4) sitting for the deposition would impose a hardship in light of the officer's other duties. *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020) (citations omitted).  The apex doctrine is "not an ironclad rule, [it] bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." *Dyson, Inc. v. Sharkninja Operating LLC*, No. 1:14-CV-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) (citing 8A Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 2036 n.7 (3d ed. 2010)).

Applying those principles here, the Court declines to bar Sussman's deposition under the apex doctrine.  Sussman was directly involved in Plaintiffs' postconviction proceedings and spoke knowledgably in open court regarding the CCSAO's reasons for dismissing Plaintiffs' cases. Sussman consequently has unique personal knowledge regarding Plaintiffs' postconviction proceedings, and he is not simply a senior executive/manager being questioned about the actions of others within his department. Doc. [429] at 4.  And while it is possible that a Rule 30(b)(6) witness could provide some of the same information obtainable from Sussman, he is no longer a CCSAO official, so there is no concern here that sitting for a deposition would impose a hardship

6

in light of Sussman's CCSAO duties.[3] As discussed further below, the Court is additionally placing limits on the deposition in order to reduce any burden, and avoid any unwarranted questioning on privileged topics. Therefore, in light of Sussman's unique personal knowledge and the lack of burden involved in the limited deposition being allowed by the Court, the apex doctrine does not bar Sussman's deposition.

### III. Deliberative Process Privilege

The CCSAO next contends that Sussman's deposition is barred by the deliberative process privilege. The deliberative process privilege "protects communications that are part of the decision-making process of a governmental agency." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citation omitted). The purpose of the privilege is to encourage candid discussion among government agents: "[s]ince frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure." *Id.* The deliberative process privilege "typically does not justify the withholding of purely factual material," but covers "predecisional policy discussions . . . and [] factual matters inextricably intertwined with such discussions[.]" *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 375 (7th Cir. 2004) (citations omitted). In order to qualify for the deliberative process privilege, information must be both predecisional and deliberative. *Id.* (citations omitted).

---

[3] The Court acknowledges that the "indiscriminate depositions of high-ranking government officials" could "discourage [people] from accepting positions as public servants irrespective of whether those deposed were current or former officials." *Lee v. City of Chicago*, No. 20 CV 1508, 2021 WL 2399999, at *6 (N.D. Ill. June 11, 2021) (internal quotation marks and citations omitted). However, the Court finds this deposition to be targeted to the lead prosecutor in the post-conviction proceeding, rather than being an indiscriminate deposition of a figurehead. The Court further is taking steps to limit the time and scope of the deposition, which should reduce the burden and any chilling effects on potential public servants.

There is a two-part test for evaluating deliberative process privilege assertions in this Circuit. *Rodriguez v. City of Chicago*, 329 F.R.D. 182, 186 (N.D. Ill. 2019). First, the government agency asserting the privilege has to make a *prima facie* case by doing the following: "(1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; and (3) the official must specifically identify and describe the documents." *Id.* (internal quotation marks and citation omitted).

If the government agency succeeds in the first step, the analysis advances to the second step, in which the discovering party "has the burden of showing that it has a particularized need for the documents." *K.L. v. Edgar*, 964 F. Supp. 1206, 1209 (N.D. Ill. 1997) (citing *Farley*, 11 F.3d at 1389). In assessing the second step, the Court balances the discovering party's "need for disclosure against the government's need for secrecy, considering such factors as (1) the relevance of the [information] to the litigation; (2) the availability of other evidence that would serve the same purpose as the [deposition] sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which [the deposition] sought would tend to chill future deliberations within government agencies, that is, would hinder frank and independent discussion about governmental policies and decisions." *Id.* (citations omitted).

Here, the CCSAO has cleared the first step showing. Jessica Scheller, the Chief of the Advice, Business & Complex Litigation Division of the Civil Actions Bureau in the CCSAO, formally claimed the deliberative process privilege as the department head over "testimony and materials related to the decisions made by the CCSAO to drop charges and not to retry Mr. Solache

and Mr. Reyes[.]" Doc. [429-2] ¶¶ 1, 5. Scheller further asserted deliberative process privilege over "testimony and materials related to the CCSAO's position on the Plaintiffs' petitions for [Certificates of Innocence]." *Id* ¶ 6. Scheller explained that the CCSAO preserves the confidentiality of such testimony and materials because "[t]o divulge the process by which the CCSAO investigates and determines how to approach a COI would open the process up to outside influence. Interested individuals outside of the CCSAO may try to manipulate the process itself in order to achieve a favored outcome." *Id.* Finally, Scheller identified the purportedly privileged testimony and documents at play. *Id.* at ¶ 8. The Scheller affidavit satisfies the three requirements of the *prima facie* showing.

Turning to step two, the Court next assesses whether Defendants have shown a particularized need for the documents which outweighs the CCSAO's need for secrecy. Considering the factors spelled out above, the Court finds that Defendants have not met the step two showing, and frankly, Defendants do not seriously contend that the deliberative process privilege is completely inapplicable to a prosecutor's office such as the CCSAO. While the information sought is relevant, the need for the CCSAO to protect from disclosure their deliberations is substantial in order to promote full and frank discussion in prosecutorial decision-making. Other evidence that does not implicate the deliberative process privilege is also potentially available on this issue, such as the post-conviction hearing transcript.

Consequently, defendants focus their arguments on waiver. The deliberative process privilege, like other privileges, can be waived. *Hobley v. Chicago Police Commander Burge*, 445 F. Supp. 2d 990, 998 (N.D. Ill. 2006) (citation omitted). Waiver of the deliberative process privilege "should not be lightly inferred," and in the document discovery context, courts have held that the "release of documents only waives these privileges for the document or information

9

specifically released, and not for related material." *Id.* (internal quotation marks omitted) (quoting *In re Sealed Case*, 121 F.3d 729, 741 (D.C.Cir.1997)). In *Hood v. Washington*, the defendants in a wrongful conviction case issued a subpoena to a former governor regarding his decision to commute the plaintiff's sentence to time served. Order, *Hood v. City of Chicago, et al.*, No. 16-cv-01970 (N.D. Ill. Mar. 19, 2019), ECF No. 247 at 2. The governor moved to quash under the deliberative process privilege. *Id.* at 5. The *Hood* Court found that even if the governor had successfully made a *prima facie* showing that the privilege applied, the governor waived the privilege by "detail[ing] his decision to commute the sentence of the Plaintiff in a variety of public forums." *Id.* at 7. The court accordingly denied the motion to quash and allowed the governor to be deposed "on the particulars with respect to his decision to commute the sentence of the Plaintiff[.]" *Id.* at 8.

Similarly in the *Fulton* and *Coleman* cases, this Court found waiver of the deliberative process privilege on a deposition topic that had been publicly discussed by CCSAO prosecutors. *Fulton*, No. 17-cv-08696, ECF No. 293 at 13-14. There, the defendants sought the deposition of CCSAO prosecutors regarding, among other things, the CCSAO's decision to initially seek a retrial of the plaintiffs' cases and then move to dismiss the cases. *Id.* at 4, 14. Because the prosecutors publicly discussed the rationale for the CCSAO's decisions to first seek a retrial and then move to dismiss, the Court found waiver on that topic and allowed the defendants to inquire as to the reasons why the CCSAO decided to first retry and then dismiss the plaintiffs' cases. *Id.* at 17-18. By contrast, the Court found no waiver on the CCSAO's handling of the certificate of innocence proceedings, as "[t]he internal deliberations regarding the decision to not oppose the Certificate of Innocence [had] not been revealed publicly[.]" *Id.* at 15.

Here, Defendants have demonstrated that the CCSAO has waived the deliberative process privilege with respect to its post-conviction decision to dismiss Plaintiffs' cases. Sussman, then-First Assistant State's Attorney, explained on the record that he and the other prosecutors working the case believed Plaintiffs were guilty of the double homicide, and that the CCSAO had to request entry of *nolle prosequi* because Defendant Guevara, the lead investigator on the homicide, was found not to have testified truthfully. Doc. [441-3] at 4. Sussman's public statement thus revealed pre-decisional and deliberative elements to the CCSAO's decision to dismiss Plaintiffs' cases. First, his comments eliminated one possible reason that the CCSAO might have had for dismissing the cases, namely Plaintiffs' innocence. Second, Sussman's statement exposed a deliberation over Defendant Guevara, specifically that, without his truthful testimony, the CCSAO believed it had to abandon the prosecution. Sussman's statements also appeared purposefully made in order to maintain the court's—and public's—credibility and trust in the CCSAO. "A public figure making strong public statements may not then skirt questioning on the reason for the official action." *Hood*, No. 16-cv-01970, ECF No. 247 at 8. Accordingly, the deliberative process privilege has been waived on the topic of the CCSAO's decision to dismiss Plaintiffs' cases.[4]

Defendants, therefore, may question Sussman regarding the CCSAO's decision to enter the *nolle prosequi* in Plaintiffs' cases. At trial, the Court anticipates that Defendants will seek to call Sussman to rebut Plaintiffs' claim that the CCSAO's dismissal of charges is indicative of actual

---

[4] The Court has not delved into whether Sussman's deposition testimony in the *Fulton/Coleman* case constitutes waiver of the CCSAO's deliberative process privilege. As an initial matter, the Court is skeptical that Sussman had the power to waive that privilege after he left the CCSAO. Importantly, Sussman's deposition testimony on this matter was made over the objections of the CCSAO, was volunteered by Sussman, and was not responsive to the question asked. Doc. [439-1] at 3-4. The case law on waiver of the deliberative process privilege, furthermore, has surrounded an agency's public statements about its decision-making, not statements made in confidential depositions. Regardless, the Court need not resolve these issues, as Sussman's December 2017 statement, made in open court, is sufficient to show waiver on the topic of Plaintiffs' cases being dismissed, as discussed above.

innocence. Thus, asking for a deposition of this witness during discovery is fair game. However, that limited waiver does not entitle Defendants to *carte blanche*. Defendants have not made any showing that Sussman made public statements regarding the CCSAO's decision-making with respect to Plaintiffs' petitions for certificates of innocence. The deliberative process privilege accordingly continues to shield the CCSAO's pre-decisional deliberations on those topics. In short, the deliberative process privilege has been waived with respect to the CCSAO's decision to dismiss Plaintiffs' cases, but continues to protect the CCSAO's handling of Plaintiffs' certificate of innocence proceedings.[5]

## IV. Mental Process and Work Product Privileges

The CCSAO's final argument is that Sussman's deposition is barred by the attorney work product privileges. The federal work product doctrine under Rule 26(b)(3)(A) states that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). First, the CCSAO's fleeting invocation of the work product privilege is undeveloped and therefore waived. The CCSAO does not cite to any authority to guide the Court on the third-party work product issue, nor provide any discussion of the applicable law in this area. The law on the application of the attorney work product doctrine to third parties in litigation is not so clear. *Compare. Hill v. City of Chicago*, No. 13 C 4847, 2015 WL 12844948, at *2 (N.D. Ill. May 28,

---

[5] The CCSAO also invokes the "mental process" privilege to quash the subpoena. As courts have recognized, the mental process privilege is "inexplicably intertwined" with the deliberative process privilege. *United States v. Denlinger*, No. 596-51, 1989 WL 516267, at *4 (N.D. Ind. Sept. 13, 1989). The CCSAO's invocation of this privilege is indeed intertwined with its discussion of deliberative process privilege, and thus the Court sees no need to separately address this issue. *U.S. v. Lake County Bd, of Com'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) ("where the mental processes privilege is available, the analysis is the same as that for the deliberative processes privilege.")

2015) (finding that the CCSAO, as a non-party, was not entitled to work product protection in civil rights litigation); *Cook v City of Chicago*, No. 06 C 5930, 2010 WL 331737, at *1 (N.D. Ill. Jan 26, 2010) ("a non-party may not assert the work product doctrine to protect its files or documents"); *Hernandez v Longini*, No. 96 C 6203, 1997 WL 754041 at *2 (N.D. Ill. Nov. 13, 1997) ("Courts have expressly found the privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit—exactly the situation confronting the Court in this case."); *with Webster Bank N.A. v Pierce & Associates*, No. 16 C 704693, 2018 WL 704693, at *4 (N.D. Ill. Feb 5, 2018) ("However, in a situation such as that presented here, where the underlying and present litigation are related, the doctrine still applies."); *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (work product protection "endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related").

Second, the CCSAO does not explain how it meets the elements for federal work product protection under Rule 26(b)(3). The party claiming protection from the work-product doctrine has the burden of showing that it applies. *See Sullivan v Alcatel-Lucent, USA*, No. 12 C 7528, 2013 WL 2637936, at *9 (N.D. Ill. Jun. 12, 2013). Here, the CCSAO simply states that Sussman's mental impressions and intangible work product are "inviolate" under *Hickman v. Taylor*, without elaboration. Doc. [429] at 10 (citing *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). Defendants, likewise, say nothing on this topic in their response brief, and the CCSAO's reply brief is silent on this matter.

Such a perfunctory and undeveloped argument does not warrant the Court's opining on whether the work product privilege applies and extends to a third-party in this case, such as Sussman. *See Homeland Ins. Co. of New York v. Health Care Serv. Corp.*, 330 F.R.D. 180, 183

(N.D. Ill. 2019) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.") (internal quotation marks and citation omitted); *Patrick v. City of Chicago*, 111 F.Supp.3d 909 (N.D. Ill. 2015) ("Where, as here, there is no analysis, but only a conclusion, the point is waived. Indeed, the Seventh Circuit is consistent in holding that perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.") (internal quotation marks and citations omitted). To be clear, the waiver of the argument here is without prejudice, and the CCSAO may still object to certain questions it believes in good faith call for attorney mental impressions at the deposition.[6] However, at this time, without more and prior to the deposition, this argument is both undeveloped and premature.

### V.    Modifying the Subpoena

Having found that the Sussman subpoena seeks relevant information that is only partially protected by the deliberative process privilege, the Court turns to determining whether and how Sussman's deposition should proceed. Magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). Under Rule 45, the Court must quash or modify a subpoena that "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii-iv).

The CCSAO advocates for the total quashing of Sussman's deposition, or in the alternative, the following parameters: (1) time limited to two hours; (2) no questions regarding the decision-

---

[6] Undoubtedly, in asserting objections, the CCSAO should consider that Sussman, in his capacity as the lead prosecutor, voluntarily disclosed his mental impressions about Plaintiffs' guilt and the reasons for the CCSAO's *nolle prosequi* decision in the presence of the CCSAO's litigation adversaries. *See In re Bank One Sec. Litig., First Chicago Shareholder Claims*, 209 F.R.D. 418, 423 (N.D. Ill. 2002) (internal quotation marks and citations omitted) ("Because the protection is designed to protect an attorney's trial preparation and mental processes from discovery at the behest of an adversary, clearly voluntary disclosure to an adversary would almost invariably be seen as a total waiver.").

making process to dismiss criminal charges; (3) no questions regarding the CCSAO's decision-making process involving any post-conviction or certificate of innocence proceedings; and (4) no questions regarding the civil or criminal cases of third parties. Doc. [440] at 8. Defendants characterize limiting the scope of Sussman's testimony as "absurd," and argue that the CCSAO's counsel for Sussman can assert privileges in real time during the deposition. Doc. [439] at 12.

The Court finds that the best solution falls somewhere in between the parties' diametrically opposed positions. For instance, the CCSAO's position is too extreme in that it either eliminates Sussman's deposition altogether or limits the time too severely. At the same time, Defendants' position misses the mark too because the Defendants should not have unfettered access to Sussman or the CCSAO, a third party that retains the deliberative process privilege on some topics. *See* Doc. [440] at 7; Doc. [439-1]. So while generally a claim of privilege "must be made and sustained on a question-by-question or document-by-document basis," *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (citation omitted), the Court finds that setting some parameters in advance of the deposition is the proper course here.

The Court therefore modifies the Sussman subpoena to include the following limitations:

- The deposition shall take no more than 3 hours.
- If desired by Sussman, the deposition shall take place via videoconferencing, in order to reduce the burden placed on him and the CCSAO.
- The parties may ask questions about the CCSAO's decision to enter the *nolle prosequi* and/or dismiss Plaintiffs' criminal cases.
- The parties may not ask questions about the following topics:
    - The CCSAO's decision-making process involving the certificate of innocence proceedings in Plaintiffs' criminal cases; or

15

- o Sussman's reasons for dismissing other criminal cases, *i.e.,* criminal cases not involving Plaintiffs Reyes and Solache

All in all, the Court finds that the above parameters will reduce the burden placed on Sussman and the CCSAO and help prevent the disclosure of privileged material, while also providing Defendants with a fair opportunity to pursue relevant, nonprivileged testimony from Sussman. While Sussman has his own counsel, a CCSAO counsel shall also be present and can object to preserve the deliberative process and other applicable privileges when necessary.

## Conclusion

For the foregoing reasons, third party respondent CCSAO's Motion to Quash the Subpoena for the Deposition of Eric Sussman, Doc. [*DeLeon-Reyes* 429, *Solache* 301], is granted in part and denied in part. The Sussman deposition shall proceed with the specific parameters ordered by the Court. The deposition shall be completed by August 30, 2021.

**SO ORDERED.**

Dated: July 22, 2021

Sunil R. Harjani
United States Magistrate Judge

16