UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTURO DeLEON-REYES, <br><br> Plaintiff, <br><br> v. <br><br> REYNALDO GUEVARA, et al., <br><br> Defendants. | Case No. 18 C 1028 <br><br> Magistrate Judge Sunil R. Harjani |
| GABRIEL SOLACHE, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, et al., <br><br> Defendants. | Case No. 18 C 2312 <br><br> Magistrate Judge Sunil R. Harjani |

**ORDER**

The Court has reviewed the briefing as to Defendant Cook County State's Attorney's Office (CCSAO) motion to quash or for a protective order. Given the almost identical issues involved, the Court incorporates its reasoning and analysis from its prior opinion and order regarding the production of files from the Cook County Public Defender (CCPD). *See DeLeon Reyes v. Guevara*, 2021 WL 3418856 (N.D. Ill. Aug. 5, 2021). The Court issues this short order that addresses the specific arguments raised by the CCSAO.

*First*, the Court treats the City's subpoenas as only seeking 132 files from the CCSAO. While the City's original subpoena asked for more files, the City has been clear that it only seeks files that are companion files to those ordered produced from the CCPD. The original subpoena for the full scope of production was issued early in order to avoid further delay in resolving this matter. The CCSAO's early participation allowed the Court to determine exactly how many files the CCSAO physically had in its possession (ultimately, 191 files out of 223 files subpoenaed), the nature and condition of the documents, as well as the burdens and timeframe of the production in order to manage discovery more efficiently in this case in light of the current expert discovery schedule. Since the CCPD has been ordered by this Court to produce 132 files, the Court assesses only whether it should order the production of 132 CCSAO files.

*Second*, the CCSAO has argued that its files are irrelevant and duplicative of what the Chicago Police Department (CPD) provided to the CCSAO at the time of the investigation and

prosecution. The argument misapprehends the relevance of the files. In this wrongful conviction case, Plaintiffs seek to argue that *Brady* materials were not produced by Defendant City as a matter of policy and practice in attempting to prove their *Monell* claim. In that regard, Plaintiffs intend to compare the CPD homicide files with the CCPD files to show a policy or practice of underproduction of *Brady*-related material. To counter that argument, Defendant City seeks to compare the CPD files with the CCSAO to argue that the CPD's *Brady* obligations were discharged when the material was turned over to CCSAO. Whether CPD documents exist in the CCSAO files is a material and significant fact that cannot be so easily dismissed by simply claiming that the files are duplicative. Put another way, the CCSAO's argument rests on an assumption that all *Brady*-related material was turned over from the CPD to the CCSAO – the City needs discovery to prove that fact in Court, and it cannot merely rest on that assumption. Moreover, the CCSAO's argument that the CCPD files contain all the necessary documents also rests on the assumption that all *Brady*-related material was initially provided by the CPD and eventually made its way to the CCPD, and would thus be contained in the CCPD files. That assumption is exactly what the Plaintiffs are challenging in this case through expert discovery, and thus the City also needs discovery to rebut Plaintiffs' upcoming expert disclosure.

Moreover, the CCSAO has argued that there are other ways to track whether CPD documents were turned over to the CCSAO, such as bates-numbers. But the City has persuasively demonstrated that Bates-numbers from CPD to the CCSAO were likely not used between 1995 and 1998, and that document tracking notes are not sufficiently reliable to conclusively establish that *Brady*-related materials were in fact produced to the CCPD. No information has been provided to the Court that demonstrates there was a reliable method to track the flow of these documents between 1995 through 1998, which makes the file comparison method the best option available here. The Court is also aware of the condition of materials from three decades ago, and that there could be documents missing from the CCPD files simply due to the age of the case, disorganization by the attorney who maintained the file, or discovery handed off to newly-retained counsel without tracking that production. Thus, the presence of *Brady*-related document in a CCSAO file will be an important counterpoint to rebutting the argument that a *Brady*-related document missing from a defense file demonstrates a policy or practice of underproduction. As this Court has previously stated, this file comparison method is the primary method by which Plaintiffs seek to prove its *Brady*-related *Monell* allegation. The Court has permitted Plaintiffs discovery by way of ordering the production of the CCPD files, and the Court must also give the Defendant City an opportunity to rebut those allegations through its own discovery. Whether any of the *Monell* allegations survives summary judgment or is admissible at trial is a decision for the district judge at a later date. As the district judge aptly stated in a previous order, "discoverability and admissibility are two different things." [384]. Finally, to the extent that Plaintiffs use the CCPD files to support other non-*Brady Monell* theories in their expert disclosures, information within the CCSAO files may also help provide context and/or rebut those theories. In summary, the documents sought by the City are both relevant and not duplicative.

*Third*, the CCSAO argues that the subpoena is unduly burdensome. The Court is sensitive to the burden imposed by a subpoena to a third-party, especially one that is a public agency. In light of that burden, the Court, as it did in the CCPD matter, will not order the production of the full set of files. The analysis as to why a sample set at a 95% confidence level is more appropriate was discussed in the Court's prior opinion on the production of CCPD files, and is incorporated

here. *DeLeon*, 2021 WL 3418856, at *6. Thus, the Court has already taken the concerns of the CCPD and the CCSAO into account by modifying the subpoena to 132 files. CCSAO's alternative suggestion of allowing production of one or two files is a completely unworkable, statistically unsound sample set, and any expert analysis based on one or two files would surely not make it through any *Daubert* hearing. *Id.* Nor has CCSAO argued to the contrary or provided any evidence that it would be sufficient.

Nevertheless, requiring the production of even 132 CCSAO files still imposes a burden to the CCSAO, who has limited staff and resources to devote to third-party subpoena production. The Court also recognizes that CCSAO has already shouldered some burden by using its resources to determine, at the Court's request, exactly how many files it has in its possession. However, to be clear, that task was necessary given that it was the CCSAO who initially raised with the Court in its motion to quash that producing 223 files was unduly burdensome, but the CCSAO, due to its *own* record-keeping practices, could not inform the Court how many of those 223 files it actually had in its custody.

Thus, while the Court has lessened the burden by narrowing the scope of production from several hundred files to a sample set of 132 files, more needs to be done to lessen the remaining burden. The City has proposed reasonable steps on that concern by offering to shoulder certain costs, as follows: (1) a moving company to retrieve the boxes from the warehouse and move them to a staging area where they can be scanned; (2) a vendor to scan all the files, either on-site or off-site at the CCSAO's preference; and (3) contract attorneys to work with the CCSAO to conduct the privilege review. These steps would significantly reduce the time and expense necessary for the CCSAO to comply with the subpoena. The CCSAO's reply brief, however, goes further and seeks compensation for administrative and ASA time with locating the files, supervisory time to oversee the privilege review, and cost of software hosting services and shipping costs.

Some of the CCSAO's requests, while vague, are already embedded in the City's offer, such as the costs of moving the boxes off-site or the use of vendors to scan the documents. However, to be crystal clear, the Court will order the City to bear the following costs:

1. a moving company to retrieve the boxes from the warehouse and move them to a staging area on-site or off-site where they can be scanned, and to return those boxes back to the warehouse when completed.

2. a vendor to scan all the files, either off-site or on-site, and to upload those scanned files into a document review software such that the CCSAO can use that software (and database of documents) to conduct its privilege review.

3. contract attorneys, that meet the approval of the CCSAO and are conflict-free, to conduct a privilege review under the supervision of the CCSAO, using the software and document database, and exclude privileged documents.

The Court will not order the City to bear the costs of administrative and ASA time that are in addition to the above costs. A third-party in possession of documents always bears some burden to comply with a subpoena for documents, and reimbursing public employees at some

undetermined hourly rate goes too far in shifting the burden of production to the City. The Court believes that the above cost-shifting significantly reduces the burden to the CCSAO to the point where the vast majority of the work has been outsourced, at the expense of the City. The burden that remains on the CCSAO, which is primarily training and reviewing the work of contract attorneys, is proportional to the needs of this case, considering the importance of the material is high, the amount at stake in the controversy is substantial, and the issues at stake in this wrongful conviction litigation are significant.

The Court's decision here only applies to the circumstances of this case. The Court is aware that there are other wrongful conviction cases in this district that may also seek voluminous files for *Monell* discovery. However, the Court has evaluated the specific set of circumstances in this case in coming to its conclusion, and the Court may very well reach a different outcome in another case.

Accordingly, the CCSAO's motion to quash or for entry of a protective order [455] is granted in part and denied in part. The Court enters a protective order and modifies the subpoena to order the production of 132 CCSAO files that are the companion files to the CCPD production, and for the City to substantially bear the costs of production as described above. Given that Defendants must make its expert disclosure by 10/4/21 and needs time to review the produced documents, the Court orders that the CCSAO files be produced by 9/7/21, and the City and the CCSAO shall meet and confer and formulate a schedule to meet this deadline by 8/23/21. The Court, however, is open to modification of this date if the parties can reach an agreement and propose an alternative timeframe.

**SO ORDERED.**

Dated: August 19, 2021

Sunil R. Harjani
United States Magistrate Judge