IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
|     Plaintiff, | ) | No. 18 C 1028 |
|     v. | ) | |
| REYNALDO GUEVARA, et al., | ) | Hon. Steven C. Seeger |
|     Defendants. | ) | Hon. Sunil R. Harjani |
| | | |
| GABRIEL SOLACHE, | ) | |
|     Plaintiff, | ) | No. 18 C 2312 |
|     v. | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Hon. Steven C. Seeger |
|     Defendants. | ) | Hon. Sunil R. Harjani |
| | | |
| ARIEL GOMEZ, | ) | |
|     Plaintiff, | ) | No. 18 C 3335 |
|     v. | ) | |
| REYNALDO GUEVARA, et al. | ) | Hon. Charles P. Kocoras |
|     Defendants. | ) | |
| | | |
| RICARDO RODRIGUEZ, | ) | |
|     Plaintiff, | ) | No. 18 C 7951 |
|     v. | ) | |
| REYNALDO GUEVARA, et al. | ) | Hon. Mary M. Rowland |
|     Defendants. | ) | Hon. Susan E. Cox |
| | | |
| RICARDO BOUTO, | ) | |
|     Plaintiff, | ) | No. 19 C 2441 |
|     v. | ) | |
| REYNALDO GUEVARA, et al. | ) | Hon. John F. Kness |
|     Defendants. | ) | Hon. Susan E. Cox |
| | | |
| GERALDO IGLESIAS, | ) | |
|     Plaintiff, | ) | No. 19 C 6508 |
|     v. | ) | |
| REYNALDO GUEVARA, et al. | ) | Hon. Franklin U. Valderrama |
|     Defendants. | ) | Hon. Maria Valdez |
| | | |
| DEMETRIUS JOHNSON, | ) | |
|     Plaintiff, | ) | No. 20 C 4156 |
|     v. | ) | |
| REYNALDO GUEVARA, et al. | ) | Hon. Sara L. Ellis |
|     Defendants. | ) | Hon. Heather K. McShain |

**PLAINTIFFS' AMENDED CONSOLIDATED RESPONSE IN OPPOSITION
TO THE CITY OF CHICAGO'S MOTION FOR A PROTECTIVE ORDER**

Plaintiffs ARTURO DeLEON-REYES, GABRIEL SOLACHE, THOMAS SIERRA, ARIEL GOMEZ, RICARDO RODRIGUEZ, RICARDO BOUTO, GERALDO IGLESIAS, and DEMETRIUS JOHNSON, by their undersigned attorneys, respectfully submit this consolidated response in opposition to the City of Chicago's motion for a protective order, stating as follows:

## INTRODUCTION

In nine civil cases concerning wrongful convictions caused by the misconduct of Reynaldo Guevara and other Chicago Police officers, the City of Chicago has filed a consolidated motion for a protective order to block *Monell* discovery from third parties that is essential to establishing the City's practice of suppressing exculpatory evidence gathered in homicide investigations. *Reyes v. Guevara*, No. 18 C 1028, Dkt. 503 (Seeger & Harjani, JJ.); *Solache v. Guevara*, No. 18 C 2312, Dkt. 355 (Seeger & Harjani, JJ.); *Maysonet v. Guevara*, No. 18 C 2342, Dkt. 199 (Rowland, J.); *Sierra v. Guevara*, No. 18 C 3029, Dkt. 332 (Lee & Weisman, JJ.); *Gomez v. Guevara*, No. 18 C 3335, Dkt. 136 (Kocoras, J.); *Rodriguez v. Guevara*, No. 18 C 7951, Dkt. 159 (Rowland Cox, JJ.); *Bouto v. Guevara*, No. 19 C 2441, Dkt. 252 (Kness & Cox, JJ.); *Iglesias v. Guevara*, No. 19 C 6508, Dkt. 149 (Valderrama & Valdez, JJ.); *Johnson v. Guevara*, No. 20 C 4156, Dkt. 105 (Ellis & McShain, JJ.).

The City's motion has already been denied in *Sierra*, No. 18 C 3029, Dkt. 332, in which Judge Weisman explained:

> (1) the motion is premised in large part on the burden *Monell* discovery will impose on third parties who can assert or have asserted their burden objections in motions to quash; (2) this Court cannot modify or set aside the district court's order denying bifurcation of the *Monell* claims; and (3) production of a random sample of files would greatly reduce the time and expense associated with *Monell* discovery, but the City refuses to stipulate that such a sample is representative of all files for purposes of litigating the *Monell* claims.

This consolidated response is being filed in the remaining Guevara cases, except for *Maysonet*.

2

The burden that the City now complains of in support of its motion is a burden of its own making. The plaintiffs in the Guevara cases have consistently urged the City to take a cooperative approach to *Monell* discovery that would reduce burden on the parties and limit the need for third-party discovery, and the plaintiffs continue to urge such an approach. The City repeatedly has refused to enter a stipulation to that effect. The plaintiffs during court hearings on the City's motion have proposed other solutions to limit the need for third-party document discovery. So far the City has not embraced those either. Moreover, the City's arguments have already been rejected repeatedly in the Guevara cases, and the City should not get a second, third, or fourth bite of the apple. This Court should deny the motion.

## DISCUSSION

The plaintiffs in the Guevara cases collectively have suffered centuries of wrongful incarceration as the result of brazen and criminal misconduct by Chicago Police officers, including Detective Reynaldo Guevara. Instead of making amends to these men, the City of Chicago has ligated their civil cases to the maximum extent possible, resisting discovery at every turn and filing every possible motion. Public records reflect that the City pays more than $250,000 a month to private lawyers to defend these cases. And to what end? The four Guevara civil cases that have previously been resolved at trial or by settlement have required the City to pay more than $60 million. These are extraordinarily meritorious civil rights cases.

The City of Chicago focuses much of its litigation energy on preventing discovery into a common thread that connects the Guevara cases: the policies and practices of the Chicago Police Department. Among other things, these policies and practices led to the systemic misconduct committed by Guevara and his colleagues, the widespread suppression of evidence developed during criminal investigations, and the physical and psychological abuse of criminal suspects and

witnesses. The City would like nothing more than to sit out these cases, pretending that these were isolated constitutional violations visited upon Chicagoans. But they were not. They are all part of a decades-long policy scandal engulfing the Chicago Police Department.

The City's current motion is far from its first attempt to halt *Monell* discovery in the Guevara cases. On the contrary, it has engaged in protracted litigation at every stage of these cases in an effort to avoid municipal accountability and to halt discovery into its policies and practices. In these cases, it has lost a whopping 16 motions to bifurcate *Monell* discovery, motions to compel *Monell* discovery and the production of relevant documents, and Rule 72 objections to those decisions. *Reyes*, No. 18 C 1028 (consolidated with *Solache*), Dkts. 163, 166, 174 (denying bifurcation of *Monell* claims), Dkts. 184, 185, 195, 211, 212, 224 (granting motion to compel *Monell* discovery), Dkts. 231, 266, 280, 384 (rejecting Rule 72 appeal of motion to compel ruling); *Sierra*, No. 18 C 3029, Dkts. 56, 57, 84 (denying bifurcation of *Monell* claims), Dkts. 138, 140, 147, 154 (granting motion to compel *Monell* discovery); *Gomez*, No. 18 C 3335, Dkts. 53, 56, 58, 62, 65 (denying bifurcation of *Monell* claims), Dkts. 102-1, 105, 104, 110, 113, 129 (denying bifurcation of *Monell* claims a second time), Dkts. 100, 106, 109, 110, 129 (granting motion to compel *Monell* discovery); *Rodriguez*, No. 18 C 7951, Dkts. 44, 45, 49, 51 (denying bifurcation of *Monell* claims), Dkts. 54, 61, 62-1, 68 (rejecting Rule 72 appeal of motion to compel ruling); *Bouto*, No. 19 C 2441, Dkts. 83, 85, 105 (denying bifurcation of *Monell* claims), Dkts. 126, 142, 153 (granting motion to compel *Monell* discovery); Dkts. 162, 180, 257 (rejecting Rule 72 appeal of motion to compel ruling); *Iglesias*, No. 19 C 6508, Dkts. 80, 82-1, 131 (denying bifurcation of *Monell* claims); *Johnson*, No. 20 C 4156, Dkts. 49, 52, 77 (denying bifurcation of *Monell* claims); Dkt. 77 (requiring the City to produced *Monell* discovery). The City has filed the same motions in every case—despite that its losing position

plainly lacks merit—and sometimes twice in the same case. It has self-helped itself to stays of discovery while motions are pending or by stonewalling the plaintiffs. It has rejected all efforts to compromise and all proposals designed to limit *Monell* discovery by stipulation. And in so doing, the City has imposed a cost to *Monell* discovery that far exceeds the evidence it has been asked to provide.

The City has chosen that approach despite the fact that the Chicago Police Department's practice of evidence suppression in criminal investigations is well established. In the mid-1980s, the City admitted in litigation in this District that it had a problem of systematically suppressing evidence. *Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill. 1983); *Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1986); *see also Jones v. City of Chicago*, 856 F.2d 985, 988 (7th Cir. 1988). Multiple federal juries have recently concluded—evaluating exactly the same theories and the same types of evidence at issue here—that the City's evidence-suppression practice continued from the mid-1980s until at least the late 2000s. The Seventh Circuit and district courts have upheld those verdicts. *Rivera v. Guevara*, 12 C 4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. City of Chicago*, 2017 WL 4553411, at *3-4 (N.D. Ill. Oct. 12, 2017); *Fields v. City of Chicago*, 2020 WL 6817489, at *16-18 (7th Cir. Nov. 20, 2020). And the City's own inspector general concluded just last week that the Chicago Police Department's file maintenance problems continue to this day, risking continued constitutional violations. See Office of Inspector General, City of Chicago, *OIG Follow-up Finds That the Chicago Police Department Is Still Unable to Ensure That It Can Meet Its Legal and Constitutional Obligations with Respect to the Management and Production of Records*, available at https://igchicago.org/2021/09/16/oig-follow-up-finds-that-the-chicago-police-department-is-still-unable-to-ensure-that-it-can-meet-its-legal-and-constitutional-obligations-with-respect-to-the-

management-and-production-of-records/ (September 16, 2021). The *Monell* claims advanced in the Guevara cases have been thoroughly tested. They are extraordinarily meritorious. Nonetheless, the City spares no expense in its effort to stop the discovery of highly relevant evidence of its practices.

The fact that judges in all Guevara cases have denied the City's motions to bifurcate *Monell* discovery is reason enough to deny the City's motion for a protective order. The City cannot avoid by protective order discovery into claims on which it tried and failed to have discovery bifurcated and stayed. The fact that judges in six of the Guevara cases have already ordered the City to produce files in *Monell* discovery, ruling that those files were relevant and proportional to the litigation, is an independent reason to deny the City's motion. The fact that the City's production of those files is nearly complete, provides yet another independent and equally sufficient reason to deny the City's motion for a protective order. The fact that the City's motion asks for a second, third, or in some cases fourth chance to relitigate issues already resolved in these cases is another compelling reason to reject the City's motion.

But the City's motion for a protective order represents an even more bizarre extension of its scorched-earth strategy to avoid *Monell* litigation. Not only is the City asking to relitigate issues already resolved, after it has completed its own production, but it is asking to halt *Monell* discovery as it concludes, citing the burden not to itself but to third parties—the Cook County Public Defender and the Cook County State's Attorney's Office. But those third parties can and are representing their own interests in the Guevara cases, filing motions to quash subpoenas in *Reyes*/*Solache* and *Sierra*, which have already been litigated extensively. *Reyes*, No. 18 C 1028, Dkts. 424, 430, 455, 468, 471, 472, 476, 480, 485; *Sierra*, No. 18 C 3029, Dkts. 287, 310, 333. The appropriate scope of document discovery from third parties should be litigated that way, not

6

by granting the City a blanket protective order in multiple cases halting *Monell* discovery after the litigation and document productions are nearly complete. The City cannot obtain a protective order to stop *Monell* discovery by citing the litigation interests of third parties.

Moreover, and critically, the City has created the burden of the document discovery that it says justifies its motion—it has repeatedly refused to stipulate to the use of a smaller sample of files as evidence of its policies and practices, preferring instead to litigate the scope of discovery and require the production and analysis of hundreds of thousands of pages of files at great expense. This was not always the case; in prior years, the City agreed to such cooperative stipulations regarding *Monell* discovery. *See, e.g.*, Stipulation, *Rivera v. Guevara et al.*, No. 12 C 4428 (N.D. Ill.), Dkt. 313-88.

The plaintiffs in the Guevara cases have repeatedly proposed that a limited subset of case files be used as proof of the City's policies and practices. Such a limitation on discovery is immediately possible if the City would only stipulate that a random sample of files is representative of its policies and practices for a relevant time period. But the City has refused. Its explanation why, given to the plaintiffs and to judges, is less than robust: the City claims that it cannot understand the plaintiffs' *Monell* theories or how the files will be used as evidence. It takes this head-in-the-sand position despite exhaustive explanations in multiple civil cases, court filings, expert opinions, judicial opinions, and two completed jury trials with precisely this sort of proof.[1]

---

[1] Substantively, the City's refusal to stipulate is particularly egregious given that that there are absolutely no differences in the City's file keeping and disclosure policies or practices between the late 1980s and the early 2000s. Indeed, the City's designated 30(b)(6) deponents on the topic have made that clear. *See* Exhibit A, Loughran testimony in *Fields* at 11-12 ("Q Looking at the 'Investigative Files' order, this Special Order, which is dated May 29, 1986, this order was still in effect in 2009? A Yes, ma'am. Q Were there any amendments to this order over that time period? A Not that I'm aware of."); Exhibit B, Hickey testimony in *Rivera*, at 153 ("Q. In that period of time [between 2000 and 2005] did the unit to the best of

Most recently, the City reached out to the plaintiffs, asking if they would discuss a global limitation on *Monell* discovery in the Guevara cases. The plaintiffs responded that they would happily engage in such a discussion. But instead of beginning the discussion (as required by Rule 37.2), the City filed its motion for a protective order without responding at all. Still, the plaintiffs have continued to press their efforts to secure a stipulation from the City that will limit the *Monell* discovery necessary from third-parties. On September 21, 2021, the plaintiffs proposed the following limitation on *Monell* discovery in all of the Guevara cases (except *Maysonet*):

(1) That the plaintiffs and the City would agree to limit their subpoenas to the third-party Cook County Public Defender and the Cook County State's Attorney's Office, respectively, to the random sample of case files already ordered produced by Judge Harjani in *Reyes* and *Solache*;

(2) That the plaintiffs and the City would agree that any *Monell* discovery in any Guevara case requiring a comparison between the Chicago Police Department's homicide files and the Public Defender's and/or State's Attorney's case files would be based on the set of files produced in *Reyes* and *Solache*; and

(3) That the plaintiffs and the City would stipulate that the set of files produced in *Reyes* and *Solache* were representative of the City of Chicago's and the Chicago Police Department's policies and practices for the relevant time period in each of the Guevara cases.

The City has not yet responded to the proposal. It has been discussed briefly during a hearing in *Reyes/Solache*. The City cannot obtain a protective order preventing essential *Monell* discovery by insisting that the plaintiffs prove a widespread practice over a period of decades, by citing the

---

your information function any differently than it did in the 1980's? A. I don't know how it could have."), 157-58.

8

burden created by discovering files across that time period, and by refusing to stipulate to using a much more manageable set of randomly selected files. While a court cannot force a party to stipulate, it can deny a motion for a protective order when the need for the discovery at issue is created by the party's litigation position. Relatedly, the plaintiffs in the Guevara cases are not seeking any Cook County State's Attorney's files in the first place, and so the City's motion for a protective order is aimed in that respect at discovery that the City itself is seeking. The City's refusal to stipulate has created the burden the parties and third-parties now face, and that is yet another reason to deny the City's motion.

Meanwhile, the Guevara plaintiffs have continued to seek creative solutions to prevent burden to third parties and to conduct *Monell* discovery in as streamlined a fashion as possible. At a hearing on September 24 before Judge Harjani in *Reyes/Solache*, plaintiffs proposed that, if the City continued to refuse a reasonable stipulation, the court supervising the Guevara cases could simply order the parties in all of those cases to rely on the sample of the CCPD and CCSAO files ordered produced in *Reyes/Solache*. In *Reyes/Solache*, the CCPD file production is nearly complete (the files have been scanned and are being reviewed for privilege); and the CCSAO production will be completed by the end of the year. An order in the Guevara cases that these files should be used for purposes of the *Monell* theories that depend upon third-party files would eliminate the need to litigate the issue in these cases and would limit the burden of third-party discovery to what has already been ordered produced.[2] This streamlined approach would

---

[2] Cook County Public Defender files and Cook County State's Attorney's Office files were also produced in *Fields* and *Rivera*, and were the subject of comprehensive expert analyses and disclosures. Much of the expert opinions and analyses in those cases, including the detailed comparison of homicide files to criminal defense attorney and prosecutor files, was introduced as trial exhibits and are part of the public record. Simply ordering the parties in the Guevara cases rely on the third-party file production already ordered and nearly produced in *Reyes/Solache* (Area 5, from 1995-1998) will allow the Guevara plaintiffs to use those files, the *Rivera* files (Area 5, from 1985-1991) and the *Fields* files (Area 1, 1983-1989 ) to prove their *Monell* claims.

dramatically reduce the burden on third-parties, even without the City's stipulation to this sensible procedure, and Plaintiffs would not resist such an order.

The City's remaining arguments for a protective order simply parrot arguments that the City has made in earlier litigation about bifurcation and the scope of *Monell* discovery. The City argues that the parties should engage in two rounds of discovery and two rounds of motions for summary judgment, starting with the cases against the individual Defendants and moving on later to the cases against the City. But this is nothing more than an argument for reconsideration of prior orders denying bifurcation, repackaged as a motion for a protective order. As explained in earlier briefing, the City's proposal would expand the litigation required, doubling it, instead of bringing the litigation promptly to a close.

Next, the City argues briefly in bullet points that there is *nothing* in the record of any of the Guevara cases to suggest that evidence was suppressed. Again, this repackages an argument made repeatedly in earlier motion practice on *Monell* discovery, and an argument the City made unsuccessfully all the way through trial in *Fields* and *Rivera*; most recently lost at summary judgment in *Montanez v. Guevara et al.*, No. 1:17-4560 (N.D. Ill.), Dkt. 261 at 46-48; and has never prevailed on in a Guevara case litigated by plaintiffs' counsel. The City's argument is also not true. Consider for example the suppression at issue in *Johnson*, in which the plaintiff never received a police report in his criminal case that documented that an eyewitness had selected an alternate suspect in a lineup. The exculpatory police lineup report was indisputably concealed from the criminal defendant and his counsel: that typed police report is not in the Chicago Police Department's permanent retention file (where all typed police reports are required to be stored), and it is not contained in the Cook County State's Attorney file. Instead, what is found in the Department's permanent retention file and the prosecutor's file is a different police report stating

10

the exact opposite of the exculpatory report: that the eyewitness had *not* selected the alternate suspect.[3] Despite this, the City argues that there was no suppression in that case at all and so the *Monell* claim "is therefore meritless as a matter of law." What?

After losing motions to bifurcate and being ordered to produce documents, in the midst of discovery, without a record, the City is asking courts in nine different cases to grant summary judgment in its favor, to find that no constitutional violation occurred as a matter of law, and to halt *Monell* discovery. There is no basis in the Rules for such a request; and the City has not developed anything close to an argument for that type of relief. And critically, although the City asks this Court to halt all *Monell* discovery, its arguments are focused only on plaintiffs' file suppression theory. Plaintiffs are separately pursuing a *Monell* theory based on the failure to train, supervise and discipline officers who engage in rampant misconduct; the CR files relevant to that theory have all been produced, plaintiffs have not asked for additional documents from any third party, and Plaintiffs have retained experts to analyze that data. The City has offered no basis to halt *Monell* discovery in its entirety.

Last but not least, turning back to plaintiffs' file suppression theories, the City's argument about oppressive discovery from public entities is not only caused by the City's recalcitrant litigation position, but it also ignores entirely that the plaintiffs in the Guevara cases have volunteered to absorb the entire cost of the document production, assisting in the movement, scanning, and privilege review of all files. It is the incessant litigation about the scope of *Monell* discovery that is taxing the courts', the parties', and the third-parties' time and resources, not the discovery itself.

---

[3] The undisclosed exculpatory report and the disclosed report are attached as Exhibits C and D, respectively.

11

## CONCLUSION

The plaintiffs' *Monell* theories in the Guevara cases are robust. They have been tried successfully in other cases. The propriety of bifurcating those claims has been litigated. The City has been ordered to engage in *Monell* discovery. It has nearly completed production of its files. The Cook County Public Defender and Cook County State's Attorney can and have litigated the scope of subpoenas directed to them. The plaintiffs have proposed a stipulation that would eliminate the need for additional *Monell* document discovery from third-parties. The arguments re-raised by the City in its motion have been litigated *ad nauseum* and resolved against the City at every turn. There is no basis for a protective order. The City's motion should be denied.

RESPECTFULLY SUBMITTED,

/s/ Anand Swaminathan                    /s/ Jan Susler

*Counsel for Plaintiffs De-Leon Reyes,*      *Counsel for Plaintiff Solache*
*Gomez, Rodriguez, Bouto, Iglesias &*
*Johnson*

Jon Loevy                                Jan Susler
Russell Ainsworth                        Ben Elson
Anand Swaminathan                        PEOPLE'S LAW OFFICE
Steve Art                                1180 N. Milwaukee Ave.
Ruth Brown                               Chicago, Illinois 60642
Danielle Hamilton                        (773) 235-0070
Rachel Brady                             jsusler@gmail.com
John Hazinski
Sean Starr
Isabella Aguilar
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, Illinois 60607
(312) 243-5900
anand@loevy.com

**CERTIFICATE OF SERVICE**

I, Anand Swaminathan, an attorney, hereby certify that, on September 27, 2021, I filed PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO THE CITY OF CHICAGO'S MOTION FOR A PROTECTIVE ORDER using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Anand Swaminathan
*One of Plaintiffs' Attorneys*