IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | Magistrate Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Magistrate Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CITY OF CHICAGO'S SUPPLEMENTAL REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER TO PREVENT UNDUE STRAIN ON RESOURCES OF PUBLIC ENTITIES FOR SPECULATIVE *MONELL* DISCOVERY**

Defendant, City of Chicago, by and through its undersigned attorneys, and for its Supplemental Reply in further support of its Motion for Protective Order to Prevent Undue Strain on Resources of Public Entities for Speculative *Monell* Discovery ("City's Motion"), states:

**INTRODUCTION**

On September 20, 2021, this Court asked Plaintiffs whether exculpatory *documents* from the Chicago Police Department ("CPD") files were suppressed. *See* September 20, 2021, Transcript of Proceedings attached hereto as Ex. A at 27:24-28:2. Plaintiff Reyes' counsel

1

unequivocally stated, "Yes." *Id.* at p. 27:23-28:2. Accordingly, this Court asked Plaintiffs' counsel whether or not those documents would be attached to Plaintiffs' consolidated response. When Counsel indicated that including those documents would be more "case specific" than the consolidated response that was being drafted, this Court ordered Plaintiffs to file a supplemental response as well, specifically attaching the purportedly withheld documents, concluding that "after two years, the time is ripe" for the Court to review the evidence and confirm that there were exculpatory documents withheld. *Id.* at 28:15-18. Not surprisingly, Plaintiffs' 20-page Supplemental Response to the City of Chicago's Motion for a Protective Order ("Supplemental Response") does not even attempt to answer the Court's question until page 9 and then, falsely states that "21 pages of investigative documents appear in the CPD file but not in the CCPD file," Dkt. at p. 9, and then implies an additional eleven pages were missing. As discussed below, the thirty-two pages of documents Plaintiff identifies in response to this Court's question as the supposed evidence to support their *Monell* theories actually demonstrates why the Court should grant the City's motion.

## ARGUMENT

**I. Plaintiffs' Representations Regarding Missing Documents Are Demonstrably False.**

After almost three years of litigation and being pressed by this Court to provide specific evidence of *Brady* materials that were withheld, Plaintiffs identify in Ex. 3 "21 pages of investigative documents" that they purport "appear in the CPD file, but not in the CCPD file." Dkt. 514 at p. 9. In addition, Plaintiffs rely on Ex. 10, which they describe as "eleven pages of investigative document [sic] in the CPD file that are not accounted for in the discovery receipts as being turned over to the criminal defense." Dkt. 514 at p. 12. Thus, according to Plaintiffs, there are a total of thirty-two (32) pages of "investigative documents" that were withheld. This

2

representation is demonstrably false. In fact, of the thirty-two total pages, seventeen pages appear in the Solache CCPDO[1] file or the CCSAO file or both and, as such, were not withheld by CPD. These seventeen pages break out as follows.

First, of the twenty-one (21) pages contained in Ex. 3, **eleven (11) pages can be found in either the CCPDO file or the CCSAO file or both.** Specifically,

- The letter from the University of Illinois Chicago to the victim, Jacinta Soto, regarding an appointment for her son, Santiago Soto (RFC-Solache/Reyes 0138, Ex. 3, p. 10) is contained in the CCSAO file at CCSAO 1090. *See* Ex. B. Moreover, the CCPDO's privilege log lists 35 pages of medical records for Santiago Soto from the Solache CCPDO file, which were withheld by the CCPDO. *See,* CCPDO's Privilege Log attached as Ex. C. Plaintiffs never challenged the privilege assertion.

- Medical records for Baby Girl Soto (RFC-Solache/Reyes 199-203, Ex. 3, p. 13-17) are contained in the CCSAO file at CCSAO 785-790. *See* Ex. B. Moreover, the CCPDO's privilege log lists 6 pages of medical records for Baby Girl Soto from the Solache CCPDO file, which were withheld by the CCPDO. *See,* CCPDO's Privilege Log attached as Ex. C. Plaintiffs never challenged the privilege assertion.

- Medical records for Adriana Martinez a/k/a Mejia (RFC-Solache/Reyes 208-209 and 211, Ex. 3, p. 18-19, 21) are contained in the CCSAO file at CCSAO 798-799. *See* Ex. B. Moreover, the CCPDO's privilege log lists 21 pages of medical records for Adriana Martinez from the Solache CCPDO file, which were withheld by the CCPDO. *See,* CCPDO's Privilege Log attached as Ex. C. Plaintiffs never challenged the privilege assertion.

- The DCFS Case Reports for kidnapping victims Santiago Soto and Maria Soto (RFC-Solache/Reyes 0197-0198, Ex. 3, p. 11-12) are contained in the CCSAO file at CCSAO 3088-3089. *See* Ex. B. And, while the DCFS Case Reports are not contained in the Solache CCPDO as it exists today, these DCFS Case Reports are listed on the Discovery Receipts Plaintiffs rely on for their arguments associated with Ex. 10. See Ex. D at p 8 (RFC-Solache/Reyes 3770).

Second, of the eleven (11) pages in Ex. 10 that Plaintiffs' claim "do not appear on the discovery receipts documenting what prosecutors turned over to the criminal defense" **six pages**

---

[1] To date, the only criminal defense file that has been located has been the CCPDO file for Plaintiff Solache. While the CCPDO also represented Plaintiff Reyes and Adriana Mejia, their criminal defense files could not be located by the CCPDO.

3

**actually do appear on the discovery receipts and, in fact, are contained within the CCPDO file.** Specifically,

- Adriana Mejia Arrest Report a/k/a CB Report (RFC-Solache/Reyes 269) appears at pp. 1, 3, 12, 13 (RFC-Solache/Reyes 3764-65, 3774-75) of the Discovery Receipts. *See* Ex. D. Moreover, Adriana Mejia's Arrest Report is **actually contained** in the Solache CCPDO file. *See* Ex. E (RFC-Solache/Reyes 5144).

- Arturo DeLeon-Reyes Arrest Report a/k/a CB Report (RFC-Solache/Reyes 270) appears at pp. 1, 3, 12, 13 (RFC-Solache/Reyes 3764-65, 3774-75) of the Discovery Receipts. *See* Ex. D. Moreover, Plaintiff Reyes's Arrest Report is **actually contained** in the Solache CCPDO file. *See* Ex. E (RFC-Solache/Reyes 5143).

- Gabriel Solache Arrest Report a/k/a CB Report (RFC-Solache/Reyes 271) appears at pp. 1, 3, 12, 13 (RFC-Solache/Reyes 3764-65, 3774-75) of the Discovery Receipts. *See* Ex. D. Moreover, Plaintiff Solache's Arrest Report is **actually contained** in the Solache CCPDO file. *See* Ex. E (RFC-Solache/Reyes 5142).

- Rosauro Mejia Arrest Report a/k/a CB Report (RFC-Solache/Reyes 270) appears at p. 12 (RFC-Solache/Reyes 3774) of the Discovery Receipts. *See* Ex. D. Moreover, Rosauro Mejia's Arrest Report is **actually contained** in the Solache CCPDO file. *See* Ex. E (RFC-Solache/Reyes 5141).

- LEADS message to Law Enforcement Agencies in Illinois, Indiana, Michigan and Wisconsin regarding the missing Soto children (RFC-Solache/Reyes 353) appears at p. 6 (RFC-Solache/Reyes 3768) of the Discovery Receipts. *See* Ex. D. Moreover, this LEADS message is **actually contained** in the Solache CCPDO file. *See* Ex. E (RFC-Solache/Reyes 5193, 5208, 5254, 5257, 5259).

- LEADS response regarding victim's car (RFC-Solache/Reyes 397) appears at p. 9 (RFC-Solache/Reyes 3771) of the Discovery Receipts. *See* Ex. D. Moreover, this LEADS response is also **actually contained** in the Solache CCPDO file. *See* Ex. E (RFC-Solache/Reyes 3869, 5241, 5256).

Once the seventeen pages that Plaintiffs misrepresented were withheld are eliminated, fifteen (15) pages remain for consideration. Of those fifteen (15) pages, the following five (5) pages can be eliminated because they appear in both exhibits: the Homicide Check List (RFC-Solache/Reyes 74), the pages that contain the front and backside of the photos of Jorge and Guadalupe Mejia (as well as the photos of victim Mariano Sotos) (RFC-Solache/Reyes 76-77), the

4

page that contains the photos of the victims as well as one of the non-victim Sotos family members (RFC-Solache/Reyes 78) and the page that contains the information regarding Guadalupe Mejia ("Guadalupe Note") (RFC-Solache/Reyes 210). All five (5) appear in both Plaintiffs' Ex. 3 and Ex. 10. Once the duplicative pages are eliminated, a total of ten (10) pages remain for discussion, which are each addressed below.

> II. **Plaintiffs' Representations Regarding Information Being "Exculpatory" is Nothing More than Smoke and Mirrors**

Exculpatory evidence by definition is evidence that has a reasonable probability of affecting the outcome of the trial. *United States v. Hamilton,* 107 F.3d 499, 509 (7th Cir. 1997). Impeachment evidence is defined as evidence used to undermine a witness's credibility. *United States v. Boswell,* 772 F.3d 469, 476 (7th Cir. 2014). The ten pages remaining do not contain either impeachment or exculpatory information.

> a. **The Homicide Check List is an Administrative Document that Contains No Investigative Information and is Not *Brady* Material.**

The Homicide Check List (RFC-Solache/Reyes 74) is a purely administrative document that contains no investigative information. In fact, Plaintiffs do not discuss the document in any way. Specifically, they do not argue that it contains any impeachment or exculpatory information. Despite the fact that this document is of no evidentiary value, Plaintiffs include it in both Ex. 3 and Ex. 10 in effort to create the illusion that *Brady* material was withheld from them when it was not. The Homicide Check List does not undermine the City's Motion, does not justify the *Monell* discovery sought by Plaintiffs and certainly "does not put to rest" the City's arguments as Plaintiffs claim. Dkt. 514 at 11.

> b. **The Guadalupe Note Containing Identifying Information for Witness Guadalupe Mejia Appears in Other Reports and is Not *Brady* Material.**

The Guadalupe Note is a handwritten note that provides identifying information for Guadalupe Mejia. It sets forth her name, age, date of birth, address and phone number. For context, Guadalupe Mejia was Adriana Mejia's sister-in-law. Adriana and Guadalupe were married to brothers Jorge and Rosauro Mejia. They all lived in the house on Mozart with Plaintiffs Solache and Reyes. Importantly, all of the information contained in the Guadalupe Note appears in other reports contained in the CPD, CCPDO and CCSAO files. *See* Reports attached as Ex. F. Like the Homicide Check List, Plaintiffs do not discuss the document in any way, nor do they argue that it contains any impeachment or exculpatory information. And, as with the Homicide Check List, despite the fact that this document contains information that appears in other documents and thus is of no evidentiary value, Plaintiffs include it in both Ex. 3 and Ex. 10 in effort to create the illusion that *Brady* material was withheld from them when it was not. The Guadalupe Note does not undermine the City's Motion and does not justify the *Monell* discovery sought by Plaintiffs.

### c. The Polaroid Photographs Are Not *Brady* Material Because they do Not Contain Either Exculpatory or Impeachment Evidence.

The remaining eight (8) pages contain Polaroid photographs of various witnesses. In keeping with the strategy employed throughout the Supplemental Response, Plaintiffs attach eight (8) pages that contain numerous photographs that include not only the witnesses discussed in the Supplemental Response, but include multiple photographs of the victims. Additionally, with no explanation at all, Plaintiffs include two pages (RFC-Solache/Reyes 82-83), that contain the front and backside of a photograph of Plaintiff Reyes with a sandwich in his hand while at Area 5 and a photograph of baby Maria Soto on the steps of the Church at her baptism (before her parents' murder and her and her brother's kidnapping). Again, those two pages are only included to create the illusion that *Brady* material was withheld from them when it was not.

6

Focusing now on the six pages, out of a total of thirty-two (32) pages Plaintiffs attached in their Ex. 3 and Ex. 10, that contain the Polaroid photographs of Guadalupe Mejia (Adriana's sister-in-law and Plaintiffs' housemate), Jorge Mejia (Guadalupe's husband and Plaintiffs' housemate) Rosa Aranda (victim family member) and Felicia Soto (victim family member). To establish that these four photographs constitute *Brady* material Plaintiffs have constructed an argument that is not only flawed at its foundation but then builds upon those flaws to manipulate the meaning and evidentiary value of the photographs. Once the flaws are revealed, the fallacy in Plaintiffs' argument is apparent.

First, the argument is premised on the faulty conclusion that CPD only took Polaroid photographs of persons who they considered suspects. Plaintiffs cite nothing to support this foundational proposition because they cannot. Fact discovery is closed and over 70 depositions have been taken, including the deposition of Phil Cline (the Commander of Area 5 at the time of this investigation and eventual Superintendent of Police) as well as the lead prosecutor and both Reyes and Solache's criminal defense attorneys and not a single question was asked of any witness about this foundational premise for this fanciful *Brady* theory. Moreover, this foundational proposition is further undermined by the fact that there is, in fact, a Polaroid photograph of Guadalupe Mejia in the impounded evidence from the criminal prosecutions. In fact, Plaintiff Reyes produced photographs of the original at the outset of this litigation.[2] *See* Ex. G.

Building upon this irreparably flawed foundational premise, Plaintiffs state that the fact that Guadalupe was treated as a suspect is of particular importance for Plaintiff Reyes because of Guadalupe's criminal trial testimony about a telephone call between Reyes and Adriana that she

---

[2] The impounded photograph appears to be a different pose then either of the two photographs that appear in Ex. 3, but it is clear that Guadalupe is wearing the same clothing and that all of the photographs were taken at Area 5. The fact that not all photographs were impounded does not change the fact that the impounded Polaroid photograph of a witness was taken and was produced.

testified to that Reyes denies having occurred. Yet, again, despite the importance of this theory to Plaintiffs' *Monell* theories, not a single question was asked of either the lead prosecutor or any of the defense attorneys about the importance of this evidence. Plaintiffs' failure to develop any evidence to support these fanciful theories is all the more surprising since Plaintiffs have been on notice since at least June 2019, that Defendants were in no uncertain terms challenging Plaintiffs "street files" *Brady* claim.

Plaintiffs next argue, again based upon the irreparably flawed foundation that Polaroids are only taken of suspects, that the Polaroid photograph of Rosa Aranda is also of "critical importance." Dkt. 514 at 10. Plaintiffs then illogically leap from the purported import of the Polaroid photographs to the purported "blockbuster evidence not previously known." *Id.* Specifically, Plaintiffs argue that Rosa Aranda's February 2020 deposition testimony that she recalled that Jacinta Soto told her she had made a new friend and that her apartment keys had "gone missing" shortly before the murders is "blockbuster" exculpatory evidence that would have been made known by the production of the Polaroid photograph of Rosa Aranda. This argument defies logic and collapses once scrutinized. The theory appears to go something like this: Rosa Aranda was a suspect because there is a Polaroid photograph; when she was questioned by police, "she told them everything"; in her February 2020 deposition she recalled Jacinta complaining that her apartment keys had "gone missing, and that the friend was over at the same time the keys went missing." Dkt. 514 at 10-11. Again, Plaintiffs cite no authority for the proposition that Polaroid photographs are only taken of suspects and have developed no evidence to support that proposition. Second, based on her deposition testimony that when questioned by police Rosa told them "everything she could" to help them find the perpetrators, Plaintiffs' Response implies that Rosa told police about the new friend and missing keys. However, that point is not established by the

8

cited testimony. Moreover, Rosa's testimony establishes that she did not feel intimidated by police, nor was she worried that she was being accused of any crime. *See,* Rosa Aranda's Deposition Testimony attached as Ex. H at p. 61:1-6. Thus, even if this was the "blockbuster" exculpatory evidence Plaintiffs make it out to be, there is no testimony to establish that it was information made known to police.[3] Beyond that, as with the foundational premise for this fanciful theory, Plaintiffs did not ask a single question of the trial prosecutor or any of the three criminal defense attorneys who were deposed in this case about this theory. And, every single one of these depositions took place after Rosa's February 2020 deposition.

Without much scrutiny, Plaintiffs' theory collapses. The "blockbuster" evidence is nothing of the sort and even if it had any evidentiary value the Polaroid photographs do not constitute *Brady* material that would justify the *Monell* discovery being pursued.[4]

### III. Plaintiffs' Arguments that the Police Failed to Memorialize Certain Information Does Not Support the Burden of the *Monell* Discovery Being Sought.

Plaintiffs spend a majority of their Supplemental Response arguing that Defendant Officers failed to memorialize certain information that was learned during their criminal investigation. In fact, the Supplemental Response spends more time discussing this purported evidence then it does discussing the documents purportedly not contained in the CCPDO files (the specific question this Court directed Plaintiffs to address in their Supplemental Response). Without addressing whether,

---

[3] This theory also suffers from the fallacy that the new "friend" was Adriana Mejia and somehow Adriana Mejia was able to sneak into this extremely small apartment while Mr. and Mrs. Soto slept and was somehow able to overpower both of them by herself and inflict over thirty stab wounds on Mr. Soto and over twenty stab wounds on Mrs. Soto without any of the neighbors in the apartment building hearing her. Notably, no questions were asked of the trial prosecutor or the criminal defense attorneys about this fanciful theory either.

[4] Plaintiffs' Response states that Jorge Mejia and Felicia Soto's Polaroid photographs are also "critical exculpatory and impeachment evidence," Dkt. at 9, but make NO arguments to support that proposition. Those arguments are waived. *See generally, Bonte v. U.S. Bank.,* 624 F.3d 461, 466 (7th Cir. 2010)("Failure to respond to an argument [] – as the [plaintiffs] have done here-results in waiver.")

9

in fact, the information Plaintiffs identify *should* have been memorialized, these arguments either misconstrue the purpose of the Supplemental Response or are again designed to create the illusion that *Brady* documents were created and withheld. In fact, when confronted with the same argument in the *Rodriguez* and *Bouto* matters, Magistrate Judge Cox remarked how she was "not sure how it really advances [the] argument with respect to [CCPDO] files[]" because it was "a whole different kind of allegation." *See,* September 22, 2021 Transcript of Proceedings in *Rodriguez v. Guevara, et. al.,* N.D. Ill. 18-CV-07951 and *Bouto v. Guevara, et. al.,* N.D. Ill. 19-CV-02441 (Hearing on the City's Motion) attached hereto as Ex. I at p. 10:5-12; 15:7. Specifically,

> THE COURT: … I mean, have you been able to establish in either the Bouto case or the Rodriguez case that there was a Brady violation with respect to them?
>
> MR. AINSWORTH: In, for example, in the Rodriguez case, there is material, we have a witness who told information to the officers at the scene. That information was never produced in any report to Mr. Rodriguez, and so …
>
> THE COURT: And that is in the Chicago police file?
>
> MR. AINSWORTH: It's not in the Chicago police files.
>
> THE COURT: Hmm, okay. So I'm not sure how that really advances your argument with respect to these files.
>
> MR. AINSWORTH: Well, that's information that ---
>
> THE COURT: Yeah, that shows a witness may have said something to the police that's not in the police file. Okay.

Id. at p. 10:5-16.

In short, if the information that is "missing" is not in the police files in the first instance, then it makes no difference whether it is in the other files, making the entire exercise unnecessary and not proportional to the needs of these cases.

10

## CONCLUSION

Three years of discovery and voluminous briefing and Plaintiffs cannot not rise to the occasion and answer this Court's simple and direct question. While this Court has expended a great effort to try and lessen the burden of *Monell* discovery, it continues to be a labyrinth of discovery that is being pursued without any inkling as to whether these files have any relevant information. Far from preventing the discovery, the City seeks to resolve the motions for summary judgment in order to establish what, if any, constitutional violations may have occurred in order to streamline the potential *Monell* discovery.

WHEREFORE, Defendant City of Chicago respectfully requests this Honorable Court grant its Motion for Protective Order to Prevent Undue Strain on Resources of Public entities for Speculative *Monell* Discovery and for any other relief that this Court deems just and reasonable.

Dated: October 19, 2021   Respectfully submitted,

CELIA MEZA
Corporation Counsel of the City of Chicago

By: __s/ Eileen E. Rosen_____
Eileen E. Rosen
Catherine M. Barber
Theresa Berousek Carney
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000
312.494.1001- fax
erosen@rfclaw.com
*Attorneys for Defendant City of Chicago*