UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARTURO DeLEON-REYES, <br><br> Plaintiff, <br><br> v. <br><br> REYNALDO GUEVARA, et al., <br><br> Defendants. | Case No. 18 C 1028 <br><br> Magistrate Judge Sunil R. Harjani |
| GABRIEL SOLACHE, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF CHICAGO, et al., <br><br> Defendants. | Case No. 18 C 2312 <br><br> Magistrate Judge Sunil R. Harjani |

**ORDER**

Before the Court is Defendant City of Chicago's motion for a protective order "to prevent undue strain of public entities for speculative *Monell* discovery" [Reyes 503, Solache 355][1], which has been fully briefed. Doc. [503, 509, 513, 514, 523, 524, 532, 538]. The Court's decision follows.

First, Defendant's motion is procedurally improper. To recap, Plaintiff served a subpoena for criminal defense files from the Cook County Public Defender's Office (CCPD), and that motion was extensively briefed and argued, and granted in part. Doc. [470]. Defendant served a subpoena for corresponding prosecutor files from the Cook County State's Attorney's Office (CCSAO), and that was also fully briefed, argued, and granted in part. Doc. [488]. The issues raised in Defendant's motion have already been addressed, and Defendant had every opportunity to and did brief and argue these issues to the Court. Thus, Defendant's motion for a protective order is construed as a motion for reconsideration because it seeks to halt the production of documents that this Court had previously ordered. In that respect, "motions for reconsideration are viewed with disfavor, and they are granted only in the rarest of circumstances and where there is a compelling reason." *United States v. Givens*, No. 12 CR 421-1, 2016 WL 6892868, at *2 (N.D. Ill. Nov. 23, 2016) (internal quotations omitted). Indeed, "[m]otions for reconsideration serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008) (internal quotation marks

---

[1] The Court will only refer to the docket entries in *Reyes* going forward.

omitted). Courts have repeatedly admonished litigants that a "motion to reconsider is not at the disposal of parties who want to 'rehash' old arguments that previously were made and rejected, or to raise new arguments or evidence that could have been previously offered." *S.E.C. v. Lipson*, 46 F.Supp.2d 758, 766 (N.D. Ill. 1998) (citation and quotation marks omitted). In short, "[a] party moving for reconsideration bears a heavy burden." *Caine v. Burge*, 897 F.Supp.2d 714, 716–17 (N.D. Ill. 2012). Defendant here advances no new arguments for the Court to consider. Rather, Defendant has re-raised issues of burden and relevancy again in this motion, which the Court has already addressed and ruled upon. The Court has reduced the number of files produced from the CCPD and the CCSAO to approximately one hundred files from each entity, and shifted the burden of work and costs to the parties and away from the third-parties. Doc. [471, 488]. In short, Defendant's motion was better suited for the other *Guevara* cases identified in the case-caption of its motion as the matter had not yet been fully addressed in those cases. In this case, Defendant's motion is really a reconsideration of the Court's prior decisions, and under the heightened standard for reconsideration motions, the motion can easily be denied.

Second, Defendant's motion is essentially moot at this point. While the matter was filed globally in all *Guevara* cases, the *Reyes* and *Solache* cases are much further along in *Monell* discovery. The CCPD has completed its production of files pursuant to Plaintiffs' subpoena. Doc. [543]. The CCSAO production is on-going, namely file scanning and privilege review, and will be completed in January 2022. Doc. [547]. At this time, given the completed production from the CCPD, the Court would only be considering halting production on the CCSAO subpoena – a subpoena that was served by Defendant, the movant of this very motion to stop *Monell* discovery. The Court fairly assumes that Defendant would vigorously object if it did not receive files from the CCSAO in order to counter Plaintiffs' conclusions gleaned from reviewing the CCPD files that have already been produced. Thus, Defendant's motion is moot for this reason.

Third, Defendant's motion cautions that an excessive production of files from the CCSAO and the CCPD will result in all *Guevara* cases, but that has not occurred. While not necessarily halting all *Monell* discovery from the CCSAO and CCPD, other judges have relied upon the production ordered in *Reyes* and *Solache* and determined that the documents produced here can satisfy the needs of *Monell* discovery in those cases. *See Johnson v. Guevara*, 20 CV 4156 (N.D. Ill.), Doc. [129, 130]; *Sierra v. Guevara*, 18 CV 3029 (N.D. Ill.), Doc. [346]. Thus, the files ordered by this Court have now taken on additional importance, while also conserving the resources of the two third-party public entities that are the focus of Defendant's motion. Furthermore, other judges have denied production based on individualized circumstances in their cases. *Iglesias v. Guevara*, 19 CV 6508, Doc. [167]; *Bouto v. Guevara*, 19 CV 2411, Doc. [279]; *Rodriguez v. Guevara*, 18 CV 7951, Doc. [170]. Thus, the parade of horribles anticipated by Defendant in its motion has not come to fruition, and the purported thousands of files that Defendant expected would be produced among all *Guevara* cases has not occurred, which makes the burden on the third-party entities much less than originally envisioned.

Fourth, while styled as a protective order, Defendant really seeks to quash the CCPD subpoena in the *Reyes* and *Solache* cases, which in turn will obviate the need for the CCSAO subpoena. Defendant has no standing to raise issues of burden as a result of these third-party subpoenas. *See Iglesias v. Guevara*, 19 CV 6508, Doc. [167, p. 3]. Generally, a party will not have standing to quash a subpoena to a non-party. *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D.

181, 187 (N.D. Ill. 2013). However, a party may have standing "if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). Examples of such legitimate interests have included the assertion of privilege, interference with business relationships, and the production of private information. *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 16-CV-4161, 2017 WL 5478297, at *3 (N.D. Ill. Nov. 15, 2017) (citation omitted). The CCPD and the CCSAO have raised their own burden concerns, and those have been fully briefed and addressed in detail by this Court. Doc. [471, 488]. Defendant has no legitimate interests here and lacks standing. True, courts have recognized that protective orders under Rule 26(c) can provide a basis to parties who lack standing under Rule 45(d) motions to quash. *Allstate*, 2017 WL 5478297, at *3. But the nature of Defendant's motion is primarily based on burdens as a result of third-party subpoenas, and thus it would be an end-run around the standing requirements to ignore that reality. And, rather ironically, Defendant is partly responsible for the burden it is so concerned about by issuing its *own* subpoena for more than a hundred CCSAO files. Contrary to Defendant's position, this was not the only option available. Defendant can still independently challenge the methodology and conclusions reached from Plaintiffs' review of the CCPD files even without the CCSAO files. For example, Defendant can and will likely contend that the CCPD files record-keeping is so poor that a missing document from a file cannot permit the inference that a document was never produced to criminal defense counsel. Thus, while it is Defendant's position that it cannot defeat Plaintiff's argument without the CCSAO files, that is really a strategic choice it has made rather than an unshakable truth.

Finally, the hotly disputed issue about whether any *Brady* material was suppressed in this case is an issue that will be decided by the district judge in the anticipated summary judgment motion, and not here. Plaintiffs have asserted that four poloroid photos of purported alternative suspects were contained in the CPD homicide files but not in the CCPD file in the underlying case; that those photographs are *Brady* material, and that they were suppressed and not produced to defense counsel in the criminal case. Doc. [532, p. 6]. Defendant vigorously contests whether these poloroid photos are of alternative suspects, whether they are *Brady* material, and whether they even have any evidentiary value. Doc. [523, p. 8]. These are all issues for dispositive motions and/or trial, and do not lead to a complete prohibition on *Monell* discovery, as Defendant contends. This is not a situation where Plaintiffs seeks discovery that has no relevance. Rather, the theory has been alleged in its complaint, and facts have been provided to the Court that sufficiently justifies Plaintiffs continuing to pursue *Monell* discovery. *See Johnson v. Guevara*, 20 CV 4156 , Doc. [130, p. 2] (court held that potential exculpatory police report that was not in the CCSAO and CCPD files was sufficient to allow *Monell* discovery to proceed). Ultimately, one party will succeed on this issue, and it may be that Defendant is correct and it wins the day on summary judgment on the individual *Brady* claim and subsequently the *Monell* claim. But shutting down *Monell* discovery now based on a contested evidentiary issue, as Defendant seeks, will essentially be a finding on the merits of the claim – a wholly inappropriate decision to make in discovery. And as this Court has already stated, Defendant lost its bifurcation motion, and the consequences of that decision is to complete individual and *Monell* discovery before proceeding to dispositive motions.

Accordingly, Defendant's motion for a protective order is denied.

**SO ORDERED.**

Dated: December 8, 2021

Sunil R. Harjani
United States Magistrate Judge