IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | Case No. 18 C 1028 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | November 22, 2021 |
| | ) | Chicago, Illinois |
| | ) | 9:35 a.m |
| Defendants. | ) | Status Hearing |
| | | |
| GABRIEL SOLACHE, | ) | Case No. 18 C 2312 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

TRANSCRIPT OF PROCEEDINGS - BEFORE THE HONORABLE
MAGISTRATE JUDGE SUNIL R. HARJANI

APPEARANCES:

| | |
|---|---|
| For the Plaintiff DeLeon-Reyes: | LOEVY & LOEVY<br>311 North Aberdeen Street<br>3rd Floor<br>Chicago, Illinois  60607<br>BY:  MR. ANAND SWAMINATHAN |
| For the Plaintiff Solache: | PEOPLES LAW OFFICE<br>1180 North Milwaukee Avenue<br>Suite 3000<br>Chicago, Illinois  60642<br>BY:  MS. JANIS M. SUSLER |

TRACEY DANA McCULLOUGH, CSR, RPR
Official Court Reporter
219 South Dearborn Street
Room 1232
Chicago, Illinois  60604
(312) 435-5570

APPEARANCES CONTINUED:

For the Defendant          ROCK FUSCO & CONNELLY LLC
City of Chicago:           321 North Clark Street
                           Suite 2200
                           Chicago, Illinois  60654
                           BY:  MS. EILEEN E. ROSEN

For various                THE SOTOS LAW FIRM, P.C.
Individual Officer         141 West Jackson Boulevard
Defendants:                Suite 1240A
                           Chicago, Illinois  60604
                           BY:  MR. JOSH M. ENGQUIST

For the Defendant          LEINENWEBER BARONE & DAFFADA LLC
Guevara:                   120 North LaSalle Street
                           Suite 2000
                           Chicago, Illinois  60602
                           BY:  MS. MEGAN K. McGRATH

For Defendants Brualdi,    HINSHAW & CULBERTSON LLP
Varga, O'Malley,           151 North Franklin Street
and Wehrle:                Suite 2500
                           Chicago, Illinois  60606
                           BY:  MR. MICHAEL C. STEPHENSON

For the Defendant          COOK COUNTY STATE'S ATTORNEY'S OFFICE
Cook County:               500 Richard J. Daley Center
                           Chicago, Illinois  60602
                           BY:  MR. DAVID A. ADELMAN

For the Defendant          REITER BURNS LLP
Navarro:                   311 South Wacker Drive
                           Suite 5200
                           Chicago, Illinois  60606
                           BY:  MR. DANIEL J. BURNS

For Respondent             COOK COUNTY STATE'S ATTORNEY'S OFFICE
Cook County State's        50 West Washington Street
Attorney's Office:         Room 500
                           Chicago, Illinois  60602
                           BY:  MR. PAUL FANGMAN

For Respondent             LAW OFFICE OF THE COOK COUNTY
Cook County Public         PUBLIC DEFENDER
Defendant:                 69 West Washington Street
                           16th Floor
                           Chicago, Illinois  60602
                           BY:  MS. KAREN J. DIMOND

(Proceedings via video teleconference on the record.)

THE CLERK:  18 C 1028, DeLeon-Reyes v. Guevara, and 18 CV 2312, Solache v. City of Chicago.

THE COURT:  Okay.  Good morning everyone.  State your appearances starting with the plaintiff.

MR. SWAMINATHAN:  Good morning, Your Honor.  Anand Swaminathan for plaintiff Arturo DeLeon-Reyes.

MS. SUSLER:  Good morning, Judge.  Jan Susler for the plaintiff Gabriel Solache.

MS. ROSEN:  Good morning, Your Honor.  Eileen Rosen on behalf of defendant City of Chicago.

MR. ENGQUIST:  Good morning, Your Honor.  Josh Engquist on behalf of the individual officer defendants with the exception of Reynaldo Guevara.

MS. McGRATH:  Megan McGrath on behalf of Reynaldo Guevara.

MR. STEPHENSON:  Good morning, Judge.  Mike Stephenson on behalf of defendants Brualdi, Varga, O'Malley, and Wehrle.

MR. ADELMAN:  Good morning, Your Honor.  Ken Adelman on behalf of the defendant Cook County.

MR. BURNS:  Good morning, Your Honor.  Daniel Burns on behalf of defendant David Navarro.

MR. FANGMAN:  Good morning, Your Honor.  Assistant State's Attorney on behalf of subpoena respondent, the Cook

County State's Attorney's Office.

MS. DIMOND: Good morning, Your Honor. Karen Dimond from the Public Defender's Office appearing as a subpoena respondent.

THE COURT: Okay. I -- actually let me back up. Everyone go on mute, and then unmute yourself when it's your turn to speak, and hopefully that will help out our recording. I think it did.

I have kept up with your status reports, and so I'm up to date with what is happening. There are a few things I wanted to discuss with you this morning. And, of course, the pending motion to extend time to respond to plaintiffs' settlement demand letter is granted without objection. I wanted to follow up about first the Public Defender subpoena. And I saw the report that it is completed, and I just wanted to double check if that -- Miss Dimond, you are done, or are there any pending issues that are still getting sorted out?

MS. DIMOND: Well, it doesn't appear to me that there are any further issues that needed to be sorted out. I have not heard anything from the parties since I produced the documents. So it appears to me there are no more pending issues.

THE COURT: Okay. From plaintiff. Agreed?

MR. SWAMINATHAN: Agreed. You know, there was an issue of the total number of files that were obtained were less

than the total of the statistical sample of 132. But at this point we've gotten the files that the PD has, and it is what it is. We'll go forward from there.

THE COURT: Miss Rosen, anything to add?

MS. ROSEN: No. There is the discrepancy. There were some files that seemed to have been the wrong files of plaintiff I guess, and the PD had worked that out. It's not -- it's not the City's issue. So as long as the plaintiffs are satisfied, the City will work with the files that they received.

THE COURT: Okay. So, Miss Dimond, I thank you for your participation in these proceedings and the hard work you've put in to get this done. I know it certainly wasn't by choice, but nevertheless, I appreciate the work that you did on this (inaudible) issue. And you're free to log off if you want.

MS. DIMOND: Thank you very much, Your Honor. I will do that then. Thank you.

THE COURT: Okay. Thank you. With respect to the State's Attorney's office subpoena, I note the production, but I -- there were a number of things. I'd like to know exactly where we are in the process.

MS. ROSEN: Your Honor, I had a call with the State's Attorney's office last week. They have pulled all of the files and have sent them for scanning to their vendor. They are

going to be getting me the proposals of the costs for the scanning and the review, and the privilege review and the redactions. I think I'm supposed to get that today just so that the City can, can sign off on the costs. So we've been talking. I don't foresee an issue, but I'm waiting for that. But it's underway, and I don't expect any issues.

THE COURT: Okay. I'm going to defer to the State's Attorney's office, but, Miss Rosen, are we on schedule, or are we running behind?

MS. ROSEN: Well, I, I don't know how to answer that question. The files are being scanned, and then the scanning I don't know where they are precisely in the scanning. I know there was a two-week delay on the CCPD end. I don't know if we're going to need those extra two weeks on the back end yet or not. I'm hoping not, but I think we need to get further along in the process to see how long it's going to take them to do the scan -- complete the scanning and the privilege review.

THE COURT: What's the two-week delay on the PD? Because I thought they hit their October 15th mark that we had sent out.

MS. ROSEN: No, there was an extension. So the schedule -- the original schedule for the CCSAO production was based on the earlier date. And then by agreement of the parties we moved the PD date. We didn't move the CCSAO date at that point because we were hopeful that we can -- there was

enough time built in between the two events.  But there is that two weeks -- the two weeks difference.  But like I said, I'm hoping we won't need it, but ...

THE COURT:  Okay.  I remember now.

MR. FANGMAN:  Your Honor.

THE COURT:  Go ahead, Mr. Fangman.

MR. FANGMAN:  Good morning, Your Honor.  Assistant State's Attorney Paul Fangman.  And I am on the call because of the State's Attorney subpoena, so I can provide a little bit of information as well.  We did meet with Miss Rosen last week to provide a little bit of a status report.  We have a list of 95 files that have been requested.  We have received a substantial portion of those, but not all of them.  We're still looking for some small number of them.  We have sent everything we've received from our file room to our outside scanning agency, and they have begun scanning.  I believe that's a firm called (inaudible).

The second step after they're finished with scanning is, of course, to send it to a firm called Epic for redaction. So we'll know a little bit more about the scheduling in the next week or so.  And I'm not sure what the deadline is, but as the process gets going, as Miss Rosen said, we'll know a little bit more.

THE COURT:  Okay.  Great.  So I think we know this, Counsel, although Miss Scheller's been on the previous calls

from what I recall.  We do have a, a deadline of January 15th to get things done.  And while I recognize that it might seem like a tight deadline, I think the big picture is discovery has been going on for a number of years now.  So if things weren't on a deadline, we'd probably be looking at six years.  And we're trying really hard to meet this deadline so that the expert discovery schedule won't be late appropriately once these files are produced.

So the point being here that is a date that we need to meet.  And it is, you know, no more than a month and a half away, although I understand the holidays are coming up.  So I'd like to know -- to keep this on track, I'd like to know where things stand more specifically.  So I'm going to ask you along with Miss Rosen to file a joint status report and provide a little bit more information so we can avoid the need for another hearing like this.  How is Thursday (inaudible) December -- December 3rd?

MR. FANGMAN:  Yes, Your Honor.

THE COURT:  Okay.  So we'll do December 3rd for a status report with respect to the State's Attorney subpoena production.  Okay.  Anything else you want to address on that issue?

MR. FANGMAN:  Nothing, Your Honor.

MS. ROSEN:  No, Judge.

THE COURT:  Okay.  I know your (inaudible) schedule

along with the pending Sussman and Solache deps.  If you need to talk about them, let me know.  But if you don't, I wanted to talk about expert discovery.  We have that period of time from January through about June I believe to get expert discovery done.  I recognize -- I know there's a process of what you're doing with it.  Let me start with the plaintiff.  Could you give me a full review of what you -- the full plan is you have for expert discovery.  So how many experts, what topics, and anything else you see coming down the pike.

MR. SWAMINATHAN:  Yes.  So, so we are obviously planning to have our expert reports disclosed by then, I believe it's the January 15th date.  We are looking at an individual practices expert -- excuse me, a police practices expert.  We're looking at a -- there will be an expert on the discrete files related to -- and the overall nondisclosure related to Brady.  There will be an expert on the failure to discipline and supervise theories related to the CR files. There will be an expert related to coerced confessions, and call it the degree of, of police misconduct and coerced confessions in the City of Chicago.  Those are all Monell topics.

There will be a DNA expert, who I think will have a very limited report related to the underlying DNA evidence in this case.  And there may or may not be a statistical expert. We haven't resolved that question yet.

THE COURT: So a statistical expert with respect to what?

MR. SWAMINATHAN: A statistical expert related to the underlying files -- what Monell related files are there. Whether that's a failure to discipline and supervise theories based on CRs or the nondisclosure of Brady theories involving the (inaudible).

THE COURT: Okay. I'll try and make sense of this. Isn't that expert the same as sort of the expert Brady issue, which is, isn't the whole point of the file production is do that statistical analysis? So what am I missing here?

MR. SWAMINATHAN: It really consists of two experts. And the way we've done this historically is it's been just to the extent that a statistical expert has been needed, and we haven't always needed one. There's been a statistical expert who talks about the overall sample, how it was obtained, in what ways it's useful or not useful. And then separately there's an expert who talks about the actual Brady nondisclosure theories who comes from -- they usually -- historically it has come from somebody who has a police practices background involving policy making, involving, you know, these types of policies related to Brady disclosures and so on.

So it's really a, a police practices expert of a very specific type who weighs in on the types of policies that you

need to have to make sure that you are partaking in the Brady disclosures properly. And is conducting an analysis of the underlying files to offer opinions about what they're seeing in terms of lapses in the policies and the problems therewith.

THE COURT: And that's using the Monell related files, not just the individual files?

MR. SWAMINATHAN: That's correct. They'll look at both because they will be (inaudible) more susceptible, and obviously, but yes, very much. That's the expert who is really -- the result of their work is the ultimate (inaudible).

THE COURT: I saw the transcript of a hearing before Judge Ellis. So my question for you on that is, are you planning on including the Rivera/Fields files in this analysis?

MR. SWAMINATHAN: Yes. So the Rivera and Fields files, the analysis that's been done in those cases, we are intending to rely on that. It is, it is our -- with regard to the actual homicide files themselves, we have now had them being made available to us, I believe both in Ellis and Sierra. In our view the underlying -- there has -- there's a whole lot of publicly available information with regard to Rivera and Fields. We will rely on that publicly available information in supporting our -- and bolstering the opinions that are being given with regard to the Reyes/Solache files in the case.

The underlying homicide files themselves in the majority of cases have not been -- are not publicly available.

So I can't use the Rivera underlying homicide file for this case, for example. Judge Ellis and Judge Weisman have now -- have ordered the parties essentially to make those records available for that purpose in those cases. I think our view is that ideally we would like to have those underlying homicide files just declared available for this case as they're being declared available for other cases. But ultimately we're prepared to rely on the set of files that already exists including the Rivera and Fields files.

THE COURT: All right. Let me stay with that for a moment. Miss Rosen, what's your position on that?

MS. ROSEN: On the Rivera and Fields files?

THE COURT: Yes.

MS. ROSEN: Yes. So, Judge, this is the first that we're even hearing about the Rivera and Fields files being used --

THE COURT: That's what I thought.

MS. ROSEN: -- in this case. So it kind of changes how we've been analyzing this case and how to deal with that. So we would have an objection to using Rivera and Fields. We've been having these discussions for months and months and months, and it's never been -- it's never been brought up.

THE COURT: Which is why I like to bring things up well before the deadline starts. My question to you there, Miss Rosen, is I'm trying to theorize what to do about it,

which is in theory we could brief it now. But also this could really be an issue for purposes of admissibility, which is people rely on things and the expert opinions and you have responses to it. And ultimately things get admitted or not admitted.

So there's sort of two ways to proceed. I want to hear your thoughts on which way you want to proceed. We can start with plaintiff as to how you want to go about it. Because if you are going to use that and there is an objection, we can have a plan in place to go ahead and deal with it.

MR. SWAMINATHAN: Yes. So first I would suggest that we haven't said that we should have -- rely on the Fields/Rivera files along with the Reyes/Solache files in this case. I believe in the past we had submitted on this issue and in conversations we've had with opposing counsel. So we've always --

THE COURT: Let me tell you that it was never part of my -- in any -- everything that I have read, and I think I read everything closely, I remember that coming out. Particularly it only really occurred to me when I read Judge Ellis' decision. So I'm not sure if it was flagged, if you will, at a level to bring it to someone's front burner. But having said that, let's deal with it now. Go ahead.

MR. SWAMINATHAN: So, so -- yes. So, so our view is -- I mean, I think Your Honor is correct. We can

potentially resolve -- it really is a question of what is the admissibility of those cases. You know, I think what opposing counsel is going to say is what is the relevance of the 1985 to 1991 time period of Rivera, or the time periods in Fields. And those kinds of questions about the relevance of those time periods to the analysis to this case and what they say about the policies and practices, I think as Your Honor said, reasonable debates for maybe summary judgment, certainly for motions in limine and for admissibility at trial.

But, but in terms of an analysis now, the documents are there. They're available. They exist. The parties can use whatever sets of files are being produced across these cases and declare what they want. And then people can ask whatever, you know, remedies they want down the road for what they think is appropriate. But for our view, yes, Your Honor is correct, this isn't really an issue that has to be resolved now. There's no work to be done other than just, you know, using the files and like either side may choose to use them and, and going to work.

I mean, it seems to me it's going -- actually they have all of the Rivera and Fields State's Attorney files, which they have long argued prove that, in fact, everything is getting to the State's Attorney. I would imagine they'd want to say, look, there's a set of documents that show, in fact, we're turning things over. So I think it really is a procedure

for down the road.

THE COURT: Okay. Miss Rosen, I admit you're just hearing about this. You can respond now. I think -- frankly I think you should wait and talk to the plaintiffs's counsel about it. And then if you want to do something about it, file a motion. That's probably the best way, and I will take it under -- I'll look at it and decide which is the best course, which is is it something you decide now or does that come later. But go ahead if you want to add anything.

MS. ROSEN: Yes. So the only thing I guess that this is the first that it's been raised in this case in this way. There's never been a -- this discussion. It's going to change the expert opinions, right. It's going to change -- what I'm imagining -- well, there's two things. First, is there a request to use all the underlying files? That's not clear to me. Or are they simply going to be relying on the publicly available materials from the other two cases?

If there's a request to use all the underlying files in this case, then that quite naturally means additional review both on my -- on the City Council's end in the first instance and on its experts in the, in the second instance, right. It's going to impact our expert disclosures. But like I said, it's not clear from what Mr. Swaminathan said whether or not they're just going to use the publicly available materials, which I interpret to mean the evidence that was introduced at trial in

Fields and Rivera and the expert opinions that were testified to in Rivera and Fields. That's a smaller sort of subset universe to deal with. If it's all the files that were employed in the other two cases, then it's different.

I suppose the thing that makes the most sense is to figure that out and then decide whether it's best to fight the fight now or on the back end. I'm just concerned that it's going to impact -- it's going to, it's going to impact the City's ability to disclose experts in the time frame that was set up, because those schedules and that -- what we said to Judge Seeger on that front did not contemplate Rivera and Fields.

THE COURT: Well, let ask you before I turn the podium over. Isn't the expert analysis more or less done? Meaning regardless of what action the plaintiffs take, wasn't all that work done, and it really is just a -- you know add-on, if you will, to what you're doing now?

MS. ROSEN: Maybe or maybe not. I mean, I don't know if plaintiff's going to -- you know, they're going to do it again, right. So where they found -- and sure, they prevailed, but I'm sure they also found weakness. I'm sure they're going to double down here now that -- I mean, we all do it, right. We figure out what worked and what didn't work, and we're going to try and do it better. So that's what I'm saying is that it's just not -- we have not in this case, you know, spent the

time -- first of all, I wasn't involved in Fields, so I have zero familiarity with the Fields' files. I was involved in Rivera, but that was five years ago, and, you know, I don't keep it all in my brain forever.

So, so that's -- those are the only issues I'm raising now. I, I don't know. As I said, it's not clear to me -- it's, it's much easier to deal with if we're simply -- if plaintiff is simply proposing relying on what he's calling -- or what they're calling the publicly available material.

THE COURT: So plaintiff go ahead. Mr. Swaminathan.

MR. SWAMINATHAN: Yes. So, so what we're -- what we're talking about is exactly I think what Your Honor is envisioning, which is all the analyses done by plaintiff's experts of those underlying Fields files and underlying Rivera files and then all of the analysis done by the City's expert of those same files, those State's Attorney files, we would not be conducting any fresh rounds of re-reviews of the Fields and Rivera files. That work has been done ad nauseam by the parties for trial.

What we would be doing is saying here are the types of conclusions that came out of those files. And to the extent, you know, the documents that became part of the public record from the underlying homicide files, so, in other words, the experts all said in publicly available expert reports now, here are the files where I see problems. Here are specific

examples of material (inaudible), et cetera, et cetera.  And here's my percentage.  90 percent of the time certain things weren't in the files, et cetera.  All of that is publicly available and can be used.

The only piece that is not that would be useful to us is to be able to say, look, we identified let's say 10 cases in which there were specific documents that weren't turned over to the criminal defendant and, in fact, the State's Attorney.  Here are those documents.  Now, maybe 50 percent of those individual documents, notes, or reports we showed in front of the jury.  They became admitted exhibits in the trial, and they became publicly available that way.  Approximately 50 percent or so of those documents that have been identified specifically by the experts have not been put into the public record.

So we would -- the only thing I think we're really talking about here is no new analysis, but the documents that were put into play in those expert reports that are referenced, those are documents we want to be able to pull out and wave around.  Maybe we chose in one trial to wave one document.  At this trial maybe we want to wave a different document.  But that's really all we're talking about.  Not new analysis, not new file comparison, et cetera, et cetera.

THE COURT:  Okay.  All right.  So I'll put a pause here.  The two of you obviously needed to meet and confer on this, and I don't want this to derail what we're doing here.

So I'm going to ask you to put a plan in place for me, which is there are a couple ways to do this, right. One is we brief this now. Two, we brief this after the plaintiff's expert disclosure is made so you can see what's going on. Three, we defer all this and, you know, better for me than -- this is the best option for me is we dump this on Judge Seeger and not me, right.

So, but I'd like you to tell me what you want me to do. Okay. So I'll ask you to meet and confer on this. And then for your purposes get me a status report on your decision on this by December 10th. Okay. And we'll look at that and take it from there based on what you say.

Okay. Another question, are you looking at an individual damages expert for either Mr. Reyes or Mr. Solache?

MR. SWAMINATHAN: A separate damages expert for each of them individually. For Mr. Reyes we are not, we are not intending to call a damages expert exclusively.

THE COURT: Okay. Miss Susler.

MS. SUSLER: Yes, Judge. We do have a psychiatrist who has been deposed, and we are planning to call him.

THE COURT: Okay. But are you going to do an expert disclosure on him, or is that a treating physician?

MS. SUSLER: Well, actually, yes. Thank you for correcting me. He is a treater. He's not an expert, so yes. And I've already done that disclosure.

THE COURT: Okay. Okay. Got it. Okay. That was my list. Anything else that we need to raise today?

MR. SWAMINATHAN: Nothing from plaintiff, Your Honor. I think the 30 (b) 6 that you -- I think you asked about it. We addressed it in the status report, so I think the result's there. I appreciate counsel's efforts with us going back and forth in getting those. Other than that, I don't have anything else.

MS. ROSEN: Nothing from the City, Judge.

THE COURT: Okay. Very good. Then I will put a status on the books. You'll see it on the minute entry. If that doesn't work, please let my courtroom deputy know. But I'll probably put it in for somewhere after the 23rd of January when everybody frees up a little bit more. You're pretty busy. I know you have your pending, you know, 12/31 deadline. So I'd rather you focus on that. So with that, everyone have a great Thanksgiving and Happy Holidays.

MS. ROSEN: Same to you, Judge. Thank you.

MR. SWAMINATHAN: Thank you, Judge.

THE CLERK: Court's in recess.

(End of proceedings.)

CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true, correct and complete transcript of the proceedings had at the hearing of the aforementioned cause on the day and date hereof.


/s/TRACEY D. McCULLOUGH                         February 9, 2022

Official Court Reporter                              Date
United States District Court
Northern District of Illinois
Eastern Division