**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 1028 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | Magistrate Sunil R. Harjani |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 2312 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | Magistrate Sunil R. Harjani |
| Defendants. | ) | |
| | ) | |

# EXHIBIT A

**Plaintiffs' Rule 26(a)(2) Disclosures**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTIRCT OF ILLINIOS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO De LEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | Magistrate Judge Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | | |
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | Magistrate Judge Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFFS' A M E N D E D SUPPLEMENTAL RULE 26(A)(2) DISCLOSURES**

NOW COME Plaintiffs, ARTURO De LEON-REYES and GABRIEL SOLACHE, by their respective attorneys, and hereby provide the following supplemental disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) and pursuant to the Court's orders in *Reyes* Dkt. 581; *Solache* Dkt. 427.

**WITNESSES DESIGNATED UNDER RULE 26(A)(2)(B)**

1.      Dr. Richard Leo may be called as a retained expert to present evidence at trial under Federal Rules of Evidence 702, 703, or 705, consistent with the signed report attached to this disclosure. His CV, list of publications, rate of compensation, and past testimony are included in this disclosure.

1

2.      Thomas J. Tiderington may be called as a retained expert to present evidence at trial under Federal Rules of Evidence 702, 703, or 705, consistent with the signed report attached to this disclosure. His CV, list of publications, rate of compensation, and past testimony are included in this disclosure.

3.      Dr. Karl Reich may be called as a retained expert to present evidence at trial under Federal Rules of Evidence 702, 703, or 705, consistent with the signed report attached to this disclosure. His CV, list of publications, rate of compensation, and past testimony are included in this disclosure.

4.      Anthony W. Finnell may be called as a retained expert to present evidence at trial under Federal Rules of Evidence 702, 703, or 705. Pursuant to an agreement among the parties, Mr. Finnell's signed report, CV, list of publications, rate of compensation, and past testimony will be disclosed on or before January 18, 2022.

### WITNESSES DESIGNATED UNDER RULE 26(A)(2)(C)

5.      **Bernard Sarley, Viola Armijo Rouse, Naomi Bank, and Tom Verdun** are attorneys who represented Plaintiffs during pretrial and trial proceedings, and may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with their depositions given in this case, their case files, and other documents in their representation of Plaintiffs, disclosed in this case, including but not limited to:

- Their representation of Plaintiffs;
- The documents and materials they received from the Chicago Police Department and the Cook County State's Attorney's Office;
- The exculpatory and impeachment value of evidence presented in Plaintiffs' criminal cases or withheld during Plaintiffs' criminal case;
- How the defense would have differed had they known of the exculpatory and impeaching evidence;
- And their observations as to the nature, extent and duration of Plaintiffs' injuries.

2

**Bernard Sarley** may testify that on April 6, 1998, he was an assistant public defender in the Cook County Public Defender's Office, working with the Murder Task Force, and assigned to represent Messrs Reyes and Solache at their initial appearance and bond hearing in Branch 66. Although not exhaustive, his testimony may include all of the above and the following:

- His typical practices and procedures;
- His defense strategies;
- Documentation of evidence of physical injuries on clients;

Mr. Sarley may further testify that during his representation of Plaintiffs, he believes he followed his typical practice of going to the lockup to meet briefly with his clients before court; in the few minutes available, he did most of the talking, typically gave them information, including about the charges, what would happen in court, and the bond issue, and asked if they had any injuries. If the client had visible injuries or showed him injuries, he would ask the judge to sign an order allowing a Public Defender investigator to enter the lockup to photograph the injuries, which was, in his opinion, making a record that he observed injuries, and which would document the injuries before they dissipated. He would not, at the time, conduct an investigation related to the injuries or discuss defense strategy; that would be taken up by the attorney assigned to the case. If the client subsequently alleged something related to the injuries, the photos would serve as corroborative evidence. If the client reported abuse by the police, he would not raise that in court; he would just state that there are injuries he wanted to photograph. He would typically phone his office to have an investigator come to the lockup; he may or may not be present when the photos were taken. He would also typically complete a form for the initial file, on which he would document injuries. The photos were to be given to the person who assigns cases and placed into the initial file. He has no reason to doubt that on April 6, 1998, he followed his typical practice with Messrs. Solache and Reyes, based on the transcript of the initial appearance

3

and bond hearing at Solache 7808-7817, and he has no reason to doubt the accuracy of the transcript in its documentation of what transpired in open court when the Reyes and Solache case was called. He may testify that the fact that he asked for photos of Solache means that he saw injuries. It is possible that Reyes told him he was injured by police, but he did not request photos of Reyes. He may testify that if he had been called to testify at the motions to suppress, trials or post-conviction hearings, he would have testified that he saw Solache's injuries in the Branch 66 lockup, and that he obtained a court order for a Public Defender investigator to photograph his injuries.

**Tom Verdun** may testify that he was an attorney with the Cook County Public Defender's Office from 1978-2003 who represented Arturo Reyes during his criminal proceedings. Although not exhaustive, his testimony may include all of the above and the following:

- His continuing belief in Arturo Reyes's innocence;
- His representation of Mr. Reyes during the criminal proceedings;
- His belief that Mr. Reyes's constitutional rights had been violated;
- His belief that Mr. Reyes's rights under international law were violated;
- His motions filed during his representation of Mr. Reyes;
- His efforts to obtain all discovery from the Chicago Police Department and what was and was not disclosed during discovery;
- What was and was not disclosed during discovery and through subpoenas;
- His trial preparation and efforts in defense of Mr. Reyes;
- His memory of the facts of the case and its procedural history;
- His knowledge, or lack thereof, of Detective Guevara's pattern of misconduct;
- His investigative efforts into the underlying crimes Mr. Reyes was charged with;
- How his representation would have differed had he known of the exculpatory and impeaching evidence.
- His investigative efforts regarding mitigation at sentencing.

In addition, Mr. Verdun may testify that he filed various motions - motions for discovery, to quash the arrest, and to suppress evidence and statements based on coercion and international treaties, and motions related to the death penalty, among others. He may testify that he always

4

believed Mr. Reyes was innocent for several reasons, including the fact that Mr. Reyes always maintained his innocence, Mr. Reyes's demeanor, his belief that Detective Guevara had coerced Mr. Reyes to falsely sign a statement, that the evidence did not implicate Mr. Reyes, and that Mr. Verdun's extensive experience working in the PD's Office and representing defendants in murder trials led him to believe that Mr. Reyes was indeed telling the truth about his innocence. He may also testify that he believed there was a violation of the Vienna Convention, and that Mr. Reyes was not notified without delay of his rights to contact the Mexican Consulate, under the Vienna Convention. Mr. Verdun may testify about the exculpatory value of evidence withheld from him during his defense of Mr. Reyes. Mr. Verdun may testify that he believed at the time of trial that Detective Guevara had coerced Mr. Reyes's false confession and that while Detective Guevara had a reputation amongst lawyers in the criminal defense community, he did not learn about Det. Guevara's pattern of misconduct until after his representation of Mr. Reyes had ended. Mr. Verdun may also testify regarding the abuse that Mr. Reyes suffered at the hands of Chicago Police officers and how he was coerced and tortured until he signed a false confession, particularly the abuse inflicted by Detective Guevara.

**Viola Rouse and Naomi Bank** may testify that they were attorneys with the Cook County Public Defender's Office who represented Gabriel Solache during his criminal proceedings. Although not exhaustive, their testimony may include all of the above and the following:

- Their continuing belief in Gabriel Solache's innocence;
- Their representation of Mr. Solache during the criminal proceedings;
- Their belief that Mr. Solache's constitutional rights had been violated;
- Their belief that Mr. Solache's rights under international law were violated;
- The motions they filed during their representation of Mr. Solache;
- Their efforts to obtain discovery from the Chicago Police Department, including through subpoenas;
- What was and was not disclosed during discovery and through subpoenas;

5

- Their trial preparation and efforts in defense of Mr. Solache;
- Their memory of the facts of the case and its procedural history;
- Their knowledge, or lack thereof, of Detective Guevara's pattern of misconduct;
- Their investigative efforts into the underlying crimes Mr. Solache was charged with;
- Their investigative efforts regarding mitigation at sentencing;
- Their observations as to the nature, extent and duration of his injuries;
- How their representation would have differed had they known of the exculpatory and impeaching evidence.

In addition, they may testify that they filed various motions - motions for discovery, to quash the arrest and to suppress evidence and statements based on coercion and international treaties, and motions related to the death penalty, among others. They may testify that they always believed Mr. Solache was innocent for several reasons, including the fact that he always maintained his innocence; his demeanor; that the evidence did not implicate him; and that their extensive experience representing defendants, including in murder trials, led them to believe that he was indeed telling the truth about his innocence. They may also testify they believed there was a violation of the Vienna Convention, and that, in advance of giving a coerced and fabricated statement, Mr. Solache was not notified without delay of his rights under the Vienna Convention to contact the Mexican Consulate. They may testify about the exculpatory value of evidence withheld from them during their defense of Mr. Solache. They may testify that they believed at the time of trial that Detective Guevara had coerced Mr. Solache's false confession and, that while Detective Guevara had a reputation among lawyers in the criminal defense community, they did not know at the time of their representation about the extent of Det. Guevara's pattern of misconduct. They may also testify regarding the abuse that Mr. Solache suffered at the hands of Chicago Police officers, particularly at the hands of Detective Guevara, and how Mr. Solache was coerced and tortured until he signed a false and fabricated confession. They may also testify about their belief that it was inappropriate for Detective Guevara -- being the lead detective in the investigation, the one who physically coerced Mr. Solache, and lacking training and

6

certification in interpretation -- to act as "interpreter" for the CCSAO Felony Review assistant during the taking of the statement.

**Allen Andrews** was an attorney with the Office of the State Appellate Defender, who represented Mr. Solache on appeal and in the clemency process. He may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with the deposition he gave in this case and other documents in his representation disclosed in this case. Although not exhaustive, his testimony may include all of the above and the following:

- His continuing belief in Gabriel Solache's innocence;
- His representation of Mr. Solache during appellate proceedings, the basis for which was limited to the trial transcript and common law record;
- His representation of Mr. Solache during clemency proceedings;
- His belief that Mr. Solache's constitutional rights had been violated;
- His belief that Mr. Solache's rights under international law were violated;
- His preparation for Mr. Solache of a pro se post-conviction petition;
- His memory of the facts of the case and its procedural history.

He may also testify about his belief that it was inappropriate for Detective Guevara -- being the lead detective in the investigation, the one who physically coerced Mr. Solache, and lacking training and certification in interpretation -- to act as "interpreter" for the CCSAO Felony Review assistant during the taking of the statement.

6. **Andrew Vail and Jeffrey Urdangen** are attorneys who represented Plaintiffs at post-conviction and may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with the depositions that they have given or may give in this case, their case files, and other documents in their representation of Plaintiffs, disclosed in this case. Although not exhaustive, their testimony may include the following:

- Their representation of Plaintiffs;
- The documents and materials they received from the Chicago Police Department and the Cook County State's Attorney's Office;

7

- The exculpatory and impeachment value of evidence presented in Plaintiffs' criminal cases or withheld during Plaintiffs' criminal case;
- How their representation would have differed had they known of the exculpatory and impeaching evidence;
- Their observations as to the nature, extent and duration of Plaintiffs' injuries;
- Information learned during the pendency of their representation of Plaintiffs;
- The pattern and practice of misconduct, abuse, and coercion by Detective Guevara and other Chicago Police officers;
- Their memory of the facts of the case and its procedural history;
- Their investigative efforts;
- Plaintiffs' exonerations.

7. **Barbara J. Wilson,** former forensic scientists at the Illinois State Police Division of Forensic Services, Forensic Science Center at Chicago, may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with her testimony at trial and with the records produced in this case, including Reyes_Jenner 9570-9578, 10140-10148,; SDT-ISP 1-839, Solache 4233-4236, relating to the analysis of evidence submitted by the Chicago Police Department in its investigation of the deaths of Mariano and Jacinta Soto. Although not exhaustive, her testimony may include the following:

- Medical and state accreditation;
- Her practice and processes;
  The receipt, preservation, and analysis – including preliminary and confirmatory tests -- of evidence and blood samples from the Soto Murders Investigation.

Given that **Barbara Wilson** is deceased, her opinions will be offered through the transcript of her testimony at the criminal trials, commencing at Solache 6269-6302.

8. **Dr. Barry Lifschultz and Dr. Donna M. Hunsaker**, former employees of the Cook County Office of Medical Examiner, may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with their testimony at trial and with the pathology and autopsy records produced in this case relating to the deaths of Mariano and Jacinta Soto. Although not exhaustive, their testimony may include the following:

- Their medical and state accreditation;

8

- Their practice and processes;
- The receipts, preservation of evidence and the bodies of Mariano and Jacinta Soto, and autopsies of Mariano and Jacinta Soto;
- The cause of death of Mariano and Jacinta Soto;
- The date and time of death of Mariano and Jacinta Soto.

In addition, **Drs. Lifschultz** and **Hunsaker** may also testify that when Dr. Hunsaker conducted autopsies under Dr. Lifschultz's supervision on Mariano and Jacinta Soto, she found wounds on their bodies; determined that Mrs. Soto died as a result of multiple stab wounds and Mr. Soto died as a result of multiple stab and incised wounds; listed the location and description of the wounds; collected blood, hair, oral and rectal swabs, and fingernail clippings and turned them over to the crime lab; listed the date of death as April 1. Dr. Lifschultz may also testify that he could not determine the order in which the injuries occurred, and that the April 1 date of death does not mean the Sotos died on April 1, that the Medical Examiner usually does not establish a specific date and time of death, as there is no scientific way to determine from examining a body exactly when death occurred.

9. **Dr. Yogesh Gandhi,** former neurosurgeon at Cook County Hospital, may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with his testimony at trial and with Gabriel Solache's Cook County Hospital medical records from 1997 produced in this case. Although not exhaustive, his testimony may include the following:

- Treatment including neurosurgery on Mr. Solache in 1997;
- Mr. Solache's audition during his hospitalization and at the time of his discharge, as documented by hospital medical records.

10. **Dr. Ross Romine,** a former physician at Cermak Hospital, may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with his testimony at trial, his deposition on July 31, 2019, and with Gabriel Solache's Cermak Hospital medical records from 1998-1999 produced in this case, including RG 5903-5939, 5945-5954;

NPSL 41705, 126381, 43451, 43453, 43454, 42822. Although not exhaustive, his testimony may include the following:

- Treatment of Mr. Solache at Cermak Hospital, in 1998 and 1999, regarding his loss of hearing in his left ear since his arrest after being hit by police in that ear;
- Referrals to ENT physicians and audiologists for evaluation of Mr. Solache's audition and records documenting their evaluations;
- His belief of Mr. Solache's report that he had no hearing in his left ear;
- He did not determine the cause of hearing loss;
- Medical records from Cermak Hospital documenting the foregoing treatment and evaluations.

11. **Cherie Lynn Dalbke**, a former audiologist who provided audiological testing for Cook County, Cermak Health Services, may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with her deposition given in this case on May 29, 2019 and her criminal trial testimony, and consistent with her treatment records of Gabriel Solache produced in this case including RG 5903-5926, NPSL 41705, NPSL 126381, 43454, 42822. Although not exhaustive, her testimony may include the following:

- Her evaluations of Mr. Solache's audition while he was in custody at the Cook County Department of Corrections;
- Her detection of profound hearing loss, with no measurable hearing, in the left ear;
- Her belief in the accuracy, reliability, of her testing and evaluations of Mr. Solache;
- Her belief in the honesty and consistency of Mr. Solache's responses throughout the testing and evaluations;
- The difficulties faced by people with hearing loss in one ear, including problems with hearing aids;
- The unlikelihood that someone with Mr. Solache's level of hearing loss would regain a significant amount of hearing.

12. **Tim Ward and Monica Amaya**, employees of Staffing Network, LLC, may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with their depositions given in this case on August 17, 2021 and June 30, 2021, and consistent with the employment records for Gabriel Solache including Solache 7399-7322, and consistent with Ms. Amaya's declaration, that such records are records maintained by Staffing Network, LLC and truly and accurately represent the dates and hours worked by Mr. Solache as

represented in the documents. Although not exhaustive, their testimony may include the following:

**Monica Amaya** may testify that she is a Compliance Specialist at Staffing Network, LLC & QPA, headquartered at 1815 Meyers Road, Suite 600, Oakbrook Terrace IL 60181 responsible for responding to subpoenas directed to Staffing Network. She may testify concerning Solache 7299-7322, that while Staffing Network no longer has access to the software used in 1998, after conferring with Tim Ward, Executive Director for Corporate Operations of Staffing Network, they determined that the documents in Solache 7299-7322 appear to be Staffing Network business records maintained in the ordinary course of business in 1998, which were provided in 1999 in compliance with a subpoena. Finally, she may testify that she can verify and authenticate the documents in Solache 7299-7322 as Staffing Network business records.

**Tim Ward** may testify that he is the Executive Director for Corporate Operations of Staffing Network, a light industrial temporary employment agency which places employees with clients who have staffing needs, where he has worked since 2002. He may testify that he was familiar with record keeping, employee time sheets, payroll documents, work tickets, earning statements, invoices, and other related documents such as those found in Solache 7299-7322, which look the same as those used by Staffing Network when he started working there in 2002, and which include typical Staffing Network work tickets, payroll records, invoices. He may testify as to their accuracy and how they functioned to document hours worked and payment therefor. He may testify that through Staffing Network, Mr. Solache worked at Ready Metal Manufacturing Company at 4300 W. 47th Street in Chicago, including during the week ending March 29, 1998, and that he worked 10 hours on Wednesday March 25, Thursday March 26, and Friday March 27, commencing each day at 4:30 p.m. He may testify that he has no doubt that the documents in Solache 7299-7322 are the records of Staffing Network and its client Ready Metal

11

Manufacturing Company, and that they truly and accurately document the days and hours worked and pay received by Mr. Solache as noted in the documents.

13.     **Victor Herrera**, employee of Ed Miniat LLC, may be called to present evidence at trial under Federal Rules of Evidence 702, 703, and 705, consistent with his testimony at the criminal trial, his declaration and the employment records for Arturo Reyes. Although not exhaustive, his testimony may include the following:

- Records maintained by Ed Miniat, LLC;
- The dates and hours worked by Mr. Reyes;
- The time Mr. Reyes arrived at and left work on various dates;
- Mr. Reyes's demeanor and behavior while at work on various dates.

In addition, Mr. Herrera may testify regarding Reyes 008911-16, that such records are records maintained by Ed Miniat, LLC and truly and accurately represent the dates and hours worked by Mr. Reyes as represented in the documents, including that Mr. Reyes worked on March 26, 1998 from 12:30 pm to 11:45 pm., and on March 27, 1998 from 12:30 pm to 11:15 pm; that Mr. Reyes' performance on March 27, 1998 was "fine. like always. he did his work well...he did his job very well." He may testify that he recognized the documents found at bates 6235-6236 (Reyes -8911-8912) to be the time records kept by Ed Miniat LLC at the time, that they appear to be Ed Miniat LLC business records maintained in the ordinary course of business in 1998. He may testify that he kept track of Mr. Reyes' sign-in and work attendance sheets and made his work schedule for the week of March 23-28, 1998. He may testify that on March 27, 1998, Mr. Reyes arrived at work and began his shift at 12:30 p.m. and did not leave the plant that night until approximately 12:30 a.m. on March 28, 1998. He may testify that on March 28, 1998, Mr. Reyes arrived at work on time and began his shift at 11:00 a.m. and worked until approximately 11:45 p.m. He may testify that about Mr. Reyes's coworkers. He may testify that Mr. Reyes did not exhibit any unusual behavior on March 28, 1998 and did

not seem tired or sleepy in any way.

The foregoing disclosures are based on information and documents available to all parties in this case. Plaintiff expressly reserves his right to supplement and amend these disclosures as discovery proceeds.

Dated: April 29, 2022                    RESPECTFULLY SUBMITTED,

**GABRIEL SOLACHE**                    **ARTURO De LEON-REYES**

/s/ Jan Susler                         /s/ Sean Starr
*One of Solache's Attorneys*           *One of Reyes's Attorneys*

Jan Susler                             Jon Loevy
Ben Elson                              Anand Swaminathan
PEOPLE'S LAW OFFICE                    Steve Art
1180 N. Milwaukee Ave.                 Rachel Brady
Chicago, IL 60642                      Sean Starr
                                       LOEVY & LOEVY
                                       311 N. Aberdeen St.
                                       Chicago, IL 60607

13