IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO REYES/GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-1028/18-cv-2312 |
| | ) | |
| v. | ) | Hon. Judge Steven C. Seeger |
| | ) | |
| REYNALDO GUEVARA, et al. | ) | Maj. Judge Sunil R. Harjani |
| | ) | |
| Defendants. | ) | |

**MOTION TO QUASH THE DEPOSITION SUBPOENA OF
FIRST ASSISTANT STATE'S ATTORNEY RISA LANIER**

Third Party Respondent Cook County State's Attorney's Office ("CCSAO"), by its attorney, Kimberly M. Foxx, State's Attorney of Cook County, pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45, brings this motion to quash the subpoenas for First Assistant State's Attorney Risa Lanier's deposition in the above-referenced cases. In support, the Respondent states as follows:

### I. Relevant Procedural History

The CCSAO is not a party to this litigation but has been heavily involved in the parties' discovery machinations for several years. In its March 7, 2023, Order the Court reopened discovery limited to the certificates of innocence ("COI") that were granted to the Plaintiffs by state court judge Sophia Atcherson. (Docket No. 633, p. 2).[1] The order indicates that "Plaintiffs must disclose any and all explanations from the Cook County State's Attorney's Office about why that Office changed course and withdrew its opposition to the certificates of innocence," while also indicating that ruling on re-opening discovery was "not a ruling on any potential privilege

---

[1] For purposes of this motion Respondent cites to the docket in 18 C 1028 only.

1

issues, such as a possible assertion of the deliberative process privilege." (Id. at 1-2). The order did not expressly command nonparty CCSAO to do anything specifically but allowed for third-party discovery. (Id. at 2).

On March 9, April 4, and April 18, the parties propounded subpoenas on the CCSAO seeking correspondence between the CCSAO and anyone "advocating" for either the Plaintiffs or Defendants relating to the COIs. As set forth in the parties' May 26, 2023, Status Report, the CCSAO and the parties have come to an agreement on search terms and custodians. (Docket Nos. 658).

On May 1, 2023, the City Defendants deposed current Assistant State's Attorney ("ASA") Christa Bowden. Prior to the deposition, the parties filed a Joint Status Report stating that they may need "additional discovery" if ASA Bowden was not the "final decisionmaker" with respect to the COIs. (Docket No. 650, p. 4). On April 24, 2023, this Court entered an ordered that "[i]f ASA Bowden was not the final decisionmaker on the certificates of innocence in question, then the Court directs the Cook County State's Attorney Office to say so in a prompt manner, and reveal who it was." (Docket No. 648). On May 5, 2023, the Court reaffirmed its position that it would not "walk back" the April 24 order. (Docket No. 652). Pursuant to this order, the CCSAO identified (over objection) that the final decisionmaker with respect to the decision to withdraw its objections to the COIs at issue was current First Assistant State's Attorney Risa Lanier. Defendants served a deposition subpoena on the CCSAO for First Assistant Lanier's deposition that same day.[2] (A copy of the subpoena is attached hereto as Exhibit A). As First Assistant Lanier

---

[2] The CCSAO continues to believe that the identity of the final decisionmaker is protected by the deliberative process privilege, as it discloses the process by which the entity (in this case the CCSAO) operates pre-decision. While it has now complied with this Court's order, the CCSAO reserves the right to make any and all arguments to protect its deliberative process privilege in this and any other case.

is a very high-ranking member of the CCSAO's executive staff, she should not be subject to a deposition in these cases pursuant to the Apex Doctrine. She is the second in command of the office and the head of legal operations for the second largest prosecutor's office in the nation.

The CCSAO and the parties engaged in Rule 37 conference with respect to the deposition on May 12, 2023. The CCSAO objected to producing First Assistant Lanier for deposition, and asked if the parties would consider an affidavit instead of testimony. Defense counsel asked if the CCSAO would agree to language stating that for purposes of withdrawing its objection to the COIs, the CCSAO would not have to reach a decision on actual innocence. The CCSAO agreed to review the request and agreed to reconvene for another conference on May 15, 2023. Later that day, the Defendants sent what purported to be a "summary" of the Rule 37 conference. (A copy of the May 12, 2023 e-mail is attached hereto as Exhibit B). Therein, Defense counsel reiterated the discussion, but added that their agreement

> depends on what additional information would be included in the declaration. Specifically, Defendants would like to know whether the CCSAO is willing to include language that the decision to withdraw as intervenors from the COI proceedings was not based on the actual innocence of Solache/Reyes; whether or not the CCSAO is asserting deliberative process with regards to facts known to First Assistant Lanier at the time of her decision, (including whether First Assistant Lanier was aware of the fact that the civil case against the County Defendants had been settled); and who she spoke to regarding her decision (regardless of within CCSAO or outside).

(Exh. B). This did not accurately "summarize" the meet and confer and was a significant shift from the Defendants' position during the conference.

The parties and the CCSAO again conferred on May 15, 2023. At that time, the CCSAO agreed to provide an affidavit that would include language stating that for purposes of withdrawing its objection to the COIs, the CCSAO would not have to reach a decision on actual innocence. Plaintiffs agreed to this language as well. Despite it being their idea in the first place, Defendants indicated that they would discuss the matter among themselves and get back to the CCSAO. Ten

days later, on May 25, 2023, the Defendants stated that they would not agree to a declaration as proposed and would not engage in further meet-and-confer unless the CCSAO "change[d] its position on the issues" as to the basis of the CCSAO's decision and who First Assistant Lanier spoke to, and when. (See May 25, 2023, e-mail exchange between ASA Division Chief Jessica Scheller and defense counsel Alison Romelfanger, attached hereto as Exhibit C). Defendants then stated they were still seeking the apex deposition of First Assistant Lanier, and indicated they would move to compel if the CCSAO did not file the instant motion to quash. (Id.)

This motion is brought in order to quash Defendants' deposition subpoena and in furtherance of the CCSAO's interest in protecting valuable privileges that are necessary for the CCSAO to make quality, measured decisions without the threat of harassing litigation.

**II. Argument**

**A. The Apex Doctrine Protects Lanier From Testifying In These Cases**

High-ranking governmental officials should not be subject to giving depositions unless the testimony sought will lead to admissible evidence relevant to the disposition of the case. *See, e.g., Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999), *cert. denied*, 528 U.S. 986 (1999) (holding that plaintiff was not entitled to depose the Illinois Attorney General regarding his employment discrimination claim.). This standard arises out of well-placed concern that officials should not be prevented from attending to their official duties by having to spend their time giving depositions when the information sought is readily available through another source or via a less intrusive means. *Olivier v. Rodriguez*, 122 F.3d 406 at 409-10 (7th Cir. 1997), *cert. denied*, 522 U.S. 1110 (1998).

When an "apex" deposition is sought, "courts may protect high-level executives from being deposed when *any* of four circumstances exist: (1) the official has no unique personal knowledge

4

of the matter in dispute; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's other duties. *Lee v. City of Chi.*, 2021 U.S. Dist. LEXIS 109939, at *5 (N.D. Ill. June 11, 2021)(internal citation marks omitted, emphasis in original). All four of these factors support protecting Ms. Lanier from deposition in this case.

Starting with the fourth factor, subjecting Ms. Lanier to a deposition in this case would impose a hardship on both her and the CCSAO. Ms. Lanier, as the First Assistant State's Attorney, is the second-highest ranking member of the CCSAO, second only to the elected State's Attorney. As First Assistant in the second largest prosecutor's office in the United States, Ms. Lanier supervises the Civil Actions Bureau and its eight separate divisions,[3] as well as the Criminal Prosecutions Bureau and its tens of thousands of active cases presently being heard in over fifty felony courtrooms spread out across six different districts in Cook County. As such, Ms. Lanier is exactly the type of government official the Seventh Circuit has cautioned against subjecting to an hours-long deposition in lieu of his pressing day-to-day official duties.

Furthermore, as the First Assistant, and prior to that as the Deputy First Assistant and the Chief of the Criminal Prosecutions Bureau, Ms. Lanier acted at all relevant times as a supervisor and was not personally responsible for the day-to-day work associated with litigating COI matters. As such, she would have no *unique* personal knowledge of the matter in dispute, and any discoverable information she may have can (and has) be garnered from other witnesses. This satisfies both the first and second factor identified above. For instance, ASA Bowden testified to the COI process at the CCSAO, and what she reviewed as the attorney primarily responsible for

---

[3] The Civil Actions Bureau consists of the following sections: Medical Litigation, Civil Rights/Torts Litigation, Labor and Employment, Municipal Litigation, Workers' Compensation, Complex Litigation, Real Estate Taxation and Child Support.

the files in this case, and her correspondence with outside counsel. She further testified to her knowledge of this civil matter. Defendants have indicated that they are entitled to query Ms. Lanier regarding any conversations she may have had with individuals outside of the CCSAO who were advocating on behalf of the Plaintiffs with respect to their COIs. However, per the third factor, this can be easily handled by written discovery, such as interrogatories.[4] More to the point, Defendants could get this information directly from the Plaintiffs.

For these reasons, the CCSAO prays that this Court enters an order quashing the deposition subpoena for First Assistant State's Attorney Risa Lanier.

### B. Deliberative process

In discussions leading up to the filing of this motion, Defendants have identified two specific lines of inquiry for Ms. Lanier, both of which are protected by the deliberative process privilege. First, Defendants want to question Ms. Lanier on the facts and data she personally reviewed, and when she reviewed it. Second, the Defendants believe they are entitled to know the underlying basis for the CCSAO's decision to withdraw its objection to the Plaintiffs' petitions for COI. Defendants are trying to pierce the CCSAO's deliberative process privilege by narrowing the privilege and misinterpreting controlling case law.

"The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency." *U.S. v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (citing *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975)). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each

---

[4] If Ms. Lanier were deposed on this matter, or queried thorough other means, it is expected that she would aver that she did not have any conversations with any individuals advocating on behalf of the Plaintiffs with respect to their COIs.

6

remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9, 121 S. Ct. 1060, 149 L. Ed. 2d 87 (2001) (internal quotations omitted). To this end, the privilege shields "communications that are part of the decision-making process of a governmental agency." *Farley*, 11 F.3d at 1389. Privileged communications include not only conversations, but "documents reflecting advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001) (citing *Sears, Roebuck & Co.*, 421 U.S. at 150). Although the deliberative process privilege does not justify the withholding of purely factual material, it does prohibit the disclosure of "factual matters inextricably intertwined with such discussions." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004).

A two-step process exists for determining whether the deliberative process privilege applies. First, the government must show that the privilege applies to the information sought. *Ferrell v. United States HUD*, 177 F.R.D. 425, 428 (N.D. Ill. 1998). For the government to satisfy its prima facie threshold, three things must occur: (1) the department head with control over the matter at issue must, after personal consideration of the issue, make a formal claim of privilege; (2) the designated official must articulate, typically by affidavit, their reasons for preserving the confidentiality of the information sought; and (3) the official must specifically identify and describe the documents or information sought. *Id.*; *see also Evans v. City of Chicago*, 231 F.R.D. 302, 316 (N.D. Ill. 2005).

Magistrate Judge Harjani has already held that the CCSAO has established that the deliberative process privilege applies to testimony and materials related to the CCSAO's position

7

on the COIs in the instant case. (Docket No. 457, p. 9). Underlying this decision was Division Chief Scheller's affidavit, which "explained that the CCSAO preserves the confidentiality of such testimony and material because '[t]o divulge the process by which the CCSAO investigates and determines how to approach a COI would open the process up to outside influence. Interested individuals outside of the CCSAO may try to manipulate the process itself in order to achieve a favored outcome.'" (Id., quoting Docket No. 429-2, ¶ 6). The City Defendants have conceded that they have no evidence that the CCSAO waived its deliberative process privilege in this matter. (See April 2, 2023 e-mail correspondence, attached hereto as Exhibit D).

During the meet-and-confer process, Defendants argued that *United States Fish and Wildlife Service v. Sierra Club*, 141 S.Ct. 777 (2021) held that the basis for a government entity's final decision is not protected by the deliberative process privilege. The Supreme Court found no such thing. The *Sierra Club* case applies deliberative process privileges to documents sought during a Freedom of Information Act Request. *Id*. It does not address the application of the privilege with respect to live testimony. However, the Supreme Court does reiterate the importance of the privileges and notes that "[t]o encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *Id*. at 785. Defendants' argument seems to rest on the Court's uncontroversial statement that the deliberative process privilege "distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and reasons supporting it, which are not." *Id*. at 786. The Supreme Court said this in the context of discussing a hypothetical document that "embod[ied] a final decision." *Id.* at 785. The CCSAO agrees that if it had released a document "reflecting a final agency decision and the reasons supporting it," that document would not be subject to the deliberative process privilege.

8

Defendants read *Sierra Club* to provide that the reasons supporting a decision are discoverable *even when they are not disclosed*. This reading is unsupported by the text and would significantly water down the deliberative process privilege. Where, as here, the agency has not disclosed the underlying "basis" for its decision, discovery into the basis would directly implicate deliberative process. The basis or bases were discussed pre-decision, and inquiry into the bases would necessarily invade "pre-decisional deliberations." Further, such a reading of *Sierra Club* would invariably lead to even further degradation of the privilege. For example, during a deposition where an agency employee announces "the basis for the agency decision was x," an attorney could inquire: "but did you consider "y" and "z"? The attorney would state they were only asking questions about the "basis," while in fact discovering what the agency did or did not find important in its pre-decisional analysis. This is precisely the behavior that the deliberative process privilege is supposed to discourage.

On a similar note, Defendants claim they are entitled to know what facts Ms. Lanier herself knew about the case, and when she learned them. The CCSAO agrees that what documents/facts were reviewed by the CCSAO prior to a final decision are discoverable. However, by asking any ASA when they became aware of certain facts is tantamount to asking whether or not they believed the facts were important. For example, at ASA Bowden's deposition, Defendants established that the office had been objecting to the petitions for COIs up to a certain point of time, and then withdrew the objection. ASA Bowden was specifically asked if she learned of any facts during a specific time-period leading up to the decision to withdraw its objection. She was instructed not to answer on deliberative process grounds. If she had said "yes," it would suggest that the facts she learned effected the final decision. If she said "no," it would suggest that some reason other

than the underlying facts were involved in the pre-decisional process. Either way, a response would reveal something about the deliberative process of the CCSAO.

Defendants tried a similar gambit in *Brown v. City of Chicago, et al.*, 18 C 7064, a wrongful conviction case in this district that until recently was pending before Judge Pallmeyer. There, the City of Chicago Defendants sought to inquire as to who participated in the CCSAO's decision not to oppose Plaintiff Brown's petition for COI, and what they reviewed in coming to that decision. (See *Brown v. City of Chicago, et al.*, June 15, 2021, Transcript of Proceedings Before the Honorable Chief Judge Rebecca R. Pallmeyer, attached hereto as Exhibit E, at pp. 16:2-22, 18:22-19:5). Judge Pallmeyer barred this line of inquiry. (Id. at 19:6-16)("The question – the concern is whether you are going to be able to ask: Did decision maker A review Document B? And that question, we are not going to be going down that road. The [witness] will not identify which specific decision-makers looked at which specific documents. You have got the universe of documents that were reviewed, and no further production is going to be ordered."). We believe the ruling in *Brown* is equally applicable to this case.

For these reasons, the CCSAO prays that this Court quashes the deposition subpoena for First Assistant Lanier.

### C. The Mental Process Privilege

Finally, any beliefs Ms. Lanier holds with respect to the basis for the CCSAO's decision to withdraw its objections to the COIs are protected by the mental process privilege. Inquiries into personal beliefs cannot be separated from the actual deliberations, as the beliefs and opinions formed are necessarily shaped by the protected deliberations. *Saunders v. City of Chicago*, 12 C 958, 2015 U.S. Dist. LEXIS 105571, at * 63-67 (N.D. Ill. Aug. 12, 2015). ("This Court finds that the privilege was properly invoked by Valentini in response to these irregular deposition questions. It is likely that during the SAO's deliberations about the prosecutorial decisions, they discussed the weight of the evidence and whether it

was sufficient for a jury to convict, as well as the other questions posed to Valentini. Since Valentini was present for the deliberations, it is understandable that providing answers to the questions would reveal analysis, arguments, and discussion from the deliberations."). While the *Saunders* court did not invoke the actual term, the mental process and internal deliberation are likewise protected by the "mental processes privilege." *See Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 40 F.R.D. 318, 326-26 (D.D.C. 1996) (holding that the mental processes privilege is "inextricably intertwined" with the deliberative process privilege and precludes "prob[ing] the mental process" of government officials); *see also Mendez v. City of Chicago*, 18 CV 5560, 2020 U.S. Dist. LEXIS 47530, at * 4 (N.D. Ill. Mar. 19, 2020) (quashing subpoena pursuant to the mental processes privilege seeking deposition of sitting judge regarding the reasoning for his decision). Because the mental processes privilege analysis is the same as the deliberative process privilege, *see United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005), they should likewise be prohibited from inquiring into the mental impressions of CCSAO attorneys.

### III. Conclusion

For the reasons set forth herein, and in the underlying brief, the Motion to Quash should be granted.

Date: May 30, 2023

Respectfully submitted,

KIMBERLY M. FOXX

*Lyle K. Henretty*
Lyle K. Henretty
Jessica M. Scheller
Assistant State's Attorneys
50 West Washington
Chicago, IL 60602

### CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I electronically filed the foregoing document with the Clerk of the Court for Northern District of Illinois, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ *Lyle K. Henretty*