## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTIRCT OF ILLINIOS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## THE DEFENDANT SUPERVISORS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Date: December 16, 2024

Respectfully submitted,

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Attorney No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Defendants Halvorsen,*
*Dickinson, Rutherford, Trevino, Mingey, Biebel,*
*and Cappitelli*

James G. Sotos
Josh M. Engquist
Caroline P. Golden
Allison L. Romelfanger
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................................................1

SUMMARY OF UNDISPUTED MATERIAL FACTS.....................................................................2

    Overview of the crimes and Criminal Charges.................................................................2

    Defendant Supervisors' Involvement in the Investigation and Prosecution.....................4

LEGAL STANDARD..........................................................................................................................5

ARGUMENT .......................................................................................................................................6

    I.     The Defendant Supervisors were not Personally Involved in Plaintiffs' Alleged Constitutional Violations ........................................................................................6

        a.     Plaintiffs lack any evidence establishing the involvement of Defendant Supervisors in their claims for coerced and/or fabricated confessions ..........6

        b.     Plaintiffs lack any evidence establishing personal involvement of the Defendant Supervisors in their Due Process claims........................................9

        c.     Plaintiffs cannot meet their burden against the Defendant Supervisors on their failure to intervene claims................................................................... 12

        d.     Plaintiffs cannot prove all the elements of their deprivation of liberty and malicious prosecution claims ....................................................................... 13

        e.     Plaintiffs cannot show that the Defendant Supervisors engaged in "extreme and outrageous" conduct that they knew would cause Plaintiffs extreme emotional distress ....................................................................................... 14

        f.     The Defendant Supervisors are entitled to summary judgment on Plaintiff's claims of conspiracy ................................................................................... 15

    II.     Plaintiffs Cannot Meet their Burden on Supervisor Liability ............................. 16

    III.     Independent of the Defendant Supervisors' Lack of Involvement, They Are Entitled to Summary Judgment on Plaintiffs' Claims......................................... 17

CONCLUSION.................................................................................................................................. 18

# TABLE OF AUTHORITIES

**CASES**                                                               **PAGE**

*Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir.2005) ...................................................13

*Anderson v. City of Rockford,* 932 F.3d 494, 510 (7th Cir. 2019).................................................10

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 255 (1986) .....................................................5

*Apostal v. City of Crystal Lake,* No. 94 C 50068, 1995 WL 692680, at *6 (N.D. Ill. Nov. 22, 1995) .......................................................................................................................................6

*Beaman v. Freesmeyer,* 2017 Il App (4th) 160527, 82 N.E.3d 241
(Ill. App. Ct. 4th Dist., 2017).........................................................................................................13

*Bedford v. Dewitt,* 2023 WL 6312107, at*3 (N.D. Ill. Sept. 28, 2023) ...........................................8

*Bohannon v. City of Milwaukee,* 998 F. 2d 736, 748 (E.D. Wisc., Feb. 11, 2014) .......................17

*Brady v. Maryland,* 373 U.S. 83 (1963) ...........................................................................9, 12, 17

*Brand v. Jeffreys,* 3:21-cv-01396-GCS, 2022 WL 3153994, at *2 (S.D. Ill. Aug. 8, 2022) .........8

*Carmona v. City of Chicago,* No. 15 C 462, 2019 WL 4166856, at *9
(N.D. Ill. Sept. 3, 2019) ..................................................................................................................17

*Chavez v. Illinois State Police,* 251 F.3d 612, 651 (7th Cir. 2001) ........................................16, 17

*Colbert v. City of Chi.,* 851 F.3d 649, 657 (7th Cir. 2017).........................................................6, 11

*Coleman v. City of Peoria,* 925 F.3d 336, 349 (7th Cir. 2019)............................................9-10, 11

*Cooney v. Casaday,* 746 F.Supp.2d 973, 977-78 (N.D. Ill. 2010) .................................................15

*Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010) .......................................6

*Hill v. Cook County,* 463 F. Supp. 3d 820, 845 (N.D. Ill. May 31, 2020) ....................................14

*Jones v. City of Chicago,* 856 F.2d 985, 992-93 (7th Cir. 1998)....................................................16

*Jones v. York*, 34 F.4th 550, 559 (7th Cir. 2022)......................................................................10, 11

*Kernats v. O'Sullivan,* 35 F.3d 1171, 1182-83 (7th Cir. 1994) .......................................................8

*Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012) ..............................................................5

### TABLE OF AUTHORITIES
#### -Continued-

**CASES**             **PAGE**

*Lenard v. Argento,* 699 F.2d 874, 885 (7th Cir. 1983) ..........................................................16, 17

*Linblad v. Nelson,* 2019 IL App (1st) 181205, ¶23, 138 N.E. 3d 141, 147 (Ill. App. 2019)...15, 16

*Mack v. City of Chi.,* No. 19 CV 4001, 2023 WL 4744791, at *15 (N.D. Ill. July 25, 2023) .........7

*Matthews v. City of East St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012) ......................................16

*McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7th Cir. 2004).........................................6

*Moran v. Calumet City,* 54 F.4th 483, 492 (7th Cir. 2022) ...........................................................10

*Odogba v. Wis. Dep't of Justice,* 22 F. Supp. 3d 895, 909-910 (E.D. Wis. 2014).................16, 17

*Petty v. City of Chicago,* 754 F.3d 416, 423 (7th Cir. 2014) ........................................................10

*Rasho v. Elyea,* 856 F.3d 469, 478 (7th Cir. 2017) ........................................................................6

*Reardon v. Schossow,* 416 F. Supp.3d 793, 807 (E.D. Wisc., Sept. 24, 2019).......................16, 17

*REXA, Inc. v. Chester,* 42 F.4th 652, 666 (7th Cir. 2022) ..............................................................9

*Roberts v. Broski,* 186 F.3d 990, 995 (7th Cir. 1999) .....................................................................6

*Ruiz v. City of Chi.,* 931 F.3d 592, 600-01 (7th Cir. 2019)...........................................................11

*Sang Ken Kim v. City of Chicago,* 368 Ill. App. 3d 648, 653-54 (1st Dist. 2006)........................13

*Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001)..........................................................17

*Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).................................................................10

*Spalding v. City of Chicago,* 186 F. Supp. 3d 884, 913 (N.D. Ill. May 11, 2016) .......................15

*Swearnigen–El v. Cook County Sheriff's Dept.,* 602 F.3d 852, 684 (7th Cir. 2010)....................15

*Swetlik v. Crawford,* 738 F.3d 818, 829 (7th Cir. 2013) ................................................................6

*Swick, et. al. v. Liautaud, et. al.,* 169 Ill. 2d 504 (1996)...............................................................13

*Thompson v. Clark,* 596 U.S. 36, 43 (2022) ..................................................................................14

## TABLE OF AUTHORITIES
### -Continued-

**CASES**                                                                                **PAGE**

*Trout v. Frega,* 926 F. Supp. 117, 121 (N.D. Ill. 1996)..............................................................6,8

*Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996) ....................................................................14

*Wheeler v. Piazza,* 364 F. Supp.3d 870, 880 (N.D. Ill., Mar. 5, 2019).................................15, 16

*Whitlock v. Brueggemann,* 682 F.3d 567, 580 (7th Cir. 2012) ....................................................10


**STATUTES**                                                                             **PAGE**

42 U.S.C. § 1983.......................................................................................................................1, 2

Fed. R. Civ. P. 56(a) ....................................................................................................................5

Local Rule 56.1(a)(2) and 56.1(d) ...............................................................................................2

Defendants Edward Mingey, Robert Biebel, and Kevin Rogers as Special Representative of Francis Cappitelli (deceased), (collectively "the Defendant Supervisors"), by and through their attorneys, The Sotos Law Firm, P.C., submit this Memorandum of Law in Support of their Motion for Summary Judgment. In support thereof, the Defendant Supervisors state:

## INTRODUCTION

On March 28, 1998, Mariano and Jacinta Soto were brutally murdered in their home — collectively stabbed over fifty times — and their children, Maria and Santiago, were abducted. It is undisputed that Adriana Mejia ("Adriana"), who had been faking a pregnancy, participated in the barbaric stabbings and kidnappings so that she could pass little Maria off as her own child. During the criminal investigation, Adriana and Plaintiffs implicated themselves and one another in the murders and kidnappings. Subsequently, Plaintiffs were arrested, charged, and eventually found guilty of two counts of first-degree murder, two counts of aggravated kidnapping, and home invasion. Adriana pleaded guilty and was sentenced to natural life imprisonment.

In 2017, Reyes and Solache obtained post-conviction relief after levying allegations against Defendant Detective Reynaldo Guevara ("Guevara") concerning a pattern of investigative misconduct. Plaintiffs now bring their respective lawsuits against the City of Chicago and Guevara (who are separately represented and separately moving for summary judgment), three former Chicago Police detectives and a former youth officer (who are also separately moving for summary judgment), and the Defendant Supervisors, for various claims arising out of their arrest and prosecution for the Soto murders and kidnappings.

Specifically, Reyes brings federal § 1983 claims against the Defendant Supervisors for coerced confession under the Fifth Amendment (Count I); fabrication of false witness statements (Count II); deprivation of liberty without probable cause under the Fourth Amendment (Count

III); Due Process violations under the Fourteenth Amendment (Count IV); failure to intervene (Count V); and Conspiracy (Count VI); and state law claims for Intentional Infliction of Emotional Distress (IIED) (Count VIII); Malicious Prosecution (Count IX); and (ix) common law conspiracy (Count X). (*Reyes*, Dkt. 396.)

Similarly, Solache brings federal § 1983 claims against Sergeants Edward Mingey ("Sgt. Mingey") and Robert Biebel ("Sgt. Biebel") *only*,[1] for claims of coerced/false confession under the Fifth Amendment (Count I); Due Process violations under the Fourteenth Amendment (Count II); and failure to intervene (Count III); and state law claims for IIED (Count VI); Malicious Prosecution (Count V); and common law conspiracy (Count VII). (*Solache*, Dkt. 224.)

Plaintiffs fail to establish liability of the Defendant Supervisors who had little to no involvement in the underlying criminal investigation and subsequent prosecution of Plaintiffs. Instead, the Defendant Supervisors are entitled to judgment as a matter of law because Plaintiffs cannot show that they were personally involved in the constitutional violations alleged, nor can Plaintiffs meet the high burden to show supervisor liability on the part of any Defendant Supervisor.[2]

## SUMMARY OF UNDISPUTED MATERIAL FACTS[3]
### Overview of the Crimes and Criminal Charges

On April 1, 1998, at approximately 4:30 p.m., Chicago Police officers from the 14th District conducted a well-being check at 2071 N. Leavitt after family members reported concern

---

[1] Francis Cappitelli as noted above is only a named defendant in Reyes's lawsuit.

[2] Plaintiffs do not bring a separate supervisor liability claim. However, due to the allegations made by Plaintiffs against them, the Defendant Supervisors also address that un-pled issue herein.

[3] Defendants Halvorsen, Dickinson, Rutherford, Trevino, Mingey, Biebel, and Cappitelli have submitted a joint statement of material facts pursuant to Local Rule 56.1(a)(2) and 56.1(d) and the Defendant Supervisors incorporate it in full in support of their memorandum of law.

that they had been unable to contact Mariano and Jacinta Soto. (SOF ¶¶ 9-10.) When officers were finally able to enter the apartment, Mariano and Jacinta Soto were found deceased with multiple stabs wounds. (*Id*.) The Sotos' relatives on scene told the officers that the couple also had two children— a three-year-old little boy named Santiago and a two-month-old baby named Maria. (*Id*. at ⁋ 11.) Officers exhaustively searched the apartment for the children who were nowhere to be found. (*Id*. at ⁋ 12.)

After the bodies were discovered, Area 5 Detectives Guevara and Ernest Halvorsen ("Halvorsen") were assigned by Sgt. Edward Mingey to investigate and respond to the gruesome crime scene with the mobile crime lab. (SOF at ⁋⁋ 12, 14.) While the mobile crime lab was searching for and inventorying evidence, Mingey, Guevara and Halvorsen continued the search for the missing children. (*Id*. at ⁋ 12.) However, these efforts came up empty. (*Id*.)

Over the course of the next several days, from April 2 through April 5, 1998, numerous detectives conducted a wide-ranging follow-up investigation. (SOF ¶ 16.) This investigation included issuing a special bulletin to raise public awareness of the missing children, interviewing the Sotos' family members, neighbors and employers, collecting physical evidence and submitting it for testing, and obtaining statements from numerous suspects and witnesses. (*Id*.)

Adriana, her husband Rosauro Mejia ("Rosauro"), Reyes and Solache first became suspects on April 3, 1998, after it was discovered that the missing children had been living with them since the murders and Adriana was claiming that the baby, Maria, was her own child. (SOF at ⁋⁋ 19-27.) The statements of Adriana, Reyes, Rosauro, and Solache, as well as witness Guadalupe Mejia ("Guadalupe"), were taken by detectives and Assistant State's Attorneys ("ASAs") from the Cook County States Attorney's Office's ("CCSAO") Felony Review Unit, between April 3 and the early morning hours of April 5. (SOF at ⁋⁋ 32-34, 36-40, 41-51, 53-58,

61-63.) On April 5, the CCSAO approved charges against Adriana, Solache and Reyes for two counts of First-Degree Murder and two counts of Aggravated Kidnapping and Home Invasion, and all three were booked into lockup by 9:00 a.m. that morning (SOF at ₱₱ 51, 60, 64.)

### Defendant Supervisors' Involvement in the Investigation and Prosecution

Sgt. Mingey's involvement in the Soto homicide investigation was limited to one shift, which began on April 1 (the evening the bodies were discovered) and ended in the early morning hours of April 2 (before Solache, Reyes and Adriana were known to police). (SOF at ₱₱ 19, 71.) During this shift, Sgt. Mingey: (i) assigned Guevara and Halvorsen to the crime scene; (ii) assigned Boyle and Gutierrez to conduct a canvass; (iii) supervised detectives at the crime scene; (iv) helped search for the missing Soto children; and (v) signed two property inventory forms (Inventory Nos. 1982719, for 1 empty box from a cutlery block set and Inventory No. 1982720, 1 butcher block knife holder and 2 kitchen knives). (*Id*.) Sgt. Mingey did not report for duty at CPD from April 3 through April 5. (*Id*. at ₱ 72.) Sgt. Mingey was not involved in the Soto homicide investigation after the scene was processed and did not testify in either of Plaintiffs' criminal prosecutions. (*Id*. at ₱₱ 71-72, 87.) He did not draft any reports, and other than the inventory slips, did not sign any reports. (*Id*.) Sgt. Mingey did not interview anyone in connection with the investigation, and he did not present or discuss charges with prosecutors. (*Id*.)

Sgt. Biebel was not involved in the Soto homicide investigation at all and was not even working from April 2 through April 10. (SOF at ₱ 74.) He did not interview anyone in connection to the case, including Plaintiffs. He did not go to the crime scene, collect evidence, or draft reports. (*Id*. at ₱₱ 73-74.) Sgt. Biebel did not discuss the investigation or criminal charges with prosecutors. (*Id*.) Rather, his role was limited to signing off on two police reports drafted by

detectives, the Scene Supplementary Report and a Progress Report. (*Id.* at ¶ 73.) Both reports were signed on April 11, well after Adriana and Plaintiffs had been arrested, interviewed, charged, and booked. (*Id.* at ¶¶ 32-34, 36-40, 41-51, 53-58, 60-64, 73.) As a supervisor, it was Sgt. Biebel's responsibility to make sure that reports were submitted in a timely fashion, and to sign off on them. (*Id.* at ¶ 73.) When Sgt. Biebel signed off on reports, he would read them to get an idea of what occurred but did not look for anything specific in the reports. (*Id.*) Sgt. Biebel also played no role in Plaintiffs' criminal prosecutions. (SOF at ¶¶ 74, 87.)

Like Sgt. Biebel, Sgt. Cappitelli's role in the Soto homicide investigation was limited to signing police reports. (SOF at ¶ 75.) Sgt. Cappitelli did not report for duty on April 3 or April 4. (*Id.* at ¶ 76.) Other than signing reports, he was not involved in the Soto homicide investigation, nor Plaintiffs' criminal prosecutions. (*Id.* at ¶¶ 75-76, 87.) He did not interview anyone in connection to the case, including Plaintiffs. (*Id.* at ¶¶ 32-34, 36-40, 41-51, 53-58, 60-64, 75-76, 87.) Sgt. Cappitelli did not go to the crime scene, collect evidence, or draft reports. (*Id.* at ¶¶ 75-76, 87.) Nor did he discuss the investigation or criminal charges with prosecutors. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). While the court must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, *Anderson*, 477 U.S. at 255, "that

duty does not extend to drawing inferences that are supported by only speculation or conjecture," *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013); *accord McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In the end, summary judgment is the "put up or shut up moment in litigation." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). As to any issue on which a Plaintiff bears the burden of proof, he must identify *evidence* that would permit a jury to find in his favor. *Roberts v. Broski*, 186 F.3d 990, 995 (7th Cir. 1999) (citations omitted).

## ARGUMENT

I.    **The Defendant Supervisors Were Not Personally Involved in Plaintiffs' Alleged Constitutional Violations[4]**

As a prerequisite as to Plaintiffs' federal claims, "[i]ndividual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (citation and internal quotation marks omitted). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (citation omitted). The mere presence of officers on scene, without more, is *not* enough to establish liability. *Trout v. Frega*, 926 F. Supp. 117, 121 (N.D. Ill. 1996) (emphasis added) (citing *Apostal v. City of Crystal Lake*, No. 94 C 50068, 1995 WL 692680, at *6 (N.D. Ill. Nov. 22, 1995)).

   a.    **Plaintiffs lack any evidence establishing the involvement of the Defendant Supervisors in their claims for coerced and/or fabricated confessions.**

---

[4] As noted above, Plaintiffs do not bring separate supervisor liability claims against the Defendant Supervisors. (*See generally*, *Reyes*, Dkt. 396; *Solache*, Dkt. 224.) Based on Plaintiffs' allegations however, the Defendant Supervisors address any such claim in Section II below.

Plaintiffs allege that various Defendants coerced and/or fabricated their confessions on April 3, 4, and early morning hours of April 5, 1998, which were used to secure their criminal convictions. (*Reyes* Dkt. 408 at ¶¶ 5, 54, 64; *Solache* Dkt. 238 at ¶¶ 47, 59, 64.) However, there is **no evidence** that Defendant Supervisors were even working or present at Area 5 during this time frame, let alone that they directed, were involved in, or otherwise knew of any alleged unconstitutional conduct during Plaintiffs' questioning.

"The Fifth Amendment… prohibits the use of involuntary or coerced confessions." *Mack v. City of Chi.*, No. 19 CV 4001, 2023 WL 4744791, at *15 (N.D. Ill. July 25, 2023) (citation and internal quotation marks omitted). "To bring a successful Fifth Amendment claim, [Plaintiffs] must show (1) that [their] confession was involuntary and coerced, and (2) that [their] confession was used against [them] in a criminal case." *Id.*

None of the Defendant Supervisors participated in *any part* of the criminal investigation on April 3 through April 5. (SOF at ¶ ¶ 71-76.) Significantly, Plaintiffs cannot point to a single piece of evidence that Sgt. Mingey and Sgt. Biebel were even present at the CPD when *any* witness or suspect was questioned or that they were otherwise aware of any allegedly improper conduct by any other Defendant during that questioning. (SOF at ¶¶ 32-34, 36-40, 41-51, 53-58, 60-64, 72, 74.) To the contrary, the only evidence in this case is that they were *not* at CPD on April 3, 4, and 5, when Plaintiffs claim they and other witnesses were physically beaten and threatened. (*Id.*) And while Sgt. Mingey participated in tangential tasks on April 1 into the morning of April 2, every task completed by Sgt. Mingey occurred *before* the Plaintiffs even became *known* to investigating detectives. (SOF at ¶¶ 19, 71.)

While the calculus for Sgt. Cappitelli is slightly different, he too is entitled to summary judgment. Although Sgt. Cappitelli was at work on April 5 (though not April 3 or 4), his shift

started well after Plaintiffs had already signed their statements, and likely after Plaintiffs had been taken to lockup. (SOF at ¶¶ 32-34, 36-40, 41-51, 53-58, 60-64, 75-76.) Notably, there is zero evidence that Sgt. Cappitelli had contact with, saw, or discussed Plaintiffs with anyone at any time. Rather, by the time Sgt. Cappitelli's shift started at CPD on April 5, the investigation was essentially concluded, and Plaintiffs were already in the process of being charged and booked into lockup. (SOF at ¶¶ 51, 60, 64, 75-76.) And even if allegedly unconstitutional acts did occur at some point after Sgt. Cappitelli arrived on April 5, his mere presence in the building, without more, obviously fails to rise to the level necessary for Reyes's claims against him to survive. *Trout*, 926 F. Supp. at 121.

What is more, the mere fact that Sgt. Mingey, Sgt. Biebel and Sgt. Cappitelli signed off on reports as approving supervisors is also insufficient to establish that they were present for or had any knowledge that any officer involved in questioning Plaintiffs had acted improperly. *See Bedford v. Dewitt*, 2023 WL 6312107, *3 (N.D. Ill. Sept. 28, 2023) (after-the-fact approval of tactical response report did not rise to level of personal involvement necessary to sustain constitutional violation). The inventories Sgt. Mingey signed were both completed *prior* to April 3, Biebel signed off on two reports six days *after* Plaintiffs were already booked into lockup, and Sgt. Cappitelli signed off on reports *after* detectives had already obtained statements from Plaintiffs. (SOF at ¶¶ 60, 64, 71, 73, 75.) These acts are insufficient to establish the necessary personal involvement. *See Bedford*, 2023 WL 6312107, *3; *Brand v. Jeffreys*, 3:21-cv-01396-GCS, 2022 WL 3153994, at *2 (S.D. Ill. Aug. 8, 2022) (the mishandling of a grievance, which was reviewed by a supervisor "after the fact," did not satisfy section 1983's personal-involvement requirement); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1182-83 (7th Cir. 1994)

(refusing to extend liability where any unconstitutional action had already occurred and supervisor could have done nothing to undo that fact).

Any inference that these limited acts suggest that they were involved in coercing or fabricating confessions from Plaintiffs would be "manifestly unreasonable," which inference this Court should "decline to draw…for purposes of summary judgment." *REXA, Inc. v. Chester*, 42 F.4th 652, 666 (7th Cir. 2022). Indeed, such an inference would negate the proof-based requirements of supervisory liability, instead imposing tortious risk upon any higher-ranking officer who is involved in an investigation regardless of whether evidence showed that he knew of or approved subordinate misconduct. Accordingly, summary judgment should be granted in the Defendant Supervisors' favor on Plaintiffs' coerced and/or fabricated confession claims (Plaintiffs' Count I).

> **b. Plaintiffs lack any evidence establishing personal involvement of the Defendant Supervisors in their Due Process claims.**

In addition to their claims for coerced and/or fabrication confessions, Plaintiffs aver that Defendants withheld numerous items in violation of *Brady v. Maryland*, 373 U.S. 83 (1963): original crime scene photos of the Soto murder, notes from witness interviews, documents that would have reflected that "Defendants had multiple theories of the case and alternate suspects," and "[l]arge bags of evidence containing potentially exculpatory evidence that were removed from the scene and not inventoried or produced." (SOF at ¶¶ 97-100.) Plaintiffs also allege that "Defendants" violated due process by fabricating witness statements and police reports to fit Guevara's theory of the crime. (*Reyes* Dkt. 408 at ¶ 136; SOF at ¶¶ 97-100.)

To establish a civil *Brady* claim, "a plaintiff must prove: (1) the evidence at issue [was] favorable to his defense; (2) the officer concealed the evidence intentionally or at least recklessly; and (3) the concealment prejudiced him." *Coleman v. City of Peoria*, 925 F.3d 336,

349 (7th Cir. 2019); *Moran v. Calumet City*, 54 F.4th 483, 492 (7th Cir. 2022). To establish a

fabrication of evidence claim, a plaintiff must show that police officers "created evidence that

they knew to be false" and that the evidence was used "in some way" to deprive them of liberty.

*Anderson v. City of Rockford*, 932 F.3d 494, 510 (7th Cir. 2019) (quoting *Petty v. City of*

*Chicago*, 754 F.3d 416, 423 (7th Cir. 2014) and *Whitlock v. Brueggemann*, 682 F.3d 567, 580

(7th Cir. 2012)).

At the risk of belaboring the point, the Defendant Supervisors did not personally

investigate the Soto murder and kidnapping criminal investigations, other than their tangential

roles discussed above. Instead, Plaintiffs' arguments are based solely on speculation and are at

odds with well-established evidence. And this speculation is insufficient to overcome summary

judgment. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010) (non-movant cannot rely on

inferences supported by mere speculation or conjecture to overcome summary judgment).

Plaintiffs claim the Defendant Supervisors destroyed original crime-scene photographs. A

"destruction of evidence" due process claim requires a showing that: "(1) the [Defendants] acted

in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and

(3) the evidence was of such a nature that [Plaintiffs were] unable to obtain comparable evidence

by other reasonably available means." *Jones v. York*, 34 F.4th 550, 559 (7th Cir. 2022) (citation

and internal quotation marks omitted). Here, Plaintiffs cannot prove any element of this claim.

First, there is no evidence any photographs were destroyed at all. Nor can Plaintiffs'

show the issue with the development of the original photographs was suppressed. Both the

unusable original photos and the second set of photos were produced in the criminal proceedings,

as were the reports explaining the issues with the originals. (SOF ¶¶ 67-68.) Harvey testified at

Plaintiffs' criminal trial that the photos were not able to be properly developed because of an

issue with the flash or shutter. (*Id.*) And there is no evidence that Harvey purposefully rendered the original photos unusable. Second, Plaintiffs cannot establish any Defendant Supervisors played any role in taking or developing any photos, or that they otherwise directed Harvey, Stankus, or Naujokas to take any action with respect to the photographs. *Colbert*, 851 F.3d at 657. Finally, Plaintiffs have no evidence that the original photographs would have been exculpatory or that any alleged exculpatory value would have been apparent to the Defendants Supervisors. *See Coleman*, 925 F.3d at 349 (suppressed evidence must be favorable to the defense); *Ruiz v. City of Chi.*, 931 F.3d 592, 600-01 (7th Cir. 2019) (plaintiff must show suppressed evidence was favorable to defense and material to guilt or punishment); *Jones*, 34 F.4th at 559 (exculpatory value of evidence must have been apparent).

Plaintiffs next allege that notes taken of interviews of witnesses were suppressed. However, the Defendant Supervisors did not interview *any* witnesses, they did not draft any notes or reports, and there is no evidence they otherwise knew of or suppressed such notes. Simply put, the Defendant Supervisors were not involved in the taking or documenting *any* witness statements. (SOF at ¶¶ 71-76.)

In addition, Plaintiffs allege that documents reflecting alternate suspects or theories were created and suppressed. But Sgt. Mingey was not involved in the investigation after processing the scene. (SOF at ¶¶ 71-72.) Sgt. Biebel was not involved in the homicide investigation at all. (*Id.* at ¶¶ 73-74.) And other than signing reports, Sgt. Cappitelli had no role. (*Id.* at ¶¶ 75-76.) All three were not on duty April 3 or 4 when the witnesses were being interviewed and when Plaintiffs were brought in for questioning. (*Id.* at ¶¶ 19, 51, 60, 64, 71-76.) As such, they had no ability to develop theories of the case including any "alternate suspects." And, they played *no role whatsoever* in the criminal proceedings. (*Id.* at ¶¶ 71-76, 87.) For the same reasons, the

Defendant Supervisors could not have fabricated police reports and witness statements to "fit Guevara's theories" of the case.

Similarly, the Defendant Supervisors could not have suppressed large bags of evidence removed from the scene. Sergeants Biebel and Cappitelli never went to the scene and there is no evidence they had any contact with any evidence collected from the scene. (SOF ¶¶ 73-76.) Only Sgt. Mingey went to the scene, and there is no evidence that he collected any evidence at all or knew of large bags of evidence being improperly removed, much less that they contained exculpatory evidence.

Plaintiffs' *Brady* and fabrication claims therefore fail against the Defendant Supervisors because they cannot establish that the Defendant Supervisors suppressed *any* evidence, let alone that they did so intentionally or recklessly; nor can they establish that the Defendant Supervisors created *any* evidence, let alone evidence they knew to be false. Nor can Plaintiffs point to anything to suggest that they were otherwise aware of any alleged misconduct in connection with any such evidence. The Defendant Supervisors are thus entitled to summary judgment on the Due Process *Brady* and fabrication of evidence claims (Reyes Count II, Count IV) (Solache Count II).

### c. Plaintiffs cannot meet their burden against the Defendant Supervisors on their failure to intervene claims.

Blurring lines between the supervisory claims littered throughout their complaints, Plaintiffs also bring a separate standalone claim which alleges that the Defendant Supervisors (among others) knew about the unconstitutional actions of the Defendant Officers, had an opportunity to intervene, and failed to do so. (*See Reyes*, Dkt. 396, Count V; *Solache*, Dkt. 224, Count III.)

An officer "who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir.2005) (emphasis in original).

Once again, Plaintiffs cannot show that the Defendant Supervisors were even in the building when alleged unconstitutional acts occurred, cannot show that they were otherwise aware of any such acts, and therefore cannot show that they had a reasonable opportunity to intervene. Plaintiffs cannot establish *any* element of his failure to intervene claim and the Defendant Supervisors are entitled to summary judgment (*Reyes* Count V) (*Solache* Count III).

### d. Plaintiffs cannot prove all the elements of their deprivation of liberty and malicious prosecution claims.

Plaintiffs also allege that the Defendant Supervisors "used false evidence" to "cause the institution and continuation of criminal proceedings against Plaintiff, without probable cause," (*see Reyes*, Dkt. 408, at ⁋ 142),[5] and "exerted influence" to initiate and to continue judicial proceedings against them without any probable cause. (*See Reyes*, Dkt. 396, at ⁋ 190; *Solache*, Dkt. 224, at ⁋ 99.)

Under Illinois law, to succeed on a malicious prosecution claim, a plaintiff must prove (among other things) that the defendant commenced or continued a criminal proceeding against him. *Swick, et. al. v. Liautaud, et. al.*, 169 Ill. 2d 504, 512 (1996); *see also Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648, 653-54 (1st Dist. 2006); *Beaman v. Freesmeyer*, 2017 Il App (4th) 160527, 82 N.E.3d 241 (Ill. App. Ct. 4th Dist., 2017). The commencement or continuance

---

[5] Only Reyes brought a Fourth Amendment deprivation of liberty without probable cause claim.

of a prosecution requires a defendant to have played a "significant role" in the criminal prosecution. *Hill v. Cook County*, 463 F. Supp. 3d 820, 845 (N.D. Ill. May 31, 2020) (citations omitted). Recently, the Supreme Court has held that a Fourth Amendment claim for deprivation of liberty without probable cause mirrors the elements of a malicious prosecution claim. *See Thompson v. Clark*, 596 U.S. 36, 43 (2022). For his Fourth Amendment claim too, Reyes must show that the Defendant Supervisors commenced or continued criminal proceedings against him. *Id.*

Plaintiffs have no evidence that the Defendant Supervisors were involved in securing any evidence that was used to detain or prosecute them, that the Defendant Supervisors were involved in the decisions to arrest and charge Plaintiffs, that they signed criminal complaints, provided *any* information to prosecutors, or testified in any criminal proceedings. (SOF at ¶ 87.) Not only did the Defendant Supervisors not play a "significant role" in Plaintiffs' criminal prosecutions —they played *no role at all*. *See Hill*, 463 F. Supp. 3d at 845. Without personal involvement in Plaintiffs' criminal proceedings, there can be no liability against them. *See Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996). Accordingly, the Defendant Supervisors are entitled to summary judgment on Reyes' claim for deprivation of liberty without probable cause (Count III), and both Plaintiffs' claims of malicious prosecution (*Reyes* Count IX) (*Solache* Count V).

### e. Plaintiffs cannot show that the Defendant Supervisors engaged in "extreme and outrageous" conduct that they knew would cause Plaintiffs extreme emotional distress.

Plaintiffs further allege that the Defendant Supervisors' wrongful acts caused them extreme emotional distress. (*See Reyes*, Dkt. 396, Count VIII, *Solache*, Dkt. 224, Count VI.) To prove an IIED claim under Illinois law, a plaintiff must demonstrate that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability

that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe distress." *Swearnigen–El v. Cook County Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010).

Here, Plaintiffs' IIED claims are based on the same conduct that allegedly violated their constitutional rights. Because the constitutional claims against the Defendant Supervisors fail based on the lack of evidence of their involvement, (*see supra* at 6-14), Plaintiffs cannot demonstrate the "extreme and outrageous" conduct necessary to support their IIED claims. *See Cooney v. Casaday*, 746 F.Supp.2d 973, 977–78 (N.D. Ill. 2010) (plaintiff's IIED claim must fail when it is premised on alleged constitutional violations that fail). Accordingly, summary judgment is appropriate for the Defendant Supervisors on Plaintiffs' IIED claims (*Reyes* Count VIII) (*Solache* Count VI).

> **f.  The Defendant Supervisors are entitled to summary judgment on Plaintiffs' claims of conspiracy.**

Finally, Plaintiffs lodge claims against the Defendant Supervisors for Section 1983 conspiracy (Reyes only) and state law conspiracy (Reyes and Solache). To meet their burden for either federal or state law conspiracy, Plaintiffs must show "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Wheeler v. Piazza*, 364 F. Supp.3d 870, 880 (N.D. Ill., Mar. 5, 2019); *see also Linblad v. Nelson*, 2019 IL App (1st) 181205, ¶ 23, 138 N.E. 3d 141, 147 (Ill. App. 2019) (to state a state law claim for conspiracy a plaintiff must show "an agreement and a tortious act committed in furtherance of that agreement."). For an action to be "in furtherance of the agreement" it must be an action that is "reasonably related to the promotion of the alleged conspiracy." *Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 913 (N.D. Ill. May 11, 2016) (citations omitted).

To state the obvious, Plaintiffs cannot show any "overt act" by any Defendant Supervisor taken *in furtherance* of any agreement to deprive Plaintiffs of their constitutional rights because they were not involved in the investigation or even working from the time Plaintiffs first became known as suspects until the time murder charges were approved by members of the Cook County State's Attorney's Office. Nor can they show there was any express or implied agreement with any other Defendant to deprive the Plaintiff of their constitutional or state law rights. *Wheeler*, 364 F. Supp.3d at 880; *Linblad*, 2019 IL App (1st) 181205, ⁋ 23. Accordingly, summary judgment is appropriate for the Defendant Supervisors on Plaintiffs' federal and state law conspiracy claims (*Reyes* Count VI, X) (*Solache* Count VII).

## II. Plaintiffs Cannot Meet Their Burden on Supervisor Liability

To close the book on all possible avenues here, Plaintiffs (whether they intend to bring such a claim or not), are unable to meet their burden as to any claim of Supervisor Liability on the part of the Defendant Supervisors.

For a supervisor to be liable under Section 1983, the supervisor must be "personally responsible for the deprivation of the constitutional right." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations omitted)). Personal responsibility requires that the supervisor knew about the conduct and facilitated it, approved it, condoned it, or turned a blind eye to it. *Id.* (citing *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1998)). If supervisor liability is "predicated on a failure to act, the plaintiff must show an 'extremely high degree of culpability.'" *Reardon v. Schossow*, 416 F. Supp.3d 793, 807 (E.D. Wisc., Sept. 24, 2019) (citing *Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014) (quoting *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983)). "A supervisor's '[f]ailure to control [his subordinates] is not

actionable at all absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it.'" *Id.* at 807 (citing *Odgoba*, 22 F. Supp. 3d at 909-910 (quoting *Lenard*, 699 F. 2d at 885)). Conclusory allegations, by themselves, are not sufficient to raise a supervisor liability claim above the speculative level. *Bohannon v. City of Milwaukee*, 998 F. 2d 736, 748 (E.D. Wisc., Feb. 11, 2014).

Here, there is no evidence that the Defendant Supervisors "encouraged the specific incident of misconduct or in some way directly participated in it." *See Reardon,* 416 F.Supp.3d at 807; *see also Carmona v. City of Chicago.*, No. 15 C 462, 2019 WL 4166856, at *9 (N.D. Ill. Sept. 3, 2019) (citing *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001)). As demonstrated above, the record is void of any evidence that Sgt. Mingey, Sgt. Biebel or Sgt. Cappitelli had any personal involvement in, or otherwise encouraged, any of the misconduct Plaintiffs have alleged in this lawsuit. *Carmona*, 2019 WL 4166856, at *9 (finding no evidence that the supervisor had "any inkling that the alleged constitutional violations – or any alleged malicious prosecution – were taking place, let alone that he facilitated, approved, or condoned them"). The Defendant Supervisors cannot be held liable for alleged misconduct of which they had no knowledge and are therefore entitled to summary judgment on all claims against them. *See Chavez*, 251 F.3d at 651 (holding there is no liability for failing to detect and prevent subordinate's misconduct).

## III.    Independent of the Defendant Supervisors' Lack of Involvement, They are Entitled to Summary Judgment on Plaintiffs' Claims

The Defendant Officers in this case are moving separately for summary judgment on alternate grounds on Plaintiffs' Fifth Amendment, Due Process, *Brady*, fabrication of evidence, failure to intervene, conspiracy, deprivation of liberty, IIED and malicious prosecution claims.

The Defendant Supervisors hereby incorporate those arguments herein, as if fully stated, and for those alternative grounds, are additionally entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants Edward Mingey, Robert Biebel, and Kevin Rogers as Special Representative of Francis Cappitelli (deceased), are entitled to summary judgment on all claims against them, and respectively request this Court grant their motion against Plaintiffs and in their favor, and for any further relief this Court deems just and proper.

Date: December 16, 2024

Respectfully submitted,

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Attorney No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Defendants Halvorsen,*
*Dickinson, Rutherford, Trevino, Mingey, Biebel,*
*and Cappitelli*

James G. Sotos
Josh M. Engquist
Caroline P. Golden
Allison L. Romelfanger
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on December 16, 2024, I electronically filed the foregoing **Defendant Supervisors' Memorandum of Law in Support of Their Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

*Attorneys for Arturo Reyes:*
Jon Loevy
Steven Art
Anand Swaminathan
Rachel Brady
Sean Starr
Wallace Hilke
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
steve@loevy.com
anand@loevy.com
brady@loevy.com
sean@loevy.com
hilke@loevy.com

*Attorneys for Gabriel Solache:*
Jan Susler
Ben H. Elson
Nora Snyder
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
jsusler@peopleslawoffice.com
ben.elson79@gmail.com
norasnyder@peopleslawoffice.com

*Attorneys for City of Chicago:*
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Austin Rahe
Patrick R. Moran
Lauren Ferrise
Sabrina A. Scardamaglia
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654

(312) 494-1000
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com
pmoran@rfclaw.com
lferrise@rfclaw.com
sscardamaglia@rfclaw.com

*Attorneys for Defendant Guevara:*
Steven Blair Borkan
Timothy P Scahill
Whitney N. Hutchinson
Graham P. Miller
Emily E. Schnidt
Christiane E. Murray
Molly E. Boekeloo
Amanda Guertler
Krystal Gonzalez
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580-1030
sborkan@borkanscahill.com
tscahill@borkanscahill.com
whutchinson@borkanscahill.com
gmiller@borkanscahill.com
eschnidt@borkanscahill.com
cmurray@borkanscahill.com
mboekeloo@borkanscahill.com
aguertler@borkanscahill.com
kgonzalez@borkanscahill.com

/s/ Josh M. Engquist
Josh M. Engquist