IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTIRCT OF ILLINIOS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS HALVORSEN, DICKINSON,
RUTHERFORD, TREVINO, MINGEY, BIEBEL AND
CAPPITELLI'S LOCAL RULE 56.1 STATEMENT OF UNCONTESTED FACTS**

Defendants Joann Halvorsen as Special Representative of Ernest Halvorsen (deceased),

Edwin Dickinson, Robert Rutherford, Daniel Trevino, Edward Mingey, Robert Biebel, and

Kevin Rodgers, as Special Representative of Francis J. Cappitelli (deceased) (collectively,

"Movants"), by and through their attorneys, The Sotos Law Firm, P.C., submit their statement of

undisputed material facts pursuant to Local Rule 56.1 in support of summary judgment, and

state:

**GENERAL BACKGROUND AND THE PARTIES**

1.     Plaintiffs Solache and Reyes came to the United States illegally and lived together

in the Chicago Lawn Neighborhood in a first-floor apartment located at 6234 S. Mozart,

Chicago, with Adriana Mejia ("Adriana") and her husband Rosauro Mejia ("Rosauro"). Carlos Martinez, Adriana's brother, also lived in the first-floor apartment. (**_Solache_ Dkt. 238, Answer to Solache FAC, ¶ 13; Ex. 12, 6/15/2000 Guadalupe Mejia Trial Test. Tr., 1437:17-1438:14; Ex. 5, 6/19/2000 Reyes Trial Test. (_Reyes_ only) Tr., 2030:4-8, 2030:12-2031:18; Ex. 11, Adriana Mejia Dep., Vol. 2, 35:7-13; Ex. 13, Solache Dep. Vol. 1, 33:15-36:12.)** Jorge Mejia (Rosauro's brother), his wife, Guadalupe Mejia ("Guadalupe"), their two daughters (a 6-year-old and a 3-year-old), Jorge's brother, Leobardo Mejia, and Jorge's friend from Mexico, Martin Vaca, all lived in the basement apartment at 6234 S. Mozart. **(Ex. 12, 6/15/2000 G. Mejia Trial Test. Tr., 1437:17-1438:8**; **Ex. 3, Adriana Mejia Dep. Vol. 3, 48:6-14.; Ex. 6, Guadalupe Mejia Dep., 17:23-24, 18:21-19:5, 24:25-25:19; Ex. 7, Rosauro Mejia Dep., 12:24-13:20; Ex. 8, Jorge Mejia Dep., 11:24-12:15.)** The first floor and basement apartments at 6234 S. Mozart shared one phone line located in the basement apartment. **(Ex. 14, 4/7/1998 Guadalupe Mejia GJ Test. Tr., 12:1-6; Ex. 3, Adriana Mejia Dep. Vol. 3, 48:3-5; Ex. 6, Guadalupe Mejia Dep., 15:6-8, 102:18-104:3.)**

2.     In March 1998, Jacinta and Mariano Soto lived in the rear basement apartment at 2071 N. Leavitt with their children Santiago and baby Maria. In 1998, Mariano Soto was approximately 5'3" and weighed 161 pounds and Jacinta Soto was approximately 5'0" and weighed 175 pounds. Maria had a distinctive birthmark on the left side of her neck. A true and correct copy of a photo of Maria showing her distinctive birthmark follows:



**(Ex. 15, 6/14/2000 Jorge Soto Trial Test. Tr., 1329:23-1331:5; Ex. 15, 6/14/2000 Rosa Aranda Trial Test. Tr., 1345:10-1347:18; Ex. 23, *Solache/Reyes* People's Trial Ex. 9; Ex. 34, Report of Postmortem Exam of Jacinta Soto, at p. 1; Ex. 35, Report of Postmortem Exam of Mariano Soto, at p. 1.).)**

3.      In April 1998, Reynaldo Guevara, Ernest Halvorsen,[1] Edwin Dickinson, and Robert Rutherford were Detectives employed by the City of Chicago's Police Department ("CPD") and assigned to Area 5, Violent Crimes. **(Ex. 15, 6/14/2000 Halvorsen Trial Test. Tr., 1362:2-21; Ex. 12, 6/15/2000 Dickinson Trial Test., 1477:8:1478:10; Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1577:15-23; Ex. 16, Rutherford Dep. Tr. Vol. 1, 18:23-19:2; *Solache* Dkt. 238, ¶ 7; *Reyes* Dkt. 645, ¶ 19.)** Daniel Trevino was a CPD Youth Officer. **(Ex. 33, 6/16/2000 Trevino Trial Test. (*Reyes* only) Tr., 1763:14-17.)** And Robert

---

[1] Halvorsen is now deceased. JoAnn Halvorsen, Special Representative for Ernest Halvorsen, is Ernest Halvorsen's widow and has been named as a Defendant in her capacity as Special Representative of Ernest Halvorsen, to defend this action on his behalf. **(*Reyes* Dkt. 645, Answer to SAC, ¶ 20; *Solache* Dkt. 238, Answer to FAC, ¶ 8.)**

Biebel, Edward Mingey and Francis Capitelli[2] were CPD Sergeants and assigned to Area 5. **(Ex. 17, Biebel Dep. Tr., 23:5-24:22; Ex. 18, Mingey Dep. Tr., Vol. 1, 15:3-5; Ex. 19, Camacho Affidavit, ¶ 7.)**

4.      At the time of the Soto murders and kidnappings, Solache knew a few English words, but not enough to have a conversation, and could not read English. **(Ex. 9, Solache Dep., Vol. 2, 295:5-16.)** Reyes did not speak any English. **(Ex. 10, 3/3/2000 Reyes Pretrial Test. Tr., 614:1-2.)** Adriana did not speak English in 1998; she spoke Spanish. **(Ex. 11, Adriana Mejia Dep., Vol. 2, 8:11-13; Ex. 1, Statement of Adriana Mejia at 1.)** In 1998, Adriana was 5'0" tall and weighed 164 pounds. **(Ex. 81, Adriana Mejia Cermak Medical Intake Records.)**

5.      In April 1998, Detective Guevara and Youth Officer Trevino spoke Spanish. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1579:5-11; Ex. 33, 6/16/2000 Trevino Trial Test. (*Reyes* only) Tr., 1765:3-4.)** Detectives Halvorsen, Dickinson, and Rutherford did not speak Spanish. **(Ex. 33, 6/16/2000 Trevino Trial Test. (*Reyes* only) Tr., 1765:23-1772:2, 1780:22-1781:1; Ex. 16, Rutherford Dep., 39:11-21; Ex. 20, Navarro Dep., 192:10-13.)**

*Adriana's Faked Pregnancy*

6.      Adriana was unable to conceive and had been trying for several years; in June 1997 she told Rosauro and her family that she was pregnant. Adriana was not pregnant, but she pretended that she was to her husband, to her housemates Solache and Reyes, and to her family. **(*Solache* Dkt. 238, Answer to FAC, ¶ 14; *Reyes* Dkt. 645, Answer to SAC, ¶ 35; Ex. 21, 4/7/1998 Rosauro Mejia Grand Jury Test. Tr., 6:3-13:19; Ex. 3, Adriana Mejia Dep. Vol. 3, 12:23-13:14, 15:13-24; Ex. 22, Adriana Mejia Dep. Vol. 4, 107:24-111:24; Ex. 13, Solache**

---

[2] Francis Capitelli died in 2016. **(Reyes Dkt. 162, Memo and Op., at p. 2.)** Kevin Rogers is defending this action on his behalf as the Special Representative of Francis Capitelli. **(*Reyes* Dkt. Nos. 209 and 645, Answer to SAC, ¶ 22.)** Solache makes no claims against Capitelli or his Special Representative Rogers. **(*See generally*, *Solache* Dkt. 238, Answer to FAC.)**

**Dep. Vol. 1, 106:16-107:3, 114:22-115:20, 116:21-117:15.)** Adriana instead hoped she could find a baby that she could pass off as her own. **(Ex. 3, Adriana Mejia Dep., Vol. 3, 11:14-13:6; Ex. 22, Adriana Mejia Dep., Vol. 4, 121:23-124:14.)**

*Friday, March 27, 1998 – Adriana Pretends to Give Birth at UIC Hospital*

7. On the morning of Friday, March 27, 1998, Adriana had Rosauro take her to the University of Illinois - Chicago ("UIC") Hospital to supposedly deliver the baby. Rosauro left Adriana at UIC after Adriana promised to call him when the baby was coming, or her pains were severe. **(Ex. 21, 4/7/1998 Rosauro Mejia GJ Test. Tr., 10:24-12:11; Ex. 3, Adriana Mejia Dep., Vol. 3, 189:2-22; Ex. 22, Adriana Mejia Dep., Vol. 4, 140:12-24;** *Reyes* **Dkt. 645, Answer to SAC, ¶ 35.)** Later that evening, Adriana called home and told Rosauro they had a beautiful baby girl, and he should pick her up the next day. **(Ex. 21, 4/7/1998 Rosauro Mejia GJ Test. Tr., 12:12-13:19; Ex. 3, Adriana Mejia Dep. Vol. 3, 166:20-167:18.)**

8. Jacinta Soto was at UIC on the morning of Friday, March 27, 1998, for a 10:00 a.m. appointment for Santiago with his pediatrician, Dr. Nagamani Beligere, and had Maria with her for the appointment. **(Ex. 12, 6/15/2000 Beligere Trial Test. Tr., 1467:1-1471:22.)**

*Wednesday, April 1, 1998 – CPD is Called to 2071 N. Leavitt & the Crime is Discovered*

9. On Wednesday, April 1, 1998, at approximately 4:45 p.m., CPD 14th District patrol officers Corrie Bergadon and David Valentin responded to a 911 call to conduct a well-being check at the rear basement apartment at 2071 N. Leavitt that was placed after friends and family members became concerned when they could not contact Mariano and Jacinta. **(Ex. 15, 6/14/2000 Valentin Trial Test. Tr., 1349:12-1350:19, 1351:11-20, 1352:7-11; Ex. 29, Valentin Dep., 66:14-17; Ex. 102, Raul Aranda Dep., 10:23-24, 12:5-21, 15:3-18:21, 20:10-23, 24:4-11; Ex. 42, CPD Investigative File, General Offense Case Report, RFC 418-419;**

5

*Reyes* **Dkt. 645, Answer to SAC ¶ 29.)** Officer Valentin speaks Spanish; Officer Bergadon did not. **(Ex. 29, David Valentin Dep., 14:13-14, 26:9-12.)**

10.     Once inside, the officers found the already decomposing bodies of Mariano and Jacinta Soto. Mariano was found in the kitchen by the front door, with knife wounds to his head, face, neck, and chest. Jacinta was found in the bedroom with knife wounds to her back and buttocks. **(Ex. 15, 6/14/2000 Valentin Trial Test. Tr., 1354:15-1356:13; Ex. 15, 6/14/2000 Halvorsen Trial Test. Tr., 1364:16-1365:8, 1375:9-1376:14; Ex. 33, 6/16/2000 Harvey Trial Test. Tr., 1829:7-13; Ex. 24, *Solache/Reyes* People's Trial Ex. 2.)** A chart depicting the 20+ different injuries to Jacinta's body is attached as Ex. 31. A chart depicting the 40+ injuries to Mariano's body is attached as Exhibit 32. **(Ex. 33, 6/16/2000 Lifschultz Trial Test. Tr., 1899:7-1906:5, 1909:17-1916:14, 1920:16-22, 1922:9-16; Ex. 34, *Solache/Reyes* People's Trial Ex. 59 (Jacinta Soto autopsy report); Ex. 35, *Solache/Reyes* People's Trial Ex. 58 (Mariano Soto autopsy report); Ex. 31, *Solache/Reyes* People's Trial Exhibit 40 (chart of Jacinta's injuries); Ex. 32, *Solache/Reyes* People's Trial Exhibit Nos. 48 (chart of Mariano's injuries).)**

11.     Officers Valentin and Bergadon were informed by the Sotos' relatives on scene that Mariano and Jacinta had two small children; the officers thoroughly searched the apartment and surrounding area for the children but did not find them. **(Ex. 15, 6/14/2000 Valentin Trial Test. Tr., 1356:14-24.)**

12.     Sergeant Mingey assigned Area 5 Detectives Halvorsen and Guevara to investigate, and they responded to the scene at 2071 N. Leavitt. Sergeant Mingey also responded to the scene and searched the apartment for the Soto children but was unable to find them. **(Ex.**

18, Mingey Dep. Vol. 1, 121:18-122:7; Ex. 36, Mingey Dep. Vol. 2, 18:4-6, 35:20-36:13; Ex.

15, 6/14/2000 Halvorsen Trial Test. Tr., 1363:2-24, 1370:13-16.)

13.     While on scene, the Sotos' neighbor, Alfredo Aranda ("Alfredo") was

interviewed. Alfredo told detectives he lived in the front basement apartment at 2071 N. Leavitt.

Alfredo's apartment was adjacent to the Sotos' apartment: his bathroom shared a wall with the

bedroom of the Sotos' apartment. **(Ex. 15, 6/14/2000 Aranda Trial Test. Tr., 1311:7-23,**

**1317:4-1318:13; Ex. 24, *Solache/Reyes* People's Trial Exhibit 2.)** At around 6:30 a.m. on

Saturday March 28, 1998, while Alfredo was shaving in his bathroom, he heard moaning, "like a

sick person," a crash, something fall, and a dragging noise coming from the bedroom of the

Sotos' apartment. He also heard Santiago cry out "Papi!" a man say (in Spanish), "Shut up,

nothing is going to happen to you" and Santiago crying. **(Ex. 15, 6/14/2000 Alfredo Aranda**

**Trial Test. Tr., 1311:7-1320:19, 1324:22-24; Ex. 25, *Solache/Reyes* People's Ex. 5 (photo of**

**Santiago); Ex. 26, Alfredo Aranda Dep., 9:19-10:18, 14:21-24, 29:11-13, 38:7-12; Ex. 42,**

**General Offense Case Report, CPD Investigative File, at RFC Solache/Reyes- RFC 418-**

**419; Ex. 29, Valentin Dep., 63:7-72:23, 109:2-9, 103:13-104:20.)** He never heard anything in

the Sotos' apartment after that. **(Ex. 15, 6/14/2000 Alfredo Aranda Trial Test. Tr., 1314:17-**

**1316:24.)**

14.     From approximately 7:20 p.m. to midnight on April 1, 1998, CPD Forensic

Investigators Mark Harvey and John Karalow were at 2071 N. Leavitt to process the crime

scene. This included visually inspecting the scene, taking photographs with a film camera, and

collecting physical evidence. At the end of their shift, they returned to their office at 11th and

State, removed the film from the camera, put the film in an envelope, and deposited the envelope

in a basket. The photo unit, not the forensic investigators or detectives, was responsible for

7

picking up the film from the basket and developing it. **(Ex. 33, 6/16/2000 Harvey Trial Test. Tr., 1827:3-1834:10; Ex. 30, Harvey Dep., 33:22-34:2, 39:22-40:12, 42:12-43:5, 65:3-67:2, 69:1-70:11, 76:1-77:1, 137:5-141:12; Ex. 42, Harvey's Crime Scene Report, CPD Investigative File at RFC-Solache/Reyes 420.)**

15.     The forensic investigators collected two knives with black handles from the scene. One of the knives collected was found underneath Mariano's body. It was photographed and inventoried into evidence under Property Inventory No. 1974032. **(Ex. 15, 6/14/2000 Halvorsen Trial Test. Tr., 1366:23-1367:13, 1371:4-18; Ex. 33, 6/16/2000 Harvey Trial Test. Tr., 1830:2-1834:10; Ex. 42, Property Inventory No. 1974032, CPD Investigative File, at RFC-Solache/Reyes 406.)** The second knife was found inside a cardboard box for Regent Knives underneath a sofa in the kitchen. This knife was collected by forensic investigators and inventoried into evidence under Property Inv. No 1974031. **(Ex. 15, 6/14/2000 Halvorsen Trial Test. Tr., 1367:18-1368:24, 1371:19-1374:3; Ex. 33, 6/16/2000 Harvey Trial Test. Tr., 1829:14-1834:10; Ex. 42, Property Inventory No. 1974031, CPD Investigative File, at RFC-Solache/Reyes 408.)**

16.     Over the course of the next 36 hours, CPD took extensive action to find Santiago and Maria. Spanish-speaking officers from other units were reassigned to assist Area 5 Detectives with their investigation. **(Ex. 38, Phillip Cline Dep., 65:4-11, 122:3-8, 139:22-140:4, 206:2-10, 210:2-211:8, 215:5-21; Ex. 39, Scene Supp.)** CPD disseminated photos of Santiago and Maria to the public. **(Ex. 38, Phillip Cline Dep., 65:4-11, 206:5-10, 210:2-211:8, 215:16-21; Ex. 40, CPD Special Bulletin, *Solache/Reyes* People's Trial Ex. 18; Ex. 41, 7/28/1999 Kernan Pretrial Test. Tr., 96:8-97:16; Ex. 15, 6/14/2000 Hanlon Trial Test. Tr., 1399:20-1400:19, 1401:12-1402:21, 1404:15-1405:11; Ex. 42, CPD Investigative file at RFC**

**Solache/Reyes 346-351; Ex. 6, Guadalupe Mejia Dep., 82:12-24.)** Detectives also interviewed the Sotos' family members, interviewed the Sotos' current and former neighbors, distributed photos of the missing children at bus stations and O'Hare, issued notices about the missing children to law enforcement agencies in surrounding states, and interviewed Mariano's coworkers. **(Ex. 42, Various Police Reports, CPD Investigative File, at RFC-Solache/Reyes 336-339, 346-353, 355-356, 386-390, 398-405.)**

17.     Rosa Aranda, Jacinta's niece, came to the police station while the police looked for the missing children. She was not handcuffed when she was at the police station. When Guevara questioned her, he never asked her why she committed the murders, never asked her any details about the murders, never put his hands on her, never asked her about any knives, never told her he wanted her to confess to the crimes, and never fed her any facts about the Soto murders. **(Ex. 43, Rosa Aranda Dep., 17:15-17, 51:2-53:19, 117:24-118:9.)**

18.     Jorge Soto, Rosa's husband, was also at the police station when the police were searching for Santiago and Maria. The only officer Jorge spoke with was Detective Guevara, and they spoke Spanish to each other. Although Guevara mentioned him being a suspect because they had no leads, Jorge testified that was the only conversation he recalled, that Guevara did not mistreat him, that he left the police station that same day, and he felt that prior to being told he was free to leave, he could have left. **(Ex. 44, Jorge Soto Dep., 24:24-25:4, 27:8-34:12, 36:13-39:5.)**

### *Thursday, April 2 to Friday, April 3, 1998*

19.     At approximately 2:00-3:00 a.m. on Friday, April 3, 1998, Reyes, Solache, and Rosauro took Santiago to the 8th District police station located at 3515 West 63rd Steet, Chicago, and asked to speak with a Spanish-speaking officer. **(*Solache* Dkt. 238, Answer to**

**FAC, ¶ 17; Ex. 21, 4/7/1998 Rosauro Mejia GJ Test. Tr., 19:20-20:2; Ex. 5, 6/19/2000**

**Rosauro Mejia Trial Test. Tr., 1910:22-1913:24; Ex. 5, 6/19/2000 Reyes Trial Test. (*Reyes***

**only) Tr., 2040:9-12; Ex. 15, 6/14/2000 Juan Solis Trial Test. Tr., 1389:8-1390:4.)**

20.　　Officer Juan Solis, who speaks Spanish, was called in to translate. He and his

partner Officer Wade Golab arrived at the station shortly after 4:15 a.m. on April 3, 1998.

Rosauro told Officer Solis, in Spanish, that Adriana gave birth to their baby girl at UIC hospital

on March 27, 1998, and that Adriana had told him that while Adriana was waiting for Rosauro to

pick her up the next day, a woman named Norma Salazar approached her, said she was in labor,

and had no one to watch the boy (whom Norma called "Leonardo"). Rosauro also told Officer

Solis that Adriana had told him that the woman and Adriana had exchanged phone numbers and

the woman had given Adriana two phone numbers: a home phone number and a number for her

at the hospital. Rosauro called Adriana at home to get the phone numbers for Salazar and then

provided them to Officer Solis. **(Ex. 15, 6/14/2000 Solis Trial Test. Tr., 1389:8-1393:16; Ex.**

**82, Juan Solis Dep., 10:10-11:11, 14:9-15:10, 16:6-15, 23:6-40:10, 61:16-20; 68:18-21; Ex.**

**80, Solis Supp. Report, Juan Solis Dep. Ex. 1; Ex. 5, 6/19/2000 Rosauro Mejia Trial Test.**

**Tr., 1934:22-1935:4.)**

21.　　Rosauro also told Officer Solis about what Adriana had said about Norma

Salazar's initial request that Adriana watch the boy, and Adriana's excuses afterwards about why

no one had come to get the boy. **(Ex. 15, 6/14/2000 Solis Trial Test. Tr., 1389:8-1393:16,**

**1395:23-1396:12; Ex. 82, Juan Solis Dep., 10:10-11:11, 14:9-15:10, 16:6-15, 23:6-40:10,**

**61:13-20; 68:18-21; Ex. 80, Solis Supp. Report, Juan Solis Dep. Ex. 1.)** Rosauro also told

Officer Solis that he had never seen or spoken with Salazar and that Adriana was the only person

who had any contact with her. Rosauro explained that he brought the boy into the police station

because his picture was on the news. **(Ex. 82, Juan Solis Dep., 10:10-11:11, 30:21-31:23; Ex. 80, Solis Supp. Report, Juan Solis Dep. Ex. 1.)**

22.      Officers recognized "Leonardo" as the missing Soto boy, Santiago, from the CPD Special Bulletin and noted that Santiago responded to his name when called. Area 5 detectives were apprised of the development. **(Ex. 15, 6/14/2000 Hanlon Trial Test. Tr., 1399:8-1402:16, 1404:15-1405:15; Ex. 40, *Solache/Reyes* People's Trial Ex. 18 (CPD Special Bulletin).)** About an hour later, Area 5 Detectives William Kernan and Joe Mohan responded to the 8th District with a relative of Santiago's, who positively identified the boy as Mariano and Jacinta's son, Santiago. **(Ex. 15, 6/14/2000 Solis Trial Test. Tr., 1393:17-1395:1, 1395:23-1396:12; Ex. 15, 6/14/2000 Hanlon Trial Test. Tr., 1402:14-21; Ex. 15, 6/14/2000 Kernan Trial Test. Tr., 1417:4-1420:8.)**

23.      Solache, Reyes and Rosauro were transported to Area 5. **(Ex. 15, 6/14/2000 Brown Trial Test. Tr., 1407:17-1414:3; Ex. 15, 6/14/2000 Kernan Trial Test. Tr., 1420:9-18.)** While at Area 5, Det. Kernan interviewed Rosauro and Rosauro told Det. Kernan that Adriana had given birth at a hospital and while Adriana was waiting for Rosario to pick her up, a women named Norma Salazar approached Adriana and asked her to watch her son while she gave birth. **(Ex. 15, 6/14/2000 Kernan Trial Test. Tr., 1420:19-1423:10; Ex. 41, 7/28/1999 Kernan Pretrial Test. Tr., 80:11-85:6.)**

24.      Dets. Mohan and Kernan called the University of Illinois hospital, patient admissions department, to see if either Norma Salazar or Adriana Mejia had been a patient there and determined that neither Norma Salazar nor Adriana Mejia were or had been patients at UIC Hospital. **(Ex. 15, 6/14/2000 Kernan Trial Test. Tr., 1421:12-1423:5, 1426:1-6; Ex. 41, 7/28/1999 Kernan Pretrial Test Tr., 100:18-101:21.)**

25.     In the morning of April 3, 1998, Det. Edwin Dickinson, Det. Kevin McDonald, and school Officer Lilia Flores, who is fluent in Spanish, went to 6234 S. Mozart to interview Adriana and see if she had the missing Soto baby (Maria). **(Ex. 12, 6/15/2000 Flores Trial Test. Tr., 1457:5-1460:6; Ex. 12, 6/15/2000 Dickinson Trial Test. Tr., 1482:15-1484:4.)**

26.     Between approximately 10:00 a.m. and 11:00 a.m., on April 3, 1998, Dets. Dickinson and McDonald arrived at the Mozart address and interviewed Adriana with the assistance of Officer Flores. During the interview, Adriana showed the officers the baby (Maria) and the Detectives and Officer Flores saw that the baby was not a newborn (she was larger than a newborn), her umbilical cord had healed, and she had the same birthmark as Maria. At this time, Adraina was still claiming the baby was hers and she was watching the boy for a woman named Norma Salazar. **(Ex. 12, 6/15/2000 Flores Trial Test. Tr., 1459:4-1461:15, 1462:20-1463:19; Ex. 12, 6/15/2000 Dickinson Trial Test. Tr., 1484:5-23; Ex. 45, 3/31/2000 Adriana Mejia MTSS Test. Tr., E-6:23-E-8:13; Ex. 42, Supplementary Report, CPD Investigative File, at RFC-Solache/Reyes 194-196.)**

27.     At the conclusion of their interview with Adriana, Det. Dickinson called Area 5 and told Det. Mohan that they had recovered Maria from Adriana. **(Ex. 12, 6/15/2000 Dickinson Trial Test. Tr., 1484:21-1485:11; Ex. 12, 6/15/2000 Flores Trial Test. Tr., 1462:13-17; Ex. 15, 6/14/2000 Kernan Trial Test. Tr., 1424:2-14.)** After that call, Detective Mohan placed Solache, Reyes, and Rosauro under arrest.  **(Ex. 15, 6/14/2000 Kernan Trial Test. Tr., 1424:15-20; 1426:11-13.)**

28.     At Area 5 the baby was positively identified by a relative as Mariano and Jacinta's daughter, Maria. **(Ex. 12, 6/15/2000 Flores Trial Test. Tr., 1461:16-1462:2, 1463:24-1464:8.)**

12

29.     Detectives drove Adriana and Guadalupe to Area 5. **(Ex. 12, 6/15/2000 Guadalupe Mejia Trial Test. Tr., 1447:23-1448:3; Ex. 12, 6/15/2000 Flores Trial Test. Tr., 1462:3-12.)** A Hispanic detective later drove Jorge Mejia to Area 5 police station. Jorge Mejia was not handcuffed at any time and was not questioned at the police station. **(Ex. 8, Jorge Mejia Dep., 64:20-71:5.)**

30.     At the station, Guadalupe told police that Adriana had blood on her pants when she and Rosauro picked Adriana and the children up at the hospital. **(Ex. 14, 4/7/1998 Guadalupe Mejia GJ Test. Tr., 17:22-20:12; Ex. 6, Guadalupe Mejia Dep., 46:8-16; Ex. 28, 4/4/1998 Statement of Guadalupe Mejia, at 3-4.)**

31.     On April 4, 1998, Detective Guevara, Guadalupe Mejia, and her husband Jorge, went to 6234 S. Mozart to look for the pants Adriana had been wearing when Guadalupe and Rosauro picked her up from the hospital. Detective Guevara, with Guadalupe's help, found and recovered Adriana's pants. Adriana's pants were inventoried into evidence under Property Inv. No. 1982731. **(Ex. 12, 6/15/2000 Guadalupe Mejia Trial Test. Tr., 1448:4-1449:11, 1451:24-1452:11; Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1592:8-1595:8; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1649:8-1652:4; Ex. 8, Jorge Mejia Dep., 74:23-75:17; Ex. 42, Property Inventory No. 1982731, CPD Investigative File, at RFC-Solache/Reyes 124.)**

### Guadalupe's Statement – April 4, 1998

32.     On Saturday, April 4, 1998, at approximately 1:35 a.m., Guadalupe met with Assistant Cook County State's Attorney Karin Wehrle, Detective Guevara, and Youth Officer Trevino at Area 5. Guadalupe told them about Adriana's difficulty becoming pregnant, her announcement that she was pregnant in June 1997, changes in Adriana's appearance consistent

with a pregnancy, her claimed medical appointments, Rosauro waiting at home for his child to be born, and Adriana's calls home to say she'd had a baby girl. Guadalupe also told them on the morning of Saturday, March 28, 1998, Rosauro and Guadalupe went to pick up Adriana and the baby at UIC. When they arrived, Adriana was holding a baby but also had a three-year-old boy with her. When asked about the boy, Adriana told Rosauro and Guadalupe that a woman, who she had met at the hospital, was having a baby, had no one to watch him for her, "begged" Adriana to watch him for her, and that she needed her to watch the boy until Sunday. Guadalupe also discussed that Adriana had blood on her pants when they picked her up, which she claimed was from her delivery. Guadalupe also stated that she kept asking Adriana when the boy's family would be back to pick him up, and Adriana kept making up excuses for why Salazar had not returned to claim the boy. Guadalupe noticed that Adriana walked around easily after just having claimed to have given birth; that the baby girl was bigger than expected of a newborn, and that there did not appear to be an umbilical cord attached to the baby. **(*See generally,* Ex. 28, 4/4/1998 Statement of Guadalupe Mejia; Ex. 14, 4/7/1998 Guadalupe Mejia GJ Test. Tr., 3:2-21:6; Ex. 12, 6/15/2000 Guadalupe Mejia Trial Test. Tr., 1441:6-1442:5; Ex. 5, 6/19/2000; Ex. 3, Adriana Mejia Dep., Vol. 3, 35:14-36:1, 73:14-22.)**

33.    Guadalupe also told ASA Wehrle, Det. Guevara, and Youth Officer Trevino that on the afternoon of April 2, 1998, she listened in on a phone call between Reyes and Adriana. In that call, Guadalupe says that Reyes asked Adriana a question and then Adriana said, "Saturday, 9 o'clock at their house." Guadalupe says that then Reyes asked how he was supposed to know the address and she replied that someone would call with the address. According to Guadalupe, Reyes then told Adriana that she "was the only one who knows" and asked Adriana not to turn him in. Guadalupe listened to this call because she was curious why Reyes was calling Adriana,

who was married, when they supposedly did not know each other very well. **(Ex. 28, 4/4/1998 Statement of Guadalupe Mejia, at 5; Ex. 14, 4/7/1998 Guadalupe Mejia GJ Test. Tr., 13:24-14:20; Ex. 6, Guadalupe Mejia Dep., 70:21-71:11.)** On Thursday, April 2, 1998, at approximately 10:00 p.m., Guadalupe was watching the evening news on Spanish TV, when she saw a story about the Sotos and their missing children. She recognized Santiago's photo shown in the broadcast as the three-year-old boy Adriana had claimed she was babysitting for Norma Salazar. Guadalupe told Adriana that the boy's parents were murdered and the lady who gave her the boy to watch might have killed his parents and that she should take him to the police. **(*Solache* Dkt. 238, Answer to FAC, ¶ 17; Ex. 14, 4/7/1998 Guadalupe Mejia GJ Test., 14:21-16:22; Ex. 12, 6/15/2000 Guadalupe Mejia Trial Test. Tr., 1444:4-1445:22.)**

34.     Guadalupe's interview with ASA Wehrle, Detective Guevara and Youth Officer Trevino was memorialized in a written "Statement of Guadalupe Mejia" ("Guadalupe's Statement") (in English) which was translated to her by Youth Officer Trevino. After Youth Officer Trevino read Guadalupe's Statement to her in Spanish, she signed every page of it, as did ASA Wehrle, Youth Officer Trevino, and Det. Guevara. A true and correct copy of Guadalupe's Statement is attached as Exhibit 14. **(Ex. 14, 4/7/1998 Guadalupe Mejia Grand Jury Test. Tr., 18:19-20:21; Ex. 28, Statement of Guadalupe.)**

35.     Guadalupe testified before the grand jury on April 7, 1998. Before she testified, the Spanish translation of Guadalupe's Statement was read to her again in the office of Assistant Cook County State's Attorney Kristin Piper, who questioned Guadalupe at the grand jury on April 7, 1998. Guadalupe confirmed her statement was true and correct. **(Ex. 14, 4/7/1998 Guadalupe Mejia GJ Test. Tr., 18:19-20:22.)** At her deposition on January 20, 2020,

15

Guadalupe testified that she told the truth when she testified before the grand jury. **(Ex. 6, Guadalupe Mejia Dep., 48:6-15.)**

*Rosauro Mejia*

36.     On April 3, 1998, Dets. Mohan and Kernan interviewed Rosauro at Area 5 with the assistance of Spanish-speaking CPD Officer Jorge Cerda. Rosauro told Dets. Mohan, Kernan, through Officer Cerda, that his wife was released from UIC Hospital on March 28, after giving birth to their daughter the day before, and what Adriana had initially told him about Norma Salazar asking Adriana to watch the boy and what Adriana later told him about her several other conversations with Salazar about picking the boy up. **(Ex. 41, 7/28/1999 Kernan Pretrial Hearing Test. Tr., 80:11-85:9; Ex. 42, Mohan/Kernan Supplementary Report, CPD Investigative File, at RFC-Solache/Reyes 363-366.)**

37.     On April 3, 1998, at approximately 6:30 p.m. and on April 4 at approximately 6:30 a.m., Rosauro consented to a search of the apartment at 6234 S. Mozart. **(Ex. 21, 4/7/1998 Rosauro Mejia Grand Jury Test., 20:3-20; Ex. 42, Consent to Search, CPD Investigative File, at RFC-Solache/Reyes 329; Ex. 21, 4/7/1998 Rosauro Mejia Grand Jury Test., 20:21-21:12; Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1592:8-1593:21; Ex. 46, Consent to Search, *Solache/Reyes* People's Ex. No. 32; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1649:8-1650:8; Ex. 42, Consent to Search, CPD Investigative File, at RFC-Solache/Reyes 121.)**

38.     Spanish-speaking Cook County Assistant State's Attorney David Navarro interviewed Rosauro in the evening of April 4, 1998, between 5:00 p.m. and 11:00 p.m., for about an hour. In that interview, Rosauro told ASA Navarro that he took Adriana to the hospital to have her baby when she was in labor, and that Adriana had come home from the hospital with

16

a baby Rosauro believed was his daughter. **(Ex. 20, David Navarro Dep., 29:11-30:15, 175:5-179:11, 185:10-20.)** ASA Navarro testified that he believed Rosauro was telling him the truth when Rosauro said he believed Adriana was pregnant and that the baby she brought home from the hospital was his daughter. **(Ex. 20, David Navarro Dep., 179:12-181:16, 182:10-11.)**

39.    On Sunday, April 5, at approximately 4:00 a.m., Rosauro met with Assistant Cook County State's Attorney Andrew Varga, who does not speak Spanish, and Spanish-speaking Officer Jorge Cerda at Area 5. At or about that time, Rosauro, through Officer Cerda, told ASA Varga about Adriana's announcement she was pregnant after years of trying, driving her to multiple (apparently fake) medical appointments, taking Adriana to the UIC clinic to have her baby on March 27, 1998, waiting with her there and then leaving after she promised to call him when she went into labor, Adriana calling home later that day saying they had a baby girl, picking her up the next day, her various explanations for Santiago's continued presence in their home, and Rosauro's confrontation with Adriana about taking Santiago to the police, and doing so over her objection. **(*See generally*, Ex. 27, 4/5/1998 Statement of Rosauro Mejia; Ex. 21, 4/7/1998 Rosauro Mejia Grand Jury Test. Tr., 3:4-24:3; Ex. 47, Cerda Dep., 28:5-18; Ex. 55, Andrew Varga Dep., 79:3-10.)**

40.    Rosauro's statements to the police and ASA Varga were memorialized in a written (in English) "Statement of Rosauro Mejia" ("Rosauro's Statement"). On April 5, 1998, after Officer Cerda translated Rosauro's Statement into Spanish and read it to Rosauro in Spanish, Rosauro signed every page of it, as did ASA Varga and Officer Cerda. A true and correct copy of Rosauro's Statement is attached as Exhibit 27. **(S*ee generally*, Ex. 27, 4/5/1998 Statement of Rosauro Mejia; Ex. 21, 4/7/1998 Rosauro Mejia Grand Jury Test. Tr., 21:18-24:3.)** Rosauro testified before the grand jury on April 7, 1998, that his statement was true and

correct. **(Ex. 21, 4/7/1998 Rosauro Mejia Grand Jury Test. Tr., 21:19-24:3; Ex. 27, 4/5/1998 Statement of Rosauro Mejia.)**

### *Adriana's Interviews and Statements*

41.     On April 3, 1998, at approximately 11:30 a.m., Detective Guevara interviewed Adriana (in Spanish) at Area 5. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1578:12-1579:20; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1635:18-1637:2.)** Adriana initially denied that she, Solache, and Reyes were involved in the Soto murders and kidnappings. Instead, she claimed that she had met a woman named Norma Salzar after she lost her baby, and for $600 Norma had agreed to secure a newborn baby girl for her. Adriana told Det. Guevara that Norma gave her the baby at UIC Hospital around 5:15 p.m. on March 27, 1998, Adriana spent the night walking around with the baby, and on or about 7:00 a.m. on March 28, 1998, Norma returned and asked her to watch the boy while she had her own baby. Based on what Adriana Mejia said, the investigation focused on Norma Salazar. **(*Solache* Dkt. 238, Answer to FAC, ¶ 19; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr. 1637:11-23; Ex. 42, Cleared Closed Report, CPD Investigative File, at RFC-Solache/Reyes 239-240.)**

42.     On April 3, 1998, at approximately 3:00 p.m., Adriana viewed a lineup with a woman named Norma Salazar that she had identified from a photo as the Norma Salazar who had asked her to watch the boy but did not identify her or anyone else in the lineup. After the lineup, Salazar was interviewed, and it was determined Salazar had no knowledge about what Adriana was saying. Salazar was released without being charged. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1579:21-1582:1; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1638:4-1640:9; Ex. 22, Adriana Mejia Dep. Vol. 4, 59:20-60:6, 62:2-12; Ex. 42, Cleared Closed Report, CPD Investigative File at RFC-Solache/Reyes 240.)**

43. On April 3, 1998, shortly after 6:30 p.m., CPD Officers Berscott Ruiz, Michael Stephens, and John Santopadre searched the first floor of 6234 S. Mozart. During the search, Detective Stephens found and recovered a pair of Adriana's black shoes which appeared to have blood stains on them, which was later marked as *Solache/Reyes* People's Ex. No. 28 during trial. **(Ex. 33, 6/16/2000 Ruiz Trial Test. Tr., *Solache* 6523:14-6528:15; Ex. 48, *Solache/Reyes* People's Exhibit No. 38, Consent to Search; Ex. 49, Berscott Ruiz Dep., 83:2-12, 84:3-85:9, 89:9-15; Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1583:23-1584:20; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1641:11-1642:7; Ex. 49.)**

44. On April 3, 1998, at approximately 8:00 p.m., Evidence Technicians John Paulson and Frank Gustowski responded to Area Five and tested Adriana's shoes for the presence of human blood. Their preliminary testing indicated the presence of human blood. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes*) Tr., 1585:21-23; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1642:24-1643:3, 1679:18-1681:1; Ex. 42, Crime Scene processing Report, CPD Investigative File, at RFC-Solache/Reyes 115.)**

45. On April 3, 1998, at approximately 10:30 p.m., Detective Guevara confronted Adriana with the preliminary test results – the presence of human blood found on her shoes. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1585:24-1586:7; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1642:24-1643:6; Ex. 45, 3/31/2000 Adriana Mejia MTSS Test. Tr., *Solache* 5571:8-14; Ex. 84, 9/1/1999 Guevara Pretrial Test. Tr., 299:20-301:24.)** During this interview, Adriana implicated herself and at least one plaintiff in the kidnappings of Santiago and Maria. **(Ex. 22, Adriana Mejia Dep, Vol. 4, 221:24-222:5, 223:1-224:8.; Ex. 50, Cleared Closed Police Report, at RFC-Solache/Reyes 241-242; Ex. 84, 9/1/1999 Guevara Pretrial Test. Tr., 299:20-301:24.)**

19

46.     On April 4, at 10:35 a.m., Detectives Dickinson and Rutherford, with the assistance of Spanish-speaking Youth officer Daniel Trevino, interviewed Adriana Mejia at Area 5. **(Ex. 12, 6/15/2000 Dickinson Trial Test. Tr., 1485:15-1486:24.)**

47.     On April 4, 1998, at approximately 8:00 p.m., Detective Guevara interviewed Adriana Mejia. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1653:15-23.)** At this time, Adriana implicated herself, Reyes and Solache in the murders of Mariano and Jacinta Soto and the kidnappings of Santiago and Maria. **(Ex. 22, Adriana Mejia Dep. Vol. 4, 221:24-222:5, 223:1-224:8.; Ex. 50, Cleared Closed Police Report, RFC-Solache/Reyes 248-250.)**

48.     ASA Navarro interviewed Adriana, in Spanish, for an hour or two, at Area 5 at approximately 11:00 p.m. on April 4, 1998. Det. Halvorsen, who did not speak Spanish, was in and out of the room while ASA Navarro interviewed Adriana. No one else was present. During the interview, Adriana told ASA Navarro how she had faked her pregnancy and how she, Solache, and Reyes had all participated in killing Jacinta and Mariano Soto and abducting their children. ASA Navarro has testified that Adriana's demeanor was calm during the interview, and it was disturbing to him to hear her describe such horrific crimes so calmly. **(Ex. 20, David Navarro Dep., 29:11-24, 185:2-5, 186:23-194:3; Ex. 22, Adriana Mejia Dep. Vol. 4, 221:24-222:5, 223:1-224:8.)**

49.     On April 5, 1998, from approximately 2:10 a.m. to 6:00 a.m., ASA Navarro interviewed Adriana again for the purpose of taking her statement. Detective Halvorsen was also present for this interview. ASA Navarro asked Adriana what happened, and she again told him that she, Solache, and Reyes had all participated in killing Jacinta and Mariano Soto and abducting their children. Adriana testified at her deposition that during this interview, she tried to be honest with ASA Navarro and if asked, would have told him Solache and Reyes were

20

involved in the murders and the kidnappings because that's the truth. **(Ex. 22, Adriana Mejia Dep, Vol. 4, 221:24-222:5, 223:1-224:8; Ex. 20, Navarro Dep., 29:11-24, 194:20-203:21, 242:13-249:22; Ex. 45, 3/31/2000 A. Mejia MTS Hearing Tr., Solache 5600:20-5606:16; Ex. 1, Statement of Adriana Mejia.)**

50.     A true and correct copy of the document titled "Statement of Adriana Mejia" which Adriana signed at the conclusion of her interview at 2:10 a.m. with ASA Navarro is attached as Ex. 1. Adriana, ASA Navarro, and Detective Halvorsen signed every page of it. **(Ex. 1, Statement of Adriana Mejia; Ex. 20, David Navarro Dep., 242:13-249:22; Ex. 45, 3/31/2000 A. Mejia MTS Hearing Tr., Solache 5600:20-5606:16.)**

51.     After he concluded his interview of Adriana, ASA Navarro approved charges against Adriana. According to ASA Navarro, what Adriana told him also supported the decision to charge Solache and Reyes with the murders of Jacinta and Mariano Soto, despite any inconsistencies in the details of their respective statements. **(Ex. 20, David Navarro Dep., 231:1-232:20, 235:1-6.)**

52.     On March 31, 2000, Adriana testified in court, under oath, at a pretrial hearing on her motion to suppress her statement. She testified that ASA Navarro wrote out the statement in front of her in a big office with a desk. She further testified that she signed all the pages and marked the corrections with her initials and that ASA Navarro and Detective Halvorsen did too. She testified that after the statement was written out, it was read to her in Spanish, and they went through it page by page and she understood what was said to her. **(Ex. 45, 3/31/2000 Adriana Mejia Pretrial Hearing Test. Tr., Solache 5600:23-5606:14; Ex. 1, Statement of Adriana Mejia.)** At her deposition in February 2021, Adriana testified that she remembered testifying in

court, and that when she testified, she told the truth. **(Ex. 3, Adriana Mejia Dep. Vol. 3, 60:1-61:1, 79:14-24.)**

### *Interviews and Statements of Reyes*

53.     On April 3, 1998, at approximately 11:30 p.m., Detective Guevara interviewed Reyes. During the interview, he asked Reyes to empty his pockets. When Reyes emptied his pockets, two pieces of paper fell onto the floor. Both pieces of paper had the name "Norma Salasar" written on them. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1586:11-1589:2; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1643:7-1645:7; Ex. 10, 3/3/2000 Reyes Pretrial Test. Tr., Solache 5336:19-24.)** A true and correct copy of the papers Reyes had been carrying in his pocket, later marked at trial as *Solache/Reyes* People's Ex. 30, follows:



**(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1586:11-1589:2; Ex. 51,**
***Solache/Reyes* People's Ex. No. 30; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only)**
**Tr., 1643:7-1645:7.)** A calendar book that Reyes brought with him to the station that day also
contained references to a "Norma Salasar" and a "Norma Salvador." True and correct copies of
pages from Reyes' calendar book containing those references which police found in his
possession are attached as Exhibit 114. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only)**
**Tr., 1589:3-1590:22; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1645:8-**
**1647:23; Ex. 94, photos of portions of *Solache/Reyes* People's Ex. 30.)**

54.     On April 4, 1998, at approximately 3:00 p.m., Det. Guevara interviewed Reyes
for the second time in an interview room at Area 5. No other officers were present for this 3:00
p.m. interview. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Reyes* only) Tr., 1596:13-1611:18;**
**Ex. 42, Cleared Closed Report, RFC Investigative File, at RFC-Solache/Reyes 246-247.)**

55.     On April 4, 1998, at approximately 6:00 p.m., Dets. Rutherford, Dickinson, with
the assistance of Youth Officer Trevino acting as interpreter, interviewed Reyes in a conference
room at Area 5. **(Ex. 33, 6/16/2000 Trevino Trial Test. (*Reyes* only) Tr., Solache 6439:23-**
**Solache 6446:2.)** This was Y.O. Trevino's first contact with Reyes. **(Ex. 33, 6/16/2000 Trevino**
**Trial Test. (*Reyes* only) Tr., Solache 6452:17-23.)** Youth Officer Trevino spoke to Reyes in
Spanish and Reyes had no trouble understanding him. **(Ex. 10, 3/3/2000 Reyes Pretrial Test.**
**Tr., Solache 5342:23-5343:6.)** According to Reyes, Detective Guevara was also sometimes
present. **(Ex. 52, Reyes Dep. Vol. 2, 322:2-8.)** According to Reyes, when Guevara was present
during this interview, Guevara was not physically violent with him. **(Ex. 52, Reyes Dep. Vol. 2,**
**at 322:5-329:10.)**

56.     After this interview, according to Reyes, Det. Guevara brought Reyes back into another room and again interviewed Reyes alone. It is at this time Reyes claims Det. Guevara used physical force on him. **(Ex. 52, Reyes Dep., Vol. 2, 333:16-342:23.)** Det. Guevara later brought Adriana into the room with Reyes, where Adriana told Det. Guevara, in Reyes's presence, that Reyes "had done everything." **(Ex. 52, Reyes Dep. Vol. 2, 343:1-8, 344:4-7; Ex. 10, 3/3/2000 Reyes Pretrial Test. Tr., Solache 5313:10-19.; Ex. 5, 6/19/2000 Reyes Trial Test. (*Reyes* only) Tr., 2085:4-24.)**

57.     On April 4, 1998, at approximately 11:30 p.m., Assistant Cook County State's Attorney Thomas O'Malley, with the assistance of Y.O. Trevino, serving as interpreter, interviewed Reyes at Area 5 in the second-floor property crimes office. At this time, Reyes knew he was accused of murdering Jacinta and Mariano Soto and kidnapping Santiago and Maria. ASA O'Malley introduced himself to Reyes as a prosecutor and a lawyer for the State, not a lawyer for Reyes. The interview lasted about an hour. **(Ex. 33, 6/16/2000 Trevino Trial Test. (*Reyes* only) Tr., Solache 6446:3-Solache 6448:9; Ex. 33, 6/16/2000 O'Malley Trial Test. (*Reyes* only) Tr., Solache 6462:10-Solache 6468:11; Ex. 52, Reyes Dep. Vol. 2, 230:13-19, 233:3-234:2; Ex. 54, O'Malley Dep., 161:21-162:8.)**

58.     On April 5, 1998, at approximately 2:00 a.m., ASA O'Malley and Youth Officer Trevino were in the property crimes office at Area 5 for about an hour. While they were together, Reyes signed each page of a 7-page handwritten document that was titled "Statement of Arturo DeLeon Reyes" (later marked as *Reyes* People's Exhibit No. 35), including the photos of Adriana, Solache, Santiago Soto, Maria Soto, Mariano Soto, and Jacinta Soto. Det. Guevara was not present during this interview. **(Ex. 33, 6/16/2000 Trevino Trial Test. (*Reyes* only) Tr., Solache 6448:10-Solache 6452:1; Ex. 33, 6/16/2000 O'Malley Trial Test. (*Reyes* only) Tr.,**

24

Solache 6468:19-Solache 6486:13; Ex. 5, 6/19/2000 Reyes Trial Test. (*Reyes* only) Tr., 2060:6-2063:12; Ex. 91, *Reyes* **People's Trial Ex. 35, Statement of Arturo Reyes.)** A true and correct copy of the Statement of Arturo Reyes, *Reyes* People's Trial Ex. No. 35, is attached as Ex. 91.

59.     Reyes claims he did not admit to being involved in the murders and kidnappings even after Detective Guevara allegedly slapped him. **(Ex. 10, 3/3/2000 Reyes Pretrial Test. Tr., Solache 5316:9-5317:10.)**

60.     The CCSAO approved charges of two counts of first-degree murder, two counts of aggravated battery and one count of home invasion against Reyes on April 5, 1998, at approximately 8:15 a.m. **(Ex. 57, Reyes Arrest Report; Ex. 42, Cleared Closed Report, CPD Investigative File at RFC-Solache/Reyes 253.)** Officer Saul Basurto processed Reyes into the 25th District lockup at approximately 8:30 a.m. on April 5, 1998. **(Ex. 5, 6/19/2000 Basurto Trial Test. (*Reyes* only) Tr., 2135:13-2137:1; Ex. 57, Reyes Arrest Report.)**

*Solache's Interviews and Statements*

61.     According to Solache, he did not speak to any of the officers at the 8th District when he went there with Rosauro, Reyes and Santiago. **(Ex. 9, Solache Dep. Vol. 2, 264:4-9.)** At Area 5, Solache claims he only spoke with two Detectives, an unidentified Hispanic male officer, and Detective Guevara. Solache claims he saw the unidentified male officer only once, when the officer told Solache, in Spanish, that he was being accused of a murder that occurred on June 28, 1998. Solache never spoke to Dets. Halvorsen, Dickinson, Rutherford, Youth Officer Trevino, or Sergeants Biebel, Cappitelli or Mingey. **(Ex. 9, Solache Dep. Vol. 2, 294:8-329:11; Ex. 10, 3/3/2000 Guevara Pretrial Test. Tr., Solache 5371:16-19, 5375:3-5376:9, 5390:23-5391:1; Ex. 16, Robert Rutherford Dep. Vol. 1, 44:13-45:16; Ex. 18, Mingey Dep. Vol. 1,**

**34:1-39:14, 85:3-88:16, 115:2-121:10, 135:2-137:15, 146:8-17;** *also see generally,* **Ex. 42, CPD Investigative File; Ex. 41, 7/28/1999 Pretrial Tr.; Ex. 84, 9/1/1999, Pretrial Tr.; Ex. 10, 3/3/2000 Pretrial Tr.; Ex. 45, 3/31/2000 Pretrial Tr.; Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; Ex. 86, 6/20/2000 Trial Tr.; Ex. 17, Biebel Dep., 21:8-13, 32:7-10, 282:15-316:6, 367:11-369:10, 308:15-310:21-12, 410:1-415:17; Ex. 76, Biebel Dep. Exhibit 10; Ex. 19, Affidavit of CPD Recordkeeper; Ex. 12, 6/15/2000 Guevara Trial Test. (***Solache*** only) Tr. 1657:4-8.)** The only other Detective to speak to or have contact with Solache at Area 5 was Det. Guevara. Guevara interviewed Solache twice on April 4, 1998, once at 12:15 a.m., and once at 9:00 p.m. **(Ex. 9, Solache Dep. Vol. 2, 294:8-329:11; Ex. 42, CPD Investigative File, Clear Closed Report, RFC-Solache/Reyes 233-251; Ex. 12, 6/15/2000 Guevara Trial Test. Tr., 1654:3-13.)**

62.     On April 4, at approximately 11:25 p.m., Solache spent 45 minutes to an hour with ASA Brualdi and Detective Guevara. **(Ex. 33, 6/16/2000 Brualdi Trial Test. (***Solache*** only) Tr., 1862:9-1866:24; Ex. 12, 6/15/2000 Guevara Trial Test. (***Solache*** only) Tr., 1692:6-21, 1693:14-23.)**

63.     On April 5, 1998, at approximately 3:35 a.m., Solache was in a conference room at Area 5 with ASA Brualdi and Detective Guevara for about an hour. While they were together, Solache signed each page of an 11-page handwritten document titled "Statement of Gabriel Solache," which was later marked as *Solache* People's Exhibit No. 34 at trial. ASA Brualdi and Det. Guevara also signed each page of the statement in Solache's presence. **(Ex. 33, 6/16/2000 Brualdi Trial Test. (***Solache*** only) Tr., 1867:16-1875:12; Ex. 12, 6/15/2000 Guevara Trial Test. (***Solache*** only) Tr., 1664:16-1667:19; Ex. 5, 6/19/2000 Solache Trial Test. (***Solache*** only) Tr., 2018:1-2021:4; Ex. 90, *Solache* People's Exhibit 34, Statement of Solache.)**

26

64.    The CCSAO approved charges of two counts of first-degree murder, two counts of aggravated battery, and one count of home invasion against Solache at approximately 8:15 a.m. on April 5, 1998. **(Ex. 61, Solache Arrest Report, at box 38; Ex. 42, Cleared Closed Report, CPD Investigative File at RFC-Solache/Reyes 253.)** CPD Officer Saul Basurto, a lockup keeper in the 25th District, processed Solache in lockup at approximately 8:40 a.m. on April 5, 1998. **(Ex. 5, 6/19/2000 Basurto Trial Test. (*Reyes* only) Tr., 2133:1-2137:5; Ex. 61, Solache Arrest Report.)**

### *Grand Jury Indictment*

65.    On April 27, 1998, a Cook County Grand Jury returned a True Bill and indicted Solache, Reyes, and Adriana on 40 separate counts relating to the Soto murders and kidnappings. **(Ex. 63, True Bill and Indictment.)**

### *Crime Scene Photos and Reports*

66.    When Forensic Investigators Harvey and Karalow took photos at the crime scene on April 2, 1998, there was no indication that the camera was not working properly. However, when the photos were later developed, it became apparent that there was a problem with either the flash or shutter of the camera they had used to photograph the scene on April 1, 1998, when the bodies were discovered. Based on Forensic Investigator Harvey's review of the photos, it appears the flash and the shutter were out of sync. **(Ex. 30, Mark Harvey Dep., 58:14-60:17, 118:8-119:18, 122:11-129:9; Ex. 33, 6/16/2000 Harvey Trial Test. Tr., 1829:20-1830:1; Ex. 42, Photos taken April 2, 1998, at RFC-Solache/Reyes 23-24, 46-50, 66; Ex. 79, Images of Negatives; Ex. 78, Photos in CCSAO file; Ex. 77, Photos in Solache's criminal defense file; Ex. 62, Photo of Knife, *Solache/Reyes* People's Trial Ex. 17.)**

67.     The photos Forensic Investigators Harvey and Karalow took on April 2, 1998, although they were either unusable or of poor quality, were provided to the Cook County State's Attorneys' Office and counsel for Solache and Reyes well before the criminal trials. **(Ex. 78, Photos in CCSAO file; Ex. 77, Photos in Solache's criminal defense file; Ex. 62, Photo of Knife, *Solache/Reyes* People's Trial Ex. No. 17; Ex. 60, Defense Subpoena for photos; Ex. 59, 2/01/1999 Pretrial Hearing, 55:12-19; Ex. 58, Thomas Verdun Dep., 84:14-85:20; Ex. 42, Photos taken April 2, 1998, at RFC-Solache/Reyes 23-24, 46-50, 66; Ex. 79, Images of Film Negatives.)** CPD Forensic Investigator Mark Harvey testified before both the Solache and Reyes juries. Officer Harvey testified about processing the crime scene from approximately 7:20 p.m. on April 1, until approximately 12:40 a.m. on April 2, 1998, and testified specifically about the fact that there was a problem with either the flash or shutter on the camera when taking initial photographs. **(Ex. 33, 6/16/2000 Harvey Trial Tr., 1829:20-1830:1, 1825:8-1856:24.)**

68.     On April 17, 1998, at the request of Detective Guevara and Assistant Cook County State's Attorney Art Hill, Forensic Investigators Dennis Stankus and John Naujokas rephotographed the scene of the Soto murder. The photos taken on April 17, 1998, and police reports documenting that these additional photos were taken on this date because the camera used on April 2, 1998 was faulty, were provided to the Cook County State's Attorney and counsel for Solache and Reyes well before the criminal trials. **(Ex. 64, Dennis Stankus Dep., 109:6-111:2; Ex. 42, Stankus Crime Scene Processing Report dated April 17, 1998, CPD Investigative File, at RFC-Solache/Reyes 267; Ex. 42, Guevara Supplementary Report dated April 18, 1998, CPD Investigative File, at RFC-Solache/Reyes 266; Ex. 65, ASA Art Hill Dep., 63:8-20, 93:23-97:11; Ex. 78, Photos in CCSAO file; Ex. 77, Photos in Solache's criminal defense file; Ex. 62, Photo of Knife, *Solache/Reyes* People's Trial Ex. 17; Ex. 60,**

28

Defense Subpoena; Ex. 59, 2/01/1999 Pretrial Hearing, 55:12-19; Ex. 58, Thomas Verdun

Dep., 84:14-85:20, 87:21-94:10; Ex. 56, Defense Discovery Receipt, Verdun Dep. Ex. 5, at p.

13.)

### *DNA Test Results*

69.    The loose knife found in the box under Sotos' couch (*Solache/Reyes* People's

Trial Ex. No. 14), tested positive for human blood. On or about January 29, 2000, Illinois State

Police forensic scientist Barbara Wilson identified a DNA profile consistent with Adriana

Mejia's on the loose knife found in the box. **(Ex. 12, 6/15/2000 Boedeker Trial Test. Tr.,**

**1504:6-1507:15; Ex. 12, 6/15/2000 Wilson Trial Test. Tr., 1547:14-1548:5; Ex. 37, ISP**

**Report dated Jan. 29, 2000.)** Adriana's black pants, recovered from her bedroom closet

(*Solache/Reyes* People's Ex. No. 22), tested positive for human blood on April 15, 1998. On or

about December 16, 1999, Illinois State Police forensic scientist Barbara Wilson identified a

DNA profile consistent with Mariano Soto's on Adriana's black pants. **(Ex. 12, 6/15/2000**

**Boedeker Trial Test. Tr., 1515:23-1517:10; Ex. 12, 6/15/2000 Wilson Trial Test. Tr., 1547:1-**

**13; Ex. 66, 4/15/1998 ISP Lab Worksheet; Ex. 4, ISP Report dated Dec. 16, 1999.)**

70.    Adriana's shoes, recovered on April 3, 1998, from 6234 S. Mozart, later marked

as *Solache/Reyes* People's Ex. No. 28, tested positive for human blood on or about April 14,

1998. On or about December 16, 1999, Illinois State Police forensic scientist identified a DNA

profile consistent with Mariano Soto's on Adriana's shoes. **(Ex. 12, 6/15/2000 Boedeker Trial**

**Test. Tr., 1510:17-1512:8; Ex. 67, 4/14/1998 ISP Lab Worksheet; Ex. 12, 6/15/2000 Wilson**

**Trial Test. Tr., 1546:1-16; Ex. 4, ISP Report dated Dec. 16, 1999.)**

*Sergeant Mingey's Role in the Investigation*

71.    Mingey's involvement in the Soto homicide investigation was limited to one shift, which began on April 1, 1998, at approximately 4:00 p.m., and ended in the early morning hours of April 2, 1998. Sergeant Mingey's role in the Soto homicide investigation was limited to (1) assigning Dets. Guevara and Halvorsen to the crime scene on April 1, 1998, (2) assigning two other detectives to conduct a canvass on April 1, 1998, (3) reporting to the scene and supervising detectives there on April 1, 1998 only, (4) participating in the search for the missing Soto children on April 1, 1998, and (5) signing two property inventory forms (Inventory No. 1982719, for one empty box from a cutlery block set, and Inventory No. 1982720, for one butcher block knife holder and two kitchen knives) in the early morning hours of April 2, 1998. **(*See* generally Ex. 18, Mingey Dep Vol. 1 and Ex. 36, Mingey. Dep. Vol. 2; Ex. 18, Mingey. Dep. Vol. 1, 25:16-47:15, 85:3-88:24, 100:7-24; 108:7-137:19; 146:14-17; Ex. 68, Mingy Dep. Exhibit 4, General Offense Case Report; Ex. 69, Mingey Dep. Exhibit 7, Boyle/Guitierrez Supplementary Report; Ex. 70, Mingey Dep. Exhibit 8, Boyle/Gutierrez Supplementary Report; Ex. 71, Mingey Dep. Exhibit 9, Halvorsen/Guevara Supplementary Report; Ex. 72, Mingey Dep. Exhibit 10, Property Inventory Nos. 1982719 and 1982720; Ex. 36, Mingey Dep. Vol. 2, 20:24-21:6, 29:15-17.)**

72.    Sergeant Mingey did not report for duty at CPD from April 3 through April 5, 1998. **(Ex. 18, Mingey Dep. Vol. 1, 28:15-20, 34:19-38:10, 135:2-136:4; Ex. 73, Mingey Dep. Exhibit 3.)** Sergeant Mingey was not involved in the Soto homicide investigation after the scene was processed and did not discuss it with anyone. **(Ex. 18, Mingey Dep.,Vol. 1, at 146: 8-17.)** Sergeant Mingey did not draft any reports, and other than the inventory slips, did not sign any reports. He was not working when Solache, Reyes, Adriana and Rosauro were taken into custody

or interrogated and was not involved in their arrests or interviews. Sgt. Mingey did not discuss this case with any prosecutors, did not review any reports other than the ones he signed, and did not testify in any criminal proceeding relating to the Soto homicides. **(*See* generally Ex. 18, Mingey Dep Vol. 1 and Ex. 36, Mingey Dep. Vol. 2; Ex. 18, Mingey Dep. Vol. 1, 25:16-47:15, 85:3-88:24, 100:7-24, 108:7-137:19, 146:08-17; *also see generally,* Ex. 42, CPD Investigative File; Ex. 41, 7/28/1999 Pretrial Tr.; Ex. 84, 9/1/1999, Pretrial Tr.; Ex. 10, 3/3/2000 Pretrial Tr.; Ex. 45, 3/31/2000 Pretrial Tr.; Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; Ex. 86, 6/20/2000 Trial Tr.; Ex. 36, Mingey Dep. Vol. 2, 23:9-56:5, 62:10-70:19.)**

### *Sergeant Biebel's Role in the Investigation*

73.     The sum of Sergeant Biebel's involvement in the Soto homicide investigation was limited to the signing of two police reports on April 11, 1998. He did not work on the case before or after that. The first report he signed, the Scene Supplementary Report, covered the initial investigation at the scene. It was started on April 2, 1998, and submitted on April 9, 1998. The other report Sgt. Biebel signed was a Supplementary Report regarding an interview with Carlos Martinez (Adriana's brother), which was also submitted on April 9, 1998. Sgt. Bibel signed both reports at approximately 3:45 p.m. on April 11, 1998, a week or so after Solache and Reyes had been arrested. He signed these reports because they were in the bin for reports to be approved when he came to work on April 11, 1998. He does not know why they were not approved before then. **(*See generally*, Ex. 17, Biebel Dep., and at 282:15-316:6, 326:4-352:12, 367:11-369:10, 375:20-379:18, 385:18-386:10, 410:1-425:20; Ex. 74, Biebel Dep. Exhibit 2, Scene Supplementary Report; Ex. 75, Biebel Dep. Exhibit 4, Supplementary Report re: Martinez interview.)** When he signed reports, his process was to simply read them to get an idea of what

occurred, make sure the narrative in the report matched the boxes on the front page of the report, and then sign it. He did not compare the report he was considering with other reports and would have no way to know if detectives were not reporting leads or documenting investigative steps because he did not work alongside them. **(See generally, Ex. 17, Biebel Dep., and at 21:8-13, 32:7-1038:4-39:14; 41:21-46:23, 282:15-316:6, 326:4-352:12, 367:11-369:10, 375:20-379:18, 385:18-386:10, 410:1-425:20.)**

74.     Sergeant Biebel did not report to duty at CPD from April 2 through April 10, 1998. He was not at the scene of the Soto homicides. He did not collect any evidence or draft any reports. He did not supervise the detectives with respect to the Soto homicide investigation or direct detectives on how to investigate the case. He did not interview any witnesses or suspects, did not speak with any prosecutors, and did not testify at any pretrial proceeding or at either Solache's or Reyes's trials. **(Ex. 17, Biebel Dep., 21:8-13, 32:7-10, 282:15-316:6, 367:11-369:10, 308:15-310:21, 410:1-412:6, 414:1-415:17; Ex. 76, Biebel Dep. Exhibit 10; *see generally,* Ex. 42, CPD Investigative File; Ex. 41, 7/28/1999 Pretrial Tr.; Ex. 84, 9/1/1999, Pretrial Tr.; Ex. 10, 3/3/2000 Pretrial Tr.; Ex. 45, 3/31/2000 Pretrial Tr.; Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; Ex. 86, 6/20/2000 Trial Tr.)**

### Sergeant Cappitelli's Role in the Investigation

75.     Sergeant Capitelli's role in the Soto homicide investigation was limited to signing police reports. On "4/5/98" at "1020," Sgt. Capitelli signed a General Progress Report ("GPR") submitted by Officer Dembowski on April 3, 1998. On "4 May 1998" at "0600," Sgt. Capitelli signed a Supplementary Report submitted by Detectives Halvorsen and Guevara on April 30, 1998. On "7/4/98" at "0700," Sgt. Capitelli signed a GPR authored by Detectives Halvorsen and

Rutherford on April 4, 1998. On "7/4/1998" at "0630" and "0700," Sgt. Capitelli signed a GPR authored by Dets. Halvorsen and Rutherford on April 4, 1998. On "22 Nov 99" at "1600," Sgt. Capitelli signed a Supplementary report submitted by Youth Officer Trevino on November 18, 1999. **(Ex. 42, CPD Investigative File, at RFC Solache/Reyes 212, 260-65, 257-259, 233-253 and 117.)** The earliest possible date on which Sgt. Cappitelli arguably signed a police report is April 5, 1998. **(*Id.*)**

76.     Sergeant Capitelli did not report to duty at CPD on April 3 or April 4, 1998. **(Ex. 19, Affidavit of CPD Recordkeeper.)** Sgt. Cappitelli did not go to the crime scene, collect evidence, or draft reports. He did not interview any witnesses or suspects, did not speak with any prosecutors, and did not testify at any pretrial proceeding or at Solache's or Reyes's trials. **(*See generally,* Ex. 42, CPD Investigative File; Ex. 41, 7/28/1999 Pretrial Tr.; Ex. 84, 9/1/1999, Pretrial Tr.; Ex. 10, 3/3/2000 Pretrial Tr.; Ex. 45, 3/31/2000 Pretrial Tr.; Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; Ex. 86, 6/20/2000 Trial Tr.)**

### *Pretrial Proceedings in the Consolidated Criminal Cases*

77.     In pretrial discovery, the State disclosed Guadalupe Mejia, Jorge Mejia, Rosa Aranda, and Felicia Soto as potential trial witnesses. **(Ex. 85, State's Answer to Discovery, Sep. 29, 1998, at 4.)**

### *Solache's and Reyes's June 2000 Criminal Trials*

78.     Solache's and Reyes's separate but simultaneous criminal trials took place over the course of five days—June 14, 15, 16, 19 and 20—before Judge Stanley J. Sacks. **(Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; Ex. 86, 6/20/2000 Trial Tr.)**

79. The State's first witness, Alfredo Aranda, testified that he lived in the front basement apartment at 2071 N. Leavitt and the Soto family lived in the rear basement apartment at that same address. He also testified that at approximately 6:30 a.m. on March 28, 1998, he heard moaning ("like a sick person"), something fall, a crash, and a dragging noise in the Sotos' apartment. He also testified that he heard a man in the Sotos' apartment say, "Shut up, nothing is going to happen to you" and then heard Santiago crying. **(Ex. 15, 6/14/2000 Alfredo Aranda Trial Test. Tr., 1313:7-1324:24; Ex. 25, *Solache/Reyes* People's Ex. No. 5.)** Alfredo testified that this occurred over about 5-10 minutes, and he did not hear anything else after that. **(Ex. 15, 6/14/2000 Alfredo Aranda Trial Test. Tr., 1314:17-1316:24.)**

80. The State also called Det. Ernest Halvorsen who testified about responding to the scene of the Soto homicides at 2071 N. Leavitt on April 1, 1998, what he observed there, and evidence that was collected and inventoried, including several knives. Det. Halvorsen did not testify about any personal interaction with or statement of Solache or Reyes. And, aside from not finding Solache's or Reyes's fingerprints on any item of inventoried evidence, Halvorsen did not testify about any part of the investigation that occurred after April 1, 1998. **(Ex. 15, 6/14/2000 Halvorsen Trial Test. Tr., 1361:17-1385:8.)**

81. The state called Defendant CPD Detective Dickinson next. Det. Dickinson testified about being at the scene on April 2, 1998, finding Maria at the Mozart address with Adriana on April 3, 1998, and the fact that he interviewed Adriana the following day as well. He did not testify about what Adriana said to him and he provided no testimony of any kind about any statement Solache or Reyes made. **(Ex. 12, 6/15/2000 Dickinson Trial Test. Tr., 1477:9-1490:21.)**

34

82.     On June 16, 2000, the third day of trial testimony, the State called Youth Officer

Daniel Trevino and ASA O'Malley to testify in *Reyes* only, Defendant Trevino testified, in *Reyes*

only, about statements Reyes made to him and/or ASA O'Malley. Trevino did not testify about

any statement made by any person other than Reyes. **(Ex. 33, 6/16/2000 Trevino Trial Test.**

**(*Reyes* only) Tr., 1702:16-1785:8.)**

83.     Rosauro was the first defense witness and testified before the *Solache* and *Reyes*

juries. Rosauro testified that Detective Guevara hit him. Rosauro also testified consistent with his

statement to detectives about his belief that Adriana was pregnant, that Adriana called him and

told him she had a baby, that he picked her up at the hospital and she had a baby and a young

boy, and that the baby and young boy lived with them until the time Guadalupe told them about

the news of the boy's parents being murdered. **(Ex. 5, 6/19/2000 Rosauro Mejia Trial Tr.,**

**1907:12-1912:12.)** The defense marked Rosauro's statement as Def. Ex. 4, also marked as

*Solache/Reyes* People's Ex 61, and asked Rosauro questions about it but did not offer it into

evidence or ask him about its contents. Rosauro's written statement was not read to either jury or

given to either jury to consider during deliberations. **(Ex. 5, 6/19/2000 Rosauro Mejia Trial**

**Tr., 1906:13-1946:18; Ex. 5, 6/19/2000 Trial Hearing, 2180:23-2181:19, 2190:12-15.)**

84.     The only inculpatory evidence introduced against Solache was his confession that

he claims was fabricated. **(*Solache* Answer to FAC, ¶ 47; Ex. 90, Solache People's Exhibit**

**No. 34.)** ASA Heather Brualdi and Detective Guevara were the only witnesses to testify in

*People v. Solache* about Solache's inculpatory statements. They testified about those statements

in Solache's case, not Reyes's. **(Ex. 15, 6/14/2000 Trial Transcript; Ex. 12, 6/15/2000 Trial**

**Tr.; Ex. 33, 6/16/2000 Trial Transcript; Ex. 5, 6/19/2000 Trial Transcript; and Ex. 86,**

**6/20/2000 Trial Transcript.)**

85.     The only inculpatory evidence introduced against Reyes was his confession that he claims was fabricated. Youth Officer Trevino, Detective Guevara, and ASA Thomas O'Malley were the only witnesses to testify in *People v. Reyes* about Reyes's inculpatory statements. They testified about those statements in Reyes's case, not Solache's case. **(Ex. 15, 6/14/2000 Trial Transcript; Ex. 12, 6/15/2000 Trial Transcript; Ex. 33, 6/16/2000 Trial Transcript; Ex. 5, 6/19/2000 Trial Transcript; and Ex. 86, 6/20/2000 Trial Transcript.)**

86.     Adriana's statements were not introduced in either Reyes's or Solache's case. **(*See generally*, Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; Ex. 86, 6/20/2000 Trial Tr.)**

87.     The following Defendants did not testify in either *People v. Solache* or *People v. Reyes*: Sergeant Mingey, Sergeant Biebel, Sergeant Cappitelli, and Detective Rutherford. **(Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5 6/19/2000 Trial Tr.; Ex. 86, 6/20/2000 Trial Tr.)**

88.     On or about April 17, 2003, the Court impounded certain evidence and exhibits, including the Polaroid photos of Solache, Reyes, Adriana, Rosauro Mejia and Guadalupe Mejia. **(Ex. 87, Impounding Order, dated April 17, 2003; Ex. 88, Photos of Impounded Evidence produced by Reyes.)**

### *Police Reports Used at Trial*

89.     Only four police reports were used at trial: (1) a typed progress report by Detective Guevara (the "Progress Report"), (2) a supplementary report by Detectives Guevara and Halvorsen, submitted April 30, 1998 (the "Cleared Closed Report"), (3) a supplementary report by Detectives Halvorsen and Guevara, (the "Scene Supp. Report"), and (4) a Crime Scene Processing Report authored by Forensic Investigator Mark Harvey ("Harvey's Crime Scene

36

Report"). **(Ex. 15, 6/14/2000 Trial Tr., Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; and Ex. 86, 6/20/2000 Trial Tr.)** The State did not offer or admit any police reports into evidence at trial and none were not published or provided to jury during deliberations. **(Ex. 5, 6/19/2000 Trial Tr., 2182:12-20; Ex. 5, 6/19/2000 Trial Tr., 2178:19-21, 2182:12-20, 2187:16-19; Ex. 5, 6/19/2000 Trial Tr., 2190:8-10; Ex. 39, Scene Supp Report; Ex. 5, 6/19/2000 Trial Tr., 2182:12-20; Ex. 5, 6/19/2000 Trial (*Solache* only) Tr., 2178:19-22, 2182:12-20.))** Detective Guevara testified that the information regarding the interviews in the Cleared Closed Report was provided by Guevara to Halvorsen. **(Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1669:21-1670:13; Ex. 50, Cleared Closed Report; Ex. 12, 6/15/2000 Guevara Trial Test. (*Solache* only) Tr., 1688: 1-:1748:5-1749:23.)**

90.     Solache and Reyes used Rosauro Mejia's written statement in their defense when questioning Rosauro. The defense elicited testimony from Rosauro that (1) Rosauro signed each page of his statement, (2) it was written in English which he does not understand, and (3) Rosauro could not always understand the officer who read it to him. **(Ex. 5, 6/19/2000 Rosauro Mejia Trial Test. Tr., 1919:12-1921:7; Ex. 27, Statement of Rosauro Mejia.)** Rosauro's statement was not offered for admission into evidence, was not admitted into evidence, was not published to the jury and no part of it was read to the jury. **(Ex. 5, 6/19/2000 Trial Tr., 2180:23-2181:8, 2190:8-17; Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; and Ex. 86, 6/20/2000 Trial Tr.)**

### *Alfredo Aranda's Allegedly Fabricated Statements Documented in the Scene Supp. Report Were Not Admitted at Trial*

91.     The Scene Supp. Report, submitted by Detectives Halvorsen and Guevara in April 1998, describes an interview of Alfredo Aranda. The report states that Alfredo Aranda said he heard things, including the muffled screams of a woman, metal banging, glass breaking, and the

voice of a woman he recognized as Jacinta. **(Ex. 39, Scene Supp. Report, at p. 8.)** At his

deposition in 2019, Alfredo Aranda claims he did not hear muffled screams, Jacinta's voice,

metal banging, or glass breaking and never told police that he did. **(Ex. 26, Alfredo Aranda**

**Dep., 12:1-15:8.)** Alfredo Aranda did not testify at trial that he heard muffled screams, metal

banging, or glass breaking at trial, and no other witness testified that he heard that either. **(Ex.**

**15, 6/14/2000 Alfredo Aranda Trial Test. Tr., 1310:17-1327:24; Ex. 15, 6/14/2000 Trial Tr.;**

**Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5, 6/19/2000 Trial Tr.; and Ex.**

**86, 6/20/2000 Trial Tr.)** Alfredo Aranda did not speak English at the time of the murders and

kidnappings. **(Ex. 26, Alfredo Aranda Dep., 6:14-7:1, 9:19-11:12, 17:1-12, 20:23-21:11,**

**52:13-53:24.)**

　　　　92.　　　At his deposition, Alfredo confirmed that he told the truth at trial and his memory

of the incident was better in 2000 (when he testified at trial) than it was in 2019 (when he gave

his deposition). **(Ex. 26, Alfredo Aranda Dep. Tr., 45:1-22.)** The Scene Supp. Report and the

General Offence Case Report were not used to impeach Alfredo or refresh his recollection during

his testimony at trial. **(Ex. 15, 6/14/2000 Alfredo Aranda Trial Test. Tr., 1310:10-1327:24;**

**Ex. 15, 6/14/2000 Trial Tr.; Ex. 12, 6/15/2000 Trial Tr.; Ex. 33, 6/16/2000 Trial Tr.; Ex. 5,**

**6/19/2000 Trial Tr.; and Ex. 86, 6/20/2000 Trial Tr.)**

### *Verdicts, Pleas and Post-Trial Proceedings*

　　　　93.　　　On June 20, 2000, two different juries separately convicted Solache and Reyes of

first-degree double murder, aggravated kidnapping, and home invasion. **(*Reyes* Dkt. 645,**

**Answer SAC, ¶ 87; *Solache* Dkt. 238, Answer to FAC, ¶¶ 49, 51-52; Ex. 83, 12/18/2000**

**Sentencing Tr., 30:23-31:22; Ex. 86, 6/20/2000 Trial Tr.)** In December 2003, Reyes and

Solache each filed post-conviction petitions, claiming in part, that Detective Guevara had a

38

pattern and practice of misconduct that was unknown to them at the time of their trial, that warranted a new trial and new hearing on their respective motions to suppress their confessions. **(Ex. 92, Reyes's Petition for Post-Conviction Relief; Ex. 93, *People v. Solache*, Case No. 98 CR 12440, at 2-3, 25 (March 12, 2004).)** In December 2006, the Illinois Appellate Court ruled that Solache's and Reyes's new evidence regarding their claims of abuse by Detective Guevara was sufficient to allege the gist of a constitutional claim and remanded their cases to the circuit court for second stage post-conviction proceedings. **(*Id.* at 34-38.)**

94. On June 29, 2016, over the State's objection, Cook County Circuit Judge James Obbish granted Solache's and Reyes's motions for new hearings on their motions to suppress their statements. **(Ex. 95, 6/29/2016, Post-trial Hearing Tr., 6:2-21.)** After a contested hearing, on December 13, 2017, Cook County Circuit Judge James Obbish granted Solache's and Reyes's motions to suppress their confessions. **(*Solache* Dkt. 238, Answer to Solache's FAC, at ¶ 2; *Reyes* Dkt. 645, Answer to Reyes's SAC, at ¶ 13.)** State's Attorney Kim Foxx determined that without the confessions of Solache and Reyes as evidence, the State could not meet its burden of proving them guilty beyond a reasonable doubt and decided to *nolle pros* the cases against them. **(Ex. 96, Sussman Dep., 31:3-11, 40:18-41:5, 44:6-11, 49:3-11.)** The CCSAO elected not to appeal and moved to *nolle pros* the cases against Solache and Reyes. When it moved to dismiss the charges on December 21, 2017, CCSAO First Assistant Eric Sussman, who had carefully reviewed all of the evidence in the case, represented to Judge Obbish that "there is not a doubt in my mind or the mind of any prosecutor who has worked on this case that Mr. Solache and Mr. Reyes are guilty of these heinous crimes" and described the day as "tragic for justice in Cook County." **(Ex. 96, Sussman Dep., 44:22-46:24; Ex. 97, 12/21/2017 Post-trial Hearing Tr., 3:1-15.)** On December 21, 2017, Cook County Circuit Judge James Obbish vacated the convictions

of Solache and Reyes. (*Solache* **Dkt. 238, Answer to FAC, at ¶ 2;** *Reyes* **Dkt. 645, Answer to SAC, at ¶ 13.)** On December 21, 2017, the CCSAO dismissed all charges against Reyes and Solache. (*Solache* **Dkt. 238, Answer to FAC, at ¶ 2;** *Reyes* **Dkt. 645, Answer to SAC, at ¶ 13.)**

95.     On February 8, 2001, Adriana Mejia pled guilty to the following Counts from the Indictment: Count I Murder, under 720-5/9-1(A)(1), for intentionally or knowingly stabbing and killing Jacinta Soto with a knife; Count III Murder, under 720-5/9-1(A)(1), for intentionally or knowingly stabbing and killing Mariano Soto with a knife; Count XIV, Home Invasion, under 720-5/12-11(A)(1) for knowingly entering 2071 N. Leavitt, knowing one or more persons to present, and while armed with a knife, used force on Jacinta Soto; Count XXIII, Aggravated Kidnapping, under 720-5/10-2(A)(2), for knowingly and secretly confining Santiago Soto against his will; and Count XXV, Aggravated Kidnapping, under 720-5/10-2(A)(2), for knowing and secretly confining Maria Soto against her will, and was sentenced to life in prison, where she remains today. (*Reyes* **Dkt. 645, Answer SAC, ¶¶ 37-38;** *Solache* **Dkt. 238, Answer to FAC, ¶ 53; Ex. 2, Certified Statement of Conviction,** *People v. Adriana Mejia***, 98 CR 12440 01; Ex. 63, Indictment,** *People v. Mejia, Reyes, Solache***, 98 CR 12440, Count I, III, XIV, XXIII, XXV; Ex. 89, Criminal Trial Transcripts, February 8, 2001,** *People v. Adriana Mejia,* **98 CR 12440 01.)** Adriana Mejia's guilty plea remains valid today. As part of the factual basis for her plea, Adriana, through her attorney, stipulated that (1) she recruited Reyes in exchange for $600 to find her a baby, (2) she knew someone would have to die for her to get a baby, (3) she and Reyes saw Jacinta Soto using the phone with Maria and Santiago while at UIC, (4) Adriana followed Jacinta home, and was picked up the following day by Solache and Reyes, (5) they went to the Sotos' residence where Reyes stabbed Jacinta, (6) Jacinta and Mariano were stabbed

40

to death, and (7) she, Solache and Reyes fled the scene with Maria and Santiago. **(Ex. 2,
Certified Statement of Conviction, *People v. Adriana Mejia*, 98 CR 12440 01; Ex. 89,
2/8/2001, Crim. Trial Tr., 10:23-30:13.)**

### *Civil Discovery in the Civil Cases*

96.     A copy of the investigative file maintained by the City and produced in this case
on or about September 28, 2018 is attached as Ex. 42. **(Ex. 42, CPD Investigative File, RFC 1-
423.)** The Investigative File contains Polaroid photographs of Solache, Reyes, Adriana, Rosauro,
Guadalupe Mejia, Jorge Mejia (Guadalupe's husband), Felicia Soto, and Rosa Aranda. All eight
of them were interviewed by police at Area 5. **(Ex. 42, Photos, CPD Investigative File, at 76-
79, 152.)**

### *Reyes's and Solache's Contentions*

97.     On April 27, 2021, Solache and Reyes separately responded to contention
interrogatories requesting them to identify the allegedly fabricated evidence that caused their
convictions. In their answers, they both claim the following evidence was fabricated: (1) Reyes's
confessions, (2) Solache's confessions, (3) Adriana Mejia's confessions, (4) Guadalupe Mejia's
statements, (4) Rosauro Mejia's statements, (5) Alfredo Aranda's statements in police reports,
and (5) police reports regarding the crime scene and destruction of crime scene photos. **(Ex. 98,
Reyes's Supp. Resp. to Def. Halvorsen's Interrogs. Nos. 3 and 6, at 2-9; Ex. 99, Solache's
Supp. Resp. to Def. Halvorsen's Interrogs. Nos. 3 and 6, at 1-8.)**

98.     On April 27, 2021, Solache and Reyes separately responded to contention
interrogatories requesting them to identify the alleged exculpatory evidence that was withheld
from the prosecution and the defense during their respective criminal trials. In their virtually
identical answers, they both claim the following *Brady* material was withheld: (1) crime scene

photos taken at the scene of the Soto murder, (2) notes from witness interviews conducted in this case, (3) "documents that reflect that Defendants had multiple theories of the case and alternate suspects," and (4) "[l]arge bags of evidence containing potentially exculpatory evidence" that were removed from the scene and not inventoried or produced." **(Ex. 98, Reyes's Supp. Resp. to Def. Halvorsen's Interrog. No. 3, at 1-7; Ex. 99, Solache's Supp. Resp. to Def. Halvorsen's Interrogs. No. 3, at 1-6.)**

99.     Solache and Reyes also claim that Defendant Sergeants Capitelli, Biebel and Mingey authorized Defendant Detectives Guevara, Halvorsen, Dickinson, Rutherford and Youth Officer Trevino, to fabricate and suppress evidence. (**Ex. 98, Reyes's Supp. Resp. to Def. Halvorsen's Interrog. No. 3, at 6-7; Ex. 99, Solache's Supp. Resp. to Def. Halvorsen's Interrogs. No. 3, at 5.)** As evidence of this, Reyes claims these Sergeants (a) supervised the Defendant Officers, (b) worked out of an office near the interview rooms where Plaintiffs were physically abused and witnesses were interviewed without documentation, and (c) signed off on police reports" that were fabricated and suppressed evidence. (***Id.***)

100.     On April 27, 2021, Solache and Reyes separately supplemented their responses to an interrogatory requesting them to identify any evidence suggesting Sergeant Biebel was personally involved in the Soto homicide investigation prior to April 11, 1998. In response, Solache and Reyes answered that Biebel was an Area 5 sergeant for the duration of the Soto homicide investigation, and "in [that] capacity," supervised detectives who investigated the Soto homicide investigation and signed off on and authorized two reports (incorrectly dated and containing false information) on April 11, 1998, and there is a news media clip of a person leaving the scene of the murders that looks like him. **(Ex. 100, Reyes's Supplemental Responses to Defendant Biebel's Second Set of interrogatories, No. 1, at 2-3; Ex. 101,**

42

**Plaintiff Reyes's [sic] Supplemental Responses to Defendant Biebel's Second Set of Interrog. No 1, at 2-3.)**

Date: December 16, 2024

Respectfully submitted,

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Attorney No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Defendants Halvorsen,*
*Dickinson, Rutherford, Trevino, Mingey, Biebel,*
*and Cappitelli*

James G. Sotos
Josh M. Engquist
Caroline P. Golden
Allison L. Romelfanger
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

43

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on December 16, 2024, I electronically filed the foregoing **Defendants Halvorsen, Dickinson, Rutherford, Trevino, Mingey, Biebel and Cappitelli's Local Rule 56.1 Statement of Uncontested Facts** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

*Attorneys for Arturo Reyes:*
Jon Loevy
Steven Art
Anand Swaminathan
Rachel Brady
Sean Starr
Wallace Hilke
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
steve@loevy.com
anand@loevy.com
brady@loevy.com
sean@loevy.com
hilke@loevy.com

*Attorneys for Gabriel Solache:*
Jan Susler
Ben H. Elson
Nora Snyder
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
jsusler@peopleslawoffice.com
ben.elson79@gmail.com
norasnyder@peopleslawoffice.com

*Attorneys for City of Chicago:*
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Austin Rahe
Patrick R. Moran
Lauren Ferrise
Sabrina A. Scardamaglia
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654

(312) 494-1000
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com
pmoran@rfclaw.com
lferrise@rfclaw.com
sscardamaglia@rfclaw.com

*Attorneys for Defendant Guevara:*
Steven Blair Borkan
Timothy P Scahill
Whitney N. Hutchinson
Graham P. Miller
Emily E. Schnidt
Christiane E. Murray
Molly E. Boekeloo
Amanda Guertler
Krystal Gonzalez
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580-1030
sborkan@borkanscahill.com
tscahill@borkanscahill.com
whutchinson@borkanscahill.com
gmiller@borkanscahill.com
eschnidt@borkanscahill.com
cmurray@borkanscahill.com
mboekeloo@borkanscahill.com
aguertler@borkanscahill.com
kgonzalez@borkanscahill.com


/s/ Josh M. Engquist
Josh M. Engquist