# EXHIBIT 1



# Transcript of Robert Rutherford, Volume II

**Date:** December 18, 2019
**Case:** DeLeon-Reyes & Solache -v- Guevara, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

-----------------------------x

ARTURO DeLEON-REYES,              :

         Plaintiff,     :

  v.                              :   No. 1:18-cv-01028

REYNALDO GUEVARA, et al,          :

        Defendants.     :

-----------------------------x

GABRIEL SOLACHE,                  :

         Plaintiff,     :

  v.                              :   No. 1:18-cv-2312

REYNALDO GUEVARA, et al,          :

        Defendants.     :


Videotaped Deposition of

ROBERT RUTHERFORD, VOLUME II

Chicago, Illinois

Wednesday, December 18, 2019

11:14 a.m.


Job No.:  265708

Pages: 1 - 265

1    Reported by: Anna Maria Castle, CSR, RPR

2        Deposition of ROBERT RUTHERFORD, held at the

3    location of:

4

5            LOEVY & LOEVY

6            311 North Aberdeen Street

7            Chicago, Illinois 60607

8            312.243.5900

9

10

11

12

13

14      Pursuant to notice, before Anna Maria Castle, a

15    Certified Shorthand Reporter, and a Notary Public

16    in and for the State of Illinois.

17

18

19

20

21

22

23

24

```
1                A P P E A R A N C E S

2


3    ON BEHALF OF PLAINTIFF DeLEON-REYES:

4         ANAND SWAMINATHAN, ESQUIRE

5         LOEVY & LOEVY

6         311 North Aberdeen Street

7         3rd Floor

8         Chicago, Illinois 60607

9         312.243.5900

10

11   ON BEHALF OF PLAINTIFF SOLACHE:

12        JAN SUSLER, ESQUIRE

13        JOHN L. STAINTHORP, ESQUIRE

14        PEOPLE'S LAW OFFICE

15        1180 North Milwaukee Avenue

16        3rd Floor

17        Chicago, Illinois 60642

18        773.235.0070

19

20

21

22

23

24
```

```
 1      A P P E A R A N C E S   C O N T I N U E D

 2

 3    ON BEHALF OF DEFENDANT GUEVARA:

 4         KEVIN ZIBOLSKI, ESQUIRE

 5         LEINENWEBER BARONI & DAFFADA, LLC

 6         120 West LaSalle

 7         Suite 2000

 8         Chicago, Illinois 60602

 9         866.786.3705

10

11    ON BEHALF OF DEFENDANTS DICKINSON, RUTHERFORD,

12    STANKUS, NAUJOKAS, HARVEY, TREVINO, MINGEY,

13    BIEBEL:

14         CAROLINE P. GOLDEN, ESQUIRE

15         THE SOTOS LAW FIRM, PC

16         141 West Jackson

17         Suite 1240A

18         Chicago, Illinois 60604

19         630.735.3314

20

21

22

23

24
```

1    A P P E A R A N C E S  C O N T I N U E D

2

3    ON BEHALF OF DEFENDANTS WEHRLE, BRUALDI, VARGA,

4    O'MALLEY and COOK COUNTY:

5         EDWARD M. BRENER, ESQUIRE

6         COOK COUNTY STATE'S ATTORNEY'S OFFICE

7         500 Richard J. Daley Center

8         Chicago, Illinois 60602

9         312.603.5971

10

11   ON BEHALF OF DEFENDANT NAVARRO:

12        DANIEL J. BURNS, ESQUIRE

13        REITER BURNS LLP

14        311 South Wacker Drive

15        Suite 5200

16        Chicago, Illinois 60606

17        312.889.9123

18

19

20

21

22

23

24

1    A P P E A R A N C E S   C O N T I N U E D

2

3    ON BEHALF OF DEFENDANT CITY OF CHICAGO:

4         CATHERINE M. BARBER, ESQUIRE

5         ROCK FUSCO & CONNELLY, LLC

6         321 North Clark Street

7         Suite 2200

8         Chicago, Illinois 60654

9         312.494.1000

10

11   ALSO PRESENT:

12        RICK KOSBERG, Videographer

13

14

15

16

17

18

19

20

21

22

23

24

1                    C O N T E N T S

2    EXAMINATION OF ROBERT RUTHERFORD            PAGE

3          By Mr. Swaminathan                     9

4          By Mr. Brener                         261

5

6                    E X H I B I T S

7              (Attached to transcript.)

8

9    RUTHERFORD DEPOSITION EXHIBITS              PAGE

10        Exhibit 3   Chicago Police CB Report    161

11        Exhibit 4   GPR Bates stamped 260-265   161

12        Exhibit 5   GPR Bates stamped 257-259   161

13

14

15

16

17

18

19

20

21

22

23

24

| | | |
|---|---|---|
| 1 | P R O C E E D I N G S | 10:49:49 |
| 2 | THE VIDEOGRAPHER:  This is Day 2 of the | 11:13:26 |
| 3 | video deposition of Robert Rutherford, taken by | 11:13:28 |
| 4 | Loevy and Loevy in the matter of Arturo Delaney | 11:13:33 |
| 5 | Reyes, et al, Reynaldo Guevara, et al, Case | 11:13:35 |
| 6 | 1:18-cv-1028 and Gabriel Solache, City of Chicago, | 11:13:37 |
| 7 | et al., Case No. 1:18, 2312, held at Loevy and | 11:13:46 |
| 8 | Loevy, 311 North Aberdeen Street, Chicago, | 11:13:50 |
| 9 | Illinois. | 11:13:54 |
| 10 | Today is December 18, 2019.  The time is | 11:13:54 |
| 11 | 11:14.  The court reporter is Anna Castle of | 11:13:59 |
| 12 | Planet Depos. | 11:14:04 |
| 13 | Counsel can now introduce themselves, and | 11:14:06 |
| 14 | the court reporter is free to administer oath. | 11:14:10 |
| 15 | MR. SWAMINATHAN:  Anand Swaminathan for | 11:14:13 |
| 16 | Plaintiff Arturo Delaney Reyes. | 11:14:14 |
| 17 | MS. SUSLER:  Jan Susler for Plaintiff | 11:14:14 |
| 18 | Gabriel Solache. | 11:14:17 |
| 19 | MR. STAINTHORP:  John Stainthorp for | 11:14:17 |
| 20 | Plaintiff Gabriel Solache. | 11:14:22 |
| 21 | MR. ZIBOLSKI:  Kevin Zibolski for | 11:14:22 |
| 22 | Defendant Guevara. | 11:14:23 |
| 23 | MR. BRENER:  Edward Brener for Tom | 11:14:23 |
| 24 | O'Malley, Edward Brualdi, Andrew Varga, Karen | 11:14:23 |

| | | |
|---|---|---|
| 1 | Wehrle, and Cook County. | 11:14:28 |
| 2 | MR. BURNS:  Daniel Burns on behalf of | 11:14:28 |
| 3 | Defendant Guevara. | 11:14:30 |
| 4 | MS. BARBER:  Catherine Barber for | 11:14:32 |
| 5 | Defendant City of Chicago. | 11:14:34 |
| 6 | MS. GOLDEN:  Caroline Golden for | 11:14:35 |
| 7 | Mr. Rutherford and the individual officer | 11:14:37 |
| 8 | defendants. | 11:14:39 |
| 9 | (Witness sworn.) | 11:14:39 |
| 10 | ROBERT RUTHERFORD, | 11:14:39 |
| 11 | having been duly sworn, testified as follows: | 11:14:39 |
| 12 | EXAMINATION BY COUNSEL FOR PLAINTIFF DELEON-REYES | 11:14:52 |
| 13 | MR. SWAMINATHAN:  I have an extra copy of | 11:14:52 |
| 14 | the cleared and closed report.  Did you not get a | 11:14:54 |
| 15 | copy? | 11:14:57 |
| 16 | MS. BARBER:  Yeah, we need an extra, so I | 11:14:58 |
| 17 | will take it, yes. | 11:15:01 |
| 18 | EXAMINATION BY COUNSEL FOR PLAINTIFF DELEON-REYES | 11:15:17 |
| 19 | BY MR. SWAMINATHAN: | 11:15:17 |
| 20 | Q  Good morning, Mr. Rutherford. | 11:15:18 |
| 21 | A  Good morning. | 11:15:20 |
| 22 | Q  We are here for a second day of your | 11:15:21 |
| 23 | deposition in the matter of Reyes and Solache | 11:15:23 |
| 24 | versus Guevara, et al; do you understand that? | 11:15:26 |

| | | |
|---|---|---|
| 1 | A  Yes. | 11:15:29 |
| 2 | Q  Yesterday we spoke about a number of | 11:15:29 |
| 3 | ground rules for the deposition, including the | 11:15:31 |
| 4 | idea that she's -- the court reporter is writing | 11:15:33 |
| 5 | down all of our questions and answers and so we | 11:15:37 |
| 6 | shouldn't talk over her.  Do you remember those | 11:15:39 |
| 7 | rules? | 11:15:42 |
| 8 | A  Yes. | 11:15:42 |
| 9 | Q  And one of those rules was if I ask you a | 11:15:42 |
| 10 | question and you don't understand it, please let | 11:15:45 |
| 11 | me know, and I will rephrase it.  That still | 11:15:47 |
| 12 | applies today; do you understand that? | 11:15:49 |
| 13 | A  Yes. | 11:15:51 |
| 14 | Q  And likewise, if you answer my question, | 11:15:51 |
| 15 | I'll assume you understood my question.  Still | 11:15:53 |
| 16 | fair? | 11:15:53 |
| 17 | A  Yes. | 11:15:55 |
| 18 | Q  Okay.  And if you need to take a break, | 11:15:55 |
| 19 | again, at any point, just let us know.  Just | 11:15:57 |
| 20 | answer any pending question and then we'll take a | 11:16:00 |
| 21 | break.  Sound good? | 11:16:02 |
| 22 | A  Yes. | 11:16:03 |
| 23 | Q  If you need to break for food or lunch at | 11:16:03 |
| 24 | any point, if you're feeling like, you know, | 11:16:06 |

| | | |
|---|---|---|
| 1 | there's any -- you have any need for water, food, | 11:16:08 |
| 2 | drink, whatever, let us know we'll take a break. | 11:16:12 |
| 3 | Sound good? | 11:16:15 |
| 4 | A  Yes. | 11:16:16 |
| 5 | Q  And you understand that you remain under | 11:16:16 |
| 6 | oath for today's deposition? | 11:16:19 |
| 7 | A  I was just sworn in. | 11:16:20 |
| 8 | Q  Okay.  I want to follow up on our | 11:16:22 |
| 9 | discussion about the layout of Area 5 yesterday. | 11:16:25 |
| 10 | You laid out for us -- you gave us a general sense | 11:16:30 |
| 11 | of what that area looks like up on the second | 11:16:33 |
| 12 | floor on Area 5.  And we talked about the fact | 11:16:36 |
| 13 | that along the west wall there are a number of | 11:16:38 |
| 14 | interrogation rooms along with some offices for | 11:16:43 |
| 15 | violent crimes supervisors, correct? | 11:16:47 |
| 16 | A  Yes. | 11:16:51 |
| 17 | MS. BARBER:  Objection to form of the | 11:16:51 |
| 18 | question.  Misstates testimony. | 11:16:53 |
| 19 | Q  The northwest corner was the office of the | 11:16:55 |
| 20 | commander, correct? | 11:16:58 |
| 21 | A  Yes. | 11:16:59 |
| 22 | Q  And if I understand correctly, along that | 11:16:59 |
| 23 | west wall, on the north side of the west wall, | 11:17:03 |
| 24 | there are some interrogation rooms and then | 11:17:07 |

| | | |
|---|---|---|
| 1 | there's a bathroom and some supervisor's office | 11:17:10 |
| 2 | and then along the south side of the west wall | 11:17:12 |
| 3 | there are also some interrogation rooms; is that | 11:17:16 |
| 4 | right? | 11:17:18 |
| 5 |      MS. BARBER:  Objection to form. | 11:17:18 |
| 6 | A  Along -- let me explain it again. | 11:17:21 |
| 7 | Q  Please. | 11:17:23 |
| 8 | A  On the west wall -- | 11:17:23 |
| 9 | Q  Yeah. | 11:17:24 |
| 10 | A  Okay.  It starts with the youth offices. | 11:17:25 |
| 11 | Q  Are you talking about starting from the | 11:17:27 |
| 12 | south? | 11:17:30 |
| 13 | A  Starting from south going north. | 11:17:30 |
| 14 | Q  Okay. | 11:17:32 |
| 15 | A  That's where the youth offices are or | 11:17:33 |
| 16 | were.  It goes along.  You got some interview | 11:17:36 |
| 17 | rooms.  You run into the property crimes office. | 11:17:39 |
| 18 | You keep now going towards the front.  You'll have | 11:17:44 |
| 19 | a bathroom.  Then you'll have -- I believe that's | 11:17:47 |
| 20 | where the violent crimes offices were for the | 11:17:50 |
| 21 | supervisors and a couple three more interview | 11:17:53 |
| 22 | rooms I believe.  And then you have the hallway | 11:17:57 |
| 23 | that led down to -- it's not much of a hallway but | 11:17:59 |
| 24 | where the homicide office whatever was at and off | 11:18:02 |

| | | |
|---|---|---|
| 1 | that was the commander's office. | 11:18:07 |
| 2 | Q  Okay.  So there are some interview rooms | 11:18:09 |
| 3 | or interrogation rooms north of the bathrooms and | 11:18:13 |
| 4 | there are some that are south of the bathrooms, | 11:18:16 |
| 5 | correct? | 11:18:18 |
| 6 | MS. BARBER:  Objection, form.  Misstates | 11:18:19 |
| 7 | the witness's testimony. | 11:18:21 |
| 8 | A  That is correct. | 11:18:22 |
| 9 | Q  How far is it from the entrance to the | 11:18:23 |
| 10 | commander's office to those interrogation rooms on | 11:18:31 |
| 11 | the north side of the west wall? | 11:18:34 |
| 12 | MS. BARBER:  Objection to form.  Misstates | 11:18:36 |
| 13 | the witness's testimony. | 11:18:38 |
| 14 | A  How far is it from the front door to the | 11:18:41 |
| 15 | commander's office? | 11:18:43 |
| 16 | Q  Yeah, the door to the commander's office | 11:18:44 |
| 17 | to the interrogation rooms. | 11:18:47 |
| 18 | MS. BARBER:  Objection to form.  Misstates | 11:18:48 |
| 19 | the witness's testimony. | 11:18:50 |
| 20 | A  I never measured it.  Yeah, I couldn't -- | 11:18:51 |
| 21 | you know. | 11:18:58 |
| 22 | Q  Is it a few feet?  Is it dozens of feet? | 11:18:58 |
| 23 | MS. BARBER:  Objection to form, | 11:19:01 |
| 24 | foundation. | 11:19:03 |

| | | |
|---|---|---|
| 1 | A  I would guess 50 to a hundred feet.  But | 11:19:05 |
| 2 | again, I didn't measure it. | 11:19:08 |
| 3 | Q  How far from -- that's to the north of the | 11:19:09 |
| 4 | interrogation rooms? | 11:19:12 |
| 5 | A  That's the commander's office. | 11:19:13 |
| 6 | Q  Yeah, from the commander's office to the | 11:19:15 |
| 7 | interrogation rooms that are on the north side of | 11:19:17 |
| 8 | the west wall. | 11:19:20 |
| 9 | MS. BARBER:  Objection, form, foundation. | 11:19:21 |
| 10 | Misstates the witness's testimony. | 11:19:23 |
| 11 | A  From the actual commander's office to the | 11:19:28 |
| 12 | farthest north interview room, maybe 25, 30 feet. | 11:19:34 |
| 13 | Q  And what about from the door -- there's a | 11:19:42 |
| 14 | door that goes out from the commander's office | 11:19:43 |
| 15 | that goes out to the main floor, correct? | 11:19:50 |
| 16 | A  You have the commander's office, his | 11:19:50 |
| 17 | private office, that opens up into where his staff | 11:19:52 |
| 18 | would sit. | 11:19:57 |
| 19 | Q  Okay. | 11:19:58 |
| 20 | A  And that opens up to basically the | 11:20:00 |
| 21 | hallway.  From that door, from the command staff | 11:20:02 |
| 22 | to the first interview room door, maybe 10, | 11:20:05 |
| 23 | 12 feet. | 11:20:09 |
| 24 | Q  Okay.  From the -- where the homicide -- | 11:20:09 |

1    strike that.                                              11:20:13

2         Where the violent crimes supervisors sat,           11:20:13

3    from that office to the interrogation rooms on the       11:20:18

4    north side of the west wall, how far away?               11:20:21

5         MS. BARBER:  Objection, form, foundation,           11:20:23

6    misstates the witness's testimony.                       11:20:26

7         A  Their doorway was, you know, rather short,       11:20:31

8    maybe ten -- maybe ten feet.  I don't know.              11:20:34

9         Q  Could be less?                                   11:20:38

10        A  This is all a guess.  Yeah, I never              11:20:38

11   measured it out because here's the interrogation         11:20:41

12   room.  There's a wall and there's their office.          11:20:44

13        Q  So one of the interrogation rooms shared a       11:20:47

14   wall with the sergeant's office, correct?                11:20:50

15        MS. BARBER:  Objection, form, misstates             11:20:52

16   the witness's testimony.                                 11:20:54

17        A  You know, I do believe so.                       11:20:55

18        Q  And then the other rooms were right after        11:20:57

19   that first room?                                         11:20:58

20        A  Yeah.                                            11:20:59

21        MS. BARBER:  Objection, form.                       11:20:59

22        Q  And then how far was it from the violent         11:21:01

23   crimes sergeant's office to the south                    11:21:05

24   interrogation rooms on the west wall?                    11:21:07

| | | |
|---|---|---|
| 1 | MS. BARBER:  Objection, form, foundation, | 11:21:09 |
| 2 | misstates the witness's testimony, and calls for | 11:21:12 |
| 3 | speculation -- | 11:21:15 |
| 4 | THE REPORTER:  I'm sorry, I didn't hear | 11:21:15 |
| 5 | the end. | 11:21:15 |
| 6 | MS. BARBER:  And calls for speculation | 11:21:18 |
| 7 | based on the witness's answers to the previous | 11:21:20 |
| 8 | question. | 11:21:23 |
| 9 | A  I never measured it out, so 10, 15 feet to | 11:21:24 |
| 10 | the first one.  I'm not sure. | 11:21:29 |
| 11 | Q  Okay.  Excuse me.  We talked about | 11:21:31 |
| 12 | the fact that you worked on April 4th, your second | 11:21:47 |
| 13 | shift which is the day shift, correct?  Do I have | 11:21:52 |
| 14 | that wrong?  Sorry.  You worked -- what shift did | 11:21:55 |
| 15 | you work on April 4th? | 11:21:56 |
| 16 | A  I was on days. | 11:21:58 |
| 17 | Q  And what was the time of that shift? | 11:21:59 |
| 18 | A  I believe at that time it was 8:30 to | 11:22:01 |
| 19 | 5:00. | 11:22:06 |
| 20 | Q  And that was second watch? | 11:22:08 |
| 21 | A  Yes. | 11:22:15 |
| 22 | Q  On April 4th, 1998, that was the day that | 11:22:15 |
| 23 | you were involved in the investigation, the Soto | 11:22:19 |
| 24 | investigation, correct? | 11:22:21 |

1      A   Yes.                                          11:22:22

2      Q   Did you work overtime that day?              11:22:22

3      A   I don't remember.                            11:22:28

4      Q   Did you work past the end of your shift      11:22:29

5   that day?                                           11:22:32

6      A   Again, that would have been working          11:22:33

7   overtime and I don't remember.                      11:22:37

8      Q   If you worked past the end of your shift,    11:22:37

9   it would have been overtime; is that right?         11:22:41

10     A   Yes.                                         11:22:42

11     Q   And if you had overtime that day, where      11:22:43

12  would that be recorded?                             11:22:46

13     A   That would be I imagine on the ANA sheets.   11:22:47

14     Q   Anywhere else?                               11:22:51

15     A   I would fill out a time due slip.  Where     11:22:57

16  it's recorded I don't know.                         11:23:00

17     Q   Did you keep track of that in your FOP       11:23:02

18  book?                                               11:23:07

19     A   Yes.                                         11:23:07

20     Q   So it would be in your FOP book, too?        11:23:07

21     A   Yes.                                         11:23:10

22     Q   Do you still have a copy of your FOP book?   11:23:10

23     A   As I stated yesterday, no.                   11:23:13

24     Q   You got rid of those?                        11:23:15

| | | |
|---|---|---|
| 1 | A  Yeah. | 11:23:17 |
| 2 | MS. GOLDEN:  Form.  Go ahead. | 11:23:18 |
| 3 | A  Yeah, I never kept them.  It was just for | 11:23:22 |
| 4 | my records and that was it. | 11:23:24 |
| 5 | MS. GOLDEN:  You are talking about the | 11:23:26 |
| 6 | book from 1998, right? | 11:23:27 |
| 7 | MR. SWAMINATHAN:  Yes. | 11:23:29 |
| 8 | Q  Do you keep any of those books today, any | 11:23:30 |
| 9 | of your FOP books? | 11:23:32 |
| 10 | A  When I was active, no. | 11:23:36 |
| 11 | Q  Can you tell us what the ANA sheet is? | 11:23:41 |
| 12 | MS. GOLDEN:  What did you say? | 11:23:45 |
| 13 | MR. SWAMINATHAN:  ANA sheet. | 11:23:48 |
| 14 | A  Basically they filled out the sheet on who | 11:23:53 |
| 15 | was working that day and what beat they were | 11:23:56 |
| 16 | assigned. | 11:23:59 |
| 17 | Q  What does ANA stand for? | 11:23:59 |
| 18 | MS. BARBER:  Objection, foundation. | 11:24:02 |
| 19 | A  I'm not sure. | 11:24:05 |
| 20 | Q  Who filled that out?  Did you or did the | 11:24:07 |
| 21 | supervisor? | 11:24:09 |
| 22 | MS. BARBER:  Objection. | 11:24:10 |
| 23 | MS. GOLDEN:  What are we talking about? | 11:24:11 |
| 24 | MR. SWAMINATHAN:  The ANA sheet.  Go | 11:24:13 |

| | | |
|---|---|---|
| 1 | ahead. | 11:24:15 |
| 2 | MS. GOLDEN:  Any particular one? | 11:24:15 |
| 3 | MR. SWAMINATHAN:  No.  Please just | 11:24:17 |
| 4 | objection to form. | 11:24:18 |
| 5 | MS. GOLDEN:  It's not form.  It's | 11:24:19 |
| 6 | foundation. | 11:24:20 |
| 7 | MR. SWAMINATHAN:  Whatever you want it to | 11:24:21 |
| 8 | be. | 11:24:24 |
| 9 | Q  Who filled it out? | 11:24:24 |
| 10 | A  It wasn't me, so I'm not sure. | 11:24:25 |
| 11 | Q  Was it a sergeant? | 11:24:27 |
| 12 | MS. BARBER:  Objection, form, foundation. | 11:24:28 |
| 13 | A  As I said, I'm not sure. | 11:24:33 |
| 14 | Q  The Reyes case you indicated that it was | 11:24:35 |
| 15 | -- strike that. | 11:24:38 |
| 16 | The Soto investigation, you indicated was | 11:24:38 |
| 17 | -- had been in the press, correct? | 11:24:41 |
| 18 | A  I believe so, yes. | 11:24:42 |
| 19 | Q  There was some -- there was some media | 11:24:43 |
| 20 | attention on the case, fair? | 11:24:46 |
| 21 | A  Yes. | 11:24:48 |
| 22 | Q  Was it considered a heater case? | 11:24:48 |
| 23 | MS. GOLDEN:  Form. | 11:24:54 |
| 24 | A  What do you mean by heater case? | 11:24:58 |

1    Q  Is that term you guys used, heater?                    11:25:00

2    A  I didn't use it.                                        11:25:03

3    Q  Was it a term that you ever used in the               11:25:04

4    Chicago Police Department?                                 11:25:06

5    A  I've heard it used by other people, but I             11:25:07

6    don't recall policemen really using it.                    11:25:12

7    Q  Who did you hear using it?                             11:25:14

8    A  You know, the press.                                   11:25:17

9    Q  Was there any -- were there any term for              11:25:19

10   cases in the police department where it was like          11:25:22

11   this is an important case.  We've got to place            11:25:24

12   some real focus on this case?                              11:25:30

13       MS. BARBER:  Objection, form, foundation.             11:25:32

14   A  All murder cases were important.                       11:25:35

15   Obviously we have two tenders missing, two young           11:25:37

16   kids missing.  That's very important.  And as --          11:25:42

17   so I don't know if -- to me no one murder wasn't           11:25:51

18   more important than the other murder.                      11:25:55

19   Q  Was there extra attention being paid to               11:25:57

20   this case?                                                 11:25:59

21       MS. GOLDEN:  Foundation, form.                        11:26:00

22   A  I don't know if there was at the                       11:26:05

23   beginning.  I wasn't there.                                11:26:07

24   Q  At the point you were involved on                     11:26:09

| | |
|---|---|
| 1 | April 4th, did you understand there was extra | 11:26:10 |
| 2 | attention being paid to that case? | 11:26:13 |
| 3 | MS. GOLDEN:  Form. | 11:26:15 |
| 4 | A   Again, there was people in custody, so | 11:26:16 |
| 5 | yes, things would speed up a little bit. | 11:26:20 |
| 6 | Q   Was the Soto investigation on April 4th a | 11:26:22 |
| 7 | case that was a priority in the office? | 11:26:26 |
| 8 | A   Yes. | 11:26:29 |
| 9 | Q   Were you working on any other cases that | 11:26:30 |
| 10 | day or were you focused on the Soto investigation | 11:26:33 |
| 11 | on that shift? | 11:26:38 |
| 12 | A   I wasn't assigned to any other cases I | 11:26:39 |
| 13 | don't believe.  I don't remember exactly. | 11:26:42 |
| 14 | Q   So your -- strike that.  Go ahead. | 11:26:44 |
| 15 | A   I worked on the Soto case.  Now, when I | 11:26:47 |
| 16 | had some downtime on the Soto case, I don't | 11:26:52 |
| 17 | remember what my activities were. | 11:26:55 |
| 18 | Q   If you had downtime, would you use that | 11:26:56 |
| 19 | time to write reports, those kinds of things? | 11:26:59 |
| 20 | A   I might write some reports on other cases | 11:27:02 |
| 21 | that I had, that, you know, other investigations, | 11:27:05 |
| 22 | whatever, yes. | 11:27:07 |
| 23 | Q   Do you have any -- as you understand it, | 11:27:08 |
| 24 | you weren't assigned to any other cases that day; | 11:27:13 |

| | | |
|---|---|---|
| 1 | do I have that right? | 11:27:16 |
| 2 | MS. GOLDEN:  Form. | 11:27:17 |
| 3 | A  You know, if I was assigned a case a week | 11:27:20 |
| 4 | earlier, I was still assigned to that case, okay? | 11:27:24 |
| 5 | They didn't come in that day give me something | 11:27:26 |
| 6 | else to do that I remember. | 11:27:28 |
| 7 | Q  Do you have any reason to believe you were | 11:27:29 |
| 8 | working on anything other than the Soto case on | 11:27:32 |
| 9 | that shift on April 4th? | 11:27:35 |
| 10 | MS. GOLDEN:  Asked and answered. | 11:27:36 |
| 11 | A  Again, I don't remember. | 11:27:38 |
| 12 | Q  Who is allowed to conduct interviews or | 11:27:39 |
| 13 | interrogations of witnesses in homicide cases? | 11:27:43 |
| 14 | MS. GOLDEN:  Form. | 11:27:46 |
| 15 | MS. BARBER:  Objection, form. | 11:27:47 |
| 16 | A  I really don't understand what you're | 11:27:52 |
| 17 | asking. | 11:27:55 |
| 18 | Q  When witnesses are -- let's do suspects. | 11:27:56 |
| 19 | A  Okay. | 11:27:59 |
| 20 | Q  If a suspect is interviewed in a homicide | 11:28:00 |
| 21 | case, detectives can obviously conduct those | 11:28:03 |
| 22 | interrogations, correct? | 11:28:06 |
| 23 | A  That's correct. | 11:28:07 |
| 24 | Q  Did anyone else conduct interrogations of | 11:28:07 |

| | | |
|---|---|---|
| 1 | homicide suspects other than detectives? | 11:28:11 |
| 2 | MS. GOLDEN: Form. | 11:28:13 |
| 3 | A I can't tell a sergeant what he can and | 11:28:17 |
| 4 | can't do. I can't tell a lieutenant what he can | 11:28:20 |
| 5 | and can't do in the chain of command. Would a | 11:28:24 |
| 6 | patrolman do it? No. So if that answers your | 11:28:29 |
| 7 | question. | 11:28:31 |
| 8 | Q So in terms of putting aside the | 11:28:32 |
| 9 | supervisors who were higher on the chain of | 11:28:33 |
| 10 | command, you have patrol officers, you have gang | 11:28:36 |
| 11 | crime specialists, you got detectives, you have | 11:28:40 |
| 12 | youth officers. You've got a number of different | 11:28:43 |
| 13 | people who are not in supervisor roles. With me | 11:28:47 |
| 14 | so far? | 11:28:50 |
| 15 | A Yes. | 11:28:50 |
| 16 | Q Who can conduct interrogations of suspects | 11:28:50 |
| 17 | in a homicide case? | 11:28:54 |
| 18 | MS. GOLDEN: Form, foundation, asked and | 11:28:55 |
| 19 | answered. | 11:28:59 |
| 20 | A Again, it all depends on any specific | 11:29:00 |
| 21 | case. Who can interview? Obviously, you know, it | 11:29:04 |
| 22 | depends. | 11:29:12 |
| 23 | Q If a suspect is being interviewed in a | 11:29:13 |
| 24 | homicide case, is there a need to be a homicide | 11:29:16 |

1    detective participating in that interrogation?                    11:29:19

2        MS. BARBER:  Objection, form.                    11:29:21

3     A  I would say a homicide investigator would                    11:29:24

4    be leading the investigation into it, yes.                    11:29:29

5     Q  And so you would expect that a homicide                    11:29:31

6    investigator would be involved in interrogating                    11:29:33

7    any suspects in a homicide case; is that fair?                    11:29:36

8        MS. GOLDEN:  Form.                    11:29:40

9     A  About the homicide I would say that would                    11:29:41

10   be fair to say.                    11:29:45

11    Q  And I think I might have misspoke when I                    11:29:46

12   asked this question.  You would expect that a                    11:29:49

13   homicide detective would be involved in                    11:29:51

14   interrogating any suspects in a homicide case; is                    11:29:53

15   that fair?                    11:29:55

16    A  In that homicide case, yes.                    11:29:56

17    Q  Could gang crime specialists conduct                    11:29:58

18   interrogations of suspects in a homicide case on                    11:30:04

19   their own?                    11:30:08

20       MS. GOLDEN:  Foundation.                    11:30:08

21    A  Again, if you're asking me could they walk                    11:30:11

22   up in the office, walk right in the room and do                    11:30:14

23   the interview without talking to a sergeant or the                    11:30:16

24   detective handling the case, that would be                    11:30:19

1   improper I would say.                                     11:30:23

2       Q  You know of any instances in which gang            11:30:24

3   crime specialists have conducted interrogations of       11:30:27

4   homicide suspects on their own without a homicide         11:30:30

5   detective being present for the interrogation?           11:30:33

6       MS. GOLDEN:  I'm sorry.  We don't have any            11:30:36

7   gang crime specialists in this case, so I'm              11:30:38

8   objecting to relevance.                                   11:30:40

9       Q  Go ahead.                                          11:30:41

10      MS. BARBER:  Objection to the form as                 11:30:42

11  well.                                                     11:30:44

12      A  I don't know of any.                               11:30:45

13      Q  Could a youth officer conduct an                   11:30:45

14  interrogation of a suspect in a homicide case            11:30:49

15  without a homicide detective being present?              11:30:52

16      MS. BARBER:  Objection to the form of the             11:30:54

17  question.                                                 11:30:56

18      MS. GOLDEN:  Foundation.                              11:30:59

19      A  When you say -- yes, he could, I mean, is          11:31:00

20  it possible he could do it?  Sure.  Is it proper         11:31:05

21  for him to go in on his own, start doing the             11:31:10

22  investigation while a suspect is in custody?  No,         11:31:13

23  that wouldn't be proper without talking to the           11:31:16

24  supervisor or the detective doing the                     11:31:19

| | | |
|---|---|---|
| 1 | investigation. | 11:31:23 |
| 2 | Q  Typically, if there is going to be an | 11:31:23 |
| 3 | interrogation -- strike that. | 11:31:27 |
| 4 | Are you aware of any instances in which a | 11:31:28 |
| 5 | youth officer conducted an interrogation of a | 11:31:30 |
| 6 | homicide suspect on their own? | 11:31:33 |
| 7 | MS. GOLDEN:  Form. | 11:31:36 |
| 8 | A  Without any knowledge of -- no, without | 11:31:37 |
| 9 | the knowledge of a detective or a sergeant | 11:31:44 |
| 10 | involved, no. | 11:31:47 |
| 11 | Q  Are you aware of any instances where a | 11:31:48 |
| 12 | detective or a sergeant said, hey, youth officer, | 11:31:49 |
| 13 | go ahead and interrogate my homicide suspect | 11:31:52 |
| 14 | without any homicide detective being present? | 11:31:55 |
| 15 | MS. GOLDEN:  Form. | 11:31:57 |
| 16 | A  I don't know of any. | 11:32:00 |
| 17 | Q  Have you ever heard of that happening? | 11:32:02 |
| 18 | MS. GOLDEN:  Form. | 11:32:04 |
| 19 | A  I don't recall it happening. | 11:32:05 |
| 20 | Q  Have you ever heard of it happen where a | 11:32:07 |
| 21 | homicide detective said, hey, gang crime | 11:32:10 |
| 22 | specialist, go interrogate my homicide suspect | 11:32:12 |
| 23 | without any homicide detective present? | 11:32:15 |
| 24 | MS. GOLDEN:  Form. | 11:32:16 |

| | | |
|---|---|---|
| 1 | A  I don't recall it ever happening. | 11:32:19 |
| 2 | Q  Would you say that every instance of an | 11:32:20 |
| 3 | interrogation of a homicide suspect that you're | 11:32:23 |
| 4 | aware there was at least one homicide detective | 11:32:25 |
| 5 | present for the interrogation? | 11:32:28 |
| 6 | MS. BARBER:  Objection to the form of the | 11:32:29 |
| 7 | question.  I don't understand why it continually | 11:32:30 |
| 8 | has to be phrased this way. | 11:32:34 |
| 9 | Q  Go ahead. | 11:32:36 |
| 10 | MS. GOLDEN:  Foundation. | 11:32:37 |
| 11 | A  Any cases where I was involved in, I don't | 11:32:38 |
| 12 | know where a specialist interviewed a person in | 11:32:42 |
| 13 | custody while I was there. | 11:32:44 |
| 14 | Q  While you were there? | 11:32:50 |
| 15 | A  Yes. | 11:32:51 |
| 16 | Q  Did you sometimes conduct interrogations | 11:32:52 |
| 17 | where you had a suspect who didn't speak English? | 11:33:18 |
| 18 | A  Yes. | 11:33:23 |
| 19 | Q  Where you need to use somebody else as a | 11:33:24 |
| 20 | translator? | 11:33:27 |
| 21 | A  Yes. | 11:33:28 |
| 22 | Q  Any instances where you sometimes use | 11:33:28 |
| 23 | police officers as a translator? | 11:33:31 |
| 24 | A  Most of the time, yes. | 11:33:34 |

| | |
|---|---|
| 1 | Q  And where you used another police officer | 11:33:35 |
| 2 | as a translator, was it often somebody who was not | 11:33:38 |
| 3 | a homicide detective? | 11:33:41 |
| 4 | MS. GOLDEN:  Form. | 11:33:42 |
| 5 | A  If -- it all depends who was available to | 11:33:46 |
| 6 | do -- translate.  I don't recall any homicide | 11:33:54 |
| 7 | investigators that spoke Polish or any detectives | 11:33:57 |
| 8 | that really spoke Polish that I know of.  So if I | 11:33:59 |
| 9 | had a Polish guy, then we'd have a patrolman who | 11:34:02 |
| 10 | was fluid in Polish help us with the translation. | 11:34:06 |
| 11 | Q  It was common to have translators who were | 11:34:09 |
| 12 | police officers who were not detectives; is that | 11:34:14 |
| 13 | fair? | 11:34:17 |
| 14 | MS. GOLDEN:  Form. | 11:34:17 |
| 15 | MS. BARBER:  Foundation. | 11:34:18 |
| 16 | A  I mean, there was list of translators | 11:34:21 |
| 17 | supposedly and you could call and find out if you | 11:34:26 |
| 18 | needed one.  If you didn't know of any available, | 11:34:29 |
| 19 | you could call downstairs -- if there was no | 11:34:32 |
| 20 | detective that spoke Spanish on the floor, you can | 11:34:35 |
| 21 | call to the 25th District and see if there's a | 11:34:37 |
| 22 | Spanish officer that would come in and help you. | 11:34:39 |
| 23 | Q  If you had somebody who was translating | 11:34:42 |
| 24 | for you who is not a detective assisting your | 11:34:46 |

| | | |
|---|---|---|
| 1 | interrogations of suspects, could the nondetective | 11:34:49 |
| 2 | translator conduct an interrogation of a suspect | 11:34:55 |
| 3 | on their own? | 11:34:58 |
| 4 | MS. GOLDEN:  Form. | 11:34:59 |
| 5 | MS. BARBER:  Object to the form and | 11:35:00 |
| 6 | foundation of that question use of the word | 11:35:01 |
| 7 | interrogation.  I think it's argumentative. | 11:35:04 |
| 8 | Q  Go ahead. | 11:35:08 |
| 9 | A  Would the inter -- would the person | 11:35:09 |
| 10 | brought in to translate do the interrogation | 11:35:12 |
| 11 | without you there?  I don't know why that would | 11:35:15 |
| 12 | happen. | 11:35:18 |
| 13 | Q  Okay.  Now, in your experience if somebody | 11:35:18 |
| 14 | was serving as a translator who is not a | 11:35:22 |
| 15 | detective, would it be permissible for them to go | 11:35:25 |
| 16 | in and conduct an interview of a homicide suspect | 11:35:27 |
| 17 | without a homicide detective present? | 11:35:30 |
| 18 | MS. BARBER:  Can you read that question | 11:35:45 |
| 19 | back, please. | 11:35:46 |
| 20 | (Record read back by the | 11:35:46 |
| 21 | reporter.) | 11:35:48 |
| 22 | MS. GOLDEN:  Incomplete hypothetical. | 11:35:48 |
| 23 | MS. BARBER:  Form. | 11:35:50 |
| 24 | A  I don't know if it ever happened.  So, I | 11:35:52 |

1    mean, do I think it would be proper?  No.  But I                11:35:55

2    don't recall it ever happening.                                 11:35:58

3        Q  In this case Mr. Trevino served as a                     11:35:59

4    translator for you while during this                            11:36:07

5    investigation; is that true?                                    11:36:09

6        A  Yes.                                                     11:36:10

7        Q  Was Mr. Trevino someone who on his own                   11:36:11

8    conduct interrogations of homicide suspects?                    11:36:17

9           MS. GOLDEN:  Foundation.                                 11:36:20

10          MS. BARBER:  Form.                                       11:36:22

11       A  Without permission I don't believe he                    11:36:23

12   would have.                                                     11:36:26

13       Q  Did you at any point give him permission                 11:36:27

14   to interrogate any of the homicide suspects in                  11:36:29

15   this case on his own?                                           11:36:31

16          MS. BARBER:  Form.                                       11:36:33

17       A  No, I don't believe so.                                  11:36:37

18       Q  Have you ever given Mr. Trevino permission               11:36:38

19   to conduct an interrogation of a homicide suspect               11:36:42

20   on his own?                                                     11:36:45

21          MS. BARBER:  Form.                                       11:36:46

22       A  Have I?  No.                                             11:36:47

23       Q  And if he served as -- strike that.                     11:36:48

24          The fact that he served as a translator in               11:36:50

1   this case, does that give him permission to                11:36:54

2   interrogate a suspect on his own?                          11:36:57

3        MS. GOLDEN:  Form.                                    11:36:59

4        MS. BARBER:  Form.                                    11:36:59

5    A  I -- there would be no reason for him to               11:37:04

6   do it.                                                     11:37:06

7    Q  Was the fact that he was serving as a --               11:37:06

8   strike that.                                               11:37:09

9        Did you permit Mr. Trevino to interrogate             11:37:10

10  any of the suspects in this case on his own given          11:37:17

11  that he was serving in the role of translator?             11:37:19

12   A  His role as a translator would be to -- we             11:37:22

13  would ask the questions.  He would -- you know, he         11:37:29

14  would ask the question in Spanish, get the answer          11:37:31

15  in Spanish and translate it back to us in English.         11:37:35

16   Q  Was that the extent of his role in this                11:37:38

17  case?                                                      11:37:41

18       MS. GOLDEN:  Foundation.                              11:37:41

19   A  On the day that I was there, as far as I               11:37:44

20  know, yes.                                                 11:37:46

21   Q  Okay.  We talked yesterday about things                11:37:47

22  you required to document during the course of a            11:37:57

23  homicide investigation; do you recall that?               11:38:01

24   A  Yes.                                                   11:38:03

1    Q  One of the things we talked about was          11:38:03

2  documenting information that a witness told you      11:38:06

3  about the case or the crime, correct?               11:38:07

4    A  Yes.                                           11:38:12

5    Q  If a suspect made a drawing of a crime         11:38:13

6  scene, could that be incriminating evidence?        11:38:17

7       MS. BARBER:  Objection, form, foundation,      11:38:21

8  incomplete hypothetical.                            11:38:23

9       MS. GOLDEN:  Incriminating, okay.              11:38:25

10      THE WITNESS:  Um --                            11:38:28

11      MS. GOLDEN:  Asked and answered.               11:38:29

12   A  Could it be incriminating?  Depends on         11:38:32

13  what he drew I guess.                               11:38:35

14   Q  If a suspect laid out visually the layout      11:38:36

15  of where a crime occurred or how they committed     11:38:40

16  the crime, would you agree with me that could be    11:38:42

17  potentially incriminating?                          11:38:44

18      MS. BARBER:  Objection, form, compound.        11:38:46

19   A  Yes.                                           11:38:49

20      MS. GOLDEN:  Asked and answered.               11:38:49

21   Q  If you hadn't given that witness -- strike     11:38:51

22  that.                                               11:38:53

23      And if you hadn't given that suspect any       11:38:53

24  information about the crime scene or how the crime  11:38:56

1    occurred, that could be particularly powerful          11:38:59

2    evidence; would you agree with that?                   11:39:01

3        MS. BARBER:  Objection, form, foundation,          11:39:02

4    incomplete hypothetical.                               11:39:05

5        A  It all depends what he drew.                    11:39:07

6        Q  Right.  If it was consistent with what was      11:39:09

7    -- what actually happened or how the crime             11:39:12

8    occurred, that could be powerful evidence; do you      11:39:14

9    agree?                                                 11:39:16

10       MS. BARBER:  Same objections.                      11:39:17

11       A  Powerful, I don't know.  It would be            11:39:19

12   evidence.                                              11:39:22

13       Q  Is it evidence that you would document, if      11:39:22

14   you had a witness who was drawing for you how the      11:39:24

15   crime occurred?                                        11:39:29

16       A  Would I document it?  Probably.                 11:39:32

17       Q  If they drew something, would you preserve      11:39:35

18   it?                                                    11:39:38

19       MS. GOLDEN:  Form, foundation.                     11:39:38

20       A  If it was possible.                             11:39:42

21       Q  Yes?                                            11:39:44

22       A  If it was possible.                             11:39:45

23       Q  Okay.  And if -- even they didn't -- even      11:39:46

24   if it wasn't something that you could preserve, if     11:39:50

| | | |
|---|---|---|
| 1 | you took notes or wrote a supplementary report | 11:39:53 |
| 2 | about your interrogation, would you indicate that | 11:39:56 |
| 3 | the individual had been able to visually lay out | 11:39:58 |
| 4 | the crime scene? | 11:40:02 |
| 5 | MS. GOLDEN:  Form. | 11:40:05 |
| 6 | A  If -- I would -- I imagine I'd try to | 11:40:09 |
| 7 | document it in the report. | 11:40:15 |
| 8 | Q  That could be potentially important | 11:40:17 |
| 9 | evidence; is that fair? | 11:40:19 |
| 10 | MS. BARBER:  Objection, form, foundation, | 11:40:21 |
| 11 | incomplete hypothetical. | 11:40:23 |
| 12 | A  It would be evidence maybe. | 11:40:24 |
| 13 | Q  And you would try to preserve it? | 11:40:26 |
| 14 | MS. GOLDEN:  Form.  What -- | 11:40:29 |
| 15 | MR. SWAMINATHAN:  Objection to form. | 11:40:35 |
| 16 | Q  Go ahead. | 11:40:37 |
| 17 | A  Again, if it was possible to preserve, we | 11:40:37 |
| 18 | try.  I mean, if it was on a piece of paper, we | 11:40:40 |
| 19 | might inventory the piece of paper. | 11:40:44 |
| 20 | Q  And just as you would try to write reports | 11:40:45 |
| 21 | that communicate the information a witness told | 11:40:48 |
| 22 | you, if a witness made a drawing for you or was | 11:40:50 |
| 23 | able to visually depict for you a scene, you would | 11:40:54 |
| 24 | document that as well; is that fair? | 11:40:56 |

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Asked and answered. | 11:40:57 |
| 2 | A  If they made a drawing, we try to save it, | 11:41:01 |
| 3 | yes. | 11:41:04 |
| 4 | Q  Would you also in your own report indicate | 11:41:04 |
| 5 | that the person made a drawing? | 11:41:07 |
| 6 | MS. GOLDEN:  Asked and answered. | 11:41:09 |
| 7 | A  If I wrote out the report and he made the | 11:41:12 |
| 8 | drawing for me, I would indicate that in the | 11:41:15 |
| 9 | report. | 11:41:17 |
| 10 | Q  Okay.  Now, if someone acts out a crime | 11:41:17 |
| 11 | during the course of an interrogation, is that | 11:41:20 |
| 12 | something you would document? | 11:41:22 |
| 13 | MS. GOLDEN:  Form. | 11:41:25 |
| 14 | A  Again, I'd -- you'd write it out maybe in | 11:41:29 |
| 15 | the report, yes. | 11:41:36 |
| 16 | Q  Maybe or you would? | 11:41:36 |
| 17 | MS. GOLDEN:  Incomplete hypothetical, form | 11:41:37 |
| 18 | of the question. | 11:41:39 |
| 19 | A  It all depends on exactly what he did, you | 11:41:44 |
| 20 | know, how he demonstrated it. | 11:41:47 |
| 21 | Q  So if somebody -- strike that. | 11:41:49 |
| 22 | If a homicide suspect demonstrated for you | 11:41:51 |
| 23 | how they committed the crime, are you saying in | 11:41:54 |
| 24 | some instances you wouldn't document that in your | 11:41:57 |

| | |
|---|---|
| 1 | report? | 11:42:00 |
| 2 |     MS. GOLDEN:  Form, same objections. | 11:42:01 |
| 3 |   A  Well, again, it all depends.  If you're | 11:42:07 |
| 4 | saying the guy raised a gun, pointed a gun, did | 11:42:12 |
| 5 | that (indicating), would I maybe say during the | 11:42:15 |
| 6 | interview the suspect raised his hand?  I might | 11:42:19 |
| 7 | demonstrate -- write it that way.  If he stabbed | 11:42:24 |
| 8 | -- if he showed stabbing, I might write he showed | 11:42:31 |
| 9 | how he stabbed them. | 11:42:34 |
| 10 |   Q  Were you ever -- if somebody -- strike | 11:42:34 |
| 11 | that. | 11:42:37 |
| 12 |     MS. GOLDEN:  Were you done with your | 11:42:37 |
| 13 | question? | 11:42:39 |
| 14 |     THE WITNESS:  Yes. | 11:42:40 |
| 15 |     MS. GOLDEN:  Or your answer. | 11:42:41 |
| 16 |   Q  If the homicide suspect showed you how | 11:42:43 |
| 17 | they stabbed them, would you ever omit that from | 11:42:45 |
| 18 | your report? | 11:42:48 |
| 19 |     MS. GOLDEN:  Form and foundation. | 11:42:49 |
| 20 |   A  I don't recall anybody actually showing me | 11:42:59 |
| 21 | exactly how it was done.  So it's hard for me to | 11:43:02 |
| 22 | say.  I don't think I would omit it, but I would | 11:43:07 |
| 23 | try to record it somehow. | 11:43:13 |
| 24 |   Q  Now, if -- whether or not you would | 11:43:15 |

1    document it -- strike that.  Let me be clear.                11:43:25

2         If a homicide suspect demonstrated for you              11:43:28

3    how they stabbed the victim, is the issue of                 11:43:31

4    whether or not you would document it, does it                11:43:36

5    depend on whether what they demonstrated was                 11:43:38

6    consistent with the evidence or inconsistent with            11:43:42

7    the evidence?                                                11:43:45

8         MS. GOLDEN:  Form.                                      11:43:45

9         MS. BARBER:  Objection.                                 11:43:47

10        MS. GOLDEN:  Foundation.                                11:43:48

11        MS. BARBER:  Form, foundation, incomplete               11:43:49

12   hypothetical.  I'm not clear what you're asking,             11:43:52

13   what the it is in that question.                             11:43:54

14     Q  Go ahead.                                               11:43:57

15     A  Whether it had -- could you ask that                    11:43:58

16   again?                                                       11:44:08

17     Q  Yes.                                                    11:44:08

18        In terms of whether or not you would                    11:44:10

19   document when a suspect showed you how they                  11:44:12

20   committed the stabbing, would it depend on whether           11:44:15

21   the demonstration they gave you was consistent              11:44:19

22   with the evidence you knew or inconsistent with              11:44:21

23   the evidence or does that make no difference at              11:44:25

24   all?                                                         11:44:27

| | | |
|---|---|---|
| 1 | MS. BARBER:  Same objections. | 11:44:27 |
| 2 | A  That would have no bearing.  I mean, if he | 11:44:29 |
| 3 | showed how he stabbed him, I'd write how he | 11:44:31 |
| 4 | stabbed him. | 11:44:33 |
| 5 | Q  It would be relevant if it was consistent | 11:44:33 |
| 6 | with -- | 11:44:35 |
| 7 | MS. GOLDEN:  I'm going to ask you to just | 11:44:35 |
| 8 | slow down because I'm not sure he's finished with | 11:44:38 |
| 9 | his answers -- | 11:44:41 |
| 10 | MR. SWAMINATHAN:  Were you finished? | 11:44:42 |
| 11 | MS. GOLDEN:  Would you stop -- | 11:44:44 |
| 12 | MR. SWAMINATHAN:  Go ahead. | 11:44:44 |
| 13 | MS. GOLDEN:  I'm going to collect myself. | 11:44:45 |
| 14 | You keep interrupting me.  I find it dismissive | 11:44:48 |
| 15 | and insulting. | 11:44:52 |
| 16 | MR. SWAMINATHAN:  I'm sorry. | 11:44:53 |
| 17 | MS. GOLDEN:  Would you please -- you just | 11:44:55 |
| 18 | did it again. | 11:44:55 |
| 19 | MR. SWAMINATHAN:  Go ahead. | 11:44:55 |
| 20 | MS. GOLDEN:  Please stop interrupting me. | 11:44:56 |
| 21 | I'm not sure he's finished with his answer and | 11:44:56 |
| 22 | you're starting another question.  If you just | 11:44:59 |
| 23 | give him a second to I think finish his answer | 11:45:00 |
| 24 | before you start your next question, I'd | 11:45:03 |

| | | |
|---|---|---|
| 1 | appreciate it. | 11:45:03 |
| 2 | Q  All right.  Are you finished with your | 11:45:06 |
| 3 | answer? | 11:45:07 |
| 4 | A  Yes. | 11:45:07 |
| 5 | MR. SWAMINATHAN:  Now, that's about the | 11:45:08 |
| 6 | fifth time that he said -- you said you didn't let | 11:45:09 |
| 7 | him finish his answer, and he was finished with | 11:45:12 |
| 8 | his answer.  And you have made a number of | 11:45:15 |
| 9 | objections that involved speaking objections | 11:45:16 |
| 10 | beyond saying objection to form which you suggest | 11:45:18 |
| 11 | the question makes no sense and he's been able to | 11:45:21 |
| 12 | answer the question just fine.  That's happened | 11:45:22 |
| 13 | about a hundred times. | 11:45:24 |
| 14 | MS. BARBER:  That has not happened at | 11:45:26 |
| 15 | all -- | 11:45:26 |
| 16 | MR. SWAMINATHAN:  So please -- | 11:45:26 |
| 17 | MS. BARBER:  Let alone -- | 11:45:27 |
| 18 | MR. SWAMINATHAN:  It's happened a hundred | 11:45:27 |
| 19 | times or more in this deposition where you said | 11:45:28 |
| 20 | and the question doesn't make sense, it's not | 11:45:30 |
| 21 | clear what it is and blah, blah, blah. | 11:45:33 |
| 22 | MS. BARBER:  I did just say that. | 11:45:34 |
| 23 | MR. SWAMINATHAN:  And he is able to answer | 11:45:36 |
| 24 | the question.  That has happened repeatedly in | 11:45:38 |

| | | |
|---|---|---|
| 1 | this deposition.  Objection to form.  Why can't we | 11:45:41 |
| 2 | just say objection to form?  Why do you have to | 11:45:43 |
| 3 | then add that I don't know what this means and I | 11:45:46 |
| 4 | don't know what that means?  Please, can you -- is | 11:45:48 |
| 5 | there a reason you can't just say objection to | 11:45:49 |
| 6 | form? | 11:45:51 |
| 7 | MS. GOLDEN:  I didn't -- | 11:45:51 |
| 8 | MS. BARBER:  Are you done yelling at me? | 11:45:52 |
| 9 | MR. SWAMINATHAN:  I'm not yelling -- | 11:45:55 |
| 10 | MS. BARBER:  Are you done yelling at me? | 11:45:55 |
| 11 | MS. SUSLER:  There's no one yelling. | 11:45:57 |
| 12 | MS. BARBER:  I'm not interested -- | 11:45:59 |
| 13 | MR. SWAMINATHAN:  I'm not yelling at you. | 11:46:01 |
| 14 | What I'm saying is I'm getting frustrated.  I'm | 11:46:01 |
| 15 | asking, can you tell me why it's necessary to say | 11:46:03 |
| 16 | more than just objection to form? | 11:46:05 |
| 17 | MS. BARBER:  Because I think that the | 11:46:08 |
| 18 | question called for an objection and I gave the | 11:46:10 |
| 19 | objection that I saw fit and I have not done | 11:46:14 |
| 20 | anything to interfere with your deposition.  I | 11:46:18 |
| 21 | have not done anything a hundred times.  I'm | 11:46:20 |
| 22 | asking you -- she's asking you to slow down. | 11:46:23 |
| 23 | She's asking you not to interrupt the witness, not | 11:46:25 |
| 24 | to interrupt her, not to interrupt me. | 11:46:29 |

1          MR. SWAMINATHAN:  I'm going --                    11:46:29

2          MS. BARBER:  And I need to know what the          11:46:30

3     questions are that you're asking.                      11:46:31

4          MR. SWAMINATHAN:  I'm going to ask it one         11:46:33

5     more time.  Is there a reason that it is necessary     11:46:35

6     to say something more than objection to form?  I       11:46:38

7     want to be clear on the record.  Is there a reason     11:46:40

8     that you need to say more than objection to form       11:46:42

9     when you have a problem with the form --               11:46:44

10         MS. BARBER:  Yes, because --                      11:46:47

11         MR. SWAMINATHAN:  What is it?                      11:46:47

12         MS. BARBER:  Because you are continuing to        11:46:48

13    -- it's the same problem.  It's the same --            11:46:48

14         MR. SWAMINATHAN:  Why does it require you         11:46:50

15    to say more than objection to form?                    11:46:52

16         MS. BARBER:  Because you are continuing to        11:46:54

17    ask an inappropriate question.                         11:46:55

18         MR. SWAMINATHAN:  Then why does it require        11:46:57

19    more than objection to form --                         11:46:59

20         MS. BARBER:  I've given --                        11:47:00

21         MR. SWAMINATHAN:  -- objection to form.           11:47:01

22         MS. BARBER:  I've given you an explanation        11:47:03

23    I'm done.  Are you done yelling at me?                  11:47:05

24         MR. SWAMINATHAN:  I'm not yelling at you.         11:47:07

| | | |
|---|---|---|
| 1 | What I'm saying to you is this, I am going to have | 11:47:09 |
| 2 | a serious problem if during the course of this | 11:47:12 |
| 3 | deposition it continues to be the case that every | 11:47:14 |
| 4 | objection to form comes with additional language | 11:47:17 |
| 5 | beyond objection to form. | 11:47:21 |
| 6 | MS. BARBER:  You -- | 11:47:21 |
| 7 | MR. SWAMINATHAN:  Proper objections -- let | 11:47:22 |
| 8 | me finish.  Proper objections to the deposition | 11:47:22 |
| 9 | are objection to form and objection to foundation. | 11:47:24 |
| 10 | That's it. | 11:47:26 |
| 11 | MS. GOLDEN:  That's not true. | 11:47:27 |
| 12 | MS. BARBER:  Anand, you're not living in | 11:47:28 |
| 13 | reality if that's what you think happened.  It's | 11:47:31 |
| 14 | just not true.  I'm ready to move on, are you? | 11:47:34 |
| 15 | MR. SWAMINATHAN:  I'm ready to move on. | 11:47:38 |
| 16 | Hopefully we don't have another issue. | 11:47:39 |
| 17 | MS. GOLDEN:  Well, back to my issue which | 11:47:41 |
| 18 | was can we just go a little slower so I'm sure | 11:47:43 |
| 19 | he's done with his answer before you start the | 11:47:46 |
| 20 | next question? | 11:47:49 |
| 21 | MR. SWAMINATHAN:  Sure.  Could you go back | 11:47:49 |
| 22 | to my last question. | 11:48:43 |
| 23 | (Record read back by the | 11:48:43 |
| 24 | reporter.) | 11:48:49 |

1   BY MR. SWAMINATHAN:                                    11:48:49

2       Q   If there was -- strike that.                  11:48:49

3           If the suspect demonstrated how they          11:48:51

4   committed the stabbing and it was consistent with     11:48:53

5   the evidence, that would be relevant and pertinent     11:48:56

6   information, correct?                                  11:48:59

7           MS. GOLDEN:  Form.                             11:49:00

8       A   Yes.                                           11:49:05

9       Q   And you were trained to document that type    11:49:05

10  of thing, correct?                                     11:49:07

11          MS. GOLDEN:  Form.                             11:49:08

12      A   Again, you summarize it in your report.       11:49:10

13      Q   If the suspect demonstrated for you how       11:49:11

14  they committed the stabbing and it was                 11:49:15

15  inconsistent with the evidence, that would also be     11:49:17

16  relevant and pertinent, correct?                       11:49:21

17      A   Yes.                                           11:49:22

18      Q   And you were trained to document that type    11:49:23

19  of information in your reports, correct?               11:49:27

20      A   Put in your report, yes.                       11:49:28

21      Q   Based on your review of the reports in        11:49:29

22  this case, have you seen any indication in the         11:49:42

23  supplementary reports or GPR's that during the         11:49:45

24  interview of Adriana Mejia that you participated       11:49:48

| | | |
|---|---|---|
| 1 | in she made any drawing or demonstration of how | 11:49:52 |
| 2 | the crime occurred? | 11:49:55 |
| 3 | MS. GOLDEN:  Foundation. | 11:49:58 |
| 4 | A  I really don't recall. | 11:50:01 |
| 5 | Q  When you reviewed the GPR related to the | 11:50:03 |
| 6 | interview of Adriana Mejia that you participated | 11:50:06 |
| 7 | in, did it contain any indication that she had | 11:50:11 |
| 8 | made any drawing or demonstration of how the crime | 11:50:14 |
| 9 | occurred? | 11:50:17 |
| 10 | A  I looked at the GPR.  I didn't read it | 11:50:17 |
| 11 | thoroughly, so I couldn't say. | 11:50:21 |
| 12 | Q  Have you seen any indication in the | 11:50:22 |
| 13 | supplementary reports or GPR's of the interview of | 11:50:24 |
| 14 | Arturo Reyes that you participated in which he | 11:50:29 |
| 15 | made any drawing or demonstration of how the | 11:50:33 |
| 16 | crimes occurred? | 11:50:38 |
| 17 | A  I don't recall. | 11:50:38 |
| 18 | Q  If Mr. Reyes had made any kind of drawing | 11:50:38 |
| 19 | or demonstration of how the crime occurred, would | 11:50:41 |
| 20 | you expect to see some note in your partner's GPR? | 11:50:44 |
| 21 | MS. GOLDEN:  Form. | 11:50:48 |
| 22 | A  He took the GPR.  I didn't.  So I don't | 11:50:54 |
| 23 | know why, if it did happen, why he wouldn't put it | 11:50:57 |
| 24 | in there, but you'd have to ask him. | 11:51:01 |

| | |
|---|---|
| 1 | Q  If Adriana Mejia had made any kind of | 11:51:03 |
| 2 | drawing or demonstration of how the crime | 11:51:05 |
| 3 | occurred, would you expect to see some note of | 11:51:07 |
| 4 | that in the GPR prepared by your partner | 11:51:09 |
| 5 | Dickinson? | 11:51:12 |
| 6 | MS. GOLDEN:  Same objection to form. | 11:51:14 |
| 7 | A  It's the same answer.  I don't recall, but | 11:51:16 |
| 8 | he prepared it.  I don't know why he wouldn't put | 11:51:18 |
| 9 | it in there.  But if it happened that he didn't, I | 11:51:21 |
| 10 | don't know why.  You would have to ask him. | 11:51:25 |
| 11 | Q  In your experience working with Dickinson, | 11:51:26 |
| 12 | was he thorough? | 11:51:28 |
| 13 | A  Yes. | 11:51:30 |
| 14 | Q  If the witness -- strike that. | 11:51:30 |
| 15 | If Mr. Reyes had made a drawing or | 11:51:34 |
| 16 | demonstration based on your experience with | 11:51:37 |
| 17 | Mr. Dickinson, do you expect he would have written | 11:51:40 |
| 18 | it down? | 11:51:43 |
| 19 | MS. GOLDEN:  Asked and answered. | 11:51:43 |
| 20 | A  You would have to ask him.  If he didn't, | 11:51:45 |
| 21 | there might be a reason.  I don't know.  You would | 11:51:48 |
| 22 | have to talk to him about that. | 11:51:50 |
| 23 | Q  If it isn't in Dickinson's notes of the | 11:51:51 |
| 24 | interview, based on your experience with Dickinson | 11:51:55 |

1    being a thorough guy, does that cause you to                    11:51:58

2    believe that there was no drawing or demonstration              11:52:00

3    by the suspect?                                                 11:52:02

4        MS. GOLDEN:  Asked and answered.                            11:52:02

5        A  I don't know if there was or there wasn't.               11:52:05

6    I don't know if I can make a determination from                 11:52:08

7    that.                                                           11:52:10

8        Q  If there was a drawing or demonstration,                 11:52:11

9    you would expect to see it in Dickinson's notes,                11:52:13

10   fair?                                                           11:52:17

11       MS. GOLDEN:  Asked and answered.                            11:52:18

12       A  Like I said, he made the notes.  If there                11:52:19

13   was and he didn't put it in there, why, I don't                 11:52:23

14   know.                                                           11:52:25

15       Q  Why that be unusual for Mr. Dickinson                    11:52:25

16   based on your experience?                                       11:52:29

17       MS. GOLDEN:  Foundation, asked and                          11:52:30

18   answered.                                                       11:52:31

19       MS. BARBER:  Form.                                          11:52:31

20       A  We didn't have a lot of drawings.  So it's              11:52:32

21   hard to say it would be unusual.  A drawing would               11:52:34

22   be unusual.  We didn't have a lot of those, so...              11:52:37

23       Q  So a drawing would be particularly                       11:52:41

24   noteworthy?                                                     11:52:43

1          MS. GOLDEN:  Form.                          11:52:44

2      A   Again, it's hard to answer how good the    11:52:48

3   drawing was.  Was it stick people?  I don't know. 11:52:51

4      Q   Now, were demonstrations typical?          11:52:54

5          MS. GOLDEN:  Form.                          11:52:57

6          MS. BARBER:  Objection, form.              11:52:57

7      Q   I'll ask it again.  Were drawings typical  11:52:58

8   or were they noteworthy?                          11:53:01

9          MS. BARBER:  Objection, form.              11:53:03

10     A   As I said earlier, they weren't typical.   11:53:04

11     Q   So a drawing -- strike that.               11:53:09

12         So a demonstration would be noteworthy in  11:53:11

13  your view?                                        11:53:13

14         MS. BARBER:  Objection, form.              11:53:15

15     A   A demonstration could be.                  11:53:16

16     Q   And based on your experience with          11:53:21

17  Dickinson being thorough, if there had been a     11:53:24

18  demonstration, in your experience would Dickinson 11:53:28

19  have put that in his notes?                       11:53:31

20         MS. GOLDEN:  Foundation and form.          11:53:32

21     A   They were -- demonstrations were very      11:53:34

22  rare.  So I don't know if -- how he recorded it in 11:53:40

23  his notes.  If he didn't, he didn't.              11:53:45

24     Q   If he didn't, would you expect it was in   11:53:47

1   some supplementary report that he did?                     11:53:49

2       A   Again, I don't know.                               11:53:53

3       Q   If you and Dickinson had observed a                11:53:55

4   demonstration of how a crime occurred, do you              11:54:00

5   expect that you or Mr. Dickinson would have made           11:54:02

6   sure that got into a GPR or supplementary report?          11:54:04

7           MS. GOLDEN:   Form and foundation.                 11:54:08

8       A   If I was preparing a report, I probably            11:54:11

9   would have put it in there.                                11:54:13

10      Q   If you or Mr. Dickinson was provided with          11:54:15

11  a drawing by a suspect -- strike that.                     11:54:21

12          If you or Mr. Dickinson participated in an         11:54:21

13  interrogation of a suspect in which they provided          11:54:24

14  a drawing or made a depiction of the crime, would          11:54:26

15  you expect that you and Mr. Dickinson would make           11:54:30

16  sure that got into a GPR or sup report?                    11:54:33

17          MS. GOLDEN:   Foundation, form.                    11:54:36

18      A   If somebody made a drawing on a piece of           11:54:38

19  paper, I would inventory it.                               11:54:40

20      Q   What if they made it on a blackboard?              11:54:43

21      A   I can't inventory a blackboard.                    11:54:45

22      Q   Would you make some indication in your             11:54:48

23  report or in your GPR so that people knew this             11:54:49

24  person laid out how the crime occurred?                    11:54:53

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Form and foundation. | 11:54:56 |
| 2 | A  If I prepared the GPR, I might make a | 11:55:00 |
| 3 | notation that he did it. | 11:55:03 |
| 4 | Q  And knowing Dickinson, would you expect | 11:55:04 |
| 5 | that he would have made a notation that the person | 11:55:07 |
| 6 | did it on a blackboard? | 11:55:11 |
| 7 | MS. GOLDEN:  Foundation, asked and | 11:55:12 |
| 8 | answered. | 11:55:13 |
| 9 | A  That would be up to him.  If he didn't, | 11:55:13 |
| 10 | you'd have to ask him why. | 11:55:16 |
| 11 | Q  Knowing Dickinson, would it surprise you | 11:55:18 |
| 12 | if he just left that out? | 11:55:20 |
| 13 | MS. GOLDEN:  Asked and answered. | 11:55:22 |
| 14 | A  Again, it was very rare.  So if he left it | 11:55:23 |
| 15 | out, I don't know if it would be surprising or | 11:55:26 |
| 16 | wouldn't be surprising.  It just didn't happen | 11:55:29 |
| 17 | that much. | 11:55:31 |
| 18 | Q  If it -- sorry.  Go ahead. | 11:55:32 |
| 19 | A  I can't say, you know, would -- did he | 11:55:33 |
| 20 | always put it in there.  Well, it didn't happen. | 11:55:35 |
| 21 | Q  If a suspect made a depiction on a | 11:55:38 |
| 22 | blackboard -- | 11:55:42 |
| 23 | A  Um-hmm. | 11:55:43 |
| 24 | Q  -- which you and Mr. Dickinson | 11:55:43 |

1    participated in, do you expect that there would be          11:55:46

2    some documentation the fact that this person has            11:55:49

3    made a depiction either in the GPR's or in the              11:55:53

4    supplementary report prepared by you or                     11:55:55

5    Mr. Dickinson?                                              11:55:58

6         MS. GOLDEN:  Can you read that back,                   11:55:58

7    please.  That was a very long question.                     11:55:58

8                   (Record read back by the                     11:55:58

9                   reporter.)                                   11:56:12

10        MR. SWAMINATHAN:  The question is already              11:56:12

11   bad.  So let me try again.                                  11:56:14

12        THE REPORTER:  Okay.                                   11:56:14

13     Q  If you and Mr. Dickinson conducted an                  11:56:17

14   interrogation of a suspect and the suspect made a           11:56:19

15   depiction on a blackboard, do you expect that               11:56:23

16   either you or Mr. Dickinson would have made sure            11:56:27

17   that information that a depiction was done got              11:56:29

18   into a GPR or sup report?                                   11:56:33

19        MS. GOLDEN:  Form, compound.                           11:56:36

20        MS. BARBER:  Incomplete hypothetical.                  11:56:38

21        MS. GOLDEN:  And foundation.                           11:56:39

22     A  I can speak for myself.  I would have made            11:56:43

23   a notation in the GPR.  And if I prepared the               11:56:47

24   supplementary report from there, I probably would          11:56:50

| | | |
|---|---|---|
| 1 | have put it in there. | 11:56:53 |
| 2 | Q   And when you and -- strike that. | 11:56:55 |
| 3 | Even when Mr. Rutherford prepared | 11:56:58 |
| 4 | supplementary reports, based on investigative | 11:57:00 |
| 5 | steps you guys did -- strike that. | 11:57:03 |
| 6 | Even when Mr. Dickinson prepared | 11:57:05 |
| 7 | supplementary reports for investigative steps you | 11:57:07 |
| 8 | guys did together, you would review those before | 11:57:10 |
| 9 | they were submitted; is that right? | 11:57:12 |
| 10 | A   I glance over them.  I wouldn't read them | 11:57:14 |
| 11 | word for word maybe, but I glance over them. | 11:57:18 |
| 12 | Q   You would also sign those, correct? | 11:57:19 |
| 13 | A   Sometimes, yes. | 11:57:22 |
| 14 | Q   And if you signed it, you would review it | 11:57:22 |
| 15 | before you signed it; is that fair? | 11:57:26 |
| 16 | MS. BARBER:  Objection, answer and | 11:57:28 |
| 17 | answered yesterday. | 11:57:30 |
| 18 | Q   And was the purpose of that to make sure | 11:57:32 |
| 19 | that the information in it was accurate, nothing | 11:57:35 |
| 20 | was missing, that kind of thing? | 11:57:36 |
| 21 | MS. BARBER:  Objection, answer and | 11:57:37 |
| 22 | answered yesterday. | 11:57:39 |
| 23 | A   If it was the GPR's, the note that Eddie | 11:57:41 |
| 24 | took, if he took them.  If I took them, it was | 11:57:44 |

| | | |
|---|---|---|
| 1 | notes for me.  So, you know, basically so I could | 11:57:46 |
| 2 | prepare a case report.  Especially to note -- the | 11:57:49 |
| 3 | way I took notes it wouldn't be much help to | 11:57:52 |
| 4 | anybody else. | 11:57:55 |
| 5 | So did I read over Eddie's real hard, you | 11:57:56 |
| 6 | know, and study them?  No.  Because if Eddie took | 11:58:02 |
| 7 | the GPR's, chances are he would type up the | 11:58:07 |
| 8 | report. | 11:58:10 |
| 9 | Q  Your answer just now was about GPR's; is | 11:58:10 |
| 10 | that right? | 11:58:14 |
| 11 | A  Yes. | 11:58:14 |
| 12 | Q  Sorry.  I was asking about supplementary | 11:58:16 |
| 13 | reports. | 11:58:19 |
| 14 | A  Oh, supplementary reports.  If I prepared | 11:58:19 |
| 15 | -- I thought you meant GPR's. | 11:58:21 |
| 16 | Q  No problem. | 11:58:23 |
| 17 | A  If a supplemental report was prepared and | 11:58:23 |
| 18 | I used my GPR's, there would be note-taking and if | 11:58:27 |
| 19 | something like that happened, would I put it in | 11:58:33 |
| 20 | there?  I would -- I think I would. | 11:58:36 |
| 21 | Q  If Dickinson was writing a supplementary | 11:58:38 |
| 22 | report, based on an interview you both conducted | 11:58:42 |
| 23 | together, you would review his report before it | 11:58:46 |
| 24 | was submitted, right? | 11:58:48 |

1  A Um-hmm.          11:58:49

2  Q Is that a yes?       11:58:50

3  A Yes.           11:58:51

4  Q And you would sign it after you reviewed  11:58:51

5 it, correct?          11:58:54

6  A Correct.         11:58:55

7  Q And part of what you were doing when you  11:58:56

8 reviewed it before you signed it was to make sure  11:58:59

9 it was accurate and contained -- accurately  11:59:01

10 reflected what had happened in the interview,  11:59:04

11 fair?            11:59:08

12   MS. GOLDEN:  Form and foundation.  11:59:08

13  A Yes.           11:59:10

14  Q If Dickinson had left out of the   11:59:10

15 supplementary report that the suspect had made a  11:59:13

16 drawing on a blackboard about how the crime went  11:59:16

17 down, would you tell Dickinson, hey, you left this  11:59:19

18 out, we should include this in the report?  11:59:24

19   MS. GOLDEN:  Foundation.   11:59:26

20  A In the supplemental report?   11:59:27

21  Q Yes.           11:59:29

22  A If I thought there was something left out  11:59:29

23 that was important, I would mention it to him.  11:59:32

24  Q And if you left out something like the  11:59:33

| | | |
|---|---|---|
| 1 | suspect laid out the crime on a blackboard, that's | 11:59:35 |
| 2 | something you would tell them to include if he | 11:59:38 |
| 3 | accidentally left it out; is that fair? | 11:59:42 |
| 4 | MS. GOLDEN:  Incomplete hypothetical. | 11:59:43 |
| 5 | A  Never happened.  So I would review it like | 11:59:44 |
| 6 | any other report and talk to him about it. | 11:59:49 |
| 7 | Q  Is that the kind of thing that if it was | 11:59:51 |
| 8 | left out you would say, hey, we should add this? | 11:59:53 |
| 9 | MS. GOLDEN:  Asked and answered. | 11:59:56 |
| 10 | MS. BARBER:  Form. | 11:59:58 |
| 11 | MS. GOLDEN:  Just the last question. | 11:59:59 |
| 12 | A  I find out why he left it out, if it was | 12:00:01 |
| 13 | an accident, whatever reason and I would -- I | 12:00:04 |
| 14 | think it should be in there.  I'm sure he'd put it | 12:00:08 |
| 15 | in there. | 12:00:11 |
| 16 | MR. BURNS:  Sorry to interrupt.  Can we | 12:00:15 |
| 17 | ask them to turn the music down? | 12:00:17 |
| 18 | MR. SWAMINATHAN:  I think they're on a | 12:00:20 |
| 19 | conference call. | 12:00:22 |
| 20 | (Discussion held off the | 12:00:22 |
| 21 | record.) | 12:00:22 |
| 22 | BY MR. SWAMINATHAN: | 12:01:30 |
| 23 | Q  Sir, you were -- we talked yesterday about | 12:01:30 |
| 24 | your training related to interrogations, you don't | 12:01:34 |

1  feed people facts, those kinds of things.  Do you        12:01:40

2  remember talking about that subject?                      12:01:41

3       MS. GOLDEN:  Form.                                   12:01:42

4    A  Yes.                                                 12:01:43

5    Q  Okay.  We talked about the idea that some            12:01:44

6  things like feeding facts can impact the                  12:01:47

7  reliability of any incriminating statements you           12:01:50

8  get, correct?                                             12:01:53

9       MS. GOLDEN:  Could you just ask a fresh              12:01:54

10  question, please?                                        12:01:57

11      MR. SWAMINATHAN:  Sure.                              12:01:57

12   Q  Were false confessions, that concept                12:01:58

13  something you were trained on?                           12:02:03

14      MS. BARBER:  Objection, form, foundation.           12:02:04

15   A  I don't recall the training on it.  I               12:02:09

16  don't recall.                                            12:02:13

17   Q  Were you trained that under interrogation           12:02:13

18  it is possible for people to confess to crimes          12:02:16

19  they did not commit?                                     12:02:19

20   A  Again, I don't recall all my training back          12:02:22

21  then.  So I couldn't tell you.                           12:02:25

22   Q  Putting aside training, was it something            12:02:27

23  that you were aware of or had some knowledge             12:02:29

24  about?                                                   12:02:32

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  In 1998? | 12:02:33 |
| 2 | MR. SWAMINATHAN:  Yes. | 12:02:35 |
| 3 | A   What do you mean by was I aware that there | 12:02:39 |
| 4 | were false confessions out there? | 12:02:43 |
| 5 | Q   Yes, in 1998 was that a concept that you | 12:02:45 |
| 6 | were aware of? | 12:02:48 |
| 7 | MS. GOLDEN:  Form and foundation. | 12:02:49 |
| 8 | A   I couldn't tell you.  I'm not sure. | 12:02:56 |
| 9 | Q   During the time you were conducting | 12:02:59 |
| 10 | interrogations of homicide suspects in the Chicago | 12:03:01 |
| 11 | Police Department, were you aware that under | 12:03:05 |
| 12 | interrogation it was possible for people to | 12:03:07 |
| 13 | confess to crimes they did not commit? | 12:03:09 |
| 14 | MS. GOLDEN:  That's the exact same | 12:03:11 |
| 15 | question. | 12:03:13 |
| 16 | MR. SWAMINATHAN:  Go ahead. | 12:03:15 |
| 17 | MS. BARBER:  Form. | 12:03:15 |
| 18 | MS. GOLDEN:  Asked and answered. | 12:03:16 |
| 19 | MS. BARBER:  And foundation. | 12:03:19 |
| 20 | A   I didn't know of any.  You know, anything | 12:03:22 |
| 21 | is possible I guess but... | 12:03:26 |
| 22 | Q   When you were conducting interrogations of | 12:03:28 |
| 23 | homicide suspects, did you ever have in your mind, | 12:03:30 |
| 24 | hey, I need to make sure that this statement I'm | 12:03:33 |

| | | |
|---|---|---|
| 1 | getting from a suspect is actually reliable, that | 12:03:35 |
| 2 | it's truthful? | 12:03:38 |
| 3 |    A  Yes. | 12:03:41 |
| 4 |     MS. BARBER:  Objection, form. | 12:03:41 |
| 5 |    Q  And was one of the reasons you were doing | 12:03:43 |
| 6 | that because it's -- you were at least aware of | 12:03:45 |
| 7 | the possibility that the thing somebody was | 12:03:48 |
| 8 | telling you could be false? | 12:03:50 |
| 9 |     MS. BARBER:  Objection, form. | 12:03:53 |
| 10 |    A  Yes. | 12:03:57 |
| 11 |    Q  Were you aware that it was, as you were | 12:03:58 |
| 12 | conducting interrogations, that it was possible | 12:04:01 |
| 13 | somebody could be telling you something | 12:04:04 |
| 14 | incriminating when in fact they didn't actually | 12:04:05 |
| 15 | commit the crime? | 12:04:09 |
| 16 |    A  When I was interviewing somebody, I was | 12:04:12 |
| 17 | stressing to try to find the truth.  And that's | 12:04:18 |
| 18 | what we're looking -- when I was -- when we were | 12:04:21 |
| 19 | doing it, we were looking for the truth.  That's | 12:04:23 |
| 20 | what I would look for.  Even if he said something | 12:04:26 |
| 21 | incriminating that maybe not -- wasn't factual, we | 12:04:31 |
| 22 | try to get back on track to get to the actual | 12:04:36 |
| 23 | facts. | 12:04:39 |
| 24 |    Q  If I understand correctly, one of the | 12:04:40 |

| | | |
|---|---|---|
| 1 | reasons you would not feed facts to individuals is | 12:04:42 |
| 2 | because it would at least increase the risk that | 12:04:46 |
| 3 | somebody could incriminate themselves without | 12:04:48 |
| 4 | actually having been involved; is that fair? | 12:04:51 |
| 5 | MS. GOLDEN:  Form. | 12:04:53 |
| 6 | A  I would say one of the reasons -- the | 12:04:55 |
| 7 | reason you wouldn't do it is so you can get to the | 12:04:57 |
| 8 | truth is the best way and easiest way to put it. | 12:04:59 |
| 9 | You feed a guy facts maybe he'll tell you | 12:05:05 |
| 10 | something that isn't true.  Either way, either | 12:05:08 |
| 11 | incriminate himself or come up with a better alibi | 12:05:12 |
| 12 | or whatever.  So you wouldn't do it -- you want to | 12:05:15 |
| 13 | find out the truth of what happened and what this | 12:05:17 |
| 14 | person's involvement was, if any, in the incident. | 12:05:19 |
| 15 | Q  Other than not feeding facts, were there | 12:05:23 |
| 16 | other things you did to reduce the risk that | 12:05:26 |
| 17 | somebody was telling you something that wasn't | 12:05:29 |
| 18 | true? | 12:05:32 |
| 19 | MS. BARBER:  Objection, form. | 12:05:32 |
| 20 | A  I don't know what you mean.  When you do | 12:05:39 |
| 21 | the interview, you're just trying to get the | 12:05:42 |
| 22 | truth.  And that was the bottom line. | 12:05:47 |
| 23 | Q  When you conducted interrogations and | 12:05:49 |
| 24 | someone made incriminating statements, would you | 12:05:52 |

| | | |
|---|---|---|
| 1 | try to verify whether the story they were telling | 12:05:55 |
| 2 | you was true? | 12:05:59 |
| 3 | A  Yes. | 12:06:01 |
| 4 | Q  And how would you go about verifying | 12:06:02 |
| 5 | whether what they were telling you was true? | 12:06:05 |
| 6 | MS. BARBER:  Objection, form, foundation, | 12:06:07 |
| 7 | incomplete hypothetical. | 12:06:09 |
| 8 | A  I would compare to what he's telling us to | 12:06:15 |
| 9 | what I knew about the case and the facts that I | 12:06:17 |
| 10 | knew. | 12:06:20 |
| 11 | Q  Would you -- excuse me, would you also do | 12:06:20 |
| 12 | subsequent follow-up sometimes to see if what they | 12:06:26 |
| 13 | told you actually played out? | 12:06:30 |
| 14 | MS. BARBER:  Objection, form. | 12:06:32 |
| 15 | A  What do you mean?  Follow-up to what? | 12:06:34 |
| 16 | Q  Yeah, so you talk to the suspect.  They | 12:06:36 |
| 17 | tell you information about the crime.  Sounds like | 12:06:38 |
| 18 | you're saying some instances you know information | 12:06:41 |
| 19 | about the crime already and you can compare | 12:06:44 |
| 20 | whether what they're telling you is consistent | 12:06:46 |
| 21 | with things you already know, correct? | 12:06:48 |
| 22 | A  Yes. | 12:06:50 |
| 23 | Q  That's one of the things you do when | 12:06:51 |
| 24 | you're hearing somebody is making incriminating | 12:06:53 |

| | | |
|---|---|---|
| 1 | statements, correct? | 12:06:55 |
| 2 | A  That's correct. | 12:06:56 |
| 3 | Q  What I'm asking is, there may also be | 12:06:56 |
| 4 | things they tell about how the crime occurred and | 12:06:59 |
| 5 | you don't know one way or the other whether they | 12:07:01 |
| 6 | are consistent or not consistent with how the | 12:07:04 |
| 7 | crime occurred; you'd need to do some follow-up to | 12:07:07 |
| 8 | see if it was consistent or not consistent; would | 12:07:09 |
| 9 | you ever conduct some follow-up in that way? | 12:07:13 |
| 10 | A  To do more investigation, yes. | 12:07:14 |
| 11 | Q  Sometimes you do more investigation to see | 12:07:16 |
| 12 | what the suspect told you was in fact true; is | 12:07:18 |
| 13 | that right? | 12:07:22 |
| 14 | A  If I didn't know and it wasn't in the | 12:07:22 |
| 15 | reports, yes. | 12:07:26 |
| 16 | Q  Would you typically be engaging in some | 12:07:27 |
| 17 | analysis to assess the reliability of a confession | 12:07:30 |
| 18 | anytime you got one? | 12:07:34 |
| 19 | MS. GOLDEN:  Form. | 12:07:35 |
| 20 | A  Again, you're searching for the truth, so | 12:07:38 |
| 21 | that would be part of it, yes. | 12:07:40 |
| 22 | Q  I guess what I'm asking is, if somebody | 12:07:41 |
| 23 | makes a confession, would you just it take the | 12:07:44 |
| 24 | confession at its word without ever comparing it | 12:07:46 |

| | | |
|---|---|---|
| 1 | to any information you knew before about the crime | 12:07:49 |
| 2 | or without conducting some follow-up? | 12:07:51 |
| 3 | MS. BARBER:  Objection, form, foundation, | 12:07:54 |
| 4 | incomplete hypothetical, calls for speculation. | 12:07:56 |
| 5 | A  If you're asking me if some guy came out | 12:08:01 |
| 6 | and said I did it, ba, ba, ba, and this is how I | 12:08:06 |
| 7 | did it and it didn't fit the facts of the case, | 12:08:07 |
| 8 | would I just say, okay, that's good, go with it? | 12:08:10 |
| 9 | No. | 12:08:12 |
| 10 | Q  And if you didn't know one way or the | 12:08:12 |
| 11 | other whether it fit with the facts of the case, | 12:08:16 |
| 12 | you'd conduct some follow-up to make sure that it | 12:08:19 |
| 13 | did; is that right? | 12:08:21 |
| 14 | MS. BARBER:  Objection, form, foundation, | 12:08:22 |
| 15 | incomplete hypothetical, calls for speculation. | 12:08:24 |
| 16 | A  I would try to find out why he's saying | 12:08:30 |
| 17 | this. | 12:08:33 |
| 18 | Q  Before you got to that step, would you try | 12:08:33 |
| 19 | to find out whether what he's told you is in fact | 12:08:35 |
| 20 | consistent with the things related to the crime? | 12:08:38 |
| 21 | MS. BARBER:  Objection, form, foundation, | 12:08:42 |
| 22 | incomplete hypothetical, calls for speculation. | 12:08:44 |
| 23 | A  Like I -- if he said something that I knew | 12:08:50 |
| 24 | totally did not fit the facts of the case, as I | 12:08:53 |

| | | |
|---|---|---|
| 1 | knew them, I would try figure out why he's saying | 12:08:58 |
| 2 | this and why it doesn't fit the facts.  Is the | 12:09:02 |
| 3 | case wrong?  Is what he's saying wrong?  That's | 12:09:05 |
| 4 | what I'd try to figure out. | 12:09:08 |
| 5 | Q  I'm not asking you -- so I think I'm | 12:09:09 |
| 6 | probably asking poor questions.  So let me try to | 12:09:12 |
| 7 | get to the -- where I was trying to get to which | 12:09:15 |
| 8 | is -- let's do it this way.  Somebody makes | 12:09:19 |
| 9 | incriminating statements during an interrogation, | 12:09:20 |
| 10 | you would take steps to verify whether the | 12:09:24 |
| 11 | information they were telling you was true; is | 12:09:28 |
| 12 | that right? | 12:09:31 |
| 13 | MS. BARBER:  Objection, form, foundation. | 12:09:31 |
| 14 | A  That's correct. | 12:09:35 |
| 15 | MS. BARBER:  Incomplete hypothetical, | 12:09:36 |
| 16 | calls for speculation. | 12:09:38 |
| 17 | A  That would be correct. | 12:09:39 |
| 18 | Q  Would you be on the lookout for things | 12:09:40 |
| 19 | they were telling you that were just implausible? | 12:09:42 |
| 20 | MS. BARBER:  Objection, form, foundation, | 12:09:46 |
| 21 | incomplete hypothetical, calls for speculation. | 12:09:48 |
| 22 | A  When you say look out -- if they said | 12:09:50 |
| 23 | something that was totally implausible, I mean, I | 12:09:55 |
| 24 | wouldn't be looking out for it.  But if I heard | 12:10:00 |

| | | |
|---|---|---|
| 1 | it, yeah, then I'd try to figure out why he's | 12:10:02 |
| 2 | saying it. | 12:10:05 |
| 3 | Q  When you say try to figure out why he's | 12:10:05 |
| 4 | saying it, would you question them about the thing | 12:10:08 |
| 5 | they're telling you that seems implausible? | 12:10:11 |
| 6 | MS. BARBER:  Objection, form, foundation | 12:10:14 |
| 7 | incomplete hypothetical, calls for speculation. | 12:10:16 |
| 8 | A  The interrogation and how it goes, I would | 12:10:18 |
| 9 | try to figure out the facts of the case and the | 12:10:21 |
| 10 | truth of the case. | 12:10:23 |
| 11 | Q  Understood.  But if you're -- in the | 12:10:24 |
| 12 | course of an interrogation someone is telling you | 12:10:26 |
| 13 | something about how it went down and it just | 12:10:29 |
| 14 | doesn't make sense, it's not plausible, the timing | 12:10:30 |
| 15 | doesn't make sense, you know, the person is laying | 12:10:33 |
| 16 | it out in a way that would be physically | 12:10:36 |
| 17 | impossible.  You know, you could imagine the kind | 12:10:38 |
| 18 | of things that I'm talking about, right? | 12:10:42 |
| 19 | MS. BARBER:  Objection, form as to what | 12:10:43 |
| 20 | you're imagining. | 12:10:45 |
| 21 | A  I mean, if he's off on days, I'd try to | 12:10:53 |
| 22 | figure out why.  Maybe he's mixed up.  Maybe -- | 12:10:56 |
| 23 | whatever.  That's -- again like I say, you try to | 12:11:01 |
| 24 | find the truth.  And if he's giving something | 12:11:10 |

1    that's totally implausible, you try to find out          12:11:13

2    why, why was it implausible, why he's saying it,         12:11:16

3    and you go from there.                                   12:11:20

4       Q  When you say you try to find out why, what        12:11:21

5    would you do to do that?                                 12:11:24

6       MS. BARBER:  Objection, form, foundation,            12:11:26

7    incomplete hypothetical, calls for speculation.          12:11:28

8       A  It all depends on what he said for me to          12:11:32

9    do what I was going to do.  You know, like I say,        12:11:35

10   it all depends on what he said, and then my next        12:11:39

11   step would be based on that.                             12:11:43

12      Q  If what the witness tells you is something        12:11:44

13   that seems implausible to you, would you confront        12:11:47

14   the witness as part of that interview with the           12:11:50

15   thing they've said that is implausible?                  12:11:52

16      MS. BARBER:  Objection, form, foundation,            12:11:54

17   incomplete hypothetical, calls for speculation.          12:11:56

18      A  I imagine I would, yes.                            12:11:59

19      Q  Would you be on the lookout during the            12:12:02

20   course of an interrogation of a suspect for things       12:12:05

21   they were telling you that were inconsistent with        12:12:07

22   what you knew about the case?                            12:12:09

23      MS. BARBER:  Objection, form, foundation,            12:12:11

24   incomplete hypothetical, calls for speculation.          12:12:12

1        MS. GOLDEN:  Hypothetical.                    12:12:15

2      A  Again, on the lookout, I'm not exactly       12:12:17

3  sure what you're saying.                            12:12:20

4      Q  If they were telling you things -- strike    12:12:21

5  that.                                               12:12:23

6        When I say on the lookout, I'm referring      12:12:23

7  to this idea that as somebody is giving you         12:12:26

8  information who's a suspect, you're paying           12:12:29

9  attention to whether or not what they're telling    12:12:32

10 you is reliable and truthful information, right?    12:12:34

11       MS. BARBER:  Same objections.                 12:12:36

12     A  That's correct.                              12:12:39

13     Q  So if I understand correctly, you're         12:12:40

14 constantly making that assessment as the suspect    12:12:43

15 is giving you information; is that fair?             12:12:46

16       MS. BARBER:  Same objections.                 12:12:48

17     A  Yes.                                         12:12:50

18     Q  I mean, is that part of what you do as a     12:12:50

19 homicide detective, you're getting information      12:12:53

20 from a suspect and every second you're assessing    12:12:55

21 whether this is getting you closer to the truth,    12:12:58

22 correct?                                            12:13:00

23       MS. BARBER:  Objection, form, foundation.     12:13:00

24     A  That would be correct.                       12:13:03

| | | |
|---|---|---|
| 1 | Q  Witnesses lie to you all the time as a | 12:13:04 |
| 2 | homicide detective; is that correct? | 12:13:08 |
| 3 | MS. BARBER:  Objection, form, foundation. | 12:13:09 |
| 4 | A  I mean, all the time -- they have on | 12:13:15 |
| 5 | occasion lied.  Suspects lie, you know, yes. | 12:13:17 |
| 6 | Q  So part of what you're doing is trying to | 12:13:19 |
| 7 | get past what are the lies and what is the truth, | 12:13:22 |
| 8 | correct? | 12:13:25 |
| 9 | MS. BARBER:  Objection, form, | 12:13:26 |
| 10 | foundation -- | 12:13:27 |
| 11 | MS. GOLDEN:  Yeah -- | 12:13:31 |
| 12 | MS. BARBER:  Incomplete hypothetical -- | 12:13:31 |
| 13 | THE REPORTER:  I'm sorry. | 12:13:32 |
| 14 | MS. GOLDEN:  You asked it like ten times. | 12:13:32 |
| 15 | You used a different adjective but all the very | 12:13:34 |
| 16 | same question, so asked and answered. | 12:13:34 |
| 17 | THE REPORTER:  Can you repeat your | 12:13:34 |
| 18 | objections?  I'm sorry. | 12:13:40 |
| 19 | MS. BARBER:  Sure.  It's form, foundation, | 12:13:40 |
| 20 | incomplete hypothetical, and calls for | 12:13:41 |
| 21 | speculation. | 12:13:41 |
| 22 | THE REPORTER:  Thank you. | 12:13:44 |
| 23 | THE WITNESS:  What was the question again? | 12:13:46 |
| 24 | Q  Would you challenge the things that were | 12:13:48 |

| | | |
|---|---|---|
| 1 | inconsistent or implausible to test the | 12:13:50 |
| 2 | reliability of the story the suspect is telling | 12:13:54 |
| 3 | you? | 12:13:56 |
| 4 | MS. GOLDEN:  Can you be more specific | 12:13:56 |
| 5 | about -- | 12:13:58 |
| 6 | MR. SWAMINATHAN:  No.  Objection to form. | 12:13:58 |
| 7 | MS. GOLDEN:  -- talking about?  Objection | 12:14:00 |
| 8 | to form, literally have no idea what you're | 12:14:00 |
| 9 | talking about. | 12:14:03 |
| 10 | MS. BARBER:  Same objections. | 12:14:04 |
| 11 | A  If a person that I was interviewing made a | 12:14:07 |
| 12 | statement that did not fit the facts of the case, | 12:14:10 |
| 13 | as I understood them, I would ask -- I would try | 12:14:14 |
| 14 | to figure out why. | 12:14:23 |
| 15 | Q  Would you ask them follow-up questions? | 12:14:25 |
| 16 | MS. BARBER:  Same objections. | 12:14:27 |
| 17 | A  Again, of course, yes. | 12:14:31 |
| 18 | Q  Have you had cases in your career where | 12:14:32 |
| 19 | you simply did not believe an incriminating | 12:14:34 |
| 20 | statement that was given to you by a suspect? | 12:14:37 |
| 21 | MS. BARBER:  Objection.  Withdraw that. | 12:14:39 |
| 22 | A  Did I not believe the incriminating | 12:14:45 |
| 23 | statement?  Yeah -- | 12:14:48 |
| 24 | MS. GOLDEN:  Yeah, form actually. | 12:14:54 |

| | | |
|---|---|---|
| 1 | A   I don't recall.  I mean, they make | 12:14:55 |
| 2 | statements and, you know, the statements change on | 12:15:06 |
| 3 | some cases.  Again, it's all hypothetical, but you | 12:15:13 |
| 4 | strive to get to the truth.  They may say one | 12:15:19 |
| 5 | thing but not want to say more.  So you keep | 12:15:23 |
| 6 | talking to them a little more just to try to find | 12:15:26 |
| 7 | out the truth and you go from there. | 12:15:29 |
| 8 | Q   In terms of assessing a witness's -- | 12:15:31 |
| 9 | strike that. | 12:15:35 |
| 10 | In terms of assessing the credibility of a | 12:15:36 |
| 11 | suspect telling you a story, it helps you in | 12:15:39 |
| 12 | making the assessment of that person's credibility | 12:15:42 |
| 13 | to have not fed them facts; we agree about that, | 12:15:44 |
| 14 | right? | 12:15:48 |
| 15 | MS. BARBER:  Objection, form, foundation. | 12:15:49 |
| 16 | MS. GOLDEN:  Asked and answered. | 12:15:50 |
| 17 | MS. BARBER:  Incomplete hypothetical, | 12:15:51 |
| 18 | calls for speculation. | 12:15:53 |
| 19 | A   Yes, you wouldn't feed them facts. | 12:15:55 |
| 20 | Q   If the suspect tells you things that are | 12:15:59 |
| 21 | incriminating, that are implausible, that would | 12:16:01 |
| 22 | undermine their credibility during the course of | 12:16:04 |
| 23 | your interrogation; is that fair? | 12:16:08 |
| 24 | MS. GOLDEN:  Form, foundation, incomplete | 12:16:09 |

| # | | Time |
|---|---|---|
| 1 | hypothetical, calls for speculation. | 12:16:12 |
| 2 | A  Could you say that again? | 12:16:16 |
| 3 | Q  Yeah.  If during the course of your | 12:16:17 |
| 4 | interrogation the suspect tells you things that | 12:16:18 |
| 5 | are implausible or inconsistent with the evidence | 12:16:20 |
| 6 | that you know, that would undermine their | 12:16:24 |
| 7 | credibility of what they're telling you, fair? | 12:16:26 |
| 8 | MS. BARBER:  Same objections. | 12:16:29 |
| 9 | MS. GOLDEN:  Join. | 12:16:32 |
| 10 | A  Not necessarily. | 12:16:34 |
| 11 | Q  Explain. | 12:16:36 |
| 12 | A  A suspect is -- you know, the first thing | 12:16:41 |
| 13 | he says is -- let's say -- it would be | 12:16:44 |
| 14 | hypothetical.  You bring a suspect in.  You | 12:16:48 |
| 15 | confront them with the crime, whatever it be, | 12:16:54 |
| 16 | theft, burglary, robbery, whatever.  He denies he | 12:16:57 |
| 17 | did it.  Okay.  He made a statement denying it. | 12:17:00 |
| 18 | Does that mean later on he's not going to end up | 12:17:03 |
| 19 | telling me the truth?  No.  I sort of expect | 12:17:06 |
| 20 | everybody to deny it.  So is that earnest | 12:17:09 |
| 21 | credibility to me?  No.  At that point, no. | 12:17:16 |
| 22 | Q  Putting aside denials.  I understand your | 12:17:18 |
| 23 | point about denials.  I'm talking about a | 12:17:21 |
| 24 | different scenario. | 12:17:24 |

| | | |
|---|---|---|
| 1 | A suspect is actually incriminating | 12:17:24 |
| 2 | themselves but their incriminating story is | 12:17:27 |
| 3 | implausible or inconsistent went with the | 12:17:32 |
| 4 | evidence.  That's an indication that that person | 12:17:33 |
| 5 | is not telling you something that is reliable; is | 12:17:35 |
| 6 | that fair? | 12:17:38 |
| 7 | MS. BARBER:  Objection, form, foundation, | 12:17:38 |
| 8 | incomplete hypothetical, calls for speculation. | 12:17:39 |
| 9 | A  If he's saying that something is | 12:17:42 |
| 10 | implausible, I try to find out why he's saying it. | 12:17:44 |
| 11 | It doesn't necessarily going to hurt his | 12:17:49 |
| 12 | credibility.  It might be a fact that helps them | 12:17:50 |
| 13 | out.  So now we got -- you know, and go from | 12:17:53 |
| 14 | there. | 12:17:56 |
| 15 | Would it necessarily wreck his credibility | 12:17:57 |
| 16 | if he gives a different statement later?  Maybe | 12:18:01 |
| 17 | not. | 12:18:06 |
| 18 | Q  So it might impact the credibility or it | 12:18:06 |
| 19 | might not, fair? | 12:18:09 |
| 20 | MS. BARBER:  Objection, form, foundation, | 12:18:10 |
| 21 | incomplete hypothetical, calls for speculation. | 12:18:13 |
| 22 | A  Like I say, if the guy was making a | 12:18:19 |
| 23 | statement might be totally unstable, so if he's | 12:18:22 |
| 24 | saying that he did something -- like I said, a guy | 12:18:25 |

1    came in and said, yeah, I shot the president and        12:18:27

2    this is why I did it.  That's an incriminating          12:18:30

3    statement.  We would agree with that, but we all        12:18:33

4    know it's false.                                        12:18:35

5        Q  Right.  And so -- I think you were saying        12:18:35

6    the same thing.                                         12:18:38

7            If the person -- if the suspect tells you       12:18:38

8    something that's incriminating but it's                 12:18:40

9    implausible or inconsistent with what you know --       12:18:43

10           MS. GOLDEN:  No --                              12:18:46

11       Q  -- it can undermine their credibility,           12:18:47

12   correct?                                                12:18:49

13           MS. GOLDEN:  He said demonstratively false      12:18:49

14   not --                                                  12:18:52

15           MR. SWAMINATHAN:  Objection to form,            12:18:52

16   please.                                                 12:18:53

17           MS. GOLDEN:  Your question is unfair.           12:18:54

18       A  Again, it all depends on what he says and        12:18:57

19   the implausibility.  Is trying to -- I would have       12:19:01

20   to know exactly what was being said before I could      12:19:08

21   tell you if it makes him unreliable.                    12:19:10

22       Q  Right.  You can't say for sure that this         12:19:13

23   person is not reliable based on my example so far;      12:19:16

24   with me so far?                                         12:19:20

| | | |
|---|---|---|
| 1 | MS. BARBER:  I'm not.  Can you repeat the | 12:19:20 |
| 2 | question. | 12:19:20 |
| 3 | (Record read back by the | 12:19:20 |
| 4 | reporter.) | 12:19:38 |
| 5 | MS. BARBER:  Form, foundation, incomplete | 12:19:38 |
| 6 | hypothetical, calls for speculation as to this | 12:19:42 |
| 7 | person. | 12:19:44 |
| 8 | Q  Let me just ask a simpler question. | 12:19:45 |
| 9 | If you got a suspect who's telling you | 12:19:47 |
| 10 | information that's implausible or inconsistent | 12:19:50 |
| 11 | with the evidence, as you know it, that could | 12:19:53 |
| 12 | undermine their credibility, fair? | 12:19:55 |
| 13 | MS. GOLDEN:  Form. | 12:19:57 |
| 14 | MS. BARBER:  Objection, form, foundation, | 12:19:57 |
| 15 | incomplete hypothetical, calls for speculation. | 12:19:59 |
| 16 | It's been asked and answered several times already | 12:20:01 |
| 17 | and now it is argumentative. | 12:20:04 |
| 18 | A  Again, it all depends on where it goes.  I | 12:20:06 |
| 19 | couldn't say just on those specific facts you just | 12:20:10 |
| 20 | told me, the limited information you gave me to | 12:20:15 |
| 21 | make a decision. | 12:20:17 |
| 22 | Q  Understood.  That's why I'm not saying it | 12:20:19 |
| 23 | would.  I'm asking if it could.  Understand the | 12:20:22 |
| 24 | distinction I'm making. | 12:20:25 |

| | | |
|---|---|---|
| 1 | So the witness tells you -- strike that. | 12:20:26 |
| 2 | The suspect tells you incriminating | 12:20:29 |
| 3 | information that's implausible or inconsistent | 12:20:32 |
| 4 | with the evidence you know. It could undermine | 12:20:34 |
| 5 | their credibility in your view, correct? | 12:20:36 |
| 6 | MS. GOLDEN: Okay. So you're done | 12:20:39 |
| 7 | answering the question. You've answered it at | 12:20:41 |
| 8 | least four times. | 12:20:42 |
| 9 | MR. SWAMINATHAN: No, he's not answered | 12:20:44 |
| 10 | it. He's answered a different question. And I've | 12:20:45 |
| 11 | explained how it was different. This is the last | 12:20:47 |
| 12 | time I'm asking and then we're going to get a | 12:20:47 |
| 13 | clear answer -- | 12:20:50 |
| 14 | MS. GOLDEN: No, he's not. He's not | 12:20:50 |
| 15 | answering it. And you're harassing at this point. | 12:20:52 |
| 16 | MR. SWAMINATHAN: You're instructing him | 12:20:54 |
| 17 | not to answer the question? | 12:20:56 |
| 18 | MS. GOLDEN: Yes, I am. | 12:20:56 |
| 19 | MR. SWAMINATHAN: Please make a note of | 12:20:57 |
| 20 | where we are on the record, please. | 12:20:59 |
| 21 | MS. GOLDEN: You don't have to do that | 12:21:00 |
| 22 | anymore. You can just search the text. | 12:21:01 |
| 23 | Q If somebody gives you shifting stories | 12:21:03 |
| 24 | about how the crime occurred, can that be an | 12:21:06 |

| | | |
|---|---|---|
| 1 | indication of their credibility or reliability of | 12:21:09 |
| 2 | their story? | 12:21:12 |
| 3 | MS. BARBER:  Objection, form, foundation | 12:21:12 |
| 4 | incomplete hypothetical, calls for speculation. | 12:21:15 |
| 5 | A  It goes back to the same answer I just | 12:21:21 |
| 6 | gave.  It's hypothetical.  I don't have enough | 12:21:23 |
| 7 | information to tell you whether it would or it | 12:21:26 |
| 8 | wouldn't. | 12:21:28 |
| 9 | Q  In some cases it could; in some cases it | 12:21:28 |
| 10 | would not; is that fair? | 12:21:32 |
| 11 | MS. BARBER:  Objection, form, foundation, | 12:21:34 |
| 12 | incomplete hypothetical, calls for speculation, | 12:21:35 |
| 13 | misstates the witness's testimony. | 12:21:38 |
| 14 | A  The best I can tell you is every case is | 12:21:41 |
| 15 | different and I would have to go on what the facts | 12:21:45 |
| 16 | of any case were.  So I don't know what the | 12:21:49 |
| 17 | implausible -- what you're asking me what are the | 12:21:54 |
| 18 | facts. | 12:21:57 |
| 19 | Q  If a witness -- | 12:21:57 |
| 20 | MS. GOLDEN:  Okay.  We're going to take a | 12:21:59 |
| 21 | break.  I'm taking a break. | 12:22:01 |
| 22 | MR. SWAMINATHAN:  Okay. | 12:22:02 |
| 23 | THE VIDEOGRAPHER:  Off the record 12:22. | 12:22:04 |
| 24 | (A short break was taken.) | 12:32:38 |

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  Back on the record | 12:33:09 |
| 2 | 12:33. | 12:33:12 |
| 3 | BY MR. SWAMINATHAN: | 12:33:13 |
| 4 | Q  Do homicide detectives approve charges in | 12:33:14 |
| 5 | murder cases? | 12:33:17 |
| 6 | MS. GOLDEN:  All right.  Just give me a | 12:33:18 |
| 7 | second.  Form. | 12:33:20 |
| 8 | A  No, homicide detectives don't approve | 12:33:28 |
| 9 | charges. | 12:33:32 |
| 10 | Q  Who does? | 12:33:33 |
| 11 | A  That would be the state's attorney's | 12:33:33 |
| 12 | office. | 12:33:35 |
| 13 | Q  Are there felony review state's attorneys | 12:33:35 |
| 14 | who come to the station and approve charges? | 12:33:39 |
| 15 | MR. BURNS:  Objection to form. | 12:33:43 |
| 16 | A  They come to the station and how they | 12:33:50 |
| 17 | determine who charges, you have to ask the state's | 12:33:53 |
| 18 | attorney's office. | 12:33:55 |
| 19 | Q  I'm asking about how they do it.  It's | 12:33:56 |
| 20 | felony review state's attorneys who do do it; is | 12:33:56 |
| 21 | that right? | 12:34:00 |
| 22 | MS. GOLDEN:  Asked and answered. | 12:34:00 |
| 23 | A  Yes. | 12:34:02 |
| 24 | Q  When do felony review state's attorneys | 12:34:03 |

| | | |
|---|---|---|
| 1 | get called into the station? | 12:34:07 |
| 2 | MS. GOLDEN:  Form, vague. | 12:34:08 |
| 3 | MR. BURNS:  Foundation. | 12:34:12 |
| 4 | MS. BARBER:  Incomplete hypothetical, | 12:34:12 |
| 5 | calls for speculation. | 12:34:15 |
| 6 | A  Again, it all depends on what you're | 12:34:25 |
| 7 | seeking. | 12:34:27 |
| 8 | Q  Who decides when they get called in to | 12:34:27 |
| 9 | approve charges? | 12:34:30 |
| 10 | MS. BARBER:  Objection, form, foundation, | 12:34:32 |
| 11 | incomplete hypothetical, calls for speculation. | 12:34:35 |
| 12 | A  The detective would usually decide that he | 12:34:37 |
| 13 | thinks he has enough to present to the state's | 12:34:45 |
| 14 | attorney.  The state's attorney then reviews it. | 12:34:48 |
| 15 | Q  When you say it's the detective, are you | 12:34:51 |
| 16 | referring to one of the primary assigned | 12:34:53 |
| 17 | detectives usually makes the call to the state's | 12:34:55 |
| 18 | attorney? | 12:34:59 |
| 19 | MS. GOLDEN:  Foundation. | 12:34:59 |
| 20 | A  Yes. | 12:35:02 |
| 21 | Q  And who decides when the state's attorney | 12:35:02 |
| 22 | gets called for purposes of taking a statement | 12:35:05 |
| 23 | from a witness or suspect? | 12:35:09 |
| 24 | MS. GOLDEN:  Foundation. | 12:35:11 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Form, incomplete | 12:35:13 |
| 2 | hypothetical, calls for speculation. | 12:35:15 |
| 3 | A  The detective would contact the state's | 12:35:20 |
| 4 | attorney's office. | 12:35:22 |
| 5 | Q  As a homicide investigation proceeds, is | 12:35:24 |
| 6 | it fair to say state's attorneys don't have any | 12:35:32 |
| 7 | knowledge of the steps that have taken place in an | 12:35:35 |
| 8 | investigation until they get called in by the | 12:35:39 |
| 9 | police officers? | 12:35:42 |
| 10 | MS. BARBER:  Objection, form, foundation, | 12:35:42 |
| 11 | incomplete hypothetical, calls for speculation. | 12:35:44 |
| 12 | A  I don't know what a state's attorney knows | 12:35:48 |
| 13 | or doesn't know about the case. | 12:35:50 |
| 14 | Q  Are homicide detectives providing constant | 12:35:53 |
| 15 | updates to the state's attorney's office as they | 12:35:58 |
| 16 | proceed in homicide investigations? | 12:36:02 |
| 17 | MS. BARBER:  Objection, form, foundation, | 12:36:03 |
| 18 | incomplete hypothetical, calls for speculation. | 12:36:05 |
| 19 | A  Again, every investigation is different. | 12:36:08 |
| 20 | Q  So there are some cases where the state's | 12:36:11 |
| 21 | attorney is involved in the very beginning and | 12:36:14 |
| 22 | they're getting updated as everything happens in | 12:36:16 |
| 23 | the course of the investigation? | 12:36:19 |
| 24 | MS. BARBER:  Same objections. | 12:36:20 |

1        MR. ZIBOLSKI:  Join.                          12:36:24

2     A  If you're going to seek a warrant and        12:36:25

3  nobody is in custody, they would have to know      12:36:27

4  about it.                                           12:36:30

5     Q  And then subsequent to getting a warrant     12:36:31

6  would they then be updated on each thing that       12:36:32

7  happens during the course of the investigate?      12:36:35

8        MS. GOLDEN:  Foundation.                      12:36:37

9        MS. BARBER:  Form, incomplete, calls for     12:36:39

10 speculation.                                        12:36:43

11       MR. BRENER:  Join.                            12:36:43

12    A  No.                                           12:36:44

13    Q  In general fair to say that state's          12:36:44

14 attorneys get involved in a homicide case once      12:36:47

15 they get called in by a homicide detective?         12:36:50

16       MS. GOLDEN:  Misstates the prior             12:36:53

17 testimony.                                          12:36:54

18       MS. BARBER:  Form, foundation, incomplete    12:36:54

19 hypothetical, calls for speculation.                12:36:57

20       MR. ZIBOLSKI:  Join.                          12:37:00

21    A  That would be my understanding for the       12:37:01

22 most part.                                          12:37:04

23    Q  Once the state -- strike that.               12:37:04

24       Once a felony review state's attorney        12:37:08

| | | |
|---|---|---|
| 1 | comes to the station, who takes the lead in the | 12:37:10 |
| 2 | investigation from that point? | 12:37:13 |
| 3 | MS. BARBER:  Objection, form, foundation, | 12:37:14 |
| 4 | incomplete hypothetical, calls for speculation. | 12:37:19 |
| 5 | MR. ZIBOLSKI:  Join. | 12:37:23 |
| 6 | A  The detective is still doing the | 12:37:27 |
| 7 | investigation.  He might ask for advice from a | 12:37:30 |
| 8 | state's attorney.  The state's attorney will make | 12:37:33 |
| 9 | their decisions on what they're going to do. | 12:37:36 |
| 10 | Q  So in terms of decision-making about what | 12:37:38 |
| 11 | next steps are in the investigation, does a | 12:37:41 |
| 12 | homicide detective have to get feedback or | 12:37:44 |
| 13 | permission from a state's attorney once they're on | 12:37:47 |
| 14 | site? | 12:37:50 |
| 15 | MR. BRENER:  Objection to form and | 12:37:53 |
| 16 | foundation. | 12:37:55 |
| 17 | A  I'm not sure exactly what you're talking | 12:37:57 |
| 18 | about. | 12:38:00 |
| 19 | Q  Before you conduct next steps, do you have | 12:38:01 |
| 20 | to check in with a state's attorney, that's what I | 12:38:04 |
| 21 | mean? | 12:38:07 |
| 22 | MS. GOLDEN:  Form as to next steps. | 12:38:07 |
| 23 | MR. BRENER:  Same objection. | 12:38:09 |
| 24 | A  If you're going out to find a witness, no. | 12:38:11 |

|    |                                                    |          |
|----|----------------------------------------------------|----------|
| 1  | Q  If you have a witness at the station             | 12:38:14 |
| 2  | before you interview that witness again, do you    | 12:38:16 |
| 3  | have to get permission from the state's attorney?  | 12:38:19 |
| 4  | MR. BRENER:  Form, foundation, incomplete          | 12:38:24 |
| 5  | hypothetical.                                       | 12:38:29 |
| 6  | A  You're almost saying that the state's           | 12:38:29 |
| 7  | attorney is running the investigation and they're  | 12:38:31 |
| 8  | not.  The detectives are still running the         | 12:38:32 |
| 9  | investigation.                                     | 12:38:35 |
| 10 | Q  And even once the state's attorney is          | 12:38:35 |
| 11 | there, detectives are running the investigation,   | 12:38:38 |
| 12 | which they don't have to check in with the state's | 12:38:40 |
| 13 | attorney before they do anything; is that fair?    | 12:38:42 |
| 14 | MS. GOLDEN:  Form.                                  | 12:38:44 |
| 15 | MS. BARBER:  Foundation, incomplete                | 12:38:46 |
| 16 | hypothetical.                                       | 12:38:48 |
| 17 | A  No, they don't have to.                         | 12:38:49 |
| 18 | Q  If there are witnesses to still talk to,       | 12:38:51 |
| 19 | even after a state's attorney has been called in   | 12:38:55 |
| 20 | and is at the station, who decides who's going to  | 12:38:57 |
| 21 | talk to those witnesses?                            | 12:39:01 |
| 22 | MS. GOLDEN:  Foundation.                            | 12:39:03 |
| 23 | MS. BARBER:  Form, incomplete                      | 12:39:04 |
| 24 | hypothetical.                                       | 12:39:07 |

1    A  If there's still witnesses out there, I'm          12:39:07

2  sure the detectives will try to find them.            12:39:10

3    Q  And if those witnesses need to be spoken          12:39:13

4  to, even after the state's attorney is at the         12:39:16

5  station, will police officers talk to them on         12:39:19

6  their own?                                            12:39:21

7    MS. BARBER:  Objection, form, foundation,           12:39:22

8  incomplete hypothetical.                              12:39:23

9    MR. BRENER:  Join the objections.                   12:39:25

10   A  I'm sure the detective will talk to them          12:39:28

11  on their own.                                         12:39:30

12   Q  If the detectives have interrogated a             12:39:37

13  suspect and have an incriminating statement from     12:39:44

14  the suspect and the state's attorney is called in,   12:39:47

15  if there was going to be a follow-up conversation    12:39:50

16  with that suspect, would the state's attorney need   12:39:52

17  to participate or can the police officer talk to     12:39:56

18  them on their own?                                    12:39:58

19   MS. GOLDEN:  Asked and answered.                     12:39:59

20  Withdrawn.                                            12:40:03

21   A  The detective could talk to them on their        12:40:04

22  own.                                                  12:40:07

23   Q  Would they usually check in with the             12:40:07

24  state's attorney before they did that or would it    12:40:10

| | | |
|---|---|---|
| 1 | be up to the officer? | 12:40:12 |
| 2 | MS. GOLDEN:  Foundation. | 12:40:13 |
| 3 | MS. BARBER:  Form. | 12:40:14 |
| 4 | A  I would imagine the detective would inform | 12:40:16 |
| 5 | the state's attorney of what's being said. | 12:40:20 |
| 6 | Q  Would there be regular communication once | 12:40:22 |
| 7 | a state's attorney is involved in a case between | 12:40:26 |
| 8 | the detectives on the case and the state's | 12:40:28 |
| 9 | attorney? | 12:40:28 |
| 10 | MS. GOLDEN:  Foundation. | 12:40:28 |
| 11 | MR. BRENER:  Calls for speculation. | 12:40:33 |
| 12 | MR. ZIBOLSKI:  Objection, foundation. | 12:40:36 |
| 13 | A  Once the state's attorney is in the area, | 12:40:38 |
| 14 | you would keep them appraised of the facts of the | 12:40:41 |
| 15 | case. | 12:40:44 |
| 16 | Q  In terms of when -- even once you have a | 12:40:46 |
| 17 | states's attorney on site, is it essentially up to | 12:40:48 |
| 18 | the detective when they're ready to have that | 12:40:51 |
| 19 | witness or suspect speak to a state's attorney? | 12:40:54 |
| 20 | MS. BARBER:  Can you read that question | 12:41:11 |
| 21 | back, please. | 12:41:11 |
| 22 | (Record read back by the | 12:41:11 |
| 23 | reporter.) | 12:41:13 |
| 24 | MS. GOLDEN:  Form. | 12:41:13 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Foundation. | 12:41:14 |
| 2 | A  What was the question?  I'm sorry. | 12:41:19 |
| 3 | Q  Yeah.  If I understand correctly, even | 12:41:21 |
| 4 | after the state's attorney is present, it's still | 12:41:23 |
| 5 | the detective's investigation, right? | 12:41:26 |
| 6 | A  That's correct. | 12:41:27 |
| 7 | Q  The detective doesn't need permission to | 12:41:28 |
| 8 | interview a witness or a suspect, correct? | 12:41:30 |
| 9 | A  That's correct. | 12:41:31 |
| 10 | Q  If the state's attorney is going to speak | 12:41:32 |
| 11 | to that witness, the officer is going to request | 12:41:36 |
| 12 | it; is that correct? | 12:41:40 |
| 13 | MS. GOLDEN:  Form. | 12:41:41 |
| 14 | MS. BARBER:  Foundation, incomplete | 12:41:43 |
| 15 | hypothetical, calls for speculation. | 12:41:45 |
| 16 | A  Yeah, at some point the detective is going | 12:41:48 |
| 17 | to be seeking charges and the state's attorney is | 12:41:49 |
| 18 | going to want to talk to the witnesses and the | 12:41:52 |
| 19 | suspect.  Does the detective go up to the state's | 12:41:56 |
| 20 | attorney and say will you please talk to him?  No. | 12:42:00 |
| 21 | The state's attorney, to do their job properly, I | 12:42:03 |
| 22 | would assume they would want to talk to him. | 12:42:06 |
| 23 | Q  But the detective is going to talk to that | 12:42:08 |
| 24 | witness anytime they feel they need to even if the | 12:42:10 |

1   state's attorney has been called; is that fair?        12:42:15

2         MS. GOLDEN:  Form.                               12:42:17

3         MS. BARBER:  Objection, form, foundation,        12:42:17

4   incomplete hypothetical, calls for speculation.        12:42:20

5      A  You will talk to the -- you'll talk to the       12:42:23

6   witnesses.  Obviously you want to have an idea of      12:42:27

7   what they saw.  Then you'll relate that to the         12:42:31

8   state's attorneys.  And that's why you talk to         12:42:37

9   them so you can give the state's attorney a heads      12:42:39

10  up on what this witness is about.                      12:42:42

11     Q  The detective who decides when they think        12:42:44

12  the case is ready to seek charges from the state's     12:42:48

13  attorney?                                              12:42:52

14        MS. GOLDEN:  Asked and answered.                 12:42:52

15     A  Well, that's usually when you call the           12:42:53

16  state's attorney, when you feel your case is ready     12:42:55

17  to go to the next step shall we say.                   12:42:59

18     Q  And if I understand correctly, the              12:43:02

19  decision about when to call the state's attorney       12:43:06

20  specifically for seeking charges, detective makes      12:43:09

21  that call when they think it's time; is that           12:43:12

22  right?                                                 12:43:16

23     A  Yes.                                             12:43:16

24     Q  Okay.  Now, once the detectives made the        12:43:16

1    call to seek charges and have the state's attorney          12:43:24

2    come in, then if there are -- the state's attorney          12:43:28

3    -- strike that.                                             12:43:32

4         Once the state's attorney shows up because             12:43:32

5    the detectives are seeking charges, would                   12:43:35

6    subsequent interviews with the suspect then be              12:43:38

7    conducted with the state's attorney?                        12:43:41

8         MS. GOLDEN:  Incomplete hypothetical.                  12:43:43

9         MR. BRENER:  Objection to form and                     12:43:46

10   foundation.                                                 12:43:48

11        MS. BARBER:  Calls for speculation.                    12:43:48

12        MS. GOLDEN:  Foundation.                               12:43:50

13     A  Would the state's attorney interview the               12:43:51

14   witnesses and the suspects?  Yes.                           12:43:54

15     Q  Okay.  Got it.  If -- so a typical                     12:43:56

16   scenario is the detectives have spoken to a                 12:43:59

17   suspect and the suspect in some cases gives an              12:44:02

18   incriminating statement.  With me so far?                   12:44:05

19        MS. GOLDEN:  Form as to typical.                       12:44:08

20     Q  With me so far?                                        12:44:10

21     A  Okay.                                                  12:44:11

22     Q  Now, in a case like that, the detective               12:44:12

23   thinks, all right, I've spoken to the witness.             12:44:15

24   I've got some incriminating statement that I think         12:44:17

| | | |
|---|---|---|
| 1 | is sufficient to get charges approved.  Then they | 12:44:19 |
| 2 | could call the states's attorney, correct? | 12:44:22 |
| 3 | A  Yes. | 12:44:24 |
| 4 | Q  And then once the state's attorneys come, | 12:44:25 |
| 5 | if there's any subsequent interview with that | 12:44:30 |
| 6 | suspect, would it be done by the officer or by the | 12:44:33 |
| 7 | state's attorney? | 12:44:36 |
| 8 | MR. BRENER:  Incomplete hypothetical. | 12:44:37 |
| 9 | Calls for speculation, foundation. | 12:44:39 |
| 10 | A  Unless the suspect evokes his fifth | 12:44:46 |
| 11 | amendment rights, the state's attorney at some | 12:44:51 |
| 12 | point will probably interview him. | 12:44:55 |
| 13 | Q  Would it be common for the detectives even | 12:44:56 |
| 14 | after they've called the state's attorney to | 12:44:58 |
| 15 | conduct additional interrogations of a suspect? | 12:45:00 |
| 16 | MR. BRENER:  Form and foundation. | 12:45:03 |
| 17 | A  Again every case is different. | 12:45:06 |
| 18 | Q  Are there times when after you've called | 12:45:08 |
| 19 | the state's attorney because you already have an | 12:45:10 |
| 20 | incriminating statement from the suspect that you | 12:45:12 |
| 21 | conducted a subsequent interrogations of the | 12:45:15 |
| 22 | suspect without the state's attorney participating | 12:45:17 |
| 23 | even though they're present? | 12:45:19 |
| 24 | MR. BRENER:  Anand, to clarify, when you | 12:45:25 |

| | | |
|---|---|---|
| 1 | say present -- | 12:45:27 |
| 2 | MR. SWAMINATHAN:  At the station but not | 12:45:28 |
| 3 | in the interview.  Thank you. | 12:45:29 |
| 4 | MR. BRENER:  Okay. | 12:45:31 |
| 5 | A  I don't recall ever doing it. | 12:45:34 |
| 6 | Q  Can you think of any reasons why you would | 12:45:38 |
| 7 | have a scenario where you already got an | 12:45:40 |
| 8 | incriminating statement from the witness and then | 12:45:43 |
| 9 | you've called in the state's attorney but then you | 12:45:45 |
| 10 | conduct a subsequent interrogation without the | 12:45:48 |
| 11 | state's attorney participating? | 12:45:50 |
| 12 | MS. BARBER:  Objection, form, foundation, | 12:45:53 |
| 13 | incomplete hypothetical, calls for speculation. | 12:45:55 |
| 14 | A  There could be.  It all depends.  It would | 12:46:02 |
| 15 | be on the facts of the case. | 12:46:05 |
| 16 | Q  Can you think of any, as you sit here | 12:46:06 |
| 17 | today? | 12:46:10 |
| 18 | A  Hypothetically, let's say the guy admits | 12:46:12 |
| 19 | to shooting somebody, gives it all out and says I | 12:46:16 |
| 20 | threw the gun over here.  So you're not going to | 12:46:19 |
| 21 | wait for the state's attorney to come out before | 12:46:24 |
| 22 | you look for the gun or send somebody else to look | 12:46:25 |
| 23 | for the gun.  Even if the state's attorney is | 12:46:28 |
| 24 | coming in, reviewing the case file, you might talk | 12:46:31 |

|   |   |   |
|---|---|---|
| 1 | to the guy in order to try to pinpoint where that | 12:46:34 |
| 2 | gun is so he can recover it so nobody else could | 12:46:36 |
| 3 | get harmed by it, little kid find it, something | 12:46:40 |
| 4 | like that.  If he gives a statement that is -- | 12:46:44 |
| 5 | again something else just -- you know, where he's | 12:46:52 |
| 6 | incriminating himself totally and there's | 12:46:56 |
| 7 | another -- | 12:47:01 |
| 8 | Q  Are you giving me another example now? | 12:47:02 |
| 9 | A  Just another example. | 12:47:05 |
| 10 | Q  Okay. | 12:47:05 |
| 11 | A  I mean, it's part of the same example. | 12:47:07 |
| 12 | Q  Tell me. | 12:47:09 |
| 13 | A  Let's say a knife, he threw a knife away | 12:47:10 |
| 14 | in the river.  You're trying to determine exactly | 12:47:12 |
| 15 | where he threw the knife.  If they did a burglary | 12:47:15 |
| 16 | or a robbery, what they did with the proceeds. | 12:47:19 |
| 17 | You would keep talking to them over that.  If he | 12:47:21 |
| 18 | said he went to a pawn shop, you'd go to different | 12:47:24 |
| 19 | pawn shops.  Even if in a homicide where they | 12:47:29 |
| 20 | stole something.  If you want to determine if | 12:47:32 |
| 21 | property was taken, what he did with it. | 12:47:34 |
| 22 | Q  If you -- | 12:47:37 |
| 23 | MS. GOLDEN:  Are you finished? | 12:47:37 |
| 24 | A  Yeah. | 12:47:39 |

1      Q  If you have an instance where -- strike          12:47:39

2   that.                                                  12:47:43

3          If you have a case where the homicide           12:47:43

4   suspect has walked through the confession with you     12:47:46

5   and then you've called in the state's attorney,        12:47:50

6   would you ever meet with the suspect again on your     12:47:53

7   own to have them sort of lay out the facts again       12:47:56

8   for you before meeting with the state's attorney?      12:47:59

9          MS. GOLDEN:  Form.                              12:48:02

10         MS. BARBER:  Foundation.                        12:48:04

11     A  Lay out the facts of the homicide --             12:48:07

12     Q  What I mean is have them walk through the        12:48:11

13  confession again.                                      12:48:13

14         MS. GOLDEN:  Form.                              12:48:14

15     A  Before the -- when the state's attorney          12:48:18

16  arrives in the station?                                12:48:21

17     Q  Even after the state's attorney arrives at       12:48:22

18  the station, would you go in and talk to that          12:48:25

19  suspect again and have them walk through the           12:48:27

20  confession again without the state's attorney          12:48:29

21  participating?                                         12:48:31

22         MS. GOLDEN:  The question is vague and          12:48:32

23  confusing.                                             12:48:34

24         MS. BARBER:  Incomplete hypothetical,           12:48:35

1    calls for speculation.                              12:48:37

2        A  Again, I can't -- I can't think of a         12:48:42

3    reason why it would.  Maybe if there was a reason   12:48:45

4    I would but...                                      12:48:48

5        Q  Can't think of one?                          12:48:48

6        A  I can't think of one.                        12:48:50

7        Q  In your practice did you have instances      12:48:51

8    where after somebody walked through a confession    12:48:54

9    with you you were seeking charges that you went     12:48:55

10   back in and walked through it again with them       12:48:58

11   before the state's attorney joined?                 12:49:00

12       A  I don't recall doing it.                      12:49:03

13       Q  Was -- did you get any training about         12:49:05

14   working with the witness to make sure they got      12:49:09

15   their story straight or to practice their story     12:49:11

16   before meeting with the state's attorney?           12:49:14

17          MS. GOLDEN:  Form.                            12:49:16

18       A  The word practice, I'm not -- do we have      12:49:21

19   them practice what they're going to say?  No.        12:49:27

20       Q  Could you go through a confession multiple    12:49:30

21   times with a suspect in order to get the story      12:49:33

22   consistent and straight before they meet with the   12:49:38

23   state's attorney?                                   12:49:40

24          MS. GOLDEN:  Form.                            12:49:41

| | | |
|---|---|---|
| 1 | A  You would talk to them until -- if he | 12:49:45 |
| 2 | gives -- if he says something and you talk to them | 12:49:49 |
| 3 | to try to make it clear for everybody to | 12:49:56 |
| 4 | understand. | 12:49:59 |
| 5 | Q  If the story wasn't making sense, you | 12:50:00 |
| 6 | might go through it again several times with a | 12:50:02 |
| 7 | witness before you called the state's attorney; do | 12:50:05 |
| 8 | I have that right? | 12:50:07 |
| 9 | MS. BARBER:  Objection, form, foundation, | 12:50:08 |
| 10 | misstates the witness's testimony. | 12:50:09 |
| 11 | A  This goes back to what you were asking | 12:50:13 |
| 12 | before about whether it was implausible.  Again, I | 12:50:16 |
| 13 | have to know what he said before I could answer | 12:50:21 |
| 14 | that, you know, if it didn't make sense.  If it | 12:50:23 |
| 15 | didn't make sense, it's sort of implausible. | 12:50:27 |
| 16 | Q  Then you might go through with them again? | 12:50:29 |
| 17 | A  I would again try to figure out the truth | 12:50:32 |
| 18 | and try to find out why it didn't make sense, what | 12:50:34 |
| 19 | is the actual truth here. | 12:50:36 |
| 20 | Q  Tell me what the dynamic between the | 12:50:39 |
| 21 | felony review state's attorneys and the | 12:50:44 |
| 22 | detectives.  Was it a friendly relationship?  Was | 12:50:46 |
| 23 | it a confrontational relationship? | 12:50:49 |
| 24 | MR. BRENER:  Objection to form, foundation | 12:50:51 |

| | | |
|---|---|---|
| 1 | calls, for speculation. | 12:50:53 |
| 2 | A  They had a job to do.  We had a job to do. | 12:50:55 |
| 3 | Q  Were you folks friendly? | 12:50:58 |
| 4 | MS. GOLDEN:  Form. | 12:51:00 |
| 5 | MR. BRENER:  Join. | 12:51:02 |
| 6 | A  Again some I got along with better than | 12:51:06 |
| 7 | others but same with the detective division, same | 12:51:08 |
| 8 | with defense attorneys. | 12:51:11 |
| 9 | Q  The felony review state's attorneys who | 12:51:14 |
| 10 | would come to approve charges, would you know them | 12:51:16 |
| 11 | on a first-name basis? | 12:51:19 |
| 12 | MS. GOLDEN:  Foundation. | 12:51:21 |
| 13 | MS. BARBER:  Form. | 12:51:23 |
| 14 | A  It all depends on how many times I dealt | 12:51:26 |
| 15 | with them.  Obviously if one came out and I had a | 12:51:28 |
| 16 | lot of dealings with them, I would know him better | 12:51:33 |
| 17 | than a guy that I never dealt with. | 12:51:35 |
| 18 | Q  In general -- putting aside people who | 12:51:37 |
| 19 | were new, for example, to that position -- | 12:51:40 |
| 20 | MS. GOLDEN:  People who what? | 12:51:43 |
| 21 | Q  -- over time would you get to know the | 12:51:45 |
| 22 | state's attorneys who were coming out on felony | 12:51:46 |
| 23 | review? | 12:51:49 |
| 24 | MS. GOLDEN:  I didn't hear that question. | 12:51:49 |

| | | |
|---|---|---|
| 1 | Can you... | 12:51:49 |
| 2 | (Record read back by the | 12:51:49 |
| 3 | reporter.) | 12:52:01 |
| 4 | MS. GOLDEN:  That's what I didn't hear. | 12:52:01 |
| 5 | A  If I dealt with them enough, then I become | 12:52:04 |
| 6 | more acquainted with them. | 12:52:07 |
| 7 | Q  You mentioned yesterday that sometimes you | 12:52:09 |
| 8 | go out for drinks after work with fellow police | 12:52:12 |
| 9 | officers, fair? | 12:52:16 |
| 10 | A  Yeah. | 12:52:16 |
| 11 | Q  Would you ever go out for drinks with | 12:52:16 |
| 12 | felony review state's attorneys? | 12:52:18 |
| 13 | A  I don't recall ever going out with the | 12:52:20 |
| 14 | state's attorneys to drink.  I take that back. | 12:52:22 |
| 15 | Can I make one correction? | 12:52:26 |
| 16 | Q  Please. | 12:52:28 |
| 17 | A  I was in a club called the Stewart Club. | 12:52:28 |
| 18 | The state's attorneys were also in that club.  You | 12:52:31 |
| 19 | know, you'd have 200 people there, 150 people | 12:52:34 |
| 20 | there.  I would sit at the table with my family. | 12:52:37 |
| 21 | And if I seen a state's attorney, I'd say hello. | 12:52:40 |
| 22 | If I seen a judge, I'd say hello.  We had beer | 12:52:43 |
| 23 | there and corned beef sandwiches.  Was I going out | 12:52:47 |
| 24 | drinking with them specifically?  No.  Can I say I | 12:52:51 |

1    never had a beer with them?  I did.                    12:52:53

2        Q   Thank you.                                     12:52:56

3            Can you just spell Stewart Club?               12:52:56

4        A   Yes.  S-t-e-w-a-r-t.                           12:53:00

5        Q   When state's attorneys came -- strike         12:53:06

6    that.                                                  12:53:09

7            When you called out a state's attorney on      12:53:09

8    a case to approve charges, would you then speak       12:53:12

9    with that state's attorney when they arrived?          12:53:15

10       A   If I was the one that called him out, yes.     12:53:17

11       Q   And would you share information with them?     12:53:19

12       A   Well, yes.                                     12:53:22

13       Q   How would you go about sharing information     12:53:23

14   with the state's attorneys?                            12:53:26

15       MS. GOLDEN:  Other than the speaking that          12:53:27

16   he just described?                                     12:53:29

17       MR. SWAMINATHAN:  Objection to form.  Go           12:53:30

18   ahead.                                                 12:53:32

19       MS. GOLDEN:  And asked and answered.               12:53:34

20       A   We talked to them and obviously whatever       12:53:36

21   reports we had available they would review.            12:53:38

22       Q   So you would talk to them and give them        12:53:41

23   any reports you had available up to that point; is     12:53:43

24   that right?                                            12:53:47

1          MS. GOLDEN:  Form and foundation.                    12:53:47

2      A   That's correct.                                      12:53:49

3      Q   If you had GPR's, would you give him GPR's           12:53:50

4   -- strike that.                                             12:53:53

5          When you say report, are you referring to           12:53:53

6   GPR's or supplementary reports?                             12:53:56

7      A   Mostly supplemental reports.                         12:53:58

8      Q   You wouldn't give them copies of your               12:54:00

9   GPR's; is that right?                                       12:54:02

10         MS. GOLDEN:  Asked and answered.                     12:54:03

11     A   No.                                                  12:54:05

12     Q   And was it often the case that at the time          12:54:05

13  the state's attorney was arriving on a case in              12:54:08

14  many instances the supplementary report wasn't              12:54:13

15  ready for them yet; is that fair?                           12:54:15

16         MS. BARBER:  Objection, form, foundation,            12:54:16

17  incomplete hypothetical, calls for speculation.             12:54:19

18     A   Well, I could say the clear closing report          12:54:24

19  wasn't done because it can't be done until they             12:54:26

20  either reject charges or approve charges.                   12:54:30

21     Q   Developments that had taken place that              12:54:32

22  same day that you called the state's attorney,              12:54:35

23  usually those wouldn't be in supplementary reports          12:54:37

24  to share with the state's attorney; is that fair?           12:54:40

| | | |
|---|---|---|
| 1 | A  That's fair.  You would relate to them | 12:54:42 |
| 2 | verbatim what was going on. | 12:54:44 |
| 3 | Q  When would you say the primary source of | 12:54:46 |
| 4 | information for the state's attorneys when they | 12:54:49 |
| 5 | came was information shared orally by the primary | 12:54:51 |
| 6 | detectives on the case? | 12:54:57 |
| 7 | MR. BRENER:  Objection to form. | 12:54:58 |
| 8 | A  I don't know what other information they | 12:55:02 |
| 9 | would have. | 12:55:05 |
| 10 | Q  That would be the primary one? | 12:55:06 |
| 11 | A  I -- | 12:55:07 |
| 12 | MS. BARBER:  Objection, form. | 12:55:07 |
| 13 | A  Again, I can't answer for the state's | 12:55:09 |
| 14 | attorney.  I would give him the information that I | 12:55:10 |
| 15 | had.  I would inform him of any information that | 12:55:12 |
| 16 | wasn't in the reports that we did.  What other | 12:55:16 |
| 17 | information they had I don't know. | 12:55:19 |
| 18 | Q  Be fair to say when the state's attorneys | 12:55:20 |
| 19 | first arrived, much of the information that they | 12:55:24 |
| 20 | were receiving was coming from the detectives | 12:55:26 |
| 21 | orally? | 12:55:29 |
| 22 | MS. GOLDEN:  Foundation. | 12:55:30 |
| 23 | MR. BRENER:  Objection, form. | 12:55:31 |
| 24 | MS. GOLDEN:  Foundation you're asking -- | 12:55:33 |

| | | |
|---|---|---|
| 1 | okay. You're asking him about what somebody else | 12:55:36 |
| 2 | who held a position that he never had, what kind | 12:55:38 |
| 3 | of information they had when they arrived? | 12:55:41 |
| 4 | MR. SWAMINATHAN: If -- | 12:55:44 |
| 5 | MS. GOLDEN: Zero foundation for that. | 12:55:44 |
| 6 | MR. SWAMINATHAN: There's a difference | 12:55:46 |
| 7 | between asking what they relied on and what they | 12:55:48 |
| 8 | were receiving. That's why it's important to | 12:55:50 |
| 9 | listen to my questions before -- | 12:55:50 |
| 10 | MS. GOLDEN: Would you read -- sure. | 12:55:54 |
| 11 | Maybe I misheard it. I thought you said what they | 12:55:54 |
| 12 | had. Can you read the question back. | 12:55:54 |
| 13 | Frankly, could have received it from | 12:56:03 |
| 14 | somebody else, not a police officer. | 12:56:05 |
| 15 | MR. SWAMINATHAN: Objection to form. You | 12:56:07 |
| 16 | want to read it back? | 12:56:08 |
| 17 | MS. GOLDEN: I do. | 12:56:08 |
| 18 | (Record read back by the | 12:56:08 |
| 19 | reporter.) | 12:56:23 |
| 20 | MS. GOLDEN: Still there's no foundation | 12:56:23 |
| 21 | for him to answer -- for you to ask him this | 12:56:25 |
| 22 | particular question. | 12:56:27 |
| 23 | A You know, I can only answer what we would | 12:56:30 |
| 24 | give the state's attorney. I can't answer what | 12:56:32 |

| | | |
|---|---|---|
| 1 | the state's attorney already knew. | 12:56:34 |
| 2 | Q  Was the primary source of information that | 12:56:36 |
| 3 | you would give to the state's attorney what you | 12:56:38 |
| 4 | communicated orally to them as the detective? | 12:56:40 |
| 5 | MS. GOLDEN:  Form. | 12:56:43 |
| 6 | A  It would be whatever reports we had plus | 12:56:45 |
| 7 | orally.  That's what we give to the state's | 12:56:47 |
| 8 | attorney's office. | 12:56:49 |
| 9 | Q  During the course of the state's | 12:56:51 |
| 10 | attorney's involvement once they were called, | 12:56:57 |
| 11 | would you have a back and forth with them during | 12:57:03 |
| 12 | the course of that process? | 12:57:06 |
| 13 | MS. GOLDEN:  Form. | 12:57:07 |
| 14 | MS. BARBER:  Foundation, incomplete | 12:57:08 |
| 15 | hypothetical. | 12:57:08 |
| 16 | A  We could, yes. | 12:57:16 |
| 17 | Q  During the course of their involvement at | 12:57:16 |
| 18 | the station would state's attorney's commonly | 12:57:20 |
| 19 | consult with the detectives who were leading the | 12:57:24 |
| 20 | case? | 12:57:27 |
| 21 | MR. BRENER:  Objection to form. | 12:57:27 |
| 22 | MR. BURNS:  Join. | 12:57:29 |
| 23 | MS. BARBER:  Incomplete hypothetical. | 12:57:29 |
| 24 | A  When you say consult, we would talk, if | 12:57:31 |

| | | |
|---|---|---|
| 1 | that's what you're asking, yes. | 12:57:33 |
| 2 | Q  Even after a state's attorney goes in -- | 12:57:34 |
| 3 | strike that. | 12:57:37 |
| 4 | I mean, the states's attorney obviously | 12:57:37 |
| 5 | consults with the detectives before they go in to | 12:57:39 |
| 6 | interview a witness or suspect, correct? | 12:57:41 |
| 7 | MS. GOLDEN:  Asked and answered. | 12:57:43 |
| 8 | MR. BRENER:  Same objection to form. | 12:57:44 |
| 9 | A  We would talk, yes. | 12:57:46 |
| 10 | Q  And would you also talk to them even after | 12:57:48 |
| 11 | they went in and interviewed witnesses and | 12:57:50 |
| 12 | suspects? | 12:57:53 |
| 13 | MR. BRENER:  Objection to form as to the | 12:57:54 |
| 14 | word consult. | 12:57:56 |
| 15 | A  That was my question.  Consult to me means | 12:57:57 |
| 16 | -- and tell me if I'm wrong -- is that you're | 12:58:00 |
| 17 | asking advice.  I'm going to consult with an | 12:58:02 |
| 18 | attorney to get an advice, okay?  I don't know -- | 12:58:05 |
| 19 | they're not asking for advice.  We're talking over | 12:58:08 |
| 20 | facts of the case.  He might consult with another | 12:58:10 |
| 21 | state's attorney, maybe I don't know. | 12:58:13 |
| 22 | Q  Thank you. | 12:58:17 |
| 23 | During the time you were a detective, | 12:58:18 |
| 24 | you're aware that state's attorneys would often | 12:58:22 |

| | | |
|---|---|---|
| 1 | take handwritten statements from witnesses and | 12:58:25 |
| 2 | suspects, correct? | 12:58:27 |
| 3 | A  That's correct. | 12:58:28 |
| 4 | Q  You're aware that they would also take | 12:58:29 |
| 5 | court reported statements from suspects, correct? | 12:58:32 |
| 6 | A  That's correct. | 12:58:34 |
| 7 | Q  What was your understanding of when they | 12:58:35 |
| 8 | would take a handwritten statement versus a court | 12:58:39 |
| 9 | reported statement? | 12:58:42 |
| 10 | MR. BRENER:  Objection to foundation. | 12:58:43 |
| 11 | MR. BURNS:  Join. | 12:58:45 |
| 12 | A  They made that decision, and that was | 12:58:47 |
| 13 | their decision. | 12:58:48 |
| 14 | Q  Do you have any idea what were -- when | 12:58:48 |
| 15 | they would choose to make a handwritten statement | 12:58:51 |
| 16 | versus a court reported statement? | 12:58:54 |
| 17 | MR. BURNS:  Objection, asked and answered. | 12:58:56 |
| 18 | A  That's their decision.  I have no -- I | 12:58:58 |
| 19 | never asked them why they would take a court | 12:59:01 |
| 20 | reported statement or a handwritten statement. | 12:59:04 |
| 21 | Q  What was your understanding of when they | 12:59:06 |
| 22 | would take a statement at all versus not take any | 12:59:08 |
| 23 | statement? | 12:59:11 |
| 24 | MR. BURNS:  Objection, foundation, form. | 12:59:12 |

| | | |
|---|---|---|
| 1 | A  That would be their decision.  Maybe I'd | 12:59:15 |
| 2 | ask them why on any given case but that would be | 12:59:18 |
| 3 | their decision whether they wanted to take a | 12:59:22 |
| 4 | statement or not. | 12:59:24 |
| 5 | Q  So the issue of whether to take a | 12:59:25 |
| 6 | handwritten statement or not, that would be the | 12:59:28 |
| 7 | state's attorney's decision; is that right? | 12:59:32 |
| 8 | MR. BRENER:  Foundation. | 12:59:33 |
| 9 | MR. BURNS:  Objection, foundation and | 12:59:35 |
| 10 | form. | 12:59:37 |
| 11 | A  That would be my understanding, yes. | 12:59:37 |
| 12 | Q  In terms of when to take the handwritten | 12:59:39 |
| 13 | statement, would that be the state's attorney's | 12:59:42 |
| 14 | decision? | 12:59:45 |
| 15 | MR. BRENER:  Foundation. | 12:59:46 |
| 16 | MR. BURNS:  Form. | 12:59:48 |
| 17 | A  Yes, they're taking the statement. | 12:59:49 |
| 18 | Q  Detectives have any input on whether to | 12:59:49 |
| 19 | take a handwritten statement or not? | 12:59:52 |
| 20 | MS. GOLDEN:  Asked and answered. | 12:59:54 |
| 21 | A  That's their decision.  I had no input on | 12:59:57 |
| 22 | that. | 13:00:00 |
| 23 | Q  And do detectives have any input on when | 13:00:00 |
| 24 | to take a handwritten statement? | 13:00:04 |

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Asked and answered. | 13:00:06 |
| 2 | A  That would be up to the state's attorneys | 13:00:08 |
| 3 | when they wanted to take their statements. | 13:00:10 |
| 4 | Q  Did you have any input as a detective on | 13:00:12 |
| 5 | that? | 13:00:15 |
| 6 | MS. GOLDEN:  Asked and answered. | 13:00:15 |
| 7 | A  No, that would be their decision. | 13:00:18 |
| 8 | Q  When state's attorneys took handwritten | 13:00:21 |
| 9 | statements, were you sometimes present when | 13:00:29 |
| 10 | handwritten statements were taken? | 13:00:32 |
| 11 | A  Yes. | 13:00:34 |
| 12 | Q  The process of taking down the handwritten | 13:00:34 |
| 13 | statement, where did that occur? | 13:00:37 |
| 14 | MS. GOLDEN:  Okay.  Foundation. | 13:00:40 |
| 15 | A  It could occur anywhere and everywhere. | 13:00:48 |
| 16 | Q  Let's start with in the Area 5. | 13:00:51 |
| 17 | A  Okay. | 13:00:53 |
| 18 | Q  In Area 5 where would the state's | 13:00:54 |
| 19 | attorneys sit when they were taking handwritten | 13:00:58 |
| 20 | statements? | 13:01:00 |
| 21 | A  In one of the offices.  It might be in the | 13:01:00 |
| 22 | interview room.  We did them in a different spots. | 13:01:03 |
| 23 | Q  Would they sometimes do the handwritten | 13:01:10 |
| 24 | statements right in the interrogation rooms with | 13:01:15 |

1    the witness?                                      13:01:18

2        A  I'm trying to remember exactly.  I imagine  13:01:19

3    they did.  I can't say for sure what office, where  13:01:24

4    they would do it but I would imagine yes.         13:01:27

5        Q  In terms of when they took a statement in   13:01:31

6    relation to the -- in relation to interviewing the  13:01:34

7    suspect -- you understand what I'm asking now?    13:01:37

8            In other words, so what I'm asking is,     13:01:41

9    they interview a suspect.  They decide they're    13:01:43

10   going to take a handwritten statement.            13:01:47

11       A  Okay.                                        13:01:49

12       Q  Do they take the handwritten statement      13:01:49

13   right then and there, right after they just talked  13:01:51

14   to the witness?  Do they take it later?  Do they   13:01:54

15   leave the room?  How does it work?                13:01:57

16       MR. BRENER:  Form and foundation,              13:01:58

17   incomplete hypothetical.                           13:01:59

18       MR. BURNS:  Join.                               13:02:01

19       A  That's up to the state's attorney.          13:02:02

20       Q  When you were with the state's attorneys    13:02:04

21   -- strike that.                                    13:02:08

22           In your career fair to say many times      13:02:08

23   where a state's attorney would interview your      13:02:12

24   suspect and you would be there during the course   13:02:15

1    of that state's attorney interview?                    13:02:18

2         MS. GOLDEN:  Asked and answered.                 13:02:19

3         MR. BURNS:  Objection, form.                     13:02:20

4    A  Well, yes.                                          13:02:22

5    Q  Who made the decision about whether a              13:02:23

6    detective would be in the room while the state's      13:02:25

7    attorney interviewed a suspect?                        13:02:29

8         MS. GOLDEN:  Foundation.                          13:02:30

9    A  Normally we go in there.  At certain               13:02:37

10   aspects, the state's attorney would ask us to step    13:02:40

11   out and talk individually with the suspect.  We       13:02:43

12   would then come back in, you know, again.             13:02:46

13   Q  So the detectives would always be there            13:02:50

14   except for some portion of the statements?            13:02:54

15        MS. GOLDEN:  Form.                                13:02:56

16   A  Most of the time, yes.                              13:02:57

17   Q  And what were the portions where the               13:02:59

18   detective would be asked to step out?                  13:03:00

19        MR. BRENER:  Objection to foundation.             13:03:03

20   A  I'm not sure exactly what they asked them          13:03:05

21   because I wasn't in there.                             13:03:08

22   Q  Do you have any idea why you were being            13:03:09

23   asked to step out for portions of these               13:03:11

24   interviews?                                            13:03:14

| | | |
|---|---|---|
| 1 | A  My understanding is they were asking how | 13:03:14 |
| 2 | they were treated, were they fed, everything else. | 13:03:16 |
| 3 | Q  Were you ever allowed as a detective to | 13:03:18 |
| 4 | stay in the room when those questions were asked? | 13:03:20 |
| 5 | A  When the handwritten statement is taken | 13:03:23 |
| 6 | and asked it again, the detective will be there | 13:03:30 |
| 7 | because he will be a witness to that handwritten | 13:03:34 |
| 8 | statement or court reported statement.  At that | 13:03:38 |
| 9 | point they're still in there.  During the initial | 13:03:40 |
| 10 | interview they would ask us to step out. | 13:03:41 |
| 11 | Q  Okay.  So if I understand the process, at | 13:03:44 |
| 12 | some point the state's attorney decides to | 13:03:53 |
| 13 | interview the suspect, right? | 13:03:55 |
| 14 | MS. GOLDEN:  Asked and answered. | 13:03:57 |
| 15 | Q  And the detective is in the room for that | 13:03:59 |
| 16 | interview?  With me so far? | 13:04:01 |
| 17 | MS. GOLDEN:  Asked and answered. | 13:04:03 |
| 18 | A  Yes. | 13:04:04 |
| 19 | Q  Does the detective participate in any of | 13:04:04 |
| 20 | the questioning of the witness? | 13:04:08 |
| 21 | MS. GOLDEN:  Form, foundation. | 13:04:09 |
| 22 | A  He could. | 13:04:14 |
| 23 | Q  Up to the detective? | 13:04:16 |
| 24 | MS. BARBER:  Form. | 13:04:19 |

| | | |
|---|---|---|
| 1 | A   Yes, because the detective interviewed the | 13:04:22 |
| 2 | person already.  So if there's a clarification, | 13:04:25 |
| 3 | the detective might ask him something.  So it | 13:04:28 |
| 4 | would clarify it for the state's attorney a little | 13:04:31 |
| 5 | better. | 13:04:34 |
| 6 | Q  Could the detectives ask questions to get | 13:04:34 |
| 7 | the witness -- you know, add information they | 13:04:37 |
| 8 | might have left out that they told the detectives | 13:04:40 |
| 9 | before? | 13:04:44 |
| 10 | MS. BARBER:  Could you please read that | 13:04:47 |
| 11 | back. | 13:04:47 |
| 12 | (Record read back by the | 13:04:47 |
| 13 | reporter.) | 13:04:48 |
| 14 | Q  Let me ask it again.  I'm looking at your | 13:04:48 |
| 15 | screen and -- could the detective ask questions to | 13:04:49 |
| 16 | elicit information from the witness that the | 13:04:53 |
| 17 | witness might have missed that they previously | 13:04:56 |
| 18 | told the detective? | 13:04:58 |
| 19 | MS. BARBER:  Objection, form, foundation, | 13:05:00 |
| 20 | incomplete hypothetical. | 13:05:03 |
| 21 | A   Well, sure.  If the suspect told the | 13:05:05 |
| 22 | detective something and then as he's recounting | 13:05:09 |
| 23 | the facts to the state's attorney, if he forgets | 13:05:13 |
| 24 | to mention something, the detective might bring | 13:05:17 |

1  up, well, didn't you, you know -- hopefully -- you          13:05:21

2  know, you want to get the truth out.  So it would          13:05:25

3  try to clarify that because you already told the          13:05:30

4  state's attorney this is what he said.  So to show          13:05:33

5  you're not lying to the state's attorney and this          13:05:36

6  is what the guy actually said, the suspect          13:05:38

7  actually said.  It's just to clarify everything          13:05:41

8  for the state's attorney.          13:05:44

9      Q  Where you had -- that was -- that was          13:05:45

10 common, right, where you have a suspect going          13:05:48

11 through the story with the state's attorney and          13:05:52

12 they leave out something that they told you          13:05:55

13 before?          13:05:57

14     MS. BARBER:  Objection, form, foundation.          13:05:57

15     MR. BRENER:  I'll join the objections.          13:05:59

16     A  The detective would usually say something.          13:06:06

17 You know, what I would say --          13:06:11

18     Q  That's what I was going to --          13:06:13

19     MS. GOLDEN:  Please.          13:06:15

20     Q  That's why --          13:06:16

21     MS. GOLDEN:  No, no, no, Anand, you're          13:06:17

22 interrupting him.          13:06:18

23     A  Again, it all depends on the interview          13:06:20

24 itself.          13:06:22

| | | |
|---|---|---|
| 1 | Q  Was there -- what was the type of language | 13:06:24 |
| 2 | you used if you got a suspect who's going through | 13:06:26 |
| 3 | the story with the state's attorney and leaves out | 13:06:29 |
| 4 | a piece of what they told you before? | 13:06:32 |
| 5 | MS. BARBER:  Objection, form, foundation, | 13:06:34 |
| 6 | incomplete hypothetical, calls for speculation. | 13:06:35 |
| 7 | A  What kind of language? | 13:06:38 |
| 8 | Q  Yeah. | 13:06:40 |
| 9 | A  What do you mean?  How did I speak? | 13:06:40 |
| 10 | Q  Yeah. | 13:06:42 |
| 11 | A  Normally. | 13:06:42 |
| 12 | Q  Would you say, hey, did you also tell me | 13:06:43 |
| 13 | about this or didn't you also tell me about that? | 13:06:47 |
| 14 | A  I might ask did you mention anything about | 13:06:48 |
| 15 | this to me. | 13:06:51 |
| 16 | Q  Okay.  Once -- strike that. | 13:06:52 |
| 17 | When the state's attorney goes into the | 13:06:59 |
| 18 | room to interview the suspect for the first time, | 13:07:01 |
| 19 | they're not taking a handwritten statement right | 13:07:04 |
| 20 | away; is that right? | 13:07:06 |
| 21 | MR. BRENER:  Objection to foundation. | 13:07:07 |
| 22 | A  I believe that was correct. | 13:07:09 |
| 23 | Q  They're usually interviewing the person | 13:07:10 |
| 24 | first; is that right? | 13:07:14 |

1          MR. BRENER:  Same objection.                13:07:15

2      A  Yes.                                         13:07:17

3      Q  And if they decide to do a handwritten       13:07:17

4  statement, then that comes after they've conducted  13:07:20

5  some interview of the witness; is that right?        13:07:23

6          MR. BRENER:  Same objection.                13:07:25

7      A  Yes, that's correct.                         13:07:26

8      Q  And then in your experience when you've       13:07:28

9  been sitting in the room for this process, once      13:07:30

10  the state's attorney has interviewed the person     13:07:33

11  and decided to take a statement, what happens        13:07:34

12  next?                                               13:07:36

13          MS. GOLDEN:  Foundation.                   13:07:38

14          MS. BARBER:  Form.                         13:07:39

15      A  The state's attorney, if I remember          13:07:42

16  correctly -- this is a long time ago -- would        13:07:44

17  interview the person.  He would then decide what     13:07:46

18  kind of statement they were going to take.  He      13:07:51

19  would do the handwritten statement, and it would    13:07:54

20  be reviewed by the suspect, the person given the    13:07:58

21  handwritten statement, with the detective.  If      13:08:02

22  there was mistakes made in the handwritten          13:08:05

23  statement -- and I believe a lot of times they      13:08:10

24  would make them purposely to make sure the person   13:08:12

1   is reading the statement.  We would initial in the        13:08:14

2   spots where mistakes were and then we all signed          13:08:18

3   the handwritten statement.                                13:08:22

4       Q  If the person missed some of the                   13:08:23

5   deliberate mistakes, what would you do then?              13:08:26

6       A  I would do nothing.                                13:08:29

7       Q  Would the state's attorney point out those         13:08:30

8   places to the suspect?                                    13:08:33

9       A  I don't recall.  I believe he would but            13:08:38

10  I'm not positive.                                         13:08:40

11      Q  Okay.  You walked through the process for          13:08:41

12  me and I appreciate that.  At the point the               13:08:47

13  state's attorney decided to do a handwritten              13:08:49

14  statement, where do they go to write that                 13:08:51

15  handwritten statement?                                    13:08:53

16      A  They go to some office where they have a           13:08:56

17  desk and a chair and where they could, you know,          13:08:59

18  write and not be disturbed I guess.                       13:09:02

19      Q  So they write it out based on what they            13:09:05

20  had learned from their interview; is that right?          13:09:09

21      MR. BRENER:  Objection to form and                    13:09:12

22  foundation.                                               13:09:13

23      A  You know, the state's attorney is writing          13:09:16

24  out the statement.  Why he -- what he writes down         13:09:19

| | | |
|---|---|---|
| 1 | is what he writes down.  I'm assuming it's from | 13:09:21 |
| 2 | the interview he conducted, but I don't know why | 13:09:24 |
| 3 | he'd write anything else. | 13:09:28 |
| 4 | Q  Was there a separate room where -- strike | 13:09:29 |
| 5 | that. | 13:09:33 |
| 6 | Would the state's attorneys write out the | 13:09:33 |
| 7 | handwritten statement right there in front of the | 13:09:37 |
| 8 | witness? | 13:09:40 |
| 9 | MR. BRENER:  Objection, foundation. | 13:09:42 |
| 10 | A  I don't believe so. | 13:09:45 |
| 11 | Q  Was there a particular office -- strike | 13:09:46 |
| 12 | that. | 13:09:48 |
| 13 | What place was used by the state's | 13:09:48 |
| 14 | attorneys to write out the statements in Area 5? | 13:09:51 |
| 15 | MR. BRENER:  Asked and answered. | 13:09:54 |
| 16 | A  Whatever office was convenient. | 13:09:56 |
| 17 | Q  How long would it usually take? | 13:09:57 |
| 18 | MS. BARBER:  Objection, form, foundation. | 13:09:59 |
| 19 | A  It depends how long the statement is. | 13:10:03 |
| 20 | Q  Would they ever consult with the detective | 13:10:05 |
| 21 | on the case during that process of writing out the | 13:10:07 |
| 22 | handwritten statement? | 13:10:11 |
| 23 | A  No. | 13:10:12 |
| 24 | Q  They do that entirely on their own? | 13:10:12 |

| | | |
|---|---|---|
| 1 | A  Again, I'm assuming.  I'm not watching | 13:10:18 |
| 2 | him.  I don't know if he makes a phone call or | 13:10:20 |
| 3 | anything, but I assume he does it on his own. | 13:10:22 |
| 4 | Q  Were there cases where you had multiple | 13:10:24 |
| 5 | state's attorneys assigned to the case to come out | 13:10:27 |
| 6 | to the station? | 13:10:29 |
| 7 | MS. BARBER:  Objection, foundation. | 13:10:30 |
| 8 | A  Has it happened?  Yes. | 13:10:36 |
| 9 | Q  In this case, for example, looking at the | 13:10:37 |
| 10 | cleared closed report, you probably saw there are | 13:10:40 |
| 11 | multiple suspects and there are multiple state's | 13:10:43 |
| 12 | attorneys who came out, right? | 13:10:46 |
| 13 | A  Yes. | 13:10:47 |
| 14 | Q  Nothing about seeing that in the cleared | 13:10:48 |
| 15 | closed report was unusual to you, was it? | 13:10:50 |
| 16 | MS. BARBER:  Form. | 13:10:52 |
| 17 | A  No, because that's what happened. | 13:10:55 |
| 18 | Q  When multiple state's attorneys come out | 13:10:56 |
| 19 | on a case, would they ever meet with each other | 13:10:59 |
| 20 | and consult before going back -- strike that. | 13:11:04 |
| 21 | When you had multiple state's attorneys | 13:11:08 |
| 22 | involved in a case, would they meet with each | 13:11:11 |
| 23 | other and discuss while they were preparing the | 13:11:13 |
| 24 | handwritten statements? | 13:11:16 |

| | | |
|---|---|---|
| 1 | MR. BRENER:  Form and foundation. | 13:11:18 |
| 2 | A  I don't know. | 13:11:20 |
| 3 | Q  When you had multiple state's attorneys on | 13:11:20 |
| 4 | a case, would they usually sit together? | 13:11:22 |
| 5 | A  I imagine -- | 13:11:28 |
| 6 | MS. BARBER:  Form. | 13:11:33 |
| 7 | A  -- we have multiple state's attorneys | 13:11:34 |
| 8 | they're doing something.  I wouldn't say they're | 13:11:37 |
| 9 | sitting together all the time.  Did they confer | 13:11:39 |
| 10 | with each other?  You have to ask them.  I don't | 13:11:40 |
| 11 | recall. | 13:11:42 |
| 12 | Q  When you had multiple state's attorneys on | 13:11:42 |
| 13 | a case, would they typically sit out in the open | 13:11:45 |
| 14 | area or would they be in some room in Area 5? | 13:11:47 |
| 15 | MS. BARBER:  Form, foundation. | 13:11:50 |
| 16 | MR. BRENER:  Join. | 13:11:52 |
| 17 | A  It wasn't that often.  I don't recall.  If | 13:11:54 |
| 18 | there's a room in back, they might sit back there. | 13:11:58 |
| 19 | If all the offices were busy, they'd sit on the | 13:12:02 |
| 20 | floor. | 13:12:05 |
| 21 | Q  When there were multiple of them, wherever | 13:12:05 |
| 22 | they were sitting, whether it was in a room or in | 13:12:09 |
| 23 | the open area, would they typically sit together? | 13:12:10 |
| 24 | MR. BURNS:  Objection, asked and answered, | 13:12:11 |

| | | |
|---|---|---|
| 1 | form, foundation. | 13:12:13 |
| 2 | MS. BARBER:  Form. | 13:12:15 |
| 3 | A  I don't recall where they sat. | 13:12:17 |
| 4 | Q  Ever see -- strike that. | 13:12:19 |
| 5 | MS. GOLDEN:  I'm going to have a belated | 13:12:26 |
| 6 | objection to foundation to the question because he | 13:12:28 |
| 7 | said he didn't recall them sitting together. | 13:12:30 |
| 8 | Q  I want to go back to the subject of your | 13:13:36 |
| 9 | involvement in the Soto homicide investigation, | 13:13:38 |
| 10 | okay? | 13:13:41 |
| 11 | A  Okay. | 13:13:41 |
| 12 | Q  You told me yesterday about your | 13:13:42 |
| 13 | involvement based on your review of documents.  I | 13:13:45 |
| 14 | want to ask you about specific areas which you may | 13:13:49 |
| 15 | or may not have been involved in and basically | 13:13:53 |
| 16 | just tell me if you had any involvement, as far as | 13:13:54 |
| 17 | you know, okay? | 13:13:56 |
| 18 | A  Sure. | 13:13:56 |
| 19 | Q  Did you during the course of the Soto | 13:13:57 |
| 20 | homicide investigation go to the crime scene? | 13:14:00 |
| 21 | A  No. | 13:14:03 |
| 22 | Q  Did you go to the home of Adriana Mejia? | 13:14:03 |
| 23 | A  No. | 13:14:06 |
| 24 | Q  Did you go to the home of Arturo Reyes? | 13:14:07 |

| | | |
|---|---|---|
| 1 | A  No. | 13:14:10 |
| 2 | Q  Did you go to the home of Gabriel Solache? | 13:14:10 |
| 3 | A  No. | 13:14:14 |
| 4 | Q  Did you do any investigation into the | 13:14:14 |
| 5 | alibis of Arturo Reyes or Gabriel Solache? | 13:14:18 |
| 6 | A  No. | 13:14:23 |
| 7 | Q  Did you inspect the vehicle that was | 13:14:23 |
| 8 | believed to have been used in the crime? | 13:14:28 |
| 9 | A  I don't recall inspecting them.  We called | 13:14:32 |
| 10 | the crime lab out to process it.  I don't know who | 13:14:35 |
| 11 | made that call.  I know I made out the tow report | 13:14:39 |
| 12 | to get it out of the garage in Area 5 to be towed | 13:14:43 |
| 13 | to the pound. | 13:14:47 |
| 14 | Q  That was the question I had for you. | 13:14:48 |
| 15 | What was -- the purpose of the tow report was to | 13:14:50 |
| 16 | get the car moved to the -- to where? | 13:14:53 |
| 17 | A  The car -- in Area 5, there used to be | 13:14:55 |
| 18 | motor maintenance and for whatever reason they're | 13:15:02 |
| 19 | not there.  So you have two open bins that aren't | 13:15:07 |
| 20 | closed in the garage.  The car was brought by | 13:15:11 |
| 21 | somebody into the garage where the crime lab came | 13:15:15 |
| 22 | out and processed it.  What they did I'm not | 13:15:20 |
| 23 | exactly sure.  Once it's done we have to make out | 13:15:23 |
| 24 | a tow report to show that the car was towed from | 13:15:27 |

1    there, you know, from the garage to whatever pound          13:15:30

2    it was going to.                                            13:15:33

3       Q  So -- strike that.                                    13:15:34

4          When the evidence technicians did their              13:15:38

5    photography on the car, that was done at Area 5?            13:15:42

6          MS. GOLDEN:  Foundation.                             13:15:45

7       A  I don't know.                                         13:15:46

8       Q  And the tow report was for purposes of               13:15:48

9    getting the car taken from Area 5 to the tow lot;           13:15:52

10   is that right?                                              13:15:55

11      A  To the impound lot, yes.                              13:15:55

12      Q  And as far as you remember -- strike that.            13:15:57

13         As you sit here today, you don't remember            13:16:00

14   inspecting the car yourself physically; is that             13:16:02

15   right?                                                      13:16:05

16         MS. GOLDEN:  Asked and answered.                     13:16:05

17      A  That's correct.                                       13:16:06

18      Q  Did you do any investigation into the                13:16:07

19   phone calls that were believed to have been part            13:16:11

20   of the process in which the crime was committed?            13:16:14

21      A  I don't believe so, no.                               13:16:17

22      Q  Did you conduct any polygraph exams?                  13:16:19

23      A  No.                                                   13:16:24

24      Q  In 1998 what was the process for having               13:16:24

| | | |
|---|---|---|
| 1 | polygraph exams conducted? | 13:16:31 |
| 2 | MS. BARBER:  Objection, form, foundation. | 13:16:33 |
| 3 | A  I'm not sure exactly in 1998 where | 13:16:42 |
| 4 | polygraph offices were.  Was it at 11th and State? | 13:16:45 |
| 5 | Was that gone already?  Did we have the new | 13:16:51 |
| 6 | headquarters?  They were then at -- on 39th | 13:16:55 |
| 7 | Street.  Then they moved over to Homewood Square. | 13:17:00 |
| 8 | Where the polygraph was in 1998, I don't know. | 13:17:05 |
| 9 | Q  It wasn't at Area 5? | 13:17:07 |
| 10 | A  No, we didn't have a polygraph office | 13:17:09 |
| 11 | there. | 13:17:11 |
| 12 | Q  If you were going to do a polygraph, did | 13:17:11 |
| 13 | you have to go off site? | 13:17:13 |
| 14 | A  Usually, yes, but I know the county -- | 13:17:15 |
| 15 | some guys -- and I don't know when that started | 13:17:23 |
| 16 | that a mobile polygraph unit would come in.  I'm | 13:17:27 |
| 17 | not sure when that started.  I don't know who did | 13:17:30 |
| 18 | those. | 13:17:33 |
| 19 | Q  If a detective wanted to do a polygraph | 13:17:33 |
| 20 | and send the individual off site to do that, would | 13:17:38 |
| 21 | the detectives take them or would they have a beat | 13:17:41 |
| 22 | cop or somebody else? | 13:17:44 |
| 23 | A  Usually the detective would take them. | 13:17:46 |
| 24 | Q  What was the purpose of polygraph exams in | 13:17:48 |

1    the course of homicide investigations?                13:17:52

2        A  It was a tool to try to determine the          13:17:55

3    truth.                                                13:18:02

4        Q  So detectives used it to assess whether        13:18:08

5    somebody was being truthful or not; is that right?    13:18:12

6            MS. GOLDEN:  Asked and answered.              13:18:15

7        A  Yes.                                            13:18:17

8        Q  Could it be used in court?                      13:18:17

9        A  No.                                             13:18:20

10           MS. BARBER:  Objection, foundation.            13:18:20

11       Q  Why not?                                        13:18:23

12           MS. BARBER:  Objection, foundation.            13:18:23

13       A  I'm not a lawyer.  I'm not sure exactly         13:18:24

14   why.                                                  13:18:27

15       Q  Did you believe in the usefulness of           13:18:27

16   polygraph results?                                    13:18:31

17       A  Were they useful?  Yes.  Are they              13:18:32

18   infallible?  No.                                      13:18:37

19       Q  Did you do any work in the investigation       13:18:38

20   to search for Adriana Mejia's medical records?        13:18:44

21       A  I don't believe so, no.                         13:18:50

22       Q  Did you conduct any interview of Rosauro       13:18:52

23   Mejia?                                                13:18:58

24           MS. BARBER:  Asked and answered.               13:18:59

| | | |
|---|---|---|
| 1 | A   No.  The only interviews I recall doing | 13:19:01 |
| 2 | were of Mrs. Mejia and Miguel Reyes. | 13:19:04 |
| 3 | Q  Do you recall whether Mr. Mejia -- strike | 13:19:10 |
| 4 | that. | 13:19:12 |
| 5 | Do you recall whether Mr. Rosauro Mejia | 13:19:12 |
| 6 | was at the station when you participated in the | 13:19:16 |
| 7 | investigation on April 4th? | 13:19:18 |
| 8 | A  I couldn't tell you.  I don't know. | 13:19:20 |
| 9 | Q  Do you know who conducted interrogations | 13:19:21 |
| 10 | of Rosauro Mejia? | 13:19:24 |
| 11 | MS. BARBER:  Objection, form, foundation. | 13:19:26 |
| 12 | A  You know, I don't know if he was | 13:19:30 |
| 13 | interrogated, interviewed.  I don't know by who. | 13:19:32 |
| 14 | Q  Did you learn anything about any | 13:19:34 |
| 15 | interviews of Rosauro Mejia? | 13:19:36 |
| 16 | MS. GOLDEN:  Form. | 13:19:40 |
| 17 | MS. BARBER:  Foundation. | 13:19:41 |
| 18 | A  I believe it's in -- it's in one of the | 13:19:43 |
| 19 | reports. | 13:19:45 |
| 20 | Q  Did you learn anything about what happened | 13:19:46 |
| 21 | during the course of those interviews back in the | 13:19:50 |
| 22 | time of this case in 1998 or is it something you | 13:19:53 |
| 23 | just learned about when you reviewed reports in | 13:19:55 |
| 24 | preparation for this deposition? | 13:19:59 |

1        MS. GOLDEN:  Form.                           13:20:00

2    A  It's basically just from reviewing the       13:20:01

3  reports.  I don't remember much of this           13:20:03

4  investigation at all.                             13:20:06

5    Q  Did you investigate Rosauro Mejia's alibi?   13:20:07

6    A  No.                                           13:20:11

7    Q  At some point did you become aware that      13:20:11

8  Mr. Rosauro Mejia has alleged that he was         13:20:13

9  physically abused?                                13:20:17

10    A  I never talked to Mr. Mejia, so I don't     13:20:18

11  know what he alleged.                            13:20:23

12    Q  Had you ever heard anyone just told you     13:20:24

13  just now?                                        13:20:27

14    A  That's the first I heard of it.             13:20:27

15    Q  But you understand that Rosauro Mejia was   13:20:30

16  not charged with any crime in this case, correct? 13:20:45

17    A  Yes, there was only three people charged I  13:20:47

18  believe.                                         13:20:49

19    Q  And the police ultimately determined that  13:20:49

20  he was innocent, correct?                        13:20:51

21        MS. GOLDEN:  Form and foundation.          13:20:53

22    A  You know, I'd have to look.  I don't think  13:20:57

23  he had involvement in it.                        13:20:59

24    Q  When you hear that somebody who is          13:21:00

```
1   determined by the police to be innocent and          13:21:07
2   released, alleges physical abuse, does that have      13:21:10
3   any impact on you in terms of your views about        13:21:13
4   whether Mr. Guevara might have abused people at       13:21:16
5   Area 5?                                               13:21:22
6       MS. BARBER:  Form.                                13:21:23
7       A  So let me ask you, if somebody accused         13:21:25
8   misconduct in the police station, does that make     13:21:30
9   me think that Reynaldo Guevara abused people?  It    13:21:34
10  would -- no.                                          13:21:39
11      Q  The fact that Mr. Rosauro Mejia was            13:21:40
12  released and deemed innocent by the police and yet   13:21:43
13  is alleging physical abuse, does that matter to      13:21:47
14  you at all in terms of assessing whether Guevara     13:21:50
15  was actually doing these things he's accused of?     13:21:53
16      MS. BARBER:  Form.                                13:21:56
17      MS. GOLDEN:  Foundation.                          13:21:57
18      A  Again, I don't know what Mr. Mejia is          13:21:58
19  saying.  I have no idea.  So I couldn't even begin   13:22:00
20  to guess.                                             13:22:03
21      Q  Do you have any opinion about whether          13:22:04
22  Detective Guevara physically abused any suspects     13:22:06
23  at Area 5 during the course of his career?           13:22:11
24      A  I can only say I never seen Guevara abuse      13:22:14
```

| | | |
|---|---|---|
| 1 | anybody. | 13:22:18 |
| 2 |    Q  Did you say -- | 13:22:19 |
| 3 |    MS. GOLDEN:  I'm sorry.  You cut him off. | 13:22:20 |
| 4 |    MR. SWAMINATHAN:  Go ahead. | 13:22:22 |
| 5 |    MS. GOLDEN:  You have a habit of starting | 13:22:23 |
| 6 | another question real quick, and I'm not sure he's | 13:22:25 |
| 7 | done.  Then I interrupt and then -- could you read | 13:22:29 |
| 8 | the last question he asked back and make sure that | 13:22:32 |
| 9 | your answer is complete. | 13:22:32 |
| 10 |           (Record read back by the | 13:22:32 |
| 11 |           reporter.) | 13:22:32 |
| 12 |    A  Because of that, I can't say I don't have | 13:22:54 |
| 13 | an opinion why people are accusing him are | 13:22:58 |
| 14 | truthful or not. | 13:23:01 |
| 15 |    Q  Okay.  Ms. Guadalupe Mejia, did you | 13:23:02 |
| 16 | conduct any interview of her? | 13:23:09 |
| 17 |    A  No. | 13:23:10 |
| 18 |    Q  Did you have any interactions with | 13:23:11 |
| 19 | Guadalupe Mejia during the course of the Soto | 13:23:13 |
| 20 | investigation? | 13:23:16 |
| 21 |    A  Not to my knowledge, no. | 13:23:16 |
| 22 |    Q  Do you know who did interview Guadalupe | 13:23:18 |
| 23 | Mejia? | 13:23:22 |
| 24 |    A  I have no idea. | 13:23:22 |

|   |   |   |
|---|---|---|
| 1 | Q  Did you interview Jorge Mejia? | 13:23:24 |
| 2 | A  No.  Like I say, I only recall | 13:23:27 |
| 3 | interviewing two people. | 13:23:29 |
| 4 | Q  Did you have any interactions with Jorge | 13:23:30 |
| 5 | Mejia? | 13:23:33 |
| 6 | A  Not that I recall. | 13:23:33 |
| 7 | Q  Do you know who did interview Jorge Mejia? | 13:23:34 |
| 8 | A  Again, I have no idea. | 13:23:37 |
| 9 | Q  Did you interview Manuel Mejia? | 13:23:39 |
| 10 | A  I only interviewed two people.  I mean, I | 13:23:41 |
| 11 | can only tell you this a number of times.  I | 13:23:45 |
| 12 | interviewed Mrs. Mejia and I interviewed Reyes. | 13:23:47 |
| 13 | After that, I didn't interview anybody else. | 13:23:53 |
| 14 | Q  I understand.  I'm going to go through | 13:23:55 |
| 15 | these individuals -- | 13:23:57 |
| 16 | A  Just want to let you know. | 13:23:58 |
| 17 | Q  Just say yes or no.  I completely | 13:24:00 |
| 18 | understand.  For my purposes I have to go through | 13:24:02 |
| 19 | and get clean answers on each of these | 13:24:04 |
| 20 | individuals, okay? | 13:24:07 |
| 21 | A  Okay. | 13:24:07 |
| 22 | Q  And I fully appreciate -- I can anticipate | 13:24:07 |
| 23 | what your answer is going to be, okay? | 13:24:09 |
| 24 | MS. GOLDEN:  No, you don't. | 13:24:11 |

```
1        MR. SWAMINATHAN:  Yes, I do.                    13:24:13

2        MS. GOLDEN:  You may want to --                 13:24:14

3        MR. SWAMINATHAN:  Let me make a record on       13:24:15

4   this.                                                13:24:18

5        MS. GOLDEN:  You may want to --                 13:24:18

6        MR. SWAMINATHAN:  Let me make a record on       13:24:18

7   this because you made that one.                      13:24:18

8        I had been a participant in a trial where       13:24:20

9   a number of police officer detectives came to the   13:24:23

10  trial and testified about all kinds of detailed     13:24:26

11  knowledge about homicide investigation and when     13:24:30

12  certain things happened and who participated in     13:24:33

13  those things.  After each of those detectives gave  13:24:35

14  depositions in which they specifically said I have  13:24:38

15  no memory at all about any of this and I reviewed   13:24:40

16  all the records and I have no memory of being       13:24:43

17  involved in this investigation and I don't          13:24:45

18  remember who talked to who and what interviews      13:24:47

19  were conducted and who conducted what other         13:24:51

20  interviews and yet they manage to get to trial and  13:24:53

21  remember it all.  So you better believe I do need   13:24:56

22  to get clean answers with regard to each of these   13:24:57

23  individuals.  I'm making my record on why I'm       13:25:00

24  doing it.  And the case might sound familiar to     13:25:02
```

1   you what I'm referring to.                            13:25:05

2       MS. BARBER:  Just relax a little bit,             13:25:06

3   please.                                               13:25:08

4       Q   Now, Manuel Mejia, did you ever interview     13:25:11

5   Manuel Mejia as part of the Soto --                   13:25:16

6       MS. GOLDEN:  Foundation as to his                 13:25:18

7   identity.                                             13:25:19

8       A   I don't think I had any involvement with      13:25:20

9   Manuel Mejia.                                         13:25:24

10      Q   Do you know who interviewed Manuel Mejia?     13:25:25

11      A   I have no idea.                               13:25:28

12      Q   Did you interview Leobardo Mejia?             13:25:29

13      A   I did not.                                    13:25:32

14      Q   Did you -- strike that.                       13:25:33

15          Do you know who interviewed Leobardo          13:25:33

16  Mejia, if anyone?                                     13:25:36

17      A   I have no idea.                               13:25:37

18      Q   Did you interview Norma Salazar?              13:25:38

19      A   No.                                           13:25:47

20      Q   Did you have any interactions with a woman    13:25:48

21  named Norma Salazar as part of the Soto homicide      13:25:50

22  investigation?                                        13:25:54

23      A   No, I didn't.                                 13:25:54

24      Q   Do you know who did interview Norma           13:25:55

1    Salazar?                                              13:25:59

2        A  Based on reports I believe that was            13:25:59

3    Detective McDonald.                                   13:26:01

4        Q  Is that based exclusively on the reports?      13:26:02

5        A  Yeah, I wasn't there that day, so it's         13:26:06

6    just on the report.                                   13:26:08

7        Q  Do you know whether -- strike that.            13:26:09

8           Based on any personal knowledge, do you        13:26:11

9    know whether Norma Salazar was ever taken into        13:26:13

10   custody?                                              13:26:16

11       A  Personal knowledge, no.                        13:26:17

12       Q  Did you make any attempts to locate            13:26:19

13   Ms. Salazar?                                          13:26:27

14       A  No.                                            13:26:27

15       Q  Did you participate in any investigation       13:26:28

16   of Ms. Salazar as a potential suspect in the case?    13:26:30

17       A  No.  When she came up, I believe I was         13:26:36

18   off.  I wasn't working.  And by the time I got        13:26:41

19   back, she was already cleared, I believe.             13:26:44

20       Q  Did you interview any members of the Soto      13:26:46

21   family?                                               13:28:10

22       A  To the best of my recollection, no.            13:28:11

23       Q  Were you aware at the time whether any         13:28:14

24   members of the Soto family were at the station at     13:28:17

1  that time?                                              13:28:21

2      A  I have no idea.                                  13:28:21

3      Q  Did you interview any members of the             13:28:23

4  Aranda family?                                          13:28:28

5      A  I don't think so.  I don't know who they         13:28:31

6  are.                                                    13:28:33

7      Q  At the time you were participating in the        13:28:33

8  investigation on April 4th, were there any             13:28:36

9  Aranda's who were at the station?                       13:28:39

10     A  As I said, I don't know who they are, so I       13:28:40

11 couldn't say.                                           13:28:43

12     Q  Do you know whether any members of the           13:28:43

13 Soto family were ever considered possible suspects      13:28:47

14 in the Soto murder?                                     13:28:51

15     A  I have no idea.                                  13:28:53

16     Q  If they were ever treated as suspects in        13:28:55

17 the case, would you expect that to be documented        13:28:58

18 in the police file?                                     13:29:01

19     MS. BARBER:  Objection, form, foundation.          13:29:02

20     A  I'd have to know who considered them and        13:29:07

21 why before I can answer that.                           13:29:09

22     Q  Anytime somebody was treated as a suspect       13:29:10

23 in a case, that's information that was supposed to       13:29:13

24 be documented; is that right?                           13:29:16

| | | |
|---|---|---|
| 1 | MS. BARBER:  Objection, form. | 13:29:18 |
| 2 | A  I guess you get on the scene and there's a | 13:29:24 |
| 3 | homicide, at this point you have not determined | 13:29:27 |
| 4 | who's not a suspect.  Everybody is a suspect.  And | 13:29:32 |
| 5 | obviously that narrows down quickly.  So at any | 13:29:35 |
| 6 | given time when they interviewed him, they want to | 13:29:41 |
| 7 | know their involvement.  I can't say who | 13:29:44 |
| 8 | considered him a suspect, if anybody did consider | 13:29:46 |
| 9 | him a suspect. | 13:29:49 |
| 10 | Q  If they were considered a suspect by | 13:29:50 |
| 11 | detectives on the case, would you expect it to be | 13:29:54 |
| 12 | documented? | 13:29:57 |
| 13 | MS. GOLDEN:  Asked and answered. | 13:29:57 |
| 14 | A  Again, everybody is considered a suspect. | 13:30:01 |
| 15 | And then as the interviews go on, you know, you | 13:30:06 |
| 16 | make your determination if they're not or if they | 13:30:10 |
| 17 | are.  Were there documentation of their interviews | 13:30:13 |
| 18 | in the file?  I believe so.  And that could | 13:30:20 |
| 19 | suffice for the documentation of why they didn't | 13:30:23 |
| 20 | consider him a suspect or if they did, what | 13:30:26 |
| 21 | happened. | 13:30:29 |
| 22 | Q  If I understand correctly, in some ways | 13:30:29 |
| 23 | everybody is a potential suspect.  So you don't | 13:30:31 |
| 24 | have to document every single person who ever had | 13:30:34 |

| | | |
|---|---|---|
| 1 | involvement in the investigation; are we on the | 13:30:37 |
| 2 | same page so far? | 13:30:40 |
| 3 |     MS. GOLDEN:  Form. | 13:30:41 |
| 4 | A  Yeah, okay. | 13:30:43 |
| 5 | Q  At what point -- | 13:30:43 |
| 6 |     MS. BARBER:  I'm sorry -- | 13:30:46 |
| 7 | Q  -- does it rise to the level that somebody | 13:30:47 |
| 8 | has to be documented? | 13:30:49 |
| 9 |     MS. BARBER:  Can you read back the -- the | 13:30:50 |
| 10 | question before the last one. | 13:30:53 |
| 11 |         (Record read back by the | 13:30:53 |
| 12 |         reporter.) | 13:31:16 |
| 13 |     MS. GOLDEN:  Was that the question? | 13:31:16 |
| 14 |     MR. SWAMINATHAN:  No, she asked for the | 13:31:17 |
| 15 | question before. | 13:31:18 |
| 16 |     MS. BARBER:  Right.  And I believe that | 13:31:19 |
| 17 | that was answered and then there's another | 13:31:20 |
| 18 | outstanding question. | 13:31:22 |
| 19 |     MR. SWAMINATHAN:  Yes, and probably has no | 13:31:24 |
| 20 | idea what the question is anymore, right? | 13:31:26 |
| 21 |     THE WITNESS:  Again, I -- I have an idea, | 13:31:28 |
| 22 | but I want to make sure I got it right. | 13:31:32 |
| 23 | Q  I understand. | 13:31:34 |
| 24 |     At what point does it reach the level that | 13:31:35 |

| | | |
|---|---|---|
| 1 | a person now needs to be documented as a suspect | 13:31:38 |
| 2 | in the case? | 13:31:42 |
| 3 |     MS. BARBER:  Objection, form, foundation. | 13:31:42 |
| 4 |   A  That depends on the case as it goes and | 13:31:46 |
| 5 | your investigation on how the investigation | 13:31:49 |
| 6 | proceeds and that determines it. | 13:31:52 |
| 7 |   Q  If you bring somebody into the station and | 13:31:54 |
| 8 | you question them about the crime and whether they | 13:31:56 |
| 9 | were involved in the crime, does that reach a | 13:32:00 |
| 10 | level that should be documented? | 13:32:03 |
| 11 |     MS. BARBER:  Objection, form, foundation, | 13:32:05 |
| 12 | incomplete hypothetical. | 13:32:07 |
| 13 |   A  If you interview them, the interview | 13:32:11 |
| 14 | should be documented somehow. | 13:32:16 |
| 15 |   Q  And if you interview them and question | 13:32:17 |
| 16 | them about their knowledge of the crime, should | 13:32:20 |
| 17 | that be a apparent in the records that you've | 13:32:22 |
| 18 | interviewed them and questioned them about the | 13:32:25 |
| 19 | crime? | 13:32:27 |
| 20 |     MS. BARBER:  Objection, form, foundation, | 13:32:28 |
| 21 | incomplete hypothetical. | 13:32:31 |
| 22 |   A  Again, it's the interview.  The interview | 13:32:33 |
| 23 | should be I would think documented, especially | 13:32:36 |
| 24 | with family members. | 13:32:39 |

1      Q   If an individual is accused of committing          13:32:40

2   the crime or knowing who committed the crime, is         13:32:43

3   that information -- is that individual somebody           13:32:47

4   who should be documented in the file?                    13:32:49

5        MS. BARBER:  Objection, form, foundation,           13:32:51

6   incomplete hypothetical.                                 13:32:53

7      A   I would assume that if you're accusing            13:32:55

8   somebody of a crime you have a reason to believe         13:32:58

9   why they some involvement.  That should be               13:33:01

10  documented.                                              13:33:05

11     Q   Excuse me.                                        13:33:05

12       Did you consider any members of the Aranda          13:33:11

13  family to be suspects in the Soto investigation?         13:33:19

14     A   Did I?                                            13:33:23

15     Q   Yes.                                              13:33:23

16     A   Like I said, I don't know who they were.          13:33:24

17     Q   Do you know if any members of the Aranda          13:33:26

18  family were considered suspects in the Soto              13:33:29

19  investigation?                                           13:33:32

20     A   I have no idea.                                   13:33:32

21     Q   There was ultimately a criminal trial,           13:33:34

22  criminal trials in this case, you're aware of            13:33:53

23  that?                                                    13:33:57

24     A   Yes.                                              13:33:57

| | | |
|---|---|---|
| 1 | Q  Did you have any involvement in the trial | 13:33:58 |
| 2 | in this case? | 13:34:03 |
| 3 | A  I don't believe I testified at all, if | 13:34:05 |
| 4 | that's what you're asking. | 13:34:07 |
| 5 | Q  Did you meet with any state's attorneys in | 13:34:08 |
| 6 | preparation for trial? | 13:34:12 |
| 7 | A  I know one time I can remember going down | 13:34:13 |
| 8 | to 26th Street.  We met with the state's attorney. | 13:34:17 |
| 9 | Q  This was in advance of trial? | 13:34:20 |
| 10 | A  Yes. | 13:34:23 |
| 11 | Q  And was it basically in preparation -- | 13:34:23 |
| 12 | MS. GOLDEN:  Belated objection to form. | 13:34:27 |
| 13 | Q  Was this in preparation for trial? | 13:34:29 |
| 14 | A  I don't remember exactly, but I would | 13:34:33 |
| 15 | presume so. | 13:34:37 |
| 16 | Q  Who went to meet with the state's | 13:34:38 |
| 17 | attorney? | 13:34:42 |
| 18 | A  I don't recall everybody who was there. | 13:34:42 |
| 19 | But I believe it was everybody who was on the | 13:34:45 |
| 20 | report being assigned was requested. | 13:34:48 |
| 21 | Q  You all went together? | 13:34:50 |
| 22 | A  If I was off, I went by myself.  If I was | 13:34:53 |
| 23 | working, I went with -- I would have went with | 13:34:59 |
| 24 | Dickinson and/or McDonald. | 13:35:02 |

| | | |
|---|---|---|
| 1 | Q  The meeting itself, did everybody meet | 13:35:05 |
| 2 | together? | 13:35:08 |
| 3 | A  We went to the state's attorney room. | 13:35:08 |
| 4 | Q  You all met together with the state's | 13:35:11 |
| 5 | attorney? | 13:35:14 |
| 6 | A  Yes. | 13:35:14 |
| 7 | Q  Were you meeting with the trial | 13:35:14 |
| 8 | prosecutor? | 13:35:16 |
| 9 | A  I believe she was. | 13:35:17 |
| 10 | Q  Do you remember her name? | 13:35:18 |
| 11 | A  I just remember Mercedes.  If I seen her, | 13:35:20 |
| 12 | I'd know her but... | 13:35:29 |
| 13 | Q  The folks who went down there you said it | 13:35:30 |
| 14 | was everybody who was on the report.  That | 13:35:33 |
| 15 | obviously included you.  Did it also -- go ahead? | 13:35:34 |
| 16 | A  I don't know everybody who was there. | 13:35:37 |
| 17 | Q  Did it include Dickinson? | 13:35:40 |
| 18 | A  I can't remember if he was there or not. | 13:35:42 |
| 19 | Q  McDonald? | 13:35:44 |
| 20 | A  I can't remember if he was there or not. | 13:35:45 |
| 21 | Q  Guevara? | 13:35:47 |
| 22 | A  I can't -- I don't remember who was there. | 13:35:48 |
| 23 | There was a few people there.  I don't remember | 13:35:50 |
| 24 | the exact identities of everybody.  I can't say. | 13:35:52 |

| | | |
|---|---|---|
| 1 | Q  Do you remember whether Trevino was there? | 13:35:55 |
| 2 | A  Again, I don't remember exactly who was | 13:35:58 |
| 3 | there.  I'm sure he would have been subpoenaed, | 13:36:01 |
| 4 | but I don't know if he was there. | 13:36:03 |
| 5 | Q  How many people were at that meeting from | 13:36:05 |
| 6 | the police department? | 13:36:07 |
| 7 | A  Like I say, if I knew how many was there, | 13:36:07 |
| 8 | I probably would remember exactly who was there. | 13:36:11 |
| 9 | There was a group.  I couldn't tell you how many. | 13:36:14 |
| 10 | Q  What happened during the course of that | 13:36:16 |
| 11 | meeting? | 13:36:18 |
| 12 | A  Basically -- truthfully, the only thing I | 13:36:18 |
| 13 | remember of that meeting is I found out about the | 13:36:21 |
| 14 | Vana {phonetic} convention.  That was -- I don't | 13:36:29 |
| 15 | recall ever being trained on that, and that's when | 13:36:31 |
| 16 | I heard about it and I was bit puzzled. | 13:36:33 |
| 17 | Q  A meeting like that with the state's | 13:36:36 |
| 18 | attorney, was that common in preparation for | 13:36:39 |
| 19 | trials? | 13:36:41 |
| 20 | MS. GOLDEN:  Hold on a second.  Foundation | 13:36:41 |
| 21 | for the question. | 13:36:44 |
| 22 | A  Yeah, meet with the state's attorney | 13:36:47 |
| 23 | before trials. | 13:36:49 |
| 24 | Q  And during the course of that -- I | 13:36:50 |

1    understand you don't remember exactly what          13:36:52

2    happened in that particular meeting.  I want to      13:36:54

3    ask you more generally what typically goes on in     13:36:56

4    this pretrial meeting where the detectives           13:36:59

5    involved in the case come and meet with the          13:37:02

6    state's attorney.  Are you with me?                  13:37:04

7        A   Yeah.  She would ask us about the case.  I   13:37:06

8    should say she or he would ask us about the case     13:37:11

9    and, you know, we'd discuss it.                      13:37:13

10       Q   When you say asked about the case, would     13:37:15

11   you basically walk through what all happened         13:37:20

12   during the investigation?                            13:37:22

13       A   If it was early on preliminary, yes.  It     13:37:23

14   wouldn't be much more than that.                     13:37:26

15       Q   Would you bring documents?                   13:37:28

16       A   If she subpoenaed the documents, they        13:37:30

17   would either be delivered to her or we'd bring       13:37:34

18   them down.                                           13:37:37

19       Q   And what documents would you bring when      13:37:38

20   you were having these meetings with the state's      13:37:40

21   attorney?                                            13:37:43

22       A   She would -- the state's attorney would      13:37:43

23   usually subpoena the investigative file and that     13:37:46

24   would be sent down to her.  If let's say -- if she   13:37:49

| | | |
|---|---|---|
| 1 | didn't have time -- if it was a rush job shall we | 13:37:57 |
| 2 | say and there was a subpoena, we'd make a copy of | 13:38:01 |
| 3 | the file for her and bring it there. | 13:38:04 |
| 4 | Q  When you say -- so if the subpoena was | 13:38:06 |
| 5 | issued and you said it would be sent to the | 13:38:10 |
| 6 | state's attorney, who would -- | 13:38:13 |
| 7 | A  The state's attorney would issue the | 13:38:14 |
| 8 | subpoena. | 13:38:15 |
| 9 | Q  Would issue the subpoena and somebody from | 13:38:16 |
| 10 | the police department would send it to the state's | 13:38:18 |
| 11 | attorney, right? | 13:38:20 |
| 12 | MS. BARBER:  Objection, form, foundation, | 13:38:21 |
| 13 | speculation. | 13:38:25 |
| 14 | A  That would be my understanding, she'd | 13:38:27 |
| 15 | subpoenaed the records division. | 13:38:29 |
| 16 | Q  Would -- the records division would have a | 13:38:30 |
| 17 | copy of the permanent retention file, correct? | 13:38:34 |
| 18 | MS. GOLDEN:  Foundation. | 13:38:38 |
| 19 | MS. BARBER:  Objection, form, foundation. | 13:38:38 |
| 20 | A  I'm not sure exactly what they have. | 13:38:40 |
| 21 | Q  Who -- when the state's attorney was | 13:38:44 |
| 22 | reaching out with a subpoena for the file, where | 13:38:46 |
| 23 | was the investigative file at the point that you | 13:38:51 |
| 24 | were in the pretrial proceedings? | 13:38:54 |

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Foundation. | 13:38:56 |
| 2 | MS. BARBER:  Form, incomplete | 13:38:57 |
| 3 | hypothetical. | 13:38:57 |
| 4 | A  It was still in Area 5. | 13:39:00 |
| 5 | Q  And then how would it get from Area 5 to | 13:39:02 |
| 6 | the state's attorney? | 13:39:04 |
| 7 | MS. GOLDEN:  Foundation. | 13:39:06 |
| 8 | MS. BARBER:  Form, incomplete | 13:39:07 |
| 9 | hypothetical. | 13:39:07 |
| 10 | A  Again, I'm not sure.  My guess is whoever | 13:39:12 |
| 11 | filled the subpoena would make copies of the | 13:39:15 |
| 12 | investigative file and ship it through police | 13:39:18 |
| 13 | mail. | 13:39:21 |
| 14 | Q  Did detectives copy -- the detectives, | 13:39:21 |
| 15 | were they involved in the process of getting the | 13:39:23 |
| 16 | investigative files copied and sent to the state's | 13:39:26 |
| 17 | attorney? | 13:39:26 |
| 18 | A  Not -- | 13:39:29 |
| 19 | MS. BARBER:  Objection, form, foundation, | 13:39:29 |
| 20 | incomplete hypothetical.  And if we could get a | 13:39:32 |
| 21 | break some time soon, that would be great. | 13:39:35 |
| 22 | A  No, it would be copied by whoever was | 13:39:40 |
| 23 | supposed to fill the subpoenas. | 13:39:45 |
| 24 | Q  That's not a detective, that's somebody | 13:39:47 |

1   else?                                                13:39:50

2        MS. BARBER:  Objection, form, foundation,       13:39:51

3   incomplete hypothetical, calls for speculation.      13:39:52

4        A  It could be a detective, but it wouldn't     13:39:58

5   be the detectives assigned to the case.              13:40:01

6        Q  You said it would not be the detective?      13:40:02

7        A  It usually wasn't.                           13:40:05

8        Q  What was the scenario you're saying in       13:40:06

9   which the detectives on the case would bring it      13:40:08

10  themselves by hand to the state's attorney?          13:40:10

11       A  If we got -- you know, that took time,       13:40:13

12  okay?  And if we're meeting tomorrow, maybe she'd    13:40:19

13  send a subpoena right to Area 5 and then it would    13:40:25

14  be done.                                             13:40:28

15       Q  If there was a request -- strike that.       13:40:28

16          If you were being -- as the detective on     13:40:31

17  the case being asked to bring it by hand to the      13:40:34

18  state's attorney, would you take the whole file or   13:40:36

19  would you take portions of the file?                 13:40:39

20       MS. BARBER:  Objection, form.                   13:40:41

21       Q  Or would it depend on what the subpoena      13:40:41

22  asked for?                                           13:40:44

23       MS. BARBER:  Objection, form, foundation,       13:40:45

24  incomplete hypothetical.                             13:40:48

| | | |
|---|---|---|
| 1 | A   The only time I would do it I'd make a | 13:40:49 |
| 2 | copy of the whole file, just bring that down. | 13:40:53 |
| 3 | Q   Did -- | 13:41:00 |
| 4 | A   Or I'd ask whoever was the record keeper, | 13:41:01 |
| 5 | whatever, to make the file, make the copy.  I | 13:41:05 |
| 6 | might not make it personally.  I'd ask them to | 13:41:08 |
| 7 | make it.  They'd give it to me, and I'd bring it | 13:41:11 |
| 8 | down. | 13:41:13 |
| 9 | Q   Would you ever take anything less than the | 13:41:14 |
| 10 | whole file? | 13:41:16 |
| 11 | MS. GOLDEN:  Okay.  He said -- form of the | 13:41:16 |
| 12 | question. | 13:41:20 |
| 13 | A   Not that I recall. | 13:41:24 |
| 14 | Q   Do you know why you weren't called to | 13:41:25 |
| 15 | testify at the trial? | 13:41:30 |
| 16 | MS. BARBER:  Why you were not? | 13:41:32 |
| 17 | MS. GOLDEN:  Oh, why you were not? | 13:41:33 |
| 18 | MR. BRENER:  Objection to foundation. | 13:41:36 |
| 19 | A   I only have an opinion.  Nobody ever told | 13:41:41 |
| 20 | me.  But I didn't have much to do with it. | 13:41:43 |
| 21 | MR. SWAMINATHAN:  You want to take a break | 13:41:45 |
| 22 | you said? | 13:41:47 |
| 23 | MS. BARBER:  Yes, please. | 13:41:48 |
| 24 | THE VIDEOGRAPHER:  Off the record 1:41. | 13:41:49 |

| | | |
|---|---|---|
| 1 | (A short break was taken.) | 13:53:01 |
| 2 | THE VIDEOGRAPHER:  Back on the record | 13:57:09 |
| 3 | 1:57. | 13:57:13 |
| 4 | BY MR. SWAMINATHAN: | 13:57:14 |
| 5 | Q  Sir, could you pull out Exhibit No. 2, the | 13:57:14 |
| 6 | cleared and closed report? | 13:57:20 |
| 7 | A  Sure. | 13:57:22 |
| 8 | Q  Looking here at Exhibit 2, which is the | 13:57:27 |
| 9 | Area 5 supplementary report described as the | 13:57:30 |
| 10 | cleared closed report. | 13:57:35 |
| 11 | We discussed yesterday this is a document | 13:57:36 |
| 12 | you reviewed, correct? | 13:57:39 |
| 13 | A  That's correct. | 13:57:41 |
| 14 | Q  Who wrote this cleared closed report? | 13:57:42 |
| 15 | MS. BARBER:  Objection, form, foundation. | 13:57:45 |
| 16 | MS. GOLDEN:  Foundation. | 13:57:46 |
| 17 | A  I believe it was Detective Halvorsen. | 13:57:51 |
| 18 | Q  And why do you believe it was Detective | 13:57:53 |
| 19 | Halvorsen, now looking at Exhibit 2? | 13:57:59 |
| 20 | A  He's in -- at the bottom box, Box No. 93, | 13:57:59 |
| 21 | his name is there first and that's usually a sign | 13:58:03 |
| 22 | of who prepared it. | 13:58:09 |
| 23 | Q  Okay. | 13:58:11 |
| 24 | A  And on the back on the last page his name | 13:58:12 |

| | | |
|---|---|---|
| 1 | is listed first as the officer, as the detective. | 13:58:14 |
| 2 | So I'm assuming he prepared it. | 13:58:18 |
| 3 | Q   Detective Guevara's name is also written | 13:58:20 |
| 4 | on this report, correct? | 13:58:24 |
| 5 | A   That's correct. | 13:58:25 |
| 6 | Q   And it appears he also signed it, correct? | 13:58:26 |
| 7 | A   That's correct. | 13:58:28 |
| 8 | Q   So if Detective Halvorsen wrote it, what | 13:58:29 |
| 9 | is the -- what does it mean that Detective | 13:58:34 |
| 10 | Guevara's name is written in the center box of | 13:58:37 |
| 11 | Exhibit 2? | 13:58:41 |
| 12 | A   Basically they're both instrumental in | 13:58:41 |
| 13 | preparing the case report. | 13:58:46 |
| 14 | Q   And was it your understanding that | 13:58:48 |
| 15 | Detective Halvorsen and Guevara were the primary | 13:58:50 |
| 16 | assigned detectives on the Soto investigation? | 13:58:52 |
| 17 | MS. GOLDEN:  Asked and answered. | 13:58:56 |
| 18 | A   Yes, I believe they were partners. | 13:58:58 |
| 19 | Q   Can you just tell us the purpose of a | 13:59:00 |
| 20 | cleared closed report? | 13:59:05 |
| 21 | A   My belief is that it's prepared to show | 13:59:17 |
| 22 | the investigation and why the individuals were | 13:59:20 |
| 23 | charged and why the case is now cleared. | 13:59:25 |
| 24 | Q   Basically to summarize the evidence | 13:59:28 |

1    against the accused?                                    13:59:32

2        A  Yes.                                             13:59:33

3        Q  If there was exculpatory evidence that had      13:59:34

4    been developed during the course of the                13:59:39

5    investigation, was that also to be included in a       13:59:40

6    cleared closed report?                                 13:59:44

7            MS. GOLDEN:  Foundation.                        13:59:46

8        A  If that evidence was already recorded and       13:59:48

9    memorialized in a separate report, there would be      13:59:50

10   no need to.                                             13:59:53

11       Q  Okay.  So is it the case the cleared            13:59:54

12   closed report was focused on what was the               13:59:58

13   incriminated evidence that justified charges            13:59:59

14   against the individual?                                 14:00:03

15           MS. GOLDEN:  Form.                              14:00:04

16           MS. BARBER:  Misstates the witness's            14:00:04

17   testimony.                                              14:00:06

18       A  It was the investigation probably since         14:00:07

19   the last report was made.  The cleared closed          14:00:10

20   report is not a summation of a whole                    14:00:14

21   investigation.  It's just what's going on from          14:00:18

22   maybe Point B to Point C.                               14:00:22

23       Q  The end of the investigation?                    14:00:26

24       A  Yes.                                             14:00:27

1        Q   And if things had been previously                  14:00:28

2    documented in other reports, they weren't required          14:00:30

3    to be documented in the supplementary report?               14:00:33

4        A   Yes, they weren't required to be                    14:00:35

5    documented.  They might be referred to but that             14:00:37

6    would be it.                                                14:00:40

7        Q   For some of the later developments in the           14:00:41

8    course of an investigation, is the cleared closed           14:00:48

9    report sometimes the first and only place where             14:00:51

10   that information is documented?                             14:00:53

11       MS. GOLDEN:  Okay.  Just give me a second.              14:00:55

12   Foundation.                                                 14:01:02

13       A   It could be.                                        14:01:05

14       Q   If you turn to Page 6, which is RFC                 14:01:07

15   Solache-Reyes 238.  It lists personnel assigned to          14:01:19

16   the investigation, correct?                                 14:01:32

17       A   Yes.                                                14:01:33

18       Q   And you're identified as being assigned to         14:01:33

19   the investigation, correct?                                 14:01:36

20       A   That's correct.                                     14:01:37

21       Q   As were your partners at that time,                14:01:38

22   Mr. Dickinson and Mr. McDonald, correct?                    14:01:40

23       A   That's correct.                                     14:01:43

24       Q   Do you dispute anything about the fact             14:01:44

1  that this report identifies you as being one of          14:01:46

2  the personnel assigned?                                  14:01:49

3      A  No.                                               14:01:50

4      Q  Okay.  This document identifies witnesses,        14:01:50

5  including a Ms. Guadalupe Mejia.  What is supposed        14:01:57

6  to be included in the witnesses' section of this         14:02:04

7  report?                                                  14:02:06

8          MS. BARBER:  Objection, form.                    14:02:07

9      A  Witnesses.                                        14:02:12

10     Q  Throughout the investigation or just              14:02:15

11  witnesses who are going to be -- who are the             14:02:17

12  people who were involved in later steps in the          14:02:20

13  investigation that are going to be documented in         14:02:22

14  this report?                                             14:02:24

15         MS. GOLDEN:  Form.                                14:02:25

16     A  I would think witnesses that hadn't been          14:02:27

17  documented already.  If they were, they're already      14:02:29

18  documented.                                              14:02:33

19     Q  Sorry.  When you said the witnesses listed        14:02:34

20  here are the witnesses that had not been                 14:02:37

21  documented already?                                      14:02:38

22         MS. BARBER:  Objection.                           14:02:40

23     A  I can't say.                                       14:02:41

24         MS. BARBER:  Form, foundation, misstates          14:02:42

1    the witness's testimony.                              14:02:43

2        A  I can't say in this case.  I don't know if     14:02:45

3    she was documented somewhere else or not.            14:02:48

4        Q  I'm asking you in general.  What goes in       14:02:50

5    the witnesses' section?  All witnesses in the case    14:02:51

6    or witnesses that had not yet been documented?  I     14:02:53

7    just didn't understand or hear what you said          14:02:56

8    before?                                               14:02:58

9        MS. BARBER:  Objection, form, foundation,         14:02:58

10   calls for speculation.                                14:03:02

11       A  If witnesses -- I'm sorry.                      14:03:03

12       MS. BARBER:  Go ahead.                             14:03:04

13       A  If witnesses have already been documented,      14:03:05

14   there might not be a reason to put them in here.       14:03:08

15   If let's say a witness was documented earlier but      14:03:11

16   she's going to give another statement in here, in      14:03:15

17   this report, then you might list her.                 14:03:18

18       Q  Got it.                                         14:03:20

19       But, in other words, so if I understand            14:03:22

20   correctly, what's being identified here as            14:03:24

21   witnesses are witnesses who are relevant to           14:03:26

22   whatever is going to be communicated in this          14:03:29

23   closed report itself; is that right?                  14:03:31

24       MS. BARBER:  So you're switching back now.         14:03:33

| | | |
|---|---|---|
| 1 | General or specific?  So is it this particular | 14:03:35 |
| 2 | report, in this case? | 14:03:40 |
| 3 | MR. SWAMINATHAN:  Thank you. | 14:03:41 |
| 4 | Q  I'm talking about in general, okay.  So | 14:03:42 |
| 5 | let me be clear. | 14:03:45 |
| 6 | In a cleared closed report, the people | 14:03:47 |
| 7 | identified as witnesses are individuals who are | 14:03:49 |
| 8 | going to be discussed in that cleared closed | 14:03:52 |
| 9 | report.  Do I have that right? | 14:03:54 |
| 10 | MS. BARBER:  Objection, form. | 14:03:56 |
| 11 | A  That would be my understanding, but again, | 14:03:59 |
| 12 | it's been over 15 years before I -- well, eight | 14:04:01 |
| 13 | years before I even thought about making reports. | 14:04:05 |
| 14 | Q  When you wrote cleared closed reports as a | 14:04:08 |
| 15 | homicide detective, were you -- when you listed | 14:04:11 |
| 16 | people in the witnesses' section, were you trying | 14:04:14 |
| 17 | to identify everybody who had been involved as a | 14:04:16 |
| 18 | witness in the investigation up to that point or | 14:04:19 |
| 19 | were you focused on people who you were going to | 14:04:21 |
| 20 | be discussing in your cleared closed report ? | 14:04:24 |
| 21 | MS. GOLDEN:  Form. | 14:04:25 |
| 22 | MS. BARBER:  Foundation. | 14:04:26 |
| 23 | A  Truthfully, I don't remember.  To be | 14:04:28 |
| 24 | truthful, I just do not remember. | 14:04:30 |

1    Q  If you go to the interview section here,              14:04:31
2  that's on Page 7.  Do you see that?                        14:04:36
3    A  Yes.                                                  14:04:38
4    Q  Here it identifies two individuals.  Do              14:04:39
5  you see that?                                              14:04:44
6    A  Yes.                                                  14:04:44
7    Q  In the interview section, is that intended           14:04:45
8  to identify all the individuals who are                    14:04:48
9  interviewed in the case or individuals who are             14:04:50
10  going to be discussed in the cleared closed               14:04:52
11  report?                                                   14:04:55
12       MS. BARBER:  In general or --                        14:04:55
13       MR. SWAMINATHAN:  Go ahead.                          14:04:58
14       MS. GOLDEN:  Form of the question.                   14:04:59
15       MS. BARBER:  And foundation.                         14:05:00
16    A  You're talking about this report                     14:05:02
17  specifically?                                             14:05:04
18    Q  I'm asking you about cleared closed                  14:05:04
19  reports.                                                  14:05:07
20       MS. GOLDEN:  In general.                             14:05:07
21    A  In general, okay.  In general --                     14:05:09
22       MS. BARBER:  Same objections.                        14:05:10
23    A  Again, it would be the same.  If you                 14:05:12
24  interviewed a lot of people along the way and if          14:05:14

1    they're already documented, their interviews are          14:05:17

2    already documented, I don't believe I'd put them          14:05:19

3    in the cleared closed report.  If I did, it's             14:05:21

4    probably because their interviews would be in             14:05:27

5    there.                                                    14:05:30

6       Q   So if I understand correctly, when you            14:05:30

7    look at this particular report, Exhibit 2, it             14:05:34

8    identifies interviewed individuals being Jorge            14:05:37

9    Mejia and Leobardo Mejia, you would expect to see         14:05:40

10   information in this supplementary report about the        14:05:43

11   interviews of Jorge and Leobardo Mejia; is that           14:05:45

12   fair?                                                     14:05:51

13       MS. BARBER:  Objection, form.                         14:05:51

14       A   Again, for me I can't say how Detective          14:05:53

15   Halvorsen or Detective Guevara types a report.  If        14:05:57

16   I put them in there, I would expect to see their          14:05:59

17   names somewhere in the body of the report.                14:06:02

18       Q   And would you expect to see information          14:06:04

19   about what they communicated in any interviews            14:06:05

20   they had with the police officers?                        14:06:07

21       MS. GOLDEN:  Asked and answered.                      14:06:09

22       MS. BARBER:  Form, foundation.                        14:06:11

23       A   Again, they would be documented somewhere,       14:06:17

24   either here or maybe in the previous report.              14:06:19

| | | |
|---|---|---|
| 1 | Q  When you say they'd be documented -- | 14:06:22 |
| 2 | A  I would think that if you're going to put | 14:06:24 |
| 3 | them down as being interviewed, somewhere on one | 14:06:26 |
| 4 | of the reports you might see what their interview | 14:06:28 |
| 5 | was. | 14:06:33 |
| 6 | Q  There are a number of references in this | 14:06:33 |
| 7 | report to R/DETS or R/D.  That's a reference to | 14:06:55 |
| 8 | the reporting detectives, correct? | 14:06:59 |
| 9 | A  That's correct. | 14:07:00 |
| 10 | Q  In this case that's Detective Guevara and | 14:07:01 |
| 11 | Detective Halvorsen, correct? | 14:07:04 |
| 12 | A  That's correct. | 14:07:05 |
| 13 | Q  Okay.  If you go on Page 7 about a little | 14:07:06 |
| 14 | past halfway down the page, it says, On 3, April | 14:07:14 |
| 15 | '98 at 11:30 hours Detective Ray Guevara conducted | 14:07:18 |
| 16 | his first interview with Adriana Mejia in | 14:07:23 |
| 17 | interview -- at interview room at Area 5 | 14:07:28 |
| 18 | detectives.  Do you see that? | 14:07:30 |
| 19 | A  Yes. | 14:07:31 |
| 20 | Q  So reading this report, is it your | 14:07:31 |
| 21 | understanding that the first interview of Adriana | 14:07:35 |
| 22 | Mejia was conducted by Ray Guevara and only Ray | 14:07:39 |
| 23 | Guevara? | 14:07:42 |
| 24 | MS. GOLDEN:  Foundation and relevance. | 14:07:42 |

| | | |
|---|---|---|
| 1 | His interpretation of a police report he didn't | 14:07:47 |
| 2 | write, and I think we're going to probably spend a | 14:07:50 |
| 3 | lot of time on this.  I'm going to have an | 14:07:53 |
| 4 | objection to him interpreting. | 14:07:55 |
| 5 | MR. SWAMINATHAN:  You can have a standing | 14:07:57 |
| 6 | objection, if you want to. | 14:07:59 |
| 7 | Q  Go ahead. | 14:08:01 |
| 8 | A  Ray Guevara did the interview. | 14:08:03 |
| 9 | Q  If additional people participated in that | 14:08:04 |
| 10 | interview of Adriana Mejia, would you expect that | 14:08:07 |
| 11 | to be documented here? | 14:08:12 |
| 12 | A  I would think somebody else would be | 14:08:13 |
| 13 | listed, if they were there. | 14:08:15 |
| 14 | Q  Do you have any reason to dispute that | 14:08:16 |
| 15 | Detective Guevara conducted the first interview of | 14:08:18 |
| 16 | Adriana Mejia alone? | 14:08:22 |
| 17 | A  Could I dispute it?  No. | 14:08:24 |
| 18 | Q  I'm not going to read the whole section | 14:08:26 |
| 19 | but beginning the last paragraph of the page is -- | 14:08:30 |
| 20 | then documents Detective Guevara's interview of | 14:08:33 |
| 21 | Adriana Mejia, correct? | 14:08:36 |
| 22 | MS. GOLDEN:  Same objection. | 14:08:38 |
| 23 | A  That's what it looks like, yes. | 14:08:41 |
| 24 | Q  Did you see any GPR in the file related to | 14:08:43 |

| | | |
|---|---|---|
| 1 | Detective Guevara's interview of Adriana Mejia on | 14:08:50 |
| 2 | April 3rd at 11:30? | 14:08:54 |
| 3 | MS. BARBER:  Objection, form, foundation. | 14:08:57 |
| 4 | A  I can't say I seen one. | 14:08:59 |
| 5 | Q  Okay. | 14:09:02 |
| 6 | A  But I didn't look for -- I just briefly | 14:09:02 |
| 7 | looked through the GPR's.  I don't know who made | 14:09:05 |
| 8 | them out. | 14:09:08 |
| 9 | Q  Have you ever seen any GPR or handwritten | 14:09:08 |
| 10 | notes reflecting Detective Guevara's first | 14:09:11 |
| 11 | interview of Adriana Mejia? | 14:09:14 |
| 12 | A  Have I?  No. | 14:09:16 |
| 13 | Q  Going back to the first page of this | 14:09:17 |
| 14 | report. | 14:09:19 |
| 15 | A  Okay. | 14:09:20 |
| 16 | Q  When was the report submitted? | 14:09:21 |
| 17 | MS. GOLDEN:  Foundation.  Are you asking | 14:09:24 |
| 18 | him to read the document or are you asking him | 14:09:30 |
| 19 | based on his own personal knowledge when this | 14:09:33 |
| 20 | report was submitted? | 14:09:36 |
| 21 | Q  Go ahead. | 14:09:39 |
| 22 | A  I don't know when it was submitted. | 14:09:39 |
| 23 | Q  Okay.  Looking at this report, what is | 14:09:41 |
| 24 | your understanding when this report was submitted? | 14:09:44 |

| | | |
|---|---|---|
| 1 | A   Under date submitted it says 30, | 14:09:46 |
| 2 | April 1998 at 2300 hours. | 14:09:49 |
| 3 | Q   Does that indicate to you that Detective | 14:09:51 |
| 4 | Guevara and Halvorsen submitted this report on | 14:09:54 |
| 5 | April 30th of 1998? | 14:09:57 |
| 6 | MS. GOLDEN:  Foundation and relevance, for | 14:09:58 |
| 7 | this witness, relevance for this. | 14:10:03 |
| 8 | A   That's what it looks like but could it be | 14:10:06 |
| 9 | a computer error, I don't know. | 14:10:09 |
| 10 | Q   When you prepared reports, what did you | 14:10:10 |
| 11 | put in the date submitted field? | 14:10:12 |
| 12 | A   Again, going back then, I don't recall if | 14:10:14 |
| 13 | that was computer generated or not.  So it's hard | 14:10:20 |
| 14 | to say.  If it was computer generated, the | 14:10:26 |
| 15 | computer put the date in.  And it might be when | 14:10:29 |
| 16 | you printed it up and finished it.  I don't | 14:10:32 |
| 17 | recall.  It might not be you did the whole report | 14:10:38 |
| 18 | on that date, but that's the date you printed it | 14:10:40 |
| 19 | and handed it in.  I'm not sure. | 14:10:44 |
| 20 | Q   I'm not sure I understand your answer. | 14:10:47 |
| 21 | When you did your report as a homicide | 14:10:49 |
| 22 | detective, what you put into the date submitted | 14:10:52 |
| 23 | field was the date that you actually submitted the | 14:10:57 |
| 24 | report; is that right? | 14:10:59 |

| 1  | A    Again --                                   | 14:11:00 |
| 2  |     MS. GOLDEN:    Asked and answered.          | 14:11:00 |
| 3  | A    What I'm saying is --                       | 14:11:03 |
| 4  |     MS. BARBER:    Misstates the witness's      | 14:11:03 |
| 5  | testimony.                                       | 14:11:05 |
| 6  | A    -- I'm not sure if that was computer        | 14:11:06 |
| 7  | generated by a computer on the date that it was | 14:11:08 |
| 8  | printed out.  So I don't know actually in this  | 14:11:11 |
| 9  | type of report you typed it in.  On the older   | 14:11:13 |
| 10 | reports where we used the typewriters, yes, you | 14:11:15 |
| 11 | would type it in.  It then became computer      | 14:11:19 |
| 12 | generated.  So I can't say if this -- I don't   | 14:11:21 |
| 13 | remember if this would have been computer       | 14:11:23 |
| 14 | generated on the date they printed out to submit| 14:11:25 |
| 15 | it or when, you know, they actually prepared the| 14:11:28 |
| 16 | report.                                          | 14:11:33 |
| 17 | Q    When you typed -- in the period when you   | 14:11:34 |
| 18 | were typing it up yourself, would you put the date| 14:11:36 |
| 19 | you were actually submitting the report in the  | 14:11:40 |
| 20 | date submitted field?                            | 14:11:42 |
| 21 | A    Yes.                                         | 14:11:43 |
| 22 | Q    And when it was computer generated, was    | 14:11:44 |
| 23 | the computer-generated time based on when you   | 14:11:46 |
| 24 | printed it out in order to submit it to the     | 14:11:49 |

1   supervisor?                                          14:11:51

2       A  I do believe so, yes.                         14:11:52

3       Q  And so in this case -- well, strike that.     14:11:53

4          In this case when was the report approved?    14:11:58

5          MS. GOLDEN:  Foundation.  If you're asking     14:12:02

6   him --                                               14:12:05

7       Q  Go ahead.                                      14:12:07

8          MS. GOLDEN:  No.  Are your questions going     14:12:08

9   to be what the document states or --                 14:12:11

10         MR. SWAMINATHAN:  My questions are going       14:12:13

11  to be what my questions are going to be.  If you     14:12:14

12  have an objection to foundation, you have an         14:12:17

13  objection to foundation.  I can't make you not       14:12:17

14  make an objection to foundation.  Go ahead.          14:12:20

15         MS. GOLDEN:  I have an objection to            14:12:21

16  foundation and to you asking him what a report       14:12:22

17  that you can read easily as I can read here says.    14:12:29

18      A  It appears it was approved on 4, May 1998.    14:12:35

19      Q  Approved approximately five days after it     14:12:39

20  was submitted, right?                                14:12:43

21         MS. GOLDEN:  Foundation.                       14:12:44

22      A  That's what it appears.                        14:12:48

23      Q  Anything unusual or stand out to you about    14:12:50

24  taking five days from the time of submission to      14:12:53

| | | |
|---|---|---|
| 1 | the time of approval? | 14:12:55 |
| 2 | A  No. | 14:12:57 |
| 3 | Q  If you turn to the last page of this | 14:12:57 |
| 4 | document, pages 20 and 21, you can see that | 14:13:09 |
| 5 | charges in this case were approved on April 5th, | 14:13:12 |
| 6 | 1998. | 14:13:25 |
| 7 | MS. GOLDEN:  Where are you, Anand? | 14:13:41 |
| 8 | MR. SWAMINATHAN:  Page 20, ASA Andrew | 14:13:44 |
| 9 | Varga arrived.  Stats were taken, handwritten | 14:13:44 |
| 10 | statements from Rosauro Mejia.  April 5th, | 14:13:49 |
| 11 | handwritten statement from Mejia.  And then it | 14:13:51 |
| 12 | describes the final interviews and the crime lab | 14:13:53 |
| 13 | report and then charges approved at the end, | 14:13:58 |
| 14 | right? | 14:14:01 |
| 15 | MS. GOLDEN:  All right. | 14:14:01 |
| 16 | Q  This investigation was -- charges were | 14:14:03 |
| 17 | approved as of April 5th, 1998, correct? | 14:14:05 |
| 18 | MS. GOLDEN:  Foundation. | 14:14:10 |
| 19 | A  That's what it says, yes. | 14:14:11 |
| 20 | Q  And the cleared closed report wasn't | 14:14:12 |
| 21 | submitted until April 30th, 1998, correct? | 14:14:14 |
| 22 | MS. GOLDEN:  Foundation. | 14:14:18 |
| 23 | A  That's what it says. | 14:14:18 |
| 24 | Q  Anything unusual about the amount of time | 14:14:19 |

| | | |
|---|---|---|
| 1 | it took for this to be submitted? | 14:14:22 |
| 2 | A  You know, I can't say what took so long. | 14:14:24 |
| 3 | I didn't type the report.  I don't know why | 14:14:29 |
| 4 | Halvorsen and Guevara took so look. | 14:14:31 |
| 5 | Q  Did you usually -- sorry, go ahead. | 14:14:34 |
| 6 | A  It could be a lot of reasons.  Me, it | 14:14:37 |
| 7 | could be on certain cases it took awhile because | 14:14:40 |
| 8 | you might catch another murder on April 7th.  And | 14:14:47 |
| 9 | now you're tied up with that.  The closing report | 14:14:51 |
| 10 | is not -- you know, you're typing it up.  You're | 14:14:54 |
| 11 | going to submit it.  You have all your notes.  But | 14:14:59 |
| 12 | there's other pressing matters. | 14:15:01 |
| 13 | Q  Did you typically submit your closing | 14:15:04 |
| 14 | reports faster than four weeks from when the | 14:15:06 |
| 15 | charges were approved? | 14:15:09 |
| 16 | A  If I was able to, yes. | 14:15:11 |
| 17 | Q  And were you usually able to? | 14:15:13 |
| 18 | A  That was a long time ago.  I don't recall. | 14:15:14 |
| 19 | Q  As you said earlier, the cleared closed | 14:15:17 |
| 20 | report was approved as of May 4th, 1998, correct? | 14:15:22 |
| 21 | MS. GOLDEN:  Not what he said.  That's | 14:15:26 |
| 22 | what the report said. | 14:15:30 |
| 23 | Q  All right.  Let me ask you a separate | 14:15:31 |
| 24 | question. | 14:15:33 |

1        As of May 4th, 1998, would you expect that      14:15:33

2   all GPR's and supplemental reports related to the     14:15:39

3   investigation had now been submitted?                 14:15:45

4        MS. BARBER:  Objection, form, foundation.        14:15:47

5     A  Every case is different.  I'm not sure if        14:15:51

6   any were outstanding.  I mean, in general on any      14:15:55

7   given case, the majority of them I would imagine      14:15:58

8   been submitted.  There might be some still out        14:16:01

9   there.  I don't know.                                 14:16:04

10     Q  If I understand correctly, typically the       14:16:05

11  closed -- cleared closed report is the last           14:16:09

12  supplementary report of the case.  There could be     14:16:10

13  some exception of some continuing investigation       14:16:12

14  that happened or, you know, something I imagine,      14:16:14

15  but I want to ask you about the typical scenario.     14:16:17

16  Typically the cleared closed report is the last       14:16:21

17  supplementary report in the case; is that right?      14:16:23

18        MS. GOLDEN:  Form.                              14:16:24

19     A  Yes, it's closing the case out.                14:16:26

20     Q  And if I understood from your testimony        14:16:28

21  yesterday, as supplementary reports are submitted,    14:16:29

22  including the cleared closed report, any GPR's        14:16:35

23  related to those reports are also submitted,          14:16:39

24  correct?                                              14:16:42

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Form, asked and answered. | 14:16:42 |
| 2 | A  Probably should be in a timely fashion, | 14:16:46 |
| 3 | yes. | 14:16:48 |
| 4 | Q  And then the sergeant who's approving the | 14:16:48 |
| 5 | report also has the GPR's at the same time, | 14:16:50 |
| 6 | correct? | 14:16:53 |
| 7 | A  The sergeant, when he gets them, he gets | 14:16:58 |
| 8 | them.  The sergeant approves them when he approves | 14:17:00 |
| 9 | them.  I'm not a sergeant. | 14:17:03 |
| 10 | Q  And then when the sergeant approves the | 14:17:04 |
| 11 | cleared closed report, would you expect that's | 14:17:07 |
| 12 | also when the GPR's associated with the case have | 14:17:09 |
| 13 | all been approved? | 14:17:12 |
| 14 | MS. BARBER:  Objection, form. | 14:17:13 |
| 15 | MS. GOLDEN:  Foundation. | 14:17:14 |
| 16 | A  I have no idea. | 14:17:17 |
| 17 | Q  Would you expect that there are any GPR's | 14:17:18 |
| 18 | being turned in after the cleared closed report | 14:17:20 |
| 19 | has been turned in? | 14:17:22 |
| 20 | MS. GOLDEN:  Asked and answered. | 14:17:23 |
| 21 | MS. BARBER:  Form, foundation, incomplete | 14:17:24 |
| 22 | hypothetical. | 14:17:28 |
| 23 | A  Normally would that happen that way, no, | 14:17:28 |
| 24 | but it could. | 14:17:31 |

1     Q   Normally they would all be submitted          14:17:32

2  before?                                               14:17:35

3         MS. GOLDEN:  Asked and answered.               14:17:35

4     A   That's correct.                                14:17:37

5         MS. GOLDEN:  Just literally what he said.      14:17:37

6     Q   Now, let me ask you -- let's see, you were     14:17:41

7  on Page 7.  I want you to read the paragraph that     14:17:47

8  begins with Adriana Mejia at the bottom of Page 7     14:18:04

9  and it goes through the first half of Page 8.         14:18:07

10 Tell me when you're done reading that paragraph.      14:18:11

11        Let me grab one document while he's            14:19:33

12 reading that.                                         14:19:37

13        Sir, you had a chance to review the bottom     14:21:43

14 of Page 7 and the top of Page 8?                      14:21:46

15        It basically summarizes an interview that      14:21:48

16 Detective Guevara conducted with Adriana Mejia; is    14:21:51

17 that correct?                                         14:21:56

18    A   That's correct.                                14:21:56

19    Q   Does reading that paragraph refresh your       14:21:56

20 memory in any way about any interviews you            14:22:00

21 conducted with Adriana Mejia?                         14:22:02

22    A   No.                                            14:22:04

23    Q   Is the information communicated in that        14:22:04

24 interview by Detective Guevara consistent with the    14:22:07

1    information Ms. Mejia gave you when you conducted        14:22:11

2    an interview with her?                                   14:22:15

3        A   I don't remember what Ms. Mejia conveyed         14:22:16

4    to us.                                                   14:22:19

5        Q   Okay.  Looking at the next paragraph.            14:22:20

6        A   Okay.                                            14:22:22

7        Q   It says Detective Kevin McDonald -- it's         14:22:22

8    Kevin, right?                                            14:22:27

9        A   Yes.                                             14:22:28

10       Q   Detective Kevin McDonald searched the iCam       14:22:28

11   database and located a woman named Norma Salazar,        14:22:33

12   and the IR number.  A photo of this Norma Salazar        14:22:36

13   was shown to Adriana Mejia who identified her as         14:22:39

14   being the woman who gave her the children.               14:22:41

15           Did you have any involvement in that photo       14:22:44

16   identification procedure with Ms. Mejia?                 14:22:47

17       A   No, I didn't.                                    14:22:49

18       Q   What is an iCAM database photo?                  14:22:50

19       A   It's basically -- it would be like an IR         14:22:59

20   photo I guess.                                           14:23:03

21       Q   Is it like a booking photo?                      14:23:04

22       A   Yes, I believe so.                               14:23:06

23       Q   Something you're getting out of a                14:23:07

24   computer?                                                14:23:09

```
1       A  Yes.                                        14:23:10

2       Q  Okay.  Is it -- so it's not like a         14:23:10

3   Polaroid or something like that?                  14:23:14

4       A  No.                                         14:23:16

5       Q  Okay.                                       14:23:16

6          (Whereupon, Rutherford Deposition Exhibit   14:23:20

7          Nos. 3-5 were marked for identification.)   14:23:20

8       Q  Handing you a document marked Exhibit 3,    14:23:42

9   Bates stamped RFC Solache/Reyes 207.  At the top   14:23:45

10  it says, "Chicago Police Department CB report."    14:23:46

11         Sir, are you familiar with this type of     14:23:54

12  document now marked as Exhibit 3?                  14:23:57

13      A  Yes.                                        14:23:58

14      Q  What type of document is Exhibit 3?         14:23:59

15      A  This is probably what you'd call the iCAM   14:24:01

16  photo.                                             14:24:04

17      Q  Okay.  So this is what it looks like when   14:24:04

18  you pull something out of an iCAM database?        14:24:07

19      A  I believe so.  I haven't pulled it out in   14:24:13

20  a long time but yeah.                              14:24:14

21      Q  If you wanted to pull something out of the  14:24:14

22  iCAM database to show to a witness, would you be   14:24:18

23  showing them the entire thing that includes the   14:24:20

24  information along the left side or would there be  14:24:21
```

1    ways you just have a photo?                          14:24:25

2        A  I don't recall.  If this was a way you        14:24:26

3    might just fold it or cut it.                        14:24:32

4        Q  The next paragraph says on April 3rd,         14:24:37

5    1998 --                                              14:24:51

6        MS. GOLDEN:  Are you back on a different         14:24:51

7    exhibit?                                             14:24:53

8        MR. SWAMINATHAN:  Yes.  Sorry, turning           14:24:53

9    back to Exhibit 2.  Thank you.                       14:24:55

10       Q  Looking at Exhibit 2, still on Page 8, it     14:24:58

11   says 3, April '98 at 5800 hours Detective Collins    14:25:02

12   and McDonald located Norma Salazar and brought her   14:25:06

13   into Area 5 detectives.  Adriana Mejia viewed        14:25:10

14   Norma Salazar in lineup but did not identify her.    14:25:13

15   Norma Salazar was questioned by Detective McDonald   14:25:17

16   and denied any knowledge about what Adriana Mejia    14:25:20

17   was saying.  Norma Salazar was eliminated as a       14:25:22

18   suspect.  Permitted to leave Area 5 detectives.      14:25:25

19   Do you see that on Exhibit 2?                        14:25:28

20       A  Yes, I do.                                    14:25:30

21       Q  Did you have any involvement in any lineup    14:25:31

22   conducted with Norma Salazar?                        14:25:34

23       A  No, I did not.                                14:25:37

24       Q  Is it your understanding from reading this    14:25:38

| | | |
|---|---|---|
| 1 | report of Mr. Halvorsen and Mr. Guevara that they | 14:25:40 |
| 2 | did conduct a lineup in which Ms. Mejia viewed a | 14:25:43 |
| 3 | lineup and Ms. Salazar was a participant? | 14:25:48 |
| 4 | MS. GOLDEN: Can you be more specific with | 14:25:52 |
| 5 | respect to they? No? Okay. Form. | 14:25:55 |
| 6 | A If you're asking me did Halvorsen and | 14:26:02 |
| 7 | Guevara do the lineup, I can't tell you if they | 14:26:04 |
| 8 | did it. It looks like it might have been McDonald | 14:26:07 |
| 9 | and Collins, but I wasn't there. So I have no | 14:26:10 |
| 10 | idea who did the lineup. | 14:26:13 |
| 11 | Q You understand the lineup was conducted | 14:26:13 |
| 12 | based on this report? | 14:26:15 |
| 13 | A Yes. | 14:26:16 |
| 14 | Q And you don't know who conducted it? | 14:26:16 |
| 15 | A I have no idea. | 14:26:18 |
| 16 | Q Is it your expectation that lineup would | 14:26:19 |
| 17 | have resulted in a lineup report? | 14:26:24 |
| 18 | MS. GOLDEN: Can you read the question | 14:26:26 |
| 19 | back. | 14:26:36 |
| 20 | (Record read back by the | 14:26:36 |
| 21 | reporter.) | 14:26:36 |
| 22 | A In this case I would have done a lineup | 14:26:37 |
| 23 | report. However, for whatever reason Detective | 14:26:40 |
| 24 | McDonald, Detective Collins determined they didn't | 14:26:44 |

1    need one.                                          14:26:48

2        Q  They were wrong about that, right?  There   14:26:48

3    was supposed to be a lineup report; isn't it       14:26:50

4    right?                                             14:26:53

5        MS. BARBER:  Objection, form, misstates        14:26:53

6    the witness's testimony, and foundation.           14:26:55

7        A  I can't say why they didn't do it, so I     14:27:00

8    can't say they were wrong or right.  I could tell  14:27:02

9    you I would have filled it out.  If you look, it's 14:27:05

10   sort of documented in there that a lineup was      14:27:11

11   done.  They did document a lineup was done.  I     14:27:14

12   would have done what is called a lineup            14:27:17

13   supplemental report.  Why they didn't, you'd have  14:27:20

14   to ask them but unfortunately we can't.            14:27:23

15       Q  Like I said, we're not -- I'm not asking    14:27:26

16   why they didn't do it.  I'm asking a different     14:27:27

17   question.                                          14:27:29

18       Based on what we talked about yesterday,       14:27:29

19   my understanding is when you conduct a lineup,     14:27:32

20   regardless of the results, you're supposed to      14:27:34

21   create a lineup report; is that right?             14:27:37

22       MS. GOLDEN:  Asked and answered, form.         14:27:38

23       A  That's correct.                             14:27:40

24       Q  And a lineup report is supposed to include  14:27:41

| | | |
|---|---|---|
| 1 | information like who the participants were in that | 14:27:43 |
| 2 | lineup, correct? | 14:27:47 |
| 3 | A  That's correct. | 14:27:47 |
| 4 | Q  And in this case would you agree with me | 14:27:48 |
| 5 | that the information that is communicated in this | 14:27:50 |
| 6 | paragraph, Page 8 of Exhibit 2 that I've just | 14:27:52 |
| 7 | read, it does not contain all of the information | 14:27:57 |
| 8 | you include in a lineup report? | 14:28:01 |
| 9 | MS. GOLDEN:  Again, you're asking him to | 14:28:04 |
| 10 | read this document which you can read as easily as | 14:28:05 |
| 11 | I can, so foundation. | 14:28:08 |
| 12 | A  Yes, like I said, I would have prepared a | 14:28:09 |
| 13 | report.  They didn't.  I don't know why they | 14:28:13 |
| 14 | didn't.  But I would have prepared one if I ran | 14:28:15 |
| 15 | this lineup. | 14:28:18 |
| 16 | Q  Based on your review of the cleared closed | 14:28:19 |
| 17 | report in preparation for this deposition of | 14:28:23 |
| 18 | several times, as we discussed yesterday, do you | 14:28:25 |
| 19 | have any explanation for why they didn't prepare a | 14:28:27 |
| 20 | lineup report in this case? | 14:28:31 |
| 21 | MS. GOLDEN:  Asked and answered.  He's | 14:28:32 |
| 22 | given you the answer to that question three or | 14:28:36 |
| 23 | four times. | 14:28:39 |
| 24 | Q  Go ahead. | 14:28:40 |

| | | |
|---|---|---|
| 1 | A  One of the reasons they might not I | 14:28:41 |
| 2 | believe in the report that Mrs. Mejia changes her | 14:28:42 |
| 3 | story about the involvement of Norma Salazar. | 14:28:45 |
| 4 | She's no longer involved in it.  So there would be | 14:28:49 |
| 5 | no reason to have done the lineup, if you could | 14:28:54 |
| 6 | have went backwards.  But they did the lineup and | 14:28:56 |
| 7 | maybe that's why they didn't do it.  I still would | 14:28:59 |
| 8 | have done it.  They didn't.  I can't tell you why. | 14:29:02 |
| 9 | Q  That explanation you just gave would not | 14:29:05 |
| 10 | justify not doing a lineup report; do you agree | 14:29:08 |
| 11 | with that? | 14:29:11 |
| 12 | MS. BARBER:  Objection, form, foundation, | 14:29:11 |
| 13 | calls for speculation. | 14:29:15 |
| 14 | A  I'm not the supervisor.  I don't make | 14:29:18 |
| 15 | those decisions.  They made their decision.  I | 14:29:20 |
| 16 | wasn't there.  I would have done something | 14:29:23 |
| 17 | differently.  I'm not going to say it was | 14:29:26 |
| 18 | justified, unjustified, right or wrong.  It's not | 14:29:29 |
| 19 | my call. | 14:29:32 |
| 20 | Q  Last sentence of that paragraph says, | 14:29:33 |
| 21 | "Norma Salazar was eliminated as a suspect and | 14:29:37 |
| 22 | permitted to leave Area 5 detectives." | 14:29:40 |
| 23 | Do you know what the information was that | 14:29:42 |
| 24 | eliminated her as a suspect? | 14:29:46 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Objection, foundation. | 14:29:48 |
| 2 | A  Well, she wasn't identified, No. 1, and | 14:30:00 |
| 3 | the only person that was bringing her up was the | 14:30:03 |
| 4 | person who viewed the lineup, Mrs. Mejia.  So if | 14:30:06 |
| 5 | she can't identify her, that knocks that down a | 14:30:10 |
| 6 | bit.  She had -- she denied it.  I imagine he | 14:30:14 |
| 7 | would have asked her about her kids and that, but | 14:30:22 |
| 8 | I don't know if they did.  I would assume they | 14:30:24 |
| 9 | would have.  So I can't say exactly why they | 14:30:26 |
| 10 | eliminated her, but that would be one of the | 14:30:33 |
| 11 | reasons that she wasn't identified. | 14:30:34 |
| 12 | Q  If -- one of the reasons she was | 14:30:35 |
| 13 | eliminated as a suspect was based on their | 14:30:39 |
| 14 | interview with her, would you expect that | 14:30:42 |
| 15 | interview with her to be documented? | 14:30:44 |
| 16 | A  Yes. | 14:30:46 |
| 17 | Q  And the reasons that what she communicated | 14:30:46 |
| 18 | to them during the course of that interview -- | 14:30:50 |
| 19 | strike that. | 14:30:52 |
| 20 | The reasons that you communicated -- | 14:30:52 |
| 21 | strike that.  I'm all over the place.  Let me try | 14:30:56 |
| 22 | again. | 14:30:59 |
| 23 | Whatever she communicated to them during | 14:31:00 |
| 24 | the course of an interview about -- that caused | 14:31:02 |

| | | |
|---|---|---|
| 1 | the detectives to eliminate her as a suspect, | 14:31:05 |
| 2 | would you expect that information to be documented | 14:31:09 |
| 3 | in this file? | 14:31:11 |
| 4 | MS. BARBER:  Objection, form, foundation, | 14:31:12 |
| 5 | calls for speculation. | 14:31:18 |
| 6 | A  It would be helpful to know why they | 14:31:23 |
| 7 | eliminated her. | 14:31:25 |
| 8 | Q  Based on the cleared closed report, would | 14:31:25 |
| 9 | you agree with me as of April 3rd, 1998, Norma | 14:31:28 |
| 10 | Salazar was a suspect in the Soto homicide? | 14:31:31 |
| 11 | MS. BARBER:  Objection, form, foundation. | 14:31:34 |
| 12 | A  I wasn't there, so I don't know.  Based on | 14:31:37 |
| 13 | what Mrs. Mejia said, they followed it up.  She | 14:31:39 |
| 14 | was a suspect I guess. | 14:31:46 |
| 15 | Q  And if -- and she was obviously | 14:31:48 |
| 16 | interviewed as a suspect, correct? | 14:31:50 |
| 17 | MS. GOLDEN:  Form. | 14:31:52 |
| 18 | A  I didn't interview her, so I don't know | 14:31:54 |
| 19 | why they interviewed her.  After she was not | 14:31:56 |
| 20 | identified in the lineup, did they still consider | 14:31:58 |
| 21 | her a suspect?  I don't know. | 14:32:03 |
| 22 | Q  Based on the information here that she was | 14:32:04 |
| 23 | not identified in a lineup by Adriana Mejia and | 14:32:07 |
| 24 | then questioned by the detectives, would you | 14:32:11 |

1   expect there to have been some follow-up          14:32:14

2   investigation to assess whether Norma Salazar     14:32:17

3   could be eliminated as a suspect?                 14:32:20

4       MS. GOLDEN:  Question -- and to complete      14:32:22

5   the sentence, for the rule of completeness,       14:32:24

6   question and denied any knowledge about what      14:32:30

7   Adriana Mejia was saying.                         14:32:32

8       Q  Go ahead.                                  14:32:34

9       A  Yeah, I mean, I don't know what they did.  14:32:35

10      Q  Would you expect there would have been     14:32:39

11  some further follow-up based on the information   14:32:41

12  you got here?                                     14:32:44

13      MS. BARBER:  Objection, form, foundation,     14:32:45

14  calls for speculation.                            14:32:47

15      A  They interviewed her, so I don't know what 14:32:49

16  more they'd be doing because I don't know exactly 14:32:52

17  what was said.                                    14:32:55

18      Q  On page 9, top of the page on 3, April '98 14:32:57

19  at 1700 hours Detective Guevara asked Adriana Soto 14:33:22

20  -- I assume that means Adriana Mejia -- to submit 14:33:26

21  to a polygraph examination which she agreed to do. 14:33:29

22  Do you see that?                                  14:33:34

23      MS. GOLDEN:  I'm going to object to your      14:33:34

24  assumption about --                               14:33:36

| 1 | Q  Go ahead. | 14:33:38 |
| 2 | MS. GOLDEN:  -- some interpretation of | 14:33:39 |
| 3 | this report. | 14:33:41 |
| 4 | A  I see it. | 14:33:41 |
| 5 | Q  You understand that to be a reference | 14:33:42 |
| 6 | Adriana Mejia and that it's a typo referring to | 14:33:45 |
| 7 | Adriana Soto? | 14:33:48 |
| 8 | MS. GOLDEN:  Foundation. | 14:33:49 |
| 9 | A  I'm not sure but I would assume but... | 14:33:52 |
| 10 | Q  It says she agreed to do a polygraph.  Do | 14:33:55 |
| 11 | you have to get somebody's agreement to do a | 14:34:00 |
| 12 | polygraph? | 14:34:03 |
| 13 | A  Yes. | 14:34:03 |
| 14 | Q  Can you do a polygraph even if they don't | 14:34:03 |
| 15 | agree to do one? | 14:34:07 |
| 16 | A  I don't know how you'd do it without their | 14:34:08 |
| 17 | agreement. | 14:34:10 |
| 18 | Q  If they were suspect and you got -- strike | 14:34:10 |
| 19 | that. | 14:34:14 |
| 20 | If a person -- you have to get somebody's | 14:34:14 |
| 21 | permission to say, look, I'm taking you to do a | 14:34:17 |
| 22 | polygraph? | 14:34:21 |
| 23 | MS. GOLDEN:  Exactly asked and answered | 14:34:22 |
| 24 | two questions ago. | 14:34:24 |

| | | |
|---|---|---|
| 1 | Q Go ahead. | 14:34:26 |
| 2 | A You can't do it without their agreement. | 14:34:26 |
| 3 | Q The last sentence -- sorry, the last | 14:34:29 |
| 4 | couple sentences there it says, on 3, April '98 at | 14:34:42 |
| 5 | 1830 hours, Rosauro Mejia signed a consent to | 14:34:46 |
| 6 | search form at Area 5 detectives. Detectives | 14:34:50 |
| 7 | Stephens, Ruiz, and Santopadre then went to 6034 | 14:34:53 |
| 8 | -- 6234 South Mozart to search the residence of | 14:34:58 |
| 9 | Rosauro and Adriana Mejia. Pause there for one | 14:35:02 |
| 10 | moment. | 14:35:06 |
| 11 | On April 3rd, 1998, at 6:30 p.m., when the | 14:35:07 |
| 12 | consent to search form was signed and those | 14:35:13 |
| 13 | detectives went out to the residence, did you go | 14:35:16 |
| 14 | to the Mejia residence? | 14:35:18 |
| 15 | A I was not working that day, so, no, I | 14:35:21 |
| 16 | didn't. | 14:35:24 |
| 17 | Q Okay. And then it says, "At the same time | 14:35:24 |
| 18 | this search occurred Detective Guevara took | 14:35:26 |
| 19 | Adriana Mejia for her polygraph test"; do you see | 14:35:29 |
| 20 | that? | 14:35:32 |
| 21 | A Yes. | 14:35:32 |
| 22 | Q So your understanding that it was | 14:35:33 |
| 23 | Detective Guevara alone who took Ms. Mejia to the | 14:35:34 |
| 24 | polygraph test? | 14:35:38 |

1      MS. GOLDEN:  Foundation and form.          14:35:40

2      A  I don't know if anybody else went with    14:35:42

3   him.  So I couldn't say if he was alone or not.   14:35:44

4      Q  If they did, would you expect that to be   14:35:48

5   documented here?          14:35:51

6      A  Yes.          14:35:53

7      Q  If you skip the next paragraph and the     14:35:54

8   next paragraph of that says, "On 3, April '98 at   14:36:08

9   2100 hours, Detective Guevara returned to Area 5   14:36:12

10  with Adriana Mejia.  She had been examined by     14:36:15

11  certified polygraph examiner Bartik, who stated   14:36:21

12  that Adriana Mejia had completely failed the      14:36:25

13  polygraph test as to knowledge and participation."  14:36:27

14  Do you see that?          14:36:30

15     A  Yes.          14:36:31

16     Q  So fair to say that based on this report   14:36:31

17  Ms. Mejia was alone with Detective Guevara from   14:36:34

18  6:30 p.m. to 9:00 p.m.?          14:36:39

19     MS. GOLDEN:  Foundation.          14:36:41

20     A  I have no idea.  You have to really talk   14:36:44

21  to Detective Halvorsen about this report.  Maybe   14:36:47

22  he's leaving himself out that he's with Guevara.   14:36:50

23  I would assume he would go with him.  But I don't   14:36:54

24  know where Ernie is.  As he's typing, maybe he's   14:36:58

1   not typing himself in there.  So you would be          14:37:02

2   better off asking him.  I'm not going to assume        14:37:05

3   that Guevara was alone with her.                       14:37:07

4       Q   In your -- strike that.                        14:37:09

5           You would expect that typically for a step     14:37:11

6   like this to be taken by the primary assigned          14:37:14

7   detective that usually both detectives, the            14:37:17

8   partners would go together?                            14:37:20

9       A   That's correct.                                14:37:22

10      Q   Okay.  Now, in this case there's a common      14:37:23

11  mechanism by which Detective Halvorsen                 14:37:26

12  communicated when him and Detective Guevara did        14:37:30

13  something and that was the use R/D or R/DETS,           14:37:32

14  correct?                                               14:37:39

15          MS. BARBER:  Objection, foundation.            14:37:39

16      A   Yes.                                           14:37:41

17      Q   And when you were writing reports, was it      14:37:41

18  common to use reporting detectives to refer to the     14:37:44

19  detectives who were the partners who were writing      14:37:46

20  a report?                                              14:37:49

21      A   Yes, it was.                                   14:37:49

22      Q   Okay.  So if Detective Halvorsen had           14:37:50

23  participated in the transport of Adriana Mejia for     14:37:53

24  the polygraph test, he could have easily indicated     14:37:59

| | | |
|---|---|---|
| 1 | that the reporting detectives took Adriana Mejia | 14:38:01 |
| 2 | rather than Detective Guevara, correct? | 14:38:05 |
| 3 | MS. BARBER:  Objection, form. | 14:38:07 |
| 4 | A  He typed a report?  He could have.  I | 14:38:08 |
| 5 | don't know why he did what he did. | 14:38:11 |
| 6 | Q  Is it -- strike that. | 14:38:12 |
| 7 | MS. GOLDEN:  This is what happens when you | 14:38:17 |
| 8 | ask him to interpret someone else's report. | 14:38:20 |
| 9 | MR. SWAMINATHAN:  What happens? | 14:38:22 |
| 10 | MS. GOLDEN:  He doesn't know.  He can't -- | 14:38:23 |
| 11 | MR. SWAMINATHAN:  What is the purpose of | 14:38:25 |
| 12 | saying what you just said? | 14:38:27 |
| 13 | MS. GOLDEN:  You're -- | 14:38:28 |
| 14 | MR. SWAMINATHAN:  You think I just wasted | 14:38:28 |
| 15 | my time? | 14:38:30 |
| 16 | MS. GOLDEN:  You wasted time and you're | 14:38:31 |
| 17 | going to waste more time. | 14:38:33 |
| 18 | MR. SWAMINATHAN:  I appreciate your | 14:38:35 |
| 19 | charity for helping me to figure out how to use my | 14:38:37 |
| 20 | time. | 14:38:41 |
| 21 | MS. GOLDEN:  Oh, believe me -- | 14:38:41 |
| 22 | MR. SWAMINATHAN:  It's very kind of you. | 14:38:41 |
| 23 | MS. GOLDEN:  -- I feel like you're abusing | 14:38:42 |
| 24 | his time but... | 14:38:45 |

1     Q  All right.  Looking further down the page,          14:38:53

2  there's a paragraph that begins -- the second to          14:38:56

3  last paragraph.  It begins, "On 3, April '98 at           14:38:59

4  2230 hours, Detective Guevara conducted his second        14:39:02

5  interview with Adriana Mejia in an interview room         14:39:07

6  at Area 5 detectives."  Do you see that?                  14:39:11

7     A  Yes, I do.                                           14:39:32

8     Q  Okay.                                                14:39:32

9        MS. GOLDEN:  All right.  Before you ask

10  another question.

11        Anna, do you have time stamps on the

12  transcript?

13        THE REPORTER:  Yes, I do.

14              (Discussion had with reporter

15               and counsel.)

16     Q  Looking at this report, would you agree           14:39:32

17  with me it indicates that Detective Guevara             14:39:34

18  conducted a second interview along with Adriana         14:39:37

19  Mejia?                                                  14:39:44

20     A  Detective Guevara conducted an interview.        14:39:44

21     Q  Do you have any reason to dispute that           14:39:48

22  Detective Guevara conducted an interview on             14:39:51

23  April 3rd, '98 at 10:30 p.m. alone with Adriana        14:39:54

24  Mejia?                                                  14:39:59

1        A   I couldn't say if he was alone or with          14:39:59

2    somebody else.  Guevara did the interview.             14:40:02

3        Q   Okay.  Do you believe that where it says        14:40:04

4    Detective Guevara on this report for April 3rd,        14:40:06

5    '98 at 2230 hours that that indicates that             14:40:10

6    Detective Halvorsen also participated in the           14:40:13

7    interview?                                             14:40:15

8        A   I have no idea.                                 14:40:16

9        Q   So do you have any reason to dispute when        14:40:17

10   Ernie Halvorsen wrote Detective Guevara and only       14:40:21

11   Detective Guevara that he meant only Detective         14:40:25

12   Guevara?                                               14:40:29

13       MS. GOLDEN:  Okay.  Form of the question,           14:40:29

14   misstates what he wrote.                               14:40:31

15       A   If he typed up Guevara and only Guevara,        14:40:32

16   then I'd say it was only Guevara.  However, he         14:40:36

17   types up just Detective Guevara.  Detective           14:40:39

18   Guevara was there.  I can't say if anybody else       14:40:43

19   was there.  I wasn't there.                            14:40:46

20       Q   Okay.  If you then look at the bottom of        14:40:48

21   that page, it says Adriana Mejia and then it goes      14:40:51

22   through a summary of the statement that she            14:40:55

23   provided to Detective Guevara, correct?               14:40:58

24       A   Yes.                                            14:41:00

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Hold on a second. | 14:41:01 |
| 2 | THE WITNESS:  I'm sorry. | 14:41:01 |
| 3 | MS. GOLDEN:  Read it first before you | 14:41:03 |
| 4 | agree. | 14:41:04 |
| 5 | THE WITNESS:  Okay. | 14:41:05 |
| 6 | Q  Why don't you go ahead and read that | 14:41:10 |
| 7 | paragraph and tell me when you're done.  Bottom of | 14:41:12 |
| 8 | Page 9 and top of Page 10. | 14:41:16 |
| 9 | Finished reviewing it? | 14:44:21 |
| 10 | A  Yes, I did. | 14:44:22 |
| 11 | Q  Having had a chance to review that | 14:44:23 |
| 12 | section, does it refresh your memory at all about | 14:44:25 |
| 13 | your interactions with Adriana Mejia? | 14:44:27 |
| 14 | A  No, it doesn't. | 14:44:32 |
| 15 | Q  Did you participate in the interview that | 14:44:33 |
| 16 | summarized on the bottom of page 9 and the top of | 14:44:36 |
| 17 | Page 10? | 14:44:39 |
| 18 | MS. GOLDEN:  Foundation. | 14:44:40 |
| 19 | A  No, it didn't.  Again, I was off that day | 14:44:42 |
| 20 | and I wasn't working. | 14:44:45 |
| 21 | Q  The reason for your belief that you were | 14:44:46 |
| 22 | off that day and not working is the information in | 14:44:48 |
| 23 | this report itself, correct? | 14:44:51 |
| 24 | MS. GOLDEN:  Okay.  Foundation, misstates | 14:44:53 |

1    prior testimony.                                        14:44:55

2        A   Basically, yes.                                 14:44:57

3        Q   Okay.  The next paragraph says -- the next      14:44:58

4    paragraph begins, "Youth Officer Trevino initially      14:45:04

5    became involved in this investigation after             14:45:10

6    missing reports had been filed for the two Soto         14:45:12

7    children.  Youth Officer Trevino continued to           14:45:15

8    assist in this investigation as an interpreter."        14:45:19

9    Do you see that?                                        14:45:22

10       A   Yes.                                            14:45:22

11       Q   Is that consistent with your memory that        14:45:22

12   Mr. Trevino got involved as an interpreter?             14:45:25

13       MS. GOLDEN:  Foundation.                            14:45:29

14       A   I wasn't there when Trevino got involved.       14:45:30

15   So I don't know why he got involved.  If that's         14:45:34

16   what it says, I'm assuming that's why he did it.        14:45:36

17       Q   Did you -- strike that.                         14:45:38

18           Mr. Trevino served as an interpreter for        14:45:40

19   you during the period of time in which you              14:45:44

20   participated in the investigation; is that right?       14:45:46

21       A   That's correct.                                 14:45:47

22       Q   And you testified earlier about whether a       14:45:48

23   youth officer would conduct interrogation or            14:45:56

24   interview with a suspect on their own.  We talked       14:46:00

1    about whether that would happen.  And you                14:46:03

2    indicated that's not something that you would do         14:46:05

3    or that you would see happening; is that fair?           14:46:08

4         MS. GOLDEN:  Form.                                   14:46:11

5      A  Not that I would do but I wasn't aware of           14:46:13

6    it.  I was never a youth officer.                        14:46:16

7      Q  Is there anything about this paragraph             14:46:17

8    that we just read that indicates that Trevino            14:46:19

9    assisted in the investigation as an interpreter          14:46:22

10   that suggests to you that he would have been             14:46:24

11   conducting interviews with homicide suspects by          14:46:26

12   himself?                                                 14:46:30

13     A  No.                                                 14:46:30

14     Q  Okay.  Had you worked with Mr. Trevino in          14:46:30

15   the past before this Soto investigation in April         14:46:35

16   of 1998?                                                 14:46:37

17     A  You know, I know him.  I can't say I               14:46:39

18   worked with him.  He was in youth.  I don't think        14:46:42

19   I ever used him as an interpreter before.  I may         14:46:44

20   have.  I just don't know.                                14:46:48

21     Q  How is his Spanish?                                14:46:49

22     A  I have no idea.  I mean, I don't speak             14:46:55

23   Spanish.                                                 14:46:57

24     Q  When he was -- when he was serving as an          14:46:58

1    interpreter for you when you were interrogating        14:47:01

2    suspects in this case, was he able to successfully     14:47:03

3    act as a Spanish interpreter?                          14:47:08

4         MS. GOLDEN:  Foundation.                          14:47:10

5      A  I mean, it appeared he was able to speak          14:47:13

6    Spanish.                                               14:47:16

7      Q  Were you able to tell one way -- strike           14:47:16

8    that.                                                  14:47:18

9         Were you able to tell one way or the other        14:47:18

10   whether he was having any difficulty communicating     14:47:20

11   with the witnesses in Spanish?                         14:47:23

12     A  No, they seemed to answer him.                    14:47:25

13     Q  Could you -- if he was having -- if they          14:47:29

14   were having issues with his dialect of Spanish,        14:47:32

15   would you have been able to tell?                      14:47:36

16     A  I doubt it.                                        14:47:38

17     Q  Do you know whether he was Puerto Rican or        14:47:38

18   not, Mr. Trevino?                                      14:47:44

19     A  I believe he's Mexican.                           14:47:46

20     Q  Mr. Guevara, do you know if he had any            14:47:48

21   issues with his ability to serve as an interpreter     14:47:51

22   or translate information to be communicated by the     14:47:55

23   suspects in this case?                                 14:47:58

24        MS. GOLDEN:  Foundation.                          14:47:59

1      A   Not that I know of.                          14:48:01

2      Q   Do you have an understanding of whether he   14:48:02

3  is Puerto Rican or Mexican?                          14:48:05

4      A   I believe he's Puerto Rican.                 14:48:07

5      Q   Do you have any knowledge or understanding   14:48:09

6  about his ability to communicate with Mexican        14:48:11

7  witnesses or suspects?                               14:48:15

8      A   I have no knowledge of them having trouble   14:48:20

9  with it.                                             14:48:23

10     Q   Do you know one way or the other whether     14:48:24

11 he was able to communicate effectively with the      14:48:26

12 suspects in this case who were of Mexican descent?   14:48:29

13     A   I have no way of knowing whether they        14:48:34

14 understood them or not but they seem to answer       14:48:38

15 him.                                                 14:48:41

16     Q   In terms of strike that.                     14:48:41

17         Was there a point in time where you          14:48:43

18 participated in an interview of Arturo Reyes with    14:48:45

19 Ray Guevara present?                                 14:48:50

20     A   Yes.                                         14:48:51

21     Q   If there had been any issues in terms of     14:48:51

22 witness's abilities to be able to understand what    14:48:54

23 Detective Guevara was saying to them, would you      14:48:57

24 have known that there were those challenges going    14:49:00

1   on?                                                    14:49:04

2       A   There would be no way for me to know, but     14:49:04

3   I believe detective Trevino was also there.  I        14:49:06

4   imagine he would have known.                          14:49:10

5       Q   Okay.  Going back to Exhibit 2, Page 10.      14:49:11

6   It says, "On Friday night 3, April '98, two           14:49:18

7   persons came into Area 5 detectives, Guadalupe        14:49:23

8   Mejia and her husband Jorge Mejia."  And then it      14:49:26

9   says Ms. Mejia informed Trevino she had               14:49:31

10  information regarding this investigation that she     14:49:35

11  wanted to tell the detectives.  Guadalupe Mejia       14:49:38

12  was interviewed by Youth Officer Trevino.  It then    14:49:40

13  documents an interview of Guadalupe Mejia.            14:49:44

14      Did you participate in this interview of          14:49:47

15  Guadalupe Mejia documented in this closing report?    14:49:49

16      A   Again, I was off that day and that night,     14:49:52

17  so no.                                                14:49:55

18      Q   Turning your attention to the next page,      14:49:56

19  Page 12.                                              14:49:59

20      MS. GOLDEN:  12?                                  14:50:03

21      MR. SWAMINATHAN:  Um-hmm.                         14:50:04

22      Q   In the middle of the page it says,            14:50:17

23  "Detective Guevara interviewed Jorge Mejia, the       14:50:19

24  husband of Guadalupe Mejia.  He substantiated the     14:50:22

1    information provided by his wife but had no                14:50:25

2    additional information to contribute."                     14:50:27

3         Did you participate in any interview of               14:50:30

4    Jorge Mejia?                                               14:50:33

5       A  No, I didn't.                                        14:50:35

6       Q  Would you expect to see some GPR or                  14:50:36

7    supplementary report documenting what was said in          14:50:38

8    the interview of Jorge Mejia?                              14:50:41

9         MS. GOLDEN:  Foundation.                              14:50:44

10        MS. BARBER:  Form.                                    14:50:44

11      A  If there's a GPR exactly on what she said            14:50:53

12   and it basically matches it, maybe not.                    14:50:56

13      Q  If you had been conducting the interview             14:50:58

14   of Jorge Mejia, would you have created some GPR or         14:51:02

15   supplementary report containing what Jorge Mejia           14:51:06

16   told you?                                                  14:51:10

17        MS. GOLDEN:  Foundation.                              14:51:10

18        MS. BARBER:  Form, calls for speculation.             14:51:12

19      A  I don't know what he would have said.  It            14:51:14

20   all depends on what he would have said.                    14:51:16

21      Q  Take a look at the next paragraph.  It               14:51:18

22   says, "On 3, April '98 at 2330 hours Detective             14:51:23

23   Guevara conducted his first interview with Arturo          14:51:28

24   DeLeon in an interview room at Area 5 detectives."         14:51:32

| | | |
|---|---|---|
| 1 | And then it goes on to describe, to | 14:51:36 |
| 2 | summarize the interview of Arturo DeLeon. | 14:51:38 |
| 3 | Did you have any participation in that | 14:51:43 |
| 4 | interview of Arturo Reyes? | 14:51:46 |
| 5 | A  Again, I was not working on the 3rd of | 14:51:49 |
| 6 | April, so, no, I didn't. | 14:51:51 |
| 7 | Q  Based on this report is it your | 14:51:52 |
| 8 | understanding that that interview of Arturo Reyes | 14:51:54 |
| 9 | was conducted by Detective Guevara? | 14:51:57 |
| 10 | A  That's what it says, yes. | 14:52:01 |
| 11 | Q  Looking at that summary of the interview | 14:52:03 |
| 12 | of Mr. Reyes, it indicates that the reporting | 14:52:11 |
| 13 | detectives -- | 14:52:18 |
| 14 | MS. GOLDEN:  Can you tell me where you | 14:52:19 |
| 15 | are. | 14:52:21 |
| 16 | MR. SWAMINATHAN:  The top of Page 13. | 14:52:21 |
| 17 | MS. GOLDEN:  Okay. | 14:52:22 |
| 18 | Q  It says, The reporting detectives had | 14:52:23 |
| 19 | Arturo DeLeon turn pants pockets inside out.  In | 14:52:28 |
| 20 | the pants pocket were two slips of paper.  Written | 14:52:32 |
| 21 | on one slip of paper were the words, hospital, | 14:52:35 |
| 22 | comma, Norma Salazar and then a phone number. | 14:52:36 |
| 23 | Leonardo and then a phone number, another number | 14:52:39 |
| 24 | and then noemi.  And on the other slip of paper | 14:52:42 |

1  were the names Norma Salazar and a phone number          14:52:47

2  and the name Adriana Martinez and a phone number.        14:52:50

3      Were you present when any notes were taken           14:52:53

4  from Arturo Reyes?                                        14:52:57

5      A  I wasn't there because in that interview I         14:52:59

6  was off.                                                  14:53:03

7      Q  Did you ever see a copy of those notes            14:53:04

8  that were taken from his pocket?                          14:53:08

9      A  I don't recall ever seeing those.                 14:53:09

10      Q  Were you aware of the existence of those          14:53:11

11  notes when you went in and conducted your                14:53:15

12  interrogations of Ms. Mejia and Mr. Reyes the next       14:53:17

13  day?                                                     14:53:20

14      A  I don't recall.                                  14:53:20

15      Q  The next paragraph begins, "On 4, April          14:53:21

16  '98 at 0015 hours, Detective Guevara conducted his       14:53:35

17  first interview with Gabriel Solache in an               14:53:39

18  interview room at Area 5 detectives."                    14:53:43

19      Did you participate in the interview of              14:53:45

20  Gabriel Solache that is summarized here on pages         14:53:48

21  13 and 14?                                               14:53:52

22      MS. GOLDEN:  Foundation.                             14:53:53

23      A  No.  I did work on April 4th.  I believe I        14:53:56

24  started at 8:30 in the morning.                          14:53:59

| | | |
|---|---|---|
| 1 | Q  Based on this report, is it your | 14:54:01 |
| 2 | understanding that the interview of Gabriel | 14:54:03 |
| 3 | Solache was conducted by Detective Guevara? | 14:54:06 |
| 4 | A  That's what it says, yes. | 14:54:09 |
| 5 | Q  If you turn -- excuse me. | 14:54:10 |
| 6 | Turning to the top of Page 14, the first | 14:55:05 |
| 7 | full sentence there on the top of Page 14 says, | 14:55:24 |
| 8 | "The reporting detectives left Area 5 detectives | 14:55:26 |
| 9 | at 0630 hours with instructions for the detectives | 14:55:29 |
| 10 | who began work at 0730 hours to continue with the | 14:55:33 |
| 11 | questioning."  Do you see that? | 14:55:37 |
| 12 | A  Yes, I do. | 14:55:38 |
| 13 | Q  Who were the detectives who began work at | 14:55:39 |
| 14 | 0730 hours? | 14:55:45 |
| 15 | MS. GOLDEN:  Foundation. | 14:55:46 |
| 16 | A  I have no idea. | 14:55:50 |
| 17 | Q  In this case given -- this indicates that | 14:55:51 |
| 18 | Detective Guevara and Halvorsen left Area 5 at | 14:55:55 |
| 19 | 6:30 a.m., correct? | 14:55:59 |
| 20 | A  Yes. | 14:56:00 |
| 21 | Q  And at that time you had not had started | 14:56:00 |
| 22 | your shift yet; is that correct? | 14:56:03 |
| 23 | A  That's correct. | 14:56:04 |
| 24 | Q  So in this case on April 4th, when you | 14:56:05 |

| | | |
|---|---|---|
| 1 | came in, you did not have a face-to-face with | 14:56:08 |
| 2 | Detective Guevara or Halvorsen, correct? | 14:56:10 |
| 3 | A  That is correct. | 14:56:13 |
| 4 | Q  It says here that instructions were left. | 14:56:13 |
| 5 | What form did those instructions take? | 14:56:17 |
| 6 | A  I don't recall. | 14:56:20 |
| 7 | Q  Based on this report and the context here, | 14:56:22 |
| 8 | are you able to say whether they left something in | 14:56:27 |
| 9 | writing for you? | 14:56:29 |
| 10 | A  I couldn't be -- I couldn't tell you.  I | 14:56:30 |
| 11 | don't know. | 14:56:32 |
| 12 | Q  If -- do you know whether they called you; | 14:56:32 |
| 13 | is that something that they would do, call you | 14:56:36 |
| 14 | from home? | 14:56:38 |
| 15 | A  They did not call me. | 14:56:38 |
| 16 | Q  Okay.  So if they didn't call you, you | 14:56:40 |
| 17 | didn't have a face-to-face, is it your | 14:56:42 |
| 18 | understanding that something was written down for | 14:56:45 |
| 19 | you indicating you were to continue questioning? | 14:56:47 |
| 20 | A  They might have informed the sergeant who | 14:56:49 |
| 21 | starts earlier who then would have informed myself | 14:56:53 |
| 22 | and Detective Dickinson.  Detective Dickinson has | 14:56:57 |
| 23 | already been involved in this case I believe.  So | 14:57:01 |
| 24 | he would have some knowledge of what's going on. | 14:57:03 |

1   For me it would all be from scratch.                    14:57:09

2      Q   Other than it being communicated through          14:57:12

3   the sergeant, what are other possible ways this          14:57:16

4   instruction could have been communicated to you          14:57:18

5   all since there was no face-to-face and no phone         14:57:20

6   call?                                                    14:57:25

7      MS. BARBER:  Did you say since there was             14:57:25

8   no face to face?                                         14:57:27

9      MR. SWAMINATHAN:  (Nodding head.)                    14:57:29

10     MS. BARBER:  Sorry.  I misunderstood the             14:57:30

11  question.  I'm going to object to the form and          14:57:32

12  foundation.  That question calls for speculation.       14:57:34

13     A   If they didn't inform the sergeant or            14:57:37

14  anybody else, they could have left GPR.                  14:57:41

15     Q   Anything else?                                    14:57:44

16     MS. BARBER:  Same objections.                        14:57:46

17     A   Not that I can think.                            14:57:49

18     Q   As you sit here today, do you remember           14:57:50

19  what the instructions were that you were given?          14:57:53

20     A   No, I don't.                                     14:57:55

21     Q   Based on your experience would the               14:57:56

22  instruction be, hey, go interview this witness or        14:58:00

23  would there usually be some context?                     14:58:03

24     A   I would imagine there would be some              14:58:06

| | | |
|---|---|---|
| 1 | context what was going on.  Again, I don't know | 14:58:08 |
| 2 | what time Dickinson left on the 3rd.  I don't know | 14:58:11 |
| 3 | -- I can't remember exactly how much he really | 14:58:15 |
| 4 | knew what was going on at that time.  So that | 14:58:17 |
| 5 | would have made it different on what they had to | 14:58:20 |
| 6 | communicate.  If we were both coming in scratch, | 14:58:25 |
| 7 | it would be totally different.  But Detective | 14:58:29 |
| 8 | Dickinson was already involved, so he knew some | 14:58:31 |
| 9 | information.  He would have told me some | 14:58:36 |
| 10 | information and whatever the sergeant had.  I'm | 14:58:40 |
| 11 | assuming the sergeant had it.  Would have given it | 14:58:43 |
| 12 | to us. | 14:58:46 |
| 13 |     MS. GOLDEN:  Can I just ask, have we been | 14:59:00 |
| 14 | back on the record for an hour? | 14:59:02 |
| 15 |     THE VIDEOGRAPHER:  It's 3:19 and a half | 14:59:07 |
| 16 | elapsed. | 14:59:13 |
| 17 |     MS. GOLDEN:  Finish up what you're doing. | 14:59:13 |
| 18 |     MR. SWAMINATHAN:  This is a fine time. | 14:59:17 |
| 19 |     MS. GOLDEN:  All right.  You want to go | 14:59:18 |
| 20 | more or do you want to break for lunch? | 14:59:20 |
| 21 |     THE WITNESS:  Whatever. | 14:59:22 |
| 22 |     MS. GOLDEN:  Anyone else? | 14:59:23 |
| 23 |     THE WITNESS:  Break for lunch.  That's | 14:59:24 |
| 24 | fine. | 14:59:26 |

| | | |
|---|---|---|
| 1 | MR. SWAMINATHAN:  You want to make it | 14:59:26 |
| 2 | quick? | 14:59:28 |
| 3 | MS. GOLDEN:  Yeah. | 14:59:29 |
| 4 | THE WITNESS:  Sure. | 14:59:30 |
| 5 | THE VIDEOGRAPHER:  Off the record 2:59. | 14:59:30 |
| 6 | (A short break was taken.) | 15:35:04 |
| 7 | THE VIDEOGRAPHER:  Back on the record | 15:44:18 |
| 8 | 3:44. | 15:44:21 |
| 9 | BY MR. SWAMINATHAN: | 15:44:23 |
| 10 | Q  Sir, we left off on Page 14 of Exhibit 2. | 15:44:24 |
| 11 | A  Yes. | 15:44:27 |
| 12 | Q  At the top of that page, first full | 15:44:28 |
| 13 | paragraph begins, "On 4, April '98 at 1100 hours | 15:44:31 |
| 14 | reporting detectives returned to work at Area 5 | 15:44:35 |
| 15 | detectives."  That's a reference to Detectives | 15:44:38 |
| 16 | Guevara and Halvorsen, correct? | 15:44:42 |
| 17 | MS. GOLDEN:  Foundation.  Can you direct | 15:44:44 |
| 18 | me to the location. | 15:44:46 |
| 19 | MR. SWAMINATHAN:  Top of Page 14. | 15:44:47 |
| 20 | MS. GOLDEN:  Thank you. | 15:44:49 |
| 21 | Q  Correct? | 15:44:50 |
| 22 | A  I do believe so, yes. | 15:44:51 |
| 23 | MS. GOLDEN:  Wait.  Okay. | 15:44:53 |
| 24 | Q  It indicates Detectives Dickinson and | 15:44:54 |

| | | |
|---|---|---|
| 1 | Rutherford had resumed questioning of Adriana | 15:44:58 |
| 2 | Mejia using the services of Youth Officer Trevino. | 15:45:00 |
| 3 | Do you see that? | 15:45:04 |
| 4 | A   Yes. | 15:45:05 |
| 5 | Q   And this would be the first time that you | 15:45:05 |
| 6 | are identified as participating in the | 15:45:07 |
| 7 | investigation; is that correct? | 15:45:09 |
| 8 | A   That's correct. | 15:45:10 |
| 9 | Q   Prior to -- | 15:45:10 |
| 10 | Did you have any involvement in the | 15:45:11 |
| 11 | investigation before you went in and interviewed | 15:45:13 |
| 12 | Adriana Mejia? | 15:45:16 |
| 13 | A   No. | 15:45:17 |
| 14 | Q   Okay.  Did that interview -- | 15:45:17 |
| 15 | At the time you went in to conduct an | 15:45:21 |
| 16 | interview of Adriana Mejia, she had been | 15:45:24 |
| 17 | interviewed multiple times already by Detective | 15:45:28 |
| 18 | Guevara, correct? | 15:45:32 |
| 19 | MS. GOLDEN:  Foundation. | 15:45:33 |
| 20 | A   According to the report, she's been | 15:45:34 |
| 21 | interviewed.  I don't know how many times but yes. | 15:45:35 |
| 22 | Q   Did you have any understanding of what | 15:45:36 |
| 23 | occurred in those earlier interviews when you went | 15:45:38 |
| 24 | in for your interview? | 15:45:41 |

| 1 | A   Truthfully, I don't remember. | 15:45:42 |
| 2 | Q   It indicates that "The reporting | 15:45:48 |
| 3 | detectives were informed that Adriana Mejia had | 15:45:51 |
| 4 | fully implicated herself in the murders of Jacinta | 15:45:54 |
| 5 | and Mariano Soto and the kidnapping of Maria and | 15:45:59 |
| 6 | Santiago Soto." | 15:46:02 |
| 7 | Was -- is that true based on your | 15:46:03 |
| 8 | interview of Adriana Mejia? | 15:46:06 |
| 9 | MS. GOLDEN:  Form. | 15:46:08 |
| 10 | A   Again, it's in the report.  I don't | 15:46:09 |
| 11 | remember.  So I have no reason to doubt the report | 15:46:11 |
| 12 | that was prepared. | 15:46:12 |
| 13 | Q   When you guys interviewed her, she | 15:46:14 |
| 14 | implicated herself in the murders, fair? | 15:46:18 |
| 15 | A   That would be fair to say according to the | 15:46:21 |
| 16 | GPR's that Eddie made. | 15:46:24 |
| 17 | Q   Then it says, Youth officer Trevino | 15:46:26 |
| 18 | informed the reporting detectives that Adriana | 15:46:29 |
| 19 | Mejia now admitted to being in the victim's | 15:46:30 |
| 20 | apartment with Arturo Reyes when he stabbed and | 15:46:33 |
| 21 | killed the two victims. | 15:46:36 |
| 22 | MS. GOLDEN:  You misread it. | 15:46:38 |
| 23 | Q   I'll read it again. | 15:46:40 |
| 24 | "Youth Officer Trevino informed the | 15:46:41 |

| | |
|---|---|
| 1 | reporting detectives that Adriana Mejia now | 15:46:41 |
| 2 | admitted to being in the victim's apartment with | 15:46:43 |
| 3 | Arturo Leon when he stabbed and killed the two | 15:46:48 |
| 4 | victims." | 15:46:51 |
| 5 | Is that also true in terms of information | 15:46:52 |
| 6 | that Ms. Mejia provided to you during your | 15:46:54 |
| 7 | interview? | 15:46:56 |
| 8 | MS. GOLDEN:  Form. | 15:46:57 |
| 9 | A  It goes back to I don't remember the | 15:46:58 |
| 10 | conversation but I do believe -- I have no reason | 15:46:59 |
| 11 | to doubt the report. | 15:47:02 |
| 12 | Q  Okay.  And it says next that "She denied | 15:47:03 |
| 13 | during this interview that Gabriel Solache was | 15:47:06 |
| 14 | involved in this incident." | 15:47:09 |
| 15 | Is it true that Gabriel Solache denied | 15:47:10 |
| 16 | being involved in the incident during your | 15:47:10 |
| 17 | interview -- strike that. | 15:47:14 |
| 18 | Is it true that Adriana Mejia denied that | 15:47:14 |
| 19 | Gabriel Solache was involved in the incident | 15:47:18 |
| 20 | during your interview of her? | 15:47:21 |
| 21 | A  Again, I have no independent recollection | 15:47:22 |
| 22 | of the conversations.  But according to the | 15:47:24 |
| 23 | report, it's there.  I have no reason to doubt | 15:47:27 |
| 24 | what's in the report. | 15:47:29 |

| | | |
|---|---|---|
| 1 | Q  Okay.  If an individual -- strike that. | 15:47:30 |
| 2 | If a suspect makes affirmative statements | 15:47:34 |
| 3 | about another individual being not involved in the | 15:47:37 |
| 4 | crime, is that pertinent information that you | 15:47:43 |
| 5 | document? | 15:47:45 |
| 6 | MS. GOLDEN:  Incomplete hypothetical. | 15:47:46 |
| 7 | A  Yes. | 15:47:51 |
| 8 | Q  Okay.  In this case Adriana Mejia was | 15:47:51 |
| 9 | making incriminating statements and she was | 15:47:57 |
| 10 | denying that Gabriel Solache was involved, | 15:47:59 |
| 11 | correct? | 15:48:02 |
| 12 | MS. GOLDEN:  Foundation. | 15:48:03 |
| 13 | A  That's according to the report, yes. | 15:48:05 |
| 14 | Q  Is that information you would document? | 15:48:07 |
| 15 | A  Yes. | 15:48:11 |
| 16 | Q  It next indicates that -- let's pause | 15:48:11 |
| 17 | there. | 15:48:20 |
| 18 | Let's take a look at Exhibit 4.  It is | 15:48:20 |
| 19 | Bates stamped Exhibit RFC Solache-Reyes 260. | 15:48:23 |
| 20 | Sir, you agree with me this is a copy -- | 15:48:33 |
| 21 | sorry.  Let me be clear for the record. | 15:48:35 |
| 22 | Exhibit 4 is Bates stamped RFC | 15:48:37 |
| 23 | Solache-Reyes 260 through 265. | 15:48:41 |
| 24 | Sir, this GPR prepared by your partner, | 15:48:44 |

| | | |
|---|---|---|
| 1 | Detective Dickinson, regarding your interview of | 15:48:49 |
| 2 | Adriana Mejia? | 15:48:53 |
| 3 | A  Yes, multiple GPR's.  More than one page, | 15:48:55 |
| 4 | yes. | 15:48:57 |
| 5 | Q  Multiple pages all documenting the | 15:48:57 |
| 6 | interview of Adriana Mejia, correct? | 15:49:00 |
| 7 | A  That's correct. | 15:49:02 |
| 8 | Q  Okay.  When -- you reviewed this GPR in | 15:49:02 |
| 9 | preparation for this deposition, correct? | 15:49:04 |
| 10 | A  Did I read it over very carefully?  No.  I | 15:49:07 |
| 11 | looked at it and I seen what it was and that's | 15:49:10 |
| 12 | what I did. | 15:49:12 |
| 13 | Q  When you read this GPR, did you find that | 15:49:12 |
| 14 | there was any information in the GPR that was | 15:49:15 |
| 15 | false based on your memory of the interview of | 15:49:17 |
| 16 | Adriana Mejia? | 15:49:20 |
| 17 | MS. GOLDEN:  Foundation and foundation for | 15:49:21 |
| 18 | the question. | 15:49:22 |
| 19 | A  I don't remember the interview.  So it | 15:49:26 |
| 20 | would be impossible for me to read it and find it | 15:49:29 |
| 21 | false. | 15:49:33 |
| 22 | Q  Looking at the top of the page, you | 15:49:33 |
| 23 | indicated previously that the handwriting at the | 15:49:37 |
| 24 | top of this page where it lists the date of the | 15:49:40 |

1   case report, of the original case report, and this    15:49:43

2   report and the classification victim's name and       15:49:46

3   beat were filled out by you, correct?                 15:49:49

4       A   That's correct.                               15:49:51

5       Q   Where it says 1035 hours, was that filled     15:49:51

6   out by you?                                           15:49:55

7       A   Where does it say 1035?                       15:49:56

8       Q   On the upper left side see where it says      15:49:59

9   1035 hours?                                           15:50:02

10      A   No.                                           15:50:03

11      Q   That's not your handwriting?                  15:50:03

12      A   No.                                           15:50:05

13      Q   Is that Dickinson's handwriting?              15:50:05

14      A   It's not mine.                                15:50:08

15      Q   Do you know whether it's Dickinson            15:50:10

16  handwriting?                                          15:50:12

17      A   I have no idea.                               15:50:12

18      Q   The interview that you conducted with         15:50:13

19  Adriana Mejia documented in this GPR, where did       15:50:16

20  that interview take place in Area 5?                  15:50:19

21      A   Again, to the best of my recollection,        15:50:21

22  it's foggy.  I believe it was in what was called      15:50:24

23  the homicide office which would have been at the      15:50:27

24  north end of the west wall.                           15:50:30

1      Q   Who all participated in the interview                    15:50:31

2  based on your memory?                                           15:50:37

3      A   Myself, Dickinson, and Trevino.                         15:50:39

4      Q   You have a memory of Trevino being there?               15:50:43

5      A   You know, I couldn't interview without him             15:50:46

6  or somebody because she only spoke Spanish and I                15:50:49

7  only spoke English.  I know Trevino was involved                15:50:52

8  in the case, and he was on the paper as being                   15:50:55

9  there so...                                                     15:50:57

10     Q   Based on your memory alone, could you say              15:50:58

11  whether it was Trevino or Guevara who translated?              15:51:01

12     A   It would be Trevino, not Guevara.                      15:51:05

13     Q   Because you remember it?                               15:51:08

14     A   Yes.                                                   15:51:09

15     Q   And do you remember Dickinson being there?             15:51:09

16     A   Yes.                                                   15:51:11

17     Q   Okay.  And how did the process occur of                15:51:11

18  you guys questioning Adriana Mejia given that you              15:51:14

19  had a Spanish speaker?                                         15:51:18

20     A   The questions would be asked to Trevino to             15:51:19

21  relay to Mejia and her answers would go to Trevino             15:51:25

22  and they would be relayed to us.                               15:51:30

23     Q   Did you have the ability to assess whether             15:51:33

24  Trevino was accurately translating your questions              15:51:36

1    and her answers?                                    15:51:39

2        MS. BARBER:  Objection.  I believe this          15:51:39

3    was asked and answered yesterday.                    15:51:40

4        A  I don't speak Spanish, so, no, I would        15:51:44

5    have no idea what was being said.                    15:51:46

6        Q  The GPR that's been filled in here, is it     15:51:48

7    your understanding this is filled in based on what   15:51:51

8    Trevino's translation of what Adriana Mejia was      15:51:54

9    telling you?                                         15:51:57

10       A  Yes.                                          15:51:58

11       Q  Did Dickinson speak any Spanish?              15:51:58

12       A  To the best of my knowledge, no.              15:52:02

13       Q  Was it your understanding that he was also    15:52:04

14   relying on Trevino's translation of what Adriana     15:52:06

15   Mejia was telling you?                               15:52:10

16       A  I do believe so because I don't believe he    15:52:11

17   spoke Spanish.                                       15:52:14

18       Q  How long did this interview last?             15:52:15

19       A  Again, I don't remember.                      15:52:17

20       Q  At the time of this interview, Adriana        15:52:19

21   Mejia was in custody as well as Arturo Reyes and     15:52:22

22   Gabriel Solache, correct?                            15:52:26

23       MS. GOLDEN:  Foundation.                         15:52:28

24       A  I believe they're all in custody from the    15:52:32

| | | |
|---|---|---|
| 1 | reports, but I couldn't tell you. | 15:52:35 |
| 2 | Q  Why was she interviewed first? | 15:52:37 |
| 3 | MS. GOLDEN:  Foundation for the question. | 15:52:39 |
| 4 | A  I have no idea. | 15:52:43 |
| 5 | Q  Looking at the bottom of this report, it | 15:52:45 |
| 6 | contains your signature and Mr. Dickinson's, | 15:52:49 |
| 7 | correct? | 15:52:52 |
| 8 | A  That's correct. | 15:52:52 |
| 9 | Q  And then it's approved by Sergeant | 15:52:53 |
| 10 | Cappatelli? | 15:52:56 |
| 11 | A  That's correct. | 15:52:56 |
| 12 | Q  And what date did he approve the report? | 15:52:57 |
| 13 | MS. GOLDEN:  Foundation. | 15:52:59 |
| 14 | A  It appears on April 7th. | 15:53:00 |
| 15 | Q  Is that April 7th or -- sorry.  Is that -- | 15:53:02 |
| 16 | why is that April 7th and not July 4th? | 15:53:08 |
| 17 | MS. GOLDEN:  Argumentative. | 15:53:11 |
| 18 | Q  Help me understand. | 15:53:12 |
| 19 | A  If you look on top, it's very easy.  The | 15:53:13 |
| 20 | police department always uses day, month, year. | 15:53:16 |
| 21 | Q  Got it. | 15:53:19 |
| 22 | A  Normally you write in the month.  For some | 15:53:20 |
| 23 | reason Sergeant Cappatelli didn't.  Maybe for | 15:53:24 |
| 24 | speed whatever. | 15:53:27 |

| | | |
|---|---|---|
| 1 | Q  And as you sit here, are you able to say | 15:53:27 |
| 2 | with certainty that this indicates April 7th and | 15:53:30 |
| 3 | not July 4th, or is that just what your assumption | 15:53:33 |
| 4 | is? | 15:53:37 |
| 5 | A  That would be my assumption.  I couldn't | 15:53:37 |
| 6 | tell you when he signed them because I don't | 15:53:42 |
| 7 | recall exactly. | 15:53:46 |
| 8 | Q  Turning to the time there that we looked | 15:53:46 |
| 9 | at, 1035 hours? | 15:53:53 |
| 10 | A  Um-hmm. | 15:53:55 |
| 11 | Q  Does that indicate the time which you all | 15:53:55 |
| 12 | conducted your interview of Ms. Mejia? | 15:53:58 |
| 13 | MS. GOLDEN:  Foundation. | 15:54:01 |
| 14 | A  I don't recall.  I couldn't recall the | 15:54:04 |
| 15 | time it started or couldn't recall the time it | 15:54:07 |
| 16 | ended, either one. | 15:54:10 |
| 17 | Q  Is there some indication of approximately | 15:54:11 |
| 18 | when this interview was occurring? | 15:54:12 |
| 19 | MS. GOLDEN:  Foundation. | 15:54:15 |
| 20 | Q  Is that fair? | 15:54:16 |
| 21 | A  That would be my only -- be the only | 15:54:17 |
| 22 | reason I could think it was written there. | 15:54:19 |
| 23 | Q  When you were taking down notes of an | 15:54:21 |
| 24 | interview of a suspect, would you typically write | 15:54:25 |

| | | |
|---|---|---|
| 1 | down the time? | 15:54:28 |
| 2 | A  Me, personally, no. | 15:54:30 |
| 3 | Q  Couldn't the time in which an interview | 15:54:32 |
| 4 | was conducted be important information? | 15:54:35 |
| 5 | MS. GOLDEN:  Form. | 15:54:37 |
| 6 | A  Yes, usually when I -- in most cases when | 15:54:43 |
| 7 | I took the GPR, I knew what time it was and so I | 15:54:44 |
| 8 | could put that in the report. | 15:54:47 |
| 9 | Q  And you'd remember whenever you were | 15:54:49 |
| 10 | writing the report later what time it was, even if | 15:54:50 |
| 11 | you didn't have it written down? | 15:54:53 |
| 12 | A  Basically, yes. | 15:54:55 |
| 13 | Q  Looking at this report, looking at this -- | 15:54:56 |
| 14 | these notes, if you turn to Page 2, which is RFC | 15:55:02 |
| 15 | Solache-Reyes 261, you see in the middle of the | 15:55:17 |
| 16 | page it says, "Mentioned to Guevara the name Norma | 15:55:28 |
| 17 | Salazar.  Norma Salazar is in fact Arturo."  Do | 15:55:31 |
| 18 | you see that? | 15:55:39 |
| 19 | A  Yes. | 15:55:39 |
| 20 | Q  So there, if I understand correctly, you | 15:55:40 |
| 21 | all were asking her about her earlier statement to | 15:55:43 |
| 22 | Detective Guevara that a woman named Norma Salazar | 15:55:46 |
| 23 | had been involved; is that right? | 15:55:51 |
| 24 | MS. GOLDEN:  Please read the question | 15:56:04 |

| | | |
|---|---|---|
| 1 | back. | 15:56:06 |
| 2 | (Record read back by the | 15:56:06 |
| 3 | reporter.) | 15:56:06 |
| 4 | MS. GOLDEN: Foundation. | 15:56:06 |
| 5 | A Reading this, you got to go a little -- | 15:56:11 |
| 6 | Q Sure. | 15:56:14 |
| 7 | A -- before and read it. They're talking | 15:56:14 |
| 8 | about Arturo. I think somebody, again, I don't | 15:56:17 |
| 9 | remember, must have said Norma Salazar is -- I | 15:56:22 |
| 10 | don't know how it came up. It did. And we | 15:56:28 |
| 11 | weren't asking her about -- we wouldn't have went | 15:56:32 |
| 12 | back and asked her to repeat her previous | 15:56:40 |
| 13 | statement I don't think. We'd ask her what was | 15:56:42 |
| 14 | going on. I really don't remember. I just -- in | 15:56:47 |
| 15 | past practice how we would do it. And then she | 15:56:52 |
| 16 | would be giving up her statement. Why that's in | 15:56:55 |
| 17 | there, I couldn't tell you exactly why it came up. | 15:57:00 |
| 18 | If Danny Trevino would have asked her about it, if | 15:57:05 |
| 19 | Dickinson asked her about it. I really didn't | 15:57:09 |
| 20 | know who Norma Salazar was. | 15:57:11 |
| 21 | Q Dickinson had been there the day before | 15:57:13 |
| 22 | when there was a follow-up investigation on Norma | 15:57:15 |
| 23 | Salazar, correct? | 15:57:18 |
| 24 | MS. GOLDEN: Foundation. | 15:57:19 |

| | | |
|---|---|---|
| 1 | A   I can't tell you exactly.  I don't know. | 15:57:22 |
| 2 | You'd have to look at the reports to see where | 15:57:23 |
| 3 | Dickinson was. | 15:57:26 |
| 4 | Q   Based on the cleared closed report that we | 15:57:26 |
| 5 | went through a little earlier today, Dickinson had | 15:57:29 |
| 6 | been there on the 3rd with this follow-up with | 15:57:33 |
| 7 | Norma Salazar, correct? | 15:57:35 |
| 8 | MS. GOLDEN:  Foundation. | 15:57:38 |
| 9 | A   If you read the report, go back, I believe | 15:57:39 |
| 10 | Kevin McDonald.  I didn't see Eddie's name | 15:57:42 |
| 11 | mentioned there. | 15:57:46 |
| 12 | Q   Okay.  Here she's basically indicating in | 15:57:46 |
| 13 | the past, as we read from the GPR, that when she | 15:57:49 |
| 14 | previously mentioned the name Norma Salazar to | 15:57:51 |
| 15 | Detective Guevara, Norma Salazar was in fact | 15:57:54 |
| 16 | Arturo, correct? | 15:57:57 |
| 17 | MS. GOLDEN:  Foundation. | 15:57:59 |
| 18 | Q   She was basically saying I lied to | 15:57:59 |
| 19 | Detective Guevara earlier when I said Norma | 15:58:02 |
| 20 | Salazar, correct? | 15:58:04 |
| 21 | MS. GOLDEN:  Foundation. | 15:58:05 |
| 22 | A   That's what it appears to be, yes. | 15:58:07 |
| 23 | Q   And she was admitting to you all at that | 15:58:08 |
| 24 | time that she had previously lied to the -- to | 15:58:11 |

```
1    Detective Guevara, correct?                        15:58:14
2         MS. GOLDEN:  Foundation.                      15:58:15
3      A  Based on what this says, she was now          15:58:18
4    giving sort of a different account of what         15:58:24
5    happened.                                          15:58:28
6      Q  And then a couple sentences after that it     15:58:28
7    says, 0100 hours gave Arturo $600.  Do you see     15:58:31
8    that?                                              15:58:37
9      A  Yes.                                          15:58:37
10     Q  And in the course of that interview, she      15:58:38
11   basically indicated to you that she got Arturo     15:58:43
12   involved by offering to pay him $600, correct?     15:58:46
13        MS. GOLDEN:  Okay.  Form and foundation.      15:58:50
14     A  That's what it says.                          15:58:53
15     Q  Did you ask her how she got $600 to pay       15:58:55
16   Arturo?                                            15:58:58
17     A  I don't -- I don't recall the                 15:58:59
18   conversation.  I don't know if he did or he        15:59:01
19   didn't.                                            15:59:04
20     Q  Did it seem like a lot of -- would you        15:59:04
21   agree with me $600 for an immigrant woman whose    15:59:06
22   husband was a laborer is a lot of money?           15:59:10
23     A  Yes.                                          15:59:13
24     Q  And did you have some questions about how     15:59:13
```

| | | |
|---|---|---|
| 1 | she was coming up with $600? | 15:59:18 |
| 2 | A  Again, if you go back to the previous | 15:59:20 |
| 3 | report, previous interviews with her that were | 15:59:24 |
| 4 | written, that maybe Detective Dickinson knows -- | 15:59:27 |
| 5 | knew about or Trevino knew about.  She mentioned | 15:59:31 |
| 6 | $600 there I believe.  Did they ask her then?  I | 15:59:36 |
| 7 | don't know. | 15:59:40 |
| 8 | Q  On the next page she goes through and | 15:59:40 |
| 9 | explains the setup for -- | 15:59:52 |
| 10 | MS. GOLDEN:  Can you -- read the whole | 15:59:53 |
| 11 | page why don't you. | 15:59:56 |
| 12 | A  This is page -- | 15:59:58 |
| 13 | Q  This is Page 262.  At the top of the page, | 16:00:00 |
| 14 | I'm going to start reading this.  It says, she | 16:00:03 |
| 15 | told her husband to wait in the lobby while she | 16:00:04 |
| 16 | met Arturo in the lot.  In other words, her | 16:00:08 |
| 17 | husband was at the hospital but she was going out | 16:00:10 |
| 18 | to meet with Arturo, correct? | 16:00:12 |
| 19 | MS. GOLDEN:  I'm going to object to your | 16:00:13 |
| 20 | summarizing the notes that another detective wrote | 16:00:15 |
| 21 | and asking him to interpret them. | 16:00:19 |
| 22 | Q  And she indicated she came back in and | 16:00:22 |
| 23 | told Rosauro to go home while she had to stay. | 16:00:24 |
| 24 | That's the portion of what Dickinson wrote in his | 16:00:27 |

| 1 | GPR, correct? | 16:00:31 |
| 2 | A  That's correct. | 16:00:31 |
| 3 | Q  Any reason to dispute that that was | 16:00:32 |
| 4 | information that Adriana Mejia was giving you all | 16:00:34 |
| 5 | at that time? | 16:00:37 |
| 6 | A  No. | 16:00:37 |
| 7 | Q  And then a little further down it says at | 16:00:38 |
| 8 | 8:00 a.m. -- | 16:00:43 |
| 9 | MS. GOLDEN:  All right, no, hold on. | 16:00:44 |
| 10 | Before you ask anymore questions. | 16:00:46 |
| 11 | Mr. Rutherford, could you please read the | 16:00:48 |
| 12 | whole page. | 16:00:53 |
| 13 | THE WITNESS:  Sure. | 16:00:55 |
| 14 | MS. GOLDEN:  Unless you have an objection | 16:00:55 |
| 15 | to that. | 16:00:56 |
| 16 | MR. SWAMINATHAN:  You can -- I think it's | 16:00:56 |
| 17 | improper.  But I haven't even asked my question | 16:00:57 |
| 18 | yet.  But that's fine. | 16:00:59 |
| 19 | MS. GOLDEN:  Yeah, but you're just picking | 16:01:00 |
| 20 | pieces out, and I actually think he should read | 16:01:01 |
| 21 | the whole thing, but I'll be happy with just the | 16:01:05 |
| 22 | page. | 16:01:09 |
| 23 | Q  Ready? | 16:02:18 |
| 24 | A  Sure. | 16:02:19 |

| | | |
|---|---|---|
| 1 | Q  So on this page, the section you just | 16:02:19 |
| 2 | read, she indicates at the top of the page, she | 16:02:21 |
| 3 | told her husband to wait in the lobby while she | 16:02:23 |
| 4 | met Arturo in the lot.  She came back and told | 16:02:26 |
| 5 | Rosauro to go home while she had to stay.  In the | 16:02:30 |
| 6 | middle it says, At 0800, 27 March Rosauro took her | 16:02:33 |
| 7 | to UIC clinic, took blood it looks like.  After | 16:02:37 |
| 8 | her and Rosauro had breakfast she would call him | 16:02:43 |
| 9 | later.  She says during breakfast she told Rosauro | 16:02:54 |
| 10 | she was going to call Lupe but she met Arturo in | 16:02:57 |
| 11 | the parking lot.  And at the bottom of the page | 16:03:02 |
| 12 | she says she goes back and tells Rosauro go home. | 16:03:04 |
| 13 | I will call later.  This is in reference to | 16:03:07 |
| 14 | March 28th, and she follows the woman, Jacinta | 16:03:11 |
| 15 | Soto, on the Damen bus. | 16:03:16 |
| 16 | Do you have any reason to dispute that | 16:03:18 |
| 17 | this is all information Adriana Mejia told you | 16:03:20 |
| 18 | during your interview of her? | 16:03:23 |
| 19 | MS. GOLDEN:  Objection, form and | 16:03:24 |
| 20 | foundation to your additions that you made. | 16:03:25 |
| 21 | Q  Go ahead. | 16:03:27 |
| 22 | A  It's in the report, so I have no reason to | 16:03:28 |
| 23 | doubt the accuracy of this GPR. | 16:03:30 |
| 24 | Q  Did you find it strange that Adriana was | 16:03:33 |

1  basically telling you that her husband, Rosauro,          16:03:35

2  was taking her to all these places where she was          16:03:38

3  meeting Arturo Reyes but he had no idea what was          16:03:41

4  going on?                                                16:03:45

5      MS. BARBER:  Objection, form.                        16:03:46

6  A  I don't remember the conversation.  I was            16:03:48

7  just taking it from what Trevino was saying.  And        16:03:53

8  it's hard to then, you know, bring up other              16:03:57

9  questions.  You know, we bring up some, but did it       16:04:00

10 seem odd?  No.                                           16:04:06

11 Q  As you're reading it now, does it seem odd            16:04:07

12 that she's basically saying her husband took her         16:04:11

13 to all these places where she was meeting Arturo         16:04:13

14 to plan this crime but Rosauro had no idea?              16:04:16

15     MS. BARBER:  Objection, form.                        16:04:20

16 A  There's no -- nothing to say that Rosauro             16:04:22

17 knew about it.                                           16:04:25

18 Q  Did you ever suspect Rosauro Mejia?                   16:04:26

19 A  Me?                                                   16:04:29

20     MS. BARBER:  Objection, form.                        16:04:31

21 A  I didn't have much to do with this case               16:04:35

22 except this interview and the other interview, so        16:04:37

23 I didn't, no.                                            16:04:41

24 Q  Do you agree -- strike that.                          16:04:41

1       Based on the information that is in this          16:04:43

2   GPR about what Adriana Mejia was telling you,         16:04:47

3   would it make sense to you for Rosauro Mejia to       16:04:50

4   have been a suspect?                                  16:04:55

5       A   Again --                                      16:04:56

6       MS. BARBER:  Objection to form.                   16:04:56

7       A   Was he interviewed before?  I don't know.     16:04:58

8   You'd have to look at the whole investigation and     16:05:01

9   know what was going on.  At that point I didn't.      16:05:04

10      Q   Did you at any point think it was             16:05:07

11  implausible that she was meeting Arturo Reyes in      16:05:10

12  the parking lot of the hospital while her husband     16:05:12

13  was there innocently?                                 16:05:15

14      MS. GOLDEN:  Form.                                16:05:17

15      MS. BARBER:  Form.                                16:05:17

16      A   No, I mean, it wasn't implausible.            16:05:21

17      Q   Turning to the next page, about two           16:05:25

18  sentences down it says, Rosauro was not at home.      16:05:38

19  At 1840 she called again.  Spoke to Rosauro and       16:05:42

20  told him.  Said pretty baby girl with wine stains     16:05:46

21  on her neck.  But baby okay.  Then it says, she       16:05:50

22  learned this from Arturo because Arturo saw the       16:05:54

23  three wine spots when the wind blew blanket from      16:05:57

24  baby's face.  Do you see that?                        16:06:03

| | | |
|---|---|---|
| 1 | A  Yes. | 16:06:05 |
| 2 | Q  That first portion where she says she said | 16:06:06 |
| 3 | a pretty baby girl with wine stains on the neck. | 16:06:09 |
| 4 | You -- | 16:06:16 |
| 5 | MS. GOLDEN:  It doesn't say she said. | 16:06:16 |
| 6 | MR. SWAMINATHAN:  Objection to form? | 16:06:18 |
| 7 | MS. GOLDEN:  And foundation and you're | 16:06:20 |
| 8 | misstating the record. | 16:06:22 |
| 9 | Q  In the notes it says, "Said pretty girl | 16:06:24 |
| 10 | with wine stains on neck" -- | 16:06:26 |
| 11 | MS. GOLDEN:  Yeah, but you said she | 16:06:29 |
| 12 | said -- | 16:06:30 |
| 13 | MR. SWAMINATHAN:  Can I ask my question, | 16:06:30 |
| 14 | please? | 16:06:30 |
| 15 | MS. GOLDEN:  Well -- | 16:06:30 |
| 16 | MR. SWAMINATHAN:  I'm asking a new | 16:06:32 |
| 17 | question.  That's why I asked a new question. | 16:06:33 |
| 18 | MS. GOLDEN:  Don't act like I'm the jerk | 16:06:35 |
| 19 | for pointing out that you're misstating the | 16:06:37 |
| 20 | record. | 16:06:40 |
| 21 | MR. SWAMINATHAN:  This is a documentation | 16:06:40 |
| 22 | of what she said to them, but I was fine changing | 16:06:42 |
| 23 | it.  Let's keep going. | 16:06:44 |
| 24 | Q  In this note it says, "Said pretty baby | 16:06:46 |

1    girl with wine stains on neck."                16:06:49

2         You knew right away that that statement   16:06:51

3    was problematic, right?                        16:06:56

4         MS. BARBER:  Objection, form.             16:06:59

5      A  I don't know why it's problematic.        16:07:05

6      Q  Did you guys question her right away about 16:07:06

7    how she could know that the baby had wine stains 16:07:09

8    on the neck when she hadn't even received the baby 16:07:12

9    yet according to this version of events?       16:07:15

10     A  Like I said, I don't remember much.  And  16:07:19

11   if it did, it didn't occur to me.              16:07:21

12     Q  Okay.  Did you believe her story about the 16:07:24

13   wind blowing the blanket from the baby's face so 16:07:32

14   she could see a wine spot on the baby's neck?   16:07:35

15        MS. GOLDEN:  Wait a second.  Can you      16:07:41

16   repeat the question, please, repeat the question. 16:07:50

17             (Record read back by the             16:07:50

18             reporter.)                           16:08:01

19        MS. GOLDEN:  You are misstating the       16:08:01

20   record.                                        16:08:03

21        MR. SWAMINATHAN:  Go ahead.               16:08:03

22        MS. GOLDEN:  No.                          16:08:03

23        MR. SWAMINATHAN:  I'm not misstating the  16:08:07

24   record.                                        16:08:07

1     MS. GOLDEN:  Yo are.  It says Arturo saw          16:08:07

2  the three wine spots.  Now --                        16:08:10

3     MR. SWAMINATHAN:  Yes, that is correct.           16:08:11

4     MS. GOLDEN:  Okay.                                16:08:13

5     Q  Did you not -- go ahead.  You can answer       16:08:13

6  my question.                                         16:08:16

7     A  What's your question?                          16:08:16

8     Q  Did you believe her when she told you that     16:08:17

9  the wind had blown the blanket from the baby so      16:08:20

10 Arturo could see wine stains on the baby's neck?     16:08:25

11    A  Again, I don't remember much of the            16:08:28

12 conversation -- I don't remember any of it           16:08:30

13 actually.  However, I don't see any reason why I     16:08:32

14 would doubt that if that's what she said.            16:08:35

15    Q  At the bottom -- lower down the page it        16:08:38

16 says, Arturo was wearing black pants denim and       16:08:47

17 blue nylon hooded jacket --                          16:08:51

18    MS. GOLDEN:  Before you start reading, can        16:08:53

19 you give me a second to get where you are.  I        16:08:55

20 can't -- can you help me out?                        16:09:02

21    MR. SWAMINATHAN:  Look about five lines           16:09:03

22 up.  Here's where I'm going to start, "Got there     16:09:05

23 about 0400."  Do you see that?                        16:09:08

24    MS. GOLDEN:  I'm sorry -- okay, got it.           16:09:11

| | | |
|---|---|---|
| 1 | Q  "Waited about one and a half hours.  About | 16:09:14 |
| 2 | 0530 with baby wrapped in stained white blanket, | 16:09:16 |
| 3 | yellow pajamas.  Arturo told her there was a baby | 16:09:22 |
| 4 | boy back there.  Come take a look." | 16:09:26 |
| 5 | So in this statement, if I understand | 16:09:28 |
| 6 | correctly, she was indicating to you that Arturo | 16:09:30 |
| 7 | had gone into the home and taken the baby while | 16:09:32 |
| 8 | she was out in the car, correct? | 16:09:36 |
| 9 | MS. GOLDEN:  Foundation. | 16:09:38 |
| 10 | A  I don't know where it says she was in a | 16:09:48 |
| 11 | car.  So -- | 16:09:50 |
| 12 | Q  Putting aside the car, in this section she | 16:09:54 |
| 13 | was telling you that Arturo had gone to the home | 16:09:57 |
| 14 | and gotten the baby.  She had not gone in with | 16:09:59 |
| 15 | him, correct? | 16:10:02 |
| 16 | MS. GOLDEN:  Foundation and form. | 16:10:02 |
| 17 | A  It doesn't say where she was at. | 16:10:04 |
| 18 | Q  Understood.  I'm not saying where she was | 16:10:06 |
| 19 | at. | 16:10:09 |
| 20 | I'm just asking she -- according to this | 16:10:09 |
| 21 | section we just read, she was not -- she didn't go | 16:10:10 |
| 22 | into the home with Arturo Reyes when he got the | 16:10:13 |
| 23 | baby, correct? | 16:10:16 |
| 24 | MS. GOLDEN:  Foundation. | 16:10:17 |

1    A   Like I said, I don't remember the          16:10:19

2   conversation.  Reading this, where was she at?   16:10:23

3   Was she in one room of the apartment and he went 16:10:26

4   into the back bedroom?  I don't know.  And if --  16:10:29

5   back then I would have had a different            16:10:34

6   understanding maybe of it.  Now I don't remember  16:10:36

7   the conversation, but it doesn't say where she    16:10:38

8   was.  She could have been in the front of the     16:10:40

9   apartment, and I don't know the layout of the     16:10:42

10  apartment.  Was there a back bedroom that the     16:10:46

11  babies were in?  I don't know.                    16:10:49

12   Q   The next entry, left the baby in the back    16:10:50

13  seat, went to apartment through the back door.  Do 16:10:54

14  you see that?                                     16:10:58

15       MS. GOLDEN:  It doesn't -- it doesn't say    16:11:06

16  that.  It says, "Left baby in back seat, period.  16:11:08

17  Went to" --                                       16:11:13

18       MR. SWAMINATHAN:  Apartment.                 16:11:14

19       MS. GOLDEN:  Apartment.                      16:11:14

20       MR. SWAMINATHAN:  Through the back.          16:11:15

21       MS. GOLDEN:  "Through the back, period.      16:11:17

22  Door was ajar."  It doesn't say went through the  16:11:18

23  back door.                                        16:11:20

24       MR. SWAMINATHAN:  Went through the door --   16:11:22

| | | |
|---|---|---|
| 1 | yes, went through the back, period. | 16:11:23 |
| 2 | Q  Okay.  Go ahead.  Does that indicate to | 16:11:25 |
| 3 | you that she was indicating -- did she indicate to | 16:11:27 |
| 4 | you when you interviewed her that she waited in | 16:11:29 |
| 5 | the car while Arturo Reyes went and got the baby? | 16:11:31 |
| 6 | MS. GOLDEN:  He's not asking you what the | 16:11:34 |
| 7 | paper says.  He's asking -- | 16:11:36 |
| 8 | A  Yeah, I don't remember what she said.  I | 16:11:39 |
| 9 | was still reading the paper but -- | 16:11:40 |
| 10 | MS. GOLDEN:  I know. | 16:11:42 |
| 11 | A  I don't remember what she said because I | 16:11:43 |
| 12 | don't remember. | 16:11:45 |
| 13 | Q  Based on Dickinson's GPR, do you have any | 16:11:45 |
| 14 | reason to dispute -- strike that. | 16:11:48 |
| 15 | Do you have any reason to dispute | 16:11:49 |
| 16 | Dickinson's GPR indicating that she told you all | 16:11:51 |
| 17 | that Arturo Reyes had gone into the house and | 16:11:56 |
| 18 | gotten the baby while she waited in the car? | 16:11:58 |
| 19 | MS. GOLDEN:  Foundation. | 16:12:01 |
| 20 | A  It doesn't say she waited in the car while | 16:12:14 |
| 21 | Arturo went in and got the baby.  It could have | 16:12:17 |
| 22 | been -- you know, according to this, did she go in | 16:12:20 |
| 23 | and come back out and put the baby in the back | 16:12:23 |
| 24 | seat and then Arturo came back out and said -- or | 16:12:26 |

1    came out and said, there's another boy in there,            16:12:29

2    come take a look.  That could have happened.               16:12:31

3    Again, I don't remember the conversation.  So I            16:12:34

4    don't remember the follow-ups, questions.  It              16:12:37

5    doesn't specifically tell me exactly where she was         16:12:41

6    when it all happened.                                      16:12:45

7        Q  Okay.  Turning to the next page, at the             16:12:47

8    bottom of the page, the last five sentences.  I            16:12:51

9    just want to ask you about two sentences there.            16:12:54

10        MS. GOLDEN:  Okay.  But read the whole                16:12:56

11   page before you answer.                                    16:12:57

12        MR. SWAMINATHAN:  This a very limited                 16:12:59

13   question.  He doesn't need to read the whole page.         16:13:01

14        MS. GOLDEN:  We'll see.                               16:13:01

15        Q  I'm just asking you a few questions -- one         16:13:02

16   question.                                                  16:13:03

17        Near the bottom of the page it reads,                 16:13:04

18   Arturo told he I won't get rid of the innocent             16:13:06

19   boy.  Do you see at the bottom of the page where           16:13:11

20   I'm reading?  Arturo told -- it's about one, two,          16:13:13

21   three, four -- five lines up.  Arturo told he --           16:13:20

22        MS. GOLDEN:  Wait.  Are you there yet?               16:13:23

23        THE WITNESS:  Yes, I think so.                        16:13:27

24        Q  Okay.  Sentence reads, Arturo told he             16:13:29

| | | |
|---|---|---|
| 1 | won't get rid of innocent boy.  Okay.  And if you | 16:13:33 |
| 2 | skip a sentence, the next sentence says, Arturo | 16:13:36 |
| 3 | told her he wouldn't -- he would take care of the | 16:13:39 |
| 4 | boy later on.  She understood Arturo was going to | 16:13:42 |
| 5 | kill the boy.  Do you understand those two | 16:13:45 |
| 6 | statements in this report to be contradictory? | 16:13:48 |
| 7 | MS. GOLDEN:  Can you read the whole page | 16:13:51 |
| 8 | before you answer the question. | 16:13:53 |
| 9 | MR. SWAMINATHAN:  There's no reason to | 16:13:54 |
| 10 | read the whole page to -- | 16:13:55 |
| 11 | MS. GOLDEN:  You want him to read the | 16:13:56 |
| 12 | whole document before you ask him a question about | 16:13:59 |
| 13 | it. | 16:14:01 |
| 14 | MR. SWAMINATHAN:  No, because he doesn't | 16:14:01 |
| 15 | need to -- | 16:14:02 |
| 16 | MS. GOLDEN:  At least read the sentence | 16:14:02 |
| 17 | that he skipped. | 16:14:04 |
| 18 | MR. SWAMINATHAN:  That's fine. | 16:14:05 |
| 19 | MS. GOLDEN:  All right.  Good.  Actually, | 16:14:06 |
| 20 | start with the Arturo was getting nervous.  That's | 16:14:14 |
| 21 | where the subject starts.  Eight lines up. | 16:14:17 |
| 22 | Did you read it? | 16:14:55 |
| 23 | THE WITNESS:  I read it. | 16:14:56 |
| 24 | Q  Are those two sentences in contradiction | 16:14:57 |

1  that I just read, Arturo told he I won't get rid                   16:15:00

2  of innocent boy.  And Arturo told her he would                     16:15:04

3  take care of the boy later on.  She understood                     16:15:08

4  Arturo was going to kill boy?                                      16:15:11

5      A  Are they contradictory?  Reading this, it                   16:15:14

6  sounds like she's saying she didn't believe what                   16:15:21

7  Arturo was telling her.                                            16:15:24

8      Q  Did you have questions about it when she                    16:15:25

9  was telling you these two things?                                  16:15:27

10         MS. GOLDEN:  Foundation.                                   16:15:29

11     A  I don't remember exactly.  I don't                          16:15:31

12 remember at all, as I said before.  My guess is if                 16:15:34

13 Arturo told her he would take care of the boy, she                 16:15:41

14 might have been asked what do you think that meant                 16:15:48

15 and then she would reply I understood Arthur was                   16:15:51

16 going to kill the boy.                                             16:15:56

17     Q  Turning to the last page, about four                        16:15:57

18 sentences, four lines down it says about 0430 to                   16:16:01

19 0500?                                                              16:16:06

20     A  Yes.                                                        16:16:07

21     Q  What is this indicating happened at 0430                    16:16:07

22 or 0500?                                                           16:16:11

23         MS. GOLDEN:  Foundation.                                   16:16:14

24         MS. BARBER:  And form.                                     16:16:15

| | | |
|---|---|---|
| 1 | A   That the -- | 16:16:58 |
| 2 | MS. GOLDEN:   What's the question? | 16:17:00 |
| 3 | Q   0430 to -- you now read that page? | 16:17:03 |
| 4 | A   Yes. | 16:17:06 |
| 5 | Q   What does that signify? | 16:17:06 |
| 6 | MS. GOLDEN:   Form. | 16:17:09 |
| 7 | A   Sounds like she's talking about what | 16:17:11 |
| 8 | happened in the apartment. | 16:17:13 |
| 9 | Q   So and she's indicating what happened in | 16:17:14 |
| 10 | the apartment happened between 4:30 and 5:00 a.m.? | 16:17:16 |
| 11 | MS. GOLDEN:   Foundation. | 16:17:20 |
| 12 | A   That's what my guess would be, yes. | 16:17:22 |
| 13 | Q   Do you have reason to dispute that that's | 16:17:24 |
| 14 | what she indicated to you all when you conducted | 16:17:27 |
| 15 | your interview of her? | 16:17:30 |
| 16 | MS. GOLDEN:   Form and foundation. | 16:17:32 |
| 17 | A   Again, I have no independent recollection, | 16:17:34 |
| 18 | but that's in the report and that's what it reads | 16:17:37 |
| 19 | to me.  That's what happened at the time she | 16:17:41 |
| 20 | thought. | 16:17:44 |
| 21 | Q   And in that paragraph you just read below | 16:17:44 |
| 22 | where it indicates 4:30 to 5:00 a.m., she goes | 16:17:47 |
| 23 | through and gives -- Adriana Mejia goes through | 16:17:52 |
| 24 | and gives a description of how they went about | 16:17:54 |

| | | |
|---|---|---|
| 1 | obtaining the children, correct? | 16:17:57 |
| 2 | MS. GOLDEN:  Foundation. | 16:18:03 |
| 3 | A  Best I can recollect, yeah.  I'm having a | 16:18:12 |
| 4 | hard time reading it. | 16:18:15 |
| 5 | Q  Having read that section, basically she | 16:18:17 |
| 6 | was saying that Arturo Reyes stabbed Mariano and | 16:18:20 |
| 7 | Jacinta Soto, correct? | 16:18:25 |
| 8 | A  That's what it looks like, yes. | 16:18:25 |
| 9 | Q  And that she didn't stab either of those | 16:18:26 |
| 10 | individuals, correct? | 16:18:29 |
| 11 | A  It's not saying she stabbed them. | 16:18:29 |
| 12 | Q  Did you believe her that it was Arturo who | 16:18:31 |
| 13 | did all this and she had not stabbed anybody? | 16:18:34 |
| 14 | MS. BARBER:  Objection, form. | 16:18:40 |
| 15 | MS. GOLDEN:  Foundation. | 16:18:41 |
| 16 | A  Like I say, I don't remember the | 16:18:44 |
| 17 | conversation at all.  However, in any case like | 16:18:47 |
| 18 | this I would sit there and I -- I'd have no reason | 16:18:51 |
| 19 | to doubt it, but I don't know if I'd believe her. | 16:18:55 |
| 20 | Further investigation would reveal, you know, what | 16:18:58 |
| 21 | happened. | 16:19:02 |
| 22 | MS. GOLDEN:  Wait.  Were you finished? | 16:19:02 |
| 23 | A  Well, I was going to say it all depends on | 16:19:04 |
| 24 | -- somebody will talk to the other people | 16:19:07 |

1   involved.  They're going to give statements.  It          16:19:09

2   might differ from what she says.  You would come           16:19:11

3   back then and confront her with those statements.          16:19:13

4       Q  Was this written at the same time as the            16:19:17

5   rest of the report?  Strike that.                          16:19:19

6       Was this section that begins with about                16:19:21

7   0430 to 500, was that written at the same time as          16:19:23

8   the rest of the GPR; do you know?                          16:19:27

9       A  I have no idea.                                      16:19:29

10      Q  Do you recall anything else being said              16:19:30

11  during the course of your interview of Adriana             16:19:36

12  Mejia that's not documented here?                          16:19:39

13      MS. GOLDEN:  Okay.  Foundation for the                 16:19:41

14  question.  How many times does he have to say he           16:19:43

15  doesn't remember it?  Asked and answered a zillion         16:19:45

16  times.                                                     16:19:48

17      A  I don't remember the conversation.  I               16:19:50

18  don't remember what was -- this being -- I mean,           16:19:52

19  this conversation.  So I don't recall if there was         16:19:55

20  anything else said.                                        16:19:58

21      Q  Did she end the conversation or did you             16:19:59

22  all ask as many questions as you wanted to before          16:20:02

23  you left?                                                  16:20:06

24      MS. BARBER:  Objection, form.                          16:20:07

1    A   I would have to say the conversation would          16:20:12

2   have ended mutually.                                     16:20:14

3    Q   Were you able to say whether Detective              16:20:16

4   Dickinson was taking these notes as you were             16:20:19

5   talking to her or whether he took them afterward         16:20:22

6   or do you not know?                                      16:20:25

7    A   I do believe he was taking them as we               16:20:26

8   talked to her.  It's -- like I say, that's why I         16:20:30

9   remember being -- I believe that -- in the               16:20:37

10  homicide room and Ed was taking the notes.               16:20:39

11   Q   Did you do a supplemental report, you or            16:20:42

12  Mr. Dickinson, about this interview?                     16:20:47

13   A   No.                                                 16:20:48

14   Q   Why not?                                            16:20:49

15   A   Again, these GPR's -- let me say something          16:20:50

16  here.  Yesterday I think I said that I handed the        16:20:57

17  GPR's over to Ernie Halvorsen.  If I did, I              16:21:00

18  misspoke.  I was wrong.  Somehow Ernie got them.         16:21:03

19  Now, Ernie incorporated this interview into the          16:21:08

20  closing sup, as we see and dealing with other            16:21:11

21  interviews she said.  I can't say I gave them            16:21:16

22  those GPR's or I can't say Eddie gave them to him.       16:21:21

23  I can't even say he read them and used them              16:21:25

24  because I wasn't there when he typed the report.         16:21:27

| | | |
|---|---|---|
| 1 | He had access to them is what I meant to say. | 16:21:30 |
| 2 | Q  Understood. | 16:21:33 |
| 3 | This interview that's documented in | 16:21:33 |
| 4 | Dickinson's GPR should have been written up in a | 16:21:35 |
| 5 | supplementary report, correct? | 16:21:41 |
| 6 | MS. BARBER:  Objection, form. | 16:21:42 |
| 7 | A  Again, her statements revised by her later | 16:21:46 |
| 8 | on to -- I'm not sure, Guevara, I'm not sure. | 16:21:52 |
| 9 | That statement is put in there.  Now, when I would | 16:21:57 |
| 10 | type the report, I'd put this in there and then | 16:22:03 |
| 11 | I'd put in the second statement.  Detective | 16:22:07 |
| 12 | Halvorsen types up his reports and he types them | 16:22:11 |
| 13 | up the way he types them up. | 16:22:13 |
| 14 | Q  Is the fact that there were subsequent | 16:22:15 |
| 15 | statements she gave that were documented in | 16:22:16 |
| 16 | supplementary reports, does that make it okay to | 16:22:18 |
| 17 | not document this earlier statement in a | 16:22:21 |
| 18 | supplementary report? | 16:22:23 |
| 19 | MS. BARBER:  Objection, form, foundation, | 16:22:25 |
| 20 | misstates the witness's testimony. | 16:22:26 |
| 21 | A  Well, it's documented that it happened and | 16:22:30 |
| 22 | there is a GPR on it. | 16:22:32 |
| 23 | Q  Looking at Exhibit 2, the paragraph we | 16:22:34 |
| 24 | read -- | 16:22:39 |

1      MS. GOLDEN:  Hold on.  Exhibit 2.          16:22:39

2      MR. SWAMINATHAN:  Page 14.                 16:22:42

3      MS. GOLDEN:  Do you have Exhibit 2,        16:22:44

4  Page 14 in front of you?                       16:22:46

5      THE WITNESS:  Yes.                         16:22:48

6      MS. GOLDEN:  All right.  Can you just give 16:22:49

7  me a second to get there.                      16:22:49

8    Q  In that --                                16:22:55

9      MS. GOLDEN:  Hold on --                    16:22:55

10      MR. SWAMINATHAN:  I'm not required to read 16:22:57

11  the document.  Let me ask my question.  You can 16:22:59

12  tell me --                                     16:23:01

13      MS. GOLDEN:  Well, you're starting with   16:23:01

14  Exhibit 2, Page 14.  May I please have the     16:23:03

15  opportunity to get to Exhibit 2?              16:23:06

16      MR. SWAMINATHAN:  Yes.                     16:23:08

17      MS. GOLDEN:  Thank you.                    16:23:08

18    Q  Would you agree with me Detective         16:23:09

19  Halvorsen doesn't write anything about what    16:23:11

20  occurred during the course of the interview of 16:23:13

21  Adriana Mejia, correct?                        16:23:14

22      MS. BARBER:  Object to the form.           16:23:18

23    A  He doesn't write the -- a short summary of 16:23:20

24  it basically by saying informed that Adriana Mejia 16:23:27

1    had fully implicated herself in the murders of        16:23:32

2    Jacinta and Mariano Soto and the kidnapping of        16:23:37

3    Maria and Santiago Soto.  And then Danny Trevino      16:23:40

4    informed the RD's that Adriana Mejia now admitted     16:23:49

5    to being in the victim's apartment with Arturo        16:23:53

6    Leon when he stabbed and killed the two victims.      16:23:56

7    She denied during this interview that Solache was     16:24:01

8    there.                                                16:24:05

9         Q  Go ahead.                                     16:24:06

10        A  That's a summary.  Now, is it obviously       16:24:06

11   the whole page?  No.                                  16:24:10

12        Q  Did you expect that when you gave -- when     16:24:11

13   Dickinson's notes were given to Halvorsen that he     16:24:17

14   was going to write up what happened in the           16:24:20

15   interview in his supplementary report?               16:24:22

16        A  I can't say that I had any expectations of    16:24:25

17   anything.                                             16:24:28

18        Q  After going through the GPR today, does       16:24:32

19   this refresh your recollection at all about your      16:24:34

20   interview of Adriana Mejia?                           16:24:37

21        A  With the words that were spoken and said,     16:24:39

22   no.                                                   16:24:42

23        Q  Looking at Exhibit 2, the next paragraph      16:24:42

24   indicates that, On 4 of April of '98 at 1500 hours    16:24:46

| | | |
|---|---|---|
| 1 | Detective Guevara conducted his second interview | 16:24:51 |
| 2 | with Arturo DeLeon in an interview room at Area 5 | 16:24:54 |
| 3 | detectives.  Did you participate in that | 16:24:58 |
| 4 | interview? | 16:25:02 |
| 5 |     A  I don't believe I did. | 16:25:03 |
| 6 |     Q  Is it your understanding that that | 16:25:04 |
| 7 | interview was conducted by Detective Guevara? | 16:25:06 |
| 8 |        MS. GOLDEN:  Foundation. | 16:25:08 |
| 9 |     A  The report says Detective Guevara did the | 16:25:12 |
| 10 | interview.  I didn't write the report but that's | 16:25:16 |
| 11 | what it indicates. | 16:25:18 |
| 12 |     Q  Do you have any reason to dispute that it | 16:25:18 |
| 13 | was Detective Guevara who conducted that interview | 16:25:20 |
| 14 | of Arturo Reyes? | 16:25:23 |
| 15 |     A  No, I don't. | 16:25:25 |
| 16 |     Q  Turning to the next page, Page 15, first | 16:25:26 |
| 17 | full paragraph is about two thirds of the way down | 16:25:29 |
| 18 | the page.  And it begins, The reporting detectives | 16:25:32 |
| 19 | contacted felony review and requested that a | 16:25:36 |
| 20 | Spanish speaking state's attorney be assigned to | 16:25:39 |
| 21 | this investigation.  On 4, April '98 at | 16:25:42 |
| 22 | 1700 hours, ASA Dave Navarro arrived at Area 5 | 16:25:44 |
| 23 | detectives.  ASA Navarro was joined later that | 16:25:49 |
| 24 | evening by ASA O'Malley and Brualdi.  These states | 16:25:53 |

1  attorneys reviewed the available police reports          16:25:56

2  and the handwritten statements of Guadalupe Mejia.          16:25:58

3       You understand David Navarro did speak          16:26:01

4  Spanish, correct?          16:26:05

5       MR. BURNS:  Objection, foundation.          16:26:06

6      A  I couldn't tell you who Dave Navarro is, I          16:26:10

7  don't know if he's a state's attorney.  I don't          16:26:13

8  know if he speaks Spanish.          16:26:14

9      Q  At the time that -- according to this          16:26:16

10  report, Navarro arrived at 5:00 p.m., correct?          16:26:17

11      A  Yes.          16:26:20

12      Q  And at the point that he arrived, there          16:26:21

13  were these earlier statements that had been          16:26:24

14  obtained from Arturo Reyes and Adriana Mejia,          16:26:26

15  correct?          16:26:31

16       MR. BURNS:  Objection, foundation.          16:26:31

17       MS. GOLDEN:  Thank you.          16:26:33

18      A  They made statements, yes.          16:26:34

19      Q  Okay.  At that point could Mr. Navarro          16:26:36

20  have conducted an interview of Mr. Reyes or          16:26:41

21  Mr. Mejia?          16:26:45

22       MR. BURNS:  Objection, foundation.          16:26:46

23       MR. BRENER:  Joined.          16:26:48

24      A  Could he have?  If he arrived and he          16:26:51

| | | |
|---|---|---|
| 1 | wanted to interview him, I guess he could have. | 16:26:55 |
| 2 | Q  Was there anything based on what you've | 16:26:58 |
| 3 | seen in this report so far that would indicate | 16:26:59 |
| 4 | that it would not have been appropriate for | 16:27:01 |
| 5 | Mr. Navarro to interview those individuals at that | 16:27:04 |
| 6 | point? | 16:27:06 |
| 7 | MR. BURNS:  Objection, foundation. | 16:27:06 |
| 8 | A  I don't know the rules and everything in | 16:27:09 |
| 9 | the state's attorney's office.  So I couldn't say | 16:27:12 |
| 10 | if it would have been right for him to interview | 16:27:15 |
| 11 | him or not. | 16:27:18 |
| 12 | Q  At that point at 5:00 p.m., when Navarro | 16:27:18 |
| 13 | arrived, both Mr. Reyes and Ms. Mejia had made | 16:27:22 |
| 14 | incriminating statements to detectives, correct? | 16:27:25 |
| 15 | A  That's correct. | 16:27:28 |
| 16 | Q  Would that be a time when typically a | 16:27:28 |
| 17 | state's attorney might then interview those | 16:27:33 |
| 18 | suspects who have given incriminating statements? | 16:27:36 |
| 19 | MS. GOLDEN:  Form. | 16:27:39 |
| 20 | MR. BURNS:  Objection, foundation. | 16:27:40 |
| 21 | MS. GOLDEN:  Form. | 16:27:41 |
| 22 | A  That's a state's attorney's call.  And I | 16:27:42 |
| 23 | don't make the calls for the assistant state's | 16:27:45 |
| 24 | attorneys. | 16:27:47 |

1       Q   Looking at the next paragraph, it says, On                16:27:47

2   4, April '98 at 1800 hours Detective Guevara                      16:27:54

3   conducted a third interview with Arturo Leon in                   16:27:58

4   the conference room at Area 5 detectives.  Present                16:28:02

5   for this interview were Detective Guevara,                        16:28:04

6   Dickinson, Rutherford, Trevino.  During this                      16:28:06

7   interview Arturo Leon repeated the information                    16:28:11

8   that he had already provided to Detective Guevara.                16:28:15

9   Do you see that?                                                  16:28:17

10      A   Yes.                                                      16:28:20

11      Q   Do you have any reason to dispute the                     16:28:20

12  information written there?                                        16:28:22

13      A   I have no recollection of it, but I have                  16:28:23

14  no reason to say it didn't occur.                                 16:28:26

15      Q   Okay.  It indicates that the interview was                16:28:30

16  conducted at 1800 hours which is 6:00 p.m.  That's                16:28:32

17  after your shift, correct?                                        16:28:36

18      A   Yes.                                                      16:28:37

19      Q   Does that give you any indication one way                 16:28:38

20  or the other about whether you were there for this                16:28:40

21  interview at 6:00 p.m.?                                           16:28:43

22      A   If the report says I was there, I imagine                 16:28:44

23  I was there.  I don't recall it, but I'm not going                16:28:47

24  to dispute the report.                                            16:28:49

1      Q   And if you were there, you were getting                16:28:51

2   overtime?                                                     16:28:53

3      A   Yes.                                                    16:28:53

4      Q   Okay.  How was that interview conducted?               16:28:53

5          MS. BARBER:  Objection, form.                          16:28:59

6      A   Like I said, I don't remember the                      16:29:02

7   interview.  So I couldn't tell you how it was                 16:29:04

8   conducted.                                                    16:29:06

9      Q   Do you remember anybody who was at that                16:29:07

10  interview?                                                    16:29:09

11     A   Again, I don't remember the interview.                 16:29:09

12     Q   Do you remember who was translating in                 16:29:11

13  that interview, whether it was Guevara or Trevino?            16:29:15

14     A   Again, I don't remember the interview.                 16:29:17

15     Q   Can you say anything, as you sit here                  16:29:19

16  today, about how that interview went down in terms            16:29:21

17  of who asked the questions, who did the                       16:29:24

18  translating, and so on?                                       16:29:27

19     A   No, because I don't recall the interview.              16:29:28

20     Q   What was the purpose of having you and                 16:29:30

21  Dickinson and Trevino go in to interview Arturo               16:29:37

22  Reyes at 6:00 p.m. after Guevara had just                     16:29:42

23  interviewed him at 1500 hours and gotten a                    16:29:45

24  statement from him?                                           16:29:49

| | | |
|---|---|---|
| 1 | A  I thought about that.  And like I said, I | 16:29:50 |
| 2 | don't remember this interview.  However, one of | 16:29:57 |
| 3 | the reasons that I could -- I could think of would | 16:30:01 |
| 4 | be that the statements that Ms. Mejia gave us, | 16:30:05 |
| 5 | that we can convey to Arturo DeLeon and maybe he | 16:30:10 |
| 6 | was denying it.  I don't know.  And then he would | 16:30:17 |
| 7 | see that, yeah, okay, so she told these officers | 16:30:21 |
| 8 | which would be Trevino, me, and Dickinson about | 16:30:24 |
| 9 | this. | 16:30:28 |
| 10 | Q  Why would you need to be there if Arturo | 16:30:29 |
| 11 | -- if Guevara had already gotten that information | 16:30:34 |
| 12 | from her?  I'm confused. | 16:30:37 |
| 13 | MS. GOLDEN:  Foundation. | 16:30:39 |
| 14 | A  Again, maybe he didn't believe Guevara.  I | 16:30:41 |
| 15 | don't know. | 16:30:44 |
| 16 | Q  As you sit here today, are you speculating | 16:30:44 |
| 17 | about what would be the reason -- | 16:30:47 |
| 18 | A  This is all speculation on my part because | 16:30:47 |
| 19 | I don't remember. | 16:30:51 |
| 20 | Q  Looking at this, are you able to tell why | 16:30:51 |
| 21 | it is that you all went in with Detective Guevara | 16:30:54 |
| 22 | to conduct another interview with Arturo Reyes | 16:30:56 |
| 23 | after Guevara had just gotten the statement? | 16:31:01 |
| 24 | MS. GOLDEN:  Can you read the question | 16:31:17 |

| | | |
|---|---|---|
| 1 | back. | 16:31:17 |
| 2 | (Record read back by the | 16:31:17 |
| 3 | reporter.) | 16:31:18 |
| 4 | MS. GOLDEN:  Form, asked and answered. | 16:31:18 |
| 5 | A  No, but -- and I want to point out this is | 16:31:26 |
| 6 | in the conference room.  This is in the south of | 16:31:28 |
| 7 | the building.  This is not in an interview room | 16:31:31 |
| 8 | that's small.  This is in a lot bigger room.  So | 16:31:34 |
| 9 | with four people in there it wouldn't be -- five | 16:31:37 |
| 10 | people in there, ten people in there, it wouldn't | 16:31:41 |
| 11 | be overcrowded, if you know what I'm saying. | 16:31:44 |
| 12 | Q  Yeah. | 16:31:46 |
| 13 | A  It's not -- I don't want to give the | 16:31:47 |
| 14 | impression that it's in a little room and all | 16:31:49 |
| 15 | these big detectives are coming in there | 16:31:51 |
| 16 | intimidating him.  That's not the way it happened. | 16:31:56 |
| 17 | It's -- the room is probably at least this size, | 16:31:58 |
| 18 | if not bigger. | 16:32:02 |
| 19 | Q  My question is only this, when you read | 16:32:03 |
| 20 | this, did you ask yourself, wait, why were we even | 16:32:06 |
| 21 | going in to conduct another interview when Guevara | 16:32:10 |
| 22 | had just gotten the statement from him? | 16:32:13 |
| 23 | MS. GOLDEN:  Asked and answered. | 16:32:15 |
| 24 | MS. BARBER:  Form, misstates the evidence. | 16:32:16 |

1    A  I don't know why it happened.                    16:32:18

2    Q  Did it seem odd to you or stand out to you       16:32:20

3  when you read this?                                   16:32:23

4      MS. GOLDEN:  Asked and answered.                  16:32:24

5    A  Again, I'm assuming back then there must         16:32:26

6  have been a reason.  I can't think of it now.         16:32:28

7    Q  And at the point in time that this               16:32:30

8  interview is occurring, according to this report,     16:32:35

9  we agree State's Attorney Navarro was already at      16:32:39

10  the station, correct?                                16:32:43

11      MS. GOLDEN:  Foundation.                          16:32:45

12      MR. BURNS:  Foundation.                           16:32:46

13    A  According to the reports, yes.                   16:32:48

14    Q  Why did you all go in to interview              16:32:49

15  Mr. Reyes without the state's attorney?              16:32:52

16    A  Again, I don't remember the interview.  I       16:32:55

17  don't know why it occurred.  So I can't tell you.    16:32:57

18    Q  At that point in time when you all went         16:33:00

19  in, it would have been perfectly appropriate to go   16:33:02

20  in with the state's attorney, if you wanted to,      16:33:05

21  correct?                                             16:33:08

22      MR. BRENER:  Form and foundation.                16:33:09

23    A  Again, you would have to review all the         16:33:11

24  statements everybody is making how our -- you        16:33:13

| | | |
|---|---|---|
| 1 | know, what are they saying?  Are people blaming | 16:33:19 |
| 2 | the other thing and taking all blame off them. | 16:33:21 |
| 3 | And somebody else is putting all the blame on them | 16:33:25 |
| 4 | and they're taking it all themselves.  So you try | 16:33:28 |
| 5 | -- there's no reason for the state's attorney to | 16:33:32 |
| 6 | hear all that.  You want to try to -- unless | 16:33:34 |
| 7 | that's where it's over it.  You try to, as I said | 16:33:37 |
| 8 | earlier, get everything in a clear picture and get | 16:33:43 |
| 9 | to the truth of the matter before you bring in the | 16:33:45 |
| 10 | state's attorney. | 16:33:47 |
| 11 | Q  So you wouldn't bring in the state's | 16:33:49 |
| 12 | attorney until you got a clear picture of how all | 16:33:52 |
| 13 | the pieces fit together? | 16:33:55 |
| 14 | MS. GOLDEN:  Form. | 16:33:57 |
| 15 | A  Basically, yeah, if I'm confused in a case | 16:33:59 |
| 16 | am I going to bring in a state's attorney who's | 16:34:03 |
| 17 | going to be probably as much confused, if not | 16:34:06 |
| 18 | more, than me.  No.  So I got to figure in a case | 16:34:08 |
| 19 | like this where you got three different people, | 16:34:11 |
| 20 | you're going to try to figure out exactly what | 16:34:14 |
| 21 | happened.  And if they're all saying different | 16:34:17 |
| 22 | things, you're still going to try to figure out | 16:34:19 |
| 23 | exactly what happened. | 16:34:21 |
| 24 | Q  If suspects are all telling you different | 16:34:22 |

1   things, at that point you wouldn't involve the        16:34:24

2   state's attorney; is that right?                      16:34:27

3       MS. BARBER:  Objection, form, foundation.         16:34:28

4     A   Every case is different, so I can't say          16:34:31

5   whether I would or I wouldn't.  It all depends on     16:34:33

6   that case.                                            16:34:36

7     Q   It indicates in the next portion of that         16:34:37

8   paragraph, "Arturo Leon was asked what he did with   16:34:40

9   the pants and shoes that he wore the morning of      16:34:45

10  the murders.  He stated that he was still wearing    16:34:47

11  the same pants and shoes."  Did he tell you that     16:34:50

12  during your interview?                                16:34:53

13      MS. GOLDEN:  Foundation.                          16:35:03

14    A   Again, that's what it reads.  I don't            16:35:06

15  remember the conversation.  So I have no reason to   16:35:09

16  doubt what the report says, but I have no            16:35:11

17  independent recollection of it.                       16:35:15

18    Q   Did it strike you as odd that you would          16:35:16

19  voluntarily come to the police station wearing the  16:35:19

20  same clothes he used in the murder?                   16:35:22

21      MS. BARBER:  Form.                                16:35:24

22    A   You know, anybody who goes in and kills          16:35:28

23  two people and steals babies is odd, okay?  Would   16:35:32

24  he still be wearing the same clothes?  I can't say  16:35:36

| | | |
|---|---|---|
| 1 | why he would do it.  Would I do it?  I wouldn't go | 16:35:40 |
| 2 | in and kill two babies -- or kill two people and | 16:35:42 |
| 3 | kidnap the babies.  But would I still be wearing | 16:35:47 |
| 4 | the same clothes if I comitted a crime?  I don't | 16:35:51 |
| 5 | think so, but I never thought about it.  Is it | 16:35:54 |
| 6 | odd?  No.  That's the clothes he had. | 16:35:54 |
| 7 | Q  Okay.  Let's take a look at Exhibit 5. | 16:36:18 |
| 8 | MS. GOLDEN:  How much time have we been | 16:36:21 |
| 9 | back?  How much time do we have left? | 16:36:26 |
| 10 | THE VIDEOGRAPHER:  We have about | 16:36:29 |
| 11 | 40 minutes left. | 16:36:30 |
| 12 | MS. GOLDEN:  Do you want to take a quick | 16:36:31 |
| 13 | break?  Let's take a quick break. | 16:36:33 |
| 14 | MR. SWAMINATHAN:  Okay. | 16:36:36 |
| 15 | MS. GOLDEN:  Like really quick if we | 16:36:36 |
| 16 | could. | 16:36:42 |
| 17 | THE VIDEOGRAPHER:  Off the record at 4:36. | 16:36:42 |
| 18 | (A short break was taken.) | 16:56:13 |
| 19 | THE VIDEOGRAPHER:  Back on the record | 16:56:13 |
| 20 | 4:56. | 16:56:16 |
| 21 | BY MR. SWAMINATHAN: | 16:56:18 |
| 22 | Q  I think where we left off we were looking | 16:56:22 |
| 23 | at Exhibit 5. | 16:56:25 |
| 24 | A  We didn't get to there yet though. | 16:56:37 |

| | | |
|---|---|---|
| 1 | Q   So looking at Exhibit 5, this is | 16:56:41 |
| 2 | Dickinson's GPR regarding your interview of Arturo | 16:56:43 |
| 3 | DeLeon Reyes, correct? | 16:56:47 |
| 4 | A   It appears to be so, yes. | 16:56:50 |
| 5 | Q   And this GPR, it doesn't indicate anywhere | 16:56:51 |
| 6 | who all participated in the interrogation of | 16:56:58 |
| 7 | Mr. Reyes, correct? | 16:57:01 |
| 8 | MS. GOLDEN:  So read the whole thing. | 16:57:02 |
| 9 | THE WITNESS:  Okay. | 17:00:17 |
| 10 | Q   Have you had a chance to review Exhibit 5? | 17:00:18 |
| 11 | A   Yes, I did. | 17:00:20 |
| 12 | Q   I forgot my question.  Here we go. | 17:00:21 |
| 13 | This GPR doesn't indicate anywhere who all | 17:00:29 |
| 14 | participated in the interrogation of Mr. Reyes, | 17:00:33 |
| 15 | correct? | 17:00:36 |
| 16 | A   That's correct. | 17:00:36 |
| 17 | Q   And you have no memory of the | 17:00:36 |
| 18 | interrogation, correct? | 17:00:38 |
| 19 | A   I have no memory. | 17:00:39 |
| 20 | Q   In terms of who participated in the | 17:00:40 |
| 21 | interrogation -- strike that. | 17:00:42 |
| 22 | When you -- strike that. | 17:00:44 |
| 23 | In terms of who participated in the | 17:00:49 |
| 24 | interrogation, are you depending entirely on | 17:00:51 |

1    what's written in the cleared closed report?          17:00:53

2         MS. BARBER:  Form, argumentative.                17:00:56

3    A  Yes, I am.                                          17:00:59

4    Q  Looking at the top of this page, the               17:01:00

5    information in the date of original case report,      17:01:14

6    date of this report, defense classification,          17:01:16

7    victim's name and beat assigned is all your           17:01:20

8    handwriting, correct?                                 17:01:24

9    A  That's correct.                                     17:01:25

10   Q  And then the information in the body of            17:01:26

11   this is the handwriting of Mr. Dickinson; is that     17:01:28

12   correct?                                               17:01:31

13   A  I believe so, yes.                                  17:01:31

14   Q  Where it says Arturo DeLeon Reyes at the           17:01:32

15   top of first page, is that your handwriting?          17:01:36

16   A  No, sir.                                            17:01:39

17   Q  Is that Mr. Dickinson's handwriting?               17:01:39

18   A  His printing, yes, sir.                             17:01:42

19   Q  And then there's a cross-out and then HRS;         17:01:45

20   do you see that?                                       17:01:49

21   A  Yeah.                                               17:01:51

22   Q  Does that indicate -- HRS indicates hours,         17:01:51

23   correct?                                               17:01:55

24   A  Usually, yes.                                       17:01:55

| | | |
|---|---|---|
| 1 | Q  In other words, what time something | 17:01:57 |
| 2 | happened? | 17:01:59 |
| 3 | A  Um-hmm. | 17:02:00 |
| 4 | Q  Is that a yes? | 17:02:00 |
| 5 | A  Yes. | 17:02:01 |
| 6 | Q  Okay.  Looking at this GPR, it appears | 17:02:02 |
| 7 | that somebody has crossed out what time this | 17:02:06 |
| 8 | interview occurred; do you agree? | 17:02:10 |
| 9 | MS. GOLDEN:  Foundation. | 17:02:12 |
| 10 | A  I don't know what's crossed out.  I don't | 17:02:15 |
| 11 | know if it's time -- I can't tell. | 17:02:17 |
| 12 | Q  Does this report indicate anywhere else | 17:02:22 |
| 13 | what time this interview occurred? | 17:02:26 |
| 14 | A  No, it doesn't. | 17:02:27 |
| 15 | Q  Do you have any explanation for why | 17:02:28 |
| 16 | there's a cross-out right before hours? | 17:02:31 |
| 17 | A  I don't recall the interview, so I don't | 17:02:33 |
| 18 | recall this GPR.  I can't recall what's crossed | 17:02:37 |
| 19 | out. | 17:02:40 |
| 20 | Q  Did you cross out what's written right | 17:02:40 |
| 21 | before hours? | 17:02:43 |
| 22 | A  Like I said, I don't recall the GPR, I | 17:02:44 |
| 23 | don't recall the interview.  So I can't recall | 17:02:50 |
| 24 | crossing anything out.  I don't believe I crossed | 17:02:52 |

| | | |
|---|---|---|
| 1 | anything out, but I don't have any memory of it. | 17:02:55 |
| 2 | Q  Do you have any reason to believe you | 17:02:58 |
| 3 | would have crossed out the time that the interview | 17:02:59 |
| 4 | was conducted? | 17:03:02 |
| 5 | A  I don't see any reason why it would be | 17:03:03 |
| 6 | crossed out. | 17:03:06 |
| 7 | Q  If the time written on the GPR was wrong, | 17:03:06 |
| 8 | you could cross it out and you could write in the | 17:03:11 |
| 9 | correct time, correct? | 17:03:14 |
| 10 | A  That's correct. | 17:03:15 |
| 11 | Q  Is that what you would do if you'd written | 17:03:15 |
| 12 | down the time and you had it wrong; you'd cross it | 17:03:17 |
| 13 | out and write down the right time? | 17:03:20 |
| 14 | A  I would imagine, yes. | 17:03:22 |
| 15 | Q  Do you believe Detective Dickinson crossed | 17:03:24 |
| 16 | out the time in which this interview was | 17:03:27 |
| 17 | conducted? | 17:03:30 |
| 18 | MS. GOLDEN:  Foundation. | 17:03:31 |
| 19 | A  I have no idea who crossed it out.  I | 17:03:32 |
| 20 | don't remember the report.  I don't remember the | 17:03:34 |
| 21 | interview.  So I can't say if Detective Dickinson | 17:03:36 |
| 22 | did it or who did it. | 17:03:41 |
| 23 | Q  Can you provide any explanation for why | 17:03:42 |
| 24 | someone would cross out the time the interview | 17:03:45 |

| | | |
|---|---|---|
| 1 | occurred? | 17:03:48 |
| 2 | MS. GOLDEN:  Foundation. | 17:03:48 |
| 3 | A  I can't say that's what -- that was | 17:03:49 |
| 4 | crossed out was the time.  I don't know what was | 17:03:51 |
| 5 | crossed out.  Do I know any reason why anybody | 17:03:53 |
| 6 | would cross out on any other report a time?  No. | 17:03:56 |
| 7 | Q  On this report -- strike that. | 17:04:00 |
| 8 | You indicated -- strike that. | 17:04:03 |
| 9 | You indicated previously that the | 17:04:05 |
| 10 | information that you filled in at the top of this | 17:04:10 |
| 11 | page was after the GPR was given back to you by a | 17:04:12 |
| 12 | sergeant, correct? | 17:04:16 |
| 13 | MS. GOLDEN:  That is not a complete | 17:04:17 |
| 14 | summary of what he said, so foundation. | 17:04:20 |
| 15 | A  Basically when I got it back, we filled it | 17:04:24 |
| 16 | out. | 17:04:27 |
| 17 | Q  You filled out the top of the page? | 17:04:27 |
| 18 | A  Yes. | 17:04:29 |
| 19 | Q  When you received it, you received it back | 17:04:30 |
| 20 | from the sergeant, correct? | 17:04:31 |
| 21 | A  I believe I received it back from Sergeant | 17:04:32 |
| 22 | Cappatelli. | 17:04:35 |
| 23 | Q  When you received it back, was the time of | 17:04:36 |
| 24 | the interview crossed out? | 17:04:39 |

| | | |
|---|---|---|
| 1 | A   Again, I can't recall the GPR, so I can't | 17:04:41 |
| 2 | recall if it was crossed out or not. | 17:04:44 |
| 3 | Q  If this had not been crossed out when you | 17:04:48 |
| 4 | got it back from Mr. Cappatelli, could somebody -- | 17:04:53 |
| 5 | and then you filled in the top of the form like | 17:04:58 |
| 6 | you're supposed to and turned it back in to | 17:05:01 |
| 7 | Mr. Cappatelli; with me so far? | 17:05:04 |
| 8 | A  Okay. | 17:05:06 |
| 9 | Q  So in other words, as you understand it, | 17:05:06 |
| 10 | you got this back from Mr. Cappatelli; you filled | 17:05:08 |
| 11 | the top of the form; and then you turned it back | 17:05:11 |
| 12 | in to Mr. Cappatelli; is that correct? | 17:05:14 |
| 13 | MS. GOLDEN:  Well, it's incomplete, | 17:05:16 |
| 14 | foundation. | 17:05:16 |
| 15 | A  Basically I got it back from Sergeant | 17:05:20 |
| 16 | Cappatelli.  I filled out the top.  Signed the | 17:05:24 |
| 17 | bottom.  Ed signed the bottom.  We handed it back | 17:05:27 |
| 18 | to him. | 17:05:30 |
| 19 | Q  Okay.  If at the time you handed it back | 17:05:30 |
| 20 | to Mr. Cappatelli, is it possible this was not | 17:05:32 |
| 21 | crossed out at that time? | 17:05:35 |
| 22 | MS. BARBER:  Objection, calls for | 17:05:37 |
| 23 | speculation. | 17:05:38 |
| 24 | A  I don't know when it was crossed out.  So | 17:05:39 |

| | | |
|---|---|---|
| 1 | I guess it could be possible.  I don't know when | 17:05:41 |
| 2 | it was done. | 17:05:43 |
| 3 |     Q  If someone wanted to cross this out after | 17:05:44 |
| 4 | you had turned it back into Mr. Cappatelli and | 17:05:48 |
| 5 | he'd approve it, could they do that? | 17:05:51 |
| 6 |     A  Could it be done?  Yes. | 17:05:57 |
| 7 |     Q  If someone wanted to do that, how would | 17:05:59 |
| 8 | they do that? | 17:06:01 |
| 9 |        MS. GOLDEN:  Foundation. | 17:06:05 |
| 10 |        MS. BARBER:  Objection, form. | 17:06:07 |
| 11 |     A  I guess they'd take a pen, cross it out. | 17:06:08 |
| 12 |     Q  This would be sitting in the investigative | 17:06:10 |
| 13 | file in the sergeant's office, correct? | 17:06:12 |
| 14 |        MS. GOLDEN:  Okay. | 17:06:14 |
| 15 |     A  Yeah, I mean, it's in the investigative | 17:06:16 |
| 16 | file. | 17:06:18 |
| 17 |     Q  Which is sitting just right next to where | 17:06:18 |
| 18 | the detectives are sitting, correct? | 17:06:21 |
| 19 |     A  It's in the file cabinet. | 17:06:23 |
| 20 |     Q  If somebody wanted to cross this out after | 17:06:25 |
| 21 | it had been approved by Sergeant Cappatelli, would | 17:06:27 |
| 22 | it be hard to do? | 17:06:30 |
| 23 |        MS. BARBER:  Objection, form. | 17:06:32 |
| 24 |     A  You would have to make sure nobody else | 17:06:38 |

1    was around.  Would it be hard to do?  You know, it          17:06:40

2    would be the matter of pulling that file, finding           17:06:45

3    that GPR, and crossing it out.                              17:06:49

4        Q  The cabinet in which those investigative             17:06:51

5    files were kept locked?                                     17:06:54

6        MS. BARBER:  Objection, form, foundation.               17:06:56

7        A  Certain times they were.  Certain times              17:06:59

8    they weren't.  I'm not sure exactly.                        17:07:02

9        Q  As a general matter, detectives had access           17:07:03

10   to those investigative files in those cabinets?             17:07:05

11       A  They could get access, yes.                          17:07:07

12       Q  If the information about the time at which            17:07:09

13   this interview occurred was included in a                   17:07:13

14   supplementary report, could that be changed after           17:07:17

15   it had been approved by a sergeant?                         17:07:23

16       MS. GOLDEN:  Okay.  Please read the                     17:07:34

17   question.                                                   17:07:35

18                  (Record read back by the                     17:07:35

19                  reporter.)                                   17:07:36

20       MS. GOLDEN:  Form and foundation.                       17:07:36

21       A  Could it be?  It would take a lot of --              17:07:42

22   you'd have to have the sergeant in on it and                17:07:47

23   everybody else in on it.  You'd have to rip up the          17:07:50

24   approved report, change it, get the sergeant again          17:07:52

| | | |
|---|---|---|
| 1 | to sign the other report after it's been changed. | 17:07:55 |
| 2 | Possible, yes.  Probable, very doubtful. | 17:07:58 |
| 3 | Q  It would be very hard? | 17:08:01 |
| 4 | A  Yes. | 17:08:02 |
| 5 | Q  Okay.  Looking at this GPR, it begins, | 17:08:02 |
| 6 | Since December, light construction, something like | 17:08:11 |
| 7 | that.  I'll read it again. | 17:08:16 |
| 8 | "Since December, light construction work | 17:08:18 |
| 9 | in Mexico.  Came here to make money to send back." | 17:08:20 |
| 10 | And then it says, Adriana made friends with the | 17:08:24 |
| 11 | lady with the baby.  She fell in love with the | 17:08:28 |
| 12 | baby.  Adriana made friends at the clinic with | 17:08:32 |
| 13 | female victim when she was pregnant and then | 17:08:34 |
| 14 | Gabriel has car.  Adriana knew layout of | 17:08:38 |
| 15 | apartment. | 17:08:42 |
| 16 | Agree with me this note jumps very quickly | 17:08:42 |
| 17 | into the incriminating information about how this | 17:08:47 |
| 18 | crime went down? | 17:08:50 |
| 19 | MS. BARBER:  Objection, form. | 17:08:52 |
| 20 | A  Like I say, this is a summary.  So it's | 17:08:59 |
| 21 | not verbatim, and obviously we're not court | 17:09:02 |
| 22 | reporters that could take verbatim statements.  So | 17:09:08 |
| 23 | Ed's preparing the GPR as he's getting the | 17:09:17 |
| 24 | information and basically writing down not every | 17:09:21 |

1    word but trying to get the gist of the                    17:09:24

2    conversation on it.                                       17:09:29

3        Q  Would you say based on this report --              17:09:30

4    strike that.                                              17:09:34

5        Based on this GPR does it indicate to you             17:09:34

6    that there was probably some conversation with            17:09:38

7    Mr. Reyes before the point which these notes start        17:09:39

8    off?                                                      17:09:43

9        MS. GOLDEN:  Foundation.                              17:09:43

10       A  Before --                                          17:09:48

11       Q  In other words, where this note starts, do         17:09:49

12   you suspect that there was some conversation you          17:09:53

13   all had with Mr. Reyes that isn't documented here?        17:09:55

14       MS. BARBER:  Objection, form, foundation.             17:09:58

15       A  Again, I don't remember the conversation.          17:10:00

16   However, if I was going to do this, and I was             17:10:03

17   bringing a suspect in, let's say Reyes, I would           17:10:06

18   introduce the people that he never met before so          17:10:11

19   he would know who they were.  So, yes, that would         17:10:13

20   have been before the conversation that is recorded        17:10:17

21   here started.                                             17:10:20

22       Q  Would you jump right into getting a                17:10:21

23   confession from him?                                      17:10:24

24       MS. GOLDEN:  Form.                                    17:10:26

| | | |
|---|---|---|
| 1 | A   What I'd probably do is -- again, they've | 17:10:31 |
| 2 | talked to Reyes earlier, right -- | 17:10:34 |
| 3 | Q   When you say "they", you're referring to | 17:10:41 |
| 4 | Guevara? | 17:10:43 |
| 5 | A   Yeah.  I don't know who talked to him.  If | 17:10:43 |
| 6 | Ray did.  But who else did I'm not sure.  I'm just | 17:10:46 |
| 7 | saying they instead of he or she or whatever. | 17:10:49 |
| 8 | Ray's talked to him.  Probably go right | 17:10:55 |
| 9 | into the conversation, say let these -- tell us | 17:11:02 |
| 10 | what you told us before. | 17:11:06 |
| 11 | Q   And if Guevara had conducted the interview | 17:11:07 |
| 12 | before, you would expect Guevara would have said | 17:11:10 |
| 13 | tell us what you told us before? | 17:11:13 |
| 14 | A   That's what I would suspect happened. | 17:11:14 |
| 15 | Q   Is it your expectation that what would | 17:11:16 |
| 16 | happen that Guevara led the questioning in this | 17:11:21 |
| 17 | interview? | 17:11:23 |
| 18 | MS. GOLDEN:  Foundation. | 17:11:24 |
| 19 | A   I don't remember the interview.  I don't | 17:11:26 |
| 20 | know who led it.  I don't know that Danny Trevino | 17:11:28 |
| 21 | even talked to this guy earlier. | 17:11:31 |
| 22 | Q   You said you don't know whether he did or | 17:11:34 |
| 23 | he did? | 17:11:35 |
| 24 | A   I'm not sure whether he did or he didn't. | 17:11:35 |

| | | |
|---|---|---|
| 1 | I'd have to again review the reports to see.  And | 17:11:40 |
| 2 | that might be why he's there.  I don't know. | 17:11:43 |
| 3 | Q  If out of the group of you -- | 17:11:45 |
| 4 | MS. GOLDEN:  Hold on. | 17:11:46 |
| 5 | Q  Did you have more? | 17:11:48 |
| 6 | A  Yes.  I was going to say, they would be | 17:11:49 |
| 7 | asking questions.  Like I say, I didn't speak | 17:11:53 |
| 8 | Spanish.  I could not really communicate with | 17:11:56 |
| 9 | Reyes without going through either Trevino or | 17:11:59 |
| 10 | Guevara. | 17:12:03 |
| 11 | Q  When you say they would have been asking | 17:12:04 |
| 12 | the questions, would they have been asking | 17:12:05 |
| 13 | questions in Spanish that you and Mr. Dickinson | 17:12:09 |
| 14 | were requesting or would they be asking questions | 17:12:12 |
| 15 | of their own volition? | 17:12:14 |
| 16 | MS. GOLDEN:  Foundation. | 17:12:16 |
| 17 | A  If me or Ed had a question to ask him, | 17:12:17 |
| 18 | they would ask it.  Like I said, I don't remember | 17:12:21 |
| 19 | the conversation.  I don't know if we asked any | 17:12:23 |
| 20 | questions of him.  But if we did, it would have to | 17:12:25 |
| 21 | go through either Detective Guevara or Youth | 17:12:28 |
| 22 | Officer Trevino. | 17:12:31 |
| 23 | Q  And given the fact that Guevara was the | 17:12:32 |
| 24 | primary assigned on the case and had previously -- | 17:12:34 |

| | | |
|---|---|---|
| 1 | if we assume what's in the cleared closed report, | 17:12:37 |
| 2 | which is that Detective Guevara was the only one | 17:12:39 |
| 3 | of the group of you who were in that room | 17:12:43 |
| 4 | interviewing Mr. Reyes, who had previously | 17:12:47 |
| 5 | interviewed him, is it your expectation he would | 17:12:49 |
| 6 | have been leading the questioning? | 17:12:51 |
| 7 | MS. GOLDEN:  Hold on.  Foundation, | 17:12:53 |
| 8 | misstates prior testimony. | 17:12:55 |
| 9 | A  I'm not going to assume Ray was in there | 17:12:58 |
| 10 | alone.  I don't know who was in there with him.  I | 17:13:01 |
| 11 | have no idea.  I could assume Ray was in there | 17:13:03 |
| 12 | because the report says Ray.  I don't know if | 17:13:06 |
| 13 | anybody else was in there. | 17:13:08 |
| 14 | Would I guess that Detective Guevara would | 17:13:10 |
| 15 | be leading the investigation?  Yes, I would. | 17:13:14 |
| 16 | Q  Okay.  Looking at this GPR, I think I | 17:13:17 |
| 17 | might have misunderstood your answer.  You said | 17:13:27 |
| 18 | would you -- would I guess that Detective Guevara | 17:13:29 |
| 19 | would be leading the investigation, yes, I would, | 17:13:31 |
| 20 | would you expect he would be leading the | 17:13:34 |
| 21 | questioning of this witness? | 17:13:37 |
| 22 | A  Yes, because he knew -- he's interviewed | 17:13:39 |
| 23 | the witness earlier, so, yes, he would lead it. | 17:13:44 |
| 24 | Q  Okay. | 17:13:46 |

| | | |
|---|---|---|
| 1 | A  If we had a question to throw in there -- | 17:13:47 |
| 2 | and I'm not saying we did or we didn't, I don't | 17:13:49 |
| 3 | remember -- we would ask Ray to ask him. | 17:13:52 |
| 4 | Q  Got it. | 17:13:54 |
| 5 | Looking at this Exhibit 5, where I left | 17:13:55 |
| 6 | off on the first page. | 17:14:01 |
| 7 | MS. GOLDEN:  Which I don't remember. | 17:14:04 |
| 8 | MR. SWAMINATHAN:  About six or seven | 17:14:06 |
| 9 | sentences down there's a sentence -- I'll read the | 17:14:08 |
| 10 | sentence right before it just so you have some | 17:14:09 |
| 11 | context. | 17:14:11 |
| 12 | "Gabriel has car.  Adriana knew layout of | 17:14:11 |
| 13 | apartment."  Then it says, "Bogart way in." | 17:14:15 |
| 14 | What does "Bogart way in" mean? | 17:14:19 |
| 15 | A  I know what Bogart means.  You tricked | 17:14:24 |
| 16 | your way in.  Okay.  Now, again, I don't know what | 17:14:32 |
| 17 | terminology Reyes said.  I can't -- I'm not going | 17:14:36 |
| 18 | to say that Guevara said Bogart.  Whatever they | 17:14:42 |
| 19 | said maybe Eddie interpreted to be Bogart and | 17:14:49 |
| 20 | that's why he wrote Bogart.  I don't know why. | 17:14:52 |
| 21 | But Bogart means basically tricking your way in. | 17:14:55 |
| 22 | Q  And where does the term "Bogart" come | 17:14:59 |
| 23 | from? | 17:15:02 |
| 24 | A  I got no idea. | 17:15:03 |

| | | |
|---|---|---|
| 1 | MS. BARBER: Foundation. | 17:15:05 |
| 2 | Q I think I understand your answer but let | 17:15:07 |
| 3 | me be clear. | 17:15:09 |
| 4 | You agree with me Arturo Reyes didn't use | 17:15:10 |
| 5 | the term "Bogart"? | 17:15:13 |
| 6 | MS. GOLDEN: Foundation. | 17:15:15 |
| 7 | A The only thing I can say is I don't know | 17:15:18 |
| 8 | what the Spanish translation for Bogart is. So | 17:15:20 |
| 9 | did he use it? I couldn't tell you. Did he use a | 17:15:24 |
| 10 | phrase that means Bogart? Again, I don't know if | 17:15:27 |
| 11 | there is one in Spanish, so I can't even say. | 17:15:31 |
| 12 | Q So if Arturo Reyes had basically indicated | 17:15:33 |
| 13 | that they had tricked their way in, would you | 17:15:37 |
| 14 | expect that the person translating for you to have | 17:15:39 |
| 15 | said Arturo Reyes says they tricked their way in? | 17:15:42 |
| 16 | MS. BARBER: Objection, form, foundation. | 17:15:46 |
| 17 | A I don't know exactly what was said by | 17:15:50 |
| 18 | Reyes. Again, I don't speak Spanish. So did he | 17:15:52 |
| 19 | -- I don't know -- Spanish, if there's a slang | 17:15:59 |
| 20 | word for tricking your way in. I don't know. If | 17:16:06 |
| 21 | there is, he would have used that. Probably would | 17:16:09 |
| 22 | have used that. I don't know -- I can't say his | 17:16:13 |
| 23 | exact words because I don't speak Spanish. And I | 17:16:14 |
| 24 | don't remember what was translated back because I | 17:16:17 |

| | | |
|---|---|---|
| 1 | don't remember the conversation. | 17:16:20 |
| 2 | Q  Do you remember the Spanish-speaking | 17:16:20 |
| 3 | Arturo Reyes from Mexico to ever use the word | 17:16:24 |
| 4 | "Bogart" in an interview with him? | 17:16:28 |
| 5 | A  I don't recall ever hearing the word | 17:16:28 |
| 6 | "Bogart". | 17:16:30 |
| 7 | Q  If Spanish-speaking Arturo Reyes from | 17:16:31 |
| 8 | Mexico had used the word "Bogart" in the middle of | 17:16:34 |
| 9 | this interview, would that have been memorable? | 17:16:37 |
| 10 | A  Let me say this, if I was in Mexico and a | 17:16:41 |
| 11 | person was interpreting for me and they asked me | 17:16:46 |
| 12 | how did I get in the house?  And I said Bogart the | 17:16:49 |
| 13 | way in.  I don't know how he would interpret that, | 17:16:53 |
| 14 | tell somebody else in Spanish what I just said. | 17:16:56 |
| 15 | Reverse, I don't know what he said and how they | 17:16:59 |
| 16 | would tell in English what they said.  There might | 17:17:02 |
| 17 | not be a direct translation.  So did he say the | 17:17:06 |
| 18 | word "Bogart"?  I doubt it.  I don't recall | 17:17:09 |
| 19 | hearing it.  Could he have?  Maybe. | 17:17:14 |
| 20 | Q  Bogart in this GPR is a word that was | 17:17:16 |
| 21 | provided by either Mr. Trevino or Mr. Guevara, | 17:17:20 |
| 22 | correct? | 17:17:24 |
| 23 | MS. GOLDEN:  Foundation, asked and | 17:17:24 |
| 24 | answered. | 17:17:27 |

| | | |
|---|---|---|
| 1 | A  I don't know who said it. | 17:17:30 |
| 2 | Q  Is it possible that Bogart was a term that | 17:17:32 |
| 3 | Mr. Dickinson used to summarize what he was | 17:17:36 |
| 4 | learning from Detective Guevara and Detective | 17:17:39 |
| 5 | Trevino? | 17:17:42 |
| 6 | A  It was possible that Ed did that.  It's | 17:17:43 |
| 7 | possible Trevino said it.  It's possible that | 17:17:46 |
| 8 | Guevara said it.  It's possible that Reyes said | 17:17:49 |
| 9 | it.  I don't recall. | 17:17:52 |
| 10 | Q  Assuming Reyes did not use the word | 17:17:53 |
| 11 | "Bogart", would it have been better practice in | 17:17:56 |
| 12 | this GPR to have written something that was more | 17:17:59 |
| 13 | consistent with what he actually said -- | 17:18:01 |
| 14 | MS. GOLDEN:  Form. | 17:18:03 |
| 15 | Q  -- rather than slang term of Bogart? | 17:18:04 |
| 16 | MS. GOLDEN:  -- and foundation. | 17:18:08 |
| 17 | MS. BARBER:  Calls for speculation. | 17:18:09 |
| 18 | A  This is a GPR.  It's -- you're just | 17:18:11 |
| 19 | writing it to refresh your memory.  I don't know | 17:18:15 |
| 20 | what term that Reyes used.  Was it a Spanish term | 17:18:18 |
| 21 | that is basically the same as Bogart?  I don't | 17:18:25 |
| 22 | know.  I don't know exactly what he said because I | 17:18:29 |
| 23 | don't speak Spanish. | 17:18:32 |
| 24 | Q  Looking at the next sentence or sentence | 17:18:33 |

| | | |
|---|---|---|
| 1 | after that, it says, Victim opened door.  They | 17:18:36 |
| 2 | charged in.  Do you see that? | 17:18:40 |
| 3 | MS. GOLDEN:  I think you misread it. | 17:18:42 |
| 4 | MR. SWAMINATHAN:  Nope. | 17:18:46 |
| 5 | MS. GOLDEN:  Could you read back what he | 17:18:47 |
| 6 | said. | 17:18:51 |
| 7 | MR. SWAMINATHAN:  Anyway, I don't care | 17:18:51 |
| 8 | about that sentence. | 17:18:51 |
| 9 | MS. GOLDEN:  I do care.  Can you read back | 17:18:51 |
| 10 | what he said. | 17:18:51 |
| 11 | (Record read back by the | 17:18:51 |
| 12 | reporter.) | 17:19:08 |
| 13 | MS. GOLDEN:  Yeah, which is not exactly | 17:19:08 |
| 14 | what it says. | 17:19:11 |
| 15 | BY MR. SWAMINATHAN: | 17:19:13 |
| 16 | Q  The next sentence says -- I can't read | 17:19:14 |
| 17 | what that next sentence says, can you? | 17:19:14 |
| 18 | MS. GOLDEN:  I'm not sure it's the next | 17:19:16 |
| 19 | sentence, but if you want to talk about the next | 17:19:18 |
| 20 | word I got it. | 17:19:21 |
| 21 | Q  See where it says Rosendo? | 17:19:23 |
| 22 | A  Yes. | 17:19:26 |
| 23 | Q  Who's Rosendo? | 17:19:26 |
| 24 | A  I don't know. | 17:19:28 |

1    Q  And then what do the next three or                    17:19:31

2    four words say on that next line?                        17:19:36

3    A  I don't know.  Like I said, I don't know              17:19:39

4    what the first two words are.  200 then there's          17:19:49

5    white envelope.  So I would assume he was given          17:19:56

6    $200 in a white envelope paid on 27, February.           17:20:00

7    The 400 remaining to be paid when deed was done          17:20:03

8    and baby was here or hers.  I'm not sure exactly         17:20:07

9    what it is.                                              17:20:12

10    Q  Where it says "deed was done", would you             17:20:12

11    agree with me that it's doubtful that Arturo Reyes      17:20:16

12    actually used that phrase?                              17:20:19

13       MS. GOLDEN:  Foundation.                             17:20:20

14    A  Again, I don't know what he said in                  17:20:24

15    Spanish.  Did it translate to something like that?     17:20:26

16    Maybe.  But I don't speak Spanish, so I don't know      17:20:32

17    exactly what words he -- what he said.                  17:20:35

18    Q  You agree with me that's unlikely to be a            17:20:39

19    literal translation of what Arturo Reyes said,          17:20:43

20    "deed was done"?                                        17:20:45

21       MS. GOLDEN:  Asked and answered in exactly           17:20:46

22    the preceding question.                                 17:20:48

23    Q  Go ahead.                                            17:20:50

24       MS. GOLDEN:  And this is the last time.              17:20:51

| | | |
|---|---|---|
| 1 | You can answer two questions that are exactly the | 17:20:54 |
| 2 | same in a row.  Next time, no. | 17:20:56 |
| 3 | MS. BARBER:  Calls for speculation. | 17:20:59 |
| 4 | A  As I said before, I don't know.  There's | 17:21:02 |
| 5 | not always a direct translation from Spanish to | 17:21:04 |
| 6 | English.  So what he said, I don't know if there | 17:21:07 |
| 7 | is a direct translation that you would understand. | 17:21:10 |
| 8 | Q  Turning to the next page, there's a middle | 17:21:15 |
| 9 | paragraph there and there's a section that's | 17:21:28 |
| 10 | crossed out.  Do you see that? | 17:21:32 |
| 11 | A  Yes. | 17:21:34 |
| 12 | Q  Why was that section crossed out; do you | 17:21:35 |
| 13 | know? | 17:21:45 |
| 14 | A  I do not know. | 17:21:45 |
| 15 | Q  Was it a misstatement, mistranslation, are | 17:21:46 |
| 16 | you able to say? | 17:21:49 |
| 17 | A  As I just said, I don't know why it was | 17:21:50 |
| 18 | crossed out. | 17:21:53 |
| 19 | Q  Do you have a memory of whether this note | 17:21:53 |
| 20 | was written contemporaneously while you were | 17:21:57 |
| 21 | interviewing Arturo Reyes? | 17:22:01 |
| 22 | MS. GOLDEN:  When you say "this note", | 17:22:04 |
| 23 | you're holding up the GPR.  Are you talking about | 17:22:06 |
| 24 | the whole GPR or just a part of it? | 17:22:08 |

| | | |
|---|---|---|
| 1 | Q  Please go ahead. | 17:22:11 |
| 2 | MS. GOLDEN:  If you can answer the | 17:22:12 |
| 3 | question.  Form. | 17:22:14 |
| 4 | A  I have no reason to doubt it was made | 17:22:15 |
| 5 | while we're talking.  Do I have any independent | 17:22:17 |
| 6 | recollection of that?  No. | 17:22:20 |
| 7 | Q  This GPR, Exhibit 5, which you reviewed | 17:22:22 |
| 8 | during the course of this questioning and reviewed | 17:22:30 |
| 9 | previously, does it refresh your recollection at | 17:22:34 |
| 10 | all about -- strike that.  Let me ask a different | 17:22:37 |
| 11 | question. | 17:22:41 |
| 12 | Having now gone through this GPR again, | 17:22:41 |
| 13 | had another chance to review it here today, does | 17:22:44 |
| 14 | it refresh your recollection at all about your | 17:22:47 |
| 15 | interview of Arturo Reyes? | 17:22:49 |
| 16 | A  No, it doesn't. | 17:22:51 |
| 17 | Q  Does it refresh your recollection at all | 17:22:52 |
| 18 | about whether you even interviewed Arturo Reyes? | 17:22:54 |
| 19 | A  The GPR itself?  No.  Just my name on the | 17:22:58 |
| 20 | bottom when I signed it, but I imagine I wouldn't | 17:23:04 |
| 21 | have signed it back then if I didn't do it. | 17:23:06 |
| 22 | Q  As you sit here today, you have no memory | 17:23:09 |
| 23 | at all of any interaction or meeting with Arturo | 17:23:12 |
| 24 | Reyes; do I have that right? | 17:23:16 |

1       MS. GOLDEN:  Asked and answered at least          17:23:17

2   five times.                                           17:23:19

3       Q  Go ahead.                                      17:23:20

4       A  I don't have -- I have very, very little       17:23:21

5   memory of this case at all.  I mean, my               17:23:25

6   involvement was minimum and a lot has happened        17:23:28

7   since 1998 in my life.                                17:23:34

8       Q  Understood.  Looking --                        17:23:36

9       MS. GOLDEN:  Are you finished?                    17:23:37

10      A  And I was going to say that there's other      17:23:39

11  cases that I do remember more because I was more      17:23:42

12  involved.  I wasn't that involved in this, and I      17:23:45

13  didn't testify.  I didn't see the bodies.  I          17:23:50

14  didn't go to the houses.  This was my only            17:23:52

15  involvement was this day and a couple inventories     17:23:54

16  later, one inventory and the tow report later.        17:23:59

17      Q  This report which we've just -- strike         17:24:03

18  that.                                                 17:24:05

19      This GPR that we just reviewed contains           17:24:05

20  information about Arturo Reyes's participation in     17:24:09

21  the Soto crime including, you know, the trip to       17:24:16

22  the location where the crime was to occur, some       17:24:21

23  information about how the crime occurred, and then    17:24:25

24  leaving the home, correct?                            17:24:27

1      A  Yes.                                                17:24:29

2      Q  And having just reviewed this note, you            17:24:29

3   agree with me it doesn't contain any information         17:24:33

4   about once they left the house, where they went,         17:24:36

5   going back to the hospital, any of those kinds of        17:24:39

6   things?                                                  17:24:41

7      A  That's correct.                                    17:24:42

8      Q  Did Arturo Reyes tell you about -- strike          17:24:43

9   that.                                                    17:24:48

10         During the course of your interview with          17:24:48

11  Arturo Reyes that's documented in this GPR, did he       17:24:50

12  tell you anything about after they left the house        17:24:54

13  with the baby where they went and what they did?         17:24:56

14     A  Again, I have no independent recollection          17:24:59

15  of this case much less this interview.                   17:25:03

16     Q  If he did, do you expect it would have             17:25:06

17  been written in this GPR taken by Mr. Dickinson?         17:25:08

18         MS. BARBER:  Objection, calls for                 17:25:12

19  speculation.                                             17:25:13

20     A  This is a -- this is basically a summary           17:25:15

21  to help you type a report later.  It's not               17:25:18

22  verbatim.  If it entailed something that was --          17:25:20

23  you know, we took it, we went here, here, here,          17:25:27

24  here, yes, I would expect something like that.  I        17:25:30

| | | |
|---|---|---|
| 1 | don't know if that was in there.  I don't know if | 17:25:32 |
| 2 | he told us that then.  Again, I don't remember | 17:25:34 |
| 3 | because I just don't remember this case.  I'm | 17:25:37 |
| 4 | sorry. | 17:25:40 |
| 5 | Q  Okay.  I think you answered it somewhere | 17:25:40 |
| 6 | in the middle, but I'm not sure.  I want to be | 17:25:43 |
| 7 | clear about it. | 17:25:46 |
| 8 | If there had been a conversation -- strike | 17:25:47 |
| 9 | that. | 17:25:49 |
| 10 | If the conversation with Mr. Reyes had | 17:25:49 |
| 11 | continued with him explaining further about where | 17:25:52 |
| 12 | they went after they took the baby and how they | 17:25:54 |
| 13 | travelled there and what all they did, you would | 17:25:58 |
| 14 | expect that would have been information summarized | 17:26:00 |
| 15 | in this GPR; do I have that right? | 17:26:03 |
| 16 | MS. GOLDEN:  Asked and answered.  How much | 17:26:05 |
| 17 | time do we have left? | 17:26:07 |
| 18 | THE VIDEOGRAPHER:  Nine minutes. | 17:26:08 |
| 19 | MS. GOLDEN:  Nine minutes? | 17:26:10 |
| 20 | Q  Go ahead. | 17:26:10 |
| 21 | MS. GOLDEN:  Okay.  No.  All right.  Fine. | 17:26:11 |
| 22 | Asked and answered.  And then I have something to | 17:26:13 |
| 23 | say. | 17:26:15 |
| 24 | A  It could be.  Again, I don't know what was | 17:26:16 |

| | | |
|---|---|---|
| 1 | said and, you know, how substantial it was.  That | 17:26:19 |
| 2 | would all depend on how substantial what he said | 17:26:23 |
| 3 | was.  If he just said, yeah, we left, we took the | 17:26:27 |
| 4 | babies over here, it might not be in there. | 17:26:30 |
| 5 | MS. GOLDEN:  Okay.  If you guys want to | 17:26:34 |
| 6 | reserve some time for questions after the | 17:26:36 |
| 7 | defendants ask questions, you need to do that | 17:26:39 |
| 8 | because that counts in your ten hours. | 17:26:43 |
| 9 | MR. SWAMINATHAN:  I don't know if I agree | 17:26:46 |
| 10 | with that, but let me confer with counsel. | 17:26:47 |
| 11 | (Whereupon, a discussion was had with | 17:26:47 |
| 12 | plaintiffs' counsels sotto voce.) | 17:26:47 |
| 13 | MR. SWAMINATHAN:  I have nothing else. | 17:27:23 |
| 14 | MS. BARBER:  Anything from Solache? | 17:27:28 |
| 15 | MS. SUSLER:  No. | 17:27:31 |
| 16 | MR. ZIBOLSKI:  No. | 17:27:35 |
| 17 | MR. BRENER:  I do have a few questions. | 17:27:38 |
| 18 | MS. GOLDEN:  Can you introduce yourself? | 17:27:45 |
| 19 | MR. BRENER:  Yeah, of course. | 17:27:45 |
| 20 | EXAMINATION BY COUNSEL FOR DEFENDANTS ASA'S | 17:27:47 |
| 21 | BY MR. BRENER: | 17:27:47 |
| 22 | Q  Mr. Rutherford, my name is Edward Brener. | 17:27:47 |
| 23 | I represent four of the five ASA defendants in | 17:27:50 |
| 24 | this case. | 17:27:53 |

1      Were you present when Arturo Reyes gave a          17:27:53

2  statement to an ASA?          17:27:58

3      A  I don't remember being there, so I can't          17:27:59

4  -- I'm not sure.          17:28:03

5      Q  How about with respect to Gabriel Solache?          17:28:04

6      A  Same thing.  I don't know when I left that          17:28:08

7  night and when those statements were taken.          17:28:10

8      Q  Do you know whether you were present when          17:28:12

9  Rosauro Mejia gave a statement to an ASA?          17:28:15

10     A  Again, I don't recall because I don't know          17:28:18

11  when the statement was given and when I left.          17:28:20

12     Q  Same question with respect to Adriana          17:28:22

13  Mejia?          17:28:25

14     A  It would be the same answer.  I wasn't --          17:28:26

15  I don't know what time it was given and I don't          17:28:29

16  know what time I left that day.          17:28:31

17     Q  Do you know whether you were present when          17:28:32

18  Guadalupe Mejia gave a statement to an ASA?          17:28:35

19     A  Same answer.  I don't know what time I          17:28:38

20  left the building that day.          17:28:40

21     Q  Earlier you told us that you seen ASA's          17:28:42

22  include -- I believe you called them intentional          17:28:49

23  errors in handwritten statements in order to test          17:28:52

24  whether the witness or suspect was reading and          17:28:55

| | | |
|---|---|---|
| 1 | reviewing the statement; is that an accurate | 17:28:58 |
| 2 | summary of your testimony? | 17:29:00 |
| 3 | A  Yeah, what they would do is make like a | 17:29:02 |
| 4 | punctuation or a misspelling of something basic so | 17:29:04 |
| 5 | that if the person reviewing it would see it and | 17:29:09 |
| 6 | know.  Nothing substantial with the statement | 17:29:13 |
| 7 | itself just, you know, punctuation or spelling or | 17:29:17 |
| 8 | something on that order. | 17:29:22 |
| 9 | Q  And with respect to the five individuals | 17:29:22 |
| 10 | that I just asked you about, that's Mr. Reyes, | 17:29:25 |
| 11 | Mr. Solache, Rosauro Mejia, Adriana Mejia, and | 17:29:29 |
| 12 | Guadalupe Mejia, with respect to those five | 17:29:35 |
| 13 | individuals, is it fair to say you do not know | 17:29:38 |
| 14 | whether any of the ASA's who took their statements | 17:29:42 |
| 15 | included intentional errors in those statements? | 17:29:46 |
| 16 | A  I would have no knowledge of those | 17:29:49 |
| 17 | statements at all. | 17:29:52 |
| 18 | MR. BRENER:  I have nothing further. | 17:29:54 |
| 19 | MR. BURNS:  I have no questions. | 17:29:56 |
| 20 | MS. BARBER:  No questions. | 17:29:57 |
| 21 | MS. GOLDEN:  No questions. | 17:29:58 |
| 22 | MR. SWAMINATHAN:  We're done. | 17:30:02 |
| 23 | MS. GOLDEN:  Okay. | 17:30:03 |
| 24 | THE VIDEOGRAPHER:  This concludes Day 2 of | 17:30:05 |

1    the deposition of Robert Rutherford.  The time is          17:30:07

2    5:30.                                                       17:30:10

3    (Off the record at 5:30 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2        I, Anna M. Castle, Registered Professional

3    Reporter, Certified Shorthand Reporter and Notary

4    Public, the officer before whom the foregoing

5    deposition was taken, do hereby certify that the

6    foregoing transcript is a true and correct record

7    of the testimony given; that said testimony was

8    taken by me stenographically and thereafter

9    reduced to typewriting under my supervision; that

10   reading and signing was requested; and that I am

11   neither counsel for or related to, nor employed by

12   any of the parties to this case and have no

13   interest, financial or otherwise, in its outcome.

14   IN WITNESS WHEREOF, I have hereunto set my hand

15   and affixed my notarial seal this 31st day of

16   December 2019.

17

18

19   _____

20   NOTARY PUBLIC IN AND FOR

21   THE STATE OF ILLINOIS

22

23

24
```

| A | | | |
|---|---|---|---|

**aberdeen**
2:6, 3:6, 8:8
**abilities**
181:22
**ability**
180:21, 181:6,
197:23
**able**
34:3, 34:23,
39:11, 39:23,
156:16, 156:17,
180:2, 180:5,
180:7, 180:9,
180:15, 181:11,
181:22, 187:8,
200:1, 222:3,
231:20, 256:16
**abuse**
121:2, 121:13,
121:24
**abused**
120:9, 121:4,
121:9, 121:22
**abusing**
174:23
**access**
223:1, 244:9,
244:11
**accident**
54:13
**accidentally**
54:3
**according**
191:20, 192:15,
193:22, 194:13,
211:9, 213:20,
215:22, 227:9,
233:8, 233:13
**account**
204:4
**accuracy**
207:23
**accurate**
51:19, 53:9,
263:1
**accurately**
53:9, 197:24

**accused**
121:7, 121:15,
131:1, 142:1
**accusing**
122:13, 131:7
**acquainted**
93:6
**act**
180:3, 210:18
**active**
18:10
**activities**
21:17
**acts**
35:10
**actual**
14:11, 57:22,
91:19
**actually**
33:7, 36:20,
57:1, 57:14,
58:4, 59:13,
67:24, 70:1,
107:6, 107:7,
121:15, 152:23,
153:8, 153:15,
153:19, 206:20,
212:13, 217:19,
253:13, 255:12
**add**
40:3, 54:8,
106:7
**additional**
42:4, 86:15,
150:9, 183:2
**additions**
207:20
**adjective**
66:15
**administer**
8:14
**admits**
87:18
**admitted**
192:19, 193:2,
225:4
**admitting**
203:23

**adriana**
43:24, 44:6,
45:1, 114:22,
118:20, 149:16,
149:21, 150:10,
150:16, 150:21,
151:1, 151:11,
159:8, 159:16,
159:21, 160:13,
162:13, 162:16,
168:23, 169:7,
169:19, 169:20,
170:6, 170:7,
171:9, 171:19,
172:10, 172:12,
173:23, 174:1,
175:5, 175:18,
175:23, 176:21,
177:13, 185:2,
191:1, 191:12,
191:16, 192:3,
192:8, 192:18,
193:1, 193:18,
194:8, 195:2,
195:6, 195:16,
196:19, 197:18,
198:8, 198:14,
198:20, 206:4,
207:17, 207:24,
209:2, 219:23,
221:11, 224:21,
224:24, 225:4,
225:20, 227:14,
245:10, 245:12,
245:14, 250:12,
262:12, 263:11
**advance**
132:9
**advice**
79:7, 99:17,
99:18, 99:19
**affirmative**
194:2
**affixed**
265:15
**after**
15:18, 53:4,
80:19, 81:4,

83:4, 86:14,
86:18, 89:17,
90:8, 93:8,
99:2, 99:10,
103:13, 109:4,
123:13, 124:13,
154:19, 158:18,
168:19, 178:5,
204:6, 207:7,
225:18, 229:17,
230:22, 231:23,
241:11, 243:3,
243:20, 244:14,
245:1, 254:1,
259:12, 260:12,
261:6
**afterward**
222:5
**against**
142:1, 142:14
**ago**
109:16, 156:18,
170:24
**agree**
32:16, 33:2,
33:9, 68:13,
71:3, 165:4,
166:10, 168:9,
170:15, 175:16,
177:4, 194:20,
204:21, 208:24,
224:18, 233:9,
239:8, 245:16,
251:4, 255:11,
255:18, 259:3,
261:9
**agreed**
169:21, 170:10
**agreement**
170:11, 170:17,
171:2
**ahead**
18:2, 19:1,
21:14, 25:9,
26:13, 27:9,
29:8, 34:16,
37:14, 38:12,
38:19, 49:18,

56:16, 94:18,
122:4, 133:15,
145:12, 147:13,
150:7, 151:21,
154:7, 154:14,
156:5, 165:24,
169:8, 170:1,
171:1, 177:6,
207:21, 211:21,
212:5, 215:2,
225:9, 255:23,
257:1, 258:3,
260:20
**ajar**
214:22
**al**
1:8, 1:14, 8:5,
8:7, 9:24
**alibi**
58:11, 120:5
**alibis**
115:5
**alleged**
120:8, 120:11
**alleges**
121:2
**alleging**
121:13
**allowed**
22:12, 105:3
**almost**
80:6
**alone**
39:17, 150:16,
171:23, 172:3,
172:17, 173:3,
175:23, 176:1,
197:10, 249:10
**along**
11:13, 11:14,
11:22, 12:2,
12:6, 12:16,
92:6, 147:24,
161:24, 175:18
**already**
50:10, 59:19,
59:21, 72:16,
86:19, 87:7,

98:1, 106:2,
107:3, 117:5,
126:19, 142:8,
144:17, 144:21,
145:13, 148:1,
148:2, 187:23,
189:8, 191:17,
229:8, 231:11,
233:9
**also**
6:11, 12:3,
35:4, 43:15,
51:12, 59:11,
60:3, 93:18,
99:10, 100:4,
108:12, 108:13,
133:15, 141:3,
141:6, 142:5,
157:23, 158:5,
158:12, 176:6,
182:3, 193:5,
198:13
**always**
49:20, 104:13,
199:20, 256:5
**amendment**
86:11
**amount**
155:24
**ana**
17:13, 18:11,
18:13, 18:17,
18:24
**analysis**
60:17
**anand**
3:4, 8:15,
42:12, 86:24,
107:21, 155:7
**andrew**
8:24, 155:8
**anna**
2:1, 2:14,
8:11, 175:11,
265:2
**another**
28:1, 38:22,
42:16, 88:7,

88:8, 88:9,
99:20, 122:6,
129:17, 145:16,
156:8, 175:10,
184:23, 194:3,
205:20, 216:1,
231:22, 232:21,
257:13
**answer**
10:14, 10:20,
31:14, 36:15,
38:21, 38:23,
39:3, 39:7,
39:8, 39:12,
39:23, 42:19,
45:7, 47:2,
51:16, 51:21,
52:9, 73:13,
73:17, 74:5,
91:13, 96:13,
97:21, 97:23,
97:24, 122:9,
123:23, 127:21,
152:20, 165:22,
180:12, 181:14,
212:5, 216:11,
217:8, 249:17,
251:2, 256:1,
257:2, 262:14,
262:19
**answered**
22:10, 23:19,
32:11, 32:20,
35:1, 35:6,
45:19, 46:4,
46:11, 46:18,
49:8, 49:13,
51:17, 51:22,
54:9, 56:18,
66:16, 68:16,
72:16, 73:7,
73:9, 73:10,
75:22, 81:19,
84:14, 94:19,
95:10, 99:7,
100:17, 101:20,
102:1, 102:6,
104:2, 105:14,

105:17, 111:15,
113:24, 116:16,
118:6, 118:24,
128:13, 129:17,
141:17, 148:21,
153:2, 158:1,
158:20, 159:3,
164:22, 165:21,
170:23, 198:3,
221:15, 232:4,
232:23, 233:4,
252:24, 255:21,
258:1, 260:5,
260:16, 260:22
**answering**
73:7, 73:15
**answers**
10:5, 16:7,
23:6, 38:9,
123:19, 124:22,
197:21, 198:1
**anticipate**
123:22
**anybody**
36:20, 52:4,
122:1, 123:13,
128:8, 172:2,
176:18, 188:14,
220:13, 230:9,
235:22, 241:5,
249:13
**anymore**
73:22, 129:20,
206:10
**anyone**
22:24, 120:12,
125:16, 189:22
**anything**
22:8, 40:20,
40:21, 56:20,
80:13, 108:14,
111:3, 112:3,
119:14, 119:20,
139:9, 143:24,
154:23, 155:24,
179:7, 188:15,
221:10, 221:20,
224:19, 225:17,

228:2, 230:15,
239:24, 240:1,
259:12, 261:14
**anytime**
60:18, 83:24,
127:22
**anyway**
254:7
**anywhere**
17:14, 102:15,
237:5, 237:13,
239:12
**apartment**
192:20, 193:2,
214:3, 214:9,
214:10, 214:13,
214:18, 214:19,
219:8, 219:10,
225:5, 245:15,
250:13
**apparent**
130:17
**appeared**
180:5
**appears**
141:6, 154:18,
154:22, 199:14,
203:22, 237:4,
239:6
**applies**
10:12
**appraised**
82:14
**appreciate**
39:1, 110:12,
123:22, 174:18
**appropriate**
228:4, 233:19
**approval**
155:1
**approve**
75:4, 75:8,
75:14, 76:9,
92:10, 94:8,
95:20, 199:12,
243:5
**approved**
86:1, 154:4,

154:18, 154:19,
155:5, 155:13,
155:17, 156:15,
156:20, 158:13,
199:9, 243:21,
244:15, 244:24
**approves**
158:8, 158:10
**approving**
158:4
**approximately**
154:19, 200:17
**april**
16:12, 16:15,
16:22, 21:1,
21:6, 22:9,
119:7, 127:8,
149:14, 151:2,
152:2, 152:5,
155:5, 155:10,
155:17, 155:21,
156:8, 162:4,
162:11, 168:9,
169:18, 171:4,
171:11, 172:8,
175:3, 175:23,
176:4, 179:15,
182:6, 183:22,
184:6, 185:15,
185:23, 186:24,
190:13, 199:14,
199:15, 199:16,
200:2, 225:24,
226:21, 229:2
**aranda**
127:4, 131:12,
131:17
**aranda's**
127:9
**area**
11:9, 11:11,
11:12, 82:13,
102:16, 102:18,
111:14, 113:14,
113:23, 115:12,
115:17, 116:5,
116:9, 117:9,
121:5, 121:23,

137:4, 137:5,
138:13, 140:9,
149:17, 162:13,
162:18, 166:22,
171:6, 172:9,
175:6, 182:7,
183:24, 185:18,
186:8, 186:18,
190:14, 196:20,
226:2, 226:22,
229:4
**areas**
114:14
**aren't**
115:19
**argumentative**
29:7, 72:17,
199:17, 238:2
**around**
244:1
**arrived**
94:9, 96:19,
97:3, 155:9,
226:22, 227:10,
227:12, 227:24,
228:13
**arrives**
89:16, 89:17
**arriving**
95:13
**arthur**
218:15
**arturo**
1:5, 8:4, 8:16,
44:14, 114:24,
115:5, 181:18,
183:23, 184:2,
184:4, 184:8,
184:19, 185:4,
192:20, 193:3,
198:21, 201:17,
202:8, 203:16,
204:7, 204:11,
204:16, 205:16,
205:18, 207:4,
207:10, 208:3,
208:13, 209:11,
209:22, 212:1,

212:10, 212:16,
213:3, 213:6,
213:13, 213:22,
215:5, 215:17,
215:21, 215:24,
216:18, 216:20,
216:21, 216:24,
217:2, 217:4,
217:20, 218:1,
218:2, 218:4,
218:7, 218:13,
220:6, 220:12,
225:5, 226:2,
226:14, 227:14,
229:3, 229:7,
230:21, 231:5,
231:10, 231:22,
235:8, 237:2,
238:14, 251:4,
251:12, 251:15,
252:3, 252:7,
255:11, 255:19,
256:21, 257:15,
257:18, 257:23,
258:20, 259:8,
259:11, 262:1
**asa**
155:8, 226:22,
226:23, 226:24,
261:23, 262:2,
262:9, 262:18
**asa's**
261:20, 262:21,
263:14
**aside**
23:8, 55:22,
69:22, 92:18,
213:12
**asked**
22:10, 23:18,
24:12, 32:11,
32:20, 35:1,
35:6, 45:19,
46:4, 46:11,
46:17, 49:7,
49:13, 54:9,
56:18, 66:14,
66:16, 68:16,

72:16, 75:22,
81:19, 84:14,
94:19, 95:10,
99:7, 100:17,
100:19, 101:20,
102:1, 102:6,
104:2, 104:18,
104:20, 104:23,
105:4, 105:6,
105:14, 105:17,
111:15, 113:24,
116:16, 118:6,
118:24, 122:8,
128:13, 129:14,
135:10, 138:17,
138:22, 141:17,
148:21, 153:2,
158:1, 158:20,
159:3, 164:22,
165:21, 167:7,
169:19, 170:23,
197:20, 198:3,
202:12, 202:18,
202:19, 206:17,
210:17, 218:14,
221:15, 230:17,
232:4, 232:23,
233:4, 235:8,
248:19, 252:11,
252:23, 255:21,
258:1, 260:16,
260:22, 263:10

**asking**
22:17, 24:21,
37:12, 40:15,
40:22, 40:23,
41:3, 52:12,
60:3, 60:22,
61:5, 62:5,
62:6, 72:23,
73:12, 74:17,
75:19, 91:11,
96:24, 97:1,
97:7, 99:1,
99:17, 99:19,
103:7, 103:8,
105:1, 132:4,
145:4, 147:18,

151:17, 151:18,
154:5, 154:16,
163:6, 164:15,
164:16, 165:9,
173:2, 201:21,
202:11, 205:21,
210:16, 213:20,
215:6, 215:7,
216:15, 248:7,
248:11, 248:12,
248:14

**aspects**
104:10

**assess**
60:17, 118:4,
169:2, 197:23

**assessing**
65:20, 68:8,
68:10, 121:14

**assessment**
65:14, 68:12

**assigned**
18:16, 21:12,
21:24, 22:3,
22:4, 76:16,
112:5, 132:20,
138:5, 141:16,
143:15, 143:18,
144:2, 173:6,
226:20, 238:7,
248:24

**assist**
178:8

**assistant**
228:23

**assisted**
179:9

**assisting**
28:24

**associated**
158:12

**assume**
10:15, 83:22,
112:3, 131:7,
167:8, 169:20,
170:9, 172:23,
173:2, 249:1,
249:9, 249:11,

255:5

**assuming**
111:1, 112:1,
141:2, 178:16,
189:11, 233:5,
253:10

**assumption**
169:24, 200:3,
200:5

**attached**
7:7

**attempts**
126:12

**attention**
19:20, 20:19,
21:2, 65:9,
182:18

**attorney's**
5:6, 75:11,
75:18, 77:4,
77:15, 98:8,
98:10, 98:18,
101:7, 101:13,
228:9, 228:22

**attorneys**
75:13, 75:20,
75:24, 77:6,
78:14, 84:8,
86:4, 91:21,
92:8, 92:9,
92:22, 93:12,
93:14, 93:18,
94:5, 94:14,
96:4, 96:18,
99:24, 102:2,
102:8, 102:19,
103:20, 111:6,
111:14, 112:5,
112:12, 112:18,
112:21, 113:3,
113:7, 113:12,
132:5, 227:1,
228:24

**available**
28:5, 28:18,
94:21, 94:23,
227:1

**avenue**
3:15

**aware**
26:4, 26:11,
27:4, 55:23,
56:3, 56:6,
56:11, 57:6,
57:11, 99:24,
100:4, 120:7,
126:23, 131:22,
179:5, 185:10

**away**
15:4, 88:13,
108:20, 211:2,
211:6

**awhile**
156:7

---
**B**
---

**ba**
61:6

**babies**
214:11, 235:23,
236:2, 236:3,
261:4

**baby**
209:20, 209:21,
210:3, 210:24,
211:7, 211:8,
212:9, 213:2,
213:3, 213:7,
213:14, 213:23,
214:12, 214:16,
215:5, 215:18,
215:21, 215:23,
245:11, 245:12,
255:8, 259:13,
260:12

**baby's**
209:24, 211:13,
211:14, 212:10

**back**
29:19, 29:20,
31:15, 42:17,
42:21, 42:23,
50:6, 50:8,
55:20, 57:22,
72:3, 74:5,
75:1, 82:21,
82:22, 90:10,

91:11, 93:2,
93:14, 97:12,
97:16, 97:18,
98:11, 104:12,
106:11, 106:12,
112:20, 113:18,
114:8, 119:21,
122:8, 122:10,
126:19, 129:9,
129:11, 140:2,
140:24, 145:24,
151:13, 152:12,
162:6, 162:9,
163:19, 163:20,
182:5, 189:14,
190:7, 193:9,
202:1, 202:2,
202:12, 203:9,
205:2, 205:22,
207:4, 207:12,
211:17, 213:4,
214:4, 214:5,
214:10, 214:12,
214:13, 214:16,
214:20, 214:21,
214:23, 215:1,
215:23, 215:24,
221:3, 232:1,
232:2, 233:5,
236:9, 236:19,
241:11, 241:15,
241:19, 241:21,
241:23, 242:4,
242:6, 242:10,
242:11, 242:15,
242:17, 242:19,
243:4, 244:18,
245:9, 251:24,
254:5, 254:9,
254:11, 257:21,
259:5
**backwards**
166:6
**bad**
50:11
**baroni**
4:5
**bartik**
172:11

**based**
16:7, 43:21,
45:16, 45:24,
46:16, 47:16,
51:4, 52:22,
64:11, 71:23,
110:19, 114:13,
126:2, 126:4,
126:8, 151:19,
153:23, 163:12,
164:18, 165:16,
167:13, 168:8,
168:12, 168:22,
169:11, 172:16,
184:7, 186:1,
187:7, 188:21,
192:7, 195:15,
197:2, 197:10,
198:7, 203:4,
204:3, 209:1,
215:13, 228:2,
246:3, 246:5
**basic**
263:4
**basically**
14:20, 18:14,
52:1, 114:15,
120:2, 132:11,
134:12, 135:11,
141:12, 141:24,
159:15, 160:19,
178:2, 183:12,
201:12, 203:12,
203:18, 204:11,
208:1, 208:12,
220:5, 224:24,
234:15, 241:15,
242:15, 245:24,
250:21, 251:12,
253:21, 259:20
**basis**
92:11
**bates**
7:11, 7:12,
161:9, 194:19,
194:22
**bathroom**
12:1, 12:19

**bathrooms**
13:3, 13:4
**bearing**
38:2
**beat**
18:15, 117:21,
196:3, 238:7
**became**
153:11, 178:5
**because**
15:11, 38:8,
40:17, 41:10,
41:12, 41:16,
52:6, 57:6,
58:2, 85:4,
86:19, 95:19,
104:21, 105:7,
106:1, 107:3,
112:17, 114:6,
122:12, 124:7,
148:4, 156:7,
169:16, 185:5,
197:6, 197:13,
198:16, 200:6,
209:22, 215:11,
217:14, 222:24,
230:19, 231:18,
249:12, 249:22,
251:23, 251:24,
253:22, 258:11,
260:3, 261:8,
262:10
**become**
93:5, 120:7
**bedroom**
214:4, 214:10
**beef**
93:23
**been**
9:11, 17:6,
17:9, 19:17,
34:3, 39:11,
47:17, 58:4,
72:16, 80:19,
84:1, 109:9,
114:15, 115:8,
116:19, 124:8,
134:3, 142:4,

143:1, 144:16,
144:20, 145:6,
145:13, 146:12,
146:17, 153:13,
157:3, 157:8,
158:13, 158:19,
163:8, 169:1,
169:10, 172:10,
178:6, 179:10,
180:15, 181:21,
183:13, 187:23,
188:4, 189:13,
191:16, 191:20,
196:23, 198:6,
201:23, 202:21,
203:6, 209:4,
214:8, 215:22,
218:14, 223:4,
227:13, 228:4,
228:10, 233:6,
233:19, 236:8,
242:3, 243:21,
244:15, 245:1,
246:20, 248:11,
248:12, 249:6,
252:9, 253:11,
259:17, 260:8,
260:14
**beer**
93:22, 94:1
**before**
2:14, 38:24,
42:19, 51:8,
51:15, 52:23,
53:8, 61:1,
61:18, 71:20,
79:19, 80:2,
80:13, 81:24,
87:21, 89:8,
89:15, 90:11,
90:16, 90:22,
91:7, 91:12,
91:13, 97:9,
99:5, 106:9,
107:13, 108:4,
112:20, 127:21,
129:10, 129:15,
134:23, 145:8,

146:12, 146:13,
159:2, 175:9,
177:3, 179:15,
179:19, 191:11,
202:7, 202:21,
206:10, 209:7,
212:18, 216:11,
217:8, 217:12,
218:12, 221:22,
234:9, 239:16,
239:21, 246:7,
246:10, 246:18,
246:20, 247:10,
247:12, 247:13,
250:10, 256:4,
265:4
**began**
186:10, 186:13
**begin**
121:19
**beginning**
20:23, 77:21,
150:19
**begins**
159:8, 175:2,
175:3, 178:4,
185:15, 190:13,
221:6, 226:18,
245:5
**behalf**
3:3, 3:11, 4:3,
4:11, 5:3, 5:11,
6:3, 9:2
**being**
20:19, 21:2,
23:23, 25:5,
25:15, 26:14,
46:1, 47:17,
71:20, 82:5,
104:22, 118:5,
124:16, 132:20,
134:15, 138:16,
138:17, 143:18,
144:1, 145:20,
148:8, 149:3,
158:18, 160:14,
188:2, 192:19,
193:2, 193:16,

194:3, 197:4,
197:8, 197:15,
198:5, 221:10,
221:18, 222:9,
225:5, 262:3
**belated**
114:5, 132:12
**belief**
141:21, 177:21
**believe**
12:19, 12:22,
15:17, 16:18,
19:18, 21:13,
22:7, 30:11,
30:17, 46:2,
67:19, 67:22,
108:22, 109:23,
110:9, 111:10,
116:21, 118:15,
118:21, 119:18,
120:18, 124:21,
126:2, 126:17,
126:19, 128:18,
129:16, 131:8,
132:3, 132:19,
133:9, 140:17,
140:18, 141:18,
148:2, 154:2,
160:22, 161:19,
166:2, 174:21,
176:3, 180:19,
181:4, 182:3,
185:23, 187:23,
190:22, 193:10,
196:22, 198:2,
198:16, 198:24,
203:9, 205:6,
211:12, 212:8,
218:6, 220:12,
220:19, 222:7,
222:9, 226:5,
231:14, 238:13,
239:24, 240:2,
240:15, 241:21,
262:22
**believed**
115:8, 116:19
**below**
219:21

**best**
58:8, 74:14,
126:22, 196:21,
198:12, 220:3
**better**
58:11, 92:6,
92:16, 106:5,
124:21, 173:2,
253:11
**between**
82:7, 91:20,
97:7, 219:10
**beyond**
39:10, 42:5
**biebel**
4:13
**big**
232:15
**bigger**
232:8, 232:18
**bins**
115:19
**bit**
21:5, 125:2,
134:16, 167:6
**black**
212:16
**blackboard**
48:20, 48:21,
49:6, 49:22,
50:15, 53:16,
54:1
**blah**
39:21
**blame**
234:2, 234:3
**blaming**
234:1
**blanket**
209:23, 211:13,
212:9, 213:2
**blew**
209:23
**blood**
207:7
**blowing**
211:13
**blown**
212:9

**blue**
212:17
**bodies**
258:13
**body**
148:17, 238:10
**bogart**
250:13, 250:14,
250:15, 250:18,
250:19, 250:20,
250:21, 250:22,
251:5, 251:8,
251:10, 252:4,
252:6, 252:8,
252:12, 252:18,
252:20, 253:2,
253:11, 253:15,
253:21
**book**
17:18, 17:20,
17:22, 18:6
**booking**
160:21
**books**
18:8, 18:9
**both**
52:22, 141:12,
173:7, 189:6,
228:13
**bottom**
58:22, 140:20,
159:8, 159:13,
176:20, 177:7,
177:16, 199:5,
207:11, 212:15,
216:8, 216:17,
216:19, 242:17,
257:20
**box**
140:20, 141:10
**boy**
213:4, 216:1,
216:19, 217:1,
217:4, 217:5,
218:2, 218:3,
218:4, 218:13,
218:16
**break**
10:18, 10:21,

10:23, 11:2,
74:21, 74:24,
137:21, 139:21,
140:1, 189:20,
189:23, 190:6,
236:13, 236:18

**breakfast**
207:8, 207:9

**brener**
5:5, 7:4, 8:23,
78:11, 79:15,
79:23, 80:4,
81:9, 82:11,
85:9, 86:8,
86:16, 86:24,
87:4, 91:24,
92:5, 96:7,
96:23, 98:21,
99:8, 99:13,
100:10, 101:8,
101:15, 103:16,
104:19, 107:15,
108:21, 109:1,
109:6, 110:21,
111:9, 111:15,
113:1, 113:16,
139:18, 227:23,
233:22, 261:17,
261:19, 261:21,
261:22, 263:18

**briefly**
151:6

**bring**
69:14, 106:24,
130:7, 135:15,
135:17, 135:19,
136:3, 138:9,
138:17, 139:2,
139:7, 208:8,
208:9, 234:9,
234:11, 234:16

**bringing**
167:3, 246:17

**brought**
29:10, 115:20,
162:12

**brualdi**
5:3, 8:24,

226:24

**building**
232:7, 262:20

**burglary**
69:16, 88:15

**burns**
5:12, 5:13,
9:2, 54:16,
75:15, 76:3,
98:22, 100:11,
100:17, 100:24,
101:9, 101:16,
103:18, 104:3,
113:24, 227:5,
227:16, 227:22,
228:7, 228:20,
233:12, 263:19

**bus**
207:15

**busy**
113:19

### C

**cabinet**
243:19, 244:4

**cabinets**
244:10

**call**
28:17, 28:19,
28:21, 54:19,
76:17, 84:15,
84:19, 84:21,
85:1, 86:2,
112:2, 115:11,
161:15, 166:19,
187:13, 187:15,
187:16, 188:6,
207:8, 207:10,
207:13, 228:22

**called**
40:18, 76:1,
76:8, 76:22,
77:8, 78:15,
80:19, 81:14,
84:1, 86:14,
86:18, 87:9,
89:5, 91:7,
93:17, 94:7,

94:10, 95:22,
98:10, 115:9,
139:14, 164:12,
187:12, 196:22,
209:19, 262:22

**calls**
16:2, 16:6,
61:4, 61:15,
61:22, 62:16,
62:21, 63:7,
64:7, 64:17,
64:24, 66:20,
68:18, 69:1,
70:8, 70:21,
72:6, 72:15,
74:4, 74:12,
76:5, 76:11,
77:2, 77:11,
77:18, 78:9,
78:19, 79:4,
82:11, 83:15,
84:4, 85:11,
86:9, 87:13,
90:1, 92:1,
95:17, 108:6,
116:19, 138:3,
145:10, 166:13,
168:5, 169:14,
183:18, 188:12,
228:23, 242:22,
253:17, 256:3,
259:18

**came**
61:5, 71:1,
92:15, 94:5,
96:5, 112:12,
115:21, 124:9,
126:17, 182:7,
187:1, 202:10,
202:17, 205:22,
207:4, 215:24,
216:1, 245:9

**can't**
23:3, 23:4,
23:5, 40:1,
40:5, 48:21,
49:19, 71:22,
90:2, 90:5,

90:6, 95:19,
96:13, 97:24,
103:3, 122:12,
128:7, 133:18,
133:20, 133:22,
133:24, 144:23,
145:2, 148:14,
151:4, 153:12,
154:13, 156:2,
163:7, 164:7,
164:8, 164:14,
166:8, 167:5,
167:9, 171:2,
174:10, 176:18,
179:17, 189:3,
203:1, 212:20,
222:21, 222:22,
222:23, 225:16,
233:6, 233:17,
235:4, 235:24,
239:11, 239:18,
239:23, 240:21,
241:3, 242:1,
250:17, 251:11,
251:22, 254:16,
262:3

**cappatelli**
199:10, 199:23,
241:22, 242:4,
242:7, 242:10,
242:12, 242:16,
242:20, 243:4,
243:21

**car**
115:16, 115:17,
115:20, 115:24,
116:5, 116:9,
116:14, 213:8,
213:11, 213:12,
215:5, 215:18,
215:20, 245:14,
250:12

**care**
217:3, 218:3,
218:13, 254:7,
254:9

**career**
67:18, 103:22,

121:23
**carefully**
195:10
**caroline**
4:14, 9:6
**cases**
20:10, 20:14,
21:9, 21:12,
21:20, 21:24,
22:13, 27:11,
67:18, 68:3,
74:9, 75:5,
77:20, 85:17,
112:4, 156:7,
201:6, 258:11
**castle**
2:1, 2:14,
8:11, 265:2
**catch**
156:8
**catherine**
6:4, 9:4
**cause**
46:1
**caused**
167:24
**cb**
7:10, 161:10
**center**
5:7, 141:10
**certain**
104:9, 124:12,
156:7, 244:7
**certainty**
200:2
**certificate**
265:1
**certified**
2:15, 172:11,
265:3
**certify**
265:5
**chain**
23:5, 23:9
**chair**
110:17
**challenge**
66:24

**challenges**
181:24
**chance**
159:13, 177:11,
237:10, 257:13
**chances**
52:7
**change**
68:2, 244:24
**changed**
244:14, 245:1
**changes**
166:2
**changing**
210:22
**charged**
120:16, 120:17,
141:21, 254:2
**charges**
75:4, 75:9,
75:14, 75:17,
76:9, 83:17,
84:12, 84:20,
85:1, 85:5,
86:1, 90:9,
92:10, 94:8,
95:20, 142:13,
155:5, 155:13,
155:16, 156:15
**charity**
174:19
**check**
79:20, 80:12,
81:23
**chicago**
1:19, 2:7, 3:8,
3:17, 4:8, 4:18,
5:8, 5:16, 6:3,
6:8, 7:10, 8:6,
8:8, 9:5, 20:4,
56:10, 161:10
**children**
160:14, 178:7,
220:1
**choose**
100:15
**city**
6:3, 8:6, 9:5

**clarification**
106:2
**clarify**
86:24, 106:4,
107:3, 107:7
**clark**
6:6
**classification**
196:2, 238:6
**clean**
123:19, 124:22
**clear**
37:1, 37:12,
39:21, 41:7,
73:13, 91:3,
95:18, 146:5,
194:21, 234:8,
234:12, 251:3,
260:7
**cleared**
9:14, 112:10,
112:14, 126:19,
140:6, 140:10,
140:14, 141:20,
141:23, 142:6,
142:11, 142:19,
143:8, 146:6,
146:8, 146:14,
146:20, 147:10,
147:18, 148:3,
155:20, 156:19,
157:11, 157:16,
157:22, 158:11,
158:18, 165:16,
168:8, 203:4,
238:1, 249:1
**clinic**
207:7, 245:12
**closed**
9:14, 112:10,
112:15, 115:20,
140:6, 140:10,
140:14, 141:20,
142:6, 142:12,
142:19, 143:8,
145:23, 146:6,
146:8, 146:14,
146:20, 147:10,

147:18, 148:3,
155:20, 156:19,
157:11, 157:16,
157:22, 158:11,
158:18, 165:16,
168:8, 203:4,
238:1, 249:1
**closer**
65:21
**closing**
95:18, 156:9,
156:13, 157:19,
182:15, 222:20
**clothes**
235:20, 235:24,
236:4, 236:6
**club**
93:17, 93:18,
94:3
**collect**
38:13
**collins**
162:11, 163:9,
163:24
**come**
22:5, 28:22,
58:11, 75:14,
75:16, 85:2,
86:4, 87:21,
92:10, 104:12,
112:5, 112:18,
117:16, 135:5,
213:4, 215:23,
216:2, 221:2,
235:19, 250:22
**comes**
42:4, 79:1,
109:4
**coming**
87:24, 92:22,
96:20, 189:6,
205:1, 232:15
**comitted**
236:4
**comma**
184:22
**command**
14:21, 23:5,

23:10
**commander**
11:20
**commander's**
13:1, 13:10,
13:15, 13:16,
14:5, 14:6,
14:11, 14:14,
14:16
**commit**
55:19, 56:13,
57:15
**committed**
32:15, 35:23,
37:20, 43:4,
43:14, 116:20,
131:2
**committing**
131:1
**common**
28:11, 86:13,
107:10, 134:18,
173:10, 173:18
**commonly**
98:18
**communicate**
34:21, 181:6,
181:11, 189:6,
248:8
**communicated**
98:4, 145:22,
148:19, 159:23,
165:5, 167:17,
167:20, 167:23,
173:12, 180:22,
188:2, 188:4
**communicating**
180:10
**communication**
82:6
**compare**
59:8, 59:19
**comparing**
60:24
**complete**
122:9, 169:4,
241:13
**completely**
123:17, 172:12

**completeness**
169:5
**compound**
32:18, 50:19
**computer**
152:9, 152:13,
152:14, 152:15,
153:6, 153:7,
153:11, 153:13,
153:22, 160:24
**computer-generat-
ed**
153:23
**concept**
55:12, 56:5
**concludes**
263:24
**conduct**
22:12, 22:21,
22:24, 23:16,
24:17, 25:13,
27:16, 29:2,
29:16, 30:8,
30:19, 60:9,
61:12, 79:19,
86:15, 87:10,
116:22, 118:22,
122:16, 163:2,
164:19, 178:23,
191:15, 231:22,
232:21
**conducted**
25:3, 26:5,
50:13, 52:22,
58:23, 85:7,
86:21, 109:4,
111:2, 117:1,
119:9, 124:19,
149:15, 149:22,
150:15, 159:16,
159:21, 160:1,
162:22, 163:11,
163:14, 175:4,
175:18, 175:20,
175:22, 183:23,
184:9, 185:11,
185:16, 186:3,
196:18, 200:12,

201:4, 219:14,
226:1, 226:7,
226:13, 227:20,
229:3, 229:16,
230:4, 230:8,
240:4, 240:17,
247:11
**conducting**
56:9, 56:22,
57:12, 61:2,
179:11, 183:13
**confer**
113:9, 261:10
**conference**
54:19, 229:4,
232:6
**confess**
55:18, 56:13
**confession**
60:17, 60:23,
60:24, 89:4,
89:13, 89:20,
90:8, 90:20,
246:23
**confessions**
55:12, 56:4
**confront**
64:13, 69:15,
221:3
**confrontational**
91:23
**confused**
231:12, 234:15,
234:17
**confusing**
89:23
**connelly**
6:5
**consent**
171:5, 171:12
**consider**
128:8, 128:20,
131:12, 168:20
**considered**
19:22, 127:13,
127:20, 128:8,
128:10, 128:14,
131:18

**consistent**
33:6, 37:6,
37:21, 38:5,
43:4, 59:20,
60:6, 60:8,
61:20, 90:22,
159:24, 178:11,
253:13
**constant**
77:14
**constantly**
65:14
**construction**
245:6, 245:8
**consult**
98:19, 98:24,
99:14, 99:15,
99:17, 99:20,
111:20, 112:20
**consults**
99:5
**contact**
77:3
**contacted**
226:19
**contain**
44:7, 165:7,
259:3
**contained**
53:9
**containing**
183:15
**contains**
199:6, 258:19
**contemporaneously**
256:20
**context**
187:7, 188:23,
189:1, 250:11
**continually**
27:7
**continue**
186:10, 187:19
**continued**
178:7, 260:11
**continues**
42:3
**continuing**
41:12, 41:16,

157:13
**contradiction**
217:24
**contradictory**
217:6, 218:5
**contribute**
183:2
**convenient**
111:16
**convention**
134:14
**conversation**
81:15, 193:10,
204:18, 208:6,
212:12, 214:2,
214:7, 216:3,
220:17, 221:17,
221:19, 221:21,
222:1, 235:15,
246:2, 246:6,
246:12, 246:15,
246:20, 247:9,
248:19, 252:1,
260:8, 260:10
**conversations**
193:22
**convey**
231:5
**conveyed**
160:3
**cook**
5:4, 5:6, 9:1
**cop**
117:22
**copied**
137:16, 137:22
**copies**
95:8, 137:11
**copy**
9:13, 9:15,
17:22, 136:2,
136:17, 137:14,
139:2, 139:5,
185:7, 194:20
**corned**
93:23
**corner**
11:19

**correction**
93:15
**correctly**
11:22, 57:24,
65:13, 83:3,
84:18, 109:16,
128:22, 145:20,
148:6, 157:10,
201:20, 213:6
**could**
15:9, 24:17,
24:21, 25:13,
25:19, 25:20,
28:17, 28:19,
29:1, 32:6,
32:12, 32:16,
33:1, 33:8,
33:24, 34:8,
37:15, 42:21,
47:15, 52:1,
55:9, 57:8,
57:13, 58:3,
63:17, 69:2,
71:20, 72:11,
72:23, 73:4,
74:9, 81:21,
86:2, 87:14,
88:2, 90:20,
91:13, 95:18,
97:13, 98:16,
102:15, 105:22,
106:6, 106:10,
106:15, 110:17,
118:8, 122:7,
128:18, 137:20,
138:4, 140:5,
143:13, 150:17,
152:8, 156:6,
156:7, 157:12,
158:24, 164:8,
166:5, 169:3,
173:24, 174:4,
180:13, 188:4,
188:14, 197:10,
200:22, 201:8,
206:11, 211:7,
211:14, 212:10,
214:8, 215:21,

216:2, 227:19,
227:24, 228:1,
231:3, 236:16,
240:8, 242:4,
243:1, 243:5,
243:6, 244:11,
244:14, 244:21,
245:22, 248:8,
249:11, 252:19,
254:5, 260:24
**couldn't**
13:20, 44:11,
55:21, 56:8,
72:19, 119:8,
121:19, 127:11,
134:9, 172:3,
176:1, 187:10,
197:5, 199:1,
200:5, 200:14,
200:15, 201:3,
202:17, 227:6,
228:9, 230:7,
251:9
**counsel**
8:13, 9:12,
9:18, 175:15,
261:10, 261:20,
265:11
**counsels**
261:12
**counts**
261:8
**county**
5:4, 5:6, 9:1,
117:14
**couple**
12:21, 171:4,
204:6, 258:15
**course**
31:22, 35:11,
42:2, 63:12,
64:20, 67:17,
68:22, 69:3,
77:23, 78:7,
98:9, 98:12,
98:17, 103:24,
114:19, 118:1,
119:21, 121:23,

122:19, 134:10,
134:24, 142:4,
143:8, 167:18,
167:24, 204:10,
221:11, 224:20,
257:8, 259:10,
261:19
**court**
1:1, 8:11,
8:14, 10:4,
100:5, 100:8,
100:16, 100:19,
105:8, 118:8,
245:21
**create**
164:21
**created**
183:14
**credibility**
68:10, 68:12,
68:22, 69:7,
69:21, 70:12,
70:15, 70:18,
71:11, 72:12,
73:5, 74:1
**crime**
23:11, 24:17,
25:3, 25:7,
26:21, 32:3,
32:5, 32:15,
32:16, 32:24,
33:7, 33:15,
34:4, 35:10,
35:23, 44:2,
44:8, 44:19,
45:2, 48:4,
48:14, 48:24,
53:16, 54:1,
57:15, 59:17,
59:19, 60:4,
60:7, 61:1,
61:20, 69:15,
73:24, 114:20,
115:8, 115:10,
115:21, 116:20,
120:16, 130:8,
130:9, 130:16,
130:19, 131:2,

131:8, 155:12,
194:4, 208:14,
236:4, 245:18,
258:21, 258:22,
258:23
**crimes**
11:15, 12:17,
12:20, 15:2,
15:23, 44:16,
55:18, 56:13
**criminal**
131:21, 131:22
**cross**
239:20, 240:8,
240:12, 240:24,
241:6, 243:3,
243:11, 243:20
**cross-out**
238:19, 239:16
**crossed**
239:7, 239:10,
239:18, 239:24,
240:3, 240:6,
240:15, 240:19,
241:4, 241:5,
241:24, 242:2,
242:3, 242:21,
242:24, 256:10,
256:12, 256:18
**crossing**
239:24, 244:3
**csr**
2:1
**custody**
21:4, 25:22,
27:13, 78:3,
126:10, 198:21,
198:24
**cut**
122:3, 162:3

**D**

**daffada**
4:5
**daley**
5:7
**damen**
207:15

**daniel**
5:12, 9:2
**danny**
202:18, 225:3,
247:20
**database**
160:11, 160:18,
161:18, 161:22
**date**
152:1, 152:11,
152:15, 152:18,
152:22, 152:23,
153:7, 153:14,
153:18, 153:20,
195:24, 199:12,
238:5, 238:6
**dave**
226:22, 227:6
**david**
227:3
**day**
8:2, 9:22,
16:13, 16:22,
17:2, 17:5,
17:11, 18:15,
21:10, 21:24,
22:5, 31:19,
95:22, 126:5,
171:15, 177:19,
177:22, 182:16,
185:13, 199:20,
202:21, 258:15,
262:16, 262:20,
263:24, 265:15
**days**
16:16, 63:21,
154:19, 154:24
**dealing**
222:20
**dealings**
92:16
**dealt**
92:14, 92:17,
93:5
**december**
1:20, 8:10,
245:6, 245:8,
265:16

**decide**
76:12, 103:9,
109:3, 109:17
**decided**
109:11, 110:13
**decides**
76:8, 76:21,
80:20, 84:11,
105:12
**decision**
72:21, 84:19,
100:12, 100:13,
100:18, 101:1,
101:3, 101:7,
101:14, 101:21,
102:7, 104:5,
166:15
**decision-making**
79:10
**decisions**
79:9, 166:15
**deed**
255:7, 255:10,
255:20
**deemed**
121:12
**defendant**
4:3, 5:11, 6:3,
8:22, 9:3, 9:5
**defendants**
1:9, 1:15,
4:11, 5:3, 9:8,
261:7, 261:20,
261:23
**defense**
92:8, 238:6
**delaney**
8:4, 8:16
**deleon**
183:24, 184:2,
184:19, 226:2,
231:5, 237:3,
238:14
**deleon-reyes**
1:5, 3:3, 9:12,
9:18
**deliberate**
110:5

**delivered**
135:17
**demonstrate**
36:7
**demonstrated**
35:20, 35:22,
37:2, 37:5,
43:3, 43:13
**demonstration**
37:21, 44:1,
44:8, 44:15,
44:19, 45:2,
45:16, 46:2,
46:8, 47:12,
47:15, 47:18,
48:4
**demonstrations**
47:4, 47:21
**demonstratively**
71:13
**denials**
69:22, 69:23
**denied**
162:16, 167:6,
169:6, 193:12,
193:15, 193:18,
225:7
**denies**
69:16
**denim**
212:16
**deny**
69:20
**denying**
69:17, 194:10,
231:6
**department**
20:4, 20:10,
56:11, 134:6,
136:10, 161:10,
199:20
**depend**
37:5, 37:20,
138:21, 261:2
**depending**
237:24
**depends**
23:20, 23:22,

28:5, 32:12,
33:5, 35:19,
36:3, 64:8,
64:10, 71:18,
72:18, 76:6,
87:14, 92:14,
107:23, 111:19,
130:4, 183:20,
220:23, 235:5

**depict**
34:23

**depiction**
48:14, 49:21,
50:3, 50:15,
50:17

**depos**
8:12

**deposition**
1:17, 2:2, 7:9,
8:3, 9:23, 10:3,
11:6, 39:19,
40:1, 40:20,
42:3, 42:8,
119:24, 161:6,
165:17, 195:9,
264:1, 265:5

**depositions**
124:14

**descent**
181:12

**describe**
184:1

**described**
94:16, 140:9

**describes**
155:12

**description**
219:24

**desk**
110:17

**detailed**
124:10

**detective's**
83:5

**detectives**
22:21, 23:1,
23:11, 28:7,
28:12, 75:4,

75:8, 76:17,
77:14, 80:8,
80:11, 81:2,
81:12, 82:8,
84:24, 85:5,
85:16, 86:13,
91:22, 96:6,
96:20, 98:19,
99:5, 101:18,
101:23, 104:13,
106:6, 106:8,
117:21, 118:4,
124:9, 124:13,
128:11, 135:4,
137:14, 138:5,
138:9, 141:16,
149:8, 149:18,
162:13, 162:18,
166:22, 168:1,
168:24, 171:6,
171:13, 173:7,
173:18, 173:19,
174:1, 175:6,
182:7, 182:11,
183:24, 184:13,
184:18, 185:18,
186:8, 186:9,
186:13, 190:14,
190:15, 190:24,
192:3, 192:18,
193:1, 226:3,
226:18, 226:23,
228:14, 229:4,
232:15, 243:18,
244:9

**determination**
46:6, 128:16

**determine**
75:17, 88:14,
88:20, 118:2

**determined**
120:19, 121:1,
128:3, 163:24

**determines**
130:6

**dets**
149:7, 173:13

**developed**
142:4

**developments**
95:21, 143:7

**dialect**
180:14

**dickinson**
4:11, 45:5,
45:11, 45:17,
45:24, 46:15,
47:17, 47:18,
48:3, 48:5,
48:10, 48:12,
48:15, 49:4,
49:11, 49:24,
50:5, 50:13,
50:16, 51:6,
52:21, 53:14,
53:17, 132:24,
133:17, 143:22,
187:22, 189:2,
189:8, 190:24,
195:1, 196:15,
197:3, 197:15,
198:11, 202:19,
202:21, 203:3,
203:5, 205:4,
205:24, 222:4,
222:12, 229:6,
230:21, 231:8,
238:11, 240:15,
240:21, 248:13,
253:3, 259:17

**dickinson's**
45:23, 46:9,
196:13, 199:6,
215:13, 215:16,
223:4, 225:13,
237:2, 238:17

**differ**
221:2

**difference**
37:23, 97:6

**different**
23:12, 66:15,
69:24, 70:16,
73:10, 73:11,
74:15, 77:19,
86:17, 88:18,
102:22, 157:5,

162:6, 164:16,
189:5, 189:7,
204:4, 214:5,
234:19, 234:21,
234:24, 235:4,
257:10

**differently**
166:17

**difficulty**
180:10

**direct**
190:17, 252:17,
256:5, 256:7

**discuss**
112:23, 135:9

**discussed**
140:11, 146:8,
147:10, 165:18

**discussing**
146:20

**discussion**
11:9, 54:20,
175:14, 261:11

**dismissive**
38:14

**dispute**
143:24, 150:14,
150:17, 175:21,
176:9, 206:3,
207:16, 215:14,
215:15, 219:13,
226:12, 229:11,
229:24

**distinction**
72:24

**district**
1:1, 1:2, 28:21

**disturbed**
110:18

**division**
1:3, 92:7,
136:15, 136:16

**document**
31:22, 33:13,
33:16, 34:7,
34:24, 35:12,
35:24, 37:1,
37:4, 37:19,

43:9, 43:18,
128:24, 140:11,
144:4, 151:18,
154:9, 155:4,
159:11, 161:8,
161:12, 161:14,
164:11, 165:10,
194:5, 194:14,
217:12, 223:17,
224:11

**documentation**
50:2, 128:17,
128:19, 210:21

**documented**
127:17, 127:24,
128:12, 129:8,
130:1, 130:10,
130:14, 130:23,
131:4, 131:10,
143:2, 143:3,
143:5, 143:10,
144:13, 144:17,
144:18, 144:21,
145:3, 145:6,
145:13, 145:15,
148:1, 148:2,
148:23, 149:1,
150:11, 164:10,
167:15, 168:2,
172:5, 182:15,
196:19, 221:12,
223:3, 223:15,
223:21, 246:13,
259:11

**documenting**
32:2, 183:7,
195:5

**documents**
114:13, 135:15,
135:16, 135:19,
150:20, 182:13

**doing**
25:21, 25:24,
53:7, 57:5,
57:19, 66:6,
79:6, 87:5,
90:12, 113:8,
119:1, 121:15,

124:24, 166:10,
169:16, 189:17

**done**
36:12, 36:21,
40:8, 40:10,
40:19, 40:21,
41:23, 42:19,
50:17, 73:6,
86:6, 95:19,
115:23, 116:5,
122:7, 138:14,
159:10, 163:22,
164:11, 164:12,
166:5, 166:8,
166:16, 177:7,
243:2, 243:6,
255:7, 255:10,
255:20, 263:22

**door**
13:14, 13:16,
14:13, 14:14,
14:21, 14:22,
214:13, 214:22,
214:23, 214:24,
254:1

**doorway**
15:7

**doubt**
180:16, 192:11,
193:11, 193:23,
207:23, 212:14,
220:19, 235:16,
252:18, 257:4

**doubtful**
245:2, 255:11

**down**
10:5, 12:23,
38:8, 40:22,
45:18, 53:17,
54:17, 63:13,
102:12, 110:24,
111:1, 128:5,
132:7, 133:13,
135:18, 135:24,
139:2, 139:8,
149:3, 149:14,
167:5, 175:1,
187:18, 200:23,

201:1, 201:11,
206:7, 209:18,
212:15, 218:18,
226:17, 230:16,
240:12, 240:13,
245:18, 245:24,
250:9

**downstairs**
28:19

**downtime**
21:16, 21:18

**dozens**
13:22

**drawing**
32:5, 33:14,
34:22, 35:2,
35:5, 35:8,
44:1, 44:8,
44:15, 44:18,
45:2, 45:15,
46:2, 46:8,
46:21, 46:23,
47:3, 47:11,
48:11, 48:14,
48:18, 53:16

**drawings**
46:20, 47:7

**drew**
32:13, 33:5,
33:17

**drink**
11:2, 93:14

**drinking**
93:24

**drinks**
93:8, 93:11

**drive**
5:14

**due**
17:15

**duly**
9:11

**during**
30:4, 31:22,
35:11, 36:5,
42:2, 43:23,
56:9, 62:9,
64:19, 68:22,

69:3, 78:7,
98:9, 98:11,
98:17, 99:23,
103:24, 105:9,
111:21, 114:19,
119:21, 121:23,
122:19, 134:10,
134:24, 135:12,
142:4, 167:18,
167:23, 178:19,
193:6, 193:13,
193:16, 193:20,
207:9, 207:18,
221:11, 224:20,
225:7, 229:6,
235:12, 257:8,
259:10

**dynamic**
91:20

---

**E**

**each**
78:6, 112:19,
112:22, 113:10,
123:19, 124:13,
124:22

**earlier**
22:4, 47:10,
145:15, 156:19,
178:22, 187:21,
191:23, 201:21,
203:5, 203:19,
223:17, 227:13,
234:8, 247:2,
247:21, 249:23,
262:21

**early**
135:13

**earnest**
69:20

**easiest**
58:8

**easily**
154:17, 165:10,
173:24

**eastern**
1:3

**easy**
199:19

**ed**
222:10, 242:17,
248:17, 253:6
**ed's**
245:23
**eddie**
51:23, 52:6,
192:16, 222:22,
250:19
**eddie's**
52:5, 203:10
**edward**
5:5, 8:23,
8:24, 261:22
**effectively**
181:11
**eight**
146:12, 217:21
**either**
50:3, 50:16,
58:10, 95:20,
135:17, 148:24,
200:16, 220:9,
248:9, 248:21,
252:21
**elapsed**
189:16
**elicit**
106:16
**eliminate**
168:1
**eliminated**
162:17, 166:21,
166:24, 167:10,
167:13, 168:7,
169:3
**else**
17:14, 22:6,
22:24, 27:19,
52:4, 87:22,
88:2, 88:5,
97:1, 97:14,
105:2, 111:3,
117:22, 123:13,
138:1, 145:3,
150:12, 172:2,
176:2, 176:18,
188:14, 188:15,

189:22, 221:10,
221:20, 234:3,
239:12, 243:24,
244:23, 247:6,
249:13, 252:14,
261:13
**else's**
174:8
**employed**
265:11
**end**
16:5, 17:4,
17:8, 69:18,
142:23, 155:13,
196:24, 221:21
**ended**
200:16, 222:2
**engaging**
60:16
**english**
27:17, 31:15,
197:7, 252:16,
256:6
**enough**
74:6, 76:13,
93:5
**entailed**
259:22
**entire**
161:23
**entirely**
111:24, 237:24
**entrance**
13:9
**entry**
214:12
**envelope**
255:5, 255:6
**ernie**
172:24, 176:10,
222:17, 222:18,
222:19
**error**
152:9
**errors**
262:23, 263:15
**especially**
52:2, 130:23

**esquire**
3:4, 3:12,
3:13, 4:4, 4:14,
5:5, 5:12, 6:4
**essentially**
82:17
**et**
1:8, 1:14, 8:5,
8:7, 9:24
**even**
33:23, 51:3,
51:6, 57:20,
80:10, 80:19,
81:4, 82:16,
83:3, 83:24,
86:13, 86:23,
87:23, 88:19,
89:17, 99:2,
99:10, 121:19,
146:13, 170:14,
201:10, 206:17,
211:8, 222:23,
232:20, 247:21,
251:11, 257:18
**evening**
226:24
**events**
211:9
**ever**
20:3, 26:17,
26:20, 27:1,
29:24, 30:2,
30:18, 36:10,
36:17, 56:23,
60:9, 60:24,
87:5, 89:6,
93:11, 93:13,
105:3, 111:20,
112:19, 114:4,
120:12, 125:4,
126:9, 127:13,
127:16, 128:24,
134:15, 139:9,
139:19, 151:9,
179:19, 185:7,
185:9, 208:18,
252:3, 252:5
**every**
27:2, 42:3,

65:20, 74:14,
77:19, 86:17,
128:24, 157:5,
235:4, 245:24
**everybody**
69:20, 91:3,
128:4, 128:14,
128:23, 132:18,
132:19, 133:1,
133:14, 133:16,
133:24, 146:17,
233:24, 244:23
**everything**
77:22, 105:2,
107:7, 228:8,
234:8
**everywhere**
102:15
**evidence**
32:6, 33:2,
33:8, 33:12,
33:13, 34:9,
34:12, 37:6,
37:7, 37:22,
37:23, 43:5,
43:15, 69:5,
70:4, 72:11,
73:4, 116:4,
141:24, 142:3,
142:8, 142:13,
232:24
**evokes**
86:10
**exact**
56:14, 133:24,
251:23
**exactly**
21:13, 35:19,
36:21, 65:2,
71:20, 79:17,
88:14, 103:2,
104:20, 115:23,
117:3, 118:13,
132:14, 134:2,
134:8, 135:1,
136:20, 167:9,
169:16, 170:23,
183:11, 189:3,

200:7, 202:17,
203:1, 216:5,
218:11, 234:20,
234:23, 244:8,
251:17, 253:22,
254:13, 255:8,
255:17, 255:21,
256:1
**examination**
7:2, 9:12,
9:18, 169:21,
261:20
**examined**
172:10
**examiner**
172:11
**example**
71:23, 88:8,
88:9, 88:11,
92:19, 112:9
**exams**
116:22, 117:1,
117:24
**except**
104:14, 208:22
**exception**
157:13
**exclusively**
126:4
**exculpatory**
142:3
**excuse**
16:11, 59:11,
131:11, 186:5
**exhibit**
7:10, 7:11,
7:12, 140:5,
140:8, 140:19,
141:11, 148:7,
161:6, 161:8,
161:12, 161:14,
162:7, 162:9,
162:10, 162:19,
165:6, 182:5,
190:10, 194:18,
194:19, 194:22,
223:23, 224:1,
224:3, 224:14,

224:15, 225:23,
236:7, 236:23,
237:1, 237:10,
250:5, 257:7
**exhibits**
7:9
**existence**
185:10
**expect**
24:5, 24:12,
44:20, 45:3,
45:17, 46:9,
47:24, 48:5,
48:15, 49:4,
50:1, 50:15,
69:19, 127:17,
128:11, 148:9,
148:16, 148:18,
150:10, 157:1,
158:11, 158:17,
167:14, 168:2,
169:1, 169:10,
172:4, 173:5,
183:6, 225:12,
247:12, 249:20,
251:14, 259:16,
259:24, 260:14
**expectation**
163:16, 247:15,
249:5
**expectations**
225:16
**experience**
29:13, 45:11,
45:16, 45:24,
46:16, 47:16,
47:18, 109:8,
188:21
**explain**
12:6, 69:11
**explained**
73:11
**explaining**
260:11
**explains**
205:9
**explanation**
41:22, 165:19,

166:9, 239:15,
240:23
**extent**
31:16
**extra**
9:13, 9:16,
20:19, 21:1

---

**F**

**face**
188:8, 209:24,
211:13
**face-to-face**
187:1, 187:17,
188:5
**fact**
11:12, 16:12,
30:24, 31:7,
50:2, 57:14,
60:12, 61:19,
70:12, 121:11,
143:24, 201:17,
203:15, 223:14,
248:23
**facts**
55:1, 55:6,
57:23, 58:1,
58:9, 58:15,
59:9, 61:7,
61:11, 61:24,
62:2, 63:9,
67:12, 68:13,
68:19, 72:19,
74:15, 74:18,
82:14, 87:15,
89:7, 89:11,
99:20, 106:23
**factual**
57:21
**failed**
172:12
**fair**
10:16, 19:20,
24:7, 24:10,
24:15, 28:13,
34:9, 34:24,
46:10, 51:15,
53:11, 54:3,

58:4, 65:15,
68:23, 69:7,
70:6, 70:19,
72:12, 74:10,
77:6, 78:13,
80:13, 84:1,
93:9, 95:15,
95:24, 96:1,
96:18, 103:22,
148:12, 172:16,
179:3, 192:14,
192:15, 200:20,
263:13
**false**
55:12, 56:4,
57:8, 71:4,
71:13, 195:15,
195:21
**familiar**
124:24, 161:11
**family**
93:20, 126:21,
126:24, 127:4,
127:13, 130:24,
131:13, 131:18
**far**
13:9, 13:14,
14:3, 15:4,
15:22, 23:14,
31:19, 71:23,
71:24, 85:18,
85:20, 105:16,
114:16, 116:12,
129:2, 228:3,
242:7
**farthest**
14:12
**fashion**
158:2
**faster**
156:14
**february**
255:6
**fed**
68:13, 105:2
**feed**
55:1, 58:1,
58:9, 68:19

**feedback**
79:12
**feeding**
55:6, 58:15
**feel**
83:24, 84:16,
174:23
**feeling**
10:24
**feet**
13:22, 14:1,
14:12, 14:23,
15:8, 16:9
**fell**
245:11
**fellow**
93:8
**felony**
75:13, 75:20,
75:24, 78:24,
91:21, 92:9,
92:22, 93:12,
226:19
**female**
245:13
**few**
13:22, 133:23,
216:15, 261:17
**field**
152:11, 152:23,
153:20
**fifth**
39:6, 86:10
**figure**
62:1, 62:4,
63:1, 63:3,
63:9, 63:22,
67:14, 91:17,
174:19, 234:18,
234:20, 234:22
**file**
87:24, 127:18,
128:18, 131:4,
135:23, 136:3,
136:17, 136:22,
136:23, 137:12,
138:18, 138:19,
139:2, 139:5,

139:10, 150:24,
168:3, 243:13,
243:16, 243:19,
244:2
**filed**
178:6
**files**
137:16, 244:5,
244:10
**fill**
17:15, 137:23
**filled**
18:14, 18:20,
19:9, 137:11,
164:9, 196:3,
196:5, 198:6,
198:7, 241:10,
241:15, 241:17,
242:5, 242:10,
242:16
**final**
155:12
**financial**
265:13
**find**
28:17, 38:14,
54:12, 57:17,
58:13, 61:16,
61:19, 63:24,
64:1, 64:4,
68:6, 70:10,
79:24, 81:2,
88:3, 91:18,
195:13, 195:20,
207:24
**finding**
244:2
**fine**
39:12, 189:18,
189:24, 206:18,
210:22, 217:18,
260:21
**finish**
38:23, 39:7,
42:8, 189:17
**finished**
38:8, 38:10,
38:21, 39:2,

39:7, 88:23,
152:16, 177:9,
220:22, 258:9
**firm**
4:15
**first**
14:22, 15:19,
16:10, 69:12,
96:19, 108:18,
108:24, 120:14,
140:21, 141:1,
143:9, 149:16,
149:21, 150:15,
151:10, 151:13,
159:9, 177:3,
183:23, 185:17,
186:6, 190:12,
191:5, 199:2,
210:2, 226:16,
238:15, 250:6,
255:4
**first-name**
92:11
**fit**
40:19, 61:7,
61:11, 61:24,
62:2, 67:12,
234:13
**five**
154:19, 154:24,
212:21, 216:8,
216:21, 232:9,
258:2, 261:23,
263:9, 263:12
**floor**
3:7, 3:16,
11:12, 14:15,
28:20, 113:20
**fluid**
28:10
**focus**
20:12
**focused**
21:10, 142:12,
146:19
**foggy**
196:22
**fold**
162:3

**folks**
92:3, 133:13
**follow**
11:8
**follow-up**
59:12, 59:15,
60:7, 60:9,
61:2, 61:12,
67:15, 81:15,
169:1, 169:11,
202:22, 203:6
**follow-ups**
216:4
**followed**
168:13
**follows**
9:11, 207:14
**food**
10:23, 11:1
**fop**
17:17, 17:20,
17:22, 18:9
**foregoing**
265:4, 265:6
**forgets**
106:23
**forgot**
237:12
**forth**
98:11
**found**
134:13
**four**
73:8, 156:14,
165:23, 216:21,
218:17, 218:18,
232:9, 255:2,
261:23
**frankly**
97:13
**free**
8:14
**fresh**
55:9
**friday**
182:6
**friendly**
91:22, 92:3

**friends**
245:10, 245:12
**front**
12:18, 13:14,
111:7, 214:8,
224:4
**frustrated**
40:14
**full**
186:7, 190:12,
226:17
**fully**
123:22, 192:4,
225:1
**further**
169:11, 175:1,
206:7, 220:20,
260:11, 263:18
**fusco**
6:5

---

**G**

**gabriel**
1:11, 8:6,
8:18, 8:20,
115:2, 115:5,
185:17, 185:20,
186:2, 193:13,
193:15, 193:19,
194:10, 198:22,
245:14, 250:12,
262:5
**gang**
23:10, 24:17,
25:2, 25:7,
26:21
**garage**
115:12, 115:20,
115:21, 116:1
**gave**
11:10, 37:21,
40:18, 72:20,
74:6, 124:13,
160:1, 160:14,
166:9, 204:7,
222:21, 222:22,
223:15, 225:12,
231:4, 262:1,

262:9, 262:18
**general**
11:10, 78:13,
92:18, 145:4,
146:1, 146:4,
147:12, 147:20,
147:21, 157:6,
244:9
**generally**
135:3
**generated**
152:13, 152:14,
153:7, 153:12,
153:14, 153:22
**getting**
40:14, 57:1,
65:19, 65:21,
77:22, 78:5,
116:9, 137:15,
160:23, 217:20,
230:1, 245:23,
246:22
**girl**
209:20, 210:3,
210:9, 211:1
**gist**
246:1
**give**
22:5, 30:13,
31:1, 38:23,
75:6, 84:9,
94:22, 95:3,
95:8, 96:14,
97:24, 98:3,
98:7, 139:7,
143:11, 145:16,
212:19, 221:1,
224:6, 229:19,
232:13
**given**
30:18, 31:10,
32:21, 32:23,
41:20, 41:22,
67:20, 101:2,
109:20, 128:6,
157:7, 165:22,
186:17, 188:19,
189:11, 197:18,

225:13, 228:18,
241:11, 248:23,
255:5, 262:11,
262:15, 265:7
**gives**
70:16, 73:23,
85:17, 87:19,
88:4, 91:2,
219:23, 219:24
**giving**
63:24, 65:7,
65:15, 88:8,
202:16, 204:4,
206:4
**glance**
51:10, 51:11
**go**
18:2, 18:24,
21:14, 25:9,
25:21, 26:13,
26:22, 27:9,
29:8, 29:15,
34:16, 37:14,
38:12, 38:19,
42:18, 42:21,
49:18, 56:16,
59:4, 61:8,
64:3, 68:7,
70:13, 74:15,
83:19, 84:17,
88:18, 89:18,
90:20, 91:6,
91:16, 93:8,
93:11, 94:13,
94:17, 99:5,
104:9, 110:14,
110:16, 114:8,
114:20, 114:22,
114:24, 115:2,
117:13, 122:4,
123:14, 123:18,
128:15, 133:15,
145:12, 147:1,
147:13, 149:13,
150:7, 151:21,
154:7, 154:14,
156:5, 165:24,
169:8, 170:1,

171:1, 171:13,
172:23, 173:8,
177:6, 188:22,
189:19, 197:21,
202:5, 203:9,
205:2, 205:23,
207:5, 207:12,
207:21, 211:21,
212:5, 213:21,
215:2, 215:22,
225:9, 230:21,
233:14, 233:19,
236:1, 237:12,
247:8, 248:21,
255:23, 257:1,
258:3, 258:14,
260:20
**goes**
12:16, 14:14,
14:15, 63:8,
72:18, 74:5,
91:11, 99:2,
108:17, 130:4,
135:3, 145:4,
159:9, 176:21,
184:1, 193:9,
205:8, 207:12,
219:22, 219:23,
235:22
**going**
12:13, 12:18,
26:2, 38:7,
38:13, 41:1,
41:4, 42:1,
64:9, 69:18,
70:11, 73:12,
74:20, 78:2,
79:9, 79:24,
80:20, 81:15,
83:10, 83:11,
83:16, 83:18,
83:23, 87:20,
90:19, 93:13,
93:23, 96:2,
99:17, 103:10,
107:10, 107:18,
108:2, 109:18,
112:20, 114:5,

116:2, 117:12,
123:14, 123:23,
132:7, 142:21,
144:11, 144:13,
145:16, 145:22,
146:8, 146:19,
147:10, 149:2,
150:2, 150:3,
150:18, 151:13,
152:12, 154:8,
154:10, 154:11,
156:11, 166:17,
169:23, 173:2,
174:17, 181:24,
182:5, 187:24,
188:11, 189:1,
189:4, 202:14,
205:14, 205:17,
205:19, 207:10,
208:4, 209:9,
210:23, 212:22,
217:4, 218:4,
218:16, 220:23,
221:1, 225:14,
225:18, 229:23,
232:21, 234:16,
234:17, 234:20,
234:22, 246:16,
248:6, 248:9,
249:9, 250:17,
258:10, 259:5

**gone**
117:5, 213:7,
213:13, 213:14,
215:17, 257:12

**good**
9:20, 9:21,
10:21, 11:3,
47:2, 61:8,
217:19

**gotten**
213:14, 215:18,
230:23, 231:11,
231:23, 232:22

**gpr**
7:11, 7:12,
44:5, 44:10,
44:20, 44:22,

45:4, 48:6,
48:16, 48:23,
49:2, 50:18,
50:23, 150:24,
151:9, 183:6,
183:11, 183:14,
188:14, 194:24,
195:8, 195:13,
195:14, 196:19,
198:6, 201:7,
203:13, 206:1,
207:23, 209:2,
215:13, 215:16,
221:8, 223:4,
223:22, 225:18,
237:2, 237:5,
237:13, 239:6,
239:18, 239:22,
240:7, 241:11,
242:1, 244:3,
245:5, 245:23,
246:5, 249:16,
252:20, 253:12,
253:18, 256:23,
256:24, 257:7,
257:12, 257:19,
258:19, 259:11,
259:17, 260:15

**gpr's**
43:23, 44:13,
50:3, 51:23,
52:7, 52:9,
52:15, 52:18,
95:3, 95:6,
95:9, 151:7,
157:2, 157:22,
158:5, 158:12,
158:17, 192:16,
195:3, 222:15,
222:17, 222:22

**grab**
159:11

**great**
137:21

**ground**
10:3

**group**
134:9, 248:3,

249:3

**guadalupe**
122:15, 122:19,
122:22, 144:5,
182:7, 182:11,
182:13, 182:15,
182:24, 227:2,
262:18, 263:12

**guess**
14:1, 15:10,
32:13, 56:21,
60:22, 110:18,
121:20, 128:2,
137:10, 160:20,
168:14, 218:12,
219:12, 228:1,
243:1, 243:11,
249:14, 249:18

**guevara**
1:8, 1:14, 4:3,
8:5, 8:22, 9:3,
9:24, 121:4,
121:9, 121:14,
121:22, 121:24,
133:21, 141:15,
148:15, 149:10,
149:15, 149:22,
149:23, 150:8,
150:15, 152:4,
156:4, 159:16,
159:24, 163:1,
163:7, 169:19,
171:18, 171:23,
172:9, 172:17,
172:22, 173:3,
173:12, 174:2,
175:4, 175:17,
175:20, 175:22,
176:2, 176:4,
176:10, 176:11,
176:12, 176:15,
176:16, 176:17,
176:18, 176:23,
180:20, 181:19,
181:23, 182:23,
183:23, 184:9,
185:16, 186:3,
186:18, 187:2,

190:16, 191:18,
197:11, 197:12,
201:16, 201:22,
203:15, 203:19,
204:1, 223:8,
226:1, 226:7,
226:9, 226:13,
229:2, 229:5,
229:8, 230:13,
230:22, 231:11,
231:14, 231:21,
231:23, 232:21,
247:4, 247:11,
247:12, 247:16,
248:10, 248:21,
248:23, 249:2,
249:14, 249:18,
250:18, 252:21,
253:4, 253:8

**guevara's**
141:3, 141:10,
150:20, 151:1,
151:10

**gun**
36:4, 87:20,
87:22, 87:23,
88:2

**guy**
28:9, 36:4,
46:1, 58:9,
61:5, 70:22,
70:24, 87:18,
88:1, 92:17,
107:6, 247:21

**guys**
20:1, 51:5,
51:8, 117:15,
192:13, 197:18,
211:6, 261:5

---

**H**

**habit**
122:5

**half**
159:9, 189:15,
213:1

**halfway**
149:14

**hallway**
12:22, 12:23,
14:21

**halvorsen**
140:17, 140:19,
141:8, 141:15,
148:15, 149:11,
152:4, 156:4,
163:1, 163:6,
172:21, 173:11,
173:22, 176:6,
176:10, 186:18,
187:2, 190:16,
222:17, 223:12,
224:19, 225:13

**hand**
36:6, 138:10,
138:17, 265:14

**handed**
152:19, 222:16,
242:17, 242:19

**handing**
161:8

**handling**
24:24

**handwriting**
195:23, 196:11,
196:13, 196:16,
238:8, 238:11,
238:15, 238:17

**handwritten**
100:1, 100:8,
100:15, 100:20,
101:6, 101:12,
101:19, 101:24,
102:8, 102:10,
102:12, 102:19,
102:23, 103:10,
103:12, 105:5,
105:7, 108:19,
109:3, 109:19,
109:21, 109:22,
110:3, 110:13,
110:15, 111:7,
111:22, 112:24,
151:9, 155:9,
155:11, 227:2,
262:23

**happen**
26:20, 29:12,
44:23, 49:16,
49:20, 158:23,
179:1, 247:16

**happened**
29:24, 33:7,
39:12, 39:14,
39:18, 39:24,
42:13, 45:9,
52:19, 53:10,
54:5, 58:13,
112:8, 112:17,
119:20, 124:12,
128:21, 134:10,
135:2, 135:11,
157:14, 204:5,
216:2, 216:6,
218:21, 219:8,
219:9, 219:10,
219:19, 220:21,
223:21, 225:14,
232:16, 233:1,
234:21, 234:23,
239:2, 247:14,
258:6

**happening**
26:17, 26:19,
27:1, 30:2,
179:3

**happens**
77:22, 78:7,
109:11, 174:7,
174:9

**happy**
206:21

**harassing**
73:15

**hard**
36:21, 46:21,
47:2, 52:5,
152:13, 208:8,
220:4, 243:22,
244:1, 245:3

**harmed**
88:3

**harvey**
4:12

**he'll**
58:9

**head**
188:9

**headquarters**
117:6

**heads**
84:9

**hear**
16:4, 20:7,
92:24, 93:4,
120:24, 145:7,
234:6

**heard**
20:5, 26:17,
26:20, 62:24,
120:12, 120:14,
134:16

**hearing**
59:24, 252:5,
252:19

**heater**
19:22, 19:24,
20:1

**held**
2:2, 8:7,
54:20, 97:2

**hello**
93:21, 93:22

**help**
28:10, 28:22,
52:3, 199:18,
212:20, 259:21

**helpful**
168:6

**helping**
174:19

**helps**
68:11, 70:12

**here**
9:22, 87:16,
87:20, 91:19,
116:13, 140:8,
144:20, 145:14,
145:16, 145:20,
147:1, 147:4,
148:24, 150:11,
154:17, 168:22,

169:12, 172:5,
185:20, 187:4,
187:7, 188:18,
198:6, 200:1,
203:12, 221:12,
222:16, 230:15,
231:16, 237:12,
245:9, 246:13,
246:21, 255:8,
257:13, 257:22,
259:23, 259:24,
261:4

**here's**
15:11, 212:22

**hereby**
265:5

**hereunto**
265:14

**herself**
192:4, 192:14,
225:1

**hey**
26:12, 26:21,
53:17, 54:8,
56:24, 108:12,
188:22

**higher**
23:9

**himself**
58:11, 88:6,
172:22, 173:1,
179:12

**hold**
134:20, 177:1,
206:9, 224:1,
224:9, 248:4,
249:7

**holding**
256:23

**home**
114:22, 114:24,
115:2, 187:14,
205:23, 207:5,
207:12, 209:18,
213:7, 213:13,
213:22, 258:24

**homewood**
117:7

**homicide**
12:24, 14:24,
22:13, 22:20,
23:1, 23:17,
23:24, 24:3,
24:5, 24:7,
24:9, 24:13,
24:14, 24:16,
24:18, 25:4,
25:14, 25:15,
26:6, 26:13,
26:14, 26:21,
26:22, 26:23,
27:3, 27:4,
28:3, 28:6,
29:16, 29:17,
30:8, 30:14,
30:19, 31:23,
35:22, 36:16,
37:2, 56:10,
56:23, 65:19,
66:2, 75:4,
75:8, 77:5,
77:14, 77:16,
78:14, 78:15,
79:12, 88:19,
89:3, 89:11,
114:9, 114:20,
118:1, 124:11,
125:21, 128:3,
146:15, 152:21,
168:10, 179:11,
196:23, 222:10
**hooded**
212:17
**hopefully**
42:16, 107:1
**hospital**
184:21, 205:17,
209:12, 259:5
**hour**
189:14
**hours**
149:15, 152:2,
162:11, 169:19,
171:5, 172:9,
175:4, 176:5,
183:22, 185:16,

186:9, 186:10,
186:14, 190:13,
196:5, 196:9,
200:9, 204:7,
213:1, 225:24,
226:22, 229:2,
229:16, 230:23,
238:22, 239:16,
239:21, 261:8
**house**
215:17, 252:12,
259:4, 259:12
**houses**
258:14
**however**
163:23, 176:16,
212:13, 220:17,
231:2, 246:16
**hrs**
238:19, 238:22
**hundred**
14:1, 39:13,
39:18, 40:21
**hurt**
70:11
**husband**
182:8, 182:24,
204:22, 205:15,
205:17, 207:3,
208:1, 208:12,
209:12
**hypothetical**
29:22, 32:8,
33:4, 34:11,
35:17, 37:12,
50:20, 54:4,
59:7, 61:4,
61:15, 61:22,
62:15, 62:21,
63:7, 64:7,
64:17, 64:24,
65:1, 66:12,
66:20, 68:3,
68:17, 69:1,
69:14, 70:8,
70:21, 72:6,
72:15, 74:4,
74:6, 74:12,

76:4, 76:11,
77:2, 77:11,
77:18, 78:19,
79:4, 80:5,
80:16, 80:24,
81:8, 83:15,
84:4, 85:8,
86:8, 87:13,
89:24, 95:17,
98:15, 98:23,
103:17, 106:20,
108:6, 130:12,
130:21, 131:6,
137:3, 137:9,
137:20, 138:3,
138:24, 158:22,
194:6
**hypothetically**
87:18

## I

**icam**
160:10, 160:18,
161:15, 161:18,
161:22
**idea**
10:4, 55:5,
65:7, 67:8,
84:6, 100:14,
104:22, 121:19,
122:24, 123:8,
125:11, 125:17,
127:2, 127:15,
129:20, 129:21,
131:20, 158:16,
163:10, 163:15,
172:20, 176:8,
179:22, 186:16,
196:17, 198:5,
199:4, 208:3,
208:14, 221:9,
240:19, 249:11,
250:24
**identification**
160:16, 161:7
**identified**
143:18, 145:20,
146:7, 160:13,

167:2, 167:11,
168:20, 168:23,
191:6
**identifies**
144:1, 144:4,
147:4, 148:8
**identify**
146:17, 147:8,
162:14, 167:5
**identities**
133:24
**identity**
125:7
**ii**
1:18
**illinois**
1:2, 1:19, 2:7,
2:16, 3:8, 3:17,
4:8, 4:18, 5:8,
5:16, 6:8, 8:9,
265:21
**imagine**
17:13, 34:6,
63:17, 64:18,
82:4, 103:2,
103:4, 113:5,
157:7, 157:14,
167:6, 182:4,
188:24, 229:22,
240:14, 257:20
**imagining**
63:20
**immigrant**
204:21
**impact**
55:6, 70:18,
121:3
**implausibility**
71:19
**implausible**
62:19, 62:23,
63:5, 64:1,
64:2, 64:13,
64:15, 67:1,
68:21, 69:5,
70:3, 70:10,
71:9, 72:10,
73:3, 74:17,

91:12, 91:15,
209:11, 209:16
**implicated**
192:4, 192:14,
225:1
**important**
20:11, 20:14,
20:16, 20:18,
34:8, 53:23,
97:8, 201:4
**impossible**
63:17, 195:20
**impound**
116:11
**impression**
232:14
**improper**
25:1, 206:17
**inappropriate**
41:17
**incident**
58:14, 193:14,
193:16, 193:19
**include**
53:18, 54:2,
133:17, 164:24,
165:8, 262:22
**included**
133:15, 142:5,
144:6, 244:13,
263:15
**includes**
161:23
**including**
10:3, 144:5,
157:22, 258:21
**incomplete**
29:22, 32:8,
33:4, 34:11,
35:17, 37:11,
50:20, 54:4,
59:7, 61:4,
61:15, 61:22,
62:15, 62:21,
63:7, 64:7,
64:17, 64:24,
66:12, 66:20,
68:17, 68:24,

70:8, 70:21,
72:5, 72:15,
74:4, 74:12,
76:4, 76:11,
77:1, 77:11,
77:18, 78:9,
78:18, 79:4,
80:4, 80:15,
80:23, 81:8,
83:14, 84:4,
85:8, 86:8,
87:13, 89:24,
95:17, 98:14,
98:23, 103:17,
106:20, 108:6,
130:12, 130:21,
131:6, 137:2,
137:8, 137:20,
138:3, 138:24,
158:21, 194:6,
242:13
**inconsistent**
37:6, 37:22,
43:15, 64:21,
67:1, 69:5,
70:3, 71:9,
72:10, 73:3
**incorporated**
222:19
**increase**
58:2
**incriminate**
58:3, 58:11
**incriminated**
142:13
**incriminating**
32:6, 32:9,
32:12, 32:17,
55:7, 57:14,
57:21, 58:24,
59:24, 62:9,
67:19, 67:22,
68:21, 70:1,
70:2, 71:2,
71:8, 73:2,
81:13, 85:18,
85:24, 86:20,
87:8, 88:6,

194:9, 228:14,
228:18, 245:17
**independent**
193:21, 219:17,
235:17, 257:5,
259:14
**indicate**
34:2, 35:4,
35:8, 152:3,
200:11, 215:2,
215:3, 223:3,
237:5, 237:13,
238:22, 239:12,
246:5
**indicated**
19:14, 19:16,
173:24, 179:2,
195:23, 204:11,
205:22, 219:14,
241:8, 241:9,
251:12
**indicates**
175:17, 176:5,
179:8, 184:12,
186:17, 190:24,
192:2, 194:16,
200:2, 207:2,
219:22, 225:24,
226:11, 229:15,
235:7, 238:22
**indicating**
36:5, 187:19,
203:12, 213:6,
215:3, 215:16,
218:21, 219:9
**indication**
43:22, 44:7,
44:12, 48:22,
70:4, 74:1,
200:17, 229:19
**individual**
9:7, 34:3,
117:20, 131:1,
131:3, 142:14,
194:1, 194:3
**individually**
104:11
**individuals**
58:1, 123:15,

123:20, 124:23,
141:22, 146:7,
147:4, 147:8,
147:9, 148:8,
220:10, 228:5,
263:9, 263:13
**infallible**
118:18
**inform**
82:4, 96:15,
188:13
**information**
32:2, 32:24,
34:21, 43:6,
43:19, 50:17,
51:19, 59:17,
59:18, 61:1,
62:11, 65:8,
65:10, 65:15,
65:19, 72:10,
72:20, 73:3,
74:7, 94:11,
94:13, 96:4,
96:5, 96:8,
96:14, 96:15,
96:17, 96:19,
97:3, 98:2,
106:7, 106:16,
127:23, 131:3,
143:10, 148:10,
148:18, 159:23,
160:1, 161:24,
165:1, 165:5,
165:7, 166:23,
168:2, 168:22,
169:11, 177:22,
180:22, 182:10,
183:1, 183:2,
189:9, 189:10,
193:5, 194:4,
194:14, 195:14,
201:4, 206:4,
207:17, 209:1,
229:7, 229:12,
231:11, 238:5,
238:10, 241:10,
244:12, 245:17,
245:24, 258:20,

258:23, 259:3,
260:14
**informed**
182:9, 187:20,
187:21, 192:3,
192:18, 192:24,
224:24, 225:4
**initial**
105:9, 110:1
**initially**
178:4
**innocent**
120:20, 121:1,
121:12, 216:18,
217:1, 218:2
**innocently**
209:13
**input**
101:18, 101:21,
101:23, 102:4
**inside**
184:19
**inspect**
115:7
**inspecting**
115:9, 116:14
**instance**
27:2, 89:1
**instances**
25:2, 26:4,
26:11, 27:22,
35:24, 59:18,
90:7, 95:14
**instead**
247:7
**instructing**
73:16
**instruction**
188:4, 188:22
**instructions**
186:9, 187:4,
187:5, 188:19
**instrumental**
141:12
**insulting**
38:15
**intended**
147:7

**intentional**
262:22, 263:15
**inter**
29:9
**interaction**
257:23
**interactions**
122:18, 123:4,
125:20, 177:13
**interest**
265:13
**interested**
40:12
**interfere**
40:20
**interpret**
174:8, 205:21,
252:13
**interpretation**
150:1, 170:2
**interpreted**
250:19
**interpreter**
178:8, 178:12,
178:18, 179:9,
179:19, 180:1,
180:3, 180:21
**interpreting**
150:4, 252:11
**interrogate**
26:13, 26:22,
30:14, 31:2,
31:9
**interrogated**
81:12, 119:13
**interrogating**
24:6, 24:14,
180:1
**interrogation**
11:14, 11:24,
12:3, 13:3,
13:10, 13:17,
14:4, 14:7,
15:3, 15:11,
15:13, 15:24,
24:1, 25:5,
25:14, 26:3,
26:5, 27:3,

27:5, 29:2,
29:7, 29:10,
30:19, 34:2,
35:11, 48:13,
50:14, 55:17,
56:12, 62:9,
63:8, 63:12,
64:20, 68:23,
69:4, 87:10,
102:24, 178:23,
237:6, 237:14,
237:18, 237:21,
237:24
**interrogations**
22:13, 22:22,
22:24, 23:16,
24:18, 25:3,
27:16, 29:1,
30:8, 54:24,
56:10, 56:22,
57:12, 58:23,
86:15, 86:21,
119:9, 185:12
**interrupt**
40:23, 40:24,
54:16, 122:7
**interrupting**
38:14, 38:20,
107:22
**interviewed**
22:20, 23:23,
27:12, 99:11,
104:7, 106:1,
109:10, 119:13,
123:10, 123:12,
125:10, 125:15,
128:6, 130:18,
147:9, 147:24,
148:8, 149:3,
168:16, 168:19,
169:15, 182:12,
182:23, 191:11,
191:17, 191:21,
192:13, 199:2,
209:7, 215:4,
230:23, 249:5,
249:22, 257:18
**interviewing**
57:16, 67:11,

103:6, 108:23,
123:3, 249:4,
256:21
**interviews**
22:12, 85:6,
104:24, 119:1,
119:15, 119:21,
124:18, 124:20,
128:15, 128:17,
148:1, 148:4,
148:11, 148:19,
155:12, 159:20,
179:11, 191:23,
205:3, 222:21
**intimidating**
232:16
**introduce**
8:13, 246:18,
261:18
**inventories**
258:15
**inventory**
34:19, 48:19,
48:21, 258:16
**investigate**
78:7, 120:5
**investigation**
16:23, 16:24,
19:16, 21:6,
21:10, 24:4,
25:22, 26:1,
30:5, 31:23,
60:10, 60:11,
77:5, 77:8,
77:19, 77:23,
79:2, 79:7,
79:11, 80:7,
80:9, 80:11,
83:5, 114:9,
114:20, 115:4,
116:18, 118:19,
119:7, 120:4,
122:20, 124:11,
124:17, 125:22,
126:15, 127:8,
129:1, 130:5,
131:13, 131:19,
135:12, 141:16,

141:22, 142:5,
142:18, 142:21,
142:23, 143:8,
143:16, 143:19,
144:10, 144:13,
146:18, 155:16,
157:3, 157:13,
169:2, 178:5,
178:8, 178:20,
179:9, 179:15,
182:10, 191:7,
191:11, 202:22,
209:8, 220:20,
226:21, 249:15,
249:19

**investigations**
21:21, 77:16,
118:1

**investigative**
51:4, 51:7,
135:23, 136:23,
137:12, 137:16,
243:12, 243:15,
244:4, 244:10

**investigator**
24:3, 24:6

**investigators**
28:7

**involve**
235:1

**involved**
16:23, 20:24,
24:6, 24:13,
26:10, 27:11,
39:9, 58:4,
77:21, 78:14,
82:7, 112:22,
114:15, 124:17,
130:9, 135:5,
137:15, 144:12,
146:17, 166:4,
178:5, 178:12,
178:14, 178:15,
187:23, 189:8,
193:14, 193:16,
193:19, 194:3,
194:10, 197:7,
201:23, 204:12,

221:1, 258:12

**involvement**
58:14, 98:10,
98:17, 114:9,
114:13, 114:16,
120:23, 125:8,
128:7, 129:1,
131:9, 132:1,
160:15, 162:21,
166:3, 191:10,
258:6, 258:15

**ir**
160:12, 160:19

**issue**
37:3, 42:16,
42:17, 101:5,
136:7, 136:9

**issued**
136:5

**issues**
180:14, 180:21,
181:21

**itself**
107:24, 133:1,
145:23, 177:23,
257:19, 263:7

---

## J

**jacinta**
192:4, 207:14,
220:7, 225:2

**jacket**
212:17

**jackson**
4:16

**jan**
3:12, 8:17

**jerk**
210:18

**job**
1:23, 83:21,
92:2, 136:1

**john**
3:13, 8:19

**join**
69:9, 78:1,
78:11, 78:20,
79:5, 81:9,

92:5, 98:22,
100:11, 103:18,
107:15, 113:16

**joined**
90:11, 226:23,
227:23

**jorge**
123:1, 123:4,
123:7, 148:8,
148:11, 182:8,
182:23, 183:4,
183:8, 183:14,
183:15

**judge**
93:22

**july**
199:16, 200:3

**jump**
246:22

**jumps**
245:16

**justified**
142:13, 166:18

**justify**
166:10

---

## K

**karen**
8:24

**keep**
12:18, 17:17,
18:8, 38:14,
68:5, 82:14,
88:17, 210:23

**keeper**
139:4

**kept**
18:3, 244:5

**kevin**
4:4, 8:21,
160:7, 160:8,
160:10, 203:10

**kid**
88:3

**kidnap**
236:3

**kidnapping**
192:5, 225:2

**kids**
20:16, 167:7

**kill**
217:5, 218:4,
218:16, 236:2

**killed**
192:21, 193:3,
225:6

**kills**
235:22

**kind**
44:18, 45:1,
51:20, 54:7,
63:17, 97:2,
108:7, 109:18,
174:22

**kinds**
21:19, 55:1,
124:10, 259:5

**knew**
37:22, 48:23,
59:9, 59:10,
61:1, 61:23,
62:1, 64:22,
98:1, 134:7,
189:4, 189:8,
201:7, 205:5,
208:17, 211:2,
245:14, 249:22,
250:12

**knife**
88:13, 88:15

**knocks**
167:5

**knowing**
49:4, 49:11,
131:2, 181:13

**knowledge**
26:8, 26:9,
55:23, 77:7,
122:21, 124:11,
126:8, 126:11,
130:16, 151:19,
162:16, 169:6,
172:13, 181:5,
181:8, 187:24,
198:12, 263:16

**known**
181:24, 182:4

knows
77:12, 205:4
kosberg
6:12

**L**

lab
115:10, 115:21,
155:12
laborer
204:22
lady
245:11
laid
11:10, 32:14,
48:24, 54:1
language
42:4, 108:1,
108:7
lasalle
4:6
last
42:22, 54:11,
73:11, 122:8,
129:10, 140:24,
142:19, 150:19,
155:3, 157:11,
157:16, 166:20,
171:3, 175:3,
198:18, 216:8,
218:17, 255:24
later
69:18, 70:16,
103:14, 143:7,
144:12, 201:10,
207:9, 207:13,
217:4, 218:3,
223:7, 226:23,
258:16, 259:21
law
3:14, 4:15
lawyer
118:13
lay
34:3, 89:7,
89:11
laying
63:15

layout
11:9, 32:14,
214:9, 245:14,
250:12
lead
79:1, 249:23
leading
24:4, 98:19,
249:6, 249:15,
249:19, 249:20
learn
119:14, 119:20
learned
110:20, 119:23,
209:22
learning
253:4
least
27:4, 57:6,
58:2, 73:8,
217:16, 232:17,
258:1
leave
103:15, 107:12,
162:18, 166:22
leaves
108:3
leaving
172:22, 258:24
led
12:23, 247:16,
247:20
left
49:12, 49:14,
53:14, 53:17,
53:22, 53:24,
54:3, 54:8,
54:12, 106:8,
161:24, 186:8,
186:18, 187:4,
187:8, 188:14,
189:2, 190:10,
196:8, 214:12,
214:16, 221:23,
236:9, 236:11,
236:22, 250:5,
259:4, 259:12,
260:17, 261:3,

262:6, 262:11,
262:16, 262:20
leinenweber
4:5
leobardo
125:12, 125:15,
148:9, 148:11
leon
193:3, 225:6,
229:3, 229:7,
235:8
leonardo
184:23
less
15:9, 139:9,
259:15
let's
22:18, 62:8,
69:13, 87:18,
88:13, 102:16,
135:24, 145:15,
159:6, 194:16,
194:18, 210:23,
236:7, 236:13,
246:17
level
129:7, 129:24,
130:10
lie
66:1, 66:5
lied
66:5, 203:18,
203:24
lies
66:7
lieutenant
23:4
life
258:7
light
245:6, 245:8
likewise
10:14
limited
72:20, 216:12
line
58:22, 255:2
lines
212:21, 216:21,

217:21, 218:18
lineup
162:14, 162:21,
163:2, 163:3,
163:7, 163:10,
163:11, 163:16,
163:17, 163:22,
164:3, 164:10,
164:11, 164:12,
164:19, 164:21,
164:24, 165:2,
165:8, 165:15,
165:20, 166:5,
166:6, 166:10,
167:4, 168:20,
168:23
list
28:16, 145:17
listed
141:1, 144:19,
146:15, 150:13
listen
97:9
lists
143:15, 195:24
literal
255:19
literally
67:8, 159:5
little
21:5, 42:18,
68:6, 88:3,
106:4, 125:2,
149:13, 202:5,
203:5, 206:7,
232:14, 258:4
living
42:12
llc
4:5, 6:5
llp
5:13
lobby
205:15, 207:3
locate
126:12
located
160:11, 162:12

location
2:3, 190:18,
258:22
locked
244:5
loevy
2:5, 3:5, 8:4,
8:7, 8:8
long
50:7, 109:16,
111:17, 111:19,
156:2, 156:18,
161:20, 198:18
longer
166:4
look
57:20, 62:22,
87:22, 120:22,
148:7, 151:6,
156:4, 164:9,
170:21, 176:20,
183:21, 194:18,
199:19, 203:2,
209:8, 212:21,
213:4, 216:2,
236:7
looked
44:10, 151:7,
195:11, 200:8
looking
57:18, 57:19,
62:24, 106:14,
112:9, 140:8,
140:19, 151:23,
160:5, 162:10,
175:1, 175:16,
184:11, 195:22,
199:5, 201:13,
223:23, 225:23,
229:1, 231:20,
236:22, 237:1,
238:4, 239:6,
245:5, 249:16,
250:5, 253:24,
258:8
lookout
62:18, 64:19,
65:2, 65:6

looks
11:11, 150:23,
152:8, 161:17,
163:8, 207:7,
220:8
lot
46:20, 46:22,
92:16, 109:23,
116:9, 116:11,
147:24, 150:3,
156:6, 204:20,
204:22, 205:16,
207:4, 207:11,
209:12, 232:8,
244:21, 258:6
love
245:11
lower
212:15
lunch
10:23, 189:20,
189:23
lupe
207:10
lying
107:5

### M

made
32:5, 34:22,
35:2, 35:5,
35:7, 39:8,
44:1, 44:8,
44:15, 44:18,
45:1, 45:15,
46:12, 48:5,
48:14, 48:18,
48:20, 49:5,
49:21, 50:3,
50:14, 50:16,
50:22, 53:15,
58:24, 67:11,
69:17, 84:24,
100:12, 104:5,
109:22, 115:11,
124:7, 142:19,
151:7, 166:15,
189:5, 192:16,

207:20, 227:18,
228:13, 245:10,
245:12, 257:4
mail
137:13
main
14:15
maintenance
115:18
majority
157:7
make
37:23, 39:20,
46:6, 48:15,
48:22, 49:2,
51:18, 53:8,
56:24, 61:12,
63:14, 63:15,
68:1, 72:21,
73:19, 79:8,
90:14, 91:3,
91:14, 91:15,
91:18, 93:15,
100:15, 109:24,
115:23, 121:8,
122:8, 124:3,
124:6, 126:12,
128:16, 129:22,
136:2, 137:11,
139:1, 139:5,
139:6, 139:7,
154:13, 154:14,
166:14, 190:1,
209:3, 223:16,
228:23, 243:24,
245:9, 263:3
makes
39:11, 60:23,
62:8, 71:21,
76:17, 84:20,
112:2, 194:2
making
59:24, 65:14,
68:12, 70:22,
72:24, 91:5,
124:23, 146:13,
194:9, 233:24
manage
124:20

manuel
123:9, 125:4,
125:5, 125:9,
125:10
many
92:14, 95:14,
103:22, 134:5,
134:7, 134:9,
191:21, 221:14,
221:22
march
207:6, 207:14
maria
2:1, 2:14,
192:5, 225:3
mariano
192:5, 220:6,
225:2
marked
161:7, 161:8,
161:12
martinez
185:2
matches
183:12
matter
8:4, 9:23,
121:13, 234:9,
244:2, 244:9
matters
156:12
maybe
14:12, 14:22,
15:8, 34:12,
35:14, 35:16,
36:5, 51:11,
57:21, 58:9,
63:22, 70:16,
90:3, 97:11,
99:21, 101:1,
138:12, 142:22,
148:24, 166:7,
172:21, 172:24,
183:12, 199:23,
205:4, 214:6,
231:5, 231:14,
250:19, 252:19,
255:16

**mcdonald**
126:3, 132:24,
133:19, 143:22,
160:7, 160:10,
162:12, 162:15,
163:8, 163:24,
203:10
**mean**
19:24, 25:19,
28:16, 30:1,
34:18, 38:2,
56:3, 58:20,
59:15, 62:23,
63:21, 65:18,
66:4, 68:1,
69:18, 79:21,
88:11, 89:12,
99:4, 108:9,
123:10, 141:9,
157:6, 169:9,
179:22, 180:5,
209:16, 221:18,
243:15, 250:14,
258:5
**means**
40:3, 40:4,
99:15, 169:20,
250:15, 250:21,
251:10
**meant**
52:15, 176:11,
218:14, 223:1
**measure**
14:2
**measured**
13:20, 15:11,
16:9
**mechanism**
173:11
**media**
19:19
**medical**
118:20
**meet**
89:6, 90:22,
112:19, 112:22,
132:5, 132:16,
133:1, 134:22,

135:5, 205:18
**meeting**
89:8, 90:16,
133:1, 133:7,
134:5, 134:11,
134:13, 134:17,
135:2, 135:4,
138:12, 208:3,
208:13, 209:11,
257:23
**meetings**
135:20
**mejia's**
118:20, 120:5
**members**
126:20, 126:24,
127:3, 127:12,
130:24, 131:12,
131:17
**memorable**
252:9
**memorialized**
142:9
**memory**
124:15, 124:16,
159:20, 177:12,
178:11, 195:15,
197:2, 197:4,
197:10, 237:17,
237:19, 240:1,
253:19, 256:19,
257:22, 258:5
**mention**
53:23, 106:24,
108:14
**mentioned**
93:7, 201:16,
203:11, 203:14,
205:5
**mercedes**
133:11
**met**
132:8, 133:4,
205:16, 207:4,
207:10, 246:18
**mexican**
180:19, 181:3,
181:6, 181:12

**mexico**
245:9, 252:3,
252:8, 252:10
**middle**
182:22, 201:15,
207:6, 252:8,
256:8, 260:6
**might**
21:20, 24:11,
34:19, 36:6,
36:8, 45:21,
49:2, 70:12,
70:18, 70:19,
70:23, 79:7,
87:24, 91:6,
91:16, 99:20,
102:21, 106:3,
106:8, 106:17,
106:24, 108:14,
113:18, 121:4,
124:24, 139:6,
143:5, 145:14,
145:17, 149:4,
152:15, 152:17,
156:8, 157:8,
162:3, 163:8,
166:1, 187:20,
218:14, 221:2,
228:17, 248:2,
249:17, 252:16,
261:4
**miguel**
119:2
**milwaukee**
3:15
**mind**
56:23
**mine**
196:14
**mingey**
4:12
**minimum**
258:6
**minutes**
236:11, 260:18,
260:19
**misconduct**
121:8

**misheard**
97:11
**misread**
192:22, 254:3
**missed**
106:17, 110:4
**missing**
20:15, 20:16,
51:20, 178:6
**misspelling**
263:4
**misspoke**
24:11, 222:18
**misstatement**
256:15
**misstates**
11:18, 13:6,
13:12, 13:18,
14:10, 15:6,
15:15, 16:2,
74:13, 78:16,
91:10, 142:16,
144:24, 153:4,
164:5, 176:14,
177:24, 223:20,
232:24, 249:8
**misstating**
210:8, 210:19,
211:19, 211:23
**mistakes**
109:22, 110:2,
110:5
**mistranslation**
256:15
**misunderstood**
188:10, 249:17
**mixed**
63:22
**mobile**
117:16
**moment**
171:10
**money**
204:22, 245:9
**month**
199:20, 199:22
**more**
12:21, 20:18,

39:19, 40:16,
41:5, 41:6,
41:8, 41:15,
41:19, 60:10,
60:11, 67:4,
68:5, 68:6,
93:6, 135:3,
135:14, 163:4,
169:16, 174:17,
189:20, 195:3,
234:18, 248:5,
253:12, 258:11
**morning**
9:20, 9:21,
185:24, 235:9
**most**
27:24, 78:22,
104:16, 201:6
**mostly**
95:7
**motor**
115:18
**move**
42:14, 42:15
**moved**
115:16, 117:7
**mozart**
171:8
**much**
12:23, 49:17,
52:3, 96:19,
120:3, 135:14,
139:20, 189:3,
208:21, 211:10,
212:11, 234:17,
236:8, 236:9,
259:15, 260:16
**multiple**
90:20, 112:4,
112:11, 112:18,
112:21, 113:3,
113:7, 113:12,
113:21, 191:17,
195:3, 195:5
**murder**
20:14, 20:17,
20:18, 75:5,
127:14, 156:8,

235:20
**murders**
192:4, 192:14,
225:1, 235:10
**music**
54:17
**must**
202:9, 233:5
**mutually**
222:2
**myself**
38:13, 50:22,
132:22, 187:21,
197:3

### N

**name**
133:10, 140:21,
140:24, 141:3,
141:10, 185:2,
196:2, 201:16,
203:10, 203:14,
238:7, 257:19,
261:22
**named**
125:21, 160:11,
201:22
**names**
148:17, 185:1
**narrows**
128:5
**naujokas**
4:12
**navarro**
5:11, 226:22,
226:23, 227:3,
227:6, 227:10,
227:19, 228:5,
228:12, 233:9
**near**
216:17
**necessarily**
69:10, 70:11,
70:15
**necessary**
40:15, 41:5
**neck**
209:21, 210:3,

210:10, 211:1,
211:8, 211:14,
212:10
**need**
9:16, 10:18,
10:23, 11:1,
23:24, 27:19,
41:2, 41:8,
56:24, 60:7,
81:3, 81:16,
83:7, 83:24,
124:21, 142:10,
164:1, 216:13,
217:15, 231:10,
261:7
**needed**
28:18
**needs**
130:1
**neither**
265:11
**nervous**
217:20
**never**
13:20, 15:10,
16:9, 18:3,
54:5, 92:17,
94:1, 97:2,
100:19, 120:10,
121:24, 179:6,
236:5, 246:18
**new**
92:19, 117:5,
210:16, 210:17
**next**
38:24, 42:20,
64:10, 79:11,
79:19, 79:22,
84:17, 109:12,
160:5, 162:4,
172:7, 172:8,
178:3, 182:18,
183:21, 185:12,
185:15, 193:12,
194:16, 205:8,
209:17, 214:12,
216:7, 217:2,
225:23, 226:16,

229:1, 235:7,
243:17, 253:24,
254:16, 254:17,
254:18, 254:19,
255:1, 255:2,
256:2, 256:8
**night**
182:6, 182:16,
262:7
**nine**
260:18, 260:19
**nobody**
78:3, 88:2,
139:19, 243:24
**nodding**
188:9
**noemi**
184:24
**nondetective**
29:1
**nope**
254:4
**norma**
125:18, 125:21,
125:24, 126:9,
160:11, 160:12,
162:12, 162:14,
162:15, 162:17,
162:22, 166:3,
166:21, 168:9,
169:2, 184:24,
185:1, 201:16,
201:17, 201:22,
202:9, 202:20,
202:22, 203:7,
203:14, 203:15,
203:19
**normally**
104:9, 108:11,
158:23, 159:1,
199:22
**north**
2:6, 3:6, 3:15,
6:6, 8:8, 11:23,
12:13, 13:3,
13:11, 14:3,
14:7, 14:12,
15:4, 196:24

**northern**
1:2
**northwest**
11:19
**nos**
161:7
**notarial**
265:15
**notary**
2:15, 265:1,
265:3, 265:20
**notation**
49:3, 49:5,
50:23
**note**
44:20, 45:3,
51:23, 52:2,
73:19, 210:24,
245:16, 246:11,
256:19, 256:22,
259:2
**note-taking**
52:18
**notes**
34:1, 45:23,
46:9, 46:12,
47:19, 47:23,
52:1, 52:3,
151:10, 156:11,
185:3, 185:7,
185:11, 200:23,
201:14, 205:20,
210:9, 222:4,
222:10, 225:13,
246:7
**noteworthy**
46:24, 47:8,
47:12
**nothing**
51:19, 110:6,
112:14, 208:16,
261:13, 263:6,
263:18
**notice**
2:14
**number**
10:2, 11:13,
23:12, 39:8,

123:11, 124:9,
149:6, 160:12,
184:22, 184:23,
185:1, 185:2
**nylon**
212:17

**O**

**o'malley**
5:4, 8:24,
226:24
**oath**
8:14, 11:6
**object**
29:5, 169:23,
188:11, 205:19,
224:22
**objecting**
25:8
**objections**
33:10, 36:2,
38:1, 39:9,
42:7, 42:8,
65:11, 65:16,
66:18, 67:10,
67:16, 69:8,
77:24, 81:9,
107:15, 147:22,
188:16
**observed**
48:3
**obtained**
227:14
**obtaining**
220:1
**obviously**
20:15, 22:21,
23:21, 84:6,
92:15, 94:20,
99:4, 128:5,
133:15, 168:15,
225:10, 245:21
**occasion**
66:5
**occur**
102:13, 102:15,
197:17, 211:11,
229:14, 258:22

**occurred**
32:15, 33:1,
33:8, 33:15,
44:2, 44:9,
44:16, 44:19,
45:3, 48:4,
48:24, 60:4,
60:7, 73:24,
171:18, 191:23,
224:20, 233:17,
239:8, 239:13,
241:1, 244:13,
258:23
**occurring**
200:18, 233:8
**odd**
208:10, 208:11,
233:2, 235:18,
235:23, 236:6
**offering**
204:12
**office**
3:14, 5:6,
11:19, 12:1,
12:17, 12:24,
13:1, 13:10,
13:15, 13:16,
14:5, 14:6,
14:11, 14:14,
14:16, 14:17,
15:3, 15:12,
15:14, 15:23,
21:7, 24:22,
75:12, 75:18,
77:4, 77:15,
98:8, 103:3,
110:16, 111:11,
111:16, 117:10,
196:23, 228:9,
243:13
**officer**
9:7, 25:13,
26:5, 26:12,
28:1, 28:22,
81:17, 82:1,
83:11, 86:6,
97:14, 124:9,
141:1, 178:4,

178:7, 178:23,
179:6, 182:12,
191:2, 192:17,
192:24, 248:22,
265:4
**officers**
23:10, 23:12,
27:23, 28:12,
77:9, 81:5,
93:9, 148:20,
231:7
**offices**
11:14, 12:10,
12:15, 12:20,
102:21, 113:19,
117:4
**often**
28:2, 95:12,
99:24, 113:17
**oh**
52:14, 139:17,
174:21
**older**
153:9
**omit**
36:17, 36:22
**once**
78:14, 78:23,
78:24, 79:13,
80:10, 82:6,
82:13, 82:16,
84:24, 85:4,
86:4, 98:10,
108:16, 109:9,
115:23, 259:4
**one**
10:9, 15:13,
16:10, 19:2,
20:17, 27:4,
28:18, 32:1,
40:11, 41:4,
57:5, 57:24,
58:6, 59:23,
60:5, 60:18,
61:10, 68:4,
76:16, 90:5,
90:6, 92:15,
93:15, 94:10,

96:10, 102:21,
119:18, 124:7,
129:10, 132:7,
144:1, 149:3,
151:4, 159:11,
164:1, 165:14,
166:1, 167:10,
167:12, 170:15,
171:9, 180:7,
180:9, 181:10,
184:21, 195:3,
200:16, 213:1,
214:3, 216:15,
216:20, 229:19,
231:2, 249:2,
251:11, 258:16
**only**
97:23, 119:1,
120:17, 121:24,
123:2, 123:10,
123:11, 134:12,
139:1, 139:19,
143:9, 149:22,
167:3, 176:10,
176:11, 176:15,
176:16, 197:6,
197:7, 200:21,
232:19, 249:2,
251:7, 258:14
**open**
113:13, 113:23,
115:19
**opened**
254:1
**opens**
14:17, 14:20
**opinion**
121:21, 122:13,
139:19
**opportunity**
224:15
**orally**
96:5, 96:21,
98:4, 98:7
**order**
88:1, 90:21,
153:24, 262:23,
263:8

**original**
196:1, 238:5
**other**
15:18, 20:5,
20:18, 21:9,
21:12, 21:20,
21:21, 21:24,
22:8, 23:1,
54:6, 58:15,
58:16, 60:5,
61:11, 94:15,
96:8, 96:16,
103:8, 112:19,
112:23, 113:10,
124:19, 143:2,
145:19, 156:12,
180:9, 181:10,
184:24, 188:2,
188:3, 205:16,
208:8, 208:22,
220:24, 222:20,
229:20, 234:2,
239:1, 241:6,
242:9, 245:1,
246:11, 258:10
**others**
92:7
**otherwise**
265:13
**outcome**
265:13
**outstanding**
129:18, 157:6
**over**
10:6, 51:10,
51:11, 52:5,
87:20, 88:17,
92:21, 99:19,
117:7, 146:12,
167:21, 195:10,
222:17, 234:7,
261:4
**overcrowded**
232:11
**overtime**
17:2, 17:7,
17:9, 17:11,
230:2

**own**
24:19, 25:4,
25:21, 26:6,
29:3, 30:7,
30:15, 30:20,
31:2, 31:10,
35:4, 81:6,
81:11, 81:18,
81:22, 89:7,
111:24, 112:3,
151:19, 178:24,
248:15

**P**

**page**
7:2, 7:9,
129:2, 140:24,
143:14, 147:2,
149:13, 149:14,
150:19, 151:13,
155:3, 155:8,
159:7, 159:8,
159:9, 159:14,
162:10, 165:6,
169:18, 175:1,
176:21, 177:8,
177:16, 177:17,
182:5, 182:18,
182:19, 182:22,
184:16, 186:6,
186:7, 190:10,
190:12, 190:19,
195:3, 195:22,
195:24, 201:14,
201:16, 205:8,
205:11, 205:12,
205:13, 206:12,
206:22, 207:1,
207:2, 207:11,
209:17, 212:15,
216:7, 216:8,
216:11, 216:13,
216:17, 216:19,
217:7, 217:10,
218:17, 219:3,
224:2, 224:4,
224:14, 225:11,
226:16, 226:18,

238:4, 238:15,
241:11, 241:17,
250:6, 256:8
**pages**
1:24, 155:4,
185:20, 195:5
**paid**
20:19, 21:2,
255:6, 255:7
**pajamas**
213:3
**pants**
184:19, 184:20,
212:16, 235:9,
235:11
**paper**
34:18, 34:19,
48:19, 184:20,
184:21, 184:24,
197:8, 215:7,
215:9
**paragraph**
150:19, 159:7,
159:10, 159:19,
160:5, 162:4,
165:6, 166:20,
172:7, 172:8,
175:2, 175:3,
177:7, 178:3,
178:4, 179:7,
183:21, 185:15,
190:13, 219:21,
223:23, 225:23,
226:17, 229:1,
235:8, 256:9
**parking**
207:11, 209:12
**part**
53:7, 60:21,
64:14, 65:18,
66:6, 78:22,
88:11, 116:19,
125:5, 125:21,
231:18, 256:24
**participant**
124:8, 163:3
**participants**
165:1

**participate**
81:17, 105:19,
126:15, 177:15,
182:14, 183:3,
185:19, 226:3
**participated**
43:24, 44:6,
44:14, 48:12,
50:1, 119:6,
124:12, 150:9,
173:23, 176:6,
178:20, 181:18,
197:1, 237:6,
237:14, 237:20,
237:23
**participating**
24:1, 86:22,
87:11, 89:21,
127:7, 191:6
**participation**
172:13, 184:3,
258:20
**particular**
19:2, 97:22,
111:11, 135:2,
146:1, 148:7
**particularly**
33:1, 46:23
**parties**
265:12
**partner**
45:4, 194:24
**partner's**
44:20
**partners**
141:18, 143:21,
173:8, 173:19
**past**
17:4, 17:8,
66:7, 149:14,
179:15, 202:15,
203:13
**patrol**
23:10
**patrolman**
23:6, 28:9
**pause**
171:9, 194:16

**pawn**
88:18, 88:19
**pay**
204:12, 204:15
**paying**
65:8
**pc**
4:15
**pen**
243:11
**pending**
10:20
**people**
20:5, 21:4,
23:13, 47:3,
48:23, 55:1,
55:18, 56:12,
92:18, 92:20,
93:19, 120:17,
121:4, 121:9,
122:13, 123:3,
123:10, 133:23,
134:5, 144:12,
146:6, 146:16,
146:19, 147:24,
150:9, 220:24,
232:9, 232:10,
234:1, 234:19,
235:23, 236:2,
246:18
**people's**
3:14
**perfectly**
233:19
**period**
153:17, 178:19,
214:16, 214:21,
215:1
**permanent**
136:17
**permissible**
29:15
**permission**
30:11, 30:13,
30:18, 31:1,
79:13, 80:3,
83:7, 170:21
**permit**
31:9

**permitted**
162:18, 166:22
**person**
27:12, 29:9,
35:5, 48:24,
49:5, 50:2,
63:15, 67:11,
70:4, 71:7,
71:23, 72:7,
106:2, 108:23,
109:10, 109:17,
109:20, 109:24,
110:4, 128:24,
130:1, 167:3,
167:4, 170:20,
251:14, 252:11,
263:5
**person's**
58:14, 68:12
**personal**
126:8, 126:11,
151:19
**personally**
139:6, 201:2
**personnel**
143:15, 144:2
**persons**
182:7
**pertinent**
43:5, 43:16,
194:4
**phone**
112:2, 116:19,
184:22, 184:23,
185:1, 185:2,
188:5
**photo**
160:12, 160:15,
160:18, 160:20,
160:21, 161:16,
162:1
**photography**
116:5
**phrase**
251:10, 255:12
**phrased**
27:8
**physical**
121:2, 121:13

**physically**
63:16, 116:14,
120:9, 121:22
**picking**
206:19
**picture**
234:8, 234:12
**piece**
34:18, 34:19,
48:18, 108:4
**pieces**
206:20, 234:13
**pinpoint**
88:1
**place**
20:11, 77:7,
95:21, 111:13,
143:9, 167:21,
196:20
**places**
110:8, 208:2,
208:13
**plaintiff**
1:6, 1:12, 3:3,
3:11, 8:16,
8:17, 8:20,
9:12, 9:18
**plaintiffs**
261:12
**plan**
208:14
**planet**
8:12
**plausible**
63:14
**played**
59:13
**please**
10:10, 12:7,
19:3, 29:19,
38:17, 38:20,
39:16, 40:4,
50:7, 55:10,
71:16, 73:19,
73:20, 82:21,
83:20, 93:16,
106:10, 107:19,
125:3, 139:23,

201:24, 206:11,
210:14, 211:16,
224:14, 244:16,
257:1
**plus**
98:6
**pocket**
184:20, 185:8
**pockets**
184:19
**point**
10:19, 10:24,
20:24, 30:13,
69:21, 69:23,
73:15, 79:2,
83:16, 86:12,
94:23, 105:9,
105:12, 110:7,
110:12, 120:7,
128:3, 129:5,
129:24, 136:23,
142:22, 146:18,
181:17, 209:9,
209:10, 227:12,
227:19, 228:6,
228:12, 232:5,
233:7, 233:18,
235:1, 246:7
**pointed**
36:4
**pointing**
210:19
**polaroid**
161:3
**police**
7:10, 20:4,
20:10, 27:23,
28:1, 28:12,
56:11, 77:9,
81:5, 81:17,
93:8, 97:14,
120:19, 121:1,
121:8, 121:12,
124:9, 127:18,
134:6, 136:10,
137:12, 148:20,
150:1, 161:10,
199:20, 227:1,

235:19
**policemen**
20:6
**polish**
28:7, 28:8,
28:9, 28:10
**polygraph**
116:22, 117:1,
117:4, 117:8,
117:10, 117:12,
117:16, 117:19,
117:24, 118:16,
169:21, 170:10,
170:12, 170:14,
170:22, 171:19,
171:24, 172:11,
172:13, 173:24
**poor**
62:6
**portion**
104:14, 205:24,
210:2, 235:7
**portions**
104:17, 104:23,
138:19
**position**
92:19, 97:2
**positive**
110:10
**possibility**
57:7
**possible**
25:20, 33:20,
33:22, 34:17,
55:18, 56:12,
56:21, 57:12,
127:13, 188:3,
242:20, 243:1,
245:2, 253:2,
253:6, 253:7,
253:8
**potential**
126:16, 128:23
**potentially**
32:17, 34:8
**pound**
115:13, 116:1
**powerful**
33:1, 33:8,

33:11
**practice**
90:7, 90:15,
90:18, 90:19,
202:15, 253:11
**preceding**
255:22
**pregnant**
245:13
**preliminary**
135:13
**preparation**
119:24, 132:6,
132:11, 132:13,
134:18, 165:17,
195:9
**prepare**
52:2, 165:19
**prepared**
45:4, 45:8,
49:2, 50:4,
50:23, 51:3,
51:6, 52:14,
52:17, 140:22,
141:2, 141:21,
152:10, 153:15,
165:12, 165:14,
192:12, 194:24
**preparing**
48:8, 112:23,
141:13, 245:23
**present**
6:11, 25:5,
25:15, 26:14,
26:23, 27:5,
29:17, 76:13,
83:4, 86:23,
87:1, 102:9,
181:19, 185:3,
229:4, 262:1,
262:8, 262:17
**preserve**
33:17, 33:24,
34:13, 34:17
**president**
71:1
**press**
19:17, 20:8

**pressing**
156:12
**presume**
132:15
**pretrial**
135:4, 136:24
**pretty**
209:20, 210:3,
210:9, 210:24
**previous**
16:7, 148:24,
202:12, 205:2,
205:3
**previously**
106:17, 143:1,
195:23, 203:14,
203:24, 241:9,
248:24, 249:4,
257:9
**primary**
76:16, 96:3,
96:5, 96:10,
98:2, 141:15,
173:6, 248:24
**printed**
152:16, 152:18,
153:8, 153:14,
153:24
**printing**
238:18
**prior**
78:16, 178:1,
191:9, 249:8
**priority**
21:7
**private**
14:17
**probable**
245:2
**probably**
33:16, 48:8,
50:24, 62:6,
86:12, 112:10,
129:19, 134:8,
142:18, 148:4,
150:2, 158:2,
161:15, 232:17,
234:17, 246:6,

247:1, 247:8,
251:21
**problem**
41:9, 41:13,
42:2, 52:16
**problematic**
211:3, 211:5
**procedure**
160:16
**proceed**
77:16
**proceedings**
136:24
**proceeds**
77:5, 88:16,
130:6
**process**
98:12, 102:12,
105:11, 109:9,
110:11, 111:21,
115:10, 116:20,
116:24, 137:15,
197:17
**processed**
115:22
**professional**
265:2
**proper**
25:20, 25:23,
30:1, 42:7, 42:8
**properly**
83:21
**property**
12:17, 88:21
**prosecutor**
133:8
**provide**
240:23
**provided**
48:10, 48:13,
176:23, 183:1,
193:6, 229:8,
252:21
**providing**
77:14
**public**
2:15, 265:1,
265:4, 265:20

**puerto**
180:17, 181:3,
181:4
**pull**
140:5, 161:18,
161:21
**pulled**
161:19
**pulling**
244:2
**punctuation**
263:4, 263:7
**purpose**
51:18, 115:15,
117:24, 141:19,
174:11, 230:20
**purposely**
109:24
**purposes**
76:22, 116:8,
123:18
**pursuant**
2:14
**put**
43:20, 44:23,
45:8, 46:13,
47:19, 48:9,
49:20, 51:1,
52:19, 54:14,
58:8, 145:14,
148:2, 148:16,
149:2, 152:11,
152:15, 152:22,
153:18, 201:8,
215:23, 223:9,
223:10, 223:11
**putting**
23:8, 55:22,
69:22, 92:18,
213:12, 234:3
**puzzled**
134:16

---
**Q**
---
**question**
10:10, 10:14,
10:15, 10:20,
11:18, 16:8,

23:7, 24:12,
25:17, 27:7,
29:6, 29:18,
31:14, 35:18,
36:13, 37:13,
38:22, 38:24,
39:11, 39:12,
39:20, 39:24,
40:18, 41:17,
42:20, 42:22,
50:7, 50:10,
54:11, 55:10,
56:15, 63:4,
66:16, 66:23,
71:17, 72:2,
72:8, 73:7,
73:10, 73:17,
82:20, 83:2,
89:22, 92:24,
97:12, 97:22,
99:15, 114:6,
115:14, 122:6,
122:8, 129:10,
129:13, 129:15,
129:18, 129:20,
130:8, 130:15,
134:21, 139:12,
147:14, 156:24,
163:18, 164:17,
165:22, 169:4,
169:6, 175:10,
176:13, 188:11,
188:12, 195:18,
199:3, 201:24,
206:17, 210:13,
210:17, 211:6,
211:16, 212:6,
212:7, 216:13,
216:16, 217:8,
217:12, 219:2,
221:14, 224:11,
231:24, 232:19,
237:12, 244:17,
248:17, 250:1,
255:22, 257:3,
257:11, 262:12
**questioned**
130:18, 162:15,

168:24
**questioning**
105:20, 186:11,
187:19, 191:1,
197:18, 247:16,
249:6, 249:21,
257:8
**questions**
10:5, 31:13,
41:3, 62:6,
67:15, 97:9,
105:4, 106:6,
106:15, 154:8,
154:10, 154:11,
170:24, 197:20,
197:24, 204:24,
206:10, 208:9,
216:4, 216:15,
218:8, 221:22,
230:17, 248:7,
248:12, 248:13,
248:14, 248:20,
256:1, 261:6,
261:7, 261:17,
263:19, 263:20,
263:21
**quick**
122:6, 190:2,
236:12, 236:13,
236:15
**quickly**
128:5, 245:16

---
**R**
---
**raised**
36:4, 36:6
**ran**
165:14
**rare**
47:22, 49:14
**rather**
15:7, 174:2,
253:15
**ray**
149:15, 149:22,
150:8, 181:19,
247:6, 249:9,
249:11, 249:12,

| | | | |
|---|---|---|---|
| 250:3 | reading | 233:6, 234:5, | recollection |
| ray's | 110:1, 149:20, | 235:15, 240:2, | 126:22, 193:21, |
| 247:8 | 159:10, 159:12, | 240:5, 241:5, | 196:21, 219:17, |
| rd's | 159:19, 162:24, | 257:4 | 225:19, 229:13, |
| 225:4 | 202:5, 205:14, | reasons | 235:17, 257:6, |
| reach | 208:11, 212:18, | 57:5, 58:1, | 257:9, 257:14, |
| 129:24, 130:9 | 214:2, 215:9, | 58:6, 87:6, | 257:17, 259:14 |
| reaching | 216:20, 218:5, | 156:6, 166:1, | record |
| 136:22 | 220:4, 262:24, | 167:11, 167:12, | 29:20, 36:23, |
| read | 265:10 | 167:17, 167:20, | 41:7, 42:23, |
| 29:18, 29:20, | reads | 231:3 | 50:8, 54:21, |
| 42:23, 44:10, | 216:17, 216:24, | recall | 72:3, 73:20, |
| 50:6, 50:8, | 219:18, 235:14 | 20:6, 26:19, | 74:23, 75:1, |
| 51:10, 52:5, | ready | 27:1, 28:6, | 82:22, 93:2, |
| 72:3, 82:20, | 42:14, 42:15, | 30:2, 31:23, | 97:18, 106:12, |
| 82:22, 93:2, | 82:18, 84:12, | 36:20, 44:4, | 122:10, 124:3, |
| 97:10, 97:12, | 84:16, 95:15, | 44:17, 45:7, | 124:6, 124:23, |
| 97:16, 97:18, | 206:23 | 55:15, 55:16, | 129:11, 139:4, |
| 106:10, 106:12, | real | 55:20, 68:1, | 139:24, 140:2, |
| 122:7, 122:10, | 20:12, 52:5, | 87:5, 90:12, | 163:20, 189:14, |
| 129:9, 129:11, | 122:6 | 93:13, 110:9, | 190:5, 190:7, |
| 150:18, 151:18, | reality | 113:11, 113:17, | 194:21, 202:2, |
| 154:17, 159:7, | 42:13 | 114:3, 114:7, | 210:8, 210:20, |
| 163:18, 163:20, | really | 115:9, 119:1, | 211:17, 211:20, |
| 165:7, 165:10, | 20:6, 22:16, | 119:3, 119:5, | 211:24, 232:2, |
| 177:3, 177:6, | 28:8, 44:4, | 123:2, 123:6, | 236:17, 236:19, |
| 179:8, 192:23, | 172:20, 189:3, | 132:18, 134:15, | 244:18, 254:11, |
| 195:10, 195:13, | 202:14, 202:19, | 139:13, 152:12, | 264:3, 265:6 |
| 195:20, 201:24, | 236:15, 248:8 | 152:17, 156:18, | recorded |
| 202:2, 202:7, | reason | 162:2, 185:9, | 17:12, 17:16, |
| 203:9, 203:13, | 22:7, 31:5, | 185:14, 187:6, | 47:22, 142:8, |
| 205:10, 206:11, | 40:5, 41:5, | 200:7, 200:14, | 246:20 |
| 206:20, 207:2, | 41:7, 45:21, | 200:15, 204:17, | records |
| 211:17, 213:21, | 54:13, 58:7, | 221:10, 221:19, | 18:4, 118:20, |
| 216:10, 216:13, | 90:3, 115:18, | 229:23, 230:19, | 124:16, 130:17, |
| 217:7, 217:10, | 131:8, 145:14, | 239:17, 239:18, | 136:15, 136:16 |
| 217:11, 217:16, | 150:14, 163:23, | 239:22, 239:23, | recounting |
| 217:22, 217:23, | 166:5, 175:21, | 242:1, 242:2, | 106:22 |
| 218:1, 219:3, | 176:9, 177:21, | 252:5, 252:18, | recover |
| 219:21, 220:5, | 192:11, 193:10, | 253:9, 262:10 | 88:2 |
| 222:23, 223:24, | 193:23, 199:23, | received | reduce |
| 224:10, 231:24, | 200:22, 206:3, | 97:13, 211:8, | 58:16 |
| 232:2, 232:19, | 207:16, 207:22, | 241:19, 241:21, | reduced |
| 233:3, 237:8, | 212:13, 215:14, | 241:23 | 265:9 |
| 244:16, 244:18, | 215:15, 217:9, | receiving | refer |
| 245:7, 250:9, | 219:13, 220:18, | 96:20, 97:8 | 173:18 |
| 254:5, 254:9, | 226:12, 229:11, | recollect | reference |
| 254:11, 254:16 | 229:14, 231:17, | 220:3 | 149:7, 170:5, |

190:15, 207:13
**references**
149:6
**referred**
143:5
**referring**
65:6, 76:16,
95:5, 125:1,
170:6, 247:3
**reflected**
53:10
**reflecting**
151:10
**refresh**
159:19, 177:12,
225:19, 253:19,
257:9, 257:14,
257:17
**regard**
124:22
**regarding**
182:10, 195:1,
237:2
**regardless**
164:20
**registered**
265:2
**regular**
82:6
**reiter**
5:13
**reject**
95:20
**relate**
84:7, 96:1
**related**
44:5, 54:24,
61:20, 150:24,
157:2, 157:23,
265:11
**relation**
103:6
**relationship**
91:22, 91:23
**relax**
125:2
**relay**
197:21

**relayed**
197:22
**released**
121:2, 121:12
**relevance**
25:8, 149:24,
152:6, 152:7
**relevant**
38:5, 43:5,
43:16, 145:21
**reliability**
55:7, 60:17,
67:2, 74:1
**reliable**
57:1, 65:10,
70:5, 71:23
**relied**
97:7
**relying**
198:14
**remain**
11:5
**remaining**
255:7
**remember**
10:6, 17:3,
17:7, 21:13,
21:17, 22:6,
22:11, 55:2,
103:2, 109:15,
116:12, 116:13,
120:3, 124:18,
124:21, 132:7,
132:14, 133:10,
133:11, 133:18,
133:20, 133:22,
133:23, 134:1,
134:2, 134:8,
134:13, 135:1,
146:23, 146:24,
153:13, 160:3,
188:18, 189:3,
192:1, 192:11,
193:9, 195:19,
197:13, 197:15,
198:19, 201:9,
202:9, 202:14,
208:6, 211:10,

212:11, 212:12,
214:1, 214:6,
215:8, 215:11,
215:12, 216:3,
216:4, 218:11,
218:12, 220:16,
221:15, 221:17,
221:18, 222:9,
230:6, 230:9,
230:11, 230:12,
230:14, 231:2,
231:19, 233:16,
235:15, 240:20,
246:15, 247:19,
248:18, 250:3,
250:7, 251:24,
252:1, 252:2,
258:11, 260:2,
260:3, 262:3
**repeat**
66:17, 72:1,
202:12, 211:16
**repeated**
229:7
**repeatedly**
39:24
**rephrase**
10:11
**reply**
218:15
**reported**
2:1, 100:5,
100:9, 100:16,
100:20, 105:8
**reporter**
2:15, 8:11,
8:14, 10:4,
16:4, 29:21,
42:24, 50:9,
50:12, 66:13,
66:17, 66:22,
72:4, 82:23,
93:3, 97:19,
106:13, 122:11,
129:12, 163:21,
175:13, 175:14,
202:3, 211:18,
232:3, 244:19,

254:12, 265:1,
265:3
**reporters**
245:22
**reporting**
149:8, 173:18,
174:1, 184:12,
184:18, 186:8,
190:14, 192:2,
192:18, 193:1,
226:18
**reports**
21:19, 21:20,
34:20, 43:19,
43:21, 43:23,
44:13, 51:4,
51:7, 52:13,
52:14, 60:15,
94:21, 94:23,
95:6, 95:7,
95:23, 96:16,
98:6, 119:19,
119:23, 120:3,
126:2, 126:4,
143:2, 146:13,
146:14, 147:19,
149:4, 152:10,
153:10, 156:14,
157:2, 157:21,
157:23, 173:17,
178:6, 199:1,
203:2, 223:12,
223:16, 227:1,
233:13, 248:1
**represent**
261:23
**request**
83:11, 138:15
**requested**
132:20, 226:19,
265:10
**requesting**
248:14
**require**
41:14, 41:18
**required**
31:22, 143:2,
143:4, 224:10

reserve
261:6
residence
171:8, 171:13,
171:14
respect
163:5, 262:5,
262:12, 263:9,
263:12
rest
221:5, 221:8
resulted
163:17
results
118:16, 164:20
resumed
191:1
retention
136:17
returned
172:9, 190:14
reveal
220:20
reverse
252:15
review
43:21, 51:8,
51:14, 52:23,
54:5, 75:13,
75:20, 75:24,
78:24, 91:21,
92:9, 92:23,
93:12, 94:21,
114:13, 159:13,
165:16, 177:11,
226:19, 233:23,
237:10, 248:1,
257:13
reviewed
44:5, 53:4,
53:8, 109:20,
119:23, 124:15,
140:12, 195:8,
227:1, 257:7,
257:8, 258:19,
259:2
reviewing
87:24, 120:2,

177:9, 263:1,
263:5
reviews
76:14
revised
223:7
reyes
8:5, 8:16,
9:23, 19:14,
44:14, 44:18,
45:15, 114:24,
115:5, 119:2,
123:12, 161:9,
181:18, 184:4,
184:8, 184:12,
185:4, 185:12,
192:20, 198:21,
208:3, 209:11,
213:22, 215:5,
215:17, 220:6,
226:14, 227:14,
227:20, 228:13,
230:22, 231:22,
233:15, 237:3,
237:7, 237:14,
238:14, 246:7,
246:13, 246:17,
247:2, 248:9,
249:4, 250:17,
251:4, 251:12,
251:15, 251:18,
252:3, 252:7,
253:8, 253:10,
253:20, 255:11,
255:19, 256:21,
257:15, 257:18,
257:24, 259:8,
259:11, 260:10,
262:1, 263:10
reyes's
258:20
reynaldo
1:8, 1:14, 8:5,
121:9
rfc
143:14, 161:9,
194:19, 194:22,
201:14

rican
180:17, 181:3,
181:4
richard
5:7
rick
6:12
rid
17:24, 216:18,
217:1, 218:1
right
12:4, 15:18,
17:9, 18:6,
22:1, 24:22,
33:6, 39:2,
51:9, 52:10,
52:24, 60:13,
61:13, 62:12,
63:18, 65:10,
68:14, 71:5,
71:22, 75:6,
75:21, 83:5,
84:22, 85:23,
91:8, 94:24,
95:9, 101:7,
102:24, 103:13,
105:13, 107:10,
108:19, 108:20,
108:24, 109:5,
110:20, 111:7,
112:12, 116:10,
116:15, 118:5,
127:24, 129:16,
129:20, 129:22,
136:11, 138:13,
145:23, 146:9,
152:24, 154:20,
155:14, 155:15,
156:23, 157:17,
160:8, 164:2,
164:4, 164:8,
164:21, 166:18,
175:1, 175:9,
178:20, 189:19,
201:23, 206:9,
211:2, 211:3,
211:6, 217:19,
224:6, 228:10,

235:2, 239:16,
239:20, 240:13,
243:17, 246:22,
247:2, 247:8,
250:10, 257:24,
260:15, 260:21
rights
86:11
rip
244:23
rise
129:7
risk
58:2, 58:16
river
88:14
robbery
69:16, 88:16
robert
1:18, 2:2, 7:2,
8:3, 9:10, 264:1
rock
6:5
role
31:11, 31:12,
31:16
roles
23:13
room
14:12, 14:22,
15:12, 15:19,
24:22, 102:22,
103:15, 104:6,
105:4, 105:15,
108:18, 109:9,
111:4, 113:14,
113:18, 113:22,
133:3, 149:17,
175:5, 183:24,
185:18, 214:3,
222:10, 226:2,
229:4, 232:6,
232:7, 232:8,
232:14, 232:17,
249:3
rooms
11:14, 11:24,
12:3, 12:17,

| S | | |
|---|---|---|

12:22, 13:2,
13:3, 13:10,
13:17, 14:4,
14:7, 15:3,
15:13, 15:18,
15:24, 102:24
**rosauro**
118:22, 119:5,
119:10, 119:15,
120:5, 120:8,
120:15, 121:11,
155:10, 171:5,
171:9, 205:23,
207:5, 207:6,
207:8, 207:9,
207:12, 208:1,
208:14, 208:16,
208:18, 209:3,
209:18, 209:19,
262:9, 263:11
**rosendo**
254:21, 254:23
**row**
256:2
**rpr**
2:1
**ruiz**
171:7
**rule**
169:5
**rules**
10:3, 10:7,
10:9, 228:8
**run**
12:17
**running**
80:7, 80:8,
80:11
**rush**
136:1
**rutherford**
1:18, 2:2,
4:11, 7:2, 7:9,
8:3, 9:7, 9:10,
9:20, 51:3,
161:6, 191:1,
206:11, 229:6,
261:22, 264:1

**S**
s-t-e-w-a-r-t
94:4
**salazar**
125:18, 125:21,
126:1, 126:9,
126:13, 126:16,
160:11, 160:12,
162:12, 162:14,
162:15, 162:17,
162:22, 163:3,
166:3, 166:21,
168:10, 169:2,
184:22, 185:1,
201:17, 201:22,
202:9, 202:20,
202:23, 203:7,
203:14, 203:15,
203:20
**same**
33:10, 36:2,
38:1, 41:13,
45:6, 45:7,
56:14, 65:11,
65:16, 66:16,
67:10, 67:16,
69:8, 71:6,
74:5, 77:24,
79:23, 88:11,
92:7, 95:22,
99:8, 109:1,
109:6, 129:2,
147:22, 147:23,
150:22, 158:5,
171:17, 188:16,
221:4, 221:7,
235:11, 235:20,
235:24, 236:4,
253:21, 256:2,
262:6, 262:12,
262:14, 262:19
**sandwiches**
93:23
**santiago**
192:6, 225:3
**santopadre**
171:7

**sat**
15:2, 114:3
**save**
35:2
**saw**
40:19, 84:7,
112:10, 209:22,
212:1
**saying**
35:23, 36:4,
39:10, 40:14,
42:1, 59:18,
61:16, 62:1,
62:3, 63:2,
63:4, 64:2,
65:3, 70:9,
70:10, 70:24,
71:5, 72:22,
80:6, 121:19,
138:8, 153:3,
162:17, 169:7,
174:12, 181:23,
203:18, 208:7,
208:12, 213:18,
218:6, 220:6,
220:11, 224:24,
232:11, 234:1,
234:21, 247:7,
250:2
**says**
69:13, 71:18,
87:19, 91:2,
149:14, 152:1,
154:17, 155:19,
155:23, 160:7,
161:10, 162:4,
162:11, 166:20,
170:10, 171:4,
171:17, 172:8,
176:3, 176:21,
178:3, 178:16,
182:6, 182:9,
182:22, 183:22,
184:10, 184:18,
186:4, 186:7,
187:4, 192:17,
193:12, 196:5,
196:8, 201:16,

204:3, 204:7,
204:14, 205:14,
206:7, 207:6,
207:9, 207:12,
209:18, 209:21,
210:2, 210:9,
210:24, 212:1,
212:16, 213:10,
214:16, 215:7,
217:2, 218:18,
221:2, 226:9,
229:1, 229:22,
235:16, 238:14,
245:10, 249:12,
250:13, 251:15,
254:1, 254:14,
254:16, 254:17,
254:21, 255:10
**scenario**
69:24, 85:16,
87:7, 138:8,
157:15
**scene**
32:6, 32:24,
34:4, 34:23,
114:20, 128:2
**scratch**
188:1, 189:6
**screen**
106:15
**seal**
265:15
**search**
73:22, 118:20,
171:6, 171:8,
171:12, 171:18
**searched**
160:10
**searching**
60:20
**seat**
214:13, 214:16,
215:24
**second**
9:22, 11:11,
16:12, 16:20,
38:23, 65:20,
75:7, 134:20,

143:11, 175:2,
175:4, 175:18,
177:1, 211:15,
212:19, 223:11,
224:7, 226:1
**section**
144:6, 145:5,
146:16, 147:1,
147:7, 150:18,
177:12, 207:1,
213:12, 213:21,
220:5, 221:6,
256:9, 256:12
**see**
28:21, 44:20,
45:3, 46:9,
59:12, 60:8,
60:11, 114:4,
147:2, 147:5,
148:9, 148:16,
148:18, 149:4,
149:18, 150:24,
155:4, 159:6,
162:19, 169:22,
170:4, 171:19,
172:14, 175:6,
178:9, 179:3,
183:6, 185:7,
186:11, 191:3,
196:8, 201:15,
201:18, 203:2,
203:10, 204:7,
209:24, 211:14,
212:10, 212:13,
212:23, 214:14,
216:14, 216:19,
222:20, 229:9,
231:7, 238:20,
240:5, 248:1,
254:2, 254:21,
256:10, 258:13,
263:5
**seeing**
112:14, 185:9
**seek**
78:2, 84:12,
85:1
**seeking**
76:7, 83:17,

84:20, 85:5,
90:9
**seem**
181:14, 204:20,
208:10, 208:11,
233:2
**seemed**
180:12
**seems**
63:5, 64:13
**seen**
43:22, 44:12,
93:21, 93:22,
121:24, 133:11,
151:4, 151:9,
195:11, 228:3,
262:21
**send**
87:22, 117:20,
136:10, 138:13,
245:9
**sense**
11:10, 39:11,
39:20, 63:14,
63:15, 91:5,
91:14, 91:15,
91:18, 209:3
**sent**
135:24, 136:5,
137:16
**sentence**
166:20, 169:5,
171:3, 186:7,
216:24, 217:2,
217:16, 250:9,
250:10, 253:24,
254:8, 254:16,
254:17, 254:19
**sentences**
171:4, 204:6,
209:18, 216:8,
216:9, 217:24,
218:18, 250:9
**separate**
111:4, 142:9,
156:23
**sergeant**
19:11, 23:3,

24:23, 26:9,
26:12, 158:4,
158:7, 158:8,
158:9, 158:10,
187:20, 188:3,
188:13, 189:10,
189:11, 199:9,
199:23, 241:12,
241:20, 241:21,
242:15, 243:21,
244:15, 244:22,
244:24
**sergeant's**
15:14, 15:23,
243:13
**serious**
42:2
**serve**
180:21
**served**
30:3, 30:23,
30:24, 178:18
**services**
191:2
**serving**
29:14, 31:7,
31:11, 179:24
**set**
265:14
**setup**
205:9
**seven**
250:8
**several**
72:16, 91:6,
165:18
**shall**
84:17, 136:1
**share**
94:11, 95:24
**shared**
15:13, 96:5
**sharing**
94:13
**she'd**
136:14, 138:12
**sheet**
18:11, 18:13,

18:14, 18:24
**sheets**
17:13
**shift**
16:13, 16:14,
16:17, 17:4,
17:8, 21:11,
22:9, 186:22,
229:17
**shifting**
73:23
**ship**
137:12
**shoes**
235:9, 235:11
**shooting**
87:19
**shop**
88:18
**shops**
88:19
**short**
15:7, 74:24,
140:1, 190:6,
224:23, 236:18
**shorthand**
2:15, 265:1,
265:3
**shot**
71:1
**should**
53:18, 54:8,
54:14, 130:10,
130:14, 130:16,
130:23, 131:4,
131:9, 135:8,
158:2, 206:20,
223:4
**shouldn't**
10:6
**show**
107:4, 115:24,
141:21, 161:22
**showed**
36:8, 36:16,
37:19, 38:3
**showing**
36:20, 161:23

**shown**
160:13
**shows**
85:4
**side**
11:23, 12:2,
13:11, 14:7,
15:4, 161:24,
196:8
**sign**
51:12, 53:4,
140:21, 245:1
**signature**
199:6
**signature-9wmui**
265:17
**signed**
51:14, 51:15,
53:8, 110:2,
141:6, 171:5,
171:12, 200:6,
242:16, 242:17,
257:20, 257:21
**signify**
219:5
**signing**
265:10
**simpler**
72:8
**simply**
67:19
**since**
142:18, 188:5,
188:7, 245:6,
245:8, 258:7
**single**
128:24
**sir**
54:23, 140:5,
159:13, 161:11,
190:10, 194:20,
194:24, 238:16,
238:18
**sit**
14:18, 87:16,
93:20, 102:19,
113:4, 113:13,
113:18, 113:19,

113:23, 116:13,
188:18, 200:1,
220:18, 230:15,
231:16, 257:22
**site**
79:14, 82:17,
117:13, 117:20
**sitting**
109:9, 113:9,
113:22, 114:7,
243:12, 243:17,
243:18
**six**
250:8
**size**
232:17
**skip**
172:7, 217:2
**skipped**
217:17
**slang**
251:19, 253:15
**slip**
17:15, 184:21,
184:24
**slips**
184:20
**slow**
38:8, 40:22
**slower**
42:18
**small**
232:8
**solache**
1:11, 3:11,
8:6, 8:18, 8:20,
9:23, 115:2,
115:5, 161:9,
185:17, 185:20,
186:3, 193:13,
193:15, 193:19,
194:10, 198:22,
225:7, 261:14,
262:5, 263:11
**solache-reyes**
143:15, 194:19,
194:23, 201:15
**some**
11:14, 11:24,

12:1, 12:3,
12:16, 13:2,
13:4, 19:19,
20:12, 21:16,
21:20, 35:24,
44:20, 45:3,
48:1, 48:22,
50:2, 55:5,
55:23, 59:18,
60:7, 60:9,
60:16, 61:2,
61:5, 61:12,
68:3, 74:9,
77:20, 83:16,
85:17, 85:24,
86:11, 92:6,
104:14, 105:12,
109:5, 110:4,
110:16, 113:14,
117:15, 120:7,
128:22, 131:9,
137:21, 143:7,
157:8, 157:13,
169:1, 169:11,
170:2, 183:6,
183:14, 187:24,
188:23, 188:24,
189:8, 189:9,
199:22, 200:17,
204:24, 208:9,
246:6, 246:12,
250:10, 258:22,
261:6
**somebody**
27:19, 28:2,
28:23, 29:13,
35:21, 36:10,
48:18, 57:7,
57:13, 57:16,
58:3, 58:17,
59:24, 60:22,
62:8, 65:7,
73:23, 87:19,
87:22, 90:8,
97:1, 97:14,
115:21, 117:22,
118:5, 120:24,
121:7, 127:22,

129:7, 130:7,
131:3, 131:8,
136:9, 137:24,
150:12, 176:2,
197:6, 202:8,
220:24, 234:3,
239:7, 242:4,
243:20, 252:14
**somebody's**
170:11, 170:20
**somehow**
36:23, 130:14,
222:18
**someone**
30:7, 35:10,
58:24, 63:12,
174:8, 240:24,
243:3, 243:7
**something**
22:5, 33:17,
33:24, 35:12,
41:6, 52:19,
53:22, 53:24,
54:2, 55:13,
55:22, 57:13,
57:20, 58:10,
58:17, 61:23,
62:23, 63:13,
63:24, 64:12,
70:5, 70:9,
70:24, 71:8,
88:3, 88:5,
88:20, 91:2,
106:3, 106:22,
106:24, 107:12,
107:16, 113:8,
119:22, 157:14,
160:23, 161:3,
161:18, 161:21,
166:16, 173:13,
179:2, 187:8,
187:13, 187:18,
222:15, 239:1,
245:6, 253:12,
255:15, 259:22,
259:24, 260:22,
263:4, 263:8
**sometimes**
27:16, 27:22,

51:13, 59:12,
60:11, 93:7,
102:9, 102:23,
143:9
**somewhere**
145:3, 148:17,
148:23, 149:3,
260:5
**soon**
137:21
**sorry**
16:4, 16:14,
25:6, 38:16,
49:18, 52:12,
54:16, 66:13,
66:18, 83:2,
122:3, 129:6,
144:19, 145:11,
156:5, 162:8,
171:3, 177:2,
188:10, 194:21,
199:15, 212:24,
260:4
**sort**
69:19, 89:7,
91:15, 164:10,
204:4
**soto**
16:23, 19:16,
21:6, 21:10,
21:15, 21:16,
22:8, 114:9,
114:19, 122:19,
125:5, 125:21,
126:20, 126:24,
127:13, 127:14,
131:13, 131:18,
141:16, 168:10,
169:19, 170:7,
178:6, 179:15,
192:5, 192:6,
207:15, 220:7,
225:2, 225:3,
258:21
**sotos**
4:15
**sotto**
261:12

**sound**
10:21, 11:3,
124:24
**sounds**
59:17, 218:6,
219:7
**source**
96:3, 98:2
**south**
5:14, 12:2,
12:12, 12:13,
13:4, 15:23,
171:8, 232:6
**spanish**
28:20, 28:22,
31:14, 31:15,
179:21, 179:23,
180:3, 180:6,
180:11, 180:14,
197:6, 197:19,
198:4, 198:11,
198:17, 226:20,
227:4, 227:8,
248:8, 248:13,
251:8, 251:11,
251:18, 251:19,
251:23, 252:14,
253:20, 253:23,
255:15, 255:16,
256:5
**spanish-speaking**
252:2, 252:7
**speak**
27:17, 50:22,
82:19, 83:10,
94:8, 108:9,
179:22, 180:5,
198:4, 198:11,
227:3, 248:7,
251:18, 251:23,
253:23, 255:16
**speaker**
197:19
**speaking**
39:9, 94:15,
226:20
**speaks**
227:8

**specialist**
26:22, 27:12
**specialists**
23:11, 24:17,
25:3, 25:7
**specific**
23:20, 67:4,
72:19, 114:14,
146:1, 163:4
**specifically**
84:20, 93:24,
124:14, 147:17,
216:5
**speculating**
231:16
**speculation**
16:3, 16:6,
61:4, 61:15,
61:22, 62:16,
62:21, 63:7,
64:7, 64:17,
64:24, 66:21,
68:18, 69:1,
70:8, 70:21,
72:6, 72:15,
74:4, 74:12,
76:5, 76:11,
77:2, 77:11,
77:18, 78:10,
78:19, 79:4,
82:11, 83:15,
84:4, 85:11,
86:9, 87:13,
90:1, 92:1,
95:17, 108:6,
136:13, 138:3,
145:10, 166:13,
168:5, 169:14,
183:18, 188:12,
231:18, 242:23,
253:17, 256:3,
259:19
**speed**
21:5, 199:24
**spell**
94:3
**spelling**
263:7

**spend**
150:2
**spoke**
10:2, 28:7,
28:8, 28:20,
197:6, 197:7,
198:17, 209:19
**spoken**
81:3, 85:16,
85:23, 225:21
**spot**
211:14
**spots**
102:22, 110:2,
209:23, 212:2
**square**
117:7
**st**
265:15
**stab**
220:9
**stabbed**
36:7, 36:9,
36:17, 37:3,
38:3, 38:4,
192:20, 193:3,
220:6, 220:11,
220:13, 225:6
**stabbing**
36:8, 37:20,
43:4, 43:14
**staff**
14:17, 14:21
**stained**
213:2
**stains**
209:20, 210:3,
210:10, 211:1,
211:7, 212:10
**stainthorp**
3:13, 8:19
**stamped**
7:11, 7:12,
161:9, 194:19,
194:22
**stamps**
175:11
**stand**
18:17, 154:23,

233:2
**standing**
150:5
**stankus**
4:12
**start**
25:21, 38:24,
42:19, 102:16,
205:14, 212:18,
212:22, 217:20,
246:7
**started**
117:15, 117:17,
185:24, 186:21,
200:15, 246:21
**starting**
12:11, 12:13,
38:22, 122:5,
224:13
**starts**
12:10, 187:21,
217:21, 246:11
**state**
2:16, 78:23,
117:4, 265:21
**stated**
17:23, 172:11,
235:10
**statement**
56:24, 67:12,
67:20, 67:23,
69:17, 70:16,
70:23, 71:3,
76:22, 81:13,
85:18, 85:24,
86:20, 87:8,
88:4, 100:8,
100:9, 100:15,
100:16, 100:20,
100:22, 100:23,
101:4, 101:6,
101:13, 101:17,
101:19, 101:24,
102:13, 103:5,
103:10, 103:12,
105:5, 105:8,
108:19, 109:4,
109:11, 109:18,

109:19, 109:21,
109:23, 110:1,
110:3, 110:14,
110:15, 110:24,
111:7, 111:19,
111:22, 145:16,
155:11, 176:22,
201:21, 202:13,
202:16, 211:2,
213:5, 223:9,
223:11, 223:17,
230:24, 231:23,
232:22, 262:2,
262:9, 262:11,
262:18, 263:1,
263:6
**statements**
55:7, 58:24,
60:1, 62:9,
68:2, 100:1,
100:5, 102:3,
102:9, 102:10,
102:20, 102:24,
104:14, 111:14,
112:24, 155:10,
194:2, 194:9,
217:6, 221:1,
221:3, 223:7,
223:15, 227:2,
227:13, 227:18,
228:14, 228:18,
231:4, 233:24,
245:22, 262:7,
262:23, 263:14,
263:15, 263:17
**states**
1:1, 154:9,
226:24
**states's**
82:17, 86:2,
99:4
**station**
75:14, 75:16,
76:1, 79:1,
80:1, 80:20,
81:5, 87:2,
89:16, 89:18,
98:18, 112:6,

119:6, 121:8,
126:24, 127:9,
130:7, 233:10,
235:19
**stats**
155:9
**stay**
105:4, 205:23,
207:5
**steals**
235:23
**stenographically**
265:8
**step**
61:18, 64:11,
84:17, 104:10,
104:18, 104:23,
105:10, 173:5
**stephens**
171:7
**steps**
51:5, 51:7,
62:10, 77:7,
79:11, 79:19,
79:22, 144:12
**stewart**
93:17, 94:3
**stick**
47:3
**still**
10:11, 10:15,
17:22, 22:4,
79:6, 80:8,
80:18, 81:1,
83:4, 97:20,
105:9, 137:4,
157:8, 162:10,
166:7, 168:20,
215:9, 234:22,
235:10, 235:24,
236:3
**stole**
88:20
**stop**
38:11, 38:20
**stories**
73:23
**story**
59:1, 67:2,

68:11, 70:2,
74:2, 90:15,
90:21, 91:5,
107:11, 108:3,
166:3, 211:12
**straight**
90:15, 90:22
**strange**
207:24
**street**
2:6, 3:6, 6:6,
8:8, 117:7,
132:8
**stressing**
57:17
**strike**
15:1, 19:15,
21:14, 26:3,
30:23, 31:8,
32:21, 35:21,
36:10, 37:1,
43:2, 45:14,
47:11, 48:11,
51:2, 51:5,
65:4, 68:9,
73:1, 78:23,
85:3, 89:1,
94:5, 95:4,
99:3, 103:21,
108:16, 111:4,
111:11, 112:20,
114:4, 116:3,
116:12, 119:3,
125:14, 126:7,
138:15, 154:3,
167:19, 167:21,
170:18, 173:4,
174:6, 178:17,
180:7, 181:16,
193:17, 194:1,
208:24, 215:14,
221:5, 235:18,
237:21, 237:22,
241:7, 241:8,
246:4, 257:10,
258:17, 259:8,
260:8
**strive**
68:4

study
52:6
subject
55:2, 114:8,
217:21
submission
154:24
submit
153:14, 153:24,
156:11, 156:13,
169:20
submitted
51:9, 52:24,
151:16, 151:20,
151:22, 151:24,
152:1, 152:4,
152:11, 152:22,
152:23, 153:20,
154:20, 155:21,
156:1, 157:3,
157:8, 157:21,
157:23, 159:1
submitting
153:19
subpoena
135:23, 136:2,
136:4, 136:8,
136:9, 136:22,
137:11, 138:13,
138:21
subpoenaed
134:3, 135:16,
136:15
subpoenas
137:23
subsequent
59:12, 78:5,
85:6, 86:5,
86:21, 87:10,
223:14
substantial
261:1, 261:2,
263:6
substantiated
182:24
successfully
180:2
suffice
128:19

sufficient
86:1
suggest
39:10
suggests
179:10
suite
4:7, 4:17,
5:15, 6:7
summarize
43:12, 141:24,
184:2, 253:3
summarized
177:16, 185:20,
260:14
summarizes
159:15
summarizing
205:20
summary
176:22, 184:11,
224:23, 225:10,
241:14, 245:20,
259:20, 263:2
summation
142:20
sup
48:16, 50:18,
222:20
supervision
265:9
supervisor
18:21, 23:13,
25:24, 154:1,
166:14
supervisor's
12:1
supervisors
11:15, 12:21,
15:2, 23:9
supplemental
52:17, 53:20,
95:7, 157:2,
164:13, 222:11
supplementary
34:1, 43:23,
44:13, 48:1,
48:6, 50:4,

50:24, 51:4,
51:7, 52:12,
52:14, 52:21,
53:15, 95:6,
95:14, 95:23,
140:9, 143:3,
148:10, 157:12,
157:17, 157:21,
183:7, 183:15,
223:5, 223:16,
223:18, 225:15,
244:14
supposed
127:23, 137:23,
144:5, 164:3,
164:20, 164:24,
242:6
supposedly
28:17
sure
16:10, 18:19,
19:10, 19:13,
25:20, 38:8,
38:21, 42:18,
42:21, 48:6,
48:16, 50:16,
51:18, 53:8,
54:14, 55:11,
56:8, 56:24,
61:12, 65:3,
66:19, 71:22,
79:17, 81:2,
81:10, 90:14,
97:10, 103:3,
104:20, 106:21,
109:24, 114:18,
115:23, 117:3,
117:17, 118:13,
122:6, 122:8,
129:22, 134:3,
136:20, 137:10,
140:7, 152:19,
152:20, 153:6,
157:5, 170:9,
190:4, 202:6,
206:13, 206:24,
223:8, 243:24,
244:8, 247:6,

247:24, 254:18,
255:8, 260:6,
262:4
surprise
49:11
surprising
49:15, 49:16
susler
3:12, 8:17,
40:11, 261:15
suspects
22:18, 23:1,
23:16, 24:7,
24:14, 24:18,
25:4, 29:1,
30:8, 30:14,
31:10, 56:10,
56:23, 66:5,
85:14, 99:12,
100:2, 100:5,
112:11, 121:22,
127:13, 127:16,
131:13, 131:18,
179:11, 180:2,
180:23, 181:7,
181:12, 228:18,
234:24
switching
145:24
sworn
9:9, 9:11, 11:7

**T**

table
93:20
take
9:17, 10:18,
10:20, 11:2,
60:23, 62:10,
74:20, 93:14,
100:1, 100:4,
100:8, 100:19,
100:22, 101:3,
101:5, 101:12,
101:19, 101:24,
102:3, 103:10,
103:12, 103:14,
109:11, 109:18,

111:17, 117:21,
117:23, 138:18,
138:19, 139:9,
139:21, 183:21,
187:5, 194:18,
196:20, 213:4,
216:2, 217:3,
218:3, 218:13,
236:7, 236:12,
236:13, 243:11,
244:21, 245:22
**taken**
8:3, 74:24,
77:7, 88:21,
95:21, 102:10,
105:5, 116:9,
126:9, 140:1,
155:9, 173:6,
185:3, 185:8,
190:6, 213:7,
236:18, 259:17,
262:7, 265:5,
265:8
**takes**
79:1
**taking**
74:21, 76:22,
101:17, 102:12,
102:19, 108:19,
154:24, 170:21,
200:23, 208:2,
208:7, 222:4,
222:7, 222:10,
234:2, 234:4
**talk**
10:6, 45:22,
54:6, 59:16,
80:18, 80:21,
81:5, 81:10,
81:17, 81:21,
83:18, 83:20,
83:22, 83:23,
84:5, 84:8,
87:24, 89:18,
91:1, 91:2,
94:22, 98:24,
99:9, 99:10,
104:11, 172:20,

220:24, 254:19
**talked**
11:12, 16:11,
31:21, 32:1,
54:23, 55:5,
94:20, 103:13,
120:10, 124:18,
164:18, 178:24,
222:8, 247:2,
247:5, 247:8,
247:21
**talking**
12:11, 18:5,
18:23, 24:23,
25:23, 55:2,
63:18, 67:7,
67:9, 68:6,
69:23, 79:17,
88:17, 99:19,
146:4, 147:16,
202:7, 219:7,
222:5, 256:23,
257:5
**technicians**
116:4
**tell**
18:11, 23:3,
23:4, 40:15,
53:17, 54:2,
55:21, 56:8,
58:9, 59:17,
60:4, 71:21,
74:7, 74:14,
88:12, 91:20,
99:16, 108:12,
108:13, 114:16,
119:8, 123:11,
134:9, 141:19,
159:10, 163:7,
164:8, 166:8,
177:7, 180:7,
180:9, 180:15,
182:11, 184:14,
187:10, 199:1,
200:6, 202:17,
203:1, 216:5,
224:12, 227:6,
230:7, 231:20,

233:17, 235:11,
239:11, 247:9,
247:13, 251:9,
252:14, 252:16,
259:8, 259:12
**telling**
57:8, 57:13,
58:17, 59:1,
59:5, 59:8,
59:20, 62:11,
62:19, 63:5,
63:12, 64:21,
65:4, 65:9,
67:2, 68:11,
69:7, 69:19,
70:5, 72:9,
198:9, 198:15,
208:1, 209:2,
213:13, 218:7,
218:9, 234:24
**tells**
64:12, 68:20,
69:4, 71:7,
73:1, 73:2,
207:12
**ten**
15:8, 66:14,
232:10, 261:8
**tenders**
20:15
**term**
20:1, 20:3,
20:9, 250:22,
251:5, 253:2,
253:15, 253:20
**terminology**
250:17
**terms**
23:8, 37:18,
68:8, 68:10,
79:10, 82:16,
101:12, 103:5,
121:3, 121:14,
181:16, 181:21,
193:5, 230:16,
237:20, 237:23
**test**
67:1, 171:24,

172:13, 173:24,
262:23
**test"**
171:19
**testified**
9:11, 124:10,
132:3, 178:22
**testify**
139:15, 258:13
**testimony**
11:18, 13:7,
13:13, 13:19,
14:10, 15:6,
15:16, 16:2,
74:13, 78:17,
91:10, 142:17,
145:1, 153:5,
157:20, 164:6,
178:1, 223:20,
249:8, 263:2,
265:7
**text**
73:22
**th**
28:21, 117:4,
117:6, 132:8,
152:5, 155:21,
207:14
**thank**
66:22, 87:3,
94:2, 99:22,
146:3, 162:9,
190:20, 224:17,
227:17
**theft**
69:16
**themselves**
8:13, 58:3,
70:2, 138:10,
234:4
**thereafter**
265:8
**they'd**
113:19, 139:7,
149:1, 169:16,
243:11
**thing**
43:10, 51:20,

54:7, 57:7,
63:4, 64:15,
68:5, 69:12,
71:6, 78:6,
134:12, 161:23,
206:21, 234:2,
237:8, 251:7,
262:6

**things**
21:5, 21:19,
31:21, 32:1,
55:1, 55:6,
58:16, 59:21,
59:23, 60:4,
61:20, 62:18,
63:18, 64:20,
65:4, 66:24,
68:20, 69:4,
121:15, 124:12,
124:13, 143:1,
218:9, 234:22,
235:1, 259:6

**think**
24:11, 29:7,
30:1, 36:22,
38:23, 40:17,
42:13, 52:20,
54:14, 54:18,
62:5, 71:5,
84:11, 84:21,
85:24, 87:6,
87:16, 90:2,
90:5, 90:6,
120:22, 121:9,
125:8, 127:5,
130:23, 144:16,
149:2, 150:2,
150:12, 174:14,
179:18, 188:17,
200:22, 202:8,
202:13, 206:16,
206:20, 209:10,
216:23, 218:14,
222:16, 231:3,
233:6, 236:5,
236:22, 249:16,
251:2, 254:3,
260:5

**thinks**
76:13, 85:23

**third**
229:3

**thirds**
226:17

**thorough**
45:12, 46:1,
47:17

**thoroughly**
44:11

**thought**
52:15, 53:22,
97:11, 146:13,
219:20, 231:1,
236:5

**three**
12:21, 120:17,
165:22, 209:23,
212:2, 216:21,
234:19, 255:1

**threw**
87:20, 88:13,
88:15

**through**
89:4, 89:12,
89:19, 90:8,
90:10, 90:20,
91:6, 91:16,
107:11, 108:2,
110:11, 123:14,
123:18, 135:11,
137:12, 151:7,
159:9, 176:22,
188:2, 194:23,
203:5, 205:8,
214:13, 214:20,
214:21, 214:22,
214:24, 215:1,
219:23, 225:18,
248:9, 248:21,
257:12

**throughout**
144:10

**throw**
250:1

**tied**
156:9

**time**
8:10, 16:17,
16:18, 17:15,
21:19, 27:24,
39:6, 41:5,
56:9, 66:1,
66:4, 73:12,
84:21, 92:21,
95:12, 99:23,
104:16, 108:18,
109:16, 113:9,
119:22, 126:18,
126:23, 127:1,
127:7, 128:6,
132:7, 136:1,
137:21, 138:11,
139:1, 143:21,
150:3, 153:23,
154:24, 155:1,
155:24, 156:18,
158:5, 161:20,
171:17, 174:15,
174:16, 174:17,
174:20, 174:24,
175:11, 178:19,
181:17, 186:21,
189:2, 189:4,
189:18, 191:5,
191:15, 198:20,
200:8, 200:11,
200:15, 201:1,
201:3, 201:7,
201:10, 203:24,
206:5, 219:19,
220:4, 221:4,
221:7, 227:9,
228:16, 233:7,
233:18, 236:8,
236:9, 239:1,
239:7, 239:11,
239:13, 240:3,
240:7, 240:9,
240:12, 240:13,
240:16, 240:24,
241:4, 241:6,
241:23, 242:19,
242:21, 244:12,
255:24, 256:2,

260:17, 261:6,
262:15, 262:16,
262:19, 264:1

**timely**
158:2

**times**
39:13, 39:19,
40:21, 66:14,
72:16, 73:8,
86:18, 90:21,
91:6, 92:14,
103:22, 109:23,
123:11, 165:18,
165:23, 191:17,
191:21, 221:14,
221:16, 244:7,
258:2

**timing**
63:14

**today**
8:10, 10:12,
18:8, 87:17,
116:13, 188:18,
203:5, 225:18,
230:16, 231:16,
257:13, 257:22

**today's**
11:6

**together**
51:8, 52:23,
113:4, 113:9,
113:23, 114:7,
132:21, 133:2,
133:4, 173:8,
234:13

**told**
32:2, 34:21,
59:13, 60:12,
61:19, 72:20,
106:8, 106:18,
106:21, 107:3,
107:12, 108:4,
114:12, 120:12,
139:19, 183:16,
189:9, 205:15,
205:23, 207:3,
207:4, 207:9,
207:17, 209:20,

212:8, 213:3,
215:16, 216:18,
216:20, 216:21,
216:24, 217:3,
218:1, 218:2,
218:13, 231:7,
247:10, 247:13,
260:2, 262:21
**tom**
8:23
**tomorrow**
138:12
**took**
34:1, 44:22,
51:24, 52:3,
52:6, 102:8,
103:5, 138:11,
156:1, 156:2,
156:4, 156:7,
171:18, 171:23,
174:1, 201:7,
207:6, 207:7,
208:12, 222:5,
259:23, 260:12,
261:3, 263:14
**tool**
118:2
**top**
159:14, 161:9,
169:18, 177:8,
177:16, 184:16,
186:6, 186:7,
190:12, 190:19,
195:22, 195:24,
199:19, 205:13,
207:2, 238:4,
238:15, 241:10,
241:17, 242:5,
242:11, 242:16
**totally**
61:24, 62:23,
64:1, 70:23,
88:6, 189:7
**tow**
115:11, 115:15,
115:24, 116:8,
116:9, 258:16
**towards**
12:18

**towed**
115:12, 115:24
**track**
17:17, 57:22
**trained**
43:9, 43:18,
55:13, 55:17,
134:15
**training**
54:24, 55:15,
55:20, 55:22,
90:13
**transcript**
7:7, 175:12,
265:6
**translate**
28:6, 29:10,
31:15, 180:22,
255:15
**translated**
197:11, 251:24
**translating**
28:23, 197:24,
230:12, 230:18,
251:14
**translation**
28:10, 198:8,
198:14, 251:8,
252:17, 255:19,
256:5, 256:7
**translator**
27:20, 27:23,
28:2, 29:2,
29:14, 30:4,
30:24, 31:11,
31:12
**translators**
28:11, 28:16
**transport**
173:23
**travelled**
260:13
**treated**
105:2, 127:16,
127:22
**trevino**
4:12, 30:3,
30:7, 30:18,

31:9, 134:1,
178:4, 178:7,
178:12, 178:14,
178:18, 179:8,
179:14, 180:18,
182:3, 182:9,
182:12, 191:2,
192:17, 192:24,
197:3, 197:4,
197:7, 197:11,
197:12, 197:20,
197:21, 197:24,
202:18, 205:5,
208:7, 225:3,
229:6, 230:13,
230:21, 231:8,
247:20, 248:9,
248:22, 252:21,
253:5, 253:7
**trevino's**
198:8, 198:14
**trial**
124:8, 124:10,
124:20, 131:21,
132:1, 132:6,
132:9, 132:13,
133:7, 139:15
**trials**
131:22, 134:19,
134:23
**tricked**
250:15, 251:13,
251:15
**tricking**
250:21, 251:20
**trip**
258:21
**trouble**
181:8
**true**
30:5, 42:11,
42:14, 58:10,
58:18, 59:2,
59:5, 60:12,
62:11, 192:7,
193:5, 193:15,
193:18, 265:6
**truth**
57:17, 57:19,

58:8, 58:13,
58:22, 60:20,
63:10, 63:24,
65:21, 66:7,
68:4, 68:7,
69:19, 91:17,
91:19, 107:2,
118:3, 234:9
**truthful**
57:2, 65:10,
118:5, 122:14,
146:24
**truthfully**
134:12, 146:23,
192:1
**try**
34:6, 34:13,
34:18, 34:20,
35:2, 36:23,
50:11, 57:17,
57:22, 59:1,
61:16, 61:18,
62:1, 62:4,
62:6, 63:1,
63:3, 63:9,
63:21, 63:23,
64:1, 64:4,
67:13, 68:6,
70:10, 81:2,
88:1, 91:3,
91:17, 91:18,
107:3, 118:2,
167:21, 234:4,
234:6, 234:7,
234:20, 234:22
**trying**
58:21, 62:7,
66:6, 71:19,
88:14, 103:2,
146:16, 246:1
**turn**
54:17, 143:14,
155:3, 184:19,
186:5, 201:14
**turned**
158:18, 158:19,
242:6, 242:11,
243:4

**turning**
162:8, 182:18,
186:6, 200:8,
209:17, 216:7,
218:17, 226:16,
256:8

**two**
20:15, 115:19,
123:3, 123:10,
147:4, 170:24,
178:6, 182:6,
184:20, 192:21,
193:3, 209:17,
216:9, 216:20,
217:5, 217:24,
218:9, 225:6,
226:17, 235:23,
236:2, 255:4,
256:1

**type**
43:9, 43:18,
52:7, 108:1,
153:9, 153:11,
156:3, 161:11,
161:14, 223:10,
259:21

**typed**
153:9, 153:17,
174:4, 176:15,
222:24

**types**
148:15, 176:17,
223:12, 223:13

**typewriters**
153:10

**typewriting**
265:9

**typical**
47:4, 47:7,
47:10, 85:15,
85:19, 157:15

**typically**
26:2, 60:16,
113:13, 113:23,
135:3, 156:13,
157:10, 157:16,
173:5, 200:24,
228:16

**typing**
153:18, 156:10,
172:24, 173:1

**typo**
170:6

## U

**uic**
207:7

**ultimately**
120:19, 131:21

**um**
32:10

**um-hmm**
49:23, 53:1,
182:21, 200:10,
239:3

**under**
11:5, 55:17,
56:11, 152:1,
265:9

**undermine**
68:22, 69:6,
71:11, 72:12,
73:4

**understand**
9:24, 10:10,
10:12, 11:5,
11:22, 21:1,
21:23, 22:16,
27:7, 57:24,
65:13, 69:22,
72:23, 83:3,
84:18, 91:4,
103:7, 105:11,
120:15, 123:14,
123:18, 128:22,
129:23, 135:1,
145:7, 145:19,
148:6, 152:20,
157:10, 163:11,
170:5, 181:22,
199:18, 201:20,
213:5, 217:5,
227:3, 242:9,
251:2, 256:7

**understanding**
78:21, 100:7,

100:21, 101:11,
105:1, 136:14,
141:14, 146:11,
149:21, 151:24,
162:24, 164:19,
171:22, 181:2,
181:5, 184:8,
186:2, 187:18,
191:22, 198:7,
198:13, 214:6,
226:6

**understood**
10:15, 63:11,
67:13, 72:22,
157:20, 181:14,
213:18, 217:4,
218:3, 218:15,
223:2, 258:8

**unfair**
71:17

**unfortunately**
164:14

**unit**
117:16

**united**
1:1

**unjustified**
166:18

**unless**
86:10, 206:14,
234:6

**unlikely**
255:18

**unreliable**
71:21

**unstable**
70:23

**until**
77:8, 91:1,
95:19, 155:21,
234:12

**unusual**
46:15, 46:21,
46:22, 112:15,
154:23, 155:24

**updated**
77:22, 78:6

**updates**
77:15

**upper**
196:8

**use**
20:2, 21:18,
27:19, 27:22,
29:6, 173:13,
173:18, 174:19,
251:4, 251:9,
252:3, 253:10

**useful**
118:17

**usefulness**
118:15

**uses**
199:20

**using**
20:6, 20:7,
191:2

**usually**
76:12, 76:17,
81:23, 84:15,
95:23, 107:16,
108:23, 111:17,
113:4, 117:14,
117:23, 135:23,
138:7, 140:21,
156:5, 156:17,
173:7, 188:23,
201:6, 238:24

## V

**vague**
76:2, 89:22

**vana**
134:14

**varga**
5:3, 8:24,
155:9

**vehicle**
115:7

**verbatim**
96:2, 245:21,
245:22, 259:22

**verify**
59:1, 62:10

**verifying**
59:4

**version**
211:9

**versus**
9:24, 100:8,
100:16, 100:22
**victim**
37:3, 245:13,
254:1
**victim's**
192:19, 193:2,
196:2, 225:5,
238:7
**victims**
192:21, 193:4,
225:6
**video**
8:3
**videographer**
6:12, 8:2,
74:23, 75:1,
139:24, 140:2,
189:15, 190:5,
190:7, 236:10,
236:17, 236:19,
260:18, 263:24
**videotaped**
1:17
**view**
47:13, 73:5
**viewed**
162:13, 163:2,
167:4
**views**
121:3
**violent**
11:15, 12:20,
15:2, 15:22
**visually**
32:14, 34:3,
34:23
**voce**
261:12
**volition**
248:15
**volume**
1:18
**voluntarily**
235:19

**W**

**wacker**
5:14

**wait**
87:21, 190:23,
205:15, 207:3,
211:15, 216:22,
220:22, 232:20
**waited**
213:1, 215:4,
215:18, 215:20
**walk**
24:21, 24:22,
89:12, 89:19,
135:11
**walked**
89:4, 90:8,
90:10, 110:11
**wall**
11:13, 11:23,
12:2, 12:8,
13:11, 14:8,
15:4, 15:12,
15:14, 15:24,
196:24
**want**
11:8, 19:7,
41:7, 58:12,
68:5, 83:18,
83:22, 84:6,
88:20, 97:16,
107:2, 114:8,
114:14, 123:16,
124:2, 124:5,
128:6, 129:22,
135:2, 139:21,
150:6, 157:15,
159:7, 189:19,
189:20, 190:1,
216:9, 217:11,
232:5, 232:13,
234:6, 236:12,
254:19, 260:6,
261:5
**wanted**
101:3, 102:3,
117:19, 161:21,
182:11, 221:22,
228:1, 233:20,
243:3, 243:7,
243:20

**warrant**
78:2, 78:5
**waste**
174:17
**wasted**
174:14, 174:16
**watch**
16:20
**watching**
112:1
**water**
11:1
**way**
27:8, 36:7,
52:3, 58:8,
58:10, 60:5,
60:9, 61:10,
62:8, 63:16,
147:24, 158:23,
159:20, 162:2,
180:7, 180:9,
181:10, 181:13,
182:2, 223:13,
226:17, 229:19,
232:16, 250:13,
250:14, 250:16,
250:21, 251:13,
251:15, 251:20,
252:13
**ways**
128:22, 162:1,
188:3
**we'll**
10:20, 11:2,
216:14
**we're**
57:18, 73:12,
74:20, 99:19,
138:12, 150:2,
164:15, 245:21,
257:5, 263:22
**we've**
20:11, 258:17
**wearing**
212:16, 235:10,
235:19, 235:24,
236:3
**wednesday**
1:20

**week**
22:3
**weeks**
156:14
**wehrle**
5:3, 9:1
**went**
53:16, 63:13,
70:3, 88:18,
90:9, 99:11,
132:16, 132:21,
132:22, 132:23,
133:3, 133:13,
166:6, 171:7,
171:13, 172:2,
185:11, 191:11,
191:15, 191:23,
202:11, 203:5,
214:3, 214:13,
214:17, 214:22,
214:24, 215:1,
215:5, 215:21,
219:24, 230:16,
231:21, 233:18,
245:18, 259:4,
259:13, 259:23,
260:12
**weren't**
21:24, 47:10,
139:14, 143:2,
143:4, 202:11,
244:8
**west**
4:6, 4:16,
11:13, 11:23,
12:2, 12:8,
13:11, 14:8,
15:4, 15:24,
196:24
**whatever**
11:2, 12:24,
19:7, 21:22,
54:13, 58:12,
63:23, 69:15,
69:16, 94:20,
98:6, 111:16,
115:18, 116:1,
139:5, 145:22,

163:23, 167:23,
189:10, 189:21,
199:24, 247:7,
250:18

**whenever**
201:9

**whereof**
265:14

**whereupon**
161:6, 261:11

**wherever**
113:21

**whether**
36:24, 37:4,
37:5, 37:15,
37:18, 37:20,
59:1, 59:5,
59:20, 60:5,
61:11, 61:19,
62:10, 65:9,
65:21, 74:7,
91:12, 101:3,
101:5, 101:18,
104:5, 113:22,
118:4, 119:3,
119:5, 121:4,
121:14, 121:21,
126:7, 126:9,
126:23, 127:12,
130:8, 134:1,
169:2, 178:22,
179:1, 180:10,
180:17, 181:2,
181:10, 181:13,
187:8, 187:12,
196:15, 197:11,
197:23, 222:3,
222:5, 229:20,
230:13, 235:5,
247:22, 247:24,
256:19, 257:18,
262:8, 262:17,
262:24, 263:14

**white**
213:2, 255:5,
255:6

**whoever**
137:10, 137:22,

139:4

**whole**
138:18, 139:2,
139:10, 142:20,
150:18, 152:17,
205:10, 206:12,
206:21, 209:8,
216:10, 216:13,
217:7, 217:10,
217:12, 225:11,
237:8, 256:24

**wife**
183:1

**wind**
209:23, 211:13,
212:9

**wine**
209:20, 209:23,
210:3, 210:10,
211:1, 211:7,
211:14, 212:2,
212:10

**withdraw**
67:21

**withdrawn**
81:20

**without**
24:23, 25:4,
25:15, 25:23,
26:8, 26:14,
26:23, 29:11,
29:17, 30:11,
58:3, 60:24,
61:2, 86:22,
87:10, 89:20,
170:16, 171:2,
197:5, 233:15,
248:9

**witness**
9:9, 32:2,
32:10, 32:21,
33:14, 34:21,
34:22, 36:14,
40:23, 45:14,
64:12, 64:14,
66:23, 73:1,
74:19, 76:23,
79:24, 80:1,

80:2, 82:19,
83:8, 83:11,
83:24, 84:10,
85:23, 87:8,
90:14, 91:7,
99:6, 103:1,
103:14, 105:7,
105:20, 106:7,
106:16, 106:17,
109:5, 111:8,
129:21, 145:15,
146:18, 152:7,
161:22, 177:2,
177:5, 188:22,
189:21, 189:23,
190:4, 206:13,
216:23, 217:23,
224:5, 237:9,
249:21, 249:23,
262:24, 265:14

**witness's**
13:7, 13:13,
13:19, 14:10,
15:6, 15:16,
16:2, 16:7,
68:8, 74:13,
91:10, 142:16,
145:1, 153:4,
164:6, 181:22,
223:20

**witnesses**
22:13, 22:18,
66:1, 80:18,
80:21, 81:1,
81:3, 83:18,
84:6, 85:14,
99:11, 100:1,
144:4, 144:6,
144:9, 144:11,
144:16, 144:19,
144:20, 145:5,
145:6, 145:11,
145:13, 145:21,
146:7, 146:16,
180:11, 181:7

**woman**
125:20, 160:11,
160:14, 201:22,

204:21, 207:14

**word**
29:6, 51:11,
60:24, 90:18,
99:14, 246:1,
251:20, 252:3,
252:5, 252:8,
252:18, 252:20,
253:10, 254:20

**words**
103:18, 145:19,
184:21, 205:16,
225:21, 239:1,
242:9, 246:11,
251:23, 255:2,
255:4, 255:17

**wore**
235:9

**work**
16:15, 17:2,
17:4, 93:8,
103:15, 118:19,
185:23, 186:10,
186:13, 190:14,
245:8

**worked**
16:12, 16:14,
17:8, 21:15,
179:14, 179:18

**working**
17:6, 18:15,
21:9, 22:8,
45:11, 90:14,
126:18, 132:23,
171:15, 177:20,
177:22, 184:5

**wouldn't**
25:23, 35:24,
44:23, 45:8,
49:16, 51:10,
52:3, 58:7,
58:12, 62:24,
68:19, 74:8,
95:8, 95:23,
113:8, 135:14,
138:4, 202:11,
217:3, 232:9,
232:10, 234:11,

235:1, 235:5,
236:1, 257:20

**wrapped**
213:2

**wreck**
70:15

**write**
21:19, 21:20,
34:20, 35:14,
36:7, 36:8,
38:3, 110:14,
110:18, 110:19,
111:3, 111:6,
111:14, 150:2,
199:22, 200:24,
224:19, 224:23,
225:14, 226:10,
240:8, 240:13

**writes**
110:24, 111:1

**writing**
10:4, 52:21,
110:23, 111:21,
173:17, 173:19,
187:9, 201:10,
245:24, 253:19

**written**
45:17, 141:3,
141:10, 184:20,
187:18, 200:22,
201:11, 205:4,
221:4, 221:7,
223:4, 229:12,
238:1, 239:20,
240:7, 240:11,
253:12, 256:20,
259:17

**wrong**
16:14, 62:3,
99:16, 164:2,
164:8, 166:18,
222:18, 240:7,
240:12

**wrote**
34:1, 35:7,
140:14, 141:8,
146:14, 176:10,
176:14, 205:20,

205:24, 250:20

---
**Y**
---

**yeah**
9:16, 12:9,
13:16, 13:20,
14:6, 15:10,
15:20, 18:1,
18:3, 59:16,
63:1, 66:11,
67:23, 67:24,
69:3, 71:1,
83:3, 83:16,
88:24, 93:10,
108:8, 108:10,
126:5, 129:4,
134:22, 135:7,
161:20, 169:9,
190:3, 206:19,
210:11, 215:8,
220:3, 231:7,
232:12, 234:15,
238:21, 243:15,
247:5, 254:13,
261:3, 261:19,
263:3

**year**
199:20

**years**
146:12, 146:13

**yelling**
40:8, 40:9,
40:10, 40:11,
40:13, 41:23,
41:24

**yellow**
213:3

**yesterday**
10:2, 11:9,
17:23, 31:21,
51:17, 51:22,
54:23, 93:7,
114:12, 140:11,
157:21, 164:18,
165:18, 198:3,
222:16

**yo**
212:1

**young**
20:15

**yourself**
116:14, 153:18,
232:20, 261:18

**youth**
12:10, 12:15,
23:12, 25:13,
26:5, 26:12,
178:4, 178:7,
178:23, 179:6,
179:18, 182:12,
191:2, 192:17,
192:24, 248:21

---
**Z**
---

**zero**
97:5

**zibolski**
4:4, 8:21,
78:1, 78:20,
79:5, 82:12,
261:16

**zillion**
221:15

---
**$**
---

**$200**
255:6

**$600**
204:7, 204:12,
204:15, 204:21,
205:1, 205:6

---
**.**
---

**.0070**
3:18

**.1000**
6:9

**.3314**
4:19

**.3705**
4:9

**.5900**
2:8, 3:9

**.5971**
5:9

**.9123**
5:17

---
**0**
---

**00**
16:19, 172:18,
206:8, 219:10,
219:22, 227:10,
228:12, 229:16,
229:21, 230:22

**0015**
185:16

**0100**
204:7

**01028**
1:7

**0400**
212:23

**0430**
218:18, 218:21,
219:3, 221:7

**0500**
218:19, 218:22

**0530**
213:2

**0630**
186:9

**0730**
186:10, 186:14

**0800**
207:6

---
**1**
---

**1**
8:7, 139:24,
140:3

**10**
14:22, 16:9,
175:23, 177:8,
177:17, 182:5

**1028**
8:6

**1035**
196:5, 196:7,
196:9, 200:9

**11**
1:21, 8:11,
117:4, 149:15,
151:2

**1100**
190:13

**1180**
3:15
**12**
14:23, 74:23,
75:2, 182:19,
182:20
**120**
4:6
**1240**
4:17
**13**
184:16, 185:21
**14**
1:21, 8:11,
185:21, 186:6,
186:7, 190:10,
190:19, 224:2,
224:4, 224:14
**141**
4:16
**15**
16:9, 146:12,
226:16
**150**
93:19
**1500**
225:24, 230:23
**161**
7:10, 7:11,
7:12
**1700**
169:19, 226:22
**18**
1:7, 1:13,
1:20, 8:6, 8:7,
8:10
**1800**
229:2, 229:16
**1830**
171:5
**1840**
209:19
**19**
189:15
**1998**
16:22, 18:6,
56:1, 56:5,
116:24, 117:3,

117:8, 119:22,
152:2, 152:5,
154:18, 155:6,
155:17, 155:21,
156:20, 157:1,
162:5, 168:9,
171:11, 179:16,
258:7
**1:-cv**
1:7, 1:13, 8:6

**2**

**2**
190:5
**20**
155:4, 155:8
**200**
93:19, 255:4
**2000**
4:7
**2019**
1:20, 8:10,
265:16
**207**
161:9
**21**
155:4
**2100**
172:9
**22**
74:23
**2200**
6:7
**2230**
175:4, 176:5
**2300**
152:2
**2312**
1:13, 8:7
**2330**
183:22
**238**
143:15
**25**
14:12, 28:21
**257**
7:12
**259**
7:12

**26**
132:8
**260**
7:11, 194:19,
194:23
**261**
7:4, 201:15
**262**
205:13
**265**
1:24, 7:11,
194:23
**265708**
1:23
**27**
207:6, 255:6
**28**
207:14

**3**

**3**
189:15, 190:8
**3-5**
161:7
**30**
14:12, 16:18,
149:15, 151:2,
152:1, 152:5,
155:21, 171:11,
172:18, 175:23,
185:24, 186:19,
219:10, 219:22,
264:2, 264:3
**31**
265:15
**311**
2:6, 3:6, 5:14,
8:8
**312.243**
2:8, 3:9
**312.494**
6:9
**312.603**
5:9
**312.889**
5:17
**321**
6:6

**33**
75:2
**36**
236:17
**39**
117:6
**3rd**
3:7, 3:16,
151:2, 162:4,
168:9, 171:11,
175:23, 176:4,
184:5, 189:2,
203:6

**4**

**4**
219:10, 219:22,
236:17, 236:20
**40**
236:11
**400**
255:7
**41**
139:24
**44**
190:8
**4th**
16:12, 16:15,
16:22, 21:1,
21:6, 22:9,
119:7, 127:8,
156:20, 157:1,
185:23, 186:24,
199:16, 200:3

**5**

**5**
16:19, 219:10,
219:22, 227:10,
228:12, 264:2,
264:3
**50**
14:1
**500**
5:7, 221:7
**5200**
5:15
**56**
236:20

**57**
140:3
**5800**
162:11
**59**
190:5
**5th**
155:5, 155:10,
155:17

## 6

**6**
171:11, 172:18,
186:19, 229:16,
229:21, 230:22
**6034**
171:7
**60602**
4:8, 5:8
**60604**
4:18
**60606**
5:16
**60607**
2:7, 3:8
**60642**
3:17
**60654**
6:8
**6234**
171:8
**630.735**
4:19

## 7

**773.235**
3:18
**7th**
156:8, 199:14,
199:15, 199:16,
200:2

## 8

**8**
16:18, 185:24,
206:8
**866.786**
4:9

## 9

**9**
172:18
**93**
140:20
**98**
149:15, 162:11,
169:18, 171:4,
172:8, 175:3,
175:23, 176:5,
182:6, 183:22,
185:16, 190:13,
225:24, 226:21,
229:2

## {

**{phonetic}**
134:14



# Transcript of Robert Rutherford, Volume II

**Date:** December 18, 2019
**Case:** DeLeon-Reyes & Solache -v- Guevara, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE NORTHERN DISTRICT OF ILLINOIS

3                   EASTERN DIVISION

4    ----------------------------x

5    ARTURO DeLEON-REYES,           :

6               Plaintiff,          :

7       v.                          :   No. 1:18-cv-01028

8    REYNALDO GUEVARA, et al,       :

9               Defendants.         :

10   ----------------------------x

11   GABRIEL SOLACHE,               :

12               Plaintiff,         :

13      v.                          :   No. 1:18-cv-2312

14   REYNALDO GUEVARA, et al,       :

15               Defendants.        :

16

17            Videotaped Deposition of

18        ROBERT RUTHERFORD, VOLUME II

19              Chicago, Illinois

20        Wednesday, December 18, 2019

21                 11:14 a.m.

22

23   Job No.:  265708

24   Pages: 1 - 265

1    Reported by: Anna Maria Castle, CSR, RPR

2        Deposition of ROBERT RUTHERFORD, held at the

3    location of:

4

5            LOEVY & LOEVY

6            311 North Aberdeen Street

7            Chicago, Illinois 60607

8            312.243.5900

9

10

11

12

13

14        Pursuant to notice, before Anna Maria Castle, a

15    Certified Shorthand Reporter, and a Notary Public

16    in and for the State of Illinois.

17

18

19

20

21

22

23

24

```
 1              A P P E A R A N C E S

 2


 3     ON BEHALF OF PLAINTIFF DeLEON-REYES:

 4          ANAND SWAMINATHAN, ESQUIRE

 5          LOEVY & LOEVY

 6          311 North Aberdeen Street

 7          3rd Floor

 8          Chicago, Illinois 60607

 9          312.243.5900

10

11     ON BEHALF OF PLAINTIFF SOLACHE:

12          JAN SUSLER, ESQUIRE

13          JOHN L. STAINTHORP, ESQUIRE

14          PEOPLE'S LAW OFFICE

15          1180 North Milwaukee Avenue

16          3rd Floor

17          Chicago, Illinois 60642

18          773.235.0070

19

20

21

22

23

24
```

1    A P P E A R A N C E S   C O N T I N U E D

2

3    ON BEHALF OF DEFENDANT GUEVARA:

4         KEVIN ZIBOLSKI, ESQUIRE

5         LEINENWEBER BARONI & DAFFADA, LLC

6         120 West LaSalle

7         Suite 2000

8         Chicago, Illinois 60602

9         866.786.3705

10

11   ON BEHALF OF DEFENDANTS DICKINSON, RUTHERFORD,

12   STANKUS, NAUJOKAS, HARVEY, TREVINO, MINGEY,

13   BIEBEL:

14        CAROLINE P. GOLDEN, ESQUIRE

15        THE SOTOS LAW FIRM, PC

16        141 West Jackson

17        Suite 1240A

18        Chicago, Illinois 60604

19        630.735.3314

20

21

22

23

24

1    A P P E A R A N C E S   C O N T I N U E D

2

3    ON BEHALF OF DEFENDANTS WEHRLE, BRUALDI, VARGA,

4    O'MALLEY and COOK COUNTY:

5        EDWARD M. BRENER, ESQUIRE

6        COOK COUNTY STATE'S ATTORNEY'S OFFICE

7        500 Richard J. Daley Center

8        Chicago, Illinois 60602

9        312.603.5971

10

11   ON BEHALF OF DEFENDANT NAVARRO:

12       DANIEL J. BURNS, ESQUIRE

13       REITER BURNS LLP

14       311 South Wacker Drive

15       Suite 5200

16       Chicago, Illinois 60606

17       312.889.9123

18

19

20

21

22

23

24

1       A P P E A R A N C E S   C O N T I N U E D

2

3    ON BEHALF OF DEFENDANT CITY OF CHICAGO:

4         CATHERINE M. BARBER, ESQUIRE

5         ROCK FUSCO & CONNELLY, LLC

6         321 North Clark Street

7         Suite 2200

8         Chicago, Illinois 60654

9         312.494.1000

10

11   ALSO PRESENT:

12        RICK KOSBERG, Videographer

13

14

15

16

17

18

19

20

21

22

23

24

1                    C O N T E N T S

2    EXAMINATION OF ROBERT RUTHERFORD          PAGE

3         By Mr. Swaminathan                     9

4         By Mr. Brener                         261

5

6                    E X H I B I T S

7              (Attached to transcript.)

8

9    RUTHERFORD DEPOSITION EXHIBITS            PAGE

10       Exhibit 3   Chicago Police CB Report    161

11       Exhibit 4   GPR Bates stamped 260-265   161

12       Exhibit 5   GPR Bates stamped 257-259   161

13

14

15

16

17

18

19

20

21

22

23

24

| | | |
|---|---|---|
| 1 | P R O C E E D I N G S | 10:49:49 |
| 2 | THE VIDEOGRAPHER:  This is Day 2 of the | 11:13:26 |
| 3 | video deposition of Robert Rutherford, taken by | 11:13:28 |
| 4 | Loevy and Loevy in the matter of Arturo Delaney | 11:13:33 |
| 5 | Reyes, et al, Reynaldo Guevara, et al, Case | 11:13:35 |
| 6 | 1:18-cv-1028 and Gabriel Solache, City of Chicago, | 11:13:37 |
| 7 | et al., Case No. 1:18, 2312, held at Loevy and | 11:13:46 |
| 8 | Loevy, 311 North Aberdeen Street, Chicago, | 11:13:50 |
| 9 | Illinois. | 11:13:54 |
| 10 | Today is December 18, 2019.  The time is | 11:13:54 |
| 11 | 11:14.  The court reporter is Anna Castle of | 11:13:59 |
| 12 | Planet Depos. | 11:14:04 |
| 13 | Counsel can now introduce themselves, and | 11:14:06 |
| 14 | the court reporter is free to administer oath. | 11:14:10 |
| 15 | MR. SWAMINATHAN:  Anand Swaminathan for | 11:14:13 |
| 16 | Plaintiff Arturo Delaney Reyes. | 11:14:14 |
| 17 | MS. SUSLER:  Jan Susler for Plaintiff | 11:14:14 |
| 18 | Gabriel Solache. | 11:14:17 |
| 19 | MR. STAINTHORP:  John Stainthorp for | 11:14:17 |
| 20 | Plaintiff Gabriel Solache. | 11:14:22 |
| 21 | MR. ZIBOLSKI:  Kevin Zibolski for | 11:14:22 |
| 22 | Defendant Guevara. | 11:14:23 |
| 23 | MR. BRENER:  Edward Brener for Tom | 11:14:23 |
| 24 | O'Malley, Edward Brualdi, Andrew Varga, Karen | 11:14:23 |

| | | |
|---|---|---|
| 1 | Wehrle, and Cook County. | 11:14:28 |
| 2 | MR. BURNS:  Daniel Burns on behalf of | 11:14:28 |
| 3 | Defendant Guevara. | 11:14:30 |
| 4 | MS. BARBER:  Catherine Barber for | 11:14:32 |
| 5 | Defendant City of Chicago. | 11:14:34 |
| 6 | MS. GOLDEN:  Caroline Golden for | 11:14:35 |
| 7 | Mr. Rutherford and the individual officer | 11:14:37 |
| 8 | defendants. | 11:14:39 |
| 9 | (Witness sworn.) | 11:14:39 |
| 10 | ROBERT RUTHERFORD, | 11:14:39 |
| 11 | having been duly sworn, testified as follows: | 11:14:39 |
| 12 | EXAMINATION BY COUNSEL FOR PLAINTIFF DELEON-REYES | 11:14:52 |
| 13 | MR. SWAMINATHAN:  I have an extra copy of | 11:14:52 |
| 14 | the cleared and closed report.  Did you not get a | 11:14:54 |
| 15 | copy? | 11:14:57 |
| 16 | MS. BARBER:  Yeah, we need an extra, so I | 11:14:58 |
| 17 | will take it, yes. | 11:15:01 |
| 18 | EXAMINATION BY COUNSEL FOR PLAINTIFF DELEON-REYES | 11:15:17 |
| 19 | BY MR. SWAMINATHAN: | 11:15:17 |
| 20 | Q  Good morning, Mr. Rutherford. | 11:15:18 |
| 21 | A  Good morning. | 11:15:20 |
| 22 | Q  We are here for a second day of your | 11:15:21 |
| 23 | deposition in the matter of Reyes and Solache | 11:15:23 |
| 24 | versus Guevara, et al; do you understand that? | 11:15:26 |

| | | |
|---|---|---|
| 1 | A  Yes. | 11:15:29 |
| 2 | Q  Yesterday we spoke about a number of | 11:15:29 |
| 3 | ground rules for the deposition, including the | 11:15:31 |
| 4 | idea that she's -- the court reporter is writing | 11:15:33 |
| 5 | down all of our questions and answers and so we | 11:15:37 |
| 6 | shouldn't talk over her.  Do you remember those | 11:15:39 |
| 7 | rules? | 11:15:42 |
| 8 | A  Yes. | 11:15:42 |
| 9 | Q  And one of those rules was if I ask you a | 11:15:42 |
| 10 | question and you don't understand it, please let | 11:15:45 |
| 11 | me know, and I will rephrase it.  That still | 11:15:47 |
| 12 | applies today; do you understand that? | 11:15:49 |
| 13 | A  Yes. | 11:15:51 |
| 14 | Q  And likewise, if you answer my question, | 11:15:51 |
| 15 | I'll assume you understood my question.  Still | 11:15:53 |
| 16 | fair? | 11:15:53 |
| 17 | A  Yes. | 11:15:55 |
| 18 | Q  Okay.  And if you need to take a break, | 11:15:55 |
| 19 | again, at any point, just let us know.  Just | 11:15:57 |
| 20 | answer any pending question and then we'll take a | 11:16:00 |
| 21 | break.  Sound good? | 11:16:02 |
| 22 | A  Yes. | 11:16:03 |
| 23 | Q  If you need to break for food or lunch at | 11:16:03 |
| 24 | any point, if you're feeling like, you know, | 11:16:06 |

| | | |
|---|---|---|
| 1 | there's any -- you have any need for water, food, | 11:16:08 |
| 2 | drink, whatever, let us know we'll take a break. | 11:16:12 |
| 3 | Sound good? | 11:16:15 |
| 4 | A  Yes. | 11:16:16 |
| 5 | Q  And you understand that you remain under | 11:16:16 |
| 6 | oath for today's deposition? | 11:16:19 |
| 7 | A  I was just sworn in. | 11:16:20 |
| 8 | Q  Okay.  I want to follow up on our | 11:16:22 |
| 9 | discussion about the layout of Area 5 yesterday. | 11:16:25 |
| 10 | You laid out for us -- you gave us a general sense | 11:16:30 |
| 11 | of what that area looks like up on the second | 11:16:33 |
| 12 | floor on Area 5.  And we talked about the fact | 11:16:36 |
| 13 | that along the west wall there are a number of | 11:16:38 |
| 14 | interrogation rooms along with some offices for | 11:16:43 |
| 15 | violent crimes supervisors, correct? | 11:16:47 |
| 16 | A  Yes. | 11:16:51 |
| 17 | MS. BARBER:  Objection to form of the | 11:16:51 |
| 18 | question.  Misstates testimony. | 11:16:53 |
| 19 | Q  The northwest corner was the office of the | 11:16:55 |
| 20 | commander, correct? | 11:16:58 |
| 21 | A  Yes. | 11:16:59 |
| 22 | Q  And if I understand correctly, along that | 11:16:59 |
| 23 | west wall, on the north side of the west wall, | 11:17:03 |
| 24 | there are some interrogation rooms and then | 11:17:07 |

| | | |
|---|---|---|
| 1 | there's a bathroom and some supervisor's office | 11:17:10 |
| 2 | and then along the south side of the west wall | 11:17:12 |
| 3 | there are also some interrogation rooms; is that | 11:17:16 |
| 4 | right? | 11:17:18 |
| 5 | MS. BARBER:  Objection to form. | 11:17:18 |
| 6 | A  Along -- let me explain it again. | 11:17:21 |
| 7 | Q  Please. | 11:17:23 |
| 8 | A  On the west wall -- | 11:17:23 |
| 9 | Q  Yeah. | 11:17:24 |
| 10 | A  Okay.  It starts with the youth offices. | 11:17:25 |
| 11 | Q  Are you talking about starting from the | 11:17:27 |
| 12 | south? | 11:17:30 |
| 13 | A  Starting from south going north. | 11:17:30 |
| 14 | Q  Okay. | 11:17:32 |
| 15 | A  That's where the youth offices are or | 11:17:33 |
| 16 | were.  It goes along.  You got some interview | 11:17:36 |
| 17 | rooms.  You run into the property crimes office. | 11:17:39 |
| 18 | You keep now going towards the front.  You'll have | 11:17:44 |
| 19 | a bathroom.  Then you'll have -- I believe that's | 11:17:47 |
| 20 | where the violent crimes offices were for the | 11:17:50 |
| 21 | supervisors and a couple three more interview | 11:17:53 |
| 22 | rooms I believe.  And then you have the hallway | 11:17:57 |
| 23 | that led down to -- it's not much of a hallway but | 11:17:59 |
| 24 | where the homicide office whatever was at and off | 11:18:02 |

| | | |
|---|---|---|
| 1 | that was the commander's office. | 11:18:07 |
| 2 | Q   Okay.  So there are some interview rooms | 11:18:09 |
| 3 | or interrogation rooms north of the bathrooms and | 11:18:13 |
| 4 | there are some that are south of the bathrooms, | 11:18:16 |
| 5 | correct? | 11:18:18 |
| 6 | MS. BARBER:  Objection, form.  Misstates | 11:18:19 |
| 7 | the witness's testimony. | 11:18:21 |
| 8 | A   That is correct. | 11:18:22 |
| 9 | Q   How far is it from the entrance to the | 11:18:23 |
| 10 | commander's office to those interrogation rooms on | 11:18:31 |
| 11 | the north side of the west wall? | 11:18:34 |
| 12 | MS. BARBER:  Objection to form.  Misstates | 11:18:36 |
| 13 | the witness's testimony. | 11:18:38 |
| 14 | A   How far is it from the front door to the | 11:18:41 |
| 15 | commander's office? | 11:18:43 |
| 16 | Q   Yeah, the door to the commander's office | 11:18:44 |
| 17 | to the interrogation rooms. | 11:18:47 |
| 18 | MS. BARBER:  Objection to form.  Misstates | 11:18:48 |
| 19 | the witness's testimony. | 11:18:50 |
| 20 | A   I never measured it.  Yeah, I couldn't -- | 11:18:51 |
| 21 | you know. | 11:18:58 |
| 22 | Q   Is it a few feet?  Is it dozens of feet? | 11:18:58 |
| 23 | MS. BARBER:  Objection to form, | 11:19:01 |
| 24 | foundation. | 11:19:03 |

1    A   I would guess 50 to a hundred feet.  But          11:19:05

2   again, I didn't measure it.                            11:19:08

3    Q   How far from -- that's to the north of the        11:19:09

4   interrogation rooms?                                   11:19:12

5    A   That's the commander's office.                    11:19:13

6    Q   Yeah, from the commander's office to the          11:19:15

7   interrogation rooms that are on the north side of      11:19:17

8   the west wall.                                         11:19:20

9       MS. BARBER:  Objection, form, foundation.          11:19:21

10   Misstates the witness's testimony.                    11:19:23

11    A   From the actual commander's office to the        11:19:28

12   farthest north interview room, maybe 25, 30 feet.     11:19:34

13    Q   And what about from the door -- there's a        11:19:42

14   door that goes out from the commander's office        11:19:43

15   that goes out to the main floor, correct?             11:19:50

16    A   You have the commander's office, his            11:19:50

17   private office, that opens up into where his staff    11:19:52

18   would sit.                                            11:19:57

19    Q   Okay.                                            11:19:58

20    A   And that opens up to basically the              11:20:00

21   hallway.  From that door, from the command staff      11:20:02

22   to the first interview room door, maybe 10,           11:20:05

23   12 feet.                                              11:20:09

24    Q   Okay.  From the -- where the homicide --         11:20:09

| | | |
|---|---|---|
| 1 | strike that. | 11:20:13 |
| 2 | Where the violent crimes supervisors sat, | 11:20:13 |
| 3 | from that office to the interrogation rooms on the | 11:20:18 |
| 4 | north side of the west wall, how far away? | 11:20:21 |
| 5 | MS. BARBER:  Objection, form, foundation, | 11:20:23 |
| 6 | misstates the witness's testimony. | 11:20:26 |
| 7 | A  Their doorway was, you know, rather short, | 11:20:31 |
| 8 | maybe ten -- maybe ten feet.  I don't know. | 11:20:34 |
| 9 | Q  Could be less? | 11:20:38 |
| 10 | A  This is all a guess.  Yeah, I never | 11:20:38 |
| 11 | measured it out because here's the interrogation | 11:20:41 |
| 12 | room.  There's a wall and there's their office. | 11:20:44 |
| 13 | Q  So one of the interrogation rooms shared a | 11:20:47 |
| 14 | wall with the sergeant's office, correct? | 11:20:50 |
| 15 | MS. BARBER:  Objection, form, misstates | 11:20:52 |
| 16 | the witness's testimony. | 11:20:54 |
| 17 | A  You know, I do believe so. | 11:20:55 |
| 18 | Q  And then the other rooms were right after | 11:20:57 |
| 19 | that first room? | 11:20:58 |
| 20 | A  Yeah. | 11:20:59 |
| 21 | MS. BARBER:  Objection, form. | 11:20:59 |
| 22 | Q  And then how far was it from the violent | 11:21:01 |
| 23 | crimes sergeant's office to the south | 11:21:05 |
| 24 | interrogation rooms on the west wall? | 11:21:07 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Objection, form, foundation, | 11:21:09 |
| 2 | misstates the witness's testimony, and calls for | 11:21:12 |
| 3 | speculation -- | 11:21:15 |
| 4 | THE REPORTER:  I'm sorry, I didn't hear | 11:21:15 |
| 5 | the end. | 11:21:15 |
| 6 | MS. BARBER:  And calls for speculation | 11:21:18 |
| 7 | based on the witness's answers to the previous | 11:21:20 |
| 8 | question. | 11:21:23 |
| 9 | A  I never measured it out, so 10, 15 feet to | 11:21:24 |
| 10 | the first one.  I'm not sure. | 11:21:29 |
| 11 | Q  Okay.  Excuse me.  We talked about | 11:21:31 |
| 12 | the fact that you worked on April 4th, your second | 11:21:47 |
| 13 | shift which is the day shift, correct?  Do I have | 11:21:52 |
| 14 | that wrong?  Sorry.  You worked -- what shift did | 11:21:55 |
| 15 | you work on April 4th? | 11:21:56 |
| 16 | A  I was on days. | 11:21:58 |
| 17 | Q  And what was the time of that shift? | 11:21:59 |
| 18 | A  I believe at that time it was 8:30 to | 11:22:01 |
| 19 | 5:00. | 11:22:06 |
| 20 | Q  And that was second watch? | 11:22:08 |
| 21 | A  Yes. | 11:22:15 |
| 22 | Q  On April 4th, 1998, that was the day that | 11:22:15 |
| 23 | you were involved in the investigation, the Soto | 11:22:19 |
| 24 | investigation, correct? | 11:22:21 |

| | | |
|---|---|---|
| 1 | A  Yes. | 11:22:22 |
| 2 | Q  Did you work overtime that day? | 11:22:22 |
| 3 | A  I don't remember. | 11:22:28 |
| 4 | Q  Did you work past the end of your shift | 11:22:29 |
| 5 | that day? | 11:22:32 |
| 6 | A  Again, that would have been working | 11:22:33 |
| 7 | overtime and I don't remember. | 11:22:37 |
| 8 | Q  If you worked past the end of your shift, | 11:22:37 |
| 9 | it would have been overtime; is that right? | 11:22:41 |
| 10 | A  Yes. | 11:22:42 |
| 11 | Q  And if you had overtime that day, where | 11:22:43 |
| 12 | would that be recorded? | 11:22:46 |
| 13 | A  That would be I imagine on the ANA sheets. | 11:22:47 |
| 14 | Q  Anywhere else? | 11:22:51 |
| 15 | A  I would fill out a time due slip.  Where | 11:22:57 |
| 16 | it's recorded I don't know. | 11:23:00 |
| 17 | Q  Did you keep track of that in your FOP | 11:23:02 |
| 18 | book? | 11:23:07 |
| 19 | A  Yes. | 11:23:07 |
| 20 | Q  So it would be in your FOP book, too? | 11:23:07 |
| 21 | A  Yes. | 11:23:10 |
| 22 | Q  Do you still have a copy of your FOP book? | 11:23:10 |
| 23 | A  As I stated yesterday, no. | 11:23:13 |
| 24 | Q  You got rid of those? | 11:23:15 |

| | | |
|---|---|---|
| 1 | A  Yeah. | 11:23:17 |
| 2 | MS. GOLDEN:  Form.  Go ahead. | 11:23:18 |
| 3 | A  Yeah, I never kept them.  It was just for | 11:23:22 |
| 4 | my records and that was it. | 11:23:24 |
| 5 | MS. GOLDEN:  You are talking about the | 11:23:26 |
| 6 | book from 1998, right? | 11:23:27 |
| 7 | MR. SWAMINATHAN:  Yes. | 11:23:29 |
| 8 | Q  Do you keep any of those books today, any | 11:23:30 |
| 9 | of your FOP books? | 11:23:32 |
| 10 | A  When I was active, no. | 11:23:36 |
| 11 | Q  Can you tell us what the ANA sheet is? | 11:23:41 |
| 12 | MS. GOLDEN:  What did you say? | 11:23:45 |
| 13 | MR. SWAMINATHAN:  ANA sheet. | 11:23:48 |
| 14 | A  Basically they filled out the sheet on who | 11:23:53 |
| 15 | was working that day and what beat they were | 11:23:56 |
| 16 | assigned. | 11:23:59 |
| 17 | Q  What does ANA stand for? | 11:23:59 |
| 18 | MS. BARBER:  Objection, foundation. | 11:24:02 |
| 19 | A  I'm not sure. | 11:24:05 |
| 20 | Q  Who filled that out?  Did you or did the | 11:24:07 |
| 21 | supervisor? | 11:24:09 |
| 22 | MS. BARBER:  Objection. | 11:24:10 |
| 23 | MS. GOLDEN:  What are we talking about? | 11:24:11 |
| 24 | MR. SWAMINATHAN:  The ANA sheet.  Go | 11:24:13 |

| | | |
|---|---|---|
| 1 | ahead. | 11:24:15 |
| 2 | MS. GOLDEN:  Any particular one? | 11:24:15 |
| 3 | MR. SWAMINATHAN:  No.  Please just | 11:24:17 |
| 4 | objection to form. | 11:24:18 |
| 5 | MS. GOLDEN:  It's not form.  It's | 11:24:19 |
| 6 | foundation. | 11:24:20 |
| 7 | MR. SWAMINATHAN:  Whatever you want it to | 11:24:21 |
| 8 | be. | 11:24:24 |
| 9 | Q  Who filled it out? | 11:24:24 |
| 10 | A  It wasn't me, so I'm not sure. | 11:24:25 |
| 11 | Q  Was it a sergeant? | 11:24:27 |
| 12 | MS. BARBER:  Objection, form, foundation. | 11:24:28 |
| 13 | A  As I said, I'm not sure. | 11:24:33 |
| 14 | Q  The Reyes case you indicated that it was | 11:24:35 |
| 15 | -- strike that. | 11:24:38 |
| 16 | The Soto investigation, you indicated was | 11:24:38 |
| 17 | -- had been in the press, correct? | 11:24:41 |
| 18 | A  I believe so, yes. | 11:24:42 |
| 19 | Q  There was some -- there was some media | 11:24:43 |
| 20 | attention on the case, fair? | 11:24:46 |
| 21 | A  Yes. | 11:24:48 |
| 22 | Q  Was it considered a heater case? | 11:24:48 |
| 23 | MS. GOLDEN:  Form. | 11:24:54 |
| 24 | A  What do you mean by heater case? | 11:24:58 |

1        Q   Is that term you guys used, heater?          11:25:00

2        A   I didn't use it.                             11:25:03

3        Q   Was it a term that you ever used in the      11:25:04

4    Chicago Police Department?                           11:25:06

5        A   I've heard it used by other people, but I    11:25:07

6    don't recall policemen really using it.              11:25:12

7        Q   Who did you hear using it?                   11:25:14

8        A   You know, the press.                         11:25:17

9        Q   Was there any -- were there any term for     11:25:19

10   cases in the police department where it was like     11:25:22

11   this is an important case.  We've got to place       11:25:24

12   some real focus on this case?                        11:25:30

13       MS. BARBER:  Objection, form, foundation.        11:25:32

14       A   All murder cases were important.             11:25:35

15   Obviously we have two tenders missing, two young     11:25:37

16   kids missing.  That's very important.  And as --     11:25:42

17   so I don't know if -- to me no one murder wasn't     11:25:51

18   more important than the other murder.                11:25:55

19       Q   Was there extra attention being paid to      11:25:57

20   this case?                                           11:25:59

21       MS. GOLDEN:  Foundation, form.                   11:26:00

22       A   I don't know if there was at the             11:26:05

23   beginning.  I wasn't there.                          11:26:07

24       Q   At the point you were involved on            11:26:09

| | | |
|---|---|---|
| 1 | April 4th, did you understand there was extra | 11:26:10 |
| 2 | attention being paid to that case? | 11:26:13 |
| 3 | MS. GOLDEN:  Form. | 11:26:15 |
| 4 | A   Again, there was people in custody, so | 11:26:16 |
| 5 | yes, things would speed up a little bit. | 11:26:20 |
| 6 | Q   Was the Soto investigation on April 4th a | 11:26:22 |
| 7 | case that was a priority in the office? | 11:26:26 |
| 8 | A   Yes. | 11:26:29 |
| 9 | Q   Were you working on any other cases that | 11:26:30 |
| 10 | day or were you focused on the Soto investigation | 11:26:33 |
| 11 | on that shift? | 11:26:38 |
| 12 | A   I wasn't assigned to any other cases I | 11:26:39 |
| 13 | don't believe.  I don't remember exactly. | 11:26:42 |
| 14 | Q   So your -- strike that.  Go ahead. | 11:26:44 |
| 15 | A   I worked on the Soto case.  Now, when I | 11:26:47 |
| 16 | had some downtime on the Soto case, I don't | 11:26:52 |
| 17 | remember what my activities were. | 11:26:55 |
| 18 | Q   If you had downtime, would you use that | 11:26:56 |
| 19 | time to write reports, those kinds of things? | 11:26:59 |
| 20 | A   I might write some reports on other cases | 11:27:02 |
| 21 | that I had, that, you know, other investigations, | 11:27:05 |
| 22 | whatever, yes. | 11:27:07 |
| 23 | Q   Do you have any -- as you understand it, | 11:27:08 |
| 24 | you weren't assigned to any other cases that day; | 11:27:13 |

| | | |
|---|---|---|
| 1 | do I have that right? | 11:27:16 |
| 2 | MS. GOLDEN:  Form. | 11:27:17 |
| 3 | A  You know, if I was assigned a case a week | 11:27:20 |
| 4 | earlier, I was still assigned to that case, okay? | 11:27:24 |
| 5 | They didn't come in that day give me something | 11:27:26 |
| 6 | else to do that I remember. | 11:27:28 |
| 7 | Q  Do you have any reason to believe you were | 11:27:29 |
| 8 | working on anything other than the Soto case on | 11:27:32 |
| 9 | that shift on April 4th? | 11:27:35 |
| 10 | MS. GOLDEN:  Asked and answered. | 11:27:36 |
| 11 | A  Again, I don't remember. | 11:27:38 |
| 12 | Q  Who is allowed to conduct interviews or | 11:27:39 |
| 13 | interrogations of witnesses in homicide cases? | 11:27:43 |
| 14 | MS. GOLDEN:  Form. | 11:27:46 |
| 15 | MS. BARBER:  Objection, form. | 11:27:47 |
| 16 | A  I really don't understand what you're | 11:27:52 |
| 17 | asking. | 11:27:55 |
| 18 | Q  When witnesses are -- let's do suspects. | 11:27:56 |
| 19 | A  Okay. | 11:27:59 |
| 20 | Q  If a suspect is interviewed in a homicide | 11:28:00 |
| 21 | case, detectives can obviously conduct those | 11:28:03 |
| 22 | interrogations, correct? | 11:28:06 |
| 23 | A  That's correct. | 11:28:07 |
| 24 | Q  Did anyone else conduct interrogations of | 11:28:07 |

1    homicide suspects other than detectives?                 11:28:11

2         MS. GOLDEN:   Form.                                  11:28:13

3      A  I can't tell a sergeant what he can and             11:28:17

4    can't do.  I can't tell a lieutenant what he can         11:28:20

5    and can't do in the chain of command.  Would a           11:28:24

6    patrolman do it?  No.  So if that answers your           11:28:29

7    question.                                                11:28:31

8      Q  So in terms of putting aside the                    11:28:32

9    supervisors who were higher on the chain of              11:28:33

10   command, you have patrol officers, you have gang         11:28:36

11   crime specialists, you got detectives, you have          11:28:40

12   youth officers.  You've got a number of different        11:28:43

13   people who are not in supervisor roles.  With me         11:28:47

14   so far?                                                  11:28:50

15     A  Yes.                                                11:28:50

16     Q  Who can conduct interrogations of suspects          11:28:50

17   in a homicide case?                                      11:28:54

18        MS. GOLDEN:   Form, foundation, asked and           11:28:55

19   answered.                                                11:28:59

20     A  Again, it all depends on any specific               11:29:00

21   case.  Who can interview?  Obviously, you know, it       11:29:04

22   depends.                                                 11:29:12

23     Q  If a suspect is being interviewed in a              11:29:13

24   homicide case, is there a need to be a homicide          11:29:16

1   detective participating in that interrogation?                    11:29:19

2           MS. BARBER:  Objection, form.                             11:29:21

3      A  I would say a homicide investigator would                   11:29:24

4   be leading the investigation into it, yes.                       11:29:29

5      Q  And so you would expect that a homicide                     11:29:31

6   investigator would be involved in interrogating                  11:29:33

7   any suspects in a homicide case; is that fair?                   11:29:36

8           MS. GOLDEN:  Form.                                        11:29:40

9      A  About the homicide I would say that would                   11:29:41

10  be fair to say.                                                   11:29:45

11     Q  And I think I might have misspoke when I                    11:29:46

12  asked this question.  You would expect that a                    11:29:49

13  homicide detective would be involved in                          11:29:51

14  interrogating any suspects in a homicide case; is                11:29:53

15  that fair?                                                        11:29:55

16     A  In that homicide case, yes.                                 11:29:56

17     Q  Could gang crime specialists conduct                        11:29:58

18  interrogations of suspects in a homicide case on                 11:30:04

19  their own?                                                        11:30:08

20          MS. GOLDEN:  Foundation.                                  11:30:08

21     A  Again, if you're asking me could they walk                  11:30:11

22  up in the office, walk right in the room and do                  11:30:14

23  the interview without talking to a sergeant or the              11:30:16

24  detective handling the case, that would be                       11:30:19

1    improper I would say.                              11:30:23

2        Q  You know of any instances in which gang    11:30:24

3    crime specialists have conducted interrogations of 11:30:27

4    homicide suspects on their own without a homicide   11:30:30

5    detective being present for the interrogation?      11:30:33

6        MS. GOLDEN:  I'm sorry.  We don't have any      11:30:36

7    gang crime specialists in this case, so I'm         11:30:38

8    objecting to relevance.                             11:30:40

9        Q  Go ahead.                                    11:30:41

10       MS. BARBER:  Objection to the form as           11:30:42

11   well.                                               11:30:44

12       A  I don't know of any.                         11:30:45

13       Q  Could a youth officer conduct an            11:30:45

14   interrogation of a suspect in a homicide case       11:30:49

15   without a homicide detective being present?         11:30:52

16       MS. BARBER:  Objection to the form of the       11:30:54

17   question.                                           11:30:56

18       MS. GOLDEN:  Foundation.                        11:30:59

19       A  When you say -- yes, he could, I mean, is   11:31:00

20   it possible he could do it?  Sure.  Is it proper    11:31:05

21   for him to go in on his own, start doing the        11:31:10

22   investigation while a suspect is in custody?  No,   11:31:13

23   that wouldn't be proper without talking to the      11:31:16

24   supervisor or the detective doing the               11:31:19

1    investigation.                                        11:31:23

2        Q   Typically, if there is going to be an        11:31:23

3    interrogation -- strike that.                         11:31:27

4        Are you aware of any instances in which a         11:31:28

5    youth officer conducted an interrogation of a         11:31:30

6    homicide suspect on their own?                        11:31:33

7        MS. GOLDEN:   Form.                               11:31:36

8        A   Without any knowledge of -- no, without      11:31:37

9    the knowledge of a detective or a sergeant            11:31:44

10   involved, no.                                         11:31:47

11       Q   Are you aware of any instances where a        11:31:48

12   detective or a sergeant said, hey, youth officer,     11:31:49

13   go ahead and interrogate my homicide suspect          11:31:52

14   without any homicide detective being present?         11:31:55

15       MS. GOLDEN:   Form.                               11:31:57

16       A   I don't know of any.                          11:32:00

17       Q   Have you ever heard of that happening?        11:32:02

18       MS. GOLDEN:   Form.                               11:32:04

19       A   I don't recall it happening.                  11:32:05

20       Q   Have you ever heard of it happen where a      11:32:07

21   homicide detective said, hey, gang crime              11:32:10

22   specialist, go interrogate my homicide suspect        11:32:12

23   without any homicide detective present?               11:32:15

24       MS. GOLDEN:   Form.                               11:32:16

1   A  I don't recall it ever happening.                        11:32:19

2   Q  Would you say that every instance of an                  11:32:20

3   interrogation of a homicide suspect that you're             11:32:23

4   aware there was at least one homicide detective             11:32:25

5   present for the interrogation?                              11:32:28

6       MS. BARBER:  Objection to the form of the               11:32:29

7   question.  I don't understand why it continually            11:32:30

8   has to be phrased this way.                                 11:32:34

9   Q  Go ahead.                                                11:32:36

10      MS. GOLDEN:  Foundation.                                11:32:37

11  A  Any cases where I was involved in, I don't               11:32:38

12  know where a specialist interviewed a person in             11:32:42

13  custody while I was there.                                  11:32:44

14  Q  While you were there?                                    11:32:50

15  A  Yes.                                                     11:32:51

16  Q  Did you sometimes conduct interrogations                11:32:52

17  where you had a suspect who didn't speak English?           11:33:18

18  A  Yes.                                                     11:33:23

19  Q  Where you need to use somebody else as a                11:33:24

20  translator?                                                 11:33:27

21  A  Yes.                                                     11:33:28

22  Q  Any instances where you sometimes use                   11:33:28

23  police officers as a translator?                            11:33:31

24  A  Most of the time, yes.                                   11:33:34

1      Q  And where you used another police officer          11:33:35

2   as a translator, was it often somebody who was not      11:33:38

3   a homicide detective?                                   11:33:41

4         MS. GOLDEN:  Form.                                 11:33:42

5      A  If -- it all depends who was available to          11:33:46

6   do -- translate.  I don't recall any homicide           11:33:54

7   investigators that spoke Polish or any detectives       11:33:57

8   that really spoke Polish that I know of.  So if I       11:33:59

9   had a Polish guy, then we'd have a patrolman who        11:34:02

10  was fluid in Polish help us with the translation.       11:34:06

11     Q  It was common to have translators who were        11:34:09

12  police officers who were not detectives; is that        11:34:14

13  fair?                                                   11:34:17

14        MS. GOLDEN:  Form.                                 11:34:17

15        MS. BARBER:  Foundation.                           11:34:18

16     A  I mean, there was list of translators             11:34:21

17  supposedly and you could call and find out if you       11:34:26

18  needed one.  If you didn't know of any available,       11:34:29

19  you could call downstairs -- if there was no            11:34:32

20  detective that spoke Spanish on the floor, you can      11:34:35

21  call to the 25th District and see if there's a          11:34:37

22  Spanish officer that would come in and help you.        11:34:39

23     Q  If you had somebody who was translating           11:34:42

24  for you who is not a detective assisting your           11:34:46

| | | |
|---|---|---|
| 1 | interrogations of suspects, could the nondetective | 11:34:49 |
| 2 | translator conduct an interrogation of a suspect | 11:34:55 |
| 3 | on their own? | 11:34:58 |
| 4 | MS. GOLDEN:  Form. | 11:34:59 |
| 5 | MS. BARBER:  Object to the form and | 11:35:00 |
| 6 | foundation of that question use of the word | 11:35:01 |
| 7 | interrogation.  I think it's argumentative. | 11:35:04 |
| 8 | Q  Go ahead. | 11:35:08 |
| 9 | A  Would the inter -- would the person | 11:35:09 |
| 10 | brought in to translate do the interrogation | 11:35:12 |
| 11 | without you there?  I don't know why that would | 11:35:15 |
| 12 | happen. | 11:35:18 |
| 13 | Q  Okay.  Now, in your experience if somebody | 11:35:18 |
| 14 | was serving as a translator who is not a | 11:35:22 |
| 15 | detective, would it be permissible for them to go | 11:35:25 |
| 16 | in and conduct an interview of a homicide suspect | 11:35:27 |
| 17 | without a homicide detective present? | 11:35:30 |
| 18 | MS. BARBER:  Can you read that question | 11:35:45 |
| 19 | back, please. | 11:35:46 |
| 20 | (Record read back by the | 11:35:46 |
| 21 | reporter.) | 11:35:48 |
| 22 | MS. GOLDEN:  Incomplete hypothetical. | 11:35:48 |
| 23 | MS. BARBER:  Form. | 11:35:50 |
| 24 | A  I don't know if it ever happened.  So, I | 11:35:52 |

1    mean, do I think it would be proper?  No.  But I    11:35:55

2    don't recall it ever happening.    11:35:58

3        Q  In this case Mr. Trevino served as a    11:35:59

4    translator for you while during this    11:36:07

5    investigation; is that true?    11:36:09

6        A  Yes.    11:36:10

7        Q  Was Mr. Trevino someone who on his own    11:36:11

8    conduct interrogations of homicide suspects?    11:36:17

9        MS. GOLDEN:  Foundation.    11:36:20

10        MS. BARBER:  Form.    11:36:22

11        A  Without permission I don't believe he    11:36:23

12    would have.    11:36:26

13        Q  Did you at any point give him permission    11:36:27

14    to interrogate any of the homicide suspects in    11:36:29

15    this case on his own?    11:36:31

16        MS. BARBER:  Form.    11:36:33

17        A  No, I don't believe so.    11:36:37

18        Q  Have you ever given Mr. Trevino permission    11:36:38

19    to conduct an interrogation of a homicide suspect    11:36:42

20    on his own?    11:36:45

21        MS. BARBER:  Form.    11:36:46

22        A  Have I?  No.    11:36:47

23        Q  And if he served as -- strike that.    11:36:48

24        The fact that he served as a translator in    11:36:50

| | | |
|---|---|---|
| 1 | this case, does that give him permission to | 11:36:54 |
| 2 | interrogate a suspect on his own? | 11:36:57 |
| 3 |     MS. GOLDEN:  Form. | 11:36:59 |
| 4 |     MS. BARBER:  Form. | 11:36:59 |
| 5 |   A  I -- there would be no reason for him to | 11:37:04 |
| 6 | do it. | 11:37:06 |
| 7 |   Q  Was the fact that he was serving as a -- | 11:37:06 |
| 8 | strike that. | 11:37:09 |
| 9 |     Did you permit Mr. Trevino to interrogate | 11:37:10 |
| 10 | any of the suspects in this case on his own given | 11:37:17 |
| 11 | that he was serving in the role of translator? | 11:37:19 |
| 12 |   A  His role as a translator would be to -- we | 11:37:22 |
| 13 | would ask the questions.  He would -- you know, he | 11:37:29 |
| 14 | would ask the question in Spanish, get the answer | 11:37:31 |
| 15 | in Spanish and translate it back to us in English. | 11:37:35 |
| 16 |   Q  Was that the extent of his role in this | 11:37:38 |
| 17 | case? | 11:37:41 |
| 18 |     MS. GOLDEN:  Foundation. | 11:37:41 |
| 19 |   A  On the day that I was there, as far as I | 11:37:44 |
| 20 | know, yes. | 11:37:46 |
| 21 |   Q  Okay.  We talked yesterday about things | 11:37:47 |
| 22 | you required to document during the course of a | 11:37:57 |
| 23 | homicide investigation; do you recall that? | 11:38:01 |
| 24 |   A  Yes. | 11:38:03 |

1    Q  One of the things we talked about was                    11:38:03

2    documenting information that a witness told you              11:38:06

3    about the case or the crime, correct?                       11:38:07

4    A  Yes.                                                     11:38:12

5    Q  If a suspect made a drawing of a crime                   11:38:13

6    scene, could that be incriminating evidence?               11:38:17

7         MS. BARBER:  Objection, form, foundation,             11:38:21

8    incomplete hypothetical.                                    11:38:23

9         MS. GOLDEN:  Incriminating, okay.                     11:38:25

10        THE WITNESS:  Um --                                   11:38:28

11        MS. GOLDEN:  Asked and answered.                      11:38:29

12   A  Could it be incriminating?  Depends on                  11:38:32

13   what he drew I guess.                                       11:38:35

14   Q  If a suspect laid out visually the layout               11:38:36

15   of where a crime occurred or how they committed            11:38:40

16   the crime, would you agree with me that could be           11:38:42

17   potentially incriminating?                                 11:38:44

18        MS. BARBER:  Objection, form, compound.               11:38:46

19   A  Yes.                                                     11:38:49

20        MS. GOLDEN:  Asked and answered.                      11:38:49

21   Q  If you hadn't given that witness -- strike              11:38:51

22   that.                                                       11:38:53

23        And if you hadn't given that suspect any              11:38:53

24   information about the crime scene or how the crime         11:38:56

| | | |
|---|---|---|
| 1 | occurred, that could be particularly powerful | 11:38:59 |
| 2 | evidence; would you agree with that? | 11:39:01 |
| 3 | MS. BARBER:  Objection, form, foundation, | 11:39:02 |
| 4 | incomplete hypothetical. | 11:39:05 |
| 5 | A  It all depends what he drew. | 11:39:07 |
| 6 | Q  Right.  If it was consistent with what was | 11:39:09 |
| 7 | -- what actually happened or how the crime | 11:39:12 |
| 8 | occurred, that could be powerful evidence; do you | 11:39:14 |
| 9 | agree? | 11:39:16 |
| 10 | MS. BARBER:  Same objections. | 11:39:17 |
| 11 | A  Powerful, I don't know.  It would be | 11:39:19 |
| 12 | evidence. | 11:39:22 |
| 13 | Q  Is it evidence that you would document, if | 11:39:22 |
| 14 | you had a witness who was drawing for you how the | 11:39:24 |
| 15 | crime occurred? | 11:39:29 |
| 16 | A  Would I document it?  Probably. | 11:39:32 |
| 17 | Q  If they drew something, would you preserve | 11:39:35 |
| 18 | it? | 11:39:38 |
| 19 | MS. GOLDEN:  Form, foundation. | 11:39:38 |
| 20 | A  If it was possible. | 11:39:42 |
| 21 | Q  Yes? | 11:39:44 |
| 22 | A  If it was possible. | 11:39:45 |
| 23 | Q  Okay.  And if -- even they didn't -- even | 11:39:46 |
| 24 | if it wasn't something that you could preserve, if | 11:39:50 |

| | | |
|---|---|---|
| 1 | you took notes or wrote a supplementary report | 11:39:53 |
| 2 | about your interrogation, would you indicate that | 11:39:56 |
| 3 | the individual had been able to visually lay out | 11:39:58 |
| 4 | the crime scene? | 11:40:02 |
| 5 | MS. GOLDEN:  Form. | 11:40:05 |
| 6 | A  If -- I would -- I imagine I'd try to | 11:40:09 |
| 7 | document it in the report. | 11:40:15 |
| 8 | Q  That could be potentially important | 11:40:17 |
| 9 | evidence; is that fair? | 11:40:19 |
| 10 | MS. BARBER:  Objection, form, foundation, | 11:40:21 |
| 11 | incomplete hypothetical. | 11:40:23 |
| 12 | A  It would be evidence maybe. | 11:40:24 |
| 13 | Q  And you would try to preserve it? | 11:40:26 |
| 14 | MS. GOLDEN:  Form.  What -- | 11:40:29 |
| 15 | MR. SWAMINATHAN:  Objection to form. | 11:40:35 |
| 16 | Q  Go ahead. | 11:40:37 |
| 17 | A  Again, if it was possible to preserve, we | 11:40:37 |
| 18 | try.  I mean, if it was on a piece of paper, we | 11:40:40 |
| 19 | might inventory the piece of paper. | 11:40:44 |
| 20 | Q  And just as you would try to write reports | 11:40:45 |
| 21 | that communicate the information a witness told | 11:40:48 |
| 22 | you, if a witness made a drawing for you or was | 11:40:50 |
| 23 | able to visually depict for you a scene, you would | 11:40:54 |
| 24 | document that as well; is that fair? | 11:40:56 |

1       MS. GOLDEN:  Asked and answered.                11:40:57

2    A  If they made a drawing, we try to save it,      11:41:01

3  yes.                                                 11:41:04

4    Q  Would you also in your own report indicate      11:41:04

5  that the person made a drawing?                      11:41:07

6       MS. GOLDEN:  Asked and answered.                11:41:09

7    A  If I wrote out the report and he made the       11:41:12

8  drawing for me, I would indicate that in the         11:41:15

9  report.                                              11:41:17

10   Q  Okay.  Now, if someone acts out a crime         11:41:17

11 during the course of an interrogation, is that       11:41:20

12 something you would document?                         11:41:22

13      MS. GOLDEN:  Form.                               11:41:25

14   A  Again, I'd -- you'd write it out maybe in       11:41:29

15 the report, yes.                                      11:41:36

16   Q  Maybe or you would?                             11:41:36

17      MS. GOLDEN:  Incomplete hypothetical, form      11:41:37

18 of the question.                                      11:41:39

19   A  It all depends on exactly what he did, you      11:41:44

20 know, how he demonstrated it.                         11:41:47

21   Q  So if somebody -- strike that.                  11:41:49

22      If a homicide suspect demonstrated for you      11:41:51

23 how they committed the crime, are you saying in       11:41:54

24 some instances you wouldn't document that in your     11:41:57

1   report?                                           11:42:00

2        MS. GOLDEN:  Form, same objections.         11:42:01

3     A  Well, again, it all depends.  If you're     11:42:07

4   saying the guy raised a gun, pointed a gun, did   11:42:12

5   that (indicating), would I maybe say during the   11:42:15

6   interview the suspect raised his hand?  I might   11:42:19

7   demonstrate -- write it that way.  If he stabbed  11:42:24

8   -- if he showed stabbing, I might write he showed 11:42:31

9   how he stabbed them.                              11:42:34

10    Q  Were you ever -- if somebody -- strike       11:42:34

11  that.                                             11:42:37

12       MS. GOLDEN:  Were you done with your         11:42:37

13  question?                                         11:42:39

14       THE WITNESS:  Yes.                           11:42:40

15       MS. GOLDEN:  Or your answer.                 11:42:41

16    Q  If the homicide suspect showed you how       11:42:43

17  they stabbed them, would you ever omit that from  11:42:45

18  your report?                                      11:42:48

19       MS. GOLDEN:  Form and foundation.            11:42:49

20    A  I don't recall anybody actually showing me   11:42:59

21  exactly how it was done.  So it's hard for me to  11:43:02

22  say.  I don't think I would omit it, but I would  11:43:07

23  try to record it somehow.                         11:43:13

24    Q  Now, if -- whether or not you would          11:43:15

| | |
|---|---|
| 1 | document it -- strike that.  Let me be clear. | 11:43:25 |
| 2 | If a homicide suspect demonstrated for you | 11:43:28 |
| 3 | how they stabbed the victim, is the issue of | 11:43:31 |
| 4 | whether or not you would document it, does it | 11:43:36 |
| 5 | depend on whether what they demonstrated was | 11:43:38 |
| 6 | consistent with the evidence or inconsistent with | 11:43:42 |
| 7 | the evidence? | 11:43:45 |
| 8 | MS. GOLDEN:  Form. | 11:43:45 |
| 9 | MS. BARBER:  Objection. | 11:43:47 |
| 10 | MS. GOLDEN:  Foundation. | 11:43:48 |
| 11 | MS. BARBER:  Form, foundation, incomplete | 11:43:49 |
| 12 | hypothetical.  I'm not clear what you're asking, | 11:43:52 |
| 13 | what the it is in that question. | 11:43:54 |
| 14 | Q  Go ahead. | 11:43:57 |
| 15 | A  Whether it had -- could you ask that | 11:43:58 |
| 16 | again? | 11:44:08 |
| 17 | Q  Yes. | 11:44:08 |
| 18 | In terms of whether or not you would | 11:44:10 |
| 19 | document when a suspect showed you how they | 11:44:12 |
| 20 | committed the stabbing, would it depend on whether | 11:44:15 |
| 21 | the demonstration they gave you was consistent | 11:44:19 |
| 22 | with the evidence you knew or inconsistent with | 11:44:21 |
| 23 | the evidence or does that make no difference at | 11:44:25 |
| 24 | all? | 11:44:27 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Same objections. | 11:44:27 |
| 2 | A  That would have no bearing.  I mean, if he | 11:44:29 |
| 3 | showed how he stabbed him, I'd write how he | 11:44:31 |
| 4 | stabbed him. | 11:44:33 |
| 5 | Q  It would be relevant if it was consistent | 11:44:33 |
| 6 | with -- | 11:44:35 |
| 7 | MS. GOLDEN:  I'm going to ask you to just | 11:44:35 |
| 8 | slow down because I'm not sure he's finished with | 11:44:38 |
| 9 | his answers -- | 11:44:41 |
| 10 | MR. SWAMINATHAN:  Were you finished? | 11:44:42 |
| 11 | MS. GOLDEN:  Would you stop -- | 11:44:44 |
| 12 | MR. SWAMINATHAN:  Go ahead. | 11:44:44 |
| 13 | MS. GOLDEN:  I'm going to collect myself. | 11:44:45 |
| 14 | You keep interrupting me.  I find it dismissive | 11:44:48 |
| 15 | and insulting. | 11:44:52 |
| 16 | MR. SWAMINATHAN:  I'm sorry. | 11:44:53 |
| 17 | MS. GOLDEN:  Would you please -- you just | 11:44:55 |
| 18 | did it again. | 11:44:55 |
| 19 | MR. SWAMINATHAN:  Go ahead. | 11:44:55 |
| 20 | MS. GOLDEN:  Please stop interrupting me. | 11:44:56 |
| 21 | I'm not sure he's finished with his answer and | 11:44:56 |
| 22 | you're starting another question.  If you just | 11:44:59 |
| 23 | give him a second to I think finish his answer | 11:45:00 |
| 24 | before you start your next question, I'd | 11:45:03 |

| | | |
|---|---|---|
| 1 | appreciate it. | 11:45:03 |
| 2 | Q  All right.  Are you finished with your | 11:45:06 |
| 3 | answer? | 11:45:07 |
| 4 | A  Yes. | 11:45:07 |
| 5 | MR. SWAMINATHAN:  Now, that's about the | 11:45:08 |
| 6 | fifth time that he said -- you said you didn't let | 11:45:09 |
| 7 | him finish his answer, and he was finished with | 11:45:12 |
| 8 | his answer.  And you have made a number of | 11:45:15 |
| 9 | objections that involved speaking objections | 11:45:16 |
| 10 | beyond saying objection to form which you suggest | 11:45:18 |
| 11 | the question makes no sense and he's been able to | 11:45:21 |
| 12 | answer the question just fine.  That's happened | 11:45:22 |
| 13 | about a hundred times. | 11:45:24 |
| 14 | MS. BARBER:  That has not happened at | 11:45:26 |
| 15 | all -- | 11:45:26 |
| 16 | MR. SWAMINATHAN:  So please -- | 11:45:26 |
| 17 | MS. BARBER:  Let alone -- | 11:45:27 |
| 18 | MR. SWAMINATHAN:  It's happened a hundred | 11:45:27 |
| 19 | times or more in this deposition where you said | 11:45:28 |
| 20 | and the question doesn't make sense, it's not | 11:45:30 |
| 21 | clear what it is and blah, blah, blah. | 11:45:33 |
| 22 | MS. BARBER:  I did just say that. | 11:45:34 |
| 23 | MR. SWAMINATHAN:  And he is able to answer | 11:45:36 |
| 24 | the question.  That has happened repeatedly in | 11:45:38 |

| | | |
|---|---|---|
| 1 | this deposition.  Objection to form.  Why can't we | 11:45:41 |
| 2 | just say objection to form?  Why do you have to | 11:45:43 |
| 3 | then add that I don't know what this means and I | 11:45:46 |
| 4 | don't know what that means?  Please, can you -- is | 11:45:48 |
| 5 | there a reason you can't just say objection to | 11:45:49 |
| 6 | form? | 11:45:51 |
| 7 | MS. GOLDEN:  I didn't -- | 11:45:51 |
| 8 | MS. BARBER:  Are you done yelling at me? | 11:45:52 |
| 9 | MR. SWAMINATHAN:  I'm not yelling -- | 11:45:55 |
| 10 | MS. BARBER:  Are you done yelling at me? | 11:45:55 |
| 11 | MS. SUSLER:  There's no one yelling. | 11:45:57 |
| 12 | MS. BARBER:  I'm not interested -- | 11:45:59 |
| 13 | MR. SWAMINATHAN:  I'm not yelling at you. | 11:46:01 |
| 14 | What I'm saying is I'm getting frustrated.  I'm | 11:46:01 |
| 15 | asking, can you tell me why it's necessary to say | 11:46:03 |
| 16 | more than just objection to form? | 11:46:05 |
| 17 | MS. BARBER:  Because I think that the | 11:46:08 |
| 18 | question called for an objection and I gave the | 11:46:10 |
| 19 | objection that I saw fit and I have not done | 11:46:14 |
| 20 | anything to interfere with your deposition.  I | 11:46:18 |
| 21 | have not done anything a hundred times.  I'm | 11:46:20 |
| 22 | asking you -- she's asking you to slow down. | 11:46:23 |
| 23 | She's asking you not to interrupt the witness, not | 11:46:25 |
| 24 | to interrupt her, not to interrupt me. | 11:46:29 |

| | | |
|---|---|---|
| 1 | MR. SWAMINATHAN:  I'm going -- | 11:46:29 |
| 2 | MS. BARBER:  And I need to know what the | 11:46:30 |
| 3 | questions are that you're asking. | 11:46:31 |
| 4 | MR. SWAMINATHAN:  I'm going to ask it one | 11:46:33 |
| 5 | more time.  Is there a reason that it is necessary | 11:46:35 |
| 6 | to say something more than objection to form?  I | 11:46:38 |
| 7 | want to be clear on the record.  Is there a reason | 11:46:40 |
| 8 | that you need to say more than objection to form | 11:46:42 |
| 9 | when you have a problem with the form -- | 11:46:44 |
| 10 | MS. BARBER:  Yes, because -- | 11:46:47 |
| 11 | MR. SWAMINATHAN:  What is it? | 11:46:47 |
| 12 | MS. BARBER:  Because you are continuing to | 11:46:48 |
| 13 | -- it's the same problem.  It's the same -- | 11:46:48 |
| 14 | MR. SWAMINATHAN:  Why does it require you | 11:46:50 |
| 15 | to say more than objection to form? | 11:46:52 |
| 16 | MS. BARBER:  Because you are continuing to | 11:46:54 |
| 17 | ask an inappropriate question. | 11:46:55 |
| 18 | MR. SWAMINATHAN:  Then why does it require | 11:46:57 |
| 19 | more than objection to form -- | 11:46:59 |
| 20 | MS. BARBER:  I've given -- | 11:47:00 |
| 21 | MR. SWAMINATHAN:  -- objection to form. | 11:47:01 |
| 22 | MS. BARBER:  I've given you an explanation | 11:47:03 |
| 23 | I'm done.  Are you done yelling at me? | 11:47:05 |
| 24 | MR. SWAMINATHAN:  I'm not yelling at you. | 11:47:07 |

| | | |
|---|---|---|
| 1 | What I'm saying to you is this, I am going to have | 11:47:09 |
| 2 | a serious problem if during the course of this | 11:47:12 |
| 3 | deposition it continues to be the case that every | 11:47:14 |
| 4 | objection to form comes with additional language | 11:47:17 |
| 5 | beyond objection to form. | 11:47:21 |
| 6 | MS. BARBER:  You -- | 11:47:21 |
| 7 | MR. SWAMINATHAN:  Proper objections -- let | 11:47:22 |
| 8 | me finish.  Proper objections to the deposition | 11:47:22 |
| 9 | are objection to form and objection to foundation. | 11:47:24 |
| 10 | That's it. | 11:47:26 |
| 11 | MS. GOLDEN:  That's not true. | 11:47:27 |
| 12 | MS. BARBER:  Anand, you're not living in | 11:47:28 |
| 13 | reality if that's what you think happened.  It's | 11:47:31 |
| 14 | just not true.  I'm ready to move on, are you? | 11:47:34 |
| 15 | MR. SWAMINATHAN:  I'm ready to move on. | 11:47:38 |
| 16 | Hopefully we don't have another issue. | 11:47:39 |
| 17 | MS. GOLDEN:  Well, back to my issue which | 11:47:41 |
| 18 | was can we just go a little slower so I'm sure | 11:47:43 |
| 19 | he's done with his answer before you start the | 11:47:46 |
| 20 | next question? | 11:47:49 |
| 21 | MR. SWAMINATHAN:  Sure.  Could you go back | 11:47:49 |
| 22 | to my last question. | 11:48:43 |
| 23 | (Record read back by the | 11:48:43 |
| 24 | reporter.) | 11:48:49 |

1    BY MR. SWAMINATHAN:                                    11:48:49

2        Q   If there was -- strike that.                   11:48:49

3            If the suspect demonstrated how they           11:48:51

4    committed the stabbing and it was consistent with      11:48:53

5    the evidence, that would be relevant and pertinent     11:48:56

6    information, correct?                                  11:48:59

7            MS. GOLDEN:   Form.                            11:49:00

8        A   Yes.                                           11:49:05

9        Q   And you were trained to document that type     11:49:05

10   of thing, correct?                                     11:49:07

11           MS. GOLDEN:   Form.                            11:49:08

12       A   Again, you summarize it in your report.        11:49:10

13       Q   If the suspect demonstrated for you how        11:49:11

14   they committed the stabbing and it was                 11:49:15

15   inconsistent with the evidence, that would also be     11:49:17

16   relevant and pertinent, correct?                       11:49:21

17       A   Yes.                                           11:49:22

18       Q   And you were trained to document that type     11:49:23

19   of information in your reports, correct?               11:49:27

20       A   Put in your report, yes.                       11:49:28

21       Q   Based on your review of the reports in         11:49:29

22   this case, have you seen any indication in the         11:49:42

23   supplementary reports or GPR's that during the         11:49:45

24   interview of Adriana Mejia that you participated       11:49:48

1    in she made any drawing or demonstration of how          11:49:52

2    the crime occurred?                                      11:49:55

3        MS. GOLDEN:  Foundation.                             11:49:58

4      A  I really don't recall.                              11:50:01

5      Q  When you reviewed the GPR related to the            11:50:03

6    interview of Adriana Mejia that you participated         11:50:06

7    in, did it contain any indication that she had           11:50:11

8    made any drawing or demonstration of how the crime       11:50:14

9    occurred?                                                11:50:17

10     A  I looked at the GPR.  I didn't read it              11:50:17

11   thoroughly, so I couldn't say.                           11:50:21

12     Q  Have you seen any indication in the                 11:50:22

13   supplementary reports or GPR's of the interview of       11:50:24

14   Arturo Reyes that you participated in which he           11:50:29

15   made any drawing or demonstration of how the             11:50:33

16   crimes occurred?                                         11:50:38

17     A  I don't recall.                                     11:50:38

18     Q  If Mr. Reyes had made any kind of drawing           11:50:38

19   or demonstration of how the crime occurred, would       11:50:41

20   you expect to see some note in your partner's GPR?       11:50:44

21       MS. GOLDEN:  Form.                                   11:50:48

22     A  He took the GPR.  I didn't.  So I don't             11:50:54

23   know why, if it did happen, why he wouldn't put it       11:50:57

24   in there, but you'd have to ask him.                     11:51:01

| | | |
|---|---|---|
| 1 | Q  If Adriana Mejia had made any kind of | 11:51:03 |
| 2 | drawing or demonstration of how the crime | 11:51:05 |
| 3 | occurred, would you expect to see some note of | 11:51:07 |
| 4 | that in the GPR prepared by your partner | 11:51:09 |
| 5 | Dickinson? | 11:51:12 |
| 6 | MS. GOLDEN:  Same objection to form. | 11:51:14 |
| 7 | A  It's the same answer.  I don't recall, but | 11:51:16 |
| 8 | he prepared it.  I don't know why he wouldn't put | 11:51:18 |
| 9 | it in there.  But if it happened that he didn't, I | 11:51:21 |
| 10 | don't know why.  You would have to ask him. | 11:51:25 |
| 11 | Q  In your experience working with Dickinson, | 11:51:26 |
| 12 | was he thorough? | 11:51:28 |
| 13 | A  Yes. | 11:51:30 |
| 14 | Q  If the witness -- strike that. | 11:51:30 |
| 15 | If Mr. Reyes had made a drawing or | 11:51:34 |
| 16 | demonstration based on your experience with | 11:51:37 |
| 17 | Mr. Dickinson, do you expect he would have written | 11:51:40 |
| 18 | it down? | 11:51:43 |
| 19 | MS. GOLDEN:  Asked and answered. | 11:51:43 |
| 20 | A  You would have to ask him.  If he didn't, | 11:51:45 |
| 21 | there might be a reason.  I don't know.  You would | 11:51:48 |
| 22 | have to talk to him about that. | 11:51:50 |
| 23 | Q  If it isn't in Dickinson's notes of the | 11:51:51 |
| 24 | interview, based on your experience with Dickinson | 11:51:55 |

1    being a thorough guy, does that cause you to                11:51:58

2    believe that there was no drawing or demonstration          11:52:00

3    by the suspect?                                             11:52:02

4         MS. GOLDEN:  Asked and answered.                       11:52:02

5      A  I don't know if there was or there wasn't.             11:52:05

6    I don't know if I can make a determination from             11:52:08

7    that.                                                       11:52:10

8      Q  If there was a drawing or demonstration,               11:52:11

9    you would expect to see it in Dickinson's notes,            11:52:13

10   fair?                                                       11:52:17

11        MS. GOLDEN:  Asked and answered.                       11:52:18

12     A  Like I said, he made the notes.  If there              11:52:19

13   was and he didn't put it in there, why, I don't             11:52:23

14   know.                                                       11:52:25

15     Q  Why that be unusual for Mr. Dickinson                  11:52:25

16   based on your experience?                                   11:52:29

17        MS. GOLDEN:  Foundation, asked and                     11:52:30

18   answered.                                                   11:52:31

19        MS. BARBER:  Form.                                     11:52:31

20     A  We didn't have a lot of drawings.  So it's             11:52:32

21   hard to say it would be unusual.  A drawing would           11:52:34

22   be unusual.  We didn't have a lot of those, so...           11:52:37

23     Q  So a drawing would be particularly                     11:52:41

24   noteworthy?                                                 11:52:43

|    |                                                           |          |
|----|-----------------------------------------------------------|----------|
| 1  | MS. GOLDEN:  Form.                                         | 11:52:44 |
| 2  | A   Again, it's hard to answer how good the                | 11:52:48 |
| 3  | drawing was.  Was it stick people?  I don't know.          | 11:52:51 |
| 4  | Q   Now, were demonstrations typical?                      | 11:52:54 |
| 5  | MS. GOLDEN:  Form.                                          | 11:52:57 |
| 6  | MS. BARBER:  Objection, form.                               | 11:52:57 |
| 7  | Q   I'll ask it again.  Were drawings typical              | 11:52:58 |
| 8  | or were they noteworthy?                                    | 11:53:01 |
| 9  | MS. BARBER:  Objection, form.                               | 11:53:03 |
| 10 | A   As I said earlier, they weren't typical.               | 11:53:04 |
| 11 | Q   So a drawing -- strike that.                           | 11:53:09 |
| 12 | So a demonstration would be noteworthy in                   | 11:53:11 |
| 13 | your view?                                                  | 11:53:13 |
| 14 | MS. BARBER:  Objection, form.                               | 11:53:15 |
| 15 | A   A demonstration could be.                              | 11:53:16 |
| 16 | Q   And based on your experience with                      | 11:53:21 |
| 17 | Dickinson being thorough, if there had been a               | 11:53:24 |
| 18 | demonstration, in your experience would Dickinson           | 11:53:28 |
| 19 | have put that in his notes?                                 | 11:53:31 |
| 20 | MS. GOLDEN:  Foundation and form.                           | 11:53:32 |
| 21 | A   They were -- demonstrations were very                  | 11:53:34 |
| 22 | rare.  So I don't know if -- how he recorded it in          | 11:53:40 |
| 23 | his notes.  If he didn't, he didn't.                        | 11:53:45 |
| 24 | Q   If he didn't, would you expect it was in               | 11:53:47 |

1    some supplementary report that he did?                    11:53:49

2        A  Again, I don't know.                               11:53:53

3        Q  If you and Dickinson had observed a                11:53:55

4    demonstration of how a crime occurred, do you             11:54:00

5    expect that you or Mr. Dickinson would have made          11:54:02

6    sure that got into a GPR or supplementary report?         11:54:04

7           MS. GOLDEN:  Form and foundation.                  11:54:08

8        A  If I was preparing a report, I probably            11:54:11

9    would have put it in there.                               11:54:13

10       Q  If you or Mr. Dickinson was provided with          11:54:15

11   a drawing by a suspect -- strike that.                    11:54:21

12          If you or Mr. Dickinson participated in an         11:54:21

13   interrogation of a suspect in which they provided         11:54:24

14   a drawing or made a depiction of the crime, would         11:54:26

15   you expect that you and Mr. Dickinson would make          11:54:30

16   sure that got into a GPR or sup report?                   11:54:33

17          MS. GOLDEN:  Foundation, form.                     11:54:36

18       A  If somebody made a drawing on a piece of           11:54:38

19   paper, I would inventory it.                              11:54:40

20       Q  What if they made it on a blackboard?              11:54:43

21       A  I can't inventory a blackboard.                    11:54:45

22       Q  Would you make some indication in your             11:54:48

23   report or in your GPR so that people knew this            11:54:49

24   person laid out how the crime occurred?                   11:54:53

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Form and foundation. | 11:54:56 |
| 2 | A  If I prepared the GPR, I might make a | 11:55:00 |
| 3 | notation that he did it. | 11:55:03 |
| 4 | Q  And knowing Dickinson, would you expect | 11:55:04 |
| 5 | that he would have made a notation that the person | 11:55:07 |
| 6 | did it on a blackboard? | 11:55:11 |
| 7 | MS. GOLDEN:  Foundation, asked and | 11:55:12 |
| 8 | answered. | 11:55:13 |
| 9 | A  That would be up to him.  If he didn't, | 11:55:13 |
| 10 | you'd have to ask him why. | 11:55:16 |
| 11 | Q  Knowing Dickinson, would it surprise you | 11:55:18 |
| 12 | if he just left that out? | 11:55:20 |
| 13 | MS. GOLDEN:  Asked and answered. | 11:55:22 |
| 14 | A  Again, it was very rare.  So if he left it | 11:55:23 |
| 15 | out, I don't know if it would be surprising or | 11:55:26 |
| 16 | wouldn't be surprising.  It just didn't happen | 11:55:29 |
| 17 | that much. | 11:55:31 |
| 18 | Q  If it -- sorry.  Go ahead. | 11:55:32 |
| 19 | A  I can't say, you know, would -- did he | 11:55:33 |
| 20 | always put it in there.  Well, it didn't happen. | 11:55:35 |
| 21 | Q  If a suspect made a depiction on a | 11:55:38 |
| 22 | blackboard -- | 11:55:42 |
| 23 | A  Um-hmm. | 11:55:43 |
| 24 | Q  -- which you and Mr. Dickinson | 11:55:43 |

1   participated in, do you expect that there would be          11:55:46

2   some documentation the fact that this person has           11:55:49

3   made a depiction either in the GPR's or in the             11:55:53

4   supplementary report prepared by you or                    11:55:55

5   Mr. Dickinson?                                             11:55:58

6        MS. GOLDEN:  Can you read that back,                  11:55:58

7   please.  That was a very long question.                    11:55:58

8             (Record read back by the                         11:55:58

9             reporter.)                                        11:56:12

10       MR. SWAMINATHAN:  The question is already             11:56:12

11  bad.  So let me try again.                                 11:56:14

12       THE REPORTER:  Okay.                                  11:56:14

13    Q  If you and Mr. Dickinson conducted an                 11:56:17

14  interrogation of a suspect and the suspect made a          11:56:19

15  depiction on a blackboard, do you expect that              11:56:23

16  either you or Mr. Dickinson would have made sure           11:56:27

17  that information that a depiction was done got             11:56:29

18  into a GPR or sup report?                                  11:56:33

19       MS. GOLDEN:  Form, compound.                          11:56:36

20       MS. BARBER:  Incomplete hypothetical.                 11:56:38

21       MS. GOLDEN:  And foundation.                          11:56:39

22    A  I can speak for myself.  I would have made            11:56:43

23  a notation in the GPR.  And if I prepared the              11:56:47

24  supplementary report from there, I probably would         11:56:50

| | | |
|---|---|---|
| 1 | have put it in there. | 11:56:53 |
| 2 | Q  And when you and -- strike that. | 11:56:55 |
| 3 | Even when Mr. Rutherford prepared | 11:56:58 |
| 4 | supplementary reports, based on investigative | 11:57:00 |
| 5 | steps you guys did -- strike that. | 11:57:03 |
| 6 | Even when Mr. Dickinson prepared | 11:57:05 |
| 7 | supplementary reports for investigative steps you | 11:57:07 |
| 8 | guys did together, you would review those before | 11:57:10 |
| 9 | they were submitted; is that right? | 11:57:12 |
| 10 | A  I glance over them.  I wouldn't read them | 11:57:14 |
| 11 | word for word maybe, but I glance over them. | 11:57:18 |
| 12 | Q  You would also sign those, correct? | 11:57:19 |
| 13 | A  Sometimes, yes. | 11:57:22 |
| 14 | Q  And if you signed it, you would review it | 11:57:22 |
| 15 | before you signed it; is that fair? | 11:57:26 |
| 16 | MS. BARBER:  Objection, answer and | 11:57:28 |
| 17 | answered yesterday. | 11:57:30 |
| 18 | Q  And was the purpose of that to make sure | 11:57:32 |
| 19 | that the information in it was accurate, nothing | 11:57:35 |
| 20 | was missing, that kind of thing? | 11:57:36 |
| 21 | MS. BARBER:  Objection, answer and | 11:57:37 |
| 22 | answered yesterday. | 11:57:39 |
| 23 | A  If it was the GPR's, the note that Eddie | 11:57:41 |
| 24 | took, if he took them.  If I took them, it was | 11:57:44 |

| | | |
|---|---|---|
| 1 | notes for me.  So, you know, basically so I could | 11:57:46 |
| 2 | prepare a case report.  Especially to note -- the | 11:57:49 |
| 3 | way I took notes it wouldn't be much help to | 11:57:52 |
| 4 | anybody else. | 11:57:55 |
| 5 | So did I read over Eddie's real hard, you | 11:57:56 |
| 6 | know, and study them?  No.  Because if Eddie took | 11:58:02 |
| 7 | the GPR's, chances are he would type up the | 11:58:07 |
| 8 | report. | 11:58:10 |
| 9 | Q  Your answer just now was about GPR's; is | 11:58:10 |
| 10 | that right? | 11:58:14 |
| 11 | A  Yes. | 11:58:14 |
| 12 | Q  Sorry.  I was asking about supplementary | 11:58:16 |
| 13 | reports. | 11:58:19 |
| 14 | A  Oh, supplementary reports.  If I prepared | 11:58:19 |
| 15 | -- I thought you meant GPR's. | 11:58:21 |
| 16 | Q  No problem. | 11:58:23 |
| 17 | A  If a supplemental report was prepared and | 11:58:23 |
| 18 | I used my GPR's, there would be note-taking and if | 11:58:27 |
| 19 | something like that happened, would I put it in | 11:58:33 |
| 20 | there?  I would -- I think I would. | 11:58:36 |
| 21 | Q  If Dickinson was writing a supplementary | 11:58:38 |
| 22 | report, based on an interview you both conducted | 11:58:42 |
| 23 | together, you would review his report before it | 11:58:46 |
| 24 | was submitted, right? | 11:58:48 |

1     A  Um-hmm.                                     11:58:49

2     Q  Is that a yes?                          11:58:50

3     A  Yes.                                      11:58:51

4     Q  And you would sign it after you reviewed     11:58:51

5 it, correct?                            11:58:54

6     A  Correct.                          11:58:55

7     Q  And part of what you were doing when you    11:58:56

8 reviewed it before you signed it was to make sure   11:58:59

9 it was accurate and contained -- accurately     11:59:01

10 reflected what had happened in the interview,    11:59:04

11 fair?                                11:59:08

12       MS. GOLDEN:  Form and foundation.     11:59:08

13     A  Yes.                                  11:59:10

14     Q  If Dickinson had left out of the         11:59:10

15 supplementary report that the suspect had made a   11:59:13

16 drawing on a blackboard about how the crime went   11:59:16

17 down, would you tell Dickinson, hey, you left this  11:59:19

18 out, we should include this in the report?      11:59:24

19       MS. GOLDEN:  Foundation.            11:59:26

20     A  In the supplemental report?          11:59:27

21     Q  Yes.                                  11:59:29

22     A  If I thought there was something left out  11:59:29

23 that was important, I would mention it to him.    11:59:32

24     Q  And if you left out something like the    11:59:33

| | | |
|---|---|---|
| 1 | suspect laid out the crime on a blackboard, that's | 11:59:35 |
| 2 | something you would tell them to include if he | 11:59:38 |
| 3 | accidentally left it out; is that fair? | 11:59:42 |
| 4 | MS. GOLDEN:  Incomplete hypothetical. | 11:59:43 |
| 5 | A  Never happened.  So I would review it like | 11:59:44 |
| 6 | any other report and talk to him about it. | 11:59:49 |
| 7 | Q  Is that the kind of thing that if it was | 11:59:51 |
| 8 | left out you would say, hey, we should add this? | 11:59:53 |
| 9 | MS. GOLDEN:  Asked and answered. | 11:59:56 |
| 10 | MS. BARBER:  Form. | 11:59:58 |
| 11 | MS. GOLDEN:  Just the last question. | 11:59:59 |
| 12 | A  I find out why he left it out, if it was | 12:00:01 |
| 13 | an accident, whatever reason and I would -- I | 12:00:04 |
| 14 | think it should be in there.  I'm sure he'd put it | 12:00:08 |
| 15 | in there. | 12:00:11 |
| 16 | MR. BURNS:  Sorry to interrupt.  Can we | 12:00:15 |
| 17 | ask them to turn the music down? | 12:00:17 |
| 18 | MR. SWAMINATHAN:  I think they're on a | 12:00:20 |
| 19 | conference call. | 12:00:22 |
| 20 | (Discussion held off the | 12:00:22 |
| 21 | record.) | 12:00:22 |
| 22 | BY MR. SWAMINATHAN: | 12:01:30 |
| 23 | Q  Sir, you were -- we talked yesterday about | 12:01:30 |
| 24 | your training related to interrogations, you don't | 12:01:34 |

1  feed people facts, those kinds of things.  Do you          12:01:40

2  remember talking about that subject?                       12:01:41

3      MS. GOLDEN:  Form.                                      12:01:42

4   A  Yes.                                                    12:01:43

5   Q  Okay.  We talked about the idea that some              12:01:44

6  things like feeding facts can impact the                   12:01:47

7  reliability of any incriminating statements you            12:01:50

8  get, correct?                                              12:01:53

9      MS. GOLDEN:  Could you just ask a fresh                12:01:54

10 question, please?                                           12:01:57

11     MR. SWAMINATHAN:  Sure.                                12:01:57

12  Q  Were false confessions, that concept                   12:01:58

13 something you were trained on?                              12:02:03

14     MS. BARBER:  Objection, form, foundation.             12:02:04

15  A  I don't recall the training on it.  I                  12:02:09

16 don't recall.                                               12:02:13

17  Q  Were you trained that under interrogation              12:02:13

18 it is possible for people to confess to crimes             12:02:16

19 they did not commit?                                        12:02:19

20  A  Again, I don't recall all my training back             12:02:22

21 then.  So I couldn't tell you.                              12:02:25

22  Q  Putting aside training, was it something               12:02:27

23 that you were aware of or had some knowledge                12:02:29

24 about?                                                      12:02:32

| | |
|---|---|
| 1 | MS. GOLDEN:  In 1998? | 12:02:33 |
| 2 | MR. SWAMINATHAN:  Yes. | 12:02:35 |
| 3 | A   What do you mean by was I aware that there | 12:02:39 |
| 4 | were false confessions out there? | 12:02:43 |
| 5 | Q   Yes, in 1998 was that a concept that you | 12:02:45 |
| 6 | were aware of? | 12:02:48 |
| 7 | MS. GOLDEN:  Form and foundation. | 12:02:49 |
| 8 | A   I couldn't tell you.  I'm not sure. | 12:02:56 |
| 9 | Q   During the time you were conducting | 12:02:59 |
| 10 | interrogations of homicide suspects in the Chicago | 12:03:01 |
| 11 | Police Department, were you aware that under | 12:03:05 |
| 12 | interrogation it was possible for people to | 12:03:07 |
| 13 | confess to crimes they did not commit? | 12:03:09 |
| 14 | MS. GOLDEN:  That's the exact same | 12:03:11 |
| 15 | question. | 12:03:13 |
| 16 | MR. SWAMINATHAN:  Go ahead. | 12:03:15 |
| 17 | MS. BARBER:  Form. | 12:03:15 |
| 18 | MS. GOLDEN:  Asked and answered. | 12:03:16 |
| 19 | MS. BARBER:  And foundation. | 12:03:19 |
| 20 | A   I didn't know of any.  You know, anything | 12:03:22 |
| 21 | is possible I guess but... | 12:03:26 |
| 22 | Q   When you were conducting interrogations of | 12:03:28 |
| 23 | homicide suspects, did you ever have in your mind, | 12:03:30 |
| 24 | hey, I need to make sure that this statement I'm | 12:03:33 |

| | | |
|---|---|---|
| 1 | getting from a suspect is actually reliable, that | 12:03:35 |
| 2 | it's truthful? | 12:03:38 |
| 3 |    A  Yes. | 12:03:41 |
| 4 |     MS. BARBER:  Objection, form. | 12:03:41 |
| 5 |    Q  And was one of the reasons you were doing | 12:03:43 |
| 6 | that because it's -- you were at least aware of | 12:03:45 |
| 7 | the possibility that the thing somebody was | 12:03:48 |
| 8 | telling you could be false? | 12:03:50 |
| 9 |     MS. BARBER:  Objection, form. | 12:03:53 |
| 10 |    A  Yes. | 12:03:57 |
| 11 |    Q  Were you aware that it was, as you were | 12:03:58 |
| 12 | conducting interrogations, that it was possible | 12:04:01 |
| 13 | somebody could be telling you something | 12:04:04 |
| 14 | incriminating when in fact they didn't actually | 12:04:05 |
| 15 | commit the crime? | 12:04:09 |
| 16 |    A  When I was interviewing somebody, I was | 12:04:12 |
| 17 | stressing to try to find the truth.  And that's | 12:04:18 |
| 18 | what we're looking -- when I was -- when we were | 12:04:21 |
| 19 | doing it, we were looking for the truth.  That's | 12:04:23 |
| 20 | what I would look for.  Even if he said something | 12:04:26 |
| 21 | incriminating that maybe not -- wasn't factual, we | 12:04:31 |
| 22 | try to get back on track to get to the actual | 12:04:36 |
| 23 | facts. | 12:04:39 |
| 24 |    Q  If I understand correctly, one of the | 12:04:40 |

| | | |
|---|---|---|
| 1 | reasons you would not feed facts to individuals is | 12:04:42 |
| 2 | because it would at least increase the risk that | 12:04:46 |
| 3 | somebody could incriminate themselves without | 12:04:48 |
| 4 | actually having been involved; is that fair? | 12:04:51 |
| 5 | MS. GOLDEN:  Form. | 12:04:53 |
| 6 | A  I would say one of the reasons -- the | 12:04:55 |
| 7 | reason you wouldn't do it is so you can get to the | 12:04:57 |
| 8 | truth is the best way and easiest way to put it. | 12:04:59 |
| 9 | You feed a guy facts maybe he'll tell you | 12:05:05 |
| 10 | something that isn't true.  Either way, either | 12:05:08 |
| 11 | incriminate himself or come up with a better alibi | 12:05:12 |
| 12 | or whatever.  So you wouldn't do it -- you want to | 12:05:15 |
| 13 | find out the truth of what happened and what this | 12:05:17 |
| 14 | person's involvement was, if any, in the incident. | 12:05:19 |
| 15 | Q  Other than not feeding facts, were there | 12:05:23 |
| 16 | other things you did to reduce the risk that | 12:05:26 |
| 17 | somebody was telling you something that wasn't | 12:05:29 |
| 18 | true? | 12:05:32 |
| 19 | MS. BARBER:  Objection, form. | 12:05:32 |
| 20 | A  I don't know what you mean.  When you do | 12:05:39 |
| 21 | the interview, you're just trying to get the | 12:05:42 |
| 22 | truth.  And that was the bottom line. | 12:05:47 |
| 23 | Q  When you conducted interrogations and | 12:05:49 |
| 24 | someone made incriminating statements, would you | 12:05:52 |

1  try to verify whether the story they were telling                12:05:55

2  you was true?                                                     12:05:59

3      A  Yes.                                                       12:06:01

4      Q  And how would you go about verifying                      12:06:02

5  whether what they were telling you was true?                     12:06:05

6          MS. BARBER:  Objection, form, foundation,                12:06:07

7  incomplete hypothetical.                                         12:06:09

8      A  I would compare to what he's telling us to                12:06:15

9  what I knew about the case and the facts that I                  12:06:17

10  knew.                                                           12:06:20

11     Q  Would you -- excuse me, would you also do                 12:06:20

12  subsequent follow-up sometimes to see if what they              12:06:26

13  told you actually played out?                                   12:06:30

14         MS. BARBER:  Objection, form.                            12:06:32

15     A  What do you mean?  Follow-up to what?                     12:06:34

16     Q  Yeah, so you talk to the suspect.  They                   12:06:36

17  tell you information about the crime.  Sounds like              12:06:38

18  you're saying some instances you know information               12:06:41

19  about the crime already and you can compare                     12:06:44

20  whether what they're telling you is consistent                  12:06:46

21  with things you already know, correct?                          12:06:48

22     A  Yes.                                                       12:06:50

23     Q  That's one of the things you do when                      12:06:51

24  you're hearing somebody is making incriminating                 12:06:53

| | | |
|---|---|---|
| 1 | statements, correct? | 12:06:55 |
| 2 | A  That's correct. | 12:06:56 |
| 3 | Q  What I'm asking is, there may also be | 12:06:56 |
| 4 | things they tell about how the crime occurred and | 12:06:59 |
| 5 | you don't know one way or the other whether they | 12:07:01 |
| 6 | are consistent or not consistent with how the | 12:07:04 |
| 7 | crime occurred; you'd need to do some follow-up to | 12:07:07 |
| 8 | see if it was consistent or not consistent; would | 12:07:09 |
| 9 | you ever conduct some follow-up in that way? | 12:07:13 |
| 10 | A  To do more investigation, yes. | 12:07:14 |
| 11 | Q  Sometimes you do more investigation to see | 12:07:16 |
| 12 | what the suspect told you was in fact true; is | 12:07:18 |
| 13 | that right? | 12:07:22 |
| 14 | A  If I didn't know and it wasn't in the | 12:07:22 |
| 15 | reports, yes. | 12:07:26 |
| 16 | Q  Would you typically be engaging in some | 12:07:27 |
| 17 | analysis to assess the reliability of a confession | 12:07:30 |
| 18 | anytime you got one? | 12:07:34 |
| 19 | MS. GOLDEN:  Form. | 12:07:35 |
| 20 | A  Again, you're searching for the truth, so | 12:07:38 |
| 21 | that would be part of it, yes. | 12:07:40 |
| 22 | Q  I guess what I'm asking is, if somebody | 12:07:41 |
| 23 | makes a confession, would you just it take the | 12:07:44 |
| 24 | confession at its word without ever comparing it | 12:07:46 |

| | | |
|---|---|---|
| 1 | to any information you knew before about the crime | 12:07:49 |
| 2 | or without conducting some follow-up? | 12:07:51 |
| 3 | MS. BARBER:  Objection, form, foundation, | 12:07:54 |
| 4 | incomplete hypothetical, calls for speculation. | 12:07:56 |
| 5 | A  If you're asking me if some guy came out | 12:08:01 |
| 6 | and said I did it, ba, ba, ba, and this is how I | 12:08:06 |
| 7 | did it and it didn't fit the facts of the case, | 12:08:07 |
| 8 | would I just say, okay, that's good, go with it? | 12:08:10 |
| 9 | No. | 12:08:12 |
| 10 | Q  And if you didn't know one way or the | 12:08:12 |
| 11 | other whether it fit with the facts of the case, | 12:08:16 |
| 12 | you'd conduct some follow-up to make sure that it | 12:08:19 |
| 13 | did; is that right? | 12:08:21 |
| 14 | MS. BARBER:  Objection, form, foundation, | 12:08:22 |
| 15 | incomplete hypothetical, calls for speculation. | 12:08:24 |
| 16 | A  I would try to find out why he's saying | 12:08:30 |
| 17 | this. | 12:08:33 |
| 18 | Q  Before you got to that step, would you try | 12:08:33 |
| 19 | to find out whether what he's told you is in fact | 12:08:35 |
| 20 | consistent with the things related to the crime? | 12:08:38 |
| 21 | MS. BARBER:  Objection, form, foundation, | 12:08:42 |
| 22 | incomplete hypothetical, calls for speculation. | 12:08:44 |
| 23 | A  Like I -- if he said something that I knew | 12:08:50 |
| 24 | totally did not fit the facts of the case, as I | 12:08:53 |

| | | |
|---|---|---|
| 1 | knew them, I would try figure out why he's saying | 12:08:58 |
| 2 | this and why it doesn't fit the facts.  Is the | 12:09:02 |
| 3 | case wrong?  Is what he's saying wrong?  That's | 12:09:05 |
| 4 | what I'd try to figure out. | 12:09:08 |
| 5 |    Q  I'm not asking you -- so I think I'm | 12:09:09 |
| 6 | probably asking poor questions.  So let me try to | 12:09:12 |
| 7 | get to the -- where I was trying to get to which | 12:09:15 |
| 8 | is -- let's do it this way.  Somebody makes | 12:09:19 |
| 9 | incriminating statements during an interrogation, | 12:09:20 |
| 10 | you would take steps to verify whether the | 12:09:24 |
| 11 | information they were telling you was true; is | 12:09:28 |
| 12 | that right? | 12:09:31 |
| 13 |    MS. BARBER:  Objection, form, foundation. | 12:09:31 |
| 14 |    A  That's correct. | 12:09:35 |
| 15 |    MS. BARBER:  Incomplete hypothetical, | 12:09:36 |
| 16 | calls for speculation. | 12:09:38 |
| 17 |    A  That would be correct. | 12:09:39 |
| 18 |    Q  Would you be on the lookout for things | 12:09:40 |
| 19 | they were telling you that were just implausible? | 12:09:42 |
| 20 |    MS. BARBER:  Objection, form, foundation, | 12:09:46 |
| 21 | incomplete hypothetical, calls for speculation. | 12:09:48 |
| 22 |    A  When you say look out -- if they said | 12:09:50 |
| 23 | something that was totally implausible, I mean, I | 12:09:55 |
| 24 | wouldn't be looking out for it.  But if I heard | 12:10:00 |

| # | | |
|---|---|---|
| 1 | it, yeah, then I'd try to figure out why he's | 12:10:02 |
| 2 | saying it. | 12:10:05 |
| 3 | Q  When you say try to figure out why he's | 12:10:05 |
| 4 | saying it, would you question them about the thing | 12:10:08 |
| 5 | they're telling you that seems implausible? | 12:10:11 |
| 6 | MS. BARBER:  Objection, form, foundation | 12:10:14 |
| 7 | incomplete hypothetical, calls for speculation. | 12:10:16 |
| 8 | A  The interrogation and how it goes, I would | 12:10:18 |
| 9 | try to figure out the facts of the case and the | 12:10:21 |
| 10 | truth of the case. | 12:10:23 |
| 11 | Q  Understood.  But if you're -- in the | 12:10:24 |
| 12 | course of an interrogation someone is telling you | 12:10:26 |
| 13 | something about how it went down and it just | 12:10:29 |
| 14 | doesn't make sense, it's not plausible, the timing | 12:10:30 |
| 15 | doesn't make sense, you know, the person is laying | 12:10:33 |
| 16 | it out in a way that would be physically | 12:10:36 |
| 17 | impossible.  You know, you could imagine the kind | 12:10:38 |
| 18 | of things that I'm talking about, right? | 12:10:42 |
| 19 | MS. BARBER:  Objection, form as to what | 12:10:43 |
| 20 | you're imagining. | 12:10:45 |
| 21 | A  I mean, if he's off on days, I'd try to | 12:10:53 |
| 22 | figure out why.  Maybe he's mixed up.  Maybe -- | 12:10:56 |
| 23 | whatever.  That's -- again like I say, you try to | 12:11:01 |
| 24 | find the truth.  And if he's giving something | 12:11:10 |

1    that's totally implausible, you try to find out           12:11:13

2    why, why was it implausible, why he's saying it,          12:11:16

3    and you go from there.                                    12:11:20

4        Q  When you say you try to find out why, what        12:11:21

5    would you do to do that?                                  12:11:24

6        MS. BARBER:  Objection, form, foundation,            12:11:26

7    incomplete hypothetical, calls for speculation.           12:11:28

8        A  It all depends on what he said for me to          12:11:32

9    do what I was going to do.  You know, like I say,         12:11:35

10   it all depends on what he said, and then my next          12:11:39

11   step would be based on that.                              12:11:43

12       Q  If what the witness tells you is something        12:11:44

13   that seems implausible to you, would you confront         12:11:47

14   the witness as part of that interview with the            12:11:50

15   thing they've said that is implausible?                   12:11:52

16       MS. BARBER:  Objection, form, foundation,            12:11:54

17   incomplete hypothetical, calls for speculation.           12:11:56

18       A  I imagine I would, yes.                           12:11:59

19       Q  Would you be on the lookout during the           12:12:02

20   course of an interrogation of a suspect for things        12:12:05

21   they were telling you that were inconsistent with         12:12:07

22   what you knew about the case?                             12:12:09

23       MS. BARBER:  Objection, form, foundation,            12:12:11

24   incomplete hypothetical, calls for speculation.           12:12:12

1      MS. GOLDEN:  Hypothetical.                    12:12:15

2      A  Again, on the lookout, I'm not exactly     12:12:17

3  sure what you're saying.                          12:12:20

4      Q  If they were telling you things -- strike  12:12:21

5  that.                                             12:12:23

6         When I say on the lookout, I'm referring   12:12:23

7  to this idea that as somebody is giving you       12:12:26

8  information who's a suspect, you're paying         12:12:29

9  attention to whether or not what they're telling  12:12:32

10  you is reliable and truthful information, right?  12:12:34

11      MS. BARBER:  Same objections.                12:12:36

12      A  That's correct.                           12:12:39

13      Q  So if I understand correctly, you're      12:12:40

14  constantly making that assessment as the suspect  12:12:43

15  is giving you information; is that fair?          12:12:46

16      MS. BARBER:  Same objections.                12:12:48

17      A  Yes.                                       12:12:50

18      Q  I mean, is that part of what you do as a   12:12:50

19  homicide detective, you're getting information    12:12:53

20  from a suspect and every second you're assessing  12:12:55

21  whether this is getting you closer to the truth,  12:12:58

22  correct?                                          12:13:00

23      MS. BARBER:  Objection, form, foundation.    12:13:00

24      A  That would be correct.                     12:13:03

| | | |
|---|---|---|
| 1 | Q  Witnesses lie to you all the time as a | 12:13:04 |
| 2 | homicide detective; is that correct? | 12:13:08 |
| 3 | MS. BARBER:  Objection, form, foundation. | 12:13:09 |
| 4 | A  I mean, all the time -- they have on | 12:13:15 |
| 5 | occasion lied.  Suspects lie, you know, yes. | 12:13:17 |
| 6 | Q  So part of what you're doing is trying to | 12:13:19 |
| 7 | get past what are the lies and what is the truth, | 12:13:22 |
| 8 | correct? | 12:13:25 |
| 9 | MS. BARBER:  Objection, form, | 12:13:26 |
| 10 | foundation -- | 12:13:27 |
| 11 | MS. GOLDEN:  Yeah -- | 12:13:31 |
| 12 | MS. BARBER:  Incomplete hypothetical -- | 12:13:31 |
| 13 | THE REPORTER:  I'm sorry. | 12:13:32 |
| 14 | MS. GOLDEN:  You asked it like ten times. | 12:13:32 |
| 15 | You used a different adjective but all the very | 12:13:34 |
| 16 | same question, so asked and answered. | 12:13:34 |
| 17 | THE REPORTER:  Can you repeat your | 12:13:34 |
| 18 | objections?  I'm sorry. | 12:13:40 |
| 19 | MS. BARBER:  Sure.  It's form, foundation, | 12:13:40 |
| 20 | incomplete hypothetical, and calls for | 12:13:41 |
| 21 | speculation. | 12:13:41 |
| 22 | THE REPORTER:  Thank you. | 12:13:44 |
| 23 | THE WITNESS:  What was the question again? | 12:13:46 |
| 24 | Q  Would you challenge the things that were | 12:13:48 |

| | | |
|---|---|---|
| 1 | inconsistent or implausible to test the | 12:13:50 |
| 2 | reliability of the story the suspect is telling | 12:13:54 |
| 3 | you? | 12:13:56 |
| 4 | MS. GOLDEN:  Can you be more specific | 12:13:56 |
| 5 | about -- | 12:13:58 |
| 6 | MR. SWAMINATHAN:  No.  Objection to form. | 12:13:58 |
| 7 | MS. GOLDEN:  -- talking about?  Objection | 12:14:00 |
| 8 | to form, literally have no idea what you're | 12:14:00 |
| 9 | talking about. | 12:14:03 |
| 10 | MS. BARBER:  Same objections. | 12:14:04 |
| 11 | A  If a person that I was interviewing made a | 12:14:07 |
| 12 | statement that did not fit the facts of the case, | 12:14:10 |
| 13 | as I understood them, I would ask -- I would try | 12:14:14 |
| 14 | to figure out why. | 12:14:23 |
| 15 | Q  Would you ask them follow-up questions? | 12:14:25 |
| 16 | MS. BARBER:  Same objections. | 12:14:27 |
| 17 | A  Again, of course, yes. | 12:14:31 |
| 18 | Q  Have you had cases in your career where | 12:14:32 |
| 19 | you simply did not believe an incriminating | 12:14:34 |
| 20 | statement that was given to you by a suspect? | 12:14:37 |
| 21 | MS. BARBER:  Objection.  Withdraw that. | 12:14:39 |
| 22 | A  Did I not believe the incriminating | 12:14:45 |
| 23 | statement?  Yeah -- | 12:14:48 |
| 24 | MS. GOLDEN:  Yeah, form actually. | 12:14:54 |

| | | |
|---|---|---|
| 1 | A   I don't recall.  I mean, they make | 12:14:55 |
| 2 | statements and, you know, the statements change on | 12:15:06 |
| 3 | some cases.  Again, it's all hypothetical, but you | 12:15:13 |
| 4 | strive to get to the truth.  They may say one | 12:15:19 |
| 5 | thing but not want to say more.  So you keep | 12:15:23 |
| 6 | talking to them a little more just to try to find | 12:15:26 |
| 7 | out the truth and you go from there. | 12:15:29 |
| 8 | Q   In terms of assessing a witness's -- | 12:15:31 |
| 9 | strike that. | 12:15:35 |
| 10 | In terms of assessing the credibility of a | 12:15:36 |
| 11 | suspect telling you a story, it helps you in | 12:15:39 |
| 12 | making the assessment of that person's credibility | 12:15:42 |
| 13 | to have not fed them facts; we agree about that, | 12:15:44 |
| 14 | right? | 12:15:48 |
| 15 | MS. BARBER:  Objection, form, foundation. | 12:15:49 |
| 16 | MS. GOLDEN:  Asked and answered. | 12:15:50 |
| 17 | MS. BARBER:  Incomplete hypothetical, | 12:15:51 |
| 18 | calls for speculation. | 12:15:53 |
| 19 | A   Yes, you wouldn't feed them facts. | 12:15:55 |
| 20 | Q   If the suspect tells you things that are | 12:15:59 |
| 21 | incriminating, that are implausible, that would | 12:16:01 |
| 22 | undermine their credibility during the course of | 12:16:04 |
| 23 | your interrogation; is that fair? | 12:16:08 |
| 24 | MS. GOLDEN:  Form, foundation, incomplete | 12:16:09 |

1   hypothetical, calls for speculation.                    12:16:12

2       A  Could you say that again?                        12:16:16

3       Q  Yeah.  If during the course of your             12:16:17

4   interrogation the suspect tells you things that         12:16:18

5   are implausible or inconsistent with the evidence       12:16:20

6   that you know, that would undermine their               12:16:24

7   credibility of what they're telling you, fair?          12:16:26

8       MS. BARBER:  Same objections.                       12:16:29

9       MS. GOLDEN:  Join.                                  12:16:32

10      A  Not necessarily.                                 12:16:34

11      Q  Explain.                                         12:16:36

12      A  A suspect is -- you know, the first thing        12:16:41

13  he says is -- let's say -- it would be                  12:16:44

14  hypothetical.  You bring a suspect in.  You             12:16:48

15  confront them with the crime, whatever it be,           12:16:54

16  theft, burglary, robbery, whatever.  He denies he       12:16:57

17  did it.  Okay.  He made a statement denying it.         12:17:00

18  Does that mean later on he's not going to end up        12:17:03

19  telling me the truth?  No.  I sort of expect            12:17:06

20  everybody to deny it.  So is that earnest               12:17:09

21  credibility to me?  No.  At that point, no.             12:17:16

22      Q  Putting aside denials.  I understand your        12:17:18

23  point about denials.  I'm talking about a               12:17:21

24  different scenario.                                     12:17:24

| | | |
|---|---|---|
| 1 | A suspect is actually incriminating | 12:17:24 |
| 2 | themselves but their incriminating story is | 12:17:27 |
| 3 | implausible or inconsistent went with the | 12:17:32 |
| 4 | evidence.  That's an indication that that person | 12:17:33 |
| 5 | is not telling you something that is reliable; is | 12:17:35 |
| 6 | that fair? | 12:17:38 |
| 7 | MS. BARBER:  Objection, form, foundation, | 12:17:38 |
| 8 | incomplete hypothetical, calls for speculation. | 12:17:39 |
| 9 | A  If he's saying that something is | 12:17:42 |
| 10 | implausible, I try to find out why he's saying it. | 12:17:44 |
| 11 | It doesn't necessarily going to hurt his | 12:17:49 |
| 12 | credibility.  It might be a fact that helps them | 12:17:50 |
| 13 | out.  So now we got -- you know, and go from | 12:17:53 |
| 14 | there. | 12:17:56 |
| 15 | Would it necessarily wreck his credibility | 12:17:57 |
| 16 | if he gives a different statement later?  Maybe | 12:18:01 |
| 17 | not. | 12:18:06 |
| 18 | Q  So it might impact the credibility or it | 12:18:06 |
| 19 | might not, fair? | 12:18:09 |
| 20 | MS. BARBER:  Objection, form, foundation, | 12:18:10 |
| 21 | incomplete hypothetical, calls for speculation. | 12:18:13 |
| 22 | A  Like I say, if the guy was making a | 12:18:19 |
| 23 | statement might be totally unstable, so if he's | 12:18:22 |
| 24 | saying that he did something -- like I said, a guy | 12:18:25 |

1    came in and said, yeah, I shot the president and          12:18:27

2    this is why I did it.  That's an incriminating          12:18:30

3    statement.  We would agree with that, but we all          12:18:33

4    know it's false.          12:18:35

5        Q  Right.  And so -- I think you were saying          12:18:35

6    the same thing.          12:18:38

7            If the person -- if the suspect tells you          12:18:38

8    something that's incriminating but it's          12:18:40

9    implausible or inconsistent with what you know --          12:18:43

10           MS. GOLDEN:  No --          12:18:46

11       Q  -- it can undermine their credibility,          12:18:47

12   correct?          12:18:49

13           MS. GOLDEN:  He said demonstratively false          12:18:49

14   not --          12:18:52

15           MR. SWAMINATHAN:  Objection to form,          12:18:52

16   please.          12:18:53

17           MS. GOLDEN:  Your question is unfair.          12:18:54

18       A  Again, it all depends on what he says and          12:18:57

19   the implausibility.  Is trying to -- I would have          12:19:01

20   to know exactly what was being said before I could          12:19:08

21   tell you if it makes him unreliable.          12:19:10

22       Q  Right.  You can't say for sure that this          12:19:13

23   person is not reliable based on my example so far;          12:19:16

24   with me so far?          12:19:20

| | | |
|---|---|---|
| 1 | MS. BARBER:  I'm not.  Can you repeat the | 12:19:20 |
| 2 | question. | 12:19:20 |
| 3 | (Record read back by the | 12:19:20 |
| 4 | reporter.) | 12:19:38 |
| 5 | MS. BARBER:  Form, foundation, incomplete | 12:19:38 |
| 6 | hypothetical, calls for speculation as to this | 12:19:42 |
| 7 | person. | 12:19:44 |
| 8 | Q  Let me just ask a simpler question. | 12:19:45 |
| 9 | If you got a suspect who's telling you | 12:19:47 |
| 10 | information that's implausible or inconsistent | 12:19:50 |
| 11 | with the evidence, as you know it, that could | 12:19:53 |
| 12 | undermine their credibility, fair? | 12:19:55 |
| 13 | MS. GOLDEN:  Form. | 12:19:57 |
| 14 | MS. BARBER:  Objection, form, foundation, | 12:19:57 |
| 15 | incomplete hypothetical, calls for speculation. | 12:19:59 |
| 16 | It's been asked and answered several times already | 12:20:01 |
| 17 | and now it is argumentative. | 12:20:04 |
| 18 | A  Again, it all depends on where it goes.  I | 12:20:06 |
| 19 | couldn't say just on those specific facts you just | 12:20:10 |
| 20 | told me, the limited information you gave me to | 12:20:15 |
| 21 | make a decision. | 12:20:17 |
| 22 | Q  Understood.  That's why I'm not saying it | 12:20:19 |
| 23 | would.  I'm asking if it could.  Understand the | 12:20:22 |
| 24 | distinction I'm making. | 12:20:25 |

| | | |
|---|---|---|
| 1 | So the witness tells you -- strike that. | 12:20:26 |
| 2 | The suspect tells you incriminating | 12:20:29 |
| 3 | information that's implausible or inconsistent | 12:20:32 |
| 4 | with the evidence you know.  It could undermine | 12:20:34 |
| 5 | their credibility in your view, correct? | 12:20:36 |
| 6 | MS. GOLDEN:  Okay.  So you're done | 12:20:39 |
| 7 | answering the question.  You've answered it at | 12:20:41 |
| 8 | least four times. | 12:20:42 |
| 9 | MR. SWAMINATHAN:  No, he's not answered | 12:20:44 |
| 10 | it.  He's answered a different question.  And I've | 12:20:45 |
| 11 | explained how it was different.  This is the last | 12:20:47 |
| 12 | time I'm asking and then we're going to get a | 12:20:47 |
| 13 | clear answer -- | 12:20:50 |
| 14 | MS. GOLDEN:  No, he's not.  He's not | 12:20:50 |
| 15 | answering it.  And you're harassing at this point. | 12:20:52 |
| 16 | MR. SWAMINATHAN:  You're instructing him | 12:20:54 |
| 17 | not to answer the question? | 12:20:56 |
| 18 | MS. GOLDEN:  Yes, I am. | 12:20:56 |
| 19 | MR. SWAMINATHAN:  Please make a note of | 12:20:57 |
| 20 | where we are on the record, please. | 12:20:59 |
| 21 | MS. GOLDEN:  You don't have to do that | 12:21:00 |
| 22 | anymore.  You can just search the text. | 12:21:01 |
| 23 | Q  If somebody gives you shifting stories | 12:21:03 |
| 24 | about how the crime occurred, can that be an | 12:21:06 |

| | | |
|---|---|---|
| 1 | indication of their credibility or reliability of | 12:21:09 |
| 2 | their story? | 12:21:12 |
| 3 | MS. BARBER:  Objection, form, foundation | 12:21:12 |
| 4 | incomplete hypothetical, calls for speculation. | 12:21:15 |
| 5 | A  It goes back to the same answer I just | 12:21:21 |
| 6 | gave.  It's hypothetical.  I don't have enough | 12:21:23 |
| 7 | information to tell you whether it would or it | 12:21:26 |
| 8 | wouldn't. | 12:21:28 |
| 9 | Q  In some cases it could; in some cases it | 12:21:28 |
| 10 | would not; is that fair? | 12:21:32 |
| 11 | MS. BARBER:  Objection, form, foundation, | 12:21:34 |
| 12 | incomplete hypothetical, calls for speculation, | 12:21:35 |
| 13 | misstates the witness's testimony. | 12:21:38 |
| 14 | A  The best I can tell you is every case is | 12:21:41 |
| 15 | different and I would have to go on what the facts | 12:21:45 |
| 16 | of any case were.  So I don't know what the | 12:21:49 |
| 17 | implausible -- what you're asking me what are the | 12:21:54 |
| 18 | facts. | 12:21:57 |
| 19 | Q  If a witness -- | 12:21:57 |
| 20 | MS. GOLDEN:  Okay.  We're going to take a | 12:21:59 |
| 21 | break.  I'm taking a break. | 12:22:01 |
| 22 | MR. SWAMINATHAN:  Okay. | 12:22:02 |
| 23 | THE VIDEOGRAPHER:  Off the record 12:22. | 12:22:04 |
| 24 | (A short break was taken.) | 12:32:38 |

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  Back on the record | 12:33:09 |
| 2 | 12:33. | 12:33:12 |
| 3 | BY MR. SWAMINATHAN: | 12:33:13 |
| 4 | Q  Do homicide detectives approve charges in | 12:33:14 |
| 5 | murder cases? | 12:33:17 |
| 6 | MS. GOLDEN:  All right.  Just give me a | 12:33:18 |
| 7 | second.  Form. | 12:33:20 |
| 8 | A  No, homicide detectives don't approve | 12:33:28 |
| 9 | charges. | 12:33:32 |
| 10 | Q  Who does? | 12:33:33 |
| 11 | A  That would be the state's attorney's | 12:33:33 |
| 12 | office. | 12:33:35 |
| 13 | Q  Are there felony review state's attorneys | 12:33:35 |
| 14 | who come to the station and approve charges? | 12:33:39 |
| 15 | MR. BURNS:  Objection to form. | 12:33:43 |
| 16 | A  They come to the station and how they | 12:33:50 |
| 17 | determine who charges, you have to ask the state's | 12:33:53 |
| 18 | attorney's office. | 12:33:55 |
| 19 | Q  I'm asking about how they do it.  It's | 12:33:56 |
| 20 | felony review state's attorneys who do do it; is | 12:33:56 |
| 21 | that right? | 12:34:00 |
| 22 | MS. GOLDEN:  Asked and answered. | 12:34:00 |
| 23 | A  Yes. | 12:34:02 |
| 24 | Q  When do felony review state's attorneys | 12:34:03 |

| | | |
|---|---|---|
| 1 | get called into the station? | 12:34:07 |
| 2 | MS. GOLDEN:  Form, vague. | 12:34:08 |
| 3 | MR. BURNS:  Foundation. | 12:34:12 |
| 4 | MS. BARBER:  Incomplete hypothetical, | 12:34:12 |
| 5 | calls for speculation. | 12:34:15 |
| 6 | A  Again, it all depends on what you're | 12:34:25 |
| 7 | seeking. | 12:34:27 |
| 8 | Q  Who decides when they get called in to | 12:34:27 |
| 9 | approve charges? | 12:34:30 |
| 10 | MS. BARBER:  Objection, form, foundation, | 12:34:32 |
| 11 | incomplete hypothetical, calls for speculation. | 12:34:35 |
| 12 | A  The detective would usually decide that he | 12:34:37 |
| 13 | thinks he has enough to present to the state's | 12:34:45 |
| 14 | attorney.  The state's attorney then reviews it. | 12:34:48 |
| 15 | Q  When you say it's the detective, are you | 12:34:51 |
| 16 | referring to one of the primary assigned | 12:34:53 |
| 17 | detectives usually makes the call to the state's | 12:34:55 |
| 18 | attorney? | 12:34:59 |
| 19 | MS. GOLDEN:  Foundation. | 12:34:59 |
| 20 | A  Yes. | 12:35:02 |
| 21 | Q  And who decides when the state's attorney | 12:35:02 |
| 22 | gets called for purposes of taking a statement | 12:35:05 |
| 23 | from a witness or suspect? | 12:35:09 |
| 24 | MS. GOLDEN:  Foundation. | 12:35:11 |

1      MS. BARBER:  Form, incomplete          12:35:13

2  hypothetical, calls for speculation.       12:35:15

3      A  The detective would contact the state's  12:35:20

4  attorney's office.                         12:35:22

5      Q  As a homicide investigation proceeds, is  12:35:24

6  it fair to say state's attorneys don't have any  12:35:32

7  knowledge of the steps that have taken place in an  12:35:35

8  investigation until they get called in by the  12:35:39

9  police officers?                           12:35:42

10      MS. BARBER:  Objection, form, foundation,  12:35:42

11  incomplete hypothetical, calls for speculation.  12:35:44

12      A  I don't know what a state's attorney knows  12:35:48

13  or doesn't know about the case.            12:35:50

14      Q  Are homicide detectives providing constant  12:35:53

15  updates to the state's attorney's office as they  12:35:58

16  proceed in homicide investigations?        12:36:02

17      MS. BARBER:  Objection, form, foundation,  12:36:03

18  incomplete hypothetical, calls for speculation.  12:36:05

19      A  Again, every investigation is different.  12:36:08

20      Q  So there are some cases where the state's  12:36:11

21  attorney is involved in the very beginning and  12:36:14

22  they're getting updated as everything happens in  12:36:16

23  the course of the investigation?           12:36:19

24      MS. BARBER:  Same objections.          12:36:20

| | | |
|---|---|---|
| 1 | MR. ZIBOLSKI:  Join. | 12:36:24 |
| 2 | A  If you're going to seek a warrant and | 12:36:25 |
| 3 | nobody is in custody, they would have to know | 12:36:27 |
| 4 | about it. | 12:36:30 |
| 5 | Q  And then subsequent to getting a warrant | 12:36:31 |
| 6 | would they then be updated on each thing that | 12:36:32 |
| 7 | happens during the course of the investigate? | 12:36:35 |
| 8 | MS. GOLDEN:  Foundation. | 12:36:37 |
| 9 | MS. BARBER:  Form, incomplete, calls for | 12:36:39 |
| 10 | speculation. | 12:36:43 |
| 11 | MR. BRENER:  Join. | 12:36:43 |
| 12 | A  No. | 12:36:44 |
| 13 | Q  In general fair to say that state's | 12:36:44 |
| 14 | attorneys get involved in a homicide case once | 12:36:47 |
| 15 | they get called in by a homicide detective? | 12:36:50 |
| 16 | MS. GOLDEN:  Misstates the prior | 12:36:53 |
| 17 | testimony. | 12:36:54 |
| 18 | MS. BARBER:  Form, foundation, incomplete | 12:36:54 |
| 19 | hypothetical, calls for speculation. | 12:36:57 |
| 20 | MR. ZIBOLSKI:  Join. | 12:37:00 |
| 21 | A  That would be my understanding for the | 12:37:01 |
| 22 | most part. | 12:37:04 |
| 23 | Q  Once the state -- strike that. | 12:37:04 |
| 24 | Once a felony review state's attorney | 12:37:08 |

| | | |
|---|---|---|
| 1 | comes to the station, who takes the lead in the | 12:37:10 |
| 2 | investigation from that point? | 12:37:13 |
| 3 | MS. BARBER: Objection, form, foundation, | 12:37:14 |
| 4 | incomplete hypothetical, calls for speculation. | 12:37:19 |
| 5 | MR. ZIBOLSKI: Join. | 12:37:23 |
| 6 | A The detective is still doing the | 12:37:27 |
| 7 | investigation. He might ask for advice from a | 12:37:30 |
| 8 | state's attorney. The state's attorney will make | 12:37:33 |
| 9 | their decisions on what they're going to do. | 12:37:36 |
| 10 | Q So in terms of decision-making about what | 12:37:38 |
| 11 | next steps are in the investigation, does a | 12:37:41 |
| 12 | homicide detective have to get feedback or | 12:37:44 |
| 13 | permission from a state's attorney once they're on | 12:37:47 |
| 14 | site? | 12:37:50 |
| 15 | MR. BRENER: Objection to form and | 12:37:53 |
| 16 | foundation. | 12:37:55 |
| 17 | A I'm not sure exactly what you're talking | 12:37:57 |
| 18 | about. | 12:38:00 |
| 19 | Q Before you conduct next steps, do you have | 12:38:01 |
| 20 | to check in with a state's attorney, that's what I | 12:38:04 |
| 21 | mean? | 12:38:07 |
| 22 | MS. GOLDEN: Form as to next steps. | 12:38:07 |
| 23 | MR. BRENER: Same objection. | 12:38:09 |
| 24 | A If you're going out to find a witness, no. | 12:38:11 |

1          Q  If you have a witness at the station                    12:38:14

2     before you interview that witness again, do you                 12:38:16

3     have to get permission from the state's attorney?               12:38:19

4          MR. BRENER:  Form, foundation, incomplete                  12:38:24

5     hypothetical.                                                    12:38:29

6          A  You're almost saying that the state's                   12:38:29

7     attorney is running the investigation and they're               12:38:31

8     not.  The detectives are still running the                      12:38:32

9     investigation.                                                   12:38:35

10         Q  And even once the state's attorney is                   12:38:35

11    there, detectives are running the investigation,                12:38:38

12    which they don't have to check in with the state's              12:38:40

13    attorney before they do anything; is that fair?                 12:38:42

14         MS. GOLDEN:  Form.                                         12:38:44

15         MS. BARBER:  Foundation, incomplete                        12:38:46

16    hypothetical.                                                    12:38:48

17         A  No, they don't have to.                                 12:38:49

18         Q  If there are witnesses to still talk to,                12:38:51

19    even after a state's attorney has been called in                12:38:55

20    and is at the station, who decides who's going to               12:38:57

21    talk to those witnesses?                                        12:39:01

22         MS. GOLDEN:  Foundation.                                   12:39:03

23         MS. BARBER:  Form, incomplete                              12:39:04

24    hypothetical.                                                    12:39:07

| | | |
|---|---|---|
| 1 | A  If there's still witnesses out there, I'm | 12:39:07 |
| 2 | sure the detectives will try to find them. | 12:39:10 |
| 3 | Q  And if those witnesses need to be spoken | 12:39:13 |
| 4 | to, even after the state's attorney is at the | 12:39:16 |
| 5 | station, will police officers talk to them on | 12:39:19 |
| 6 | their own? | 12:39:21 |
| 7 | MS. BARBER:  Objection, form, foundation, | 12:39:22 |
| 8 | incomplete hypothetical. | 12:39:23 |
| 9 | MR. BRENER:  Join the objections. | 12:39:25 |
| 10 | A  I'm sure the detective will talk to them | 12:39:28 |
| 11 | on their own. | 12:39:30 |
| 12 | Q  If the detectives have interrogated a | 12:39:37 |
| 13 | suspect and have an incriminating statement from | 12:39:44 |
| 14 | the suspect and the state's attorney is called in, | 12:39:47 |
| 15 | if there was going to be a follow-up conversation | 12:39:50 |
| 16 | with that suspect, would the state's attorney need | 12:39:52 |
| 17 | to participate or can the police officer talk to | 12:39:56 |
| 18 | them on their own? | 12:39:58 |
| 19 | MS. GOLDEN:  Asked and answered. | 12:39:59 |
| 20 | Withdrawn. | 12:40:03 |
| 21 | A  The detective could talk to them on their | 12:40:04 |
| 22 | own. | 12:40:07 |
| 23 | Q  Would they usually check in with the | 12:40:07 |
| 24 | state's attorney before they did that or would it | 12:40:10 |

| | | |
|---|---|---|
| 1 | be up to the officer? | 12:40:12 |
| 2 | MS. GOLDEN:  Foundation. | 12:40:13 |
| 3 | MS. BARBER:  Form. | 12:40:14 |
| 4 | A  I would imagine the detective would inform | 12:40:16 |
| 5 | the state's attorney of what's being said. | 12:40:20 |
| 6 | Q  Would there be regular communication once | 12:40:22 |
| 7 | a state's attorney is involved in a case between | 12:40:26 |
| 8 | the detectives on the case and the state's | 12:40:28 |
| 9 | attorney? | 12:40:28 |
| 10 | MS. GOLDEN:  Foundation. | 12:40:28 |
| 11 | MR. BRENER:  Calls for speculation. | 12:40:33 |
| 12 | MR. ZIBOLSKI:  Objection, foundation. | 12:40:36 |
| 13 | A  Once the state's attorney is in the area, | 12:40:38 |
| 14 | you would keep them appraised of the facts of the | 12:40:41 |
| 15 | case. | 12:40:44 |
| 16 | Q  In terms of when -- even once you have a | 12:40:46 |
| 17 | states's attorney on site, is it essentially up to | 12:40:48 |
| 18 | the detective when they're ready to have that | 12:40:51 |
| 19 | witness or suspect speak to a state's attorney? | 12:40:54 |
| 20 | MS. BARBER:  Can you read that question | 12:41:11 |
| 21 | back, please. | 12:41:11 |
| 22 | (Record read back by the | 12:41:11 |
| 23 | reporter.) | 12:41:13 |
| 24 | MS. GOLDEN:  Form. | 12:41:13 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Foundation. | 12:41:14 |
| 2 | A  What was the question?  I'm sorry. | 12:41:19 |
| 3 | Q  Yeah.  If I understand correctly, even | 12:41:21 |
| 4 | after the state's attorney is present, it's still | 12:41:23 |
| 5 | the detective's investigation, right? | 12:41:26 |
| 6 | A  That's correct. | 12:41:27 |
| 7 | Q  The detective doesn't need permission to | 12:41:28 |
| 8 | interview a witness or a suspect, correct? | 12:41:30 |
| 9 | A  That's correct. | 12:41:31 |
| 10 | Q  If the state's attorney is going to speak | 12:41:32 |
| 11 | to that witness, the officer is going to request | 12:41:36 |
| 12 | it; is that correct? | 12:41:40 |
| 13 | MS. GOLDEN:  Form. | 12:41:41 |
| 14 | MS. BARBER:  Foundation, incomplete | 12:41:43 |
| 15 | hypothetical, calls for speculation. | 12:41:45 |
| 16 | A  Yeah, at some point the detective is going | 12:41:48 |
| 17 | to be seeking charges and the state's attorney is | 12:41:49 |
| 18 | going to want to talk to the witnesses and the | 12:41:52 |
| 19 | suspect.  Does the detective go up to the state's | 12:41:56 |
| 20 | attorney and say will you please talk to him?  No. | 12:42:00 |
| 21 | The state's attorney, to do their job properly, I | 12:42:03 |
| 22 | would assume they would want to talk to him. | 12:42:06 |
| 23 | Q  But the detective is going to talk to that | 12:42:08 |
| 24 | witness anytime they feel they need to even if the | 12:42:10 |

| | | |
|---|---|---|
| 1 | state's attorney has been called; is that fair? | 12:42:15 |
| 2 | MS. GOLDEN:  Form. | 12:42:17 |
| 3 | MS. BARBER:  Objection, form, foundation, | 12:42:17 |
| 4 | incomplete hypothetical, calls for speculation. | 12:42:20 |
| 5 | A  You will talk to the -- you'll talk to the | 12:42:23 |
| 6 | witnesses.  Obviously you want to have an idea of | 12:42:27 |
| 7 | what they saw.  Then you'll relate that to the | 12:42:31 |
| 8 | state's attorneys.  And that's why you talk to | 12:42:37 |
| 9 | them so you can give the state's attorney a heads | 12:42:39 |
| 10 | up on what this witness is about. | 12:42:42 |
| 11 | Q  The detective who decides when they think | 12:42:44 |
| 12 | the case is ready to seek charges from the state's | 12:42:48 |
| 13 | attorney? | 12:42:52 |
| 14 | MS. GOLDEN:  Asked and answered. | 12:42:52 |
| 15 | A  Well, that's usually when you call the | 12:42:53 |
| 16 | state's attorney, when you feel your case is ready | 12:42:55 |
| 17 | to go to the next step shall we say. | 12:42:59 |
| 18 | Q  And if I understand correctly, the | 12:43:02 |
| 19 | decision about when to call the state's attorney | 12:43:06 |
| 20 | specifically for seeking charges, detective makes | 12:43:09 |
| 21 | that call when they think it's time; is that | 12:43:12 |
| 22 | right? | 12:43:16 |
| 23 | A  Yes. | 12:43:16 |
| 24 | Q  Okay.  Now, once the detectives made the | 12:43:16 |

| | | |
|---|---|---|
| 1 | call to seek charges and have the state's attorney | 12:43:24 |
| 2 | come in, then if there are -- the state's attorney | 12:43:28 |
| 3 | -- strike that. | 12:43:32 |
| 4 | Once the state's attorney shows up because | 12:43:32 |
| 5 | the detectives are seeking charges, would | 12:43:35 |
| 6 | subsequent interviews with the suspect then be | 12:43:38 |
| 7 | conducted with the state's attorney? | 12:43:41 |
| 8 | MS. GOLDEN:  Incomplete hypothetical. | 12:43:43 |
| 9 | MR. BRENER:  Objection to form and | 12:43:46 |
| 10 | foundation. | 12:43:48 |
| 11 | MS. BARBER:  Calls for speculation. | 12:43:48 |
| 12 | MS. GOLDEN:  Foundation. | 12:43:50 |
| 13 | A  Would the state's attorney interview the | 12:43:51 |
| 14 | witnesses and the suspects?  Yes. | 12:43:54 |
| 15 | Q  Okay.  Got it.  If -- so a typical | 12:43:56 |
| 16 | scenario is the detectives have spoken to a | 12:43:59 |
| 17 | suspect and the suspect in some cases gives an | 12:44:02 |
| 18 | incriminating statement.  With me so far? | 12:44:05 |
| 19 | MS. GOLDEN:  Form as to typical. | 12:44:08 |
| 20 | Q  With me so far? | 12:44:10 |
| 21 | A  Okay. | 12:44:11 |
| 22 | Q  Now, in a case like that, the detective | 12:44:12 |
| 23 | thinks, all right, I've spoken to the witness. | 12:44:15 |
| 24 | I've got some incriminating statement that I think | 12:44:17 |

| | | |
|---|---|---|
| 1 | is sufficient to get charges approved.  Then they | 12:44:19 |
| 2 | could call the states's attorney, correct? | 12:44:22 |
| 3 | A  Yes. | 12:44:24 |
| 4 | Q  And then once the state's attorneys come, | 12:44:25 |
| 5 | if there's any subsequent interview with that | 12:44:30 |
| 6 | suspect, would it be done by the officer or by the | 12:44:33 |
| 7 | state's attorney? | 12:44:36 |
| 8 | MR. BRENER:  Incomplete hypothetical. | 12:44:37 |
| 9 | Calls for speculation, foundation. | 12:44:39 |
| 10 | A  Unless the suspect evokes his fifth | 12:44:46 |
| 11 | amendment rights, the state's attorney at some | 12:44:51 |
| 12 | point will probably interview him. | 12:44:55 |
| 13 | Q  Would it be common for the detectives even | 12:44:56 |
| 14 | after they've called the state's attorney to | 12:44:58 |
| 15 | conduct additional interrogations of a suspect? | 12:45:00 |
| 16 | MR. BRENER:  Form and foundation. | 12:45:03 |
| 17 | A  Again every case is different. | 12:45:06 |
| 18 | Q  Are there times when after you've called | 12:45:08 |
| 19 | the state's attorney because you already have an | 12:45:10 |
| 20 | incriminating statement from the suspect that you | 12:45:12 |
| 21 | conducted a subsequent interrogations of the | 12:45:15 |
| 22 | suspect without the state's attorney participating | 12:45:17 |
| 23 | even though they're present? | 12:45:19 |
| 24 | MR. BRENER:  Anand, to clarify, when you | 12:45:25 |

| | | |
|---|---|---|
| 1 | say present -- | 12:45:27 |
| 2 | MR. SWAMINATHAN:  At the station but not | 12:45:28 |
| 3 | in the interview.  Thank you. | 12:45:29 |
| 4 | MR. BRENER:  Okay. | 12:45:31 |
| 5 | A  I don't recall ever doing it. | 12:45:34 |
| 6 | Q  Can you think of any reasons why you would | 12:45:38 |
| 7 | have a scenario where you already got an | 12:45:40 |
| 8 | incriminating statement from the witness and then | 12:45:43 |
| 9 | you've called in the state's attorney but then you | 12:45:45 |
| 10 | conduct a subsequent interrogation without the | 12:45:48 |
| 11 | state's attorney participating? | 12:45:50 |
| 12 | MS. BARBER:  Objection, form, foundation, | 12:45:53 |
| 13 | incomplete hypothetical, calls for speculation. | 12:45:55 |
| 14 | A  There could be.  It all depends.  It would | 12:46:02 |
| 15 | be on the facts of the case. | 12:46:05 |
| 16 | Q  Can you think of any, as you sit here | 12:46:06 |
| 17 | today? | 12:46:10 |
| 18 | A  Hypothetically, let's say the guy admits | 12:46:12 |
| 19 | to shooting somebody, gives it all out and says I | 12:46:16 |
| 20 | threw the gun over here.  So you're not going to | 12:46:19 |
| 21 | wait for the state's attorney to come out before | 12:46:24 |
| 22 | you look for the gun or send somebody else to look | 12:46:25 |
| 23 | for the gun.  Even if the state's attorney is | 12:46:28 |
| 24 | coming in, reviewing the case file, you might talk | 12:46:31 |

| | | |
|---|---|---|
| 1 | to the guy in order to try to pinpoint where that | 12:46:34 |
| 2 | gun is so he can recover it so nobody else could | 12:46:36 |
| 3 | get harmed by it, little kid find it, something | 12:46:40 |
| 4 | like that.  If he gives a statement that is -- | 12:46:44 |
| 5 | again something else just -- you know, where he's | 12:46:52 |
| 6 | incriminating himself totally and there's | 12:46:56 |
| 7 | another -- | 12:47:01 |
| 8 | Q  Are you giving me another example now? | 12:47:02 |
| 9 | A  Just another example. | 12:47:05 |
| 10 | Q  Okay. | 12:47:05 |
| 11 | A  I mean, it's part of the same example. | 12:47:07 |
| 12 | Q  Tell me. | 12:47:09 |
| 13 | A  Let's say a knife, he threw a knife away | 12:47:10 |
| 14 | in the river.  You're trying to determine exactly | 12:47:12 |
| 15 | where he threw the knife.  If they did a burglary | 12:47:15 |
| 16 | or a robbery, what they did with the proceeds. | 12:47:19 |
| 17 | You would keep talking to them over that.  If he | 12:47:21 |
| 18 | said he went to a pawn shop, you'd go to different | 12:47:24 |
| 19 | pawn shops.  Even if in a homicide where they | 12:47:29 |
| 20 | stole something.  If you want to determine if | 12:47:32 |
| 21 | property was taken, what he did with it. | 12:47:34 |
| 22 | Q  If you -- | 12:47:37 |
| 23 | MS. GOLDEN:  Are you finished? | 12:47:37 |
| 24 | A  Yeah. | 12:47:39 |

1          Q   If you have an instance where -- strike                12:47:39

2    that.                                                            12:47:43

3          If you have a case where the homicide                      12:47:43

4    suspect has walked through the confession with you               12:47:46

5    and then you've called in the state's attorney,                  12:47:50

6    would you ever meet with the suspect again on your               12:47:53

7    own to have them sort of lay out the facts again                 12:47:56

8    for you before meeting with the state's attorney?                12:47:59

9          MS. GOLDEN:   Form.                                        12:48:02

10         MS. BARBER:   Foundation.                                  12:48:04

11         A   Lay out the facts of the homicide --                   12:48:07

12         Q   What I mean is have them walk through the              12:48:11

13   confession again.                                                12:48:13

14         MS. GOLDEN:   Form.                                        12:48:14

15         A   Before the -- when the state's attorney                12:48:18

16   arrives in the station?                                          12:48:21

17         Q   Even after the state's attorney arrives at             12:48:22

18   the station, would you go in and talk to that                    12:48:25

19   suspect again and have them walk through the                     12:48:27

20   confession again without the state's attorney                    12:48:29

21   participating?                                                   12:48:31

22         MS. GOLDEN:   The question is vague and                    12:48:32

23   confusing.                                                       12:48:34

24         MS. BARBER:   Incomplete hypothetical,                     12:48:35

1    calls for speculation.                          12:48:37

2       A   Again, I can't -- I can't think of a     12:48:42

3    reason why it would.  Maybe if there was a reason  12:48:45

4    I would but...                                  12:48:48

5       Q   Can't think of one?                      12:48:48

6       A   I can't think of one.                    12:48:50

7       Q   In your practice did you have instances  12:48:51

8    where after somebody walked through a confession  12:48:54

9    with you you were seeking charges that you went  12:48:55

10   back in and walked through it again with them   12:48:58

11   before the state's attorney joined?             12:49:00

12      A   I don't recall doing it.                 12:49:03

13      Q   Was -- did you get any training about    12:49:05

14   working with the witness to make sure they got  12:49:09

15   their story straight or to practice their story  12:49:11

16   before meeting with the state's attorney?       12:49:14

17       MS. GOLDEN:  Form.                          12:49:16

18      A   The word practice, I'm not -- do we have  12:49:21

19   them practice what they're going to say?  No.   12:49:27

20      Q   Could you go through a confession multiple  12:49:30

21   times with a suspect in order to get the story  12:49:33

22   consistent and straight before they meet with the  12:49:38

23   state's attorney?                               12:49:40

24       MS. GOLDEN:  Form.                          12:49:41

| | | |
|---|---|---|
| 1 | A  You would talk to them until -- if he | 12:49:45 |
| 2 | gives -- if he says something and you talk to them | 12:49:49 |
| 3 | to try to make it clear for everybody to | 12:49:56 |
| 4 | understand. | 12:49:59 |
| 5 | Q  If the story wasn't making sense, you | 12:50:00 |
| 6 | might go through it again several times with a | 12:50:02 |
| 7 | witness before you called the state's attorney; do | 12:50:05 |
| 8 | I have that right? | 12:50:07 |
| 9 | MS. BARBER:  Objection, form, foundation, | 12:50:08 |
| 10 | misstates the witness's testimony. | 12:50:09 |
| 11 | A  This goes back to what you were asking | 12:50:13 |
| 12 | before about whether it was implausible.  Again, I | 12:50:16 |
| 13 | have to know what he said before I could answer | 12:50:21 |
| 14 | that, you know, if it didn't make sense.  If it | 12:50:23 |
| 15 | didn't make sense, it's sort of implausible. | 12:50:27 |
| 16 | Q  Then you might go through with them again? | 12:50:29 |
| 17 | A  I would again try to figure out the truth | 12:50:32 |
| 18 | and try to find out why it didn't make sense, what | 12:50:34 |
| 19 | is the actual truth here. | 12:50:36 |
| 20 | Q  Tell me what the dynamic between the | 12:50:39 |
| 21 | felony review state's attorneys and the | 12:50:44 |
| 22 | detectives.  Was it a friendly relationship?  Was | 12:50:46 |
| 23 | it a confrontational relationship? | 12:50:49 |
| 24 | MR. BRENER:  Objection to form, foundation | 12:50:51 |

1    calls, for speculation.                                    12:50:53

2        A   They had a job to do.  We had a job to do.         12:50:55

3        Q   Were you folks friendly?                           12:50:58

4            MS. GOLDEN:  Form.                                  12:51:00

5            MR. BRENER:  Join.                                  12:51:02

6        A   Again some I got along with better than            12:51:06

7    others but same with the detective division, same          12:51:08

8    with defense attorneys.                                     12:51:11

9        Q   The felony review state's attorneys who            12:51:14

10   would come to approve charges, would you know them         12:51:16

11   on a first-name basis?                                      12:51:19

12           MS. GOLDEN:  Foundation.                            12:51:21

13           MS. BARBER:  Form.                                  12:51:23

14       A   It all depends on how many times I dealt           12:51:26

15   with them.  Obviously if one came out and I had a          12:51:28

16   lot of dealings with them, I would know him better         12:51:33

17   than a guy that I never dealt with.                         12:51:35

18       Q   In general -- putting aside people who             12:51:37

19   were new, for example, to that position --                 12:51:40

20           MS. GOLDEN:  People who what?                       12:51:43

21       Q   -- over time would you get to know the             12:51:45

22   state's attorneys who were coming out on felony            12:51:46

23   review?                                                     12:51:49

24           MS. GOLDEN:  I didn't hear that question.          12:51:49

| | | |
|---|---|---|
| 1 | Can you... | 12:51:49 |
| 2 | (Record read back by the | 12:51:49 |
| 3 | reporter.) | 12:52:01 |
| 4 | MS. GOLDEN:  That's what I didn't hear. | 12:52:01 |
| 5 | A  If I dealt with them enough, then I become | 12:52:04 |
| 6 | more acquainted with them. | 12:52:07 |
| 7 | Q  You mentioned yesterday that sometimes you | 12:52:09 |
| 8 | go out for drinks after work with fellow police | 12:52:12 |
| 9 | officers, fair? | 12:52:16 |
| 10 | A  Yeah. | 12:52:16 |
| 11 | Q  Would you ever go out for drinks with | 12:52:16 |
| 12 | felony review state's attorneys? | 12:52:18 |
| 13 | A  I don't recall ever going out with the | 12:52:20 |
| 14 | state's attorneys to drink.  I take that back. | 12:52:22 |
| 15 | Can I make one correction? | 12:52:26 |
| 16 | Q  Please. | 12:52:28 |
| 17 | A  I was in a club called the Stewart Club. | 12:52:28 |
| 18 | The state's attorneys were also in that club.  You | 12:52:31 |
| 19 | know, you'd have 200 people there, 150 people | 12:52:34 |
| 20 | there.  I would sit at the table with my family. | 12:52:37 |
| 21 | And if I seen a state's attorney, I'd say hello. | 12:52:40 |
| 22 | If I seen a judge, I'd say hello.  We had beer | 12:52:43 |
| 23 | there and corned beef sandwiches.  Was I going out | 12:52:47 |
| 24 | drinking with them specifically?  No.  Can I say I | 12:52:51 |

| | | |
|---|---|---|
| 1 | never had a beer with them?  I did. | 12:52:53 |
| 2 | Q   Thank you. | 12:52:56 |
| 3 | Can you just spell Stewart Club? | 12:52:56 |
| 4 | A   Yes.  S-t-e-w-a-r-t. | 12:53:00 |
| 5 | Q   When state's attorneys came -- strike | 12:53:06 |
| 6 | that. | 12:53:09 |
| 7 | When you called out a state's attorney on | 12:53:09 |
| 8 | a case to approve charges, would you then speak | 12:53:12 |
| 9 | with that state's attorney when they arrived? | 12:53:15 |
| 10 | A   If I was the one that called him out, yes. | 12:53:17 |
| 11 | Q   And would you share information with them? | 12:53:19 |
| 12 | A   Well, yes. | 12:53:22 |
| 13 | Q   How would you go about sharing information | 12:53:23 |
| 14 | with the state's attorneys? | 12:53:26 |
| 15 | MS. GOLDEN:  Other than the speaking that | 12:53:27 |
| 16 | he just described? | 12:53:29 |
| 17 | MR. SWAMINATHAN:  Objection to form.  Go | 12:53:30 |
| 18 | ahead. | 12:53:32 |
| 19 | MS. GOLDEN:  And asked and answered. | 12:53:34 |
| 20 | A   We talked to them and obviously whatever | 12:53:36 |
| 21 | reports we had available they would review. | 12:53:38 |
| 22 | Q   So you would talk to them and give them | 12:53:41 |
| 23 | any reports you had available up to that point; is | 12:53:43 |
| 24 | that right? | 12:53:47 |

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Form and foundation. | 12:53:47 |
| 2 | A   That's correct. | 12:53:49 |
| 3 | Q   If you had GPR's, would you give him GPR's | 12:53:50 |
| 4 | -- strike that. | 12:53:53 |
| 5 | When you say report, are you referring to | 12:53:53 |
| 6 | GPR's or supplementary reports? | 12:53:56 |
| 7 | A   Mostly supplemental reports. | 12:53:58 |
| 8 | Q   You wouldn't give them copies of your | 12:54:00 |
| 9 | GPR's; is that right? | 12:54:02 |
| 10 | MS. GOLDEN:  Asked and answered. | 12:54:03 |
| 11 | A   No. | 12:54:05 |
| 12 | Q   And was it often the case that at the time | 12:54:05 |
| 13 | the state's attorney was arriving on a case in | 12:54:08 |
| 14 | many instances the supplementary report wasn't | 12:54:13 |
| 15 | ready for them yet; is that fair? | 12:54:15 |
| 16 | MS. BARBER:  Objection, form, foundation, | 12:54:16 |
| 17 | incomplete hypothetical, calls for speculation. | 12:54:19 |
| 18 | A   Well, I could say the clear closing report | 12:54:24 |
| 19 | wasn't done because it can't be done until they | 12:54:26 |
| 20 | either reject charges or approve charges. | 12:54:30 |
| 21 | Q   Developments that had taken place that | 12:54:32 |
| 22 | same day that you called the state's attorney, | 12:54:35 |
| 23 | usually those wouldn't be in supplementary reports | 12:54:37 |
| 24 | to share with the state's attorney; is that fair? | 12:54:40 |

1       A   That's fair.  You would relate to them          12:54:42

2    verbatim what was going on.                             12:54:44

3       Q   When would you say the primary source of        12:54:46

4    information for the state's attorneys when they         12:54:49

5    came was information shared orally by the primary       12:54:51

6    detectives on the case?                                 12:54:57

7        MR. BRENER:  Objection to form.                     12:54:58

8       A   I don't know what other information they         12:55:02

9    would have.                                             12:55:05

10      Q   That would be the primary one?                   12:55:06

11      A   I --                                             12:55:07

12       MS. BARBER:  Objection, form.                       12:55:07

13      A   Again, I can't answer for the state's           12:55:09

14   attorney.  I would give him the information that I      12:55:10

15   had.  I would inform him of any information that        12:55:12

16   wasn't in the reports that we did.  What other          12:55:16

17   information they had I don't know.                      12:55:19

18      Q   Be fair to say when the state's attorneys        12:55:20

19   first arrived, much of the information that they        12:55:24

20   were receiving was coming from the detectives           12:55:26

21   orally?                                                 12:55:29

22       MS. GOLDEN:  Foundation.                            12:55:30

23       MR. BRENER:  Objection, form.                       12:55:31

24       MS. GOLDEN:  Foundation you're asking --            12:55:33

| | | |
|---|---|---|
| 1 | okay. You're asking him about what somebody else | 12:55:36 |
| 2 | who held a position that he never had, what kind | 12:55:38 |
| 3 | of information they had when they arrived? | 12:55:41 |
| 4 | MR. SWAMINATHAN: If -- | 12:55:44 |
| 5 | MS. GOLDEN: Zero foundation for that. | 12:55:44 |
| 6 | MR. SWAMINATHAN: There's a difference | 12:55:46 |
| 7 | between asking what they relied on and what they | 12:55:48 |
| 8 | were receiving. That's why it's important to | 12:55:50 |
| 9 | listen to my questions before -- | 12:55:50 |
| 10 | MS. GOLDEN: Would you read -- sure. | 12:55:54 |
| 11 | Maybe I misheard it. I thought you said what they | 12:55:54 |
| 12 | had. Can you read the question back. | 12:55:54 |
| 13 | Frankly, could have received it from | 12:56:03 |
| 14 | somebody else, not a police officer. | 12:56:05 |
| 15 | MR. SWAMINATHAN: Objection to form. You | 12:56:07 |
| 16 | want to read it back? | 12:56:08 |
| 17 | MS. GOLDEN: I do. | 12:56:08 |
| 18 | (Record read back by the | 12:56:08 |
| 19 | reporter.) | 12:56:23 |
| 20 | MS. GOLDEN: Still there's no foundation | 12:56:23 |
| 21 | for him to answer -- for you to ask him this | 12:56:25 |
| 22 | particular question. | 12:56:27 |
| 23 | A You know, I can only answer what we would | 12:56:30 |
| 24 | give the state's attorney. I can't answer what | 12:56:32 |

1   the state's attorney already knew.                    12:56:34

2       Q  Was the primary source of information that     12:56:36

3   you would give to the state's attorney what you       12:56:38

4   communicated orally to them as the detective?         12:56:40

5       MS. GOLDEN:  Form.                                 12:56:43

6       A  It would be whatever reports we had plus        12:56:45

7   orally.  That's what we give to the state's          12:56:47

8   attorney's office.                                    12:56:49

9       Q  During the course of the state's               12:56:51

10  attorney's involvement once they were called,        12:56:57

11  would you have a back and forth with them during     12:57:03

12  the course of that process?                          12:57:06

13      MS. GOLDEN:  Form.                                 12:57:07

14      MS. BARBER:  Foundation, incomplete               12:57:08

15  hypothetical.                                         12:57:08

16      A  We could, yes.                                  12:57:16

17      Q  During the course of their involvement at      12:57:16

18  the station would state's attorney's commonly         12:57:20

19  consult with the detectives who were leading the      12:57:24

20  case?                                                 12:57:27

21      MR. BRENER:  Objection to form.                    12:57:27

22      MR. BURNS:  Join.                                   12:57:29

23      MS. BARBER:  Incomplete hypothetical.             12:57:29

24      A  When you say consult, we would talk, if        12:57:31

| | | |
|---|---|---|
| 1 | that's what you're asking, yes. | 12:57:33 |
| 2 | Q  Even after a state's attorney goes in -- | 12:57:34 |
| 3 | strike that. | 12:57:37 |
| 4 | I mean, the states's attorney obviously | 12:57:37 |
| 5 | consults with the detectives before they go in to | 12:57:39 |
| 6 | interview a witness or suspect, correct? | 12:57:41 |
| 7 | MS. GOLDEN:  Asked and answered. | 12:57:43 |
| 8 | MR. BRENER:  Same objection to form. | 12:57:44 |
| 9 | A  We would talk, yes. | 12:57:46 |
| 10 | Q  And would you also talk to them even after | 12:57:48 |
| 11 | they went in and interviewed witnesses and | 12:57:50 |
| 12 | suspects? | 12:57:53 |
| 13 | MR. BRENER:  Objection to form as to the | 12:57:54 |
| 14 | word consult. | 12:57:56 |
| 15 | A  That was my question.  Consult to me means | 12:57:57 |
| 16 | -- and tell me if I'm wrong -- is that you're | 12:58:00 |
| 17 | asking advice.  I'm going to consult with an | 12:58:02 |
| 18 | attorney to get an advice, okay?  I don't know -- | 12:58:05 |
| 19 | they're not asking for advice.  We're talking over | 12:58:08 |
| 20 | facts of the case.  He might consult with another | 12:58:10 |
| 21 | state's attorney, maybe I don't know. | 12:58:13 |
| 22 | Q  Thank you. | 12:58:17 |
| 23 | During the time you were a detective, | 12:58:18 |
| 24 | you're aware that state's attorneys would often | 12:58:22 |

| | | |
|---|---|---|
| 1 | take handwritten statements from witnesses and | 12:58:25 |
| 2 | suspects, correct? | 12:58:27 |
| 3 | A  That's correct. | 12:58:28 |
| 4 | Q  You're aware that they would also take | 12:58:29 |
| 5 | court reported statements from suspects, correct? | 12:58:32 |
| 6 | A  That's correct. | 12:58:34 |
| 7 | Q  What was your understanding of when they | 12:58:35 |
| 8 | would take a handwritten statement versus a court | 12:58:39 |
| 9 | reported statement? | 12:58:42 |
| 10 | MR. BRENER:  Objection to foundation. | 12:58:43 |
| 11 | MR. BURNS:  Join. | 12:58:45 |
| 12 | A  They made that decision, and that was | 12:58:47 |
| 13 | their decision. | 12:58:48 |
| 14 | Q  Do you have any idea what were -- when | 12:58:48 |
| 15 | they would choose to make a handwritten statement | 12:58:51 |
| 16 | versus a court reported statement? | 12:58:54 |
| 17 | MR. BURNS:  Objection, asked and answered. | 12:58:56 |
| 18 | A  That's their decision.  I have no -- I | 12:58:58 |
| 19 | never asked them why they would take a court | 12:59:01 |
| 20 | reported statement or a handwritten statement. | 12:59:04 |
| 21 | Q  What was your understanding of when they | 12:59:06 |
| 22 | would take a statement at all versus not take any | 12:59:08 |
| 23 | statement? | 12:59:11 |
| 24 | MR. BURNS:  Objection, foundation, form. | 12:59:12 |

1    A  That would be their decision.  Maybe I'd          12:59:15

2  ask them why on any given case but that would be      12:59:18

3  their decision whether they wanted to take a          12:59:22

4  statement or not.                                     12:59:24

5    Q  So the issue of whether to take a                12:59:25

6  handwritten statement or not, that would be the       12:59:28

7  state's attorney's decision; is that right?           12:59:32

8        MR. BRENER:  Foundation.                        12:59:33

9        MR. BURNS:  Objection, foundation and           12:59:35

10  form.                                                 12:59:37

11    A  That would be my understanding, yes.            12:59:37

12    Q  In terms of when to take the handwritten        12:59:39

13  statement, would that be the state's attorney's      12:59:42

14  decision?                                             12:59:45

15        MR. BRENER:  Foundation.                        12:59:46

16        MR. BURNS:  Form.                               12:59:48

17    A  Yes, they're taking the statement.             12:59:49

18    Q  Detectives have any input on whether to        12:59:49

19  take a handwritten statement or not?                  12:59:52

20        MS. GOLDEN:  Asked and answered.               12:59:54

21    A  That's their decision.  I had no input on      12:59:57

22  that.                                                 13:00:00

23    Q  And do detectives have any input on when       13:00:00

24  to take a handwritten statement?                      13:00:04

1      MS. GOLDEN:  Asked and answered.                13:00:06

2    A  That would be up to the state's attorneys       13:00:08

3  when they wanted to take their statements.           13:00:10

4    Q  Did you have any input as a detective on        13:00:12

5  that?                                                13:00:15

6      MS. GOLDEN:  Asked and answered.                13:00:15

7    A  No, that would be their decision.               13:00:18

8    Q  When state's attorneys took handwritten         13:00:21

9  statements, were you sometimes present when          13:00:29

10 handwritten statements were taken?                   13:00:32

11   A  Yes.                                            13:00:34

12   Q  The process of taking down the handwritten      13:00:34

13 statement, where did that occur?                     13:00:37

14     MS. GOLDEN:  Okay.  Foundation.                  13:00:40

15   A  It could occur anywhere and everywhere.         13:00:48

16   Q  Let's start with in the Area 5.                 13:00:51

17   A  Okay.                                           13:00:53

18   Q  In Area 5 where would the state's               13:00:54

19 attorneys sit when they were taking handwritten      13:00:58

20 statements?                                          13:01:00

21   A  In one of the offices.  It might be in the      13:01:00

22 interview room.  We did them in a different spots.   13:01:03

23   Q  Would they sometimes do the handwritten         13:01:10

24 statements right in the interrogation rooms with     13:01:15

1   the witness?                                           13:01:18

2       A   I'm trying to remember exactly.  I imagine     13:01:19

3   they did.  I can't say for sure what office, where     13:01:24

4   they would do it but I would imagine yes.              13:01:27

5       Q   In terms of when they took a statement in      13:01:31

6   relation to the -- in relation to interviewing the     13:01:34

7   suspect -- you understand what I'm asking now?         13:01:37

8           In other words, so what I'm asking is,         13:01:41

9   they interview a suspect.  They decide they're         13:01:43

10  going to take a handwritten statement.                 13:01:47

11      A   Okay.                                          13:01:49

12      Q   Do they take the handwritten statement         13:01:49

13  right then and there, right after they just talked     13:01:51

14  to the witness?  Do they take it later?  Do they       13:01:54

15  leave the room?  How does it work?                     13:01:57

16      MR. BRENER:  Form and foundation,                  13:01:58

17  incomplete hypothetical.                               13:01:59

18      MR. BURNS:  Join.                                  13:02:01

19      A   That's up to the state's attorney.             13:02:02

20      Q   When you were with the state's attorneys       13:02:04

21  -- strike that.                                        13:02:08

22          In your career fair to say many times          13:02:08

23  where a state's attorney would interview your          13:02:12

24  suspect and you would be there during the course       13:02:15

| | | |
|---|---|---|
| 1 | of that state's attorney interview? | 13:02:18 |
| 2 | MS. GOLDEN:  Asked and answered. | 13:02:19 |
| 3 | MR. BURNS:  Objection, form. | 13:02:20 |
| 4 | A  Well, yes. | 13:02:22 |
| 5 | Q  Who made the decision about whether a | 13:02:23 |
| 6 | detective would be in the room while the state's | 13:02:25 |
| 7 | attorney interviewed a suspect? | 13:02:29 |
| 8 | MS. GOLDEN:  Foundation. | 13:02:30 |
| 9 | A  Normally we go in there.  At certain | 13:02:37 |
| 10 | aspects, the state's attorney would ask us to step | 13:02:40 |
| 11 | out and talk individually with the suspect.  We | 13:02:43 |
| 12 | would then come back in, you know, again. | 13:02:46 |
| 13 | Q  So the detectives would always be there | 13:02:50 |
| 14 | except for some portion of the statements? | 13:02:54 |
| 15 | MS. GOLDEN:  Form. | 13:02:56 |
| 16 | A  Most of the time, yes. | 13:02:57 |
| 17 | Q  And what were the portions where the | 13:02:59 |
| 18 | detective would be asked to step out? | 13:03:00 |
| 19 | MR. BRENER:  Objection to foundation. | 13:03:03 |
| 20 | A  I'm not sure exactly what they asked them | 13:03:05 |
| 21 | because I wasn't in there. | 13:03:08 |
| 22 | Q  Do you have any idea why you were being | 13:03:09 |
| 23 | asked to step out for portions of these | 13:03:11 |
| 24 | interviews? | 13:03:14 |

| | | |
|---|---|---|
| 1 | A  My understanding is they were asking how | 13:03:14 |
| 2 | they were treated, were they fed, everything else. | 13:03:16 |
| 3 | Q  Were you ever allowed as a detective to | 13:03:18 |
| 4 | stay in the room when those questions were asked? | 13:03:20 |
| 5 | A  When the handwritten statement is taken | 13:03:23 |
| 6 | and asked it again, the detective will be there | 13:03:30 |
| 7 | because he will be a witness to that handwritten | 13:03:34 |
| 8 | statement or court reported statement.  At that | 13:03:38 |
| 9 | point they're still in there.  During the initial | 13:03:40 |
| 10 | interview they would ask us to step out. | 13:03:41 |
| 11 | Q  Okay.  So if I understand the process, at | 13:03:44 |
| 12 | some point the state's attorney decides to | 13:03:53 |
| 13 | interview the suspect, right? | 13:03:55 |
| 14 | MS. GOLDEN:  Asked and answered. | 13:03:57 |
| 15 | Q  And the detective is in the room for that | 13:03:59 |
| 16 | interview?  With me so far? | 13:04:01 |
| 17 | MS. GOLDEN:  Asked and answered. | 13:04:03 |
| 18 | A  Yes. | 13:04:04 |
| 19 | Q  Does the detective participate in any of | 13:04:04 |
| 20 | the questioning of the witness? | 13:04:08 |
| 21 | MS. GOLDEN:  Form, foundation. | 13:04:09 |
| 22 | A  He could. | 13:04:14 |
| 23 | Q  Up to the detective? | 13:04:16 |
| 24 | MS. BARBER:  Form. | 13:04:19 |

```
1      A   Yes, because the detective interviewed the       13:04:22

2   person already.  So if there's a clarification,         13:04:25

3   the detective might ask him something.  So it           13:04:28

4   would clarify it for the state's attorney a little      13:04:31

5   better.                                                 13:04:34

6      Q   Could the detectives ask questions to get        13:04:34

7   the witness -- you know, add information they           13:04:37

8   might have left out that they told the detectives       13:04:40

9   before?                                                 13:04:44

10      MS. BARBER:  Could you please read that             13:04:47

11   back.                                                  13:04:47

12                  (Record read back by the               13:04:47

13                  reporter.)                              13:04:48

14      Q   Let me ask it again.  I'm looking at your       13:04:48

15   screen and -- could the detective ask questions to     13:04:49

16   elicit information from the witness that the           13:04:53

17   witness might have missed that they previously         13:04:56

18   told the detective?                                    13:04:58

19      MS. BARBER:  Objection, form, foundation,           13:05:00

20   incomplete hypothetical.                               13:05:03

21      A   Well, sure.  If the suspect told the           13:05:05

22   detective something and then as he's recounting        13:05:09

23   the facts to the state's attorney, if he forgets       13:05:13

24   to mention something, the detective might bring        13:05:17
```

1    up, well, didn't you, you know -- hopefully -- you        13:05:21

2    know, you want to get the truth out.  So it would        13:05:25

3    try to clarify that because you already told the         13:05:30

4    state's attorney this is what he said.  So to show       13:05:33

5    you're not lying to the state's attorney and this        13:05:36

6    is what the guy actually said, the suspect              13:05:38

7    actually said.  It's just to clarify everything         13:05:41

8    for the state's attorney.                                13:05:44

9        Q  Where you had -- that was -- that was             13:05:45

10   common, right, where you have a suspect going           13:05:48

11   through the story with the state's attorney and         13:05:52

12   they leave out something that they told you             13:05:55

13   before?                                                  13:05:57

14       MS. BARBER:  Objection, form, foundation.           13:05:57

15       MR. BRENER:  I'll join the objections.              13:05:59

16       A  The detective would usually say something.       13:06:06

17   You know, what I would say --                            13:06:11

18       Q  That's what I was going to --                    13:06:13

19       MS. GOLDEN:  Please.                                 13:06:15

20       Q  That's why --                                    13:06:16

21       MS. GOLDEN:  No, no, no, Anand, you're              13:06:17

22   interrupting him.                                        13:06:18

23       A  Again, it all depends on the interview           13:06:20

24   itself.                                                  13:06:22

1    Q  Was there -- what was the type of language     13:06:24

2  you used if you got a suspect who's going through   13:06:26

3  the story with the state's attorney and leaves out  13:06:29

4  a piece of what they told you before?               13:06:32

5       MS. BARBER:  Objection, form, foundation,      13:06:34

6  incomplete hypothetical, calls for speculation.     13:06:35

7    A  What kind of language?                          13:06:38

8    Q  Yeah.                                           13:06:40

9    A  What do you mean?  How did I speak?             13:06:40

10   Q  Yeah.                                           13:06:42

11   A  Normally.                                       13:06:42

12   Q  Would you say, hey, did you also tell me        13:06:43

13 about this or didn't you also tell me about that?   13:06:47

14   A  I might ask did you mention anything about      13:06:48

15 this to me.                                          13:06:51

16   Q  Okay.  Once -- strike that.                     13:06:52

17      When the state's attorney goes into the         13:06:59

18 room to interview the suspect for the first time,   13:07:01

19 they're not taking a handwritten statement right    13:07:04

20 away; is that right?                                 13:07:06

21      MR. BRENER:  Objection to foundation.           13:07:07

22   A  I believe that was correct.                     13:07:09

23   Q  They're usually interviewing the person         13:07:10

24 first; is that right?                                13:07:14

1          MR. BRENER:  Same objection.                    13:07:15

2      A  Yes.                                             13:07:17

3      Q  And if they decide to do a handwritten          13:07:17

4  statement, then that comes after they've conducted     13:07:20

5  some interview of the witness; is that right?          13:07:23

6          MR. BRENER:  Same objection.                   13:07:25

7      A  Yes, that's correct.                            13:07:26

8      Q  And then in your experience when you've         13:07:28

9  been sitting in the room for this process, once        13:07:30

10  the state's attorney has interviewed the person       13:07:33

11  and decided to take a statement, what happens         13:07:34

12  next?                                                 13:07:36

13          MS. GOLDEN:  Foundation.                      13:07:38

14          MS. BARBER:  Form.                            13:07:39

15      A  The state's attorney, if I remember            13:07:42

16  correctly -- this is a long time ago -- would         13:07:44

17  interview the person.  He would then decide what      13:07:46

18  kind of statement they were going to take.  He        13:07:51

19  would do the handwritten statement, and it would      13:07:54

20  be reviewed by the suspect, the person given the      13:07:58

21  handwritten statement, with the detective.  If        13:08:02

22  there was mistakes made in the handwritten            13:08:05

23  statement -- and I believe a lot of times they        13:08:10

24  would make them purposely to make sure the person     13:08:12

| | | |
|---|---|---|
| 1 | is reading the statement.  We would initial in the | 13:08:14 |
| 2 | spots where mistakes were and then we all signed | 13:08:18 |
| 3 | the handwritten statement. | 13:08:22 |
| 4 | Q  If the person missed some of the | 13:08:23 |
| 5 | deliberate mistakes, what would you do then? | 13:08:26 |
| 6 | A  I would do nothing. | 13:08:29 |
| 7 | Q  Would the state's attorney point out those | 13:08:30 |
| 8 | places to the suspect? | 13:08:33 |
| 9 | A  I don't recall.  I believe he would but | 13:08:38 |
| 10 | I'm not positive. | 13:08:40 |
| 11 | Q  Okay.  You walked through the process for | 13:08:41 |
| 12 | me and I appreciate that.  At the point the | 13:08:47 |
| 13 | state's attorney decided to do a handwritten | 13:08:49 |
| 14 | statement, where do they go to write that | 13:08:51 |
| 15 | handwritten statement? | 13:08:53 |
| 16 | A  They go to some office where they have a | 13:08:56 |
| 17 | desk and a chair and where they could, you know, | 13:08:59 |
| 18 | write and not be disturbed I guess. | 13:09:02 |
| 19 | Q  So they write it out based on what they | 13:09:05 |
| 20 | had learned from their interview; is that right? | 13:09:09 |
| 21 | MR. BRENER:  Objection to form and | 13:09:12 |
| 22 | foundation. | 13:09:13 |
| 23 | A  You know, the state's attorney is writing | 13:09:16 |
| 24 | out the statement.  Why he -- what he writes down | 13:09:19 |

```
1    is what he writes down.  I'm assuming it's from     13:09:21

2    the interview he conducted, but I don't know why    13:09:24

3    he'd write anything else.                           13:09:28

4        Q  Was there a separate room where -- strike    13:09:29

5    that.                                               13:09:33

6        Would the state's attorneys write out the       13:09:33

7    handwritten statement right there in front of the   13:09:37

8    witness?                                            13:09:40

9        MR. BRENER:  Objection, foundation.             13:09:42

10       A  I don't believe so.                          13:09:45

11       Q  Was there a particular office -- strike      13:09:46

12   that.                                               13:09:48

13       What place was used by the state's              13:09:48

14   attorneys to write out the statements in Area 5?    13:09:51

15       MR. BRENER:  Asked and answered.                13:09:54

16       A  Whatever office was convenient.              13:09:56

17       Q  How long would it usually take?              13:09:57

18       MS. BARBER:  Objection, form, foundation.       13:09:59

19       A  It depends how long the statement is.        13:10:03

20       Q  Would they ever consult with the detective   13:10:05

21   on the case during that process of writing out the  13:10:07

22   handwritten statement?                              13:10:11

23       A  No.                                          13:10:12

24       Q  They do that entirely on their own?          13:10:12
```

| | | |
|---|---|---|
| 1 | A   Again, I'm assuming.  I'm not watching | 13:10:18 |
| 2 | him.  I don't know if he makes a phone call or | 13:10:20 |
| 3 | anything, but I assume he does it on his own. | 13:10:22 |
| 4 | Q   Were there cases where you had multiple | 13:10:24 |
| 5 | state's attorneys assigned to the case to come out | 13:10:27 |
| 6 | to the station? | 13:10:29 |
| 7 | MS. BARBER:  Objection, foundation. | 13:10:30 |
| 8 | A   Has it happened?  Yes. | 13:10:36 |
| 9 | Q   In this case, for example, looking at the | 13:10:37 |
| 10 | cleared closed report, you probably saw there are | 13:10:40 |
| 11 | multiple suspects and there are multiple state's | 13:10:43 |
| 12 | attorneys who came out, right? | 13:10:46 |
| 13 | A   Yes. | 13:10:47 |
| 14 | Q   Nothing about seeing that in the cleared | 13:10:48 |
| 15 | closed report was unusual to you, was it? | 13:10:50 |
| 16 | MS. BARBER:  Form. | 13:10:52 |
| 17 | A   No, because that's what happened. | 13:10:55 |
| 18 | Q   When multiple state's attorneys come out | 13:10:56 |
| 19 | on a case, would they ever meet with each other | 13:10:59 |
| 20 | and consult before going back -- strike that. | 13:11:04 |
| 21 | When you had multiple state's attorneys | 13:11:08 |
| 22 | involved in a case, would they meet with each | 13:11:11 |
| 23 | other and discuss while they were preparing the | 13:11:13 |
| 24 | handwritten statements? | 13:11:16 |

1      MR. BRENER:  Form and foundation.                13:11:18

2   A  I don't know.                                    13:11:20

3   Q  When you had multiple state's attorneys on       13:11:20

4  a case, would they usually sit together?             13:11:22

5   A  I imagine --                                      13:11:28

6      MS. BARBER:  Form.                                13:11:33

7   A  -- we have multiple state's attorneys            13:11:34

8  they're doing something.  I wouldn't say they're     13:11:37

9  sitting together all the time.  Did they confer      13:11:39

10 with each other?  You have to ask them.  I don't     13:11:40

11 recall.                                              13:11:42

12  Q  When you had multiple state's attorneys on       13:11:42

13 a case, would they typically sit out in the open     13:11:45

14 area or would they be in some room in Area 5?        13:11:47

15     MS. BARBER:  Form, foundation.                   13:11:50

16     MR. BRENER:  Join.                               13:11:52

17  A  It wasn't that often.  I don't recall.  If       13:11:54

18 there's a room in back, they might sit back there.   13:11:58

19 If all the offices were busy, they'd sit on the      13:12:02

20 floor.                                               13:12:05

21  Q  When there were multiple of them, wherever       13:12:05

22 they were sitting, whether it was in a room or in    13:12:09

23 the open area, would they typically sit together?    13:12:10

24     MR. BURNS:  Objection, asked and answered,       13:12:11

| | | |
|---|---|---|
| 1 | form, foundation. | 13:12:13 |
| 2 | MS. BARBER:  Form. | 13:12:15 |
| 3 | A  I don't recall where they sat. | 13:12:17 |
| 4 | Q  Ever see -- strike that. | 13:12:19 |
| 5 | MS. GOLDEN:  I'm going to have a belated | 13:12:26 |
| 6 | objection to foundation to the question because he | 13:12:28 |
| 7 | said he didn't recall them sitting together. | 13:12:30 |
| 8 | Q  I want to go back to the subject of your | 13:13:36 |
| 9 | involvement in the Soto homicide investigation, | 13:13:38 |
| 10 | okay? | 13:13:41 |
| 11 | A  Okay. | 13:13:41 |
| 12 | Q  You told me yesterday about your | 13:13:42 |
| 13 | involvement based on your review of documents.  I | 13:13:45 |
| 14 | want to ask you about specific areas which you may | 13:13:49 |
| 15 | or may not have been involved in and basically | 13:13:53 |
| 16 | just tell me if you had any involvement, as far as | 13:13:54 |
| 17 | you know, okay? | 13:13:56 |
| 18 | A  Sure. | 13:13:56 |
| 19 | Q  Did you during the course of the Soto | 13:13:57 |
| 20 | homicide investigation go to the crime scene? | 13:14:00 |
| 21 | A  No. | 13:14:03 |
| 22 | Q  Did you go to the home of Adriana Mejia? | 13:14:03 |
| 23 | A  No. | 13:14:06 |
| 24 | Q  Did you go to the home of Arturo Reyes? | 13:14:07 |

| | | |
|---|---|---|
| 1 | A  No. | 13:14:10 |
| 2 | Q  Did you go to the home of Gabriel Solache? | 13:14:10 |
| 3 | A  No. | 13:14:14 |
| 4 | Q  Did you do any investigation into the | 13:14:14 |
| 5 | alibis of Arturo Reyes or Gabriel Solache? | 13:14:18 |
| 6 | A  No. | 13:14:23 |
| 7 | Q  Did you inspect the vehicle that was | 13:14:23 |
| 8 | believed to have been used in the crime? | 13:14:28 |
| 9 | A  I don't recall inspecting them.  We called | 13:14:32 |
| 10 | the crime lab out to process it.  I don't know who | 13:14:35 |
| 11 | made that call.  I know I made out the tow report | 13:14:39 |
| 12 | to get it out of the garage in Area 5 to be towed | 13:14:43 |
| 13 | to the pound. | 13:14:47 |
| 14 | Q  That was the question I had for you. | 13:14:48 |
| 15 | What was -- the purpose of the tow report was to | 13:14:50 |
| 16 | get the car moved to the -- to where? | 13:14:53 |
| 17 | A  The car -- in Area 5, there used to be | 13:14:55 |
| 18 | motor maintenance and for whatever reason they're | 13:15:02 |
| 19 | not there.  So you have two open bins that aren't | 13:15:07 |
| 20 | closed in the garage.  The car was brought by | 13:15:11 |
| 21 | somebody into the garage where the crime lab came | 13:15:15 |
| 22 | out and processed it.  What they did I'm not | 13:15:20 |
| 23 | exactly sure.  Once it's done we have to make out | 13:15:23 |
| 24 | a tow report to show that the car was towed from | 13:15:27 |

| | | |
|---|---|---|
| 1 | there, you know, from the garage to whatever pound | 13:15:30 |
| 2 | it was going to. | 13:15:33 |
| 3 | Q  So -- strike that. | 13:15:34 |
| 4 | When the evidence technicians did their | 13:15:38 |
| 5 | photography on the car, that was done at Area 5? | 13:15:42 |
| 6 | MS. GOLDEN:  Foundation. | 13:15:45 |
| 7 | A  I don't know. | 13:15:46 |
| 8 | Q  And the tow report was for purposes of | 13:15:48 |
| 9 | getting the car taken from Area 5 to the tow lot; | 13:15:52 |
| 10 | is that right? | 13:15:55 |
| 11 | A  To the impound lot, yes. | 13:15:55 |
| 12 | Q  And as far as you remember -- strike that. | 13:15:57 |
| 13 | As you sit here today, you don't remember | 13:16:00 |
| 14 | inspecting the car yourself physically; is that | 13:16:02 |
| 15 | right? | 13:16:05 |
| 16 | MS. GOLDEN:  Asked and answered. | 13:16:05 |
| 17 | A  That's correct. | 13:16:06 |
| 18 | Q  Did you do any investigation into the | 13:16:07 |
| 19 | phone calls that were believed to have been part | 13:16:11 |
| 20 | of the process in which the crime was committed? | 13:16:14 |
| 21 | A  I don't believe so, no. | 13:16:17 |
| 22 | Q  Did you conduct any polygraph exams? | 13:16:19 |
| 23 | A  No. | 13:16:24 |
| 24 | Q  In 1998 what was the process for having | 13:16:24 |

| | | |
|---|---|---|
| 1 | polygraph exams conducted? | 13:16:31 |
| 2 | MS. BARBER:  Objection, form, foundation. | 13:16:33 |
| 3 | A  I'm not sure exactly in 1998 where | 13:16:42 |
| 4 | polygraph offices were.  Was it at 11th and State? | 13:16:45 |
| 5 | Was that gone already?  Did we have the new | 13:16:51 |
| 6 | headquarters?  They were then at -- on 39th | 13:16:55 |
| 7 | Street.  Then they moved over to Homewood Square. | 13:17:00 |
| 8 | Where the polygraph was in 1998, I don't know. | 13:17:05 |
| 9 | Q  It wasn't at Area 5? | 13:17:07 |
| 10 | A  No, we didn't have a polygraph office | 13:17:09 |
| 11 | there. | 13:17:11 |
| 12 | Q  If you were going to do a polygraph, did | 13:17:11 |
| 13 | you have to go off site? | 13:17:13 |
| 14 | A  Usually, yes, but I know the county -- | 13:17:15 |
| 15 | some guys -- and I don't know when that started | 13:17:23 |
| 16 | that a mobile polygraph unit would come in.  I'm | 13:17:27 |
| 17 | not sure when that started.  I don't know who did | 13:17:30 |
| 18 | those. | 13:17:33 |
| 19 | Q  If a detective wanted to do a polygraph | 13:17:33 |
| 20 | and send the individual off site to do that, would | 13:17:38 |
| 21 | the detectives take them or would they have a beat | 13:17:41 |
| 22 | cop or somebody else? | 13:17:44 |
| 23 | A  Usually the detective would take them. | 13:17:46 |
| 24 | Q  What was the purpose of polygraph exams in | 13:17:48 |

1    the course of homicide investigations?                13:17:52

2        A  It was a tool to try to determine the         13:17:55

3    truth.                                                13:18:02

4        Q  So detectives used it to assess whether        13:18:08

5    somebody was being truthful or not; is that right?    13:18:12

6        MS. GOLDEN:  Asked and answered.               13:18:15

7        A  Yes.                                           13:18:17

8        Q  Could it be used in court?                      13:18:17

9        A  No.                                            13:18:20

10       MS. BARBER:  Objection, foundation.            13:18:20

11       Q  Why not?                                       13:18:23

12       MS. BARBER:  Objection, foundation.            13:18:23

13       A  I'm not a lawyer.  I'm not sure exactly        13:18:24

14   why.                                                  13:18:27

15       Q  Did you believe in the usefulness of          13:18:27

16   polygraph results?                                    13:18:31

17       A  Were they useful?  Yes.  Are they            13:18:32

18   infallible?  No.                                      13:18:37

19       Q  Did you do any work in the investigation      13:18:38

20   to search for Adriana Mejia's medical records?       13:18:44

21       A  I don't believe so, no.                       13:18:50

22       Q  Did you conduct any interview of Rosauro      13:18:52

23   Mejia?                                                13:18:58

24       MS. BARBER:  Asked and answered.              13:18:59

1      A   No.  The only interviews I recall doing        13:19:01

2  were of Mrs. Mejia and Miguel Reyes.                   13:19:04

3      Q  Do you recall whether Mr. Mejia -- strike       13:19:10

4  that.                                                  13:19:12

5         Do you recall whether Mr. Rosauro Mejia         13:19:12

6  was at the station when you participated in the        13:19:16

7  investigation on April 4th?                            13:19:18

8      A  I couldn't tell you.  I don't know.             13:19:20

9      Q  Do you know who conducted interrogations        13:19:21

10  of Rosauro Mejia?                                     13:19:24

11        MS. BARBER:  Objection, form, foundation.       13:19:26

12     A  You know, I don't know if he was                13:19:30

13  interrogated, interviewed.  I don't know by who.      13:19:32

14     Q  Did you learn anything about any               13:19:34

15  interviews of Rosauro Mejia?                          13:19:36

16        MS. GOLDEN:  Form.                              13:19:40

17        MS. BARBER:  Foundation.                        13:19:41

18     A  I believe it's in -- it's in one of the         13:19:43

19  reports.                                              13:19:45

20     Q  Did you learn anything about what happened      13:19:46

21  during the course of those interviews back in the     13:19:50

22  time of this case in 1998 or is it something you      13:19:53

23  just learned about when you reviewed reports in       13:19:55

24  preparation for this deposition?                      13:19:59

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Form. | 13:20:00 |
| 2 | A  It's basically just from reviewing the | 13:20:01 |
| 3 | reports.  I don't remember much of this | 13:20:03 |
| 4 | investigation at all. | 13:20:06 |
| 5 | Q  Did you investigate Rosauro Mejia's alibi? | 13:20:07 |
| 6 | A  No. | 13:20:11 |
| 7 | Q  At some point did you become aware that | 13:20:11 |
| 8 | Mr. Rosauro Mejia has alleged that he was | 13:20:13 |
| 9 | physically abused? | 13:20:17 |
| 10 | A  I never talked to Mr. Mejia, so I don't | 13:20:18 |
| 11 | know what he alleged. | 13:20:23 |
| 12 | Q  Had you ever heard anyone just told you | 13:20:24 |
| 13 | just now? | 13:20:27 |
| 14 | A  That's the first I heard of it. | 13:20:27 |
| 15 | Q  But you understand that Rosauro Mejia was | 13:20:30 |
| 16 | not charged with any crime in this case, correct? | 13:20:45 |
| 17 | A  Yes, there was only three people charged I | 13:20:47 |
| 18 | believe. | 13:20:49 |
| 19 | Q  And the police ultimately determined that | 13:20:49 |
| 20 | he was innocent, correct? | 13:20:51 |
| 21 | MS. GOLDEN:  Form and foundation. | 13:20:53 |
| 22 | A  You know, I'd have to look.  I don't think | 13:20:57 |
| 23 | he had involvement in it. | 13:20:59 |
| 24 | Q  When you hear that somebody who is | 13:21:00 |

1   determined by the police to be innocent and          13:21:07

2   released, alleges physical abuse, does that have      13:21:10

3   any impact on you in terms of your views about        13:21:13

4   whether Mr. Guevara might have abused people at       13:21:16

5   Area 5?                                               13:21:22

6        MS. BARBER:  Form.                               13:21:23

7      A  So let me ask you, if somebody accused          13:21:25

8   misconduct in the police station, does that make     13:21:30

9   me think that Reynaldo Guevara abused people?  It     13:21:34

10  would -- no.                                          13:21:39

11     Q  The fact that Mr. Rosauro Mejia was             13:21:40

12  released and deemed innocent by the police and yet    13:21:43

13  is alleging physical abuse, does that matter to       13:21:47

14  you at all in terms of assessing whether Guevara      13:21:50

15  was actually doing these things he's accused of?      13:21:53

16       MS. BARBER:  Form.                               13:21:56

17       MS. GOLDEN:  Foundation.                         13:21:57

18     A  Again, I don't know what Mr. Mejia is           13:21:58

19  saying.  I have no idea.  So I couldn't even begin    13:22:00

20  to guess.                                             13:22:03

21     Q  Do you have any opinion about whether           13:22:04

22  Detective Guevara physically abused any suspects      13:22:06

23  at Area 5 during the course of his career?            13:22:11

24     A  I can only say I never seen Guevara abuse       13:22:14

1    anybody.                                           13:22:18

2        Q  Did you say --                              13:22:19

3        MS. GOLDEN:  I'm sorry.  You cut him off.      13:22:20

4        MR. SWAMINATHAN:  Go ahead.                    13:22:22

5        MS. GOLDEN:  You have a habit of starting      13:22:23

6    another question real quick, and I'm not sure he's 13:22:25

7    done.  Then I interrupt and then -- could you read 13:22:29

8    the last question he asked back and make sure that 13:22:32

9    your answer is complete.                           13:22:32

10                   (Record read back by the           13:22:32

11                    reporter.)                         13:22:32

12       A  Because of that, I can't say I don't have   13:22:54

13   an opinion why people are accusing him are         13:22:58

14   truthful or not.                                   13:23:01

15       Q  Okay.  Ms. Guadalupe Mejia, did you         13:23:02

16   conduct any interview of her?                      13:23:09

17       A  No.                                         13:23:10

18       Q  Did you have any interactions with          13:23:11

19   Guadalupe Mejia during the course of the Soto      13:23:13

20   investigation?                                     13:23:16

21       A  Not to my knowledge, no.                    13:23:16

22       Q  Do you know who did interview Guadalupe     13:23:18

23   Mejia?                                             13:23:22

24       A  I have no idea.                             13:23:22

1    Q  Did you interview Jorge Mejia?                    13:23:24

2    A  No.  Like I say, I only recall                    13:23:27

3  interviewing two people.                               13:23:29

4    Q  Did you have any interactions with Jorge          13:23:30

5  Mejia?                                                 13:23:33

6    A  Not that I recall.                                13:23:33

7    Q  Do you know who did interview Jorge Mejia?        13:23:34

8    A  Again, I have no idea.                            13:23:37

9    Q  Did you interview Manuel Mejia?                   13:23:39

10    A  I only interviewed two people.  I mean, I        13:23:41

11  can only tell you this a number of times.  I          13:23:45

12  interviewed Mrs. Mejia and I interviewed Reyes.       13:23:47

13  After that, I didn't interview anybody else.          13:23:53

14    Q  I understand.  I'm going to go through           13:23:55

15  these individuals --                                  13:23:57

16    A  Just want to let you know.                       13:23:58

17    Q  Just say yes or no.  I completely                13:24:00

18  understand.  For my purposes I have to go through     13:24:02

19  and get clean answers on each of these                13:24:04

20  individuals, okay?                                    13:24:07

21    A  Okay.                                            13:24:07

22    Q  And I fully appreciate -- I can anticipate       13:24:07

23  what your answer is going to be, okay?                13:24:09

24      MS. GOLDEN:  No, you don't.                       13:24:11

1          MR. SWAMINATHAN:  Yes, I do.                    13:24:13

2          MS. GOLDEN:  You may want to --                13:24:14

3          MR. SWAMINATHAN:  Let me make a record on      13:24:15

4     this.                                               13:24:18

5          MS. GOLDEN:  You may want to --                13:24:18

6          MR. SWAMINATHAN:  Let me make a record on      13:24:18

7     this because you made that one.                     13:24:18

8          I had been a participant in a trial where      13:24:20

9     a number of police officer detectives came to the  13:24:23

10    trial and testified about all kinds of detailed     13:24:26

11    knowledge about homicide investigation and when     13:24:30

12    certain things happened and who participated in     13:24:33

13    those things.  After each of those detectives gave  13:24:35

14    depositions in which they specifically said I have  13:24:38

15    no memory at all about any of this and I reviewed   13:24:40

16    all the records and I have no memory of being       13:24:43

17    involved in this investigation and I don't          13:24:45

18    remember who talked to who and what interviews      13:24:47

19    were conducted and who conducted what other         13:24:51

20    interviews and yet they manage to get to trial and  13:24:53

21    remember it all.  So you better believe I do need   13:24:56

22    to get clean answers with regard to each of these   13:24:57

23    individuals.  I'm making my record on why I'm       13:25:00

24    doing it.  And the case might sound familiar to     13:25:02

| | | |
|---|---|---|
| 1 | you what I'm referring to. | 13:25:05 |
| 2 | MS. BARBER:  Just relax a little bit, | 13:25:06 |
| 3 | please. | 13:25:08 |
| 4 | Q  Now, Manuel Mejia, did you ever interview | 13:25:11 |
| 5 | Manuel Mejia as part of the Soto -- | 13:25:16 |
| 6 | MS. GOLDEN:  Foundation as to his | 13:25:18 |
| 7 | identity. | 13:25:19 |
| 8 | A  I don't think I had any involvement with | 13:25:20 |
| 9 | Manuel Mejia. | 13:25:24 |
| 10 | Q  Do you know who interviewed Manuel Mejia? | 13:25:25 |
| 11 | A  I have no idea. | 13:25:28 |
| 12 | Q  Did you interview Leobardo Mejia? | 13:25:29 |
| 13 | A  I did not. | 13:25:32 |
| 14 | Q  Did you -- strike that. | 13:25:33 |
| 15 | Do you know who interviewed Leobardo | 13:25:33 |
| 16 | Mejia, if anyone? | 13:25:36 |
| 17 | A  I have no idea. | 13:25:37 |
| 18 | Q  Did you interview Norma Salazar? | 13:25:38 |
| 19 | A  No. | 13:25:47 |
| 20 | Q  Did you have any interactions with a woman | 13:25:48 |
| 21 | named Norma Salazar as part of the Soto homicide | 13:25:50 |
| 22 | investigation? | 13:25:54 |
| 23 | A  No, I didn't. | 13:25:54 |
| 24 | Q  Do you know who did interview Norma | 13:25:55 |

1   Salazar?                                            13:25:59

2       A   Based on reports I believe that was        13:25:59

3   Detective McDonald.                                 13:26:01

4       Q   Is that based exclusively on the reports?   13:26:02

5       A   Yeah, I wasn't there that day, so it's      13:26:06

6   just on the report.                                 13:26:08

7       Q   Do you know whether -- strike that.         13:26:09

8           Based on any personal knowledge, do you     13:26:11

9   know whether Norma Salazar was ever taken into      13:26:13

10  custody?                                            13:26:16

11      A   Personal knowledge, no.                     13:26:17

12      Q   Did you make any attempts to locate         13:26:19

13  Ms. Salazar?                                        13:26:27

14      A   No.                                         13:26:27

15      Q   Did you participate in any investigation    13:26:28

16  of Ms. Salazar as a potential suspect in the case?  13:26:30

17      A   No.  When she came up, I believe I was      13:26:36

18  off.  I wasn't working.  And by the time I got      13:26:41

19  back, she was already cleared, I believe.           13:26:44

20      Q   Did you interview any members of the Soto   13:26:46

21  family?                                             13:28:10

22      A   To the best of my recollection, no.         13:28:11

23      Q   Were you aware at the time whether any      13:28:14

24  members of the Soto family were at the station at   13:28:17

| | | |
|---|---|---|
| 1 | that time? | 13:28:21 |
| 2 | A  I have no idea. | 13:28:21 |
| 3 | Q  Did you interview any members of the | 13:28:23 |
| 4 | Aranda family? | 13:28:28 |
| 5 | A  I don't think so.  I don't know who they | 13:28:31 |
| 6 | are. | 13:28:33 |
| 7 | Q  At the time you were participating in the | 13:28:33 |
| 8 | investigation on April 4th, were there any | 13:28:36 |
| 9 | Aranda's who were at the station? | 13:28:39 |
| 10 | A  As I said, I don't know who they are, so I | 13:28:40 |
| 11 | couldn't say. | 13:28:43 |
| 12 | Q  Do you know whether any members of the | 13:28:43 |
| 13 | Soto family were ever considered possible suspects | 13:28:47 |
| 14 | in the Soto murder? | 13:28:51 |
| 15 | A  I have no idea. | 13:28:53 |
| 16 | Q  If they were ever treated as suspects in | 13:28:55 |
| 17 | the case, would you expect that to be documented | 13:28:58 |
| 18 | in the police file? | 13:29:01 |
| 19 | MS. BARBER:  Objection, form, foundation. | 13:29:02 |
| 20 | A  I'd have to know who considered them and | 13:29:07 |
| 21 | why before I can answer that. | 13:29:09 |
| 22 | Q  Anytime somebody was treated as a suspect | 13:29:10 |
| 23 | in a case, that's information that was supposed to | 13:29:13 |
| 24 | be documented; is that right? | 13:29:16 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Objection, form. | 13:29:18 |
| 2 | A  I guess you get on the scene and there's a | 13:29:24 |
| 3 | homicide, at this point you have not determined | 13:29:27 |
| 4 | who's not a suspect.  Everybody is a suspect.  And | 13:29:32 |
| 5 | obviously that narrows down quickly.  So at any | 13:29:35 |
| 6 | given time when they interviewed him, they want to | 13:29:41 |
| 7 | know their involvement.  I can't say who | 13:29:44 |
| 8 | considered him a suspect, if anybody did consider | 13:29:46 |
| 9 | him a suspect. | 13:29:49 |
| 10 | Q  If they were considered a suspect by | 13:29:50 |
| 11 | detectives on the case, would you expect it to be | 13:29:54 |
| 12 | documented? | 13:29:57 |
| 13 | MS. GOLDEN:  Asked and answered. | 13:29:57 |
| 14 | A  Again, everybody is considered a suspect. | 13:30:01 |
| 15 | And then as the interviews go on, you know, you | 13:30:06 |
| 16 | make your determination if they're not or if they | 13:30:10 |
| 17 | are.  Were there documentation of their interviews | 13:30:13 |
| 18 | in the file?  I believe so.  And that could | 13:30:20 |
| 19 | suffice for the documentation of why they didn't | 13:30:23 |
| 20 | consider him a suspect or if they did, what | 13:30:26 |
| 21 | happened. | 13:30:29 |
| 22 | Q  If I understand correctly, in some ways | 13:30:29 |
| 23 | everybody is a potential suspect.  So you don't | 13:30:31 |
| 24 | have to document every single person who ever had | 13:30:34 |

| | | |
|---|---|---|
| 1 | involvement in the investigation; are we on the | 13:30:37 |
| 2 | same page so far? | 13:30:40 |
| 3 |     MS. GOLDEN:  Form. | 13:30:41 |
| 4 |   A  Yeah, okay. | 13:30:43 |
| 5 |   Q  At what point -- | 13:30:43 |
| 6 |     MS. BARBER:  I'm sorry -- | 13:30:46 |
| 7 |   Q  -- does it rise to the level that somebody | 13:30:47 |
| 8 | has to be documented? | 13:30:49 |
| 9 |     MS. BARBER:  Can you read back the -- the | 13:30:50 |
| 10 | question before the last one. | 13:30:53 |
| 11 |           (Record read back by the | 13:30:53 |
| 12 |           reporter.) | 13:31:16 |
| 13 |     MS. GOLDEN:  Was that the question? | 13:31:16 |
| 14 |     MR. SWAMINATHAN:  No, she asked for the | 13:31:17 |
| 15 | question before. | 13:31:18 |
| 16 |     MS. BARBER:  Right.  And I believe that | 13:31:19 |
| 17 | that was answered and then there's another | 13:31:20 |
| 18 | outstanding question. | 13:31:22 |
| 19 |     MR. SWAMINATHAN:  Yes, and probably has no | 13:31:24 |
| 20 | idea what the question is anymore, right? | 13:31:26 |
| 21 |     THE WITNESS:  Again, I -- I have an idea, | 13:31:28 |
| 22 | but I want to make sure I got it right. | 13:31:32 |
| 23 |   Q  I understand. | 13:31:34 |
| 24 |     At what point does it reach the level that | 13:31:35 |

| | | |
|---|---|---|
| 1 | a person now needs to be documented as a suspect | 13:31:38 |
| 2 | in the case? | 13:31:42 |
| 3 | MS. BARBER:  Objection, form, foundation. | 13:31:42 |
| 4 | A  That depends on the case as it goes and | 13:31:46 |
| 5 | your investigation on how the investigation | 13:31:49 |
| 6 | proceeds and that determines it. | 13:31:52 |
| 7 | Q  If you bring somebody into the station and | 13:31:54 |
| 8 | you question them about the crime and whether they | 13:31:56 |
| 9 | were involved in the crime, does that reach a | 13:32:00 |
| 10 | level that should be documented? | 13:32:03 |
| 11 | MS. BARBER:  Objection, form, foundation, | 13:32:05 |
| 12 | incomplete hypothetical. | 13:32:07 |
| 13 | A  If you interview them, the interview | 13:32:11 |
| 14 | should be documented somehow. | 13:32:16 |
| 15 | Q  And if you interview them and question | 13:32:17 |
| 16 | them about their knowledge of the crime, should | 13:32:20 |
| 17 | that be a apparent in the records that you've | 13:32:22 |
| 18 | interviewed them and questioned them about the | 13:32:25 |
| 19 | crime? | 13:32:27 |
| 20 | MS. BARBER:  Objection, form, foundation, | 13:32:28 |
| 21 | incomplete hypothetical. | 13:32:31 |
| 22 | A  Again, it's the interview.  The interview | 13:32:33 |
| 23 | should be I would think documented, especially | 13:32:36 |
| 24 | with family members. | 13:32:39 |

| | | |
|---|---|---|
| 1 | Q  If an individual is accused of committing | 13:32:40 |
| 2 | the crime or knowing who committed the crime, is | 13:32:43 |
| 3 | that information -- is that individual somebody | 13:32:47 |
| 4 | who should be documented in the file? | 13:32:49 |
| 5 | MS. BARBER:  Objection, form, foundation, | 13:32:51 |
| 6 | incomplete hypothetical. | 13:32:53 |
| 7 | A  I would assume that if you're accusing | 13:32:55 |
| 8 | somebody of a crime you have a reason to believe | 13:32:58 |
| 9 | why they some involvement.  That should be | 13:33:01 |
| 10 | documented. | 13:33:05 |
| 11 | Q  Excuse me. | 13:33:05 |
| 12 | Did you consider any members of the Aranda | 13:33:11 |
| 13 | family to be suspects in the Soto investigation? | 13:33:19 |
| 14 | A  Did I? | 13:33:23 |
| 15 | Q  Yes. | 13:33:23 |
| 16 | A  Like I said, I don't know who they were. | 13:33:24 |
| 17 | Q  Do you know if any members of the Aranda | 13:33:26 |
| 18 | family were considered suspects in the Soto | 13:33:29 |
| 19 | investigation? | 13:33:32 |
| 20 | A  I have no idea. | 13:33:32 |
| 21 | Q  There was ultimately a criminal trial, | 13:33:34 |
| 22 | criminal trials in this case, you're aware of | 13:33:53 |
| 23 | that? | 13:33:57 |
| 24 | A  Yes. | 13:33:57 |

1    Q  Did you have any involvement in the trial                13:33:58

2  in this case?                                                 13:34:03

3    A  I don't believe I testified at all, if                   13:34:05

4  that's what you're asking.                                    13:34:07

5    Q  Did you meet with any state's attorneys in               13:34:08

6  preparation for trial?                                        13:34:12

7    A  I know one time I can remember going down                13:34:13

8  to 26th Street.  We met with the state's attorney.            13:34:17

9    Q  This was in advance of trial?                            13:34:20

10   A  Yes.                                                     13:34:23

11   Q  And was it basically in preparation --                  13:34:23

12      MS. GOLDEN:  Belated objection to form.                 13:34:27

13   Q  Was this in preparation for trial?                      13:34:29

14   A  I don't remember exactly, but I would                   13:34:33

15  presume so.                                                  13:34:37

16   Q  Who went to meet with the state's                       13:34:38

17  attorney?                                                    13:34:42

18   A  I don't recall everybody who was there.                 13:34:42

19  But I believe it was everybody who was on the                13:34:45

20  report being assigned was requested.                         13:34:48

21   Q  You all went together?                                  13:34:50

22   A  If I was off, I went by myself.  If I was               13:34:53

23  working, I went with -- I would have went with               13:34:59

24  Dickinson and/or McDonald.                                   13:35:02

1      Q   The meeting itself, did everybody meet          13:35:05
2  together?                                                13:35:08
3      A   We went to the state's attorney room.           13:35:08
4      Q   You all met together with the state's           13:35:11
5  attorney?                                                13:35:14
6      A   Yes.                                             13:35:14
7      Q   Were you meeting with the trial                  13:35:14
8  prosecutor?                                              13:35:16
9      A   I believe she was.                               13:35:17
10     Q   Do you remember her name?                        13:35:18
11     A   I just remember Mercedes.  If I seen her,        13:35:20
12  I'd know her but...                                     13:35:29
13     Q   The folks who went down there you said it        13:35:30
14  was everybody who was on the report.  That              13:35:33
15  obviously included you.  Did it also -- go ahead?       13:35:34
16     A   I don't know everybody who was there.            13:35:37
17     Q   Did it include Dickinson?                        13:35:40
18     A   I can't remember if he was there or not.         13:35:42
19     Q   McDonald?                                        13:35:44
20     A   I can't remember if he was there or not.         13:35:45
21     Q   Guevara?                                         13:35:47
22     A   I can't -- I don't remember who was there.       13:35:48
23  There was a few people there.  I don't remember         13:35:50
24  the exact identities of everybody.  I can't say.        13:35:52

| | | |
|---|---|---|
| 1 | Q  Do you remember whether Trevino was there? | 13:35:55 |
| 2 | A  Again, I don't remember exactly who was | 13:35:58 |
| 3 | there.  I'm sure he would have been subpoenaed, | 13:36:01 |
| 4 | but I don't know if he was there. | 13:36:03 |
| 5 | Q  How many people were at that meeting from | 13:36:05 |
| 6 | the police department? | 13:36:07 |
| 7 | A  Like I say, if I knew how many was there, | 13:36:07 |
| 8 | I probably would remember exactly who was there. | 13:36:11 |
| 9 | There was a group.  I couldn't tell you how many. | 13:36:14 |
| 10 | Q  What happened during the course of that | 13:36:16 |
| 11 | meeting? | 13:36:18 |
| 12 | A  Basically -- truthfully, the only thing I | 13:36:18 |
| 13 | remember of that meeting is I found out about the | 13:36:21 |
| 14 | Vana {phonetic} convention.  That was -- I don't | 13:36:29 |
| 15 | recall ever being trained on that, and that's when | 13:36:31 |
| 16 | I heard about it and I was bit puzzled. | 13:36:33 |
| 17 | Q  A meeting like that with the state's | 13:36:36 |
| 18 | attorney, was that common in preparation for | 13:36:39 |
| 19 | trials? | 13:36:41 |
| 20 | MS. GOLDEN:  Hold on a second.  Foundation | 13:36:41 |
| 21 | for the question. | 13:36:44 |
| 22 | A  Yeah, meet with the state's attorney | 13:36:47 |
| 23 | before trials. | 13:36:49 |
| 24 | Q  And during the course of that -- I | 13:36:50 |

| | | |
|---|---|---|
| 1 | understand you don't remember exactly what | 13:36:52 |
| 2 | happened in that particular meeting.  I want to | 13:36:54 |
| 3 | ask you more generally what typically goes on in | 13:36:56 |
| 4 | this pretrial meeting where the detectives | 13:36:59 |
| 5 | involved in the case come and meet with the | 13:37:02 |
| 6 | state's attorney.  Are you with me? | 13:37:04 |
| 7 |     A   Yeah.  She would ask us about the case.  I | 13:37:06 |
| 8 | should say she or he would ask us about the case | 13:37:11 |
| 9 | and, you know, we'd discuss it. | 13:37:13 |
| 10 |     Q   When you say asked about the case, would | 13:37:15 |
| 11 | you basically walk through what all happened | 13:37:20 |
| 12 | during the investigation? | 13:37:22 |
| 13 |     A   If it was early on preliminary, yes.  It | 13:37:23 |
| 14 | wouldn't be much more than that. | 13:37:26 |
| 15 |     Q   Would you bring documents? | 13:37:28 |
| 16 |     A   If she subpoenaed the documents, they | 13:37:30 |
| 17 | would either be delivered to her or we'd bring | 13:37:34 |
| 18 | them down. | 13:37:37 |
| 19 |     Q   And what documents would you bring when | 13:37:38 |
| 20 | you were having these meetings with the state's | 13:37:40 |
| 21 | attorney? | 13:37:43 |
| 22 |     A   She would -- the state's attorney would | 13:37:43 |
| 23 | usually subpoena the investigative file and that | 13:37:46 |
| 24 | would be sent down to her.  If let's say -- if she | 13:37:49 |

| | | |
|---|---|---|
| 1 | didn't have time -- if it was a rush job shall we | 13:37:57 |
| 2 | say and there was a subpoena, we'd make a copy of | 13:38:01 |
| 3 | the file for her and bring it there. | 13:38:04 |
| 4 | Q  When you say -- so if the subpoena was | 13:38:06 |
| 5 | issued and you said it would be sent to the | 13:38:10 |
| 6 | state's attorney, who would -- | 13:38:13 |
| 7 | A  The state's attorney would issue the | 13:38:14 |
| 8 | subpoena. | 13:38:15 |
| 9 | Q  Would issue the subpoena and somebody from | 13:38:16 |
| 10 | the police department would send it to the state's | 13:38:18 |
| 11 | attorney, right? | 13:38:20 |
| 12 | MS. BARBER:  Objection, form, foundation, | 13:38:21 |
| 13 | speculation. | 13:38:25 |
| 14 | A  That would be my understanding, she'd | 13:38:27 |
| 15 | subpoenaed the records division. | 13:38:29 |
| 16 | Q  Would -- the records division would have a | 13:38:30 |
| 17 | copy of the permanent retention file, correct? | 13:38:34 |
| 18 | MS. GOLDEN:  Foundation. | 13:38:38 |
| 19 | MS. BARBER:  Objection, form, foundation. | 13:38:38 |
| 20 | A  I'm not sure exactly what they have. | 13:38:40 |
| 21 | Q  Who -- when the state's attorney was | 13:38:44 |
| 22 | reaching out with a subpoena for the file, where | 13:38:46 |
| 23 | was the investigative file at the point that you | 13:38:51 |
| 24 | were in the pretrial proceedings? | 13:38:54 |

| | | |
|---|---|---|
| 1 | MS. GOLDEN: Foundation. | 13:38:56 |
| 2 | MS. BARBER: Form, incomplete | 13:38:57 |
| 3 | hypothetical. | 13:38:57 |
| 4 | A It was still in Area 5. | 13:39:00 |
| 5 | Q And then how would it get from Area 5 to | 13:39:02 |
| 6 | the state's attorney? | 13:39:04 |
| 7 | MS. GOLDEN: Foundation. | 13:39:06 |
| 8 | MS. BARBER: Form, incomplete | 13:39:07 |
| 9 | hypothetical. | 13:39:07 |
| 10 | A Again, I'm not sure. My guess is whoever | 13:39:12 |
| 11 | filled the subpoena would make copies of the | 13:39:15 |
| 12 | investigative file and ship it through police | 13:39:18 |
| 13 | mail. | 13:39:21 |
| 14 | Q Did detectives copy -- the detectives, | 13:39:21 |
| 15 | were they involved in the process of getting the | 13:39:23 |
| 16 | investigative files copied and sent to the state's | 13:39:26 |
| 17 | attorney? | 13:39:26 |
| 18 | A Not -- | 13:39:29 |
| 19 | MS. BARBER: Objection, form, foundation, | 13:39:29 |
| 20 | incomplete hypothetical. And if we could get a | 13:39:32 |
| 21 | break some time soon, that would be great. | 13:39:35 |
| 22 | A No, it would be copied by whoever was | 13:39:40 |
| 23 | supposed to fill the subpoenas. | 13:39:45 |
| 24 | Q That's not a detective, that's somebody | 13:39:47 |

1    else?                                                    13:39:50

2        MS. BARBER:  Objection, form, foundation,            13:39:51

3    incomplete hypothetical, calls for speculation.          13:39:52

4        A  It could be a detective, but it wouldn't          13:39:58

5    be the detectives assigned to the case.                  13:40:01

6        Q  You said it would not be the detective?           13:40:02

7        A  It usually wasn't.                                13:40:05

8        Q  What was the scenario you're saying in            13:40:06

9    which the detectives on the case would bring it          13:40:08

10   themselves by hand to the state's attorney?              13:40:10

11       A  If we got -- you know, that took time,            13:40:13

12   okay?  And if we're meeting tomorrow, maybe she'd        13:40:19

13   send a subpoena right to Area 5 and then it would        13:40:25

14   be done.                                                 13:40:28

15       Q  If there was a request -- strike that.            13:40:28

16          If you were being -- as the detective on          13:40:31

17   the case being asked to bring it by hand to the          13:40:34

18   state's attorney, would you take the whole file or       13:40:36

19   would you take portions of the file?                     13:40:39

20       MS. BARBER:  Objection, form.                        13:40:41

21       Q  Or would it depend on what the subpoena           13:40:41

22   asked for?                                               13:40:44

23       MS. BARBER:  Objection, form, foundation,            13:40:45

24   incomplete hypothetical.                                 13:40:48

| | | |
|---|---|---|
| 1 | A  The only time I would do it I'd make a | 13:40:49 |
| 2 | copy of the whole file, just bring that down. | 13:40:53 |
| 3 | Q  Did -- | 13:41:00 |
| 4 | A  Or I'd ask whoever was the record keeper, | 13:41:01 |
| 5 | whatever, to make the file, make the copy.  I | 13:41:05 |
| 6 | might not make it personally.  I'd ask them to | 13:41:08 |
| 7 | make it.  They'd give it to me, and I'd bring it | 13:41:11 |
| 8 | down. | 13:41:13 |
| 9 | Q  Would you ever take anything less than the | 13:41:14 |
| 10 | whole file? | 13:41:16 |
| 11 | MS. GOLDEN:  Okay.  He said -- form of the | 13:41:16 |
| 12 | question. | 13:41:20 |
| 13 | A  Not that I recall. | 13:41:24 |
| 14 | Q  Do you know why you weren't called to | 13:41:25 |
| 15 | testify at the trial? | 13:41:30 |
| 16 | MS. BARBER:  Why you were not? | 13:41:32 |
| 17 | MS. GOLDEN:  Oh, why you were not? | 13:41:33 |
| 18 | MR. BRENER:  Objection to foundation. | 13:41:36 |
| 19 | A  I only have an opinion.  Nobody ever told | 13:41:41 |
| 20 | me.  But I didn't have much to do with it. | 13:41:43 |
| 21 | MR. SWAMINATHAN:  You want to take a break | 13:41:45 |
| 22 | you said? | 13:41:47 |
| 23 | MS. BARBER:  Yes, please. | 13:41:48 |
| 24 | THE VIDEOGRAPHER:  Off the record 1:41. | 13:41:49 |

| | | |
|---|---|---|
| 1 | (A short break was taken.) | 13:53:01 |
| 2 | THE VIDEOGRAPHER:  Back on the record | 13:57:09 |
| 3 | 1:57. | 13:57:13 |
| 4 | BY MR. SWAMINATHAN: | 13:57:14 |
| 5 | Q  Sir, could you pull out Exhibit No. 2, the | 13:57:14 |
| 6 | cleared and closed report? | 13:57:20 |
| 7 | A  Sure. | 13:57:22 |
| 8 | Q  Looking here at Exhibit 2, which is the | 13:57:27 |
| 9 | Area 5 supplementary report described as the | 13:57:30 |
| 10 | cleared closed report. | 13:57:35 |
| 11 | We discussed yesterday this is a document | 13:57:36 |
| 12 | you reviewed, correct? | 13:57:39 |
| 13 | A  That's correct. | 13:57:41 |
| 14 | Q  Who wrote this cleared closed report? | 13:57:42 |
| 15 | MS. BARBER:  Objection, form, foundation. | 13:57:45 |
| 16 | MS. GOLDEN:  Foundation. | 13:57:46 |
| 17 | A  I believe it was Detective Halvorsen. | 13:57:51 |
| 18 | Q  And why do you believe it was Detective | 13:57:53 |
| 19 | Halvorsen, now looking at Exhibit 2? | 13:57:59 |
| 20 | A  He's in -- at the bottom box, Box No. 93, | 13:57:59 |
| 21 | his name is there first and that's usually a sign | 13:58:03 |
| 22 | of who prepared it. | 13:58:09 |
| 23 | Q  Okay. | 13:58:11 |
| 24 | A  And on the back on the last page his name | 13:58:12 |

| | | |
|---|---|---|
| 1 | is listed first as the officer, as the detective. | 13:58:14 |
| 2 | So I'm assuming he prepared it. | 13:58:18 |
| 3 | Q  Detective Guevara's name is also written | 13:58:20 |
| 4 | on this report, correct? | 13:58:24 |
| 5 | A  That's correct. | 13:58:25 |
| 6 | Q  And it appears he also signed it, correct? | 13:58:26 |
| 7 | A  That's correct. | 13:58:28 |
| 8 | Q  So if Detective Halvorsen wrote it, what | 13:58:29 |
| 9 | is the -- what does it mean that Detective | 13:58:34 |
| 10 | Guevara's name is written in the center box of | 13:58:37 |
| 11 | Exhibit 2? | 13:58:41 |
| 12 | A  Basically they're both instrumental in | 13:58:41 |
| 13 | preparing the case report. | 13:58:46 |
| 14 | Q  And was it your understanding that | 13:58:48 |
| 15 | Detective Halvorsen and Guevara were the primary | 13:58:50 |
| 16 | assigned detectives on the Soto investigation? | 13:58:52 |
| 17 | MS. GOLDEN:  Asked and answered. | 13:58:56 |
| 18 | A  Yes, I believe they were partners. | 13:58:58 |
| 19 | Q  Can you just tell us the purpose of a | 13:59:00 |
| 20 | cleared closed report? | 13:59:05 |
| 21 | A  My belief is that it's prepared to show | 13:59:17 |
| 22 | the investigation and why the individuals were | 13:59:20 |
| 23 | charged and why the case is now cleared. | 13:59:25 |
| 24 | Q  Basically to summarize the evidence | 13:59:28 |

1    against the accused?                              13:59:32

2        A  Yes.                                        13:59:33

3        Q  If there was exculpatory evidence that had 13:59:34

4    been developed during the course of the          13:59:39

5    investigation, was that also to be included in a 13:59:40

6    cleared closed report?                            13:59:44

7            MS. GOLDEN:  Foundation.                   13:59:46

8        A  If that evidence was already recorded and  13:59:48

9    memorialized in a separate report, there would be 13:59:50

10   no need to.                                        13:59:53

11       Q  Okay.  So is it the case the cleared        13:59:54

12   closed report was focused on what was the          13:59:58

13   incriminated evidence that justified charges       13:59:59

14   against the individual?                            14:00:03

15           MS. GOLDEN:  Form.                          14:00:04

16           MS. BARBER:  Misstates the witness's        14:00:04

17   testimony.                                          14:00:06

18       A  It was the investigation probably since     14:00:07

19   the last report was made.  The cleared closed      14:00:10

20   report is not a summation of a whole               14:00:14

21   investigation.  It's just what's going on from     14:00:18

22   maybe Point B to Point C.                          14:00:22

23       Q  The end of the investigation?               14:00:26

24       A  Yes.                                         14:00:27

1      Q   And if things had been previously                    14:00:28

2   documented in other reports, they weren't required           14:00:30

3   to be documented in the supplementary report?                14:00:33

4      A   Yes, they weren't required to be                      14:00:35

5   documented.  They might be referred to but that              14:00:37

6   would be it.                                                 14:00:40

7      Q   For some of the later developments in the             14:00:41

8   course of an investigation, is the cleared closed            14:00:48

9   report sometimes the first and only place where             14:00:51

10  that information is documented?                              14:00:53

11     MS. GOLDEN:  Okay.  Just give me a second.                14:00:55

12  Foundation.                                                  14:01:02

13     A   It could be.                                          14:01:05

14     Q   If you turn to Page 6, which is RFC                   14:01:07

15  Solache-Reyes 238.  It lists personnel assigned to          14:01:19

16  the investigation, correct?                                  14:01:32

17     A   Yes.                                                  14:01:33

18     Q   And you're identified as being assigned to           14:01:33

19  the investigation, correct?                                  14:01:36

20     A   That's correct.                                       14:01:37

21     Q   As were your partners at that time,                   14:01:38

22  Mr. Dickinson and Mr. McDonald, correct?                     14:01:40

23     A   That's correct.                                       14:01:43

24     Q   Do you dispute anything about the fact               14:01:44

1   that this report identifies you as being one of          14:01:46

2   the personnel assigned?                                   14:01:49

3       A  No.                                                14:01:50

4       Q  Okay.  This document identifies witnesses,        14:01:50

5   including a Ms. Guadalupe Mejia.  What is supposed        14:01:57

6   to be included in the witnesses' section of this         14:02:04

7   report?                                                   14:02:06

8       MS. BARBER:  Objection, form.                         14:02:07

9       A  Witnesses.                                         14:02:12

10      Q  Throughout the investigation or just              14:02:15

11  witnesses who are going to be -- who are the             14:02:17

12  people who were involved in later steps in the           14:02:20

13  investigation that are going to be documented in         14:02:22

14  this report?                                              14:02:24

15      MS. GOLDEN:  Form.                                    14:02:25

16      A  I would think witnesses that hadn't been          14:02:27

17  documented already.  If they were, they're already       14:02:29

18  documented.                                               14:02:33

19      Q  Sorry.  When you said the witnesses listed        14:02:34

20  here are the witnesses that had not been                 14:02:37

21  documented already?                                       14:02:38

22      MS. BARBER:  Objection.                               14:02:40

23      A  I can't say.                                       14:02:41

24      MS. BARBER:  Form, foundation, misstates             14:02:42

| | | |
|---|---|---|
| 1 | the witness's testimony. | 14:02:43 |
| 2 | A  I can't say in this case.  I don't know if | 14:02:45 |
| 3 | she was documented somewhere else or not. | 14:02:48 |
| 4 | Q  I'm asking you in general.  What goes in | 14:02:50 |
| 5 | the witnesses' section?  All witnesses in the case | 14:02:51 |
| 6 | or witnesses that had not yet been documented?  I | 14:02:53 |
| 7 | just didn't understand or hear what you said | 14:02:56 |
| 8 | before? | 14:02:58 |
| 9 | MS. BARBER:  Objection, form, foundation, | 14:02:58 |
| 10 | calls for speculation. | 14:03:02 |
| 11 | A  If witnesses -- I'm sorry. | 14:03:03 |
| 12 | MS. BARBER:  Go ahead. | 14:03:04 |
| 13 | A  If witnesses have already been documented, | 14:03:05 |
| 14 | there might not be a reason to put them in here. | 14:03:08 |
| 15 | If let's say a witness was documented earlier but | 14:03:11 |
| 16 | she's going to give another statement in here, in | 14:03:15 |
| 17 | this report, then you might list her. | 14:03:18 |
| 18 | Q  Got it. | 14:03:20 |
| 19 | But, in other words, so if I understand | 14:03:22 |
| 20 | correctly, what's being identified here as | 14:03:24 |
| 21 | witnesses are witnesses who are relevant to | 14:03:26 |
| 22 | whatever is going to be communicated in this | 14:03:29 |
| 23 | closed report itself; is that right? | 14:03:31 |
| 24 | MS. BARBER:  So you're switching back now. | 14:03:33 |

| | | |
|---|---|---|
| 1 | General or specific?  So is it this particular | 14:03:35 |
| 2 | report, in this case? | 14:03:40 |
| 3 | MR. SWAMINATHAN:  Thank you. | 14:03:41 |
| 4 | Q  I'm talking about in general, okay.  So | 14:03:42 |
| 5 | let me be clear. | 14:03:45 |
| 6 | In a cleared closed report, the people | 14:03:47 |
| 7 | identified as witnesses are individuals who are | 14:03:49 |
| 8 | going to be discussed in that cleared closed | 14:03:52 |
| 9 | report.  Do I have that right? | 14:03:54 |
| 10 | MS. BARBER:  Objection, form. | 14:03:56 |
| 11 | A  That would be my understanding, but again, | 14:03:59 |
| 12 | it's been over 15 years before I -- well, eight | 14:04:01 |
| 13 | years before I even thought about making reports. | 14:04:05 |
| 14 | Q  When you wrote cleared closed reports as a | 14:04:08 |
| 15 | homicide detective, were you -- when you listed | 14:04:11 |
| 16 | people in the witnesses' section, were you trying | 14:04:14 |
| 17 | to identify everybody who had been involved as a | 14:04:16 |
| 18 | witness in the investigation up to that point or | 14:04:19 |
| 19 | were you focused on people who you were going to | 14:04:21 |
| 20 | be discussing in your cleared closed report ? | 14:04:24 |
| 21 | MS. GOLDEN:  Form. | 14:04:25 |
| 22 | MS. BARBER:  Foundation. | 14:04:26 |
| 23 | A  Truthfully, I don't remember.  To be | 14:04:28 |
| 24 | truthful, I just do not remember. | 14:04:30 |

1       Q  If you go to the interview section here,          14:04:31

2    that's on Page 7.  Do you see that?                     14:04:36

3       A  Yes.                                              14:04:38

4       Q  Here it identifies two individuals.  Do           14:04:39

5    you see that?                                           14:04:44

6       A  Yes.                                              14:04:44

7       Q  In the interview section, is that intended        14:04:45

8    to identify all the individuals who are                 14:04:48

9    interviewed in the case or individuals who are          14:04:50

10   going to be discussed in the cleared closed             14:04:52

11   report?                                                 14:04:55

12         MS. BARBER:  In general or --                     14:04:55

13         MR. SWAMINATHAN:  Go ahead.                        14:04:58

14         MS. GOLDEN:  Form of the question.                14:04:59

15         MS. BARBER:  And foundation.                      14:05:00

16      A  You're talking about this report                  14:05:02

17   specifically?                                           14:05:04

18      Q  I'm asking you about cleared closed               14:05:04

19   reports.                                                14:05:07

20         MS. GOLDEN:  In general.                          14:05:07

21      A  In general, okay.  In general --                  14:05:09

22         MS. BARBER:  Same objections.                     14:05:10

23      A  Again, it would be the same.  If you              14:05:12

24   interviewed a lot of people along the way and if        14:05:14

| | | |
|---|---|---|
| 1 | they're already documented, their interviews are | 14:05:17 |
| 2 | already documented, I don't believe I'd put them | 14:05:19 |
| 3 | in the cleared closed report.  If I did, it's | 14:05:21 |
| 4 | probably because their interviews would be in | 14:05:27 |
| 5 | there. | 14:05:30 |
| 6 | Q  So if I understand correctly, when you | 14:05:30 |
| 7 | look at this particular report, Exhibit 2, it | 14:05:34 |
| 8 | identifies interviewed individuals being Jorge | 14:05:37 |
| 9 | Mejia and Leobardo Mejia, you would expect to see | 14:05:40 |
| 10 | information in this supplementary report about the | 14:05:43 |
| 11 | interviews of Jorge and Leobardo Mejia; is that | 14:05:45 |
| 12 | fair? | 14:05:51 |
| 13 | MS. BARBER:  Objection, form. | 14:05:51 |
| 14 | A  Again, for me I can't say how Detective | 14:05:53 |
| 15 | Halvorsen or Detective Guevara types a report.  If | 14:05:57 |
| 16 | I put them in there, I would expect to see their | 14:05:59 |
| 17 | names somewhere in the body of the report. | 14:06:02 |
| 18 | Q  And would you expect to see information | 14:06:04 |
| 19 | about what they communicated in any interviews | 14:06:05 |
| 20 | they had with the police officers? | 14:06:07 |
| 21 | MS. GOLDEN:  Asked and answered. | 14:06:09 |
| 22 | MS. BARBER:  Form, foundation. | 14:06:11 |
| 23 | A  Again, they would be documented somewhere, | 14:06:17 |
| 24 | either here or maybe in the previous report. | 14:06:19 |

| | | |
|---|---|---|
| 1 | Q  When you say they'd be documented -- | 14:06:22 |
| 2 | A  I would think that if you're going to put | 14:06:24 |
| 3 | them down as being interviewed, somewhere on one | 14:06:26 |
| 4 | of the reports you might see what their interview | 14:06:28 |
| 5 | was. | 14:06:33 |
| 6 | Q  There are a number of references in this | 14:06:33 |
| 7 | report to R/DETS or R/D.  That's a reference to | 14:06:55 |
| 8 | the reporting detectives, correct? | 14:06:59 |
| 9 | A  That's correct. | 14:07:00 |
| 10 | Q  In this case that's Detective Guevara and | 14:07:01 |
| 11 | Detective Halvorsen, correct? | 14:07:04 |
| 12 | A  That's correct. | 14:07:05 |
| 13 | Q  Okay.  If you go on Page 7 about a little | 14:07:06 |
| 14 | past halfway down the page, it says, On 3, April | 14:07:14 |
| 15 | '98 at 11:30 hours Detective Ray Guevara conducted | 14:07:18 |
| 16 | his first interview with Adriana Mejia in | 14:07:23 |
| 17 | interview -- at interview room at Area 5 | 14:07:28 |
| 18 | detectives.  Do you see that? | 14:07:30 |
| 19 | A  Yes. | 14:07:31 |
| 20 | Q  So reading this report, is it your | 14:07:31 |
| 21 | understanding that the first interview of Adriana | 14:07:35 |
| 22 | Mejia was conducted by Ray Guevara and only Ray | 14:07:39 |
| 23 | Guevara? | 14:07:42 |
| 24 | MS. GOLDEN:  Foundation and relevance. | 14:07:42 |

1   His interpretation of a police report he didn't          14:07:47

2   write, and I think we're going to probably spend a       14:07:50

3   lot of time on this.  I'm going to have an               14:07:53

4   objection to him interpreting.                           14:07:55

5        MR. SWAMINATHAN:  You can have a standing            14:07:57

6   objection, if you want to.                               14:07:59

7        Q  Go ahead.                                         14:08:01

8        A  Ray Guevara did the interview.                    14:08:03

9        Q  If additional people participated in that         14:08:04

10  interview of Adriana Mejia, would you expect that        14:08:07

11  to be documented here?                                   14:08:12

12       A  I would think somebody else would be              14:08:13

13  listed, if they were there.                              14:08:15

14       Q  Do you have any reason to dispute that            14:08:16

15  Detective Guevara conducted the first interview of       14:08:18

16  Adriana Mejia alone?                                     14:08:22

17       A  Could I dispute it?  No.                          14:08:24

18       Q  I'm not going to read the whole section           14:08:26

19  but beginning the last paragraph of the page is --       14:08:30

20  then documents Detective Guevara's interview of          14:08:33

21  Adriana Mejia, correct?                                  14:08:36

22       MS. GOLDEN:  Same objection.                         14:08:38

23       A  That's what it looks like, yes.                   14:08:41

24       Q  Did you see any GPR in the file related to        14:08:43

| | | |
|---|---|---|
| 1 | Detective Guevara's interview of Adriana Mejia on | 14:08:50 |
| 2 | April 3rd at 11:30? | 14:08:54 |
| 3 | MS. BARBER:  Objection, form, foundation. | 14:08:57 |
| 4 | A  I can't say I seen one. | 14:08:59 |
| 5 | Q  Okay. | 14:09:02 |
| 6 | A  But I didn't look for -- I just briefly | 14:09:02 |
| 7 | looked through the GPR's.  I don't know who made | 14:09:05 |
| 8 | them out. | 14:09:08 |
| 9 | Q  Have you ever seen any GPR or handwritten | 14:09:08 |
| 10 | notes reflecting Detective Guevara's first | 14:09:11 |
| 11 | interview of Adriana Mejia? | 14:09:14 |
| 12 | A  Have I?  No. | 14:09:16 |
| 13 | Q  Going back to the first page of this | 14:09:17 |
| 14 | report. | 14:09:19 |
| 15 | A  Okay. | 14:09:20 |
| 16 | Q  When was the report submitted? | 14:09:21 |
| 17 | MS. GOLDEN:  Foundation.  Are you asking | 14:09:24 |
| 18 | him to read the document or are you asking him | 14:09:30 |
| 19 | based on his own personal knowledge when this | 14:09:33 |
| 20 | report was submitted? | 14:09:36 |
| 21 | Q  Go ahead. | 14:09:39 |
| 22 | A  I don't know when it was submitted. | 14:09:39 |
| 23 | Q  Okay.  Looking at this report, what is | 14:09:41 |
| 24 | your understanding when this report was submitted? | 14:09:44 |

1      A   Under date submitted it says 30,              14:09:46

2   April 1998 at 2300 hours.                            14:09:49

3      Q   Does that indicate to you that Detective      14:09:51

4   Guevara and Halvorsen submitted this report on       14:09:54

5   April 30th of 1998?                                  14:09:57

6      MS. GOLDEN:  Foundation and relevance, for        14:09:58

7   this witness, relevance for this.                    14:10:03

8      A   That's what it looks like but could it be     14:10:06

9   a computer error, I don't know.                      14:10:09

10     Q   When you prepared reports, what did you       14:10:10

11  put in the date submitted field?                     14:10:12

12     A   Again, going back then, I don't recall if     14:10:14

13  that was computer generated or not.  So it's hard    14:10:20

14  to say.  If it was computer generated, the           14:10:26

15  computer put the date in.  And it might be when      14:10:29

16  you printed it up and finished it.  I don't          14:10:32

17  recall.  It might not be you did the whole report    14:10:38

18  on that date, but that's the date you printed it     14:10:40

19  and handed it in.  I'm not sure.                     14:10:44

20     Q   I'm not sure I understand your answer.        14:10:47

21     When you did your report as a homicide           14:10:49

22  detective, what you put into the date submitted      14:10:52

23  field was the date that you actually submitted the   14:10:57

24  report; is that right?                               14:10:59

| | | |
|---|---|---|
| 1 | A   Again -- | 14:11:00 |
| 2 | MS. GOLDEN:   Asked and answered. | 14:11:00 |
| 3 | A   What I'm saying is -- | 14:11:03 |
| 4 | MS. BARBER:   Misstates the witness's | 14:11:03 |
| 5 | testimony. | 14:11:05 |
| 6 | A   -- I'm not sure if that was computer | 14:11:06 |
| 7 | generated by a computer on the date that it was | 14:11:08 |
| 8 | printed out.  So I don't know actually in this | 14:11:11 |
| 9 | type of report you typed it in.  On the older | 14:11:13 |
| 10 | reports where we used the typewriters, yes, you | 14:11:15 |
| 11 | would type it in.  It then became computer | 14:11:19 |
| 12 | generated.  So I can't say if this -- I don't | 14:11:21 |
| 13 | remember if this would have been computer | 14:11:23 |
| 14 | generated on the date they printed out to submit | 14:11:25 |
| 15 | it or when, you know, they actually prepared the | 14:11:28 |
| 16 | report. | 14:11:33 |
| 17 | Q   When you typed -- in the period when you | 14:11:34 |
| 18 | were typing it up yourself, would you put the date | 14:11:36 |
| 19 | you were actually submitting the report in the | 14:11:40 |
| 20 | date submitted field? | 14:11:42 |
| 21 | A   Yes. | 14:11:43 |
| 22 | Q   And when it was computer generated, was | 14:11:44 |
| 23 | the computer-generated time based on when you | 14:11:46 |
| 24 | printed it out in order to submit it to the | 14:11:49 |

1   supervisor?                                              14:11:51

2       A   I do believe so, yes.                            14:11:52

3       Q   And so in this case -- well, strike that.        14:11:53

4           In this case when was the report approved?       14:11:58

5           MS. GOLDEN:  Foundation.  If you're asking       14:12:02

6   him --                                                   14:12:05

7       Q   Go ahead.                                        14:12:07

8           MS. GOLDEN:  No.  Are your questions going       14:12:08

9   to be what the document states or --                     14:12:11

10          MR. SWAMINATHAN:  My questions are going          14:12:13

11  to be what my questions are going to be.  If you         14:12:14

12  have an objection to foundation, you have an             14:12:17

13  objection to foundation.  I can't make you not           14:12:17

14  make an objection to foundation.  Go ahead.              14:12:20

15          MS. GOLDEN:  I have an objection to               14:12:21

16  foundation and to you asking him what a report           14:12:22

17  that you can read easily as I can read here says.        14:12:29

18      A   It appears it was approved on 4, May 1998.       14:12:35

19      Q   Approved approximately five days after it        14:12:39

20  was submitted, right?                                    14:12:43

21          MS. GOLDEN:  Foundation.                          14:12:44

22      A   That's what it appears.                          14:12:48

23      Q   Anything unusual or stand out to you about       14:12:50

24  taking five days from the time of submission to          14:12:53

1    the time of approval?                                    14:12:55

2        A  No.                                               14:12:57

3        Q  If you turn to the last page of this             14:12:57

4    document, pages 20 and 21, you can see that             14:13:09

5    charges in this case were approved on April 5th,        14:13:12

6    1998.                                                    14:13:25

7            MS. GOLDEN:  Where are you, Anand?              14:13:41

8            MR. SWAMINATHAN:  Page 20, ASA Andrew           14:13:44

9    Varga arrived.  Stats were taken, handwritten           14:13:44

10   statements from Rosauro Mejia.  April 5th,              14:13:49

11   handwritten statement from Mejia.  And then it          14:13:51

12   describes the final interviews and the crime lab        14:13:53

13   report and then charges approved at the end,            14:13:58

14   right?                                                   14:14:01

15           MS. GOLDEN:  All right.                         14:14:01

16       Q  This investigation was -- charges were          14:14:03

17   approved as of April 5th, 1998, correct?                14:14:05

18           MS. GOLDEN:  Foundation.                        14:14:10

19       A  That's what it says, yes.                        14:14:11

20       Q  And the cleared closed report wasn't            14:14:12

21   submitted until April 30th, 1998, correct?              14:14:14

22           MS. GOLDEN:  Foundation.                        14:14:18

23       A  That's what it says.                             14:14:18

24       Q  Anything unusual about the amount of time       14:14:19

1    it took for this to be submitted?                    14:14:22

2         A   You know, I can't say what took so long.    14:14:24

3    I didn't type the report.  I don't know why          14:14:29

4    Halvorsen and Guevara took so look.                  14:14:31

5         Q   Did you usually -- sorry, go ahead.         14:14:34

6         A   It could be a lot of reasons.  Me, it       14:14:37

7    could be on certain cases it took awhile because     14:14:40

8    you might catch another murder on April 7th.  And    14:14:47

9    now you're tied up with that.  The closing report    14:14:51

10   is not -- you know, you're typing it up.  You're     14:14:54

11   going to submit it.  You have all your notes.  But   14:14:59

12   there's other pressing matters.                      14:15:01

13        Q   Did you typically submit your closing       14:15:04

14   reports faster than four weeks from when the         14:15:06

15   charges were approved?                               14:15:09

16        A   If I was able to, yes.                      14:15:11

17        Q   And were you usually able to?               14:15:13

18        A   That was a long time ago.  I don't recall.  14:15:14

19        Q   As you said earlier, the cleared closed     14:15:17

20   report was approved as of May 4th, 1998, correct?    14:15:22

21        MS. GOLDEN:  Not what he said.  That's          14:15:26

22   what the report said.                                14:15:30

23        Q   All right.  Let me ask you a separate       14:15:31

24   question.                                            14:15:33

1       As of May 4th, 1998, would you expect that                14:15:33

2   all GPR's and supplemental reports related to the             14:15:39

3   investigation had now been submitted?                         14:15:45

4       MS. BARBER:  Objection, form, foundation.                 14:15:47

5       A  Every case is different.  I'm not sure if              14:15:51

6   any were outstanding.  I mean, in general on any              14:15:55

7   given case, the majority of them I would imagine              14:15:58

8   been submitted.  There might be some still out                14:16:01

9   there.  I don't know.                                          14:16:04

10      Q  If I understand correctly, typically the               14:16:05

11  closed -- cleared closed report is the last                    14:16:09

12  supplementary report of the case.  There could be             14:16:10

13  some exception of some continuing investigation              14:16:12

14  that happened or, you know, something I imagine,             14:16:14

15  but I want to ask you about the typical scenario.            14:16:17

16  Typically the cleared closed report is the last              14:16:21

17  supplementary report in the case; is that right?            14:16:23

18      MS. GOLDEN:  Form.                                        14:16:24

19      A  Yes, it's closing the case out.                       14:16:26

20      Q  And if I understood from your testimony               14:16:28

21  yesterday, as supplementary reports are submitted,          14:16:29

22  including the cleared closed report, any GPR's              14:16:35

23  related to those reports are also submitted,                14:16:39

24  correct?                                                      14:16:42

| | | |
|---|---|---|
| 1 | MS. GOLDEN: Form, asked and answered. | 14:16:42 |
| 2 | A Probably should be in a timely fashion, | 14:16:46 |
| 3 | yes. | 14:16:48 |
| 4 | Q And then the sergeant who's approving the | 14:16:48 |
| 5 | report also has the GPR's at the same time, | 14:16:50 |
| 6 | correct? | 14:16:53 |
| 7 | A The sergeant, when he gets them, he gets | 14:16:58 |
| 8 | them. The sergeant approves them when he approves | 14:17:00 |
| 9 | them. I'm not a sergeant. | 14:17:03 |
| 10 | Q And then when the sergeant approves the | 14:17:04 |
| 11 | cleared closed report, would you expect that's | 14:17:07 |
| 12 | also when the GPR's associated with the case have | 14:17:09 |
| 13 | all been approved? | 14:17:12 |
| 14 | MS. BARBER: Objection, form. | 14:17:13 |
| 15 | MS. GOLDEN: Foundation. | 14:17:14 |
| 16 | A I have no idea. | 14:17:17 |
| 17 | Q Would you expect that there are any GPR's | 14:17:18 |
| 18 | being turned in after the cleared closed report | 14:17:20 |
| 19 | has been turned in? | 14:17:22 |
| 20 | MS. GOLDEN: Asked and answered. | 14:17:23 |
| 21 | MS. BARBER: Form, foundation, incomplete | 14:17:24 |
| 22 | hypothetical. | 14:17:28 |
| 23 | A Normally would that happen that way, no, | 14:17:28 |
| 24 | but it could. | 14:17:31 |

1      Q   Normally they would all be submitted          14:17:32

2   before?                                              14:17:35

3          MS. GOLDEN:  Asked and answered.              14:17:35

4      A   That's correct.                               14:17:37

5          MS. GOLDEN:  Just literally what he said.     14:17:37

6      Q   Now, let me ask you -- let's see, you were    14:17:41

7   on Page 7.  I want you to read the paragraph that    14:17:47

8   begins with Adriana Mejia at the bottom of Page 7    14:18:04

9   and it goes through the first half of Page 8.        14:18:07

10  Tell me when you're done reading that paragraph.     14:18:11

11         Let me grab one document while he's           14:19:33

12  reading that.                                        14:19:37

13         Sir, you had a chance to review the bottom    14:21:43

14  of Page 7 and the top of Page 8?                     14:21:46

15         It basically summarizes an interview that     14:21:48

16  Detective Guevara conducted with Adriana Mejia; is   14:21:51

17  that correct?                                        14:21:56

18     A   That's correct.                               14:21:56

19     Q   Does reading that paragraph refresh your      14:21:56

20  memory in any way about any interviews you           14:22:00

21  conducted with Adriana Mejia?                        14:22:02

22     A   No.                                           14:22:04

23     Q   Is the information communicated in that       14:22:04

24  interview by Detective Guevara consistent with the   14:22:07

1    information Ms. Mejia gave you when you conducted          14:22:11

2    an interview with her?                                     14:22:15

3        A   I don't remember what Ms. Mejia conveyed           14:22:16

4    to us.                                                     14:22:19

5        Q   Okay.  Looking at the next paragraph.              14:22:20

6        A   Okay.                                              14:22:22

7        Q   It says Detective Kevin McDonald -- it's           14:22:22

8    Kevin, right?                                              14:22:27

9        A   Yes.                                               14:22:28

10       Q   Detective Kevin McDonald searched the iCam         14:22:28

11   database and located a woman named Norma Salazar,          14:22:33

12   and the IR number.  A photo of this Norma Salazar          14:22:36

13   was shown to Adriana Mejia who identified her as           14:22:39

14   being the woman who gave her the children.                 14:22:41

15       Did you have any involvement in that photo            14:22:44

16   identification procedure with Ms. Mejia?                   14:22:47

17       A   No, I didn't.                                      14:22:49

18       Q   What is an iCAM database photo?                    14:22:50

19       A   It's basically -- it would be like an IR           14:22:59

20   photo I guess.                                             14:23:03

21       Q   Is it like a booking photo?                        14:23:04

22       A   Yes, I believe so.                                 14:23:06

23       Q   Something you're getting out of a                  14:23:07

24   computer?                                                  14:23:09

| | | |
|---|---|---|
| 1 | A  Yes. | 14:23:10 |
| 2 | Q  Okay.  Is it -- so it's not like a | 14:23:10 |
| 3 | Polaroid or something like that? | 14:23:14 |
| 4 | A  No. | 14:23:16 |
| 5 | Q  Okay. | 14:23:16 |
| 6 | (Whereupon, Rutherford Deposition Exhibit | 14:23:20 |
| 7 | Nos. 3-5 were marked for identification.) | 14:23:20 |
| 8 | Q  Handing you a document marked Exhibit 3, | 14:23:42 |
| 9 | Bates stamped RFC Solache/Reyes 207.  At the top | 14:23:45 |
| 10 | it says, "Chicago Police Department CB report." | 14:23:46 |
| 11 | Sir, are you familiar with this type of | 14:23:54 |
| 12 | document now marked as Exhibit 3? | 14:23:57 |
| 13 | A  Yes. | 14:23:58 |
| 14 | Q  What type of document is Exhibit 3? | 14:23:59 |
| 15 | A  This is probably what you'd call the iCAM | 14:24:01 |
| 16 | photo. | 14:24:04 |
| 17 | Q  Okay.  So this is what it looks like when | 14:24:04 |
| 18 | you pull something out of an iCAM database? | 14:24:07 |
| 19 | A  I believe so.  I haven't pulled it out in | 14:24:13 |
| 20 | a long time but yeah. | 14:24:14 |
| 21 | Q  If you wanted to pull something out of the | 14:24:14 |
| 22 | iCAM database to show to a witness, would you be | 14:24:18 |
| 23 | showing them the entire thing that includes the | 14:24:20 |
| 24 | information along the left side or would there be | 14:24:21 |

1  ways you just have a photo?                        14:24:25

2      A  I don't recall.  If this was a way you      14:24:26

3  might just fold it or cut it.                       14:24:32

4      Q  The next paragraph says on April 3rd,       14:24:37

5  1998 --                                             14:24:51

6      MS. GOLDEN:  Are you back on a different        14:24:51

7  exhibit?                                            14:24:53

8      MR. SWAMINATHAN:  Yes.  Sorry, turning          14:24:53

9  back to Exhibit 2.  Thank you.                      14:24:55

10     Q  Looking at Exhibit 2, still on Page 8, it    14:24:58

11  says 3, April '98 at 5800 hours Detective Collins  14:25:02

12  and McDonald located Norma Salazar and brought her 14:25:06

13  into Area 5 detectives.  Adriana Mejia viewed       14:25:10

14  Norma Salazar in lineup but did not identify her.   14:25:13

15  Norma Salazar was questioned by Detective McDonald  14:25:17

16  and denied any knowledge about what Adriana Mejia   14:25:20

17  was saying.  Norma Salazar was eliminated as a      14:25:22

18  suspect.  Permitted to leave Area 5 detectives.     14:25:25

19  Do you see that on Exhibit 2?                       14:25:28

20     A  Yes, I do.                                    14:25:30

21     Q  Did you have any involvement in any lineup   14:25:31

22  conducted with Norma Salazar?                       14:25:34

23     A  No, I did not.                                14:25:37

24     Q  Is it your understanding from reading this   14:25:38

| | | |
|---|---|---|
| 1 | report of Mr. Halvorsen and Mr. Guevara that they | 14:25:40 |
| 2 | did conduct a lineup in which Ms. Mejia viewed a | 14:25:43 |
| 3 | lineup and Ms. Salazar was a participant? | 14:25:48 |
| 4 | MS. GOLDEN: Can you be more specific with | 14:25:52 |
| 5 | respect to they? No? Okay. Form. | 14:25:55 |
| 6 | A If you're asking me did Halvorsen and | 14:26:02 |
| 7 | Guevara do the lineup, I can't tell you if they | 14:26:04 |
| 8 | did it. It looks like it might have been McDonald | 14:26:07 |
| 9 | and Collins, but I wasn't there. So I have no | 14:26:10 |
| 10 | idea who did the lineup. | 14:26:13 |
| 11 | Q You understand the lineup was conducted | 14:26:13 |
| 12 | based on this report? | 14:26:15 |
| 13 | A Yes. | 14:26:16 |
| 14 | Q And you don't know who conducted it? | 14:26:16 |
| 15 | A I have no idea. | 14:26:18 |
| 16 | Q Is it your expectation that lineup would | 14:26:19 |
| 17 | have resulted in a lineup report? | 14:26:24 |
| 18 | MS. GOLDEN: Can you read the question | 14:26:26 |
| 19 | back. | 14:26:36 |
| 20 | (Record read back by the | 14:26:36 |
| 21 | reporter.) | 14:26:36 |
| 22 | A In this case I would have done a lineup | 14:26:37 |
| 23 | report. However, for whatever reason Detective | 14:26:40 |
| 24 | McDonald, Detective Collins determined they didn't | 14:26:44 |

| | | |
|---|---|---|
| 1 | need one. | 14:26:48 |
| 2 | Q  They were wrong about that, right?  There | 14:26:48 |
| 3 | was supposed to be a lineup report; isn't it | 14:26:50 |
| 4 | right? | 14:26:53 |
| 5 | MS. BARBER:  Objection, form, misstates | 14:26:53 |
| 6 | the witness's testimony, and foundation. | 14:26:55 |
| 7 | A  I can't say why they didn't do it, so I | 14:27:00 |
| 8 | can't say they were wrong or right.  I could tell | 14:27:02 |
| 9 | you I would have filled it out.  If you look, it's | 14:27:05 |
| 10 | sort of documented in there that a lineup was | 14:27:11 |
| 11 | done.  They did document a lineup was done.  I | 14:27:14 |
| 12 | would have done what is called a lineup | 14:27:17 |
| 13 | supplemental report.  Why they didn't, you'd have | 14:27:20 |
| 14 | to ask them but unfortunately we can't. | 14:27:23 |
| 15 | Q  Like I said, we're not -- I'm not asking | 14:27:26 |
| 16 | why they didn't do it.  I'm asking a different | 14:27:27 |
| 17 | question. | 14:27:29 |
| 18 | Based on what we talked about yesterday, | 14:27:29 |
| 19 | my understanding is when you conduct a lineup, | 14:27:32 |
| 20 | regardless of the results, you're supposed to | 14:27:34 |
| 21 | create a lineup report; is that right? | 14:27:37 |
| 22 | MS. GOLDEN:  Asked and answered, form. | 14:27:38 |
| 23 | A  That's correct. | 14:27:40 |
| 24 | Q  And a lineup report is supposed to include | 14:27:41 |

| | | |
|---|---|---|
| 1 | information like who the participants were in that | 14:27:43 |
| 2 | lineup, correct? | 14:27:47 |
| 3 |    A  That's correct. | 14:27:47 |
| 4 |    Q  And in this case would you agree with me | 14:27:48 |
| 5 | that the information that is communicated in this | 14:27:50 |
| 6 | paragraph, Page 8 of Exhibit 2 that I've just | 14:27:52 |
| 7 | read, it does not contain all of the information | 14:27:57 |
| 8 | you include in a lineup report? | 14:28:01 |
| 9 |      MS. GOLDEN:  Again, you're asking him to | 14:28:04 |
| 10 | read this document which you can read as easily as | 14:28:05 |
| 11 | I can, so foundation. | 14:28:08 |
| 12 |    A  Yes, like I said, I would have prepared a | 14:28:09 |
| 13 | report.  They didn't.  I don't know why they | 14:28:13 |
| 14 | didn't.  But I would have prepared one if I ran | 14:28:15 |
| 15 | this lineup. | 14:28:18 |
| 16 |    Q  Based on your review of the cleared closed | 14:28:19 |
| 17 | report in preparation for this deposition of | 14:28:23 |
| 18 | several times, as we discussed yesterday, do you | 14:28:25 |
| 19 | have any explanation for why they didn't prepare a | 14:28:27 |
| 20 | lineup report in this case? | 14:28:31 |
| 21 |      MS. GOLDEN:  Asked and answered.  He's | 14:28:32 |
| 22 | given you the answer to that question three or | 14:28:36 |
| 23 | four times. | 14:28:39 |
| 24 |    Q  Go ahead. | 14:28:40 |

| | | |
|---|---|---|
| 1 | A  One of the reasons they might not I | 14:28:41 |
| 2 | believe in the report that Mrs. Mejia changes her | 14:28:42 |
| 3 | story about the involvement of Norma Salazar. | 14:28:45 |
| 4 | She's no longer involved in it.  So there would be | 14:28:49 |
| 5 | no reason to have done the lineup, if you could | 14:28:54 |
| 6 | have went backwards.  But they did the lineup and | 14:28:56 |
| 7 | maybe that's why they didn't do it.  I still would | 14:28:59 |
| 8 | have done it.  They didn't.  I can't tell you why. | 14:29:02 |
| 9 | Q  That explanation you just gave would not | 14:29:05 |
| 10 | justify not doing a lineup report; do you agree | 14:29:08 |
| 11 | with that? | 14:29:11 |
| 12 | MS. BARBER:  Objection, form, foundation, | 14:29:11 |
| 13 | calls for speculation. | 14:29:15 |
| 14 | A  I'm not the supervisor.  I don't make | 14:29:18 |
| 15 | those decisions.  They made their decision.  I | 14:29:20 |
| 16 | wasn't there.  I would have done something | 14:29:23 |
| 17 | differently.  I'm not going to say it was | 14:29:26 |
| 18 | justified, unjustified, right or wrong.  It's not | 14:29:29 |
| 19 | my call. | 14:29:32 |
| 20 | Q  Last sentence of that paragraph says, | 14:29:33 |
| 21 | "Norma Salazar was eliminated as a suspect and | 14:29:37 |
| 22 | permitted to leave Area 5 detectives." | 14:29:40 |
| 23 | Do you know what the information was that | 14:29:42 |
| 24 | eliminated her as a suspect? | 14:29:46 |

| | | |
|---|---|---|
| 1 | MS. BARBER:  Objection, foundation. | 14:29:48 |
| 2 | A  Well, she wasn't identified, No. 1, and | 14:30:00 |
| 3 | the only person that was bringing her up was the | 14:30:03 |
| 4 | person who viewed the lineup, Mrs. Mejia.  So if | 14:30:06 |
| 5 | she can't identify her, that knocks that down a | 14:30:10 |
| 6 | bit.  She had -- she denied it.  I imagine he | 14:30:14 |
| 7 | would have asked her about her kids and that, but | 14:30:22 |
| 8 | I don't know if they did.  I would assume they | 14:30:24 |
| 9 | would have.  So I can't say exactly why they | 14:30:26 |
| 10 | eliminated her, but that would be one of the | 14:30:33 |
| 11 | reasons that she wasn't identified. | 14:30:34 |
| 12 | Q  If -- one of the reasons she was | 14:30:35 |
| 13 | eliminated as a suspect was based on their | 14:30:39 |
| 14 | interview with her, would you expect that | 14:30:42 |
| 15 | interview with her to be documented? | 14:30:44 |
| 16 | A  Yes. | 14:30:46 |
| 17 | Q  And the reasons that what she communicated | 14:30:46 |
| 18 | to them during the course of that interview -- | 14:30:50 |
| 19 | strike that. | 14:30:52 |
| 20 | The reasons that you communicated -- | 14:30:52 |
| 21 | strike that.  I'm all over the place.  Let me try | 14:30:56 |
| 22 | again. | 14:30:59 |
| 23 | Whatever she communicated to them during | 14:31:00 |
| 24 | the course of an interview about -- that caused | 14:31:02 |

| | | |
|---|---|---|
| 1 | the detectives to eliminate her as a suspect, | 14:31:05 |
| 2 | would you expect that information to be documented | 14:31:09 |
| 3 | in this file? | 14:31:11 |
| 4 | MS. BARBER:  Objection, form, foundation, | 14:31:12 |
| 5 | calls for speculation. | 14:31:18 |
| 6 | A  It would be helpful to know why they | 14:31:23 |
| 7 | eliminated her. | 14:31:25 |
| 8 | Q  Based on the cleared closed report, would | 14:31:25 |
| 9 | you agree with me as of April 3rd, 1998, Norma | 14:31:28 |
| 10 | Salazar was a suspect in the Soto homicide? | 14:31:31 |
| 11 | MS. BARBER:  Objection, form, foundation. | 14:31:34 |
| 12 | A  I wasn't there, so I don't know.  Based on | 14:31:37 |
| 13 | what Mrs. Mejia said, they followed it up.  She | 14:31:39 |
| 14 | was a suspect I guess. | 14:31:46 |
| 15 | Q  And if -- and she was obviously | 14:31:48 |
| 16 | interviewed as a suspect, correct? | 14:31:50 |
| 17 | MS. GOLDEN:  Form. | 14:31:52 |
| 18 | A  I didn't interview her, so I don't know | 14:31:54 |
| 19 | why they interviewed her.  After she was not | 14:31:56 |
| 20 | identified in the lineup, did they still consider | 14:31:58 |
| 21 | her a suspect?  I don't know. | 14:32:03 |
| 22 | Q  Based on the information here that she was | 14:32:04 |
| 23 | not identified in a lineup by Adriana Mejia and | 14:32:07 |
| 24 | then questioned by the detectives, would you | 14:32:11 |

| | | |
|---|---|---|
| 1 | expect there to have been some follow-up | 14:32:14 |
| 2 | investigation to assess whether Norma Salazar | 14:32:17 |
| 3 | could be eliminated as a suspect? | 14:32:20 |
| 4 | MS. GOLDEN:  Question -- and to complete | 14:32:22 |
| 5 | the sentence, for the rule of completeness, | 14:32:24 |
| 6 | question and denied any knowledge about what | 14:32:30 |
| 7 | Adriana Mejia was saying. | 14:32:32 |
| 8 | Q  Go ahead. | 14:32:34 |
| 9 | A  Yeah, I mean, I don't know what they did. | 14:32:35 |
| 10 | Q  Would you expect there would have been | 14:32:39 |
| 11 | some further follow-up based on the information | 14:32:41 |
| 12 | you got here? | 14:32:44 |
| 13 | MS. BARBER:  Objection, form, foundation, | 14:32:45 |
| 14 | calls for speculation. | 14:32:47 |
| 15 | A  They interviewed her, so I don't know what | 14:32:49 |
| 16 | more they'd be doing because I don't know exactly | 14:32:52 |
| 17 | what was said. | 14:32:55 |
| 18 | Q  On page 9, top of the page on 3, April '98 | 14:32:57 |
| 19 | at 1700 hours Detective Guevara asked Adriana Soto | 14:33:22 |
| 20 | -- I assume that means Adriana Mejia -- to submit | 14:33:26 |
| 21 | to a polygraph examination which she agreed to do. | 14:33:29 |
| 22 | Do you see that? | 14:33:34 |
| 23 | MS. GOLDEN:  I'm going to object to your | 14:33:34 |
| 24 | assumption about -- | 14:33:36 |

1        Q   Go ahead.                                    14:33:38

2            MS. GOLDEN:   -- some interpretation of      14:33:39

3    this report.                                         14:33:41

4        A   I see it.                                    14:33:41

5        Q   You understand that to be a reference        14:33:42

6    Adriana Mejia and that it's a typo referring to      14:33:45

7    Adriana Soto?                                        14:33:48

8            MS. GOLDEN:   Foundation.                    14:33:49

9        A   I'm not sure but I would assume but...       14:33:52

10       Q   It says she agreed to do a polygraph.  Do    14:33:55

11   you have to get somebody's agreement to do a         14:34:00

12   polygraph?                                           14:34:03

13       A   Yes.                                         14:34:03

14       Q   Can you do a polygraph even if they don't    14:34:03

15   agree to do one?                                     14:34:07

16       A   I don't know how you'd do it without their   14:34:08

17   agreement.                                           14:34:10

18       Q   If they were suspect and you got -- strike   14:34:10

19   that.                                                14:34:14

20           If a person -- you have to get somebody's    14:34:14

21   permission to say, look, I'm taking you to do a      14:34:17

22   polygraph?                                           14:34:21

23           MS. GOLDEN:   Exactly asked and answered     14:34:22

24   two questions ago.                                   14:34:24

| | | |
|---|---|---|
| 1 | Q Go ahead. | 14:34:26 |
| 2 | A You can't do it without their agreement. | 14:34:26 |
| 3 | Q The last sentence -- sorry, the last | 14:34:29 |
| 4 | couple sentences there it says, on 3, April '98 at | 14:34:42 |
| 5 | 1830 hours, Rosauro Mejia signed a consent to | 14:34:46 |
| 6 | search form at Area 5 detectives. Detectives | 14:34:50 |
| 7 | Stephens, Ruiz, and Santopadre then went to 6034 | 14:34:53 |
| 8 | -- 6234 South Mozart to search the residence of | 14:34:58 |
| 9 | Rosauro and Adriana Mejia. Pause there for one | 14:35:02 |
| 10 | moment. | 14:35:06 |
| 11 | On April 3rd, 1998, at 6:30 p.m., when the | 14:35:07 |
| 12 | consent to search form was signed and those | 14:35:13 |
| 13 | detectives went out to the residence, did you go | 14:35:16 |
| 14 | to the Mejia residence? | 14:35:18 |
| 15 | A I was not working that day, so, no, I | 14:35:21 |
| 16 | didn't. | 14:35:24 |
| 17 | Q Okay. And then it says, "At the same time | 14:35:24 |
| 18 | this search occurred Detective Guevara took | 14:35:26 |
| 19 | Adriana Mejia for her polygraph test"; do you see | 14:35:29 |
| 20 | that? | 14:35:32 |
| 21 | A Yes. | 14:35:32 |
| 22 | Q So your understanding that it was | 14:35:33 |
| 23 | Detective Guevara alone who took Ms. Mejia to the | 14:35:34 |
| 24 | polygraph test? | 14:35:38 |

1        MS. GOLDEN:  Foundation and form.                    14:35:40

2     A  I don't know if anybody else went with            14:35:42

3   him.  So I couldn't say if he was alone or not.      14:35:44

4     Q  If they did, would you expect that to be         14:35:48

5   documented here?                                      14:35:51

6     A  Yes.                                              14:35:53

7     Q  If you skip the next paragraph and the           14:35:54

8   next paragraph of that says, "On 3, April '98 at     14:36:08

9   2100 hours, Detective Guevara returned to Area 5      14:36:12

10  with Adriana Mejia.  She had been examined by         14:36:15

11  certified polygraph examiner Bartik, who stated       14:36:21

12  that Adriana Mejia had completely failed the          14:36:25

13  polygraph test as to knowledge and participation."    14:36:27

14  Do you see that?                                       14:36:30

15    A  Yes.                                              14:36:31

16    Q  So fair to say that based on this report         14:36:31

17  Ms. Mejia was alone with Detective Guevara from       14:36:34

18  6:30 p.m. to 9:00 p.m.?                                14:36:39

19        MS. GOLDEN:  Foundation.                         14:36:41

20    A  I have no idea.  You have to really talk         14:36:44

21  to Detective Halvorsen about this report.  Maybe      14:36:47

22  he's leaving himself out that he's with Guevara.      14:36:50

23  I would assume he would go with him.  But I don't     14:36:54

24  know where Ernie is.  As he's typing, maybe he's      14:36:58

| | | |
|---|---|---|
| 1 | not typing himself in there.  So you would be | 14:37:02 |
| 2 | better off asking him.  I'm not going to assume | 14:37:05 |
| 3 | that Guevara was alone with her. | 14:37:07 |
| 4 | Q  In your -- strike that. | 14:37:09 |
| 5 | You would expect that typically for a step | 14:37:11 |
| 6 | like this to be taken by the primary assigned | 14:37:14 |
| 7 | detective that usually both detectives, the | 14:37:17 |
| 8 | partners would go together? | 14:37:20 |
| 9 | A  That's correct. | 14:37:22 |
| 10 | Q  Okay.  Now, in this case there's a common | 14:37:23 |
| 11 | mechanism by which Detective Halvorsen | 14:37:26 |
| 12 | communicated when him and Detective Guevara did | 14:37:30 |
| 13 | something and that was the use R/D or R/DETS, | 14:37:32 |
| 14 | correct? | 14:37:39 |
| 15 | MS. BARBER:  Objection, foundation. | 14:37:39 |
| 16 | A  Yes. | 14:37:41 |
| 17 | Q  And when you were writing reports, was it | 14:37:41 |
| 18 | common to use reporting detectives to refer to the | 14:37:44 |
| 19 | detectives who were the partners who were writing | 14:37:46 |
| 20 | a report? | 14:37:49 |
| 21 | A  Yes, it was. | 14:37:49 |
| 22 | Q  Okay.  So if Detective Halvorsen had | 14:37:50 |
| 23 | participated in the transport of Adriana Mejia for | 14:37:53 |
| 24 | the polygraph test, he could have easily indicated | 14:37:59 |

1    that the reporting detectives took Adriana Mejia          14:38:01

2    rather than Detective Guevara, correct?                   14:38:05

3         MS. BARBER:  Objection, form.                        14:38:07

4      A  He typed a report?  He could have.  I                14:38:08

5    don't know why he did what he did.                        14:38:11

6      Q  Is it -- strike that.                                14:38:12

7         MS. GOLDEN:  This is what happens when you           14:38:17

8    ask him to interpret someone else's report.               14:38:20

9         MR. SWAMINATHAN:  What happens?                      14:38:22

10        MS. GOLDEN:  He doesn't know.  He can't --           14:38:23

11        MR. SWAMINATHAN:  What is the purpose of             14:38:25

12   saying what you just said?                                14:38:27

13        MS. GOLDEN:  You're --                               14:38:28

14        MR. SWAMINATHAN:  You think I just wasted            14:38:28

15   my time?                                                  14:38:30

16        MS. GOLDEN:  You wasted time and you're              14:38:31

17   going to waste more time.                                 14:38:33

18        MR. SWAMINATHAN:  I appreciate your                  14:38:35

19   charity for helping me to figure out how to use my        14:38:37

20   time.                                                     14:38:41

21        MS. GOLDEN:  Oh, believe me --                       14:38:41

22        MR. SWAMINATHAN:  It's very kind of you.             14:38:41

23        MS. GOLDEN:  -- I feel like you're abusing           14:38:42

24   his time but...                                           14:38:45

```
 1      Q  All right.  Looking further down the page,          14:38:53

 2   there's a paragraph that begins -- the second to          14:38:56

 3   last paragraph.  It begins, "On 3, April '98 at           14:38:59

 4   2230 hours, Detective Guevara conducted his second        14:39:02

 5   interview with Adriana Mejia in an interview room         14:39:07

 6   at Area 5 detectives."  Do you see that?                  14:39:11

 7      A  Yes, I do.                                          14:39:32

 8      Q  Okay.                                              14:39:32

 9      MS. GOLDEN:  All right.  Before you ask

10   another question.

11      Anna, do you have time stamps on the

12   transcript?

13      THE REPORTER:  Yes, I do.

14             (Discussion had with reporter

15              and counsel.)

16      Q  Looking at this report, would you agree             14:39:32

17   with me it indicates that Detective Guevara               14:39:34

18   conducted a second interview along with Adriana           14:39:37

19   Mejia?                                                    14:39:44

20      A  Detective Guevara conducted an interview.          14:39:44

21      Q  Do you have any reason to dispute that             14:39:48

22   Detective Guevara conducted an interview on               14:39:51

23   April 3rd, '98 at 10:30 p.m. alone with Adriana           14:39:54

24   Mejia?                                                    14:39:59
```

1    A  I couldn't say if he was alone or with                    14:39:59

2  somebody else.  Guevara did the interview.                     14:40:02

3    Q  Okay.  Do you believe that where it says                  14:40:04

4  Detective Guevara on this report for April 3rd,                14:40:06

5  '98 at 2230 hours that that indicates that                     14:40:10

6  Detective Halvorsen also participated in the                   14:40:13

7  interview?                                                     14:40:15

8    A  I have no idea.                                            14:40:16

9    Q  So do you have any reason to dispute when                 14:40:17

10  Ernie Halvorsen wrote Detective Guevara and only              14:40:21

11  Detective Guevara that he meant only Detective                14:40:25

12  Guevara?                                                      14:40:29

13    MS. GOLDEN:  Okay.  Form of the question,                   14:40:29

14  misstates what he wrote.                                      14:40:31

15    A  If he typed up Guevara and only Guevara,                 14:40:32

16  then I'd say it was only Guevara.  However, he                14:40:36

17  types up just Detective Guevara.  Detective                   14:40:39

18  Guevara was there.  I can't say if anybody else               14:40:43

19  was there.  I wasn't there.                                   14:40:46

20    Q  Okay.  If you then look at the bottom of                 14:40:48

21  that page, it says Adriana Mejia and then it goes             14:40:51

22  through a summary of the statement that she                   14:40:55

23  provided to Detective Guevara, correct?                       14:40:58

24    A  Yes.                                                     14:41:00

1          MS. GOLDEN:  Hold on a second.                    14:41:01

2          THE WITNESS:  I'm sorry.                          14:41:01

3          MS. GOLDEN:  Read it first before you             14:41:03

4     agree.                                                 14:41:04

5          THE WITNESS:  Okay.                               14:41:05

6      Q  Why don't you go ahead and read that              14:41:10

7     paragraph and tell me when you're done.  Bottom of     14:41:12

8     Page 9 and top of Page 10.                             14:41:16

9          Finished reviewing it?                            14:44:21

10     A  Yes, I did.                                         14:44:22

11     Q  Having had a chance to review that                 14:44:23

12     section, does it refresh your memory at all about      14:44:25

13     your interactions with Adriana Mejia?                  14:44:27

14     A  No, it doesn't.                                     14:44:32

15     Q  Did you participate in the interview that          14:44:33

16     summarized on the bottom of page 9 and the top of      14:44:36

17     Page 10?                                               14:44:39

18         MS. GOLDEN:  Foundation.                           14:44:40

19     A  No, it didn't.  Again, I was off that day          14:44:42

20     and I wasn't working.                                  14:44:45

21     Q  The reason for your belief that you were           14:44:46

22     off that day and not working is the information in     14:44:48

23     this report itself, correct?                           14:44:51

24         MS. GOLDEN:  Okay.  Foundation, misstates          14:44:53

| | | |
|---|---|---|
| 1 | prior testimony. | 14:44:55 |
| 2 | A  Basically, yes. | 14:44:57 |
| 3 | Q  Okay.  The next paragraph says -- the next | 14:44:58 |
| 4 | paragraph begins, "Youth Officer Trevino initially | 14:45:04 |
| 5 | became involved in this investigation after | 14:45:10 |
| 6 | missing reports had been filed for the two Soto | 14:45:12 |
| 7 | children.  Youth Officer Trevino continued to | 14:45:15 |
| 8 | assist in this investigation as an interpreter." | 14:45:19 |
| 9 | Do you see that? | 14:45:22 |
| 10 | A  Yes. | 14:45:22 |
| 11 | Q  Is that consistent with your memory that | 14:45:22 |
| 12 | Mr. Trevino got involved as an interpreter? | 14:45:25 |
| 13 | MS. GOLDEN:  Foundation. | 14:45:29 |
| 14 | A  I wasn't there when Trevino got involved. | 14:45:30 |
| 15 | So I don't know why he got involved.  If that's | 14:45:34 |
| 16 | what it says, I'm assuming that's why he did it. | 14:45:36 |
| 17 | Q  Did you -- strike that. | 14:45:38 |
| 18 | Mr. Trevino served as an interpreter for | 14:45:40 |
| 19 | you during the period of time in which you | 14:45:44 |
| 20 | participated in the investigation; is that right? | 14:45:46 |
| 21 | A  That's correct. | 14:45:47 |
| 22 | Q  And you testified earlier about whether a | 14:45:48 |
| 23 | youth officer would conduct interrogation or | 14:45:56 |
| 24 | interview with a suspect on their own.  We talked | 14:46:00 |

1    about whether that would happen.  And you              14:46:03

2    indicated that's not something that you would do        14:46:05

3    or that you would see happening; is that fair?          14:46:08

4         MS. GOLDEN:  Form.                                 14:46:11

5         A  Not that I would do but I wasn't aware of       14:46:13

6    it.  I was never a youth officer.                       14:46:16

7         Q  Is there anything about this paragraph          14:46:17

8    that we just read that indicates that Trevino           14:46:19

9    assisted in the investigation as an interpreter         14:46:22

10   that suggests to you that he would have been            14:46:24

11   conducting interviews with homicide suspects by         14:46:26

12   himself?                                                14:46:30

13        A  No.                                             14:46:30

14        Q  Okay.  Had you worked with Mr. Trevino in       14:46:30

15   the past before this Soto investigation in April        14:46:35

16   of 1998?                                                14:46:37

17        A  You know, I know him.  I can't say I            14:46:39

18   worked with him.  He was in youth.  I don't think       14:46:42

19   I ever used him as an interpreter before.  I may        14:46:44

20   have.  I just don't know.                               14:46:48

21        Q  How is his Spanish?                             14:46:49

22        A  I have no idea.  I mean, I don't speak          14:46:55

23   Spanish.                                                14:46:57

24        Q  When he was -- when he was serving as an        14:46:58

| | | |
|---|---|---|
| 1 | interpreter for you when you were interrogating | 14:47:01 |
| 2 | suspects in this case, was he able to successfully | 14:47:03 |
| 3 | act as a Spanish interpreter? | 14:47:08 |
| 4 | MS. GOLDEN:  Foundation. | 14:47:10 |
| 5 | A  I mean, it appeared he was able to speak | 14:47:13 |
| 6 | Spanish. | 14:47:16 |
| 7 | Q  Were you able to tell one way -- strike | 14:47:16 |
| 8 | that. | 14:47:18 |
| 9 | Were you able to tell one way or the other | 14:47:18 |
| 10 | whether he was having any difficulty communicating | 14:47:20 |
| 11 | with the witnesses in Spanish? | 14:47:23 |
| 12 | A  No, they seemed to answer him. | 14:47:25 |
| 13 | Q  Could you -- if he was having -- if they | 14:47:29 |
| 14 | were having issues with his dialect of Spanish, | 14:47:32 |
| 15 | would you have been able to tell? | 14:47:36 |
| 16 | A  I doubt it. | 14:47:38 |
| 17 | Q  Do you know whether he was Puerto Rican or | 14:47:38 |
| 18 | not, Mr. Trevino? | 14:47:44 |
| 19 | A  I believe he's Mexican. | 14:47:46 |
| 20 | Q  Mr. Guevara, do you know if he had any | 14:47:48 |
| 21 | issues with his ability to serve as an interpreter | 14:47:51 |
| 22 | or translate information to be communicated by the | 14:47:55 |
| 23 | suspects in this case? | 14:47:58 |
| 24 | MS. GOLDEN:  Foundation. | 14:47:59 |

| | | |
|---|---|---|
| 1 | A   Not that I know of. | 14:48:01 |
| 2 | Q   Do you have an understanding of whether he | 14:48:02 |
| 3 | is Puerto Rican or Mexican? | 14:48:05 |
| 4 | A   I believe he's Puerto Rican. | 14:48:07 |
| 5 | Q   Do you have any knowledge or understanding | 14:48:09 |
| 6 | about his ability to communicate with Mexican | 14:48:11 |
| 7 | witnesses or suspects? | 14:48:15 |
| 8 | A   I have no knowledge of them having trouble | 14:48:20 |
| 9 | with it. | 14:48:23 |
| 10 | Q   Do you know one way or the other whether | 14:48:24 |
| 11 | he was able to communicate effectively with the | 14:48:26 |
| 12 | suspects in this case who were of Mexican descent? | 14:48:29 |
| 13 | A   I have no way of knowing whether they | 14:48:34 |
| 14 | understood them or not but they seem to answer | 14:48:38 |
| 15 | him. | 14:48:41 |
| 16 | Q   In terms of strike that. | 14:48:41 |
| 17 | Was there a point in time where you | 14:48:43 |
| 18 | participated in an interview of Arturo Reyes with | 14:48:45 |
| 19 | Ray Guevara present? | 14:48:50 |
| 20 | A   Yes. | 14:48:51 |
| 21 | Q   If there had been any issues in terms of | 14:48:51 |
| 22 | witness's abilities to be able to understand what | 14:48:54 |
| 23 | Detective Guevara was saying to them, would you | 14:48:57 |
| 24 | have known that there were those challenges going | 14:49:00 |

| | | |
|---|---|---|
| 1 | on? | 14:49:04 |
| 2 | A  There would be no way for me to know, but | 14:49:04 |
| 3 | I believe detective Trevino was also there.  I | 14:49:06 |
| 4 | imagine he would have known. | 14:49:10 |
| 5 | Q  Okay.  Going back to Exhibit 2, Page 10. | 14:49:11 |
| 6 | It says, "On Friday night 3, April '98, two | 14:49:18 |
| 7 | persons came into Area 5 detectives, Guadalupe | 14:49:23 |
| 8 | Mejia and her husband Jorge Mejia."  And then it | 14:49:26 |
| 9 | says Ms. Mejia informed Trevino she had | 14:49:31 |
| 10 | information regarding this investigation that she | 14:49:35 |
| 11 | wanted to tell the detectives.  Guadalupe Mejia | 14:49:38 |
| 12 | was interviewed by Youth Officer Trevino.  It then | 14:49:40 |
| 13 | documents an interview of Guadalupe Mejia. | 14:49:44 |
| 14 | Did you participate in this interview of | 14:49:47 |
| 15 | Guadalupe Mejia documented in this closing report? | 14:49:49 |
| 16 | A  Again, I was off that day and that night, | 14:49:52 |
| 17 | so no. | 14:49:55 |
| 18 | Q  Turning your attention to the next page, | 14:49:56 |
| 19 | Page 12. | 14:49:59 |
| 20 | MS. GOLDEN:  12? | 14:50:03 |
| 21 | MR. SWAMINATHAN:  Um-hmm. | 14:50:04 |
| 22 | Q  In the middle of the page it says, | 14:50:17 |
| 23 | "Detective Guevara interviewed Jorge Mejia, the | 14:50:19 |
| 24 | husband of Guadalupe Mejia.  He substantiated the | 14:50:22 |

| | | |
|---|---|---|
| 1 | information provided by his wife but had no | 14:50:25 |
| 2 | additional information to contribute." | 14:50:27 |
| 3 | Did you participate in any interview of | 14:50:30 |
| 4 | Jorge Mejia? | 14:50:33 |
| 5 | A  No, I didn't. | 14:50:35 |
| 6 | Q  Would you expect to see some GPR or | 14:50:36 |
| 7 | supplementary report documenting what was said in | 14:50:38 |
| 8 | the interview of Jorge Mejia? | 14:50:41 |
| 9 | MS. GOLDEN:  Foundation. | 14:50:44 |
| 10 | MS. BARBER:  Form. | 14:50:44 |
| 11 | A  If there's a GPR exactly on what she said | 14:50:53 |
| 12 | and it basically matches it, maybe not. | 14:50:56 |
| 13 | Q  If you had been conducting the interview | 14:50:58 |
| 14 | of Jorge Mejia, would you have created some GPR or | 14:51:02 |
| 15 | supplementary report containing what Jorge Mejia | 14:51:06 |
| 16 | told you? | 14:51:10 |
| 17 | MS. GOLDEN:  Foundation. | 14:51:10 |
| 18 | MS. BARBER:  Form, calls for speculation. | 14:51:12 |
| 19 | A  I don't know what he would have said.  It | 14:51:14 |
| 20 | all depends on what he would have said. | 14:51:16 |
| 21 | Q  Take a look at the next paragraph.  It | 14:51:18 |
| 22 | says, "On 3, April '98 at 2330 hours Detective | 14:51:23 |
| 23 | Guevara conducted his first interview with Arturo | 14:51:28 |
| 24 | DeLeon in an interview room at Area 5 detectives." | 14:51:32 |

1      And then it goes on to describe, to                14:51:36

2  summarize the interview of Arturo DeLeon.              14:51:38

3      Did you have any participation in that             14:51:43

4  interview of Arturo Reyes?                             14:51:46

5      A  Again, I was not working on the 3rd of          14:51:49

6  April, so, no, I didn't.                               14:51:51

7      Q  Based on this report is it your                 14:51:52

8  understanding that that interview of Arturo Reyes      14:51:54

9  was conducted by Detective Guevara?                    14:51:57

10     A  That's what it says, yes.                        14:52:01

11     Q  Looking at that summary of the interview        14:52:03

12  of Mr. Reyes, it indicates that the reporting         14:52:11

13  detectives --                                          14:52:18

14     MS. GOLDEN:  Can you tell me where you             14:52:19

15  are.                                                   14:52:21

16     MR. SWAMINATHAN:  The top of Page 13.              14:52:21

17     MS. GOLDEN:  Okay.                                 14:52:22

18     Q  It says, The reporting detectives had           14:52:23

19  Arturo DeLeon turn pants pockets inside out.  In      14:52:28

20  the pants pocket were two slips of paper.  Written    14:52:32

21  on one slip of paper were the words, hospital,        14:52:35

22  comma, Norma Salazar and then a phone number.         14:52:36

23  Leonardo and then a phone number, another number      14:52:39

24  and then noemi.  And on the other slip of paper       14:52:42

| | | |
|---|---|---|
| 1 | were the names Norma Salazar and a phone number | 14:52:47 |
| 2 | and the name Adriana Martinez and a phone number. | 14:52:50 |
| 3 | Were you present when any notes were taken | 14:52:53 |
| 4 | from Arturo Reyes? | 14:52:57 |
| 5 | A  I wasn't there because in that interview I | 14:52:59 |
| 6 | was off. | 14:53:03 |
| 7 | Q  Did you ever see a copy of those notes | 14:53:04 |
| 8 | that were taken from his pocket? | 14:53:08 |
| 9 | A  I don't recall ever seeing those. | 14:53:09 |
| 10 | Q  Were you aware of the existence of those | 14:53:11 |
| 11 | notes when you went in and conducted your | 14:53:15 |
| 12 | interrogations of Ms. Mejia and Mr. Reyes the next | 14:53:17 |
| 13 | day? | 14:53:20 |
| 14 | A  I don't recall. | 14:53:20 |
| 15 | Q  The next paragraph begins, "On 4, April | 14:53:21 |
| 16 | '98 at 0015 hours, Detective Guevara conducted his | 14:53:35 |
| 17 | first interview with Gabriel Solache in an | 14:53:39 |
| 18 | interview room at Area 5 detectives." | 14:53:43 |
| 19 | Did you participate in the interview of | 14:53:45 |
| 20 | Gabriel Solache that is summarized here on pages | 14:53:48 |
| 21 | 13 and 14? | 14:53:52 |
| 22 | MS. GOLDEN:  Foundation. | 14:53:53 |
| 23 | A  No.  I did work on April 4th.  I believe I | 14:53:56 |
| 24 | started at 8:30 in the morning. | 14:53:59 |

| | | |
|---|---|---|
| 1 | Q  Based on this report, is it your | 14:54:01 |
| 2 | understanding that the interview of Gabriel | 14:54:03 |
| 3 | Solache was conducted by Detective Guevara? | 14:54:06 |
| 4 | A  That's what it says, yes. | 14:54:09 |
| 5 | Q  If you turn -- excuse me. | 14:54:10 |
| 6 | Turning to the top of Page 14, the first | 14:55:05 |
| 7 | full sentence there on the top of Page 14 says, | 14:55:24 |
| 8 | "The reporting detectives left Area 5 detectives | 14:55:26 |
| 9 | at 0630 hours with instructions for the detectives | 14:55:29 |
| 10 | who began work at 0730 hours to continue with the | 14:55:33 |
| 11 | questioning."  Do you see that? | 14:55:37 |
| 12 | A  Yes, I do. | 14:55:38 |
| 13 | Q  Who were the detectives who began work at | 14:55:39 |
| 14 | 0730 hours? | 14:55:45 |
| 15 | MS. GOLDEN:  Foundation. | 14:55:46 |
| 16 | A  I have no idea. | 14:55:50 |
| 17 | Q  In this case given -- this indicates that | 14:55:51 |
| 18 | Detective Guevara and Halvorsen left Area 5 at | 14:55:55 |
| 19 | 6:30 a.m., correct? | 14:55:59 |
| 20 | A  Yes. | 14:56:00 |
| 21 | Q  And at that time you had not had started | 14:56:00 |
| 22 | your shift yet; is that correct? | 14:56:03 |
| 23 | A  That's correct. | 14:56:04 |
| 24 | Q  So in this case on April 4th, when you | 14:56:05 |

1  came in, you did not have a face-to-face with          14:56:08

2  Detective Guevara or Halvorsen, correct?                14:56:10

3      A  That is correct.                                 14:56:13

4      Q  It says here that instructions were left.        14:56:13

5  What form did those instructions take?                  14:56:17

6      A  I don't recall.                                  14:56:20

7      Q  Based on this report and the context here,       14:56:22

8  are you able to say whether they left something in      14:56:27

9  writing for you?                                        14:56:29

10     A  I couldn't be -- I couldn't tell you.  I         14:56:30

11 don't know.                                             14:56:32

12     Q  If -- do you know whether they called you;       14:56:32

13 is that something that they would do, call you          14:56:36

14 from home?                                              14:56:38

15     A  They did not call me.                            14:56:38

16     Q  Okay.  So if they didn't call you, you           14:56:40

17 didn't have a face-to-face, is it your                  14:56:42

18 understanding that something was written down for       14:56:45

19 you indicating you were to continue questioning?        14:56:47

20     A  They might have informed the sergeant who        14:56:49

21 starts earlier who then would have informed myself      14:56:53

22 and Detective Dickinson.  Detective Dickinson has       14:56:57

23 already been involved in this case I believe.  So       14:57:01

24 he would have some knowledge of what's going on.        14:57:03

```
1   For me it would all be from scratch.              14:57:09

2       Q  Other than it being communicated through   14:57:12

3   the sergeant, what are other possible ways this   14:57:16

4   instruction could have been communicated to you   14:57:18

5   all since there was no face-to-face and no phone  14:57:20

6   call?                                             14:57:25

7       MS. BARBER:  Did you say since there was      14:57:25

8   no face to face?                                  14:57:27

9       MR. SWAMINATHAN: (Nodding head.)              14:57:29

10      MS. BARBER:  Sorry.  I misunderstood the      14:57:30

11  question.  I'm going to object to the form and    14:57:32

12  foundation.  That question calls for speculation. 14:57:34

13      A  If they didn't inform the sergeant or      14:57:37

14  anybody else, they could have left GPR.           14:57:41

15      Q  Anything else?                             14:57:44

16      MS. BARBER:  Same objections.                 14:57:46

17      A  Not that I can think.                      14:57:49

18      Q  As you sit here today, do you remember     14:57:50

19  what the instructions were that you were given?   14:57:53

20      A  No, I don't.                               14:57:55

21      Q  Based on your experience would the         14:57:56

22  instruction be, hey, go interview this witness or 14:58:00

23  would there usually be some context?              14:58:03

24      A  I would imagine there would be some        14:58:06
```

| | | |
|---|---|---|
| 1 | context what was going on.  Again, I don't know | 14:58:08 |
| 2 | what time Dickinson left on the 3rd.  I don't know | 14:58:11 |
| 3 | -- I can't remember exactly how much he really | 14:58:15 |
| 4 | knew what was going on at that time.  So that | 14:58:17 |
| 5 | would have made it different on what they had to | 14:58:20 |
| 6 | communicate.  If we were both coming in scratch, | 14:58:25 |
| 7 | it would be totally different.  But Detective | 14:58:29 |
| 8 | Dickinson was already involved, so he knew some | 14:58:31 |
| 9 | information.  He would have told me some | 14:58:36 |
| 10 | information and whatever the sergeant had.  I'm | 14:58:40 |
| 11 | assuming the sergeant had it.  Would have given it | 14:58:43 |
| 12 | to us. | 14:58:46 |
| 13 | MS. GOLDEN:  Can I just ask, have we been | 14:59:00 |
| 14 | back on the record for an hour? | 14:59:02 |
| 15 | THE VIDEOGRAPHER:  It's 3:19 and a half | 14:59:07 |
| 16 | elapsed. | 14:59:13 |
| 17 | MS. GOLDEN:  Finish up what you're doing. | 14:59:13 |
| 18 | MR. SWAMINATHAN:  This is a fine time. | 14:59:17 |
| 19 | MS. GOLDEN:  All right.  You want to go | 14:59:18 |
| 20 | more or do you want to break for lunch? | 14:59:20 |
| 21 | THE WITNESS:  Whatever. | 14:59:22 |
| 22 | MS. GOLDEN:  Anyone else? | 14:59:23 |
| 23 | THE WITNESS:  Break for lunch.  That's | 14:59:24 |
| 24 | fine. | 14:59:26 |

| | | |
|---|---|---|
| 1 | MR. SWAMINATHAN:  You want to make it | 14:59:26 |
| 2 | quick? | 14:59:28 |
| 3 | MS. GOLDEN:  Yeah. | 14:59:29 |
| 4 | THE WITNESS:  Sure. | 14:59:30 |
| 5 | THE VIDEOGRAPHER:  Off the record 2:59. | 14:59:30 |
| 6 | (A short break was taken.) | 15:35:04 |
| 7 | THE VIDEOGRAPHER:  Back on the record | 15:44:18 |
| 8 | 3:44. | 15:44:21 |
| 9 | BY MR. SWAMINATHAN: | 15:44:23 |
| 10 | Q  Sir, we left off on Page 14 of Exhibit 2. | 15:44:24 |
| 11 | A  Yes. | 15:44:27 |
| 12 | Q  At the top of that page, first full | 15:44:28 |
| 13 | paragraph begins, "On 4, April '98 at 1100 hours | 15:44:31 |
| 14 | reporting detectives returned to work at Area 5 | 15:44:35 |
| 15 | detectives."  That's a reference to Detectives | 15:44:38 |
| 16 | Guevara and Halvorsen, correct? | 15:44:42 |
| 17 | MS. GOLDEN:  Foundation.  Can you direct | 15:44:44 |
| 18 | me to the location. | 15:44:46 |
| 19 | MR. SWAMINATHAN:  Top of Page 14. | 15:44:47 |
| 20 | MS. GOLDEN:  Thank you. | 15:44:49 |
| 21 | Q  Correct? | 15:44:50 |
| 22 | A  I do believe so, yes. | 15:44:51 |
| 23 | MS. GOLDEN:  Wait.  Okay. | 15:44:53 |
| 24 | Q  It indicates Detectives Dickinson and | 15:44:54 |

| | | |
|---|---|---|
| 1 | Rutherford had resumed questioning of Adriana | 15:44:58 |
| 2 | Mejia using the services of Youth Officer Trevino. | 15:45:00 |
| 3 | Do you see that? | 15:45:04 |
| 4 |    A   Yes. | 15:45:05 |
| 5 |    Q   And this would be the first time that you | 15:45:05 |
| 6 | are identified as participating in the | 15:45:07 |
| 7 | investigation; is that correct? | 15:45:09 |
| 8 |    A   That's correct. | 15:45:10 |
| 9 |    Q   Prior to -- | 15:45:10 |
| 10 |    Did you have any involvement in the | 15:45:11 |
| 11 | investigation before you went in and interviewed | 15:45:13 |
| 12 | Adriana Mejia? | 15:45:16 |
| 13 |    A   No. | 15:45:17 |
| 14 |    Q   Okay.  Did that interview -- | 15:45:17 |
| 15 |    At the time you went in to conduct an | 15:45:21 |
| 16 | interview of Adriana Mejia, she had been | 15:45:24 |
| 17 | interviewed multiple times already by Detective | 15:45:28 |
| 18 | Guevara, correct? | 15:45:32 |
| 19 |    MS. GOLDEN:  Foundation. | 15:45:33 |
| 20 |    A   According to the report, she's been | 15:45:34 |
| 21 | interviewed.  I don't know how many times but yes. | 15:45:35 |
| 22 |    Q   Did you have any understanding of what | 15:45:36 |
| 23 | occurred in those earlier interviews when you went | 15:45:38 |
| 24 | in for your interview? | 15:45:41 |

| | | |
|---|---|---|
| 1 | A   Truthfully, I don't remember. | 15:45:42 |
| 2 | Q   It indicates that "The reporting | 15:45:48 |
| 3 | detectives were informed that Adriana Mejia had | 15:45:51 |
| 4 | fully implicated herself in the murders of Jacinta | 15:45:54 |
| 5 | and Mariano Soto and the kidnapping of Maria and | 15:45:59 |
| 6 | Santiago Soto." | 15:46:02 |
| 7 | Was -- is that true based on your | 15:46:03 |
| 8 | interview of Adriana Mejia? | 15:46:06 |
| 9 | MS. GOLDEN:  Form. | 15:46:08 |
| 10 | A   Again, it's in the report.  I don't | 15:46:09 |
| 11 | remember.  So I have no reason to doubt the report | 15:46:11 |
| 12 | that was prepared. | 15:46:12 |
| 13 | Q   When you guys interviewed her, she | 15:46:14 |
| 14 | implicated herself in the murders, fair? | 15:46:18 |
| 15 | A   That would be fair to say according to the | 15:46:21 |
| 16 | GPR's that Eddie made. | 15:46:24 |
| 17 | Q   Then it says, Youth officer Trevino | 15:46:26 |
| 18 | informed the reporting detectives that Adriana | 15:46:29 |
| 19 | Mejia now admitted to being in the victim's | 15:46:30 |
| 20 | apartment with Arturo Reyes when he stabbed and | 15:46:33 |
| 21 | killed the two victims. | 15:46:36 |
| 22 | MS. GOLDEN:  You misread it. | 15:46:38 |
| 23 | Q   I'll read it again. | 15:46:40 |
| 24 | "Youth Officer Trevino informed the | 15:46:41 |

| | | |
|---|---|---|
| 1 | reporting detectives that Adriana Mejia now | 15:46:41 |
| 2 | admitted to being in the victim's apartment with | 15:46:43 |
| 3 | Arturo Leon when he stabbed and killed the two | 15:46:48 |
| 4 | victims." | 15:46:51 |
| 5 | Is that also true in terms of information | 15:46:52 |
| 6 | that Ms. Mejia provided to you during your | 15:46:54 |
| 7 | interview? | 15:46:56 |
| 8 | MS. GOLDEN:  Form. | 15:46:57 |
| 9 | A  It goes back to I don't remember the | 15:46:58 |
| 10 | conversation but I do believe -- I have no reason | 15:46:59 |
| 11 | to doubt the report. | 15:47:02 |
| 12 | Q  Okay.  And it says next that "She denied | 15:47:03 |
| 13 | during this interview that Gabriel Solache was | 15:47:06 |
| 14 | involved in this incident." | 15:47:09 |
| 15 | Is it true that Gabriel Solache denied | 15:47:10 |
| 16 | being involved in the incident during your | 15:47:10 |
| 17 | interview -- strike that. | 15:47:14 |
| 18 | Is it true that Adriana Mejia denied that | 15:47:14 |
| 19 | Gabriel Solache was involved in the incident | 15:47:18 |
| 20 | during your interview of her? | 15:47:21 |
| 21 | A  Again, I have no independent recollection | 15:47:22 |
| 22 | of the conversations.  But according to the | 15:47:24 |
| 23 | report, it's there.  I have no reason to doubt | 15:47:27 |
| 24 | what's in the report. | 15:47:29 |

1      Q   Okay.  If an individual -- strike that.          15:47:30

2          If a suspect makes affirmative statements        15:47:34

3   about another individual being not involved in the     15:47:37

4   crime, is that pertinent information that you           15:47:43

5   document?                                              15:47:45

6          MS. GOLDEN:  Incomplete hypothetical.           15:47:46

7      A   Yes.                                             15:47:51

8      Q   Okay.  In this case Adriana Mejia was           15:47:51

9   making incriminating statements and she was             15:47:57

10  denying that Gabriel Solache was involved,             15:47:59

11  correct?                                               15:48:02

12         MS. GOLDEN:  Foundation.                        15:48:03

13     A   That's according to the report, yes.            15:48:05

14     Q   Is that information you would document?         15:48:07

15     A   Yes.                                            15:48:11

16     Q   It next indicates that -- let's pause          15:48:11

17  there.                                                 15:48:20

18         Let's take a look at Exhibit 4.  It is          15:48:20

19  Bates stamped Exhibit RFC Solache-Reyes 260.           15:48:23

20         Sir, you agree with me this is a copy --        15:48:33

21  sorry.  Let me be clear for the record.                15:48:35

22         Exhibit 4 is Bates stamped RFC                  15:48:37

23  Solache-Reyes 260 through 265.                         15:48:41

24         Sir, this GPR prepared by your partner,         15:48:44

1   Detective Dickinson, regarding your interview of          15:48:49

2   Adriana Mejia?                                            15:48:53

3       A   Yes, multiple GPR's.  More than one page,         15:48:55

4   yes.                                                      15:48:57

5       Q   Multiple pages all documenting the               15:48:57

6   interview of Adriana Mejia, correct?                     15:49:00

7       A   That's correct.                                  15:49:02

8       Q   Okay.  When -- you reviewed this GPR in          15:49:02

9   preparation for this deposition, correct?                15:49:04

10      A   Did I read it over very carefully?  No.  I       15:49:07

11  looked at it and I seen what it was and that's           15:49:10

12  what I did.                                               15:49:12

13      Q   When you read this GPR, did you find that        15:49:12

14  there was any information in the GPR that was            15:49:15

15  false based on your memory of the interview of           15:49:17

16  Adriana Mejia?                                            15:49:20

17      MS. GOLDEN:  Foundation and foundation for           15:49:21

18  the question.                                             15:49:22

19      A   I don't remember the interview.  So it           15:49:26

20  would be impossible for me to read it and find it        15:49:29

21  false.                                                    15:49:33

22      Q   Looking at the top of the page, you              15:49:33

23  indicated previously that the handwriting at the         15:49:37

24  top of this page where it lists the date of the          15:49:40

1    case report, of the original case report, and this       15:49:43

2    report and the classification victim's name and          15:49:46

3    beat were filled out by you, correct?                    15:49:49

4        A   That's correct.                                  15:49:51

5        Q   Where it says 1035 hours, was that filled        15:49:51

6    out by you?                                              15:49:55

7        A   Where does it say 1035?                          15:49:56

8        Q   On the upper left side see where it says         15:49:59

9    1035 hours?                                              15:50:02

10       A   No.                                              15:50:03

11       Q   That's not your handwriting?                     15:50:03

12       A   No.                                              15:50:05

13       Q   Is that Dickinson's handwriting?                 15:50:05

14       A   It's not mine.                                   15:50:08

15       Q   Do you know whether it's Dickinson               15:50:10

16   handwriting?                                             15:50:12

17       A   I have no idea.                                  15:50:12

18       Q   The interview that you conducted with            15:50:13

19   Adriana Mejia documented in this GPR, where did          15:50:16

20   that interview take place in Area 5?                     15:50:19

21       A   Again, to the best of my recollection,          15:50:21

22   it's foggy.  I believe it was in what was called         15:50:24

23   the homicide office which would have been at the         15:50:27

24   north end of the west wall.                              15:50:30

1     Q  Who all participated in the interview          15:50:31

2  based on your memory?                                15:50:37

3     A  Myself, Dickinson, and Trevino.               15:50:39

4     Q  You have a memory of Trevino being there?     15:50:43

5     A  You know, I couldn't interview without him    15:50:46

6  or somebody because she only spoke Spanish and I    15:50:49

7  only spoke English.  I know Trevino was involved    15:50:52

8  in the case, and he was on the paper as being       15:50:55

9  there so...                                          15:50:57

10    Q  Based on your memory alone, could you say     15:50:58

11  whether it was Trevino or Guevara who translated?   15:51:01

12    A  It would be Trevino, not Guevara.             15:51:05

13    Q  Because you remember it?                      15:51:08

14    A  Yes.                                           15:51:09

15    Q  And do you remember Dickinson being there?    15:51:09

16    A  Yes.                                           15:51:11

17    Q  Okay.  And how did the process occur of       15:51:11

18  you guys questioning Adriana Mejia given that you   15:51:14

19  had a Spanish speaker?                              15:51:18

20    A  The questions would be asked to Trevino to    15:51:19

21  relay to Mejia and her answers would go to Trevino  15:51:25

22  and they would be relayed to us.                    15:51:30

23    Q  Did you have the ability to assess whether    15:51:33

24  Trevino was accurately translating your questions   15:51:36

| | | |
|---|---|---|
| 1 | and her answers? | 15:51:39 |
| 2 | MS. BARBER:  Objection.  I believe this | 15:51:39 |
| 3 | was asked and answered yesterday. | 15:51:40 |
| 4 | A  I don't speak Spanish, so, no, I would | 15:51:44 |
| 5 | have no idea what was being said. | 15:51:46 |
| 6 | Q  The GPR that's been filled in here, is it | 15:51:48 |
| 7 | your understanding this is filled in based on what | 15:51:51 |
| 8 | Trevino's translation of what Adriana Mejia was | 15:51:54 |
| 9 | telling you? | 15:51:57 |
| 10 | A  Yes. | 15:51:58 |
| 11 | Q  Did Dickinson speak any Spanish? | 15:51:58 |
| 12 | A  To the best of my knowledge, no. | 15:52:02 |
| 13 | Q  Was it your understanding that he was also | 15:52:04 |
| 14 | relying on Trevino's translation of what Adriana | 15:52:06 |
| 15 | Mejia was telling you? | 15:52:10 |
| 16 | A  I do believe so because I don't believe he | 15:52:11 |
| 17 | spoke Spanish. | 15:52:14 |
| 18 | Q  How long did this interview last? | 15:52:15 |
| 19 | A  Again, I don't remember. | 15:52:17 |
| 20 | Q  At the time of this interview, Adriana | 15:52:19 |
| 21 | Mejia was in custody as well as Arturo Reyes and | 15:52:22 |
| 22 | Gabriel Solache, correct? | 15:52:26 |
| 23 | MS. GOLDEN:  Foundation. | 15:52:28 |
| 24 | A  I believe they're all in custody from the | 15:52:32 |

| | | |
|---|---|---|
| 1 | reports, but I couldn't tell you. | 15:52:35 |
| 2 | Q  Why was she interviewed first? | 15:52:37 |
| 3 | MS. GOLDEN:  Foundation for the question. | 15:52:39 |
| 4 | A  I have no idea. | 15:52:43 |
| 5 | Q  Looking at the bottom of this report, it | 15:52:45 |
| 6 | contains your signature and Mr. Dickinson's, | 15:52:49 |
| 7 | correct? | 15:52:52 |
| 8 | A  That's correct. | 15:52:52 |
| 9 | Q  And then it's approved by Sergeant | 15:52:53 |
| 10 | Cappatelli? | 15:52:56 |
| 11 | A  That's correct. | 15:52:56 |
| 12 | Q  And what date did he approve the report? | 15:52:57 |
| 13 | MS. GOLDEN:  Foundation. | 15:52:59 |
| 14 | A  It appears on April 7th. | 15:53:00 |
| 15 | Q  Is that April 7th or -- sorry.  Is that -- | 15:53:02 |
| 16 | why is that April 7th and not July 4th? | 15:53:08 |
| 17 | MS. GOLDEN:  Argumentative. | 15:53:11 |
| 18 | Q  Help me understand. | 15:53:12 |
| 19 | A  If you look on top, it's very easy.  The | 15:53:13 |
| 20 | police department always uses day, month, year. | 15:53:16 |
| 21 | Q  Got it. | 15:53:19 |
| 22 | A  Normally you write in the month.  For some | 15:53:20 |
| 23 | reason Sergeant Cappatelli didn't.  Maybe for | 15:53:24 |
| 24 | speed whatever. | 15:53:27 |

| | | |
|---|---|---|
| 1 | Q  And as you sit here, are you able to say | 15:53:27 |
| 2 | with certainty that this indicates April 7th and | 15:53:30 |
| 3 | not July 4th, or is that just what your assumption | 15:53:33 |
| 4 | is? | 15:53:37 |
| 5 | A  That would be my assumption.  I couldn't | 15:53:37 |
| 6 | tell you when he signed them because I don't | 15:53:42 |
| 7 | recall exactly. | 15:53:46 |
| 8 | Q  Turning to the time there that we looked | 15:53:46 |
| 9 | at, 1035 hours? | 15:53:53 |
| 10 | A  Um-hmm. | 15:53:55 |
| 11 | Q  Does that indicate the time which you all | 15:53:55 |
| 12 | conducted your interview of Ms. Mejia? | 15:53:58 |
| 13 | MS. GOLDEN:  Foundation. | 15:54:01 |
| 14 | A  I don't recall.  I couldn't recall the | 15:54:04 |
| 15 | time it started or couldn't recall the time it | 15:54:07 |
| 16 | ended, either one. | 15:54:10 |
| 17 | Q  Is there some indication of approximately | 15:54:11 |
| 18 | when this interview was occurring? | 15:54:12 |
| 19 | MS. GOLDEN:  Foundation. | 15:54:15 |
| 20 | Q  Is that fair? | 15:54:16 |
| 21 | A  That would be my only -- be the only | 15:54:17 |
| 22 | reason I could think it was written there. | 15:54:19 |
| 23 | Q  When you were taking down notes of an | 15:54:21 |
| 24 | interview of a suspect, would you typically write | 15:54:25 |

1   down the time?                                    15:54:28

2       A   Me, personally, no.                       15:54:30

3       Q   Couldn't the time in which an interview   15:54:32

4   was conducted be important information?           15:54:35

5       MS. GOLDEN:  Form.                             15:54:37

6       A   Yes, usually when I -- in most cases when 15:54:43

7   I took the GPR, I knew what time it was and so I  15:54:44

8   could put that in the report.                     15:54:47

9       Q   And you'd remember whenever you were      15:54:49

10  writing the report later what time it was, even if 15:54:50

11  you didn't have it written down?                  15:54:53

12      A   Basically, yes.                           15:54:55

13      Q   Looking at this report, looking at this -- 15:54:56

14  these notes, if you turn to Page 2, which is RFC  15:55:02

15  Solache-Reyes 261, you see in the middle of the   15:55:17

16  page it says, "Mentioned to Guevara the name Norma 15:55:28

17  Salazar.  Norma Salazar is in fact Arturo."  Do   15:55:31

18  you see that?                                     15:55:39

19      A   Yes.                                      15:55:39

20      Q   So there, if I understand correctly, you  15:55:40

21  all were asking her about her earlier statement to 15:55:43

22  Detective Guevara that a woman named Norma Salazar 15:55:46

23  had been involved; is that right?                 15:55:51

24      MS. GOLDEN:  Please read the question         15:56:04

1    back.                                                    15:56:06

2                    (Record read back by the                15:56:06

3                    reporter.)                               15:56:06

4         MS. GOLDEN:  Foundation.                            15:56:06

5    A   Reading this, you got to go a little --             15:56:11

6    Q   Sure.                                               15:56:14

7    A   -- before and read it.  They're talking             15:56:14

8    about Arturo.  I think somebody, again, I don't         15:56:17

9    remember, must have said Norma Salazar is -- I          15:56:22

10   don't know how it came up.  It did.  And we             15:56:28

11   weren't asking her about -- we wouldn't have went       15:56:32

12   back and asked her to repeat her previous               15:56:40

13   statement I don't think.  We'd ask her what was         15:56:42

14   going on.  I really don't remember.  I just -- in       15:56:47

15   past practice how we would do it.  And then she         15:56:52

16   would be giving up her statement.  Why that's in        15:56:55

17   there, I couldn't tell you exactly why it came up.      15:57:00

18   If Danny Trevino would have asked her about it, if      15:57:05

19   Dickinson asked her about it.  I really didn't          15:57:09

20   know who Norma Salazar was.                             15:57:11

21   Q   Dickinson had been there the day before            15:57:13

22   when there was a follow-up investigation on Norma       15:57:15

23   Salazar, correct?                                       15:57:18

24        MS. GOLDEN:  Foundation.                           15:57:19

| | | |
|---|---|---|
| 1 | A   I can't tell you exactly.  I don't know. | 15:57:22 |
| 2 | You'd have to look at the reports to see where | 15:57:23 |
| 3 | Dickinson was. | 15:57:26 |
| 4 | Q   Based on the cleared closed report that we | 15:57:26 |
| 5 | went through a little earlier today, Dickinson had | 15:57:29 |
| 6 | been there on the 3rd with this follow-up with | 15:57:33 |
| 7 | Norma Salazar, correct? | 15:57:35 |
| 8 | MS. GOLDEN:  Foundation. | 15:57:38 |
| 9 | A   If you read the report, go back, I believe | 15:57:39 |
| 10 | Kevin McDonald.  I didn't see Eddie's name | 15:57:42 |
| 11 | mentioned there. | 15:57:46 |
| 12 | Q   Okay.  Here she's basically indicating in | 15:57:46 |
| 13 | the past, as we read from the GPR, that when she | 15:57:49 |
| 14 | previously mentioned the name Norma Salazar to | 15:57:51 |
| 15 | Detective Guevara, Norma Salazar was in fact | 15:57:54 |
| 16 | Arturo, correct? | 15:57:57 |
| 17 | MS. GOLDEN:  Foundation. | 15:57:59 |
| 18 | Q   She was basically saying I lied to | 15:57:59 |
| 19 | Detective Guevara earlier when I said Norma | 15:58:02 |
| 20 | Salazar, correct? | 15:58:04 |
| 21 | MS. GOLDEN:  Foundation. | 15:58:05 |
| 22 | A   That's what it appears to be, yes. | 15:58:07 |
| 23 | Q   And she was admitting to you all at that | 15:58:08 |
| 24 | time that she had previously lied to the -- to | 15:58:11 |

1  Detective Guevara, correct?                          15:58:14

2        MS. GOLDEN:   Foundation.                       15:58:15

3     A  Based on what this says, she was now            15:58:18

4  giving sort of a different account of what           15:58:24

5  happened.                                             15:58:28

6     Q  And then a couple sentences after that it       15:58:28

7  says, 0100 hours gave Arturo $600.  Do you see       15:58:31

8  that?                                                 15:58:37

9     A  Yes.                                            15:58:37

10    Q  And in the course of that interview, she       15:58:38

11  basically indicated to you that she got Arturo      15:58:43

12  involved by offering to pay him $600, correct?      15:58:46

13        MS. GOLDEN:   Okay.  Form and foundation.      15:58:50

14    A  That's what it says.                            15:58:53

15    Q  Did you ask her how she got $600 to pay        15:58:55

16  Arturo?                                              15:58:58

17    A  I don't -- I don't recall the                   15:58:59

18  conversation.  I don't know if he did or he         15:59:01

19  didn't.                                              15:59:04

20    Q  Did it seem like a lot of -- would you         15:59:04

21  agree with me $600 for an immigrant woman whose     15:59:06

22  husband was a laborer is a lot of money?            15:59:10

23    A  Yes.                                            15:59:13

24    Q  And did you have some questions about how      15:59:13

1    she was coming up with $600?                        15:59:18

2        A  Again, if you go back to the previous        15:59:20

3    report, previous interviews with her that were      15:59:24

4    written, that maybe Detective Dickinson knows --    15:59:27

5    knew about or Trevino knew about.  She mentioned    15:59:31

6    $600 there I believe.  Did they ask her then?  I    15:59:36

7    don't know.                                         15:59:40

8        Q  On the next page she goes through and        15:59:40

9    explains the setup for --                           15:59:52

10       MS. GOLDEN:  Can you -- read the whole          15:59:53

11   page why don't you.                                 15:59:56

12       A  This is page --                              15:59:58

13       Q  This is Page 262.  At the top of the page,   16:00:00

14   I'm going to start reading this.  It says, she      16:00:03

15   told her husband to wait in the lobby while she     16:00:04

16   met Arturo in the lot.  In other words, her         16:00:08

17   husband was at the hospital but she was going out   16:00:10

18   to meet with Arturo, correct?                       16:00:12

19       MS. GOLDEN:  I'm going to object to your        16:00:13

20   summarizing the notes that another detective wrote  16:00:15

21   and asking him to interpret them.                   16:00:19

22       Q  And she indicated she came back in and       16:00:22

23   told Rosauro to go home while she had to stay.      16:00:24

24   That's the portion of what Dickinson wrote in his   16:00:27

| | | |
|---|---|---|
| 1 | GPR, correct? | 16:00:31 |
| 2 | A  That's correct. | 16:00:31 |
| 3 | Q  Any reason to dispute that that was | 16:00:32 |
| 4 | information that Adriana Mejia was giving you all | 16:00:34 |
| 5 | at that time? | 16:00:37 |
| 6 | A  No. | 16:00:37 |
| 7 | Q  And then a little further down it says at | 16:00:38 |
| 8 | 8:00 a.m. -- | 16:00:43 |
| 9 | MS. GOLDEN:  All right, no, hold on. | 16:00:44 |
| 10 | Before you ask anymore questions. | 16:00:46 |
| 11 | Mr. Rutherford, could you please read the | 16:00:48 |
| 12 | whole page. | 16:00:53 |
| 13 | THE WITNESS:  Sure. | 16:00:55 |
| 14 | MS. GOLDEN:  Unless you have an objection | 16:00:55 |
| 15 | to that. | 16:00:56 |
| 16 | MR. SWAMINATHAN:  You can -- I think it's | 16:00:56 |
| 17 | improper.  But I haven't even asked my question | 16:00:57 |
| 18 | yet.  But that's fine. | 16:00:59 |
| 19 | MS. GOLDEN:  Yeah, but you're just picking | 16:01:00 |
| 20 | pieces out, and I actually think he should read | 16:01:01 |
| 21 | the whole thing, but I'll be happy with just the | 16:01:05 |
| 22 | page. | 16:01:09 |
| 23 | Q  Ready? | 16:02:18 |
| 24 | A  Sure. | 16:02:19 |

| | | |
|---|---|---|
| 1 | Q  So on this page, the section you just | 16:02:19 |
| 2 | read, she indicates at the top of the page, she | 16:02:21 |
| 3 | told her husband to wait in the lobby while she | 16:02:23 |
| 4 | met Arturo in the lot.  She came back and told | 16:02:26 |
| 5 | Rosauro to go home while she had to stay.  In the | 16:02:30 |
| 6 | middle it says, At 0800, 27 March Rosauro took her | 16:02:33 |
| 7 | to UIC clinic, took blood it looks like.  After | 16:02:37 |
| 8 | her and Rosauro had breakfast she would call him | 16:02:43 |
| 9 | later.  She says during breakfast she told Rosauro | 16:02:54 |
| 10 | she was going to call Lupe but she met Arturo in | 16:02:57 |
| 11 | the parking lot.  And at the bottom of the page | 16:03:02 |
| 12 | she says she goes back and tells Rosauro go home. | 16:03:04 |
| 13 | I will call later.  This is in reference to | 16:03:07 |
| 14 | March 28th, and she follows the woman, Jacinta | 16:03:11 |
| 15 | Soto, on the Damen bus. | 16:03:16 |
| 16 | Do you have any reason to dispute that | 16:03:18 |
| 17 | this is all information Adriana Mejia told you | 16:03:20 |
| 18 | during your interview of her? | 16:03:23 |
| 19 | MS. GOLDEN:  Objection, form and | 16:03:24 |
| 20 | foundation to your additions that you made. | 16:03:25 |
| 21 | Q  Go ahead. | 16:03:27 |
| 22 | A  It's in the report, so I have no reason to | 16:03:28 |
| 23 | doubt the accuracy of this GPR. | 16:03:30 |
| 24 | Q  Did you find it strange that Adriana was | 16:03:33 |

1  basically telling you that her husband, Rosauro,                16:03:35

2  was taking her to all these places where she was                16:03:38

3  meeting Arturo Reyes but he had no idea what was                16:03:41

4  going on?                                                        16:03:45

5       MS. BARBER:  Objection, form.                              16:03:46

6    A  I don't remember the conversation.  I was                  16:03:48

7  just taking it from what Trevino was saying.  And               16:03:53

8  it's hard to then, you know, bring up other                     16:03:57

9  questions.  You know, we bring up some, but did it              16:04:00

10  seem odd?  No.                                                  16:04:06

11   Q  As you're reading it now, does it seem odd                 16:04:07

12  that she's basically saying her husband took her               16:04:11

13  to all these places where she was meeting Arturo               16:04:13

14  to plan this crime but Rosauro had no idea?                    16:04:16

15       MS. BARBER:  Objection, form.                             16:04:20

16   A  There's no -- nothing to say that Rosauro                  16:04:22

17  knew about it.                                                  16:04:25

18   Q  Did you ever suspect Rosauro Mejia?                        16:04:26

19   A  Me?                                                         16:04:29

20       MS. BARBER:  Objection, form.                             16:04:31

21   A  I didn't have much to do with this case                    16:04:35

22  except this interview and the other interview, so              16:04:37

23  I didn't, no.                                                   16:04:41

24   Q  Do you agree -- strike that.                               16:04:41

1        Based on the information that is in this      16:04:43

2    GPR about what Adriana Mejia was telling you,     16:04:47

3    would it make sense to you for Rosauro Mejia to   16:04:50

4    have been a suspect?                              16:04:55

5        A   Again --                                  16:04:56

6           MS. BARBER:   Objection to form.           16:04:56

7        A   Was he interviewed before?   I don't know. 16:04:58

8    You'd have to look at the whole investigation and 16:05:01

9    know what was going on.   At that point I didn't.  16:05:04

10       Q   Did you at any point think it was         16:05:07

11   implausible that she was meeting Arturo Reyes in   16:05:10

12   the parking lot of the hospital while her husband  16:05:12

13   was there innocently?                              16:05:15

14          MS. GOLDEN:   Form.                         16:05:17

15          MS. BARBER:   Form.                         16:05:17

16       A   No, I mean, it wasn't implausible.        16:05:21

17       Q   Turning to the next page, about two       16:05:25

18   sentences down it says, Rosauro was not at home.   16:05:38

19   At 1840 she called again.   Spoke to Rosauro and   16:05:42

20   told him.   Said pretty baby girl with wine stains 16:05:46

21   on her neck.   But baby okay.   Then it says, she  16:05:50

22   learned this from Arturo because Arturo saw the    16:05:54

23   three wine spots when the wind blew blanket from   16:05:57

24   baby's face.   Do you see that?                    16:06:03

| | | |
|---|---|---|
| 1 | A  Yes. | 16:06:05 |
| 2 | Q  That first portion where she says she said | 16:06:06 |
| 3 | a pretty baby girl with wine stains on the neck. | 16:06:09 |
| 4 | You -- | 16:06:16 |
| 5 | MS. GOLDEN:  It doesn't say she said. | 16:06:16 |
| 6 | MR. SWAMINATHAN:  Objection to form? | 16:06:18 |
| 7 | MS. GOLDEN:  And foundation and you're | 16:06:20 |
| 8 | misstating the record. | 16:06:22 |
| 9 | Q  In the notes it says, "Said pretty girl | 16:06:24 |
| 10 | with wine stains on neck" -- | 16:06:26 |
| 11 | MS. GOLDEN:  Yeah, but you said she | 16:06:29 |
| 12 | said -- | 16:06:30 |
| 13 | MR. SWAMINATHAN:  Can I ask my question, | 16:06:30 |
| 14 | please? | 16:06:30 |
| 15 | MS. GOLDEN:  Well -- | 16:06:30 |
| 16 | MR. SWAMINATHAN:  I'm asking a new | 16:06:32 |
| 17 | question.  That's why I asked a new question. | 16:06:33 |
| 18 | MS. GOLDEN:  Don't act like I'm the jerk | 16:06:35 |
| 19 | for pointing out that you're misstating the | 16:06:37 |
| 20 | record. | 16:06:40 |
| 21 | MR. SWAMINATHAN:  This is a documentation | 16:06:40 |
| 22 | of what she said to them, but I was fine changing | 16:06:42 |
| 23 | it.  Let's keep going. | 16:06:44 |
| 24 | Q  In this note it says, "Said pretty baby | 16:06:46 |

1    girl with wine stains on neck."                    16:06:49

2        You knew right away that that statement        16:06:51

3    was problematic, right?                            16:06:56

4        MS. BARBER:  Objection, form.                  16:06:59

5    A  I don't know why it's problematic.              16:07:05

6    Q  Did you guys question her right away about      16:07:06

7    how she could know that the baby had wine stains   16:07:09

8    on the neck when she hadn't even received the baby 16:07:12

9    yet according to this version of events?           16:07:15

10   A  Like I said, I don't remember much.  And        16:07:19

11   if it did, it didn't occur to me.                  16:07:21

12   Q  Okay.  Did you believe her story about the      16:07:24

13   wind blowing the blanket from the baby's face so   16:07:32

14   she could see a wine spot on the baby's neck?      16:07:35

15       MS. GOLDEN:  Wait a second.  Can you           16:07:41

16   repeat the question, please, repeat the question.  16:07:50

17               (Record read back by the              16:07:50

18               reporter.)                            16:08:01

19       MS. GOLDEN:  You are misstating the            16:08:01

20   record.                                            16:08:03

21       MR. SWAMINATHAN:  Go ahead.                    16:08:03

22       MS. GOLDEN:  No.                               16:08:03

23       MR. SWAMINATHAN:  I'm not misstating the       16:08:07

24   record.                                            16:08:07

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Yo are.  It says Arturo saw | 16:08:07 |
| 2 | the three wine spots.  Now -- | 16:08:10 |
| 3 | MR. SWAMINATHAN:  Yes, that is correct. | 16:08:11 |
| 4 | MS. GOLDEN:  Okay. | 16:08:13 |
| 5 | Q  Did you not -- go ahead.  You can answer | 16:08:13 |
| 6 | my question. | 16:08:16 |
| 7 | A  What's your question? | 16:08:16 |
| 8 | Q  Did you believe her when she told you that | 16:08:17 |
| 9 | the wind had blown the blanket from the baby so | 16:08:20 |
| 10 | Arturo could see wine stains on the baby's neck? | 16:08:25 |
| 11 | A  Again, I don't remember much of the | 16:08:28 |
| 12 | conversation -- I don't remember any of it | 16:08:30 |
| 13 | actually.  However, I don't see any reason why I | 16:08:32 |
| 14 | would doubt that if that's what she said. | 16:08:35 |
| 15 | Q  At the bottom -- lower down the page it | 16:08:38 |
| 16 | says, Arturo was wearing black pants denim and | 16:08:47 |
| 17 | blue nylon hooded jacket -- | 16:08:51 |
| 18 | MS. GOLDEN:  Before you start reading, can | 16:08:53 |
| 19 | you give me a second to get where you are.  I | 16:08:55 |
| 20 | can't -- can you help me out? | 16:09:02 |
| 21 | MR. SWAMINATHAN:  Look about five lines | 16:09:03 |
| 22 | up.  Here's where I'm going to start, "Got there | 16:09:05 |
| 23 | about 0400."  Do you see that? | 16:09:08 |
| 24 | MS. GOLDEN:  I'm sorry -- okay, got it. | 16:09:11 |

| | | |
|---|---|---|
| 1 | Q  "Waited about one and a half hours.  About | 16:09:14 |
| 2 | 0530 with baby wrapped in stained white blanket, | 16:09:16 |
| 3 | yellow pajamas.  Arturo told her there was a baby | 16:09:22 |
| 4 | boy back there.  Come take a look." | 16:09:26 |
| 5 | So in this statement, if I understand | 16:09:28 |
| 6 | correctly, she was indicating to you that Arturo | 16:09:30 |
| 7 | had gone into the home and taken the baby while | 16:09:32 |
| 8 | she was out in the car, correct? | 16:09:36 |
| 9 | MS. GOLDEN:  Foundation. | 16:09:38 |
| 10 | A  I don't know where it says she was in a | 16:09:48 |
| 11 | car.  So -- | 16:09:50 |
| 12 | Q  Putting aside the car, in this section she | 16:09:54 |
| 13 | was telling you that Arturo had gone to the home | 16:09:57 |
| 14 | and gotten the baby.  She had not gone in with | 16:09:59 |
| 15 | him, correct? | 16:10:02 |
| 16 | MS. GOLDEN:  Foundation and form. | 16:10:02 |
| 17 | A  It doesn't say where she was at. | 16:10:04 |
| 18 | Q  Understood.  I'm not saying where she was | 16:10:06 |
| 19 | at. | 16:10:09 |
| 20 | I'm just asking she -- according to this | 16:10:09 |
| 21 | section we just read, she was not -- she didn't go | 16:10:10 |
| 22 | into the home with Arturo Reyes when he got the | 16:10:13 |
| 23 | baby, correct? | 16:10:16 |
| 24 | MS. GOLDEN:  Foundation. | 16:10:17 |

| | | |
|---|---|---|
| 1 | A  Like I said, I don't remember the | 16:10:19 |
| 2 | conversation.  Reading this, where was she at? | 16:10:23 |
| 3 | Was she in one room of the apartment and he went | 16:10:26 |
| 4 | into the back bedroom?  I don't know.  And if -- | 16:10:29 |
| 5 | back then I would have had a different | 16:10:34 |
| 6 | understanding maybe of it.  Now I don't remember | 16:10:36 |
| 7 | the conversation, but it doesn't say where she | 16:10:38 |
| 8 | was.  She could have been in the front of the | 16:10:40 |
| 9 | apartment, and I don't know the layout of the | 16:10:42 |
| 10 | apartment.  Was there a back bedroom that the | 16:10:46 |
| 11 | babies were in?  I don't know. | 16:10:49 |
| 12 | Q  The next entry, left the baby in the back | 16:10:50 |
| 13 | seat, went to apartment through the back door.  Do | 16:10:54 |
| 14 | you see that? | 16:10:58 |
| 15 | MS. GOLDEN:  It doesn't -- it doesn't say | 16:11:06 |
| 16 | that.  It says, "Left baby in back seat, period. | 16:11:08 |
| 17 | Went to" -- | 16:11:13 |
| 18 | MR. SWAMINATHAN:  Apartment. | 16:11:14 |
| 19 | MS. GOLDEN:  Apartment. | 16:11:14 |
| 20 | MR. SWAMINATHAN:  Through the back. | 16:11:15 |
| 21 | MS. GOLDEN:  "Through the back, period. | 16:11:17 |
| 22 | Door was ajar."  It doesn't say went through the | 16:11:18 |
| 23 | back door. | 16:11:20 |
| 24 | MR. SWAMINATHAN:  Went through the door -- | 16:11:22 |

| | |
|---|---|
| 1 | yes, went through the back, period. | 16:11:23 |
| 2 | Q  Okay.  Go ahead.  Does that indicate to | 16:11:25 |
| 3 | you that she was indicating -- did she indicate to | 16:11:27 |
| 4 | you when you interviewed her that she waited in | 16:11:29 |
| 5 | the car while Arturo Reyes went and got the baby? | 16:11:31 |
| 6 | MS. GOLDEN:  He's not asking you what the | 16:11:34 |
| 7 | paper says.  He's asking -- | 16:11:36 |
| 8 | A  Yeah, I don't remember what she said.  I | 16:11:39 |
| 9 | was still reading the paper but -- | 16:11:40 |
| 10 | MS. GOLDEN:  I know. | 16:11:42 |
| 11 | A  I don't remember what she said because I | 16:11:43 |
| 12 | don't remember. | 16:11:45 |
| 13 | Q  Based on Dickinson's GPR, do you have any | 16:11:45 |
| 14 | reason to dispute -- strike that. | 16:11:48 |
| 15 | Do you have any reason to dispute | 16:11:49 |
| 16 | Dickinson's GPR indicating that she told you all | 16:11:51 |
| 17 | that Arturo Reyes had gone into the house and | 16:11:56 |
| 18 | gotten the baby while she waited in the car? | 16:11:58 |
| 19 | MS. GOLDEN:  Foundation. | 16:12:01 |
| 20 | A  It doesn't say she waited in the car while | 16:12:14 |
| 21 | Arturo went in and got the baby.  It could have | 16:12:17 |
| 22 | been -- you know, according to this, did she go in | 16:12:20 |
| 23 | and come back out and put the baby in the back | 16:12:23 |
| 24 | seat and then Arturo came back out and said -- or | 16:12:26 |

| | |
|---|---|
| 1 | came out and said, there's another boy in there, | 16:12:29 |
| 2 | come take a look.  That could have happened. | 16:12:31 |
| 3 | Again, I don't remember the conversation.  So I | 16:12:34 |
| 4 | don't remember the follow-ups, questions.  It | 16:12:37 |
| 5 | doesn't specifically tell me exactly where she was | 16:12:41 |
| 6 | when it all happened. | 16:12:45 |
| 7 | Q  Okay.  Turning to the next page, at the | 16:12:47 |
| 8 | bottom of the page, the last five sentences.  I | 16:12:51 |
| 9 | just want to ask you about two sentences there. | 16:12:54 |
| 10 | MS. GOLDEN:  Okay.  But read the whole | 16:12:56 |
| 11 | page before you answer. | 16:12:57 |
| 12 | MR. SWAMINATHAN:  This a very limited | 16:12:59 |
| 13 | question.  He doesn't need to read the whole page. | 16:13:01 |
| 14 | MS. GOLDEN:  We'll see. | 16:13:01 |
| 15 | Q  I'm just asking you a few questions -- one | 16:13:02 |
| 16 | question. | 16:13:03 |
| 17 | Near the bottom of the page it reads, | 16:13:04 |
| 18 | Arturo told he I won't get rid of the innocent | 16:13:06 |
| 19 | boy.  Do you see at the bottom of the page where | 16:13:11 |
| 20 | I'm reading?  Arturo told -- it's about one, two, | 16:13:13 |
| 21 | three, four -- five lines up.  Arturo told he -- | 16:13:20 |
| 22 | MS. GOLDEN:  Wait.  Are you there yet? | 16:13:23 |
| 23 | THE WITNESS:  Yes, I think so. | 16:13:27 |
| 24 | Q  Okay.  Sentence reads, Arturo told he | 16:13:29 |

| | | |
|---|---|---|
| 1 | won't get rid of innocent boy.  Okay.  And if you | 16:13:33 |
| 2 | skip a sentence, the next sentence says, Arturo | 16:13:36 |
| 3 | told her he wouldn't -- he would take care of the | 16:13:39 |
| 4 | boy later on.  She understood Arturo was going to | 16:13:42 |
| 5 | kill the boy.  Do you understand those two | 16:13:45 |
| 6 | statements in this report to be contradictory? | 16:13:48 |
| 7 | MS. GOLDEN:  Can you read the whole page | 16:13:51 |
| 8 | before you answer the question. | 16:13:53 |
| 9 | MR. SWAMINATHAN:  There's no reason to | 16:13:54 |
| 10 | read the whole page to -- | 16:13:55 |
| 11 | MS. GOLDEN:  You want him to read the | 16:13:56 |
| 12 | whole document before you ask him a question about | 16:13:59 |
| 13 | it. | 16:14:01 |
| 14 | MR. SWAMINATHAN:  No, because he doesn't | 16:14:01 |
| 15 | need to -- | 16:14:02 |
| 16 | MS. GOLDEN:  At least read the sentence | 16:14:02 |
| 17 | that he skipped. | 16:14:04 |
| 18 | MR. SWAMINATHAN:  That's fine. | 16:14:05 |
| 19 | MS. GOLDEN:  All right.  Good.  Actually, | 16:14:06 |
| 20 | start with the Arturo was getting nervous.  That's | 16:14:14 |
| 21 | where the subject starts.  Eight lines up. | 16:14:17 |
| 22 | Did you read it? | 16:14:55 |
| 23 | THE WITNESS:  I read it. | 16:14:56 |
| 24 | Q  Are those two sentences in contradiction | 16:14:57 |

| | | |
|---|---|---|
| 1 | that I just read, Arturo told he I won't get rid | 16:15:00 |
| 2 | of innocent boy.  And Arturo told her he would | 16:15:04 |
| 3 | take care of the boy later on.  She understood | 16:15:08 |
| 4 | Arturo was going to kill boy? | 16:15:11 |
| 5 | A  Are they contradictory?  Reading this, it | 16:15:14 |
| 6 | sounds like she's saying she didn't believe what | 16:15:21 |
| 7 | Arturo was telling her. | 16:15:24 |
| 8 | Q  Did you have questions about it when she | 16:15:25 |
| 9 | was telling you these two things? | 16:15:27 |
| 10 | MS. GOLDEN:  Foundation. | 16:15:29 |
| 11 | A  I don't remember exactly.  I don't | 16:15:31 |
| 12 | remember at all, as I said before.  My guess is if | 16:15:34 |
| 13 | Arturo told her he would take care of the boy, she | 16:15:41 |
| 14 | might have been asked what do you think that meant | 16:15:48 |
| 15 | and then she would reply I understood Arthur was | 16:15:51 |
| 16 | going to kill the boy. | 16:15:56 |
| 17 | Q  Turning to the last page, about four | 16:15:57 |
| 18 | sentences, four lines down it says about 0430 to | 16:16:01 |
| 19 | 0500? | 16:16:06 |
| 20 | A  Yes. | 16:16:07 |
| 21 | Q  What is this indicating happened at 0430 | 16:16:07 |
| 22 | or 0500? | 16:16:11 |
| 23 | MS. GOLDEN:  Foundation. | 16:16:14 |
| 24 | MS. BARBER:  And form. | 16:16:15 |

| | | |
|---|---|---|
| 1 | A  That the -- | 16:16:58 |
| 2 | MS. GOLDEN:  What's the question? | 16:17:00 |
| 3 | Q  0430 to -- you now read that page? | 16:17:03 |
| 4 | A  Yes. | 16:17:06 |
| 5 | Q  What does that signify? | 16:17:06 |
| 6 | MS. GOLDEN:  Form. | 16:17:09 |
| 7 | A  Sounds like she's talking about what | 16:17:11 |
| 8 | happened in the apartment. | 16:17:13 |
| 9 | Q  So and she's indicating what happened in | 16:17:14 |
| 10 | the apartment happened between 4:30 and 5:00 a.m.? | 16:17:16 |
| 11 | MS. GOLDEN:  Foundation. | 16:17:20 |
| 12 | A  That's what my guess would be, yes. | 16:17:22 |
| 13 | Q  Do you have reason to dispute that that's | 16:17:24 |
| 14 | what she indicated to you all when you conducted | 16:17:27 |
| 15 | your interview of her? | 16:17:30 |
| 16 | MS. GOLDEN:  Form and foundation. | 16:17:32 |
| 17 | A  Again, I have no independent recollection, | 16:17:34 |
| 18 | but that's in the report and that's what it reads | 16:17:37 |
| 19 | to me.  That's what happened at the time she | 16:17:41 |
| 20 | thought. | 16:17:44 |
| 21 | Q  And in that paragraph you just read below | 16:17:44 |
| 22 | where it indicates 4:30 to 5:00 a.m., she goes | 16:17:47 |
| 23 | through and gives -- Adriana Mejia goes through | 16:17:52 |
| 24 | and gives a description of how they went about | 16:17:54 |

| | | |
|---|---|---|
| 1 | obtaining the children, correct? | 16:17:57 |
| 2 | MS. GOLDEN:  Foundation. | 16:18:03 |
| 3 | A  Best I can recollect, yeah.  I'm having a | 16:18:12 |
| 4 | hard time reading it. | 16:18:15 |
| 5 | Q  Having read that section, basically she | 16:18:17 |
| 6 | was saying that Arturo Reyes stabbed Mariano and | 16:18:20 |
| 7 | Jacinta Soto, correct? | 16:18:25 |
| 8 | A  That's what it looks like, yes. | 16:18:25 |
| 9 | Q  And that she didn't stab either of those | 16:18:26 |
| 10 | individuals, correct? | 16:18:29 |
| 11 | A  It's not saying she stabbed them. | 16:18:29 |
| 12 | Q  Did you believe her that it was Arturo who | 16:18:31 |
| 13 | did all this and she had not stabbed anybody? | 16:18:34 |
| 14 | MS. BARBER:  Objection, form. | 16:18:40 |
| 15 | MS. GOLDEN:  Foundation. | 16:18:41 |
| 16 | A  Like I say, I don't remember the | 16:18:44 |
| 17 | conversation at all.  However, in any case like | 16:18:47 |
| 18 | this I would sit there and I -- I'd have no reason | 16:18:51 |
| 19 | to doubt it, but I don't know if I'd believe her. | 16:18:55 |
| 20 | Further investigation would reveal, you know, what | 16:18:58 |
| 21 | happened. | 16:19:02 |
| 22 | MS. GOLDEN:  Wait.  Were you finished? | 16:19:02 |
| 23 | A  Well, I was going to say it all depends on | 16:19:04 |
| 24 | -- somebody will talk to the other people | 16:19:07 |

1    involved.  They're going to give statements.  It        16:19:09

2    might differ from what she says.  You would come        16:19:11

3    back then and confront her with those statements.       16:19:13

4       Q  Was this written at the same time as the          16:19:17

5    rest of the report?  Strike that.                       16:19:19

6         Was this section that begins with about            16:19:21

7    0430 to 500, was that written at the same time as       16:19:23

8    the rest of the GPR; do you know?                       16:19:27

9       A  I have no idea.                                    16:19:29

10      Q  Do you recall anything else being said            16:19:30

11   during the course of your interview of Adriana          16:19:36

12   Mejia that's not documented here?                       16:19:39

13        MS. GOLDEN:  Okay.  Foundation for the             16:19:41

14   question.  How many times does he have to say he        16:19:43

15   doesn't remember it?  Asked and answered a zillion      16:19:45

16   times.                                                  16:19:48

17      A  I don't remember the conversation.  I             16:19:50

18   don't remember what was -- this being -- I mean,        16:19:52

19   this conversation.  So I don't recall if there was      16:19:55

20   anything else said.                                     16:19:58

21      Q  Did she end the conversation or did you           16:19:59

22   all ask as many questions as you wanted to before       16:20:02

23   you left?                                               16:20:06

24        MS. BARBER:  Objection, form.                      16:20:07

| | | |
|---|---|---|
| 1 | A  I would have to say the conversation would | 16:20:12 |
| 2 | have ended mutually. | 16:20:14 |
| 3 | Q  Were you able to say whether Detective | 16:20:16 |
| 4 | Dickinson was taking these notes as you were | 16:20:19 |
| 5 | talking to her or whether he took them afterward | 16:20:22 |
| 6 | or do you not know? | 16:20:25 |
| 7 | A  I do believe he was taking them as we | 16:20:26 |
| 8 | talked to her.  It's -- like I say, that's why I | 16:20:30 |
| 9 | remember being -- I believe that -- in the | 16:20:37 |
| 10 | homicide room and Ed was taking the notes. | 16:20:39 |
| 11 | Q  Did you do a supplemental report, you or | 16:20:42 |
| 12 | Mr. Dickinson, about this interview? | 16:20:47 |
| 13 | A  No. | 16:20:48 |
| 14 | Q  Why not? | 16:20:49 |
| 15 | A  Again, these GPR's -- let me say something | 16:20:50 |
| 16 | here.  Yesterday I think I said that I handed the | 16:20:57 |
| 17 | GPR's over to Ernie Halvorsen.  If I did, I | 16:21:00 |
| 18 | misspoke.  I was wrong.  Somehow Ernie got them. | 16:21:03 |
| 19 | Now, Ernie incorporated this interview into the | 16:21:08 |
| 20 | closing sup, as we see and dealing with other | 16:21:11 |
| 21 | interviews she said.  I can't say I gave them | 16:21:16 |
| 22 | those GPR's or I can't say Eddie gave them to him. | 16:21:21 |
| 23 | I can't even say he read them and used them | 16:21:25 |
| 24 | because I wasn't there when he typed the report. | 16:21:27 |

| | | |
|---|---|---|
| 1 | He had access to them is what I meant to say. | 16:21:30 |
| 2 | Q  Understood. | 16:21:33 |
| 3 | This interview that's documented in | 16:21:33 |
| 4 | Dickinson's GPR should have been written up in a | 16:21:35 |
| 5 | supplementary report, correct? | 16:21:41 |
| 6 | MS. BARBER:  Objection, form. | 16:21:42 |
| 7 | A  Again, her statements revised by her later | 16:21:46 |
| 8 | on to -- I'm not sure, Guevara, I'm not sure. | 16:21:52 |
| 9 | That statement is put in there.  Now, when I would | 16:21:57 |
| 10 | type the report, I'd put this in there and then | 16:22:03 |
| 11 | I'd put in the second statement.  Detective | 16:22:07 |
| 12 | Halvorsen types up his reports and he types them | 16:22:11 |
| 13 | up the way he types them up. | 16:22:13 |
| 14 | Q  Is the fact that there were subsequent | 16:22:15 |
| 15 | statements she gave that were documented in | 16:22:16 |
| 16 | supplementary reports, does that make it okay to | 16:22:18 |
| 17 | not document this earlier statement in a | 16:22:21 |
| 18 | supplementary report? | 16:22:23 |
| 19 | MS. BARBER:  Objection, form, foundation, | 16:22:25 |
| 20 | misstates the witness's testimony. | 16:22:26 |
| 21 | A  Well, it's documented that it happened and | 16:22:30 |
| 22 | there is a GPR on it. | 16:22:32 |
| 23 | Q  Looking at Exhibit 2, the paragraph we | 16:22:34 |
| 24 | read -- | 16:22:39 |

1      MS. GOLDEN:  Hold on.  Exhibit 2.              16:22:39

2      MR. SWAMINATHAN:  Page 14.                     16:22:42

3      MS. GOLDEN:  Do you have Exhibit 2,            16:22:44

4  Page 14 in front of you?                           16:22:46

5      THE WITNESS:  Yes.                             16:22:48

6      MS. GOLDEN:  All right.  Can you just give     16:22:49

7  me a second to get there.                          16:22:49

8    Q  In that --                                    16:22:55

9      MS. GOLDEN:  Hold on --                        16:22:55

10     MR. SWAMINATHAN:  I'm not required to read     16:22:57

11 the document.  Let me ask my question.  You can    16:22:59

12 tell me --                                         16:23:01

13     MS. GOLDEN:  Well, you're starting with        16:23:01

14 Exhibit 2, Page 14.  May I please have the         16:23:03

15 opportunity to get to Exhibit 2?                   16:23:06

16     MR. SWAMINATHAN:  Yes.                         16:23:08

17     MS. GOLDEN:  Thank you.                        16:23:08

18   Q  Would you agree with me Detective            16:23:09

19 Halvorsen doesn't write anything about what        16:23:11

20 occurred during the course of the interview of     16:23:13

21 Adriana Mejia, correct?                            16:23:14

22     MS. BARBER:  Object to the form.               16:23:18

23   A  He doesn't write the -- a short summary of    16:23:20

24 it basically by saying informed that Adriana Mejia 16:23:27

1    had fully implicated herself in the murders of          16:23:32

2    Jacinta and Mariano Soto and the kidnapping of          16:23:37

3    Maria and Santiago Soto.  And then Danny Trevino        16:23:40

4    informed the RD's that Adriana Mejia now admitted       16:23:49

5    to being in the victim's apartment with Arturo          16:23:53

6    Leon when he stabbed and killed the two victims.        16:23:56

7    She denied during this interview that Solache was       16:24:01

8    there.                                                   16:24:05

9       Q   Go ahead.                                         16:24:06

10      A   That's a summary.  Now, is it obviously           16:24:06

11   the whole page?  No.                                     16:24:10

12      Q   Did you expect that when you gave -- when         16:24:11

13   Dickinson's notes were given to Halvorsen that he       16:24:17

14   was going to write up what happened in the              16:24:20

15   interview in his supplementary report?                  16:24:22

16      A   I can't say that I had any expectations of        16:24:25

17   anything.                                                16:24:28

18      Q   After going through the GPR today, does           16:24:32

19   this refresh your recollection at all about your        16:24:34

20   interview of Adriana Mejia?                              16:24:37

21      A   With the words that were spoken and said,         16:24:39

22   no.                                                      16:24:42

23      Q   Looking at Exhibit 2, the next paragraph          16:24:42

24   indicates that, On 4 of April of '98 at 1500 hours      16:24:46

1    Detective Guevara conducted his second interview          16:24:51

2    with Arturo DeLeon in an interview room at Area 5          16:24:54

3    detectives.  Did you participate in that                   16:24:58

4    interview?                                                 16:25:02

5        A  I don't believe I did.                              16:25:03

6        Q  Is it your understanding that that                  16:25:04

7    interview was conducted by Detective Guevara?              16:25:06

8        MS. GOLDEN:  Foundation.                               16:25:08

9        A  The report says Detective Guevara did the           16:25:12

10   interview.  I didn't write the report but that's          16:25:16

11   what it indicates.                                         16:25:18

12       Q  Do you have any reason to dispute that it           16:25:18

13   was Detective Guevara who conducted that interview         16:25:20

14   of Arturo Reyes?                                           16:25:23

15       A  No, I don't.                                        16:25:25

16       Q  Turning to the next page, Page 15, first            16:25:26

17   full paragraph is about two thirds of the way down         16:25:29

18   the page.  And it begins, The reporting detectives         16:25:32

19   contacted felony review and requested that a               16:25:36

20   Spanish speaking state's attorney be assigned to           16:25:39

21   this investigation.  On 4, April '98 at                    16:25:42

22   1700 hours, ASA Dave Navarro arrived at Area 5             16:25:44

23   detectives.  ASA Navarro was joined later that             16:25:49

24   evening by ASA O'Malley and Brualdi.  These states         16:25:53

1   attorneys reviewed the available police reports                16:25:56

2   and the handwritten statements of Guadalupe Mejia.             16:25:58

3        You understand David Navarro did speak                    16:26:01

4   Spanish, correct?                                              16:26:05

5        MR. BURNS:  Objection, foundation.                        16:26:06

6    A  I couldn't tell you who Dave Navarro is, I                 16:26:10

7   don't know if he's a state's attorney.  I don't               16:26:13

8   know if he speaks Spanish.                                     16:26:14

9    Q  At the time that -- according to this                      16:26:16

10  report, Navarro arrived at 5:00 p.m., correct?                 16:26:17

11   A  Yes.                                                       16:26:20

12   Q  And at the point that he arrived, there                    16:26:21

13  were these earlier statements that had been                    16:26:24

14  obtained from Arturo Reyes and Adriana Mejia,                  16:26:26

15  correct?                                                       16:26:31

16       MR. BURNS:  Objection, foundation.                        16:26:31

17       MS. GOLDEN:  Thank you.                                   16:26:33

18   A  They made statements, yes.                                 16:26:34

19   Q  Okay.  At that point could Mr. Navarro                     16:26:36

20  have conducted an interview of Mr. Reyes or                    16:26:41

21  Mr. Mejia?                                                     16:26:45

22       MR. BURNS:  Objection, foundation.                        16:26:46

23       MR. BRENER:  Joined.                                      16:26:48

24   A  Could he have?  If he arrived and he                       16:26:51

| | | |
|---|---|---|
| 1 | wanted to interview him, I guess he could have. | 16:26:55 |
| 2 | Q  Was there anything based on what you've | 16:26:58 |
| 3 | seen in this report so far that would indicate | 16:26:59 |
| 4 | that it would not have been appropriate for | 16:27:01 |
| 5 | Mr. Navarro to interview those individuals at that | 16:27:04 |
| 6 | point? | 16:27:06 |
| 7 | MR. BURNS:  Objection, foundation. | 16:27:06 |
| 8 | A  I don't know the rules and everything in | 16:27:09 |
| 9 | the state's attorney's office.  So I couldn't say | 16:27:12 |
| 10 | if it would have been right for him to interview | 16:27:15 |
| 11 | him or not. | 16:27:18 |
| 12 | Q  At that point at 5:00 p.m., when Navarro | 16:27:18 |
| 13 | arrived, both Mr. Reyes and Ms. Mejia had made | 16:27:22 |
| 14 | incriminating statements to detectives, correct? | 16:27:25 |
| 15 | A  That's correct. | 16:27:28 |
| 16 | Q  Would that be a time when typically a | 16:27:28 |
| 17 | state's attorney might then interview those | 16:27:33 |
| 18 | suspects who have given incriminating statements? | 16:27:36 |
| 19 | MS. GOLDEN:  Form. | 16:27:39 |
| 20 | MR. BURNS:  Objection, foundation. | 16:27:40 |
| 21 | MS. GOLDEN:  Form. | 16:27:41 |
| 22 | A  That's a state's attorney's call.  And I | 16:27:42 |
| 23 | don't make the calls for the assistant state's | 16:27:45 |
| 24 | attorneys. | 16:27:47 |

1     Q  Looking at the next paragraph, it says, On      16:27:47

2  4, April '98 at 1800 hours Detective Guevara          16:27:54

3  conducted a third interview with Arturo Leon in       16:27:58

4  the conference room at Area 5 detectives.  Present    16:28:02

5  for this interview were Detective Guevara,            16:28:04

6  Dickinson, Rutherford, Trevino.  During this          16:28:06

7  interview Arturo Leon repeated the information        16:28:11

8  that he had already provided to Detective Guevara.    16:28:15

9  Do you see that?                                      16:28:17

10    A  Yes.                                            16:28:20

11    Q  Do you have any reason to dispute the           16:28:20

12 information written there?                            16:28:22

13    A  I have no recollection of it, but I have        16:28:23

14 no reason to say it didn't occur.                     16:28:26

15    Q  Okay.  It indicates that the interview was      16:28:30

16 conducted at 1800 hours which is 6:00 p.m.  That's    16:28:32

17 after your shift, correct?                            16:28:36

18    A  Yes.                                            16:28:37

19    Q  Does that give you any indication one way       16:28:38

20 or the other about whether you were there for this    16:28:40

21 interview at 6:00 p.m.?                               16:28:43

22    A  If the report says I was there, I imagine       16:28:44

23 I was there.  I don't recall it, but I'm not going    16:28:47

24 to dispute the report.                                16:28:49

| | | |
|---|---|---|
| 1 | Q  And if you were there, you were getting | 16:28:51 |
| 2 | overtime? | 16:28:53 |
| 3 | A  Yes. | 16:28:53 |
| 4 | Q  Okay.  How was that interview conducted? | 16:28:53 |
| 5 | MS. BARBER:  Objection, form. | 16:28:59 |
| 6 | A  Like I said, I don't remember the | 16:29:02 |
| 7 | interview.  So I couldn't tell you how it was | 16:29:04 |
| 8 | conducted. | 16:29:06 |
| 9 | Q  Do you remember anybody who was at that | 16:29:07 |
| 10 | interview? | 16:29:09 |
| 11 | A  Again, I don't remember the interview. | 16:29:09 |
| 12 | Q  Do you remember who was translating in | 16:29:11 |
| 13 | that interview, whether it was Guevara or Trevino? | 16:29:15 |
| 14 | A  Again, I don't remember the interview. | 16:29:17 |
| 15 | Q  Can you say anything, as you sit here | 16:29:19 |
| 16 | today, about how that interview went down in terms | 16:29:21 |
| 17 | of who asked the questions, who did the | 16:29:24 |
| 18 | translating, and so on? | 16:29:27 |
| 19 | A  No, because I don't recall the interview. | 16:29:28 |
| 20 | Q  What was the purpose of having you and | 16:29:30 |
| 21 | Dickinson and Trevino go in to interview Arturo | 16:29:37 |
| 22 | Reyes at 6:00 p.m. after Guevara had just | 16:29:42 |
| 23 | interviewed him at 1500 hours and gotten a | 16:29:45 |
| 24 | statement from him? | 16:29:49 |

| | | |
|---|---|---|
| 1 | A  I thought about that.  And like I said, I | 16:29:50 |
| 2 | don't remember this interview.  However, one of | 16:29:57 |
| 3 | the reasons that I could -- I could think of would | 16:30:01 |
| 4 | be that the statements that Ms. Mejia gave us, | 16:30:05 |
| 5 | that we can convey to Arturo DeLeon and maybe he | 16:30:10 |
| 6 | was denying it.  I don't know.  And then he would | 16:30:17 |
| 7 | see that, yeah, okay, so she told these officers | 16:30:21 |
| 8 | which would be Trevino, me, and Dickinson about | 16:30:24 |
| 9 | this. | 16:30:28 |
| 10 | Q  Why would you need to be there if Arturo | 16:30:29 |
| 11 | -- if Guevara had already gotten that information | 16:30:34 |
| 12 | from her?  I'm confused. | 16:30:37 |
| 13 | MS. GOLDEN:  Foundation. | 16:30:39 |
| 14 | A  Again, maybe he didn't believe Guevara.  I | 16:30:41 |
| 15 | don't know. | 16:30:44 |
| 16 | Q  As you sit here today, are you speculating | 16:30:44 |
| 17 | about what would be the reason -- | 16:30:47 |
| 18 | A  This is all speculation on my part because | 16:30:47 |
| 19 | I don't remember. | 16:30:51 |
| 20 | Q  Looking at this, are you able to tell why | 16:30:51 |
| 21 | it is that you all went in with Detective Guevara | 16:30:54 |
| 22 | to conduct another interview with Arturo Reyes | 16:30:56 |
| 23 | after Guevara had just gotten the statement? | 16:31:01 |
| 24 | MS. GOLDEN:  Can you read the question | 16:31:17 |

| | | |
|---|---|---|
| 1 | back. | 16:31:17 |
| 2 | (Record read back by the | 16:31:17 |
| 3 | reporter.) | 16:31:18 |
| 4 | MS. GOLDEN: Form, asked and answered. | 16:31:18 |
| 5 | A No, but -- and I want to point out this is | 16:31:26 |
| 6 | in the conference room. This is in the south of | 16:31:28 |
| 7 | the building. This is not in an interview room | 16:31:31 |
| 8 | that's small. This is in a lot bigger room. So | 16:31:34 |
| 9 | with four people in there it wouldn't be -- five | 16:31:37 |
| 10 | people in there, ten people in there, it wouldn't | 16:31:41 |
| 11 | be overcrowded, if you know what I'm saying. | 16:31:44 |
| 12 | Q Yeah. | 16:31:46 |
| 13 | A It's not -- I don't want to give the | 16:31:47 |
| 14 | impression that it's in a little room and all | 16:31:49 |
| 15 | these big detectives are coming in there | 16:31:51 |
| 16 | intimidating him. That's not the way it happened. | 16:31:56 |
| 17 | It's -- the room is probably at least this size, | 16:31:58 |
| 18 | if not bigger. | 16:32:02 |
| 19 | Q My question is only this, when you read | 16:32:03 |
| 20 | this, did you ask yourself, wait, why were we even | 16:32:06 |
| 21 | going in to conduct another interview when Guevara | 16:32:10 |
| 22 | had just gotten the statement from him? | 16:32:13 |
| 23 | MS. GOLDEN: Asked and answered. | 16:32:15 |
| 24 | MS. BARBER: Form, misstates the evidence. | 16:32:16 |

1     A  I don't know why it happened.                    16:32:18

2     Q  Did it seem odd to you or stand out to you       16:32:20

3  when you read this?                                    16:32:23

4       MS. GOLDEN:  Asked and answered.                  16:32:24

5     A  Again, I'm assuming back then there must          16:32:26

6  have been a reason.  I can't think of it now.          16:32:28

7     Q  And at the point in time that this               16:32:30

8  interview is occurring, according to this report,      16:32:35

9  we agree State's Attorney Navarro was already at       16:32:39

10  the station, correct?                                 16:32:43

11      MS. GOLDEN:  Foundation.                           16:32:45

12      MR. BURNS:  Foundation.                            16:32:46

13    A  According to the reports, yes.                    16:32:48

14    Q  Why did you all go in to interview               16:32:49

15  Mr. Reyes without the state's attorney?               16:32:52

16    A  Again, I don't remember the interview.  I         16:32:55

17  don't know why it occurred.  So I can't tell you.      16:32:57

18    Q  At that point in time when you all went          16:33:00

19  in, it would have been perfectly appropriate to go    16:33:02

20  in with the state's attorney, if you wanted to,       16:33:05

21  correct?                                              16:33:08

22      MR. BRENER:  Form and foundation.                  16:33:09

23    A  Again, you would have to review all the          16:33:11

24  statements everybody is making how our -- you         16:33:13

1   know, what are they saying?  Are people blaming              16:33:19

2   the other thing and taking all blame off them.               16:33:21

3   And somebody else is putting all the blame on them           16:33:25

4   and they're taking it all themselves.  So you try            16:33:28

5   -- there's no reason for the state's attorney to             16:33:32

6   hear all that.  You want to try to -- unless                 16:33:34

7   that's where it's over it.  You try to, as I said            16:33:37

8   earlier, get everything in a clear picture and get           16:33:43

9   to the truth of the matter before you bring in the           16:33:45

10  state's attorney.                                            16:33:47

11      Q  So you wouldn't bring in the state's                  16:33:49

12  attorney until you got a clear picture of how all            16:33:52

13  the pieces fit together?                                     16:33:55

14      MS. GOLDEN:  Form.                                       16:33:57

15      A  Basically, yeah, if I'm confused in a case            16:33:59

16  am I going to bring in a state's attorney who's              16:34:03

17  going to be probably as much confused, if not                16:34:06

18  more, than me.  No.  So I got to figure in a case            16:34:08

19  like this where you got three different people,              16:34:11

20  you're going to try to figure out exactly what               16:34:14

21  happened.  And if they're all saying different               16:34:17

22  things, you're still going to try to figure out              16:34:19

23  exactly what happened.                                       16:34:21

24      Q  If suspects are all telling you different             16:34:22

| | | |
|---|---|---|
| 1 | things, at that point you wouldn't involve the | 16:34:24 |
| 2 | state's attorney; is that right? | 16:34:27 |
| 3 | MS. BARBER:  Objection, form, foundation. | 16:34:28 |
| 4 | A  Every case is different, so I can't say | 16:34:31 |
| 5 | whether I would or I wouldn't.  It all depends on | 16:34:33 |
| 6 | that case. | 16:34:36 |
| 7 | Q  It indicates in the next portion of that | 16:34:37 |
| 8 | paragraph, "Arturo Leon was asked what he did with | 16:34:40 |
| 9 | the pants and shoes that he wore the morning of | 16:34:45 |
| 10 | the murders.  He stated that he was still wearing | 16:34:47 |
| 11 | the same pants and shoes."  Did he tell you that | 16:34:50 |
| 12 | during your interview? | 16:34:53 |
| 13 | MS. GOLDEN:  Foundation. | 16:35:03 |
| 14 | A  Again, that's what it reads.  I don't | 16:35:06 |
| 15 | remember the conversation.  So I have no reason to | 16:35:09 |
| 16 | doubt what the report says, but I have no | 16:35:11 |
| 17 | independent recollection of it. | 16:35:15 |
| 18 | Q  Did it strike you as odd that you would | 16:35:16 |
| 19 | voluntarily come to the police station wearing the | 16:35:19 |
| 20 | same clothes he used in the murder? | 16:35:22 |
| 21 | MS. BARBER:  Form. | 16:35:24 |
| 22 | A  You know, anybody who goes in and kills | 16:35:28 |
| 23 | two people and steals babies is odd, okay?  Would | 16:35:32 |
| 24 | he still be wearing the same clothes?  I can't say | 16:35:36 |

| | | |
|---|---|---|
| 1 | why he would do it.  Would I do it?  I wouldn't go | 16:35:40 |
| 2 | in and kill two babies -- or kill two people and | 16:35:42 |
| 3 | kidnap the babies.  But would I still be wearing | 16:35:47 |
| 4 | the same clothes if I comitted a crime?  I don't | 16:35:51 |
| 5 | think so, but I never thought about it.  Is it | 16:35:54 |
| 6 | odd?  No.  That's the clothes he had. | 16:35:54 |
| 7 |    Q  Okay.  Let's take a look at Exhibit 5. | 16:36:18 |
| 8 |    MS. GOLDEN:  How much time have we been | 16:36:21 |
| 9 | back?  How much time do we have left? | 16:36:26 |
| 10 |    THE VIDEOGRAPHER:  We have about | 16:36:29 |
| 11 | 40 minutes left. | 16:36:30 |
| 12 |    MS. GOLDEN:  Do you want to take a quick | 16:36:31 |
| 13 | break?  Let's take a quick break. | 16:36:33 |
| 14 |    MR. SWAMINATHAN:  Okay. | 16:36:36 |
| 15 |    MS. GOLDEN:  Like really quick if we | 16:36:36 |
| 16 | could. | 16:36:42 |
| 17 |    THE VIDEOGRAPHER:  Off the record at 4:36. | 16:36:42 |
| 18 |    (A short break was taken.) | 16:56:13 |
| 19 |    THE VIDEOGRAPHER:  Back on the record | 16:56:13 |
| 20 | 4:56. | 16:56:16 |
| 21 | BY MR. SWAMINATHAN: | 16:56:18 |
| 22 |    Q  I think where we left off we were looking | 16:56:22 |
| 23 | at Exhibit 5. | 16:56:25 |
| 24 |    A  We didn't get to there yet though. | 16:56:37 |

| | | |
|---|---|---|
| 1 | Q  So looking at Exhibit 5, this is | 16:56:41 |
| 2 | Dickinson's GPR regarding your interview of Arturo | 16:56:43 |
| 3 | DeLeon Reyes, correct? | 16:56:47 |
| 4 | A  It appears to be so, yes. | 16:56:50 |
| 5 | Q  And this GPR, it doesn't indicate anywhere | 16:56:51 |
| 6 | who all participated in the interrogation of | 16:56:58 |
| 7 | Mr. Reyes, correct? | 16:57:01 |
| 8 | MS. GOLDEN:  So read the whole thing. | 16:57:02 |
| 9 | THE WITNESS:  Okay. | 17:00:17 |
| 10 | Q  Have you had a chance to review Exhibit 5? | 17:00:18 |
| 11 | A  Yes, I did. | 17:00:20 |
| 12 | Q  I forgot my question.  Here we go. | 17:00:21 |
| 13 | This GPR doesn't indicate anywhere who all | 17:00:29 |
| 14 | participated in the interrogation of Mr. Reyes, | 17:00:33 |
| 15 | correct? | 17:00:36 |
| 16 | A  That's correct. | 17:00:36 |
| 17 | Q  And you have no memory of the | 17:00:36 |
| 18 | interrogation, correct? | 17:00:38 |
| 19 | A  I have no memory. | 17:00:39 |
| 20 | Q  In terms of who participated in the | 17:00:40 |
| 21 | interrogation -- strike that. | 17:00:42 |
| 22 | When you -- strike that. | 17:00:44 |
| 23 | In terms of who participated in the | 17:00:49 |
| 24 | interrogation, are you depending entirely on | 17:00:51 |

| 1 | what's written in the cleared closed report? | 17:00:53 |
| 2 | MS. BARBER:  Form, argumentative. | 17:00:56 |
| 3 | A  Yes, I am. | 17:00:59 |
| 4 | Q  Looking at the top of this page, the | 17:01:00 |
| 5 | information in the date of original case report, | 17:01:14 |
| 6 | date of this report, defense classification, | 17:01:16 |
| 7 | victim's name and beat assigned is all your | 17:01:20 |
| 8 | handwriting, correct? | 17:01:24 |
| 9 | A  That's correct. | 17:01:25 |
| 10 | Q  And then the information in the body of | 17:01:26 |
| 11 | this is the handwriting of Mr. Dickinson; is that | 17:01:28 |
| 12 | correct? | 17:01:31 |
| 13 | A  I believe so, yes. | 17:01:31 |
| 14 | Q  Where it says Arturo DeLeon Reyes at the | 17:01:32 |
| 15 | top of first page, is that your handwriting? | 17:01:36 |
| 16 | A  No, sir. | 17:01:39 |
| 17 | Q  Is that Mr. Dickinson's handwriting? | 17:01:39 |
| 18 | A  His printing, yes, sir. | 17:01:42 |
| 19 | Q  And then there's a cross-out and then HRS; | 17:01:45 |
| 20 | do you see that? | 17:01:49 |
| 21 | A  Yeah. | 17:01:51 |
| 22 | Q  Does that indicate -- HRS indicates hours, | 17:01:51 |
| 23 | correct? | 17:01:55 |
| 24 | A  Usually, yes. | 17:01:55 |

| | | |
|---|---|---|
| 1 | Q In other words, what time something | 17:01:57 |
| 2 | happened? | 17:01:59 |
| 3 | A Um-hmm. | 17:02:00 |
| 4 | Q Is that a yes? | 17:02:00 |
| 5 | A Yes. | 17:02:01 |
| 6 | Q Okay. Looking at this GPR, it appears | 17:02:02 |
| 7 | that somebody has crossed out what time this | 17:02:06 |
| 8 | interview occurred; do you agree? | 17:02:10 |
| 9 | MS. GOLDEN: Foundation. | 17:02:12 |
| 10 | A I don't know what's crossed out. I don't | 17:02:15 |
| 11 | know if it's time -- I can't tell. | 17:02:17 |
| 12 | Q Does this report indicate anywhere else | 17:02:22 |
| 13 | what time this interview occurred? | 17:02:26 |
| 14 | A No, it doesn't. | 17:02:27 |
| 15 | Q Do you have any explanation for why | 17:02:28 |
| 16 | there's a cross-out right before hours? | 17:02:31 |
| 17 | A I don't recall the interview, so I don't | 17:02:33 |
| 18 | recall this GPR. I can't recall what's crossed | 17:02:37 |
| 19 | out. | 17:02:40 |
| 20 | Q Did you cross out what's written right | 17:02:40 |
| 21 | before hours? | 17:02:43 |
| 22 | A Like I said, I don't recall the GPR, I | 17:02:44 |
| 23 | don't recall the interview. So I can't recall | 17:02:50 |
| 24 | crossing anything out. I don't believe I crossed | 17:02:52 |

| | | |
|---|---|---|
| 1 | anything out, but I don't have any memory of it. | 17:02:55 |
| 2 | Q  Do you have any reason to believe you | 17:02:58 |
| 3 | would have crossed out the time that the interview | 17:02:59 |
| 4 | was conducted? | 17:03:02 |
| 5 | A  I don't see any reason why it would be | 17:03:03 |
| 6 | crossed out. | 17:03:06 |
| 7 | Q  If the time written on the GPR was wrong, | 17:03:06 |
| 8 | you could cross it out and you could write in the | 17:03:11 |
| 9 | correct time, correct? | 17:03:14 |
| 10 | A  That's correct. | 17:03:15 |
| 11 | Q  Is that what you would do if you'd written | 17:03:15 |
| 12 | down the time and you had it wrong; you'd cross it | 17:03:17 |
| 13 | out and write down the right time? | 17:03:20 |
| 14 | A  I would imagine, yes. | 17:03:22 |
| 15 | Q  Do you believe Detective Dickinson crossed | 17:03:24 |
| 16 | out the time in which this interview was | 17:03:27 |
| 17 | conducted? | 17:03:30 |
| 18 | MS. GOLDEN:  Foundation. | 17:03:31 |
| 19 | A  I have no idea who crossed it out.  I | 17:03:32 |
| 20 | don't remember the report.  I don't remember the | 17:03:34 |
| 21 | interview.  So I can't say if Detective Dickinson | 17:03:36 |
| 22 | did it or who did it. | 17:03:41 |
| 23 | Q  Can you provide any explanation for why | 17:03:42 |
| 24 | someone would cross out the time the interview | 17:03:45 |

1    occurred?                                           17:03:48

2          MS. GOLDEN:  Foundation.                       17:03:48

3      A  I can't say that's what -- that was            17:03:49

4    crossed out was the time.  I don't know what was    17:03:51

5    crossed out.  Do I know any reason why anybody      17:03:53

6    would cross out on any other report a time?  No.    17:03:56

7      Q  On this report -- strike that.                 17:04:00

8          You indicated -- strike that.                 17:04:03

9          You indicated previously that the             17:04:05

10   information that you filled in at the top of this   17:04:10

11   page was after the GPR was given back to you by a   17:04:12

12   sergeant, correct?                                  17:04:16

13         MS. GOLDEN:  That is not a complete           17:04:17

14   summary of what he said, so foundation.             17:04:20

15     A  Basically when I got it back, we filled it     17:04:24

16   out.                                                17:04:27

17     Q  You filled out the top of the page?            17:04:27

18     A  Yes.                                           17:04:29

19     Q  When you received it, you received it back     17:04:30

20   from the sergeant, correct?                         17:04:31

21     A  I believe I received it back from Sergeant     17:04:32

22   Cappatelli.                                         17:04:35

23     Q  When you received it back, was the time of     17:04:36

24   the interview crossed out?                          17:04:39

| | |
|---|---|
| 1 | A   Again, I can't recall the GPR, so I can't | 17:04:41 |
| 2 | recall if it was crossed out or not. | 17:04:44 |
| 3 | Q   If this had not been crossed out when you | 17:04:48 |
| 4 | got it back from Mr. Cappatelli, could somebody -- | 17:04:53 |
| 5 | and then you filled in the top of the form like | 17:04:58 |
| 6 | you're supposed to and turned it back in to | 17:05:01 |
| 7 | Mr. Cappatelli; with me so far? | 17:05:04 |
| 8 | A   Okay. | 17:05:06 |
| 9 | Q   So in other words, as you understand it, | 17:05:06 |
| 10 | you got this back from Mr. Cappatelli; you filled | 17:05:08 |
| 11 | the top of the form; and then you turned it back | 17:05:11 |
| 12 | in to Mr. Cappatelli; is that correct? | 17:05:14 |
| 13 | MS. GOLDEN:  Well, it's incomplete, | 17:05:16 |
| 14 | foundation. | 17:05:16 |
| 15 | A   Basically I got it back from Sergeant | 17:05:20 |
| 16 | Cappatelli.  I filled out the top.  Signed the | 17:05:24 |
| 17 | bottom.  Ed signed the bottom.  We handed it back | 17:05:27 |
| 18 | to him. | 17:05:30 |
| 19 | Q   Okay.  If at the time you handed it back | 17:05:30 |
| 20 | to Mr. Cappatelli, is it possible this was not | 17:05:32 |
| 21 | crossed out at that time? | 17:05:35 |
| 22 | MS. BARBER:  Objection, calls for | 17:05:37 |
| 23 | speculation. | 17:05:38 |
| 24 | A   I don't know when it was crossed out.  So | 17:05:39 |

| | | |
|---|---|---|
| 1 | I guess it could be possible.  I don't know when | 17:05:41 |
| 2 | it was done. | 17:05:43 |
| 3 | Q  If someone wanted to cross this out after | 17:05:44 |
| 4 | you had turned it back into Mr. Cappatelli and | 17:05:48 |
| 5 | he'd approve it, could they do that? | 17:05:51 |
| 6 | A  Could it be done?  Yes. | 17:05:57 |
| 7 | Q  If someone wanted to do that, how would | 17:05:59 |
| 8 | they do that? | 17:06:01 |
| 9 | MS. GOLDEN:  Foundation. | 17:06:05 |
| 10 | MS. BARBER:  Objection, form. | 17:06:07 |
| 11 | A  I guess they'd take a pen, cross it out. | 17:06:08 |
| 12 | Q  This would be sitting in the investigative | 17:06:10 |
| 13 | file in the sergeant's office, correct? | 17:06:12 |
| 14 | MS. GOLDEN:  Okay. | 17:06:14 |
| 15 | A  Yeah, I mean, it's in the investigative | 17:06:16 |
| 16 | file. | 17:06:18 |
| 17 | Q  Which is sitting just right next to where | 17:06:18 |
| 18 | the detectives are sitting, correct? | 17:06:21 |
| 19 | A  It's in the file cabinet. | 17:06:23 |
| 20 | Q  If somebody wanted to cross this out after | 17:06:25 |
| 21 | it had been approved by Sergeant Cappatelli, would | 17:06:27 |
| 22 | it be hard to do? | 17:06:30 |
| 23 | MS. BARBER:  Objection, form. | 17:06:32 |
| 24 | A  You would have to make sure nobody else | 17:06:38 |

| | | |
|---|---|---|
| 1 | was around.  Would it be hard to do?  You know, it | 17:06:40 |
| 2 | would be the matter of pulling that file, finding | 17:06:45 |
| 3 | that GPR, and crossing it out. | 17:06:49 |
| 4 | Q  The cabinet in which those investigative | 17:06:51 |
| 5 | files were kept locked? | 17:06:54 |
| 6 | MS. BARBER:  Objection, form, foundation. | 17:06:56 |
| 7 | A  Certain times they were.  Certain times | 17:06:59 |
| 8 | they weren't.  I'm not sure exactly. | 17:07:02 |
| 9 | Q  As a general matter, detectives had access | 17:07:03 |
| 10 | to those investigative files in those cabinets? | 17:07:05 |
| 11 | A  They could get access, yes. | 17:07:07 |
| 12 | Q  If the information about the time at which | 17:07:09 |
| 13 | this interview occurred was included in a | 17:07:13 |
| 14 | supplementary report, could that be changed after | 17:07:17 |
| 15 | it had been approved by a sergeant? | 17:07:23 |
| 16 | MS. GOLDEN:  Okay.  Please read the | 17:07:34 |
| 17 | question. | 17:07:35 |
| 18 | (Record read back by the | 17:07:35 |
| 19 | reporter.) | 17:07:36 |
| 20 | MS. GOLDEN:  Form and foundation. | 17:07:36 |
| 21 | A  Could it be?  It would take a lot of -- | 17:07:42 |
| 22 | you'd have to have the sergeant in on it and | 17:07:47 |
| 23 | everybody else in on it.  You'd have to rip up the | 17:07:50 |
| 24 | approved report, change it, get the sergeant again | 17:07:52 |

| | | |
|---|---|---|
| 1 | to sign the other report after it's been changed. | 17:07:55 |
| 2 | Possible, yes.  Probable, very doubtful. | 17:07:58 |
| 3 | Q  It would be very hard? | 17:08:01 |
| 4 | A  Yes. | 17:08:02 |
| 5 | Q  Okay.  Looking at this GPR, it begins, | 17:08:02 |
| 6 | Since December, light construction, something like | 17:08:11 |
| 7 | that.  I'll read it again. | 17:08:16 |
| 8 | "Since December, light construction work | 17:08:18 |
| 9 | in Mexico.  Came here to make money to send back." | 17:08:20 |
| 10 | And then it says, Adriana made friends with the | 17:08:24 |
| 11 | lady with the baby.  She fell in love with the | 17:08:28 |
| 12 | baby.  Adriana made friends at the clinic with | 17:08:32 |
| 13 | female victim when she was pregnant and then | 17:08:34 |
| 14 | Gabriel has car.  Adriana knew layout of | 17:08:38 |
| 15 | apartment. | 17:08:42 |
| 16 | Agree with me this note jumps very quickly | 17:08:42 |
| 17 | into the incriminating information about how this | 17:08:47 |
| 18 | crime went down? | 17:08:50 |
| 19 | MS. BARBER:  Objection, form. | 17:08:52 |
| 20 | A  Like I say, this is a summary.  So it's | 17:08:59 |
| 21 | not verbatim, and obviously we're not court | 17:09:02 |
| 22 | reporters that could take verbatim statements.  So | 17:09:08 |
| 23 | Ed's preparing the GPR as he's getting the | 17:09:17 |
| 24 | information and basically writing down not every | 17:09:21 |

| | | |
|---|---|---|
| 1 | word but trying to get the gist of the | 17:09:24 |
| 2 | conversation on it. | 17:09:29 |
| 3 |    Q  Would you say based on this report -- | 17:09:30 |
| 4 | strike that. | 17:09:34 |
| 5 |      Based on this GPR does it indicate to you | 17:09:34 |
| 6 | that there was probably some conversation with | 17:09:38 |
| 7 | Mr. Reyes before the point which these notes start | 17:09:39 |
| 8 | off? | 17:09:43 |
| 9 |      MS. GOLDEN:  Foundation. | 17:09:43 |
| 10 |    A  Before -- | 17:09:48 |
| 11 |    Q  In other words, where this note starts, do | 17:09:49 |
| 12 | you suspect that there was some conversation you | 17:09:53 |
| 13 | all had with Mr. Reyes that isn't documented here? | 17:09:55 |
| 14 |      MS. BARBER:  Objection, form, foundation. | 17:09:58 |
| 15 |    A  Again, I don't remember the conversation. | 17:10:00 |
| 16 | However, if I was going to do this, and I was | 17:10:03 |
| 17 | bringing a suspect in, let's say Reyes, I would | 17:10:06 |
| 18 | introduce the people that he never met before so | 17:10:11 |
| 19 | he would know who they were.  So, yes, that would | 17:10:13 |
| 20 | have been before the conversation that is recorded | 17:10:17 |
| 21 | here started. | 17:10:20 |
| 22 |    Q  Would you jump right into getting a | 17:10:21 |
| 23 | confession from him? | 17:10:24 |
| 24 |      MS. GOLDEN:  Form. | 17:10:26 |

1    A   What I'd probably do is -- again, they've          17:10:31

2    talked to Reyes earlier, right --                      17:10:34

3    Q   When you say "they", you're referring to           17:10:41

4    Guevara?                                                17:10:43

5    A   Yeah.  I don't know who talked to him.  If         17:10:43

6    Ray did.  But who else did I'm not sure.  I'm just     17:10:46

7    saying they instead of he or she or whatever.          17:10:49

8        Ray's talked to him.  Probably go right            17:10:55

9    into the conversation, say let these -- tell us        17:11:02

10   what you told us before.                               17:11:06

11   Q   And if Guevara had conducted the interview         17:11:07

12   before, you would expect Guevara would have said       17:11:10

13   tell us what you told us before?                       17:11:13

14   A   That's what I would suspect happened.              17:11:14

15   Q   Is it your expectation that what would             17:11:16

16   happen that Guevara led the questioning in this        17:11:21

17   interview?                                             17:11:23

18       MS. GOLDEN:  Foundation.                           17:11:24

19   A   I don't remember the interview.  I don't           17:11:26

20   know who led it.  I don't know that Danny Trevino      17:11:28

21   even talked to this guy earlier.                       17:11:31

22   Q   You said you don't know whether he did or          17:11:34

23   he did?                                                17:11:35

24   A   I'm not sure whether he did or he didn't.          17:11:35

1    I'd have to again review the reports to see.  And        17:11:40

2    that might be why he's there.  I don't know.            17:11:43

3        Q  If out of the group of you --                    17:11:45

4        MS. GOLDEN:  Hold on.                                17:11:46

5        Q  Did you have more?                                17:11:48

6        A  Yes.  I was going to say, they would be          17:11:49

7    asking questions.  Like I say, I didn't speak           17:11:53

8    Spanish.  I could not really communicate with           17:11:56

9    Reyes without going through either Trevino or           17:11:59

10   Guevara.                                                 17:12:03

11       Q  When you say they would have been asking          17:12:04

12   the questions, would they have been asking              17:12:05

13   questions in Spanish that you and Mr. Dickinson         17:12:09

14   were requesting or would they be asking questions       17:12:12

15   of their own volition?                                   17:12:14

16       MS. GOLDEN:  Foundation.                             17:12:16

17       A  If me or Ed had a question to ask him,           17:12:17

18   they would ask it.  Like I said, I don't remember       17:12:21

19   the conversation.  I don't know if we asked any         17:12:23

20   questions of him.  But if we did, it would have to      17:12:25

21   go through either Detective Guevara or Youth            17:12:28

22   Officer Trevino.                                         17:12:31

23       Q  And given the fact that Guevara was the          17:12:32

24   primary assigned on the case and had previously --      17:12:34

| | | |
|---|---|---|
| 1 | if we assume what's in the cleared closed report, | 17:12:37 |
| 2 | which is that Detective Guevara was the only one | 17:12:39 |
| 3 | of the group of you who were in that room | 17:12:43 |
| 4 | interviewing Mr. Reyes, who had previously | 17:12:47 |
| 5 | interviewed him, is it your expectation he would | 17:12:49 |
| 6 | have been leading the questioning? | 17:12:51 |
| 7 | MS. GOLDEN:  Hold on.  Foundation, | 17:12:53 |
| 8 | misstates prior testimony. | 17:12:55 |
| 9 | A  I'm not going to assume Ray was in there | 17:12:58 |
| 10 | alone.  I don't know who was in there with him.  I | 17:13:01 |
| 11 | have no idea.  I could assume Ray was in there | 17:13:03 |
| 12 | because the report says Ray.  I don't know if | 17:13:06 |
| 13 | anybody else was in there. | 17:13:08 |
| 14 | Would I guess that Detective Guevara would | 17:13:10 |
| 15 | be leading the investigation?  Yes, I would. | 17:13:14 |
| 16 | Q  Okay.  Looking at this GPR, I think I | 17:13:17 |
| 17 | might have misunderstood your answer.  You said | 17:13:27 |
| 18 | would you -- would I guess that Detective Guevara | 17:13:29 |
| 19 | would be leading the investigation, yes, I would, | 17:13:31 |
| 20 | would you expect he would be leading the | 17:13:34 |
| 21 | questioning of this witness? | 17:13:37 |
| 22 | A  Yes, because he knew -- he's interviewed | 17:13:39 |
| 23 | the witness earlier, so, yes, he would lead it. | 17:13:44 |
| 24 | Q  Okay. | 17:13:46 |

1    A  If we had a question to throw in there --                    17:13:47

2    and I'm not saying we did or we didn't, I don't                 17:13:49

3    remember -- we would ask Ray to ask him.                        17:13:52

4    Q  Got it.                                                      17:13:54

5       Looking at this Exhibit 5, where I left                      17:13:55

6    off on the first page.                                          17:14:01

7       MS. GOLDEN:  Which I don't remember.                         17:14:04

8       MR. SWAMINATHAN:  About six or seven                         17:14:06

9    sentences down there's a sentence -- I'll read the              17:14:08

10   sentence right before it just so you have some                  17:14:09

11   context.                                                        17:14:11

12      "Gabriel has car.  Adriana knew layout of                    17:14:11

13   apartment."  Then it says, "Bogart way in."                     17:14:15

14      What does "Bogart way in" mean?                              17:14:19

15   A  I know what Bogart means.  You tricked                       17:14:24

16   your way in.  Okay.  Now, again, I don't know what              17:14:32

17   terminology Reyes said.  I can't -- I'm not going               17:14:36

18   to say that Guevara said Bogart.  Whatever they                 17:14:42

19   said maybe Eddie interpreted to be Bogart and                   17:14:49

20   that's why he wrote Bogart.  I don't know why.                  17:14:52

21   But Bogart means basically tricking your way in.                17:14:55

22   Q  And where does the term "Bogart" come                        17:14:59

23   from?                                                           17:15:02

24   A  I got no idea.                                               17:15:03

| | | |
|---|---|---|
| 1 | MS. BARBER:  Foundation. | 17:15:05 |
| 2 | Q  I think I understand your answer but let | 17:15:07 |
| 3 | me be clear. | 17:15:09 |
| 4 | You agree with me Arturo Reyes didn't use | 17:15:10 |
| 5 | the term "Bogart"? | 17:15:13 |
| 6 | MS. GOLDEN:  Foundation. | 17:15:15 |
| 7 | A  The only thing I can say is I don't know | 17:15:18 |
| 8 | what the Spanish translation for Bogart is.  So | 17:15:20 |
| 9 | did he use it?  I couldn't tell you.  Did he use a | 17:15:24 |
| 10 | phrase that means Bogart?  Again, I don't know if | 17:15:27 |
| 11 | there is one in Spanish, so I can't even say. | 17:15:31 |
| 12 | Q  So if Arturo Reyes had basically indicated | 17:15:33 |
| 13 | that they had tricked their way in, would you | 17:15:37 |
| 14 | expect that the person translating for you to have | 17:15:39 |
| 15 | said Arturo Reyes says they tricked their way in? | 17:15:42 |
| 16 | MS. BARBER:  Objection, form, foundation. | 17:15:46 |
| 17 | A  I don't know exactly what was said by | 17:15:50 |
| 18 | Reyes.  Again, I don't speak Spanish.  So did he | 17:15:52 |
| 19 | -- I don't know -- Spanish, if there's a slang | 17:15:59 |
| 20 | word for tricking your way in.  I don't know.  If | 17:16:06 |
| 21 | there is, he would have used that.  Probably would | 17:16:09 |
| 22 | have used that.  I don't know -- I can't say his | 17:16:13 |
| 23 | exact words because I don't speak Spanish.  And I | 17:16:14 |
| 24 | don't remember what was translated back because I | 17:16:17 |

| | | |
|---|---|---|
| 1 | don't remember the conversation. | 17:16:20 |
| 2 | Q  Do you remember the Spanish-speaking | 17:16:20 |
| 3 | Arturo Reyes from Mexico to ever use the word | 17:16:24 |
| 4 | "Bogart" in an interview with him? | 17:16:28 |
| 5 | A  I don't recall ever hearing the word | 17:16:28 |
| 6 | "Bogart". | 17:16:30 |
| 7 | Q  If Spanish-speaking Arturo Reyes from | 17:16:31 |
| 8 | Mexico had used the word "Bogart" in the middle of | 17:16:34 |
| 9 | this interview, would that have been memorable? | 17:16:37 |
| 10 | A  Let me say this, if I was in Mexico and a | 17:16:41 |
| 11 | person was interpreting for me and they asked me | 17:16:46 |
| 12 | how did I get in the house?  And I said Bogart the | 17:16:49 |
| 13 | way in.  I don't know how he would interpret that, | 17:16:53 |
| 14 | tell somebody else in Spanish what I just said. | 17:16:56 |
| 15 | Reverse, I don't know what he said and how they | 17:16:59 |
| 16 | would tell in English what they said.  There might | 17:17:02 |
| 17 | not be a direct translation.  So did he say the | 17:17:06 |
| 18 | word "Bogart"?  I doubt it.  I don't recall | 17:17:09 |
| 19 | hearing it.  Could he have?  Maybe. | 17:17:14 |
| 20 | Q  Bogart in this GPR is a word that was | 17:17:16 |
| 21 | provided by either Mr. Trevino or Mr. Guevara, | 17:17:20 |
| 22 | correct? | 17:17:24 |
| 23 | MS. GOLDEN:  Foundation, asked and | 17:17:24 |
| 24 | answered. | 17:17:27 |

1    A  I don't know who said it.                    17:17:30

2    Q  Is it possible that Bogart was a term that   17:17:32

3  Mr. Dickinson used to summarize what he was       17:17:36

4  learning from Detective Guevara and Detective     17:17:39

5  Trevino?                                          17:17:42

6    A  It was possible that Ed did that.  It's      17:17:43

7  possible Trevino said it.  It's possible that     17:17:46

8  Guevara said it.  It's possible that Reyes said   17:17:49

9  it.  I don't recall.                              17:17:52

10   Q  Assuming Reyes did not use the word          17:17:53

11 "Bogart", would it have been better practice in   17:17:56

12 this GPR to have written something that was more   17:17:59

13 consistent with what he actually said --          17:18:01

14     MS. GOLDEN:  Form.                            17:18:03

15   Q  -- rather than slang term of Bogart?         17:18:04

16     MS. GOLDEN:  -- and foundation.               17:18:08

17     MS. BARBER:  Calls for speculation.           17:18:09

18   A  This is a GPR.  It's -- you're just          17:18:11

19 writing it to refresh your memory.  I don't know  17:18:15

20 what term that Reyes used.  Was it a Spanish term  17:18:18

21 that is basically the same as Bogart?  I don't     17:18:25

22 know.  I don't know exactly what he said because I 17:18:29

23 don't speak Spanish.                              17:18:32

24   Q  Looking at the next sentence or sentence     17:18:33

| | | |
|---|---|---|
| 1 | after that, it says, Victim opened door.  They | 17:18:36 |
| 2 | charged in.  Do you see that? | 17:18:40 |
| 3 | MS. GOLDEN:  I think you misread it. | 17:18:42 |
| 4 | MR. SWAMINATHAN:  Nope. | 17:18:46 |
| 5 | MS. GOLDEN:  Could you read back what he | 17:18:47 |
| 6 | said. | 17:18:51 |
| 7 | MR. SWAMINATHAN:  Anyway, I don't care | 17:18:51 |
| 8 | about that sentence. | 17:18:51 |
| 9 | MS. GOLDEN:  I do care.  Can you read back | 17:18:51 |
| 10 | what he said. | 17:18:51 |
| 11 | (Record read back by the | 17:18:51 |
| 12 | reporter.) | 17:19:08 |
| 13 | MS. GOLDEN:  Yeah, which is not exactly | 17:19:08 |
| 14 | what it says. | 17:19:11 |
| 15 | BY MR. SWAMINATHAN: | 17:19:13 |
| 16 | Q  The next sentence says -- I can't read | 17:19:14 |
| 17 | what that next sentence says, can you? | 17:19:14 |
| 18 | MS. GOLDEN:  I'm not sure it's the next | 17:19:16 |
| 19 | sentence, but if you want to talk about the next | 17:19:18 |
| 20 | word I got it. | 17:19:21 |
| 21 | Q  See where it says Rosendo? | 17:19:23 |
| 22 | A  Yes. | 17:19:26 |
| 23 | Q  Who's Rosendo? | 17:19:26 |
| 24 | A  I don't know. | 17:19:28 |

1      Q  And then what do the next three or                  17:19:31

2  four words say on that next line?                          17:19:36

3      A  I don't know.  Like I said, I don't know            17:19:39

4  what the first two words are.  200 then there's            17:19:49

5  white envelope.  So I would assume he was given            17:19:56

6  $200 in a white envelope paid on 27, February.             17:20:00

7  The 400 remaining to be paid when deed was done            17:20:03

8  and baby was here or hers.  I'm not sure exactly           17:20:07

9  what it is.                                                17:20:12

10     Q  Where it says "deed was done", would you            17:20:12

11 agree with me that it's doubtful that Arturo Reyes         17:20:16

12 actually used that phrase?                                 17:20:19

13     MS. GOLDEN:  Foundation.                               17:20:20

14     A  Again, I don't know what he said in                 17:20:24

15 Spanish.  Did it translate to something like that?         17:20:26

16 Maybe.  But I don't speak Spanish, so I don't know         17:20:32

17 exactly what words he -- what he said.                     17:20:35

18     Q  You agree with me that's unlikely to be a           17:20:39

19 literal translation of what Arturo Reyes said,             17:20:43

20 "deed was done"?                                           17:20:45

21     MS. GOLDEN:  Asked and answered in exactly             17:20:46

22 the preceding question.                                    17:20:48

23     Q  Go ahead.                                           17:20:50

24     MS. GOLDEN:  And this is the last time.                17:20:51

| | | |
|---|---|---|
| 1 | You can answer two questions that are exactly the | 17:20:54 |
| 2 | same in a row.  Next time, no. | 17:20:56 |
| 3 | MS. BARBER:  Calls for speculation. | 17:20:59 |
| 4 | A  As I said before, I don't know.  There's | 17:21:02 |
| 5 | not always a direct translation from Spanish to | 17:21:04 |
| 6 | English.  So what he said, I don't know if there | 17:21:07 |
| 7 | is a direct translation that you would understand. | 17:21:10 |
| 8 | Q  Turning to the next page, there's a middle | 17:21:15 |
| 9 | paragraph there and there's a section that's | 17:21:28 |
| 10 | crossed out.  Do you see that? | 17:21:32 |
| 11 | A  Yes. | 17:21:34 |
| 12 | Q  Why was that section crossed out; do you | 17:21:35 |
| 13 | know? | 17:21:45 |
| 14 | A  I do not know. | 17:21:45 |
| 15 | Q  Was it a misstatement, mistranslation, are | 17:21:46 |
| 16 | you able to say? | 17:21:49 |
| 17 | A  As I just said, I don't know why it was | 17:21:50 |
| 18 | crossed out. | 17:21:53 |
| 19 | Q  Do you have a memory of whether this note | 17:21:53 |
| 20 | was written contemporaneously while you were | 17:21:57 |
| 21 | interviewing Arturo Reyes? | 17:22:01 |
| 22 | MS. GOLDEN:  When you say "this note", | 17:22:04 |
| 23 | you're holding up the GPR.  Are you talking about | 17:22:06 |
| 24 | the whole GPR or just a part of it? | 17:22:08 |

| | | |
|---|---|---|
| 1 | Q  Please go ahead. | 17:22:11 |
| 2 | MS. GOLDEN:  If you can answer the | 17:22:12 |
| 3 | question.  Form. | 17:22:14 |
| 4 | A  I have no reason to doubt it was made | 17:22:15 |
| 5 | while we're talking.  Do I have any independent | 17:22:17 |
| 6 | recollection of that?  No. | 17:22:20 |
| 7 | Q  This GPR, Exhibit 5, which you reviewed | 17:22:22 |
| 8 | during the course of this questioning and reviewed | 17:22:30 |
| 9 | previously, does it refresh your recollection at | 17:22:34 |
| 10 | all about -- strike that.  Let me ask a different | 17:22:37 |
| 11 | question. | 17:22:41 |
| 12 | Having now gone through this GPR again, | 17:22:41 |
| 13 | had another chance to review it here today, does | 17:22:44 |
| 14 | it refresh your recollection at all about your | 17:22:47 |
| 15 | interview of Arturo Reyes? | 17:22:49 |
| 16 | A  No, it doesn't. | 17:22:51 |
| 17 | Q  Does it refresh your recollection at all | 17:22:52 |
| 18 | about whether you even interviewed Arturo Reyes? | 17:22:54 |
| 19 | A  The GPR itself?  No.  Just my name on the | 17:22:58 |
| 20 | bottom when I signed it, but I imagine I wouldn't | 17:23:04 |
| 21 | have signed it back then if I didn't do it. | 17:23:06 |
| 22 | Q  As you sit here today, you have no memory | 17:23:09 |
| 23 | at all of any interaction or meeting with Arturo | 17:23:12 |
| 24 | Reyes; do I have that right? | 17:23:16 |

| | | |
|---|---|---|
| 1 | MS. GOLDEN:  Asked and answered at least | 17:23:17 |
| 2 | five times. | 17:23:19 |
| 3 | Q  Go ahead. | 17:23:20 |
| 4 | A  I don't have -- I have very, very little | 17:23:21 |
| 5 | memory of this case at all.  I mean, my | 17:23:25 |
| 6 | involvement was minimum and a lot has happened | 17:23:28 |
| 7 | since 1998 in my life. | 17:23:34 |
| 8 | Q  Understood.  Looking -- | 17:23:36 |
| 9 | MS. GOLDEN:  Are you finished? | 17:23:37 |
| 10 | A  And I was going to say that there's other | 17:23:39 |
| 11 | cases that I do remember more because I was more | 17:23:42 |
| 12 | involved.  I wasn't that involved in this, and I | 17:23:45 |
| 13 | didn't testify.  I didn't see the bodies.  I | 17:23:50 |
| 14 | didn't go to the houses.  This was my only | 17:23:52 |
| 15 | involvement was this day and a couple inventories | 17:23:54 |
| 16 | later, one inventory and the tow report later. | 17:23:59 |
| 17 | Q  This report which we've just -- strike | 17:24:03 |
| 18 | that. | 17:24:05 |
| 19 | This GPR that we just reviewed contains | 17:24:05 |
| 20 | information about Arturo Reyes's participation in | 17:24:09 |
| 21 | the Soto crime including, you know, the trip to | 17:24:16 |
| 22 | the location where the crime was to occur, some | 17:24:21 |
| 23 | information about how the crime occurred, and then | 17:24:25 |
| 24 | leaving the home, correct? | 17:24:27 |

| | | |
|---|---|---|
| 1 | A   Yes. | 17:24:29 |
| 2 | Q   And having just reviewed this note, you | 17:24:29 |
| 3 | agree with me it doesn't contain any information | 17:24:33 |
| 4 | about once they left the house, where they went, | 17:24:36 |
| 5 | going back to the hospital, any of those kinds of | 17:24:39 |
| 6 | things? | 17:24:41 |
| 7 | A   That's correct. | 17:24:42 |
| 8 | Q   Did Arturo Reyes tell you about -- strike | 17:24:43 |
| 9 | that. | 17:24:48 |
| 10 | During the course of your interview with | 17:24:48 |
| 11 | Arturo Reyes that's documented in this GPR, did he | 17:24:50 |
| 12 | tell you anything about after they left the house | 17:24:54 |
| 13 | with the baby where they went and what they did? | 17:24:56 |
| 14 | A   Again, I have no independent recollection | 17:24:59 |
| 15 | of this case much less this interview. | 17:25:03 |
| 16 | Q   If he did, do you expect it would have | 17:25:06 |
| 17 | been written in this GPR taken by Mr. Dickinson? | 17:25:08 |
| 18 | MS. BARBER:  Objection, calls for | 17:25:12 |
| 19 | speculation. | 17:25:13 |
| 20 | A   This is a -- this is basically a summary | 17:25:15 |
| 21 | to help you type a report later.  It's not | 17:25:18 |
| 22 | verbatim.  If it entailed something that was -- | 17:25:20 |
| 23 | you know, we took it, we went here, here, here, | 17:25:27 |
| 24 | here, yes, I would expect something like that.  I | 17:25:30 |

1    don't know if that was in there.  I don't know if      17:25:32

2    he told us that then.  Again, I don't remember         17:25:34

3    because I just don't remember this case.  I'm          17:25:37

4    sorry.                                                 17:25:40

5        Q   Okay.  I think you answered it somewhere       17:25:40

6    in the middle, but I'm not sure.  I want to be         17:25:43

7    clear about it.                                        17:25:46

8            If there had been a conversation -- strike     17:25:47

9    that.                                                  17:25:49

10           If the conversation with Mr. Reyes had         17:25:49

11   continued with him explaining further about where      17:25:52

12   they went after they took the baby and how they        17:25:54

13   travelled there and what all they did, you would       17:25:58

14   expect that would have been information summarized     17:26:00

15   in this GPR; do I have that right?                     17:26:03

16       MS. GOLDEN:  Asked and answered.  How much         17:26:05

17   time do we have left?                                  17:26:07

18       THE VIDEOGRAPHER:  Nine minutes.                   17:26:08

19       MS. GOLDEN:  Nine minutes?                         17:26:10

20       Q  Go ahead.                                       17:26:10

21       MS. GOLDEN:  Okay.  No.  All right.  Fine.         17:26:11

22   Asked and answered.  And then I have something to      17:26:13

23   say.                                                   17:26:15

24       A   It could be.  Again, I don't know what was     17:26:16

| | | |
|---|---|---|
| 1 | said and, you know, how substantial it was.  That | 17:26:19 |
| 2 | would all depend on how substantial what he said | 17:26:23 |
| 3 | was.  If he just said, yeah, we left, we took the | 17:26:27 |
| 4 | babies over here, it might not be in there. | 17:26:30 |
| 5 | MS. GOLDEN:  Okay.  If you guys want to | 17:26:34 |
| 6 | reserve some time for questions after the | 17:26:36 |
| 7 | defendants ask questions, you need to do that | 17:26:39 |
| 8 | because that counts in your ten hours. | 17:26:43 |
| 9 | MR. SWAMINATHAN:  I don't know if I agree | 17:26:46 |
| 10 | with that, but let me confer with counsel. | 17:26:47 |
| 11 | (Whereupon, a discussion was had with | 17:26:47 |
| 12 | plaintiffs' counsels sotto voce.) | 17:26:47 |
| 13 | MR. SWAMINATHAN:  I have nothing else. | 17:27:23 |
| 14 | MS. BARBER:  Anything from Solache? | 17:27:28 |
| 15 | MS. SUSLER:  No. | 17:27:31 |
| 16 | MR. ZIBOLSKI:  No. | 17:27:35 |
| 17 | MR. BRENER:  I do have a few questions. | 17:27:38 |
| 18 | MS. GOLDEN:  Can you introduce yourself? | 17:27:45 |
| 19 | MR. BRENER:  Yeah, of course. | 17:27:45 |
| 20 | EXAMINATION BY COUNSEL FOR DEFENDANTS ASA'S | 17:27:47 |
| 21 | BY MR. BRENER: | 17:27:47 |
| 22 | Q  Mr. Rutherford, my name is Edward Brener. | 17:27:47 |
| 23 | I represent four of the five ASA defendants in | 17:27:50 |
| 24 | this case. | 17:27:53 |

| | | |
|---|---|---|
| 1 | Were you present when Arturo Reyes gave a | 17:27:53 |
| 2 | statement to an ASA? | 17:27:58 |
| 3 | A  I don't remember being there, so I can't | 17:27:59 |
| 4 | -- I'm not sure. | 17:28:03 |
| 5 | Q  How about with respect to Gabriel Solache? | 17:28:04 |
| 6 | A  Same thing.  I don't know when I left that | 17:28:08 |
| 7 | night and when those statements were taken. | 17:28:10 |
| 8 | Q  Do you know whether you were present when | 17:28:12 |
| 9 | Rosauro Mejia gave a statement to an ASA? | 17:28:15 |
| 10 | A  Again, I don't recall because I don't know | 17:28:18 |
| 11 | when the statement was given and when I left. | 17:28:20 |
| 12 | Q  Same question with respect to Adriana | 17:28:22 |
| 13 | Mejia? | 17:28:25 |
| 14 | A  It would be the same answer.  I wasn't -- | 17:28:26 |
| 15 | I don't know what time it was given and I don't | 17:28:29 |
| 16 | know what time I left that day. | 17:28:31 |
| 17 | Q  Do you know whether you were present when | 17:28:32 |
| 18 | Guadalupe Mejia gave a statement to an ASA? | 17:28:35 |
| 19 | A  Same answer.  I don't know what time I | 17:28:38 |
| 20 | left the building that day. | 17:28:40 |
| 21 | Q  Earlier you told us that you seen ASA's | 17:28:42 |
| 22 | include -- I believe you called them intentional | 17:28:49 |
| 23 | errors in handwritten statements in order to test | 17:28:52 |
| 24 | whether the witness or suspect was reading and | 17:28:55 |

| | | |
|---|---|---|
| 1 | reviewing the statement; is that an accurate | 17:28:58 |
| 2 | summary of your testimony? | 17:29:00 |
| 3 |     A  Yeah, what they would do is make like a | 17:29:02 |
| 4 | punctuation or a misspelling of something basic so | 17:29:04 |
| 5 | that if the person reviewing it would see it and | 17:29:09 |
| 6 | know.  Nothing substantial with the statement | 17:29:13 |
| 7 | itself just, you know, punctuation or spelling or | 17:29:17 |
| 8 | something on that order. | 17:29:22 |
| 9 |     Q  And with respect to the five individuals | 17:29:22 |
| 10 | that I just asked you about, that's Mr. Reyes, | 17:29:25 |
| 11 | Mr. Solache, Rosauro Mejia, Adriana Mejia, and | 17:29:29 |
| 12 | Guadalupe Mejia, with respect to those five | 17:29:35 |
| 13 | individuals, is it fair to say you do not know | 17:29:38 |
| 14 | whether any of the ASA's who took their statements | 17:29:42 |
| 15 | included intentional errors in those statements? | 17:29:46 |
| 16 |     A  I would have no knowledge of those | 17:29:49 |
| 17 | statements at all. | 17:29:52 |
| 18 |         MR. BRENER:  I have nothing further. | 17:29:54 |
| 19 |         MR. BURNS:  I have no questions. | 17:29:56 |
| 20 |         MS. BARBER:  No questions. | 17:29:57 |
| 21 |         MS. GOLDEN:  No questions. | 17:29:58 |
| 22 |         MR. SWAMINATHAN:  We're done. | 17:30:02 |
| 23 |         MS. GOLDEN:  Okay. | 17:30:03 |
| 24 |         THE VIDEOGRAPHER:  This concludes Day 2 of | 17:30:05 |

1    the deposition of Robert Rutherford.   The time is        17:30:07

2    5:30.                                                     17:30:10

3    (Off the record at 5:30 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2        I, Anna M. Castle, Registered Professional

3    Reporter, Certified Shorthand Reporter and Notary

4    Public, the officer before whom the foregoing

5    deposition was taken, do hereby certify that the

6    foregoing transcript is a true and correct record

7    of the testimony given; that said testimony was

8    taken by me stenographically and thereafter

9    reduced to typewriting under my supervision; that

10   reading and signing was requested; and that I am

11   neither counsel for or related to, nor employed by

12   any of the parties to this case and have no

13   interest, financial or otherwise, in its outcome.

14   IN WITNESS WHEREOF, I have hereunto set my hand

15   and affixed my notarial seal this 31st day of

16   December 2019.

17

18

19   _____

20   NOTARY PUBLIC IN AND FOR

21   THE STATE OF ILLINOIS

22

23

24

| **A** | | | |

**aberdeen**
2:6, 3:6, 8:8
**abilities**
181:22
**ability**
180:21, 181:6,
197:23
**able**
34:3, 34:23,
39:11, 39:23,
156:16, 156:17,
180:2, 180:5,
180:7, 180:9,
180:15, 181:11,
181:22, 187:8,
200:1, 222:3,
231:20, 256:16
**abuse**
121:2, 121:13,
121:24
**abused**
120:9, 121:4,
121:9, 121:22
**abusing**
174:23
**access**
223:1, 244:9,
244:11
**accident**
54:13
**accidentally**
54:3
**according**
191:20, 192:15,
193:22, 194:13,
211:9, 213:20,
215:22, 227:9,
233:8, 233:13
**account**
204:4
**accuracy**
207:23
**accurate**
51:19, 53:9,
263:1
**accurately**
53:9, 197:24

**accused**
121:7, 121:15,
131:1, 142:1
**accusing**
122:13, 131:7
**acquainted**
93:6
**act**
180:3, 210:18
**active**
18:10
**activities**
21:17
**acts**
35:10
**actual**
14:11, 57:22,
91:19
**actually**
33:7, 36:20,
57:1, 57:14,
58:4, 59:13,
67:24, 70:1,
107:6, 107:7,
121:15, 152:23,
153:8, 153:15,
153:19, 206:20,
212:13, 217:19,
253:13, 255:12
**add**
40:3, 54:8,
106:7
**additional**
42:4, 86:15,
150:9, 183:2
**additions**
207:20
**adjective**
66:15
**administer**
8:14
**admits**
87:18
**admitted**
192:19, 193:2,
225:4
**admitting**
203:23

**adriana**
43:24, 44:6,
45:1, 114:22,
118:20, 149:16,
149:21, 150:10,
150:16, 150:21,
151:1, 151:11,
159:8, 159:16,
159:21, 160:13,
162:13, 162:16,
168:23, 169:7,
169:19, 169:20,
170:6, 170:7,
171:9, 171:19,
172:10, 172:12,
173:23, 174:1,
175:5, 175:18,
175:23, 176:21,
177:13, 185:2,
191:1, 191:12,
191:16, 192:3,
192:8, 192:18,
193:1, 193:18,
194:8, 195:2,
195:6, 195:16,
196:19, 197:18,
198:8, 198:14,
198:20, 206:4,
207:17, 207:24,
209:2, 219:23,
221:11, 224:21,
224:24, 225:4,
225:20, 227:14,
245:10, 245:12,
245:14, 250:12,
262:12, 263:11
**advance**
132:9
**advice**
79:7, 99:17,
99:18, 99:19
**affirmative**
194:2
**affixed**
265:15
**after**
15:18, 53:4,
80:19, 81:4,

83:4, 86:14,
86:18, 89:17,
90:8, 93:8,
99:2, 99:10,
103:13, 109:4,
123:13, 124:13,
154:19, 158:18,
168:19, 178:5,
204:6, 207:7,
225:18, 229:17,
230:22, 231:23,
241:11, 243:3,
243:20, 244:14,
245:1, 254:1,
259:12, 260:12,
261:6
**afterward**
222:5
**against**
142:1, 142:14
**ago**
109:16, 156:18,
170:24
**agree**
32:16, 33:2,
33:9, 68:13,
71:3, 165:4,
166:10, 168:9,
170:15, 175:16,
177:4, 194:20,
204:21, 208:24,
224:18, 233:9,
239:8, 245:16,
251:4, 255:11,
255:18, 259:3,
261:9
**agreed**
169:21, 170:10
**agreement**
170:11, 170:17,
171:2
**ahead**
18:2, 19:1,
21:14, 25:9,
26:13, 27:9,
29:8, 34:16,
37:14, 38:12,
38:19, 49:18,

56:16, 94:18,
122:4, 133:15,
145:12, 147:13,
150:7, 151:21,
154:7, 154:14,
156:5, 165:24,
169:8, 170:1,
171:1, 177:6,
207:21, 211:21,
212:5, 215:2,
225:9, 255:23,
257:1, 258:3,
260:20
**ajar**
214:22
**al**
1:8, 1:14, 8:5,
8:7, 9:24
**alibi**
58:11, 120:5
**alibis**
115:5
**alleged**
120:8, 120:11
**alleges**
121:2
**alleging**
121:13
**allowed**
22:12, 105:3
**almost**
80:6
**alone**
39:17, 150:16,
171:23, 172:3,
172:17, 173:3,
175:23, 176:1,
197:10, 249:10
**along**
11:13, 11:14,
11:22, 12:2,
12:6, 12:16,
92:6, 147:24,
161:24, 175:18
**already**
50:10, 59:19,
59:21, 72:16,
86:19, 87:7,

98:1, 106:2,
107:3, 117:5,
126:19, 142:8,
144:17, 144:21,
145:13, 148:1,
148:2, 187:23,
189:8, 191:17,
229:8, 231:11,
233:9
**also**
6:11, 12:3,
35:4, 43:15,
51:12, 59:11,
60:3, 93:18,
99:10, 100:4,
108:12, 108:13,
133:15, 141:3,
141:6, 142:5,
157:23, 158:5,
158:12, 176:6,
182:3, 193:5,
198:13
**always**
49:20, 104:13,
199:20, 256:5
**amendment**
86:11
**amount**
155:24
**ana**
17:13, 18:11,
18:13, 18:17,
18:24
**analysis**
60:17
**anand**
3:4, 8:15,
42:12, 86:24,
107:21, 155:7
**andrew**
8:24, 155:8
**anna**
2:1, 2:14,
8:11, 175:11,
265:2
**another**
28:1, 38:22,
42:16, 88:7,

88:8, 88:9,
99:20, 122:6,
129:17, 145:16,
156:8, 175:10,
184:23, 194:3,
205:20, 216:1,
231:22, 232:21,
257:13
**answer**
10:14, 10:20,
31:14, 36:15,
38:21, 38:23,
39:3, 39:7,
39:8, 39:12,
39:23, 42:19,
45:7, 47:2,
51:16, 51:21,
52:9, 73:13,
73:17, 74:5,
91:13, 96:13,
97:21, 97:23,
97:24, 122:9,
123:23, 127:21,
152:20, 165:22,
180:12, 181:14,
212:5, 216:11,
217:8, 249:17,
251:2, 256:1,
257:2, 262:14,
262:19
**answered**
22:10, 23:19,
32:11, 32:20,
35:1, 35:6,
45:19, 46:4,
46:11, 46:18,
49:8, 49:13,
51:17, 51:22,
54:9, 56:18,
66:16, 68:16,
72:16, 73:7,
73:9, 73:10,
75:22, 81:19,
84:14, 94:19,
95:10, 99:7,
100:17, 101:20,
102:1, 102:6,
104:2, 105:14,

105:17, 111:15,
113:24, 116:16,
118:6, 118:24,
128:13, 129:17,
141:17, 148:21,
153:2, 158:1,
158:20, 159:3,
164:22, 165:21,
170:23, 198:3,
221:15, 232:4,
232:23, 233:4,
252:24, 255:21,
258:1, 260:5,
260:16, 260:22
**answering**
73:7, 73:15
**answers**
10:5, 16:7,
23:6, 38:9,
123:19, 124:22,
197:21, 198:1
**anticipate**
123:22
**anybody**
36:20, 52:4,
122:1, 123:13,
128:8, 172:2,
176:18, 188:14,
220:13, 230:9,
235:22, 241:5,
249:13
**anymore**
73:22, 129:20,
206:10
**anyone**
22:24, 120:12,
125:16, 189:22
**anything**
22:8, 40:20,
40:21, 56:20,
80:13, 108:14,
111:3, 112:3,
119:14, 119:20,
139:9, 143:24,
154:23, 155:24,
179:7, 188:15,
221:10, 221:20,
224:19, 225:17,

228:2, 230:15,
239:24, 240:1,
259:12, 261:14
**anytime**
60:18, 83:24,
127:22
**anyway**
254:7
**anywhere**
17:14, 102:15,
237:5, 237:13,
239:12
**apartment**
192:20, 193:2,
214:3, 214:9,
214:10, 214:13,
214:18, 214:19,
219:8, 219:10,
225:5, 245:15,
250:13
**apparent**
130:17
**appeared**
180:5
**appears**
141:6, 154:18,
154:22, 199:14,
203:22, 237:4,
239:6
**applies**
10:12
**appraised**
82:14
**appreciate**
39:1, 110:12,
123:22, 174:18
**appropriate**
228:4, 233:19
**approval**
155:1
**approve**
75:4, 75:8,
75:14, 76:9,
92:10, 94:8,
95:20, 199:12,
243:5
**approved**
86:1, 154:4,

154:18, 154:19,
155:5, 155:13,
155:17, 156:15,
156:20, 158:13,
199:9, 243:21,
244:15, 244:24
**approves**
158:8, 158:10
**approving**
158:4
**approximately**
154:19, 200:17
**april**
16:12, 16:15,
16:22, 21:1,
21:6, 22:9,
119:7, 127:8,
149:14, 151:2,
152:2, 152:5,
155:5, 155:10,
155:17, 155:21,
156:8, 162:4,
162:11, 168:9,
169:18, 171:4,
171:11, 172:8,
175:3, 175:23,
176:4, 179:15,
182:6, 183:22,
184:6, 185:15,
185:23, 186:24,
190:13, 199:14,
199:15, 199:16,
200:2, 225:24,
226:21, 229:2
**aranda**
127:4, 131:12,
131:17
**aranda's**
127:9
**area**
11:9, 11:11,
11:12, 82:13,
102:16, 102:18,
111:14, 113:14,
113:23, 115:12,
115:17, 116:5,
116:9, 117:9,
121:5, 121:23,

137:4, 137:5,
138:13, 140:9,
149:17, 162:13,
162:18, 166:22,
171:6, 172:9,
175:6, 182:7,
183:24, 185:18,
186:8, 186:18,
190:14, 196:20,
226:2, 226:22,
229:4
**areas**
114:14
**aren't**
115:19
**argumentative**
29:7, 72:17,
199:17, 238:2
**around**
244:1
**arrived**
94:9, 96:19,
97:3, 155:9,
226:22, 227:10,
227:12, 227:24,
228:13
**arrives**
89:16, 89:17
**arriving**
95:13
**arthur**
218:15
**arturo**
1:5, 8:4, 8:16,
44:14, 114:24,
115:5, 181:18,
183:23, 184:2,
184:4, 184:8,
184:19, 185:4,
192:20, 193:3,
198:21, 201:17,
202:8, 203:16,
204:7, 204:11,
204:16, 205:16,
205:18, 207:4,
207:10, 208:3,
208:13, 209:11,
209:22, 212:1,

212:10, 212:16,
213:3, 213:6,
213:13, 213:22,
215:5, 215:17,
215:21, 215:24,
216:18, 216:20,
216:21, 216:24,
217:2, 217:4,
217:20, 218:1,
218:2, 218:4,
218:7, 218:13,
220:6, 220:12,
225:5, 226:2,
226:14, 227:14,
229:3, 229:7,
230:21, 231:5,
231:10, 231:22,
235:8, 237:2,
238:14, 251:4,
251:12, 251:15,
252:3, 252:7,
255:11, 255:19,
256:21, 257:15,
257:18, 257:23,
258:20, 259:8,
259:11, 262:1
**asa**
155:8, 226:22,
226:23, 226:24,
261:23, 262:2,
262:9, 262:18
**asa's**
261:20, 262:21,
263:14
**aside**
23:8, 55:22,
69:22, 92:18,
213:12
**asked**
22:10, 23:18,
24:12, 32:11,
32:20, 35:1,
35:6, 45:19,
46:4, 46:11,
46:17, 49:7,
49:13, 54:9,
56:18, 66:14,
66:16, 68:16,

72:16, 75:22,
81:19, 84:14,
94:19, 95:10,
99:7, 100:17,
100:19, 101:20,
102:1, 102:6,
104:2, 104:18,
104:20, 104:23,
105:4, 105:6,
105:14, 105:17,
111:15, 113:24,
116:16, 118:6,
118:24, 122:8,
128:13, 129:14,
135:10, 138:17,
138:22, 141:17,
148:21, 153:2,
158:1, 158:20,
159:3, 164:22,
165:21, 167:7,
169:19, 170:23,
197:20, 198:3,
202:12, 202:18,
202:19, 206:17,
210:17, 218:14,
221:15, 230:17,
232:4, 232:23,
233:4, 235:8,
248:19, 252:11,
252:23, 255:21,
258:1, 260:16,
260:22, 263:10

**asking**
22:17, 24:21,
37:12, 40:15,
40:22, 40:23,
41:3, 52:12,
60:3, 60:22,
61:5, 62:5,
62:6, 72:23,
73:12, 74:17,
75:19, 91:11,
96:24, 97:1,
97:7, 99:1,
99:17, 99:19,
103:7, 103:8,
105:1, 132:4,
145:4, 147:18,

151:17, 151:18,
154:5, 154:16,
163:6, 164:15,
164:16, 165:9,
173:2, 201:21,
202:11, 205:21,
210:16, 213:20,
215:6, 215:7,
216:15, 248:7,
248:11, 248:12,
248:14

**aspects**
104:10

**assess**
60:17, 118:4,
169:2, 197:23

**assessing**
65:20, 68:8,
68:10, 121:14

**assessment**
65:14, 68:12

**assigned**
18:16, 21:12,
21:24, 22:3,
22:4, 76:16,
112:5, 132:20,
138:5, 141:16,
143:15, 143:18,
144:2, 173:6,
226:20, 238:7,
248:24

**assist**
178:8

**assistant**
228:23

**assisted**
179:9

**assisting**
28:24

**associated**
158:12

**assume**
10:15, 83:22,
112:3, 131:7,
167:8, 169:20,
170:9, 172:23,
173:2, 249:1,
249:9, 249:11,

255:5

**assuming**
111:1, 112:1,
141:2, 178:16,
189:11, 233:5,
253:10

**assumption**
169:24, 200:3,
200:5

**attached**
7:7

**attempts**
126:12

**attention**
19:20, 20:19,
21:2, 65:9,
182:18

**attorney's**
5:6, 75:11,
75:18, 77:4,
77:15, 98:8,
98:10, 98:18,
101:7, 101:13,
228:9, 228:22

**attorneys**
75:13, 75:20,
75:24, 77:6,
78:14, 84:8,
86:4, 91:21,
92:8, 92:9,
92:22, 93:12,
93:14, 93:18,
94:5, 94:14,
96:4, 96:18,
99:24, 102:2,
102:8, 102:19,
103:20, 111:6,
111:14, 112:5,
112:12, 112:18,
112:21, 113:3,
113:7, 113:12,
132:5, 227:1,
228:24

**available**
28:5, 28:18,
94:21, 94:23,
227:1

**avenue**
3:15

**aware**
26:4, 26:11,
27:4, 55:23,
56:3, 56:6,
56:11, 57:6,
57:11, 99:24,
100:4, 120:7,
126:23, 131:22,
179:5, 185:10

**away**
15:4, 88:13,
108:20, 211:2,
211:6

**awhile**
156:7

**B**

**ba**
61:6

**babies**
214:11, 235:23,
236:2, 236:3,
261:4

**baby**
209:20, 209:21,
210:3, 210:24,
211:7, 211:8,
212:9, 213:2,
213:3, 213:7,
213:14, 213:23,
214:12, 214:16,
215:5, 215:18,
215:21, 215:23,
245:11, 245:12,
255:8, 259:13,
260:12

**baby's**
209:24, 211:13,
211:14, 212:10

**back**
29:19, 29:20,
31:15, 42:17,
42:21, 42:23,
50:6, 50:8,
55:20, 57:22,
72:3, 74:5,
75:1, 82:21,
82:22, 90:10,

91:11, 93:2,
93:14, 97:12,
97:16, 97:18,
98:11, 104:12,
106:11, 106:12,
112:20, 113:18,
114:8, 119:21,
122:8, 122:10,
126:19, 129:9,
129:11, 140:2,
140:24, 145:24,
151:13, 152:12,
162:6, 162:9,
163:19, 163:20,
182:5, 189:14,
190:7, 193:9,
202:1, 202:2,
202:12, 203:9,
205:2, 205:22,
207:4, 207:12,
211:17, 213:4,
214:4, 214:5,
214:10, 214:12,
214:13, 214:16,
214:20, 214:21,
214:23, 215:1,
215:23, 215:24,
221:3, 232:1,
232:2, 233:5,
236:9, 236:19,
241:11, 241:15,
241:19, 241:21,
241:23, 242:4,
242:6, 242:10,
242:11, 242:15,
242:17, 242:19,
243:4, 244:18,
245:9, 251:24,
254:5, 254:9,
254:11, 257:21,
259:5
**backwards**
166:6
**bad**
50:11
**baroni**
4:5
**bartik**
172:11

**based**
16:7, 43:21,
45:16, 45:24,
46:16, 47:16,
51:4, 52:22,
64:11, 71:23,
110:19, 114:13,
126:2, 126:4,
126:8, 151:19,
153:23, 163:12,
164:18, 165:16,
167:13, 168:8,
168:12, 168:22,
169:11, 172:16,
184:7, 186:1,
187:7, 188:21,
192:7, 195:15,
197:2, 197:10,
198:7, 203:4,
204:3, 209:1,
215:13, 228:2,
246:3, 246:5
**basic**
263:4
**basically**
14:20, 18:14,
52:1, 114:15,
120:2, 132:11,
134:12, 135:11,
141:12, 141:24,
159:15, 160:19,
178:2, 183:12,
201:12, 203:12,
203:18, 204:11,
208:1, 208:12,
220:5, 224:24,
234:15, 241:15,
242:15, 245:24,
250:21, 251:12,
253:21, 259:20
**basis**
92:11
**bates**
7:11, 7:12,
161:9, 194:19,
194:22
**bathroom**
12:1, 12:19

**bathrooms**
13:3, 13:4
**bearing**
38:2
**beat**
18:15, 117:21,
196:3, 238:7
**became**
153:11, 178:5
**because**
15:11, 38:8,
40:17, 41:10,
41:12, 41:16,
52:6, 57:6,
58:2, 85:4,
86:19, 95:19,
104:21, 105:7,
106:1, 107:3,
112:17, 114:6,
122:12, 124:7,
148:4, 156:7,
169:16, 185:5,
197:6, 197:13,
198:16, 200:6,
209:22, 215:11,
217:14, 222:24,
230:19, 231:18,
249:12, 249:22,
251:23, 251:24,
253:22, 258:11,
260:3, 261:8,
262:10
**become**
93:5, 120:7
**bedroom**
214:4, 214:10
**beef**
93:23
**been**
9:11, 17:6,
17:9, 19:17,
34:3, 39:11,
47:17, 58:4,
72:16, 80:19,
84:1, 109:9,
114:15, 115:8,
116:19, 124:8,
134:3, 142:4,

143:1, 144:16,
144:20, 145:6,
145:13, 146:12,
146:17, 153:13,
157:3, 157:8,
158:13, 158:19,
163:8, 169:1,
169:10, 172:10,
178:6, 179:10,
180:15, 181:21,
183:13, 187:23,
188:4, 189:13,
191:16, 191:20,
196:23, 198:6,
201:23, 202:21,
203:6, 209:4,
214:8, 215:22,
218:14, 223:4,
227:13, 228:4,
228:10, 233:6,
233:19, 236:8,
242:3, 243:21,
244:15, 245:1,
246:20, 248:11,
248:12, 249:6,
252:9, 253:11,
259:17, 260:8,
260:14
**beer**
93:22, 94:1
**before**
2:14, 38:24,
42:19, 51:8,
51:15, 52:23,
53:8, 61:1,
61:18, 71:20,
79:19, 80:2,
80:13, 81:24,
87:21, 89:8,
89:15, 90:11,
90:16, 90:22,
91:7, 91:12,
91:13, 97:9,
99:5, 106:9,
107:13, 108:4,
112:20, 127:21,
129:10, 129:15,
134:23, 145:8,

146:12, 146:13,
159:2, 175:9,
177:3, 179:15,
179:19, 191:11,
202:7, 202:21,
206:10, 209:7,
212:18, 216:11,
217:8, 217:12,
218:12, 221:22,
234:9, 239:16,
239:21, 246:7,
246:10, 246:18,
246:20, 247:10,
247:12, 247:13,
250:10, 256:4,
265:4

**began**
186:10, 186:13

**begin**
121:19

**beginning**
20:23, 77:21,
150:19

**begins**
159:8, 175:2,
175:3, 178:4,
185:15, 190:13,
221:6, 226:18,
245:5

**behalf**
3:3, 3:11, 4:3,
4:11, 5:3, 5:11,
6:3, 9:2

**being**
20:19, 21:2,
23:23, 25:5,
25:15, 26:14,
46:1, 47:17,
71:20, 82:5,
104:22, 118:5,
124:16, 132:20,
134:15, 138:16,
138:17, 143:18,
144:1, 145:20,
148:8, 149:3,
158:18, 160:14,
188:2, 192:19,
193:2, 193:16,

194:3, 197:4,
197:8, 197:15,
198:5, 221:10,
221:18, 222:9,
225:5, 262:3

**belated**
114:5, 132:12

**belief**
141:21, 177:21

**believe**
12:19, 12:22,
15:17, 16:18,
19:18, 21:13,
22:7, 30:11,
30:17, 46:2,
67:19, 67:22,
108:22, 109:23,
110:9, 111:10,
116:21, 118:15,
118:21, 119:18,
120:18, 124:21,
126:2, 126:17,
126:19, 128:18,
129:16, 131:8,
132:3, 132:19,
133:9, 140:17,
140:18, 141:18,
148:2, 154:2,
160:22, 161:19,
166:2, 174:21,
176:3, 180:19,
181:4, 182:3,
185:23, 187:23,
190:22, 193:10,
196:22, 198:2,
198:16, 198:24,
203:9, 205:6,
211:12, 212:8,
218:6, 220:12,
220:19, 222:7,
222:9, 226:5,
231:14, 238:13,
239:24, 240:2,
240:15, 241:21,
262:22

**believed**
115:8, 116:19

**below**
219:21

**best**
58:8, 74:14,
126:22, 196:21,
198:12, 220:3

**better**
58:11, 92:6,
92:16, 106:5,
124:21, 173:2,
253:11

**between**
82:7, 91:20,
97:7, 219:10

**beyond**
39:10, 42:5

**biebel**
4:13

**big**
232:15

**bigger**
232:8, 232:18

**bins**
115:19

**bit**
21:5, 125:2,
134:16, 167:6

**black**
212:16

**blackboard**
48:20, 48:21,
49:6, 49:22,
50:15, 53:16,
54:1

**blah**
39:21

**blame**
234:2, 234:3

**blaming**
234:1

**blanket**
209:23, 211:13,
212:9, 213:2

**blew**
209:23

**blood**
207:7

**blowing**
211:13

**blown**
212:9

**blue**
212:17

**bodies**
258:13

**body**
148:17, 238:10

**bogart**
250:13, 250:14,
250:15, 250:18,
250:19, 250:20,
250:21, 250:22,
251:5, 251:8,
251:10, 252:4,
252:6, 252:8,
252:12, 252:18,
252:20, 253:2,
253:11, 253:15,
253:21

**book**
17:18, 17:20,
17:22, 18:6

**booking**
160:21

**books**
18:8, 18:9

**both**
52:22, 141:12,
173:7, 189:6,
228:13

**bottom**
58:22, 140:20,
159:8, 159:13,
176:20, 177:7,
177:16, 199:5,
207:11, 212:15,
216:8, 216:17,
216:19, 242:17,
257:20

**box**
140:20, 141:10

**boy**
213:4, 216:1,
216:19, 217:1,
217:4, 217:5,
218:2, 218:3,
218:4, 218:13,
218:16

**break**
10:18, 10:21,

10:23, 11:2,
74:21, 74:24,
137:21, 139:21,
140:1, 189:20,
189:23, 190:6,
236:13, 236:18
**breakfast**
207:8, 207:9
**brener**
5:5, 7:4, 8:23,
78:11, 79:15,
79:23, 80:4,
81:9, 82:11,
85:9, 86:8,
86:16, 86:24,
87:4, 91:24,
92:5, 96:7,
96:23, 98:21,
99:8, 99:13,
100:10, 101:8,
101:15, 103:16,
104:19, 107:15,
108:21, 109:1,
109:6, 110:21,
111:9, 111:15,
113:1, 113:16,
139:18, 227:23,
233:22, 261:17,
261:19, 261:21,
261:22, 263:18
**briefly**
151:6
**bring**
69:14, 106:24,
130:7, 135:15,
135:17, 135:19,
136:3, 138:9,
138:17, 139:2,
139:7, 208:8,
208:9, 234:9,
234:11, 234:16
**bringing**
167:3, 246:17
**brought**
29:10, 115:20,
162:12
**brualdi**
5:3, 8:24,

226:24
**building**
232:7, 262:20
**burglary**
69:16, 88:15
**burns**
5:12, 5:13,
9:2, 54:16,
75:15, 76:3,
98:22, 100:11,
100:17, 100:24,
101:9, 101:16,
103:18, 104:3,
113:24, 227:5,
227:16, 227:22,
228:7, 228:20,
233:12, 263:19
**bus**
207:15
**busy**
113:19

---
**C**
---
**cabinet**
243:19, 244:4
**cabinets**
244:10
**call**
28:17, 28:19,
28:21, 54:19,
76:17, 84:15,
84:19, 84:21,
85:1, 86:2,
112:2, 115:11,
161:15, 166:19,
187:13, 187:15,
187:16, 188:6,
207:8, 207:10,
207:13, 228:22
**called**
40:18, 76:1,
76:8, 76:22,
77:8, 78:15,
80:19, 81:14,
84:1, 86:14,
86:18, 87:9,
89:5, 91:7,
93:17, 94:7,

94:10, 95:22,
98:10, 115:9,
139:14, 164:12,
187:12, 196:22,
209:19, 262:22
**calls**
16:2, 16:6,
61:4, 61:15,
61:22, 62:16,
62:21, 63:7,
64:7, 64:17,
64:24, 66:20,
68:18, 69:1,
70:8, 70:21,
72:6, 72:15,
74:4, 74:12,
76:5, 76:11,
77:2, 77:11,
77:18, 78:9,
78:19, 79:4,
82:11, 83:15,
84:4, 85:11,
86:9, 87:13,
90:1, 92:1,
95:17, 108:6,
116:19, 138:3,
145:10, 166:13,
168:5, 169:14,
183:18, 188:12,
228:23, 242:22,
253:17, 256:3,
259:18
**came**
61:5, 71:1,
92:15, 94:5,
96:5, 112:12,
115:21, 124:9,
126:17, 182:7,
187:1, 202:10,
202:17, 205:22,
207:4, 215:24,
216:1, 245:9
**can't**
23:3, 23:4,
23:5, 40:1,
40:5, 48:21,
49:19, 71:22,
90:2, 90:5,

90:6, 95:19,
96:13, 97:24,
103:3, 122:12,
128:7, 133:18,
133:20, 133:22,
133:24, 144:23,
145:2, 148:14,
151:4, 153:12,
154:13, 156:2,
163:7, 164:7,
164:8, 164:14,
166:8, 167:5,
167:9, 171:2,
174:10, 176:18,
179:17, 189:3,
203:1, 212:20,
222:21, 222:22,
222:23, 225:16,
233:6, 233:17,
235:4, 235:24,
239:11, 239:18,
239:23, 240:21,
241:3, 242:1,
250:17, 251:11,
251:22, 254:16,
262:3
**cappatelli**
199:10, 199:23,
241:22, 242:4,
242:7, 242:10,
242:12, 242:16,
242:20, 243:4,
243:21
**car**
115:16, 115:17,
115:20, 115:24,
116:5, 116:9,
116:14, 213:8,
213:11, 213:12,
215:5, 215:18,
215:20, 245:14,
250:12
**care**
217:3, 218:3,
218:13, 254:7,
254:9
**career**
67:18, 103:22,

121:23
**carefully**
195:10
**caroline**
4:14, 9:6
**cases**
20:10, 20:14,
21:9, 21:12,
21:20, 21:24,
22:13, 27:11,
67:18, 68:3,
74:9, 75:5,
77:20, 85:17,
112:4, 156:7,
201:6, 258:11
**castle**
2:1, 2:14,
8:11, 265:2
**catch**
156:8
**catherine**
6:4, 9:4
**cause**
46:1
**caused**
167:24
**cb**
7:10, 161:10
**center**
5:7, 141:10
**certain**
104:9, 124:12,
156:7, 244:7
**certainty**
200:2
**certificate**
265:1
**certified**
2:15, 172:11,
265:3
**certify**
265:5
**chain**
23:5, 23:9
**chair**
110:17
**challenge**
66:24

**challenges**
181:24
**chance**
159:13, 177:11,
237:10, 257:13
**chances**
52:7
**change**
68:2, 244:24
**changed**
244:14, 245:1
**changes**
166:2
**changing**
210:22
**charged**
120:16, 120:17,
141:23, 254:2
**charges**
75:4, 75:9,
75:14, 75:17,
76:9, 83:17,
84:12, 84:20,
85:1, 85:5,
86:1, 90:9,
92:10, 94:8,
95:20, 142:13,
155:5, 155:13,
155:16, 156:15
**charity**
174:19
**check**
79:20, 80:12,
81:23
**chicago**
1:19, 2:7, 3:8,
3:17, 4:8, 4:18,
5:8, 5:16, 6:3,
6:8, 7:10, 8:6,
8:8, 9:5, 20:4,
56:10, 161:10
**children**
160:14, 178:7,
220:1
**choose**
100:15
**city**
6:3, 8:6, 9:5

**clarification**
106:2
**clarify**
86:24, 106:4,
107:3, 107:7
**clark**
6:6
**classification**
196:2, 238:6
**clean**
123:19, 124:22
**clear**
37:1, 37:12,
39:21, 41:7,
73:13, 91:3,
95:18, 146:5,
194:21, 234:8,
234:12, 251:3,
260:7
**cleared**
9:14, 112:10,
112:14, 126:19,
140:6, 140:10,
140:14, 141:20,
141:23, 142:6,
142:11, 142:19,
143:8, 146:6,
146:8, 146:14,
146:20, 147:10,
147:18, 148:3,
155:20, 156:19,
157:11, 157:16,
157:22, 158:11,
158:18, 165:16,
168:8, 203:4,
238:1, 249:1
**clinic**
207:7, 245:12
**closed**
9:14, 112:10,
112:15, 115:20,
140:6, 140:10,
140:14, 141:20,
142:6, 142:12,
142:19, 143:8,
145:23, 146:6,
146:8, 146:14,
146:20, 147:10,

147:18, 148:3,
155:20, 156:19,
157:11, 157:16,
157:22, 158:11,
158:18, 165:16,
168:8, 203:4,
238:1, 249:1
**closer**
65:21
**closing**
95:18, 156:9,
156:13, 157:19,
182:15, 222:20
**clothes**
235:20, 235:24,
236:4, 236:6
**club**
93:17, 93:18,
94:3
**collect**
38:13
**collins**
162:11, 163:9,
163:24
**come**
22:5, 28:22,
58:11, 75:14,
75:16, 85:2,
86:4, 87:21,
92:10, 104:12,
112:5, 112:18,
117:16, 135:5,
213:4, 215:23,
216:2, 221:2,
235:19, 250:22
**comes**
42:4, 79:1,
109:4
**coming**
87:24, 92:22,
96:20, 189:6,
205:1, 232:15
**comitted**
236:4
**comma**
184:22
**command**
14:21, 23:5,

23:10
**commander**
11:20
**commander's**
13:1, 13:10,
13:15, 13:16,
14:5, 14:6,
14:11, 14:14,
14:16
**commit**
55:19, 56:13,
57:15
**committed**
32:15, 35:23,
37:20, 43:4,
43:14, 116:20,
131:2
**committing**
131:1
**common**
28:11, 86:13,
107:10, 134:18,
173:10, 173:18
**commonly**
98:18
**communicate**
34:21, 181:6,
181:11, 189:6,
248:8
**communicated**
98:4, 145:22,
148:19, 159:23,
165:5, 167:17,
167:20, 167:23,
173:12, 180:22,
188:2, 188:4
**communicating**
180:10
**communication**
82:6
**compare**
59:8, 59:19
**comparing**
60:24
**complete**
122:9, 169:4,
241:13
**completely**
123:17, 172:12

**completeness**
169:5
**compound**
32:18, 50:19
**computer**
152:9, 152:13,
152:14, 152:15,
153:6, 153:7,
153:11, 153:13,
153:22, 160:24
**computer-generat-
ed**
153:23
**concept**
55:12, 56:5
**concludes**
263:24
**conduct**
22:12, 22:21,
22:24, 23:16,
24:17, 25:13,
27:16, 29:2,
29:16, 30:8,
30:19, 60:9,
61:12, 79:19,
86:15, 87:10,
116:22, 118:22,
122:16, 163:2,
164:19, 178:23,
191:15, 231:22,
232:21
**conducted**
25:3, 26:5,
50:13, 52:22,
58:23, 85:7,
86:21, 109:4,
111:2, 117:1,
119:9, 124:19,
149:15, 149:22,
150:15, 159:16,
159:21, 160:1,
162:22, 163:11,
163:14, 175:4,
175:18, 175:20,
175:22, 183:23,
184:9, 185:11,
185:16, 186:3,
196:18, 200:12,

201:4, 219:14,
226:1, 226:7,
226:13, 227:20,
229:3, 229:16,
230:4, 230:8,
240:4, 240:17,
247:11
**conducting**
56:9, 56:22,
57:12, 61:2,
179:11, 183:13
**confer**
113:9, 261:10
**conference**
54:19, 229:4,
232:6
**confess**
55:18, 56:13
**confession**
60:17, 60:23,
60:24, 89:4,
89:13, 89:20,
90:8, 90:20,
246:23
**confessions**
55:12, 56:4
**confront**
64:13, 69:15,
221:3
**confrontational**
91:23
**confused**
231:12, 234:15,
234:17
**confusing**
89:23
**connelly**
6:5
**consent**
171:5, 171:12
**consider**
128:8, 128:20,
131:12, 168:20
**considered**
19:22, 127:13,
127:20, 128:8,
128:10, 128:14,
131:18

**consistent**
33:6, 37:6,
37:21, 38:5,
43:4, 59:20,
60:6, 60:8,
61:20, 90:22,
159:24, 178:11,
253:13
**constant**
77:14
**constantly**
65:14
**construction**
245:6, 245:8
**consult**
98:19, 98:24,
99:14, 99:15,
99:17, 99:20,
111:20, 112:20
**consults**
99:5
**contact**
77:3
**contacted**
226:19
**contain**
44:7, 165:7,
259:3
**contained**
53:9
**containing**
183:15
**contains**
199:6, 258:19
**contemporaneously**
256:20
**context**
187:7, 188:23,
189:1, 250:11
**continually**
27:7
**continue**
186:10, 187:19
**continued**
178:7, 260:11
**continues**
42:3
**continuing**
41:12, 41:16,

157:13
**contradiction**
217:24
**contradictory**
217:6, 218:5
**contribute**
183:2
**convenient**
111:16
**convention**
134:14
**conversation**
81:15, 193:10,
204:18, 208:6,
212:12, 214:2,
214:7, 216:3,
220:17, 221:17,
221:19, 221:21,
222:1, 235:15,
246:2, 246:6,
246:12, 246:15,
246:20, 247:9,
248:19, 252:1,
260:8, 260:10
**conversations**
193:22
**convey**
231:5
**conveyed**
160:3
**cook**
5:4, 5:6, 9:1
**cop**
117:22
**copied**
137:16, 137:22
**copies**
95:8, 137:11
**copy**
9:13, 9:15,
17:22, 136:2,
136:17, 137:14,
139:2, 139:5,
185:7, 194:20
**corned**
93:23
**corner**
11:19

**correction**
93:15
**correctly**
11:22, 57:24,
65:13, 83:3,
84:18, 109:16,
128:22, 145:20,
148:6, 157:10,
201:20, 213:6
**could**
15:9, 24:17,
24:21, 25:13,
25:19, 25:20,
28:17, 28:19,
29:1, 32:6,
32:12, 32:16,
33:1, 33:8,
33:24, 34:8,
37:15, 42:21,
47:15, 52:1,
55:9, 57:8,
57:13, 58:3,
63:17, 69:2,
71:20, 72:11,
72:23, 73:4,
74:9, 81:21,
86:2, 87:14,
88:2, 90:20,
91:13, 95:18,
97:13, 98:16,
102:15, 105:22,
106:6, 106:10,
106:15, 110:17,
118:8, 122:7,
128:18, 137:20,
138:4, 140:5,
143:13, 150:17,
152:8, 156:6,
156:7, 157:12,
158:24, 164:8,
166:5, 169:3,
173:24, 174:4,
180:13, 188:4,
188:14, 197:10,
200:22, 201:8,
206:11, 211:7,
211:14, 212:10,
214:8, 215:21,

216:2, 227:19,
227:24, 228:1,
231:3, 236:16,
240:8, 242:4,
243:1, 243:5,
243:6, 244:11,
244:14, 244:21,
245:22, 248:8,
249:11, 252:19,
254:5, 260:24
**couldn't**
13:20, 44:11,
55:21, 56:8,
72:19, 119:8,
121:19, 127:11,
134:9, 172:3,
176:1, 187:10,
197:5, 199:1,
200:5, 200:14,
200:15, 201:3,
202:17, 227:6,
228:9, 230:7,
251:9
**counsel**
8:13, 9:12,
9:18, 175:15,
261:10, 261:20,
265:11
**counsels**
261:12
**counts**
261:8
**county**
5:4, 5:6, 9:1,
117:14
**couple**
12:21, 171:4,
204:6, 258:15
**course**
31:22, 35:11,
42:2, 63:12,
64:20, 67:17,
68:22, 69:3,
77:23, 78:7,
98:9, 98:12,
98:17, 103:24,
114:19, 118:1,
119:21, 121:23,

122:19, 134:10,
134:24, 142:4,
143:8, 167:18,
167:24, 204:10,
221:11, 224:20,
257:8, 259:10,
261:19
**court**
1:1, 8:11,
8:14, 10:4,
100:5, 100:8,
100:16, 100:19,
105:8, 118:8,
245:21
**create**
164:21
**created**
183:14
**credibility**
68:10, 68:12,
68:22, 69:7,
69:21, 70:12,
70:15, 70:18,
71:11, 72:12,
73:5, 74:1
**crime**
23:11, 24:17,
25:3, 25:7,
26:21, 32:3,
32:5, 32:15,
32:16, 32:24,
33:7, 33:15,
34:4, 35:10,
35:23, 44:2,
44:8, 44:19,
45:2, 48:4,
48:14, 48:24,
53:16, 54:1,
57:15, 59:17,
59:19, 60:4,
60:7, 61:1,
61:20, 69:15,
73:24, 114:20,
115:8, 115:10,
115:21, 116:20,
120:16, 130:8,
130:9, 130:16,
130:19, 131:2,

131:8, 155:12,
194:4, 208:14,
236:4, 245:18,
258:21, 258:22,
258:23
**crimes**
11:15, 12:17,
12:20, 15:2,
15:23, 44:16,
55:18, 56:13
**criminal**
131:21, 131:22
**cross**
239:20, 240:8,
240:12, 240:24,
241:6, 243:3,
243:11, 243:20
**cross-out**
238:19, 239:16
**crossed**
239:7, 239:10,
239:18, 239:24,
240:3, 240:6,
240:15, 240:19,
241:4, 241:5,
241:24, 242:2,
242:3, 242:21,
242:24, 256:10,
256:12, 256:18
**crossing**
239:24, 244:3
**csr**
2:1
**custody**
21:4, 25:22,
27:13, 78:3,
126:10, 198:21,
198:24
**cut**
122:3, 162:3

**D**

**daffada**
4:5
**daley**
5:7
**damen**
207:15

**daniel**
5:12, 9:2
**danny**
202:18, 225:3,
247:20
**database**
160:11, 160:18,
161:18, 161:22
**date**
152:1, 152:11,
152:15, 152:18,
152:22, 152:23,
153:7, 153:14,
153:18, 153:20,
195:24, 199:12,
238:5, 238:6
**dave**
226:22, 227:6
**david**
227:3
**day**
8:2, 9:22,
16:13, 16:22,
17:2, 17:5,
17:11, 18:15,
21:10, 21:24,
22:5, 31:19,
95:22, 126:5,
171:15, 177:19,
177:22, 182:16,
185:13, 199:20,
202:21, 258:15,
262:16, 262:20,
263:24, 265:15
**days**
16:16, 63:21,
154:19, 154:24
**dealing**
222:20
**dealings**
92:16
**dealt**
92:14, 92:17,
93:5
**december**
1:20, 8:10,
245:6, 245:8,
265:16

**decide**
76:12, 103:9,
109:3, 109:17
**decided**
109:11, 110:13
**decides**
76:8, 76:21,
80:20, 84:11,
105:12
**decision**
72:21, 84:19,
100:12, 100:13,
100:18, 101:1,
101:3, 101:7,
101:14, 101:21,
102:7, 104:5,
166:15
**decision-making**
79:10
**decisions**
79:9, 166:15
**deed**
255:7, 255:10,
255:20
**deemed**
121:12
**defendant**
4:3, 5:11, 6:3,
8:22, 9:3, 9:5
**defendants**
1:9, 1:15,
4:11, 5:3, 9:8,
261:7, 261:20,
261:23
**defense**
92:8, 238:6
**delaney**
8:4, 8:16
**deleon**
183:24, 184:2,
184:19, 226:2,
231:5, 237:3,
238:14
**deleon-reyes**
1:5, 3:3, 9:12,
9:18
**deliberate**
110:5

**delivered**
135:17
**demonstrate**
36:7
**demonstrated**
35:20, 35:22,
37:2, 37:5,
43:3, 43:13
**demonstration**
37:21, 44:1,
44:8, 44:15,
44:19, 45:2,
45:16, 46:2,
46:8, 47:12,
47:15, 47:18,
48:4
**demonstrations**
47:4, 47:21
**demonstratively**
71:13
**denials**
69:22, 69:23
**denied**
162:16, 167:6,
169:6, 193:12,
193:15, 193:18,
225:7
**denies**
69:16
**denim**
212:16
**deny**
69:20
**denying**
69:17, 194:10,
231:6
**department**
20:4, 20:10,
56:11, 134:6,
136:10, 161:10,
199:20
**depend**
37:5, 37:20,
138:21, 261:2
**depending**
237:24
**depends**
23:20, 23:22,

28:5, 32:12,
33:5, 35:19,
36:3, 64:8,
64:10, 71:18,
72:18, 76:6,
87:14, 92:14,
107:23, 111:19,
130:4, 183:20,
220:23, 235:5
**depict**
34:23
**depiction**
48:14, 49:21,
50:3, 50:15,
50:17
**depos**
8:12
**deposition**
1:17, 2:2, 7:9,
8:3, 9:23, 10:3,
11:6, 39:19,
40:1, 40:20,
42:3, 42:8,
119:24, 161:6,
165:17, 195:9,
264:1, 265:5
**depositions**
124:14
**descent**
181:12
**describe**
184:1
**described**
94:16, 140:9
**describes**
155:12
**description**
219:24
**desk**
110:17
**detailed**
124:10
**detective's**
83:5
**detectives**
22:21, 23:1,
23:11, 28:7,
28:12, 75:4,

75:8, 76:17,
77:14, 80:8,
80:11, 81:2,
81:12, 82:8,
84:24, 85:5,
85:16, 86:13,
91:22, 96:6,
96:20, 98:19,
99:5, 101:18,
101:23, 104:13,
106:6, 106:8,
117:21, 118:4,
124:9, 124:13,
128:11, 135:4,
137:14, 138:5,
138:9, 141:16,
149:8, 149:18,
162:13, 162:18,
166:22, 168:1,
168:24, 171:6,
171:13, 173:7,
173:18, 173:19,
174:1, 175:6,
182:7, 182:11,
183:24, 184:13,
184:18, 185:18,
186:8, 186:9,
186:13, 190:14,
190:15, 190:24,
192:3, 192:18,
193:1, 226:3,
226:18, 226:23,
228:14, 229:4,
232:15, 243:18,
244:9
**determination**
46:6, 128:16
**determine**
75:17, 88:14,
88:20, 118:2
**determined**
120:19, 121:1,
128:3, 163:24
**determines**
130:6
**dets**
149:7, 173:13
**developed**
142:4

**developments**
95:21, 143:7
**dialect**
180:14
**dickinson**
4:11, 45:5,
45:11, 45:17,
45:24, 46:15,
47:17, 47:18,
48:3, 48:5,
48:10, 48:12,
48:15, 49:4,
49:11, 49:24,
50:5, 50:13,
50:16, 51:6,
52:21, 53:14,
53:17, 132:24,
133:17, 143:22,
187:22, 189:2,
189:8, 190:24,
195:1, 196:15,
197:3, 197:15,
198:11, 202:19,
202:21, 203:3,
203:5, 205:4,
205:24, 222:4,
222:12, 229:6,
230:21, 231:8,
238:11, 240:15,
240:21, 248:13,
253:3, 259:17
**dickinson's**
45:23, 46:9,
196:13, 199:6,
215:13, 215:16,
223:4, 225:13,
237:2, 238:17
**differ**
221:2
**difference**
37:23, 97:6
**different**
23:12, 66:15,
69:24, 70:16,
73:10, 73:11,
74:15, 77:19,
86:17, 88:18,
102:22, 157:5,

162:6, 164:16,
189:5, 189:7,
204:4, 214:5,
234:19, 234:21,
234:24, 235:4,
257:10
**differently**
166:17
**difficulty**
180:10
**direct**
190:17, 252:17,
256:5, 256:7
**discuss**
112:23, 135:9
**discussed**
140:11, 146:8,
147:10, 165:18
**discussing**
146:20
**discussion**
11:9, 54:20,
175:14, 261:11
**dismissive**
38:14
**dispute**
143:24, 150:14,
150:17, 175:21,
176:9, 206:3,
207:16, 215:14,
215:15, 219:13,
226:12, 229:11,
229:24
**distinction**
72:24
**district**
1:1, 1:2, 28:21
**disturbed**
110:18
**division**
1:3, 92:7,
136:15, 136:16
**document**
31:22, 33:13,
33:16, 34:7,
34:24, 35:12,
35:24, 37:1,
37:4, 37:19,

43:9, 43:18,
128:24, 140:11,
144:4, 151:18,
154:9, 155:4,
159:11, 161:8,
161:12, 161:14,
164:11, 165:10,
194:5, 194:14,
217:12, 223:17,
224:11

**documentation**
50:2, 128:17,
128:19, 210:21

**documented**
127:17, 127:24,
128:12, 129:8,
130:1, 130:10,
130:14, 130:23,
131:4, 131:10,
143:2, 143:3,
143:5, 143:10,
144:13, 144:17,
144:18, 144:21,
145:3, 145:6,
145:13, 145:15,
148:1, 148:2,
148:23, 149:1,
150:11, 164:10,
167:15, 168:2,
172:5, 182:15,
196:19, 221:12,
223:3, 223:15,
223:21, 246:13,
259:11

**documenting**
32:2, 183:7,
195:5

**documents**
114:13, 135:15,
135:16, 135:19,
150:20, 182:13

**doing**
25:21, 25:24,
53:7, 57:5,
57:19, 66:6,
79:6, 87:5,
90:12, 113:8,
119:1, 121:15,

124:24, 166:10,
169:16, 189:17

**done**
36:12, 36:21,
40:8, 40:10,
40:19, 40:21,
41:23, 42:19,
50:17, 73:6,
86:6, 95:19,
115:23, 116:5,
122:7, 138:14,
159:10, 163:22,
164:11, 164:12,
166:5, 166:8,
166:16, 177:7,
243:2, 243:6,
255:7, 255:10,
255:20, 263:22

**door**
13:14, 13:16,
14:13, 14:14,
14:21, 14:22,
214:13, 214:22,
214:23, 214:24,
254:1

**doorway**
15:7

**doubt**
180:16, 192:11,
193:11, 193:23,
207:23, 212:14,
220:19, 235:16,
252:18, 257:4

**doubtful**
245:2, 255:11

**down**
10:5, 12:23,
38:8, 40:22,
45:18, 53:17,
54:17, 63:13,
102:12, 110:24,
111:1, 128:5,
132:7, 133:13,
135:18, 135:24,
139:2, 139:8,
149:3, 149:14,
167:5, 175:1,
187:18, 200:23,

201:1, 201:11,
206:7, 209:18,
212:15, 218:18,
226:17, 230:16,
240:12, 240:13,
245:18, 245:24,
250:9

**downstairs**
28:19

**downtime**
21:16, 21:18

**dozens**
13:22

**drawing**
32:5, 33:14,
34:22, 35:2,
35:5, 35:8,
44:1, 44:8,
44:15, 44:18,
45:2, 45:15,
46:2, 46:8,
46:21, 46:23,
47:3, 47:11,
48:11, 48:14,
48:18, 53:16

**drawings**
46:20, 47:7

**drew**
32:13, 33:5,
33:17

**drink**
11:2, 93:14

**drinking**
93:24

**drinks**
93:8, 93:11

**drive**
5:14

**due**
17:15

**duly**
9:11

**during**
30:4, 31:22,
35:11, 36:5,
42:2, 43:23,
56:9, 62:9,
64:19, 68:22,

69:3, 78:7,
98:9, 98:11,
98:17, 99:23,
103:24, 105:9,
111:21, 114:19,
119:21, 121:23,
122:19, 134:10,
134:24, 135:12,
142:4, 167:18,
167:23, 178:19,
193:6, 193:13,
193:16, 193:20,
207:9, 207:18,
221:11, 224:20,
225:7, 229:6,
235:12, 257:8,
259:10

**dynamic**
91:20

**E**

**each**
78:6, 112:19,
112:22, 113:10,
123:19, 124:13,
124:22

**earlier**
22:4, 47:10,
145:15, 156:19,
178:22, 187:21,
191:23, 201:21,
203:5, 203:19,
223:17, 227:13,
234:8, 247:2,
247:21, 249:23,
262:21

**early**
135:13

**earnest**
69:20

**easiest**
58:8

**easily**
154:17, 165:10,
173:24

**eastern**
1:3

**easy**
199:19

**ed**
222:10, 242:17,
248:17, 253:6
**ed's**
245:23
**eddie**
51:23, 52:6,
192:16, 222:22,
250:19
**eddie's**
52:5, 203:10
**edward**
5:5, 8:23,
8:24, 261:22
**effectively**
181:11
**eight**
146:12, 217:21
**either**
50:3, 50:16,
58:10, 95:20,
135:17, 148:24,
200:16, 220:9,
248:9, 248:21,
252:21
**elapsed**
189:16
**elicit**
106:16
**eliminate**
168:1
**eliminated**
162:17, 166:21,
166:24, 167:10,
167:13, 168:7,
169:3
**else**
17:14, 22:6,
22:24, 27:19,
52:4, 87:22,
88:2, 88:5,
97:1, 97:14,
105:2, 111:3,
117:22, 123:13,
138:1, 145:3,
150:12, 172:2,
176:2, 176:18,
188:14, 188:15,

189:22, 221:10,
221:20, 234:3,
239:12, 243:24,
244:23, 247:6,
249:13, 252:14,
261:13
**else's**
174:8
**employed**
265:11
**end**
16:5, 17:4,
17:8, 69:18,
142:23, 155:13,
196:24, 221:21
**ended**
200:16, 222:2
**engaging**
60:16
**english**
27:17, 31:15,
197:7, 252:16,
256:6
**enough**
74:6, 76:13,
93:5
**entailed**
259:22
**entire**
161:23
**entirely**
111:24, 237:24
**entrance**
13:9
**entry**
214:12
**envelope**
255:5, 255:6
**ernie**
172:24, 176:10,
222:17, 222:18,
222:19
**error**
152:9
**errors**
262:23, 263:15
**especially**
52:2, 130:23

**esquire**
3:4, 3:12,
3:13, 4:4, 4:14,
5:5, 5:12, 6:4
**essentially**
82:17
**et**
1:8, 1:14, 8:5,
8:7, 9:24
**even**
33:23, 51:3,
51:6, 57:20,
80:10, 80:19,
81:4, 82:16,
83:3, 83:24,
86:13, 86:23,
87:23, 88:19,
89:17, 99:2,
99:10, 121:19,
146:13, 170:14,
201:10, 206:17,
211:8, 222:23,
232:20, 247:21,
251:11, 257:18
**evening**
226:24
**events**
211:9
**ever**
20:3, 26:17,
26:20, 27:1,
29:24, 30:2,
30:18, 36:10,
36:17, 56:23,
60:9, 60:24,
87:5, 89:6,
93:11, 93:13,
105:3, 111:20,
112:19, 114:4,
120:12, 125:4,
126:9, 127:13,
127:16, 128:24,
134:15, 139:9,
139:19, 151:9,
179:19, 185:7,
185:9, 208:18,
252:3, 252:5
**every**
27:2, 42:3,

65:20, 74:14,
77:19, 86:17,
128:24, 157:5,
235:4, 245:24
**everybody**
69:20, 91:3,
128:4, 128:14,
128:23, 132:18,
132:19, 133:1,
133:14, 133:16,
133:24, 146:17,
233:24, 244:23
**everything**
77:22, 105:2,
107:7, 228:8,
234:8
**everywhere**
102:15
**evidence**
32:6, 33:2,
33:8, 33:12,
33:13, 34:9,
34:12, 37:6,
37:7, 37:22,
37:23, 43:5,
43:15, 69:5,
70:4, 72:11,
73:4, 116:4,
141:24, 142:3,
142:8, 142:13,
232:24
**evokes**
86:10
**exact**
56:14, 133:24,
251:23
**exactly**
21:13, 35:19,
36:21, 65:2,
71:20, 79:17,
88:14, 103:2,
104:20, 115:23,
117:3, 118:13,
132:14, 134:2,
134:8, 135:1,
136:20, 167:9,
169:16, 170:23,
183:11, 189:3,

200:7, 202:17,
203:1, 216:5,
218:11, 234:20,
234:23, 244:8,
251:17, 253:22,
254:13, 255:8,
255:17, 255:21,
256:1
**examination**
7:2, 9:12,
9:18, 169:21,
261:20
**examined**
172:10
**examiner**
172:11
**example**
71:23, 88:8,
88:9, 88:11,
92:19, 112:9
**exams**
116:22, 117:1,
117:24
**except**
104:14, 208:22
**exception**
157:13
**exclusively**
126:4
**exculpatory**
142:3
**excuse**
16:11, 59:11,
131:11, 186:5
**exhibit**
7:10, 7:11,
7:12, 140:5,
140:8, 140:19,
141:11, 148:7,
161:6, 161:8,
161:12, 161:14,
162:7, 162:9,
162:10, 162:19,
165:6, 182:5,
190:10, 194:18,
194:19, 194:22,
223:23, 224:1,
224:3, 224:14,

224:15, 225:23,
236:7, 236:23,
237:1, 237:10,
250:5, 257:7
**exhibits**
7:9
**existence**
185:10
**expect**
24:5, 24:12,
44:20, 45:3,
45:17, 46:9,
47:24, 48:5,
48:15, 49:4,
50:1, 50:15,
69:19, 127:17,
128:11, 148:9,
148:16, 148:18,
150:10, 157:1,
158:11, 158:17,
167:14, 168:2,
169:1, 169:10,
172:4, 173:5,
183:6, 225:12,
247:12, 249:20,
251:14, 259:16,
259:24, 260:14
**expectation**
163:16, 247:15,
249:5
**expectations**
225:16
**experience**
29:13, 45:11,
45:16, 45:24,
46:16, 47:16,
47:18, 109:8,
188:21
**explain**
12:6, 69:11
**explained**
73:11
**explaining**
260:11
**explains**
205:9
**explanation**
41:22, 165:19,

166:9, 239:15,
240:23
**extent**
31:16
**extra**
9:13, 9:16,
20:19, 21:1

---

**F**

**face**
188:8, 209:24,
211:13
**face-to-face**
187:1, 187:17,
188:5
**fact**
11:12, 16:12,
30:24, 31:7,
50:2, 57:14,
60:12, 61:19,
70:12, 121:11,
143:24, 201:17,
203:15, 223:14,
248:23
**facts**
55:1, 55:6,
57:23, 58:1,
58:9, 58:15,
59:9, 61:7,
61:11, 61:24,
62:2, 63:9,
67:12, 68:13,
68:19, 72:19,
74:15, 74:18,
82:14, 87:15,
89:7, 89:11,
99:20, 106:23
**factual**
57:21
**failed**
172:12
**fair**
10:16, 19:20,
24:7, 24:10,
24:15, 28:13,
34:9, 34:24,
46:10, 51:15,
53:11, 54:3,

58:4, 65:15,
68:23, 69:7,
70:6, 70:19,
72:12, 74:10,
77:6, 78:13,
80:13, 84:1,
93:9, 95:15,
95:24, 96:1,
96:18, 103:22,
148:12, 172:16,
179:3, 192:14,
192:15, 200:20,
263:13
**false**
55:12, 56:4,
57:8, 71:4,
71:13, 195:15,
195:21
**familiar**
124:24, 161:11
**family**
93:20, 126:21,
126:24, 127:4,
127:13, 130:24,
131:13, 131:18
**far**
13:9, 13:14,
14:3, 15:4,
15:22, 23:14,
31:19, 71:23,
71:24, 85:18,
85:20, 105:16,
114:16, 116:12,
129:2, 228:3,
242:7
**farthest**
14:12
**fashion**
158:2
**faster**
156:14
**february**
255:6
**fed**
68:13, 105:2
**feed**
55:1, 58:1,
58:9, 68:19

**feedback**
79:12
**feeding**
55:6, 58:15
**feel**
83:24, 84:16,
174:23
**feeling**
10:24
**feet**
13:22, 14:1,
14:12, 14:23,
15:8, 16:9
**fell**
245:11
**fellow**
93:8
**felony**
75:13, 75:20,
75:24, 78:24,
91:21, 92:9,
92:22, 93:12,
226:19
**female**
245:13
**few**
13:22, 133:23,
216:15, 261:17
**field**
152:11, 152:23,
153:20
**fifth**
39:6, 86:10
**figure**
62:1, 62:4,
63:1, 63:3,
63:9, 63:22,
67:14, 91:17,
174:19, 234:18,
234:20, 234:22
**file**
87:24, 127:18,
128:18, 131:4,
135:23, 136:3,
136:17, 136:22,
136:23, 137:12,
138:18, 138:19,
139:2, 139:5,

139:10, 150:24,
168:3, 243:13,
243:16, 243:19,
244:2
**filed**
178:6
**files**
137:16, 244:5,
244:10
**fill**
17:15, 137:23
**filled**
18:14, 18:20,
19:9, 137:11,
164:9, 196:3,
196:5, 198:6,
198:7, 241:10,
241:15, 241:17,
242:5, 242:10,
242:16
**final**
155:12
**financial**
265:13
**find**
28:17, 38:14,
54:12, 57:17,
58:13, 61:16,
61:19, 63:24,
64:1, 64:4,
68:6, 70:10,
79:24, 81:2,
88:3, 91:18,
195:13, 195:20,
207:24
**finding**
244:2
**fine**
39:12, 189:18,
189:24, 206:18,
210:22, 217:18,
260:21
**finish**
38:23, 39:7,
42:8, 189:17
**finished**
38:8, 38:10,
38:21, 39:2,

39:7, 88:23,
152:16, 177:9,
220:22, 258:9
**firm**
4:15
**first**
14:22, 15:19,
16:10, 69:12,
96:19, 108:18,
108:24, 120:14,
140:21, 141:1,
143:9, 149:16,
149:21, 150:15,
151:10, 151:13,
159:9, 177:3,
183:23, 185:17,
186:6, 190:12,
191:5, 199:2,
210:2, 226:16,
238:15, 250:6,
255:4
**first-name**
92:11
**fit**
40:19, 61:7,
61:11, 61:24,
62:2, 67:12,
234:13
**five**
154:19, 154:24,
212:21, 216:8,
216:21, 232:9,
258:2, 261:23,
263:9, 263:12
**floor**
3:7, 3:16,
11:12, 14:15,
28:20, 113:20
**fluid**
28:10
**focus**
20:12
**focused**
21:10, 142:12,
146:19
**foggy**
196:22
**fold**
162:3

**folks**
92:3, 133:13
**follow**
11:8
**follow-up**
59:12, 59:15,
60:7, 60:9,
61:2, 61:12,
67:15, 81:15,
169:1, 169:11,
202:22, 203:6
**follow-ups**
216:4
**followed**
168:13
**follows**
9:11, 207:14
**food**
10:23, 11:1
**fop**
17:17, 17:20,
17:22, 18:9
**foregoing**
265:4, 265:6
**forgets**
106:23
**forgot**
237:12
**forth**
98:11
**found**
134:13
**four**
73:8, 156:14,
165:23, 216:21,
218:17, 218:18,
232:9, 255:2,
261:23
**frankly**
97:13
**free**
8:14
**fresh**
55:9
**friday**
182:6
**friendly**
91:22, 92:3

| | | | |
|---|---|---|---|
| **friends** | 262:9, 262:18 | 225:13, 228:18, | 171:1, 171:13, |
| 245:10, 245:12 | **general** | 241:11, 248:23, | 172:23, 173:8, |
| **front** | 11:10, 78:13, | 255:5, 262:11, | 177:6, 188:22, |
| 12:18, 13:14, | 92:18, 145:4, | 262:15, 265:7 | 189:19, 197:21, |
| 111:7, 214:8, | 146:1, 146:4, | **gives** | 202:5, 203:9, |
| 224:4 | 147:12, 147:20, | 70:16, 73:23, | 205:2, 205:23, |
| **frustrated** | 147:21, 157:6, | 85:17, 87:19, | 207:5, 207:12, |
| 40:14 | 244:9 | 88:4, 91:2, | 207:21, 211:21, |
| **full** | **generally** | 219:23, 219:24 | 212:5, 213:21, |
| 186:7, 190:12, | 135:3 | **giving** | 215:2, 215:22, |
| 226:17 | **generated** | 63:24, 65:7, | 225:9, 230:21, |
| **fully** | 152:13, 152:14, | 65:15, 88:8, | 233:14, 233:19, |
| 123:22, 192:4, | 153:7, 153:12, | 202:16, 204:4, | 236:1, 237:12, |
| 225:1 | 153:14, 153:22 | 206:4 | 247:8, 248:21, |
| **further** | **getting** | **glance** | 255:23, 257:1, |
| 169:11, 175:1, | 40:14, 57:1, | 51:10, 51:11 | 258:3, 258:14, |
| 206:7, 220:20, | 65:19, 65:21, | **go** | 260:20 |
| 260:11, 263:18 | 77:22, 78:5, | 18:2, 18:24, | **goes** |
| **fusco** | 116:9, 137:15, | 21:14, 25:9, | 12:16, 14:14, |
| 6:5 | 160:23, 217:20, | 25:21, 26:13, | 14:15, 63:8, |
| | 230:1, 245:23, | 26:22, 27:9, | 72:18, 74:5, |
| ___G___ | 246:22 | 29:8, 29:15, | 91:11, 99:2, |
| **gabriel** | **girl** | 34:16, 37:14, | 108:17, 130:4, |
| 1:11, 8:6, | 209:20, 210:3, | 38:12, 38:19, | 135:3, 145:4, |
| 8:18, 8:20, | 210:9, 211:1 | 42:18, 42:21, | 159:9, 176:21, |
| 115:2, 115:5, | **gist** | 49:18, 56:16, | 184:1, 193:9, |
| 185:17, 185:20, | 246:1 | 59:4, 61:8, | 205:8, 207:12, |
| 186:2, 193:13, | **give** | 64:3, 68:7, | 219:22, 219:23, |
| 193:15, 193:19, | 22:5, 30:13, | 70:13, 74:15, | 235:22 |
| 194:10, 198:22, | 31:1, 38:23, | 83:19, 84:17, | **going** |
| 245:14, 250:12, | 75:6, 84:9, | 88:18, 89:18, | 12:13, 12:18, |
| 262:5 | 94:22, 95:3, | 90:20, 91:6, | 26:2, 38:7, |
| **gang** | 95:8, 96:14, | 91:16, 93:8, | 38:13, 41:1, |
| 23:10, 24:17, | 97:24, 98:3, | 93:11, 94:13, | 41:4, 42:1, |
| 25:2, 25:7, | 98:7, 139:7, | 94:17, 99:5, | 64:9, 69:18, |
| 26:21 | 143:11, 145:16, | 104:9, 110:14, | 70:11, 73:12, |
| **garage** | 212:19, 221:1, | 110:16, 114:8, | 74:20, 78:2, |
| 115:12, 115:20, | 224:6, 229:19, | 114:20, 114:22, | 79:9, 79:24, |
| 115:21, 116:1 | 232:13 | 114:24, 115:2, | 80:20, 81:15, |
| **gave** | **given** | 117:13, 122:4, | 83:10, 83:11, |
| 11:10, 37:21, | 30:18, 31:10, | 123:14, 123:18, | 83:16, 83:18, |
| 40:18, 72:20, | 32:21, 32:23, | 128:15, 133:15, | 83:23, 87:20, |
| 74:6, 124:13, | 41:20, 41:22, | 145:12, 147:1, | 90:19, 93:13, |
| 160:1, 160:14, | 67:20, 101:2, | 147:13, 149:13, | 93:23, 96:2, |
| 166:9, 204:7, | 109:20, 128:6, | 150:7, 151:21, | 99:17, 103:10, |
| 222:21, 222:22, | 157:7, 165:22, | 154:7, 154:14, | 107:10, 107:18, |
| 223:15, 225:12, | 186:17, 188:19, | 156:5, 165:24, | 108:2, 109:18, |
| 231:4, 262:1, | 189:11, 197:18, | 169:8, 170:1, | 112:20, 114:5, |

116:2, 117:12,
123:14, 123:23,
132:7, 142:21,
144:11, 144:13,
145:16, 145:22,
146:8, 146:19,
147:10, 149:2,
150:2, 150:3,
150:18, 151:13,
152:12, 154:8,
154:10, 154:11,
156:11, 166:17,
169:23, 173:2,
174:17, 181:24,
182:5, 187:24,
188:11, 189:1,
189:4, 202:14,
205:14, 205:17,
205:19, 207:10,
208:4, 209:9,
210:23, 212:22,
217:4, 218:4,
218:16, 220:23,
221:1, 225:14,
225:18, 229:23,
232:21, 234:16,
234:17, 234:20,
234:22, 246:16,
248:6, 248:9,
249:9, 250:17,
258:10, 259:5

**gone**
117:5, 213:7,
213:13, 213:14,
215:17, 257:12

**good**
9:20, 9:21,
10:21, 11:3,
47:2, 61:8,
217:19

**gotten**
213:14, 215:18,
230:23, 231:11,
231:23, 232:22

**gpr**
7:11, 7:12,
44:5, 44:10,
44:20, 44:22,

45:4, 48:6,
48:16, 48:23,
49:2, 50:18,
50:23, 150:24,
151:9, 183:6,
183:11, 183:14,
188:14, 194:24,
195:8, 195:13,
195:14, 196:19,
198:6, 201:7,
203:13, 206:1,
207:23, 209:2,
215:13, 215:16,
221:8, 223:4,
223:22, 225:18,
237:2, 237:5,
237:13, 239:6,
239:18, 239:22,
240:7, 241:11,
242:1, 244:3,
245:5, 245:23,
246:5, 249:16,
252:20, 253:12,
253:18, 256:23,
256:24, 257:7,
257:12, 257:19,
258:19, 259:11,
259:17, 260:15

**gpr's**
43:23, 44:13,
50:3, 51:23,
52:7, 52:9,
52:15, 52:18,
95:3, 95:6,
95:9, 151:7,
157:2, 157:22,
158:5, 158:12,
158:17, 192:16,
195:3, 222:15,
222:17, 222:22

**grab**
159:11

**great**
137:21

**ground**
10:3

**group**
134:9, 248:3,

249:3

**guadalupe**
122:15, 122:19,
122:22, 144:5,
182:7, 182:11,
182:13, 182:15,
182:24, 227:2,
262:18, 263:12

**guess**
14:1, 15:10,
32:13, 56:21,
60:22, 110:18,
121:20, 128:2,
137:10, 160:20,
168:14, 218:12,
219:12, 228:1,
243:1, 243:11,
249:14, 249:18

**guevara**
1:8, 1:14, 4:3,
8:5, 8:22, 9:3,
9:24, 121:4,
121:9, 121:14,
121:22, 121:24,
133:21, 141:15,
148:15, 149:10,
149:15, 149:22,
149:23, 150:8,
150:15, 152:4,
156:4, 159:16,
159:24, 163:1,
163:7, 169:19,
171:18, 171:23,
172:9, 172:17,
172:22, 173:3,
173:12, 174:2,
175:4, 175:17,
175:20, 175:22,
176:2, 176:4,
176:10, 176:11,
176:12, 176:15,
176:16, 176:17,
176:18, 176:23,
180:20, 181:19,
181:23, 182:23,
183:23, 184:9,
185:16, 186:3,
186:18, 187:2,

190:16, 191:18,
197:11, 197:12,
201:16, 201:22,
203:15, 203:19,
204:1, 223:8,
226:1, 226:7,
226:9, 226:13,
229:2, 229:5,
229:8, 230:13,
230:22, 231:11,
231:14, 231:21,
231:23, 232:21,
247:4, 247:11,
247:12, 247:16,
248:10, 248:21,
248:23, 249:2,
249:14, 249:18,
250:18, 252:21,
253:4, 253:8

**guevara's**
141:3, 141:10,
150:20, 151:1,
151:10

**gun**
36:4, 87:20,
87:22, 87:23,
88:2

**guy**
28:9, 36:4,
46:1, 58:9,
61:5, 70:22,
70:24, 87:18,
88:1, 92:17,
107:6, 247:21

**guys**
20:1, 51:5,
51:8, 117:15,
192:13, 197:18,
211:6, 261:5

**H**

**habit**
122:5

**half**
159:9, 189:15,
213:1

**halfway**
149:14

hallway
12:22, 12:23,
14:21
halvorsen
140:17, 140:19,
141:8, 141:15,
148:15, 149:11,
152:4, 156:4,
163:1, 163:6,
172:21, 173:11,
173:22, 176:6,
176:10, 186:18,
187:2, 190:16,
222:17, 223:12,
224:19, 225:13
hand
36:6, 138:10,
138:17, 265:14
handed
152:19, 222:16,
242:17, 242:19
handing
161:8
handling
24:24
handwriting
195:23, 196:11,
196:13, 196:16,
238:8, 238:11,
238:15, 238:17
handwritten
100:1, 100:8,
100:15, 100:20,
101:6, 101:12,
101:19, 101:24,
102:8, 102:10,
102:12, 102:19,
102:23, 103:10,
103:12, 105:5,
105:7, 108:19,
109:3, 109:19,
109:21, 109:22,
110:3, 110:13,
110:15, 111:7,
111:22, 112:24,
151:9, 155:9,
155:11, 227:2,
262:23

happen
26:20, 29:12,
44:23, 49:16,
49:20, 158:23,
179:1, 247:16
happened
29:24, 33:7,
39:12, 39:14,
39:18, 39:24,
42:13, 45:9,
52:19, 53:10,
54:5, 58:13,
112:8, 112:17,
119:20, 124:12,
128:21, 134:10,
135:2, 135:11,
157:14, 204:5,
216:2, 216:6,
218:21, 219:8,
219:9, 219:10,
219:19, 220:21,
223:21, 225:14,
232:16, 233:1,
234:21, 234:23,
239:2, 247:14,
258:6
happening
26:17, 26:19,
27:1, 30:2,
179:3
happens
77:22, 78:7,
109:11, 174:7,
174:9
happy
206:21
harassing
73:15
hard
36:21, 46:21,
47:2, 52:5,
152:13, 208:8,
220:4, 243:22,
244:1, 245:3
harmed
88:3
harvey
4:12

he'll
58:9
head
188:9
headquarters
117:6
heads
84:9
hear
16:4, 20:7,
92:24, 93:4,
120:24, 145:7,
234:6
heard
20:5, 26:17,
26:20, 62:24,
120:12, 120:14,
134:16
hearing
59:24, 252:5,
252:19
heater
19:22, 19:24,
20:1
held
2:2, 8:7,
54:20, 97:2
hello
93:21, 93:22
help
28:10, 28:22,
52:3, 199:18,
212:20, 259:21
helpful
168:6
helping
174:19
helps
68:11, 70:12
here
9:22, 87:16,
87:20, 91:19,
116:13, 140:8,
144:20, 145:14,
145:16, 145:20,
147:1, 147:4,
148:24, 150:11,
154:17, 168:22,

169:12, 172:5,
185:20, 187:4,
187:7, 188:18,
198:6, 200:1,
203:12, 221:12,
222:16, 230:15,
231:16, 237:12,
245:9, 246:13,
246:21, 255:8,
257:13, 257:22,
259:23, 259:24,
261:4
here's
15:11, 212:22
hereby
265:5
hereunto
265:14
herself
192:4, 192:14,
225:1
hey
26:12, 26:21,
53:17, 54:8,
56:24, 108:12,
188:22
higher
23:9
himself
58:11, 88:6,
172:22, 173:1,
179:12
hold
134:20, 177:1,
206:9, 224:1,
224:9, 248:4,
249:7
holding
256:23
home
114:22, 114:24,
115:2, 187:14,
205:23, 207:5,
207:12, 209:18,
213:7, 213:13,
213:22, 258:24
homewood
117:7

**homicide**
12:24, 14:24,
22:13, 22:20,
23:1, 23:17,
23:24, 24:3,
24:5, 24:7,
24:9, 24:13,
24:14, 24:16,
24:18, 25:4,
25:14, 25:15,
26:6, 26:13,
26:14, 26:21,
26:22, 26:23,
27:3, 27:4,
28:3, 28:6,
29:16, 29:17,
30:8, 30:14,
30:19, 31:23,
35:22, 36:16,
37:2, 56:10,
56:23, 65:19,
66:2, 75:4,
75:8, 77:5,
77:14, 77:16,
78:14, 78:15,
79:12, 88:19,
89:3, 89:11,
114:9, 114:20,
118:1, 124:11,
125:21, 128:3,
146:15, 152:21,
168:10, 179:11,
196:23, 222:10
**hooded**
212:17
**hopefully**
42:16, 107:1
**hospital**
184:21, 205:17,
209:12, 259:5
**hour**
189:14
**hours**
149:15, 152:2,
162:11, 169:19,
171:5, 172:9,
175:4, 176:5,
183:22, 185:16,

186:9, 186:10,
186:14, 190:13,
196:5, 196:9,
200:9, 204:7,
213:1, 225:24,
226:22, 229:2,
229:16, 230:23,
238:22, 239:16,
239:21, 261:8
**house**
215:17, 252:12,
259:4, 259:12
**houses**
258:14
**however**
163:23, 176:16,
212:13, 220:17,
231:2, 246:16
**hrs**
238:19, 238:22
**hundred**
14:1, 39:13,
39:18, 40:21
**hurt**
70:11
**husband**
182:8, 182:24,
204:22, 205:15,
205:17, 207:3,
208:1, 208:12,
209:12
**hypothetical**
29:22, 32:8,
33:4, 34:11,
35:17, 37:12,
50:20, 54:4,
59:7, 61:4,
61:15, 61:22,
62:15, 62:21,
63:7, 64:7,
64:17, 64:24,
65:1, 66:12,
66:20, 68:3,
68:17, 69:1,
69:14, 70:8,
70:21, 72:6,
72:15, 74:4,
74:6, 74:12,

76:4, 76:11,
77:2, 77:11,
77:18, 78:19,
79:4, 80:5,
80:16, 80:24,
81:8, 83:15,
84:4, 85:8,
86:8, 87:13,
89:24, 95:17,
98:15, 98:23,
103:17, 106:20,
108:6, 130:12,
130:21, 131:6,
137:3, 137:9,
137:20, 138:3,
138:24, 158:22,
194:6
**hypothetically**
87:18

## I

**icam**
160:10, 160:18,
161:15, 161:18,
161:22
**idea**
10:4, 55:5,
65:7, 67:8,
84:6, 100:14,
104:22, 121:19,
122:24, 123:8,
125:11, 125:17,
127:2, 127:15,
129:20, 129:21,
131:20, 158:16,
163:10, 163:15,
172:20, 176:8,
179:22, 186:16,
196:17, 198:5,
199:4, 208:3,
208:14, 221:9,
240:19, 249:11,
250:24
**identification**
160:16, 161:7
**identified**
143:18, 145:20,
146:7, 160:13,

167:2, 167:11,
168:20, 168:23,
191:6
**identifies**
144:1, 144:4,
147:4, 148:8
**identify**
146:17, 147:8,
162:14, 167:5
**identities**
133:24
**identity**
125:7
**ii**
1:18
**illinois**
1:2, 1:19, 2:7,
2:16, 3:8, 3:17,
4:8, 4:18, 5:8,
5:16, 6:8, 8:9,
265:21
**imagine**
17:13, 34:6,
63:17, 64:18,
82:4, 103:2,
103:4, 113:5,
157:7, 157:14,
167:6, 182:4,
188:24, 229:22,
240:14, 257:20
**imagining**
63:20
**immigrant**
204:21
**impact**
55:6, 70:18,
121:3
**implausibility**
71:19
**implausible**
62:19, 62:23,
63:5, 64:1,
64:2, 64:13,
64:15, 67:1,
68:21, 69:5,
70:3, 70:10,
71:9, 72:10,
73:3, 74:17,

91:12, 91:15,
209:11, 209:16
**implicated**
192:4, 192:14,
225:1
**important**
20:11, 20:14,
20:16, 20:18,
34:8, 53:23,
97:8, 201:4
**impossible**
63:17, 195:20
**impound**
116:11
**impression**
232:14
**improper**
25:1, 206:17
**inappropriate**
41:17
**incident**
58:14, 193:14,
193:16, 193:19
**include**
53:18, 54:2,
133:17, 164:24,
165:8, 262:22
**included**
133:15, 142:5,
144:6, 244:13,
263:15
**includes**
161:23
**including**
10:3, 144:5,
157:22, 258:21
**incomplete**
29:22, 32:8,
33:4, 34:11,
35:17, 37:11,
50:20, 54:4,
59:7, 61:4,
61:15, 61:22,
62:15, 62:21,
63:7, 64:7,
64:17, 64:24,
66:12, 66:20,
68:17, 68:24,

70:8, 70:21,
72:5, 72:15,
74:4, 74:12,
76:4, 76:11,
77:1, 77:11,
77:18, 78:9,
78:18, 79:4,
80:4, 80:15,
80:23, 81:8,
83:14, 84:4,
85:8, 86:8,
87:13, 89:24,
95:17, 98:14,
98:23, 103:17,
106:20, 108:6,
130:12, 130:21,
131:6, 137:2,
137:8, 137:20,
138:3, 138:24,
158:21, 194:6,
242:13
**inconsistent**
37:6, 37:22,
43:15, 64:21,
67:1, 69:5,
70:3, 71:9,
72:10, 73:3
**incorporated**
222:19
**increase**
58:2
**incriminate**
58:3, 58:11
**incriminated**
142:13
**incriminating**
32:6, 32:9,
32:12, 32:17,
55:7, 57:14,
57:21, 58:24,
59:24, 62:9,
67:19, 67:22,
68:21, 70:1,
70:2, 71:2,
71:8, 73:2,
81:13, 85:18,
85:24, 86:20,
87:8, 88:6,

194:9, 228:14,
228:18, 245:17
**independent**
193:21, 219:17,
235:17, 257:5,
259:14
**indicate**
34:2, 35:4,
35:8, 152:3,
200:11, 215:2,
215:3, 223:3,
237:5, 237:13,
238:22, 239:12,
246:5
**indicated**
19:14, 19:16,
173:24, 179:2,
195:23, 204:11,
205:22, 219:14,
241:8, 241:9,
251:12
**indicates**
175:17, 176:5,
179:8, 184:12,
186:17, 190:24,
192:2, 194:16,
200:2, 207:2,
219:22, 225:24,
226:11, 229:15,
235:7, 238:22
**indicating**
36:5, 187:19,
203:12, 213:6,
215:3, 215:16,
218:21, 219:9
**indication**
43:22, 44:7,
44:12, 48:22,
70:4, 74:1,
200:17, 229:19
**individual**
9:7, 34:3,
117:20, 131:1,
131:3, 142:14,
194:1, 194:3
**individually**
104:11
**individuals**
58:1, 123:15,

123:20, 124:23,
141:22, 146:7,
147:4, 147:8,
147:9, 148:8,
220:10, 228:5,
263:9, 263:13
**infallible**
118:18
**inform**
82:4, 96:15,
188:13
**information**
32:2, 32:24,
34:21, 43:6,
43:19, 50:17,
51:19, 59:17,
59:18, 61:1,
62:11, 65:8,
65:10, 65:15,
65:19, 72:10,
72:20, 73:3,
74:7, 94:11,
94:13, 96:4,
96:5, 96:8,
96:14, 96:15,
96:17, 96:19,
97:3, 98:2,
106:7, 106:16,
127:23, 131:3,
143:10, 148:10,
148:18, 159:23,
160:1, 161:24,
165:1, 165:5,
165:7, 166:23,
168:2, 168:22,
169:11, 177:22,
180:22, 182:10,
183:1, 183:2,
189:9, 189:10,
193:5, 194:4,
194:14, 195:14,
201:4, 206:4,
207:17, 209:1,
229:7, 229:12,
231:11, 238:5,
238:10, 241:10,
244:12, 245:17,
245:24, 258:20,

258:23, 259:3,
260:14
**informed**
182:9, 187:20,
187:21, 192:3,
192:18, 192:24,
224:24, 225:4
**initial**
105:9, 110:1
**initially**
178:4
**innocent**
120:20, 121:1,
121:12, 216:18,
217:1, 218:2
**innocently**
209:13
**input**
101:18, 101:21,
101:23, 102:4
**inside**
184:19
**inspect**
115:7
**inspecting**
115:9, 116:14
**instance**
27:2, 89:1
**instances**
25:2, 26:4,
26:11, 27:22,
35:24, 59:18,
90:7, 95:14
**instead**
247:7
**instructing**
73:16
**instruction**
188:4, 188:22
**instructions**
186:9, 187:4,
187:5, 188:19
**instrumental**
141:12
**insulting**
38:15
**intended**
147:7

**intentional**
262:22, 263:15
**inter**
29:9
**interaction**
257:23
**interactions**
122:18, 123:4,
125:20, 177:13
**interest**
265:13
**interested**
40:12
**interfere**
40:20
**interpret**
174:8, 205:21,
252:13
**interpretation**
150:1, 170:2
**interpreted**
250:19
**interpreter**
178:8, 178:12,
178:18, 179:9,
179:19, 180:1,
180:3, 180:21
**interpreting**
150:4, 252:11
**interrogate**
26:13, 26:22,
30:14, 31:2,
31:9
**interrogated**
81:12, 119:13
**interrogating**
24:6, 24:14,
180:1
**interrogation**
11:14, 11:24,
12:3, 13:3,
13:10, 13:17,
14:4, 14:7,
15:3, 15:11,
15:13, 15:24,
24:1, 25:5,
25:14, 26:3,
26:5, 27:3,

27:5, 29:2,
29:7, 29:10,
30:19, 34:2,
35:11, 48:13,
50:14, 55:17,
56:12, 62:9,
63:8, 63:12,
64:20, 68:23,
69:4, 87:10,
102:24, 178:23,
237:6, 237:14,
237:18, 237:21,
237:24
**interrogations**
22:13, 22:22,
22:24, 23:16,
24:18, 25:3,
27:16, 29:1,
30:8, 54:24,
56:10, 56:22,
57:12, 58:23,
86:15, 86:21,
119:9, 185:12
**interrupt**
40:23, 40:24,
54:16, 122:7
**interrupting**
38:14, 38:20,
107:22
**interviewed**
22:20, 23:23,
27:12, 99:11,
104:7, 106:1,
109:10, 119:13,
123:10, 123:12,
125:10, 125:15,
128:6, 130:18,
147:9, 147:24,
148:8, 149:3,
168:16, 168:19,
169:15, 182:12,
182:23, 191:11,
191:17, 191:21,
192:13, 199:2,
209:7, 215:4,
230:23, 249:5,
249:22, 257:18
**interviewing**
57:16, 67:11,

103:6, 108:23,
123:3, 249:4,
256:21
**interviews**
22:12, 85:6,
104:24, 119:1,
119:15, 119:21,
124:18, 124:20,
128:15, 128:17,
148:1, 148:4,
148:11, 148:19,
155:12, 159:20,
179:11, 191:23,
205:3, 222:21
**intimidating**
232:16
**introduce**
8:13, 246:18,
261:18
**inventories**
258:15
**inventory**
34:19, 48:19,
48:21, 258:16
**investigate**
78:7, 120:5
**investigation**
16:23, 16:24,
19:16, 21:6,
21:10, 24:4,
25:22, 26:1,
30:5, 31:23,
60:10, 60:11,
77:5, 77:8,
77:19, 77:23,
79:2, 79:7,
79:11, 80:7,
80:9, 80:11,
83:5, 114:9,
114:20, 115:4,
116:18, 118:19,
119:7, 120:4,
122:20, 124:11,
124:17, 125:22,
126:15, 127:8,
129:1, 130:5,
131:13, 131:19,
135:12, 141:16,

141:22, 142:5,
142:18, 142:21,
142:23, 143:8,
143:16, 143:19,
144:10, 144:13,
146:18, 155:16,
157:3, 157:13,
169:2, 178:5,
178:8, 178:20,
179:9, 179:15,
182:10, 191:7,
191:11, 202:22,
209:8, 220:20,
226:21, 249:15,
249:19
**investigations**
21:21, 77:16,
118:1
**investigative**
51:4, 51:7,
135:23, 136:23,
137:12, 137:16,
243:12, 243:15,
244:4, 244:10
**investigator**
24:3, 24:6
**investigators**
28:7
**involve**
235:1
**involved**
16:23, 20:24,
24:6, 24:13,
26:10, 27:11,
39:9, 58:4,
77:21, 78:14,
82:7, 112:22,
114:15, 124:17,
130:9, 135:5,
137:15, 144:12,
146:17, 166:4,
178:5, 178:12,
178:14, 178:15,
187:23, 189:8,
193:14, 193:16,
193:19, 194:3,
194:10, 197:7,
201:23, 204:12,

221:1, 258:12
**involvement**
58:14, 98:10,
98:17, 114:9,
114:13, 114:16,
120:23, 125:8,
128:7, 129:1,
131:9, 132:1,
160:15, 162:21,
166:3, 191:10,
258:6, 258:15
**ir**
160:12, 160:19
**issue**
37:3, 42:16,
42:17, 101:5,
136:7, 136:9
**issued**
136:5
**issues**
180:14, 180:21,
181:21
**itself**
107:24, 133:1,
145:23, 177:23,
257:19, 263:7

---

**J**

**jacinta**
192:4, 207:14,
220:7, 225:2
**jacket**
212:17
**jackson**
4:16
**jan**
3:12, 8:17
**jerk**
210:18
**job**
1:23, 83:21,
92:2, 136:1
**john**
3:13, 8:19
**join**
69:9, 78:1,
78:11, 78:20,
79:5, 81:9,

92:5, 98:22,
100:11, 103:18,
107:15, 113:16
**joined**
90:11, 226:23,
227:23
**jorge**
123:1, 123:4,
123:7, 148:8,
148:11, 182:8,
182:23, 183:4,
183:8, 183:14,
183:15
**judge**
93:22
**july**
199:16, 200:3
**jump**
246:22
**jumps**
245:16
**justified**
142:13, 166:18
**justify**
166:10

---

**K**

**karen**
8:24
**keep**
12:18, 17:17,
18:8, 38:14,
68:5, 82:14,
88:17, 210:23
**keeper**
139:4
**kept**
18:3, 244:5
**kevin**
4:4, 8:21,
160:7, 160:8,
160:10, 203:10
**kid**
88:3
**kidnap**
236:3
**kidnapping**
192:5, 225:2

**kids**
20:16, 167:7
**kill**
217:5, 218:4,
218:16, 236:2
**killed**
192:21, 193:3,
225:6
**kills**
235:22
**kind**
44:18, 45:1,
51:20, 54:7,
63:17, 97:2,
108:7, 109:18,
174:22
**kinds**
21:19, 55:1,
124:10, 259:5
**knew**
37:22, 48:23,
59:9, 59:10,
61:1, 61:23,
62:1, 64:22,
98:1, 134:7,
189:4, 189:8,
201:7, 205:5,
208:17, 211:2,
245:14, 249:22,
250:12
**knife**
88:13, 88:15
**knocks**
167:5
**knowing**
49:4, 49:11,
131:2, 181:13
**knowledge**
26:8, 26:9,
55:23, 77:7,
122:21, 124:11,
126:8, 126:11,
130:16, 151:19,
162:16, 169:6,
172:13, 181:5,
181:8, 187:24,
198:12, 263:16
**known**
181:24, 182:4

knows
77:12, 205:4
kosberg
6:12

**L**

lab
115:10, 115:21,
155:12
laborer
204:22
lady
245:11
laid
11:10, 32:14,
48:24, 54:1
language
42:4, 108:1,
108:7
lasalle
4:6
last
42:22, 54:11,
73:11, 122:8,
129:10, 140:24,
142:19, 150:19,
155:3, 157:11,
157:16, 166:20,
171:3, 175:3,
198:18, 216:8,
218:17, 255:24
later
69:18, 70:16,
103:14, 143:7,
144:12, 201:10,
207:9, 207:13,
217:4, 218:3,
223:7, 226:23,
258:16, 259:21
law
3:14, 4:15
lawyer
118:13
lay
34:3, 89:7,
89:11
laying
63:15

layout
11:9, 32:14,
214:9, 245:14,
250:12
lead
79:1, 249:23
leading
24:4, 98:19,
249:6, 249:15,
249:19, 249:20
learn
119:14, 119:20
learned
110:20, 119:23,
209:22
learning
253:4
least
27:4, 57:6,
58:2, 73:8,
217:16, 232:17,
258:1
leave
103:15, 107:12,
162:18, 166:22
leaves
108:3
leaving
172:22, 258:24
led
12:23, 247:16,
247:20
left
49:12, 49:14,
53:14, 53:17,
53:22, 53:24,
54:3, 54:8,
54:12, 106:8,
161:24, 186:8,
186:18, 187:4,
187:8, 188:14,
189:2, 190:10,
196:8, 214:12,
214:16, 221:23,
236:9, 236:11,
236:22, 250:5,
259:4, 259:12,
260:17, 261:3,

262:6, 262:11,
262:16, 262:20
leinenweber
4:5
leobardo
125:12, 125:15,
148:9, 148:11
leon
193:3, 225:6,
229:3, 229:7,
235:8
leonardo
184:23
less
15:9, 139:9,
259:15
let's
22:18, 62:8,
69:13, 87:18,
88:13, 102:16,
135:24, 145:15,
159:6, 194:16,
194:18, 210:23,
236:7, 236:13,
246:17
level
129:7, 129:24,
130:10
lie
66:1, 66:5
lied
66:5, 203:18,
203:24
lies
66:7
lieutenant
23:4
life
258:7
light
245:6, 245:8
likewise
10:14
limited
72:20, 216:12
line
58:22, 255:2
lines
212:21, 216:21,

217:21, 218:18
lineup
162:14, 162:21,
163:2, 163:3,
163:7, 163:10,
163:11, 163:16,
163:17, 163:22,
164:3, 164:10,
164:11, 164:12,
164:19, 164:21,
164:24, 165:2,
165:8, 165:15,
165:20, 166:5,
166:6, 166:10,
167:4, 168:20,
168:23
list
28:16, 145:17
listed
141:1, 144:19,
146:15, 150:13
listen
97:9
lists
143:15, 195:24
literal
255:19
literally
67:8, 159:5
little
21:5, 42:18,
68:6, 88:3,
106:4, 125:2,
149:13, 202:5,
203:5, 206:7,
232:14, 258:4
living
42:12
llc
4:5, 6:5
llp
5:13
lobby
205:15, 207:3
locate
126:12
located
160:11, 162:12

**location**
2:3, 190:18,
258:22
**locked**
244:5
**loevy**
2:5, 3:5, 8:4,
8:7, 8:8
**long**
50:7, 109:16,
111:17, 111:19,
156:2, 156:18,
161:20, 198:18
**longer**
166:4
**look**
57:20, 62:22,
87:22, 120:22,
148:7, 151:6,
156:4, 164:9,
170:21, 176:20,
183:21, 194:18,
199:19, 203:2,
209:8, 212:21,
213:4, 216:2,
236:7
**looked**
44:10, 151:7,
195:11, 200:8
**looking**
57:18, 57:19,
62:24, 106:14,
112:9, 140:8,
140:19, 151:23,
160:5, 162:10,
175:1, 175:16,
184:11, 195:22,
199:5, 201:13,
223:23, 225:23,
229:1, 231:20,
236:22, 237:1,
238:4, 239:6,
245:5, 249:16,
250:5, 253:24,
258:8
**lookout**
62:18, 64:19,
65:2, 65:6

**looks**
11:11, 150:23,
152:8, 161:17,
163:8, 207:7,
220:8
**lot**
46:20, 46:22,
92:16, 109:23,
116:9, 116:11,
147:24, 150:3,
156:6, 204:20,
204:22, 205:16,
207:4, 207:11,
209:12, 232:8,
244:21, 258:6
**love**
245:11
**lower**
212:15
**lunch**
10:23, 189:20,
189:23
**lupe**
207:10
**lying**
107:5

---

**M**

**made**
32:5, 34:22,
35:2, 35:5,
35:7, 39:8,
44:1, 44:8,
44:15, 44:18,
45:1, 45:15,
46:12, 48:5,
48:14, 48:18,
48:20, 49:5,
49:21, 50:3,
50:14, 50:16,
50:22, 53:15,
58:24, 67:11,
69:17, 84:24,
100:12, 104:5,
109:22, 115:11,
124:7, 142:19,
151:7, 166:15,
189:5, 192:16,

207:20, 227:18,
228:13, 245:10,
245:12, 257:4
**mail**
137:13
**main**
14:15
**maintenance**
115:18
**majority**
157:7
**make**
37:23, 39:20,
46:6, 48:15,
48:22, 49:2,
51:18, 53:8,
56:24, 61:12,
63:14, 63:15,
68:1, 72:21,
73:19, 79:8,
90:14, 91:3,
91:14, 91:15,
91:18, 93:15,
100:15, 109:24,
115:23, 121:8,
122:8, 124:3,
124:6, 126:12,
128:16, 129:22,
136:2, 137:11,
139:1, 139:5,
139:6, 139:7,
154:13, 154:14,
166:14, 190:1,
209:3, 223:16,
228:23, 243:24,
245:9, 263:3
**makes**
39:11, 60:23,
62:8, 71:21,
76:17, 84:20,
112:2, 194:2
**making**
59:24, 65:14,
68:12, 70:22,
72:24, 91:5,
124:23, 146:13,
194:9, 233:24
**manage**
124:20

**manuel**
123:9, 125:4,
125:5, 125:9,
125:10
**many**
92:14, 95:14,
103:22, 134:5,
134:7, 134:9,
191:21, 221:14,
221:22
**march**
207:6, 207:14
**maria**
2:1, 2:14,
192:5, 225:3
**mariano**
192:5, 220:6,
225:2
**marked**
161:7, 161:8,
161:12
**martinez**
185:2
**matches**
183:12
**matter**
8:4, 9:23,
121:13, 234:9,
244:2, 244:9
**matters**
156:12
**maybe**
14:12, 14:22,
15:8, 34:12,
35:14, 35:16,
36:5, 51:11,
57:21, 58:9,
63:22, 70:16,
90:3, 97:11,
99:21, 101:1,
138:12, 142:22,
148:24, 166:7,
172:21, 172:24,
183:12, 199:23,
205:4, 214:6,
231:5, 231:14,
250:19, 252:19,
255:16

mcdonald
126:3, 132:24,
133:19, 143:22,
160:7, 160:10,
162:12, 162:15,
163:8, 163:24,
203:10
mean
19:24, 25:19,
28:16, 30:1,
34:18, 38:2,
56:3, 58:20,
59:15, 62:23,
63:21, 65:18,
66:4, 68:1,
69:18, 79:21,
88:11, 89:12,
99:4, 108:9,
123:10, 141:9,
157:6, 169:9,
179:22, 180:5,
209:16, 221:18,
243:15, 250:14,
258:5
means
40:3, 40:4,
99:15, 169:20,
250:15, 250:21,
251:10
meant
52:15, 176:11,
218:14, 223:1
measure
14:2
measured
13:20, 15:11,
16:9
mechanism
173:11
media
19:19
medical
118:20
meet
89:6, 90:22,
112:19, 112:22,
132:5, 132:16,
133:1, 134:22,

135:5, 205:18
meeting
89:8, 90:16,
133:1, 133:7,
134:5, 134:11,
134:13, 134:17,
135:2, 135:4,
138:12, 208:3,
208:13, 209:11,
257:23
meetings
135:20
mejia's
118:20, 120:5
members
126:20, 126:24,
127:3, 127:12,
130:24, 131:12,
131:17
memorable
252:9
memorialized
142:9
memory
124:15, 124:16,
159:20, 177:12,
178:11, 195:15,
197:2, 197:4,
197:10, 237:17,
237:19, 240:1,
253:19, 256:19,
257:22, 258:5
mention
53:23, 106:24,
108:14
mentioned
93:7, 201:16,
203:11, 203:14,
205:5
mercedes
133:11
met
132:8, 133:4,
205:16, 207:4,
207:10, 246:18
mexican
180:19, 181:3,
181:6, 181:12

mexico
245:9, 252:3,
252:8, 252:10
middle
182:22, 201:15,
207:6, 252:8,
256:8, 260:6
might
21:20, 24:11,
34:19, 36:6,
36:8, 45:21,
49:2, 70:12,
70:18, 70:19,
70:23, 79:7,
87:24, 91:6,
91:16, 99:20,
102:21, 106:3,
106:8, 106:17,
106:24, 108:14,
113:18, 121:4,
124:24, 139:6,
143:5, 145:14,
145:17, 149:4,
152:15, 152:17,
156:8, 157:8,
162:3, 163:8,
166:1, 187:20,
218:14, 221:2,
228:17, 248:2,
249:17, 252:16,
261:4
miguel
119:2
milwaukee
3:15
mind
56:23
mine
196:14
mingey
4:12
minimum
258:6
minutes
236:11, 260:18,
260:19
misconduct
121:8

misheard
97:11
misread
192:22, 254:3
missed
106:17, 110:4
missing
20:15, 20:16,
51:20, 178:6
misspelling
263:4
misspoke
24:11, 222:18
misstatement
256:15
misstates
11:18, 13:6,
13:12, 13:18,
14:10, 15:6,
15:15, 16:2,
74:13, 78:16,
91:10, 142:16,
144:24, 153:4,
164:5, 176:14,
177:24, 223:20,
232:24, 249:8
misstating
210:8, 210:19,
211:19, 211:23
mistakes
109:22, 110:2,
110:5
mistranslation
256:15
misunderstood
188:10, 249:17
mixed
63:22
mobile
117:16
moment
171:10
money
204:22, 245:9
month
199:20, 199:22
more
12:21, 20:18,

39:19, 40:16,
41:5, 41:6,
41:8, 41:15,
41:19, 60:10,
60:11, 67:4,
68:5, 68:6,
93:6, 135:3,
135:14, 163:4,
169:16, 174:17,
189:20, 195:3,
234:18, 248:5,
253:12, 258:11
**morning**
9:20, 9:21,
185:24, 235:9
**most**
27:24, 78:22,
104:16, 201:6
**mostly**
95:7
**motor**
115:18
**move**
42:14, 42:15
**moved**
115:16, 117:7
**mozart**
171:8
**much**
12:23, 49:17,
52:3, 96:19,
120:3, 135:14,
139:20, 189:3,
208:21, 211:10,
212:11, 234:17,
236:8, 236:9,
259:15, 260:16
**multiple**
90:20, 112:4,
112:11, 112:18,
112:21, 113:3,
113:7, 113:12,
113:21, 191:17,
195:3, 195:5
**murder**
20:14, 20:17,
20:18, 75:5,
127:14, 156:8,

235:20
**murders**
192:4, 192:14,
225:1, 235:10
**music**
54:17
**must**
202:9, 233:5
**mutually**
222:2
**myself**
38:13, 50:22,
132:22, 187:21,
197:3

---
**N**
---

**name**
133:10, 140:21,
140:24, 141:3,
141:10, 185:2,
196:2, 201:16,
203:10, 203:14,
238:7, 257:19,
261:22
**named**
125:21, 160:11,
201:22
**names**
148:17, 185:1
**narrows**
128:5
**naujokas**
4:12
**navarro**
5:11, 226:22,
226:23, 227:3,
227:6, 227:10,
227:19, 228:5,
228:12, 233:9
**near**
216:17
**necessarily**
69:10, 70:11,
70:15
**necessary**
40:15, 41:5
**neck**
209:21, 210:3,

210:10, 211:1,
211:8, 211:14,
212:10
**need**
9:16, 10:18,
10:23, 11:1,
23:24, 27:19,
41:2, 41:8,
56:24, 60:7,
81:3, 81:16,
83:7, 83:24,
124:21, 142:10,
164:1, 216:13,
217:15, 231:10,
261:7
**needed**
28:18
**needs**
130:1
**neither**
265:11
**nervous**
217:20
**never**
13:20, 15:10,
16:9, 18:3,
54:5, 92:17,
94:1, 97:2,
100:19, 120:10,
121:24, 179:6,
236:5, 246:18
**new**
92:19, 117:5,
210:16, 210:17
**next**
38:24, 42:20,
64:10, 79:11,
79:19, 79:22,
84:17, 109:12,
160:5, 162:4,
172:7, 172:8,
178:3, 182:18,
183:21, 185:12,
185:15, 193:12,
194:16, 205:8,
209:17, 214:12,
216:7, 217:2,
225:23, 226:16,

229:1, 235:7,
243:17, 253:24,
254:16, 254:17,
254:18, 254:19,
255:1, 255:2,
256:2, 256:8
**night**
182:6, 182:16,
262:7
**nine**
260:18, 260:19
**nobody**
78:3, 88:2,
139:19, 243:24
**nodding**
188:9
**noemi**
184:24
**nondetective**
29:1
**nope**
254:4
**norma**
125:18, 125:21,
125:24, 126:9,
160:11, 160:12,
162:12, 162:14,
162:15, 162:17,
162:22, 166:3,
166:21, 168:9,
169:2, 184:24,
185:1, 201:16,
201:17, 201:22,
202:9, 202:20,
202:22, 203:7,
203:14, 203:15,
203:19
**normally**
104:9, 108:11,
158:23, 159:1,
199:22
**north**
2:6, 3:6, 3:15,
6:6, 8:8, 11:23,
12:13, 13:3,
13:11, 14:3,
14:7, 14:12,
15:4, 196:24

northern
1:2
northwest
11:19
nos
161:7
notarial
265:15
notary
2:15, 265:1,
265:3, 265:20
notation
49:3, 49:5,
50:23
note
44:20, 45:3,
51:23, 52:2,
73:19, 210:24,
245:16, 246:11,
256:19, 256:22,
259:2
note-taking
52:18
notes
34:1, 45:23,
46:9, 46:12,
47:19, 47:23,
52:1, 52:3,
151:10, 156:11,
185:3, 185:7,
185:11, 200:23,
201:14, 205:20,
210:9, 222:4,
222:10, 225:13,
246:7
noteworthy
46:24, 47:8,
47:12
nothing
51:19, 110:6,
112:14, 208:16,
261:13, 263:6,
263:18
notice
2:14
number
10:2, 11:13,
23:12, 39:8,

123:11, 124:9,
149:6, 160:12,
184:22, 184:23,
185:1, 185:2
nylon
212:17

O

o'malley
5:4, 8:24,
226:24
oath
8:14, 11:6
object
29:5, 169:23,
188:11, 205:19,
224:22
objecting
25:8
objections
33:10, 36:2,
38:1, 39:9,
42:7, 42:8,
65:11, 65:16,
66:18, 67:10,
67:16, 69:8,
77:24, 81:9,
107:15, 147:22,
188:16
observed
48:3
obtained
227:14
obtaining
220:1
obviously
20:15, 22:21,
23:21, 84:6,
92:15, 94:20,
99:4, 128:5,
133:15, 168:15,
225:10, 245:21
occasion
66:5
occur
102:13, 102:15,
197:17, 211:11,
229:14, 258:22

occurred
32:15, 33:1,
33:8, 33:15,
44:2, 44:9,
44:16, 44:19,
45:3, 48:4,
48:24, 60:4,
60:7, 73:24,
171:18, 191:23,
224:20, 233:17,
239:8, 239:13,
241:1, 244:13,
258:23
occurring
200:18, 233:8
odd
208:10, 208:11,
233:2, 235:18,
235:23, 236:6
offering
204:12
office
3:14, 5:6,
11:19, 12:1,
12:17, 12:24,
13:1, 13:10,
13:15, 13:16,
14:5, 14:6,
14:11, 14:14,
14:16, 14:17,
15:3, 15:12,
15:14, 15:23,
21:7, 24:22,
75:12, 75:18,
77:4, 77:15,
98:8, 103:3,
110:16, 111:11,
111:16, 117:10,
196:23, 228:9,
243:13
officer
9:7, 25:13,
26:5, 26:12,
28:1, 28:22,
81:17, 82:1,
83:11, 86:6,
97:14, 124:9,
141:1, 178:4,

178:7, 178:23,
179:6, 182:12,
191:2, 192:17,
192:24, 248:22,
265:4
officers
23:10, 23:12,
27:23, 28:12,
77:9, 81:5,
93:9, 148:20,
231:7
offices
11:14, 12:10,
12:15, 12:20,
102:21, 113:19,
117:4
often
28:2, 95:12,
99:24, 113:17
oh
52:14, 139:17,
174:21
older
153:9
omit
36:17, 36:22
once
78:14, 78:23,
78:24, 79:13,
80:10, 82:6,
82:13, 82:16,
84:24, 85:4,
86:4, 98:10,
108:16, 109:9,
115:23, 259:4
one
10:9, 15:13,
16:10, 19:2,
20:17, 27:4,
28:18, 32:1,
40:11, 41:4,
57:5, 57:24,
58:6, 59:23,
60:5, 60:18,
61:10, 68:4,
76:16, 90:5,
90:6, 92:15,
93:15, 94:10,

96:10, 102:21,
119:18, 124:7,
129:10, 132:7,
144:1, 149:3,
151:4, 159:11,
164:1, 165:14,
166:1, 167:10,
167:12, 170:15,
171:9, 180:7,
180:9, 181:10,
184:21, 195:3,
200:16, 213:1,
214:3, 216:15,
216:20, 229:19,
231:2, 249:2,
251:11, 258:16

**only**
97:23, 119:1,
120:17, 121:24,
123:2, 123:10,
123:11, 134:12,
139:1, 139:19,
143:9, 149:22,
167:3, 176:10,
176:11, 176:15,
176:16, 197:6,
197:7, 200:21,
232:19, 249:2,
251:7, 258:14

**open**
113:13, 113:23,
115:19

**opened**
254:1

**opens**
14:17, 14:20

**opinion**
121:21, 122:13,
139:19

**opportunity**
224:15

**orally**
96:5, 96:21,
98:4, 98:7

**order**
88:1, 90:21,
153:24, 262:23,
263:8

**original**
196:1, 238:5

**other**
15:18, 20:5,
20:18, 21:9,
21:12, 21:20,
21:21, 21:24,
22:8, 23:1,
54:6, 58:15,
58:16, 60:5,
61:11, 94:15,
96:8, 96:16,
103:8, 112:19,
112:23, 113:10,
124:19, 143:2,
145:19, 156:12,
180:9, 181:10,
184:24, 188:2,
188:3, 205:16,
208:8, 208:22,
220:24, 222:20,
229:20, 234:2,
239:1, 241:6,
242:9, 245:1,
246:11, 258:10

**others**
92:7

**otherwise**
265:13

**outcome**
265:13

**outstanding**
129:18, 157:6

**over**
10:6, 51:10,
51:11, 52:5,
87:20, 88:17,
92:21, 99:19,
117:7, 146:12,
167:21, 195:10,
222:17, 234:7,
261:4

**overcrowded**
232:11

**overtime**
17:2, 17:7,
17:9, 17:11,
230:2

**own**
24:19, 25:4,
25:21, 26:6,
29:3, 30:7,
30:15, 30:20,
31:2, 31:10,
35:4, 81:6,
81:11, 81:18,
81:22, 89:7,
111:24, 112:3,
151:19, 178:24,
248:15

---

**P**

**page**
7:2, 7:9,
129:2, 140:24,
143:14, 147:2,
149:13, 149:14,
150:19, 151:13,
155:3, 155:8,
159:7, 159:8,
159:9, 159:14,
162:10, 165:6,
169:18, 175:1,
176:21, 177:8,
177:16, 177:17,
182:5, 182:18,
182:19, 182:22,
184:16, 186:6,
186:7, 190:10,
190:12, 190:19,
195:3, 195:22,
195:24, 201:14,
201:16, 205:8,
205:11, 205:12,
205:13, 206:12,
206:22, 207:1,
207:2, 207:11,
209:17, 212:15,
216:7, 216:8,
216:11, 216:13,
216:17, 216:19,
217:7, 217:10,
218:17, 219:3,
224:2, 224:4,
224:14, 225:11,
226:16, 226:18,

**own** (cont.)

238:4, 238:15,
241:11, 241:17,
250:6, 256:8

**pages**
1:24, 155:4,
185:20, 195:5

**paid**
20:19, 21:2,
255:6, 255:7

**pajamas**
213:3

**pants**
184:19, 184:20,
212:16, 235:9,
235:11

**paper**
34:18, 34:19,
48:19, 184:20,
184:21, 184:24,
197:8, 215:7,
215:9

**paragraph**
150:19, 159:7,
159:10, 159:19,
160:5, 162:4,
165:6, 166:20,
172:7, 172:8,
175:2, 175:3,
177:7, 178:3,
178:4, 179:7,
183:21, 185:15,
190:13, 219:21,
223:23, 225:23,
226:17, 229:1,
235:8, 256:9

**parking**
207:11, 209:12

**part**
53:7, 60:21,
64:14, 65:18,
66:6, 78:22,
88:11, 116:19,
125:5, 125:21,
231:18, 256:24

**participant**
124:8, 163:3

**participants**
165:1

**participate**
81:17, 105:19,
126:15, 177:15,
182:14, 183:3,
185:19, 226:3
**participated**
43:24, 44:6,
44:14, 48:12,
50:1, 119:6,
124:12, 150:9,
173:23, 176:6,
178:20, 181:18,
197:1, 237:6,
237:14, 237:20,
237:23
**participating**
24:1, 86:22,
87:11, 89:21,
127:7, 191:6
**participation**
172:13, 184:3,
258:20
**particular**
19:2, 97:22,
111:11, 135:2,
146:1, 148:7
**particularly**
33:1, 46:23
**parties**
265:12
**partner**
45:4, 194:24
**partner's**
44:20
**partners**
141:18, 143:21,
173:8, 173:19
**past**
17:4, 17:8,
66:7, 149:14,
179:15, 202:15,
203:13
**patrol**
23:10
**patrolman**
23:6, 28:9
**pause**
171:9, 194:16

**pawn**
88:18, 88:19
**pay**
204:12, 204:15
**paying**
65:8
**pc**
4:15
**pen**
243:11
**pending**
10:20
**people**
20:5, 21:4,
23:13, 47:3,
48:23, 55:1,
55:18, 56:12,
92:18, 92:20,
93:19, 120:17,
121:4, 121:9,
122:13, 123:3,
123:10, 133:23,
134:5, 144:12,
146:6, 146:16,
146:19, 147:24,
150:9, 220:24,
232:9, 232:10,
234:1, 234:19,
235:23, 236:2,
246:18
**people's**
3:14
**perfectly**
233:19
**period**
153:17, 178:19,
214:16, 214:21,
215:1
**permanent**
136:17
**permissible**
29:15
**permission**
30:11, 30:13,
30:18, 31:1,
79:13, 80:3,
83:7, 170:21
**permit**
31:9

**permitted**
162:18, 166:22
**person**
27:12, 29:9,
35:5, 48:24,
49:5, 50:2,
63:15, 67:11,
70:4, 71:7,
71:23, 72:7,
106:2, 108:23,
109:10, 109:17,
109:20, 109:24,
110:4, 128:24,
130:1, 167:3,
167:4, 170:20,
251:14, 252:11,
263:5
**person's**
58:14, 68:12
**personal**
126:8, 126:11,
151:19
**personally**
139:6, 201:2
**personnel**
143:15, 144:2
**persons**
182:7
**pertinent**
43:5, 43:16,
194:4
**phone**
112:2, 116:19,
184:22, 184:23,
185:1, 185:2,
188:5
**photo**
160:12, 160:15,
160:18, 160:20,
160:21, 161:16,
162:1
**photography**
116:5
**phrase**
251:10, 255:12
**phrased**
27:8
**physical**
121:2, 121:13

**physically**
63:16, 116:14,
120:9, 121:22
**picking**
206:19
**picture**
234:8, 234:12
**piece**
34:18, 34:19,
48:18, 108:4
**pieces**
206:20, 234:13
**pinpoint**
88:1
**place**
20:11, 77:7,
95:21, 111:13,
143:9, 167:21,
196:20
**places**
110:8, 208:2,
208:13
**plaintiff**
1:6, 1:12, 3:3,
3:11, 8:16,
8:17, 8:20,
9:12, 9:18
**plaintiffs**
261:12
**plan**
208:14
**planet**
8:12
**plausible**
63:14
**played**
59:13
**please**
10:10, 12:7,
19:3, 29:19,
38:17, 38:20,
39:16, 40:4,
50:7, 55:10,
71:16, 73:19,
73:20, 82:21,
83:20, 93:16,
106:10, 107:19,
125:3, 139:23,

201:24, 206:11,
210:14, 211:16,
224:14, 244:16,
257:1
**plus**
98:6
**pocket**
184:20, 185:8
**pockets**
184:19
**point**
10:19, 10:24,
20:24, 30:13,
69:21, 69:23,
73:15, 79:2,
83:16, 86:12,
94:23, 105:9,
105:12, 110:7,
110:12, 120:7,
128:3, 129:5,
129:24, 136:23,
142:22, 146:18,
181:17, 209:9,
209:10, 227:12,
227:19, 228:6,
228:12, 232:5,
233:7, 233:18,
235:1, 246:7
**pointed**
36:4
**pointing**
210:19
**polaroid**
161:3
**police**
7:10, 20:4,
20:10, 27:23,
28:1, 28:12,
56:11, 77:9,
81:5, 81:17,
93:8, 97:14,
120:19, 121:1,
121:8, 121:12,
124:9, 127:18,
134:6, 136:10,
137:12, 148:20,
150:1, 161:10,
199:20, 227:1,

235:19
**policemen**
20:6
**polish**
28:7, 28:8,
28:9, 28:10
**polygraph**
116:22, 117:1,
117:4, 117:8,
117:10, 117:12,
117:16, 117:19,
117:24, 118:16,
169:21, 170:10,
170:12, 170:14,
170:22, 171:19,
171:24, 172:11,
172:13, 173:24
**poor**
62:6
**portion**
104:14, 205:24,
210:2, 235:7
**portions**
104:17, 104:23,
138:19
**position**
92:19, 97:2
**positive**
110:10
**possibility**
57:7
**possible**
25:20, 33:20,
33:22, 34:17,
55:18, 56:12,
56:21, 57:12,
127:13, 188:3,
242:20, 243:1,
245:2, 253:2,
253:6, 253:7,
253:8
**potential**
126:16, 128:23
**potentially**
32:17, 34:8
**pound**
115:13, 116:1
**powerful**
33:1, 33:8,

33:11
**practice**
90:7, 90:15,
90:18, 90:19,
202:15, 253:11
**preceding**
255:22
**pregnant**
245:13
**preliminary**
135:13
**preparation**
119:24, 132:6,
132:11, 132:13,
134:18, 165:17,
195:9
**prepare**
52:2, 165:19
**prepared**
45:4, 45:8,
49:2, 50:4,
50:23, 51:3,
51:6, 52:14,
52:17, 140:22,
141:2, 141:21,
152:10, 153:15,
165:12, 165:14,
192:12, 194:24
**preparing**
48:8, 112:23,
141:13, 245:23
**present**
6:11, 25:5,
25:15, 26:14,
26:23, 27:5,
29:17, 76:13,
83:4, 86:23,
87:1, 102:9,
181:19, 185:3,
229:4, 262:1,
262:8, 262:17
**preserve**
33:17, 33:24,
34:13, 34:17
**president**
71:1
**press**
19:17, 20:8

**pressing**
156:12
**presume**
132:15
**pretrial**
135:4, 136:24
**pretty**
209:20, 210:3,
210:9, 210:24
**previous**
16:7, 148:24,
202:12, 205:2,
205:3
**previously**
106:17, 143:1,
195:23, 203:14,
203:24, 241:9,
248:24, 249:4,
257:9
**primary**
76:16, 96:3,
96:5, 96:10,
98:2, 141:15,
173:6, 248:24
**printed**
152:16, 152:18,
153:8, 153:14,
153:24
**printing**
238:18
**prior**
78:16, 178:1,
191:9, 249:8
**priority**
21:7
**private**
14:17
**probable**
245:2
**probably**
33:16, 48:8,
50:24, 62:6,
86:12, 112:10,
129:19, 134:8,
142:18, 148:4,
150:2, 158:2,
161:15, 232:17,
234:17, 246:6,

247:1, 247:8,
251:21
**problem**
41:9, 41:13,
42:2, 52:16
**problematic**
211:3, 211:5
**procedure**
160:16
**proceed**
77:16
**proceedings**
136:24
**proceeds**
77:5, 88:16,
130:6
**process**
98:12, 102:12,
105:11, 109:9,
110:11, 111:21,
115:10, 116:20,
116:24, 137:15,
197:17
**processed**
115:22
**professional**
265:2
**proper**
25:20, 25:23,
30:1, 42:7, 42:8
**properly**
83:21
**property**
12:17, 88:21
**prosecutor**
133:8
**provide**
240:23
**provided**
48:10, 48:13,
176:23, 183:1,
193:6, 229:8,
252:21
**providing**
77:14
**public**
2:15, 265:1,
265:4, 265:20

**puerto**
180:17, 181:3,
181:4
**pull**
140:5, 161:18,
161:21
**pulled**
161:19
**pulling**
244:2
**punctuation**
263:4, 263:7
**purpose**
51:18, 115:15,
117:24, 141:19,
174:11, 230:20
**purposely**
109:24
**purposes**
76:22, 116:8,
123:18
**pursuant**
2:14
**put**
43:20, 44:23,
45:8, 46:13,
47:19, 48:9,
49:20, 51:1,
52:19, 54:14,
58:8, 145:14,
148:2, 148:16,
149:2, 152:11,
152:15, 152:22,
153:18, 201:8,
215:23, 223:9,
223:10, 223:11
**putting**
23:8, 55:22,
69:22, 92:18,
213:12, 234:3
**puzzled**
134:16

**Q**

**question**
10:10, 10:14,
10:15, 10:20,
11:18, 16:8,

23:7, 24:12,
25:17, 27:7,
29:6, 29:18,
31:14, 35:18,
36:13, 37:13,
38:22, 38:24,
39:11, 39:12,
39:20, 39:24,
40:18, 41:17,
42:20, 42:22,
50:7, 50:10,
54:11, 55:10,
56:15, 63:4,
66:16, 66:23,
71:17, 72:2,
72:8, 73:7,
73:10, 73:17,
82:20, 83:2,
89:22, 92:24,
97:12, 97:22,
99:15, 114:6,
115:14, 122:6,
122:8, 129:10,
129:13, 129:15,
129:18, 129:20,
130:8, 130:15,
134:21, 139:12,
147:14, 156:24,
163:18, 164:17,
165:22, 169:4,
169:6, 175:10,
176:13, 188:11,
188:12, 195:18,
199:3, 201:24,
206:17, 210:13,
210:17, 211:6,
211:16, 212:6,
212:7, 216:13,
216:16, 217:8,
217:12, 219:2,
221:14, 224:11,
231:24, 232:19,
237:12, 244:17,
248:17, 250:1,
255:22, 257:3,
257:11, 262:12
**questioned**
130:18, 162:15,

168:24
**questioning**
105:20, 186:11,
187:19, 191:1,
197:18, 247:16,
249:6, 249:21,
257:8
**questions**
10:5, 31:13,
41:3, 62:6,
67:15, 97:9,
105:4, 106:6,
106:15, 154:8,
154:10, 154:11,
170:24, 197:20,
197:24, 204:24,
206:10, 208:9,
216:4, 216:15,
218:8, 221:22,
230:17, 248:7,
248:12, 248:13,
248:14, 248:20,
256:1, 261:6,
261:7, 261:17,
263:19, 263:20,
263:21
**quick**
122:6, 190:2,
236:12, 236:13,
236:15
**quickly**
128:5, 245:16

**R**

**raised**
36:4, 36:6
**ran**
165:14
**rare**
47:22, 49:14
**rather**
15:7, 174:2,
253:15
**ray**
149:15, 149:22,
150:8, 181:19,
247:6, 249:9,
249:11, 249:12,

250:3
**ray's**
247:8
**rd's**
225:4
**reach**
129:24, 130:9
**reaching**
136:22
**read**
29:18, 29:20,
42:23, 44:10,
50:6, 50:8,
51:10, 52:5,
72:3, 82:20,
82:22, 93:2,
97:10, 97:12,
97:16, 97:18,
106:10, 106:12,
122:7, 122:10,
129:9, 129:11,
150:18, 151:18,
154:17, 159:7,
163:18, 163:20,
165:7, 165:10,
177:3, 177:6,
179:8, 192:23,
195:10, 195:13,
195:20, 201:24,
202:2, 202:7,
203:9, 203:13,
205:10, 206:11,
206:20, 207:2,
211:17, 213:21,
216:10, 216:13,
217:7, 217:10,
217:11, 217:16,
217:22, 217:23,
218:1, 219:3,
219:21, 220:5,
222:23, 223:24,
224:10, 231:24,
232:2, 232:19,
233:3, 237:8,
244:16, 244:18,
245:7, 250:9,
254:5, 254:9,
254:11, 254:16

**reading**
110:1, 149:20,
159:10, 159:12,
159:19, 162:24,
202:5, 205:14,
208:11, 212:18,
214:2, 215:9,
216:20, 218:5,
220:4, 262:24,
265:10
**reads**
216:17, 216:24,
219:18, 235:14
**ready**
42:14, 42:15,
82:18, 84:12,
84:16, 95:15,
206:23
**real**
20:12, 52:5,
122:6
**reality**
42:13
**really**
20:6, 22:16,
28:8, 44:4,
172:20, 189:3,
202:14, 202:19,
236:15, 248:8
**reason**
22:7, 31:5,
40:5, 41:5,
41:7, 45:21,
54:13, 58:7,
90:3, 115:18,
131:8, 145:14,
150:14, 163:23,
166:5, 175:21,
176:9, 177:21,
192:11, 193:10,
193:23, 199:23,
200:22, 206:3,
207:16, 207:22,
212:13, 215:14,
215:15, 217:9,
219:13, 220:18,
226:12, 229:11,
229:14, 231:17,

233:6, 234:5,
235:15, 240:2,
240:5, 241:5,
257:4
**reasons**
57:5, 58:1,
58:6, 87:6,
156:6, 166:1,
167:11, 167:12,
167:17, 167:20,
231:3
**recall**
20:6, 26:19,
27:1, 28:6,
30:2, 31:23,
36:20, 44:4,
44:17, 45:7,
55:15, 55:16,
55:20, 68:1,
87:5, 90:12,
93:13, 110:9,
113:11, 113:17,
114:3, 114:7,
115:9, 119:1,
119:3, 119:5,
123:2, 123:6,
132:18, 134:15,
139:13, 152:12,
152:17, 156:18,
162:2, 185:9,
185:14, 187:6,
200:7, 200:14,
200:15, 204:17,
221:10, 221:19,
229:23, 230:19,
239:17, 239:18,
239:22, 239:23,
242:1, 242:2,
252:5, 252:18,
253:9, 262:10
**received**
97:13, 211:8,
241:19, 241:21,
241:23
**receiving**
96:20, 97:8
**recollect**
220:3

**recollection**
126:22, 193:21,
196:21, 219:17,
225:19, 229:13,
235:17, 257:6,
257:9, 257:14,
257:17, 259:14
**record**
29:20, 36:23,
41:7, 42:23,
50:8, 54:21,
72:3, 73:20,
74:23, 75:1,
82:22, 93:2,
97:18, 106:12,
122:10, 124:3,
124:6, 124:23,
129:11, 139:4,
139:24, 140:2,
163:20, 189:14,
190:5, 190:7,
194:21, 202:2,
210:8, 210:20,
211:17, 211:20,
211:24, 232:2,
236:17, 236:19,
244:18, 254:11,
264:3, 265:6
**recorded**
17:12, 17:16,
47:22, 142:8,
246:20
**records**
18:4, 118:20,
124:16, 130:17,
136:15, 136:16
**recounting**
106:22
**recover**
88:2
**reduce**
58:16
**reduced**
265:9
**refer**
173:18
**reference**
149:7, 170:5,

190:15, 207:13
**references**
149:6
**referred**
143:5
**referring**
65:6, 76:16,
95:5, 125:1,
170:6, 247:3
**reflected**
53:10
**reflecting**
151:10
**refresh**
159:19, 177:12,
225:19, 253:19,
257:9, 257:14,
257:17
**regard**
124:22
**regarding**
182:10, 195:1,
237:2
**regardless**
164:20
**registered**
265:2
**regular**
82:6
**reiter**
5:13
**reject**
95:20
**relate**
84:7, 96:1
**related**
44:5, 54:24,
61:20, 150:24,
157:2, 157:23,
265:11
**relation**
103:6
**relationship**
91:22, 91:23
**relax**
125:2
**relay**
197:21

**relayed**
197:22
**released**
121:2, 121:12
**relevance**
25:8, 149:24,
152:6, 152:7
**relevant**
38:5, 43:5,
43:16, 145:21
**reliability**
55:7, 60:17,
67:2, 74:1
**reliable**
57:1, 65:10,
70:5, 71:23
**relied**
97:7
**relying**
198:14
**remain**
11:5
**remaining**
255:7
**remember**
10:6, 17:3,
17:7, 21:13,
21:17, 22:6,
22:11, 55:2,
103:2, 109:15,
116:12, 116:13,
120:3, 124:18,
124:21, 132:7,
132:14, 133:10,
133:11, 133:18,
133:20, 133:22,
133:23, 134:1,
134:2, 134:8,
134:13, 135:1,
146:23, 146:24,
153:13, 160:3,
188:18, 189:3,
192:1, 192:11,
193:9, 195:19,
197:13, 197:15,
198:19, 201:9,
202:9, 202:14,
208:6, 211:10,

212:11, 212:12,
214:1, 214:6,
215:8, 215:11,
215:12, 216:3,
216:4, 218:11,
218:12, 220:16,
221:15, 221:17,
221:18, 222:9,
230:6, 230:9,
230:11, 230:12,
230:14, 231:2,
231:19, 233:16,
235:15, 240:20,
246:15, 247:19,
248:18, 250:3,
250:7, 251:24,
252:1, 252:2,
258:11, 260:2,
260:3, 262:3
**repeat**
66:17, 72:1,
202:12, 211:16
**repeated**
229:7
**repeatedly**
39:24
**rephrase**
10:11
**reply**
218:15
**reported**
2:1, 100:5,
100:9, 100:16,
100:20, 105:8
**reporter**
2:15, 8:11,
8:14, 10:4,
16:4, 29:21,
42:24, 50:9,
50:12, 66:13,
66:17, 66:22,
72:4, 82:23,
93:3, 97:19,
106:13, 122:11,
129:12, 163:21,
175:13, 175:14,
202:3, 211:18,
232:3, 244:19,

254:12, 265:1,
265:3
**reporters**
245:22
**reporting**
149:8, 173:18,
174:1, 184:12,
184:18, 186:8,
190:14, 192:2,
192:18, 193:1,
226:18
**reports**
21:19, 21:20,
34:20, 43:19,
43:21, 43:23,
44:13, 51:4,
51:7, 52:13,
52:14, 60:15,
94:21, 94:23,
95:6, 95:7,
95:23, 96:16,
98:6, 119:19,
119:23, 120:3,
126:2, 126:4,
143:2, 146:13,
146:14, 147:19,
149:4, 152:10,
153:10, 156:14,
157:2, 157:21,
157:23, 173:17,
178:6, 199:1,
203:2, 223:12,
223:16, 227:1,
233:13, 248:1
**represent**
261:23
**request**
83:11, 138:15
**requested**
132:20, 226:19,
265:10
**requesting**
248:14
**require**
41:14, 41:18
**required**
31:22, 143:2,
143:4, 224:10

reserve
261:6
residence
171:8, 171:13,
171:14
respect
163:5, 262:5,
262:12, 263:9,
263:12
rest
221:5, 221:8
resulted
163:17
results
118:16, 164:20
resumed
191:1
retention
136:17
returned
172:9, 190:14
reveal
220:20
reverse
252:15
review
43:21, 51:8,
51:14, 52:23,
54:5, 75:13,
75:20, 75:24,
78:24, 91:21,
92:9, 92:23,
93:12, 94:21,
114:13, 159:13,
165:16, 177:11,
226:19, 233:23,
237:10, 248:1,
257:13
reviewed
44:5, 53:4,
53:8, 109:20,
119:23, 124:15,
140:12, 195:8,
227:1, 257:7,
257:8, 258:19,
259:2
reviewing
87:24, 120:2,

177:9, 263:1,
263:5
reviews
76:14
revised
223:7
reyes
8:5, 8:16,
9:23, 19:14,
44:14, 44:18,
45:15, 114:24,
115:5, 119:2,
123:12, 161:9,
181:18, 184:4,
184:8, 184:12,
185:4, 185:12,
192:20, 198:21,
208:3, 209:11,
213:22, 215:5,
215:17, 220:6,
226:14, 227:14,
227:20, 228:13,
230:22, 231:22,
233:15, 237:3,
237:7, 237:14,
238:14, 246:7,
246:13, 246:17,
247:2, 248:9,
249:4, 250:17,
251:4, 251:12,
251:15, 251:18,
252:3, 252:7,
253:8, 253:10,
253:20, 255:11,
255:19, 256:21,
257:15, 257:18,
257:24, 259:8,
259:11, 260:10,
262:1, 263:10
reyes's
258:20
reynaldo
1:8, 1:14, 8:5,
121:9
rfc
143:14, 161:9,
194:19, 194:22,
201:14

rican
180:17, 181:3,
181:4
richard
5:7
rick
6:12
rid
17:24, 216:18,
217:1, 218:1
right
12:4, 15:18,
17:9, 18:6,
22:1, 24:22,
33:6, 39:2,
51:9, 52:10,
52:24, 60:13,
61:13, 62:12,
63:18, 65:10,
68:14, 71:5,
71:22, 75:6,
75:21, 83:5,
84:22, 85:23,
91:8, 94:24,
95:9, 101:7,
102:24, 103:13,
105:13, 107:10,
108:19, 108:20,
108:24, 109:5,
110:20, 111:7,
112:12, 116:10,
116:15, 118:5,
127:24, 129:16,
129:20, 129:22,
136:11, 138:13,
145:23, 146:9,
152:24, 154:20,
155:14, 155:15,
156:23, 157:17,
160:8, 164:2,
164:4, 164:8,
164:21, 166:18,
175:1, 175:9,
178:20, 189:19,
201:23, 206:9,
211:2, 211:3,
211:6, 217:19,
224:6, 228:10,

235:2, 239:16,
239:20, 240:13,
243:17, 246:22,
247:2, 247:8,
250:10, 257:24,
260:15, 260:21
rights
86:11
rip
244:23
rise
129:7
risk
58:2, 58:16
river
88:14
robbery
69:16, 88:16
robert
1:18, 2:2, 7:2,
8:3, 9:10, 264:1
rock
6:5
role
31:11, 31:12,
31:16
roles
23:13
room
14:12, 14:22,
15:12, 15:19,
24:22, 102:22,
103:15, 104:6,
105:4, 105:15,
108:18, 109:9,
111:4, 113:14,
113:18, 113:22,
133:3, 149:17,
175:5, 183:24,
185:18, 214:3,
222:10, 226:2,
229:4, 232:6,
232:7, 232:8,
232:14, 232:17,
249:3
rooms
11:14, 11:24,
12:3, 12:17,

12:22, 13:2,
13:3, 13:10,
13:17, 14:4,
14:7, 15:3,
15:13, 15:18,
15:24, 102:24
**rosauro**
118:22, 119:5,
119:10, 119:15,
120:5, 120:8,
120:15, 121:11,
155:10, 171:5,
171:9, 205:23,
207:5, 207:6,
207:8, 207:9,
207:12, 208:1,
208:14, 208:16,
208:18, 209:3,
209:18, 209:19,
262:9, 263:11
**rosendo**
254:21, 254:23
**row**
256:2
**rpr**
2:1
**ruiz**
171:7
**rule**
169:5
**rules**
10:3, 10:7,
10:9, 228:8
**run**
12:17
**running**
80:7, 80:8,
80:11
**rush**
136:1
**rutherford**
1:18, 2:2,
4:11, 7:2, 7:9,
8:3, 9:7, 9:10,
9:20, 51:3,
161:6, 191:1,
206:11, 229:6,
261:22, 264:1

**S**

**s-t-e-w-a-r-t**
94:4
**salazar**
125:18, 125:21,
126:1, 126:9,
126:13, 126:16,
160:11, 160:12,
162:12, 162:14,
162:15, 162:17,
162:22, 163:3,
166:3, 166:21,
168:10, 169:2,
184:22, 185:1,
201:17, 201:22,
202:9, 202:20,
202:23, 203:7,
203:14, 203:15,
203:20
**same**
33:10, 36:2,
38:1, 41:13,
45:6, 45:7,
56:14, 65:11,
65:16, 66:16,
67:10, 67:16,
69:8, 71:6,
74:5, 77:24,
79:23, 88:11,
92:7, 95:22,
99:8, 109:1,
109:6, 129:2,
147:22, 147:23,
150:22, 158:5,
171:17, 188:16,
221:4, 221:7,
235:11, 235:20,
235:24, 236:4,
253:21, 256:2,
262:6, 262:12,
262:14, 262:19
**sandwiches**
93:23
**santiago**
192:6, 225:3
**santopadre**
171:7

**sat**
15:2, 114:3
**save**
35:2
**saw**
40:19, 84:7,
112:10, 209:22,
212:1
**saying**
35:23, 36:4,
39:10, 40:14,
42:1, 59:18,
61:16, 62:1,
62:3, 63:2,
63:4, 64:2,
65:3, 70:9,
70:10, 70:24,
71:5, 72:22,
80:6, 121:19,
138:8, 153:3,
162:17, 169:7,
174:12, 181:23,
203:18, 208:7,
208:12, 213:18,
218:6, 220:6,
220:11, 224:24,
232:11, 234:1,
234:21, 247:7,
250:2
**says**
69:13, 71:18,
87:19, 91:2,
149:14, 152:1,
154:17, 155:19,
155:23, 160:7,
161:10, 162:4,
162:11, 166:20,
170:10, 171:4,
171:17, 172:8,
176:3, 176:21,
178:3, 178:16,
182:6, 182:9,
182:22, 183:22,
184:10, 184:18,
186:4, 186:7,
187:4, 192:17,
193:12, 196:5,
196:8, 201:16,

204:3, 204:7,
204:14, 205:14,
206:7, 207:6,
207:9, 207:12,
209:18, 209:21,
210:2, 210:9,
210:24, 212:1,
212:16, 213:10,
214:16, 215:7,
217:2, 218:18,
221:2, 226:9,
229:1, 229:22,
235:16, 238:14,
245:10, 249:12,
250:13, 251:15,
254:1, 254:14,
254:16, 254:17,
254:21, 255:10
**scenario**
69:24, 85:16,
87:7, 138:8,
157:15
**scene**
32:6, 32:24,
34:4, 34:23,
114:20, 128:2
**scratch**
188:1, 189:6
**screen**
106:15
**seal**
265:15
**search**
73:22, 118:20,
171:6, 171:8,
171:12, 171:18
**searched**
160:10
**searching**
60:20
**seat**
214:13, 214:16,
215:24
**second**
9:22, 11:11,
16:12, 16:20,
38:23, 65:20,
75:7, 134:20,

143:11, 175:2,
175:4, 175:18,
177:1, 211:15,
212:19, 223:11,
224:7, 226:1
**section**
144:6, 145:5,
146:16, 147:1,
147:7, 150:18,
177:12, 207:1,
213:12, 213:21,
220:5, 221:6,
256:9, 256:12
**see**
28:21, 44:20,
45:3, 46:9,
59:12, 60:8,
60:11, 114:4,
147:2, 147:5,
148:9, 148:16,
148:18, 149:4,
149:18, 150:24,
155:4, 159:6,
162:19, 169:22,
170:4, 171:19,
172:14, 175:6,
178:9, 179:3,
183:6, 185:7,
186:11, 191:3,
196:8, 201:15,
201:18, 203:2,
203:10, 204:7,
209:24, 211:14,
212:10, 212:13,
212:23, 214:14,
216:14, 216:19,
222:20, 229:9,
231:7, 238:20,
240:5, 248:1,
254:2, 254:21,
256:10, 258:13,
263:5
**seeing**
112:14, 185:9
**seek**
78:2, 84:12,
85:1
**seeking**
76:7, 83:17,

84:20, 85:5,
90:9
**seem**
181:14, 204:20,
208:10, 208:11,
233:2
**seemed**
180:12
**seems**
63:5, 64:13
**seen**
43:22, 44:12,
93:21, 93:22,
121:24, 133:11,
151:4, 151:9,
195:11, 228:3,
262:21
**send**
87:22, 117:20,
136:10, 138:13,
245:9
**sense**
11:10, 39:11,
39:20, 63:14,
63:15, 91:5,
91:14, 91:15,
91:18, 209:3
**sent**
135:24, 136:5,
137:16
**sentence**
166:20, 169:5,
171:3, 186:7,
216:24, 217:2,
217:16, 250:9,
250:10, 253:24,
254:8, 254:16,
254:17, 254:19
**sentences**
171:4, 204:6,
209:18, 216:8,
216:9, 217:24,
218:18, 250:9
**separate**
111:4, 142:9,
156:23
**sergeant**
19:11, 23:3,

24:23, 26:9,
26:12, 158:4,
158:7, 158:8,
158:9, 158:10,
187:20, 188:3,
188:13, 189:10,
189:11, 199:9,
199:23, 241:12,
241:20, 241:21,
242:15, 243:21,
244:15, 244:22,
244:24
**sergeant's**
15:14, 15:23,
243:13
**serious**
42:2
**serve**
180:21
**served**
30:3, 30:23,
30:24, 178:18
**services**
191:2
**serving**
29:14, 31:7,
31:11, 179:24
**set**
265:14
**setup**
205:9
**seven**
250:8
**several**
72:16, 91:6,
165:18
**shall**
84:17, 136:1
**share**
94:11, 95:24
**shared**
15:13, 96:5
**sharing**
94:13
**she'd**
136:14, 138:12
**sheet**
18:11, 18:13,

18:14, 18:24
**sheets**
17:13
**shift**
16:13, 16:14,
16:17, 17:4,
17:8, 21:11,
22:9, 186:22,
229:17
**shifting**
73:23
**ship**
137:12
**shoes**
235:9, 235:11
**shooting**
87:19
**shop**
88:18
**shops**
88:19
**short**
15:7, 74:24,
140:1, 190:6,
224:23, 236:18
**shorthand**
2:15, 265:1,
265:3
**shot**
71:1
**should**
53:18, 54:8,
54:14, 130:10,
130:14, 130:16,
130:23, 131:4,
131:9, 135:8,
158:2, 206:20,
223:4
**shouldn't**
10:6
**show**
107:4, 115:24,
141:21, 161:22
**showed**
36:8, 36:16,
37:19, 38:3
**showing**
36:20, 161:23

**shown**
160:13
**shows**
85:4
**side**
11:23, 12:2,
13:11, 14:7,
15:4, 161:24,
196:8
**sign**
51:12, 53:4,
140:21, 245:1
**signature**
199:6
**signature-9wmui**
265:17
**signed**
51:14, 51:15,
53:8, 110:2,
141:6, 171:5,
171:12, 200:6,
242:16, 242:17,
257:20, 257:21
**signify**
219:5
**signing**
265:10
**simpler**
72:8
**simply**
67:19
**since**
142:18, 188:5,
188:7, 245:6,
245:8, 258:7
**single**
128:24
**sir**
54:23, 140:5,
159:13, 161:11,
190:10, 194:20,
194:24, 238:16,
238:18
**sit**
14:18, 87:16,
93:20, 102:19,
113:4, 113:13,
113:18, 113:19,

113:23, 116:13,
188:18, 200:1,
220:18, 230:15,
231:16, 257:22
**site**
79:14, 82:17,
117:13, 117:20
**sitting**
109:9, 113:9,
113:22, 114:7,
243:12, 243:17,
243:18
**six**
250:8
**size**
232:17
**skip**
172:7, 217:2
**skipped**
217:17
**slang**
251:19, 253:15
**slip**
17:15, 184:21,
184:24
**slips**
184:20
**slow**
38:8, 40:22
**slower**
42:18
**small**
232:8
**solache**
1:11, 3:11,
8:6, 8:18, 8:20,
9:23, 115:2,
115:5, 161:9,
185:17, 185:20,
186:3, 193:13,
193:15, 193:19,
194:10, 198:22,
225:7, 261:14,
262:5, 263:11
**solache-reyes**
143:15, 194:19,
194:23, 201:15
**some**
11:14, 11:24,

12:1, 12:3,
12:16, 13:2,
13:4, 19:19,
20:12, 21:16,
21:20, 35:24,
44:20, 45:3,
48:1, 48:22,
50:2, 55:5,
55:23, 59:18,
60:7, 60:9,
60:16, 61:2,
61:5, 61:12,
68:3, 74:9,
77:20, 83:16,
85:17, 85:24,
86:11, 92:6,
104:14, 105:12,
109:5, 110:4,
110:16, 113:14,
117:15, 120:7,
128:22, 131:9,
137:21, 143:7,
157:8, 157:13,
169:1, 169:11,
170:2, 183:6,
183:14, 187:24,
188:23, 188:24,
189:8, 189:9,
199:22, 200:17,
204:24, 208:9,
246:6, 246:12,
250:10, 258:22,
261:6
**somebody**
27:19, 28:2,
28:23, 29:13,
35:21, 36:10,
48:18, 57:7,
57:13, 57:16,
58:3, 58:17,
59:24, 60:22,
62:8, 65:7,
73:23, 87:19,
87:22, 90:8,
97:1, 97:14,
115:21, 117:22,
118:5, 120:24,
121:7, 127:22,

129:7, 130:7,
131:3, 131:8,
136:9, 137:24,
150:12, 176:2,
197:6, 202:8,
220:24, 234:3,
239:7, 242:4,
243:20, 252:14
**somebody's**
170:11, 170:20
**somehow**
36:23, 130:14,
222:18
**someone**
30:7, 35:10,
58:24, 63:12,
174:8, 240:24,
243:3, 243:7
**something**
22:5, 33:17,
33:24, 35:12,
41:6, 52:19,
53:22, 53:24,
54:2, 55:13,
55:22, 57:13,
57:20, 58:10,
58:17, 61:23,
62:23, 63:13,
63:24, 64:12,
70:5, 70:9,
70:24, 71:8,
88:3, 88:5,
88:20, 91:2,
106:3, 106:22,
106:24, 107:12,
107:16, 113:8,
119:22, 157:14,
160:23, 161:3,
161:18, 161:21,
166:16, 173:13,
179:2, 187:8,
187:13, 187:18,
222:15, 239:1,
245:6, 253:12,
255:15, 259:22,
259:24, 260:22,
263:4, 263:8
**sometimes**
27:16, 27:22,

51:13, 59:12,
60:11, 93:7,
102:9, 102:23,
143:9
**somewhere**
145:3, 148:17,
148:23, 149:3,
260:5
**soon**
137:21
**sorry**
16:4, 16:14,
25:6, 38:16,
49:18, 52:12,
54:16, 66:13,
66:18, 83:2,
122:3, 129:6,
144:19, 145:11,
156:5, 162:8,
171:3, 177:2,
188:10, 194:21,
199:15, 212:24,
260:4
**sort**
69:19, 89:7,
91:15, 164:10,
204:4
**soto**
16:23, 19:16,
21:6, 21:10,
21:15, 21:16,
22:8, 114:9,
114:19, 122:19,
125:5, 125:21,
126:20, 126:24,
127:13, 127:14,
131:13, 131:18,
141:16, 168:10,
169:19, 170:7,
178:6, 179:15,
192:5, 192:6,
207:15, 220:7,
225:2, 225:3,
258:21
**sotos**
4:15
**sotto**
261:12

**sound**
10:21, 11:3,
124:24
**sounds**
59:17, 218:6,
219:7
**source**
96:3, 98:2
**south**
5:14, 12:2,
12:12, 12:13,
13:4, 15:23,
171:8, 232:6
**spanish**
28:20, 28:22,
31:14, 31:15,
179:21, 179:23,
180:3, 180:6,
180:11, 180:14,
197:6, 197:19,
198:4, 198:11,
198:17, 226:20,
227:4, 227:8,
248:8, 248:13,
251:8, 251:11,
251:18, 251:19,
251:23, 252:14,
253:20, 253:23,
255:15, 255:16,
256:5
**spanish-speaking**
252:2, 252:7
**speak**
27:17, 50:22,
82:19, 83:10,
94:8, 108:9,
179:22, 180:5,
198:4, 198:11,
227:3, 248:7,
251:18, 251:23,
253:23, 255:16
**speaker**
197:19
**speaking**
39:9, 94:15,
226:20
**speaks**
227:8

**specialist**
26:22, 27:12
**specialists**
23:11, 24:17,
25:3, 25:7
**specific**
23:20, 67:4,
72:19, 114:14,
146:1, 163:4
**specifically**
84:20, 93:24,
124:14, 147:17,
216:5
**speculating**
231:16
**speculation**
16:3, 16:6,
61:4, 61:15,
61:22, 62:16,
62:21, 63:7,
64:7, 64:17,
64:24, 66:21,
68:18, 69:1,
70:8, 70:21,
72:6, 72:15,
74:4, 74:12,
76:5, 76:11,
77:2, 77:11,
77:18, 78:10,
78:19, 79:4,
82:11, 83:15,
84:4, 85:11,
86:9, 87:13,
90:1, 92:1,
95:17, 108:6,
136:13, 138:3,
145:10, 166:13,
168:5, 169:14,
183:18, 188:12,
231:18, 242:23,
253:17, 256:3,
259:19
**speed**
21:5, 199:24
**spell**
94:3
**spelling**
263:7

**spend**
150:2
**spoke**
10:2, 28:7,
28:8, 28:20,
197:6, 197:7,
198:17, 209:19
**spoken**
81:3, 85:16,
85:23, 225:21
**spot**
211:14
**spots**
102:22, 110:2,
209:23, 212:2
**square**
117:7
**st**
265:15
**stab**
220:9
**stabbed**
36:7, 36:9,
36:17, 37:3,
38:3, 38:4,
192:20, 193:3,
220:6, 220:11,
220:13, 225:6
**stabbing**
36:8, 37:20,
43:4, 43:14
**staff**
14:17, 14:21
**stained**
213:2
**stains**
209:20, 210:3,
210:10, 211:1,
211:7, 212:10
**stainthorp**
3:13, 8:19
**stamped**
7:11, 7:12,
161:9, 194:19,
194:22
**stamps**
175:11
**stand**
18:17, 154:23,

233:2
**standing**
150:5
**stankus**
4:12
**start**
25:21, 38:24,
42:19, 102:16,
205:14, 212:18,
212:22, 217:20,
246:7
**started**
117:15, 117:17,
185:24, 186:21,
200:15, 246:21
**starting**
12:11, 12:13,
38:22, 122:5,
224:13
**starts**
12:10, 187:21,
217:21, 246:11
**state**
2:16, 78:23,
117:4, 265:21
**stated**
17:23, 172:11,
235:10
**statement**
56:24, 67:12,
67:20, 67:23,
69:17, 70:16,
70:23, 71:3,
76:22, 81:13,
85:18, 85:24,
86:20, 87:8,
88:4, 100:8,
100:9, 100:15,
100:16, 100:20,
100:22, 100:23,
101:4, 101:6,
101:13, 101:17,
101:19, 101:24,
102:13, 103:5,
103:10, 103:12,
105:5, 105:8,
108:19, 109:4,
109:11, 109:18,

109:19, 109:21,
109:23, 110:1,
110:3, 110:14,
110:15, 110:24,
111:7, 111:19,
111:22, 145:16,
155:11, 176:22,
201:21, 202:13,
202:16, 211:2,
213:5, 223:9,
223:11, 223:17,
230:24, 231:23,
232:22, 262:2,
262:9, 262:11,
262:18, 263:1,
263:6
**statements**
55:7, 58:24,
60:1, 62:9,
68:2, 100:1,
100:5, 102:3,
102:9, 102:10,
102:20, 102:24,
104:14, 111:14,
112:24, 155:10,
194:2, 194:9,
217:6, 221:1,
221:3, 223:7,
223:15, 227:2,
227:13, 227:18,
228:14, 228:18,
231:4, 233:24,
245:22, 262:7,
262:23, 263:14,
263:15, 263:17
**states**
1:1, 154:9,
226:24
**states's**
82:17, 86:2,
99:4
**station**
75:14, 75:16,
76:1, 79:1,
80:1, 80:20,
81:5, 87:2,
89:16, 89:18,
98:18, 112:6,

119:6, 121:8,
126:24, 127:9,
130:7, 233:10,
235:19
**stats**
155:9
**stay**
105:4, 205:23,
207:5
**steals**
235:23
**stenographically**
265:8
**step**
61:18, 64:11,
84:17, 104:10,
104:18, 104:23,
105:10, 173:5
**stephens**
171:7
**steps**
51:5, 51:7,
62:10, 77:7,
79:11, 79:19,
79:22, 144:12
**stewart**
93:17, 94:3
**stick**
47:3
**still**
10:11, 10:15,
17:22, 22:4,
79:6, 80:8,
80:18, 81:1,
83:4, 97:20,
105:9, 137:4,
157:8, 162:10,
166:7, 168:20,
215:9, 234:22,
235:10, 235:24,
236:3
**stole**
88:20
**stop**
38:11, 38:20
**stories**
73:23
**story**
59:1, 67:2,

68:11, 70:2,
74:2, 90:15,
90:21, 91:5,
107:11, 108:3,
166:3, 211:12
**straight**
90:15, 90:22
**strange**
207:24
**street**
2:6, 3:6, 6:6,
8:8, 117:7,
132:8
**stressing**
57:17
**strike**
15:1, 19:15,
21:14, 26:3,
30:23, 31:8,
32:21, 35:21,
36:10, 37:1,
43:2, 45:14,
47:11, 48:11,
51:2, 51:5,
65:4, 68:9,
73:1, 78:23,
85:3, 89:1,
94:5, 95:4,
99:3, 103:21,
108:16, 111:4,
111:11, 112:20,
114:4, 116:3,
116:12, 119:3,
125:14, 126:7,
138:15, 154:3,
167:19, 167:21,
170:18, 173:4,
174:6, 178:17,
180:7, 181:16,
193:17, 194:1,
208:24, 215:14,
221:5, 235:18,
237:21, 237:22,
241:7, 241:8,
246:4, 257:10,
258:17, 259:8,
260:8
**strive**
68:4

**study**
52:6
**subject**
55:2, 114:8,
217:21
**submission**
154:24
**submit**
153:14, 153:24,
156:11, 156:13,
169:20
**submitted**
51:9, 52:24,
151:16, 151:20,
151:22, 151:24,
152:1, 152:4,
152:11, 152:22,
152:23, 153:20,
154:20, 155:21,
156:1, 157:3,
157:8, 157:21,
157:23, 159:1
**submitting**
153:19
**subpoena**
135:23, 136:2,
136:4, 136:8,
136:9, 136:22,
137:11, 138:13,
138:21
**subpoenaed**
134:3, 135:16,
136:15
**subpoenas**
137:23
**subsequent**
59:12, 78:5,
85:6, 86:5,
86:21, 87:10,
223:14
**substantial**
261:1, 261:2,
263:6
**substantiated**
182:24
**successfully**
180:2
**suffice**
128:19

**sufficient**
86:1
**suggest**
39:10
**suggests**
179:10
**suite**
4:7, 4:17,
5:15, 6:7
**summarize**
43:12, 141:24,
184:2, 253:3
**summarized**
177:16, 185:20,
260:14
**summarizes**
159:15
**summarizing**
205:20
**summary**
176:22, 184:11,
224:23, 225:10,
241:14, 245:20,
259:20, 263:2
**summation**
142:20
**sup**
48:16, 50:18,
222:20
**supervision**
265:9
**supervisor**
18:21, 23:13,
25:24, 154:1,
166:14
**supervisor's**
12:1
**supervisors**
11:15, 12:21,
15:2, 23:9
**supplemental**
52:17, 53:20,
95:7, 157:2,
164:13, 222:11
**supplementary**
34:1, 43:23,
44:13, 48:1,
48:6, 50:4,

50:24, 51:4,
51:7, 52:12,
52:14, 52:21,
53:15, 95:6,
95:14, 95:23,
140:9, 143:3,
148:10, 157:12,
157:17, 157:21,
183:7, 183:15,
223:5, 223:16,
223:18, 225:15,
244:14
**supposed**
127:23, 137:23,
144:5, 164:3,
164:20, 164:24,
242:6
**supposedly**
28:17
**sure**
16:10, 18:19,
19:10, 19:13,
25:20, 38:8,
38:21, 42:18,
42:21, 48:6,
48:16, 50:16,
51:18, 53:8,
54:14, 55:11,
56:8, 56:24,
61:12, 65:3,
66:19, 71:22,
79:17, 81:2,
81:10, 90:14,
97:10, 103:3,
104:20, 106:21,
109:24, 114:18,
115:23, 117:3,
117:17, 118:13,
122:6, 122:8,
129:22, 134:3,
136:20, 137:10,
140:7, 152:19,
152:20, 153:6,
157:5, 170:9,
190:4, 202:6,
206:13, 206:24,
223:8, 243:24,
244:8, 247:6,

247:24, 254:18,
255:8, 260:6,
262:4
**surprise**
49:11
**surprising**
49:15, 49:16
**susler**
3:12, 8:17,
40:11, 261:15
**suspects**
22:18, 23:1,
23:16, 24:7,
24:14, 24:18,
25:4, 29:1,
30:8, 30:14,
31:10, 56:10,
56:23, 66:5,
85:14, 99:12,
100:2, 100:5,
112:11, 121:22,
127:13, 127:16,
131:13, 131:18,
179:11, 180:2,
180:23, 181:7,
181:12, 228:18,
234:24
**switching**
145:24
**sworn**
9:9, 9:11, 11:7

---
**T**
---
**table**
93:20
**take**
9:17, 10:18,
10:20, 11:2,
60:23, 62:10,
74:20, 93:14,
100:1, 100:4,
100:8, 100:19,
100:22, 101:3,
101:5, 101:12,
101:19, 101:24,
102:3, 103:10,
103:12, 103:14,
109:11, 109:18,

111:17, 117:21,
117:23, 138:18,
138:19, 139:9,
139:21, 183:21,
187:5, 194:18,
196:20, 213:4,
216:2, 217:3,
218:3, 218:13,
236:7, 236:12,
236:13, 243:11,
244:21, 245:22

**taken**
8:3, 74:24,
77:7, 88:21,
95:21, 102:10,
105:5, 116:9,
126:9, 140:1,
155:9, 173:6,
185:3, 185:8,
190:6, 213:7,
236:18, 259:17,
262:7, 265:5,
265:8

**takes**
79:1

**taking**
74:21, 76:22,
101:17, 102:12,
102:19, 108:19,
154:24, 170:21,
200:23, 208:2,
208:7, 222:4,
222:7, 222:10,
234:2, 234:4

**talk**
10:6, 45:22,
54:6, 59:16,
80:18, 80:21,
81:5, 81:10,
81:17, 81:21,
83:18, 83:20,
83:22, 83:23,
84:5, 84:8,
87:24, 89:18,
91:1, 91:2,
94:22, 98:24,
99:9, 99:10,
104:11, 172:20,

220:24, 254:19

**talked**
11:12, 16:11,
31:21, 32:1,
54:23, 55:5,
94:20, 103:13,
120:10, 124:18,
164:18, 178:24,
222:8, 247:2,
247:5, 247:8,
247:21

**talking**
12:11, 18:5,
18:23, 24:23,
25:23, 55:2,
63:18, 67:7,
67:9, 68:6,
69:23, 79:17,
88:17, 99:19,
146:4, 147:16,
202:7, 219:7,
222:5, 256:23,
257:5

**technicians**
116:4

**tell**
18:11, 23:3,
23:4, 40:15,
53:17, 54:2,
55:21, 56:8,
58:9, 59:17,
60:4, 71:21,
74:7, 74:14,
88:12, 91:20,
99:16, 108:12,
108:13, 114:16,
119:8, 123:11,
134:9, 141:19,
159:10, 163:7,
164:8, 166:8,
177:7, 180:7,
180:9, 180:15,
182:11, 184:14,
187:10, 199:1,
200:6, 202:17,
203:1, 216:5,
224:12, 227:6,
230:7, 231:20,

233:17, 235:11,
239:11, 247:9,
247:13, 251:9,
252:14, 252:16,
259:8, 259:12

**telling**
57:8, 57:13,
58:17, 59:1,
59:5, 59:8,
59:20, 62:11,
62:19, 63:5,
63:12, 64:21,
65:4, 65:9,
67:2, 68:11,
69:7, 69:19,
70:5, 72:9,
198:9, 198:15,
208:1, 209:2,
213:13, 218:7,
218:9, 234:24

**tells**
64:12, 68:20,
69:4, 71:7,
73:1, 73:2,
207:12

**ten**
15:8, 66:14,
232:10, 261:8

**tenders**
20:15

**term**
20:1, 20:3,
20:9, 250:22,
251:5, 253:2,
253:15, 253:20

**terminology**
250:17

**terms**
23:8, 37:18,
68:8, 68:10,
79:10, 82:16,
101:12, 103:5,
121:3, 121:14,
181:16, 181:21,
193:5, 230:16,
237:20, 237:23

**test**
67:1, 171:24,

172:13, 173:24,
262:23

**test"**
171:19

**testified**
9:11, 124:10,
132:3, 178:22

**testify**
139:15, 258:13

**testimony**
11:18, 13:7,
13:13, 13:19,
14:10, 15:6,
15:16, 16:2,
74:13, 78:17,
91:10, 142:17,
145:1, 153:5,
157:20, 164:6,
178:1, 223:20,
249:8, 263:2,
265:7

**text**
73:22

**th**
28:21, 117:4,
117:6, 132:8,
152:5, 155:21,
207:14

**thank**
66:22, 87:3,
94:2, 99:22,
146:3, 162:9,
190:20, 224:17,
227:17

**theft**
69:16

**themselves**
8:13, 58:3,
70:2, 138:10,
234:4

**thereafter**
265:8

**they'd**
113:19, 139:7,
149:1, 169:16,
243:11

**thing**
43:10, 51:20,

54:7, 57:7,
63:4, 64:15,
68:5, 69:12,
71:6, 78:6,
134:12, 161:23,
206:21, 234:2,
237:8, 251:7,
262:6

**things**
21:5, 21:19,
31:21, 32:1,
55:1, 55:6,
58:16, 59:21,
59:23, 60:4,
61:20, 62:18,
63:18, 64:20,
65:4, 66:24,
68:20, 69:4,
121:15, 124:12,
124:13, 143:1,
218:9, 234:22,
235:1, 259:6

**think**
24:11, 29:7,
30:1, 36:22,
38:23, 40:17,
42:13, 52:20,
54:14, 54:18,
62:5, 71:5,
84:11, 84:21,
85:24, 87:6,
87:16, 90:2,
90:5, 90:6,
120:22, 121:9,
125:8, 127:5,
130:23, 144:16,
149:2, 150:2,
150:12, 174:14,
179:18, 188:17,
200:22, 202:8,
202:13, 206:16,
206:20, 209:10,
216:23, 218:14,
222:16, 231:3,
233:6, 236:5,
236:22, 249:16,
251:2, 254:3,
260:5

**thinks**
76:13, 85:23

**third**
229:3

**thirds**
226:17

**thorough**
45:12, 46:1,
47:17

**thoroughly**
44:11

**thought**
52:15, 53:22,
97:11, 146:13,
219:20, 231:1,
236:5

**three**
12:21, 120:17,
165:22, 209:23,
212:2, 216:21,
234:19, 255:1

**threw**
87:20, 88:13,
88:15

**through**
89:4, 89:12,
89:19, 90:8,
90:10, 90:20,
91:6, 91:16,
107:11, 108:2,
110:11, 123:14,
123:18, 135:11,
137:12, 151:7,
159:9, 176:22,
188:2, 194:23,
203:5, 205:8,
214:13, 214:20,
214:21, 214:22,
214:24, 215:1,
219:23, 225:18,
248:9, 248:21,
257:12

**throughout**
144:10

**throw**
250:1

**tied**
156:9

**time**
8:10, 16:17,
16:18, 17:15,
21:19, 27:24,
39:6, 41:5,
56:9, 66:1,
66:4, 73:12,
84:21, 92:21,
95:12, 99:23,
104:16, 108:18,
109:16, 113:9,
119:22, 126:18,
126:23, 127:1,
127:7, 128:6,
132:7, 136:1,
137:21, 138:11,
139:1, 143:21,
150:3, 153:23,
154:24, 155:1,
155:24, 156:18,
158:5, 161:20,
171:17, 174:15,
174:16, 174:17,
174:20, 174:24,
175:11, 178:19,
181:17, 186:21,
189:2, 189:4,
189:18, 191:5,
191:15, 198:20,
200:8, 200:11,
200:15, 201:1,
201:3, 201:7,
201:10, 203:24,
206:5, 219:19,
220:4, 221:4,
221:7, 227:9,
228:16, 233:7,
233:18, 236:8,
236:9, 239:1,
239:7, 239:11,
239:13, 240:3,
240:7, 240:9,
240:12, 240:13,
240:16, 240:24,
241:4, 241:6,
241:23, 242:19,
242:21, 244:12,
255:24, 256:2,

260:17, 261:6,
262:15, 262:16,
262:19, 264:1

**timely**
158:2

**times**
39:13, 39:19,
40:21, 66:14,
72:16, 73:8,
86:18, 90:21,
91:6, 92:14,
103:22, 109:23,
123:11, 165:18,
165:23, 191:17,
191:21, 221:14,
221:16, 244:7,
258:2

**timing**
63:14

**today**
8:10, 10:12,
18:8, 87:17,
116:13, 188:18,
203:5, 225:18,
230:16, 231:16,
257:13, 257:22

**today's**
11:6

**together**
51:8, 52:23,
113:4, 113:9,
113:23, 114:7,
132:21, 133:2,
133:4, 173:8,
234:13

**told**
32:2, 34:21,
59:13, 60:12,
61:19, 72:20,
106:8, 106:18,
106:21, 107:3,
107:12, 108:4,
114:12, 120:12,
139:19, 183:16,
189:9, 205:15,
205:23, 207:3,
207:4, 207:9,
207:17, 209:20,

212:8, 213:3,
215:16, 216:18,
216:20, 216:21,
216:24, 217:3,
218:1, 218:2,
218:13, 231:7,
247:10, 247:13,
260:2, 262:21
**tom**
8:23
**tomorrow**
138:12
**took**
34:1, 44:22,
51:24, 52:3,
52:6, 102:8,
103:5, 138:11,
156:1, 156:2,
156:4, 156:7,
171:18, 171:23,
174:1, 201:7,
207:6, 207:7,
208:12, 222:5,
259:23, 260:12,
261:3, 263:14
**tool**
118:2
**top**
159:14, 161:9,
169:18, 177:8,
177:16, 184:16,
186:6, 186:7,
190:12, 190:19,
195:22, 195:24,
199:19, 205:13,
207:2, 238:4,
238:15, 241:10,
241:17, 242:5,
242:11, 242:16
**totally**
61:24, 62:23,
64:1, 70:23,
88:6, 189:7
**tow**
115:11, 115:15,
115:24, 116:8,
116:9, 258:16
**towards**
12:18

**towed**
115:12, 115:24
**track**
17:17, 57:22
**trained**
43:9, 43:18,
55:13, 55:17,
134:15
**training**
54:24, 55:15,
55:20, 55:22,
90:13
**transcript**
7:7, 175:12,
265:6
**translate**
28:6, 29:10,
31:15, 180:22,
255:15
**translated**
197:11, 251:24
**translating**
28:23, 197:24,
230:12, 230:18,
251:14
**translation**
28:10, 198:8,
198:14, 251:8,
252:17, 255:19,
256:5, 256:7
**translator**
27:20, 27:23,
28:2, 29:2,
29:14, 30:4,
30:24, 31:11,
31:12
**translators**
28:11, 28:16
**transport**
173:23
**travelled**
260:13
**treated**
105:2, 127:16,
127:22
**trevino**
4:12, 30:3,
30:7, 30:18,

31:9, 134:1,
178:4, 178:7,
178:12, 178:14,
178:18, 179:8,
179:14, 180:18,
182:3, 182:9,
182:12, 191:2,
192:17, 192:24,
197:3, 197:4,
197:7, 197:11,
197:12, 197:20,
197:21, 197:24,
202:18, 205:5,
208:7, 225:3,
229:6, 230:13,
230:21, 231:8,
247:20, 248:9,
248:22, 252:21,
253:5, 253:7
**trevino's**
198:8, 198:14
**trial**
124:8, 124:10,
124:20, 131:21,
132:1, 132:6,
132:9, 132:13,
133:7, 139:15
**trials**
131:22, 134:19,
134:23
**tricked**
250:15, 251:13,
251:15
**tricking**
250:21, 251:20
**trip**
258:21
**trouble**
181:8
**true**
30:5, 42:11,
42:14, 58:10,
58:18, 59:2,
59:5, 60:12,
62:11, 192:7,
193:5, 193:15,
193:18, 265:6
**truth**
57:17, 57:19,

58:8, 58:13,
58:22, 60:20,
63:10, 63:24,
65:21, 66:7,
68:4, 68:7,
69:19, 91:17,
91:19, 107:2,
118:3, 234:9
**truthful**
57:2, 65:10,
118:5, 122:14,
146:24
**truthfully**
134:12, 146:23,
192:1
**try**
34:6, 34:13,
34:18, 34:20,
35:2, 36:23,
50:11, 57:17,
57:22, 59:1,
61:16, 61:18,
62:1, 62:4,
62:6, 63:1,
63:3, 63:9,
63:21, 63:23,
64:1, 64:4,
67:13, 68:6,
70:10, 81:2,
88:1, 91:3,
91:17, 91:18,
107:3, 118:2,
167:21, 234:4,
234:6, 234:7,
234:20, 234:22
**trying**
58:21, 62:7,
66:6, 71:19,
88:14, 103:2,
146:16, 246:1
**turn**
54:17, 143:14,
155:3, 184:19,
186:5, 201:14
**turned**
158:18, 158:19,
242:6, 242:11,
243:4

turning
162:8, 182:18,
186:6, 200:8,
209:17, 216:7,
218:17, 226:16,
256:8
two
20:15, 115:19,
123:3, 123:10,
147:4, 170:24,
178:6, 182:6,
184:20, 192:21,
193:3, 209:17,
216:9, 216:20,
217:5, 217:24,
218:9, 225:6,
226:17, 235:23,
236:2, 255:4,
256:1
type
43:9, 43:18,
52:7, 108:1,
153:9, 153:11,
156:3, 161:11,
161:14, 223:10,
259:21
typed
153:9, 153:17,
174:4, 176:15,
222:24
types
148:15, 176:17,
223:12, 223:13
typewriters
153:10
typewriting
265:9
typical
47:4, 47:7,
47:10, 85:15,
85:19, 157:15
typically
26:2, 60:16,
113:13, 113:23,
135:3, 156:13,
157:10, 157:16,
173:5, 200:24,
228:16

typing
153:18, 156:10,
172:24, 173:1
typo
170:6

### U

uic
207:7
ultimately
120:19, 131:21
um
32:10
um-hmm
49:23, 53:1,
182:21, 200:10,
239:3
under
11:5, 55:17,
56:11, 152:1,
265:9
undermine
68:22, 69:6,
71:11, 72:12,
73:4
understand
9:24, 10:10,
10:12, 11:5,
11:22, 21:1,
21:23, 22:16,
27:7, 57:24,
65:13, 69:22,
72:23, 83:3,
84:18, 91:4,
103:7, 105:11,
120:15, 123:14,
123:18, 128:22,
129:23, 135:1,
145:7, 145:19,
148:6, 152:20,
157:10, 163:11,
170:5, 181:22,
199:18, 201:20,
213:5, 217:5,
227:3, 242:9,
251:2, 256:7
understanding
78:21, 100:7,

100:21, 101:11,
105:1, 136:14,
141:14, 146:11,
149:21, 151:24,
162:24, 164:19,
171:22, 181:2,
181:5, 184:8,
186:2, 187:18,
191:22, 198:7,
198:13, 214:6,
226:6
understood
10:15, 63:11,
67:13, 72:22,
157:20, 181:14,
213:18, 217:4,
218:3, 218:15,
223:2, 258:8
unfair
71:17
unfortunately
164:14
unit
117:16
united
1:1
unjustified
166:18
unless
86:10, 206:14,
234:6
unlikely
255:18
unreliable
71:21
unstable
70:23
until
77:8, 91:1,
95:19, 155:21,
234:12
unusual
46:15, 46:21,
46:22, 112:15,
154:23, 155:24
updated
77:22, 78:6
updates
77:15

upper
196:8
use
20:2, 21:18,
27:19, 27:22,
29:6, 173:13,
173:18, 174:19,
251:4, 251:9,
252:3, 253:10
useful
118:17
usefulness
118:15
uses
199:20
using
20:6, 20:7,
191:2
usually
76:12, 76:17,
81:23, 84:15,
95:23, 107:16,
108:23, 111:17,
113:4, 117:14,
117:23, 135:23,
138:7, 140:21,
156:5, 156:17,
173:7, 188:23,
201:6, 238:24

### V

vague
76:2, 89:22
vana
134:14
varga
5:3, 8:24,
155:9
vehicle
115:7
verbatim
96:2, 245:21,
245:22, 259:22
verify
59:1, 62:10
verifying
59:4
version
211:9

**versus**
9:24, 100:8,
100:16, 100:22
**victim**
37:3, 245:13,
254:1
**victim's**
192:19, 193:2,
196:2, 225:5,
238:7
**victims**
192:21, 193:4,
225:6
**video**
8:3
**videographer**
6:12, 8:2,
74:23, 75:1,
139:24, 140:2,
189:15, 190:5,
190:7, 236:10,
236:17, 236:19,
260:18, 263:24
**videotaped**
1:17
**view**
47:13, 73:5
**viewed**
162:13, 163:2,
167:4
**views**
121:3
**violent**
11:15, 12:20,
15:2, 15:22
**visually**
32:14, 34:3,
34:23
**voce**
261:12
**volition**
248:15
**volume**
1:18
**voluntarily**
235:19

**W**

**wacker**
5:14

**wait**
87:21, 190:23,
205:15, 207:3,
211:15, 216:22,
220:22, 232:20
**waited**
213:1, 215:4,
215:18, 215:20
**walk**
24:21, 24:22,
89:12, 89:19,
135:11
**walked**
89:4, 90:8,
90:10, 110:11
**wall**
11:13, 11:23,
12:2, 12:8,
13:11, 14:8,
15:4, 15:12,
15:14, 15:24,
196:24
**want**
11:8, 19:7,
41:7, 58:12,
68:5, 83:18,
83:22, 84:6,
88:20, 97:16,
107:2, 114:8,
114:14, 123:16,
124:2, 124:5,
128:6, 129:22,
135:2, 139:21,
150:6, 157:15,
159:7, 189:19,
189:20, 190:1,
216:9, 217:11,
232:5, 232:13,
234:6, 236:12,
254:19, 260:6,
261:5
**wanted**
101:3, 102:3,
117:19, 161:21,
182:11, 221:22,
228:1, 233:20,
243:3, 243:7,
243:20

**warrant**
78:2, 78:5
**waste**
174:17
**wasted**
174:14, 174:16
**watch**
16:20
**watching**
112:1
**water**
11:1
**way**
27:8, 36:7,
52:3, 58:8,
58:10, 60:5,
60:9, 61:10,
62:8, 63:16,
147:24, 158:23,
159:20, 162:2,
180:7, 180:9,
181:10, 181:13,
182:2, 223:13,
226:17, 229:19,
232:16, 250:13,
250:14, 250:16,
250:21, 251:13,
251:15, 251:20,
252:13
**ways**
128:22, 162:1,
188:3
**we'll**
10:20, 11:2,
216:14
**we're**
57:18, 73:12,
74:20, 99:19,
138:12, 150:2,
164:15, 245:21,
257:5, 263:22
**we've**
20:11, 258:17
**wearing**
212:16, 235:10,
235:19, 235:24,
236:3
**wednesday**
1:20

**week**
22:3
**weeks**
156:14
**wehrle**
5:3, 9:1
**went**
53:16, 63:13,
70:3, 88:18,
90:9, 99:11,
132:16, 132:21,
132:22, 132:23,
133:3, 133:13,
166:6, 171:7,
171:13, 172:2,
185:11, 191:11,
191:15, 191:23,
202:11, 203:5,
214:3, 214:13,
214:17, 214:22,
214:24, 215:1,
215:5, 215:21,
219:24, 230:16,
231:21, 233:18,
245:18, 259:4,
259:13, 259:23,
260:12
**weren't**
21:24, 47:10,
139:14, 143:2,
143:4, 202:11,
244:8
**west**
4:6, 4:16,
11:13, 11:23,
12:2, 12:8,
13:11, 14:8,
15:4, 15:24,
196:24
**whatever**
11:2, 12:24,
19:7, 21:22,
54:13, 58:12,
63:23, 69:15,
69:16, 94:20,
98:6, 111:16,
115:18, 116:1,
139:5, 145:22,

163:23, 167:23,
189:10, 189:21,
199:24, 247:7,
250:18
**whenever**
201:9
**whereof**
265:14
**whereupon**
161:6, 261:11
**wherever**
113:21
**whether**
36:24, 37:4,
37:5, 37:15,
37:18, 37:20,
59:1, 59:5,
59:20, 60:5,
61:11, 61:19,
62:10, 65:9,
65:21, 74:7,
91:12, 101:3,
101:5, 101:18,
104:5, 113:22,
118:4, 119:3,
119:5, 121:4,
121:14, 121:21,
126:7, 126:9,
126:23, 127:12,
130:8, 134:1,
169:2, 178:22,
179:1, 180:10,
180:17, 181:2,
181:10, 181:13,
187:8, 187:12,
196:15, 197:11,
197:23, 222:3,
222:5, 229:20,
230:13, 235:5,
247:22, 247:24,
256:19, 257:18,
262:8, 262:17,
262:24, 263:14
**white**
213:2, 255:5,
255:6
**whoever**
137:10, 137:22,

139:4
**whole**
138:18, 139:2,
139:10, 142:20,
150:18, 152:17,
205:10, 206:12,
206:21, 209:8,
216:10, 216:13,
217:7, 217:10,
217:12, 225:11,
237:8, 256:24
**wife**
183:1
**wind**
209:23, 211:13,
212:9
**wine**
209:20, 209:23,
210:3, 210:10,
211:1, 211:7,
211:14, 212:2,
212:10
**withdraw**
67:21
**withdrawn**
81:20
**without**
24:23, 25:4,
25:15, 25:23,
26:8, 26:14,
26:23, 29:11,
29:17, 30:11,
58:3, 60:24,
61:2, 86:22,
87:10, 89:20,
170:16, 171:2,
197:5, 233:15,
248:9
**witness**
9:9, 32:2,
32:10, 32:21,
33:14, 34:21,
34:22, 36:14,
40:23, 45:14,
64:12, 64:14,
66:23, 73:1,
74:19, 76:23,
79:24, 80:1,

80:2, 82:19,
83:8, 83:11,
83:24, 84:10,
85:23, 87:8,
90:14, 91:7,
99:6, 103:1,
103:14, 105:7,
105:20, 106:7,
106:16, 106:17,
109:5, 111:8,
129:21, 145:15,
146:18, 152:7,
161:22, 177:2,
177:5, 188:22,
189:21, 189:23,
190:4, 206:13,
216:23, 217:23,
224:5, 237:9,
249:21, 249:23,
262:24, 265:14
**witness's**
13:7, 13:13,
13:19, 14:10,
15:6, 15:16,
16:2, 16:7,
68:8, 74:13,
91:10, 142:16,
145:1, 153:4,
164:6, 181:22,
223:20
**witnesses**
22:13, 22:18,
66:1, 80:18,
80:21, 81:1,
81:3, 83:18,
84:6, 85:14,
99:11, 100:1,
144:4, 144:6,
144:9, 144:11,
144:16, 144:19,
144:20, 145:5,
145:6, 145:11,
145:13, 145:21,
146:7, 146:16,
180:11, 181:7
**woman**
125:20, 160:11,
160:14, 201:22,

204:21, 207:14
**word**
29:6, 51:11,
60:24, 90:18,
99:14, 246:1,
251:20, 252:3,
252:5, 252:8,
252:18, 252:20,
253:10, 254:20
**words**
103:18, 145:19,
184:21, 205:16,
225:21, 239:1,
242:9, 246:11,
251:23, 255:2,
255:4, 255:17
**wore**
235:9
**work**
16:15, 17:2,
17:4, 93:8,
103:15, 118:19,
185:23, 186:10,
186:13, 190:14,
245:8
**worked**
16:12, 16:14,
17:8, 21:15,
179:14, 179:18
**working**
17:6, 18:15,
21:9, 22:8,
45:11, 90:14,
126:18, 132:23,
171:15, 177:20,
177:22, 184:5
**wouldn't**
25:23, 35:24,
44:23, 45:8,
49:16, 51:10,
52:3, 58:7,
58:12, 62:24,
68:19, 74:8,
95:8, 95:23,
113:8, 135:14,
138:4, 202:11,
217:3, 232:9,
232:10, 234:11,

235:1, 235:5,
236:1, 257:20
**wrapped**
213:2
**wreck**
70:15
**write**
21:19, 21:20,
34:20, 35:14,
36:7, 36:8,
38:3, 110:14,
110:18, 110:19,
111:3, 111:6,
111:14, 150:2,
199:22, 200:24,
224:19, 224:23,
225:14, 226:10,
240:8, 240:13
**writes**
110:24, 111:1
**writing**
10:4, 52:21,
110:23, 111:21,
173:17, 173:19,
187:9, 201:10,
245:24, 253:19
**written**
45:17, 141:3,
141:10, 184:20,
187:18, 200:22,
201:11, 205:4,
221:4, 221:7,
223:4, 229:12,
238:1, 239:20,
240:7, 240:11,
253:12, 256:20,
259:17
**wrong**
16:14, 62:3,
99:16, 164:2,
164:8, 166:18,
222:18, 240:7,
240:12
**wrote**
34:1, 35:7,
140:14, 141:8,
146:14, 176:10,
176:14, 205:20,

205:24, 250:20

### Y

**yeah**
9:16, 12:9,
13:16, 13:20,
14:6, 15:10,
15:20, 18:1,
18:3, 59:16,
63:1, 66:11,
67:23, 67:24,
69:3, 71:1,
83:3, 83:16,
88:24, 93:10,
108:8, 108:10,
126:5, 129:4,
134:22, 135:7,
161:20, 169:9,
190:3, 206:19,
210:11, 215:8,
220:3, 231:7,
232:12, 234:15,
238:21, 243:15,
247:5, 254:13,
261:3, 261:19,
263:3
**year**
199:20
**years**
146:12, 146:13
**yelling**
40:8, 40:9,
40:10, 40:11,
40:13, 41:23,
41:24
**yellow**
213:3
**yesterday**
10:2, 11:9,
17:23, 31:21,
51:17, 51:22,
54:23, 93:7,
114:12, 140:11,
157:21, 164:18,
165:18, 198:3,
222:16
**yo**
212:1

**young**
20:15
**yourself**
116:14, 153:18,
232:20, 261:18
**youth**
12:10, 12:15,
23:12, 25:13,
26:5, 26:12,
178:4, 178:7,
178:23, 179:6,
179:18, 182:12,
191:2, 192:17,
192:24, 248:21

### Z

**zero**
97:5
**zibolski**
4:4, 8:21,
78:1, 78:20,
79:5, 82:12,
261:16
**zillion**
221:15

### $

**$200**
255:6
**$600**
204:7, 204:12,
204:15, 204:21,
205:1, 205:6

### .

**.0070**
3:18
**.1000**
6:9
**.3314**
4:19
**.3705**
4:9
**.5900**
2:8, 3:9
**.5971**
5:9
**.9123**
5:17

### 0

**00**
16:19, 172:18,
206:8, 219:10,
219:22, 227:10,
228:12, 229:16,
229:21, 230:22
**0015**
185:16
**0100**
204:7
**01028**
1:7
**0400**
212:23
**0430**
218:18, 218:21,
219:3, 221:7
**0500**
218:19, 218:22
**0530**
213:2
**0630**
186:9
**0730**
186:10, 186:14
**0800**
207:6

### 1

**1**
8:7, 139:24,
140:3
**10**
14:22, 16:9,
175:23, 177:8,
177:17, 182:5
**1028**
8:6
**1035**
196:5, 196:7,
196:9, 200:9
**11**
1:21, 8:11,
117:4, 149:15,
151:2
**1100**
190:13

**1180**
3:15
**12**
14:23, 74:23,
75:2, 182:19,
182:20
**120**
4:6
**1240**
4:17
**13**
184:16, 185:21
**14**
1:21, 8:11,
185:21, 186:6,
186:7, 190:10,
190:19, 224:2,
224:4, 224:14
**141**
4:16
**15**
16:9, 146:12,
226:16
**150**
93:19
**1500**
225:24, 230:23
**161**
7:10, 7:11,
7:12
**1700**
169:19, 226:22
**18**
1:7, 1:13,
1:20, 8:6, 8:7,
8:10
**1800**
229:2, 229:16
**1830**
171:5
**1840**
209:19
**19**
189:15
**1998**
16:22, 18:6,
56:1, 56:5,
116:24, 117:3,

117:8, 119:22,
152:2, 152:5,
154:18, 155:6,
155:17, 155:21,
156:20, 157:1,
162:5, 168:9,
171:11, 179:16,
258:7
**1:-cv**
1:7, 1:13, 8:6

---
**2**

---
**2**
190:5
**20**
155:4, 155:8
**200**
93:19, 255:4
**2000**
4:7
**2019**
1:20, 8:10,
265:16
**207**
161:9
**21**
155:4
**2100**
172:9
**22**
74:23
**2200**
6:7
**2230**
175:4, 176:5
**2300**
152:2
**2312**
1:13, 8:7
**2330**
183:22
**238**
143:15
**25**
14:12, 28:21
**257**
7:12
**259**
7:12

**26**
132:8
**260**
7:11, 194:19,
194:23
**261**
7:4, 201:15
**262**
205:13
**265**
1:24, 7:11,
194:23
**265708**
1:23
**27**
207:6, 255:6
**28**
207:14

---
**3**

---
**3**
189:15, 190:8
**3-5**
161:7
**30**
14:12, 16:18,
149:15, 151:2,
152:1, 152:5,
155:21, 171:11,
172:18, 175:23,
185:24, 186:19,
219:10, 219:22,
264:2, 264:3
**31**
265:15
**311**
2:6, 3:6, 5:14,
8:8
**312.243**
2:8, 3:9
**312.494**
6:9
**312.603**
5:9
**312.889**
5:17
**321**
6:6

**33**
75:2
**36**
236:17
**39**
117:6
**3rd**
3:7, 3:16,
151:2, 162:4,
168:9, 171:11,
175:23, 176:4,
184:5, 189:2,
203:6

---
**4**

---
**4**
219:10, 219:22,
236:17, 236:20
**40**
236:11
**400**
255:7
**41**
139:24
**44**
190:8
**4th**
16:12, 16:15,
16:22, 21:1,
21:6, 22:9,
119:7, 127:8,
156:20, 157:1,
185:23, 186:24,
199:16, 200:3

---
**5**

---
**5**
16:19, 219:10,
219:22, 227:10,
228:12, 264:2,
264:3
**50**
14:1
**500**
5:7, 221:7
**5200**
5:15
**56**
236:20

**57**
140:3
**5800**
162:11
**59**
190:5
**5th**
155:5, 155:10,
155:17

**6**

**6**
171:11, 172:18,
186:19, 229:16,
229:21, 230:22
**6034**
171:7
**60602**
4:8, 5:8
**60604**
4:18
**60606**
5:16
**60607**
2:7, 3:8
**60642**
3:17
**60654**
6:8
**6234**
171:8
**630.735**
4:19

**7**

**773.235**
3:18
**7th**
156:8, 199:14,
199:15, 199:16,
200:2

**8**

**8**
16:18, 185:24,
206:8
**866.786**
4:9

**9**

**9**
172:18
**93**
140:20
**98**
149:15, 162:11,
169:18, 171:4,
172:8, 175:3,
175:23, 176:5,
182:6, 183:22,
185:16, 190:13,
225:24, 226:21,
229:2

**{**

**{phonetic}**
134:14