# EXHIBIT OOOOO

```
 1            IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   ARTURO DeLEON-REYES,          )
                                   )
 4                Plaintiff,       )
                                   )
 5          vs.                    )   No. 18 CV 01028
                                   )   consolidated with
 6   REYNALDO GUEVARA, et al.,     )   No. 18 CV 02312
                                   )
 7                Defendants.      )
     _____    )
 8                                 )
     GABRIEL SOLACHE,              )
 9                                 )
                  Plaintiff,       )
10                                 )
          vs.                      )
11                                 )
     REYNALDO GUEVARA, et al.,     )
12                                 )
                  Defendants.      )
13

14            The video-recorded deposition of ERIC

15   SUSSMAN, taken pursuant to the Federal Rules of

16   Civil Procedure, before Donna M. Urlaub, Certified

17   Shorthand Reporter No. 084-000993, via Zoom,

18   on Tuesday, November 23, 2021, commencing at

19   10:02 a.m., pursuant to notice.

20        APPEARANCES:

21            LOEVY & LOEVY, by
              MS. RACHEL BRADY
22            (311 North Aberdeen Street, Third Floor
               Chicago, Illinois  60607
23             312.243.5900
               [!E-MAIL1])
24                appeared on behalf of the plaintiff
                  Arturo DeLeon-Reyes;
```

## Page 2

```
 1     APPEARANCES:  (Cont'd)
 2          PEOPLE'S LAW OFFICE, by
            MS. JAN SUSLER
 3          (1180 North Milwaukee Avenue
            Chicago, Illinois  60622
 4          771.235.0070
            jsusler@peopleslawoffice.com)
 5             appeared on behalf of the plaintiff
            Gabriel Solache;
 6
            ROCK FUSCO & CONNELLY, LLC, by
 7          MS. EILEEN E. ROSEN
            MS. JESSICA ZEHNER
 8          (321 North Clark Street, Suite 2200
            Chicago, Illinois  60610
 9          312.494.1000
            erosen@rfclaw.com
10          jzehner@rfclaw.com
               appeared on behalf of the defendant
11          City of Chicago;
12     THE SOTOS LAW FIRM, PC, by
            MS. CAROLINE JAMIESON GOLDEN
13          (141 West Jackson Boulevard, Suite 1240A
            Chicago, Illinois  60604
14          630.735.3300
            cgolden@jsotoslaw.com)
15             appeared on behalf of individual
            defendants except Guevara;
16
            LEINENWEBER BARONI & DAFFADA, LLC, by
17          MS. MEGAN K. McGRATH
            (120 North LaSalle Street, Suite 2000
18          Chicago, Illinois  60602
            312.663.3003
19          MKM@ILEsq.com)
               appeared on behalf of the defendant
20          Reynaldo Guevara;
21
22
23
24
```

## Page 3

```
 1     APPEARANCES:  (Cont'd)
 2          REITER BURNS, LLP, by
            MR. DANIEL BURNS
 3          (311 South Wacker Drive, Suite 5200
            Chicago, Illinois  60606
 4          312.982.0900
            dburns@reiterburns.com)
 5             appeared on behalf of the defendant
            David Navarro;
 6
            HINSHAW & CULBERTSON, by
 7          MS. JAMES M. LYDON
            (151 North Franklin Street, Suite 2500
 8          Chicago, Illinois  60606
            312.704.3000
 9          jlydon@hinshawlaw.com)
               appeared on behalf of Cook County
10          defendants;
11     COOK COUNTY STATE'S ATTORNEY'S OFFICE, by
            MR. PATRICK D. MORRIS
12          (50 West Washington Street, Room 500
            Chicago, Illinois  60602
13          patrick.morris@cookcountyil.gov)
               appeared on behalf of Cook County
14          defendants;
15     LAW OFFICES OF JOHN C. COYNE, by
            MR. JOHN C. COYNE
16          (20 North Upper Wacker Drive
            Chicago, Illinois  60606
17          312.929.4308
            jcc@johncoynelaw.com)
18             appeared on behalf of the deponent.
19     ALSO PRESENT:
20          MR. DEREK LETELLIER
            Certified Legal Video Specialist
21
            MS. CYNTHIA SOBOLEWSKI
22          Exhibit technician
23
24
```

## Page 4

```
 1
                         I N D E X
 2
 3     Witness:                                Page
 4          ERIC SUSSMAN
 5             Examination by:
 6             Ms. Rosen ...................      7
 7             Mr. Lydon....................     47
 8             Mr. Burns....................     48
 9             Ms. Brady....................     49
10             Ms. Susler...................     56
11             Ms. Rosen....................     60
12
13
14                   E X H I B I T S
15     (None marked.)
16
17
18
19
20
21
22
23
24
```

## Page 5

```
 1     VIDEO TECHNICIAN:  This is media unit one.
 2  We are now on the video record.
 3         This is the videotape deposition of
 4  Eric Sussman, being taken on November 23rd, 2021.
 5  The time is now 10:02 a.m., as indicated on the
 6  video screen.
 7         This deposition is being taken
 8  remotely by agreement of the parties by a court
 9  reporter certified to administer the oath and take
10  depositions.
11         This deposition is being taken on
12  behalf of the defendants and video recorded on
13  behalf of the defendants in the matters Deleon-
14  Reyes and Solache versus Guevara, et al.  The case
15  numbers are 18-CV-01028 and 18-CV-02312, filed in
16  the United States District Court for the Northern
17  District of Illinois, Eastern Division.
18         My name is Derek Letellier,
19  Certified Legal Videographer, representing Urlaub
20  Bowen & Associates, with offices in Chicago,
21  Illinois.
22         The court reporter today is
23  Donna Urlaub, also of Urlaub Bowen & Associates.
24         Counsel please  identify yourselves
```

Page 6

1 for the video record, state the parties which you
2 represent, and state your agreement to conducting
3 this deposition remotely.
4     MR. COYNE:  On behalf of the witness, John
5 Coyne.  Agreed as to the stipulation.
6     MS. ROSEN:  On behalf of the City of Chicago,
7 Eileen Rosen, agreed.
8     MS. GOLDEN:  On behalf of the individual
9 defendant officers, Caroline Golden, agreed.
10     MS. McGRATH:  On behalf of defendant Guevara,
11 agreed.
12     MR. MORRIS:  On behalf of the Cook County
13 State's Attorney's Office, agreed.
14     MR. LYDON:  On behalf of Karin Wehrle,
15 Heather Brualdi, Andrew Varga, and Thomas O'Malley,
16 Jim Lydon, agree.
17     MR. BURNS:  On behalf of defendant David
18 Navarro, Dan Burns, I agree.
19     MS. SUSLER:  And this is Jan Susler on behalf
20 of plaintiff Solache.  We agree.
21     MS. BRADY:  Rachel Brady on behalf of
22 plaintiff Reyes, we agree.
23     VIDEO TECHNICIAN:  If the court reporter
24 could remotely swear in the witness.

Page 7

1          (Witness sworn.)
2          ERIC SUSSMAN
3 called as a witness herein, having been first duly
4 sworn, was examined and testified as follows:
5          EXAMINATION
6 BY MS. ROSEN:
7     Q.  Mr. Sussman, how are you?
8     A.  Good.
9     MR. COYNE:  Eileen, real quick, just so I
10 don't have to interrupt you, John Coyne on behalf
11 of the witness, I said just wanted to make a record
12 of the fact that we will be adopting throughout
13 this deposition the facts, law, and arguments set
14 forth within the third-party respondent's motion to
15 quash this subpoena and deposition as set forth
16 within Docket Number 327.  And we would incorporate
17 those facts, law, and argument throughout this
18 deposition.
19          The Court has, for the record, ruled
20 on the assertion of privileges, including the due
21 process -- the deliberative process privilege, the
22 apex doctrine, and the work product doctrine.  So
23 we will abide, obviously, by the Court's ruling.
24          However, we will be strictly

Page 8

1 enforcing the following:  The three-hour time limit
2 on this deposition, all inclusive, number one.
3 Number two, no questions pertaining to the
4 decision-making process involving the certificate
5 of innocence as to these two plaintiffs.  And,
6 lastly, no questions to Mr. Sussman regarding
7 reasons for the dismissal of any of the other
8 criminal cases.
9          Having made that record, we're ready
10 to proceed.
11 BY MS. ROSEN:
12     Q.  Mr. Sussman, this isn't the first
13 deposition you've given in recent history as it
14 relates to your role in certain criminal
15 prosecutions as the first assistant at the Cook
16 County State's Attorney's Office; is that correct?
17     A.  That's correct.
18     Q.  I know that you gave a deposition in
19 the cases of Fulton/Coleman and Arthur Brown.  Are
20 there other depositions that you've given recently
21 in that regard?
22     A.  Not that I recall.
23     Q.  Have you had an opportunity to review
24 the transcripts from either of those depositions?

Page 9

1     A.  No.
2     Q.  Okay.  I am -- I have read the
3 depositions, and since we are limited in time, and
4 since we obviously have a lot of information about
5 you and your background, I'm not going to rehash
6 territory that's been gone over in those other
7 depositions, and going to really try and get to the
8 meat of the matters in this case.  Okay?
9     A.  I appreciate that.
10     Q.  Sure thing.
11          Can you just remind me how long you
12 were at the Cook County State's Attorney's Office?
13     A.  A little less than two years.
14     Q.  And approximately when did you start
15 and when did you leave?
16     A.  I started the 1st of December of 2016,
17 and I left, I believe it was effective the end of
18 May of 2018.
19     Q.  Okay.  And for the entire two-year
20 period or so that you were there, were you always
21 in the role of first assistant -- I was going to
22 say corporation counsel -- first assistant state's
23 attorney?
24     A.  Yes, I was.

1    Q.   Okay.  And in your role as first
2 assistant, did you become aware of two criminal
3 cases, People vs. Reyes and People versus Solache?
4    A.   Yes.
5    Q.   Do you recall when you first became
6 aware of those two criminal prosecutions?
7    A.   I don't recall the date, but I think I
8 became aware shortly after Judge Obbish had entered
9 an order granting a new motion -- hearing on the
10 motion to suppress.
11   Q.   And after Judge Obbish granted that
12 motion for a new hearing on the motion to suppress,
13 what was your involvement in the criminal
14 prosecutions at that point?
15   A.   At that point, my involvement was
16 talking with the chief of appeals and talking with
17 one of the ASAs who had been assigned as the lead
18 prosecutor on the case to discuss how we were going
19 to respond to the judge's request -- or the judge's
20 order, I'm sorry.
21   Q.   Who was the lead prosecutor ASA that
22 you're referencing?
23   A.   I think it was Jim Papa.
24   Q.   What unit was Mr. Papa assigned to at

1 that point in time, do you remember?
2    A.   I don't remember.
3    Q.   This case was in the -- it was -- the
4 procedural posture of the case at this time was in
5 post conviction; correct?
6    A.   That's correct.
7    Q.   So I know in some of the other cases
8 you testified about the Conviction Integrity Unit.
9 Am I correct in assuming that this case was not
10 reviewed by the Conviction Integrity Unit?
11   A.   I'm not aware that it was ever reviewed
12 by them.
13   Q.   And you were talking with the chief
14 of the Appeals Unit because there was perhaps a
15 consideration that you might appeal Judge Obbish's
16 order; is that correct?
17   A.   That is one of the things we considered,
18 yes.
19   Q.   Since there was no appeal taken, I take
20 it the decision was made not to do that; is that
21 correct?
22   A.   That's correct.
23   Q.   Do you recall why?
24   A.   I think given the fact-based nature of

1 the judge's opinion and the fact that, from what we
2 could tell, he had gotten the law correct, it just
3 did not seem like we would be likely to prevail on
4 appeal, and it didn't seem like the right way to
5 proceed.
6    Q.   After that decision was made, what was
7 your involvement in the criminal prosecutions?
8    A.   My involvement was kind of discussing
9 or strategizing how to proceed, whether there was a
10 way forward to proceed with the prosecutions and
11 with the suppression hearing.
12   Q.   Who were those discussions -- who did
13 you have those discussions with?
14   A.   Again, it's been probably four years,
15 so as best I can recall, Jim Papa, Alan Spellberg,
16 and I'm not sure whether Joe Magats participated in
17 the discussions or not.
18   Q.   Does Mr. Spellberg -- what was
19 Mr. Spellberg's title at the time of the criminal
20 prosecutions during this time?
21   A.   He was chief of appeals.  Sorry to
22 interrupt.
23   Q.   No worries.  He was chief of appeals?
24   A.   He was head of the appellate division,

1 yeah.
2    Q.   Was.  Okay, great.  And what was Joe
3 Magats' position at that time?
4    A.   He was head of the criminal section,
5 criminal division.
6    Q.   Okay.  And what, if anything, have you
7 reviewed in advance of your deposition here today?
8    MR. COYNE:  Eileen, you popped out a little
9 bit. I lost you.  I heard the first part, "what if
10 anything."
11 BY MS. ROSEN:
12   Q.   (Continuing) -- have you reviewed in
13 advance of your deposition here today.  Sorry about
14 that.
15   A.   I reviewed some of the transcripts that
16 were provided to me.  But that was all that was
17 provided to me.
18   Q.   And based on your review of the
19 transcripts, was your -- let me strike that.
20        The transcripts that you were
21 provided were from the hearing that occurred in
22 2017 in the motion to suppress; is that correct?
23   A.   I believe that was some of the
24 transcripts.  There may have been one or two others

Page 14

1 that were not directly on that hearing -- those
2 hearing dates.
3     Q.   Okay.  And did you notice from the
4 transcripts that Mr. Spellberg played a role in the
5 hearing on the motion to suppress?
6     A.   Yes.
7     Q.   What was the purpose of having
8 Mr. Spellberg participate in the motion to suppress
9 hearing?
10    A.   That he was -- that he knew the case,
11 that he was a good lawyer, and we just made a --
12 the three of us made a team.
13    Q.   When you say the three of you, it was
14 you, Mr. Papa, and Mr. Spellberg; correct?
15    A.   Yes, correct.
16    Q.   And oftentimes in the state's
17 attorney's office, prosecutors are referred to
18 first chair, second chairs, third chairs, to denote
19 their, I guess, experience level.
20         In this particular hearing, was
21 there a first chair, a second chair, a third chair?
22    A.   Not to my -- not to my knowledge.
23    Q.   Okay.  You actively participated in the
24 motions to suppress hearing; is that correct?

Page 15

1     A.   That's correct.
2     Q.   What if anything did you do to
3 familiarize yourself with the case before
4 participating in the motions to suppress?
5     A.   As best I can recall, I read a number
6 of the transcripts from the original trial.  I read
7 the confessions of the defendants.  I reviewed
8 Judge Obbish's order.  I believe I reviewed a
9 significant amount of case law on the standard --
10 the suppression standard and other issues relating
11 to voluntary or coerced confessions.
12    Q.   Did you review any of the police
13 reports that were prepared at the time of the
14 investigation?
15    A.   I did.
16    Q.   As you -- have you reviewed the
17 confessions recently?
18    A.   I have asked on numerous occasions to
19 be provided with the confessions by counsel from
20 both sides, and no one has provided them to me.
21    Q.   If at any point in time during the
22 course of this deposition, in order to help you
23 answer a question that I am asking you, you feel
24 like you need the confession, let me know.

Page 16

1         From my perspective, I don't think
2 it will be necessary, however.  But if you want
3 that, we'll be happy to provide it to you.
4         I think I actually did provide the
5 confessions to Mr. Coyne at some point.
6     MR. COYNE:  You actually sent them -- you
7 emailed them yesterday afternoon.
8     MS. ROSEN:  Okay, great.
9 BY MS. ROSEN:
10    Q.   In any event, as you sit here today,
11 do you recall that Mr. Solache gave a handwritten
12 confession?
13    A.   I -- that sounds right, but I don't
14 recall specifically.
15    MS. SUSLER:  This is Jan Susler.  I'm
16 just going to make attorney objection to the
17 characterization in the questions and form.
18    MS. BRADY:  We'll join.
19 BY MS. ROSEN:
20    Q.   And as you sit here today, do you
21 recall that Mr. Reyes gave a handwritten statement?
22    A.   I just don't recall whether it was
23 handwritten or not as I sit here today.
24    Q.   And do you know who Adriana Mejia is?

Page 17

1 Do you recall who that is?
2     A.   I believe I do, yes.
3     Q.   You recall Ms. Mejia to be --
4     A.   The woman who was involved in the
5 killings who had blood on her shoes, et cetera.
6     Q.   Okay.  And do you recall, as you sit
7 here today, that Ms. Mejia also provided a
8 handwritten statement?
9     A.   I believe she provided a statement,
10 yes.  I don't recall if it was handwritten.
11    Q.   Obviously the state's attorney's office
12 proceeded with the hearing on the motion to
13 suppress as evidenced by the fact that we have the
14 transcripts from that proceeding.
15         Was there a discussion about whether
16 or not the state's attorney's office had sufficient
17 evidence to defend against the renewed motion to
18 suppress?
19    A.   There was significant discussion, yes.
20    Q.   Okay.  And who participated in those
21 discussions?
22    A.   I recall myself, Mr. Papa, and
23 Mr. Spellberg.  I don't recall -- and possibly
24 Joe Magats, but I don't recall specifically other

Page 18

1  people who were involved in that discussion.

2      Q.   And what were the -- what was discussed
3  that led to the decision to defend the renewed
4  motion to suppress hearing?

5      A.   Well, I think a number of things were
6  discussed.  I just can -- all I can recall are the
7  kind of significant issues.

8           One was that there was a belief,
9  based on the evidence, that these individuals were
10  guilty, and that the confessions were not coerced,
11  based on kind of the -- the facts and circumstances.

12          And we discussed how to deal with
13  the fact that Detective Guevara had, up until that
14  time, asserted a Fifth Amendment privilege and
15  refused to testify.

16      Q.   With respect to the discussion about
17  the belief that, based on the evidence, the
18  individuals were guilty, do you recall specifically
19  what evidence the three of you discussed?

20      A.   The answer is I don't recall
21  specifically what we discussed.  I just know we
22  were all -- had made ourselves familiar with the
23  record and the materials, and that was the
24  conclusion that we reached.

Page 19

1      Q.   And then you -- with respect to the
2  discussions that the evidence supported that the
3  confessions were not coerced based on the facts and
4  circumstances, do you recall specifically what was
5  discussed?

6      A.   I do not recall specifically what was
7  discussed.

8      Q.   With respect to Detective Guevara, can
9  you -- do you recall what was discussed about how
10  to handle Detective Guevara in light of the fact
11  that up until that point in time, he had been
12  asserting his Fifth Amendment rights?

13      A.   We made a -- I mean, the discussion was
14  if there was a way to proceed without Detective
15  Guevara on the motion to suppress, and then to the
16  extent we believed, which we did, that we
17  could not proceed without Detective Guevara, the
18  question was how to proceed with him and whether
19  this was someone that we felt comfortable giving
20  immunity to.

21      Q.   Why did you -- why was the decision
22  made that you could not proceed without Detective
23  Guevara, do you recall?

24      A.   I -- as best I can recall, the decision

Page 20

1  was that there were too many instances where
2  Detective Guevara was the only person in the room
3  or was a critical witness in terms of establishing
4  the voluntariness of the confessions.

5      Q.   Did you know -- had you ever met
6  Detective Guevara before your involvement in the
7  Solache-Reyes cases?

8      A.   No.

9      Q.   Did you meet him at all throughout this
10  process?

11      A.   I don't think -- I mean, I saw him on
12  the witness stand, I spoke with his lawyer, but I
13  had no direct conversation with Detective Guevara.

14      Q.   Prior to your getting involved in these
15  two criminal prosecutions, had you heard of in any
16  way -- heard anything about Detective Guevara?

17      A.   Yes.

18      Q.   And had you heard of Detective Guevara
19  prior to taking the position as first assistant at
20  the Cook County State's Attorney's Office?

21      A.   No.

22      Q.   The information that you had about
23  Detective Guevara before your involvement in the
24  Solache-Reyes cases, where did that information

Page 21

1  come from?

2      A.   I don't recall all, but I think much of
3  it came from other cases in which Detective Guevara
4  was involved; but I don't recall the specifics of
5  those cases or anything more than that.

6      Q.   And I don't want to ask you questions
7  about the other cases, but when you're saying other
8  cases, you mean other cases that were in the Cook
9  County State's Attorney's Office, not other cases
10  reported in the media or something like that.

11      A.   Correct, other cases in the state's
12  attorney's office.

13      Q.   Okay.  And then after having made the
14  decision that you couldn't proceed in the motion to
15  suppress without Detective Guevara, what decision
16  was made with respect to how to proceed and how to
17  get him involved?  That's a bad question, but let
18  me -- let me start over.

19          After making the decision that you
20  could not proceed without Detective Guevara, what
21  were your next steps?

22      A.   Our next steps were to obtain an
23  immunity order and -- for Detective Guevara, and
24  obtain a similar letter of immunity from federal

Page 22

1 authorities.
2           (Audio interruption.)
3           I'm sorry I lost you.
4     Q.   I'm sorry.  When you say immunity
5 order, what is that?
6     A.   It has been a little while, but it's
7 basically an order from the court directing
8 Guevara -- us telling the court that we would not
9 prosecute Detective Guevara based on the substance
10 of his testimony, and then the court ordering him
11 to testify subject to -- and granting him immunity.
12    Q.   And then you said you also obtained a
13 letter from the federal government, DOJ, as well?
14    A.   Yes, correct.
15    Q.   And what was that letter?
16    A.   It was essentially a letter from the
17 Department of Justice saying something similar.
18 It didn't require a court order, but it was
19 essentially saying that they were not going to
20 prosecute Detective Guevara or use any of his
21 testimony to prosecute him if he testified truthful.
22    Q.   And you mentioned earlier that you had
23 conversations with Detective Guevara's lawyer.  Do
24 you recall who that was?

Page 23

1     A.   No, I don't.
2     Q.   Was it just one person that you were
3 dealing with, to the best of your recollection?
4     A.   You know, I don't know that I dealt
5 with him myself personally.  I think Mr. Papa may
6 have been the person dealing with him.
7           I believe it was Mr. Fahey, but I'm
8 just not a hundred percent sure.
9     Q.   In any event, discussions were had
10 with former Detective Guevara's counsel about the
11 immunity agreement and the State's desire to
12 utilize former Detective Guevara as a witness in
13 these prosecutions; correct?
14    A.   Correct.
15    Q.   And eventually Detective Guevara was
16 called to testify; is that correct?
17    A.   Correct.
18    Q.   And he was granted immunity; correct?
19    A.   He was.
20    Q.   And were you in the courtroom when
21 Detective Guevara testified?
22    A.   I was.
23    Q.   With -- did you or any -- not you
24 personally, but you or Mr. Papa or Mr. Spellberg,

Page 24

1 have an opportunity to prepare Detective Guevara in
2 advance of his testimony?
3     A.   No.
4     Q.   Is that something you would have wanted
5 to do?
6     A.   Yes.
7     Q.   Did you -- and when I say "you," I mean
8 you or Mr. Papa or Mr. Spellberg -- request the
9 opportunity to meet with Detective Guevara, former
10 Detective Guevara, in advance of his testimony?
11    A.   I believe we did make a request to meet
12 with him.
13    Q.   And what happened with that request?
14    A.   I think that request was denied.
15    Q.   His lawyer, presumably?
16    A.   I'm sorry.  By his lawyer, yes.
17    Q.   His lawyer?
18    A.   Yes.  My understanding is the request
19 was made to my attorney, and his attorney denied
20 the request.
21    Q.   Did his attorney provide any
22 explanation for why he would not allow you to meet
23 with former Detective Guevara in advance of the
24 testimony?

Page 25

1     A.   I don't recall.
2     Q.   So despite the fact that you, "you"
3 meaning the state's attorney's office, had to
4 provide former Detective Guevara a grant of
5 immunity in order to get him to testify, and the
6 fact that he would not meet with you in advance
7 of his testimony, you still -- you, the state's
8 attorney's office -- still decided to proceed with
9 the motion to suppress hearing; correct?
10          MR. COYNE:  Objection.  Objection to form.
11 Go ahead.
12          THE WITNESS:  Correct.
13 BY MS. ROSEN:
14    Q.   Why did you make that decision?
15    A.   Well, I mean, we had Detective
16 Guevara's testimony, his prior testimony, which was
17 given under oath.  We were not aware of any facts
18 suggesting that his testimony had changed.  So we,
19 I think, assumed we had a -- that we had a good
20 sense of what his testimony would be.
21          But I think we also proceeded
22 because that was our only option.
23    Q.   When you say it was your only option,
24 what do you mean?

Page 26

1     A.   I mean we would not have been able to
2  sustain our burden if he had not testified.
3          I think, you know, one of the things
4  that I didn't mention previously was that because
5  he had taken the Fifth Amendment during the post
6  conviction process, the judge had -- had drawn a
7  negative inference.  And the combination of that
8  negative inference and the lack of his affirmative
9  testimony would have meant that we could not
10 proceed, we would not be successful.
11    **Q.   Okay.  So the -- in a -- strike that.**
12         **You said two things.  You wouldn't**
13 **have been able to proceed, and you wouldn't have**
14 **been successful.  Are those -- are you using those**
15 **terms synonymously?**
16   MR. COYNE:  Objection; form.
17   THE WITNESS:  I think I -- I think I probably
18 am.  I mean, we could have proceeded with a
19 suppression hearing, but it would have been
20 pointless because we would not have been successful.
21 BY MS. ROSEN:
22    **Q.   Once the motion to -- once Judge Obbish**
23 **issued the order allowing for a new hearing on the**
24 **motion to suppress, had the state's attorney's**

Page 27

1  office at that point decided to abandon the
2  prosecution?
3     A.   I think there was discussion of
4  abandoning the prosecution, yes.
5     **Q.   Okay.  And who participated in that**
6  **discussion?**
7     A.   I just don't recall.
8     **Q.   Obviously the decision was made not to**
9  **abandon the prosecution; correct?  At that juncture?**
10    A.   That's correct.  At that juncture, yes.
11    **Q.   And do you recall the reasons for not**
12 **abandoning the prosecution at that juncture?**
13    A.   I think the basic reasons were that we
14 believed that they were guilty of the crime, and we
15 believed it was a -- a very serious crime and that
16 we should do everything we could to preserve the
17 conviction.
18    **Q.   And I -- do you recall how Detective --**
19 **generally speaking, how Detective Guevara -- former**
20 **Detective Guevara's testimony went?**
21    A.   Yes.
22   MR. COYNE:  Objection; form.
23 BY MS. ROSEN:
24    **Q.   And so you recall that basically he**

Page 28

1  testified -- I'm just summarizing because I don't
2  want to have to pull out testimony and all of
3  that -- but the gist of it was that he testified
4  that he had no recollection of this investigation.
5     A.   That was -- that was the gist of it,
6  yes.  That's what he -- that's what he testified
7  to, correct.
8     **Q.   Okay.  And at the conclusion of his**
9  **testimony, is it fair to say that he ultimately**
10 **provided virtually no testimony?**
11    A.   I'm sorry, you went out there.
12   MR. COYNE:  Eileen, I didn't hear the last --
13   MS. ROSEN:  Yeah, let me start over.
14 BY MS. ROSEN:
15    **Q.   Is it fair to say that at the**
16 **conclusion of Detective Guevara's testimony, he**
17 **provided virtually no substantive evidence to rebut**
18 **the allegations that were being made by Mr. Solache**
19 **and Mr. Reyes regarding the voluntariness of their**
20 **confessions?**
21    A.   I believe with the exception of maybe
22 one or two questions about whether he hit them or
23 something, I don't recall, but I believe the judge
24 pressed him on at least one of those issues, that's

Page 29

1  correct.
2     **Q.   And at that point, the strategy was to**
3  **move to admit his prior testimony; is that correct?**
4     A.   That's correct.
5     **Q.   What was the basis for the decision to**
6  **move to admit the prior testimony?**
7     A.   Just based on the law of, you know,
8  being able to use that testimony substantively
9  either to impeach him -- well, really to impeach
10 him.
11    **Q.   And the hope at that point, I take it,**
12 **was that that would be enough to at least rebut the**
13 **allegations that Mr. Solache and Mr. Reyes were**
14 **making so that you could get to the next step; is**
15 **that correct?**
16    A.   Yes.  And to remove the judge's
17 presumption upon him taking the Fifth.  So we both
18 kind of (a) we thought that could be enough, and
19 (b) it removed the negative presumption of him
20 taking the Fifth Amendment which the judge had
21 previously adopted.
22    **Q.   And the judge did allow that -- that**
23 **testimony to come in, right?**
24    A.   He did.

Page 30

1    Q.    (Audio interruption) -- persuade him
2 that it was enough to deny the motion to suppress;
3 correct?
4    A.    That's correct.
5    Q.    Had the judge determined that that
6 testimony was enough to get you to the next step,
7 what would the next step have been procedurally?
8    MR. COYNE:  Objection; foundation.  Go ahead.
9    THE WITNESS:  Well, I mean, it's been a
10 while, but my understanding is that the next step
11 procedurally, if he -- if he had denied the motion
12 to suppress, would be that the -- we would have
13 prevailed in the post conviction matter.  That's
14 my -- that's my recollection.  It's been a while.
15 BY MS. ROSEN:
16    Q.    Once the motion to suppress was
17 granted, what were (audio interruption) his options
18 at that juncture with respect to whether or not to
19 proceed with the prosecution?
20    MR. COYNE:  Eileen, could I hear the question
21 again?  You cut out.
22    MS. ROSEN:  Okay, sorry, I'll say it again.
23 I don't know why this is happening, why I'm having
24 this problem, but it's a new computer and I'm

Page 31

1 having audio issues.  Sorry about that.
2 BY MS. ROSEN:
3    Q.    With respect to -- once the motion to
4 suppress was granted with respect to the statements
5 of both Mr. Solache and Mr. Reyes, what was the
6 decision-making process on the next steps?
7    A.    You know, as best I can recall, the
8 decision-making process was did we have sufficient
9 evidence to retry the case against Mr. Solache and
10 Mr. Reyes.  And the decision was made that we could
11 not meet our burden without the confessions.
12    Q.    And in that decision-making process,
13 did you evaluate the other evidence in -- that
14 existed in the case separate and apart from the
15 confession?
16    A.    Yes, we did.
17    Q.    Specifically did you evaluate what
18 Adriana Mejia said about Mr. Solache and
19 Mr. Reyes's involvement in the double murders and
20 double kidnappings?
21    A.    Yes.
22    Q.    And did you make a -- and with respect
23 to Ms. Mejia's statements, what conclusion did you
24 reach regarding whether or not that evidence could

Page 32

1 be utilized in a prosecution of Mr. Solache and
2 Mr. Reyes?
3    A.    Well, I think if -- if I'm -- again, as
4 best I can recall, the decision was that -- or in
5 our process, we evaluated whether we could get her
6 to testify.  I don't know that we were in a
7 position to be able to do that.
8         And a question was also raised as to
9 even if we were able to secure her cooperation and
10 her testimony, whether, given many of her past
11 statements about Mr. Solache and Mr. Reyes, whether
12 that testimony would have been sufficient to help
13 us meet our burden, and we concluded it wouldn't
14 have been.
15    Q.    You said whether or not you could get
16 her to testify.  What were you specifically
17 referring to?
18    A.    Whether we'd reach some type of a
19 cooperation agreement with her in which she would
20 agree to testify.
21    Q.    Did you attempt to reach out to
22 Ms. Mejia in an effort to procure some type of
23 cooperation agreement?
24    A.    I don't believe we did.

Page 33

1    Q.    Do you recall why not?
2    A.    As best I can recall, it was because
3 the problems with her prior statements and her
4 prior testimony were going to be too big to
5 overcome.  And -- but I do recall, and I don't know
6 the basis for this, that there was -- there was
7 feeling that she would not be amenable to
8 cooperation in any event.
9    Q.    And when you say problems with her
10 prior statements and testimony, what specifically
11 are you referring to?
12    A.    You know, again I would have to have
13 all of the confessions and testimony to look back
14 on, but I believe that there were things that --
15 there were allegations that she made about
16 Detective Guevara, and, you know, his treatment of
17 her, and possibly even his treatment of those
18 individuals, that would -- that would make --
19 that would make her testimony inconsistent and
20 problematic from our perspective.
21    Q.    And then the feeling that she would not
22 be amenable to cooperation, do you recall at all
23 where that feeling came from?
24    A.    No.  I -- you know, again, I say

Page 34

1 feeling, but it was -- there were -- I don't recall
2 if someone had reached out to her attorney or
3 her -- if, just in dealing with her previously,
4 there had been concerns.  I just don't recall where
5 that came from.
6      Q.   Were you aware that the -- at probably
7 2013 - 2014 time period, the City of Chicago had
8 engaged Scott Lassar and Sidley & Austin to conduct
9 a review of some of Detective Guevara's cases?
10     A.   Yes.
11     Q.   Do you recall reviewing materials from
12 Sidley as it relates to the Solache and Reyes cases?
13     A.   Yes.
14     Q.   Do you recall reviewing notes and a
15 memo of an interview conducted by Scott Lassar and
16 a couple of his attorneys of Adriana in 2014?
17     MR. COYNE:  When you say Adriana, you mean
18 Mejia?
19     MS. ROSEN:  Adriana Mejia, yeah.
20     THE WITNESS:  The answer is I'm sure I would
21 have, but I don't recall as I sit here today.
22 BY MS. ROSEN:
23     Q.   And if I were to tell you that in 2014
24 Ms. Mejia was maintaining that Mr. Solache and

Page 35

1 Mr. Reyes were participants in the double murder
2 and double kidnapping, does that in any way refresh
3 your recollection of reviewing those interviews?
4      MR. COYNE:  Objection; foundation, form.
5      THE WITNESS:  I mean, again, I -- I think I
6 would have reviewed the interviews, but I don't
7 recall specifically reviewing them, and that
8 doesn't refresh me.
9 BY MS. ROSEN:
10     Q.   With respect to this idea of whether or
11 not Ms. Mejia would be cooperative, the fact that
12 she was willing -- does the fact that she was
13 willing to speak with Scott Lassar and others from
14 Sidley impact -- did it impact in any way your
15 collective concern that she would not be willing to
16 cooperate?
17     MR. COYNE:  Objection; form, foundation.
18     THE WITNESS:  I don't recall.
19 BY MS. ROSEN:
20     Q.   Other than Adriana Mejia's prior
21 statements and testimony about Mr. Solache and
22 Mr. Reyes's involvement in the double murder and
23 double kidnappings, what other evidence did you
24 discuss when you were assessing whether or not you

Page 36

1 could meet your burden of proof in a new trial?
2      A.   I think I would just go back to all the
3 materials that we reviewed -- that I discussed we
4 reviewed in terms of transcripts, police reports,
5 confessions and the like.
6      Q.   With respect to Mr. Solache's
7 allegations of coercion, do you recall as you sit
8 here today specifically what he claimed Detective
9 Guevara and/or others did that coerced him into
10 making a confession?
11     A.   I don't recall as I sit here today.
12     Q.   Do you recall that Mr. Solache made
13 allegations about being slapped so hard that he
14 lost hearing in his ear?
15     A.   Sounds familiar.
16     Q.   Do you recall evaluating the medical
17 evidence that was obtained by the trial prosecutors
18 back during the original prosecution that rebutted
19 those claims?
20     A.   Yes.
21     MR. COYNE:  Objection; form.
22     MS. SUSLER:  Objection; form, misstates the
23 evidence.
24     MS. BRADY:  Join.

Page 37

1      COURT REPORTER:  Mr. Coyne, did you object?
2      MR. COYNE:  Yes.  I objected to form.
3           What was the answer?
4      THE WITNESS:  Yes was the answer.
5      MR. COYNE:  Okay.  Okay, thank you.
6 BY MS. ROSEN:
7      Q.   Do you know who Dave Navarro is?
8      A.   I can't recall if he was an ASA or not.
9 I believe he was.
10     Q.   And as you sit here today, do you
11 recall that he was actually the ASA that took
12 Adriana Mejia's handwritten statement?
13     A.   I don't recall it as I sit here today.
14     Q.   Did you interview, during the course
15 of your involvement in the post conviction
16 proceedings, any of the assistant state's attorneys
17 that were involved from Felony Review at the time
18 that the investigation was going forward?
19     A.   I don't believe I personally did.  I
20 believe that others did, though.
21     Q.   Do you recall if anybody spoke with
22 Mr. Navarro?
23     A.   I believe so, but I don't have a
24 specific recollection.

Page 38

1    Q.   As you sit here today, do you recall
2 anything about the DNA evidence that was recovered
3 from the crime scene and Mr. Solache, Mr. Reyes,
4 and Ms. Mejia?
5    A.   I recall there was DNA evidence on
6 Ms. Mejia's shoe, but beyond that, I really don't
7 have a specific recollection of other DNA evidence.
8    Q.   Do you recall the -- Mr. Solache and
9 Mr. Reyes arguing at different points in the
10 criminal case, through your review of the
11 transcripts, that there was unknown DNA found at
12 the crime scene, and that perhaps that DNA belonged
13 to the, quote/unquote, real killer that participated
14 with Ms. Mejia in these murders and double
15 kidnapping?
16    MR. COYNE:  Objection; form.
17    THE WITNESS:  I don't have a recollection of
18 that.
19 BY MS. ROSEN:
20    Q.   Do you recall that the two victims, the
21 two murder victims, Mr. and Mrs. Soto, were stabbed
22 something in excess of 60 times?
23    A.   Yes.
24    Q.   As you were evaluating the evidence and

Page 39

1 determining whether or not you could proceed with
2 the prosecution without the confessions, did you
3 consider whether or not Ms. Mejia could have done
4 the crimes alone?
5    A.   Yes.
6    Q.   What conclusion did you reach with
7 respect to whether or not Ms. Mejia could have done
8 the crimes alone?
9    A.   We reached the conclusion that she
10 could not have done the crimes alone.
11    Q.   Why is that?
12    A.   I don't recall all the specifics.  I do
13 recall Judge Obbish agreeing with that conclusion,
14 but I don't recall all the specifics.
15    Q.   As you sit here today, is there any
16 other evidence that you considered as you were
17 making the decision about whether or not you could
18 proceed with the prosecution, other than what we've
19 been discussing?
20    A.   I don't recall if there was additional
21 evidence.
22    Q.   What was the conclusion reached about
23 whether or not you could proceed with the
24 prosecution?

Page 40

1    A.   Can you restate the question?
2    Q.   Sure.  Sorry.  After the discussions
3 that you had with respect to the evidence that
4 existed without either Mr. Solache or Mr. Reyes's
5 confession, what decision was reached regarding
6 whether or not you could proceed with the
7 prosecution and sustain your burden of proof?
8    A.   We concluded we would not be able to
9 sustain our burden of proof without the confessions.
10    Q.   And we've been talking a bit about
11 whether or not the State would be able to sustain
12 its burden of proof.  Why is that the standard that
13 you use when you're evaluating whether or not to go
14 forward?
15    A.   Because that is our ethical duty as
16 prosecutor, to bring cases that we believe we can
17 prove, meet our burden of proof.
18    Q.   What is the burden of proof that you
19 have to meet?
20    A.   Beyond a reasonable doubt.
21    Q.   Who made the decision that you would
22 not be able to sustain your burden of proof?
23    A.   I think it was a collective decision
24 that was ultimately presented to the state's

Page 41

1 attorney, and I think there was agreement among
2 everyone.
3    Q.   And the state's attorney at this time
4 was Kim Foxx; correct?
5    A.   Correct.
6    Q.   The fact that -- strike that.
7    Were you in any way involved --
8 well, let me step back for a second.
9    Were you aware that Mr. Solache and
10 Mr. Reyes filed petitions for certificates of
11 innocence?
12    A.   Yes, I think I -- I think I was.
13    Q.   And did you have any role in that
14 aspect of the case?
15    A.   I don't recall.
16    Q.   As you sit here today, do you know what
17 the status of the petitions filed by Mr. Solache
18 and Mr. Reyes are?
19    A.   I do not.
20    MS. ROSEN:  Why don't we take a break.
21    MR. COYNE:  Five?  Ten?  How much?
22    MS. ROSEN:  If we could just take five
23 minutes.
24    MR. COYNE:  That's cool.

Page 42

1      VIDEO TECHNICIAN:  We are going off the
2  record.  The time is 10:54 a.m.
3            (Recess taken.)
4      VIDEO TECHNICIAN:  We are back on the record.
5  The time is 11:08 a.m.
6            You may proceed.
7  BY MS. ROSEN:
8      Q.   Mr. Sussman, during the time that you
9  were involved in the Solache and Reyes cases, did
10  you prepare any documentation, whether it was a
11  memo or a report or anything like that, regarding
12  any of the events that we've been talking about
13  today?
14      A.   I don't know the answer to that
15  question.
16      Q.   So it's possible that during the course
17  of this period of time, that you would have
18  prepared a memo or something for Ms. Foxx or
19  anybody else.
20      A.   It's possible.  I just don't recall.
21      Q.   With respect to any conversations that
22  you had with the Cook County State's Attorney
23  regarding any aspect of that case, were those
24  discussions usually oral?

Page 43

1      A.   Yes.
2      Q.   Did you communicate by email with her
3  about the case?
4      A.   I don't recall.
5      Q.   Is it possible that you would have
6  communicated by email?
7      A.   It's possible, yes.
8      Q.   Do you recall any specific -- well, let
9  me -- strike that.
10            With respect to the decision to
11  offer Mr. Guevara immunity, who made the final
12  decision about whether to do that?
13      A.   The state's attorney would make the
14  final decision.
15      Q.   So at that point in time when the
16  decision was made that that would be the best
17  course, she would have been apprised of your
18  recommendation and then she would be the one
19  ultimately to make the final decision?
20      A.   Correct.
21      Q.   Obviously, since you did offer him
22  immunity, she was on board with that recommendation;
23  correct?
24      A.   Correct.

Page 44

1      Q.   Then after the motion to suppress was
2  granted, the decision was made about being unable
3  to meet your burden of proof, was that a decision
4  that was -- the final decision -- let me start over
5  because that was a horrible question.
6            Once the motion to suppress was
7  granted, and discussions were had about whether or
8  not you would be able to meet your burden of proof
9  without the confessions, who ultimately made the
10  final decision?
11      A.   The state's attorney.
12      Q.   Was that based on your and your team's
13  recommendation?
14      A.   Yes.
15      Q.   Okay.
16  MS. BRADY:  Belated objection to foundation.
17  MR. COYNE:  Is everybody still there?
18  MS. ROSEN:  Yep, we're still here.
19  MR. COYNE:  I lost my screen.
20  MS. ROSEN:  No, we're here.
21  BY MS. ROSEN:
22      Q.   Do you recall the day that you went to
23  court and informed Judge Obbish that the State
24  would be moving to nolle pros both Mr. Solache and

Page 45

1  Mr. Reyes's cases?
2      A.   Vaguely, yes.
3      Q.   And do you recall saying during that
4  hearing that there is not a doubt in my mind or the
5  mind of any prosecutor who has worked on this case
6  that Mr. Solache and Mr. Reyes are guilty of
7  this -- these heinous crimes?
8      A.   Yes.
9      Q.   And you made that statement in open
10  court despite the fact that the decision had been
11  made that the State could not meet its burden of
12  proof; correct?
13      A.   Correct.
14      Q.   And that was -- that statement was
15  made despite the fact that Mr. Solache had made
16  allegations that his confession had been coerced;
17  correct?
18      A.   Correct.
19      Q.   And that statement was made despite the
20  fact that Mr. Reyes made allegations that his
21  statement had been coerced; correct?
22      A.   Correct.
23      Q.   Was -- that statement was made despite
24  the fact that you had concerns about whether or not

Page 46

1 Ms. Mejia's testimony would have been sufficient to
2 help the State to sustain its burden of proof;
3 correct?
4     A.   Correct.
5     Q.   Despite the fact that Ms. Mejia had
6 said in previous statements or testimony that
7 former Detective Guevara had used force against
8 her; correct?
9     A.   Correct.
10    Q.   That statement, I take it, was made
11 based on your careful review of all of the evidence
12 that we discussed earlier in your deposition;
13 correct?
14    A.   Correct.
15    MS. SUSLER:  Objection; form.
16 BY MS. ROSEN:
17    Q.   Just to be clear, the things that you
18 reviewed were the transcripts of the original
19 trial, the various confessions, Judge Obbish's
20 order, the relevant case law, and the police
21 reports that were created at the time of the
22 criminal investigation; correct?
23    A.   As best I recall, that's what I
24 reviewed.

Page 47

1     MS. ROSEN:  No questions at this time.  I
2 don't know if others do.
3     Anybody else?
4     MS. BRADY:  Yeah, we'll have some questions,
5 but we can wait until everyone else is done.
6     MS. GOLDEN:  This is Carrie Golden.  I have
7 no questions.
8     MS. LYDON:  I just have one question.
9         EXAMINATION
10 BY MR. LYDON:
11    Q.   Good morning, Mr. Sussman.  My name is
12 Jim Lydon, and I represent four of the Felony
13 Review assistants that worked on the case.
14        Sorry, I'm putting my video up.
15        Was the state's attorney's decision
16 to nolle pros the charges against Reyes and Solache
17 based in any way on any allegations of misconduct
18 by the Felony Review assistant state's attorneys,
19 including Karin Wehrle, Heather Brualdi, Andrew
20 Varga, and Thomas O'Malley?
21    MR. COYNE:  Objection; form, foundation.
22        Go ahead.
23    THE WITNESS:  No, we had no concerns with the
24 conduct of those state's attorneys.

Page 48

1     MR. LYDON:  That's all I have.
2     MR. BURNS:  I have one question as well.
3         Good morning, Mr. Sussman.  My name
4 is Dan Burns.  I represent defendant David Navarro,
5 former state's attorney.
6         EXAMINATION
7 BY MR. BURNS:
8     Q.   Was the decision to nolle pros the case
9 against Reyes and Solache based on any allegations
10 of misconduct of Felony Review state's attorney
11 David Navarro?
12    A.   No, we had no concerns about
13 ASA Navarro's conduct.
14    MR. BURNS:  Thank you.  No further questions.
15    MS. BRADY:  We have a handful of questions,
16 but can we take a five-minute break?
17    MR. COYNE:  Good.
18    VIDEO TECHNICIAN:  We are going off the
19 record.  The time is 11:17 a.m.
20        (Recess taken.)
21    VIDEO TECHNICIAN:  We are back on the record.
22 The time is 11:26 a.m.
23        You may proceed.
24

Page 49

1         EXAMINATION
2 BY MS. BRADY:
3     Q.   Mr. Sussman, my name is Rachel Brady.
4 I represent one of the plaintiffs in this case.
5 And I have a couple of follow-up questions for you.
6         So you said earlier that Kim Foxx,
7 the state's attorney, was the only person with
8 ultimate authority to decide whether to re-charge
9 Mr. Solache and Mr. Reyes, right?
10    A.   She was the ultimate decisionmaker at
11 the state's attorney's office, correct.
12    MS. ROSEN:  I'm going to belated form
13 objection to re-charge, but ...
14    MR. MORRIS:  I'm going to object on the basis
15 of foundation too.
16 BY MS. BRADY:
17    Q.   And did you have any conversations with
18 Kim Foxx about whether to nolle the cases against
19 Solache and Reyes?
20    A.   Yes.
21    Q.   How many conversations did you have
22 with Kim Foxx about that decision?
23    A.   I don't recall.
24    Q.   Was it more than one?

Page 50

1    A.   I just -- about that specific issue, I
2  don't recall.
3    Q.   And do you remember who was with
4  you when you had that conversation or those
5  conversations?
6    A.   No, I don't.
7    Q.   And I think you said a little bit
8  earlier that you made a recommendation to the
9  state's attorney; is that right?
10    A.   Yes.
11    Q.   And as you sit here today, you do not
12  know the full basis of Kim Foxx's decisions
13  regarding the Solache and Reyes cases, right?
14    MR. COYNE:  Objection; foundation, form.
15  Go ahead.
16    THE WITNESS:  I only know what -- we
17  recommended it to her and what we discussed with
18  her.  I don't -- beyond that, I don't know anything
19  else.
20  BY MS. BRADY:
21    Q.   And do you know if Kim Foxx spoke with
22  any other attorneys about any decisions relating to
23  the Solache and Reyes cases?
24    A.   I don't know.

Page 51

1    Q.   You also said today, and other
2  instances, that there is not a doubt in your mind
3  or the mind of any prosecutor who had worked on
4  this case that Mr. Solache and Mr. Reyes are
5  guilty.  Do you recall saying that?
6    A.   I recall saying either that or words to
7  that effect in court, yes.
8    Q.   Okay.  And what prosecutors other than
9  you, Mr. Spellman, and Mr. Papa worked on this case?
10    A.   I don't recall at this point in time.
11    Q.   Did you personally speak with any
12  prosecutors other than Mr. Spellman and Mr. Papa
13  about this case?
14    A.   Did I personally, no.
15    Q.   And of the three of you, being you,
16  Mr. Spellman, and Mr. Papa, was there one of you
17  who was responsible for reaching out to various
18  witnesses during the --
19    MR. COYNE:  Sorry to interrupt.  It's
20  Spellberg, not Spellman, just for the record.
21    MS. BRADY:  Oh, I'm sorry.
22    MR. COYNE:  That's all right.
23    THE WITNESS:  I don't recall who was
24  responsible for reaching out to what witnesses, no.

Page 52

1  BY MS. BRADY:
2    Q.   Did you generally divide
3  responsibilities?  Kind of one of you would handle
4  one particular witness?
5    A.   Yes.
6    Q.   And you said earlier that your team
7  felt that Adriana Mejia would not be amenable to
8  cooperate with you.  Do you recall saying that?
9    A.   I do.
10    Q.   What was the basis of your feeling that
11  Adriana Mejia would not be amenable to cooperate?
12    A.   I don't recall the exact bases.  I
13  think -- I -- I can't recall if I had been told
14  that people had reached out to her in the past.
15  I just, as I sit here today, I don't recall the
16  reasons why.
17    Q.   Okay.  And when you say you can't
18  recall if you had been told that someone reached
19  out to her in the past, do you remember who would
20  have told you that?
21    A.   Well, it probably would have been Jim
22  Papa or Alan Spellberg.
23    Q.   And do you recall if either you or
24  Mr. Spellberg or Mr. Papa ever spoke with any

Page 53

1  attorneys who represented Adriana Mejia in
2  connection with the motion to suppress or the
3  decision to retry?
4    A.   I don't recall.
5    Q.   Do you know if anyone from the Cook
6  County State's Attorney's Office ever offered
7  Adriana Mejia a deal in exchange for her testimony
8  on a retrial?
9    A.   I don't believe anyone did.
10    Q.   You said a little bit earlier that you
11  never personally spoke with Reynaldo Guevara --
12    A.   Yes.
13    Q.   -- in connection with these cases; is
14  that right?
15    A.   That's right.
16    Q.   Did you ever learn what Reynaldo
17  Guevara's substantive responses to any questions
18  asked in connection with these cases would have
19  been?
20    MR. COYNE:  Objection; foundation, form.
21    MS. McGRATH:  Join that objection to the
22  question.
23  BY MS. BRADY:
24    Q.   So you testified that you never spoke

1 with Reynaldo Guevara about these cases.

2    A.   Correct.

3        Q.   And my question is whether you ever

4 learned what his substantive responses to your

5 questions would have been if he would have not been

6 on the Fifth.

7    MR. COYNE:  Same objection.

8    MS. McGRATH:  Ditto.

9    THE WITNESS:  I'm not sure I understand --

10 I mean, I had read his prior testimony, sworn

11 testimony about this case.  So I never learned

12 anything further after he testified he didn't

13 recall the host of things, including his prior

14 testimony.

15 BY MS. BRADY:

16       Q.   And you say you read his prior

17 testimony and you did not believe that testimony

18 was credible; is that right?

19    A.   No, I don't think I said that.

20    MS. McGRATH:  Objection.

21    MR. COYNE:  No, that mischaracterizes his

22 testimony.  Go ahead.

23    THE WITNESS:  To be clear --

24

1 BY MS. BRADY:

2       Q.   Go ahead.

3    A.   Let me just see if I can be clear.  I

4 read his original testimony, I believe it was, in

5 the first suppression hearing, which I -- I did

6 find to be credible.

7        His later testimony I did not find

8 to be credible.

9       Q.   When you say later testimony, which

10 testimony are you referring to?

11    A.   His testimony before Judge Obbish when

12 he was given immunity.

13       Q.   I'm just going to review my notes very

14 briefly.

15    A.   Sure.

16       Q.   I don't think I have anything else.

17        Oh, yeah, one more follow-up.

18        So you said that you had at least

19 one conversation with the state's attorney about

20 these cases.

21    A.   Yes.

22       Q.   Did you memorialize that conversation

23 in any sort of written report or memo?

24    A.   I don't believe I did.

1       Q.   Do you know if anyone else present at

2 that meeting memorialized the

3 conversation in a written memo or written note?

4    A.   Well, I don't recall, as I sit here,

5 whether anyone else was present, and I don't know,

6 to the extent there were other people present,

7 whether they recorded that or not.

8    MS. BRADY:  Okay.  I do not have any

9 questions, so I'll thank you for your time and turn

10 it over to Jan Susler.

11    THE WITNESS:  Sure.

12        EXAMINATION

13 BY MS. SUSLER:

14       Q.   Good morning, Mr. Sussman.

15    A.   Good morning.

16       Q.   I kept being alarmed through the

17 deposition that our names are so close, as opposed

18 to being more attentive.

19        I am one of the lawyers for Gabriel

20 Solache, and I just have a couple of questions.

21 And pardon my voice; I'm just recovering from the

22 flu.

23        The -- did you review the Felony

24 Review file in your participation in the Solache

1 and Reyes matter?

2    A.   I don't have a specific recollection,

3 but I think I did, but I don't recall specifically.

4       Q.   Okay.  Do you recall seeing in the

5 Felony Review file at the end that there was a

6 handwritten note that said "Solache injuries"?

7    A.   No, I don't recall that.

8    MS. ROSEN:  Form, foundation.

9 BY MS. SUSLER:

10       Q.   Did you ever see a transcript of an

11 April 6th of 1998 hearing at Branch 66 in the

12 matter of Solache and Reyes?

13    A.   I don't recall.

14       Q.   Did you ever see a transcript where an

15 assistant public defender asked the judge -- and

16 I'm specifically referring to this April 6th of

17 1998 transcript of Branch 66, just to see if this

18 refreshes your memory -- where an assistant public

19 defender asked the judge for an order to allow a

20 public defender investigator to go back to the

21 lockup and photograph injuries that he saw on

22 Mr. Solache?

23    MR. COYNE:  Objection; form, foundation.

24    MS. ROSEN:  Objection; form, foundation.

Page 58

1    THE WITNESS:  That doesn't refresh my
2 recollection.
3 BY MS. SUSLER:
4    Q.   So it would be fair to say then that
5 that was not part of the material that you reviewed
6 in arriving at your decision that Mr. Solache and
7 Mr. Reyes were guilty.
8    MR. COYNE:  Same objection.
9    MS. ROSEN:  Objection; form, foundation.
10   MR. LYDON:  Join.
11   THE WITNESS:  Sorry.  No, that wouldn't be
12 fair to say.
13 BY MS. SUSLER:
14   Q.   Well, were you aware of that
15 information at the time that you made the statement
16 that Mr. Solache and Mr. Reyes were guilty when you
17 nolle'd the case?
18   MR. LYDON:  Same objection.
19   THE WITNESS:  I don't recall --
20   MR. COYNE:  Same objection.  John Coyne.
21 Same objection as previously made.
22   THE WITNESS:  So I don't recall specifically
23 that transcript.  I believe I would have reviewed
24 the transcript, but I don't recall specifically as

Page 59

1 I sit here today.
2 BY MS. SUSLER:
3    Q.   Do you know whether the transcript had
4 ever been written by the time that you made that
5 statement?
6    A.   Again, I -- I don't recall the
7 transcript.  I really don't.
8    Q.   Okay.  Did you ever speak to any
9 state's attorney who attended the April 6th of 1998
10 Branch 66 hearing in this matter?
11   A.   I don't know.
12   Q.   Do you know a state's attorney named
13 Mebane, M-e-b-a-n-e?
14   A.   It doesn't ring a bell, no.
15   Q.   Did you ever speak to a state's
16 attorney with that last name?
17   A.   I don't know.
18   Q.   Did you ever speak to a State's
19 Attorney Mebane about the Solache-Reyes matter?
20   MR. COYNE:  Objection; foundation.
21   THE WITNESS:  I don't recall.
22 BY MS. SUSLER:
23   Q.   Is there anything that would refresh
24 your recollection?

Page 60

1    MR. COYNE:  Same objection.
2    THE WITNESS:  As I sit here today, I would
3 have to go through and try to re-create the files
4 that I had four years ago.  So probably not.
5    MS. SUSLER:  I don't have any further
6 questions.  Thank you.
7    THE WITNESS:  Thank you.
8    MR. COYNE:  Anybody else?
9    MS. ROSEN:  Actually, just one follow-up to
10 one of Ms. Brady's questions.
11       FURTHER EXAMINATION
12 BY MS. ROSEN:
13   Q.   With respect to your conversation with
14 Ms. Foxx regarding your recommendation to nolle
15 the case because you didn't believe that the State
16 could meet its burden of proof, did Ms. Foxx
17 express to you her belief that Mr. Solache and
18 Mr. Reyes were innocent?
19   MR. COYNE:  Objection; form.
20   THE WITNESS:  I don't believe the state's
21 attorney ever expressing that belief to me.
22   MS. ROSEN:  We're done.
23   MR. COYNE:  Mr. Sussman, did you know you
24 have the right to review your transcript?  You can

Page 61

1 reserve or you can waive.  I know you are familiar
2 with that instruction.  How do you choose?
3    THE WITNESS:  I'll waive.
4    MR. COYNE:  Signature waived.  Thank you,
5 everybody.
6    MS. ROSEN:  Thank you so much for your time,
7 Mr. Sussman.
8    THE WITNESS:  Thank you.  Bye bye.
9    VIDEO TECHNICIAN:  This is the end of media
10 unit one.  This concludes the deposition of Eric
11 Sussman.  The video will be retained by Urlaub
12 Bowen & Associates.  We're going off the record.
13 The time is 11:40 a.m.
14       (The proceedings adjourned at
15        11:40 a.m.)
16
17
18
19
20
21
22
23
24

Page 62

1
2               REPORTER'S CERTIFICATE
3       I, Donna M. Urlaub, do hereby certify that
   ERIC SUSSMAN was duly sworn by me to testify the
4  whole truth, that the foregoing deposition was
   recorded stenographically by me and was reduced to
5  computerized transcript under my direction, and
   that the said deposition constitutes a true record
6  of the testimony given by said witness.
7       I further certify that the reading and
   signing of the deposition was waived by the
8  deponent.
9       I further certify that I am not a relative
   or employee or attorney or counsel of any of the
10 parties, or a relative or employee of such attorney
   or counsel, or financially interested directly or
11 indirectly in this action.
12      IN WITNESS WHEREOF, I have hereunto set my
   hand and affixed my seal of office at Chicago,
13 Illinois, this 28th day of December 2021.
14
15
16
        Illinois CSR No. 084-000993
17
18
19
20
21
22
23
24

**(**

**(a)** 29:18

**(b)** 29:19

**1**

**10:02** 5:5

**10:54** 42:2

**11:08** 42:5

**11:17** 48:19

**11:26** 48:22

**11:40** 61:13,15

**18-CV-01028** 5:15

**18-CV-02312** 5:15

**1998** 57:11,17 59:9

**1st** 9:16

**2**

**2013** 34:7

**2014** 34:7,16,23

**2016** 9:16

**2017** 13:22

**2018** 9:18

**2021** 5:4

**23rd** 5:4

**3**

**327** 7:16

**6**

**60** 38:22

**66** 57:11,17 59:10

**6th** 57:11,16 59:9

**A**

**a.m.** 5:5 42:2,5 48:19,22 61:13,15

**abandon** 27:1,9

**abandoning** 27:4,12

**abide** 7:23

**actively** 14:23

**additional** 39:20

**adjourned** 61:14

**administer** 5:9

**admit** 29:3,6

**adopted** 29:21

**adopting** 7:12

**Adriana** 16:24 31:18 34:16,17,19
35:20 37:12 52:7,11 53:1,7

**advance** 13:7,13 24:2,10,23 25:6

**affirmative** 26:8

**afternoon** 16:7

**agree** 6:16,18,20,22 32:20

**agreed** 6:5,7,9,11,13

**agreeing** 39:13

**agreement** 5:8 6:2 23:11 32:19,23
41:1

**ahead** 25:11 30:8 47:22 50:15
54:22 55:2

**Alan** 12:15 52:22

**alarmed** 56:16

**allegations** 28:18 29:13 33:15
36:7,13 45:16,20 47:17 48:9

**allowing** 26:23

**amenable** 33:7,22 52:7,11

**Amendment** 18:14 19:12 26:5
29:20

**amount** 15:9

**and/or** 36:9

**Andrew** 6:15 47:19

**apex** 7:22

**appeal** 11:15,19 12:4

**appeals** 10:16 11:14 12:21,23

**appellate** 12:24

**apprised** 43:17

**approximately** 9:14

**April** 57:11,16 59:9

**arguing** 38:9

**argument** 7:17

**arguments** 7:13

**arriving** 58:6

**Arthur** 8:19

**ASA** 10:21 37:8,11 48:13

**ASAS** 10:17

**aspect** 41:14 42:23

**asserted** 18:14

**asserting** 19:12

**assertion** 7:20

**assessing** 35:24

**assigned** 10:17,24

**assistant** 8:15 9:21,22 10:2 20:19
37:16 47:18 57:15,18

**assistants** 47:13

**Associates** 5:20,23 61:12

**assumed** 25:19

**assuming** 11:9

**attempt** 32:21

**attended** 59:9

**attentive** 56:18

**attorney** 9:23 16:16 24:19,21 34:2
41:1,3 42:22 43:13 44:11 48:5,10
49:7 50:9 55:19 59:9,12,16,19
60:21

**attorney's** 6:13 8:16 9:12 14:17
17:11,16 20:20 21:9,12 25:3,8
26:24 47:15 49:11 53:6

**attorneys** 34:16 37:16 47:18,24
50:22 53:1

**audio** 22:2 30:1,17 31:1

**Austin** 34:8

**authorities** 22:1

**authority** 49:8

**aware** 10:2,6,8 11:11 25:17 34:6
41:9 58:14

**B**

**back** 33:13 36:2,18 41:8 42:4
48:21 57:20

**background** 9:5

**bad** 21:17

**based** 13:18 18:9,11,17 19:3 22:9 29:7 44:12 46:11 47:17 48:9

**bases** 52:12

**basic** 27:13

**basically** 22:7 27:24

**basis** 29:5 33:6 49:14 50:12 52:10

**behalf** 5:12,13 6:4,6,8,10,12,14,17, 19,21 7:10

**belated** 44:16 49:12

**belief** 18:8,17 60:17,21

**believed** 19:16 27:14,15

**bell** 59:14

**belonged** 38:12

**big** 33:4

**bit** 13:9 40:10 50:7 53:10

**blood** 17:5

**board** 43:22

**Bowen** 5:20,23 61:12

**Brady** 6:21 16:18 36:24 44:16 47:4 48:15 49:2,3,16 50:20 51:21 52:1 53:23 54:15 55:1 56:8

**Brady's** 60:10

**Branch** 57:11,17 59:10

**break** 41:20 48:16

**briefly** 55:14

**bring** 40:16

**Brown** 8:19

**Brualdi** 6:15 47:19

**burden** 26:2 31:11 32:13 36:1 40:7,9,12,17,18,22 44:3,8 45:11 46:2 60:16

**Burns** 6:17,18 48:2,4,7,14

**bye** 61:8

─────────────

### C

**called** 7:3 23:16

**careful** 46:11

**Caroline** 6:9

**Carrie** 47:6

**case** 5:14 9:8 10:18 11:3,4,9 14:10 15:3,9 31:9,14 38:10 41:14 42:23 43:3 45:5 46:20 47:13 48:8 49:4 51:4,9,13 54:11 58:17 60:15

**cases** 8:8,19 10:3 11:7 20:7,24 21:3,5,7,8,9,11 34:9,12 40:16 42:9 45:1 49:18 50:13,23 53:13,18 54:1 55:20

**certificate** 8:4

**certificates** 41:10

**certified** 5:9,19

**cetera** 17:5

**chair** 14:18,21

**chairs** 14:18

**changed** 25:18

**characterization** 16:17

**charges** 47:16

**Chicago** 5:20 6:6 34:7

**chief** 10:16 11:13 12:21,23

**choose** 61:2

**circumstances** 18:11 19:4

**City** 6:6 34:7

**claimed** 36:8

**claims** 36:19

**clear** 46:17 54:23 55:3

**close** 56:17

**coerced** 15:11 18:10 19:3 36:9 45:16,21

**coercion** 36:7

**collective** 35:15 40:23

**combination** 26:7

**comfortable** 19:19

**communicate** 43:2

**communicated** 43:6

**computer** 30:24

**concern** 35:15

**concerns** 34:4 45:24 47:23 48:12

**concluded** 32:13 40:8

**concludes** 61:10

**conclusion** 18:24 28:8,16 31:23 39:6,9,13,22

**conduct** 34:8 47:24 48:13

**conducted** 34:15

**conducting** 6:2

**confession** 15:24 16:12 31:15 36:10 40:5 45:16

**confessions** 15:7,11,17,19 16:5 18:10 19:3 20:4 28:20 31:11 33:13 36:5 39:2 40:9 44:9 46:19

**connection** 53:2,13,18

**consideration** 11:15

**considered** 11:17 39:16

**Continuing** 13:12

**conversation** 20:13 50:4 55:19,22 56:3 60:13

**conversations** 22:23 42:21 49:17,21 50:5

**conviction** 11:5,8,10 26:6 27:17 30:13 37:15

**Cook** 6:12 8:15 9:12 20:20 21:8 42:22 53:5

**cool** 41:24

**cooperate** 35:16 52:8,11

**cooperation** 32:9,19,23 33:8,22

**cooperative** 35:11

**corporation** 9:22

**correct** 8:16,17 11:5,6,9,16,21,22 12:2 13:22 14:14,15,24 15:1 21:11 22:14 23:13,14,16,17,18 25:9,12 27:9,10 28:7 29:1,3,4,15 30:3,4 41:4,5 43:20,23,24 45:12,13,17,18, 21,22 46:3,4,8,9,13,14,22 49:11 54:2

**counsel** 5:24 9:22 15:19 23:10

**County** 6:12 8:16 9:12 20:20 21:9 42:22 53:6

**couple** 34:16 49:5 56:20

**court** 5:8,16,22 6:23 7:19 22:7,8, 10,18 37:1 44:23 45:10 51:7

**Court's** 7:23

**courtroom** 23:20

**Coyne** 6:4,5 7:9,10 13:8 16:5,6 25:10 26:16 27:22 28:12 30:8,20 34:17 35:4,17 36:21 37:1,2,5 38:16 41:21,24 44:17,19 47:21 48:17 50:14 51:19,22 53:20 54:7,21

57:23 58:8,20 59:20 60:1,8,19,23
61:4

**created** 46:21

**credible** 54:18 55:6,8

**crime** 27:14,15 38:3,12

**crimes** 39:4,8,10 45:7

**criminal** 8:8,14 10:2,6,13 12:7,19
13:4,5 20:15 38:10 46:22

**critical** 20:3

**cut** 30:21

---

D

**Dan** 6:18 48:4

**date** 10:7

**dates** 14:2

**Dave** 37:7

**David** 6:17 48:4,11

**day** 44:22

**deal** 18:12 53:7

**dealing** 23:3,6 34:3

**dealt** 23:4

**December** 9:16

**decide** 49:8

**decided** 25:8 27:1

**decision** 11:20 12:6 18:3 19:21,24
21:14,15,19 25:14 27:8 29:5 31:10
32:4 39:17 40:5,21,23 43:10,12,14,
16,19 44:2,3,4,10 45:10 47:15 48:8
49:22 53:3 58:6

**decision-making** 8:4 31:6,8,12

**decisionmaker** 49:10

**decisions** 50:12,22

**defend** 17:17 18:3

**defendant** 6:9,10,17 48:4

**defendants** 5:12,13 15:7

**defender** 57:15,19,20

**Deleon-** 5:13

**deliberative** 7:21

**denied** 24:14,19 30:11

**denote** 14:18

**deny** 30:2

**Department** 22:17

**deposition** 5:3,7,11 6:3 7:13,15,
18 8:2,13,18 13:7,13 15:22 46:12
56:17 61:10

**depositions** 5:10 8:20,24 9:3,7

**Derek** 5:18

**desire** 23:11

**Detective** 18:13 19:8,10,14,17,22
20:2,6,13,16,18,23 21:3,15,20,23
22:9,20,23 23:10,12,15,21 24:1,9,
10,23 25:4,15 27:18,19,20 28:16
33:16 34:9 36:8 46:7

**determined** 30:5

**determining** 39:1

**direct** 20:13

**directing** 22:7

**directly** 14:1

**discuss** 10:18 35:24

**discussed** 18:2,6,12,19,21 19:5,7,
9 36:3 46:12 50:17

**discussing** 12:8 39:19

**discussion** 17:15,19 18:1,16
19:13 27:3,6

**discussions** 12:12,13,17 17:21
19:2 23:9 40:2 42:24 44:7

**dismissal** 8:7

**District** 5:16,17

**Ditto** 54:8

**divide** 52:2

**division** 5:17 12:24 13:5

**DNA** 38:2,5,7,11,12

**Docket** 7:16

**doctrine** 7:22

**documentation** 42:10

**DOJ** 22:13

**Donna** 5:23

**double** 31:19,20 35:1,2,22,23
38:14

**doubt** 40:20 45:4 51:2

**drawn** 26:6

**due** 7:20

**duly** 7:3

**duty** 40:15

---

E

**ear** 36:14

**earlier** 22:22 46:12 49:6 50:8 52:6
53:10

**Eastern** 5:17

**effect** 51:7

**effective** 9:17

**effort** 32:22

**Eileen** 6:7 7:9 13:8 28:12 30:20

**email** 43:2,6

**emailed** 16:7

**end** 9:17 57:5 61:9

**enforcing** 8:1

**engaged** 34:8

**entered** 10:8

**entire** 9:19

**Eric** 5:4 7:2 61:10

**essentially** 22:16,19

**establishing** 20:3

**et al** 5:14

**ethical** 40:15

**evaluate** 31:13,17

**evaluated** 32:5

**evaluating** 36:16 38:24 40:13

**event** 16:10 23:9 33:8

**events** 42:12

**eventually** 23:15

**evidence** 17:17 18:9,17,19 19:2
28:17 31:9,13,24 35:23 36:17,23
38:2,5,7,24 39:16,21 40:3 46:11

**evidenced** 17:13

**exact** 52:12

**EXAMINATION** 7:5 47:9 48:6
49:1 56:12 60:11

**examined** 7:4

**exception** 28:21

**excess** 38:22

**exchange** 53:7

**existed** 31:14 40:4

**experience** 14:19

**explanation** 24:22

**express** 60:17

**expressing** 60:21

**extent** 19:16 56:6

F

**fact** 7:12 12:1 17:13 18:13 19:10 25:2,6 35:11,12 41:6 45:10,15,20, 24 46:5

**fact-based** 11:24

**facts** 7:13,17 18:11 19:3 25:17

**Fahey** 23:7

**fair** 28:9,15 58:4,12

**familiar** 18:22 36:15 61:1

**familiarize** 15:3

**federal** 21:24 22:13

**feel** 15:23

**feeling** 33:7,21,23 34:1 52:10

**Felony** 37:17 47:12,18 48:10 56:23 57:5

**felt** 19:19 52:7

**file** 56:24 57:5

**filed** 5:15 41:10,17

**files** 60:3

**final** 43:11,14,19 44:4,10

**find** 55:6,7

**five-minute** 48:16

**flu** 56:22

**follow-up** 49:5 55:17 60:9

**force** 46:7

**form** 16:17 25:10 26:16 27:22 35:4, 17 36:21,22 37:2 38:16 46:15 47:21 49:12 50:14 53:20 57:8,23, 24 58:9 60:19

**forward** 12:10 37:18 40:14

**found** 38:11

**foundation** 30:8 35:4,17 44:16 47:21 49:15 50:14 53:20 57:8,23, 24 58:9 59:20

**Foxx** 41:4 42:18 49:6,18,22 50:21 60:14,16

**Foxx's** 50:12

**full** 50:12

**Fulton/coleman** 8:19

G

**Gabriel** 56:19

**gave** 8:18 16:11,21

**generally** 27:19 52:2

**gist** 28:3,5

**giving** 19:19

**Golden** 6:8,9 47:6

**good** 7:8 14:11 25:19 47:11 48:3, 17 56:14,15

**government** 22:13

**grant** 25:4

**granted** 10:11 23:18 30:17 31:4 44:2,7

**granting** 10:9 22:11

**great** 13:2 16:8

**guess** 14:19

**Guevara** 5:14 6:10 18:13 19:8,10, 15,17,23 20:2,6,13,16,18,23 21:3, 15,20,23 22:8,9,20 23:12,15,21 24:1,9,10,23 25:4 27:19 33:16 36:9 43:11 46:7 53:11 54:1

**Guevara's** 22:23 23:10 25:16 27:20 28:16 34:9 53:17

**guilty** 18:10,18 27:14 45:6 51:5 58:7,16

H

**handful** 48:15

**handle** 19:10 52:3

**handwritten** 16:11,21,23 17:8,10 37:12 57:6

**happened** 24:13

**happening** 30:23

**happy** 16:3

**hard** 36:13

**head** 12:24 13:4

**hear** 28:12 30:20

**heard** 13:9 20:15,16,18

**hearing** 10:9,12 12:11 13:21 14:1, 2,5,9,20,24 17:12 18:4 25:9 26:19, 23 36:14 45:4 55:5 57:11 59:10

**Heather** 6:15 47:19

**heinous** 45:7

**history** 8:13

**hit** 28:22

**hope** 29:11

**horrible** 44:5

**host** 54:13

**hundred** 23:8

I

**idea** 35:10

**identify** 5:24

**Illinois** 5:17,21

**immunity** 19:20 21:23,24 22:4,11 23:11,18 25:5 43:11,22 55:12

**impact** 35:14

**impeach** 29:9

**including** 7:20 47:19 54:13

**inclusive** 8:2

**inconsistent** 33:19

**incorporate** 7:16

**individual** 6:8

**individuals** 18:9,18 33:18

**inference** 26:7,8

**information** 9:4 20:22,24 58:15

**informed** 44:23

**injuries** 57:6,21

**innocence** 8:5 41:11

**innocent** 60:18

**instances** 20:1 51:2

instruction 61:2

Integrity 11:8,10

interrupt 7:10 12:22 51:19

interruption 22:2 30:1,17

interview 34:15 37:14

interviews 35:3,6

investigation 15:14 28:4 37:18 46:22

investigator 57:20

involved 17:4 18:1 20:14 21:4,17 37:17 41:7 42:9

involvement 10:13,15 12:7,8 20:6,23 31:19 35:22 37:15

involving 8:4

issue 50:1

issued 26:23

issues 15:10 18:7 28:24 31:1

### J

Jan 6:19 16:15 56:10

Jim 6:16 10:23 12:15 47:12 52:21

Joe 12:16 13:2 17:24

John 6:4 7:10 58:20

join 16:18 36:24 53:21 58:10

judge 10:8,11 11:15 15:8 26:6,22 28:23 29:20,22 30:5 39:13 44:23 46:19 55:11 57:15,19

judge's 10:19 12:1 29:16

juncture 27:9,10,12 30:18

Justice 22:17

### K

Karin 6:14 47:19

kidnapping 35:2 38:15

kidnappings 31:20 35:23

killer 38:13

killings 17:5

Kim 41:4 49:6,18,22 50:12,21

kind 12:8 18:7,11 29:18 52:3

knew 14:10

knowledge 14:22

### L

lack 26:8

Lassar 34:8,15 35:13

lastly 8:6

law 7:13,17 12:2 15:9 29:7 46:20

lawyer 14:11 20:12 22:23 24:15, 16,17

lawyers 56:19

lead 10:17,21

learn 53:16

learned 54:4,11

leave 9:15

led 18:3

left 9:17

Legal 5:19

Letellier 5:18

letter 21:24 22:13,15,16

level 14:19

light 19:10

limit 8:1

limited 9:3

lockup 57:21

long 9:11

lost 13:9 22:3 36:14 44:19

lot 9:4

Lydon 6:14,16 47:8,10,12 48:1 58:10,18

### M

M-E-B-A-N-E 59:13

made 8:9 11:20 12:6 14:11,12 18:22 19:13,22 21:13,16 24:19 27:8 28:18 31:10 33:15 36:12 40:21 43:11,16 44:2,9 45:9,11,15, 19,20,23 46:10 50:8 58:15,21 59:4

Magats 12:16 17:24

Magats' 13:3

maintaining 34:24

make 7:11 16:16 24:11 25:14 31:22 33:18,19 43:13,19

making 21:19 29:14 36:10 39:17

material 58:5

materials 18:23 34:11 36:3

matter 30:13 57:1,12 59:10,19

matters 5:13 9:8

Mcgrath 6:10 53:21 54:8,20

meaning 25:3

meant 26:9

meat 9:8

Mebane 59:13,19

media 5:1 21:10 61:9

medical 36:16

meet 20:9 24:9,11,22 25:6 31:11 32:13 36:1 40:17,19 44:3,8 45:11 60:16

meeting 56:2

meetings 56:2

Mejia 16:24 17:3,7 31:18 32:22 34:18,19,24 35:11 38:4,14 39:3,7 46:5 52:7,11 53:1,7

Mejia's 31:23 35:20 37:12 38:6 46:1

memo 34:15 42:11,18 55:23 56:3

memorialize 55:22

memorialized 56:2

memory 57:18

mention 26:4

mentioned 22:22

met 20:5

mind 45:4,5 51:2,3

minutes 41:23

mischaracterizes 54:21

misconduct 47:17 48:10

misstates 36:22

morning 47:11 48:3 56:14,15

MORRIS 6:12 49:14

motion 7:14 10:9,10,12 13:22 14:5,8 17:12,17 18:4 19:15 21:14

25:9 26:22,24 30:2,11,16 31:3 44:1,6 53:2

**motions** 14:24 15:4

**move** 29:3,6

**moving** 44:24

**murder** 35:1,22 38:21

**murders** 31:19 38:14

---

**N**

**named** 59:12

**names** 56:17

**nature** 11:24

**Navarro** 6:18 37:7,22 48:4,11

**Navarro's** 48:13

**negative** 26:7,8 29:19

**nolle** 44:24 47:16 48:8 49:18 60:14

**nolle'd** 58:17

**Northern** 5:16

**note** 56:3 57:6

**notes** 34:14 55:13

**notice** 14:3

**November** 5:4

**number** 7:16 8:2,3 15:5 18:5

**numbers** 5:15

**numerous** 15:18

---

**O**

**O'MALLEY** 6:15 47:20

**oath** 5:9 25:17

**Obbish** 10:8,11 26:22 39:13 44:23 55:11

**Obbish's** 11:15 15:8 46:19

**object** 37:1 49:14

**objected** 37:2

**objection** 16:16 25:10 26:16 27:22 30:8 35:4,17 36:21,22 38:16 44:16 46:15 47:21 49:13 50:14 53:20,21 54:7,20 57:23,24 58:8,9,18,20,21 59:20 60:1,19

**obtain** 21:22,24

**obtained** 22:12 36:17

**occasions** 15:18

**occurred** 13:21

**offer** 43:11,21

**offered** 53:6

**office** 6:13 8:16 9:12 14:17 17:11, 16 20:20 21:9,12 25:3,8 27:1 49:11 53:6

**officers** 6:9

**offices** 5:20

**oftentimes** 14:16

**open** 45:9

**opinion** 12:1

**opportunity** 8:23 24:1,9

**opposed** 56:17

**option** 25:22,23

**options** 30:17

**oral** 42:24

**order** 10:9,20 11:16 15:8,22 21:23 22:5,7,18 25:5 26:23 46:20 57:19

**ordering** 22:10

**original** 15:6 36:18 46:18 55:4

**overcome** 33:5

---

**P**

**Papa** 10:23,24 12:15 14:14 17:22 23:5,24 24:8 51:9,12,16 52:22,24

**pardon** 56:21

**part** 13:9 58:5

**participants** 35:1

**participate** 14:8

**participated** 12:16 14:23 17:20 27:5 38:13

**participating** 15:4

**participation** 56:24

**parties** 5:8 6:1

**past** 32:10 52:14,19

**people** 10:3 18:1 52:14 56:6

**percent** 23:8

**period** 9:20 34:7 42:17

**person** 20:2 23:2,6 49:7

**personally** 23:5,24 37:19 51:11, 14 53:11

**perspective** 16:1 33:20

**persuade** 30:1

**pertaining** 8:3

**petitions** 41:10,17

**photograph** 57:21

**plaintiff** 6:20,22

**plaintiffs** 8:5 49:4

**played** 14:4

**point** 10:14,15 11:1 15:21 16:5 19:11 27:1 29:2,11 43:15 51:10

**pointless** 26:20

**points** 38:9

**police** 15:12 36:4 46:20

**popped** 13:8

**position** 13:3 20:19 32:7

**possibly** 17:23 33:17

**post** 11:5 26:5 30:13 37:15

**posture** 11:4

**prepare** 24:1 42:10

**prepared** 15:13 42:18

**present** 56:1,5,6

**presented** 40:24

**preserve** 27:16

**pressed** 28:24

**presumption** 29:17,19

**prevail** 12:3

**prevailed** 30:13

**previous** 46:6

**previously** 26:4 29:21 34:3 58:21

**prior** 20:14,19 25:16 29:3,6 33:3,4, 10 35:20 54:10,13,16

**privilege** 7:21 18:14

**privileges** 7:20

**problem** 30:24

**problematic** 33:20

**problems** 33:3,9

**procedural** 11:4

**procedurally** 30:7,11

**proceed** 8:10 12:5,9,10 19:14,17, 18,22 21:14,16,20 25:8 26:10,13 30:19 39:1,18,23 40:6 42:6 48:23

**proceeded** 17:12 25:21 26:18

**proceeding** 17:14

**proceedings** 37:16 61:14

**process** 7:21 8:4 20:10 26:6 31:6, 8,12 32:5

**procure** 32:22

**product** 7:22

**proof** 36:1 40:7,9,12,17,18,22 44:3,8 45:12 46:2 60:16

**pros** 44:24 47:16 48:8

**prosecute** 22:9,20,21

**prosecution** 27:2,4,9,12 30:19 32:1 36:18 39:2,18,24 40:7

**prosecutions** 8:15 10:6,14 12:7, 10,20 20:15 23:13

**prosecutor** 10:18,21 40:16 45:5 51:3

**prosecutors** 14:17 36:17 51:8,12

**prove** 40:17

**provide** 16:3,4 24:21 25:4

**provided** 13:16,17,21 15:19,20 17:7,9 28:10,17

**public** 57:15,18,20

**pull** 28:2

**purpose** 14:7

**putting** 47:14

---

**Q**

---

**quash** 7:15

**question** 15:23 19:18 21:17 30:20 32:8 40:1 42:15 44:5 47:8 48:2 53:22 54:3

**questions** 8:3,6 16:17 21:6 28:22 47:1,4,7 48:14,15 49:5 53:17 54:5 56:9,20 60:6,10

**quick** 7:9

**quote/unquote** 38:13

---

**R**

---

**Rachel** 6:21 49:3

**raised** 32:8

**re-charge** 49:8,13

**re-create** 60:3

**reach** 31:24 32:18,21 39:6

**reached** 18:24 34:2 39:9,22 40:5 52:14,18

**reaching** 51:17,24

**read** 9:2 15:5,6 54:10,16 55:4

**ready** 8:9

**real** 7:9 38:13

**reasonable** 40:20

**reasons** 8:7 27:11,13 52:16

**rebut** 28:17 29:12

**rebutted** 36:18

**recall** 8:22 10:5,7 11:23 12:15 15:5 16:11,14,21,22 17:1,3,6,10,22,23, 24 18:6,18,20 19:4,6,9,23,24 21:2, 4 22:24 25:1 27:7,11,18,24 28:23 31:7 32:4 33:1,2,5,22 34:1,4,11,14, 21 35:7,18 36:7,11,12,16 37:8,11, 13,21 38:1,5,8,20 39:12,13,14,20 41:15 42:20 43:4,8 44:22 45:3 46:23 49:23 50:2 51:5,6,10,23 52:8,12,13,15,18,23 53:4 54:13 56:4 57:3,4,7,13 58:19,22,24 59:6, 21

**recent** 8:13

**recently** 8:20 15:17

**recess** 42:3 48:20

**recollection** 23:3 28:4 30:14 35:3 37:24 38:7,17 57:2 58:2 59:24

**recommendation** 43:18,22 44:13 50:8 60:14

**recommended** 50:17

**record** 5:2 6:1 7:11,19 8:9 18:23 42:2,4 48:19,21 51:20 61:12

**recorded** 5:12 56:7

**recovered** 38:2

**recovering** 56:21

**referencing** 10:22

**referred** 14:17

**referring** 32:17 33:11 55:10 57:16

**refresh** 35:2,8 58:1 59:23

**refreshes** 57:18

**refused** 18:15

**regard** 8:21

**rehash** 9:5

**relates** 8:14 34:12

**relating** 15:10 50:22

**relevant** 46:20

**remember** 11:1,2 50:3 52:19

**remind** 9:11

**remotely** 5:8 6:3,24

**remove** 29:16

**removed** 29:19

**renewed** 17:17 18:3

**report** 42:11 55:23

**reported** 21:10

**reporter** 5:9,22 6:23 37:1

**reports** 15:13 36:4 46:21

**represent** 6:2 47:12 48:4 49:4

**represented** 53:1

**representing** 5:19

**request** 10:19 24:8,11,13,14,18,20

**require** 22:18

**reserve** 61:1

**respect** 18:16 19:1,8 21:16 30:18 31:3,4,22 35:10 36:6 39:7 40:3 42:21 43:10 60:13

**respond** 10:19

**respondent's** 7:14

**responses** 53:17 54:4

**responsibilities** 52:3

**responsible** 51:17,24

**restate** 40:1

**retained** 61:11

**retrial** 53:8

retry 31:9 53:3

review 8:23 13:18 15:12 34:9 37:17 38:10 46:11 47:13,18 48:10 55:13 56:23,24 57:5 60:24

reviewed 11:10,11 13:7,12,15 15:7,8,16 35:6 36:3,4 46:18,24 58:5,23

reviewing 34:11,14 35:3,7

Reyes 5:14 6:22 10:3 16:21 28:19 29:13 31:5,10 32:2,11 34:12 35:1 38:3,9 41:10,18 42:9 45:6,20 47:16 48:9 49:9,19 50:13,23 51:4 57:1,12 58:7,16 60:18

Reyes's 31:19 35:22 40:4 45:1

Reynaldo 53:11,16 54:1

rights 19:12

ring 59:14

role 8:14 9:21 10:1 14:4 41:13

room 20:2

Rosen 6:6,7 7:6 8:11 13:11 16:8,9, 19 25:13 26:21 27:23 28:13,14 30:15,22 31:2 34:19,22 35:9,19 37:6 38:19 41:20,22 42:7 44:18,20, 21 46:16 47:1 49:12 57:8,24 58:9 60:9,12,22 61:6

ruled 7:19

ruling 7:23

—————————————————————
                    S
—————————————————————

scene 38:3,12

Scott 34:8,15 35:13

screen 5:6 44:19

section 13:4

secure 32:9

sense 25:20

separate 31:14

set 7:13,15

shoe 38:6

shoes 17:5

shortly 10:8

sides 15:20

Sidley 34:8,12 35:14

Signature 61:4

significant 15:9 17:19 18:7

similar 21:24 22:17

sit 16:10,20,23 17:6 34:21 36:7,11 37:10,13 38:1 39:15 41:16 50:11 52:15 56:4 59:1 60:2

slapped 36:13

Solache 5:14 6:20 10:3 16:11 28:18 29:13 31:5,9,18 32:1,11 34:12,24 35:21 36:12 38:3,8 40:4 41:9,17 42:9 44:24 45:6,15 47:16 48:9 49:9,19 50:13,23 51:4 56:20, 24 57:6,12,22 58:6,16 60:17

Solache's 36:6

Solache-reyes 20:7,24 59:19

sort 55:23

Soto 38:21

sounds 16:13 36:15

speak 35:13 51:11 59:8,15,18

speaking 27:19

specific 37:24 38:7 43:8 50:1 57:2

specifically 16:14 17:24 18:18,21 19:4,6 31:17 32:16 33:10 35:7 36:8 57:3,16 58:22,24

specifics 21:4 39:12,14

Spellberg 12:15,18 14:4,8,14 17:23 23:24 24:8 51:20 52:22,24

Spellberg's 12:19

Spellman 51:9,12,16,20

spoke 20:12 37:21 50:21 52:24 53:11,24

stabbed 38:21

stand 20:12

standard 15:9,10 40:12

start 9:14 21:18 28:13 44:4

started 9:16

state 6:1,2 40:11 44:23 45:11 46:2 60:15

state's 6:13 8:16 9:12,22 14:16 17:11,16 20:20 21:9,11 23:11 25:3, 7 26:24 37:16 40:24 41:3 42:22 43:13 44:11 47:15,18,24 48:5,10 49:7,11 50:9 53:6 55:19 59:9,12, 15,18 60:20

statement 16:21 17:8,9 37:12 45:9,14,19,21,23 46:10 58:15 59:5

statements 31:4,23 32:11 33:3,10 35:21 46:6

States 5:16

status 41:17

step 29:14 30:6,7,10 41:8

steps 21:21,22 31:6

stipulation 6:5

strategizing 12:9

strategy 29:2

strictly 7:24

strike 13:19 26:11 41:6 43:9

subject 22:11

subpoena 7:15

substance 22:9

substantive 28:17 53:17 54:4

substantively 29:8

successful 26:10,14,20

sufficient 17:16 31:8 32:12 46:1

suggesting 25:18

summarizing 28:1

supported 19:2

suppress 10:10,12 13:22 14:5,8, 24 15:4 17:13,18 18:4 19:15 21:15 25:9 26:24 30:2,12,16 31:4 44:1,6 53:2

suppression 12:11 15:10 26:19 55:5

Susler 6:19 16:15 36:22 46:15 56:10,13 57:9 58:3,13 59:2,22 60:5

Sussman 5:4 7:2,7 8:6,12 42:8 47:11 48:3 49:3 56:14 60:23 61:7, 11

sustain 26:2 40:7,9,11,22 46:2

swear 6:24

sworn 7:1,4 54:10

synonymously 26:15

—————————————————————
                    T
—————————————————————

taking 20:19 29:17,20

ERIC SUSSMAN, 11/23/2021

**talking** 10:16 11:13 40:10 42:12

**team** 14:12 52:6

**team's** 44:12

**TECHNICIAN** 5:1 6:23 42:1,4 48:18,21 61:9

**telling** 22:8

**Ten** 41:21

**terms** 20:3 26:15 36:4

**territory** 9:6

**testified** 7:4 11:8 22:21 23:21 26:2 28:1,3,6 53:24 54:12

**testify** 18:15 22:11 23:16 25:5 32:6,16,20

**testimony** 22:10,21 24:2,10,24 25:7,16,18,20 26:9 27:20 28:2,9, 10,16 29:3,6,8,23 30:6 32:10,12 33:4,10,13,19 35:21 46:1,6 53:7 54:10,11,14,17,22 55:4,7,9,10,11

**thing** 9:10

**things** 11:17 18:5 26:3,12 33:14 46:17 54:13

**third-party** 7:14

**Thomas** 6:15 47:20

**thought** 29:18

**three-hour** 8:1

**time** 5:5 8:1 9:3 11:1,4 12:19,20 13:3 15:13,21 18:14 19:11 34:7 37:17 41:3 42:2,5,8,17 43:15 46:21 47:1 48:19,22 51:10 56:9 58:15 59:4 61:6,13

**times** 38:22

**title** 12:19

**today** 5:22 13:7,13 16:10,20,23 17:7 34:21 36:8,11 37:10,13 38:1 39:15 41:16 42:13 50:11 51:1 52:15 59:1 60:2

**told** 52:13,18,20

**transcript** 57:10,14,17 58:23,24 59:3,7 60:24

**transcripts** 8:24 13:15,19,20,24 14:4 15:6 17:14 36:4 38:11 46:18

**treatment** 33:16,17

**trial** 15:6 36:1,17 46:19

**truthful** 22:21

**turn** 56:9

**two-year** 9:19

**type** 32:18,22

U

**ultimate** 49:8,10

**ultimately** 28:9 40:24 43:19 44:9

**unable** 44:2

**understand** 54:9

**understanding** 24:18 30:10

**unit** 5:1 10:24 11:8,10,14 61:10

**United** 5:16

**unknown** 38:11

**Urlaub** 5:19,23 61:11

**utilize** 23:12

**utilized** 32:1

V

**Vaguely** 45:2

**Varga** 6:15 47:20

**versus** 5:14 10:3

**victims** 38:20,21

**video** 5:1,2,6,12 6:1,23 42:1,4 47:14 48:18,21 61:9,11

**videotape** 5:3

**virtually** 28:10,17

**voice** 56:21

**voluntariness** 20:4 28:19

**voluntary** 15:11

W

**wait** 47:5

**waive** 61:1,3

**waived** 61:4

**wanted** 7:11 24:4

**Wehrle** 6:14 47:19

**witnesses** 51:18,24

**woman** 17:4

**words** 51:6

**work** 7:22

**worked** 45:5 47:13 51:3,9

**worries** 12:23

**written** 55:23 56:3 59:4

Y

**years** 9:13 12:14 60:4

**yesterday** 16:7