# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATHSON FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 10 C 1168 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MONELL-RELATED MOTIONS IN LIMINE**

In this order, the Court rules on the parties' *Monell*-related motions *in limine*.

**A. Defendants' motions**

    **1. Documents allegedly withheld from criminal defense counsel**

In their first motion, defendants say—at least in the title—that they want to exclude evidence, specifically "plaintiff's disclosures of documents allegedly withheld from criminal defense counsel." Defs.' *Monell* Mots. *In Limine* (dkt. no. 1007) at 1. But the body of the motion amounts to an attack on the viability of plaintiff's methodology for proving his *Monell* claim and the sufficiency of his evidence on that claim, rather than on any specific evidence defendants want to exclude. In short, the motion really is not a motion *in limine* at all; rather, it is a thinly disguised summary judgment motion. The motion is denied on this basis; it was filed beyond the dispositive motion deadline.

That aside, it appears to the Court, based on plaintiff's response to the motion and oral argument on the motions *in limine*, that plaintiff is contending that the City of Chicago had policies and widespread practices that resulted in systematic

underproduction of relevant police investigatory records, and that this led to violations of *Brady v. Maryland* in plaintiff's criminal case. Defendants have not shown, and the Court is not prepared to say, that this is a legally deficient method of proof or that it results in an insufficient showing of a *Monell* claim. *See, e.g., Daniel v. Cook Cty.*, 833 F.3d 728, 734 (7th Cir. 2016) (official policy to establish *Monell* claim "can include both implicit policies as well as a gap in expressed policies"; plaintiff can meet burden "by offering competent evidence tending to show a general pattern of repeated behavior") (internal quotation marks omitted).

Part of plaintiff's proof consists of comparisons between documents in police files and documents found in criminal defense attorney files that plaintiff has obtained. Defendants argue that plaintiff cannot establish that the criminal defense attorneys' files were complete or that they reflect what prosecutors turned over. This, again, is an argument about the sufficiency of plaintiff's evidence, not its admissibility. Defendants' document-by-document arguments regarding whether prosecutors had particular documents are points for cross-examination, presentation of contrary evidence, and argument, not a basis to exclude the particular documents. Finally, defendants argue that what matters for purposes of a claim against the City is what county prosecutors got from the police, not what was produced to defense counsel. Aside from the fact that this is, again, a sufficiency-of-proof argument that is misplaced in a motion *in limine*, one problem with the argument (though not the only one) is that it assumes that a claim may be proved only with direct evidence. The contrary is true; circumstantial evidence is equally admissible and may be equally sufficient.

2

**2.     Plaintiff's expert Michael Brasfield**

Defendants seek to bar on several grounds the testimony of plaintiff's police practices expert, Michael Brasfield. Like the motion discussed in the previous section of this order, this motion is largely an argument about sufficiency of evidence, not its admissibility.

Defendant's first argument is essentially a repeat of one the Court rejected in the previous section, specifically that it is inappropriate or insufficient for purposes of plaintiff's *Monell* claim to compare documents in the possession of police department with documents in the files of criminal defense counsel. Though defendants couch this argument as a challenge to the reliability of Brasfield's methodology, it is actually a challenge to the sufficiency of Brasfield's testimony to prove plaintiff's *Monell* claim. There is nothing deficient about Brasfield's methodology; he has compared what the police had to what is found in criminal defense counsels' files and has identified what is missing from the latter. Brasfield's testimony does not purport to be, and does not need to be, the entirety of the evidence plaintiff is offering on his *Monell* claim. The Court overrules defendants' argument for this reason and those described in the previous section of this order. In addition, the fact that there may be multiple explanations for why documents are missing from defense attorneys' files is not a basis to exclude Brasfield's testimony on this topic. Rather, it is a basis for cross-examination and presentation of contrary, explanatory, or clarifying evidence.

Defendants argue that Brasfield's testimony risks misleading the jury by leading them to believe that police are obligated to produce documents directly to criminal defense counsel. The Court disagrees. If this is a problem that is not sufficiently cured

3

via cross-examination or presentation of defense evidence, it can be resolved by way of an instruction to the jury, which the Court leaves to defendants to propose.

Defendants also object to testimony by Brasfield regarding criminal defense files for which they have been unable to obtain the corresponding prosecutor's file for comparison purposes. The Court overrules this argument. This is not materially different from a situation in which one side's witness who might have refuted the testimony of a witness for the opposing party is unavailable. This is no basis to exclude the opposing party's evidence. Defendants are entitled to offer, via appropriate evidence, an explanation for why they have been unable to obtain the prosecutors' files in these situations, and they may argue inferences from other instances where they *do* have the prosecutors' files. There is no unfair prejudice that substantially outweighs the probative value of Brasfield's testimony on this topic.

Defendants ask the Court to exclude Brasfield's testimony regarding the police department's practices in responding to subpoenas for records. Their motion, which is not particularly developed on this point, identifies only one element of Brasfield's testimony about the department's practice in this regard, specifically his statement that it did "little to ensure disclosure of all relevant materials." Defs.' *Monell* Mots. in Limine at 16. Plaintiff's response, which references other elements of Brasfield's testimony that provide context for this particular point, is sufficient to defeat defendant's unduly vague request to exclude this opinion. *See* Pl.'s Resp. to Defs.' *Monell* Mots. in Limine at 11-12. Plaintiff has offered an adequate foundation for Brasfield to testify on this point.

Next, defendants ask the Court to bar Brasfield from testifying about the significance of documents from police department files that were not found in criminal

4

defense attorneys' files. The Court agrees to a limited extent—Brasfield cannot properly testify that any particular materials were exculpatory—but it sees nothing inappropriate about testimony by Brasfield regarding whether generally accepted police practices would call for the disclosure of certain types of material. On that point, Brasfield's background and experience is more than sufficient to qualify him to testify regarding appropriate police practices at the relevant time.

Defendants' next contention regarding Brasfield is that he should not be permitted to testify why there might be, within the police department, parallel files regarding a particular investigation. Plaintiff's response reflects that he intends to elicit from Brasfield testimony that the City's practices enabled the creation of multiple files and that this increased the risk of nondisclosure to criminal defendants. *See* Pl.'s Resp. to Defs.' *Monell* Mots. *In Limine* at 13. This opinion is relevant and properly supported, and it is not the subject of defendants' *in limine* request. On the point asserted by defendants, although Brasfield's report identifies several reasons why parallel files existed, *see* Defs.' *Monell* Mots. *In Limine*, Ex. 3 at 12, it is not clear whether plaintiff actually intends to elicit this testimony. In that section of his report, Brasfield has specific citations to supporting evidence for some of what he posits, but not for all of it. *See id.* The Court will not permit plaintiff to elicit such testimony without a proper foundation, which will have to be laid before plaintiff may elicit these points from Brasfield.

Defendants argue that Brasfield's testimony regarding whether the police department's Detective Division Special Order 83-1 varies from acceptable police standards should be excluded because he could not identify any other law enforcement

5

agency's policy at the relevant time that was superior, and because he testified during his deposition that he could not compare and contrast policies of other departments. Plaintiff says in response that Brasfield's actual opinion is that Order 83-1 was insufficient to cure the problems it was purportedly designed to address. *See* Defs.' *Monell* Mots. *In Limine*, Ex. 3 at 26. Brasfield has sufficient qualifications and expertise to testify regarding the latter point. On the point defendants raise, the Court has reviewed the section of Brasfield's report concerning Order 83-1, as well as the report's sections regarding his background and qualifications, and finds that Brasfield has offered a sufficient basis to render the opinion in question.

Defendants' final point regarding Brasfield is that Brasfield should not be permitted to testify that generally accepted police practices required disclosure of "one hundred percent (100%) of all information it receives during a homicide investigation without regard to whether the information is relevant to the investigation . . . ." Defs.' *Monell* Mots. *In Limine* at 18. But as plaintiff points out, no such opinion appears in Brasfield's report. Rather, the testimony that defendants attack was elicited by their counsel during Brasfield's deposition. Plaintiff says that he does not intend to elicit such testimony from Brasfield, *see* Pl.'s Resp. to Defs.' *Monell* Mots. *In Limine* at 15, and that is sufficient to render defendants' request moot.

### 3. Evidence about *Jones* and *Palmer* litigation

Brasfield's report includes a relatively detailed discussion of the state court prosecution of George Jones and an ensuing federal civil suit, as well as another federal civil case, *Palmer v. City of Chicago*, in which significant deficiencies in the police department's file-keeping and record production practices were identified. The

6

City says that it attempted to remedy the deficiencies by putting in place revised practices, which were the practices that existed at the time of plaintiff's state criminal prosecution. Plaintiff contends that the latter practices did not actually remedy the problems identified in the *Jones* case and the *Palmer* litigation. Defendants move to bar any and all evidence about *Jones* and *Palmer*, and they also identify other issues regarding particular exhibits relating to these cases.

At the initial trial in this case, the Court ruled (at a sidebar during the testimony of James Hickey; there was no pretrial motion on this point) that testimony regarding the events in the *Jones* and *Palmer* cases was inadmissible hearsay. *See* Mar. 12, 2014 Tr. at 818-22. Later during that trial, the Court again ruled (again at a sidebar) that the testimony was inadmissible on this basis. *See* Mar. 14, 2014 Tr. at 1330-32. On both occasions, the only way around the hearsay rule that plaintiff's then-lead counsel cited was that this showed the City's "reason for acting," which the Court concluded would swallow the hearsay rule if read as broadly as counsel argued. During the second sidebar, there was discussion of the admissibility of the evidence on the basis that it been elicited in a deposition under Rule 30(b)(6) after the City designated the particular witness to testify regarding police department orders involved in this case. *See id.* at 1332-33. Still later during the trial, the Court concluded that Rule 30(b)(6) did not provide a basis to admit the testimony but permitted plaintiff to elicit testimony that the policies and practices in place at the time of plaintiff's state criminal trial were developed and established during ongoing litigation about the police department's practices. *See* Mar. 17, 2014 Tr. at 1353-66; *see also id.* at 1371. The Court reaffirmed this ruling at the second trial. *See* Apr. 21, 2014 Tr. at 2045-47.

7

On the hearsay issue, plaintiff now makes a different argument from the one he made at the prior trials. Specifically, he argues that evidence about the *Jones* and *Palmer* litigation is not hearsay because it is offered to show that that the City's policymakers were on notice at the time relevant to plaintiff's criminal case regarding deficiencies in police department file-keeping and disclosure policies and practices that resulted in constitutional violations. *See* Pl.'s Resp. to Defs.' *Monell* Mots. *In Limine* at 15 & n.4.

The Court finds this argument persuasive and therefore overrules its previous determination that any evidence regarding the *Jones* and *Palmer* cases is inadmissible hearsay. To the extent such evidence is offered to show for purposes of notice and a proper foundation is laid to make such a showing, it is not hearsay. In addition, evidence regarding the preexisting problems that led to the adoption of the policies in place at the time of plaintiff's state court case—which plaintiff contends were insufficient to remedy those problems and did not do so in his case—is relevant regarding plaintiff's *Monell* claim.

This does not mean, however, that plaintiff is entitled to free rein in introducing evidence about *Jones* and *Palmer*. The first issue is a foundational issue; plaintiff will need to lay a foundation for the proposition that, as plaintiff contends, "senior leaders in the Chicago Police Department would have been well-aware of the court's findings in *Jones* and *Palmer*." Pl.'s Resp. to Defs.' *Monell* Mots. *In Limine* at 16. This is likely to be more difficult regarding *Jones* than *Palmer*. First of all, plaintiff has it wrong when he says in his response to defendants' motion that "In *Jones*, . . . an innocent man was

8

wrongly convicted." *Id.*[1] In fact, a police detective named Frank Laverty brought the previously concealed information to the attention of Jones's defense attorney during his criminal trial in the spring of 1982; a mistrial was declared; and the charges against Jones were dropped. *See Jones v. City of Chicago*, 856 F.2d 985, 991 (7th Cir. 1988). Second, it is not clear to the Court when *Jones* filed his federal civil lawsuit—it was likely sometime in 1983—but the appellate decision that Brasfield references in his report was not issued until 1988, well after the relevant events in this case. So the question will be when the prominent and unusual events in Jones's criminal trial came to the attention of police policymakers.[2] *Palmer* is a different story. This lawsuit, in which the plaintiff sought on behalf of a putative class to prevent the continued use of "street files," was filed in April 1982. That same month, a temporary restraining order was entered requiring the police department to preserve all street files. A judge of this court certified a class and granted a motion for preliminary injunction in March 1983. *See Palmer v. City of Chicago*, 562 F. Supp. 1067 (N.D. Ill. 1983). The court's decision granting the preliminary injunction motion makes specific reference to the police department's adoption of Order 83-1 in February 1983 and provides a sufficient foundation for testimony by Brasfield that the department adopted that order, as well as subsequent orders referenced in the decision and in the previous trials in the present case, as a result of the *Palmer* litigation. The Court also notes that it appears that

---

[1] Brasfield does not make this error in his report. *See* Defs.' *Monell* Mots. *In Limine*, Ex. 3 at 8-9.

[2] The *Jones* criminal case is referenced in the district court's preliminary injunction decision in *Palmer*, and it is at least conceivable that it was referenced in the earlier-filed complaint and/or preliminary injunction motion in that case. These are some of the ways that *Jones* might have come to police department policymakers' attention other than via learning of the *Jones* case directly.

9

James Hickey, who testified about police department general orders in the previous trials in the present case, testified before the district court during the *Palmer* preliminary injunction hearing. See *Palmer v. City of Chicago*, 755 F.2d 560, 566 (7th Cir. 1985) (referencing Hickey's testimony).

The Seventh Circuit partially overturned the preliminary injunction issued by the district court in *Palmer*. See *Palmer*, 755 F.2d at 579. Specifically, the court concluded that the class consisting of plaintiffs who had already been convicted in state court lacked standing to obtain part (though not all) of the injunctive relief the district judge had ordered, and the class consisting of plaintiffs with pending cases could not obtain an injunction given considerations of federal-state comity. See *id.* at 572-75. The court of appeals affirmed, however, certain aspects of the preliminary injunction regarding plaintiffs who had already been convicted, see *id.* at 576-78, and it did not overturn the district court's findings.

Given the timing and nature of the Seventh Circuit's ruling, it does not undercut the basis for admissibility argued by plaintiff regarding evidence about the district court phase of the *Palmer* litigation. Indeed, the Seventh Circuit's decision likely is not relevant regarding the matters at issue in the present case.[3] That said, depending on exactly what plaintiff introduces regarding *Palmer*, some limited questioning regarding what happened on appeal *may* be relevant and admissible, if conducted properly, if the Court determines that is necessary to avoid leaving the jury with a possible misimpression about what ultimately happened in *Palmer*.

---

[3] The same is true of a still-later Seventh Circuit decision overturning the district court's grant of an interim attorney's fee award in *Palmer*, upon which defendants in the present case place great emphasis. See *Palmer v. City of Chicago*, 806 F.2d 1316 (7th Cir. 1986). That decision came well after the relevant events regarding Fields's 1986 murder trial.

10

In addition, the present case does not turn on all the particulars of the *Jones* or *Palmer* cases or the specifics of any court decision in either of those cases. At some point, there is a significant potential for diversion of the trial into a dispute about what happened in those cases, which would pose a risk of jury confusion, not to mention a significant waste of time. *See* Fed. R. Evid. 403. The Court will therefore circumscribe the extent and scope of the testimony that plaintiff may offer through Brasfield or other witnesses regarding *Jones* and *Palmer*. Plaintiff will be required to make an oral proffer outside the jury's presence of what he intends to offer in this regard before either mentioning it in opening statement or introducing evidence on the topic, whichever comes first; the Court will hear defendants' comments, including a description of the responsive evidence they intend to elicit; and the Court will then rule on what is properly admissible.

### 4. Evidence regarding the *Kluppelberg, Rivera*, and *Taylor* cases

Defendants seek an order barring plaintiff from introducing, through Brasfield or otherwise, evidence regarding three other cases involving non-production of Chicago police files during criminal prosecutions: the *Kluppelberg, Rivera*, and *Taylor* cases. Defendants' primary argument seems to be that the Court somehow limited any additional evidence that plaintiff could introduce at retrial on the *Monell* claim involved the erroneously limited discovery regarding the so-called "basement files," which apparently do not include *Kluppelberg, Rivera*, or *Taylor*. *See* Defs.' *Monell* Mots. *In Limine* at 26-27. This argument lacks merit. The Court imposed no such limitation, and plaintiff disclosed his intention to rely on this material plenty early enough for defendants to conduct whatever discovery they believed they needed. *See* Pl.'s Resp. to Defs.'

11

*Monell* Mots. *In Limine* at 20-21. Indeed, defendants' motion does not identify any discovery that they believe they were precluded from conducting on these points.

The Court agrees with defendants that introduction of evidence about these separate cases brings Federal Rule of Evidence 403 into play. However, one of defendants' key arguments on the *Monell* claim at the previous trial—and indeed in their motions *in limine* for the current trial—has been that plaintiff lacked and lacks any evidence about any failure of disclosure in any case other than his own. This essentially confirms that evidence that policies in effect at the time of Fields's criminal prosecution also led to nondisclosures of police records in other cases has a significant amount of probative value regarding the *Monell* claim. But because Rule 403 requires the Court to weigh both probative value and unfair prejudice (etc.), the Court will require plaintiff to make an oral proffer outside the jury's presence of what he intends to offer in this regard before either mentioning it in opening statement or introducing evidence on the topic, whichever comes first; the Court will hear defendants' comments, including a description of the responsive evidence they intend to elicit; and the Court will then rule on what is properly admissible.

### 5. Evidence regarding police files without a corresponding criminal defense file

The Court agrees with plaintiff that evidence about police files in which no corresponding criminal defense file has been found is relevant, despite the absence of a comparison file, to show the police department's file-keeping practices and their conformity to the department's directives. That said, Brasfield may not offer any opinions regarding whether the documents in these particular files were or were not turned over to prosecutors or criminal defense counsel, because he has no basis in the

12

evidence to do so.

### 6. Plaintiff's expert William Bridges

After plaintiff disclosed Brasfield as an expert witness, the City of Chicago disclosed Judith Roberts, a statistical expert. Roberts's anticipated testimony includes an opinion that the police department files that Brasfield reviewed are an insufficient sample from which to draw conclusions about the department's practices. Plaintiff then offered a rebuttal report from William Bridges, likewise a statistical expert. Bridges's opinion challenges Roberts's opinion regarding the adequacy of the sample considered by Brasfield.

The Court, having reviewed Roberts's and Bridges's reports, agrees with plaintiff that Bridges's testimony is proper rebuttal. And Bridges in no way duplicates Brasfield's opinions; he comes to his conclusions from the perspective of a statistician, not a police practices experts.

The Court sustains, however, defendants' objection to Bridges's reliance on a sample of files produced in the *Kluppelberg* litigation. Defendants argue that this information was disclosed too late and that it introduces material (files from Chicago Police Department Area 3) that ought to have been disclosed, if plaintiff intended to rely on it, in his initial expert disclosures, not in his rebuttal disclosures. Plaintiff argues that his intention to rely on *Kluppelberg* was disclosed well before the end of *Monell* discovery following the Court's grant of a retrial. That is true, but it is somewhat misleading: plaintiff's disclosure in this case relating to *Kluppelberg* indicated an intention to rely on nondisclosure of evidence in Kluppelberg's criminal case, not on everything that Kluppelberg intended to offer in his own case to prove a *Monell* claim.

13

*See* Pl.'s Resp. to Defs.' *Monell* Mots. *In Limine*, Ex. A at 8-9. Plaintiff proposes to elicit from Bridges that an analysis of Area 3 files conducted in connection with *Kluppelberg* to show that the so-called "basement files" obtained in discovery in the present case reflected city-wide policies. *See* Pl.'s Resp. to Defs.' *Monell* Mots. *In Limine* at 26-27. That is certainly relevant evidence, but the disclosure of plaintiff's (and Bridges's) reliance on it came far too late in the litigation. The fact that it may have been disclosed to the *Kluppelberg* litigation is of no consequence; nothing about that put defendants on notice that the evidence would be used in the present case. For these reasons, the Court concludes that admission of Bridges's *Kluppelberg*-related statistical analysis would unfairly prejudice defendants in a way that runs afoul of Federal Rule of Evidence 403.

### B. Plaintiff's motions

#### 1. Defendants' expert Judith Roberts

Plaintiff's first motion concerns defense defendants' expert Judith Roberts. Roberts works for the accounting and consulting firm Grant Thornton. Her areas of expertise include economics, econometrics, and statistics. Her assignment from defense counsel involved evaluating the opinion of Brasfield "given [her] expertise as a statistician, data analyst and economist." Pl.'s *Monell* Mots. *In Limine*, Ex. A at 1. Section I of Roberts's report describes her qualifications; section II describes her assignment and approach; and section III summarizes her opinion regarding Brasfield's opinion. In section IV of her report, Roberts explains her opinion that the data set that Brasfield reviewed is not representative of investigative files from the police department's Area Central or the department's homicide files generally.

14

Plaintiff asks the Court to bar Roberts from rendering the opinions and conclusions contained in sections V, VI, and VII of her report. Section V discusses Roberts's opinion that Brasfield's analysis of the files he reviewed cannot show a pattern or practice of withholding documents by the police department. Section VI describes the opinions of another defense expert, Bernard Murray, and says that Murray's review shows that the police department met its record disclosure obligations. Section VII is essentially a summary of the conclusions in earlier sections of Roberts's report.

Roberts's appropriately rendered opinion testimony consists of the matters contained in sections I through IV of her report, the first two paragraphs of section V, and the part of section VII that summarizes the opinions that the Court has concluded are properly admissible. The remainder is excluded.

In section V of her report, Roberts explains in the first two paragraphs that Brasfield drew unwarranted conclusions that the criminal defense attorney files that he used for comparison purposes contained all the documents that were produced by the police years earlier and that any differences were due to production failures by the police. Roberts also said in this passage that the absence of many files should have suggested to Brasfield that criminal defense attorneys do not have a practice of preserving, or preserving completely, historical case files. This much is, in the Court's view, within the scope of Roberts's expertise as a data analyst; as she states in a footnote in her report, her comments on Brasfield's conclusions involve "question[s] of data validity." Pl.'s *Monell* Mots. *In Limine*, Ex. A at 6 n.9.

The remainder of section V, however, strays outside Roberts's relevant expertise.

15

She discusses whether attorneys have an obligation to maintain their historical files; she hypothesizes about their file-keeping practices; and she opines about the sufficiency of the police department's record-keeping practices. Nothing in Roberts's background or her report, or in defendants' arguments on the motions *in limine*, suggests that she has any insight on these topics that exceeds that of a layperson. *See, e.g., United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (an expert's appropriately rendered opinion "may not be divorced from the expert bases that qualified [her] as [a] witness[ ] in the first place"). Roberts then proceeds to list what she contends are inconsistencies between Brasfield's report and his testimony in this and other cases, and within his deposition testimony in this case. On this, Roberts has nothing to contribute that is beyond the ken of a lay juror. *See* Fed. R. Evid. 702

Section VI of Roberts's report consists of a summary of defense expert Bernard Murray's report. Those topics are appropriately left to Murray; Roberts may not testify about them. Defendants are not entitled to call an expert to repeat out loud the conclusions of another expert they have called or will call. *See* Fed. R. Evid. 403; N.D. Ill. LR Form LR 16.1.1, n.7.

### 2. Incompleteness of criminal defense attorney files

Plaintiff asks the Court to bar defendants from arguing that the criminal defense attorney files that plaintiff's expert Brasfield used as part of his analysis were incomplete. Plaintiff contends that "[d]efendants did not attempt to elicit evidence from any source supporting this contention, there is no such evidence, and there is therefore no basis for such an argument in this case." Pl.'s *Monell* Mots. *In Limine* at 9.

Plaintiff's motion seems to assume that the only way to ascertain the

16

completeness or incompleteness of the criminal defense attorneys' files would have been by interviewing or taking the depositions of the defense attorneys. That may be the most direct type of evidence on this point, but as the Court noted earlier, the law does not require everything to be proved by direct evidence, let alone by the most direct evidence that might be available. Defense expert Bernard Murray's report, for example, includes discussion of an analysis of various other sources that he says indicate that criminal defense attorneys actually had certain documents that Brasfield did not find in the attorneys' files.

That said, not all of Murray's testimony along these lines is properly admissible. Murray, given his extensive background as a Cook County prosecutor and thus his extensive background in dealing with criminal defense attorneys, certainly has a basis to testify regarding what was common practice for prosecutors and defense attorneys. But some of his contentions go beyond that. His report contains categorical statements that certain steps were always taken[4]; in some instances he takes what appears to be a speculative leap to conclude that a defense attorney had certain documents[5]; and in

---

[4] One example is Murray's statement that "Not all documents or pieces of evidence are tendered by prosecutors to defense counsel. However, these items are made available for defense counsel to examine prior to trial." Pl.'s *Monell* Mots. *In Limine*, Ex. B, ¶ III.H. Murray can testify that this was the common practice, but he cannot give testimony to the effect that it was the universal practice. Neither he nor anyone else could be sufficiently omniscient to make such a categorical statement. And this is one example; Murray's report contains many similar categorical statements regarding the actions of others.

[5] One example (though not the only one) comes from Murray's analysis of the file of Derrick Hatchett. Murray notes Brasfield's contention that police general progress reports (GPRs) reflecting notes of interviews of the defendant were not found in defense counsel's file. Murray replies as follows: "However, Hatchett's defense counsel successfully suppressed his admissions to the police officers. Defense counsel could hardly have proceeded to a hearing, much less be successful, without possessing these GPRs." Pl.'s *Monell* Mots. *In Limine*, Ex. B, ¶ V.D.3. This is a *non sequitur*, at least on the evidence cited. In particular, Murray does not say whether the statements that were suppressed were recounted only in the supposedly missing GPRs.

17

one instance he relates the contents of his interview of a Chicago police detective that he relied on to conclude that the police department always produced all records in response to subpoenas from prosecutors and defense counsel.[6] None of this is appropriate, even from a person with Murray's expertise. On the last of these points, although the law permits an expert to rely on inadmissible information "[i]f experts in the particular field" would reasonably rely on such information, Fed. R. Evid. 703, the Court is hard-pressed to see how un-cross-examined statements by a person whose conduct is apparently under question (Murray says that the detective handled 15 of the files reviewed by Brasfield) are the type that an expert in criminal practice would reasonably rely upon. In addition, the same rule says that "the proponent of the opinion may disclose [inadmissible matters] to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect," *id.*, which is not the case here for the same reason just cited.

### 3. Defendants' expert Bernard Murray

Plaintiff's general contention regarding defense expert Bernard Murray is that Murray should not be allowed to render opinions that are not disclosed in his report submitted under Federal Rule of Civil Procedure 26(a)(2). The Court certainly is prepared to bar undisclosed opinions, but plaintiff has not identified what opinions he

---

[6] Murray says that "[p]olice officers, who at one time or another were assigned the responsibility of subpoena compliance, indicate that" they always copied all of the reports requested. Pl.'s *Monell* Mots. *In Limine*, Ex. B, ¶ V.G. He then recounts an interview with a detective who was assigned to copy files in response to subpoenas. Murray may note the absence of evidence cited by Brasfield on the subject of subpoena compliance or noncompliance, but he has no appropriate or admissible foundation to testify regarding how the police department dealt at the relevant time with subpoenas, particularly vis-à-vis the so-called basement files or "street" files.

18

believes Murray will render that were not disclosed.[7]  This aspect of plaintiff's motion does not provide a basis to bar anything in particular as part of a pretrial *in limine* ruling.

The Court overrules plaintiff's contention that Murray's opinions regarding comparisons between the "basement files" and files that the defendants obtained from the Cook County State's Attorney's Office should be barred because they were not adequately disclosed.  This argument essentially boils down to the proposition that because Murray did not cite specific page numbers (or Bates stamp numbers) for documents in the prosecutors' files, his opinions were not adequately disclosed.  The Court disagrees.  It has reviewed Murray's lengthy report and attachments and concludes that the report contained sufficient information to enable plaintiff's counsel to cross-check Murray's analysis.  If plaintiff claims that Murray did not paint with a narrow enough brush, that is a point appropriately made via cross-examination and argument, not by excluding his opinions.

The Court also notes that the previous section of this order includes rulings excluding certain aspects of Murray's opinions.

Date:  November 7, 2016

_____
MATTHEW F. KENNELLY
United States District Judge

---

[7] The Court acknowledges that the motion was filed before plaintiff was able to take Murray's deposition.

19