EXHIBIT 13

2229

1            IN THE UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3 JACQUES RIVERA,                    ) No. 12 CV 4428
                                )
4           Plaintiff,          )
                                )
   vs.                         ) Chicago, Illinois
5                                 )
   Rey GUEVARA, STEVE GAWRYS, DANIEL NOON,)
6 JOHN GUZMAN, JOSEPH FALLON, JOSEPH SPARKS, )
   PAUL ZACHARIAS, GILLIAN MCLAUGHLIN, JOHN  )
7 LEONARD, EDWARD MINGEY, RUSSELL WEINGART,  ) June 18, 2018
   ESTATE OF ROCCO RINALDI, City OF CHICAGO, )
8                                 )
          Defendants.         ) 9:25 o'clock a.m.
9

10                        VOLUME 10 A
               TRANSCRIPT OF PROCEEDINGS
11      BEFORE THE HONORABLE JOAN B. GOTTSCHALL
                     and a jury

12 APPEARANCES:

13 For the Plaintiff:     LOEVY & LOEVY
                      BY:   MR. JONATHAN I. LOEVY
14                          MR. STEVEN E. ART
                         MR. ANAND SWAMINATHAN
15                  311 North Aberdeen Street
                 3rd Floor
16                  Chicago, Illinois   60607

17                  MACARTHUR JUSTICE CENTER
                 Northwestern University School of Law
18                  BY:   Locke E. Bowman, III
                 357 East Chicago Avenue
19                  Chicago, Illinois 60611
                 (312) 503-0844
20

21

22 Court reporter:        Blanca I. Lara
                 Official Court Reporter
23                  219 South Dearborn Street
                 Room 2504
                 Chicago, Illinois 60604
24                  (312) 435-5895
                 blanca_lara@ilnd.uscourts.gov
25

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 3 of 23 PageID #:98186
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2252

1   billed in this case?

2   A.  No.  In excess of 100 hours.

3   Q.  All right.  So somewhere between 30- and 40,000 dollars?

4   A.  That sounds about right.

09:56:11   5   Q.  And did you do a lot of work for that?

6   A.  I did.

7   Q.  And do you have any other -- in your entire professional

8   career as a consultant, have you ever done a project that was

9   this time-consuming and this resource-intensive?

09:56:24   10   A.  As an aggregate of all the three cases?

11   Q.  Yes.

12   A.  No.  Never.

13   Q.  All right.  I'm going to show you not all of the files you

14   reviewed, but some of them.

09:56:32   15        I want to start with the Samuel Robinson case, and

16   show you an example of a document.  This is Bates stamped 13648

17   in the Robinson file?

18        MR. LOEVY:  Anand, do you know the exhibit number?

19        MR. SWAMINATHAN:  Plaintiff's Exhibit 154.

09:56:49   20   BY MR. LOEVY:

21   Q.  This is Plaintiff's Exhibit 154.

22        Can you tell the jury the kind of document we're

23   looking at here.

24   A.  This is a document not on --

09:56:59   25        MR. LOEVY:  Oh, the jury screen is not up, Your Honor.

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 4 of 23 PageID #:98187
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2253

1    And, Your Honor, we move this into evidence.

2    THE COURT:  Any objection?

3    MS. ROSEN:  Can you identify what that document is?

4  Bates number?

09:57:09  5    MR. LOEVY:  It is 13648.  It is a memo that was in the

6  investigative file but not the permanent retention or criminal

7  defense attorneys file.

8    MS. ROSEN:  Well, you know?  I'm going to object to

9  you testifying.

09:57:22  10    MR. LOEVY:  You asked me to identify it.

11    THE COURT:  You asked.  Can the witness identify the

12  document?

13    MR. LOEVY:  I believe so.

14    THE COURT:  All right.  Do it that way.

09:57:29  15  BY MR. LOEVY:

16  Q.  Mr. Brasfield?

17  A.  I cannot give you the specific case file that it came from,

18  but I've had occasion to look at this from the original

19  material that I reviewed and I have relied on it, in part, in

09:57:47  20  forming my opinions.

21    MR. LOEVY:  All right.  We would move this into

22  evidence, Your Honor.

23    THE COURT:  All right.  Is there an objection to

24  this?

09:57:52  25    MS. ROSEN:  There's an objection until I know what the

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 5 of 23 PageID #:98188
6-18-18 (Ex 10)
                    Brasfield - direct by Loevy
                                                            2254

```
             1  RD number is.

             2         MR. LOEVY:  The RD number is 581836.  581836.

             3         MS. ROSEN:  All right.

             4         THE COURT:  It's received.

09:58:15     5         (Plaintiff's Exhibit No. 154 was received in

             6         evidence.)

             7         MR. LOEVY:  Your Honor, we would ask permission to

             8  publish this memo.

             9         THE COURT:  You may.

09:58:22    10  BY MR. LOEVY:

            11  Q.  Can you tell us what we're looking at here?

            12  A.  This is what I would refer to as a to-from memo.  Sometimes

            13  the to-from memos are somewhat antiquated printed to-from

            14  memos, but this one is obviously a typewritten note from one

09:58:44    15  detective or one police employee to another regarding what's

            16  self-evident on the face of it, that a citizen called, an

            17  anonymous citizen, and provided information about a possible

            18  alternative suspect.

            19  Q.  All right.  Is this the kind of information that should've

09:59:08    20  been turned over to the criminal defense attorney?

            21  A.  Yes.

            22  Q.  And it wasn't?

            23  A.  No.

            24  Q.  All right.  Is that -- that is an example of a systemic

09:59:19    25  problem?
```

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 6 of 23 PageID #:98189
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2255

1   A.   This is the type of thing, this would be an example that's

2   indicative of the types of things that I would find in

3   reviewing investigative files that would be generally missing

4   from the permanent retention file.

09:59:32    5   Q.   All right.  Let's talk about another case, the Fields case.

6   This is Plaintiff's Exhibit 146, page 950.

7           MR. LOEVY:  Your Honor, permission to show this to the

8   witness before we show it to the jury.

9           MS. ROSEN:  Judge, I have a standing objection to all

09:59:52    10  of the documents as to the Fields case for the reasons that

11  we've expressed.  And, quite frankly, I think the Court

12  sustained the objection to the documents from the Fields case

13  in the ruling.

14          MR. LOEVY:  Your Honor, these are the files he

10:00:02    15  reviewed to form his opinions.

16          THE COURT:  If you want to make it more specific to

17  me, it would be great, but I don't know that I made any

18  categorical ruling about --

19          MS. ROSEN:  Judge, the City objected to the entry of

10:00:15    20  the documents from Fields because Mr. Brasfield did not rely on

21  the documents from Fields in rendering the opinions in this

22  case.  He simply relied on the Fields report.

23          THE COURT:  Well, let me ask you this, were these

24  documents given to Mr. Brasfield?

10:00:30    25          MR. LOEVY:  Absolutely.

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 7 of 23 PageID #:98190
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2256

1       THE COURT:  And did they lead to a conclusion?

2       RIGHT SIDE:  Absolutely.

3       MS. ROSEN:  But, Judge, they were given to him in the

4    Fields case.  He expressly said he wasn't relying on the

10:00:39    5    underlying --

6       THE COURT:  You know what?  If you want to show me the

7    ruling, show it to me, because I'm not following.

8       Is it a motion in limine?

9       MS. ROSEN:  It is, Judge.

10:00:57    10      THE COURT:  And which motion in limine is it, because

11   maybe we can find it.

12      MR. SWAMINATHAN:  City's motion in limine number 6, I

13   believe.  Your ruling is docket 552, and the ruling is on

14   page 15.

10:01:11    15      THE COURT:  All right.  Let me just take a look at

16   this.

17      (Brief pause).

18      THE COURT:  We've got it.  So let me get it printed

19   out.

10:01:26    20      (Brief pause).

21      THE COURT:  I want to just remind the lawyers that I

22   said that I need to see the motions if you're going to rely on

23   some ruling.  And it wastes our time if you don't have them and

24   we got to find them and print them out.

10:01:52    25      (Brief pause).

                                 Brasfield - direct by Loevy

                                                                    2257

     1          THE COURT:  Is it coming?

     2          COURT'S LAW CLERK:  Yes.

     3          MR. LOEVY:  Your Honor, can I back up and lay a better

     4    foundation?

10:02:05  5     THE COURT:  I have no idea, because I don't know what

     6    the ruling says.  I don't have them all committed to memory.

     7          (Brief pause).

     8          THE COURT:  How many pages do I need?

     9          MS. ROSEN:  Judge, page 14 of the ruling, docket 552.

10:02:44  10    THE COURT:  I've got 552, but I don't have 14.

    11          MS. ROSEN:  I'll hand it up to you --

    12          THE COURT:  Wait.  I have it now.

    13          MS. ROSEN:  Okay.

    14          (Said item tendered.)

10:03:07  15    THE COURT:  Can you stop the printing, if you can.

    16          COURT'S LAW CLERK:  Yes.

    17          (Brief pause).

    18          MS. ROSEN:  It's the middle paragraph.

    19          THE COURT:  Yeah, I'm reading it.

10:03:25  20    MS. ROSEN:  Okay.

    21          (Brief pause)

    22          THE COURT:  Well, let me ask you this, there was no

    23    categorical bar.  It was just a request of counsel to alert

    24    everyone to anything that he intended to use.  And I think we

10:03:43  25   now know it's being used, and it's being used the way other

Brasfield - direct by Loevy

2258

1   documents were used.  I don't know if you gave notice or not.
2   It would've been helpful.
3           MR. LOEVY:  Well, it's page 67 and 68 of his report,
4   that he relied on this, you know, heavily.
10:03:57   5           MS. ROSEN:  Judge, and these documents were not
6   produced in discovery in the case.  The Fields documents were
7   not produced in discovery in this --
8           THE COURT:  Well, if he refers to it in this report, I
9   think that's adequate.
10:04:06   10           MS. ROSEN:  But if he expressly says that he's not
11   relying on the underlying source document and he's simply
12   relying on his whole opinion --
13           THE COURT:  This ruling does not give any kind of
14   prohibitive bar.  It simply says there needs to be notice
10:04:22   15   because there's been a lack of specificity in terms of how much
16   he's going to use from these cases.
17           MR. LOEVY:  And it's not much, Your Honor.
18           THE COURT:  I'm going to overrule the objection.
19           MR. LOEVY:  All right.  We would ask permission to
10:04:28   20   show Plaintiff's Exhibit 146, page 950.
21           THE COURT:  Okay.
22           MR. LOEVY:  And we can call this 146 A.
23           THE COURT:  And there's an objection to 146 A, I
24   assume, but I'm overruling it and it will be received.
10:04:47   25

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 10 of 23 PageID #:98193
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2259

1          (Plaintiff's Exhibit No. 146 A was received in

2          evidence.)

3          MR. LOEVY:  All right.  And if we could publish this

4     then to the witness, please.

10:04:50  5     BY MR. LOEVY:

6     Q.  Can you provide some context for the kind of document we're

7     talking about -- first of all, is this a document that was in

8     the criminal defense attorney file or not in the criminal

9     defense attorney file?

10:04:58  10    A.  This would've been not in the criminal defense attorney's

11    file.

12    Q.  All right.  Can you give us some context for why this is

13    the kind of document that's important?

14    A.  This is a general progress report produced on a City of

10:05:12  15    Chicago Police Department form.  And as I've mentioned, other

16    than the requirement that GPRs be inventoried, they're not

17    included in the permanent retention for discovery.

18          This is an example of one that was not produced.  And

19    it describes receiving a phone call who the caller indicated

10:05:36  20    that a Rodell Banks was the person who had shot the people on

21    39th Street.  This would be the type of information, however

22    eventually it turned out to be true or not true, would be the

23    type of thing that a criminal defense attorney would need, the

24    defendant would need to mount an effective defense.

10:05:57  25    Q.  And to be clear, the criminal defendant in this case was

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 11 of 23 PageID #:98194
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2260

1    not Rodell Banks, it was a man named Nate Fields, correct?

2    A.  That's correct.

3    Q.  All right.  Showing you Plaintiff's Exhibit 146 B, which is

4    page 921 of the same exhibit.

5    10:06:09        Can you identify the kind of document we're talking

6    about here?

7    A.  This is what's been referred to obviously as a handwritten

8    memo.  And it refers to --

9            MS. ROSEN:  Judge, I have an objection.

10   10:06:24        This is a different exhibit, correct?

11           MR. LOEVY:  Yes.  146 B.

12           MS. ROSEN:  Okay.  So it's on the screen.  I have an

13   objection to it.

14           THE COURT:  So this is for the same reason?

15   10:06:33        MS. ROSEN:  For the same reason.

16           THE COURT:  Okay.  That objection is overruled.  You

17   may publish it.

18   BY THE WITNESS:

19   A.  And it indicates that about 0900 hours in a stairwell, he

20   10:06:47 said that he was going to get a gun and that he would put on

21   masks.  And Lawrence also said he would -- wouldn't live

22   through the night, and Marshall said he would be jumping --

23   "won't be jumping on you anymore."  This, again, is referring

24   to someone other than Mr. Fields.

25   10:07:04 Q.  Is this the kind of information that Mr. Fields should've

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 12 of 23 PageID #:98195
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2261

1    had in the criminal defense trial?

2    A.  Yes, I would expect that to be.

3              MS. ROSEN:  Judge, just for purposes of the record,

4    this document I've never seen it before.  It's never been

10:07:17   5    produced.

6              MR. LOEVY:  It's a plaintiff's exhibit, Your Honor.

7              MS. ROSEN:  It's never been --

8              THE COURT:  Hold on.

9              It's never been produced?

10:07:22   10             MS. ROSEN:  Never produced in discovery in this case

11   at all.

12             MR. LOEVY:  Your Honor, it's a plaintiff's trial

13   exhibit.  They have all our trial exhibits.

14             MS. ROSEN:  But --

10:07:29   15             THE COURT:  Okay.  Let's not have a fight about it.

16   You're telling me that it was made available with other

17   exhibits?

18             MR. LOEVY:  We gave them all our trial exhibits, Your

19   Honor.

10:07:39   20             MS. ROSEN:  Before trial.  Just before trial.

21             THE COURT:  Overruled.

22   BY MR. LOEVY:

23   Q.  All right.  This one is not on a GPR, correct?

24   A.  That's correct.

10:07:46   25   Q.  Does that show evidence of compliance with the rules?

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 13 of 23 PageID #:98196
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2262

1    A.  No, it is clear, noncompliance with the rules.

2    Q.  All right.  Showing you 146 C.

3              MR. LOEVY:  And same type of document, Your Honor.

4    Last one from the Fields case.  We'd ask permission to move 146

5    C into evidence.

6              MS. ROSEN:  Same objection.

7              THE COURT:  And I will also overrule that objection.

8    It will be received.

9              (Plaintiff's Exhibit No. 146 C was received in

10             evidence.)

11   BY MR. LOEVY:

12   Q.  All right.  This is another document that did not make it

13   to the criminal defense attorney's file, correct?

14   A.  Yes.

15             THE COURT:  How are you marking this?

16             MR. LOEVY:  C.  It says "A" but it should be "C."

17             THE COURT:  Okay.  All right.

18   BY MR. LOEVY:

19   Q.  Can you explain what this document is?

20   A.  In police parlance, it's a rap sheet.  It's the

21   identification section listing of an arrest of an individual.

22   In my review of these hundreds of cases, that when it's

23   produced by the ID or record section to whoever it's asked for,

24   it's date stamped.  This one is April 27, '84.  What this

25   refers to is Earl Hawkins.

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 14 of 23 PageID #:98197
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2263

1  Q.  Now, without getting into too much detail about the Fields

2  case, could it be exculpatory if this guy, Hawkins, was a

3  suspect on April 27th, that might play into the chronology of

4  the case, correct?

10:09:09  5  A.  That's correct.

6  Q.  Now, can you know from looking at all these files whether

7  this date turned out to be important in the Fields case as

8  being before he was supposed to be a suspect?

9  A.  I can't --

10:09:20  10  MS. ROSEN:  Objection.

11  THE COURT:  Wait a minute.  Wait a minute.

12  What's the objection?

13  MS. ROSEN:  He's making an analysis of whether or not

14  it's important in the Fields case.

10:09:27  15  MR. LOEVY:  I'm asking if he can.

16  Could I ask a better question, Your Honor?

17  THE COURT:  Well, I thought we weren't going to do

18  that.

19  MR. LOEVY:  This is the Fields cases.  May I ask a

10:09:36  20  different question?

21  THE COURT:  Sure.

22  BY MR. LOEVY:

23  Q.  When you review these files, is it hard to know if a

24  particular document like this one had significance on the

10:09:44  25  Fields fact pattern?

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 15 of 23 PageID #:98198
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2264

1   A.  It's very difficult to, but it would require considerable

2   time to cross-check.

3   Q.  All right.  So this might be a benign document or it might

4   be a smoking-gun document, it's hard for you to know, correct?

10:09:58   5   A.  That's correct.

6   Q.  All right.  Let's talk about the Kluppelberg case.

7            This is another example of a file that turned up after

8   the criminal trial and included documents that didn't make it

9   to the criminal defense attorney, correct?

10:10:13   10   A.  That's correct.

11           MR. LOEVY:  All right.  I'd like to introduce at this

12  time Plaintiff's Exhibit 145 A, which is a handwritten note

13  from the investigative file that was found on the pallet.

14           MS. ROSEN:  Judge, I have the same objection to the

10:10:27   15  Kluppelberg documents.

16           THE COURT:  Was this also a trial exhibit?

17           MR. LOEVY:  Yes, Your Honor, Plaintiff's Exhibit 145.

18           THE COURT:  I will receive it.

19           (Plaintiff's Exhibit No. 145 A was received in

10:08:05   20           evidence.)

21  BY MR. LOEVY:

22  Q.  All right.  Can you give us some context for what we're

23  looking at here.

24  A.  Again, this would be a handwritten memo that would've been

10:10:40   25  in the investigative file that did not make it into the

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 16 of 23 PageID #:98199
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2265

1    permanent retention file for discovery.

2    Q.  And just to be clear for the context, Mr. Kluppelberg was

3    accused of an arson murder, correct?

4    A.  That's correct.

10:10:51    5    Q.  So why is this kind of information important?

6    A.  Well, Mr. Kluppelberg was accused and eventually convicted

7    of a fire that occurred in 1984 that killed six people.  It was

8    originally investigated and determined by both bomb and arson

9    and Violent Crimes as unknown origin or accidental and laid

10:11:18    10    dormant for a number of years.

11            And then -- but in the original investigation, there

12    were several things that were -- that came to light that were

13    included in the investigative file.

14    Q.  Such as this document?

10:11:33    15    A.  Such as this that alludes to the fact that a Minerva Herst

16    (phonetic) had indicated to the investigators that there were

17    extension cords all over the basement floor and that it was a

18    hazardous condition.

19    Q.  All right.  Showing you 145 B.

10:11:51    20            This is another handwritten note.  It looks like an

21    interview of some kind of with a name and a date?

22    A.  Yes.

23    Q.  Was this a document that was in the investigative file but

24    not in the official file?

10:12:02    25    A.  That's correct.

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 17 of 23 PageID #:98200
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2266

1  Q.  Is this problematic that this kind of information didn't

2  get turned over?

3  A.  Yes, because, on its face, that there was an individual who

4  had had an argument with the victim of the fire, and would lead

10:12:18  5  an individual to whether it was a criminal defense attorney or

6  investigator, that there may be -- if it was, in fact, a

7  malicious crime, that it might have a different suspect.

8  Q.  All right.  Do you remember -- this is a case you worked

9  on, the Kluppelberg case, correct?

10:12:35  10  A.  Yes.

11  Q.  Do you remember another suspect named Isabela Ramos and a

12  reason the police had to suspect she may have been involved?

13  A.  There was information came during the original 1984

14  investigation and contained in the investigative file that

10:12:49  15  there was a lady that had set fires in that immediate vicinity,

16  had a drug alcohol problem, as I recall, and could possibly

17  have set the fires and couldn't quite remember whether she

18  might have or not.

19  Q.  All right.  Was that the kind of information that should've

10:13:06  20  been turned over?

21  A.  Yes.

22  Q.  And when you reviewed the files, did you see other

23  information like that that should've been turned over and

24  wasn't?

10:13:13  25  A.  Yes, that's correct.

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 18 of 23 PageID #:98201
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2267

1  Q.  All right.  And showing you -- I'm not going to go through

2  all the files.  Obviously, some of the files contained

3  information that was more important than others that wasn't

4  turned over, correct?

10:13:26  5  A.  That's correct.

6  Q.  And some of them were sort of cryptic some of the

7  information that didn't get turned over, names, phone numbers,

8  license plates, that kind of thing?

9  A.  Yes.  There were several examples of just a one-line note

10:13:40  10  that could've been important, might not have been important,

11  but evidently the person that wrote it down, who did not

12  identify themselves in each occasion, thought it was important

13  enough to include in the investigative file.

14  Q.  All right.  I want to show you only one more file, the

10:14:00  15  Demetrius Johnson file, which is part of Plaintiff's

16  Exhibit 154.

17        And showing you a copy of a report from the permanent

18  retention file --

19        MR. LOEVY:  And, Your Honor, we'd move 154 J into

10:14:22  20  evidence.

21        THE COURT:  Any objection?

22        MS. ROSEN:  No objection.

23        THE COURT:  It is received.

24        (Plaintiff's Exhibit No. 154 J was received in

10:14:26  25        evidence.)

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 19 of 23 PageID #:98202
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2268

1  BY MR. LOEVY:

2  Q.  It looks like this is a lineup report that was in the

3  permanent retention files, Guevara report, dated 12th of June,

4  2300 hours, conducted by a Mr. Guevara.  And it looks like the

5  person viewing the lineup was Aby Gonzalez.  You've seen this

6  document, right?

7  A.  Yes, I have.

8  Q.  And the important thing here is that it was 11:00 o'clock

9  at night on June 12th, 1991, correct?

10 A.  That's correct.

11 Q.  Now, it looks like, based on this police report, that was

12 in the permanent retention file.  Does that mean this police

13 report was turned over?

14 A.  Yes.

15 Q.  It looks like the suspect here -- I just want to -- it

16 looks like it's a negative lineup.  And it says:

17           "... after four witnesses viewing this lineup,

18           the results were negative.  Because the results

19           of the lineup was negative, the subject was

20           released without charging."

21      It looks like Brian Jones is the guy they were

22 interested in, do you see that?

23 A.  Brian Jones, yes.

24 Q.  And showing you a copy of a report that was in the

25 investigative file that was not turned over.

Brasfield - direct by Loevy

1        MR. LOEVY:  This is Plaintiff's Exhibit 154 K, Your

2   Honor.

3   BY MR. LOEVY:

4   Q.  And this one was created looks like a day later on the

10:15:50   5   13th of June of 1991 at 1700 hours.  Do you see that?

6   A.  Yes.

7        MS. ROSEN:  Judge, I'm going to object to the term

8   "created."  There's no foundation for that.

9        THE COURT:  Sustained.

10:15:59  10   BY MR. LOEVY:

11   Q.  Well, it's dated 13th of June at 1700 hours, correct?

12   A.  Yes; referring to an event on June 12th.

13   Q.  All right.  Referring to an event that happened on

14   June 12th at what time?

10:16:10  15   A.  2230 hours.  10:30 p.m.

16   Q.  All right.  So that would be about a half hour before this

17   lineup that we just talked about, correct?

18   A.  That's correct.

19   Q.  And in this report, it looks like Aby Gonzalez, same person

10:16:24  20   doing the lineup, right?

21   A.  It's the same name, yes.

22   Q.  And, again, we have Brian Jones as one of the volunteers in

23   the lineup, right?

24   A.  Brian Jones, yes.

10:16:33  25   Q.  All right.  This report that was in the investigative file

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 21 of 23 PageID #:98204
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2270

1  contains different information than the one in the permanent

2  retention file, does it not?

3  A.  The highlighted section indicates that he did, in fact,

4  identify the participant as the offender.

10:16:49  5  Q.  All right.  As a professional in your field, why is it

6  important that the document that says he did identify this

7  alternate offender, why does that have to get turned over, too,

8  in addition to the one where he said he didn't?  Same person.

9  A.  Ah, I don't know how to explain why -- why you wouldn't.  I

10:17:11  10  mean, it is -- it is some conflicting information that it needs

11  to be.  It just calls out for further investigation and

12  explanation.

13  Q.  In other words, if the permanent retention file contained a

14  lineup report saying that 11:00 o'clock at night Aby Gonzalez

10:17:28  15  failed to identify the alternate suspect, and then there was

16  another report --

17        MS. ROSEN:  Objection to the phrase "alternate

18  suspect," Your Honor.

19        THE COURT:  Sustained to the form.

10:17:37  20  BY MR. LOEVY:

21  Q.  Brian Jones was not the person on trial in People of

22  Illinois versus Demetrius Johnson, correct?

23  A.  Correct.

24  Q.  All right.  So if there was another report half hour

10:17:47  25  earlier that said that the same witness, Aby Gonzalez, had

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 22 of 23 PageID #:98205
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2271

1   identified the alternate suspect, Brian Jones, as the offender,

2   that's the kind of thing that should've been turned over,

3   right?

4   A.  Absolutely.

10:18:05   5   Q.  Even if the first lineup was created by -- the first report

6   was created by Detective Guevara and the second report was

7   created by Detective Erickson, does that reduce the requirement

8   to turn this kind of information over?

9   A.  Absolutely not.

10:18:24   10   Q.  All right.  Were there other examples in the file you

11   reviewed, without going through file by file, by file, by file?

12   A.  Yes.  Of similar instances, yes.

13   Q.  All right.  And if Ms. Rosen was to show you file by file,

14   by file, by file, there would be a lot of examples of documents

10:18:45   15   that weren't necessarily important, would you agree with that,

16   too?

17   A.  I would.

18   Q.  So why did you list the documents also that weren't as

19   important along with documents that were as important when you

10:18:54   20   were describing what was missing?

21   A.  I'm sorry, would you --

22   Q.  Sure.

23   A.  -- state that again.

24   Q.  Did you make any editorial decision about only list the

10:19:02   25   important missing stuff or did you list all the missing stuff

Case: 1:18-cv-01028 Document #: 769-13 Filed: 01/28/25 Page 23 of 23 PageID #:98206
6-18-18 (Ex 10)
Brasfield - direct by Loevy
2272

1    when you compiled your statistics?

2    A.  With the spread sheet that we demonstrated on Friday, that

3    was everything objectively, whether it was valuable or not

4    valuable, or potentially important or not potentially

5    important.

6    Q.  Why was it important in your analysis not to make a value

7    judgment about whether it was important or it wasn't

8    important?

9    A.  I was trying to illustrate the theme or the pattern of

10   noncompliance with the orders for discovery, and to emphasize

11   the fact that there was a systemic pattern of parallel files.

12   Q.  All right.  Were you -- like if you saw a note with a

13   license plate or a phone number or a name in a given

14   investigation, were you necessarily in a position to know how

15   much significance it always had?

16   A.  No, I was not.

17   Q.  All right.  You also included in your analysis

18   administrative documents.  Can you list the kinds of

19   administrative documents we're talking about?

20   A.  There were court attendance, there were -- there's a form

21   that is required that's kind of like a library check-out card

22   for when a file has been taken out of a particular location.

23   While you can call it an administrative file, the inventory was

24   certainly there as an administrative effort as opposed to an

25   investigative effort.