**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 2312 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
PARTIAL MOTION FOR SUMMARY JUDGMENT**

Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Annie Prossnitz
Meg Gould
**LOEVY + LOEVY**
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Jan Susler
Ben H. Elson
Nora Snyder
**People's Law Office**
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
jsusler@peopleslawoffice.com

Plaintiffs' partial motion for summary judgment explains the reasons the City is precluded from contesting its official policy of suppressing exculpatory evidence, having lost the same *Monell* theory in two indistinguishable civil cases, *Fields v. Chicago*, 2017 WL 4553411, at *3 (N.D. Ill. 2017), aff'd, 981 F.3d 534 (7th Cir. 2020), and *Rivera v. Guevara*, 2019 WL 13249674, at *2 (N.D. Ill. 2019). Dkt. 754, at 4-18. Independently, Plaintiffs established the City cannot raise any dispute that, in response to notice of a citywide problem of evidence suppression in homicide cases, the City promulgated facially deficient written policies, permitting evidence suppression. *Id.* at 18-24. On both theories, Plaintiffs concede that, while the City cannot contest the existence of its official policy, it will be free at trial to contest whether that official policy caused the violation of Plaintiffs' constitutional rights. *Id.* at 1-3.

The City's response lacks merit. City Brief ("CB"), Dkt. 761. First, the City claims Plaintiffs did not comply with the Rules, CB-3-5, an argument belied by Plaintiffs' motion. Second, it contends incorrectly that summary judgment cannot enter on one element of a claim, CB-5-10, a position contradicted by Rule 56. Third, the City asserts it should not be precluded from re-litigating its official policy of evidence suppression, CB-10-21, raising arguments that are contrary to law and to *Rivera* and *Fields*. The requirements for preclusion are met, and the equities weigh in favor of preventing the City from again re-litigating an issue conclusively established at great cost in past cases. Fourth, the City contends there is a dispute about whether the City promulgated facially deficient written policies, CB-21-25, but the City cites to no record evidence that might create a dispute, and so there is nothing for a jury to decide.

## I. Plaintiffs' Statement of Facts Complies with the Federal and Local Rules

Plaintiffs' Statement of Facts ("SOF") is properly supported by admissible evidence establishing the City's official policy of evidence suppression, and it complies with the Rules.

1

The City argues all but *two* of Plaintiffs' facts should be stricken. CB-3-5.[1] This City's argument fails on each example for which the City asserts noncompliance with the Rules.

The City wrongly contends Plaintiffs' references to *Palmer v. Chicago*, 562 F. Supp 1067 (N.D. Ill. 1983) and *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988), are hearsay. But federal courts may take notice of court proceedings directly related to issues at summary judgment— particularly when a motion "is predicated on affirmative defenses such as [r]es judicata or collateral estoppel[.]" *St. Louis Baptist Temple v. FDIC.*, 605 F.2d 1169, 1172 (10th Cir. 1979).[2]

Next, the City challenges Plaintiffs' SOF because it contains a few internal cross-references to previous fact paragraphs in the SOF, but the case the City cites is inapposite. In *Schlessinger v. CHA*, 130 F.Supp.3d 1226, 1228 (N.D. Ill. 2015), the court criticized a deficient response to facts where the party simply wrote "disputed" and referred to paragraphs in his own additional facts. There is no parallel to here, where the SOF contains ample cited authority, and a few cross-references to other facts that themselves include specific cited authorities.

The City also wrongly asserts that Plaintiffs' SOF fails to cite "specific evidentiary material," arguing that Plaintiffs' citation to homicide files from the *Fields* and *Rivera* trials, and a summary of police files by a police practices expert in the *Fields,* is improper under Federal Rule of Evidence 1006. CB-5. Yet Rule 1006 permits the use of a summary "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in

---

[1] The City asks to strike facts such as SOF ¶24, which was *admitted* by the City (with a slight objection), Dkt. 762 ¶24. The City also makes arguments that, if applied with equal force to the City's own motion, would remove dozens of the City's proffered facts.

[2] The City also ignores that, in *Fields*, Judge Kennelly admitted evidence from *Palmer* offered on the theory that it was not being used for the truth, over the same hearsay objection. 2017 WL 4553411, at *5. Moreover, the City's characterization of *Jones* and *Palmer* and what those cases decided does not affect Plaintiffs' motion for summary judgment, given that the Seventh Circuit concluded in *Fields* that *Jones* and *Palmer* provided the City notice of a continuing custom of evidence suppression that risked constitutional harm. 981 F.3d 534 at 563.

2

court." Plaintiffs' citation to exhibits admitted as substantive evidence in the *Fields* and *Rivera* trials, as well as some of the files analyzed, is proper. L.R. 56.1(d)(2).

The City also challenges facts attesting to the City's notice of the problem of evidence suppression, claiming that those facts are not material because they are outside the relevant timeframe. CB-5. But notice of the City's evidence suppression problem and subsequent failure to remedy this problem is crucial to establishing Plaintiffs' *Monell* claim. *J.K.J. v. Polk County*, 960 F.3d 367, 378 (7th Cir. 2020) (*en banc*). That such facts would not be material at summary judgment contradicts the law. The City's arguments to strike all but two of the facts supporting Plaintiffs' motion lack merit, and this Court should reject them.

## II. Defendants Are Wrong That Judgment Cannot Be Entered On One Element

The City is correct that Plaintiffs ask for judgment on an element of their *Monell* claim, meaning a trial will be necessary on other elements, but the City is wrong that such a request is improper. CB-5-10. Rule 56(a) was amended in 2010 to specify that "[a] party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." Fed. R. Civ. P. 56(a). The City claims that "caselaw demonstrates that the motion must not result in the fragmenting of a claim," but it cites no case supporting that position. CB-8. Instead, it cites to cases predating the 2010 amendment, when Rule 56 discouraged piecemealing or "issue narrowing." *E.g.*, *Capitol Recs. v. Progress Rec. Distrib.*, 106 F.R.D. 25, 28 (N.D. Ill. 1985). However, since Rules 56(a) and 56(d) were amended in 2010, courts everywhere have rejected the City's argument: "Since the [2010] amendments, however, the argument that summary judgment is not proper for a portion of a single claim has lost its pluck." *Hudak v. Clark*, 2018 WL 1785865, at *2 (M.D. Pa. 2018).[3]

---

[3] See also *Placht v. Argent Tr.*, 2024 WL 1254196, at *3 (N.D. Ill. 2024); *Servicios Especiales*, 791 F. Supp. 2d at 632; *Isovolta v. ProTrans Int'l*, 780 F. Supp. 2d 776, 779 (S.D. Ind. 2011).

The City also argues the elements of Plaintiffs' *Monell* claim are "interrelated" and the question whether the City had an official policy cannot be adjudicated "in a vacuum." CB-8. This is also incorrect. Rule 56(g) contemplates Plaintiffs' approach: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." As Plaintiffs explained in their motion, the *Monell* jury instructions in *Fields* and *Rivera* asked the jury to determine, among other elements, whether it was the official policy of the City to conceal material exculpatory or impeachment evidence. Dkt. 755 ¶61 (*Fields*) & ¶68 (*Rivera*). If summary judgment were granted on that element here, this Court would simply instruct the jury that this element was established, as Rule 56(g) instructs. The jury would still decide other elements, but the City identifies nothing unique about this approach, and it cites no cases explaining why it would not be permissible.

The remainder of the City's argument on this point reiterates arguments about why the City thinks it should win summary judgment, which Plaintiffs address elsewhere. Dkt. 774.

**III.     The City's Arguments Against Preclusion Lack Merit**

The City makes five arguments that preclusion should not apply. CB-10-20. None has merit. The City cannot continually relitigate an issue it has lost repeatedly, costing parties and taxpayers hundreds of thousands of dollars, and burdening courts with matters already resolved.

**A.     The Extant Judgment In *Rivera* Retains Preclusive Effect**

The City begins with the undeveloped argument that because *Rivera* was settled after entry of judgment and the City dismissed its appeal, the judgment in *Rivera* lacks preclusive effect. CB-13-14. This frivolous argument fundamentally misunderstands preclusion and the effect of settlement. First, issue preclusion concerns the effect that a judgment entered in one

proceeding has in a subsequent proceeding. Rest. (2d) of Judgments §§ 13, 27 (1982); *Montana v. U.S.*, 440 U.S. 147, 153 (1979). When a judgment exists, the Court applies the factors set out in Plaintiffs' motion and asks whether the judgment has preclusive effect. 18 Wright & Miller, Federal Practice & Procedure § 4416 (3d ed. 2023); *Bravo-Fernandez v. U.S.*, 580 U.S. 5, 10 (2016). When a judgment ceases to exist, it no longer has preclusive effect. *Evans v. Katalinic*, 445 F.3d 953, 955 (7th Cir. 2006). It is irrelevant that one party disclaims responsibility during settlement of the case following entry of a judgment. If there is a judgment, then the predicate for issue preclusion exists.

Second, the City's settlement with Rivera had no effect on that judgment. The judgment was left extant. The City does not really argue otherwise, saying only that it disclaimed responsibility in the settlement agreement. CB-13-14. The City well knows the *Rivera* settlement did not affect the *Rivera* judgment, because in other civil rights cases in this District, the City has sought relief from a judgment as part of a settlement, using a much different procedure. Put simply, parties cannot negotiate a judgment away. Instead, they must seek relief under Rule 60. 11 Wright & Miller §§ 2851 & 2852. No procedure under Rule 60 took place in *Rivera*. Thus, the judgment retains preclusive effect. [4]

That the City dismissed its appeal after settlement is also irrelevant. The Seventh Circuit explains: "Litigants who settle their dispute while an appeal is pending often file a joint motion asking [the Seventh Circuit] not only to dismiss the appeal but also to vacate the opinion and judgment of the district court. We always deny these motions to the extent they ask us to annul

---

[4] Compare *Obrycka v. Chicago*, where the City and a plaintiff settled following judgment, agreeing the judgment should be vacated, and moving under Rule 60 to vacate it. 913 F. Supp. 2d 598 (N.D. Ill. 2012). Judge St. Eve rejected that request, explaining that vacatur is an equitable remedy only granted in exceptional circumstances, considering "the interests of both the parties and the public." *Id.* at 601. Chief among the public interests is "the effect that vacatur will have on the judgment's precedential value and issue preclusion (collateral estoppel), as well as issues related to judicial economy and integrity." *Id.* (citing *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 26-27 (1994).

5

the district court's acts, on the ground that an opinion is a public act of the government, which may not be expunged by private agreement." *Matter of Memorial Hospital*, 862 F.2d 1299, 1300 (7th Cir. 1988). Here, there was no request to the Seventh Circuit to vacate the judgment. But *Memorial Hospital* holds that if there had been, the court of appeals would have rejected it. Contrary to the City's argument, the Seventh Circuit added, "A settlement while the case is on appeal is a reason why the losing party [the City] no longer wants the judgment reversed." *Id.* at 1301.[5] The City's argument that the *Rivera* judgment lacks preclusive effect fails.

**B.    The Issue Litigated In *Rivera* and *Fields* Is the Same One At Issue Here**

The City next says the issue before the Court here is different than the issue litigated in *Rivera* or *Fields*. CB-14-17. First, it asserts *Fields* and *Rivera* concerned the suppression of a "street file," and so, the City says, the theory in those cases was different because there was no "street file" here. CB-15-16. The argument is hard to follow. If the City is saying Plaintiffs have not defined what issue is the same between these cases and *Rivera* and *Fields*, that is incorrect. Plaintiffs have defined concisely the issue on which preclusion applies: Whether the City had an official policy at the relevant time of suppressing exculpatory evidence. Dkt. 754 at 4.

To the extent the City is asserting that this issue was not adjudicated in *Rivera* and *Fields*, it is wrong. The jury in *Fields* was instructed to determine whether "it was the policy of the City of Chicago to conceal material exculpatory and/or impeachment evidence," and the instructions went on to define ways in which it might conclude a municipal policy had been established. Dkt. 755 ¶61. Given that instruction, the jury found against the City, and Judge Kennelly entered

---

[5] *Memorial Hospital* cautioned against exactly what the City attempts here, recognizing that an appealed judgment "also has preclusive benefits for third parties to the extent explained in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)" and concluding, "To the extent an [district court] opinion permits the invocation of *Parklane*, it may have great value to strangers—a value that one or another party to today's case may try to appropriate in the settlement, but which is not theirs to sell." *Id.* at 1302. Where "parties want to avoid stare decisis and preclusive effects, they need only settle before the district court renders a decision." *Id.* That the City refused to do in *Rivera*, and so it must now live with the consequences of its decision.

6

judgment. *Id.* ¶63. The City filed a post-trial motion, which was denied because Fields had presented ample evidence—underproduction of investigative information in homicide cases, deficiencies in record-production, the City's own investigation of widespread evidence suppression problems, deficient written policies, lack of training and supervision—that the City had an official policy of evidence suppression. *Fields*, 2017 WL 3987356, at *3. The Seventh Circuit affirmed, finding the verdict supported. *Fields*, 981 F.3d at 563.

In *Rivera*, Judge Gottschall provided a nearly identical instruction to the jury, charging it to decide if "[t]he City of Chicago has a policy of concealing material exculpatory and/or impeachment evidence," and, like *Fields*, explaining the ways in which an official policy can be established under *Monell*. Dkt. 755 ¶68. Again, a jury found against the City, judgment was entered, and the City's post-trial motion denied. *Id.* ¶¶69&72; *Rivera*, 2019 WL 13249674, at *4. Plaintiffs seek application of preclusion on this exact issue—whether the City had a policy of concealing material exculpatory and impeachment evidence—on which the juries decided against the City and on which judgments were entered against the City and sustained through post-trial motions and appeal in *Fields* and *Rivera*.

To the extent the City is suggesting that a "street file" withheld by police during Rivera's or Field's criminal prosecution distinguishes the *Monell* issue in those cases from the *Monell* issue here, that argument suffers a number of flaws. The fact that the individual defendant police officers withheld files containing evidence from Rivera or Fields during their investigations at issue in those cases has little to do with the municipal policy issue litigated there, which was whether the City had an official policy of suppressing evidence. Moreover, the City's suggestion that the suppression of "street files" in *Rivera* and *Fields* distinguishes those cases from this one is incorrect—all three concern the suppression of exculpatory and impeachment evidence in

7

many different forms, including the suppression of things the police knew but did not report, and the suppression of things the police wrote down, placed in paper files, and did not disclose. This Court's examination of whether the same issues were litigated in the different cases must be resolved by reference to how the juries were instructed, the result the juries reached, and the judicial decisions confirming those results. 18 Wright & Miller § 4420 (3d ed. 2023); see also *De Sollar v. Hanscome*, 158 U.S. 216, 221-222 (1895); *Ohio-Sealy Mattress v. Sealy*, 585 F.2d 821, 844 (7th Cir. 1978). The juries in *Fields* and *Rivera* were instructed on the same issue on which Plaintiffs seek preclusion, rendered a verdict against the City, on which judgment was entered, and the City's challenges to those judgments were rejected.

Second, the City attempts to distinguish the issues in these cases from those put to the juries in *Fields* and *Rivera*, by arguing the latter cases concerned earlier investigations, before Plaintiffs were prosecuted. CB-16-17. Where there are materially different circumstances between two cases, preclusion does not apply. But "where the changed circumstances are not material, and therefore do not amount to controlling facts, collateral estoppel [issue preclusion] remains applicable." *Scooper Dooper v. Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir. 1974). Accordingly, it is not enough for the City to assert there was passage of time between the investigations in *Fields*, *Rivera*, and these cases. It must show that the passage of time had some material effect on the issue on which Plaintiffs seek preclusion.

The City has not shown any material change in circumstances between the time of *Fields* and *Rivera* and this case. The City notes the cases concern investigations from different years. It points out Judge Gottshall's preclusion decision at summary judgment in *Rivera*, which Plaintiffs have explained was mistaken for the reasons set out in their initial motion. And then it concludes with the assertion: "But the City's policy has not remained the same and there is no fact

8

statement in Plaintiff's SOF that establishes that the policy remained the same after it was first initiated in the aftermath of Palmer." CB-17.

Remarkably, the City makes no argument and cites no evidence establishing that its policies changed in any way between *Rivera* and *Fields* and this case. Instead, it accuses Plaintiffs of not citing evidence that the City's policies persisted unchanged. *Id.* But Plaintiffs did provide evidence that the City's policy regarding evidence suppression did not change between 1983 and 2012. Dkt. 755 ¶¶ 42-49. The City's choice not to respond to that evidence reveals that the City's argument about the passage of time is empty. Surely, if the City had evidence that its official policy on this issue changed at any time, it would have identified the change in its response. The City is silent because it did nothing to correct its policy of evidence suppression at any time between 1983 and 2012. Where the passage of time makes no difference, the application of preclusion is appropriate. *Railways of Central America v. United Brands Co.*, 405 F. Supp. 884, 902-903 (S.D. N.Y. 1975).

In *Rivera*, the City successfully misrepresented to Judge Gottschall that its policies changed between the time of *Fields* and *Rivera*, which was the basis for avoiding preclusion. This Court should not permit the same misrepresentation here. The City does not and cannot point to any material change in circumstances that allows the City to avoid preclusion.

**C. The Issue Was Essential to the *Rivera* and *Fields* Judgments**

In two paragraphs the City contends the issue of whether it had an official policy of suppressing evidence was not essential to the judgments in *Fields* and *Rivera*. CB-17-18. Again, the argument is unsupported. The Court can review the jury instructions in both *Fields* and *Rivera*. Dkt. 755 ¶¶61&68. In both cases, the jury was instructed on a single *Monell* theory, and the plaintiff had to prove by a preponderance that the City had a policy of concealing material

9

exculpatory and impeachment evidence. *Id.* In both, a verdict could not be returned against the City without a finding that this policy existed. *Id.* There was no other basis for a judgment against the City. *Id.*; see also *Kluppelberg v. Burge*, 276 F.Supp.3d 773, 777 (N.D. Ill. 2017). That should resolve the issue, but if there were doubt, the briefing and rulings on the post-trial motions in both cases make clear this was the only *Monell* theory tried to verdict against the City. *Rivera*, 2019 WL 13249674, at *4; *Fields*, 2017 WL 4553411, at *3, aff'd, 981 F.3d at 563. The City does not even suggest the jury in *Rivera* or *Fields* found it liable on some other basis, and it does not point to any evidence establishing any ambiguity in the judgments in *Rivera* and *Fields*. CB-17-18. The verdicts against the City on the issue of its evidence suppression policy were essential to the judgments in both cases. *Kluppelberg*, 276 F. Supp. 3d at 778.

**D.     The City Identifies No Equities That Weigh Against Applying Preclusion**

Perhaps recognizing all preclusion factors are satisfied, the City asserts that the equities support re-litigation of its policy of evidence suppression. CB-18-20. The City identifies one thing it calls an equitable factor: that the judgments in *Fields* and *Rivera*, in the City's view, are inconsistent with *Palmer*, which the City says ended in its favor "on the issue of 'street files,'" and with *Jones*, which the City says did not hold it liable. OB-23-24. But this is not the type of equitable factor that any court has ever recognized as a reason not to apply preclusion. Equitable factors are characteristics of the suits underlying the prior judgments that suggest there would be something unfair to the defendant about applying preclusion—*e.g.*, that the defendant had no incentive to defend, that there were procedural limitations, or that there are contrary judgments. *Chicago Truck Drivers v. Century Motor Freight*, 125 F.3d 526, 531 (7th Cir. 1997). That the City disputes as a factual matter what happened in past cases *Jones* and *Palmer*, and what the courts held in those cases, is not a reason to question the fairness of applying the *Fields* and

10

*Rivera* judgments here. The City does not point to any weakness in *Fields* and *Rivera* or any other contrary judgment that might cast doubt on *Fields* and *Rivera*, and so it does not identify any equitable factor at all. 18 Wright & Miller § 4426 (3d ed. 2023); Rest. (2d) Judgments § 28.

To the extent the City is suggesting (without directly saying) that *Jones* and *Palmer* are results contrary to *Fields* and *Rivera*, that suggestion is laughable. The Seventh Circuit in *Jones* concluded the City had a department-wide and long-standing custom of evidence suppression. 856 F.2d 996. Though the City characterizes *Jones* differently, CB-19-20, the Seventh Circuit in *Fields* reaffirmed explicitly that *Jones* found that the City's policy of evidence suppression was widespread and presented a due process problem. *Fields*, 981 F.3d at 563. The City skips any discussion of this holding in *Fields*, even as it seeks to recharacterize *Jones* and *Palmer*. Similarly, as a result of *Jones*, litigants seeking access to suppressed evidence filed *Palmer*, which led to hearings, an examination of the problem of evidence suppression department-wide, and new efforts at policymaking. While the *Palmer* litigation concluded "without a formal ruling on the lawfulness of the practice," *Jones*, 856 F.3d at 995-96, no court ever decided that the City was entitled to a judgment that it had no practice of suppressing evidence, and the City's suggestion otherwise is without merit. *Jones* and *Palmer*, if anything, support the application of preclusion here; they do not suggest that it would be unfair to apply it.

**E.      This Court Should Reach the Same Conclusion As *Kluppelberg***

Last, the City contends this Court should reach a conclusion different than Judge Lefkow did in Kluppelberg, 276 F. Supp. 3d at 77, which held based on *Fields* alone the City should be precluded from re-litigating this *Monell* theory. CB-20-21. The City's arguments distinguishing *Kluppelberg*—that it concerned a "street file" and occurred earlier in time—are the same arguments addressed above in Part III(B). *Kluppelberg* is a well-reasoned decision, which

considered the arguments the City makes here, and determined the interests of justice were best served by preventing the City from re-litigating an issue already fully aired. 276 F. Supp. 3d at 776. The only thing that distinguishes *Kluppelberg* from this case is that *Kluppelberg* was decided based on *Fields* alone, before *Rivera*. There is now a *second* judgment in place, even more closely related to this case, which independently has preclusive effect. Thus, there are more reasons to find preclusion applies here than in *Kluppelberg*.

**IV.      Alternatively, Plaintiff Is Entitled to Judgment on the Deficient Policies Theory**

Even if this Court concludes the City is not precluded, it should grant Plaintiffs summary judgment on their theory that the City's final policymakers put in place written policies that were facially deficient to stop the suppression of exculpatory evidence. The City has not raised a genuine dispute regarding this theory.

**A.      The City Had Notice of A Problem of Widespread Evidence Suppression**

The record reflects that City policymakers were on notice of the problem of evidence suppression, and that evidence is unrebutted. As Plaintiffs' motion is supported in large part by the testimony of the City's 30(b)(6) deponent James Hickey, it is no surprise the City cannot refute him. Instead, throughout its response to Plaintiffs' SOF, the City tries to reframe Hickey's testimony, Dkt. 762 at 14-15, but that does not create a genuine dispute. The evidence of notice contained in Plaintiffs' SOF is unrebutted in the City's Response.[6]

The City's problem is the ironclad relevance and admissibility of the *Palmer* and *Jones* litigation. To start, the City's revisionist characterization of this litigation and the City's policies

---

[6] *E.g.*, Dkt. 762 at ¶ 2 (agreeing Superintendent Brzezcek testified during *Palmer*, and that Plaintiffs "accurately quote James Hickey's testimony," in which he agreed the City was on notice of issues with documentation, storage, preservation, and disclosure of homicide files); ¶ 3-4 (admitting *Jones* verdict was upheld); ¶ 5 (not refuting that injunctions were issued in *Palmer* regarding CPD evidence suppression); ¶ 8 (agreeing to Hickey's testimony and that Brzezcek wanted to end the practice of detectives destroying notes); ¶ 9 (admitting Hickey conducted a review of CPD practices at Brzezcek's direction); ¶¶ 10&13 (not refuting Hickey's testimony).

promulgated in response cannot be squared with the Seventh Circuit's conclusion that *Jones* and *Palmer* provided the City notice of a widespread practice of evidence suppression that risked constitutional harm, and that this practice continued after that time. *Fields*, 981 F.3d at 563. Further, the City's pronouncement that none of the *Palmer* files revealed exculpatory information is irrelevant; *Palmer* is used as evidence that the City had notice of a problem of evidence suppression, and there is no dispute *Palmer* led to a City-wide evaluation of the City's evidence suppression problem, as the City's Rule 30(b)(6) admits. As the Seventh Circuit stated, the *Palmer* litigation was resolved "without a formal ruling on the lawfulness of the practice," although the Court in *Jones* concluded that the record supported that the practice was in place and "[t]he City sensibly does not attempt to defend such behavior in this court." 856 F.3d at 995-96. Plaintiffs' evidence that the City was on notice of its evidence suppression problem at the time of *Jones* and *Palmer* is insurmountable, as multiple courts and juries have already decided.

**B.      The Record Shows the City Failed to Promulgate Policies to Solve the Evidence Suppression Problem, and the City Fails to Contest That Evidence**

The evidence is also undisputed that, despite the City's notice, its policymakers promulgated written policies that were facially deficient to stop the suppression of exculpatory evidence, despite Judge Shadur's identification in *Palmer* of specific problems needing reform. First, the City's response shows it cannot undermine the evidence demonstrating that the City's written policies were facially deficient to stop the problem of evidence suppression.[7] The City

---

[7] *E.g.*, Dkt. 762 at ¶ 23 (admitting Judge Shadur found Special Order 83-1 deficient); ¶ 26 (admitting S.O. 83-2 lacked guidance about information a detective was required to include in a supplementary report); ¶ 29 (not refuting that S.O. 86-3 did not require a single repository for all investigative information; permitted detectives to retain handwritten notes for longer periods of time; and left defense counsel no mechanisms to determine whether their materials were complete without an inventory sheet), ¶ 30 (admitting Chapter 18 of the SOP contained no substantive changes from SO 86-3); ¶ 34 (not refuting that the CPD never required the production of the entire contents of investigative files); ¶ 36 (not refuting Hickey's testimony that subpoena clerks and detectives questioned their requirements of production in response to subpoenas).

13

claims the parties dispute whether City policymakers "refused to adopt needed policies," but it only points to SO 83-1, which Judge Shadur expressly found deficient. Dkt. 755 at ¶ 23.

Moreover, the specific deficiencies in the City's written policies are also unrebutted, including: (1) the lack of instruction to disclose to prosecutors and criminal defendants investigative information; (2) the continued use of a decentralized, parallel file system for investigative information, perpetuating the risk that material would not be gathered from all locations; (3) the failure to cover non-detective investigators participating in homicide investigations; (4) the remaining discretion of detectives as to what information to record in official files; (5) the lack of requirement to produce to the criminal justice system all of the different investigative information created by the CPD during an investigation. See Dkt. 755 ¶¶ 23, 26, 29, 30, 34, 35, 36-40. Rather than dispute the written language and express omissions of the policies resulting in these deficiencies, the City states that "the evidence is very much in dispute," quotes the introductory policy language of one Special Order, and ignores that Order's deficient description of the responsibilities and procedures prescribed by the policy. CB-23-24. The City's attempt to create a "dispute" does nothing to meaningfully rebut these glaring policy deficiencies; it does not create a genuine issue of material fact. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial.").

The City also contends that Plaintiffs employ "mistruths and mischaracterizations" about the City's 30(b)(6) testimony, but that argument does not undermine that the substance of the City's Rule 30(b)(6) witness testimony directly supports Plaintiffs. Indeed, the City cannot rebut many of the statements made by its 30(b)(6) representatives included in Plaintiff's SOF. See Dkt. 762 ¶¶ 2, 6, 9, 10, 14, 15, 20, 22, 24, 26, 30, 33, 39, 43. Not only because no other evidence

14

exists, but also because an entity cannot contest its own designated Rule 30(b)(6) witness. *Cat Iron v. Bodine Envtl. Servs.*, 2011 WL 2457486, at *8 (C.D. Ill. 2011).

Next, apparently conceding policy deficiencies existed, the City wrongly claims that Plaintiffs have "not established beyond any factual dispute that these five deficiencies translate to a facially unconstitutional policy. There is no requirement for perfect policies." CB-24. This argument misunderstands the legal standard. Plaintiffs must establish that, in response to notice of a problem of evidence suppression risking constitutional harm, the City's deficient policies perpetuated that risk. Plaintiffs need not show the written policies were facially unconstitutional. *Glisson v. IDOC*, 849 F.3d 372, 381-82 (2017); *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016). The City's concededly "imperfect" policies risked constitutional harm of which the City was aware, and the City cannot dispute that reality. Neither does the City bring forward affirmative evidence of its ignorance of the risk of constitutional harm created by its evidence suppression problem, or that the policies were sufficient to avoid that risk.

## CONCLUSION

The Monell theories addressed above have been litigated exhaustively. The City has lost these theories at trial each time, yet it continues to engage in protracted litigation of the same theories in subsequent litigation. This Court should grant summary judgment on issue preclusion grounds on the *Monell* theory that the City had an official policy of suppressing exculpatory and impeachment evidence. Alternatively, it should conclude that there are no genuine disputes of material fact on the *Monell* theory that City policymakers promulgated facially deficient policies in response to the problem of evidence suppression. This Court should grant Plaintiffs summary judgment.

RESPECTFULLY SUBMITTED,

**ARTURO DeLEON-REYES**                              **GABRIEL SOLACHE**

By: /s/ Steve Art                                   By: /s/ Jan Susler
One of DeLeon Reyes's Attorneys                     One of Solache's Attorneys

Jon Loevy                                           Jan Susler
Anand Swaminathan                                   Ben H. Elson
Steve Art                                           Nora P. Snyder
Sean Starr                                          PEOPLE'S LAW OFFICE
Annie Prossnitz                                     1180 N. Milwaukee Avenue
Meg Gould                                           3rd Floor
LOEVY + LOEVY                                        Chicago, IL 60642
311 N. Aberdeen Street                              (312) 235-0070
Chicago, IL 60607                                   jsusler@peopleslawoffice.com
(312) 243-5900
steve@loevy.com

16