**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTIRCT OF ILLINIOS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Steven Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS HALVORSEN, DICKINSON, RUTHERFORD, TREVINO, MINGEY, BIEBEL, CAPPITELLI, AND CITY'S RESPONSE TO PLAINTIFF SOLACHE'S STATEMENT OF ADDITIONAL FACTS

Defendants Joann Halvorsen as Special Representative of Ernest Halvorsen (deceased), Edwin Dickinson, Robert Rutherford, Daniel Trevino, Edward Mingey, Robert Biebel, and Kevin Rodgers, as Special Representative of Francis J. Cappitelli (deceased) (collectively, "Individual Defendants"), by their attorneys, The Sotos Law Firm, P.C., and the City of Chicago ("City"), by its attorneys, Rock Fusco & Connelly, LLC pursuant to Local Rule 56.1, hereby respond to Plaintiff Solache's Local Rule 56.1 Statement of Additional Facts as follows:[1]

---

[1]    Plaintiff Solache combines both additional facts specific to his *Monell* claim against the City of Chicago (¶¶ 11 and 25-89.) as well as additional facts specific to his claims against the Individual Defendants. For clarity sake, the Individual Defendants and the City respond only to the additional facts directed to the claims against them.

*Despite their best efforts, Plaintiffs' defense attorneys did not learn the exculpatory and impeaching evidence discussed above*

Defendants keep Plaintiff Solache's section headings in this response for purposes of consistency but objects to and disputes Plaintiff Solache's argumentative characterization of events. Argumentative facts are inappropriate in a 56.1 Statement of Facts. *See Menasha Corp. v. News America Marketing In-Store, Inc.*, 238 F. Supp. 2d 1024, 1029 (N.D. Ill., Jan. 7, 2003) (Disregarding argumentative, conclusory or unsupported portions of plaintiff's statement of facts).

1.      Tom Verdun was a Cook County Public Defender who represented Reyes at his criminal trial. In 2000, Verdun was an experienced public defender who regularly defended murder cases. Verdun did everything in his power to properly represent and defend Reyes. Ex. CCCCC at 11:10-14:24, 58:10-59:8, 205:8-206:19, 220:4-221:20.

**RESPONSE: Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Individual Defendants further object to the extent this additional fact is argumentative. *See Menasha Corp.*, 238 F. Supp. 2d at 1029.**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

2.      During his representation of Reyes, Verdun served discovery requests and several subpoenas to the Chicago Police Department seeking all the police reports and records. Verdun also subpoenaed complaints made about Guevara. Despite the subpoena for complaints made against Guevara, Verdun was not able to learn anything about Guevara's pattern and practice of coercing people prior to defending Reyes at trial. Verdun received police reports in response to his subpoenas and discovery requests, and it was his understanding that he was being provided with the complete set of documents from the Chicago Police Department. Verdun was not aware of, and had no way to know, if any police reports or other documents in the homicide file were withheld from him prior to Reyes's trial. He would have taken steps to address the issue if he

thought anything was missing from the reports. Ex. CCCCC at 41:17-43:6, 72:6-74:7, 74:8-75:4, 79:6-88:12, 87:21-102:16, 103:6-105:15, 211:12-212:11, 220:4-221:20.

**RESPONSE:  Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Individual Defendants further object to the extent this additional fact is argumentative.  *See Menasha Corp.*, 238 F. Supp. 2d at 1029. For example, the allegation that Verdun "was unable to learn anything about Guevara's pattern and practice" is argumentative and misleading.**

**In addition, the Individual Defendants object to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record.  Plaintiff cites to the record in which Verdun was able to subpoena documents and the criminal court withheld documents it found were not relevant after an in camera review. (Ex. CCCC 41:17-43:6.) Therefore any implication of misconduct by any of the Defendants by withholding documents about Defendant Guevara is just unsupported argument.**

**Subject to and without waiving this objection, undisputed for purposes of summary judgment only.**

      3.      Verdun filed a motion to quash arrest and suppress evidence based on violations of the 4th and 14th Amendments, a motion to suppress evidence alleging violations of the Vienna Convention, and a motion to suppress statements based on coercion. The motion to suppress statements argued that Reyes' statement was "obtained as a result of physical, psychological and mental coercion illegally directed against the defendant." Ex. CCCCC at 74:1-7, 120:22-126:22, 205:8-206:22; Ex. DDDDD.

**RESPONSE: Individual Defendants object to the quoted language above in this additional fact to the extent it is not supported by the record cited by Plaintiff Solache. *Hanover Ins. Co. v. House Call Physicians of Ill., et. al*., 2016 WL 1588507, \*2 (N.D. Ill. April 19, 2016) ("A party's obligation to support its facts with evidence is mandatory.").**

**Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581,**

**583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving these objections, Defendants admit only those facts which Plaintiffs have supported with citations to the record.**

4.      Verdun would always attempt to interview witnesses. However, in "statement" cases like this where police reports did not indicate that there were other suspects or others with information pointing to others, he would not have had any reason to interview certain witnesses. Verdun never learned that Defendants investigated multiple alternative suspects, including Soto family members. Had he learned this at some point during his representation of Reyes, he would have investigated it. But Verdun did not have any way of knowing that fact unless it was documented in the police reports he received. If he had learned about the alternative suspects, it would have impacted how Verdun had defended Reyes during his criminal proceedings. Ex. CCCCC at 189:90-190:17, 216:7-217:4; 222:15-229:5 (testifying that because he was not aware of any police investigation into alternative suspects, he did not interview any of them), 245:5-237:10, 240:13-241:10.

**RESPONSE:  Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Individual Defendants further object to the extent this additional fact is argumentative.  *See Menasha Corp.*, 238 F. Supp. 2d at 1029.**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

5.      Viola Rouse was an Assistant Cook County Public Defender who represented Solache at his criminal trial. In 1998, Rouse was an experienced public defender in the Murder Task Force, who regularly defended murder cases. Rouse did everything in her power to properly

represent and defend Solache. She served discovery requests and several subpoenas to the Chicago Police Department seeking all the police reports and records. Rouse received police reports in response to her subpoenas and discovery requests, and it was her understanding that she was being provided with the complete set of documents from the Chicago Police Department. Rouse was not aware of, and had no way to know if, any police reports or other documents in the homicide file were withheld from her prior to Solache's trial. She would have taken steps to address the issue if she thought anything was missing from the reports. Ex. EEEEE at 40:15-42:1, 44:5-18; 52:6-13, 47:14-48:1, 49:13-23, 51:11-52:1, 52:14-53:3, 56:4-57:13; Ex. FFFFF at 281:21-282:5, 263:2-5, 269:8-278:11; Ex. GGGG at 3657, 3667-3671, 3677 3679, 3731, 3738, 4225, 4226, 5319, 5424.

6. During her defense of Solache, Rouse filed a motion to suppress Solache's statement based on Guevara's use of force and failure to notify him of his right to contact the Mexican Consulate, a motion to quash the statement, and a motion to quash the arrest. Rouse also filed a motion for a new trial, motion to bar or defer death penalty sentencing hearing, and motion to reconsider sentencing on Solache's behalf. Ex. EEEEE at 70:6-17; 74:24-75:13; Ex. DDDDD at Solache 7080-7085; Ex. GGGG at 3575-3577, 4124-4127; Ex. JJJJJ at Solache 7265-7345.

**RESPONSE: Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Individual Defendants further object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

7.     Rouse attempted to learn about Defendant Guevara's misconduct, including issuing a subpoena to the Office of Professional Standards and the Office of Internal Affairs. By the time of the hearing on the motion to suppress, Rouse was able to locate only one person, who she called as a witness at a motion to suppress. By the time of the motion for a new trial, Rouse had become aware of a newspaper article about other allegations of Guevara misconduct, and included the article as an exhibit to the motion. If Rouse had learned before Solache's trial about other allegations of Guevara's misconduct, she would have investigated them. Ex. EEEEE at 80:16-81:13; 108:2-18; 112:8-19; 119:15-121:1; Ex. FFFFF at 271:10-22; 272:22-273:15; 275:22-277:10; GGGG at 4226, 3738, 4225; Ex. JJJJJ at Solache 7278-7286.

**RESPONSE:    Individual Defendants object to the extent this additional fact is argumentative.  *See Menasha Corp.*, 238 F. Supp. 2d at 1029.**

**Individual Defendants further object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving this objection, undisputed for purposes of summary judgment only**.

8.     During her entire representation of Solache, other than information from her client, Rouse did not receive any disclosure from Defendants, the Chicago Police Department or the prosecution that Defendants had engaged in any sort of misconduct during the investigation, including that any witnesses were coerced, any evidence was fabricated, or any evidence was suppressed. Ex. FFFFF at 269:8-278:11.

**RESPONSE:    Individual Defendants object to the extent this additional fact is argumentative.  *See Menasha Corp.*, 238 F. Supp. 2d at 1029.**

**Individual Defendants further object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191**

**F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving this objection, undisputed for purposes of summary judgment only.**

9.      No police or prosecutor ever disclosed to Rouse that there were other suspects in the Soto murder investigation, that Guevara and others investigated Soto family members as suspects, and held them for days, interrogated them, and accused them of committing the murders. Had such evidence been disclosed to Rouse, it would have completely changed the way she investigated and processed her defense of Solache. Ex. FFFFF at 269:8-273:15, 273:16-276:12.

**RESPONSE:   Individual Defendants object to the extent this additional fact is argumentative. *See Menasha Corp.*, 238 F. Supp. 2d at 1029.**

**Individual Defendants further object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving this objection, undisputed for purposes of summary judgment only.**

10.      During defense counsel's entire criminal representations of Reyes and Solache, they both always maintained their innocence, and Verdun and Rouse always believed that their respective clients were in fact innocent and the totality of evidence. FFFFF at 278:17-279:6, 279:12-280:1; Ex. CCCCC at 30:10-33:19; 242:19-243:3.

**RESPONSE:  Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

Subject to and without waiving this objection, undisputed for purposes of summary judgment only.

**I.      The City of Chicago Admits that Guevara Used Physical Abuse to Obtain the Confessions of Reyes and Solache**

11.      In or around 2014 and 2015, the City of Chicago hired former United States Attorney Scott Lassar, then at Sidley Austin, to conduct an investigation into allegations of misconduct against Guevara. After an investigation into the facts and evidence in this case, the City's investigation by Sidley Austin found the allegations "that Guevara physically abused Solache and Reyes in an effort to coerce them to admit their involvement in the Soto murders are credible, and that it is more likely than not that Solache and Reyes were, in fact, physically abused during the course of their interrogations." The City's investigation also found Rosauro Mejia's claims of abuse by Guevara to be credible. Ex. LLLL at 1, 12.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(a)(2) because it is not pertinent to the issues identified in the summary judgment motion.  *See Outlaw*, 259 F.3d at 837; *see Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative.  *See Malec v. Sanford,* 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"); *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd,* 926 F.3d 409 (7th Cir. 2019).  In addition, Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record supports that the City's investigation found Rosauro Mejia's claims of abuse by Guevara to be credible).  *See Malec,* 191 F.R.D. at 583.**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part.  Defendant City admits that it hired Scott Lassar, of Sidley Austin, to conduct a review of certain allegations against Guevara and that he came to certain conclusions related to those allegations.  Defendant City denies that the deposition cited concludes that Guevara engaged in investigative misconduct including physical abuse.  The Report on Solache and Reyes found that despite allegations against Detective Guevara, it did not mean that their confessions were "materially false or that they are actually innocent of the charges."  (Dkt. 765-127, Ex. 127 at p. 13).  In fact, the Report concluded that the evidence against Solache**

and Reyes lead them to "reject the claims of actually innocence." *Id.* Further, the Report concluded that Rosauro Mejia "*appeared* credible." *Id.* at 12.

**II.     The Evidence Defendants Fabricated Was Used in Charging Reyes and Solache, Continuing their Prosecution, and at their Criminal Trials**

12.     The arrest reports of Reyes and Solache include Guevara, Halvorsen and Dickinson as investigating officers. It contains a field in which officers were to record the evidence establishing probable cause for the murder charge. That field does not contain reference to any evidence at all. Ex. H (Solache Arrest Report). Ex. GGGGG (Reyes Arrest Report).

**RESPONSE:  Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Individual Defendants further objects to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

**In addition, Individual Defendants object to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record supports that the arrest report must contain all the evidence establishing probable cause nor does the cited record support that any of the named defendants drafted the arrest reports). *See Malec,* 191 F.R.D. at 583.**

**Individual Defendants further object to the extent this additional fact is argumentative. *See Menasha Corp.*, 238 F. Supp. 2d at 1029.**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

13.     ASA Tom O'Malley, after reviewing "all of the facts and circumstances of this investigation," approved charges against Reyes and Solache. This included the information documented and referenced in the closing report, including the interrogations and confession statements of Reyes, Solache, and Adriana Mejia, in which Guevara, Halvorsen, Trevino,

Rutherford and Dickinson were all involved. It also included the interview and statement of Guadalupe Mejia, implicating Reyes. Ex. II at 446, 432-446; Ex. AAAA at 130:7-131:18.

**RESPONSE: Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

**Individual Defendants further object to the extent this additional fact is argumentative. *See Menasha Corp.*, 238 F. Supp. 2d at 1029.**

**Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

### *Grand Jury*

14.     Before the Grand Jury, Halvorsen testified that the investigation revealed that Solache, Reyes and Adriana committed the Soto murders and kidnappings at 2071 North Leavitt at approximately 6:30 a.m. on March 28, 1998. Halvorsen testified that the evidence supporting criminal prosecution included the statements Defendants took from Reyes, Solache and Adriana at Area 5, in which, as Halvorsen testified, Reyes admitted to stabbing Jacinta Soto, Solache admitted to stabbing Mariano Soto, and Adriana admitted to participating in the planning of these offenses. Ex. HHHHH at Reyes_Jenner 10092-10098.

**RESPONSE: Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving this objection, undisputed for purposes of summary judgment only.**

*Motion to Suppress Hearing*

15.     During the motion to suppress hearing, Defendant Guevara testified about the confession statements taken from Adriana, Reyes, and Solache, including that they implicated one another. Guevara referenced, and testified consistent with, the information contained in the closing report prepared by him and Defendant Halvorsen, and the information contained in the handwritten statements of Reyes, Solache and Adriana, *i.e.*, that they each confessed to their involvement in the crime, and implicated one another in the commission of the crime. Ex. DD at CCSAO 55225:11-55227:11, 55227:16-55229, 55229:18-552230:5, 55230:20-55231:2, 55729:19-55730:6.

**RESPONSE:  Individual Defendants object to this additional fact as it is not material to Defendants' Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving this objection, undisputed for purposes of summary judgment only.**

16.     ASA Navarro testified about the handwritten statement of Adriana implicating Reyes and Solache, and used the statement at the hearing by reading from it and referring to it during his testimony. Defendant Halvorsen testified that he was present when Adriana's handwritten statement implicating Reyes and Solache was taken. Defendant Trevino testified that he was present for and interpreted Reyes's handwritten statement, and used the statement itself on the stand to refresh his recollection during his testimony. Ex. DD at CCSAO 55230:20-55231:2, 55347:4-55357:7, 55492:18-55505:21, 55731:17-55732:10.

**RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").

Subject to and without waiving these objections, undisputed for purposes of summary judgment only.

17.     During the motion to suppress hearing, Guevara denied that he ever physically abused Reyes, Solache, or Adriana. Defendants Trevino and Halvorsen also denied there being any abuse of Reyes or Adriana during their interrogations. Ex. DD at CCSAO 55327:11-55328:3, 55709:21-55719:4, 55471:18-55472:7;, 55629:18-55630:9, 55621:10-55624:12, 55507:19-55508:7, 57089:14-57090:2.

**RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

**Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

Subject to and without waiving these objections, undisputed for purposes of summary judgment only.

*Criminal Trials*

18.     Reyes's fabricated handwritten statement was used during his criminal trial, including by being read to the jury in its entirety and admitted as an exhibit. Guevara denied ever physically abusing Reyes during the process of obtaining the statement. Ex. DD at CCSAO 56695:3-567001:1, 56721:3-56723:24, 56727:3-56735:13, 57169:20-24, 57114:15-57115:3.

**RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they**

should contain only one or two individual allegations, thereby allowing easy response.")

Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").

Individual Defendants further object to the extent this additional fact is argumentative. *See Menasha Corp.*, 238 F. Supp. 2d at 1029. (for example referring to statement as "fabricated" when that is a disputed fact)

Individual Defendants object to this additional fact to the extent it is not supported by the record cited by Plaintiff Solache, *i.e.* the citations in this paragraph do not support that the statement was "fabricated." *Hanover Ins. Co. v. House Call Physicians of Ill., et. al.*, 2016 WL 1588507, *2 (N.D. Ill. April 19, 2016) ("A party's obligation to support its facts with evidence is mandatory.").

Subject to and without waiving these objections, Individual Defendants admit only those facts which Plaintiff Solache has supported with citations to the record.

19.    In addition, during Reyes's criminal trial Guevara testified that, following a conversation with Defendants Dickinson, Rutherford, and Trevino, Guevara interviewed Reyes and informed Reyes what the detectives had learned from Adriana, after which Reyes implicated himself, Adriana, and Solache in the murders and kidnappings. Guevara relied on his April 30, 1998 closing supplementary report—documenting the false confessions of Reyes, Solache and Adriana—explaining how it was drafted and using it to refresh his recollection on the stand about what Reyes had said during his purported confession. Trevino also testified that Reyes confessed, and implicated himself, Adriana, and Solache in the murders and kidnappings, including during an interrogation conducted by Trevino, Rutherford and Dickinson. And Dickinson testified about the interlocking nature of the confessions, as he interviewed Adriana and conveyed the information learned during that interview with Guevara. Ex. DD at CCSAO 56580:12-56588:20, 56581:1-56582:12, 56609:16- 56610:24, 56691:11-56695:2, 56467:1-56468:5.

**RESPONSE: Individual Defendants object to this additional fact to the extent it contains**

multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")

Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").

Individual Defendants further object to the extent this additional fact is argumentative. *Seee Menasha Corp.*, 238 F. Supp. 2d at 1029.

Subject to and without waiving these objections, undisputed for purposes of summary judgment only.

20.      Solache's fabricated handwritten statement was used during his criminal trial, including by being read in its entirety and admitted as an exhibit. Guevara denied ever physically abusing Reyes during the process of obtaining the statement. Ex. DD at CCSAO 56790:16-56794:23, 56796:2-56804:7, 57160:5-9, 57089:14-57090:2.

RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")

Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").

Individual Defendants further object to the extent this additional fact is argumentative. *See Menasha Corp.*, 238 F. Supp. 2d at 1029. (for example referring to statement as "fabricated" when that is a disputed fact)

Individual Defendants object to this additional fact to the extent it is not supported by the record cited by Plaintiff Solache, *i.e.* the citations in this paragraph  do not support that the statement was "fabricated." *Hanover Ins. Co. v. House Call Physicians of Ill., et. al.*, 2016 WL 1588507, *2 (N.D. Ill. April 19, 2016) ("A party's obligation to support its facts with evidence is mandatory.").

**Subject to and without waiving these objections, Individual Defendants admit only those facts which Plaintiff Solache has supported with citations to the record.**

21.     In addition, at Solache's criminal trial, Guevara testified that following interviews with Adriana and Reyes, Guevara interviewed Solache and informed Solache what he learned from Adriana and Reyes, and Solache then implicated himself, Adriana, and Reyes in the murders and kidnappings. Defendant Dickinson testified that he interviewed Adriana with Trevino and conveyed the information learned from Adriana to Guevara. Ex. DD at CCSAO 56641:4-56645:21, 56467:1-56468:5.

**RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

**Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

22.     During both Reyes and Solache's criminal trials, Guevara testified that after Adriana initially implicated Salazar, they brought Salazar into Area 5 and, after five female fillers with more or less the same height and weight and physical description of Norma Salazar were located, Guevara conducted a live lineup which Adriana viewed, and that Salazar was then released without charges. Ex. DD at CCSAO 56558:24-56563:1, 56619:22-56624:14.

**RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

**Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule**

56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").

Individual Defendants further object to the extent this additional fact is argumentative. *Seee Menasha Corp.*, 238 F. Supp. 2d at 1029.

Subject to and without waiving these objections, undisputed for purposes of summary judgment only.

### III.   Defendants Worked Together in Developing the Evidence Used to Frame Solache

23.   Defendants Guevara and Halvorsen are listed as reporting detectives on the closing report; Trevino, Dickinson and Rutherford are listed as personnel assigned; and they all worked on the Soto investigation in conjunction with one another as the investigation proceeded including sharing information across shifts, and kept each other up to date on the interrogation of they were conducting and how the investigation was proceeding. Area 5 was on a single floor, with a large open space in the middle, where all the detectives worked, which was right next to the interview rooms. If individuals were being physically abused in interrogation rooms, other detectives and sergeants would have heard it. Ex. II at 426, 446; Ex. UU at 38:8-41:18, 115:22-116:5, 117:18-118:5, 149:6-22, 150:8-151:14; Ex. XXX at 19-22, 56:2-7, 56:23-57:11, 57:19-58:19, 59:16-60:5, 61:5-20, 70:11-16, 99:1-23, 126:21-129:24, 127:19-131:21, 133:13-21, 142:9-14, 143:8-11; Ex. QQ at 99:22-106:8; 108:7-20; Ex. IIIII at 66:10-67; Ex. DD at CCSAO 56576:9-56577:16, 56467:1-56468:5.

RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts, *CIVIX-DDI, LLC v. Celloco Partnership*, 387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing *Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")

Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3). *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001); *Malec v. Sanford*, 191

**F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Individual Defendants further object to the extent this additional fact is argumentative.** *Seee Menasha Corp.*, **238 F. Supp. 2d at 1029.**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

24.    In addition, all detectives had access to the investigative file–stored in the Sergeant's office and accessible to all–including all the documents and information about suspects, witnesses and other evidence learned during the course of the investigation. Ex. UU at 168:19-169:9, 169:24-170:4, 176:4-177:25; Ex. XXX at 99:1-23, 150:14-152:8, 243:20-244:24; Ex. WW at 244:9-1.

**RESPONSE:  Individual Defendants object to this additional fact to the extent it contains multiple facts,** *CIVIX-DDI, LLC v. Celloco Partnership*, **387 F. Supp. 2d 869, 880 (N.D. Ill. 2005) (citing** *Malec*, **191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.")**

**Individual Defendants further object to this additional fact as it is not material to Defendant's Motion for Summary Judgment and therefore does not comply with Local Rule 56.1(b)(3).** *See Outlaw v. Newkirk*, **259 F.3d 833, 837 (7th Cir. 2001);** *Malec v. Sanford*, **191 F.R.D. 581, 583 (N.D. Ill. 2000) (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.").**

**Subject to and without waiving these objections, undisputed for purposes of summary judgment only.**

### *MONELL* THEORIES

### POLICIES DID NOT MEANINGFULLY CHANGE OVER TIME

25.    The living Defendant officers in this case testified to having no knowledge of the requirements in the new Special Orders, to receiving no training on the Special Orders, or the obligation to preserve notes or disclose exculpatory information, and further testified to continuing to keep unofficial, personal notes that they destroyed. Ex. 1 (Rutherford Dep 12/18/2019) at 167:2-3, 168:7-13 (doesn't recall if training on the use of GPRs, and unsure if any special orders or

general orders addressed GPRs); Ex. 2 (Guevara pleading the Fifth as to receiving training from the CPD on taking notes or having an understanding of policy about taking notes); Ex. WW at 55:12-21(Rutherford testifying he could not remember what he was trained on); Ex. UU at 44:24-45:5, 46:2-20, 47:5-15, 152:18-153:1, 232:6-233:13 (testifying about general uncertainty related to notetaking and his prior training).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record, and it is argumentative ("unofficial, personal notes"). _See Malec,_ 191 F.R.D. at 583; _see also Uncommon, LLC v. Spigen, Inc.,_ 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), _aff'd,_ 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions"); _see also Judson Atkinson Candies v. Latini-Hohberger Dhimantec,_ 529 F.3d 371, 382 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts"). Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (Rutherford's cited testimony (Ex. 1 at 167:2-3, 167:8-13) does not support that he doesn't recall training on the use of GPRs, and unsure if any special orders or general orders addressed GPRs). _See Malec,_ 191 F.R.D. at 583.**

**Subject to and without waiving these objections, denied. None of the cited testimony supports that "the living Defendant Officers testified to having no knowledge of the requirements in the new Special Orders, to receiving no training on the Special Orders, or the obligation to preserve notes or disclose exculpatory information and further testified to continuing to keep unofficial, personal notes that they destroyed."**

## REPORT OF PLAINTIFF'S RETAINED EXPERT THOMAS TIDERINGTON

26.     Tiderington identified specific examples of files where documents contained in the homicide files and missing from the criminal defense files was potentially exculpatory information of significant investigative value and should have been disclosed. The eight examples for which he discussed at length the withheld investigative material that would have aided the defendant and therefore should have been disclosed under standard police procedures are the following: (1) Records Division #Z219872 (Defendants Linox Jackson and Tyrone Hammond); (2) RD #Z273605 (Defendants James Edwards, Damaine Billups, Cornell Guthrie, Alex Lane, N-Wata Mitchell, and Willie Johnson); (3) RD #A315294 (Defendant Jose Melendez); (4) RD # 687989

(Defendant Kim Mathis); (5) RD #475236 (Defendant Ardell Clemons); (6) RD #B442532

(Defendant Oscar Soto); (7) RD #A403252 (Defendant Guy Rainey); (8) RD #P272087

(Defendant Demetrius Johnson). In each, the police documents were withheld from the criminal

defendant and were of potential exculpatory value. Ex. 3 (Tiderington Report) at 56-60; Ex. 4

(Tiderington Deposition in *Reyes*) at 601:11-603:8.

**RESPONSE: Defendant City objects to this paragraph as it is not supported by admissible evidence and is argumentative ("potentially exculpatory information of significant investigative value," "should have been disclosed"). *See Sommerfield v. City of Chicago,* 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed for the first time on April 8, 2024 (Dkt. 685-9) with Plaintiffs' motion for partial summary judgment which was long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 765-3, PSOAF, Ex. 3, Declaration of Thomas Tiderington signed 4/5/24).**

**Further, Defendant City objects to the extent that this paragraph states a legal conclusion rather than a material fact ("documents were withheld from the criminal defendant and were of potential exculpatory value"). *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, at *2 (N.D. Ill Mar. 30 2005). To the extent Plaintiffs are relying on these facts to establish "standard police procedures" at the time of Plaintiffs' arrests in 1998 these facts are also not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") A violation of standard police procedures does not constitute a constitutional violation. *Damiani v. Allen,* No. 4:16-cv-00053-RLY-DML, 2018 WL 4095080, at *6 (S.D. Ind. Aug. 28, 2018) (stating "[w]hether the officers violated accepted police practices does not determine the outcome of Plaintiff's constitutional claims").**

**Subject to and without waiving these objections, Defendant City admits that Thomas Tiderington makes "findings" in his report, which are contradicted by his deposition testimony. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 591; Defendant City's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119). Specifically, the City denies the cases referenced in this paragraph are "examples of files where … exculpatory information of significant investigative value" was not disclosed, as Plaintiffs' record citations do not support this contention, and Tiderington's methodology is unsound. The CCPDO undermined the foundational assumption that underlies Tiderington's stated methodology: specifically, that by comparing the investigative files to the CCPDO files one could determine whether documents from the investigative file had been produced. The CCPDO acknowledged that "when its attorneys were creating and maintaining files in the**

1990's, those attorneys would not have been carefully maintaining the content of those files for the benefit of civil litigants, who might want to search through their closed files thirty years later." (*See* Def's Ex. A, CCPDO's Reply Brief in *Velez v. City of Chicago*, at 4). Tiderington acknowledged this phenomenon in his report when he noted that several CCPDO files "appeared to be partial or incomplete." (Dkt. 765-3, Ex. 3 at p. 53, fn. 114). Tiderington's admission supports the CCPDO's concession and Tiderington relies on no evidence to establish the files are in the same condition as they were during the time of the criminal proceedings, and therefore, renders any comparison devoid of any evidentiary meaning. Further, Tiderington failed to review any of the available CCSAO files, despite conceding that if all the materials in the investigative files were turned over to the CCSAO, then "that would have been proper and reasonable conduct on the part of the investigators." (Dkt. 765-4, Ex. 4, Tiderington Dep from *Solache/Reyes* dated 10/6/22, at 658:7-20, 660:7-18).

27.      Tiderington reviewed the homicide files in the case of James Kluppelberg, and

appended Mr. Brasfield's report in *Kluppelberg* to his expert report. In that case, Mr. Brasfield's

expert report revealed that, of the investigative files produced to Brasfield (from 1983-1991), there

were (1) repeated instances of not using official forms to ensure file integrity, including that there

was a widespread practice of disregarding the use of Major Crime Worksheets, Investigative Case

File Controls, Supervisory (Chain of Command) Reviews, Detective Division Personnel Forms,

and Case Assignment Slips; (2) material information was repeatedly omitted from official police

reports, including 100% of the case files reviewed being replete with examples of handwritten

pages and informal memos between detectives containing potentially exculpatory information

regarding leads for other avenues of investigation, as well as names or descriptions of possible

alternative suspects, additional witnesses, and possible alibi witnesses; (3) incomplete

investigative files; (4) permanent retention files containing limited information; and (5) incomplete

inventories or no indication that inventories were sent to Records Divisions. Ex. 3 (Tiderington

Report) at 353-369 (pgs. 43-59 of Brasfield's Report in *Kluppelberg*).

**RESPONSE: Defendant City objects to this paragraph as it is not supported by admissible evidence. *See Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed for the first**

time on April 8, 2024 (Dkt. 685-9) with Plaintiffs' motion for partial summary judgment which was long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 765-3, PSOAF, Ex. 3, Declaration of Thomas Tiderington signed 4/5/24). Moreover, Plaintiffs have no foundation to rely on an expert report from a previous litigation where the expert was not retained or disclosed in this litigation and Plaintiffs cannot avoid their failure to retain and disclose that expert in the case by stating that their disclosed expert "appended" the nondisclosed expert to his report. *See Ideal Mfg. & Sales Corp. v. Pase Grp., Inc.,* 2008 WL 11463582, at *9 (E.D. Wis. Nov. 24, 2008) ("'while an unsworn expert report, standing alone, does not constitute admissible evidence that can be considered at the summary judgment stage of the proceedings, and will not defeat a motion for summary judgment, an unsworn expert report may be considered at summary judgment where the opinions therein are otherwise adopted or reaffirmed in an *admissible affidavit or deposition testimony* by the expert'") (emphasis added) (quoting *Maytag Corp. v. Electrolux Home Products, Inc.,* 448 F. Supp. 2d 1034, 1065 (N.D. Iowa 2006)).  Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record supports that Tiderington reviewed "the homicide files in the case of James Kluppelberg") and is argumentative ("Brasfield's expert report revealed").  *See Malec,* 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd,* 926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions"); *see also Judson Atkinson Candies v. Latini-Hohberger Dhimantec,* 529 F.3d 371, 382 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts").

Subject to and without waiving these objections, Defendant City admits in part and denies in part.  The City admits that plaintiff Rivera's expert included these findings in his report, but denies that he had the proper foundation to provide said findings.  Mr. Brasfield admitted during trial that he only reviewed six State's Attorney's files, specifically, ones provided to him by plaintiff Rivera's counsel.  (*See* Def's Ex. B, *Rivera* Trial Transcripts, June 18, 2018 at 2303:7-17).  The City further denies that the cited testimony supports that Mr. Brasfield reviewed 435 Chicago Police Department homicide files from Area Five for the years 1985-1991.  Rather, Mr. Brasfield only reviewed 138 files, which "contained any evidence of a lineup having been conducted."  (*See* Def's Ex. C – Brasfield's Report at 41).

28.     During expert discovery, the Defendants disclosed five retained experts. Among them, they disclosed one former law enforcement practitioner to opine about the underlying investigation in this matter and whether it comported with generally accepted police practices, Nelson Andreu. Andreu is not offering any opinions whatsoever about whether CPD's policies regarding documentation and disclosure generally, and Special Orders 83-1 and its progeny specifically is an adequate or sound policy. In addition, the City also disclosed a former prosecutor, Bernard Murray, to opine about criminal discovery in Cook County; Mr. Murray has never worked in a

police department and concedes he is not offering any opinions about whether the documentation

and disclosure policies at issue are adequate or sound policies. Ex. 5 (Defendants' Rule 26(a)(2)

Disclosures); Ex. 6 (Andreu Report) (no opinions regarding Monell claims, including the policies

at issue or their adequacy to address problems identified during Jones/Palmer); Ex. 7 (Murray

Report) (same); Ex. 8 (Murray Dep. in Solache/Reyes) at 38:21-25 (only professional experience

is as a prosecutor); 87:13-19, 107:18-109:19, 114:12-115:12.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw***, 259 F.3d at 837; s***ee also Malec,* **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Specifically, whether the City disclosed any experts to opine on "whether CPD's policies regarding documentation and disclosure generally, and Special Orders 83-1 and its progeny specifically is an adequate or sound policy" is not material.** *Damiani v. Allen***, No. 4:16-cv-00053-RLY-DML, 2018 WL 4095080, at \*6 (S.D. Ind. Aug. 28, 2018) (stating "[w]hether the officers violated accepted police practices does not determine the outcome of Plaintiff's constitutional claims"). Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations, and because it is argumentative.** *See Malec***, 191 F.R.D. at 583. Defendant City further objects because the record citations do not support the assertions.** *See Malec***, 191 F.R.D. at 583.**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that it retained Nelson Andreu to opine on various aspects of the police investigation which led to Plaintiffs' criminal convictions and not about the policies and practices of the Chicago Police Department. The City further admits that it hired Bernard Murray, but denies that his opinions were limited to criminal discovery in Cook County. (***See* **Dkt. 765-7, Ex. 7, Murray's Expert Report, at §II, Discovery Obligations, and §V Comparison of Permanent Retention/RD Files). Mr. Murray further opined that Tiderington's opinions were deficient for a variety of reasons, including but not limited to Tiderington's assumption that documents that were missing from criminal defense files today establishes that the documents were withheld from criminal defendants, his failure to review the prosecutors' files, and his failure to account for the significant redactions to the criminal defense files. (***Id.* **at pp. 1-3). Mr. Murray further opined on the interactions between prosecutors in Cook County and CPD to ensure that the prosecutor's discovery obligations were fulfilled, including the effect of S.O. 83-1 and its progeny on that process. (***Id.* **at pp. 3-9). Mr. Murray further opined about the deficiencies in Tiderington's opinions about CPD's use of a decentralized file keeping system. (***Id.* **at pp. 9-10). Mr. Murray also analyzed some of the same files highlighted in Tiderington's report and opined on the deficiencies of Mr. Tiderington's analysis, including but not limited to explaining that certain documents Tiderington claims was missing from the criminal defense file were for cases**

where no charges were filed and that certain documents that Tiderington claims were withheld were identified in on a signed discovery receipt retained in the prosecutor's file. (*Id.* at pp. 10-22).

## SUPERVISION AND DISCIPLINE

### THE CITY'S CENTRALIZED SYSTEM FOR INVESTIGATING AND DISCIPLINING OFFICERS ACCUSED OF MISCONDUCT

29.     A CR File is initiated when a member of the community or someone within the Chicago Police Department ("CPD") reports alleged misconduct by a police officer. During the 1986-1998 timeframe, the Office of Professional Standards ("OPS") was responsible for generating and assigning a CR number to any complaint the Department received. Ex. 9 (Bird Dep) at 49:17-23; Ex. 10 (Moore Dep.) at 66:4-10; 67:17-68:8; 68:17-69:7; 70:3-70:6; Ex. 11 (Finnell Report) at 52-53; Ex. 12 (Skahill Dep.) at 25:2-5 & 46:2-19. Depending on the nature of the officer's alleged misconduct, the CR File would be assigned to either OPS or the Internal Affairs Division ("IAD") for investigation. Ex. 9 (Bird Dep) at 31:4-6, 34:24-36:12; Ex. 10 (Moore Dep.) at 62:21-66:10; Ex. 112 (Skahill Dep.) at 46:2-19. At the conclusion of its investigation, OPS or IAD would reach one of four possible findings for each allegation against each accused officer: Sustained, Not Sustained, Exonerated, or Unfounded. Ex. 9 (Bird Dep) at 61:11-23. Ex. 10 (Moore Dep.) at 95:6-13; Ex. 12 (Skahill Dep.) at 58:23-60:6.

**RESPONSE:    Defendant City objects to this paragraph as it violates L.R. 56.1(d)(1) and (2) because it does not assert any "material" facts that warrant denial of the City's motion for summary judgment.  *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")  Additionally, Defendant City objects to this paragraph as it includes multiple allegations and to the extent that it is argumentative.  *See Malec v. Sanford*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response").  Defendant City also objects to this paragraph as it is not supported by admissible evidence.  *See Somerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11,**

**Declaration of Anthony Finnell signed 11/14/24).**

**Defendant City further objects to the extent that Plaintiffs rely on depositions taken in unrelated litigation as they are not bates stamped with any of the bates stamp designations connected to this case.** *See Johnson v. Obaisi,* **No. 22-1620, 2023 WL 5950125, at \*2 (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials** *in the record"* **when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).**

**Subject to and without waiving the foregoing objections, Defendant City admits.**

30.     The City's General Orders 93-3 and 08-01, regarding investigation of officer

misconduct and discipline, applied to all officers regardless of their assignments and did not vary

by geographic area. Ex. 13 (General Order 93-3, City 068241); Ex. 14 (General Order 08-01 and

Addenda, eff. 1/13/93). General Investigations were conducted by a central staff of investigators

and cases were not assigned for investigation based on geographic area or precinct. Ex. 10 (Moore

Dep.) at 67:17-68:8 & 71:10-73:15; Ex. 12 (Skahill Dep.) at 48:11-48:24.

**RESPONSE:     Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence, and it does not assert any "material" facts that warrant denial of the City's motion for summary judgment.** *See Outlaw*, **259 F.3d at 837; s***ee also Malec,* **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City further objects to the extent that Plaintiffs rely on depositions taken in unrelated litigation as they are not bates stamped with any of the bates stamp designations connected to this case.** *See Johnson v. Obaisi*, **No. 22-1620, 2023 WL 5950125, at \*2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials** *in the record"* **when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).**

**Subject to and without waiving these objections, Defendant City admits that G.O. 93-3 and 08-01 were General Orders within the Chicago Police Department that applied to all members of the department. Defendant City denies the remainder of this paragraph as it is not supported by the records cited. Specifically, the testimony cited by Plaintiffs from Timothy Moore discusses the methods by which complaints of misconduct came into OPS during the 1994-2002 time frame, (Dkt. 765-10, Ex. 10 at 67:17-68:8), as well as the chain of command in IAD, and the responsibilities of each position from 1994-2002.  (***Id.* **at 71:10-73:15).  Tina Skahill testified that OPS assigned cases to investigators based upon their current case load.  (Dkt. 765-12, Ex. 12 at 48:11-24).**

**THE CITY'S NOTICE OF, AND FAILURE TO RESPOND TO, THE TORTURE COMMITTED BY JON BURGE AND HIS ACOLYTES**

31.     An investigation convened by the Office of the Special Prosecutor concluded in 2006 with findings that Burge had committed aggravated battery, obstruction of justice and perjury and that several other officers had abused other individuals. The Special Prosecutor investigation further found that because Jon Burge was the Commander of Area 2 and Area 3 and it was known he could abuse suspects and witnesses and fabricate evidence with impunity, those who served under his command recognized that they, too, could engage in the same abusive conduct without consequence. The Special Prosecutor's Report concluded: "The evidence supports the conclusion that Superintendent Brzeczek was guilty of a 'dereliction of duty' and did not act in good faith in the investigation of the claim of Andrew Wilson. Despite the fact that Brzeczek believed that officers in the Violent Crimes unit of Detective Area 2 had tortured Andrew Wilson he kept that belief to himself for over twenty years. He also kept Burge in command at Area 2 and issued a letter of commendation to all of the detectives at Area 2." The Special Prosecutor's report further concluded that, "[a]t the very least," then-Superintendent Brzeczek's non-delegable duty required him to have "removed Jon Burge from any investigative command" and "conducted a complete shake-up at Detective Area 2" upon being informed of injuries to Wilson. There is no evidence that the City responded to this report with any discipline or policy changes Ex. 11 (Finnell Report) at 16; Ex. 15 (Special Prosecutor's Report) at 17, 71-72 & 88.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence and it does not assert any "material" facts that warrant denial of the City's motion for summary judgment.** *See Outlaw,* **259 F.3d at 837;** **s***ee also Malec,* **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")   Specifically, Plaintiffs' reliance on their expert report in support of this fact.** *See Somerfield,* **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).   Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed**

after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24). In addition, Defendant City further objects that the Special Prosecutor's report is not part of the record in this case as they are not bates stamped with any of the bates stamp designations connected to this case, and to the extent the investigation was not concluded and the report was not released until 2006, 8 years *after* Plaintiffs' arrests. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at \*2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).

Moreover, Plaintiffs do not cite to any evidence that any of the Defendant Officers in this case worked for or with Burge prior to his termination in 1993.

Defendant City further objects to this paragraph as it includes multiple allegations and to the extent that it is argumentative. *See Malec v. Sanford*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have accurately quoted two paragraphs of the Special Prosecutor's 292 page Report, but denies that the evidence cited supports that "[t]here is no evidence that the City responded to this report with any discipline or policy changes."

32.     In March 1990, two Chicago Police Department investigators in the Office of Professional Standards ("OPS") were assigned to investigate Andrew Wilson's allegations that Chicago Police Department commander Jon Burge had tortured him and fabricated evidence against him, as well as to "determine if there was systematic abuse at Area 2 during that period [1982] and if so, to determine the culpability, if any, of Area 2 Command Personnel," and an investigator sustained allegations against Burge and two other officers. Ex. 16 (John Conroy, *House of Screams*, Chicago Reader (Jan. 25, 1990), http://www.chicagoreader.com/chicago/house-of-screams/Content?oid=875107); Ex. 17 (Special Project Conclusion Report dated Nov. 2, 1990) at AR-L 150959-150983.

**RESPONSE:** Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence and it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Specifically, Plaintiffs' reliance on a

newspaper article from 1990, which is hearsay and cannot be relied upon for summary judgment proceedings. *See Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 654 (7th Cir. 2001) (media reports, including newspaper articles, that are being offered for the truth of the matter asserted are inadmissible hearsay and cannot be relied upon for summary judgment proceedings.) Moreover, Plaintiffs do not cite to any evidence that any of the Defendant Officers in this case worked for or with Burge prior to his termination in 1993.

Subject to and without waiving these objections, Defendant City admits that allegations were sustained against Burge and two other officers. Further answering, no Defendant Officer was involved in the 1982 arrest of Andrew Wilson and thus the City denies that the article asserts any relevant or material facts that warrant denial of the City's motion for summary judgment.

33.     In September 1990, OPS Investigator Michael Goldston completed a report of investigation into Burge's misconduct and found that command members actively participated in the torture and/or failed to stop it, writing, "In the matter of alleged physical abuse, the preponderance of the evidence is that abuse did occur and that it was systematic. The time span involved covers more than ten years. The type of abuse described was not limited to the usual beatings but went into such esoteric areas as psychological techniques and planned torture. The evidence presented by some individuals convinced juries and appellate courts that personnel assigned to Area 2 engaged in methodical abuse." Ex. 18 (Goldston Report, Sept. 28, 1990 identifying 50 instances of torture at Area 2) at AR-L 150959-150983; Ex. 11 (Finnell Report) at 12-13; Ex. 19 (Leo Report) at 66-76. The City no longer disputes that Burge and others committed egregious acts of misconduct between 1972 and 1991; the City provided a formal apology via ordinance in 2015 to the victims of police torture between 1972 and 1991 by Burge and the officers under his command at Areas 2 and Area 3. Ex. 11 (Finnell Report) at 16. All told, there are documented instances of at least 125 individuals who were tortured by Burge and those under his command from 1972 to 1991. Ex. 19 (Leo Report) at 66.

**RESPONSE:**    Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence and it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw,* 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the

issues identified in the summary judgment motion.") **Specifically, Plaintiffs do not cite to any evidence that any of the Defendant Officers in this case worked for or with Burge prior to his termination in 1993. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record supports that the City no longer disputes that Burge and others committed egregious acts of misconduct between 1972 and 19991).** *See Malec,* **191 F.R.D. at 583.**

**Defendant City also objects to this paragraph as it is not supported by admissible evidence.** *See Somerfield,* **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Finally, the events described in this paragraph pre-date Plaintiffs' arrests and prosecutions almost 26 years and Plaintiffs have made no allegations of torture against the Defendants in this case, making this fact irrelevant for purposes of granting the City's motion for summary judgment.**

**Subject to and without waiving these objections, Defendant City admits that Plaintiffs have accurately cited to one paragraph of the 24 page Goldston Report but denies that the Report details any allegations related to the defendants named in this litigation. The City further denies that Leo's Report establishes that "there are documented instances of 125 individuals were tortured by Burge and those under his command."**

34.     Investigator Goldston found that although fifty alleged victims had alleged beatings, torture, and other coercive actions designed to fabricate evidence—and twenty-six CRs had been filed—the City failed to sustain a single CR, even as they settled five separate lawsuits alleging such misconduct. Ex. 18 (Goldston Report, Sept. 28, 1990, Appendix F (Statistical Analysis), AR-L 150959-150983) at 1; Ex. 11 (Finnell Report) at 13.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence and it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. See Outlaw, 259 F.3d at 837; see also Malec, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Specifically, Plaintiffs do not cite to any evidence that any of the Defendant Officers in this case worked for or with Burge prior to his termination in 1993.**

**Defendant City also objects to this paragraph as it is not supported by admissible evidence.** *See Somerfield,* **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken,**

**because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Subject to and without waiving these objections, Defendant City admits that Plaintiffs have cited to the Appendix of the 24 page Goldson Report, but denies that the Report details any allegations related to the defendants named in this litigation. (See Pls. Ex. 18 at AR-L 150982). Further answering, the Appendix details documented alleged incidents from 1973-1986, 13-28 years before the criminal investigation and prosecution of Plaintiffs.**

35.     The City of Chicago had an established practice of beatings and other means of

torture designed to fabricate evidence in the early 1980's: as early as 1987, it had been determined

that Andrew Wilson was beaten into confessing by Jon Burge, and "both internal police accounts

and numerous lawsuits and appeals brought by suspects alleging such abuse substantiate that those

beatings and other means of torture occurred as an established practice, not just on an isolated

basis." *People v. Wilson*, 116 Ill.2d 29, 106 Ill.Dec. 771, 506 N.E.2d 571 (1987); *U.S. ex rel.*

*Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999).

**RESPONSE:     Defendant City objects to this fact as not material to Defendants' motion for summary judgment and therefore does not comply with L.R. 56.1(a)(2). *See Outlaw*, 259 F.3d at 837 (material fact is fact "pertinent to the outcome of the issues identified in the summary judgment motion"). The events in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by almost eleven-years and Plaintiffs have made no allegations of torture against the Defendants in this case, making this fact irrelevant for purposes of granting the City's motion for summary judgment. Defendant City further objects to the extent that this paragraph states a legal conclusion rather than a material fact, and to the extent it is argumentative ("established practice"). *See Tel-Lock, Inc.*, 2005 WL 741930, at \*2; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019).**

**Defendant City further objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence. Specifically, Plaintiffs' reliance on *People v. Wilson,* 116 Ill.2d 29, 106 Ill.Dec. 771, 506 N.E.2d 571 (1987); and *U.S. Ex. rel. Maxwell v. Gilmore,* 37 F. Supp. 2d 1078, 1094 (N.D. Ill 1999) in support of a "fact" paragraph is improper as legal opinions are not "fact" they are hearsay. *See Taylor,* 2012 WL 669063, at \*1 (Shadur, J) (A judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Subject to and without waiving these objections the City admits only that the Court in *People v. Wilson,* reversed Andrew Wilson's conviction because the State did not meet its burden to show by clear and convincing evidence that the injuries to Andrew Wilson did not occur before he gave his confession. *People v. Wilson,* 116 Ill. 2d 29, 41 (1987). The City further**

admits only that Plaintiffs have accurately quoted the language in *Maxwell v. Gilmore.*

36. No other officers were fired for the dozens of cases of alleged torture during the Burge era, and only two others received any form of discipline. Ex. 11 (Finnell Report) at 37.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Specifically, Plaintiffs' reliance on their expert's report as support for this "fact." Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24). Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Additionally, Defendant City objects to this paragraph as it is argumentative in violation of L.R. 56.1(d)(4). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019).**

**Subject to and without waiving these objections, Defendant City denies that the record citation supports the assertion. The sole basis for Plaintiffs' assertion is based on Finnell's report which relies solely on purported statements made by G. Flint Taylor, an attorney whose law firm represents Plaintiff Solache in this case, and plaintiffs in other cases against the City of Chicago, and a 1996 Chicago Reader article, "Town without Pity" that does not support the assertion. *See* John Conroy, Town Without Pity, Chicago Reader (Jan. 11, 1996), https://chicagoreader.com/news-politics/town-without-pity/.**

37. In 1982, Detective Peter Dignan and Sergeant John Byrne, who had been supervised by Jon Burge, beat and tortured Stanley Wrice to coerce a confession from him and fabricate evidence against him, an allegation that Wrice made in 1982 or 1983 in a motion to suppress his confession. *People v. Wrice*, 357 Ill. Dec. 33, 962 N.E.2d 934, 2012 IL 111860 (Ill. 2012); Ex. 11 (Finnell Report) at 16-17; Ex. 19 (Leo Report) at 74.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Specifically, Plaintiffs'**

reliance on their expert's report as support for this "fact." Further, Finnell's and Leo's reports are hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell and Leo were deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24; Dkt. 765-19, Ex. 19, Declaration of Richard Leo signed 11/15/24). Moreover, Plaintiffs' reliance on *People v. Wrice*, 357 Ill. Dec. 33, 962 N.E.2d 934, 2012 IL 111860 (Ill. 2012) in support of this "fact" paragraph is improper as legal opinions are not "fact" they are hearsay. *See Taylor*, 2012 WL 669063, at *1 (Shadur, J) (a judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)). Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. See Outlaw, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Additionally, Defendant City objects to this paragraph as it is argumentative and to the extent that it states a legal conclusion rather than a material fact in violation of L.R. 56.1(d)(4)). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), aff'd, 926 F.3d 409 (7th Cir. 2019).

Subject to and without waving these objections, Defendant City denies that the records cited support the assertions in this paragraph. Rather, the Illinois Supreme Court opinion cited by Plaintiffs (and relied upon by Plaintiffs' expert) remanded the matter to the trial court for second-stage postconviction proceedings. *People v. Wrice*, 357 Ill. Dec. 33, 962 N.E.2d 934, 2012 IL 111860 (Ill. 2012). The Court specifically held that in cases where the defendant satisfies both prongs of the cause-and-prejudice test, the defendant is still required to establish the allegations set forth in his post conviction petition. *Id.* "Satisfaction of the test merely allows the petition to proceed; it does not relieve the defendant of his evidentiary burden in the postconviction proceeding." *Id.* Defendant City further denies that the record citation supports the assertion that any of the defendants named in this lawsuit had any involvement in the investigation into Stanley Wrice as the assertion identifies Dignan, Byrne and Burge.

## THE CITY HAD A PATTERN OF FABRICATING EVIDENCE AGAINST SUSPECTS AND WAS ON NOTICE OF SUCH ALLEGATIONS

38. In 1987, the Illinois Appellate Court reversed the conviction of Melvin Jones for murder based on evidence that officers had fabricated an eyewitness identification against him. *See* People v. Jones, 157 Ill. App. 3d 1006, 1025-27 (1987); *see also, e.g.*, Ex. 20 (Chicago Sun Times, Burge tortured me, too, ex-suspect says, 1992 WLNR 5316085); Ex. 21 (Melvin Jones, Nat'l                        Registry                        of                        Exonerations,

https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=4176);    Ex.    11

(Finnell Report) at 18.

**RESPONSE:    Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence.  *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  Specifically, Plaintiffs' reliance on their expert's report as support for this "fact."  Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed.  (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).  Moreover, Plaintiffs' reliance on *People v. Jones,* 157 Ill. App. 3d 1006, 1025-27 (1987); in support of this "fact" paragraph is improper as legal opinions are not "fact" they are hearsay.  *See Taylor,* 2012 WL 669063, at \*1 (Shadur, J) (a judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).**

**Defendant City further objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence.  Specifically, Plaintiffs' reliance on the "National Registry of Exonerations" in support of a "fact" is improper as it is not a "fact," it is hearsay.  *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("Accordingly, a party cannot rely on hearsay in a Local Rule 56.1 statement of facts or response.")  Answering further, the "National Registry of Exonerations" website includes on its home page a disclaimer that states the following: "Tell us about an exoneration that we may have missed . . . *Correct an error or add information about an exoneration on our list.*" https://www.law.umich.edu/special/exoneration/Pages/about.aspx (emphasis added).  Thus, there is no foundation to establish the reliability of any of the information contained on the website and it is therefore hearsay.**

**Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment.  *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Additionally, Defendant City objects to this paragraph as it is argumentative and states a legal conclusion in violation of LR 56.1(d)(4).  *See Uncommon, LLC v. Spigen, Inc.,*305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.), *aff'd,* 926 F.3d 409 (7th Cir. 2019).  Finally, Plaintiffs' reliance on media reports is hearsay and cannot be relied upon for summary judgment proceedings.  *See Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 654 (7th Cir. 2001) (media reports, including newspaper articles, that are being offered for the truth of the matter asserted are inadmissible hearsay and cannot be relied upon for summary judgment proceedings.)**

**Subject to and without waiving the foregoing objections, denied.  The records cited, specifically, *People v. Jones,* found that the trial court erred in admitting a hearsay conversation at trial.  157 Ill. App. 3d 1006 (1ˢᵗ Dist. 1987).  The court specifically *declined* to disturb the court's guilty finding based upon allegations of fabricated evidence.  *Id.***

Defendant City further denies that Defendant Officers played any role in the criminal investigation that led to his arrest and prosecution.

39.     In 1988, the Seventh Circuit upheld a jury verdict in favor of George Jones, who was convicted after CPD detectives suppressed the victim's initial failure to identify him as the suspect and conducted a repeat photo identification procedure which was disclosed without any indication that it had been performed before; CPD subsequently disciplined the police whistleblower who brought the misconduct to light, but declined to discipline any of the detectives involved in the investigation. *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988).

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence (including no record cite at all).  *See Malec*, 191 F.R.D. at 583; *see Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at \*2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials in the record" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).  Specifically, Plaintiffs' reliance on an upheld jury verdict in *Jones v. City of Chicago*, 856 F.2s 985 (7th Cir. 1988), in support of this "fact" paragraph is improper as legal opinions and jury verdicts are not "facts" they are hearsay.  *See Taylor*, 2012 WL 669063, at \*1 (Shadur, J) (a judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)); *Franklin v. Adkins*, No. 92-1765, 1993 WL 179221, at \*5 (7th Cir. May 25, 1993) (finding that a jury's verdict is a hearsay statement); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 2019 WL 6649847 at \*1 (N.D. Ind. Dec. 5, 2019) (finding a jury verdict makes the plaintiff whole and is not to send a message to the defendants or society at large).**

**Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment.  *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")  The events described in this paragraph pre-dates Plaintiff's arrest by eight years.**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part.  The City admits that the Seventh Circuit affirmed the jury verdict in *Jones v. City of Chicago*, but denies that Plaintiff has fully and accurately summarized the opinion in this paragraph and denies that the circumstances in *Jones* support allegations of fabrication.**

40.     In 1989, James Newsome, who had been wrongly convicted of murder, obtained a court order requiring the CPD to run unidentified fingerprints from the murder scene through its fingerprint identification system, and CPD officers hid the results for five years until in 1994 they

revealed that the fingerprints matched another man convicted of murder, leading to Newsome's

conviction being overturned in 1994 and him subsequently being granted a pardon based on

innocence in 1995. See *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *2, 16 (N.D. Ill.

Apr. 26, 2000); see also Ex. 22 (Newsome v. James, No. 96 C 7680, Dkt. 150, N.D. Ill. May 16,

2000) at 3-9; See Ex. 23 (Chicago Tribune, Lineup suit nets $15 million, 2001 WLNR 10747375);

Ex.        24        (James        Newsome,        Nat'l        Registry        of        Exonerations,

https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=3504

); Ex. 24 (Finnell Report) at 17.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence.  *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  Specifically, Plaintiffs' reliance on his expert's report as support for this "fact."  Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).  Moreover, Plaintiffs' reliance on *Newsome v. James,* No. 96 C 7680, 2000 WL 528475, at *2, 16 (N.D. Ill. Apr. 26, 2000) and *Newsome v. James*, No. 96 C 7680, Dkt. 150, (N.D. Ill. May 16, 2000) in support of this "fact" paragraph is improper as legal opinions are not "fact" they are hearsay.  *See Taylor,* 2012 WL 669063, at *1 (Shadur, J) (a judge's finding does not qualify as a hearsay exception under Rule 803(8) or Rule 803(22)).  Finally, Plaintiffs' reliance on media reports, which are hearsay and cannot be relied upon for summary judgment proceedings.  *See Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 654 (7th Cir. 2001) (media reports, including newspaper articles, that are being offered for the truth of the matter asserted are inadmissible hearsay and cannot be relied upon for summary judgment proceedings.)**

**Defendant City further objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence.  Specifically, Plaintiffs' reliance on the "National Registry of Exonerations" in support of a "fact" is improper as it is not a "fact," it is hearsay.  *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("Accordingly, a party cannot rely on hearsay in a Local Rule 56.1 statement of facts or response.")  Answering further, the "National Registry of Exonerations" website includes on its home page a disclaimer that states the following: "Tell us about an exoneration that we may have missed . . . *Correct an error* or add information about an exoneration on our list." https://www.law.umich.edu/special/exoneration/Pages/about.aspx (emphasis added).  Thus,**

there is no foundation to establish the reliability of any of the information contained on the website and it is therefore hearsay.

Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date Plaintiffs' arrests by nine years.

Finally, Defendant City objects to the extent that the exhibits cited are not part of the record in this case as they are not bates stamped with any of the bates stamp designations connected to this case. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at *2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).

Subject to and without waiving the foregoing objections, Defendant City admits that new fingerprint technology identified fingerprints at the scene belonged to another man and that Newsome's conviction was reversed, but denies that the record cited supports the remainder of this paragraph, denies that this paragraph supports evidence of fabrication and denies that any of the defendants in this litigation participated in the criminal investigation that lead to Newsome's arrest and prosecution. (Dkt. 765-22, Ex. 22 at p. 2).

41.    In 1993, CPD's head of Internal Affairs Richard Risley learned of serious allegations of criminal misconduct (including hiding evidence related to a homicide) and, instead of pursuing discipline, directly communicated with Miedzianowski about the allegations against him and provided him copies of witness statements and other reports that Miedzianowski was not authorized to have. Ex. 11 (Finnell Report) at 26.

RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record (Finnell's report does not support that Risley learned of allegations, "including hiding evidence related to a homicide") or admissible evidence. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Specifically, Plaintiffs' reliance on his expert's report as support for this "fact." Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24). Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Additionally, Defendant City objects to this paragraph to the extent that it is argumentative ("instead of pursuing discipline" and "serious allegations of criminal misconduct"). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019).

Subject to and without waiving these objections, Defendant City admits that Richard Risley was the head of Internal Affairs in 1993, but denies that Finnell has any foundation for the conclusions he draws in his report at page 26 as he cites nothing in support of his discussion about Risley.

42.     In 1993 and 1994, Chicago police officers obtained several purported identifications of Vincent Goldstein as the robber of four grocery stores and arrested him; those identifications were proven false after Mr. Goldstein's alibi was established by his employer and another man confessed. Ex. 25 (Chicago Tribune, Wrong Guy Looked Right in Lineups, 1994 WLNR 4312248); Ex. 11 (Finnell Report) at 19.

RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Specifically, Plaintiffs' reliance on their expert's report as support for this "fact" as well as their reliance on a Chicago Tribune article which are hearsay and cannot be relied upon for summary judgment proceedings. *See Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 654 (7th Cir. 2001) (media reports, including newspaper articles, that are being offered for the truth of the matter asserted are inadmissible hearsay and cannot be relied upon for summary judgment proceedings.) Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).

Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Additionally, Defendant City objects to this paragraph to the extent that it is argumentative ("purported identifications" and "proven false"). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019).

Subject to and without waiving the foregoing objections, Defendant City admits Finnell relied exclusively on a Chicago Tribune article for his discussion about Goldstein and did not mention the statement reported in the article by a detective that "the two [Goldstein and the

other man] look very similar in many ways." *See* **Wrong Guy Looked Right in Lineups, Chicago Tribune (May 3, 1994, 1 AM),** *https://www.chicagotribune.com/1994/05/03/wrong-guy-looked-right-in-lineups/.*

43. Robert Brown was released after previously being convicted of murder, following his identification in a CPD lineup. Ex. 26 (Robert Brown, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=3063). In 1997, the convictions of Donald Reynolds and Billy Wardell were vacated based on DNA evidence. *See* Ex. 27 (Donald Reynolds, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=3574); Ex. 11 (Finnell Report) at 18-19.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record or admissible evidence. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Specifically, Plaintiffs' reliance on their expert's report as support for this "fact." Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24). Moreover, Defendant City objects to the use of documents and web sites that are not part of the record in this case as they are not bates stamped with any of the bates stamp designations connected to this case. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at \*2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added); *see also Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 654 (7th Cir. 2001) (media reports, including newspaper articles, that are being offered for the truth of the matter asserted are inadmissible hearsay and cannot be relied upon for summary judgment proceedings).**

**Defendant City further objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence. Specifically, Plaintiffs' reliance on the "National Registry of Exonerations" in support of a "fact" is improper as it is not a "fact," it is hearsay. *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("Accordingly, a party cannot rely on hearsay in a Local Rule 56.1 statement of facts or response.") Answering further, the "National Registry of Exonerations" website includes on its home page a disclaimer that states the following: "Tell us about an exoneration that we may have missed . . . *Correct an error* or add information about an exoneration on our list." https://www.law.umich.edu/special/exoneration/Pages/about.aspx (emphasis added). Thus,**

there is no foundation to establish the reliability of any of the information contained on the website and it is therefore hearsay.

Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date Plaintiffs' arrests by fourteen years (Brown 1984 arrest) and ten years (Reynolds and Wardell 1988 arrest). Additionally, Defendant City objects to this paragraph as it includes multiple allegations and to the extent that it is argumentative. *See Malec v. Sanford*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response").

Subject to and without waiving the foregoing objections, Defendant City admits that Finnell relied exclusively on Chicago Sun-Times and Chicago Tribune articles and the National Registry of Exonerations for his discussion of Robert Brown and further admits that Donald Reynolds and Billy Wardell and Brown was released after having been previously convicted and that the convictions of Reynolds and Wardell were vacated based on DNA evidence.

44.    CPD sergeants, lieutenants, and commanders of detectives widely understood that

false identifications could result if photo identification procedures weren't conducted properly,

and understood that photo identification procedures could be abused if they were not done

correctly. Ex. 28 (Foster Dep.) at 284.

RESPONSE:    Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by the record. *See Malec*, 191 F.R.D. at 583. Defendant City further objects to this paragraph as it does not assert any "material" facts that warrant denial of the City's motion for summary judgment. *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Additionally, Defendant City objects to this paragraph as it is argumentative ("widely understood" and "photo identification procedures could be abused.") *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019).

Subject to and without waiving the foregoing objections, Defendant City denies this paragraph accurately summarizes all of the testimony cited. Specifically, Lt. Foster testified that the supervisors in the Detective Division were there to ensure that the policies were being followed so that the ultimate goal to find the truth and find the right person that committed a crime …" (Dkt. 765-28, Ex. 28 at 284:17-285:3).

45. From 1986-1998, the Chicago Police Department conducted no audits into the City's witness identification procedures or practices or patterns of misconduct involving such procedures. Ex. 29 (30(b)(6) Deposition of Commander Denham) at 32.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it is argumentative. *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019).**

**Additionally, Defendant City objects to this paragraph as it violates L.R. 56.1(d) because it does not assert any "material" facts Defendant City further objects to this paragraph as it violates L.R. 56.1(a)(2) because it is not pertinent to the issues identified in the summary judgment motion. *See Outlaw*, 259 F.3d at 837; *see Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Additionally, Defendant City admits that IAD had the authority to conduct audits into whether there was misconduct during eyewitness identification procedures, but that Commander Denham was not aware of any that were conducted but denies that the record cited supports the assertion that the Chicago Police Department conducted no "audits" into the City's witness identification procedures.**

### LOW RATES OF SUSTAINED COMPLAINTS AND DISCIPLINE PROVIDE EVIDENCE OF THE CITY OF CHICAGO'S PRACTICES AND CODE OF SILENCE : REPORT OF FINNELL

46. Mr. Finnell has worked in law enforcement for over 30 years. Ex. 11 (Finnell Report) at 1-3. His experience includes over 20 years with the Indianapolis Police Department, including working as a homicide investigator and training officer; serving as the supervising investigator for Chicago's Independent Police Review Authority; directing the Oakland Citizen's Police Review Board and its successor agency; and serving as the strategic initiatives lead of the Seattle Office of Inspector General for Public Safety. Ex. 11 (Finnell CV) at 1-2. Mr. Finnell has also consulted for many municipalities. Ex. 11 (Finnell CV) at 3.

**RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City also**

objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence. *See Malec*, 191 F.R.D. at 583; *see also Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).

Subject to and without waiving these objections, the City admits in part and denies in part. The City admits that Finnell's CV details his employment as set forth in his CV but denies that Finnell has the requisite knowledge, skill, experience, training or education that qualifies him to opine on CPD's disciplinary policies or practices or that he has any foundation to provide opinion testimony related to CPD's disciplinary policies or practices. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760, at pp. 6-10 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

47.     Mr. Finnell and Ms. Meza provided a rebuttal report responding to the opinions of

defense expert Lior Gideon. Ex. 30 (Finnell Rebuttal Report).

**RESPONSE:** Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence. *See Malec,* 191 F.R.D. at 583; *Sommerfield,* 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions. *See Butler v. Sears Roebuck & Co.*, 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("Rebuttal reports should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Subject to and without waiving these objections, the City admits that Plaintiffs disclosed Ms. Meza to rebut the opinions of defense expert Dr. Gideon.

48.     Mr. Finnell concluded from the CR summary spreadsheet that most allegations of

police misconduct originated from the community (external sources) and that the vast majority of

external complaints did not receive a sustained finding. More specifically, 90% of the allegations against CPD officers in the CR summary spreadsheet with a known source originated from external sources as opposed to internal ones (1,756 out of 1,953 allegations). Ex. 11 (Finnell Report) at 38. The sustainment rate for these external allegations was only 3.6% after internal investigation, and fell further to 1.2% after external review. By contrast, the sustainment rates for *internal* complaints before and after review were 52% and 14 %, respectively. Ex. 11 (Finnell Report) at 38-39.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("only 3.6%," "fell further") and lacks foundation.** *See Malec*, **191 F.R.D. at 583.** *See Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C, Deposition of Finnell in** *Sierra*, **at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible.** *Obrycka v. City of Chicago*, **492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (***citing Sommerfield*, **254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate** *Daubert's* **insistence that an expert's opinion be grounded on reliable information.")**

**Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B, Deposition of Finnell in** *Solache/Reyes*, **at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter," instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions.** *See Butler v. Sears Roebuck & Co.*, **2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same**

subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Defendant City further objects to this paragraph as it includes multiple allegations, in violation of L.R. 56.1(d). *See Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

49.     The CR summary spreadsheet reflected that the small number of external complaints that were sustained rarely resulted in any meaningful discipline, further contributing to officers' sense of impunity. Ex. 11 (Finnell Report) at 40.

RESPONSE:  Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("the small number," "rarely resulted," "meaningful discipline," "further contributing to officers' sense of impunity") and lacks foundation. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).

Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24).  Uncritical reliance on summaries of information provided by Plaintiff's counsel is impermissible. *Obrycka v. City of Chicago*, 492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (*citing Sommerfield*, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate *Daubert's* insistence that an expert's opinion be grounded on reliable information.")  Defendant City also objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record contains a CR summary spreadsheet nor support that the small number of external

complaints that were sustained rarely resulted in any meaningful discipline). *See Malec,* 191 F.R.D. at 583.

Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter," instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions. *See Butler v. Sears Roebuck & Co.,* 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see Baldwin Graphic Systems, Inc. v. Siebart, Inc.,* 2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

50.     The data further showed that, in the CRs for detectives from 1995-1998 coded in the CR summary spreadsheet, there were 1107 instances of allegations of police abuses of community members that were classified by the City with the following category codes: coerced confession (20); excessive force (448), fabricated statement (30), false arrest (141), improper inventory procedure (183), forced to sign consent to search form (1), planted evidence (14), racial/ethnic slurs (29), threats (62), suggestive lineup (0), or verbal abuse (179). These represent 58% of all allegations during the time period (1107/2150). Ex. 1 (Finnell Report) at 34.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, not supported by the record (no reference to Area Four in the cited record) and lacks foundation.** *See Malec*, **191 F.R.D. at 583;** *Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible.** *Obrycka v. City of Chicago*, **492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011)** (*citing Sommerfield*, **254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate** *Daubert's* **insistence that an expert's opinion be grounded on reliable information.")**

**Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter," instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions."** *See Butler v. Sears Roebuck & Co*., **2010 WL 2697601 at \*1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C));** *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc*., **2005 WL 1300763 at \*2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").**

**Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9).** (*See also*, **Defendant City of Chicago's** *Daubert* **Motion to Bar Opinions of**

**Anthony Finnell, Dkt. 760 Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).**

51.     The outcomes of the investigations into these 1,107 allegations were as follows:

| | External | | | | | |
| | Allegation Count | Sustained After Full Internal Review | % | Allegation Count | Sustained After Full Internal Review | % |
|---|---|---|---|---|---|---|
| **Coerced Confession** | 20 | 0 | 0% | 0 | 0 | - |
| **Excessive Force** | 448 | 3 | 1% | 3 | 1 | 33% |
| **Fabricated Statement or Fabricated Evidence** | 30 | 0 | 0% | 7 | 0 | 0% |
| **False Arrest** | 141 | 1 | 1% | 4 | 1 | 25% |
| **Forced to Sign Consent to Search Form** | 1 | 0 | 0% | 0 | 0 | - |
| **Improper Inventory Procedure[80]** | 183 | 1 | 1% | 5 | 0 | 0% |
| **Planted Evidence** | 14 | 0 | 0% | 0 | 0 | - |
| **Suggestive Line Up** | 0 | 0 | - | 0 | 0 | - |
| **Verbal Abuse** | 179 | 0 | 0% | 8 | 2 | 25% |
| **Threats** | 62 | 0 | 0% | 1 | 0 | 0% |
| **Racial/Ethnic Slurs** | 29 | 0 | 0% | 0 | 0 | - |
| **Total of this subset of allegations** | 1107 | 5 | 0% | 28 | 4 | 14% |

Ex. 11 (Finnell Report) at 44 (including Table 8); Ex. 31 (CR summary spreadsheet). The sustainment rate after external review was 0% for allegations of coerced confessions, fabricated statements or evidence, forced to sign consent to search form, planted evidence, threats, racial//ethnic slurs, and verbal abuse. Of these 1,107 allegations related to the claims in the Reyes and Solache case and wrongful convictions more broadly, only ten were sustained after full

external review, reflecting that officers who engaged in such misconduct faced almost no risk of accountability and were unlikely to face any discipline. Ex. 11 (Finnell Report) at 38, 44-50 (including Tables 7, 8, 9, 14-18); Ex. 31 (CR summary spreadsheet).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, argumentative ("related to the claims in the Reyes and Solache case," "wrongful convictions more broadly," "only," "reflecting that," "faced almost no risk of accountability," "were unlikely to face") and lacks foundation.** *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 **(the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible.** *Obrycka v. City of Chicago*, 492 F. Supp. 2d 1013, 1025 **(N.D. Ill. 2011) (***citing Sommerfield***, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate** *Daubert's* **insistence that an expert's opinion be grounded on reliable information.") Defendant City also objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record reflects tables 14-18).** *See Malec,* 191 F.R.D. at 583.

**Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-22; 466:2-6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter," instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions.** *See Butler v. Sears Roebuck & Co*., 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc.*

*v. Siebart, Inc.*, 2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

52.      When Mr. Finnell considered only allegations of misconduct involving false arrest, the sustainment rates were similarly low. The CR summary spreadsheet reflected that there were only 8 allegations sustained after internal investigation out of 141 total allegations coded by the City as falling in those categories. Ex. 11 (Finnell Report) at 43 & Table 7B. Only 1 was sustained after external review. Ex. 11 (Finnell Report) at 43.

RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("sustainment rates were similarly low," "only") and lacks foundation. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).

Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible. *Obrycka v. City of Chicago*, 492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (*citing Sommerfield*, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate *Daubert's* insistence that an expert's opinion be grounded on reliable information.")

Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or

figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions." *See Butler v. Sears Roebuck & Co.*, 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

53.     With respect to allegations of excessive force, the CR summary spreadsheet reflected only a 4.0% (18/448) sustainment rate after internal investigation for excessive force complaints, which fell to 0.6% (3/448) after external review. Ex. 11 (Finnell Report) at 43, 50 & Tables 7-8, 18. Only one of those three allegations resulted in any discipline more serious than a one-day suspension. Ex. 11 (Finnell Report) at 45 & Table 9.

RESPONSE:  Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("reflected only," "ultimately-sustained allegations,") and lacks foundation.  *See Malec,* 191 F.R.D. at 583; *Sommerfield,* 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed.  (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).

Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet.  (Dkt. 728-4, Ex. C at 93:15-24).  Uncritical reliance on summaries of information provided by

Plaintiffs' counsel is impermissible. ***Obrycka v. City of Chicago***, 492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (*citing Sommerfield*, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate ***Daubert's*** insistence that an expert's opinion be grounded on reliable information.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record contains Table 18). ***See Malec***, 191 F.R.D. at 583.

Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiff (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions. ***See Butler v. Sears Roebuck & Co.***, 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also **Baldwin Graphic Systems, Inc. v. Siebart, Inc.***, 2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's ***Daubert*** Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

     54.     Even for the entire dataset of 1,983 allegations in the CR summary spreadsheet over

the four-year period, only 167 allegations (8%) were sustained after initial investigation, and only

51 allegations (3%) were sustained after review. Only 17 of the allegations were associated with

any discipline more serious than a 5-day suspension. Ex. 11 (Finnell Report) at 39, 45, 81 & Tables 5, 9.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("even for the entire dataset," "only," "more serious than") and lacks foundation.** *See Malec*, **191 F.R.D. at 583;** *see also Sommerfield,* **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible.** *Obrycka v. City of Chicago*, **492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (***citing Sommerfield***, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate** *Daubert's* **insistence that an expert's opinion be grounded on reliable information.")**

**Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions.** *See Butler v. Sears Roebuck & Co.*, **2010 WL 2697601 at \*1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C));** *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, **2005 WL 1300763 at \*2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").**

**Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in**

**statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).**

55.     Mr. Finnell's review of the 1995-1998 dataset showed internal complaints were sustained at significantly higher rates than external complaints from the community and disproportionately reflected procedural misconduct (e.g., inattention to duty, rule violations, improper inventory procedure) or domestic violence, as opposed to abuses against community members while on duty (e.g., fabricated statements, threats, excessive force, false arrest, warrantless search, verbal abuse). In contrast, allegation types that were reported by community/citizens were often related to abuse against people interacting with the police. These dynamics "reinforced the environment in which officers, like the Defendants in this case, could engage in serious misconduct violations with little fear of consequence." Ex. 11 (Finnell Report) at 43, 47 & Table 7B; Ex. 278 (CR summary spreadsheet).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("obscured," "significantly higher rates," "disproportionately reflected procedural misconduct," "as opposed to abuses against community members while on duty," "in contrast," "reinforced the environment," "could engage in serious misconduct," "little fear of consequence") and lacks foundation. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Defendant City also objects to the extent that this paragraph states a legal conclusion rather than a material fact ("like Defendants in this case, could engage in serious misconduct violations with little fear of consequence.") *See Tel-Lock, Inc. v. Thomson Consumer Electronics*, 2005 WL 741930, at \*2 (N.D. Ill Mar. 30 2005) (the court struck portions of party's 56.1 that contained legal conclusions).**

Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible. *Obrycka v. City of Chicago*, 492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (*citing Sommerfield*, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate *Daubert's* insistence that an expert's opinion be grounded on reliable information.")

Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions. *See Butler v. Sears Roebuck & Co.*, 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments"). Further, Plaintiffs cite to Exhibit 278 to support their "fact," but Plaintiffs do not have an Exhibit 278 on their exhibit list. Instead, the correct exhibit should be Exhibit 31, which contains the CR Summary Spreadsheet referenced. (Dkt. 765-31, Ex. 31),

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

56. The rates of sustained discipline in the CR files produced by the City were well below the available national averages and below what would be expected in a well-functioning

disciplinary system, representing a "deeply flawed investigation and disciplinary systems." Ex. 11

(Finnell Report) at 30.

**RESPONSE: Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("well below the available national averages," "below what would be expected," "well-functioning disciplinary system," "representing a 'deeply flawed system") and lacks foundation.  *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed.  (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet.  (Dkt. 728-4, Ex. C at 93:15-24).  Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible.  *Obrycka v. City of Chicago*, 492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (*citing Sommerfield*, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate *Daubert's* insistence that an expert's opinion be grounded on reliable information.")**

**Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation.  Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report.  (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6).  In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza.  (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3).  Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions.  *See Butler v. Sears Roebuck & Co.*, 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").**

**Objecting further, Plaintiffs (and Finnell/Meza) lack foundation for comparing CPD to the Bureau of Justice Statistic data.  (*See* Dkt. 723-8, Ex. H at p. 3; *see also*, Dkt. 728-9, Ex. I**

(Bureau of Justice Statistics "do not provide a valid and reliable basis for this kind of comparative analysis"); Dkt. 728-4, Ex. C at 130:21-132:12).

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell but denies that Finnell has the proper foundation, experience, training, and education to provide opinions related to CPD's disciplinary policies and practices. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207). Denying further, the City denies that "[t]he rates of sustained discipline in the CR files produced by the City were well below the available national averages and below what would be expected in a well-functioning disciplinary system." Finnell testified that he did not examine *any* national averages from the time period of this case to compare to CPD and that he chose to compare CPD to the 8% rate identified in the Bureau of Justice Statistics data, not the 6% rate identified in the data for large law enforcement agencies. (Dkt. 728-3, Ex. B at 340:20-341:2; 373:15-375:8; 376:6-15).

57. Mr. Finnell also reviewed individual CR files as well as other cited materials, such as the City's Rule 30(b)(6) testimony, and found deficiencies in the City's investigations of the alleged misconduct that did not comport with accepted police practices as of 1998. Ex. 11 (Finnell Report) at, *e.g.*, 37, 43-44, 47, 49, 53-62; Ex. 32 (Finnell *Reyes* Dep Day 2) at 414:4-415:8. Finnell concluded based on his review that "multiple problems with CPD's disciplinary system during the relevant time made it unlikely that officers would ever be disciplined for misconduct." Ex. 11 (Finnell Report) at 52.

RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("deficiencies," "did not comport") and lacks foundation. *See Malec*, 191 F.R.D. at 583. *See Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24). Defendant City also objects to the extent that this paragraph states a legal conclusion rather than a material fact ("Finnell concluded that multiple problems with CPD's disciplinary system during the relevant time period made it unlikely that officers would ever be disciplined for misconduct," the City "tolerate[d] impediments and obstructions to misconduct investigations.") *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, at *2 (N.D. Ill Mar. 30 2005) (the court struck portions of party's 56.1 that contained legal conclusions).

Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt.

728-4, Ex. 4 at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible. *Obrycka v. City of Chicago*, 492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (*citing Sommerfield*, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate *Daubert's* insistence that an expert's opinion be grounded on reliable information.")

Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions. *See Butler v. Sears Roebuck & Co.*, 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell but denies that Finnell has the proper foundation, experience, training, and education to provide opinions related to CPD's disciplinary policies and practices. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

58.     One deficiency in the City's misconduct investigations was that the City did not investigate anonymous complaints against officers unless the complainant's allegations were considered criminal in nature. Ex. 11 (Finnell Report) at 55; Ex. 14 (General Order 08-01 and Addenda, eff. 1/13/93); Ex. 12 (Skahill Dep.) at 151:11-152:22. Such a policy and practice "impedes the administration of discipline by creating obstacles that will ultimately preclude the investigation of police misconduct" and allows serious misconduct to go undetected, which is not consistent with accepted practices as of 1998. Ex. 11 (Finnell Report) at 55.

**RESPONSE:** Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("one deficiency") and lacks foundation. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24). Defendant City also objects to the extent that this paragraph states a legal conclusion rather than a material fact ("Such a policy and practice impedes the administration of discipline by creating obstacles that will ultimately preclude the investigation of police misconduct," "and allows serious misconduct to go undetected.") *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, at *2 (N.D. Ill Mar. 30 2005) (the court struck portions of party's 56.1 that contained legal conclusions).

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell but denies that Finnell has the proper foundation, experience, training, and education to provide opinions related to CPD's disciplinary policies and practices. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207). Denying further, the record citation does not support that, "[s]uch a policy and practice "impedes the administration of discipline by creating obstacles that will ultimately preclude the investigation of police misconduct" and allows serious misconduct to go undetected, which is not consistent with accepted practices as of 1995," rather the record citation supports that the "fact" is Finnell's opinion. (Dkt. 765-11, Ex. 11, at 55) ("In my opinion, such a policy and practice ….")

59.     Mr. Finnell further found that the CR files reflected a "remarkably high" rate of written to/from reports by accused officers in lieu of an interview, including for serious allegations of misconduct such as false evidence, and also reflected a crediting of officers' accounts over those of complainants. Ex. 11 (Finnell Report) at 56-59. As reflected in Column AQ of the CR summary spreadsheet, the vast majority of entries therein reflect that the accused officer was permitted to respond in a to/from report as opposed to an interview (Column AQ=YES). Ex. 31 (CR summary spreadsheet); Ex. 11 (Finnell Report) at 56-59. Mr. Finnell opined that this practice is "evidence of systematic bias in favor of the officer" and "creates opportunity for vague, ambiguous, non-

responsive, and even false statements" that lead to inaccurate and unjust results. He also opined

that the data reflected that CPD investigators systematically took the word of the accused officer

as provided in a written submission over the victim's or complainant's version of what occurred.

Ex. 11 (Finnell Report) at 56-59. Again, Mr. Finnell opined that this was not consistent with

accepted practices as of 1998. Ex. 11 (Finnell Report) at 56-59.

**RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City also objects to the extent that this paragraph states a legal conclusion rather than a material fact ("this practice is "evidence of systematic bias in favor of the officer," "CPD investigators systematically took the word of the accused officer [] over the victim's or complainant's version of what occurred," "creates opportunity for false statements that lead to inaccurate and unjust results.") *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, at *2 (N.D. Ill Mar. 30 2005) (the court struck portions of party's 56.1 that contained legal conclusions).**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("remarkably high," "also reflected," "the vast majority," "permitted," "inaccurate and unjust results") and lacks foundation. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Objecting further, Finnell testified that the spreadsheets (including Column AQ) were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible. *Obrycka v. City of Chicago*, 492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (*citing Sommerfield*, 254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate *Daubert's* insistence that an expert's opinion be grounded on reliable information.")**

**Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used**

that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3, Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions. *See Butler v. Sears Roebuck & Co.*, 2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C)); *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, 2005 WL1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. Finnell admitted that the portions of his report that rely on statistical analysis, including the tables, were provided to him by Meza (who was only disclosed to rebut Dr. Gideon's opinions), and that he played no role in the analysis. (Dkt. 765-11, Ex. 11 at p. 9). (*See also*, Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

60.     Mr. Finnell opined that CR investigations were unduly delayed. Ex. 11 (Finnell Report) at 60-67. Mr. Finnell's analysis determined that, for misconduct allegations that were initially sustained by investigators, the median length from the time of the incident date and the imposition of discipline in the CR summary spreadsheet was 531 days from CR initiated for discipline being imposed by the Superintendent of Police (if no additional review nor arbitration was requested by the officer), and 725 days for final findings and discipline after full external review, if requested by the officer. Ex. 11 (Finnell Report) at 65-66. Lengthy delays within the disciplinary process allowed officers to have multiple CRs open at a given time. Ex. 11 (Finnell Report) at 66, 71. Indeed, for the Defendants in this case, "Considering the known allegations against the Defendant officers during their careers, Defendant Guevara had 5 CRs (16 allegations)

that were opened in parallel with at least one other CR, while Defendant Halvorsen had 2 CRs (15 allegations); Defendant Rutherford had 2 CRs (3 allegations); and Defendant Mingey had 2 CRs (6 allegations) open at the same time as another CR." Ex. 11 (Finnell Report) at 71.

**RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw*, **259 F.3d at 837;** *see also Malec*, **191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations.** *See Malec*, **191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Additionally, Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it lacks foundation, and is argumentative ("unduly delayed," "Finnell's analysis determined," "lengthy delays within the disciplinary process," "considering," "known allegations against the Defendant officers," "allowed officers to have multiple CRs open.")** *See Malec*, **191 F.R.D. at 583;** *see also Sommerfield*, **254 F.R.D. at 329. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence.** *See Malec*, **191 F.R.D. at 583;** *Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Objecting further, Finnell testified that the spreadsheets were created by Plaintiffs' legal team who distilled the data from the CR files and put the date into the spreadsheet. (Dkt. 728-4, Ex. C at 93:15-24). Uncritical reliance on summaries of information provided by Plaintiffs' counsel is impermissible.** *Obrycka v. City of Chicago*, **492 F. Supp. 2d 1013, 1025 (N.D. Ill. 2011) (**citing *Sommerfield*, **254 F.R.D. at 322) ("Acceptance of the notion that an expert can reasonably base his opinion on summaries of deposition testimony prepared by a party's lawyer would effectively eliminate** *Daubert's* **insistence that an expert's opinion be grounded on reliable information.")**

**Additionally, Finnell further testified that he played no role in the statistical analysis, including the creation of any of the tables in the report, and he relied on Meza for the statistical analysis and the table creation. Specifically, Finnell testified that the analysis of the "dataset" was done entirely by Meza, he played no role in the analysis, and Meza used that analysis to generate the tables and graphs within the report. (Dkt. 765-11, Ex. 11 at p. 9; Dkt. 728-3, Ex. B at 465:9-466:6). In this matter, the first case where he rendered these opinions, when asked about the data contained within any of the 17 tables, or the graphs or figures, or basic elements of the tabulations within Finnell's report, such as "how many CR files" were included in the "unknown" category of Table 1 (at p. 31), Finnell could not answer, and testified that he would need to discuss those questions with Meza. (Dkt. 728-3,**

Ex. B at 121:10-122:5, 204:9-205:20; Dkt. 728-4, Ex. C at 224:4-225:3). **Plaintiffs (and Finnell) cannot rely on Meza's expert report as it is improper rebuttal testimony not being used for the sole purpose of "rebutting evidence on the same matter" (the City is not relying on Dr. Gideon in support of its motion for summary judgment), instead it is being used entirely for the purposes of supporting Finnell's initial expert opinions."** *See Butler v. Sears Roebuck & Co.*, **2010 WL 2697601 at *1 (N.D. Ill. 2010) ("A rebuttal report should be limited to 'contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party'" it cannot be used to advance new arguments or new evidence to support plaintiff's expert's initial opinions) (quoting Rule 26(a)(2)(C));** *see also Baldwin Graphic Systems, Inc. v. Siebart, Inc.*, **2005 WL 1300763 at *2 (N.D. Ill. 2005) ("The rebuttal report is no place for presenting new arguments").**

**Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell but denies that Finnell has the proper foundation, experience, training, and education to provide opinions related to CPD's disciplinary policies and practices. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).**

61. Mr. Finnell further found that the City had no mechanism to detect and respond to officers accumulating high numbers of complaints. Command Staff and supervisors had a duty to take action when their subordinates generated a high number of CRs in a short time, but the City provided no formal system to make supervisors aware of most complaints against their subordinates. Supervisors were not automatically notified when one of their subordinates became subject to a CR investigation for fabrication of a statement or improper lineup procedure. Nor did IAD or OPS have any formal system for flagging CPD members who accumulated a high number of CR investigations. Mr. Finnell opined that this deficiency had the effect of enabling the continuance of bad behavior that infected the culture of the department and allowed misconduct to proceed uninterrupted. Ex. 11 (Finnell Report) at 58-59, 67-68; Ex. 10 (Moore Dep.) at 48:22-57:3, 115:15-116:6; Ex. 9 (Bird Dep.) at 122:24-123:14.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it lacks foundation, and is argumentative ("high numbers," "short time," "no formal system," "most complaints," "flagging").** *See Malec*, **191 F.R.D. at 583;** *see also Sommerfield*, **254 F.R.D. at 329. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence.** *See Malec*, **191 F.R.D. at 583;** *Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report**

is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations. *See Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response").

Defendant City further objects to the extent that Plaintiffs rely on a deposition (the Moore deposition) taken in unrelated litigation as it is not bates stamped with any of the bates stamp designations connected to this case. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at *2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).

Subject to and without waiving these objections, Defendant City admits that Plaintiffs have retained Mr. Finnell to opine on CPD's disciplinary policies and practices but denies that Finnell has the proper foundation, knowledge, experience, training, or education in statistical analysis. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Anthony Finnell, Dkt. 760 and Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶134-138, 143-145; 171-176; 203-207).

62.     Pursuant to the City's agreed contract with the Fraternal Order of Police, the City's misconduct investigators could not view an accused officer's disciplinary history unless and until the investigator reached a sustained finding. The investigators were prohibited from taking into account the accused officer's prior CRs if they had not resulted in a sustained finding. Ex. 11 (Finnell Report) at 54-55; Ex. 10 (Moore Dep.) at 110:18-111:18 & 112:3-14; Ex. 9 (Bird Dep) at 68:15-69:8.

RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, not supported by the record cited, and lacks foundation. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due,

and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).

Defendant City further objects to the extent that Plaintiffs rely on a deposition (the Moore deposition) taken in unrelated litigation as they are not bates stamped with any of the bates stamp designations connected to this case. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at *2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).

Subject to and without waiving these objections, denied. The records cited do not support that investigators were "prohibited" from taking into account the accused officer's prior CRs. Rather, the testimony cited supports that as a matter of procedure, when carrying out an investigation of a complaint register file, IAD did not consider past complaints of misconduct. (Dkt. 765-10 Ex. 10 at 110:18-24). Rather, past disciplinary histories were considered when determining the type of discipline to impose after a sustained finding. (*Id.* at 111:19-112:2).

63.     The City did not investigate the allegations in civil suits against CPD members until those suits were resolved. If resolution of the lawsuit took more than 5 years from when the incident occurred, investigators would need to obtain special authorization to investigate the allegations in the lawsuit. Ex. 10 (Moore Dep.) at 117:15-119:16.

RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("the City did not investigate," "until," "if resolution of the lawsuit took more than 5 years," "obtain," "special authorization," "allegation in the lawsuit") and lacks foundation. *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).

Defendant City further objects to the extent that Plaintiffs rely on depositions taken in unrelated litigation as they are not bates stamped with any of the bates stamp designations connected to this case. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at *2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).

Subject to and without waiving these objections, Defendant City admits that Commander Moore testified that an investigation into a member that was subject to a civil lawsuit did not begin until the lawsuit was resolved, but further answers once a civil suit was filed, a CR

number was generated, and the law department, office of legal affairs, would monitor the civil case and provide CPD with information to determine whether or not a full-fledged investigation. (Dkt. 765-10, Ex. 10 at 117:15-118:3).

64.     Mr. Finnell provided examples of CR files against Defendants Guevara, as well as against other accused officers, that illustrated some of the deficiencies in CR investigations and discipline that he identified. For instance, Mr. Finnell identified CRs 217624, 152902, 152612, 217423, 228656, and 231492 as examples of improperly accepting a written memorandum from officers, including Defendant Guevara, accused of misconduct instead of conducting a thorough interview. Ex. 11 (Finnell Report) at 56-57.

**RESPONSE:   Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).  *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("improperly accepting") and lacks foundation.  *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed.  (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).  Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record support CRs 228656 and 231492 are examples of improperly accepting a written memorandum from officers).  *See Malec,* 191 F.R.D. at 583.**

**Subject to and without waiving these objections, Defendant City admits that Finnell's report identified these six CRs as examples of investigations that utilized "to-from" reports but denies that the record citation supports that the use of "to-from" reports is "improper."**

65.     Mr. Finnell identified CRs 251502 and 223928 as examples of how officers (there, Defendant Guevara) could substantially delay and reduce discipline by using the Department's sluggish review and appeal procedures. CR 251502 was also an example of how even when officers lied during the investigation process, there was no further review or investigation into their dishonesty. Ex. 11 (Finnell Report) at 63-54.

**RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw***, 259 F.3d at 837;** *see also Malec***, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("substantially delay," "sluggish review," "lied," "dishonesty,") and lacks foundation.** *See Malec***, 191 F.R.D. at 583;** *Sommerfield***, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Subject to and without waiving these objections, Defendant City admits that Finnell's report identified these two CRs as examples of "how Guevara utilized resources to substantially mitigate the discipline he received[]" but deny the remaining portions of this "fact." Specifically, despite his use of the appellate process, both CRs were sustained and resulted in discipline.**

66.     The City of Chicago condoned a code of silence in its police department, where officers were permitted to lie without repercussions. Ex. 11 (Finnell Report) at 11, 22-27, 29, 41, 68-69.

**RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).** *See Outlaw***, 259 F.3d at 837;** *see also Malec***, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, fails to cite to "specific evidentiary material," is argumentative ("The City of Chicago condoned," "code of silence," "where officers," "permitted to lie without repercussions") and lacks foundation.** *See Malec***, 191 F.R.D. at 583;** *Sommerfield***, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Finally, Defendant City objects to the extent that this paragraph states a legal conclusion rather than a material fact ("The City of Chicago condoned a code of silence in its police department, where officers were permitted to lie without repercussions.")** *See Tel-Lock, Inc.*

*v. Thomson Consumer Electronics,* **2005 WL 741930, at \*2 (N.D. Ill Mar. 30 2005) (the court struck portions of party's 56.1 that contained legal conclusions).**

**Subject to and without waiving these objections, Defendant City denies that the record citation supports the assertions set forth in the paragraph.**

67.     The City of Chicago encouraged abuses of power by failing to supervise and

discipline officers. Ex. 11 (Finnell Report) at 69-78.

**RESPONSE:  Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).  *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("City encouraged," "abuses of power," "by failing") and lacks foundation.  *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed.  (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Finally, Defendant City objects to the extent that this paragraph states a legal conclusion rather than a material fact ("The City of Chicago encouraged abuses of power by failing to supervise and discipline officers.")  *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, at \*2 (N.D. Ill Mar. 30 2005) (the court struck portions of party's 56.1 that contained legal conclusions).**

**Subject to and without waiving these objections, Defendant City denies that the record citation supports the assertions set forth in the paragraph.**

### DEFENDANTS' COMPLAINT AND DISCIPLINARY HISTORIES PROVIDE FURTHER EVIDENCE OF THE CITY'S DEFICIENT AND WIDESPREAD PRACTICES.

68.     Defendants Guevara and Halvorsen received multiple CRs containing similarly

themed allegations and patterns throughout their careers, and Guevara and Halvorsen were sued

many times based on similarly themed allegations and patterns, including many allegations of

fabricating evidence and abusing people, yet none of their supervisors acted as if they noticed a

pattern or showed concern for such behavior. Ex. 11 (Finnell Report) at 69-80.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("received multiple," "similarly themed allegations and patterns," "many times," "many allegations of fabricating evidence and abusing people," "yet none," "acted as if they noticed a pattern," "showed concern") and lacks foundation.** *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at **329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Finally, Defendant City further objects to this paragraph as it fails to cite to "specific evidentiary material," and includes multiple allegations, in violation of L.R. 56.1(d).** *See Malec*, **191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response").**

**Subject to and without waiving these objections, Defendant City denies that the record citation supports the assertions set forth in this paragraph.**

69.     Mr. Finnell further opined that the City's delayed disciplinary practices meant that

the Defendants had no reason to fear that they would ever be disciplined for misconduct. Ex. 11

(Finnell Report) at 69-70.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by admissible evidence, is argumentative ("further opined," "delayed disciplinary practices," "no reason to fear," "would ever") and lacks foundation.** *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that **expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Finally, Defendant City also objects to the extent that this paragraph states a legal conclusion rather than a material fact ("the City's delayed disciplinary practices meant that the Defendants had no reason to fear that they would ever be disciplined for misconduct.")** *See Tel-Lock, Inc. v. Thomson Consumer Electronics*, **2005 WL 741930, at \*2 (N.D. Ill Mar. 30 2005). (The court struck portions of party's 56.1 that contained legal conclusions).**

**Subject to and without waiving these objections, Defendant City denies that the record citation supports the assertions set forth in the paragraph.**

### Widespread Lack of Training, Supervision, or Monitoring on Documentation Procedures and Identification Procedures

*Documentation*

70. Hickey testified that he had no knowledge whether, after the implementation of

S.O. 83-1, there was anything done to survey or audit the implementation of the policy. Ex. 33

(Hickey *Fields* Dep.) at 43:1-4.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998, these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by fifteen years. S.O. 86-3, described in this paragraph, was replaced by Chapter 18 of the Detective Division Standard Operating Procedures in 1988. *See* Dkt. 730 at ¶26. Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record. *See Malec*, 191 F.R.D. at 583.**

**Subject to and without waiving these objections, Defendant City denies. James Hickey testified as a 30(b)(6) witness in *Fields v. City of Chicago,* and was designated to discuss "the documentation and preservation of information learned during a homicide investigation." (*See* Def's Ex. D, 30(b)(6) Notice from *Fields v. City of Chicago*). He was not disclosed to provide 30(b)(6) testimony addressing surveys or audits after the implementation of S.O. 83-1. *Id.* Denying further, James Hickey testified in his 2014 deposition in *Rivera v. Guevara, et. al.,* that in 1983 after the promulgation of 83-1, he did not know of a special audit procedure that was implemented, but "for every directive and even for things that we don't have directives, it's a function of a supervisor, it's a responsibility ever[y] supervisors to make sure the employees, the members of the Chicago Police Department are doing their job and following the department directives." (Dkt. 751-3, Ex. 3, Hickey Dep in *Rivera* (Part II) at 244:5-19). Although James Hickey testified that as a supervisor of the subpoena services unit that he did not direct a special audit, retired Commander Philip Cline testified that he conducted multiple audits of the files when he was a Lieutenant at Area 2. (Dkt. 751-3, Ex. 3 at 178:4-13; Dkt. 766-3, Ex. LLLL, Deposition of Philip Cline at 42:24-43:6). Further answering, Commander Cline testified that "a supervisor would go through the file and make sure that the – the proper reports were in there, that the GPRs were approved, everything that – to get these files ready for court or continue the investigation of an unsolved crime." These audits were both "regular check-ins to make sure the files were as they were supposed to be *and* were specific to assessing compliance with the policy change. (*Id.* at 43:16-20).**

71. Hickey himself admitted that he learned that unit detectives were reverting back

to keeping their own files to take out on investigations after Special Order 83-1. Ex. 34 (Hickey

*Kluppelberg* Dep,) at 321, 327

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998, these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by fifteen years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record, and it is argumentative ("reverting back"). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (*aff'd*, 926 F.3d 409 (7th Cir. 2019)) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.")**

**Subject to and without waiving these objections, denied. Specifically, Hickey testified that after 83-1 was implemented, department members were aware that "sometimes some detectives [were] not signing out the investigative files <u>and</u> [had] personal copies of some documents." (Dkt. 765-34 Ex. 34, Hickey Dep at 327:4-7) (emphasis added). He further testified that supervisors were responsible for making sure that the information amassed by the detectives, including their own copies, was getting turned in and made part of the investigative file, and that he believed that it was happening. (*Id.* at 328:3-15).**

**Finally, retired Commander Philip Cline testified that he conducted multiple audits of the files when he was a Lieutenant at Area 2. (Dkt. 766-3, Ex. LLLL, Deposition of Philip Cline at 42:24-43:6). Further answering, Commander Cline testified that "a supervisor would go through the file and make sure that the – the proper reports were in there, that the GPRs were approved, everything that – to get these files ready for court or continue the investigation of an unsolved crime." These audits were both "regular check-ins to make sure the files were as they were supposed to be *and* were specific to assessing compliance with the policy change. (*Id.* at 43:16-20).**

72. The only training that happened after the 1983 changes was a "three-hour training" on note taking. Ex. 35 (Winstrom Dep.) at 146:25-147:4. He confirmed that the training did not cover supplementary reports, did not provide guidance to detectives about what they should consider relevant or not relevant information, and did not include instruction to detectives that they should document everything they learned during the investigation. Ex. 35 (Winstrom Dep.) at 148:14-149.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998, these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to**

the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by fifteen years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record, and it is argumentative ("only training," "did not cover," "did not provide," and "did not include" "should document everything"). *See Malec*, 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (*aff'd*, 926 F.3d 409 (7th Cir. 2019)) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions").

Subject to and without waiving these objections, denied. In 2021, Commander Winstrom testified, as a 30(b)(6) witness in this matter where he was designated to discuss the City's policies, practices, training and customs in effect from 1986-1998 related to the documentation and preservation of information learned during a homicide investigation, including the storage, location and movement of homicide files and responding to subpoenas. (Dkt. 765-35, Ex. 35 at 159:5-17; Def's Ex. E Notice of Rule 30(b)(6) Deposition Notice). Commander Winstrom testified consistently that Detectives were required to include relevant information in supplementary reports on a case-by-case basis by the detectives working the case, and he disagreed that S.O. 86-3 did not provide specific guidance about what information was to be included in supplementary reports, specifically pointing to Section (C)(1) of S.O. 86-3. (Dkt. 765-35, Ex. 35 at 64-67, 98:13-24). He further testified that Plaintiffs' description of the policy, as described in this paragraph, was a "cynical way of changing what [he] said[,]" and reiterated that detectives were required to include relevant information." *Id.* at 63.

Answering further, S.O. 83-1, described in this paragraph, expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", pre-dates the criminal investigation and prosecution of Plaintiffs by 13 years and was replaced by Detective Division Special Order 83-2. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 750 at 8-9; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20, 26-27 (discussing S.O. 83-1 and S.O. 83-2, issued to build upon S.O. 83-1). Finally, the record citation does not support the assertion that, "[t]he only training that happened after the 1983 changes was a 'three-hour training' on note taking." Answering further, Winstrom testified that detectives were trained on the SOP changes, and more specifically that they attended a 3-hour in-service training after the implementation of the 1982-83 directives, and after the 1986 directives were implemented, new detectives received training in their "service detective training," and if the police officer was already a detective when S.O. 86-3 was issued, they received a copy of S.O. 86-3, and were given "roll-call" training by their Sergent for five or seven straight days. (Dkt. 765-35, Ex. 35, at 151:3-152:24). Answering further, the assertion that the "[t]he only training that happened after the 1983 changes as a 'three-hour training' on note taking" is directly contradicted by Plaintiffs' assertion in paragraph 74 below.

73. Tiderington concluded that the one three-hour training session on the first iteration of the policy change, where CPD senior leaders already knew detectives were opposed to the change, was wholly insufficient to overcome a decades-long practice. Ex. 3 (Tiderington Report) at 54.

**RESPONSE: To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998, these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The events described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by fifteen years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence and is argumentative ("already knew," "were opposed," "wholly insufficient"). *See Malec*, 191 F.R.D. at 583; *Sommerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Specifically, Plaintiffs' reliance on their expert's report as support for this "fact." Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed for the first time on April 8, 2024 (Dkt. 685-9) with Plaintiffs' motion for partial summary judgment which was long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 765-3, PSOAF, Ex. 3, Declaration of Thomas Tiderington signed 4/5/24). Finally, Defendant City objects to the extent that this paragraph states legal conclusions ("CPD senior leaders already knew," "wholly insufficient," "decades-long practice,") rather than material facts. *See Tel-Lock, Inc. v. Thomson Consumer Electronics,* 2005 WL 741930, at \*2 (N.D. Ill Mar. 30 2005).**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. The City admits that Plaintiffs have retained Thomas Tiderington and that his expert makes "findings" in his report, but denies that Tiderington has the proper foundation to support these conclusions. (*See* Defendant City of Chicago's *Daubert* Motion to Bar Opinions of Thomas J. Tiderington, at Dkt. 759; Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 730 at ¶¶39-119). Answering further, Tiderington's report references only his understanding of the training regarding S.O 83-1 and does not address any training after the implementation of the later directives which applied at the time of Plaintiffs' arrests.**

74. 30(b)(6) representative Winstrom confirmed that detectives who received that training would not have received that kind of in-service training on the policies again. Ex. 35 (Winstrom Dep.) at 151:11-16. In fact, he testified that he was not aware of any in-service training

like that occurring after S.O. 86-3 was issued. Ex. 35 (Winstrom Dep.) at 151:20-24. The only further training that did occur for the revised Special Orders, for those detectives who received the 3-hour training, was receiving the revised Order and having any changes in the order read aloud for five or seven straight days. *Id.* at 152:1-24. Yet S.O 86-3 was substantively identical to its previous iterations except for the addition of an auditing provision. Compare Ex. 36 (Special Order 83-2) with; Ex. 37 (Special Order 86-3); Ex. 38 (Hickey Dep. in *Rivera*) at 100:9-101:12, 227, 245-47, 249.

**RESPONSE:  To the extent Plaintiffs are relying on these facts to establish the City's policies at the time of Plaintiffs' arrests in 1998 these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).  *See Outlaw,* 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")  The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by twelve years. Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record and is argumentative ("[t]he only further training that did occur").  *See Malec,* 191 F.R.D. at 583; *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (*aff'd,* 926 F.3d 409 (7th Cir. 2019)) (statements of fact should not contain legal argument and responses to the opposing party's statement of facts are not the place for "purely argumentative details" or "legal conclusions.")**

**Subject to and without waiving these objections, admitted in part and denied in part. Defendant City admits Winstrom testified that detectives were trained on the SOP changes, and more specifically that they attended a 3-hour in-service training after the implementation of the 1982-83 directives, and after the implementation of the 1986 directives, new detectives received training in their "service detective training," and if the police officer was already a detective when S.O. 86-3 was issued, they received a copy of S.O. 86-3, and were given "roll-call" training by their Sergent for five or seven straight days. (Dkt. 765-35, Ex. 35, Winstrom Dep, at 151:3-152:24).  The City denies that the training was limited to the order being "read aloud."**

**Finally, Defendant City admits that Special Order 86-3 replaced S.O. 83-2 in May 1986 but denies that the two were "substantively identical."  (*Compare,* Dkt. 765-36, Ex. 36 *with* Dkt. 769-37, Ex. 37).  Specifically, Special Order 86-3 includes additional language in Section IV: Responsibilities and Procedures, which acknowledged that homicide investigations, by their nature, generated a significant amount of documentation, and that in order to further ensure the integrity and completeness of the files, certain steps would be taken, as well as additional language related to the Homicide File Retention Schedule, which required that in cleared/closed cases, upon a disposition of guilty, the Investigative File Case folder would be**

sent to the Records Division for "post-conviction" retention.  *Id.*; *see also* Def. City's 56.1 SOF, Dkt. 730, at ¶¶ 19-20.

75.     Hickey described the City's process of disclosing police records to prosecutors and criminal defendants as an "art form" of informal, on-the-job training, and could not think of any directives written to ensure proper disclosure of necessary information, including exculpatory information, in response to a subpoena request. Ex. 38 (Hickey Dep. in *Rivera*) at 160:7-22, 161:10-163:24. Hickey confirmed there was no training on this after the 1983, three-hour training on S.O. 83-1. Ex. 38 (Hickey Dep. in *Rivera*) at 185-87.

**RESPONSE:  Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).  *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence, lacks foundation, and is argumentative ("could not think of," "confirmed," "no training on this").  *See Malec*, 191 F.R.D. at 583.**

**The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over 13 years and describes events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 750 at p. 8-9; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-16.**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part.  The City admits that there was not a specific directive that governed the Subpoena Service Unit within CPD, and that James Hickey testified that when he had command over the unit in the early 2000s, the process of responding to subpoenas was "both technical and an art form." (Dkt. 751-3, Ex. 3 at 161:18-162:12).  Specifically, James Hickey testified that the "personnel assigned to the subpoena processing unit, received on-the-job training.  For the time period in question certainly the topic of investigative files had become common – common terminology." *Id.*  He further testified that the staff at the Subpoena Services Unit had a "working relationship[] with the file clerks in all the units" and also "kept a record of the place or units" that requests were being sent to.  (Dkt. 765-34, Ex. 34 Hickey Dep in *Kluppelberg* at 362:8-20).  Answering further, the City denies that the record citation**

supports that, "Hickey confirmed there was no training on this after the 1983, three-hour training on S.O. 83-1."

76. Winstrom admitted that subpoena clerks would simply ready the subpoena and send a request for documents to whichever units they thought might have documents, and that they were not provided with any policies, directives, checklists, guidelines or training materials to guide their decision about where to obtain documents, nor were they given any forms or lists that identified all the repositories in which documents related to a homicide investigation might be found. Ex. 35 (Winstrom Dep. in *Reyes*) at 189, 192-94; *see also* Ex. 3 (Tiderington Report) at 53 (concluding that there were no checklists, procedures, or any other guidelines or guidance to assist subpoena responders in making sure they were requesting material from all the right repositories, or to check on the back end whether they got everything they should, or even formal training to set the proper expectations and practice).

**RESPONSE:  Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).  *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")  The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by 13 years.**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence, lacks foundation, and is argumentative.  *See Malec*, 191 F.R.D. at 583; *see also Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  *Sommerfield*, 254 F.R.D. at 329.**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record or admissible evidence, lacks foundation, and is argumentative ("simply," "whichever units they thought might," "whether they got everything they should," and "or even").  *See Malec*, 191 F.R.D. at 583; *see also Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).  *Sommerfield*, 254 F.R.D. at 329.**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part.  The City admits that the sworn and civilian personnel who were supervised by one**

or two Sergeants who served as subpoena clerks in the subpoena service unit would decide where to request documents based on the text of the subpoena and that there was no written policy documents for responding to subpoenas. The City denies that the record citation supports the assertion that subpoena clerks were not provided with any directives, checklists, guidelines or training materials about where to obtain documents, nor were they given any forms or lists that identified all the repositories in which documents related to a homicide investigation might be found, as Winstrom's testimony was that he was not aware of these things, not that they did not exist. Answering further, Commander Winstrom testified that subpoena clerks also received a general classification report to help them determine what documents to get and a department organization command which indexed every unit in the police department. (Dkt. 765-35, Ex. 35 at 188:8-189:4, 191:9-13, 193:3-11).

Answering further, Winstrom testified that the process once a member of the subpoena unit received a subpoena would be for "the individual to read the subpoena and [] make a determination by the contents of the subpoena of where the subpoena should be delivered … to obtain the records needed." (Dkt. 765-35, Ex. 35 at 189:8-12). Subpoena clerks also had the resources of a sergeant to ask for directions when they were confused or unable to understand a subpoena request. (Dkt. 751-3, Ex. 3 at 163:7-9).

77. 30(b)(6) representative Winstrom testified that he was not aware of any auditing done to ensure that the investigative file was getting to the criminal justice system. Ex. 35 (Winstrom Dep. in *Reyes*) at 208:20-209:2. He testified that he was not aware of an inspection where a court inspection group ever randomly checked a file to ensure that a subpoena was receiving all of the documents of the investigative file. *Id.* at 209:3-9. He testified that he was not aware of CPD conducting any audit or inspection to ensure that all documents related to homicide investigations were being produced in response to subpoenas for all homicide files, or that all documents that exist in different places within CPD were being gathered and produced in criminal investigations. *Id.* at 209:10-22.

RESPONSE: Defendant City objects to this paragraph as it is not material and does not support denying Defendant City's Motion for Summary Judgment, and therefore, does not comply with Local Rule 56.1(a)(2). *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.") The policies described in this paragraph pre-date the criminal investigation and prosecution of Plaintiffs by over 13 years and describes events that pre-date the issuance of S.O. 83-1 which expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved,

but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]", as well as subsequent Special Orders and Standard Operating Procedures. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 750 at p. 8-9; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-16.

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and because it is argumentative ("randomly checked," "to ensure that all documents related to," "all documents that exist in different places"). *See Malec*, 191 F.R.D. at 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response").

Subject to and without waiving these objections, Defendant City admits in part and denies in part. Commander Winstrom testified, as a 30(b)(6) witness in this matter where he was designated to discuss the City's policies, practices, training and customs in effect from 1986-1998 related, in part, to responding to subpoenas. (Dkt. 765-35, Ex. 35 at 159:5-17, 185:13-186:17; Def's Ex.E, *Solache/Reyes* Rule 30(b)(6) Deposition Notice). Defendant City admits Commander Winstrom testified he was not aware of whether a court inspection group randomly checked a file to ensure that a subpoena was receiving all of the documents of the investigative file, and that he was not aware of CPD conducting any audit or inspection to ensure that all documents related to homicide investigations were being produced in response to subpoenas for all homicide files, or that all documents that exist in different places within CPD were being gathered and produced in criminal investigations.

Answering further, Winstrom testified that he was aware that CPD had an inspection division, or a court inspector but was not aware of the inspection division conducting any audits of subpoena compliance. (Dkt. 765-35, Ex. 35 at 208:212-209:2). Commander Winstrom also testified that CPD's subpoena compliance "is a self-regulating system…You have thousands and thousands of cases going out every year that get in the hands of prosecutors and defense attorneys. So it's self-regulating in a way that if something is missing, it could be easily discovered to be brought to [CPD's] attention." (Dkt. 765-35, Ex. 35 at 207:20-208:7).

78. Hickey and Winstrom admit, and Tiderington confirms through review of that testimony, that there was no discipline of detectives that did not comply with the Special Orders. Ex. 34 (Hickey Dep. in *Kluppelberg)* 213:8-16; Ex. 38 (Hickey Dep. in *Rivera*) at 187:6-10; Ex. 35 (Winstrom Dep. in *Reyes*) at 209-210; Ex. 3 (Tiderington Report) at 55. Further, Foster stated that no Special Orders in the Detective Division would apply to gang crime specialists. Ex. 28 (Foster Dep.) at 99:7-25.

RESPONSE: Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment, nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2). *See Outlaw*,

259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) because it is not supported by the record (none of the cited record supports that Tiderington confirmed Hickey and Winstrom's testimony). *See Malec*, 191 F.R.D. at 583. Defendant City also objects to this paragraph as it is not supported by admissible evidence. *See Somerfield*, 254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Tiderington's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because his declaration was filed for the first time on April 8, 2024 (Dkt. 685-9) with Plaintiffs' motion for partial summary judgment which was long after Plaintiffs' 26(a)(2) disclosures were due and Tiderington was deposed. (Dkt. 765-3, PSOAF, Ex. 3, Declaration of Thomas Tiderington signed 4/5/24).

Subject to and without waiving this objection, denied. Defendant City states that the policies related to investigative files, and the training that stemmed from those policies, applied to all within the Bureau of Investigative Services. (Dkt. 751-3, Ex. 3 at 54:22-55:9). However, members of the Chicago Police Department who were gang crimes specialists, were part of the Patrol Division, and were therefore subject to Patrol Division orders. Regardless, there are no gang crime specialists involved in the Soto murder investigation. Answering further and for clarification, S.O. 83-1 expressly mandated that "detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any materials that may tend to show his possible innocence or aid in his defense is preserved [ ]",  pre-dates the criminal investigation and prosecution of Plaintiff by 13 years and was replaced by Detective Division Special Order 83-2. *See* City's Memorandum of Law in Support of Summary Judgment, Dkt. 750 at 8-9; City's 56.1(a)(3) SOF, Dkt. 730 at ¶¶ 15-20 (discussing S.O. 83-1 and S.O. 83-2, issued to build upon S.O. 83-1), 26-27. Further, Special Order 83-1 provided "guidelines for the proper retention of official Department reports, notes, memoranda and miscellaneous documents of potential evidentiary value accumulated during the course of a particular violent crime field investigation." (Dkt. 751-7, Ex. 7, S.O. 83-1 at § II A. "Purpose"; *see also* Def. City's 56.1(a)(3) SOF, Dkt. 730, at ¶¶ 15-19 (discussing S.O. 83-1 and S.O. 83-2, issued to build upon S.O. 83-1)).

Defendant City denies that James Hickey and Commander Winstrom "admitted" that there was no discipline of detectives that did not comply with the special orders, as it is not supported by the records cited, as there is no discussion of discipline at all. Further answering, when James Hickey was asked about discipline, he was asked specifically if he was "aware" of anyone in the department being disciplined for "negligence or other failure to provide responsive documents" to which he replied he was not aware, not that none occurred. (Dkt. 751-3, Ex. 3 at 187:6-10).

79.     When asked whether detectives were trained that they should document eyewitness

descriptions of suspects, or whether they could choose not to do that, Winstrom testified "there[]

[were] times that you would not document that." Ex. 35 (Winstrom Dep. in *Reyes*) at 80:12-20.

**RESPONSE:   Defendant City objects to this paragraph as it violates L.R. 56.1(d)(1) and (2) because it does not assert any "material" facts that warrant denial of the City's motion for summary judgment.  *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Subject to and without waiving these objections, denied.  Commander Winstrom testified that documentation of eyewitness descriptions of suspects was done on a "case by case basis[]" and that "[g]enerally, that information is very important.  However, there are some times that the information is not so important, or there's times that you would not document that."  (Dkt. 765-35, Ex. 35 at 80:12-20).**

**In further answering, Commander Winstrom consistently testified that that Detectives were required to include relevant information in supplementary reports, and whether information was determined to be relevant was done on a case-by-case basis by the detectives working the case.  (Dkt. 765-35, Ex. 35 at 64-67).**

80.     30(b)(6) representative Winstrom testified that detectives were "not necessarily"

trained that any field interviews of a potential suspect should be documented. Ex. 35 (Winstrom

Dep.in *Reyes*) at 84:21-85:5.

**RESPONSE:   Defendant City objects to this paragraph as it violates L.R. 56.1(d)(1) and (2) because it does not assert any "material" facts that warrant denial of the City's motion for summary judgment.  *See Outlaw*, 259 F.3d at 837; s*ee also Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Subject to and without waiving these objections, denied.  In response to the question, "And were detectives trained that any interviews in the field of a potential suspect should be documented, generally speaking?" Commander Winstrom testified, "now you're talking about potential suspects.  So I would say not necessarily, because unless you've got the murder solved, everyone's a potential suspect and what you're doing is you're seeking to document relevant information."  (Dkt. 765-35, Ex. 35 at 84:21-85:5).  Further answering, Commander Winstrom consistently testified that detectives were "required to document relevant information and they're very well trained at this point [being a detective] to determine what is or is not relevant."  (*Id*. at 85:19-86:2).**

81.     Gang specialists were not provided any training relative to their participation in homicide investigations in general. Ex. 28 (Foster Dep. in *Sierra*) at 166:2-14, 168:1-8, 169:18-25.

**RESPONSE:  Defendant City objects to this paragraph as these facts are not material to the City's motion for summary judgment (there were no gang specialists involved in the case), nor do they warrant denial of the City's motion for summary judgment, and therefore does not comply with Local Rule 56.1(a)(2).  *See Outlaw*, 259 F.3d at 837; *see also Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Subject to and without waiving these objections, denied.  This paragraph is not supported by the record cited, specifically that Gang specialists were not provided any training relative to their participation in homicide investigations.  Rather, the testimony cited is limited to a discussion on general training on the performance of "gang book identification procedures," and the use of gang books in general.**

### Notice of Guevara's Bad Acts

82.     Since at least 1982, the City had notice of the pattern of illegal misconduct of Detective Guevara, who has been involved in physical assaults and coercive manipulation of witnesses, suspects, victims, and defendants, primarily in the process of obtaining false statements, across multiple decades with impunity. See Ex. 39 (Testimony, Medical Records, and OPS Complaint of Annie Turner) (in 1982, Guevara physically and verbally assaulting Annie Turner and receiving no discipline after complaint); Ex. 40 (OPS Complaint of Almarie Lloyd, Testimony of Almarie & Job Lloyd, *Hunt v. Jaglowski*, 85 C 1976) (Guevara conducting warrantless search of Almarie Lloyd's locked home and receiving no discipline after complaint); *See* Ex. 41 (Affidavit of Leshurn Hunt) (explaining that Guevara and others beat Leshurn Hunt until he confessed to murder); Ex. 42 (Trial Transcript of *Hunt v. Jaglowski*, 85 C 1976) at AR-L 544934, 544946, 545016-19; Ex. 129 (Letter from Leshurn Hunt to Eugene Hudson, Dated 2/28/86); Ex. 43 (Testimony of Graciela Flores & Anna Flores, from Trial Transcript of *Hunt v. Jaglowski*, 85 C 1976) at AR-L 544684-544714 (Guevara physically assaulted Graciela Flores); Ex. 44 (Affidavit

of Reynaldo Munoz) (Guevara using threats and violence to attempt to coerce false identification from Munoz in 1985); Ex. 45 (OPS Complaint of Rafael Garcia, CR #152902) (in 1986, Guevara beating Rafael Garcia, denying doing so, and then receiving only two days' suspension after disciplinary body found Guevara had lied about incident and given false information to investigators); Ex. 46 (Testimony of Daniel Pena, Armador Rivera, and Jamie Velez in *People v. Pena*, 86 CR 1458) (in 1986, Guevara coercing confession from Daniel Pena by beating him); Ex. 47 (OPS Complaint and Testimony of Melvin Warren, *Hunt v. Jaglowski*, 85 C 1976) (in 1986, Guevara calling Melvin Warren a "n***** dog" and beating him, and only receiving a reprimand for calling a citizen a "n*****" instead of the City's initial sustainment of Warren's allegations and five-day recommended suspension); Ex. 48 (in 1989, Guevara coercing false confession from Victor Vera); Ex. 49 (Affidavit of Virgilio Muniz) (in 1989, Guevara coercing Virgilio Muniz to falsely implicate Manuel Rivera); Ex. 50 (Affidavit of Virgilio Calderon Muniz) (in 1989, Guevara threatening Virgilio Calderon Muniz (unrelated to the Virgilio Muniz) into falsely identifying Victor Vera); Ex. 51 (Testimony of Wilfredo Rosario & Appellate Court Opinion, *People v. Arcos*, 91 CR 743) two days' suspension after disciplinary body found Guevara had lied about incident and given false information to investigators); Ex. 46(Testimony of Daniel Pena, Armador Rivera, and Jamie Velez in*People v.Pena*, 86 CR 1458) (in 1986, Guevara coercing confession from DanielPena by beating him); Ex. 47(OPS Complaint and Testimony of Melvin Warren, *Hunt v. Jaglowski*, 85 C 1976) (in 1986, Guevara calling Melvin Warren a "n***** dog" and beating him, and only receiving a reprimand for calling a citizen a "n*****" instead of the City's initial sustainment of Warren's allegations and five-day recommended suspension); Ex.48(in 1989, Guevara coercing false confession from Victor Vera); Ex. 49(Affidavit of Virgilio Muniz) (in1989, Guevara coercing Virgilio Muniz to falsely implicate Manuel Rivera); Ex. 50(Affidavit of Virgilio

Calderon Muniz) (in 1989, Guevara threatening Virgilio Calderon Muniz (unrelated to the Virgilio Muniz) into falsely identifying Victor Vera); Ex.51(Testimony of Wilfredo Rosario & Appellate Court Opinion, *People v. Arcos*, 91 CR 743)[1] (in 1991, Guevara coercing Wilfredo Rosario into falsely identifying Xavier Arcos);. Ex. 52(Testimony of William Dorsch, *People v.Serrano & Montanez*, 93 CR 1873) at JR-L 076819, JR-L 076824-48 (Dorsch testifying to Guevara bringing in two juveniles for a photo array, telling first juvenile that one suspect's photo was "him," and testifying that the juveniles admitted they had been paid to falsely claim that the suspect was the shooter); Ex. 52 at JR-L 076888-90, JR-L 076906-09, JR-L 076928-32 (testifying that Dorsch's supervisors in the CPD knew about Guevara's misconduct in the case with the juveniles, but promoted Guevara instead of disciplining him); Ex. 53(Guevara Deposition from Jacquesv. Rivera et al. 12-cv-004428) at 402-15 (Guevara taking the Fifth in regard to all allegations regarding Bill Dorsch's accusations); Ex. 54 (Affidavit of David Rivera) In 1991, Guevara coercing David Rivera falsely confessing to murder);*See* Ex. 55 (Affidavit of Daniel Rodriguez) (In 1991, Detective Guevara coercing false confession from Daniel Rodriguez); Ex. 56 (Testimony of David Velazquez in People v. Velazquez, 91 CR 13938) (In 1991, Guevara physically coercing sixteen year-old David Velazquez into falsely identifying Daniel Rodriguez); Ex. 57 (Suppression Hearing Testimony of Eleizar Cruzado, People v. Cruzado, 93 CR 24896) (In 1993, Guevara trying to coerce 15 year-old Eleizar Cruzado into implicating himself in a murder); Ex. 58 (Affidavit of Adolfo Frias Munoz) (In 1993, Guevara using physical force and threats to coerce a false confession from Adolfo Frias-Munoz); Ex. 59 (Affidavit of Adrian Duta) (In 1994, Guevara used violence to coerce a confession from Adrian Duta); Ex. 60 (Deposition of Gloria Ortiz Bordoy, Johnson v. Guevara, 05 C 1042) (in 1995, Guevara and others coerced Gloria Ortiz Bordoy into falsely implicating Santos Flores); Ex. 61 (Affidavit of Edwin Davila) (in 1995, Guevara arresting

Edwin Davila, chaining him to the wall of interrogation room, telling Davila that Guevara was going to frame him for murder, and forcing Davila to participate in a lineup in which two witnesses identified Davila as the perpetrator, despite that each of those witnesses previously told the police that they had not been able to see the shooter); Ex. 62 (Deposition of Evelyn Diaz, Johnson v. Guevara, 05 C 1042) (in 1995, Guevara coercing Evelyn Diaz into falsely identifying Luis Serrano); Ex. 63 (Testimony of Luis Figueroa, People v. Diaz, 95 CR 610901 & Supplemental Police Report) (In 1995, Guevara telling Luis Figueroa to falsely identify Angel Diaz); Ex. 64 (Affidavit of Rodolfo Zaragoza) (in 1995, Guevara coerced Rodolfo Zaragoza into falsely identifying Ricardo Rodriguez); Ex. 65 (Testimony of Robert Ruiz, People v. Santiago & Santiago, 97 CR 20973) (in 1997, Guevara coercing Robert Ruiz into falsely identifying Freddy and Concepcion Santiago as the murderers of Guevara's nephew); Ex. 66 (Post-Conviction Petition in People v. Gomez, 97 CR 18961) (In 1997, Guevara falsely reporting that witness Ruth Antonetty implicated Ariel Gomez in a murder, when she had not); Ex. 67 (Affidavit of Jed Stone) (In 1997, Guevara coercing false confession from Voytek Dembski by beating him while chained to a wall in a locked interrogation room).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative (that the "City had notice").** *See Malec v. Sanford***, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response");** *see also Uncommon, LLC v. Spigen, Inc.,* **305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument),** *aff'd,* **926 F.3d 409 (7th Cir. 2019). Specifically, this "fact" spans 3.5 full pages and contains 29 separate "facts" related to 29 separate individuals, and therefore contains 29 separate purported facts.**

**Defendant City further objects to the extent this paragraph is not supported by the record cited or admissible evidence.** *See Brown v. Advocate S. Suburban Hosp.,* **700 F.3d 1101, 1105 (7th Cir. 2012).**

**Subject to and without waiving these objections, the City denies that the record citations support the assertions.**

83.     Detective Guevara has refused to testify about his interactions with: Anna Flores, Ex. 68 (Testimony of Reynaldo Guevara in People v. Serrano & Montanez, 93 CR 18173) at JR-L 077143, JR-L 077171-72; Ex. 69 (Testimony of Reynaldo Guevara in People v. Arturo Reyes & Gabriel Solache, 98 CR 12440) at JR-L 049883-85; Graciela Flores, Ex. 68 at JR-L 077143, JR-L 077171-72, Ex. 69 at JR-L 049883-84; David Velazquez, Ex. 68 at JR-L 077143, JR-L 077168-71; Ex. 69 at JR-L 049873-75; Efrain Sanchez, Ex. 68 at JR-L 077144, JR-L 077172-73; Julio Sanchez, Ex. 68 at JR-L 077144, JR-L 077173-74; Adolfo Frias Munoz, Ex. 68 at JR-L 077144-45, JR-L 077174-75; Ex. 69 at JR-L 049869-70; Jose Melendez, Ex. 68 at JR-L 077145, JR-L 077177-79; Ex. 69 at JR-L 049886, JR-L 049888, Gabriel Solache, Ex. 68 at JR-L 077145-46; Ex. 69 at JR-L 049861-64, Virgilio Muniz, Ex. 68 at JR-L 077147, JR-L 077180; Luis Figueroa, Ex. 68 at JR-L 077176; Ex. 69 at JR-L 049890-92; Angel Diaz, Ex. 68 at JR-L 077176-77; Ex. 69 at JR-L 049891-92, JR-L 049894; Wilfredo Rosario, Ex. 68 at JR-L 077181-82; Xavier Arcos, Ex. 68 at JR-L 077182; Ex. 69 at JR-L 049880-81; Gloria Ortiz Bordoy, Ex. 68 at JR-L 077182-83; Robert Ruiz, Ex. 68 at JR-L 077184, Ex. 69 at JR-L 049877-79; Leshurn Hunt, Ex. 69 at JR-L 049867-68; Adrian Duta, Ex. 69 at JR-L 049868-69; Voytek Dembski, Ex. 69 at JR-L 049871-72; Daniel Pena, Ex. 69 at JR-L 049875-77; Annie Turner, Ex. 69 at JR-L 049881-82; Thomas Sierra, Ex. 69 at JR-L 049887-88; Juan Johnson, Jacques Rivera, Orlando Lopez, Jose Montanez, Armando Serrano, Timothy Rankins, Jorge Pacheco, Robert Almodovar, William Negron, Jose Maysonet, Angel Rodriguez, Santos Flores, Henry Johnson, Ariel Gomez, Ricardo Rodriguez, Robert Bouto, Carl Richmond, Rey Lozada, Rosendo Ochoa, Hugo Rodriguez, Jacqueline Grande, Sam Perez, Salvador Ortiz, David Colon, Luis Serrano, Evelyn Diaz, Freddy and Concepcion Santiago, Ricardo Rodriguez, Aurelio Martinez, Demetrius Johnson, Gamalier Rivera, Antonio Diaz, Richardini Lopez, Maria Diaz, Antonio McDowell, Marilyn Mulero, David Gecht, Richard

Kwil, Colleen Miller, Ruben Hernandez, Eruby Abrego, Ramon Torrez, Isidro Quinonez, Julio

Lugo, Bernard Turner, Melvin Warren, Rafael Garcia, Jossie Martinez, Semara Johnson, Juan and

Rosendo Hernandez, Edgar Perez, Ex. 70 (Guevara Dep. in Sierra) at 13-18, 29-65, 66-121, 139-

229; Francisco Vicente, Ex. 68 at JR-L 077138-43, JR-L 077148-62; Geraldo Iglesias, Ex. 68 at

JR-L 077141, JR-L 077185-86; see also Ex. 71 (Guevara's Resp. to Pl. Reyes First Set of Inter.)

at 1-6; Ex. 75 (Guevara's Resp. to Pl. Solache's First Set of Inter.) at 1-6.

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(a)(2) because it is not pertinent to the issues identified in the summary judgment motion. *See Outlaw*, 259 F.3d at 837; *see Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative (that Guevara "refused" to testify.) *See Malec v. Sanford*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"); *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019). Specifically, this "fact paragraph" contains 75 separate "facts" related to 75 separate individuals, and therefore contains 75 separate purported facts.**

**Defendant City further objects to the extent this paragraph is not supported by admissible evidence. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012).**

**Subject to and without waiving these objections, Defendant City admits that Defendant Guevara has asserted his Fifth Amendment privilege in response to questions about his interactions with each of the people (but for Rosendo Hernandez) listed in Paragraph 83.**

84.     Other reports and investigations gave the City notice of the pattern of illegal

misconduct of Detective Guevara:

a.      In 1996, Defendant Guevara was accused of physically striking his stepdaughter in the face. Defendant Guevara again denied all allegations. Although the Command Channel Review and IAD concurred in a sustained finding and recommended three-day discipline in February 1996, Defendant Guevara only served a one-day suspension, and no Rule 14 violation was added despite finding that Guevara provided false information. Ex. 11 (Finnell Report) at 66-67; Ex. 72 (CR No. 223928).

b.      In 1999, Defendant Guevara stating "fuck you" to Sergeant David Oravetz; engaged Sergeant Oravetz in an unjustified verbal altercation when Guevara threatened to kick Sergeant Oravetz's ass and pushed and poked Sergeant Oravetz in the chest; and failed to comply with a direct order to leave the district station—all when observed by several

on-duty members of CPD. Throughout the OPS investigation, Guevara still denied all allegations against him despite the presence of others and the statements supporting the allegations. The allegations were sustained. Yet, even after the disciplinary history described above and the allegations at hand, a Police Commander still recommended reducing his recommended 30-day discipline by ten days, "considering the circumstances and his complementary and disciplinary history." In 2000, Guevara's discipline was reduced to 20 days, and he was compensated for 10 days of back pay for the suspension he had already served. No Rule 14 violation was added or sustained, despite Guevara making false statements during the investigation. Ex. 11 (Finnell Report) at 66; Ex. 73 (CR No. 251502).

c.      In 2001, The FBI authored a 302-page report detailing the criminal activity of Chicago Police Officer Joseph Miedzianowski and his associates, including Detective Guevara, in the 1980s and 1990s. The report explains that Guevara would apprehend drug and gun dealers and then allow them to "buy their way out of trouble." Guevara also took bribes to alter the results of lineups. Guevara, using an attorney as a conduit, would also receive cash in exchange for the dismissal of murder cases he investigated. See Ex. 74 (FBI Report Dated June 23, 2001) at JR-L 02444-45. The report contained no indication that Guevara was questioned or that the IAD tried to find the people mentioned as having cases that were fixed by Guevara. Guevara has taken the Fifth in regard to all allegations regarding the topics covered in the report, as he has done in this case. Ex. 53 (Guevara Deposition in Rivera v. Guevara et al.,) at 418-26; see also Ex. 71 (Guevara's Resp. to Pl. Reyes' First Set of Inter.) at 1-6, Ex. 75 (Guevara's Resp. to Pl. Solache's First Set of Int.) at 1-6.

d.      Delgado Prompts Investigation: That same year, in 2001, a perjury investigation was initiated by State Representative William Delgado in response to complaints received from his constituents. Mr. Delgado alleged that Defendants Guevara and Halvorsen gave false testimony in 17 homicide cases ranging from 1984 to 1997, and requested that the State's Attorney's office also investigate the matter to determine possible misconduct on the part of the detectives. Ex. 76 (CR Delgado Investigation) at RFC-Sierra 020108-09, 020114. The CPD Internal Affairs Division interviewed Delgado, who related that the 17 defendants convicted primarily on the false testimonies of Guevara and Halvorsen stated that "we're tired of busting you on petty crime and we're gonna get you. We'll bust you for murder." Id. at RCD-Sierra 020113. Delgado stated that in at least one case it was impossible for Guevara to obtain a detailed statement from the defendant due to Guevara's poor Spanish. Id. Yet the State's Attorney's office closed its separate investigation without providing a report on the complaint, and without reviewing 3 of the 17 cases. Id. at RFC-Sierra 020117-18, 020120. However, based on the closure of the case by the State's Attorney's office (without actually seeing that report) and the alleged "fruitless" attempts to contact witnesses regarding the complaint, the CPD closed the case with a finding of "Not Sustained" in 2002. Id. at 020109.

**RESPONSE:   Defendant City objects to this paragraph as it violates L.R. 56.1(a)(2) because it is not pertinent to the issues identified in the summary judgment motion.  *See Outlaw*, 259 F.3d at 837; *see Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative ("gave the City notice" and a "pattern of illegal misconduct.") *See Malec v. Sanford*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"); *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019). Specifically, this purported "fact" includes four separate and distinct subcategories, each of which contain multiple allegations.

Defendant City further objects to the extent this paragraph is not supported by the record cited or admissible evidence. *See Brown v. Advocate S. Suburban Hosp.,* 700 F.3d 1101, 1105 (7th Cir. 2012); *see also Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403).

Subject to and without waiving these objections, Defendant City denies that the record citations support each of the assertions.

85. Despite notice of the misconduct, there continued a widespread failure to discipline, that resulted in wrongful convictions, including but not limited to the following:

a. *Jacques Rivera*: In 1988, Defendant Guevara caused 12-year-old Orlando Lopez to falsely identify Jacques Rivera as the person who shot Felix Valentin, and falsely claimed that the victim, Valentin, identified Jacques Rivera as his shooter before he died. Defendant Guevara reported to have obtained this identification at a time when the victim was in a medically induced coma, unresponsive to any stimuli, and laying in a bed that was in constant motion to prevent his lungs from filling with fluid and killing him. As a result of this misconduct, Rivera was convicted. In 2011, Rivera filed a post-conviction petition based on actual innocence and received an evidentiary hearing. In 2011, Lopez testified at an evidentiary hearing that he knew Rivera was the "wrong guy" when he made the identification. Ex. 77 (Rivera PC Hearing Tr. 5/23/11) at 58. As a result, Rivera received a new trial. Ultimately, the State's Attorney dropped all charges and Rivera was granted a certificate of innocence. After Jacques Rivera's exoneration, he brought suit against Defendant Guevara. A federal jury found that Guevara had violated Rivera's civil rights and awarded Rivera $17 million in damages, as well as $175,000 in punitive damages against Defendant Guevara, his partner Steve Gawrys, and his supervisor Ed Mingey. Ex. 78 (Rivera COI); Ex 79 (Order Granting Rivera New Trial), at 2; Ex. 80 (Rivera 6.12.18 Trial Tr.) at 1313:1-4; Ex. 81(Rivera Judgment).

b. *Juan Johnson:* In 1989, Detective Guevara framed Juan Johnson for murder by coercing Samuel Perez into falsely implicating Johnson. To accomplish this feat, Guevara put Perez inside his car, showed Perez a photo of Juan Johnson, and told Perez that he wanted Juan Johnson to take the blame for the murder. Unsurprisingly, Perez subsequently falsely identified Johnson as a murderer. Ex. 82 (Testimony of Samuel Perez, People v. Johnson, 89 CR 21806). Johnson filed his post-conviction petition in 1996, and appealed its denial in 2001—and in May 2002, the appellate court reversed the denial, vacated his convictions, and remanded for a new trial. At his new trial, Johnson was acquitted by a

jury. He sued Guevara in Johnson v. Guevara, 05-C-1042, eventually obtaining a verdict against him for $21 million. Ex. 83 (Jury Verdict in Johnson v. Guevara, 05 C 1042). Guevara has taken the Fifth in regard to all allegations regarding Juan Johnson. Ex. 53 (Guevara Deposition in Rivera) at 398-402.

c. **_Johnny Flores:_** Johnny Flores was wrongfully convicted of a 1989 murder that he did not commit, a conviction attributable to the misconduct of Defendant Guevara, who fabricated an identification to inculpate Mr. Flores. In 2022, the State asked the Court to vacate his convictions and subsequently dismissed all charges against him. Flores now seeks justice for the harm that Defendant Guevara and other officers caused him in a federal lawsuit. Ex. 84 (Johnny Flores, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6397); Ex. 85 (Amended Successive Post-Conviction Pet.) at 1-5; Ex. 53 (Guevara Dep. in Rivera) at 445; see also Flores v. Guevara, et al., Case No. 1:23-cv-01736.

d. **_Jaime Rios:_** In 1989, Rios was wrongfully arrested, charged, and convicted for a murder that he did not commit– a conviction that was ultimately dismissed after evidence was presented showing that a witness had been threatened by Defendant Guevara into implicating Rios. In 2022, the Cook County State's Attorney's Office agreed to dismiss his conviction; within days, he had obtained a certificate of innocence; and he has now filed a federal lawsuit against Defendant Guevara and the City of Chicago. Ex. 86 (Jaime Rios, Nat'l Exoneration Registry, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6387).

e. **_Jose Maysonet:_** In 1990, Defendant Guevara repeatedly beat Jose Maysonet until he confessed to a double homicide that rested solely on that coerced confession. In 2016, Maysonet's double murder conviction was vacated and he was granted a new trial. Over a year later, the Cook County State's Attorney dropped charges against Jose after five retired Chicago police officers, including Defendants Guevara, Halvorsen, and Mingey, invoked their fifth amendment right and refused to testify. Ex. 87 (Megan Crepeau, Prosecutors Drop Murder Charges after 5 Ex-Chicago Cops Plan to Take the 5th, Chicago Tribune (Nov. 15, 2017), https://www.chicagotribune.com/2017/11/15/prosecutors-drop-murder-charges-after-5-ex-chicago-cops-plan-to-take-the-5th/). Another victim of this same string of misconduct as Maysonet, Alfredo Gonzalez's conviction for the same homicide was vacated in 2022, and both Maysonet and Gonzalez have filed lawsuits against the City of Chicago and Guevara seeking justice for their wrongful convictions. Ex. 88 (Alfredo Gonzalez, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6382); see *Gonzalez v. Guevara, et al.,* Case No. 22-cv-6496.

f. **_Demetrius Johnson:_** In 1991, Defendant Guevara framed Demetrius Johnson for killing Edwin Fred. Guevara suppressed a lineup report documenting that a key eyewitness had identified a different person as the perpetrator in a lineup, and he fabricated a false police report to make it appear as if that identification had never occurred. In addition, to support his case against Johnson, Guevara manipulated and fabricated eyewitness identifications of Johnson as the shooter from witnesses Rosa Burgos, Ricardo Burgos, and Elba Burgos. See Ex. 89 (Dysart Report in Johnson) at 3-5. Johnson was granted a certificate of innocence and has filed a lawsuit against Guevara and other officers for their misconduct. Guevara has invoked the Fifth Amendment regarding Johnson. Id. at 4; see Johnson v. Guevara, et al., Case No. 1:20-cv-04156; Ex. 70 (Guevera Dep. in Sierra);

g.      **David Lugo (Colon):** In 1991, David Lugo was just 20 years old when he was framed for murder by Defendant Guevara and his fellow officers, when Defendant Guevara coerced Efrain and Julio Sanchez to pick David Colon out of a lineup, See Ex. 90 (Affidavits of Efrain & Julio Sanchez, Police Reports from People v. Colon, 93 CR 23750). In 2022, his conviction was vacated. He has since filed a lawsuit against Guevara and other officers for their misconduct. Ex. 91 (Order Vacating Conviction); see Lugo v. Guevara, et al.; Ex. 70 (Guevera Dep. in Sierra);

h.      **Marilyn Mulero:** Marilyn was wrongfully convicted of a 1992 double murder based on evidence fabricated by notoriously corrupt Chicago Police Defendants Guevara and Halvorsen. Marilyn was pressured to enter a guilty plea without a trial and was sentenced to death. In 2022, all charges against her were dropped. She has also filed suit against Defendants Guevara and Halvorsen. Guevara has invoked the Fifth Amendment regarding Mulero. Ex. 92 (Michelle Gallardo, Marilyn Mulero sues Chicago, disgraced CPD detectives for allegedly framing her for murder, ABC News (July 25, 2023), https://abc7chicago.com/marilyn-mulero-reynaldo-guevara-chicago-police-misconduct-sued/13547189/); Ex. 70 (Guevera Dep. in Sierra) at 181-186.

i.      **Madeline Mendoza:** Mendoza was arrested in 1992, and convicted in 1993, for a crime she did not commit, based on false statements obtained by Defendants Guevara and Halvorsen. In 2023, the prosecution agreed to vacate Mendoza's conviction and the case was dismissed. Ex. 93 (Madeline Mendoza, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6519).

j.      **Serrano & Montanez:** In 1993, Detective Guevara used physical violence and inducements to coerce Francisco Vicente into falsely testifying against Armando Serrano, Jorge Pacheco, and Jose Montanez. See Ex. 94 (Affidavit of Francisco Vicente) at ¶¶4-14. In that same investigation, Detective Guevara beat Timothy Rankins with a flashlight, threw him out of his chair, and placed him in a chokehold to induce a statement implicating Serrano and Montanez, causing Rankins to testify falsely against the men in the Grand Jury. Ex. 95 (Testimony of Timothy Rankins in People v. Serrano, 93 CR 18173) at JR-L 02899-912. In 2004, Jose Montanez filed a post-conviction petition based on the recantation affidavit of the State's key witness Francisco Vicente, who provided a detailed statement describing how his false testimony was given as a result of threats, intimidation and physical abuse by Det. Reynaldo Guevara. See Ex. 96 (Montanez PC Pet. 2004). Likewise, in 2005, Armando Serrano filed a post-conviction petition alleging actual innocence based on Vicente's affidavit and multitudes of other affidavits, transcripts, OPS complaints, and other supporting documentation, revealing that Guevara had engaged in a pattern and practice of coercing evidence through the use of threats, intimidation, lies, and physical abuse. Ex. 97 (Serrano PC Pet.) at 1-2. The City of Chicago then determined that Montanez and Serrano were wrongfully convicted. See Ex. 98 (Lassar Report Dated 3/3/15). In 2016, both men were exonerated and received certificates of innocence. Ex. 249 (Certificates of Innocence for Jose Montanez and Armando Serrano). Guevara has taken the Fifth in regard to all allegations regarding Vicente, Rankins, Montanez, and Serrano. Ex. 68 (Testimony of Reynaldo Guevara in People v. Serrano & Montanez, 93 CR 18173) at JR-L 077138-43, JR-L 077148-62.

k.      **Robert Bouto:** in 1993, Detective Guevara manipulated the results of the line-up in which Mr. Bouto was identified. Specifically, Detective Guevara allowed witnesses to see Mr. Bouto in the police station prior to the line-up, allowed them to view photographs Mr.

Bouto and confer with one another before the line-up, and threatened a witness that Guevara would "put a case" on him if he did not cooperate. See Ex. 99 (Affidavit of Rey Lozada) at ¶¶ 3-5, 6-11; Ex.100 (Affidavit of Carl Richmond) at ¶¶ 5, 7-9) (stating he was threatened to make an identification from Carl Richmond, with Det. Guevara saying that he could make Richmond's life very uncomfortable if Richmond did not identify Robert Bouto as the murderer of one of Richmond's friends). Ultimately, the City of Chicago investigated Mr. Bouto's claims and concluded that Mr. Bouto is more likely than not innocent. See Ex. 98 (Lassar Report dated 3/3/15) at JR-L 055738-39). Guevara has taken the Fifth in regard to all allegations regarding Bouto's case. Ex. 53 (Guevara Deposition in Rivera) at 560;

l.      **Thomas Sierra:** In 1995, Defendant Guevara told Jose Melendez to falsely identify Thomas Sierra as the shooter of Noel Andujar, even though Melendez had not seen the shooter and told Defendant Guevara as much. In addition, Case: 1:19-cv-06508 Document #: 277 Filed: 03/26/24 Page 159 of 164 PageID #:64308 159 Defendant Guevara wrote fabricated reports falsely saying that Jose Melendez and Alberto Rodriguez had identified a car as the one used in the Andujar shooting. Defendant Guevara invoked the fifth amendment when questioned about all aspects of Sierra's case. Ex. 69 (Guevara Testimony in Reyes/Solache) at 34-35. The state finally dismissed charges against Mr. Sierra in 2019, and Mr. Sierra was granted a Certificate of Innocence in 2022. He spent over 22 years in prison due to Guevara's misconduct and is suing the City of Chicago and defendant officers, including Defendant Guevara, due to that misconduct. Ex. 101 (COI Transcript) at 43, 53-73; Ex. 102 (COI in Sierra); see also Sierra v. Guevara, et al., 1:18-cv-03029 (N.D.Ill);

m.      **Geraldo Iglesias:** In 1993, Geraldo Iglesias became yet another "victim of now-disgraced and former Detective Reynaldo Guevara's pattern and practice of misconduct and framing innocent persons" when he was wrongfully convicted of murder and sentenced to 35 years. The state finally dismissed charges against him in 2019, and Iglesias was granted a Certificate of Innocence in 2022. Ex. 103 (COI Order) at 1.

n.      **Jose Cruz:** In 1993, Cruz was arrested and ultimately wrongly convicted of a murder, based on fabricated and coerced statements caused by Defendant Guevara and other officers. In 2022, the prosecution agreed to vacate and dismiss his conviction. In 2023, he obtained a certificate of innocence, and filed a lawsuit against the City of Chicago, Defendant Guevara, and others for his wrongful conviction. Ex. 104 (Jose Cruz, Nat'l Registry                          of                          Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6343).

O.      **Almodovar & Negron:** The City of Chicago has also determined that Roberto Almodovar was wrongfully convicted in another case investigated by Guevara in 1994. See Ex. 105 (Lassar Report regarding Roberto Almodovar, Dated 2/9/15 at JR-L 042869, JR-L 042882. In that case, Guevara was alleged to have framed Almodovar for a murder he did not commit by surreptitiously showing his photograph to witnesses before they viewed a lineup and then falsifying reports to make it seem as if the witnesses had picked Almodovar out of a line-up without any influence by Guevara. See Ex. 106 (Affidavit of Melinda Power); Ex. 107 (Post-Trial Testimony of Kennelly Saez in People v. Negron, 94 CR 24318). Almodovar, and his co-defendant William Negron, have both since been exonerated. See Ex. 108 (Order Vacating Judgment and Sentence in People v. Negron, 94 CR 24318). Guevara has taken the Fifth in regard to all allegations regarding the case

against Almodovar and Negron. Ex. 53 (Guevara Deposition in Rivera) at 434-39; Ex. 70 (Guevera Dep. in Sierra).

p.      ***Nelson Gonzalez:*** Nelson Gonzalez was framed with a 1994 murder, resulting from a fabricated identification conducted by Defendant Guevara. In 2022, Gonzalez's convictions were vacated and the case dismissed, and in 2023, he was granted a certificate of innocence. He has also filed suit against Defendant Guevara, among others involved in his wrongful conviction. Ex. 109 (Nelson Gonzalez, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6379).

q.      ***Carlos Andino:*** In 1994, Defendants Guevara and Halvorsen, among other officers, manufactured false identifications that resulted in the wrongful arrest and conviction of Carlos Andino. In 2021, Andino filed for post-conviction relief, and in 2022, the Cook County State's attorney's office agreed to vacate Andino's conviction. In 2023, he was awarded a certificate of innocence, and filed suit against Guevara and other officers to seek compensation for his wrongful conviction. Ex. 110 (Carlos Andino, Nat'l Registry of Exonerations,

https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6381).

r.      ***Edwin Davila:*** In 1995, Davila was framed for murder by Defendant Guevara and his fellow corrupt officers based on fabricated identifications. In 2022, after spending over 24 years in prison for a crime he did not commit, all charges against Mr. Davila were dismissed. Davila now seeks justice for the harm that Defendant Guevara and other officers caused him in a federal lawsuit. Guevara has invoked the Fifth Amendment regarding Davila. Ex. 61 (Edwin Davila, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6507); see also Davila v. Guevara, et al. Case No. 1:23-cv-01739; Ex. 70 (Guevera Dep. in Sierra).

s.      ***Gamalier Rivera:*** In 1996, Gamalier Rivera was wrongfully arrested and convicted for murder resulting from fabricated identifications caused by Defendant Guevara and other officers. After years of seeking post-conviction relief, the state dismissed charges against him, and he was granted a certificate of innocence in 2022. Guevara has invoked the Fifth Amendment regarding Rivera. Ex. 111 (Gamalier Rivera, Nat'l Registry of Exonerations,

https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6398).
Rivera has filed a lawsuit against Guevara and other officers for their misconduct. See *Rivera v. Guevara, et al.,* Case. No. 1:23-cv-01743; Ex. 70 (Guevara Dep. in *Sierra*).

*t.*      **Louis Robinson:** Louis Robinson was wrongfully convicted of a 1996 drive-by shooting that killed Kelly Velez, based on coercive identification and fabricated evidence caused by Defendant Guevara. In 2023, his post-conviction petition was granted following an evidentiary hearing, and the State dismissed all charges. Ex. 112 (Louis Robinson, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6639).

u.      ***Juan and Rosendo Hernandez:*** Juan and Rosendo Hernandez were wrongfully convicted of the 1997 shooting of Jorge Gonzalez and collectively spent decades for a crime they did not commit due to the misconduct of Defendant Guevara and other officers, including the disgraced Joseph Miedzianowski, and Halvorsen. In 2022, their convictions were vacated, and they received certificates of innocence in 2023. Ex. 113 (Juan Hernandez Certificate of Innocence); Ex. 114 (Rosendo Hernandez Certificate of Innocence). They have filed a lawsuit against Guevara and other officers for their misconduct. Guevara has

invoked the Fifth Amendment regarding the Hernandez brothers. *See Hernandez et al. v. Guevara et al.,* Case No. 1:23-cv-01737; Ex. 70 (Guevara Dep. in *Sierra*).

v.      ***John Martinez***: John Martinez was wrongfully convicted of a homicide due to falsified evidence, including fabricated identifications and coercive interrogations, caused by Defendant Guevara and other officers. In 2023, Martinez's conviction was vacated, and less than a month later, his case was dismissed. In 2024, two others involved in this case – Thomas Kelly and Jose Tinajero – also had their wrongful convictions resulting from the same homicide dismissed based on Guevara's misconduct. Martinez has filed a lawsuit against the City of Chicago and Defendant Guevara, seeking justice for his wrongful conviction. Ex. 115 (John Martinez, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6552). *See Martinez v. Guevara, et al.,* Case No. 1:23-cv-01741.

w.      ***David Gecht and Richard Kwil:*** In 1999, David Gecht and Richard Kwil were both wrongfully convicted of a murder due to Defendants Guevara and Halvorsen's misconduct. During a single night, Defendants Guevara, Halvorsen, and other officers subjected both Gecht and Kwil to torturous investigations, breaking their wills and coercing them into signing false confessions. They also obtained a false confession from Ruben Hernandez, falsely implicating all three in the crime. In 2022, Gecht and Kwil's charges were dismissed, and both were granted certificates of innocence. Ex. 116 (Gecht Court of Claims Order); Ex. 117 (Kwil COI Order). The charges against Hernandez were also dismissed, and all three have pending lawsuits against Defendants Guevara—who has taken the Fifth regarding allegations against all three—and Halvorsen, among other officers, and the City of Chicago. *See Gecht v. Guevara, et al.*, Case No. 23-1742*; Kwil v. Guevara, et al.*, Case No. 23-cv-1742; *Hernandez v. Guevara, et al.*, Case No. 23-cv-15375; Ex. 118 (Richard Kwil, Nat'l Registry of Exonerations, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6581); Ex. 70 (Guevara Dep. in *Sierra*).

x.      ***Eruby Abrego and Jeremiah Cain:*** Eruby Abrego and Jeremiah Cain were wrongly convicted of the 1999 murder of Jose Garcia and aggravated battery of Julio Lugo, despite having nothing to do with the murder, due to the false identifications, falsified confessions obtained through torture, and other evidence manufactured by Defendants Guevara, Halvorsen, and others. In 2022, their wrongful convictions vacated and the charges were dismissed. Both now seek justice for the harm that Defendant Guevara and other officers caused him in a federal lawsuit. Ex. 119 (Eruby Abrego, Nat'l Registry of Exonerations,
https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=6375); *see also* Abrego v. Guevara, et al., Case No. 1:23-cv-01740; Cain v. Guevara, et al., 1:23-cv-14282 (N.D. Ill.).

y.      On February 29, 2024, seven men – Jayson Aguiar, who served 20 years, David Kruger, who served 14 years, Juan Molina, who served 12.5 years, Edwin Ortiz, who served 25 years, Oscar Soto, who served 3 years, Victor Vera, who served 19 years, and Tyrece Williams, who served 20 years–filed petitions seeking to reverse their decades-old convictions tied to disgraced former Chicago Police Detective Reynaldo Guevara. The men—who have completed their sentences and are out of custody—all claim their innocence. Ex. 120 (Aguiar Pet.); Ex. 121 (Kruger Pet.); Ex. 122 (Molina Pet.); Ex. 123 (Ortiz Pet.); Ex. 124 (Soto Pet.); Ex. 125 (Vera Pet.); Ex. 126 (Williams Pet.).

**RESPONSE:** Defendant City objects to this paragraph as it violates L.R. 56.1(a)(2) because it is not pertinent to the issues identified in the summary judgment motion. *See Outlaw*, 259 F.3d at 837; *see Malec,* 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")

Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative ("despite notice of the misconduct," "there continued a widespread failure of discipline," "resulted in wrongful convictions"). *See Malec v. Sanford*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"); *see also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019). Specifically, this purported "fact" spans over five pages, and contains 25 separate and distinct subparts, each of which contain multiple purported "facts" and allegations.

Defendant City further objects to the extent this paragraph is not supported by the record cited or admissible evidence. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012); *see also Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403); *Franklin v. Adkins*, No. 92-1765, 1993 WL 179221, at *5 (7th Cir. May 25, 1993) (finding that a jury's verdict is a hearsay statement); *Spinnenweber v. Laducer*, No. 2:14-CV-101-JEM, 2019 2019 WL 6649847 at *1 (N.D. Ind. Dec. 5, 2019) (finding a jury verdict makes the plaintiff whole and is not to send a message to the defendants or society at large). Defendant City further objects to the extent that any of the cited exhibits, specifically various websites and news articles, which are not part of the record in this case as they are not bates stamped with any of the bates stamp designations connected to this case. *See Johnson v. Obaisi*, No. 22-1620, 2023 WL 5950125, at *2, (7th Cir. Sept. 13, 2023) (Rule 56(c)(3) assigns the parties the duty to "cit[e] to particular parts of materials *in the record*" when asserting that genuine factual disputes foreclose summary judgment) (emphasis added).

Defendant City further objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence. Specifically, Plaintiffs' reliance on the "National Registry of Exonerations" in support of a "fact" is improper as it is not a "fact," it is hearsay. *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 716 (N.D. Ill. 2016) ("Accordingly, a party cannot rely on hearsay in a Local Rule 56.1 statement of facts or response.")

Answering further, the "National Registry of Exonerations" website includes on its home page a disclaimer that states the following: "Tell us about an exoneration that we may have missed . . . *Correct an error* or add information about an exoneration on our list." https://www.law.umich.edu/special/exoneration/Pages/about.aspx (emphasis added). Thus, there is no foundation to establish the reliability of any of the information contained on the website and it is therefore hearsay.

86. It was not until 2013 that the City first investigated Guevara, hiring Sidley Austin to conduct a review of a portion of his cases. When the reports were concluded in late 2014 and 2015, the reports found that Guevara had engaged in investigative misconduct including through improper identification procedures, falsifying reports, and physical abuse during interrogations. Ex. 11 (Finnell Report) at 8-9; Ex. 127 (Lassar Report regarding Solache and Reyes, dated 12/12/14); Ex. 105 (Lassar Report on Almodovar, dated 2/9/15); Ex. 98 (Lassar Report regarding Bouto, dated 3/3/15); Ex. 98 (Lassar Report regarding Serrano and Montanez, dated 3/3/15).

**RESPONSE: Defendant City objects to this paragraph as it violates L.R. 56.1(a)(2) because it is not pertinent to the issues identified in the summary judgment motion. *See Outlaw*, 259 F.3d at 837; *see Malec*, 191 F.R.D. at 583 (material fact is fact that is "pertinent to the outcome of the issues identified in the summary judgment motion.")**

**Defendant City further objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative. *See Malec v. Sanford*, 191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"); *see also Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd*, 926 F.3d 409 (7th Cir. 2019).**

**Defendant City further objects to the extent this paragraph is not supported by the record cited or admissible evidence. *See Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Finnell's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Finnell was deposed. (Dkt. 765-11, PSOAF, Ex. 11, Declaration of Anthony Finnell signed 11/14/24).**

**Subject to and without waiving these objections, Defendant City admits in part and denies in part. Defendant City admits that it hired Scott Lassar, of Sidley Austin to conduct a review of certain allegations against Guevara and that he came to certain conclusions related to those allegations. Defendant City denies that each of the reports cited conclude that Guevara engaged in investigative misconduct including through improper identification procedures, falsifying report and physical abuse. Specifically, the Report on Almodovar found that the allegations of improper influence were mixed and inconclusive and therefore did not find that the evidence rendered it more likely that not that Guevara engaged in misconduct when conducting the identification procedures. (Dkt. 765-105, Ex. 105 at p. 11). And the Report regarding Serrano and Montanez also found that it was "more likely than not that *neither* Dets. Guevara nor Halvorsen engaged in physical abuse." (Dkt. 765-98, Ex. 98 at p. 56). Finally, the Report on Solache and Reyes found that despite allegations against Detective**

Guevara, it did not mean that their confessions were "materially false or that they are actually innocent of the charges." (Dkt. 765-127, Ex. 127 at p. 13). In fact, the Report concluded that the evidence against Solache and Reyes lead them to "reject the claims of actually innocence." *Id.*

87. The documented evidence of the Chicago Police Department's widespread practice using psychological and physical abuse to coerce confessions and fabricate false confessions includes at least 187 instances in Areas 2, 3, 4, and 5 of the Chicago Police Department Detective Division from 1972 until the early 2000s. Group Ex. 128. This evidence is documented in sworn testimony and affidavits of 29 men who describe being physically abused and coerced to confess in Chicago police custody between 1987-1997, Special Prosecutor's Report, the U.N. Committee Against Torture Report, the 2016 Police Accountability Task Force Report, the DOJ Pattern and Practice Report, and the 2007 statements of City officials discussing coerced confessions in Chicago police custody, as well as sworn testimony, court opinions, official reports, OPS complaints, civil lawsuits, newspaper articles, among other sources. *Id.*

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative ("widespread practice," "using psychological and physical abuse," "to coerce confessions," "fabricate false confessions," "includes at least 187 instances").** *See also Uncommon, LLC v. Spigen, Inc.,* **305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument),** *aff'd,* **926 F.3d 409 (7th Cir. 2019). Defendant City further objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence. Specifically, Plaintiffs' reliance on Exhibit 128 named "Group Exhibit – Evidence of Widespread Practice of Fabricating and Coercing Confessions" which contains 175 individual documents that total 7,443 pages is improper as Plaintiffs'** *expressly* **informed this Court it would not be using such documents as substantive evidence.**

> **Mr. Swaminathan: Yes, Your Honor is correct that these documents that are at issue [referencing the belatedly disclosed production that the City moved to bar] are exclusively for use by our expert. The issue of these CPD documents are really only being used by a single expert, Dr. Leo, for purposes of his expert opinions** *exclusively*. **They** *will not be presented as substantive evidence* **in the underlying case-in-chief.**

**(Def. Ex. F, Report of Proceedings,** *Solache/Reyes***, Mar. 7, 2022, at 16:5-10) (emphasis added). In addition, this Court ruled that the documents being used to support Plaintiffs' "fact" would create a discovery violation if being introduced independently during the fact portion of Plaintiffs' case.**

**The Court: And I take counsel's word that these documents are not going to be introduced as independent material during the fact portion of tis case and that it will be directly admitted into evidence. If that was the situation presented to me, my ruling might be very different because if indeed these materials were to be introduced independently, on their own as documents that will be offered in evidence, I do think that we would be in a situation *where there would be a discovery violation*.**

(Def. Ex. G, Report of Proceedings, *Solache/Reyes*, Mar. 18, 2022, at 4:23-5:7) (emphasis added).

Defendant City further objects to Plaintiffs' reliance on the 7,443 pages of documents produced in Exhibit 128 which contains transcripts of unknown origin without any identifying information or explaining any context for the citation in violation of Federal Rules of Evidence 1006. *See* Fed. R. Evid. 1006.

Subject to and without waiving these objections, denied. Discovery closed in this matter on December 31, 2021. (Minute Entry at Dkt. 542). In the weeks leading up to the close of discovery and even after discovery closed, Plaintiffs produced over 71,000 pages of documents, a subset of which now make up Exhibit 128. (Dkt. 765-128, Ex. 128; City Defendants' Supplemental Memorandum in Support of Their Motion to Bar Plaintiffs' Late Disclosure of New Discovery and Expert Opinions Relying on That Production, at Dkt. 562). On February 11, 2022, the City filed its Motion to Bar Plaintiffs' Late Disclosure of New Discovery of Plaintiffs' production of over 71,000 pages of documents in its PTP report. (Dkt. 562 at 2). Plaintiffs' filed their response on February 22, 2022 and oral arguments were held on March 7, 2022 after various response pleadings were filed. (*See* Plaintiffs' Response to City Defendants' Joint Motion to Bar, at Dkt. 564; City Defendants' Joint Response in Support of Their Motino to Bar, at Dkt. 569; Plaintiffs' Response to City Defendants' Supplemental Memorandum in Support of Their Motion to Bar, at Dkt. 579; Def. Ex. F). The plain understanding from Magistrate Judge Harjani's ruling on March 18, 2022, is that Plaintiffs were not to introduce the PTP documents as substantive evidence, which they have done here. (Def. Ex. G).

88.     In his expert report, Dr. Leo found that (1) between 1972 until at least 2000, the Chicago Police Department had a systemic practice of coercive interrogations of African American and Latino men; and (2) between 1982 until the 1990s, City of Chicago, Chicago Police Department officials, and numerous police command personnel were on notice of this practice based on the repeated documented allegations against supervisors and detectives; testimony from criminal defendants at motion to suppress hearings and trials; court decisions in criminal cases; OPS report findings; federal and state court decisions; and the admissions of City officials. Ex. 19

(Leo Report) at 14-15. These findings were based on an exhaustive analysis of primary source materials, including sworn testimony in court proceedings and depositions, court opinions, judicial findings, photographic evidence, official reports, OPS complaints, newspaper articles, civil lawsuits, and expert reports. Ex. 19 (Leo Report) at 14-15. Dr. Leo applied his social science training to analyze these source materials, namely by extracting relevant information, analyzing it in the context of the case in which it was found, and determining whether patterns emerged. Ex. 19 (Leo Report) at 97. The City did not disclose an expert responsive to Dr. Leo. Ex. 5 (Defendants' Rule 26(a)(2) Disclosures).

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative (that the "City had notice").** *See Malec v. Sanford*, **191 F.R.D. 581, 583 ("the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response"). Defendant City further objects to Plaintiffs' reliance on Plaintiffs' expert report to support a purported fact and avoid summary judgment.** *See Sommerfield*, **254 F.R.D. at 329 (the cases generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403). Further, Leo's report is hearsay despite Plaintiffs filing a sworn declaration which should be stricken, because the declaration was signed and filed after the City's motion for summary judgment was filed which was long after Plaintiffs' 26(a)(2) disclosures were due, and Leo was deposed. (Dkt. 765-19, Ex. 19, Declaration of Richard Leo signed 11/15/24).**

**In addition, Defendant City objects to this paragraph and asks the Court to disregard the assertion that "the Chicago Police Department had a systemic practice of coercive interrogations" as it constitutes improper legal argument in violation of L.R. 56.1(d)(4).** *Uncommon, LLC v. Spigen Inc.*, **305 F. Supp. 3d 825, 838 (N.D. Ill. 2018)(Blakey, J.),** *aff'd*, **926 F.3d 409 (7th Cir. 2019) (statements of fact should not contain legal argument).**

 **Subject to and without waiving these objections, Defendant City admits in part and denies in part. Defendant City admits Plaintiffs' have retained Richard Leo and that their expert makes "findings" in his report but denies that Leo has the proper foundation to support these conclusions. (***See* **Defendant City of Chicago's Motion to Bar Opinions of Richard Leo, at Dkt. 747; Defendant's Statement of Fact Material Facts in Support of its Motion for Summary Judgment, at Dkt. 506 at ¶¶ 74-99). Answering further, the record citation does not support that Leo conducted an "exhaustive analysis," applied his social science training nor how he analyzed the data. Rather, Leo's report notes "'The opinions I express in this report are based on my own knowledge, research, and publications; research and publications in the field; and the case-specific information and evidence that has been provided to me." (Dkt. 765-19, Ex. 19 at 97). Finally, Defendant City denies it did not**

disclose an expert response to Leo. Defendant City disclosed expert Dr. Michael Welner who responded to Leo's *Monell* opinions. (Dkt. 765-5, Ex. 5 at 1-2).

89. Separate from Dr. Leo's opinions, Plaintiffs have assembled a large volume of evidence documenting the Chicago Police Department's pattern of fabricating false confessions and coercing confessions from criminal suspects between 1972 and 2002. This evidence was produced in discovery and consisted of tens of thousands of primary source materials. The parties litigated the scope of discovery, and the Court permitted the parties to conduct six additional months of discovery to ensure that issues were fully explored. The City did not provide responsive documents during discovery. The documents describe the City's pattern and the City's notice of that pattern, including but not limited to, allegations of at least 208 individuals describing abusive interrogations and coerced confessions at Areas 2, 3, 4, and 5 between 1972-2002, including by Detective Guevara, and OPS findings of 50 instances of torture at Area Two under Burge's command. In addition, the documents identify 42 cases in which coerced confessions were alleged, adjudicated, and proven by criminal defendants and civil plaintiffs, across the City of Chicago. The source materials for those cases include sworn statements, transcripts of court proceedings, judicial opinions, CR files, civil complaints, newspaper articles, and official reports. Each case also includes a memorandum summarizing the evidence in objective terms, which was also produced in discovery. The sum total of this evidence is included in Group Exhibit 128 (Evidence of Widespread Practice of Fabricating and Coercing Confessions), which because of its size is being filed by conventional means, along with an index.

**RESPONSE: Defendant City objects to this paragraph as it violates N.D. Ill. L.R. 56.1(d) by including multiple allegations and to the extent it is argumentative ("widespread practice," "using psychological and physical abuse," "to coerce confessions," "fabricate false confessions," "includes at least 187 instances"). *See also Uncommon, LLC v. Spigen, Inc.,* 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (Blakey, J.) (statements of fact should not contain legal argument), *aff'd,* 926 F.3d 409 (7th Cir. 2019). Defendant City further objects to this paragraph as it violates L.R. 56.1(d) because it is not supported by admissible evidence.**

Specifically, Plaintiffs' reliance on Exhibit 128 named "Group Exhibit – Evidence of Widespread Practice of Fabricating and Coercing Confessions" which contains 175 individual documents that total 7,443 pages is improper as Plaintiffs' *expressly* informed this Court it would not be using such documents as substantive evidence.

> Mr. Swaminathan: Yes, Your Honor is correct that these documents that are at issue [referencing the belatedly disclosed production that the City moved to bar] are exclusively for use by our expert. The issue of these CPD documents are really only being used by a single expert, Dr. Leo, for purposes of his expert opinions *exclusively*. They *will not be presented as substantive evidence* in the underlying case-in-chief.

(Def. Ex. F, Report of Proceedings, *Solache/Reyes*, Mar. 7, 2022, at 16:5-10) (emphasis added). In addition, this Court ruled that the documents being used to support Plaintiffs' "fact" would create a discovery violation if being introduced independently during the fact portion of Plaintiffs' case.

> The Court: And I take counsel's word that these documents are not going to be introduced as independent material during the fact portion of tis case and that it will be directly admitted into evidence. If that was the situation presented to me, my ruling might be very different because if indeed these materials were to be introduced independently, on their own as documents that will be offered into evidence, I do think that we would be in a situation *where there would be a discovery violation*.

(Def. Ex. G, Report of Proceedings, *Solache/Reyes*, Mar. 18, 2022, at 4:23-5:7) (emphasis added).

Defendant City further objects to Plaintiffs' reliance on the 7,443 pages of documents produced in Exhibit 128 which contains transcripts of unknown origin without any identifying information or explaining any context for the citation in violation of Federal Rules of Evidence 1006. *See* Fed. R. Evid. 1006.

Subject to and without waiving these objections, denied. Discovery closed in this matter on December 31, 2021. (Minute Entry at Dkt. 542). In the weeks leading up to the close of discovery and even after discovery closed, Plaintiffs produced over 71,000 pages of documents a subset of which now make up Exhibit 128. (Dkt. 765-128, Ex. 128; City Defendants' Supplemental Memorandum in Support of Their Motion to Bar Plaintiffs' Late Disclosure of New Discovery and Expert Opinions Relying on That Production, at Dkt. 562). On February 11, 2022, the City filed its Motion to Bar Plaintiffs' Late Disclosure of New Discovery of Plaintiffs' production of over 71,000 pages of documents in its PTP report. (Dkt. 562 at 2). Plaintiffs filed their response on February 22, 2022 and oral arguments were held on March 7, 2022 after various response pleadings were filed. (*See* Plaintiffs' Response to City Defendants' Joint Motion to Bar, at Dkt. 564; City Defendants' Joint Response in Support of Their Motino to Bar, at Dkt. 569; Plaintiffs' Response to City Defendants' Supplemental Memorandum in Support of Their Motion to Bar, at Dkt. 579; Def. Ex. F). The plain understanding from Magistrate Judge Harjani's ruling on March 18, 2022, is that

**Plaintiffs were not to introduce the PTP documents as substantive evidence, which they have done here. (Def. Ex. G).**

Date: February 18, 2025                              Respectfully submitted,


/s/ *Eileen E. Rosen*                                /s/ *Josh M. Engquist*
Eileen E. Rosen                                      JOSH M. ENGQUIST, Attorney No. 6242849
Special Assistant Corporation Counsel                Special Assistant Corporation Counsel
*One of the Attorneys for City of Chicago*           *One of the Attorneys for Defendants*
                                                     *Halvorsen, Dickinson, Rutherford, Trevino,*
                                                     *Mingey, Biebel, and Cappitelli*
Eileen E. Rosen
Theresa Berousek Carney
Catherine M. Barber                                  James G. Sotos
Austin G. Rahe                                       Josh M. Engquist
Lauren M. Ferrise                                    Caroline P. Golden
Rock Fusco & Connelly, LLC                           Allison L. Romelfanger
333 W. Wacker, 19th Floor                            THE SOTOS LAW FIRM, P.C.
Chicago, Illinois 60606                              141 W. Jackson Blvd., #1240A
(312) 494-1000                                       Chicago, IL 60604
erosen@rfclaw.com                                    (630) 735-3300
                                                     jengquist@jsotoslaw.com