# Exhibit E

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 1028 |
| | ) | |
| v. | ) | Hon. Andrea R. Wood |
| | ) | District Judge |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | 1:18 Civ. 2312 |
| | ) | |
| v. | ) | Hon. Andrea R. Wood |
| | ) | District Judge |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF RULE 30(b)(6) DEPOSITION OF CITY OF CHICAGO

To:   Eileen E. Rosen
      Stacy A. Benjamin
      Rock Fusco & Connelly, LLC
      321 N. Clark Street, Suite 2200
      Chicago, Illinois 60602
      *Counsel for City of Chicago*

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff will take the deposition of the City of Chicago before a Notary Public in and for the County of Cook and State of Illinois, on the dates and times noticed, all at Loevy & Loevy, 311 N. Aberdeen St., 3rd Floor, Chicago, Illinois 60607. The Instructions and Definitions set forth in Plaintiff's prior discovery requests to Defendant City of Chicago are hereby incorporated into this Notice as though fully set forth herein.

As to counsel of record for the City of Chicago, this is a demand upon you to designate and produce the person(s) who can provide binding testimony on behalf of

1

the City of Chicago pursuant to FRCP 30(b)(6) on the following subjects:

1. The City's written and unwritten policies, practices, and customs in effect from 1985 through 1998 relating to the following:

a. Witness interrogations and interviews in homicide investigations, including interrogations and interviews of witnesses, eyewitnesses, criminal suspects and other witnesses. This request includes acceptable and prohibited techniques (*e.g.*, the use of force or coercion, threats, deception, etc.) during interrogations and interviews; the length of such interrogations and interviews; the ranks or titles of officers authorized to perform them; supervision of interrogations and interviews; documentation kept relating to such interviews and interrogations; and the administration of *Miranda* warnings and waivers.

b. Interrogations and interviews in homicide investigations of foreign language speaking witnesses, including witnesses, eyewitnesses, and criminal suspects. This request includes any differences in the treatment or tactics used against foreign language speaking witnesses; the presence of lawyers, consulars, or other individuals during police interactions with citizens of other countries; the use of translators in interviewing or interrogating foreign language speakers including who may serve as a translator and their role during interrogations and interviews; reliance on, and documentation of, foreign language speakers' statements in homicide investigations; and the presentation of such statements and foreign language speaking witnesses to Felony Review; and the administration of *Miranda* warnings and waivers.

c. The use and conduct of live/in-person lineups and photographic lineups in homicide investigations. This request includes but is not limited to the written and unwritten practices, procedures, customs, rules, and techniques for performing lineups, selection and use of fillers in lineups, the minimum and maximum number of suspects and fillers in lineups, selection of photographs used in a photo lineup, process for taking photographs used in a photo lineup, number of witnesses permitted to view a single lineup, communication of information about suspects or defendants to witnesses who view lineups, any other communication with witnesses who view lineups, reports written in connection with lineups, documentation of a live/in-person and photographic lineups, documentation of the selection of a suspect by a witness during a lineup, documentation of the selection of filler by a witness during a lineup, and documentation of the selection of no person by a witness during a lineup.

d. The documentation and preservation of information learned during a homicide investigation. This request includes but is not limited to the use, storage, location and preservation of police reports, notes, witness statements, general offense reports, general progress reports, supplementary reports, lineup reports, evidence logs, inventory reports, and any other means of recording information learned during

2

a homicide investigation. This request includes but is not limited to the City's 1982, 1983 and 1986 Special Orders, and any subsequent orders or directives through 1998, related to the street files practice discussed in the *Jones v. City of Chicago* and *Palmer v. City of Chicago* cases.

  e. The use, creation, contents of, storage, location, movement, and preservation of homicide investigative files kept at Chicago Police Department Detective Areas, including but not limited to so-called permanent retention/RD files, area files, investigative files, official files, unit files, street files, running files, clipboard files, Seraphine reports, and files kept by Gang Crimes Specialists at Gang Crimes North—including so-called activity logs or humper reports—and other Gang Crimes units. This request includes but is not limited to the different types of documents, notes, or other investigative information kept in each such type of file, as well as the storage, retention, duplication, or copying of each such type of file and the movement, storage, preservation or copying of such files to other divisions and sections of the Chicago Police Department—such as the Records Division, the Evidence and Recovered Property Section, and the Police Documents Section of the Chicago Police Department—and the timing of such movements in homicide investigations.

  f. Responding to subpoenas from criminal defendants requesting all records concerning a homicide investigation, including policies, practices and customs for ensuring that exculpatory information favorable to the accused in a criminal investigation, which would tend to show that the accused was not guilty of a crime or which would tend to undermine the credibility of any prosecution witness, is disclosed to suspects, criminal defendants, their attorneys, and prosecutors. This request includes but is not limited to the departments or personnel involved in processing such a subpoena request, the places within the Chicago Police Department from which documents, files, and information that would be produced in response to such a subpoena request; and the types of investigative documents that would be produced in response to such a subpoena request.

  g. The collection, preservation, documentation, and testing of crime-scene evidence and other sources of physical and forensic evidence.

  h. Photographing crime scenes.

  i. Calling Felony Review, including the timing and circumstances when Felony Review could or should be called, and for what purposes.

  2. The training provided by the City to detectives and other police officers from 1985 through 1998 on the following:

  a. Witness and suspect interrogations and interviews in homicide investigations, including training on: acceptable and prohibited techniques (*e.g.*, the

use of force or coercion, threats, deception, etc.) during interrogations and interviews; the length of such interrogations and interviews; the ranks or titles of officers authorized to perform them; the importance and requirement of documentation associated with such interviews or interrogations; and the administration of *Miranda* warnings and waivers.

      b. Interrogations and interviews of foreign language speaking suspects and witnesses, including training on: differences in the treatment or tactics used against foreign language speaking witnesses; the presence of lawyers, consulars, or other individuals during police interactions with citizens of other countries; the use of translators in interviewing or interrogating foreign language speakers, including who may serve as a translator and their role during interrogations and interviews; reliance on, and documentation of, foreign language speakers' statements in homicide investigations; the presentation of such statements and foreign language speaking witnesses to Felony Review; and the administration of *Miranda* warnings and waivers.

      c. The use and conduct of live/in-person and photographic lineups in homicide investigations, including but not limited to training on techniques for performing lineups, the selection and use of fillers in lineups, selection of photographs used in a photo lineup, process for taking photographs to be used in a photo lineup, the minimum and maximum number of suspects and fillers in lineups, the number of witnesses permitted to view a single lineup, communication of information about suspects or defendants to witnesses who view lineups, any other communication with witnesses who view lineups, reports written in connection with a lineup, documentation of a live or in-person lineup, documentation of the selection of a suspect by a witness during a lineup, documentation of the selection of filler by a witness during a lineup, documentation of the selection of no person by a witness during a lineup, and creation and preservation of documentation relating to any of the foregoing subjects.

      d. The documentation and preservation of information learned during a homicide investigation, including but not limited to training on the use of police reports, notes, witness statements, general offense reports, general progress reports, supplementary reports, lineup reports, evidence logs, inventory reports, and any other means of recording information learned during a homicide investigation, as well as the importance and requirement of the use of such records.

      e. The use area files, official files, unit files, street files, running files, and clipboard files, permanent retention files, and homicide investigative files kept by Gang Crimes Specialists, including but not limited to training on the different types of documents, notes, or other investigative information kept in each such type of file and the different types of documents, notes, or other investigative information not kept in each such type of file, as well as the storage, retention, duplication, or copying of each such type of file and the movement of such files to other divisions and sections

4

of the Chicago Police Department—such as the Records Division, the Evidence and Recovered Property Section, and the Police Documents Section of the Chicago Police Department—and the timing of such movements in homicide investigations

       f. Obligations under *Brady v. Maryland*, including but not limited to training related to ensuring that exculpatory information favorable to the accused in a criminal investigation, which would tend to show that the accused was not guilty of a crime or which would tend to undermine the credibility of any prosecution witness, is disclosed to suspects, criminal defendants, their attorneys, and prosecutors

       g. The City's 1982, 1983 and 1986 Special Orders, and any subsequent orders or directives through 1998, related to the street files practice set forth in the *Jones v. City of Chicago* and *Palmer v. City of Chicago* cases.

       h. The collection, preservation, documentation, and testing of crime-scene evidence and other sources of physical and forensic evidence.

       i. Photographing crime scenes.

       j. Calling Felony Review, including the timing and circumstances when Felony Review could or should be called, and for what purposes.

    3. For the period from 1985 through 1998, the policies, practices, and procedures of the Chicago Police Department relating to investigations regarding misconduct, including but not limited to the discipline of Chicago police officers who were found to have engaged in misconduct contrary to City of Chicago policies.

    4. For the period from 1985 through 1998, any efforts by the City of Chicago to identify, investigate, or prevent any of the following types of misconduct—including but not limited to investigations by Internal Affairs, the Office of Professional Standards, the Independent Police Review Authority, or any other agency, firm, or organization retained by the City of Chicago—and discipline imposed by the City as a result of such investigations:

       a. The use of force, coercion or other prohibited techniques to obtain incriminating statements from witnesses or suspects.

       b. Improper eyewitness identification procedures, including misconduct related to live/in-person lineups and photographic lineups, or lack of adequate documentation regarding same.

       c. Fabrication of inculpatory evidence;

    d. Failure to properly document or place *Brady* evidence in official police department files, or otherwise withholding material, exculpatory information from prosecutors, suspects, criminal defendants and their attorneys.

    e. Failure to comply with the 1982, 1983 or 1986 Special Orders, or any subsequent orders or directives through 1998, related to the street files practice set forth in the *Jones v. City of Chicago* and *Palmer v. City of Chicago* cases.

    f. Failure to document investigative activities and information learned during a homicide investigation.

    g. Improper collection and documentation of crime-scene evidence, and failing to document investigation

  5. All efforts by the City of Chicago to identify, investigate, or prevent—including through investigations by Internal Affairs, the Office of Professional Standards, the Independent Police Review Authority, any other agency, firm, or organization retained by the City of Chicago, or any other federal, state or local law enforcement agency—wrongful acts by Reynaldo Guevara.

  6. The City's written and unwritten policies, practices, and customs in effect from 1985 through 1998 relating to the method and manner by which supervisors monitor, report, and/or discipline subordinate Chicago police officers for potential violations of departmental rules or state/federal laws.

  7. The policies, practices, and procedures in place to determine when sections and/or departments of the Chicago Police Department should retrain officers, and/or issue policy clarifications and/or policy reminders.

  8. The policies, practices, and procedures of the Chicago Police Department regarding evaluations of its police officers, including but not limited to any annual or periodic performance reviews or evaluations, standards for evaluating the work performed by Chicago police officers, how those standards are communicated to Chicago police officers, how the evaluations are used to improve officer performance and/or correct deficient performance.

  9. The person(s) with final policymaking authority for the City of Chicago on each of the subjects set forth above. To the extent that anyone or any entity with final policymaking authority has delegated such authority, please identify that delegee or those delegees and produce those individual(s) pursuant to this Notice.

  10. Incidents between 1985 and 1998 in which Chicago police officers have been accused of and/or have been found, by the Chicago Police Department, other law enforcement officials, or any court, to have engaged in: failure to comply with *Brady* obligations; physical abuse of a witness or suspect; fabrication or suppression of

evidence; lying on the stand; or failure to properly document criminal investigations. The witness should also be prepared to testify how such incidents are documented and investigated.

11. The disposition, including but not limited to the creation, modification, retention, destruction, copies, location and movement, and/or production, of any police file, document, or materials (including but not limited to reports, physical evidence, notes, or photographs) related to the Soto Homicide Investigation.

12. The City's efforts to locate and produce files responsive to Plaintiff's document requests in this case. This request includes but is not limited to the person(s) with knowledge about those search efforts; what efforts have been undertaken to locate and produce Documents relating to the Soto Homicide Investigation from different areas or divisions of the Chicago Police Department, including but not limited to Documents created initially by detectives, patrol officers, gang crimes specialists, and evidence technicians; and the locations of Documents produced in this case between 1998 and the present day.

The person(s) designated pursuant to this Notice should produce, at least seven (7) days prior to the deposition, any and all documents related to the above topics within their possession, custody, or control, or, if the documents have already been produced in this litigation, identify those documents by bates number.

Dated: August 5, 2021

        Respectfully Submitted,

        **Arturo Reyes,**

        By: /s/Anand Swaminathan
          Arthur Loevy
          Jon Loevy
          Anand Swaminathan
          Steve Art
          Rachel Brady
          Sean Starr
          John Hazinski
          LOEVY & LOEVY
          311 N. Aberdeen St., 3rd floor
          Chicago, IL 60607
          (312) 243-5900

          *Attorneys for Plaintiff*
          *Arturo DeLeon-Reyes*

By: /s/Jan Susler
   Jan Susler
   Ben H. Elson
   People's Law Office
   1180 N. Milwaukee Ave., Third Floor
   Chicago, IL 60642
   (773) 235-0070

*Attorneys for Plaintiff Gabriel Solache*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certify that on August 5, 2021, I served the foregoing on all counsel of record via electronic mail.

    /s/   Anand Swaminathan
*One of Plaintiff's Attorneys*