IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-CV-01028 |
| | ) | |
| v. | ) | Honorable Steven C. Seeger |
| | ) | District Judge |
| REYNALDO GUEVARA, ET. AL. | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-CV-02312 |
| | ) | |
| v. | ) | Honorable Steven C. Seeger |
| | ) | District Judge |
| CITY OF CHICAGO, ET. AL. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO BAR PLAINTIFF'S EXPERT DR. RICHARD LEO**

Defendant City of Chicago, by and through its undersigned attorneys, respectfully submits the following reply in further support of Defendant City of Chicago's Motion to Bar Plaintiff's Expert Dr. Richard Leo ("City's Motion") (Dkt. 747 (*Reyes*); Dkt. 578 (*Solache*)), and, in support thereof, states:

**INTRODUCTION**

At issue is the admissibility of Dr. Richard Leo's opinions that the Chicago Police Department allegedly had a pattern and practice of coercing confessions and fabricating false inculpatory information from African American and Latino suspects and his derivative opinion that City officials were allegedly on notice of such a practice. These opinions are based on Dr.

Leo's creation of "case summaries" for various allegations of abuse provided to him by Plaintiffs' counsel and a narrative section regarding allegations against Jon Burge. The City's motion demonstrated that Dr. Leo merely read allegations of coercion from a subset of documents selected by Plaintiffs' counsel and summarizes them, without providing any explanation of how he supposedly applied his expertise. (Dkt. 747, p. 2-3). This Court explained in *Kraft Foods Global, Inc. v. United Egg Producers Inc.*, 2023 WL 624847, at *2-3 (N.D. Ill, 2023) that an expert cannot merely read and interpret documents without drawing on any reliable methods and principles and then "turn into a mouthpiece for the lawyer, giving a closing argument." An expert who merely reads evidence and offers his spin on it does not "bring [anything] to the table that the jury doesn't already have." *Id*., at 2.

Plaintiffs bear the burden of establishing that Dr. Leo employed a reliable methodology and provided more than a bottom line. *Varlen Corp v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019); *Mentavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Plaintiffs' response fails to meet the challenge. None of Plaintiffs' arguments are unavailing.

## ARGUMENT

### I. Plaintiffs cannot show Dr. Leo employed any expertise or reliable methodology.

Nowhere in Plaintiffs' response do they show how Dr. Leo employed a reliable methodology. The City's motion demonstrated that Dr. Leo's report provided a litany of cases, where he briefly summarized various allegations of coercion, but nothing more. (Dkt. 747, p. 9-13). In response, Plaintiffs merely state his methodology was "sound," without ever explaining what Dr. Leo's methodology supposedly was. (Dkt. 770, p. 4-7). Saying something is true, does not make it true. In fact, Plaintiffs' response does not point to any portion of Dr. Leo's report that demonstrates that he applied a reliable methodology. (Dkt. 770, p. 4-10). Quite tellingly, Plaintiffs

2

do not quote any portion of Dr. Leo's report at all. (*See Id.*, only citing Leo's report, Pl. Ex. 1, once, referring to Dr. Leo's CV).

The most Plaintiffs offer in terms of a description of methodology is on page 5 of Plaintiffs' response referring to a portion of Dr. Leo's deposition testimony. (Dkt. 770, p. 5). That is, when asked if he was confronted with evidence that contradicted allegations of abuse for any particular case, what would be his methodology in evaluating it, Dr. Leo answered:

> The methodology is first and foremost to look at all the cases and all the evidence in the cases and look for patterns to connect the dots and figure out whether they're – they are isolated events or whether there is a widespread or pervasive not isolated practice. With respect to a particular piece of evidence, I would analyze it within that case in light of other evidence in that case and make my best analysis about the weight of the evidence in that case on both sides in light of what we know about the and how I evaluate the strength of the evidence.

(Dkt. 770, p. 5, quoting Leo 9/29/22 Dep., p. 432:9-22). With respect, that explanation – which is supposed to be a description of the expert analysis he undertook – is vague to the point of meaningless and does not describe any methodology, let alone a reliable one. Added to that, Plaintiffs make no effort to describe what Dr. Leo did to support his opinion that the City's policymakers were allegedly on notice of the widespread practices of coercing false information from suspects, which, according to him, spanned a near thirty-year time frame. (Dkt. 770, p. 4-10).

Instead, it appears from that passage that what Plaintiffs claim Dr. Leo did was (1) review documents, and then (2) weigh evidence, (3) connect dots, and (4) count the number of allegations of coercion to see if there were a few or many. (Dkt. 770, p. 5). Certainly, weighing evidence is the jury's function. *Kraft Foods*, 2023 WL 6248473, at *1. Plaintiffs provide no explanation how "connecting dots" involves valid scientific, technical, or specialized knowledge. And it does not

3

take an expert in coerced confessions to count the number of allegations in a set of documents Plaintiffs provided to him.[1]

Additionally, Plaintiffs do not explain to what end Dr. Leo "weighed evidence" and "connected dots," when he was adamant that he did not, and could not, determine whether any allegations of coercion were true. In fact, he repeated several times throughout his deposition that he could not make that determination and could not answer questions as to whether the allegations were substantiated. (Dkt. 747, Ex. 4, Leo Dep. (9/29/22), p. 360:2-361:17412:3-19; 426:6-19; 433:14-434:16; 443:9-444:4; 453:24-454:13; 463:190-464:15, 465:16-21, 495:3-6, 484:7-16; 501:14-502:1; 505:17-507:8). Plaintiffs even admit in their response that Dr. Leo reviewed "unproven allegations." (Dkt. 770, p. 7).[2] Yet neither Plaintiffs nor Dr. Leo provides any explanation as to how his review of unproven allegations reliably led him to conclude that the CPD had a pattern and practice of coercion actually occurring and on a widespread scale. Further, it appears that Plaintiffs intend to proffer Dr. Leo to tell the jury that some evidence varies in strength. (Dkt. 770, p. 7). But "[a]n expert is not a color commentator on the evidence." *Kraft Foods*, 2023 WL 6248473, *1). Indeed, "it is the lawyer's job, not an expert's job to make arguments about the meaning of the exhibits." (*Id.*).

---

[1] In footnote 1 of Plaintiffs' response, Plaintiffs attempt to excuse their reliance on Dr. Leo's deposition testimony in attempt to substantiate some semblance of a methodology, arguing that an expert report need not include every detail of an expert's testimony. But Plaintiff's do not cite anything that stands for the proposition that an expert report should not stand on its own. In fact, Rule 26 states that the expert report should include a complete statement of the opinions and the basis for them, as well as the facts and data the expert considered in forming them. Rule 26 (a)(2)(B)(i), (ii).; *Kraft Foods*, 2023 WL 6248473, *1. Thus, even if his deposition testimony provided evidence of a valid methodology (which it does not), Plaintiffs present no authority excusing a retained expert from describing his or her methodology in the disclosed report.

[2] Here they acknowledge Leo relied on unproven allegations, claiming some have more corroboration than others, but in their statement of additional facts, Plaintiffs refer to the allegations as "documented evidence" of coercion.

4

Plaintiffs also attempt to defeat the *Daubert* challenge by setting out Dr. Leo's credentials. (Dkt. 770, p. 1-2). But that is perplexing because the City did not challenge Dr. Leo qualifications as a general matter. On the contrary, the City's brief acknowledged that while Dr. Leo does have purported expertise in the field of social science, and, particularly, confessions, he did not use any of that expertise to support his *Monell* opinions in this case. (Dkt. 747, p. 2-3).

For instance, Plaintiffs point out that Leo has (1) conducted empirical research regarding psychology of interrogations, psychological coercion, and other topics, (2) done field work, (3) written and published articles and books, and (5) been qualified to testify many times. (Dkt. 770, p. 1-2). This only emphasizes the City's point: Leo did not include any of the above to support his policy opinions. (Dkt. 747, Ex. 2, p. 78-94). As the City showed in its opening motion, Leo makes no reference to any social science principles or psychological risk factors for coerced confessions anywhere in the *Monell* portion of his report. (Dkt. 747, p. 3, 5). He did not include one reference to any research, publication, or study. (Dkt. 747, Ex. 1, p. 78-94). Nor did he reference any first-hand information or observations. (*Id.*). Plaintiffs do not deny this. Accordingly, the fact that he may have expertise in the field is no matter if he did not show how he applied it to support his *Monell* opinions. *Miniasian v. Standard Charted Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (an expert cannot "offer credentials rather than analysis").

Plaintiffs also fail to respond to other issues raised by the City. For one thing, the City stated in its motion that Dr. Leo asserts that CPD coerced African American and Latino suspects, but nowhere in his report does he mention the race of any suspects. (Dkt. 747, p. 13). Plaintiffs do not challenge this. (Dkt. 770). The fact that Dr. Leo asserts that the individuals discussed in his case summaries were African American and Latino, without demonstrating how he knows that,

5

is more evidence that he merely parroted information he gleaned from documents supplied by Plaintiffs' counsel, rather than apply any reliable expert analysis.

Plaintiffs also ignore arguments made by the City regarding Dr. Leo's notes. Dr. Leo stated that he created the notes as a memory aide, an ultimately read from them at his deposition.[3] (Dkt. 747, p. 3-5). Yet, Plaintiffs asserted a work product objection over how Dr. Leo created the notes. (Dkt. 747, p. 5). This, coupled with the fact that (1) the notes track the elements of Plaintiffs' *Monell* claim, (2) do not include any social science or psychological terminology or verbiage, and (3) Dr. Leo did not bill enough time in his invoices to account for the time necessary to create the notes, leads the City to conclude that Plaintiffs' counsel contributed to their creation. (Dkt. 747, p. 3-6, 10-11). What's more, they do not appear to be anything more than what a lawyer or law clerk could have prepared for him.[4] (Dkt. 747, Ex., 6). Plaintiffs provide no response to that accusation.

Instead, Plaintiffs wrongly assert that the notes contain the same information in Dr. Leo's report. (Dkt. 770, p. 11-12). That is incorrect. A simple review shows that the case summaries in the report are often one sentence long; however, the notes are at least a full page if not more for each case. (*Compare* individuals identified in Dkt. 747, Ex. 2, at p. 78-94, with same individuals identified in Dkt.747, Ex. 6). Plaintiffs also assert that the Court should find Dr. Leo's lack of accounting for his time in creating the notes a matter of weight, not the admissibility of his opinions. (Dkt. 770, p. 12). That misses the point. The fact that he did not appear to bill enough

---

[3] Even though he had notes as a memory aide, Dr. Leo was still unable to answer substantive questions about many of the cases that purportedly form the basis for his pattern and practice opinion. *See*, citations to testimony at p. 4, *supra*.

[4] Consider as one example the Fulton/Coleman case included at pages LEO 2282-2284. The notes refer to transcripts and what those individuals assert in their civil complaints. That is no different from how a lawyer might parse the information. More to the point, it is not described in any way that has anything to do with social science or psychology.

time to create the notes is evidence that the legal team may have been involved in preparing them, and potentially to a large extent. That makes it an admissibility issue because it further proves that reviewing documents and summarizing them does not require expert analysis. (Dkt. 747, p. 5, 11).

II.     **Plaintiffs' cited authority does not establish the admissibility of Dr. Leo's opinions.**

Rather than showing Dr. Leo relied on methods and principles to reach his conclusions, Plaintiffs seem to argue that because Dr. Leo is a social scientist, simply reviewing documents and summarizing them is a sufficient methodology. (Dkt. 770, p. 4-5). Not so. This Court has already rejected that sort of expert testimony. In *Kraft Foods*, the plaintiffs proffered an expert who reviewed documents and then drew conclusions about what the documents mean. 2023 WL 6248473, *2. This Court excluded that testimony for failing to express any principles and methods, stating, among other things, that "opinions that merely summarize documents, and apply a heavy coat of Expert Gloss, aren't helpful to the jury." *Id.*,

The opinions Plaintiffs cite do not support their position. In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 236, 109 S. Ct. 1775, 1783 (1989), a social psychologist testified, but the opinion cited did not discuss the admissibility of her testimony. Thus, the opinion does not detail what her principles and methods were, and so it provides no comparison to what Dr. Leo did here. Indeed, the opinion does not mention the *Daubert* standard or any of the rules of evidence regarding expert testimony, and it appears, based on description of her testimony, that the expert relied on factual evidence developed in the case, not merely unproven allegations.

In *Walden v. City of Chi.*, 755 F. Supp. 2d 942, 953 (N.D. Ill. 2010), the Court permitted the expert testimony of a historian, but the Court made clear that the expert employed certain research techniques that were common in his field and, thus, concluded that he applied the "same standards of intellectual rigor" as he did in his academic work. That is far from what Dr. Leo did

here, which was apply no methodology at all. Further, as explained in the City's motion, the lack of such information is abundantly apparent when compared to the first portion of his report devoted specifically to the confessions of Reyes and Solache, where he went into extensive detail regarding various aspects of the social science research, risk factors for false confessions, coercion techniques, and more. (Dkt. 747, p. 3, 11-13); *Obrycka v. City of Chi.*, 792 F. Supp. 2d 1013, 1026 (N.D. Ill. 2011) (excluding expert testimony given disparities between expert's professional standards and the ones he employed as an expert in the case).

In *Dukes v. Wal-Mart*, Inc., 222 F.R.D. 189, 191 (N.D. Cal. 2004), the Court permitted the testimony of a social scientist in a discrimination case. There, however, the expert conducted a "social framework analysis." The opinion does not explain what that analysis constitutes, but the Court accepted it as an acceptable social science methodology. Further, based on the opinion, it does not appear that the Defendants challenged the expert for failing to provide any methodology at all, like Leo here.

In *Bowers v. NCAA*, 564 F. Supp. 2d 322, 362 (D.N.J. 2008), the court permitted the testimony of a professor of psychiatry who opined that "the NCAA did not have adequate information about learning disabilities or special education courses before it implemented [its] bylaws, and that this information deficit led to the formulation of a flawed policy." The Court allowed the testimony, finding, unlike Dr. Leo, that he relied on specific data, documents, and testimony related to NCAA's policies, as well as specific literature in the field, in connection with his own knowledge and experience. The Court also found that the expert identified specific eligibility criteria to suit the needs of individuals with learning disabilities that the NCAA could have employed but did not. In that case, the expert offered more than reading documents and

summarizing them with his own spin. Further, the Court excluded testimony from the expert that was conclusory and merely quoted evidence in the record. *Id.*

And, lastly, Plaintiffs rely on *Prado Alvarez v. R.J. Reynolds Tobacco Co.*, 405 F.3d 36, 37 (1st Cir. 2005) apparently to defend Dr. Leo's reliance on newspaper articles to support allegations of abuse. *Prado* involved a much different issue. There the question was whether the general public in Puerto Rico, including the decedent in the case, lacked knowledge about the risks of smoking by 1960, when the decedent began smoking. In that case, the issue of what the newspapers published about the dangers of smoking was relevant to the case. The opinion does not support the notion that it is permissible for an expert to rely on newspaper articles as source material to support allegations of coercion.

### III. Plaintiffs' remaining arguments misdirect from Leo's lack of expert analysis.

Plaintiffs offer several other arguments that attempt to divert attention from the core issue: whether Dr. Leo applied a reliable methodology to support his opinions.

Plaintiffs assert that the City cherry picked one case, as if that was only one case in Dr. Leo's summaries that the City argued was problematic. (Dkt. 770, p. 7). That is not accurate. The City addressed the Frank Bounds case in detail to provide an example of how Dr. Leo's report demonstrated no expertise or expert methodology, but, as stated in the City's Motion, the other cases summaries are flawed in the same way – they are just summaries of allegations, not expert analysis. (Dkt. 747, p. 9-12; Dkt, 747, Ex. 1, p. 78-94).

Plaintiffs also provide the justification that the material Dr. Leo review was "voluminous." (Dkt. 770, p. 7). But the fact that Plaintiffs counsel provided him with a lot of documents does not undermine the fact that all Dr. Leo did was review allegations, summarize them, and then conclude the CPD had an unconstitutional policy to coerce confessions, going so far as to label then false and fabricated, without applying any reliable methods or principles, and even stating that the City's

9

policymakers had notice of such practices, again, without providing any expert analysis to support it.

Lastly, Plaintiffs fault the City for not presenting a rebuttal expert and for obtaining six months of discovery after Plaintiffs production of the underlying material that they provided Dr. Leo. The City did provide a rebuttal expert. (Dkt. 770, p. 10). Dr. Michael Welner addressed Plaintiffs' own confessions, as well as Dr. Leo's policy opinions. (Ex. 20, Welner report, attached here, p. 42-46). Not surprisingly, Dr. Welner pointed out Dr. Leo's lack of methodology, which, of course, is difficult to rebut when it is absent from Dr. Leo's report. Among other things, Dr. Welner stated:

> In his deposition, [Dr. Leo] acknowledged that he relied, in part upon a chart prepared by an advocate about events that happened in Area 2 & 3, without inquiry to learn the ground truth, and conceded that he did not engage in fact finding. His "methodology" was the same for Area 4 & 5 cases. He explained at his deposition that his methodology was to accumulate allegations of physical and psychological abuse and thus was able to conclude the allegations established a pattern and practice. There is no evidence that he performed any analysis other than to stack allegations of a few sentences that do not reflect assessment for their relevance or commonality or differences from the Solache and Reyes allegations.

(Ex. 20, p. 42). Dr. Welner determined that Dr. Leo's approach was incompatible with the role of a forensic examiner and left many unanswered questions. Dr. Welner questioned,

> How indeed do any of those cases inform what happened in the interrogation of Mr. Reyes and that of Mr. Solache? How many of those cases involved a co-defendant that is undisputedly guilty who implicated the complainant? How many of those cases were not prosecuted or vacated because of pervious complaints in earlier cases about the detective, as opposed to the likelihood of innocence? Where is the evidence for racial prejudice in this case? What injuries demonstrated in this case correlated to the injuries demonstrated in other cases of confirmed coercion? How many of those cases inform what caused Mr. Reyes and Mr. Solace to confess, and how do they do so?

(Ex. 20, p. 43). As for the additional time in discovery. Judge Harjani granted the City that additional time because Plaintiffs disclosed over 71,000 pages of documents after the close of discovery on the eve of disclosing their expert reports, effectively giving the City no time to

evaluate it and develop its defense strategy. (Dkt, 562; Ex. 21, March 7, 2022 Transcript, attached here, p. 4-5, 16). In fact, the only reason Judge Harjani did not find Plaintiffs committed a discovery violation is because their counsel told the Court that they would only rely on the documents through their expert, not as independent evidence. (*Id.*). Yet, now, at summary judgment, Plaintiffs have turned around and done just the opposite. Their statement of additional facts includes references to the materials they produced well after the close of fact discovery as independent evidence, without citing to Dr. Leo's opinions. Dkt. 765, para. 87, 89). In fact, the exhibit they use to support those facts is 7,443 pages long, which is more than all of the exhibits filed by Defendants with their original motions for summary judgment, and flouts the Court's effort to streamline summary judgment. (Dkt. 696, 721, 738). This Court should uphold the integrity of Judge Harjani's ruling and disregard those fact paragraphs, as well as Plaintiffs' efforts to use their own discovery tactics as a defense to the *Daubert* challenge.

**IV.     Plaintiffs fail to show how Dr. Leo's testimony is helpful to the jury.**

The City showed in its motion that Dr. Leo's testimony is not helpful to the jury because the jury does not need an expert to read or summarize documents for them without expert analysis. (Dkt. 747, p. 13-15). Plaintiffs' only arguments in response are that (1) Dr. Leo's bottom line conclusion is not something within the average layperson's knowledge, and (2) that Dr. Leo will assist the jury to "streamline" the presentation of evidence of such voluminous material. Both are meritless. (Dkt. 770, p. 10-11).

First, Plaintiffs give Dr. Leo's opinions far too much credit. He did not provide any expert analysis of "a citywide pattern of coerced confessions" or any expert analysis of the "failures of high-ranking police officials to appropriately respond after learning about what was going on." As all the above demonstrates, nothing of that sort is in his report. Plaintiffs ignore that the jury does

11

not need an expert to read allegations to them, nor do they require expert testimony to explain that an allegation of being beat to confess amounts to an allegation of coercion for purposes of obtaining a confession. *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (rejecting expert's opinion that consisted mostly of drawing inferences from the evidence that he was no more qualified than the jury to draw).

Further, as to the presentation of a large volume of material, Plaintiffs ignore that they do not have any other alternative. Despite their efforts to use the material as substantive evidence, contrary to Judge Harjani's order, to stave off summary judgment, they did not develop evidence of the underlying allegations. In that case, they appear to concede that they are, in fact, planning for Dr. Leo to essentially read and summarize allegations of abuse to the jury because they failed to develop any other evidence to support their coerced confession policy claim.[5] Thus, even more than serving as the mouthpiece for the lawyers' closing argument, Plaintiffs want to use Dr. Leo as a mouthpiece for all the underlying "evidence" supposedly supporting it. That is not permissible expert testimony. *Kraft Foods*, 2023 WL 6248473, *2.

Finally, the City pointed out in its motion that even though Dr. Leo purported to summarize documents, his case summaries did not reflect the material he cited in support. For instance, Leo relied on newspaper articles, incomplete transcripts, documents from out of state courts, and documents that affirm the criminal defendants' conviction, undermining the allegations of abuse. (Dkt. 747. P. 14-15). Plaintiffs do not contend with those facts. Instead, Plaintiffs wrongly assert that the City argued the "data" Dr. Leo relied on is unreliable. (Dkt. 770, p. 7-8). But Dr. Leo did not rely on any "data" that the City described as unreliable. Rather, the City's motion explained

---

[5] In fact, Plaintiffs admitted to Judge Harjani that they could not use the investigative files that were produced in discovery (after much litigation) to prove their coercion and fabrication policy theories. (Ex.21, March 7, 2022 transcript, p. 27-28).

that, in addition to not providing any express methodology or application of his expertise, Dr. Leo supported some of his case summaries with information that on its face do not support the allegations of abuse for which City policymakers were on notice. (Dkt. 747, p 14-15). Put differently, not only are Plaintiffs using Dr. Leo to provide "interpretive gloss" over the documents, but they are also trying to use him to plaster over the holes in the evidentiary support they provided to him.

All this is to say that Dr. Leo did not apply any specialized knowledge to determine an alleged practice of coercion of false inculpatory evidence. Without specialized knowledge, his testimony is not helpful. "And if isn't helpful, it isn't admissible." *Kraft Foods*, 2023 WL 6248473, *2.

WHEREFORE, Defendant, City of Chicago, Respectfully Request This Honorable Court Grant Its Motion To Bar Plaintiff's Expert Dr. Richard Leo in its entirety, and for any other relief as this Court deems just and reasonable.

Dated: February 18, 2025

Respectfully Submitted,

/s/ *Catherine M. Barber*
Catherine M. Barber
Special Assistant Corporation Counsel
*One of the Attorneys for City of Chicago*

Eileen E. Rosen
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Lauren M. Ferrise
ROCK FUSCO & CONNELLY, LLC
333 W. Wacker Dr., 19th Floor
Chicago, IL 60606
(312) 494-1000
cbarber@rfclaw.com