1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARTURO DeLEON-REYES,                    )    Case No. 18 CV 1028
                                        )
                  Plaintiff,            )
                                        )
        v.                              )
                                        )
REYNALDO GUEVARA, *et al.*,             )
                                        )
                  Defendants.           )
_____        )
GABRIEL SOLACHE,                        )    Case No. 18 CV 2312
                                        )
                  Plaintiff,            )
                                        )
        v.                              )
                                        )
CITY OF CHICAGO, *et al.*,              )    Chicago, Illinois
                                        )    August 21, 2025
                  Defendants.           )    1:59 p.m.

                TRANSCRIPT OF PROCEEDINGS - MOTIONS
             BEFORE THE HONORABLE STEVEN C. SEEGER

APPEARANCES:

For Plaintiff            LOEVY & LOEVY
DeLeon-Reyes:            BY:  MR. STEVEN E. ART
                         311 N. Aberdeen Street, 3rd Floor
                         Chicago, Illinois 60607


For Plaintiff            THE PEOPLE'S LAW OFFICES
Solache:                 BY:  MS. JANIS M. SUSLER
                         1180 N. Milwaukee Avenue
                         Chicago, Illinois 60642



                        *   *   *   *   *

                PROCEEDINGS REPORTED BY STENOTYPE
     TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

APPEARANCES (Cont'd):

For Defendant        BORKAN & SCAHILL
Guevara:             BY:  MR. TIMOTHY P. SCAHILL
                     Two First National Plaza
                     20 S. Clark Street, Suite 1700
                     Chicago, Illinois 60603


For Defendants       THE SOTOS LAW FIRM, P.C.
Halvorsen, Dickinson, BY:  MR. JOSH M. ENGQUIST
Rutherford, and      141 W. Jackson Boulevard, Suite 1240A
Trevino:             Chicago, Illinois 60604


For Defendant City   ROCK, FUSCO & CONNELLY
of Chicago:          BY:  MS. EILEEN E. ROSEN
                     333 W. Wacker Drive, 19th Floor
                     Chicago, Illinois 60606


Court Reporter:      AMY M. KLEYNHANS, CSR, RPR, CRR
                     Official Court Reporter
                     219 S. Dearborn Street, Room 2318A
                     Chicago, Illinois 60604
                     Telephone:  (312) 818-6531
                     amy_kleynhans@ilnd.uscourts.gov

(Proceedings heard in open court:)

THE CLERK:  18 CV 1028, DeLeon-Reyes versus Guevara, *et al.*

THE COURT:  Good afternoon, everyone.

Let's get everyone's appearances on the record, if you would, please.

Start with counsel for the plaintiffs.

MR. ART:  Good afternoon, Your Honor.

Steve Art for Plaintiff Reyes.  Good afternoon.

MS. SUSLER:  Jan Susler for the plaintiff, Gabriel Solache.

THE COURT:  All right.  Good afternoon, folks.

And the defense team.

MS. ROSEN:  Eileen Rosen on behalf of Defendant City of Chicago.

MR. ENGQUIST:  Josh Engquist on behalf of the individual officers, with the exception of Renaldo Guevara.

MR. SCAHILL:  Good afternoon, Your Honor.

Timothy Scahill on behalf of Defendant Guevara.

THE COURT:  All right.  Welcome, everyone.  Thank you for being here.

Let me repeat on the record what I said a moment ago.

Thank you, folks, for your professionalism with all of the juggling with the schedule on today's hearing.  There's been more juggling than your average three-ring circus.  We've

been moving a few things around to accommodate some criminal cases. So thank you for bearing with me.

I don't like doing that, and I know it's a little bit burdensome, but thank you for your professionalism.

Folks, we are here to deliver an oral ruling on a couple pending motions.

Today is the third in a series of oral rulings. You'll remember that we did a couple already.

I think we did one a couple of weeks ago on the defendants' motion for summary judgment. And we did another ruling about a week or so ago on several of the experts. Today is, again, the third in the series of rulings. There will be at least one more series, maybe two.

So today I'm going to cover plaintiffs' motions for summary judgment.

Needless to say, I would rather give you a written ruling, if I could. But the limits on judicial resources are a very real thing. And in the interest of speed, I'm just going to give you an oral ruling.

If you want a written ruling, you can order the transcript.

So, without further ado, here it goes.

We're here today for an oral ruling on plaintiffs' motion for summary judgment against the City of Chicago. Plaintiffs filed a summary judgment motion in both of the two

cases. The motion is Docket No. 753 in the DeLeon-Reyes case, and it is Docket No. 584 in the Solache case.

For the sake of simplicity, when I refer to the dockets today, I'll be referring to the docket in the DeLeon-Reyes case. For clarification, when I cite the docket today, I'm citing the docket in the DeLeon-Reyes case, meaning Case No. 18 CV 1028.

For the following reasons, plaintiffs' motions for summary judgment are hereby denied.

I will start with a CliffNotes version of the facts.

You all know the background of the case like the backs of your hand. I'm not going to go into all of the details of the story here. The case is over seven years old, and the docket weighs in at over 800 docket entries.

So I will give only a brief background.

The case stems from the wrongful conviction of Plaintiffs Gabriel Solache and Arturo DeLeon-Reyes for first-degree murder in June 2000.

Over 25 years ago, Adriana Mejia murdered Mariano and Jacinto Soto, a husband and wife, and kidnapped their two children, 3-year-old Santiago and baby Maria.

Adriana Mejia pleaded guilty in February 2001 and remains in prison to this day. Solache and Reyes lived in the same apartment as Adriana. Investigators at the Chicago Police Department quickly homed in on them as potential accomplices to

Adriana Mejia's crime.

After an investigation, Solache and Reyes were each convicted of two counts of first-degree murder in June of 2000.

Their convictions were based largely on confessions that they made to investigators in CPD's Area 5 police district.

But Solache and Reyes maintained their innocence. They asserted that their supposed confessions were coerced and fabricated by members of the CPD.

After years of post-conviction proceedings, a judge ultimately suppressed the confessions. Without that key piece of evidence, the Cook County State's Attorney decided to dismiss the indictment, and a state court vacated plaintiffs' convictions. In November of 2022, Solache and Reyes each received certificates of innocence.

Plaintiffs now bring a series of constitutional and state law claims against the detectives who investigated their case and against the City of Chicago.

The motions at issue today are about plaintiffs' *Monell* claim against the City of Chicago.

The gist of the claim is this: Plaintiffs allege that the City of Chicago had a widespread policy, practice, or custom of withholding evidence from criminal defendants. In plaintiffs' view, that widespread policy, practice, or custom was a cause of their wrongful convictions.

Plaintiffs moved for partial summary judgment. Plaintiffs want summary judgment on the issue of whether there was a widespread practice, custom, or policy of withholding evidence. In other words, plaintiffs don't ask for summary judgment on whether the policy, practice, or custom caused their violations -- excuse me -- caused their convictions. Instead, plaintiffs seek summary judgment on whether a widespread practice, custom, or policy existed at all.

So it's a narrow issue.

Before diving in, I wanted to flag the standard for motions for summary judgment. You all know the standard. Go read Rule 56 and read *Anderson v. Liberty Lobby*.

In a nutshell, a district court shall grant summary judgment, quote, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," unquote. I'm quoting there Rule 56(a).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

The Court construes all facts in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.

Summary judgment is appropriate if, on the evidence provided, no reasonable jury could return a verdict in favor of

the nonmovant.

With the stage set, I will now turn to the *Monell* arguments.

Everyone here is well versed in *Monell* case law. Needless to say, *Monell* claims come from the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658. It was decided in 1978.

Under *Monell*, municipalities can be liable under 14 [*sic*], United States Code, Section 1983 for constitutional violations.

A *Monell* claim has three requirements. First, there must be a deprivation of a constitutional right. Second, there must be a custom, policy, or practice of the City. And third, the cause of the deprivation must be an action taken pursuant to the custom, policy, or practice. The Supreme -- excuse me -- the Seventh Circuit explained this in *Dean v. Wexford Health Services*, 18 F.4th 214, at page 235, Seventh Circuit 2021.

A plaintiff can allege multiple *Monell* theories in support of a claim. A plaintiff doesn't need to stick to just one theory.

In this case, plaintiffs allege several *Monell* theories, but only one theory is at issue today. It's about a custom, policy, or practice of withholding evidence.

Plaintiffs argue that the City had a, quote, "policy of withholding or failing to disclose exculpatory or

impeachment evidence," unquote. That's from paragraph 1 of their statement of facts, Docket No. 755.

And plaintiffs clarified that they seek summary judgment on only the second *Monell* requirement, meaning the existence of a policy, practice, or custom. They say that on page 2 of their memo in support of their motion. Take a look at page 2, Docket No. 754.

In other words, at this stage, plaintiffs are not arguing about the second -- let me say that again. I'm sorry.

In other words, at this stage, plaintiffs are not arguing about the first or the third requirements of a *Monell* claim. That is, plaintiffs don't seek summary judgment on the deprivation of a constitutional right or about causation.

So in short, plaintiffs want summary judgment on only one issue. The issue is whether the City had a policy, custom, or practice of withholding evidence.

Plaintiffs make two arguments for that conclusion. Those arguments are on pages 4 and 18 of plaintiffs' memo.

First, plaintiffs argue that collateral estoppel precludes the City from arguing that it did not have a policy, practice, or custom of withholding evidence. As plaintiffs see things, other courts have already resolved that issue, so the issue is closed.

Second, plaintiffs make an argument based on the record at hand, putting aside what other courts have held.

Plaintiffs argue that there is no genuine dispute of material fact that the City has an evidence-suppression policy, practice, or custom.

I will now address those arguments one at a time. And I'll start with the first issue: collateral estoppel.

The doctrine of collateral estoppel is also known as issue preclusion.

As the Supreme Court has said, the doctrine of collateral estoppel, quote, "bars relitigation of an issue of fact or law raised and necessarily resolved by a prior judgment," unquote. That's from *Bravo-Fernandez v. United States*, 580 U.S. 5, at page 10, 2016.

In other words, litigation is not like baseball. You don't get another bat. You don't get -- I'm sorry. Let me say that again.

In short, litigation is not like baseball. You don't get another at-bat once you've struck out.

Collateral estoppel has four requirements. Quote, "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must be fully represented in the prior action," unquote. I'm quoting there from *Matrix IV Incorporated v. American National Bank and Trust Company of*

*Chicago*, 649 F.3d 539, at page 547, Seventh Circuit 2011.

This case involves offensive collateral estoppel. Offensive collateral estoppel, quote, "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully," unquote, in another case. I'm quoting *Parklane Hosiery Company v. Shore*, 439 U.S. 322, 326, Footnote 4, decided in 1979.

Collateral estoppel applies to factual inferences that necessarily flow from a general verdict. See *Kluppelberg v. Burge*, 267 F.Supp.3d 773, at page 776, Northern District of Illinois 2017.

Here's one of the key points: The inferences must be necessary inferences, meaning that the jury must have made those inferences en route to its general verdict. That's from *Bravo-Fernandez*, 580 U.S. at page 10. If there was another path for the jury to reach the same conclusion, then collateral estoppel does not apply.

To determine whether a particular factual finding was necessary to a general verdict, courts look at the jury instructions and the verdict in the earlier case.

The Supreme Court addressed this issue in *Grogan v. Garner*, 498 U.S. 279, at pages 281 to 282, decided in 1991. The Supreme Court assessed whether a party was estopped from relitigating a finding of fraud by examining the jury instructions and the verdict in the prior case.

Another good example is *Gerard v. Gerard*, 780 F.3d 806, at page 811, Seventh Circuit 2015. In that case, the Seventh Circuit assessed an estoppel argument by looking at the jury instructions and the verdict in the earlier case.

Here, plaintiffs argued that the jury verdicts in two other cases established that the City had a policy of withholding evidence. The cases are *Fields v. The City of Chicago* and *Rivera v. Guevara*. But plaintiffs try to squeeze too much juice out of those two cases.

I'll start with the *Fields* case.

For the *Monell* claim in *Fields v. City of Chicago*, the jury instructions required that the jury find, among other things, that, quote, "it was the policy of the City of Chicago to conceal material exculpatory and/or impeachment evidence," unquote. I'm quoting from the jury instructions in *Fields*. You can find it at Docket -- excuse me -- in Case No. 10 CV 1168. It's at ECF entry 1169. I just read from page 4.

The jury in *Fields* found the City of Chicago liable for the *Monell* claim. You can find the decision on Westlaw. It's 2017 WL 4553411, Northern District of Illinois 2017.

I'll now turn to the *Rivera* case.

For the *Monell* claim in *Rivera v. Guevara*, the jury instructions required that the jury find, among other things, that, quote "the City of Chicago had a policy of concealing material exculpatory and/or impeachment evidence." That's from

page 56 of the *Rivera* jury instructions, which you can find on the docket, Case No. 12 CV 4428, ECF entry 671.

The jury in *Rivera* found the City of Chicago liable for the *Monell* claim. A decision is on Westlaw. It's 2019 WL 13249674, Northern District of Illinois 2019.

For now, the punch line of those two cases is both the *Fields* case and the *Rivera* case did involve the question of whether the City of Chicago had a policy of concealing materially -- material exculpatory and/or impeachment evidence.

It is true that in both *Fields* and *Rivera*, the jury found that the City had a policy of concealing evidence.

That's true.

But that does not mean that plaintiffs here are entitled to a finding of collateral estoppel.

When applying collateral estoppel, a district court will preclude the relitigation of facts that were necessarily decided by a jury's verdict.

A Court will preclude relitigation only of facts that were necessarily decided by the prior verdict.

The juries in *Fields* and *Rivera* made decisions about specific policies in discrete areas. The juries in *Fields* and *Rivera* did not rule that the City had a general policy of suppressing evidence.

In the case at hand, plaintiffs don't ask the Court to extract certain necessary factual findings from those two

verdicts and then use those findings to preclude relitigation of certain facts in this case.

Instead, plaintiffs ask this Court to extrapolate from those two cases. Plaintiffs ask this Court to preclude any relitigation of whether there was a policy of concealing evidence in general. Take a look at page 4 of plaintiffs' memo, Docket No. 754.

The verdicts in *Fields* and *Rivera* did not necessarily find that there was a general overarching policy of concealing evidence.

The holdings in *Fields* and *Rivera* were more narrow than that.

The *Fields* and *Rivera* juries found a policy of concealing evidence based on a specific set of facts offered at those trials.

But here, in the case at hand, plaintiffs want to infer from those verdicts that there must be a general overarching, sweeping policy of concealing evidence that is untethered from the specific facts that led to those two verdicts.

That's more than just an inferential leap; it's an inferential triple jump.

For example, consider *Fields*. In the *Fields* case, the relevant evidence was about the police's use of street files. The case was about street files. Street files are unofficial,

off-the-books police files. To get the details on what street files are, you can take a read at the *Palmer* decision. It's 755 F.2d 560. It was decided by the Seventh Circuit in 1985.

In the *Fields* case, the plaintiffs' only evidence for the *Monell* claim was evidence about the use of street files.

Let me say that again.

In *Fields*, it was about whether there was a policy of suppressing street files. So for the jury to find that there was a policy of concealing evidence, the *Fields* jury necessarily found that there was a policy of concealing evidence about street files. That's from -- was also discussed in the *Kluppelberg* case. In other words, the *Kluppelberg* case discussed *Fields*, 276 F.Supp.3d, at 778.

The *Fields* case was about street files. The *Fields* case involved a jury finding that the policy of the City was to suppress street files. The *Fields* case did not make an overarching finding about the City's policy, practice, and custom of suppressing evidence in general.

The jury's finding in *Fields* did not necessarily mean that there was a general policy of concealing evidence above and beyond the context of street files.

In other words, all we can conclude from the *Fields* verdict is that there was a policy of using street files to conceal evidence.

Let me say that another way.

The issue in *Fields* was about whether the City had a policy, practice, or custom of suppression of evidence in connection with street files. It was not an overarching finding about the policies, practices, and customs of the City for suppressing evidence in general. It was more narrow than that. It was specific. It was tailored to street files.

Let's talk about the *Rivera* case.

In *Rivera*, the jury heard evidence of specific *Monell* policies. For example, the jury heard evidence about a policy of using street files. Once again, take a look at the trial transcript in *Rivera*, ECF Docket No. 688. The case number is 12 CV 4428. Take a look lines 2193 -- excuse me -- pages 2193 and 2194 of ECF entry 688.

The *Rivera* jury heard evidence about a policy of failing to properly train and discipline its officers. That's from page 5 of the *Rivera* case at 2018 WL 11568609, Northern District of Illinois 2018.

Suffice it to say that the jury in *Rivera* heard evidence for several *Monell* policies and then concluded that there was some policy of concealing evidence.

But I cannot say definitively what facts the jury verdict -- excuse me -- the jury necessarily decided. I cannot tell what evidence persuaded the jury. I can't say what specific policy was found by the *Rivera* jury. I cannot determine what was necessarily decided.

Here is the overarching key point, folks:  In both the *Fields* case and the *Rivera* case, the juries did not necessarily find a broad, all-encompassing general policy of suppressing evidence.  That's an overly broad reading of those two cases.

I can't reach that finding, so I cannot find that there is a need for collateral estoppel.  In other words, I cannot find that there is necessarily a broad, all-encompassing policy of suppressing evidence by the City of Chicago, because I don't think the *Fields* and *Rivera* cases necessarily reach that conclusion.

Plaintiffs point to the *Kluppelberg* case.  In that case, a Court in this district precluded the City from arguing that it did not have a policy of withholding evidence.  The Court in that case based its reasoning on *Fields*.  The plaintiffs ask this Court to do the same thing and make a decision in line with the *Kluppelberg* case.

I read the *Kluppelberg* case differently.

The *Kluppelberg* Court drew much tighter lines than plaintiffs want me to draw in my case.

In *Kluppelberg*, the plaintiff argued that the *Fields* verdict precluded the City from arguing that it did not have a policy of concealing evidence contained in the street files. Take a look at the *Kluppelberg* case, 276 F.Supp.3d, at page 775.

The *Kluppelberg* Court noted that the *Fields* jury must

have found that there was at least some policy of concealing evidence since the jury instructions required the plaintiff to prove that the City had a policy of concealing evidence.

But the *Kluppelberg* Court explained that for the plaintiff to use the *Fields* verdict for preclusion, the plaintiff needed to show that the *Fields* jury necessarily held that there was a policy of concealing evidence, specifically through the use of street files.

The City argued that it was, quote, "not necessary that the *Fields* jury found specifically that the withheld evidence was street files," unquote. I'm quoting there from page 777. So in the City's view, preclusion did not apply.

The Court in the *Kluppelberg* case disagreed with the City. The Court in *Kluppelberg* noted that the only evidence that the *Fields* jury heard on the *Monell* claim was evidence about the use of street files. In the words of the *Kluppelberg* Court, quote, "with respect to the jury's *Monell* finding, there is no other policy or practice that would have supported the verdict, because all the *Monell* evidence and argument related to the CPD's use" -- excuse me -- "because all the *Monell* evidence and argument related to the CPD's use of street files," unquote. In other words, the street files were the whole ball game.

So the *Kluppelberg* Court did apply issue preclusion, but the Court specifically held that the preclusion extended

only to the policy of concealing evidence contained in the street files.

Plus, in Footnote 6, the *Kluppelberg* Court specifically noted that it looked only at cases dealing with street files in deciding whether to apply preclusion to a street files case. It did not consider cases where the City was found to have a policy of suppressing other types of evidence.

As an aside, I note that the *Rivera* case declined to follow *Kluppelberg*. That's on page 1063 of *Rivera*, 319 F.Supp.3d 1004, Northern District of Illinois 2018.

The Court in *Rivera* relied on a separate, independent reason to deny preclusion. The Court in *Rivera* pointed to the passage of time. The *Rivera* investigation and conviction took years after the investigations and convictions in *Fields* and *Kluppelberg*.

The *Rivera* Court noted that the investigations in *Fields* and *Kluppelberg* ended with convictions in 1986 and 1984, respectively. But the investigation in *Rivera* took place in 1988, and *Rivera* was convicted in 1988.

In *Rivera*, the Court held that, quote, "the passage of time renders the issue in *Fields* sufficiently dissimilar to defeat collateral estoppel," unquote.

In the current case, the City makes the same argument, but I'm not going to address that argument because I decline to

apply collateral estoppel for other grounds.

The punch line is that *Kluppelberg* does not help the plaintiffs because the *Kluppelberg* case specifically zeroed in on street files.

Here is the punch line: Plaintiffs' preferred reading of the jury verdicts in *Fields* and *Rivera* is too expansive. *Fields* and *Rivera* limited their holdings to specific pieces of evidence.

*Fields* and *Rivera* were about whether the City had a policy, practice, and custom of suppressing evidence relating to street files.

*Fields* and *Rivera* did not involve findings that the City had a general overarching practice of withholding evidence in general.

Again, the question for collateral estoppel is what the jury in a prior case necessarily found.

The juries in *Fields* and *Rivera* did not necessarily make findings about a general policy of withholding evidence. That is an overly sweeping reading of those two cases.

Let me just put it to you in plain English, nice and simple.

I can't apply collateral estoppel unless the prior case is on point and I can say what the prior jury necessarily found.

On this record, I cannot say with any level of

confidence that the juries in *Fields* and *Rivera* necessarily found that there is a general overarching policy, practice, or custom of suppressing evidence.

It looks to me like the findings in *Fields* and *Rivera* were more narrow than that.

I cannot necessarily say that the juries in those two cases made a verdict and made a finding about a general practice of withholding evidence. By my reading of those two cases, it looks like they were confined to street files. At the very least, that's a plausible reading of those two cases.

I cannot find with any level of confidence that the juries in those two cases necessarily found a general practice of withholding evidence, so I cannot apply collateral estoppel.

So the motions for summary judgment based on collateral estoppel are, therefore, denied.

I will now turn to plaintiffs' second argument. The second argument is not about findings in other cases. It's not about the *Fields* case. It's not about the *Rivera* case.

The second argument is about the record in the case at hand.

Plaintiffs argue that the City's policymakers implemented facially deficient policies that permitted the suppression of exculpatory evidence. And plaintiffs argue that the City has no evidence to oppose that theory.

As the Court noted earlier, this case has a lot of

moving parts and a lot of facts. On the literary spectrum, it's more like a multivolume encyclopedia than a short story.

So before getting into the details, I'm going to set the stage with a high-level overview of plaintiffs' position and the basis for it. In the Court's view, the background will make the rest of the ruling easier to swallow.

Here it goes.

The City litigated and lost two prior cases: the *Palmer* case and the *Jones* case. *Palmer* was 755 F.2d 650, the Seventh Circuit case from 1958. And *Jones* was 856 F.2d 985, Seventh Circuit 1988.

Plaintiffs argue that the litigation from those two cases revealed widespread problems of evidence suppression.

The City implemented some new policies in response to the problems unearthed in *Palmer* and *Jones*. The new policies were Special Orders 83-1, 83-2, and 86-3. That's from paragraphs 20 to 29 of plaintiffs' statement of facts, Docket No. 755.

As plaintiffs see things, the City's replacement policies did not cure the disease. Plaintiffs think that the new policies solved nothing and that the evidence-suppression problems from *Palmer* and *Jones* were alive and well when the City mishandled plaintiffs' investigations.

So plaintiffs argue that the City's policymakers put in place facially deficient express policies, meaning the

special orders, that permitted the suppression of exculpatory evidence. Plaintiffs say that the City, quote, "has not adduced any evidence to create a genuine dispute of material fact," unquote, on this issue. That's from pages 18 to 21 of plaintiffs' memo, Docket No. 754.

Again, three types of policies can give rise to *Monell* liability: (1) an official policy; (2) a *de facto* widespread practice or custom; and (3) an official with policymaking authority. That's from *Monell* itself, 436 U.S. at 690.

To demonstrate that a municipality is liable for the policy, a plaintiff must show that the municipality was, quote "deliberately indifferent as to the known or obvious consequences," unquote, of the policy. That's from *Thomas v. Cook County Sheriff's Department*, 604 F.3d, at 293, at page 303, Seventh Circuit 2010.

In other words, the policymakers knew about the obvious problems with the policy and didn't care.

On the flip side, sometimes a municipality can be liable for not enacting a policy.

The Supreme Court has recognized that when a city's policymakers are on notice that a city program will cause constitutional violations, the city's policy of inaction is, quote, "the functional equivalent of a decision by the city itself to violate the Constitution," unquote. That's from *Connick v. Thompson*, 563 U.S. 51, at page 61, 2011.

But the inaction route is a tougher road than the action route. The *en banc* Seventh Circuit has stated that the, quote, "path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative municipal action, a failure to do something could be inadvertent," unquote. I'm quoting *J.K.J. v. Polk County*, 960 F.3d 367, at page 378, Seventh Circuit 2020.

That was an *en banc* decision.

The absence of a policy, quote, "might reflect a decision to act unconstitutionally, but the Supreme Court has repeatedly told [courts] to be cautious about drawing that inference," unquote. That's from *Calhoun v. Ramsey*, 408 F.3d, at 375, at page 380, Seventh Circuit 2005.

As this Court understands plaintiffs' briefs, plaintiffs are making an argument about inaction, not action. That's how I read it, anyway. It looks like that's the most straightforward reading of plaintiffs' argument for two reasons. First, again, the gist of the claim is that the City knew about problems with the old policies, and that the policies didn't solve the problems.

So it looks like plaintiffs' issue with the new policies isn't what the new policies said or what the policies didn't say. It looks more like an action -- excuse me -- it looks more like an -- I'm sorry. Third time is a charm.

It looks more like an argument about inaction than

action. In other words, the idea seems to be that the City's express policies were so obviously inadequate that they amount to inaction, meaning little or no action at all. Not enough action.

Second, the structure of plaintiffs' argument lines up with the legal requirements for an inaction *Monell* claim.

Remember, the Supreme Court stated that there is liability when a city has notice that its policy will cause constitutional violations and the city adopts a policy of inaction. That's from *Connick*, 563 U.S. at 61.

That looks like two requirements: notice and inaction.

Plaintiffs seem to go that route. They make their argument in two steps: Number one, the City had notice of the problem of evidence suppression; and number two, the City failed to promulgate policies to solve that problem. Take a look at plaintiffs' memo, Docket No. 755, at pages 21 to 24.

Those two steps are the same two subheadings of the sections in plaintiffs' brief.

So by the look of things, it looks like plaintiffs are making an argument about inaction, but the inaction framing is difficult to square with the record.

The record shows that there was at least some action. Plaintiffs point out that the City promulgated Special Orders 83-1, 83-2, and 86-3 in response to the evidence-suppression

problems brought to light in *Palmer* and *Jones*.

Those special orders reveal that the City did take several actions.  Special Order 83-1 went up to bat first in early 1983.

A few months later, the City replaced Special Order 83-1 with Special Order 83-2, after making a few changes.

And in 1986, the City replaced Special Order 83-2 with Special Order 86-3, after more changes.

That sequence of events goes from paragraphs 20 to 27 of plaintiffs' statement of facts, Docket No. 755.

Maybe the special orders weren't a perfect solution, but they certainly were a potential solution.  They were a step in that direction.

In other words, even if the City enacted deficient policies or insufficient policies, the City did enact policies. That's not quite a, quote, "policy of inaction," unquote.

So this case doesn't fit neatly with a theory that the City took inaction.  It has that flavor, but it doesn't quite fit.

Maybe plaintiffs don't view their *Monell* claim as a claim about inaction.  Maybe plaintiffs would argue that the claim is about action that didn't go far enough.  So maybe the argument is about action that is insufficient.

If that's the argument, the record is not so lopsided in plaintiffs' favor to give plaintiff judgment as a matter of

law.

Plaintiffs think that the City's policies were deficient. They think there's no doubt about it. Plaintiffs argue that all of the evidence, including testimony from the City's own witnesses, reinforces plaintiffs' argument. Take a look at page 2 of plaintiffs' memo, Docket No. 754.

Even so, the deck is stacked against the moving party at the summary judgment stage. That's the standard. The question is whether the record is so lopsided that no reasonable jury could rule for the nonmoving party.

To be sure, plaintiffs have evidence on their side of the ledger. But that's not the question. The Court has to look at evidence on the other side of the scale, too. And viewing the record as a whole, the facts are highly contested.

Plaintiffs' statement of facts weighs in at 73 pages [*sic*]. The City disputes, or partially disputes, or objects to 72 of the 73 paragraphs.

Take a look at the response to the plaintiffs' statement of facts, Docket No. 762.

Suffice it to say that there is a lot of disagreement, a lot of disputes.

That is not to say that disputing everything is a surefire way to evade summary judgment.

I will say this anecdotally: Whenever I get the sense that someone is trying to snow me and bury me in an avalanche

of objections and disputes and I sniff that out, I dig a little deeper.

But it doesn't look to me like that's what's happening here.

The existence of a dispute in and of itself does not mean that there is a need for trial. Disputes of fact matter only if the disputes are genuine. And they have to be about things that are material. There has to be a real, live, genuine dispute about something that matters.

And here, it looks like there is enough contrary evidence in the record to create an issue for a jury.

In my view, a reasonable jury could potentially side with the City on the issue of whether the City's policies were obviously deficient.

Let me give you a few examples.

One of the plaintiffs' issues is with the level of guidance that the policies gave to detectives.

Special Order 86-3 says that, quote, "detectives are required to: No. 1, record and preserve relevant information as fully and accurately as possible during the course of their investigation," unquote. Special Order 86-3 is on the docket at Docket No. 685-13.

Plaintiffs argue that the written policies gave detectives too much discretion when deciding what information to put into investigative reports, because Order 86-3 specifies

only that the information be relevant. That's from page 23 of plaintiffs' memo, Docket No. 754.

But when CPD Commander Eric Winstrom was asked in his deposition whether he agreed that Order 86-3 did not provide specific guidance, he disagreed.

Counsel asked Winstrom: "With regard to 86-3, this document does not provide specific guidance about what information is to go into supplementary reports. Do you agree?"

Winstrom responded: "I tend to disagree because C-1 requires what it requires, and you have two choices as a detective, really: the supplemental report and the general progress report. So it's got to get in there one way or the other."

That's from page 98 of Winstrom's deposition, Docket No. 685-14.

Parenthetically, I inserted the words "general progress" to make the quote understandable.

Viewing Order 86-3 and Winstrom's testimony together in the light most favorable to the City, there is a genuine dispute about whether the use of the word "relevant" in Special Order 86-3 is so vague that it's obviously inadequate.

We need a jury to figure it out.

Maybe the jury will make that inference, but it doesn't have to make that inference. Maybe the wording of

Order 86-3 is not as specific as it could have been. Even so, it is up to the jury to decide whether the wording is adequate.

Let me give you a second example of a question of fact.

Plaintiffs also take issue with how the policies handled the disclosure of evidence. Plaintiffs argue that the policies, quote, "did nothing to ensure that . . . anyone [] in the Chicago Police Department actually produced to the criminal justice system all of the different investigative information created by the City," unquote. That's from page 23 of plaintiffs' memo, Docket No. 754.

But Special Order 86-3 states that the CPD's policy was to, quote, "record and preserve information obtained by any department member during the course of an investigation," unquote, including, quote, "that information and material which might aid in the defense of the accused," unquote. Again, Special Order 86-3 is on the docket at Docket No. 685-13.

Special Order 86-3 has a few twists and turns, but the Court will briefly go over them to show how the file system was supposed to work.

Special Order 86-3 required detectives to submit all investigative documents to a unit supervisor for review and for inclusion in each case's investigative file case folder. The order required, quote, "periodic, unscheduled inspections of the subject files to ensure compliance," unquote.

All of the documents in investigative file case folder were -- let me say that again.

All of the documents in the investigative file case folder were listed on the investigative file inventory sheet. Special Order 86-3 describes the inventory sheet as, quote, "the case index for all documents within the investigative file case folder," unquote.

Order 86-3 required a copy of the inventory sheet to be forwarded to the records division to, quote, "ensure that proper notice of all existing documents pertaining to the subject investigation will be made to the State's Attorney's Office, the courts, and the defense counsels," unquote.

The file system was, quote, "designed to provide all parties engaged in a criminal proceeding, including the judge, state's attorney, defense attorney, and the assigned department members, with the available written documents pertaining to the criminal investigation in question," unquote.

So putting it together, Special Orders -- excuse me -- Special Order 86-3's file system looks like it required all investigative documents to be put into the investigative case folder, with each document listed on the investigative inventory file sheet, which was available to the prosecutors, the Court, and defense counsel.

In the light -- in that light, viewing all of the evidence in the light most favorable to the City as the

nonmovant, that record is enough to raise a genuine issue of material fact. I cannot say as a matter of law that the file system was inadequate.

Again, maybe Special Order 86-3's file system wasn't perfect. Maybe it was inadequate. Maybe it could have been done better. But it is not so inadequate that I can declare as a matter of law that it is inadequate. It's up to the jury to decide whether it's inadequate.

In sum, plaintiffs are free to argue that the special orders were inadequate responses to the evidence-suppression problems revealed by *Palmer* and *Jones*. But at the end of the day, the plaintiffs will have to do so at trial.

A jury might conclude that the City's policies after *Palmer* and *Jones* were inadequate. A jury might conclude that the City's policies caused plaintiffs' injuries.

But on the flip side, a jury might conclude that the City's policies, even -- and if they were imperfect, did not indicate that the City was, quote, "deliberately indifferent to the obvious risk of constitutional violations," unquote. That's the standard for a *Monell* claim. Take a look at *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676, Seventh Circuit 10 -- excuse me -- Seventh Circuit 2022.

Or, on the flip side, maybe the jury will decide that the City's policies were fine. Maybe the jury would find that they weren't problematic. Maybe the jury will find that

plaintiffs weren't injured. Maybe the jury will find that it wasn't the City's fault. We don't know what the jury will do. We have to wait and see and see how the jury will shake things out at trial.

Here is the bottom line on this: When I look at the record as a whole, I have to do so in a light most favorable to the City as the nonmoving party.

Plaintiffs have presented evidence that the policies were inadequate. The plaintiffs believe that the policies didn't do enough in light of the problems that were discussed in *Palmer* and *Jones*.

Maybe plaintiffs are right on that. We'll see.

That's not the question. The question is not who has the better argument. The question is whether the record is so lopsided that a reasonable finder of fact can only decide the issue one way. And on this record, I cannot say as a matter of law that the record is so lopsided that I have to resolve this issue in favor of the plaintiffs.

Here's the bottom line: In sum, it looks like plaintiffs are making an argument about inaction. If they're making an argument about inaction, it is difficult to square with the fact that the City did take some action.

Alternatively, maybe plaintiffs are making an argument about action after all. If so, the record is not so one-sided that plaintiffs are entitled to summary judgment.

So for the foregoing reasons, folks, plaintiffs' motions for summary judgment are denied.

That's the long and the short of it. You just wanted a ruling. There it is.

All right. So we've made progress. I think I've made three oral rulings. I have the oral ruling to give you on at least one of the experts. I don't remember his name. And there are other motions, too.

I just have to find the time to give it to you. I'm going to ask my courtroom deputy to find a time.

I don't have time in the next couple of weeks. It will be at some point probably the second week of September, give or take. All right. And then we'll talk about where we are.

I know that we have talked about setting a trial date, and I know that I've encouraged you folks to talk about that.

I did not follow up with my courtroom deputy on that. Candidly, maybe you figured something out and maybe something is on the docket already. I just don't honestly remember. I don't know. But I do know that I encouraged you to talk. And I do remember, especially, defense counsel making the astute point it's hard to know how long trial will take if you don't know what the scope of the trial is. I get that. But I do think we soon should be talking about setting a trial date.

Have you folks started talking about that?

MR. ART: We have not, other than what we discussed --

THE COURT: Let's go into the microphone --

MR. ART: I'm sorry.

THE COURT: -- and then I can hear all the smart things you're undoubtedly going to say.

Go ahead.

MR. ART: I'm sorry, Judge.

We haven't discussed it further than we got at the last hearing. I think we could discuss it before the next hearing on *Monell* and give you a sense of our perspectives, you know, of how many trial days it would take with, obviously, you know, no *Monell* and some *Monell* in play.

THE COURT: Okay.

MR. SCAHILL: We can have that discussion for sure.

THE COURT: Okay. Why don't we table it. I'm just going to put a pin in it for the second time, and we'll pin down the trial date soon. Okay?

I will leave it to my courtroom deputy to figure out a date. It might be the third week of September given what my second week of September looks like, but it's not going to be before then. All right. So probably the third week.

Should we just throw out a date in the third week of September?

THE CLERK: September -- September 19th, 10:30.

MR. ART: That should work for the plaintiffs.

MR. ENGQUIST: We'll work it out.

MS. ROSEN: That's fine.

THE COURT: Okay. All right. Very good. So we'll book it then. We'll put that in a minute entry.

If I can, I'll do it all in one shot there. It depends on what else I've got going on that week, but -- I do go over these rulings carefully, but I've got to give priority to the criminal cases, like the one we had a minute ago.

I'm worried about him, by the way, that case we had a minute ago. That's not a good development. I'm talking about a defendant who can't be found who was going to plead guilty today. So it's a scary situation. I hope he's okay.

Is there anything else anyone wants to raise? Anything else?

On the plaintiffs' side, anything else?

MR. ART: Not from the plaintiffs.

THE COURT: All right. How about the defense team; anything else?

MS. ROSEN: Not from the defense.

THE COURT: Okay. I appreciate you folks coming in today.

I'll just say again I appreciate your flexibility, folks. I know it's a little jarring when you get the CM/ECF entry and I change the time. I do it only if I think it's unavoidable. But I can say both sorry and thanks at the same

time.  So I'm sorry and thank you.

All right.  We're adjourned.  We'll see you next month.

Thank you, folks.  We're adjourned.

THE CLERK:  All rise.

(Concluded at 2:52 p.m.)

\* \* \* \* \*

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Amy M. Kleynhans* _____		*9/5/2025* _
Amy M. Kleynhans, CSR, RPR, CRR		Date
Official Court Reporter