**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ARTURO DeLEON-REYES,** | ) | |
| Plaintiff, | ) | |
| v. | ) | **Case No.: 18 CV 1028** |
| | ) | **Honorable Steven Seeger** |
| **REYNALDO GUEVARA, et al.,** | ) | |
| Defendants. | ) | **Jury Trial Demanded** |

| | | |
|---|---|---|
| **GABRIEL SOLACHE,** | ) | |
| Plaintiff, | ) | **Case No.: 18 CV 2312** |
| vs. | ) | **Honorable Steven Seeger** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| Defendants. | ) | **Jury Trial Demanded** |

**DEFENDANT GUEVARA'S RESPONSE TO PLAINTIFFS' MOTION**
**TO ADMIT OTHER BAD ACTS OF DEFENDANT REYNALDO GUEVARA**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................iii

INTRODUCTION ..................................................................................................................................1

ARGUMENT...........................................................................................................................................2

    I.      Guevara's Invocation of His Constitutional Rights Is Not Itself Independent Evidence
    On Which Any Issue Of Fact May Be Premised. ...............................................................................2

    II.    Permitting Plaintiffs To Present Fed. R. Evid. 404(b) Evidence Would Extend This Trial
    By Possibly Weeks And Would Be Exceptionally Confusing. ...........................................................4

    III.   Plaintiffs Have Not Established A Propensity Free Chain Of Reasoning For Admission
    Of Any Rule 404(b) Evidence...........................................................................................................11

CONCLUSION......................................................................................................................................19

## TABLE OF AUTHORITIES

*Cases*

*Abdelal v. City of Chicago,* 2017 WL 1196977 (N.D. Ill. 2017)...............................................18

*Barker v. International Union of Operating Engineers Local 150*, 2011 WL 6338800 (N.D. Ill. 2011) ...........4

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)................................................................3

*Caldwell v. City of Chicago*, 2010 WL 380696 (N.D. Ill. 2010) ................................................19

*Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661 (5th Cir. 1999)....................................................5

*Duran v. Town of Cicero,* 653 F.3d 632 (7th Cir. 2011) ...........................................................10

*Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 1499043 (N.D. Ill. 2013) ....................................11

*Gonzalez v. Olson*, 2015 WL 3671641 (N.D. Ill. 2015)............................................................18

*Harris v. City of Chicago*, 2017 WL 11887798 (N.D. Ill. 2017).................................................11

*Harris v. City of Chicago,* 2018 WL 2183992 (N.D. Ill. 2018)........................................... 17, 19

*Hill v. City of Chicago*, 2011 WL 3840336 (N.D. Ill. 2011)...............................................11, 12, 20

*Jackson v. Esser,* 105 F.4th 948 (7th Cir. 2024).................................................................19

*Jones v. Police Officer Omarlo Phillips*, 2017 WL 1292376 (E.D. Wis. 2017) .................................................22

*Kaufman v. City of Chicago*, 2021 WL 1885985 (N.D. Ill. 2021) ..........................................10, 18, 22

*Kluppelberg v. Burge*, 2017 WL 3142757 (N.D. Ill. 2017) ........................................................3

*LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995).......................................... 3, 5

*Logan v. City of Chicago*, 891 F. Supp. 2d 897 (N.D. Ill. 2012)...................................................4

*Manuel v. City of Chicago*, 335 F.3d 592 (7th Cir. 2003) .......................................................10

*Maysonet v. Guevara*, 18 CV 2342 (N.D. Ill. 2020) ..............................................................7

*McArdle v. Peoria School Dist. No. 150*, 833 F.Supp.2d 1020 (C.D. Ill. 2011) ...............................................4

*Moore v. City of Chicago*, 2008 WL 4549137 (N.D. Ill. 2008)....................................................19

*Moriconi v. Koester,* 659 F. App'x 892 (7th Cir. 2016).........................................................19

*National Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924 (7th Cir. 1983) ..................................................4

*Patterson v. City of Chicago*, 2017 WL 770991 (N.D. Ill. 2017) ........................................11, 18, 22

*Rios v. Guevara,* 22 CV 03973 (N.D. Ill.) ..................................................................................2

*Rivera v. Guevara*, 2018 WL 11468922 (N.D. Ill. 2018) ...............................................................3

*Ruiz-Cortez v. City of Chicago*, 2016 WL 6270768 (N.D. Ill. 2016) ...........................................4

*Scott v. Wilkie,* 2020 WL 1701881 (N.D. Ill. 2020)......................................................................18

*Sughayyer v. City of Chicago*, 2011 WL 2200366 (N.D. Ill. 2011) ............................................11

*Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000) ..................................................19, 20, 22

*U.S. v. Chapman*, 765 F.3d 720 (7th Cir. 2014) ......................................................................21

*U.S. v. Coe*, 718 F.2d 830 (7th Cir. 1983) ..............................................................................13

*U.S. v. Connelly*, 874 F.2d 412 (7th Cir. 1989)........................................................................20

*U.S. v. Gomez,* 763 F.3d 845 (7th Cir. 2014) .................................................................*passim*

*U.S. v. Gorman,* 613 F.3d 711 (7th Cir. 2010) .........................................................................17

*U.S. v. Miller,* 673 F.3d 688 (7th Cir. 2012) .......................................................................16, 17

*U.S. v. Richards*, 719 F.3d 746 (7th Cir. 2013)........................................................................14

*U.S. v. Stacy*, 769 F.3d 969 (7th Cir. 2014) ...........................................................................21

*U.S. v. Wright,* 901 F. 2d 68 (7th Cir. 1990)...........................................................................16

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) ..........................................................23

*Wrice v. Burge*, 2020 WL 419419 (N.D. Ill. 2020) .....................................................................3

## Rules

Fed. R. Evid. 403 ............................................................................................8, 9, 10, 11

Fed. R. Evid. 404(a)...........................................................................................11, 13

Fed. R. Evid. 404(b)...............................................................................................*passim*

## INTRODUCTION

NOW COMES Defendant Reynaldo Guevara ("Guevara"), by and through his attorneys, BORKAN & SCAHILL, LTD., and hereby submits this Response in opposition to Plaintiffs' Motion to Admit Other Bad Acts of Defendant Reynaldo Guevara, and states as follows:

Plaintiffs' Motion seeks to admit the testimony of an unlimited number of witnesses, whether by way of the witness's own testimony or Plaintiffs' counsel's questions to Guevara, under the guise of Fed. R. Evid. 404(b) in an attempt to introduce propensity evidence against Guevara. Plaintiffs' Motion evinces a profound misunderstanding of Rule 404(b) and what this Rule permits. Starting with the manner in which Plaintiffs intend to introduce such purported Rule 404(b) evidence, Plaintiffs misunderstand the concept that Guevara invoking the Fifth Amendment is not evidence that the jury may consider. Rather, Plaintiffs must actually prove events occurred as counsel's questions indicate – something Plaintiffs will be unable to do with most of the evidence they intend to introduce. Second, should Plaintiffs be allowed to admit Rule 404(b) evidence, be it the four witnesses Plaintiffs intend to call or the unlimited number of questions counsel intend to ask, then Guevara must be permitted to counter such "evidence." That will undoubtedly turn what is currently scheduled to be a four-week trial into a four-month trial with the witnesses Guevara intends to call to impeach Plaintiffs' live witnesses and any "evidence" Plaintiffs seek to introduce through questions posed to Guevara. Lastly, Plaintiffs' argument in support of their Motion hinges entirely on propensity and actually support the *exclusion* of such evidence rather than its admission. Plaintiffs re-package these rather obvious propensity arguments by attaching labels such as "motive," "identity," and "modus operandi" with paper-thin explanations to attempt to fit this within the constraints of Rule 404(b). As explained herein, this is precisely what is not allowed under Rule 404 and Seventh Circuit precedent. Plaintiffs' Motion should be denied and any purported Rule 404(b) evidence excluded.

As District Judge Daniel held on January 22, 2026, such Rule 404(b) evidence against Guevara must be excluded at trial, finding it to be propensity evidence. *See Rios v. Guevara, et al.*, 22 CV 03973, Dckt. No. 277, p. 5 (barring Rule 404(b) witnesses against Guevara, including evidence or argument concerning prior claims of misconduct, citizen complaints, and lawsuits).[1]

## ARGUMENT

### I. Guevara's Invocation of His Constitutional Rights Is Not Itself Independent Evidence On Which Any Issue Of Fact May Be Premised.

As this Court is likely well-aware, Guevara has chosen to invoke his Fifth Amendment Rights in this civil case (and other civil cases). Here, Plaintiffs rely on Guevara's invocation of his constitutional rights as support for his claims. *See* Dckt. No. 396 at ¶¶ 12, 122-123. Thus, it is important as a threshold matter to address the evidentiary value and limitations on such fact in determining the appropriateness of Plaintiffs' assertion that they will "limit their presentation of [Rule 404(b)] evidence to calling no more than four live witnesses to testify about other acts, and to cross-examining Guevara about a limited and defined set of other acts." *See* Dckt. No. 824 at p. 2. As a threshold matter, it is the latter part of this assertion, that Plaintiffs should be allowed to cross-examine Guevara about any and all other instances of alleged misconduct, that Plaintiffs seem to misunderstand as it relates to admissible evidence.[2] Plaintiffs cannot simply cross-examine Defendant Guevara to introduce Rule 404(b) evidence without offering independent, corroborating evidence.

At trial, a trier of fact is allowed to draw an adverse inference against a party who refuses to testify in response to probative evidence offered against him. *Baxter v. Palmigiano*, 425 U.S. 308, 318

---

[1] Judge Daniel indicated that he will enter a more fulsome order related to his ruling barring Rule 404(b) evidence at trial. Upon entry of that order, and receipt of the transcript from the January 22, 2026 hearing, Defendant will seek leave to supplement this Response brief with the record.

[2] To be clear, as argued in Sections II and III, Guevara also objects to Plaintiffs' Motion to the extent they seek to introduce Rule 404(b) evidence through the testimony of William Dorsch, Jose M. Melendez, Jose E. Melendez, Alfredo Gonzalez, David Valasquez, or any other designated Rule 404(b) witness who Plaintiffs may call live.

(1976). However, before any adverse inference may be drawn, "there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) ("[A]lthough inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and without regard to the other evidence exceeds constitutional bounds."); *Wrice v. Burge*, 2020 WL 419419, *2 (N.D. Ill. 2020) ("[C]laims against [a defendant] cannot survive unless he can identify evidence, in addition to [defendant's] silence" evidence supporting claims); *Rivera v. Guevara*, 2018 WL 11468922, *1 (N.D. Ill. 2018) ("Courts in the Seventh Circuit have accordingly held that to create a fact issue for trial, a party resisting summary judgment cannot rely exclusively on the moving party's invocation of the Fifth Amendment privilege. This court agrees with the reasoning of those decisions"); *Kluppelberg v. Burge*, 2017 WL 3142757, *4 (N.D. Ill. 2017) ("When a defendant has invoked his Fifth Amendment right against self-incrimination, as Burge has consistently done during this case, adverse factual inferences may be drawn from the choice to remain silent. At the same time, a plaintiff may not rest solely on the defendant's assertion of privilege to establish liability based on refusal to answer a complaint or to testify at a disciplinary hearing if there is no other evidence supporting liability."); *Ruiz-Cortez v. City of Chicago*, 2016 WL 6270768, *7 (N.D. Ill. 2016)(same); *Logan v. City of Chi.*, 891 F. Supp. 2d 897, 901 (N.D. Ill. 2012)("[A] party's refusal to answer questions during discovery is not enough to create an issue of fact to avoid summary judgment."); *Barker v. International Union of Operating Engineers Local 150*, 2011 WL 6338800, *6 (N.D. Ill. 2011)("[A]n adverse inference based on silence pursuant to the assertion of the Fifth Amendment privilege is insufficient by itself to create an issue of material fact precluding summary judgment."); *McArdle v. Peoria School Dist. No. 150*, 833 F.Supp.2d 1020, 1030 (C.D. Ill. 2011)("While adverse inferences may be drawn against a party who invokes her Fifth Amendment rights against self-incrimination, this privilege may not preclude summary judgment where the elements of the case were not met…In this case, Plaintiffs cannot

3

establish a genuine issue of material fact that Davis or the District violated her First Amendment rights other than Davis' invocation of her privilege against self-incrimination."); *see also National Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924 (7th Cir. 1983); *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 675 (5th Cir. 1999)("[T]he adverse inference from a party's refusal to answer questions was not enough to create an issue of fact to avoid summary judgment."). In fact, *Seguban* held that doing otherwise would not only be improper but, indeed, unconstitutional. 54 F.3d at 391-92 (noting that using Fifth Amendment invocation as affirmative evidence "without regard to the other evidence" supporting the existence of the facts sought to be established "exceeds constitutional bounds.").

Here, reliance on Guevara's invocation of his Fifth Amendment rights is insufficient to introduce admissible Rule 404(b) evidence against Guevara at trial. Plaintiffs represented that they will only cross-examine Guevara on the allegations made by at least seventeen other individuals, including David Gecht, Richard Kwil, Colleen Miller (as it relates to Gecht and Kwil's allegations), John Martinez, Thomas Kelly, Jose Tinajero, Jacques Rivera, Geraldo Iglesias, Francisco Vicente, Robert Bouto, Carl Richmond, Rey Lozada, Jose Montanez, Armando Serrano, Wilda Vargas, and any other witness who may be included as part of the allegations made by the foregoing witnesses, and the findings by Scott Lassar regarding some of the foregoing individuals (Robert Bouto, Gabriel Solache, Arturo Reyes, Jose Montanez, Armando Serrano) and Roberto Almodovar. *See* Dckt. No. 824 at p. 17-32. Accordingly, without Plaintiffs being able to introduce independent, corroborating evidence of the questions they intend to ask Guevara, any purported evidence based on questions cannot be introduced.

## II. Permitting Plaintiffs To Present Fed. R. Evid. 404(b) Evidence Would Extend This Trial By Possibly Weeks And Would Be Exceptionally Confusing.

It is pellucidly clear that allowing Plaintiffs to introduce any Rule 404(b) evidence against Guevara would conservatively extend this trial for at least a week – whether that is evidence of the "four" witnesses Plaintiffs indicate they would call live at trial or the evidence Plaintiffs seek to

4

introduce by way of cross-examination. Plaintiffs represent they will call four live Rule 404(b) witnesses but listed William Dorsch, Jose M. Melendez, Jose E. Melendez, Alfredo Gonzalez, and David Velasquez as witnesses who have relevant Rule 404(b) evidence. These are five witnesses. Moreover, to the extent Plaintiffs counter Section I of Defendant's Response with a proposal that to provide the independent, corroborating evidence they will call additional witnesses live at trial, then clearly Plaintiffs are not simply calling "four" Rule 404(b) witnesses. Nevertheless, whether four or forty Rule 404(b) witnesses, it is obvious that Guevara must be provided the opportunity to offer impeaching evidence and testimony by calling his own witnesses. Not only would permitting this parade of "other bad acts" evidence be unduly prejudicial, but it would also extend the length of this trial significantly and this evidentiary presentation would, in fact, dwarf the evidence presented on the actual claims in this case. This Court scheduled a four-week trial in this matter and it can be reasonably accomplished within that timeframe. Adding in at least five other instances of alleged misconduct of Guevara from extensive investigations on other murder cases will make that timeframe impossible.

Like all evidence, Rule 404(b) evidence is not a one-way street. While Plaintiffs are calling these witnesses to make allegations against Guevara, Guevara is entitled to call his own impeachment witnesses and introduce other evidence to contradict the witnesses' claims.

Plaintiffs seek financially ruinous punitive damages against Guevara and untold millions of dollars to be paid by the taxpayers of the City of Chicago and, thus, defense counsel will be ethically bound to fight these allegations of unrelated bad acts with every tool at their disposal. This will include calling non-party police officers, numerous assistant state's attorneys, criminal defense attorneys and numerous third-party witnesses as witnesses to rebut the claims of these putative Rule 404(b) witnesses. This will also include the introduction of reams of documentary evidence relating to the claims of these alleged Rule 404(b) witnesses including court transcripts, court-reported statements, handwritten statements, post-conviction filings, etc.

To this end, for their putative Rule 404(b) evidence, Plaintiffs have chosen to attempt to interject alleged misconduct by Guevara in some of the most complex, fact-intensive cases imaginable which include numerous criminal co-defendants (and co-plaintiffs), numerous criminal prosecutions and post-conviction proceedings, and tens of thousands upon tens of thousands of pages of relevant documentation.

For example, Jose Maysonet's had been convicted of double-murder involving three other criminal co-defendants (one of whom also has a pending federal civil rights suit against Guevara) and spawned many thousands of pages of briefs and exhibits before it was resolved in December 2025. *See Maysonet v. Guevara*, 18 CV 2342, Dckt. Nos. 1, 353-65, 367-68, 408-28, 434-79. In order to rebut Maysonet's claims, Guevara will likely, at minimum, need to call the following witnesses to impeach and rebut any testimony by Maysonet:

- ASA Frank DiFranco: Present for Maysonet's court-reported confession and will testify to contents thereof, lack of Guevara's involvement, and absence of any indicia of mistreatment. Also present at scene of shooting where Maysonet walked through and explained his involvement.

- ASA Jennifer Borowitz: will testify as to interview and observations of Maysonet at police station.

- Cook County Court Reporter Szybist: will testify to veracity of court reported statement and observations of Maysonet's condition at time of statement.

- Alfredo Gonzalez: criminal co-defendant of Maysonet who provided a court-reported statement implicating himself and Maysonet in murders.

- Cook County Court Reporter Janet Lupa: Took court-reported statement from Alfredo Gonzalez and will testify as to accuracy of same and observations during.

- Justino Cruz: criminal co-defendant of Maysonet who provided court-reported statement implicating himself and Maysonet in murders, who plead guilty to same, testified in open court as to his own and others guilt to murders, and who has an intact conviction for same under accountability theory involving Maysonet.

- Felony Review ASA Perkaus: Approved murder charges against Justino Cruz after interviewing him and preparing a handwritten statement that he signed.

6

- Detective Schak: Interviewed Justino Cruz and obtained confession to his and Maysonet's involvement in murders.

- Det. Roland Paulnitsky: Interviewed Maysonet prior to Guevara and was also present at scene of shooting where Maysonet walked through and explained his involvement.

- Det. Fernando Montilla: interviewed Maysonet month before Guevara ever involved in investigation and obtained inculpatory statement from him regarding his involvement in murders, present for Maysonet's court reported confession and will testify to contents thereof, lack of Guevara's involvement, and absence of any indicia of mistreatment. Also present at scene of shooting where Maysonet walked through and explained his involvement.

- Sgt. Edward Mingey: interviewed Maysonet month before Guevara was ever involved in investigation and obtained inculpatory statement from him regarding his involvement in murders

- Rosa Bello: Maysonet's girlfriend, will testify about veracity of her own and Maysonet's inculpatory statement made to police.

- Judge Loretta Hall Morgan: Judge overseeing Maysonet's motion to suppress who found claims of mistreatment non-credible.

Guevara will also seek to introduce evidence in the form of written statements of some of these witnesses, criminal trial transcripts, court filings, photos, and numerous other pieces of evidence contradicting the claims of Maysonet.

By way of another example, to the extent Plaintiffs seek to introduce the testimony of Jose E. Melendez, contrary to Plaintiffs' representations to this Court, Melendez has not even identified Guevara as being the officer who purportedly abused him. Nowhere has Melendez identified Guevara as being the detective who allegedly beat and questioned him. Nevertheless, Plaintiffs provide a misleading citation for this Court to Melendez's testimony to stand for the proposition that Melendez identified Guevara as being the detective who was involved in his interrogation. *See* Dckt. No. 824 at p. 10 (representing Guevara interrogated and beat Melendez at Area Five); *see also* Dckt. No. 826-2 (Jose E. Melendez deposition testimony) at 24:12-25:2 ("Q. Okay. Do you recall anything about what they looked like? A. I only remember one. I can't remember the other two, but I only remember one because he's the one that hit me. Q. Okay. And what did he look like? A. Spanish, glasses, black and

– I mean, black and – and, like, striped hair. Like, you know when you're getting old, you get this white hair a little bit? A little chunky. He looked – to me, he looked like Mexican mixed with Puerto Rican, so I didn't know exactly what he was, but I knew he was Spanish."). Never once in Melendez's testimony did he identify Guevara as being this detective who allegedly beat him. Defendant would certainly impeach any of Melendez's offered testimony with police reports reflecting the other officers involved in Melendez's arrest, police officer testimony, and assistant state's attorney testimony relative to Melendez's eventual arrest and prosecution.

This is just a snapshot of the Rule 404(b) evidence that Plaintiffs intend to introduce, and Guevara will seek to impeach. Such similar testimony will also be presented for any Rule 404(b) witness that Plaintiffs seek to introduce, whether by way of live testimony or through cross-examination, including the testimony of state's attorneys, third-party witnesses, non-defendant police officers to impeach any testimony a Rule 404(b) witness provides or to impeach counsel's questions about any other non-designated Rule 404(b) witness. While Plaintiffs assert they "have no intention of holding a series of mini-trials," it is clear that this case will devolve into just that: a series of mini-trials where the jury will be called not just to weigh Plaintiffs' case, but also the allegations raised by David Gecht, Richard Kwil, Colleen Miller, John Martinez, Thomas Kelly, Jose Tinajero, Jacques Rivera, Geraldo Iglesias, Francisco Vicente, Robert Bouto, Carl Richmond, Rey Lozada, Jose Montanez, Armando Serrano, Wilda Vargas, Roberto Almodovar, Scott Lassar, and any other witness implicated in any direct or cross-examination, against Defendant Guevara. *See* Dckt. No. 824 at p. 2.

Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403. To this end, the courts, in applying Rule 403, have repeatedly expressed concern that permitting the introduction of "other bad acts" evidence at trial often runs

afoul of Rule 403 because of the waste of jury and judicial time by delving into unrelated incidents, the spawning of mini-trials (which are not only wasteful in time but also exceedingly confusing), and of course, the inherent prejudice involved in allowing such evidence to be flaunted before the jury in a case involving a different discrete set of facts. *See Duran v. Town of Cicero,* 653 F.3d 632, 645 (7th Cir. 2011) (upholding exclusion of evidence of misconduct complaints against officer in excessive-force case because introduction "risked creating a sideshow and sending the trial off track"); *Manuel v. City of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (noting "potential for confusing or even misleading the jury by engaging in a series of mini-trials" by admitting evidence of prior allegations against defendant); *Kaufman v. City of Chicago*, 2021 WL 1885985, at *6 (N.D. Ill. 2021) (barring other bad acts evidence because "putting witnesses on the stand to discuss unsubstantiated events from many years ago will lead to 'distracting and time consuming mini-trials regarding the merits of these other allegations.'"); *Harris v. City of Chicago*, 2017 WL 11887798, at *4 (N.D. Ill. 2017) (barring Rule 404(b) evidence in reversed-conviction case because such evidence "has a significant potential to mislead the jury into attempting to decide those cases" and "could lead to distracting and time consuming mini-trials regarding the merits of these other allegations."); *Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 1499043, at *3 (N.D. Ill. 2013) (barring Rule 404(b) evidence under Rule 403 because "[t]he introduction of such evidence would consist of several mini-trials…"); *Patterson v. City of Chicago*, 2017 WL 770991, at *4 (N.D. Ill. 2017) ("Any reference to the three lawsuits has a significant potential to mislead the jury into attempting to decide those cases. Additionally, it could lead to distracting and time consuming mini-trials regarding the merits of these other allegations."); *Sughayyer v. City of Chicago*, 2011 WL 2200366, at *6 (N.D. Ill. 2011) ("Allowing such [Rule 404(b)] evidence…would result in five mini-trials within the trial that would potentially confuse the jury."); *Hill v. City of Chicago*, 2011 WL 3840336, at *11 (N.D. Ill. 2011) (excluding 404(b) evidence that had "the potential to confuse or

9

mislead the jury and cause undue delay, especially because introduction of such evidence would consist of multiple mini-trials of the facts surrounding these interrogations.").

As then-Magistrate Judge Harjani recognized in this matter, Rule 404(b) evidence will side-track any trial into a series of mini-trials:

> [E]vidence under Rule 404(b) could sidetrack the trial into time-consuming, confusing mini-trials about whether the alleged bad acts of these officers on other individuals actually occurred. Proving a coerced confession or a fabrication of evidence is no easy task—and each one of these allegations will likely be vigorously contested by defendants. Each time a new "other act" evidence is introduced, assuming it satisfies *Gomez*, the length and complexity of the trial is increased, as well as the risk of jury confusion.

*See* Dckt. No. 313 at p. 13. Moreover, as referenced above, the underlying police investigations in all the above cases involved numerous police officers who are not parties to this case being allegedly involved or complicit in the underlying alleged misconduct. Even worse, again, at least one of the witnesses at issue does not even identify Guevara as the person alleged to have engaged in misconduct. This too renders this evidence inadmissible under Fed. R. Evid. 403. *See Hill v. City of Chicago*, 2011 WL 3840336, at *5 (N.D. Ill. 2011) ("Hill seeks to introduce evidence concerning other police officers who allegedly coerced Curtis Milsap's confession based on the officers' similar methods of interrogation. Hill admits, however, that neither Officers Boudreau nor Halloran had any involvement in Milsap's interrogation. Because Milsap's interrogation did not involve either of the officers in this case and there is no pending claim against the City pursuant to *Monell* . . . the evidence surrounding Milsap's confession is not relevant under the circumstances. In other words, actions taken by these other officers are not relevant to Defendant Officer Boudreau's or Halloran's plan and preparation.").

Finally, Rule 404(b) evidence, even if otherwise appropriate (which it is not), is of highly dubious necessity in this case. Plaintiffs identify five witnesses they will call at trial and at least seventeen other instances, if not more, where Guevara was alleged to have engaged in misconduct and Plaintiffs intend to introduce such evidence. Adding weeks to this trial by also allowing at least

twenty-two unrelated acts of misconduct would seriously run afoul of Rule 403 even were there some propensity-free chain of reasoning for these instances (which, as argued below, there is not). This Court should not allow such a farcical and highly prejudicial and confusing spectacle to occur. This will turn what should be a four-week trial into a multi-month "three-ring-circus."

### III. Plaintiffs Have Not Established A Propensity Free Chain Of Reasoning For Admission Of Any Rule 404(b) Evidence.

Even were Plaintiffs' attempt to interject at least 22 mini-trials into this case permissible under Rule 403, the bases on which Plaintiffs seek to introduce such evidence blatantly violates Rule 404(a) and is not consistent with either Rule 404(b) or the Seventh Circuit's narrowing of the admissibility of such evidence in *United States v. Gomez,* 763 F.3d 845, 853 (7th Cir. 2014.

First, without exception, every single alleged "other bad act" at issue is unabashedly an attempt to prove that Guevara must have committed misconduct toward Plaintiffs (or one of their witnesses) because Guevara is alleged to have done supposedly similar things to other people at other times.[3]

---

[3] Plaintiffs also confusingly argue in their Motion that the Rule 404(b) evidence should be admitted against "Defendants" in the event "Defendants" deny engaging in the conduct, to show "Defendants'" intent, to counter "Defendants'" assertions that they made a mistake, to establish "Defendants" had an opportunity to engage in the same behavior Guevara was accused of engaging in with the 404(b) witnesses, and as evidence that "Defendants" were the individuals who engaged in the conduct Guevara was accused of engaging in and therefore did the same here. *See* Dckt. No. 824 at p. 33-42. While Guevara recognizes these may be typos in Plaintiffs' Motion, especially considering the purpose of this Motion seeks to admit "other acts evidence relating to Defendant Reynaldo Guevara," out of an abundance of caution it must be noted that any Rule 404(b) against Guevara cannot and should not be imputed onto any other Defendant. *See* Dckt. 824 at p. 1. Not only are there copious grounds as to why this evidence should be excluded as to Guevara, it would also be highly improper and prejudicial for Plaintiffs to seek to admit Rule 404(b) evidence pertaining to Guevara as evidence against any other Defendant. *See U.S. v. Coe*, 718 F.2d 830, 838 FN 6 (7th Cir. 1983) (recognizing prior bad acts evidence can only be considered against the defendant to whom it is proffered and not against any other defendant: "[T]his prior "bad act" was admitted only against Coe and thus the jury could not consider this evidence in determining the guilt of Korenak or Joseph…"). Indeed, Plaintiffs have not and cannot provide any support for their contention that Rule 404(b) evidence against Guevara should also be admissible against the other Defendants. While nonetheless propensity evidence, Plaintiffs' summaries of the events giving rise to the Rule 404(b) evidence is exclusively focused on Guevara's alleged wrongful conduct and therefore cannot be admitted for the purpose of somehow also establishing any other Defendant's alleged wrongful conduct. *See* Dckt. No. 824 at p. 7-32; *see also U.S. v. Richards*, 719 F.3d 746, 763-64 (7th Cir. 2013) (party seeking to admit Rule 404(b) evidence cannot offer it for one reason and then use it in some other way: "Admission of Rule 404(b) evidence, however, does not grant the government free rein to use that evidence however it wishes. Having obtained admission of the evidence for a specific, non-propensity purpose, the government cannot deploy the Rule

Plaintiffs *admit* they seek to prove the validity of their claims by proving that Guevara did similar things to other people at other times. *Id.* Instead of attempting to establish a propensity free chain of reasoning, Plaintiffs merely attach labels to what they call "similar" misconduct and declares that such evidence is admissible to prove things such as "identity," "intent," "motive," "opportunity," or some other such label included in Rule 404(b). *See* Dckt. No. 824 at 33-36 (arguing other-acts evidence should be admissible to show where Guevara denies intentionally fabricating Plaintiffs' statement, he did so in other instances (and therefore acted in conformity here): "Defendants will also contend that they did not intentionally fabricate Plaintiffs' statements…but in all of the cases just referenced…Guevara intentionally instructed witnesses to provide false evidence, by fabricating witness statements and identifications."); 36-37 (asserting that should Defendants assert they mistakenly framed Plaintiffs, Rule 404(b) evidence should be admissible to show that because Guevara did not mistakenly frame someone in the past, he also did not mistakenly frame Plaintiffs here); 37-39 (asserting Guevara's knowledge that he fabricated or suppressed evidence in the Rule 404(b) witnesses' cases is evidence that Guevara he fabricated or suppressed evidence against Plaintiffs and knew he was fabricating or suppressing said evidence); 39-40 (arguing Rule 404(b) evidence should be admissible because Guevara had the opportunity to frame suspects and fabricate and suppress evidence in other instances, and therefore acted under the same opportunity with Plaintiffs); 40-42 (arguing Rule 404(b) evidence is admissible as evidence that because Guevara has been identified as engaging in misconduct in other instances, it must have been him who acted in conformity here); 42-43 (declaring Rule 404(b) evidence should be admissible to show because Guevara engaged in misconduct in the past, he had the ability to do so with Plaintiffs); 43 (stating Guevara's fabrication in other instances may be used to prove he fabricated Plaintiffs' statements: "And so, when he is asked

---

404(b) evidence in support of some other argument or inference. Rather, it must limit its use of the evidence to the purpose proffered when admitting the evidence.")

whether he would ever have fabricated a statement for Plaintiffs…his answer can be impeached with evidence that he did precisely that in cases described by [Rule 404(b) witnesses].”); 44 (to impeach Guevara's credibility or bias, or corroborate other witnesses – because he was untrustworthy in the past based on Rule 404(b) evidence, he must be untrustworthy here); 45 (for punitive damages: because Guevara purportedly engaged in misconduct in the past, he must have done so here, and therefore the jury should award a higher punitive damage award). These are all different ways to make one argument: Rule 404(b) evidence should be admissible because there is evidence Guevara acted one way in the past, he must have done so here. That is precisely propensity evidence and is simply not allowed.

The strict preclusion against allowing other bad acts evidence to establish some generalized (or specific) propensity of a person to engage in bad conduct is well-established. Fed. R. Evid. 404(a) explicitly provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See* Fed. R. Evid.. 404(a). Rule 404(b)(1) similarly specifies that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* Fed. R. Evid. 404(b)(1). "The purpose of Rule 404(b) is to exclude a type of evidence – evidence that the defendant had previously engaged in a broadly similar [wrongful] activity – which has some probative value but the admission of which would tend as a practical matter to deprive a person" of a fair trial. *United States v. Wright,* 901 F. 2d 68, 70 (7th Cir. 1990). As noted by the Seventh Circuit, in the past, other acts evidence has been too readily admitted where the proponent named a non-propensity purpose which may be applicable, without consideration of the "legitimacy of the purpose for which the evidence is to be used and the need for it." *United States v. Gomez,* 763 F.3d 845, 853 (7th Cir. 2014) (*en banc*). The standard adopted in *Gomez* abandoned the previous multi-factor analysis in favor of a rules-based approach. *Id.* "To overcome an

13

opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Gomez,* 763 F.3d at 860.

"[R]elevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Gomez,* 763 F.3d at 860 *citing United States v. Miller,* 673 F.3d 688, 696 (7th Cir. 2012). In this regard, it is not enough that evidence of the other act merely be "connected to the defendant's knowledge, intent, or identity (or some other plausible non-propensity purpose)[.]" *Gomez,* 763 F.3d at 855. As such, a proponent of Rule 404(b) evidence cannot "simply [ ] point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.* at 856. Rather, the proponent must establish the relevance to a permitted purpose under Rule 404(b)(2) "through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case." *Id.* at 860.

Whether other acts are relevant to a non-propensity purpose is a two-part inquiry: 1) the court determines whether and to what extent the proposed purpose is at issue; and 2) the court must determine whether the other acts evidence is actually relevant, in that it is probative of the stated purpose and does not rely on a propensity inference to establish relevance. *Miller,* 673 F.3d at 697-98. "If evidence is not direct evidence of the [tort] itself, it is usually propensity…" *United States v. Gorman,* 613 F.3d 711, 718 (7th Cir. 2010). "Unless there is a persuasive and specific answer to the question, 'How does this evidence prove [the identified purpose]?' then the real answer is almost certainly that the evidence is probative only of propensity." *Miller,* 673 F. 3d at 699.

Applying these concepts to civil cases in general (and police misconduct litigation in particular), the courts have routinely excluded putative Rule 404(b) evidence seeking to admit evidence

14

that other persons had been subjected to other acts of misconduct by defendant officers because of the lack of a propensity-free chain of reasoning in admitting such evidence for a proper purpose. *See Harris v. City of Chicago,* 2018 WL 2183992, at *15–17 (N.D. Ill. 2018) (barring evidence of other allegations of evidence fabrication and coercing confessions by defendant officer); *Kaufman v. City of Chicago,* 2021 WL 1885985, at *5 (N.D. Ill. 2021) (barring evidence of an officer's prior insubordination because it was being offered so that the jury would infer that the officer "engaged in misconduct on the night in question because he has allegedly done so on other occasions."); *Patterson v. City of Chicago,* 2017 WL 770991, at *4 (N.D. Ill., 2017) ("Patterson's modus operandi argument is a thinly veiled attempt to do precisely what Rule 404(b) forbids: ask the jury to make an inference that because the defendants committed battery or falsified police reports in the past (which may or may not be true), they did the same thing on the day in question in this lawsuit."); *Abdelal v. City of Chicago,* 2017 WL 1196977, at *6-7 (N.D. Ill. 2017) (rejecting argument that subsequent allegation of police misconduct was probative of plan or knowledge in earlier incident); *Gonzalez v. Olson,* 2015 WL 3671641, at *21-25 (N.D. Ill. 2015) (granting motion in limine to bar a plaintiff's proposed Rule 404(b) witnesses who would testify about a defendant police officer's prior bad acts involving an alleged "drop gun" scheme); *Scott v. Wilkie,* 2020 WL 1701881, at *5-6 (N.D. Ill. 2020) ("Scott's 'other acts' evidence runs the gamut from suggestions of discriminatory and/or retaliatory failure to promote as here, to allegedly race-based disciplinary disparities and investigations concerning sexual harassment. Setting aside for the moment the numerous ways in which the facts and circumstances of these allegations are different, the Court notes that the sheer number of complaints is not evidence of wrongdoing, as not all claims have merit."); *see also Treece v. Hochstetler*, 213 F.3d 360, 363-64 (7th Cir. 2000); *Moriconi v. Koester,* 659 F. App'x 892, 894-95 (7th Cir. 2016) (affirming barring evidence that defendant officer had improperly tased other persons because such evidence was pure propensity evidence and not relevant to intent); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. 2010) (barring evidence of unrelated police

misconduct); *Moore v. City of Chicago*, 2008 WL 4549137, at \*5 (N.D. Ill. 2008) (same). Indeed, just recently, the Seventh Circuit held that the exclusion of evidence regarding the existence of lawsuits against the defendant officer making other similar allegations of misconduct was properly excluded under Rule 404(b). *Jackson v. Esser,* 105 F.4th 948, 963–64 (7th Cir. 2024) (trial court properly barred evidence of prior lawsuits and misconduct allegations against defendant officer because it would constitute propensity evidence).

Plaintiffs' rote recitation of labels contained within Rule 404(b) and insistence that the "similar bad acts" evidence is admissible has been specifically rejected by the court. For instance, in *Harris*, another reversed-conviction case, the plaintiff attempted to prove that defendants coerced and fabricated her confession by introducing other instances where the defendants had allegedly done so and claimed this was admissible as "plan, opportunity, motive, modus operandi, or state of mind." *Harris,* 2018 WL 2183992, at \*15–17. Then District Court Judge (now Seventh Circuit Judge) St. Eve rejected this rote labeling as a blatant attempt to backdoor propensity evidence. *Id.* ("Plaintiff does not connect evidence of Defendant Bartik's plan, opportunity, motive, modus operandi, or state of mind to the witnesses' testimony without the propensity inference that Defendant Bartik's alleged misconduct in the past shows that he coerced and fabricated Plaintiff's confession in this matter.").

Second, Plaintiffs' repeated claim that "identity" or "modus operandi" is a basis to backdoor in blatant propensity evidence badly misunderstands the law. The identity/modus operandi category of evidence under Rule 404(b) is not carte blanche for a plaintiff to introduce evidence of other bad acts simply when a defendant denies having committed misconduct; rather, this category applies only when a defendant attempts to defend himself by claiming that the plaintiff has mistaken him for someone else who has committed the misconduct at issue. *Hill*, 2011 WL 3840336, at \*3 ("In the present lawsuit, identity is not at issue because Defendant Officers do not assert the defense that Hill has mistaken them for other officers. Moreover, Hill gives no other cogent reason why the Court

16

should allow this evidence under his modus operandi theory. Indeed, Hill's modus operandi argument appears to be a disguised propensity argument."); *United States v. Connelly*, 874 F.2d 412, 417 n.7 (7th Cir. 1989) ("Rule 404(b) does not specifically enumerate 'modus operandi' proof as an exception for similar act evidence but this court has approved the introduction of modus operandi evidence under the 'identity' exception to Rule 404(b)"); *Treece*, 213 F.3d at 363 ("[i]f defined broadly enough, modus operandi evidence becomes nothing more than the character evidence that Rule 404(b) prohibits"). Neither Guevara nor anyone other defendant is claiming that Plaintiffs mistook them for some other police officer who mistreated Plaintiffs; rather, they claim they were not mistreated at all. This exception does not even apply on its face.

Third, Plaintiffs' repeated reliance on the "intent" category cited in Rule 404(b) as a basis to allow in other similar bad acts is similarly unavailing. This category does not apply to bolster claims of outright denial of misconduct but, rather, to claims where a (most commonly criminal) defendant seeks to claim they lacked the *mens rea* (i.e. intent) to commit an underlying specific intent crime. *See United States v. Chapman*, 765 F.3d 720, 726 (7th Cir. 2014) (evidence of 2006 conviction for heroin trafficking should not have been admitted to show defendant possessed heroin with intent to distribute in 2010); *United States v. Stacy*, 769 F.3d 969, 974 (7th Cir. 2014) (evidence of 2008 arrest for possession of meth should not have been admitted to show defendant intended to use pseudoephedrine pills collected from 2010 through 2012 to make meth). Indeed, this is a category of admissibility that *Gomez* explicitly held is essentially *never* a basis to admit other bad acts unless a litigant (again, usually a criminal defendant) contests specific intent in specific intent crimes (as opposed to a general denial of liability). *Gomez*, 763 F.3d at 858–59. The Court explained:

> Our circuit also requires special caution when other-act evidence is offered to prove intent, which though a permissible non-propensity purpose is nonetheless "most likely to blend with improper propensity uses." In cases involving general-intent crimes—e.g., drug-distribution offenses (as distinct from drug conspiracies or possession of drugs with intent to distribute)—we have adopted a rule that other-act evidence is not admissible to show intent unless the defendant puts intent "at issue" beyond a general denial of

17

guilt…To summarize then, when intent is not "at issue"—when the defendant is charged with a general-intent crime and does not meaningfully dispute intent—other-act evidence is not admissible to prove intent because its probative value will always be substantially outweighed by the risk of unfair prejudice. In contrast, when intent is "at issue"—in cases involving specific-intent crimes or because the defendant makes it an issue in a case involving a general-intent crime—other-act evidence may be admissible to prove intent, but it must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice. And again, the degree to which the non-propensity issue actually is contested may have a bearing on the probative value of the other-act evidence. *Id.*

Even if otherwise permissible, Rule 404(b) requires that the evidence of such acts be "sufficient to support a jury finding that the defendant committed the similar act." *Gomez*, 763 F.3d at 854 (explaining that other-act evidence may not be admitted unless the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed); *Treece*, 213 F.3d at 363. Vague claims lodged against some unnamed "Hispanic" police officer (of which there are thousands who have been employed by the Chicago Police Department) comes nowhere even close to satisfying that standard. *See Kaufman v. City of Chicago*, 2021 WL 1885985, at *6 (N.D. Ill., 2021) ("Memories fade over time and putting witnesses on the stand to discuss unsubstantiated events from many years ago will lead to 'distracting and time consuming mini-trials regarding the merits of these other allegations.'"); *Patterson*, 2017 WL 770991, at *4 (unsubstantiated allegations insufficient for admissibility under Rule 404(b)); *Jones v. Police Officer Omarlo Phillips*, 2017 WL 1292376, at *1 (E.D. Wis. 2017) ("[E]vidence of prior conduct is narrowly circumscribed under the Federal Rules of Evidence. *See* Fed. R. Evid. 404 (b). And for good reason. Hearsay statements of unsubstantiated reports of misconduct are not sufficiently reliable to be presented to a jury.").

The primary case cited by Plaintiffs in support of admission of the Rule 404(b) testimony and cross-examination as "motive, intent, opportunity, preparation and plan" evidence in a civil case is *Wilson v. City of Chicago*, 6 F.3d 1233, 1238 (7th Cir. 1993). *See* Dckt. No. 824 at 5-50 (also citing other cases relying on *Wilson*). *Wilson* is not helpful to Plaintiffs in the slightest. *Wilson* is a pre-*Gomez* case which did not even attempt to satisfy the current operant analysis in the Seventh Circuit. *Wilson*, 6 F.

18

3d at 1238. Rather, *Wilson* applied a standard which has now been explicitly rejected, specifically, simply referencing a permitted category under Rule 404(b) without establishing a propensity-free chain of reasoning. *Id.* Nor did *Wilson* involve generalized attempts to introduce other instances of similar bad acts to prove acts in conformity. Rather, *Wilson* involved an idiosyncratic body of evidence which sought to prove that a defendant had used a peculiar electroshock device against a suspect nine days before the plaintiff was interrogated and that such defendant had denied ever having used such a device under oath. *Id.* Nothing even close to that is present here. Plaintiffs offer nothing but generalized claims of abusive or coercive conduct divorced from this case by years.

Plaintiffs are attempting to do precisely what the Seventh Circuit held in *Gomez* that they cannot do. This case should proceed on its merits and be confined to the facts and allegations of this case and this case only. Interjecting clear propensity evidence in this case will not only be wasteful of both jury and judicial time but would likely taint the validity of any adverse verdict against Guevara and other Defendants. Plaintiffs' Motion to Admit Rule 404(b) should be denied and all evidence of any putative "other bad acts" of Guevara should be barred in their entirety.

## CONCLUSION

WHEREFORE Defendant Guevara prays this Court denies Plaintiffs' Motion to Admit Other Bad Acts of Defendant Reynaldo Guevara, and for all other relief that this Honorable Court deems fits.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By: /s/ Emily E. Schnidt
Emily E. Schnidt

Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street, Suite 1700
Chicago, IL 60603
(312) 580-1030

19