IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 2312 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |


**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ADMIT
OTHER BAD ACTS OF DEFENDANT REYNALDO GUEVARA**

Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Rachel Brady
**LOEVY + LOEVY**
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Jan Susler
Ben H. Elson
Nora Snyder
**People's Law Office**
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773)235-0070
jsusler@peopleslawoffice.com

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

I.    Guevara Does Not Address Most Arguments In Plaintiffs' Motion and Forfeits Any Argument For Categorical Exclusion of Rule 404(b) Evidence....................................3

II.   Guevara's Arguments Relating to His Assertion of the Fifth Amendment Right to Remain Silent Do Not Justify Exclusion of Rule 404(b) Evidence ...............................4

III.  Guevara's Factual Disputes and Generalized Threats of Mini Trials Do Not Justify Total Exclusion of the Evidence.........................................................................8

IV.  Guevara's Summary Argument About Propensity Should Be Rejected...................13

V.   Judge Daniels's Ruling in *Rios v. Guevara* Should Not Control Here........................16

CONCLUSION ...............................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Baxter v. Palmigiano*, 425 U.S. 308 (1976)..................................................................5

*Boykin v. Illinois Dep't of Juv. Just.*, No. 23-CV-4109, 2025 WL 640050 (N.D. Ill. Feb. 27, 2025) ....................................................................................................................... 4

*City of Chicago v. Reliable Truck Parts Co., Inc.*, 822 F.Supp. 1288 (N.D. Ill. 1993)...............6,8

*G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534 (7th Cir. 2012) ...................................... 16

*Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959 (N.D. Ill. 2025) ............................................. 16

*Hillmann v. Chicago*, 834 F.3d 787 (7th Cir. 2016) ........................................................6

*In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002) ....................5

*Jones v. Walters*, No. 12-CV-5283, 2016 WL 1756908 (N.D. Ill. Apr. 29, 2016)........................ 4

*Keri v. Board of Trustees of Purdue University*, 458 F.3d 620 (7th Cir.2006) .............................. 4

*LaPorta v. City of Chicago*, 14-cv-9665, Doc. No. 390-1 (N.D. Ill.)............................................6

*LaSalle Bank v. Seguban*, 54 F.3d 387 (7th Cir. 1995) ...................................................6

*LiButti v. United States*, 178 F.3d 114 (2d Cir. 1999) ................................................... 6

*Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939 (N.D. Ill. 2010)..........................................................................................................4

*Rivera v. Guevara*, No. 12-cv-04428, 2018 WL 11468923 (N.D. Ill. June 1, 2018) ...............6,16

*United States v. Bedell*, 2009 U.S. Dist. LEXIS 153751 (M.D. Pa. Mar. 24, 2009) ................... 12

*United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) ........................................................ *passim*

*United States v. Knox*, 301 F.3d 616 (7th Cir. 2002)...........................................................4

*United States v. Olaitan*, 2023 U.S. Dist. LEXIS 136722 (D.D.C. Aug. 4, 2023)...................... 12

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) ............................................. *17*

Plaintiffs Arturo DeLeon-Reyes and Gabriel Solache, by their respective undersigned attorneys, respectfully submit the following reply in support of their motion to admit other bad acts evidence relating to Defendant Reynaldo Guevara, Dkt. 824, stating as follows:

**INTRODUCTION**

In an exhaustive opening brief, Plaintiffs explained the particular other acts that they sought to admit relating to Defendant Guevara, the propensity free chain of reasoning that justified admissions of each other act, the governing law holding that such evidence should be admitted in a case like this one, and that Rule 403 concerns are properly addressed by this Court managing the introduction of Rule 404(b) evidence at trial and instructing the jury as necessary. Dkt. 824. Defendant Guevara has responded to almost none of these arguments. Dkt. 837. Indeed, Guevara addresses the evidence proffered by Plaintiffs in only two of the ten other-acts incidents detailed in the opening brief—Maysonet and Sierra—and then merely lists all of the other-acts incidents and makes broad declarations about them. Plaintiffs submit that Guevara does not contest most of these incidents because he cannot—neither through his own testimony nor other intrinsic evidence. Guevara's silence in the face of this evidence is a good reason to doubt his assertion that there would be some fierce dispute at trial about these other acts, and by saying nothing Guevara forfeits any arguments for exclusion of this evidence.

The arguments that Guevara actually does make do not justify total exclusion of Plaintiffs' Rule 404(b) evidence. For starters, Guevara makes arguments about the manner in which he can be asked questions given his invocation of the Fifth Amendment. This is not an argument for exclusion of Rule 404(b) evidence in the first place, and besides Guevara's view of how he can be questioned is inconsistent with the case law governing invocation of the Fifth Amendment in civil cases, and it ignores the large volume of evidence, independent of Guevara's

1

assertion of privilege, which Plaintiffs have submitted to demonstrate Guevara's other bad acts. Moreover, though Guevara refuses to testify, Guevara's counsel will certainly be *arguing* that Guevara lacked the requisite intent, that he had no opportunity, that it was not him who committed the misconduct, and that he should not have to pay punitive damages. Guevara cannot use the privilege as a shield and a sword, and the Rule 404(b) evidence that Plaintiffs wish to introduce will refute each point.

Guevara disputes the facts of only two of the other-acts cases presented by Plaintiffs— Sierra and Maysonet—and he asserts that those disputes and a generalized threat of "mini-trials" on the other incidents justify excluding *all* Rule 404(b) evidence. Even if the Court accepted Guevara's arguments, the factual disputes that he points to would not justify categorically exclusion of evidence under Rule 404(b). That said, Guevara's factual contentions are flatly refuted by the evidence, demonstrating that if these two factual disputes he has highlighted are the best evidence he has regarding these other bad acts, there are not likely to be lengthy contested proceedings on these points. Guevara has come nowhere close to showing that these other bad acts fact patterns are so complex that this Court cannot supervise their succinct presentation with evidentiary rulings and jury instructions.

The same is true of Guevara's summary and conclusory argument that the evidence at issue in Plaintiffs' motion is evidence of his criminal propensity. While Guevara draws that inference, Plaintiffs explained in detail the non-propensity chain of reasoning that connects Guevara's other acts to many permissible uses related to important contested issues in the upcoming trial. In short, the Rule 404(b) evidence against Guevara is important evidence to combat Guevara's expected defenses, and it should be admitted to prevent an unfair trial.

Finally, Judge Daniels's recent ruling in *Rios v. Guevara*, No. 22 C 03973 (N.D. Ill. Jan. 28, 2026), referenced in Guevara's motion to supplement in this case, Dkt. 841, should not control this Court's decision, for a number of reasons. Guevara contends that Judge Daniels's decision arises from a "nearly identical" motion to the one at issue here. Dkt. 841 at 1. That is not the case.

## I.   Guevara Does Not Address Most Arguments In Plaintiffs' Motion and Forfeits Any Argument For Categorical Exclusion of Rule 404(b) Evidence

In their opening brief, Plaintiffs specifically detailed the ten Rule 404(b) other acts incidents they seek to admit in which Guevara fabricated and coerced confessions, fabricated false police reports documenting investigative information that was manufactured, fabricated witness statements, and suppressed exculpatory and impeachment evidence, just as he did in this case. Dkt. 842 at 7-32. Plaintiffs explained the various ways in which each of these other acts are supported by a propensity-free chain of reasoning with regard to Guevara's intent, absence of mistake or accident, knowledge, opportunity, identity, preparation and plan and therefore satisfy the standard of admissibility in *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (en banc). Dkt. 824 at 33-45. They explained in addition that the evidence might be admitted to impeach Guevara, to corroborate other witnesses, and in support of Plaintiff's *Monell* claims. *Id.* And Plaintiffs explained why the Rule 403 balancing test does not require exclusion of this evidence, especially with the use of limiting instructions. Dkt. 824 at 48-49.

In his response brief, Guevara completely fails to respond to any of Plaintiffs' specific arguments regarding these propensity-free pathways to admit this evidence on important contested issues. Instead, he discusses, in treatise like fashion, why Rule 404(b) evidence should generally not be admitted and complains that he will not have enough time to attempt to rebut the other-acts evidence. Plaintiffs have made the required showing of admissibility. Guevara's

failure to respond to Plaintiffs' arguments operates as a forfeiture and implies concession. *See*, *e.g.*, *Boykin v. Illinois Dep't of Juv. Just.*, No. 23-CV-4109, 2025 WL 640050, at *4 (N.D. Ill. Feb. 27, 2025) (Seeger, J.) ("A failure to engage has consequences . . . '[F]ailure to respond to an opposing party's argument implies concession.'") (quoting *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 950 (N.D. Ill. 2010) (collecting cases)); *see also Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643, n7 (7th Cir.2006) (outlining the general rule in the Seventh Circuit that a party's failure to respond to an opposing party's argument implies concession).

Although the proponent of Rule 404(b) evidence initially bears the burden of establishing its admissible purpose, a defendant cannot simply refuse to address Rule 404(b) evidence without forfeiting or waving arguments against admissibility. *E.g.*, *United States v. Knox*, 301 F.3d 616, 619 (7th Cir. 2002). Put another way, because Guevara has ignored nearly every argument in the opening brief, he cannot show that "such evidence is not clearly inadmissible for all purposes, which is the standard for a motion *in limine*." *Jones v. Walters*, No. 12-CV-5283, 2016 WL 1756908, at *8 (N.D. Ill. Apr. 29, 2016). Guevara's decision not to address the evidence and arguments made in Plaintiffs' opening brief operates as a forfeiture of the arguments, and Guevara's request to categorically exclude all Rule 404(b) evidence should be rejected at this stage, without the need to consider his particular arguments.

## II.     Guevara's Arguments Relating to His Assertion of the Fifth Amendment Right to Remain Silent Do Not Justify Exclusion of Rule 404(b) Evidence

Illustrating the weakness of his position, Guevara leads with an argument about how he can be questioned at trial, given his assertion of his Fifth Amendment right to remain silent. Dkt. 837 at 2-4. But on its face, this is not an argument for exclusion of Rule 404(b) evidence, and Guevara does not seem to suggest anywhere that his assertion of the Fifth Amendment requires

*exclusion* of Rule 404(b) evidence. See *id.* Rightly so. An assertion of the Fifth Amendment right to remain silent by a defendant, in a criminal or civil case, plainly does not bar other-acts evidence from being admitted. Indeed, the most common context for admission of other-acts evidence are criminal trials, in which defendants routinely assert their Fifth Amendment rights. *United States v. Gomez*, 763 F.3d 845 (7th Cir. 2014) (en banc).

This first argument in Guevara's response brief is, in fact, a sneak peak at motions *in limine* that Guevara has filed in the civil cases against him thus far and likely will file in these cases before trial as well. Those motions get wrong the law governing Fifth Amendment assertions in civil cases. Put simply, Guevara should be treated like any other witness called to testify, he should be required to answer questions, and the normal Rules of Evidence and Rules of Civil Procedure should govern the scope of questioning. There is zero reason to take anything other than this normal approach. Before or after he testifies, the Court can instruct the jury, consistent with governing law, that it may, but is not required to, draw an adverse inference against Guevara if he asserts his Fifth Amendment right to remain silent in response to questions.

Guevara's argument that some preliminary showing is required before he is asked questions is foreclosed by Supreme Court and Seventh Circuit law. Unlike in criminal cases, there is no special set of rules that applies to parties in civil cases who assert their Fifth Amendment rights in response to questions. The privilege that Guevara asserts is available *only* to a witness who has a reasonable belief that truthful answers about what he did could subject him to criminal prosecution. *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 663-664 (7th Cir. 2002). And so the Supreme Court and Seventh Circuit have held unequivocally that jurors must be expressly instructed that they can draw adverse inferences against a party asserting the Fifth Amendment in civil litigation. *Baxter v. Palmigiano*, 425 U.S. 308, 318

(1976); *Hillmann v. Chicago*, 834 F.3d 787, 793 (7th Cir. 2016); *LaSalle Bank v. Seguban*, 54

F.3d 387, 390 (7th Cir. 1995). An "adverse inference may be given significant weight because

silence when one would be expected to speak is a powerful persuader." *LiButti v. United States*,

178 F.3d 114, 120 (2d Cir. 1999). A party cannot use this privilege as a shield to avoid self-

incrimination and then as a sword to obtain a litigation advantage. *City of Chicago v. Reliable*

*Truck Parts Co., Inc.*, 822 F.Supp. 1288, 1293 (N.D. Ill. 1993).

Putting all of this law together, the jury—just as it does with any other witness—is

entitled to observe Guevara's testimony, assess the witness's demeanor, hear the questions

posed, and evaluate the circumstances and content of any invocation of the Fifth Amendment.

The Court will instruct the jury on the law and the permissible inferences it can draw, but neither

the Court nor the parties can displace the jury's role as factfinder by altering the way that a party

who asserts their Fifth Amendment rights testifies in a civil trial. A defendant's assertion of the

Fifth Amendment is "'extraordinarily relevant testimony.'" *Rivera v. Guevara*, No. 12-cv-4428,

2018 WL 11468922, at *3 (N.D. Ill. May 29, 2018) (Gottschall, J.) (quoting *LaPorta v. City of*

*Chicago*, 14-cv-9665, Doc. No. 390-1, at 3 (N.D. Ill.)).

Guevara's contention that he cannot be asked any question that has not previously been

established by independent evidence distorts this law. In particular, Guevara invokes cases that

stand for the proposition that a court cannot enter a *judgment* against a party based solely on an

assertion of the Fifth, and he leaps to the conclusion that a party asserting the Fifth cannot be

asked *any question at all* unless that question has a basis in some proposition already established

by other evidence. The leap is not justified. At summary judgment, the parties disputed whether

evidence other than Guevara's assertion of the Fifth Amendment was necessary for a claim to

survive Guevara's motion for summary judgment. See Dkt. 771 at 17-20 (Plaintiffs' response to

this argument). Even assuming Guevara was correct that independent evidence is necessary to overcome a motion for summary judgment, that legal proposition would at best support a contention that Guevara's assertion of the Fifth Amendment trial is not enough by itself for the jury to find him liable, such that some additional evidence is required. However, nothing in any of the cases even hint–let alone hold–that Plaintiffs must present evidence about a particular issue before even asking Guevara a question about that issue.

To be clear, the normal Federal Rules of Evidence prevent Plaintiffs' counsel from asking questions that have no evidentiary foundation. Familiar principles prevent questions that have no basis in the record, and the standard procedure for combatting such questions is to object to them. But there will be no such issue here, because Plaintiff's questions of Guevara will be exactly what everyone can anticipate based on the documentary evidence already set out clearly in the record, including the Rule 404(b) evidence set out in Plaintiffs' motion. There is no reason to depart from the standard rules of trial just because Guevara has alleged to assert privileges rather than provide substantive answers to some or all questions. Certainly there is no reason to bar asking Guevara about other acts on this basis.

All of this said, this is an issue that the Court should take up with full briefing in advance of trial, at which point the Court can decide the manner in which Guevara will be questioned about his alleged misconduct in Plaintiffs' cases and in other cases. The litigation of that issue does not control whether or not a propensity-free chain of relevance has been established for the admission of bad acts set out in Plaintiff's motion, and so it has no impact on the Rule 404(b) analysis currently before the Court. Certainly, Guevara's assertion of the Fifth Amendment does not justify *exclusion* of Rule 404(b) evidence. Moreover, as discussed at length in Plaintiffs' opening brief, the Rule 404(b) evidence in this case is supported by testimonial and documentary

7

evidence wholly independent of Guevara's assertion of the Fifth Amendment, and so to the extent extrinsic evidence is required, Plaintiffs have that evidence.

One last point about Guevara's assertion of the Fifth Amendment bears mentioning. As discussed, Guevara cannot be permitted to use the privilege as both a shield and a sword. *Reliable Truck Parts*, 822 F.Supp. at 1293. Imagine a trial where Guevara asserts his Fifth Amendment right to remain silent in response to all questions, he is then permitted to parlay that assertion to keep permissible Rule 404(b) evidence out of the jury's consideration, but then his lawyers argue that Guevara lacked the requisite intent or knowledge, that he had no opportunity to plan or perpetrate the misconduct alleged, that it was not him who committed the misconduct, and that he should not have to pay punitive damages. Indeed, Guevara's attorneys make some of these arguments in contesting Plaintiffs' Rule 404(b) motion, and they are making such arguments in the current trial pending before Judge Daniel, *Rios v. Guevara*, discussed below. The law prohibits this approach. To the extent that Guevara wants to defend himself in this manner, Rule 404(b) provides that the admission of other acts for non-propensity purposes is appropriate to combat such a defense. This Court should not permit Guevara to game the system with his assertions of the Fifth Amendment.

## III. Guevara's Factual Disputes and Generalized Threats of Mini-Trials Do Not Justify Total Exclusion of the Evidence

Next, Guevara argues that Plaintiffs have gotten the facts of two of the many other-acts cases they discuss wrong, and that all the cases Plaintiffs seek to admit will result in mini-trials. But Guevara does not establish any real factual disputes relating Plaintiffs' 404(b) evidence, nor does he articulate any legitimate concern that 404(b) evidence would create time-consuming and confusing mini-trials. What Guevara does instead is fail to properly respond to Plaintiffs' exhaustive account of Guevara's other-acts evidence put forth in Plaintiffs' motion. Guevara

implores the Court to wholesale exclude Plaintiffs' other-acts evidence arguing that "permitting this parade of 'other bad acts' evidence [would] be unduly prejudicial," but he fails to explain why that is the case.[1] Guevara asserts burden arguments by speculating that many different impeachment witnesses and "reams" of evidence will be required for him to defend himself. Dkt. 837 at 5. But in response to the detail in Plaintiffs' motion, Guevara only provides two generalized "examples"-- those related to the Maysonet and Sierra cases–neither of which could possibly justify total exclusion of Plaintiff's Rule 404(b) evidence. Indeed, these examples amply show that Guevara has very little evidence with which to contest the other bad acts that Plaintiffs proffer.

The first factual dispute that Guevara raises relates to Rule 404(b) witness, Jose Maysonet. Plaintiffs' brief details how Guevara arrested Maysonet and physically and psychologically abused him until he falsely implicated himself and others (including fellow Rule 404(b) witness Alfredo Gonzalez) in a homicide. Instead of rebutting this, Guevara instead offers a cursory list of potential witnesses he claims could "impeach and rebut any testimony by Maysonet." But, Guevara does not demonstrate how that impeachment would occur or what it

---

[1] Defendant Guevara's Response fails to address any of the "parade" of evidence Plaintiff puts forth regarding witnesses William Dorsch, Jose M. Melendez, Alfredo Gonzalez (except for in reference to Jose Maysonet), David Velasquez, David Gecht, Richard Kwil, Colleen Miller, John Martinez, Thomas Kelly, Jose Tinajero, Jacques Rivera, Geraldo Iglesias, Francisco Vicente, Robert Bouto, Carl Richmond, Rey Lozada, Jose Montanez, Armando Serrano, Wilda Vargas, and any other witness who may be included as part of the allegations made by the foregoing witnesses, and the findings by Scott Lassar regarding some of the foregoing individuals (Robert Bouto, Gabriel Solache, Arturo Reyes, Jose Montanez, Armando Serrano) and Roberto Almodovar. Plaintiffs seek to admit evidence of ten other act incidents in which Guevara intentionally fabricated and coerced confessions, fabricated false police reports documenting investigative information that was manufactured, fabricated witness statements, and suppressed exculpatory and impeachment evidence, just as he did in this case. All of these prior bad acts occurred within ten years of Plaintiffs' case, four of them occurred within five years (Martinez/Kelly/Tinajero, Gecht/Kwil, Sierra, Iglesias, Bouto and Montanez/Serrano), and two occurred within one year (Martinez/Kelly/Tinajero and Gecht/Kwil). Plaintiffs explained in great detail in their opening brief the various ways in which each of these prior bad acts are supported by a propensity-free chain of reasoning with regard to intent, absence of mistake or accident, knowledge, opportunity, identity, preparation and plan and therefore satisfy the standard of admissibility in *Gomez*, 763 F.3d 845.

would entail in any detail. He does not do so precisely because Guevara has no rebuttal to his misconduct in that case.

Defendant Guevara cites witnesses who were not present when Guevara interrogated Maysonet and therefore could not provide impeachment testimony to rebut Maysonet's testimony about Guevara's physically and psychologically coercive interrogation (*see e.g.,* Ex. 1 (Montilla Dep.) at 227:4-5, 227:17-21; Ex. 2 (Mingey Dep.) at 348:19-349:2, 355:19-22; Ex. 3 (Schak Dep.) at 134:19-23; Ex. 4 (DiFranco Dep.) at 82:25-83:3 ). Likewise, none of the witnesses listed by Guevara have any knowledge of Maysonet and Guevara's illegal narcotic enterprise with former CPD Officer Joseph Miedzianowski (*see e.g.,* Ex. 2 (Mingey Dep.) at 378:22-25, 379:2-9, 380:1-24; Ex. 1 (Montilla Dep.) at 358:17-359:6, 359:22-360:3; Ex. 3 (Schak Dep.) at 223:4-10, 224:13-225:15). Thus all the rebuttal witnesses relied on by Guevara could only provide speculative, improper impeachment testimony to rebut Maysonet's testimony. Guevara also curiously lists three witnesses (Gonzalez, Justino Cruz, and Rosa Bello), who each have recently corroborated much of what Maysonet would testify to. Regardless, while Guevara's response points to a snippet of actual testimony for these witnesses, for the most part his list of witnesses is offered in summary fashion, and it does not describe the evidence that supposedly would rebut Maysonet's other-acts testimony.

Equally unmoored from Plaintiffs' detailed account of potential 404(b) evidence is Guevara's focus on one of the details of the other-bads acts at issue relating to the wrongful conviction of Thomas Sierra. Namely, Guevara focuses inexplicably on the fact that Rule 404(b) witness Jose E. Melendez could not recall Guevara's exact name in testimony. This "example" of a factual dispute, relied on by Guevara to support his contention that Plaintiffs' facts are wrong and would require mini-trials, is flatly untrue.

10

Guevara argues that "contrary to Plaintiffs' representations to this Court, Melendez has not even identified Guevara as being the officer who purportedly abused him. Nowhere has Melendez identified Guevara as being the detective who allegedly beat and questioned him." Dkt. 837 at 7. But Melendez signed an affidavit in 2010 that he was stopped on May 30, 1995 by Chicago police, the date of the investigation in question, taken to Area Five, questioned about a shooting in Logan Square, and physically abused by detectives including, "*Detective Guevara* [who] was one of the detectives who was hitting me." Ex. 5 (Aff. of Jose E. Melendez) at AR-L 634788-89 ¶¶ 2-5. The affidavit further relates that Melendez was later arrested for a different murder (Ruben Gonzalez was the victim), which he was eventually acquitted of. Id at ¶¶ 7-9. Guevara and his partner, deceased Defendant Halvorsen, arrested Melendez for that murder. Ex. 6 (Melendez Arrest Report) at AR-L 632389. Furthermore, Melendez does, in fact, in the deposition that Guevara cites, directly implicate Guevara as the detective that beat him. Melendez testified that in 2014, at a bar, he saw the Latino officer who had pulled him over and hit him, and that he knew him to be a cop named "Rey" or "Reyguardo." Ex. 7. (Melendez Dep. in *Sierra)* at 67:1-71:15. In that same deposition, Melendez confirmed that the Latino officer that had pulled him over was the same officer who arrested him for the murder of Ruben Gonzalez. Ex. 7. (Melendez Dep. in *Sierra*) at 81:10-15. Accordingly, Guevara's assertion that Melendez never identified him is contradicted by the record. If that is the best example of a factual dispute that Guevara contends might provoke mini-trials, those mini-trials would be short and decidedly one-sided.

Finally, Guevara's entire argument about mini-trials is overblown. As explained, Plaintiffs will call at most five live Rule 404(b) witnesses, of whom Plaintiffs will conduct short, direct examinations. The remainder of the prior bad acts evidence will be presented through

cross-examination of Guevara. Plaintiffs will not, as Guevara speculates in his brief, "call additional witnesses live at trial." While Rule 404(b) evidence can necessarily extend a trial somewhat, here, the highly probative value of the evidence Plaintiffs seek to admit, combined with Plaintiffs' commitment to presenting it succinctly, and the Court's power to limit the evidence as the trial goes, outweighs any potential concerns associated with lengthening the trial. *United States v. Bedell*, 2009 U.S. Dist. LEXIS 153751, at *11 (M.D. Pa. Mar. 24, 2009) ("Bedell argues that conducting such cross-examination or presenting rebuttal witnesses would greatly extend the length of trial and be a waste of time. The Court finds, however, that presentation of such relevant and probative evidence does not constitute undue delay or waste of time. Should the presentation of such evidence become overly cumulative, Bedell may raise the appropriate objection at trial."); *United States v. Olaitan*, 2023 U.S. Dist. LEXIS 136722, at *20-25 (D.D.C. Aug. 4, 2023) (admitting Rule 404(b) evidence where the probative value of the evidence was not substantially outweighed by unfair prejudice, the court "was satisfied that — with appropriate limiting instructions — the jury will be able to consider [the Rule 404(b) evidence only for legitimate, non-propensity purposes," and presentation of the evidence would not extend the length of the trial substantially.) Even if the parties had to spend a good deal of time at trial on the Rule 404(b) evidence, that itself would not be a sufficient reason to exclude such evidence. *See id.* And on that point, Plaintiffs' estimate of the trial length included Rule 404(b) evidence, consistent with his counsel's presentation of such evidence in *Rivera*.

Ultimately, Defendant Guevara fails to rebut Plaintiffs' other-acts evidence in any detail, not because of the voluminous nature of evidence at his disposal, but because Guevara's rebuttal evidence quite simply lacks merit. Guevara's claims about the necessity of an avalanche of

12

rebuttal evidence is nothing more than theatrical hyperbole designed to obfuscate the actual evidence Plaintiffs have properly presented for the Court.

## IV.    Guevara's Summary Arguments About Propensity Should Be Rejected

After cursory treatment of the facts, Guevara moves on to a summary discussion of the law governing Rule 404(b) evidence. He contends generally that Plaintiffs have not established a propensity-free chain of reasoning for any of the other-acts evidence they intend to present, and that all of the evidence is actually propensity evidence. Dkt. 837 at 11-13. But Plaintiffs detailed propensity-free chains of reasoning that connect the particular prior bad acts outlined in the motion to particular issues that the jury will be asked to consider at trial, showing that the introduction of that evidence for these purposes should be permitted. See Dkt. 824 at 33-46. None of these permissible uses would require the jury to conclude that Guevara has a propensity to commit misconduct, and most instead address defenses that Guevara will raise to his liability at the upcoming trial. Plaintiffs know this because their attorneys have been part of a number of trials where Guevara and his attorneys have defended the cases by denying the intent to frame a plaintiff, by arguing that he did not knowingly commit certain investigative misconduct, by suggesting that such gross misconduct could not occur in the Chicago Police Department alongside well trained and honorable detectives, by contending that if misconduct was committed it was not Guevara who did it, and by denying that Guevara and other defendants had a common plan to fabricate or suppress evidence.

As the Seventh Circuit explained in *United States v. Gomez*, "Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to 'another purpose' must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on

the occasion charged in the case." 763 F.3d 845, 860 (7th Cir. 2014). In his response, Guevara draws the propensity inference himself, and then argues that based on that inference the evidence should be excluded. But he ignores entirely the actual arguments that Plaintiffs make establishing propensity-free chains of reasoning from the other acts evidence to Guevara's expected defense at trial. If Guevara were willing to forego these defenses, and stipulated that these issues were not ones the jury needed to consider at trial, then that would limit the force of Plaintiffs' arguments for admission of this evidence.[2] But Guevara makes no such concession, because he intends to defend himself at trial by arguing to the jury that the things Plaintiffs contend occurred are unbelievable, could not have occurred, were innocent mistakes, etc. Guevara should not have it both ways.[3]

As Guevara's argument about propensity continues, he provides a recitation of general standards governing Rule 404(b) evidence, Dkt. 837 at 13-14, which Plaintiff agrees with. Then, he provides a two-page string citation of cases in which courts have excluded Rule 404(b) evidence. *Id.* at 14-16.[4] Neither of these arguments contests any of the Rule 404(b) analysis that Plaintiffs provided in their opening brief.

---

[2] Plaintiffs would still have the arguments that this evidence is permitted under Rule 404(b) to impeach Guevara, to corroborate other witnesses, to prove their *Monell* claims, and to prove punitive damages, Dkt. 824 at 43-46, which Guevara also does not address with any particularity.

[3] Interestingly, in a passing discussion of the permissible purpose of showing identity, Guevara states that "[n]either Guevara nor any[] other defendant is claiming that Plaintiffs mistook them for some other police officer who mistreated Plaintiffs," such that "[t]his exception does not even apply on this face." Dkt. 837 at 17. This represents a radical departure from defendants' position during discovery, including depositions, and at summary judgment, when the thrust of many of the arguments was that Guevara and others had not been in the room with Plaintiffs at the time misconduct occurred. As with any other permissible purpose for other acts evidence, if Defendants seriously stipulate that there is not a dispute on an issue for which the evidence is offered, then like any other issue in the case, there will be no need to present supporting evidence.

[4] Guevara cites a number of cases in which courts have held that proposed Rule 404(b) evidence was properly excluded because the plaintiff failed to provide a propensity-free reason for its admissibility. Defs. Br. at 14-16 (citing, e.g. *Abdelal v. City of Chicago*, 2017 WL 1196977, at *2 (N.D. Ill. 2017) (where the plaintiff's lawyer was unable to offer any non-propensity basis for admissibility of evidence); *Gonzalez v. Olson*, 2015 WL 3671641, at *24 (N.D. Ill. 2015) (where the plaintiff failed to provide "a

14

Finally, Guevara argues generally that Plaintiff has misunderstood what it means to offer evidence to show intent. Dkt. 837 at 17-19. Guevara asserts that this permissible use of other acts evidence is not intended to permit a party to combat general denials of misconduct, but is instead to allow a party to show that a defendant acted with the requisite mental state. *Id.* Plaintiffs and Guevara are on the same page here, and they have the same understanding of what this permissible use means, as Plaintiffs explained in detail in their opening brief. Dkt. 824 at 33-36 (intent), 37-39 (knowledge). As this Court is aware, jury instructions in wrongful conviction cases require a plaintiff to show that a defendant acted intentionally, or knowingly, depending on the claim at issue. In every wrongful conviction case tried in the Northern District of Illinois, the defendants claim that the plaintiff has failed to establish the required mental state, and Guevara has defended himself this way as well. Thus, other acts evidence of Guevara's intent to commit or knowledge of misconduct in other cases is probative of his defense that he lacks the requisite intent or knowledge here.

This Court should reject Guevara's blanket assertion that Plaintiffs cannot articulate propensity-free reasons to admit other acts evidence. Plaintiffs made detailed arguments on this point to which Guevara provides no response.

---

propensity-free chain of reasoning to support his theory of relevance"); *Moriconi v. Koester*, 659 Fed. App'x. 892, 895 (7th Cir. 2016) (where the plaintiff did not explain how evidence was relevant to showing defendant's intent ant motive, as opposed to propensity); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. 2010) (which granted a motion *in limine* where the plaintiff failed to explain how unrelated police misconduct could be relevant); *Moore v. City of Chicago*, 2008 WL 4549137, at *5 (N.D. Ill. 2008) (which granted a motion *in limine* where the plaintiff did not demonstrate that complaint registers were relevant to showing motive, intent, or modus operandi). But none of these cases are the same as this one, where for the reasons laid out in detail in Plaintiffs' opening brief and discussed in this section, Plaintiffs have provided multiple bases for the admission of the proffered evidence that do not rely on propensity.

## V. Judge Daniels's Ruling in *Rios v. Guevara* Should Not Control Here

Finally, Judge Daniels's decision excluding Rule 404(b) evidence in *Rios v. Guevara* should not control the outcome here. See *Rios*, No. 22 C 3973, Dkts. 283 (opinion); Dkt. 249 at 14-41 (Rios motion *in limine* regarding Rule 404(b) evidence). Just as this Court is not compelled to follow decisions permitting the introduction of Rule 404(b) evidence against Guevara, *Rivera v. Guevara*, No. 12-cv-04428, 2018 WL 11468923, at *5 (N.D. Ill. June 1, 2018), it need not follow decisions excluding such evidence, *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 976 (N.D. Ill. 2025) (noting that other district court decisions are not binding). Instead, consideration of the circumstances of the particular cases at issue is important.

On that point, only three of the Rule 404(b) witnesses put forward in *Rios* are at issue here. Otherwise, there is no overlap. Moreover, the facts of *Rios* concern an investigation in 1989, just before Guevara became a detective, at a time before many of the other acts at issue in Plaintiffs' motion occurred, whereas the investigation at issue in this case occurred a full decade later. The facts of *Rios*'s case differ in some ways from the facts of Plaintiffs' cases. All of these are reasons to stick to the context of this case and to rely on past decisions on the admission of Rule 404(b) evidence only to the extent the Court decides they have persuasive force.

Finally, the adversarial presentation of issues always has an effect on judicial decisionmaking. *E.g.*, *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant  arguments rests squarely with the parties, because [o]ur system of justice is adversarial, and our judges are busy people."). Plaintiffs submit that the presentation of Rule 404(b) evidence and arguments in *Rios* is different from the presentation of the evidence and arguments in this case. Compare *Rios*, No. 22 C 3973, Dkt. 249 at 14-41 (Rios Motion In Limine) with Dkt. 824 (Plaintiffs' motion here). First, Rule 404(b) discovery and

16

depositions were conducted at length in Plaintiffs' cases, but not in *Rios*. Second, and relatedly, Plaintiffs here have set out precisely what evidence is available to support particular other bad acts, supporting their motion with voluminous evidence, which was not the approach taken in *Rios* motion. Third, Plaintiffs have provided arguments about different ways that evidence may be introduced against Guevara for non-propensity purposes, whereas the Rios motion makes cursory arguments about the relevance of other evidence to various "counts" in Rios's complaint, strongly suggesting a propensity purpose for the admission of evidence. These differences in adversarial presentation are additional reasons that Judge Daniels's opinion in *Rios* should not control here.

Lastly, Plaintiffs respectfully submit that the defense of Guevara in the *Rios* trial illustrates why Guevara should not be permitted to win outright exclusion of all Rule 404(b) evidence in advance of trial. Admittedly, this account is based on courtroom observation, but the defense of Guevara ongoing in *Rios* at the time that this reply is filed depends at least in part on the defendants there arguing that the plaintiff is lying about the abuse he suffered at the hands of Guevara. Although Guevara has asserted his Fifth Amendment rights in response to questions about abusing Rios at trial, his attorneys have argued and are questioning Rios making clear that their theory is that he is lying about his interactions with Guevara, and that such abuse could not have occurred at Area Five. Rebutting these sorts of defenses is why Rule 404(b) exists, and Guevara should not obtain the same advantage in this case as he has apparently achieved in Rios. That is the sort of unfair result that *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) holds is reversible error.

## CONCLUSION

For these reasons, and for those stated in Plaintiffs' motion, this Court should grant Plaintiffs' motion to admit limited other-acts evidence, subject to reasonable trial-management limits and appropriate limiting instructions.

RESPECTFULLY SUBMITTED,

**ARTURO DeLEON-REYES**                    **GABRIEL SOLACHE**

By: /s/ Steve Art                          By: /s/ Ben Elson
*One of DeLeon Reyes's Attorneys*          *One of Solache's Attorneys*

Jon Loevy                                  Jan Susler
Anand Swaminathan                          Ben H. Elson
Steve Art                                  Nora Snyder
Sean Starr                                 **People's Law Office**
Rachel Brady                               1180 N. Milwaukee Ave.
**LOEVY + LOEVY**                          Chicago, IL 60642
311 N. Aberdeen St.                        (773)235-0070
Chicago, IL 60607                          ben@peopleslawoffice.com
(312) 243-5900
steve@loevy.com

18