**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 2312 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**DEFENDANTS' *DAUBERT* MOTION TO BAR PLAINTIFFS'
POLICE PRACTICE EXPERT WITNESS THOMAS J. TIDERINGTON**

Defendants JoAnn Halvorsen, as Special Representative of Defendant Ernest Halvorsen

(deceased), Edwin Dickinson, Robert Rutherford, Daniel Trevino, Reynaldo Guevara, and the

City of Chicago, ("Defendants") by and through their undersigned attorneys, move for an order

barring opinions and testimony from Plaintiffs' police practice expert, Thomas J. Tiderington,

and in support thereof state:

**RELEVANT BACKGROUND**

Plaintiffs disclosed Thomas J. Tiderington ("Tiderington") as a police practice expert

witness, along with his 66-page single spaced report, all of which concerns his assessment of the

following: (1) whether there were deviations from generally accepted police practices in the

1

murder investigation of Jacinta and Mariano Soto (and related kidnapping of their children) conducted by Chicago Police Officers; and (2) whether the Chicago Police Department's policies and practices related to documentation and notetaking are adequate and consistent with practices around the country.[1] *See* Tiderington Report, attached hereto as Exhibit 1 at 3. In sum, Tiderington opines to a reasonable degree of professional certainty that the Soto homicide investigation "grossly deviated from generally accepted police practices." *Id*. More specifically, Tiderington found, "[c]onsistent with [this opinion]," that

> the defendants in this case applied tunnel vision to obtain the evidence they needed to implicate their pre-chosen suspects, rather than follow the evidence and leads wherever they took them; conducted guilt-presumptive interrogations of DeLeon-Reyes and Solache contrary to accepted interrogation techniques; failed to consider evidence that undermined the confessions they obtained from DeLeon-Reyes and Solache; and conducted a shoddy investigation in which they failed to properly document investigative steps, pursue all possible leads, and engage in the sort of basic crime scene processing efforts that are critical to collecting and preserving potentially critical physical evidence.

*Id*. at 3–4. Tiderington also concludes "the Defendants in this case withheld documents and information they learned during the investigation from DeLeon-Reyes and Solache, all of which should have been disclosed." *Id*. at 4.

In addition, Tiderington's Report is replete with repeated attempts to offer conclusions about ultimate facts, the credibility of witnesses, or the mental state of Defendants:

- "The investigation reflected a primary goal of closing the case with charges, rather than finding the truth about who participated in the murder and kidnapping of the Soto family."

- "In addition, there is substantial evidence in the record that Detective Reynaldo Guevara and other defendants used physical and psychological abuse to coerce confessions from DeLeon-Reyes and Solache, and intentionally and willfully manufactured and falsified evidence, manipulated witnesses, and withheld critically relevant information from DeLeon-Reyes and Solache, and their attorneys."

---

[1] The City previously filed its own *Daubert* motion to bar Tiderington's policy opinions which this Court denied on August 7, 2025. The Court, however, did invite the City to renew its Rule 403 motion to bar Tiderington with the filing of the Parties' motions *in limine*, which the City will do.

- "The case was solved not through diligent efforts to develop evidence and follow leads, but instead by applying physical and psychological abuse, and seeing which individuals would crack and give a confession. Investigators knowingly and intentionally disregarded any evidence that pointed away from DeLeon-Reyes and Solache."

*Id*. at 3–4, 13.

Tiderington's opinions and conclusions, however, are inadmissible and should be barred because they do not meet the minimum admissibility requirements under Rule 702 and *Daubert* as Tiderington fails to apply any reliable methodology and improperly invades upon the jury's province.

## LEGAL STANDARD

Fed. R. Evid. 702 permits a witness who is qualified as an expert by their "knowledge, skill, experience, training or education" to testify "if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." A proffered expert's opinion must "have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. Evidence "that is connected to existing data only by the *ipse dixit* of the expert" should be excluded. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

"The district court is the gatekeeper of expert testimony" and must assess its reliability by examining whether: (1) the theory has or can be tested; (2) the theory has been subjected to peer-review and/or academic publication; (3) there is a known rate of error; and (4) the theory is generally accepted in the relevant scientific community. *C.W. ex rel. Wood v. Textron, Inc.*, 807

3

F.3d 827, 834 (7th Cir. 2015) (citations omitted). Additional factors include whether the expert has unjustifiably extrapolated an unfounded conclusion from an accepted premise and whether the expert has accounted for "obvious alternative explanations". *Harris v. Wexford Health Sources, Inc.*, 2021 WL 1192437, at *3 (N.D. Ill. March 30, 2021) (*quoting* Fed. R. Evid. 702 advisory committee's note to 2000 amendment.) "Where [an expert's] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question... the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (citation omitted).

I.   **Tiderington applies no reliable methodology and provides useless generalities about various investigatory activities.**

To satisfy *Daubert*, the proffered testimony must have a reliable basis in the knowledge and experience of the relevant discipline, consisting of more than subjective belief or unsupported speculation. *Chapman v. Maytag Corp.*, 297 F.3d 682, 686-87 (7th Cir. 2002); *see also Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). By assessing reliability, the court ensures the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 152 (1999). Among other things, the question of reliability can be assessed by looking at "(1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been

4

generally accepted in the scientific community." *See* Fed. R. Evid. 702, comments citing *Daubert*.

Here, Tiderington's opinions consist exclusively of using vague terminology about the general propriety of various investigatory activities followed by parroting Plaintiffs' preferred factual narrative with a conclusion that Defendants acted contrary to some undefined notion of propriety. For example, Tiderington opines:

> I have found that the defendants in this case applied tunnel vision to obtain the evidence they needed to implicate their pre-chosen suspects, rather than follow the evidence and leads wherever they took them; conducted guilt-presumptive interrogations of DeLeon-Reyes and Solache contrary to accepted interrogation techniques; failed to consider evidence that undermined the confessions they obtained from DeLeon-Reyes and Solache; and conducted a shoddy investigation in which they failed to properly document investigative steps, pursue all possible leads, and engage in the sort of basic crime scene processing efforts that are critical to collecting and preserving potentially critical physical evidence.

Tiderington Report, Ex. 1 at 3–4. *See also id.* at 4 ("The investigation reflected a primary goal of closing the case with charges, rather than finding the truth about who participated in the murder and kidnapping of the Soto family."); *id.* at 13 ("Officers investigating crimes have an obligation under accepted police practices to focus their investigations on bringing the true perpetrator to justice, not just closing a case. Under generally accepted police practices, that requires following all leads wherever they take you, rather than where you want them to take you. It is not an acceptable practice to focus on developing evidence that implicates the investigator's chosen suspect and excluding evidence that implicates other suspects ('tunnel vision' or confirmation bias)."); *id.* at 15 ("Either the detectives failed to meaningfully question Rosauro Mejia, or they failed to document their interview of him. Either one would be contrary to accepted police practices."); *id.* at 31 ("Information learned from witnesses was routinely ignored and undocumented. As discussed above, detectives failed to document and follow up on critical

5

information known to Rosa Aranda… A number of additional witnesses were deposed in this case who testified that they had been brought to the station and interviewed by detectives,… but there are no contemporaneous notes of any of those interviews, and in most cases no report documenting the substance of those interviews."). Tiderington never cites to (or even explains) what standards he is applying. He quite literally just parrots facts and concludes these facts violate some unstated standard of policing. *Id.* This is plainly insufficient under *Daubert* and other well-established law.

Simply vaguely referring to basic standards, as Tiderington does here, does not suffice to make an expert's opinions admissible. Indeed, in *In re Zimmer Nexgen Knee Implant Products Liability Litigation*, the court barred opinions by an expert "who merely cite[d] a range of studies and…documents" because he not only "failed to identify the particular data he used from those studies or the specific…documents he relied on" but then did not "explain[ ] how he applied scientific principles to the underlying data to reach his conclusions." 2015 WL 3669933, at *23 (N.D. Ill. 2015). The court determined that, "[w]ithout that explanation, [the expert] report reflects only his 'experience and subjective understanding,' which 'are not reliable scientific evidence[.]'" *Id.; see also Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 2001 WL 789218, *3 (N.D. Ill. 2001)("The fact that Nielsen's report appends [22 pages of] supporting data does not justify the absence of supporting explanations or rationale for particular opinions. Rule 26(a) requires that the expert report contain the basis and reasons for each opinion...Nielsen's index of the materials he reviewed is not keyed to his various conclusions and, thus, provides insufficient support.").

Tiderington fails to define the standards by which he judges Defendants' actions, offering no "concrete information against which to measure abstract legal concepts." *United States v.*

*Blount*, 502 F.3d 674, 680 (7th Cir. 2007). Without a sound framework, his opinions are tantamount to bald legal (and factual) conclusions, which are unhelpful and inadmissible. *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). The possibility of hired experts simply rolling out novel methodologies for pay that are not otherwise used in the putative expert's professional work is exactly the type of "abuse" that *Daubert* was intended to protect against in the first place. *See Braun v. Lorillard Inc.,* 84 F.3d 230, 235 (7th Cir. 1996). "That abuse is the hiring of reputable scientists, impressively credentialed, to testify for a fee to propositions that they have not arrived at through the methods that they use when they are doing their regular professional work rather than being paid to give an opinion helpful to one side in a lawsuit." *Id*.

An expert also "cannot simply assert a 'bottom line.'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748,761 (7th Cir. 2010). Even a qualified expert must base his conclusions on sound reasoning, and the soundness of the analysis underlying the expert's conclusions is a factual question for the Court to resolve. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718-19 (7th Cir. 2000). An expert who fails to offer a sufficient rationale for his or her conclusions should be excluded from testifying because "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Hayes v. Raytheon Co.*, 23 F.3d 410, 1994 WL 143000, *4 (7th Cir. 1994). "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connecting to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Whether Defendants acted improperly or deviated from accepted police procedures "is rather vague and is at variance from what the finder of fact is called upon to decide" and would

7

thus completely confuse the issues to be determined at trial. *Empress Casino Joliet Corp. v. Johnston*, 2014 WL 6735529, at *11 (N.D. Ill. 2014). These opinions "would confuse the jury and unfairly prejudice [Defendants]..." *Am. Family Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, 2014 WL 2893179, at *8 (W.D. Wis. 2014)(refusing to admit proffered expert opinion that Defendant behaved "unethically"); *Sanders v. City of Chicago Heights*, 2016 WL 1730608, at *8 (N.D. Ill. 2016)("Because [the expert's] definition of deliberate indifference is not necessarily the same as the Court's instruction on the legal definition of deliberate indifference, his testimony on this issue will only confuse the jury.").

Other cases where experts have attempted to fashion a methodology based on broad and objectively meaningless standards have similarly been rejected under *Daubert. See Metavante Corp.*, 619 F.3d at 761; *Am. Family Mut. Ins. Co. v. Electrolux Home Prods., Inc.*, 2014 WL 2893179, *8 (W.D. Wis. 2014)(refusing to admit proffered expert opinion that Defendant behaved "unethically"); *Sanders v. City of Chicago Heights*, 2016 WL 1730608, *8 (N.D. Ill. 2016)("Because [the expert's] definition of deliberate indifference is not necessarily the same as the Court's instruction on the legal definition of deliberate indifference, his testimony on this issue will only confuse the jury."); *Cook v. CTC Comms. Corp.*, 2007 WL 3028415, at *2-3 (D.N.H. 2007)(expert testimony relating to whether "an appropriate workplace investigation" was done was not reliable methodology); *Harper v. Capital One, N.A.*, 2013 WL 12250945, at *11–12 (N.D. Tex. 2013)(subjective best practices testimony was not admissible); *Wells v. City of Chicago*, 2012 WL 116040, at *12 (N.D. Ill. 2012)(barring the opinions of police policies expert to the extent that he relied upon generalized standards of police officers "to safeguard lives, be mindful of the welfare of others, respect constitutional rights, and so on" because such standards were "far too general to be helpful to the jury."); *Davis v. Duran*, 277 F.R.D. 362, 372

(N.D. Ill. 2011)(barring police policies expert for "retreat[ing] behind the unhelpful and protective formulaic response that he was "relying on the totality of [his] training, education, and experience," as the methodological basis for his opinions because if this was sufficient under *Daubert*, it "would make all expert testimony essentially impervious to challenge and to meaningful cross-examination."); *Hinkle v. LaRoche*, 2008 WL 4224408, at *2 (E.D. Wash. 2008)("Brasfield does not identify the particular "professional practices and standards" he used in formulating his opinions. The opinions he offers are not dependent upon any specialized knowledge and the jurors can determine for themselves, based upon their own assessment of the facts, whether [an investigation was done properly]...").

Moreover, Tiderington's application of generalized, undefined standards as a launching pad to just parrot back his client's preferred narrative is not proper fodder for expert testimony and itself a basis for exclusion as well. An "expert who parrots [ ] out-of-court statement[s] is not giving expert testimony; he is a ventriloquist's dummy." *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014); *Goldberg v. 401 North Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014) ("An expert witness is not permitted to parrot what some lay person has told him."); *Higgins v. Koch Development Corp.*, 2013 WL 6238650 (S.D. Ind. 2013)("[T]he court must be wary that experts are not simply parroting the opinions of counsel."). "Relaying the plaintiffs' likely testimony is not an example of expertise." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). This limiting principle "is intended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Von der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 864 (7th Cir. 2009).

9

Thus, Tiderington's anticipated testimony of vague, unexplained standards of proper police work without reference to any measurable standards followed by simply reciting a preferred factual narrative is simply not appropriate under *Daubert* and should be barred.

## II. Tiderington interjects "opinions" which are nothing more than conclusions about facts, credibility of witnesses, or the mental state of Defendants.

Tiderington should also be barred from testifying to "opinions" which are nothing more than conclusions about facts, witness credibility or the mental states of Defendants. The law is crystal clear that experts are not permitted to render "opinions" on the ultimate facts of the case, the subjective mental states of individuals, or opine on his or her own beliefs about the credibility of facts or witnesses. "[E]xpert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found.*, 323 F.3d at 564. Likewise, an expert opinion, like Tiderington's, that simply tells the jury what conclusion to reach from the evidence is improper. *Id.* "It is a fundamental premise of our trial system that 'determining the weight and credibility of witness testimony ... belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'" *Davis*, 277 F.R.D. at 370 (N.D. Ill. 2011) *citing United States v. Scheffer*, 523 U.S. 303, 313 (1998). "It is well-settled that...experts are not permitted to offer opinions as to the believability or truthfulness of [witness] testimony." *See Jordan*, 2012 WL 88158, *4; *see also Paine ex rel. Eilman v. Johnson*, 2010 WL 749863, *3 (N.D. Ill. 2010)("[E]xperts may not offer opinions as to whether they believe, or disbelieve, the testimony of particular lay witnesses, 'because an expert cannot testify as to credibility issues.'").

Tiderington's Report is replete with repeated attempts to offer conclusions about ultimate facts, the credibility of witnesses, or the mental state of Defendants which invade upon the province of the jury. *See e.g.* Tiderington Report, Ex. 1 at 24 ("It is evident that the Plaintiffs

10

were held in violation of the CPD policy, and it is more likely than not that CPD supervisors and police managers were well aware of the violations."); *id.* at 4 ("the Defendants in this case withheld documents and information they learned during the investigation from DeLeon-Reyes and Solache, all of which should have been disclosed."); *id.* at 4 ("The investigation reflected a primary goal of closing the case with charges, rather than finding the truth about who participated in the murder and kidnapping of the Soto family."); *id.* at 4 ("In addition, there is substantial evidence in the record that Detective Reynaldo Guevara and other defendants used physical and psychological abuse to coerce confessions from DeLeon-Reyes and Solache, and intentionally and willfully manufactured and falsified evidence, manipulated witnesses, and withheld critically relevant information from DeLeon-Reyes and Solache, and their attorneys."); *id.* at 13 ("The case was solved not through diligent efforts to develop evidence and follow leads, but instead by applying physical and psychological abuse, and seeing which individuals would crack and give a confession. Investigators knowingly and intentionally disregarded any evidence that pointed away from DeLeon-Reyes and Solache.").

Additionally, Tiderington's report goes above and beyond the permitted areas of expert testimony by offering opinions as to guilt or innocence. For example, Tiderington's report states "[a]s was the case with DeLeon-Reyes and Solache, once detectives misclassify an innocent person as a guilty suspect…" Tiderington Report, Ex. 1 at 28. An "expert" cannot offer an opinion as to guilt or innocence. *See Sanders v. City of Chicago Heights*, 2016 WL 4417257, *5 (N.D. Ill. 2016)("Ryan, however, cannot testify that Haslett's confession is truthful unless he can substantiate this unsupported speculation."); *Davis v. Duran*, 2011 WL 2277645, at *7 (N.D.Ill. 2011)("An expert witness may not usurp the jury's function to weigh evidence and make credibility determinations...[E]xpert witnesses are not allowed to sort out possible conflicting

testimony or to argue the implication of those consistencies. That is the role of the lawyer, and it [is] for the jury to draw its own conclusions from the testimony it hears."); *United States v. Hall*, 165 F.3d 1095, 1107 (7th Cir.1999)("the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury-determining the credibility of witnesses"); *United States v. Scheffer*, 523 U.S. 303, 313 (1998) ("Determining the weight and credibility of witness testimony ... has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.'"); *Krik v. Crane Co.*, 71 F. Supp. 3d 784, 788 (N.D. Ill. 2014) ("[T]he prejudicial effect of [testimony about the defendant's state of mind] would far outweigh its probative value, given its highly speculative nature.").

### III. To the extent Tiderington is permitted to testify, Plaintiffs should be barred from eliciting testimony or opinions from Tiderington wherein he references Defendant Officers collectively as such testimony will mislead the jury and confuse the issues.

To the extent this Court allows Tiderington to testify, Plaintiff should be barred from eliciting testimony or opinions from Tiderington wherein he refers to Defendants collectively, lumping them together, as such testimony or opinion is unduly prejudicial and misleading. Throughout his report, Tiderington makes numerous references to what "the defendants in this case," "detectives" and "investigators" did or did not do. *See generally* Tiderington Report, Ex. 1. For example, Tiderington writes:

- "Consistent with that opinion, I have found that *the defendants in this case* applied tunnel vision to obtain the evidence they needed to implicate their pre-chosen suspects…"

- "Finally, *the Defendants in this case* withheld documents and information they learned…"

- "*Investigators* knowingly and intentionally disregarded any evidence that pointed away from DeLeon-Reyes and Solache."

- "Either *the detectives failed* to meaningfully question Rosauro Mejia, or they failed to document their interview of him."

- "This information was presumably known *to detectives*; Aranda testified that when she was interrogated by detectives, she did not hide any information she knew and told them everything. Yet, this information is not documented anywhere in the police file, nor is there any indication that *the detectives* did anything to act on this important lead."

- "And importantly, *the detectives* do not appear to have made any efforts to investigate the calls to and from the Mejia household, which could have been another rich source of leads in an open-minded investigation."

*Id.* at 3, 4, 13, 14, 16, 19 (emphasis added).

Tiderington should be barred from generally referring to "defendants" or "defendant officers" as such reference does not aid the jury to determine if any individual defendant violated Plaintiff's rights. Liability for individual defendants under Section 1983 is premised on personal responsibility and involvement. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Similarly, under the Illinois Tort immunity Act, individual defendants are not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204. Permitting Tiderington to present testimony to the jury wherein he makes repeated generic references to the Defendant officers collectively will not aid the jury in determining a fact at issue and will only serve to mislead the jury. Moreover, such general opinions are simply conclusions that fail to provide any basis or reasonable analysis. *See Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (stating "[A]n expert's conclusory opinion provides nothing of value to the judicial process.").

### CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court grant this motion, and for any further relief this Court deems just and proper.

Date: March 25, 2026                           Respectfully submitted,

                                               /s/ Josh M. Engquist
                                               JOSH M. ENGQUIST, Attorney No. 6242849
                                               Special Assistant Corporation Counsel
                                               *One of the Attorneys for Defendants Halvorsen,*
                                               *Dickinson, Rutherford, Trevino, Mingey, Biebel,*
                                               *and Cappitelli*

James G. Sotos
Josh M. Engquist
Caroline P. Golden
Elizabeth R. Fleming
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

14

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on **March 25, 2026** I electronically filed the foregoing **Defendants'** *Daubert* **Motion to Bar Plaintiffs' Police Practice Expert Witness Thomas J. Tiderington** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

***Attorneys for Arturo Reyes:***
Jon Loevy
Steven Art
Anand Swaminathan
Rachel Brady
Sean Starr
Wallace Hilke
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
steve@loevy.com
anand@loevy.com
brady@loevy.com
sean@loevy.com
hilke@loevy.com

***Attorneys for City of Chicago:***
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Austin Rahe
Patrick R. Moran
Lauren Ferrise
Sabrina A. Scardamaglia
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654
(312) 494-1000
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com
pmoran@rfclaw.com
lferrise@rfclaw.com
sscardamaglia@rfclaw.com

***Attorneys for Gabriel Solache:***
Jan Susler
Ben H. Elson
Nora Snyder
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
jsusler@peopleslawoffice.com
ben.elson79@gmail.com
norasnyder@peopleslawoffice.com

***Attorneys for Defendant Guevara:***
Steven Blair Borkan
Timothy P Scahill
Whitney N. Hutchinson
Graham P. Miller
Emily E. Schnidt
Christiane E. Murray
Molly E. Boekeloo
Amanda Guertler
Krystal Gonzalez
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580-1030
sborkan@borkanscahill.com
tscahill@borkanscahill.com
whutchinson@borkanscahill.com
gmiller@borkanscahill.com
eschnidt@borkanscahill.com
cmurray@borkanscahill.com
mboekeloo@borkanscahill.com
aguertler@borkanscahill.com
kgonzalez@borkanscahill.com

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Atty. No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Defendants Halvorsen, Dickinson, Rutherford, Trevino, Mingey, Biebel, and Cappitelli*

15