**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| Plaintiff, | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 2312 |
| Plaintiff, | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

<u>**DEFENDANTS' MOTIONS IN LIMINE NOS. 1-23**</u>

Date: March 25, 2026

Respectfully submitted,

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Attorney No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Defendants Halvorsen,
Dickinson, Rutherford, Trevino, and Mingey*

James G. Sotos
Josh M. Engquist
Caroline P. Golden
Elizabeth R. Fleming
Kyle T. Christie
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

**MIL 1. Motion to Bar Reference or Evidence of Plaintiffs' Certificates of Innocence.**

Plaintiffs seek to introduce their COIs as evidence for four reasons: (1) as evidence that Plaintiffs are factually innocent, "which is relevant to their damages"; (2) to show the "underlying criminal proceedings against them were terminated in their favor in a manner indicative of innocence"; (3) to show material evidence suppression by Defendants; and (4) to show "Defendants' conduct was extreme and outrageous and that they acted with malice." (Dkt. 637, Plaintiffs' Joint Proffer, ¶ 1.) But the COIs are not relevant to those issues.

The COIs were not the product of any adversarial process. Nor were they the result of a factual determination that Plaintiffs are, indeed, innocent. They were issued without any of the evidence that will be presented to the jury in this case and in opposition to Assistant State's Attorney within the Cook County State's Attorney' Office publicly exclaiming that neither Plaintiff was innocent. Instead, the COIs were the product of an unexplained and opaque reversal by the CCSAO.

This background is critical to understanding the legal justification for barring admission of the COIs. The COIs, in particular the supposed findings by another judge, are inadmissible hearsay. They would also be severely prejudicial to Defendants, confuse the issues, and usurp the jury's role with respect to the issues in this case. And their introduction will only cause delay because the circumstances that led to the granting of the COIs necessitates a mini-trial: (1) that after years of opposition by the CCSAO, it inexplicably reversed course and dropped opposition; (2) that Defendants were prohibited from participating and presenting evidence; (3) that the COIs were granted based on a filing, not a hearing; (4) the standards, required consideration, and limitations by which the judge granted the COI; and (5) the purpose and limitations on the use of the COI per statute. Worse, Defendants cannot meaningfully test that decision making because the CCSAO refused to explain their decision and the Court upheld the CCSAO's invocation of the deliberative process privilege, denying Defendants the ability to probe the unexplained decision to reverse

1

course.

Compounding the matter is the little probative value the COIs serve. The COIs do not bear on the termination of the criminal case—they are not part of the criminal proceedings at all, but rater civil proceedings. The COIs merely leave the jury with the utterly false impression that a court has already determined Plaintiffs' factual innocence after adversarial testing. Thus, Plaintiffs' COIs must be barred.

**A. Plaintiffs' obtain COIs after an abrupt and unexplained reversal by the CCSAO.**

In 2016, over the CCSAO's objection, the Cook County Circuit Court granted Plaintiffs' a new hearing on their motions to suppress their confessions based on their post-conviction petitions claiming new evidence—pattern and practice evidence—that showed Guevara physically coerced them to confess. *People v. Reyes*, 369 Ill. App. 3d 1, 2–3 (1st Dist. 2006); (Ex. 14, Tr. *People v. Reyes*, No. 98 CR 12440, at (June 29, 2016).) A year later, the trial court granted their motions to suppress, and as a result, the CCSAO concluded it could not meet its heavy burden and dismissed the case. Ex. 15, Tr. *People v. Reyes, et al.*, Case No. 98 CR 12440 (Dec. 21, 2017). But in doing so, ASA Susman advised the court that "there is not a doubt in my mind or the mind of any prosecutor who has worked on this case that Mr. Solache and Mr. Reyes are guilty of these heinous crimes, but because Detective Guevara was the lead investigator in this crime, and because he has repeatedly refused to testify truthfully, the State's Attorney's Office has no choice but to dismiss the case against Defendants Solache and Reyes…." (*Id.* at 3:1–10.) Susman added that this is "a tragic day for justice in Cook County" and offered the CCSAO's condolences to the Soto children and their families. (*Id.* at 3:12–15.)

In April 2018, Plaintiffs petitioned for COIs. For nearly four years, the Cook County State's Attorney's Office opposed Plaintiffs' COI petitions. (Ex. 16, Bowden Dep. 27:2–18, 45:2–20.) By 2021, Assistant State's Attorney Christa Bowden—assigned to the Special Litigation Unit

2

responsible for COI petitions—took over the case. (*Id.* at 26:5–17.) She reviewed the record and continued to oppose the petitions, including opposing Plaintiff Reyes' motion for summary judgment. She reviewed the record, including materials from this civil litigation, and continued to oppose the petitions. (*Id.* at 33:5–34:10, 35:20–36:6, 42:7–20, 50:23–51:6.)

But suddenly, on November 11, 2022—just days before the scheduled hearing—Bowden was instructed to withdraw the CCSAO's opposition. (*Id.* at 44:8–45:20.) She testified she did not know who made that decision or why, and was unaware of any new facts prompting the reversal. (*Id.* at 46:2–47:6, 48:2–5.) Three days later, at a hearing on November 14, 2022, the CCSAO informed the state court that it was withdrawing its opposition. (Ex. 17, Hr'g Tr., *People v. Reyes, et al.*, No. 98 CR 12440, at 3:14–18 (Nov. 14, 2022).) With no adversarial opposition, the court granted Plaintiffs' COI petitions because once the CCSAO withdrew its opposition, the court was left to evaluate only Plaintiffs' unrebutted submissions and was therefore "not free to reject the petitioner's evidence." *People v. Washington*, 226 N.E.3d 1218 1235–36 (Ill. 2023).

This procedural history matters. As the Seventh Circuit has recognized, a COI issued without opposition "does not really reflect a factual finding arising from the crucible of the adversarial process." *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020). Here, as in *Patrick*, no testimony or evidentiary hearing occurred before the COIs were granted. (Ex. 18, 6/28/23 Tr. at 28.) The result is a judicial order that carries the appearance of a merits determination without the substance of one.

### B. The COIs are inadmissible hearsay that cannot be used to demonstrate factual innocence and are not relevant to damages.

The COI and any related declarations or "findings" are out-of-court statements Plaintiffs seek to offer to prove the truth of the matter asserted: a finding of factual innocence. Fed. R. Evid. 801(c). But there is no exception to the hearsay rule that would allow admission for this purpose. *See Fields*

*v. City of Chicago*, 2014 WL 12778835, at *4 (N.D. Ill. Apr. 29, 2014) (holding the denial of a COI is inadmissible).[1]

Rule 803(8) allows admission of public records in a civil case if the record sets out "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8).But this exception does not encompass judicial findings of fact, such as a decision to grant a COI. *See United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); *Taylor v. City of Chicago*, 2012 WL 669063 (N.D. Ill. Feb. 29, 2012) (a judge's finding of "no probable cause" does not qualify as a hearsay exception under Fed. R. Evid. 803(8)). A petition for a COI is a separate civil proceeding under Illinois law, which allow hearsay, *People v. Fields*, 959 N.E.2d 1162, 1166 (Ill. App. Ct. 2011), and require judges to solely rely on the evidence plaintiff presented in the petition when there is no opposition by the prosecution.[3]

The Seventh Circuit discounted the probative value of COIs where there is no adversarial process, stating it "does not really reflect a factual finding arising from the crucible of the adversarial process, which our legal system regards as the truth." *Patrick*, 974 F.3d at 833. It is also black letter law that the outcome of related civil proceedings is inadmissible as hearsay in subsequent proceedings involving different parties. *See Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987) ("[C]ivil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay."); *Fairley v. Andrews*, 423 F. Supp. 2d 800, 811–12 (N.D. Ill. 2006) (barring reference to outcome of prior litigation as both hearsay and as unduly prejudicial).

Furthermore, the Seventh Circuit has been clear that evidence of judicial findings in collateral proceedings are inadmissible. A judge's second-hand fact and credibility determinations are

---

[1] The Seventh Circuit has never decided whether a COI is hearsay. That issue was not before the court or considered in *Patrick*. 974 F.3d at 834.

4

"irrelevant to an adjudication of a civil rights claim." *Schultz v. Thomas*, 832 F.2d 108, 111 (7th Cir. 1987) (reversing judgment on jury verdict because allowing state court judge's findings and credibility determinations into evidence was reversible error); *Fisher v. Krajewski*, 873 F.2d 1057, 1063-64 (7th Cir.1989) (affirming exclusion of evidence of judge's determination in prior case where it was based on credibility determination of prior judge).

To illustrate the hearsay problem, the Court should follow Judge Shah's reasoning in *Walker v. White*, No. 16 C 7024 (N.D. Ill.) where Judge Shah barred a COI as inadmissible when the element of favorable termination was not at issue because all the COI could be used for was affirmative evidence of innocence. (*See* Ex. 19, Hr'g Tr., *Walker v. White et al.*, 16-cv-7024 at 40:18–20 (March 2, 2023) ("it would be hearsay to offer the [COI] as evidence of actual innocence and the truth of innocence.").

Judge Shah also noted that its admission would open the door to the use of judicial findings for the truth of the matter, explaining that "[t]here is no res judicata or preclusive effect of a [COI]...and it would be hearsay to offer the [COI] as evidence of actual innocence and the truth of innocence." (*Id.* at 40:12–20.) Yet, this is exactly what Plaintiffs intends to use the COIs for: to declare to the jury that the COIs establish their factual innocence and elements of claims wholly unrelated to their malicious prosecution claim under Illinois law. Plaintiffs should not be permitted to use their COIs in this fashion because it is improper to use judicial findings for the truth of the matter where there is no res judicata or preclusive effect of the order granting the COI. Accordingly, exclusion of the COIs as inadmissible hearsay is the best way to prevent jurors from using it for an improper purpose.

Rule 807 also does not permit admission of the COIs. Rule 807 provides that a hearsay statement is not excluded when each of two conditions are met: (1) the statement is supported by sufficient guarantees of trustworthiness–after considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for

5

which it is offered than any other evidence that the proponent can obtain through reasonable efforts. Fed. R. Evid. 807(a). This exception is very narrow. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 233 (7th Cir. 2021); *Huff v. White Motor Corp.*, 609 F.2d 286, 291 (7th Cir. 1979) ("Congress 'intended that the residual hearsay exception[ ] will be **used** very rarely, and only in exceptional circumstances.'"); *Stolarczyk v. Senator International Freight Forwarding*, LLC, 376 F. Supp. 2d 834 (N.D. Ill. 2005) ("In addition to the presumption of unreliability afforded to hearsay statements, Plaintiff also faces the Seventh Circuit's repeated 'emphasis on narrowly construing the residual provision.'"). Plaintiffs' COIs do not meet this exception—as previously stated—there was no adversarial hearing for these COIs.

Finally, Plaintiffs' argument that the COIs are relevant for damages (if that could somehow be separated from the hearsay problem) should be easily rejected. Judge Daniel recently foreclosed this argument in barring a plaintiff's COI as proof in support of damages, stating that a "person wrongfully imprisoned who has not obtained a certificate of innocence has suffered no less harm than a person wrongfully imprisoned who has a certificate of innocence." *Ieliot Jackson v. Eichman*, Dkt. 228 (N.D. Ill. Jan. 8, 2026) (barring evidence of a certificate of innocence to support damages); *see also Blackmon v. City of Chicago*, 2025 WL 2848411, at \*10-11 (N.D. Ill. Aug. 4, 2025) (rejecting admission of COI for damages). Ultimately, the COI constitutes inadmissible hearsay that cannot be used to argue damages and should be excluded.

## C. The COIs Must Be Barred Under Rule 403.

The only arguable relevance of the COI relates to one element of the malicious prosecution claim under Illinois law: favorable termination. *See Patrick v. City of Chicago*, 974 F.3d 824, 833 (7th Cir. 2020). The COIs are not relevant to any of Plaintiffs' federal claims, including Plaintiffs' virtually identical federal malicious prosecution claim. *See, e.g.*, *Blackmon*, 2025 WL 2848411, at \*10–11 (barring COI where claims do not relate to favorable termination).

6

But even where a COI bears directly on a claim, Rule 403 commands exclusion if the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. Here, admission of the COIs carry an unavoidable "judicial stamp" that Plaintiffs will use to suggest that a court has already determined they are innocent. Even without prompting, jurors who hear that a COI was granted will likely assume the court made a merits determination after adversarial testing as this Court observed. (Ex. 18, *Reyes/Solache* 6/28/23 Tr. at 32:6–14.) Conversely, jurors will not infer that the COIs stemmed from an unexplained decision from senior leadership without input from the assigned prosecutor, who had consistently opposed the petitions and maintained that the record did not support Plaintiffs' claims of innocence.

The prejudice is compounded by the fact that Defendants cannot meaningfully challenge the basis for the COIs. The CCSAO has never provided any explanation for its sudden decision to withdraw its opposition. (*Id.* at 8:9–19.) Although Defendants sought discovery into that decision, that discovery was denied, leaving Defendants unable to test the basis for the COIs while Plaintiffs remain free to rely on them. This creates a fundamentally one-sided presentation: Plaintiffs intend to rely on the COIs to suggest innocence and malice, while Defendants are deprived of any ability to probe or contextualize how those COIs came to be.

As the Seventh Circuit has warned, jurors may be "tempted to give conclusive weight to the certificate of innocence merely because it reflects a formal judicial finding." *Patrick*, 974 F.3d at 834. This Court likewise recognized the risk that COIs may carry an "inflated, oversized importance in the minds of the jurors." (Ex. 18, *Reyes/Solache* 6/28/23 Tr. at 28:5–12, 30:4–9.) And courts in this District have excluded COIs for that reason, recognizing that they invite jurors to treat them as proof of actual innocence, which is improper. *See Brown v. City of Chicago*, 2024 WL 5438519, at *15–16 (N.D. Ill. 2024).

More fundamentally, admission of the COIs would improperly invade the province of the jury.

By presenting a judicial determination that Plaintiffs are "innocent," Plaintiffs invite jurors to adopt that conclusion rather than independently evaluate the credibility of witnesses and the evidence presented at trial. Courts have repeatedly cautioned against admitting prior judicial findings for this reason, as they "unavoidably overlap[] the jury's role in assessing credibility" and create a substantial risk that jurors will give them undue or dispositive weight. *See, e.g.*, *Schultz v. Thomas*, 832 F.2d 108, 110–11 (7th Cir. 1987).

Defendants acknowledge that this Court permitted the plaintiff in *Bolden v. Pesavento* to offer the COI "to address whether dismissal" of the plaintiff's criminal case "was indicative of innocence," which is an element for a state law malicious prosecution claim. Ex. 20, 17-cv-417, Dkt. 467, at *25–26 (N.D. Ill. Sept. 22, 2021). But the Court's reasoning in *Bolden* then should not control in this case now for several reasons.

First, the defendants in *Bolden* were permitted to offer evidence "about the basis for the Certificate of Innocence," namely that the "Circuit Court of Cook County found that his trial counsel was ineffective (and not because witnesses recanted, or because evidence was fabricated, and so on)." (*Id.* at 26.) That is not the case here.

Second, as was done in *Walker*, Defendants are willing to waive the favorable termination element for both Plaintiffs' federal and state law malicious prosecution claims. This includes the "indicative of innocence" aspect of the Illinois malicious prosecution claim, thus rendering the COI totally irrelevant. To be clear, Defendants are not stipulating that Plaintiffs' criminal cases ended in a manner "indicative of innocence," or that the COI proves favorable termination, or that the jury should hear any evidence about the COIs. Rather, Defendants propose eliminating the favorable termination element from the trial altogether. Thus, the jury will be instructed that Plaintiffs must prove only four elements to establish liability on the part of Defendants for both malicious prosecution claims: Defendants commenced and continued the criminal proceeding, without

8

probable cause, acting with malice, and damages resulted. Defendants' willingness to waive this element eliminates the probative value of the COIs, which again relate to one element of one claim in this trial. (*See* Ex. 19, *Walker v. White et al.*, 16-cv-7024, transcript of March 2, 2023 hearing, in which Judge Manish S. Shah found the probative value of the COI "very low . . . near zero in light of the defense stipulation." at 39:22-40:40:24)

Following this procedure would eliminate the highly prejudicial and misleading effect of the COIs and avoid the unnecessary mini-trial about the postconviction proceedings. and avoid juror confusion. *See Brown v. City of Chicago*, 19 CV 4082, 2024 WL 5438519, at *16 (N.D. Ill. July 30, 2024) (barring the COI, including on the grounds that it would make an already complex trial, more confusing because "If Plaintiff can introduce the COI, Defendants will be able to attack it, lengthening the proceedings on a side issue."). It would also avoid juror confusion because although federal and state malicious prosecution claims mirror each other, Illinois law requires a disposition "indicative of the innocence of the accused," *See Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996). But a federal malicious prosecution claim does not. *See Thompson v. Clark,* 596 U.S. 36, 49 (2022).

With this approach, the evidence is streamlined, the prejudice of admission of the COIs is obviated, and Plaintiffs gain for not having to prove an otherwise disputed element of his malicious prosecution claims and lose nothing. Plaintiffs likely will object to this approach, but the only reason Plaintiffs would do this would be so that the COIs can be admitted to unfairly prejudice the Defendants, with the hope that the jury adopts the COIs as evidence of Plaintiffs' factual innocence.

At bottom, the key focus for trial should be on Defendants' conduct, not some unexplained, post-hoc decision by the CCSAO that occurred decades later over which Defendants had no involvement or control. *See* 735 Ill. Comp. Stat. 5/2-702(e) (only the State's Attorney or Attorney General "have the right to intervene as parties" to COI petition). Eliminating this element removes any basis for introducing the COI and avoids juror confusion and a collateral mini-trial.

Third, the Rule 403 concerns raised here were not raised by the defendants in *Bolden* in their motion in limine to bar the COI or their reply. (Ex. 21, Defs.' Mot, *Bolden v. Pesavento*, Dkt. 315 (Oct. 9, 2019); Ex. 22, Defs.' Reply, *Bolden v. Pesavento*, Dkt. 366 (Nov. 22, 2019).) Although the defendants in *Bolden* vaguely referenced prejudice, it was within the context of arguing that a COI constitutes inadmissible hearsay and inadmissible evidence to show favorable termination. (*See, e.g.*, Ex. 21, Defs.' Mot., Dkt. 315 at 3–4; Ex. 22, Defs.' Reply, Dkt. 366 at 3–4.) They simply did not develop a Rule 403 argument or address the distinct prejudice present here. As a result, the Court did not consider the unique prejudice created by admitting the COI but rather determined if the COI was inadmissible hearsay and relevant to demonstrate favorable termination. (Ex. 20, *Bolden*, Dkt. 467 at *25–26.).

In sum, courts must carefully evaluate admission of COIs and, in doing so, several have barred them under Rule 403. *See, e.g.*, *Blackmon v. City of Chicago*, 2025 WL 2848411, at *10–11 (N.D. Ill. Aug. 4, 2025) (barring plaintiff's COI under Rule 403); Ex. 23, *Ieliot Jackson*, Dkt. 228 (N.D. Ill. Jan. 8, 2026). In *Blackmon v. City of Chicago*, the Court in excluding a COI stated:

> Admission of the COI would necessarily entail evidence and testimony about the certificate of innocence process, who participated in that process, and the considerations required by the judge who issued it. In response, Defendants would surely seek to establish that they had no ability to challenge whether the COI should issue. If Plaintiff can introduce the COI, Defendants **will be able to substantively attack it, lengthening the proceedings on a side issue. This trial will already be a complex one, and the court intends to focus the jury's attention on the questions it must decide.** Mixing in questions of why a state court granted a COI on state-law grounds adds much potential confusion. Broaching the topic of the COI raises new disputes and complexities that are unnecessary to decide the claims before the jury. These considerations substantially outweigh the COI's probative value.

*Blackmon*, 2025 WL 2848411, at *11 (emphasis added). The same holds true here.

\*\*\*

In conclusion, the COIs are not relevant, are inadmissible hearsay, should be barred under Rule 403. The COIs invite the jury to give dispositive weight to an untested and unexplained

10

determination while preventing Defendants from probing its basis. Rule 403 exists to prevent precisely that result. The Court should bar any reference to the COIs at trial.

**MIL 2. Motion to Bar Any Evidence or Reference to Allegedly False Testimony of Any Defendant at Plaintiffs' Criminal Proceedings**

Plaintiffs must be barred from introducing evidence or argument to any Defendant—including Guevara—testifying falsely at Plaintiffs' criminal proceedings. Police officers have absolute immunity from civil liability based on alleged perjury. *Zambrano v. City of Joliet*, 2024 WL 532175, at *10 (N.D. Ill. Feb. 9, 2024) (Seeger, J.) (citing *Jones v. York*, 34 F.4th 550, 563 (7th Cir. 2022). To allow such substance-less theories of perjurious testimony would violate the principles set forth by the U.S. Supreme Court to protect judges, prosecutors, and witnesses. *Briscoe,* U.S. at 345 (absolute immunity for witnesses and prosecutors under § 1983 even though it may leave the wronged defendant without civil redress for malicious or dishonest action that deprived him of liberty); *Pierson v. Ray,* 386 U.S. 547, 554 (1967) (absolute immunity of judges from damages liability for acts committed within their role even when the judge is accused of acting maliciously and corruptly).

It follows that any argument, references, or suggestions to the effect that a police officer provided false or misleading testimony at Plaintiffs' criminal proceedings is irrelevant. Fed. R. Evid. 401. Even if relevant, the Court should exclude it under Rule 404(b) as inadmissible propensity evidence or under Rule 403 because it confuses the issues, misleads the jury, and is highly prejudicial as it suggests, without basis, that Plaintiffs' convictions were based on perjured testimony. Fed. R. Evid. 403, 404(b).

**MIL 3. Motion to Bar Any Evidence, Argument, or Inquiry Relating to Any Judicial Commentary on the Credibility of Guevara or Other Matters and Cases Involving Guevara.**

Plaintiffs must be barred from introducing evidence or making any argument or inquiry of any witness (including Guevara himself) regarding any prior judicial commentary relating to Guevara's

11

credibility or his alleged history of misconduct in other cases. In connection with various post-conviction matters involving Guevara, certain Cook County judges made statements impugning Guevara's credibility and alleged "history of misconduct." *See e.g.*, *People v. Martinez,* 2021 IL App (1st) 190490, ¶ 64 (1st Dist., 2021) ("This court has recognized Detective Guevara's well-documented history of influencing and manipulating witnesses…Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system.").

More specifically, Plaintiffs listed Judge Obbish as a witness to apparently testify as to his negative views of Guevara in this matter. To permit Judge Obbish to offer opinions regarding Guevara would violate Rule 403, as such testimony is not probative and is highly prejudicial. Fed. R. Evid. 403. This creates a substantial danger that the jury will substitute Judge Obbish's views for their own and thereby undermine the fairness of the proceedings. This testimony should therefore be excluded.

Plaintiffs should also be barred from offering testimony or evidence concerning Guevara's alleged credibility or history of misconduct in other cases, including quotes or testimony from other judges as witnesses. Plaintiffs did not list such witnesses or evidence under Fed. R. Civ. P. 26(a) or in response to Guevara's Interrogatories, which requested Plaintiffs' to identify witnesses or evidence meant to show that Guevara committed other bad acts under Fed. R. Evid. 404. Thus, this evidence is barred under Fed. R. Civ. P. 37(c)(1). *See Moran v. Calumet City*, 54 F.4th 483, 497–98 (7th Cir. 2022) (precluding claim based on incomplete interrogatory answers).

Indeed, allowing evidence of other state court judge's statements about a party's credibility or conduct, for which they have no personal knowledge of the underlying facts, would be reversible error under Seventh Circuit precedent. *Schultz v. Thomas,* 832 F.2d 108 (7th Cir. 1987). In *Schultz,* a case squarely on point, the trial court abused its discretion when it admitted a judge's testimony and transcript of the judge's prior findings that the officers had lied and abused their authority. *Id.* The

12

judge did not testify " about the existence of some objective fact as to which he had personal knowledge," but to his opinions about witnesses' credibility. *Id.* at 110. The Seventh Circuit held that such evidence "so unavoidably overlapped the jury's role in assessing the credibility of the key witness as to unfairly prejudice the defendants by denying them the right to have a jury decide the facts which formed the claims against them." *Id.* To be clear, "no person, especially a judge, should usurp the jury's exclusive duty to determine credibility." *Id.* at 111. This type of evidence was similarly deemed inadmissible in a case involving Guevara and Halvorsen which went to trial and verdict. Ex. 1, *Rios v. Guevara, et al.,* 22 CV 3973, Dkt. 277 at 5–6.

Additionally, the introduction of the statements of other state court judges is hearsay not subject to any exception. *Greycas, Inc. v. Proud,* 826 F.2d 1560, 1567 (7th Cir. 1987) ("[C]ivil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgment; for as to those facts, the judgment is hearsay."); *Fairley v. Andrews,* 423 F. Supp. 2d 800, 811–12 (N.D. Ill. 2006) (barring reference to outcome of prior litigation as both hearsay and as unduly prejudicial); *see also Holmes v. City of Chicago*, 2016 WL 6442117 (N.D. Ill. 2016); *Ryan v. Koester*, 2013 WL 6659847 (S.D. Ill. 2013).

Accordingly, Plaintiffs must be barred from introducing evidence, making any argument, or inquiring into any witness (including Guevara himself) about any prior judicial commentary relating to Guevara's or any Defendant's credibility or their alleged history of misconduct in other cases.

**MIL 4. Motion to Bar Imputing Any Inference from Guevara's Assertion of the Fifth Amendment to Individual Officer Defendants.**

During Guevara's depositions, Plaintiffs' counsel asked Guevara several fact-specific questions accusing Defendants Officers of the very misconduct alleged in this case, including:

- Trevino tricked Reyes to believe he would help him so he would confess;
- "Trevino had Reyes sign a confession" that Guevara developed;

(Ex. 2, Guevara Dep., at 300:8–302:21, 312:12–18.) Guevara invoked the Fifth Amendment in

13

response to these questions and every other question about his or other's work on the underlying investigation.

Plaintiffs' counsel knew in advance that Guevara would invoke his Fifth amendment privilege in response to every substantive question concerning his work as a CPD police officer. The purpose of this questioning was—and remains—to exploit Guevara's Fifth Amendment invocation to the Defendant Officers' detriment, implicitly inviting the jury to draw an adverse inference against them based on Guevara's refusal to answer. That tactic should be barred. It is profoundly unfair, highly prejudicial, and does not advance the truth, particularly when none of the Defendant Officers' invoked the Fifth Amendment. Indeed, they deny the allegations of misconduct.

The party seeking an adverse inference from a witness's invocation of the Fifth Amendment against another party bears the burden of showing that the circumstances justify imputing it. *State Farm Fire & Cas. Co. v. Abrams*, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000). The "overarching concern is fundamentally whether the adverse inference is trustworthy under all the circumstances and will advance the search for the truth." *Kontos v. Kontos*, 968 F. Supp. 400, 406 (S.D. Ind. 1997). (quoting *Libutti v. United States*, 107 F.3d 110, 124 (2d. Cir. 1997)). Courts evaluate that question using the following "non-exclusive factors":

> (1) the compatibility of their interests;
> (2) the degree of control the party exercises over the [invoking] witness;
> (3) the nature of the relationship between the party and the invoking witness; and
> (4) the role of the [invoking] witness in the litigation.

*Banks v. Yokemick*, 144 F. Supp. 2d 272, 289 (S.D.N.Y. 2001) (citing *Libutti*, 107 F.3d at 123). Those factors weigh decisively against any inference here.

First, while all Defendants would like to win at trial, their interests do not otherwise align. Defendant Officers strongly prefer Guevara testify substantively and deny Plaintiffs' accusations rather than invoke the Fifth Amendment, while Guevara's reasons for invoking the Fifth

14

Amendment are his own. Fundamental fairness forbids allowing his decision to be wielded as a sword against co-Defendants who have not invoked the privilege.

Second, Defendant Officers have no control over Guevara. Their status as co-defendants is insufficient to establish the "control" element. *See Banks*, 144 F. Supp. 2d at 289. Critically, Guevara's invocation of the Fifth Amendment does not advance the interests of Defendants. Allowing an inference against them based on Guevara's silence would improperly substitute speculation for proof.

Even where a Fifth Amendment invocation is permitted, courts retain broad discretion under Rule 403 to prevent unfair prejudice and "lawyer abuse." *LiButti*, 107 F.3d at 122; *RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 277 (3d Cir. 1986). Fact-specific questions that assume disputed facts and are designed to elicit an invocation improperly invite the jury to treat counsel's questions as evidence.

 Courts have unsurprisingly and repeatedly condemned this practice. *See, e.g.*, *In re 650 Fifth Ave.*, 934 F.3d 147, 172 (2d Cir. 2019) (abuse of discretion to allow inflammatory presentation of Fifth Amendment invocations); *Libutti*, 107 F.3d at 122 (citing *RAD Servs., Inc. v. Aetna Cas. and Sur. Co.*, 808 F.2d 271 at 277 (3rd Cir. 1986) (recognizing "the need to guard against 'sharp practices'" and prevent "fact-specific questions by which the examining attorney effectively testifies for the invoking witness")). Viewed against that backdrop, allowing Plaintiffs to question Guevara about the alleged misconduct of Defendant Officers—knowing the questions will go unanswered— would permit Plaintiff to bootstrap his case through insinuation rather than evidence. That is precisely the type of unfair prejudice Rule 403 is designed to prevent.

For all these reasons, Defendants respectfully request that the Court: (1) bar Plaintiffs from arguing, suggesting, or implying that any adverse inference may be drawn against Defendant Officers based on Guevara's invocation of the Fifth Amendment; (2) preclude Plaintiffs from asking

Guevara questions concerning the conduct, intent, or alleged misconduct of Defendant Officers; and (3) limit any questioning of Guevara to his own conduct, if any, subject to the Court's Rule 403 authority. Defendants also request that Plaintiffs' counsel provide the court and defense counsel with the questions he intends to ask of Guevara in advance and in writing. Ex. 1, *Rios*, 22-cv-03973, Dkt. 277 at *4 ("plaintiff shall disclose his questions for defendant Guevara" before he is called to testify); *Wilson v. Transervice Lease Corp.*, 2019 WL 3891874, at * 5 (July 16, 2019 Conn. Super. Ct.) (requiring plaintiff's counsel to provide the court and defense counsel with advance notice of questions to be asked of the invoking party for prior review and approval to "discharge its obligation to balance the probative value of the questions against the prejudicial nature of any questions").

**MIL 5. Motion to Bar Evidence or Argument Related to Halvorsen's Disavowed Fifth Amendment Invocation in Unrelated Litigation.**

The Court should bar any evidence, testimony, or argument concerning Halvorsen's prior and since-disavowed invocation of the Fifth Amendment during a deposition in unrelated litigation on unrelated issues. Any reference to that invocation is irrelevant, highly prejudicial, and would only confuse the jury.

On April 20, 2018, Halvorsen was deposed in *Montanez v. Guevara*, 17 CV 4560 and *Serrano v. Guevara*, 17 CV 2869. During that deposition, he invoked the Fifth Amendment in response to questions concerning homicide investigations he conducted as a Chicago Police Detective. He was never asked about the Soto homicide and kidnapping investigation. (*See* Ex. 3, 4/20/18 Halvorsen Dep. in *Serrano/Montanez*.) Halvorsen was re-deposed on February 6, 2019, in *Serrano/Montanez*. This time he answered every question asked of him, denied the allegations of misconduct, and expressly disavowed his prior assertion of the Fifth Amendment, explaining:

> I did not like the fact that I had to sit through Mrs. Bonjean's deposition where I had to sit there and not respond to her questions. I wanted to take the opportunity to accurately say what I had done that did not violate any laws, did not violate any department regulations. It was all -- all the police work I had done was lawful and

16

honorable, and I wanted the chance to say my -- my story.

(*See* Ex. 4, 2/6/19 Halvorsen Dep. in *Serrano/Montanez*, at 111:19–112:2.) Again, Halvorsen was not asked about the underlying investigation at issue here. Halvorsen passed away on January 26, 2020. Through his special representative, Halvorsen answered the Second Amended Complaint and denied all accusations of wrongdoing.

This is well-settled Seventh Circuit law: when a civil defendant's prior assertion of the Fifth Amendment does not impair the plaintiff's access to discovery or evidence, the probative value of that assertion is extremely low. *Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001) Consistent with *Harris*, the Seventh Circuit affirmed orders barring any reference to prior Fifth Amendment invocations where Defendants later disavowed the privilege as the plaintiff suffered no prejudice. *Evans v. City of Chicago*, 513 F.3d 735, 745–46 (7th Cir. 2008). That is precisely the situation here. Halvorsen fully disavowed his prior invocation, answered all questions in the unrelated cases, and never invoked the Fifth Amendment with respect to the criminal investigation at issue here.

Even if Halvorsen's prior Fifth Amendment invocation had some marginal value (it does not), it would be substantially outweighed by the danger of undue prejudice. *See* Fed. R. Evid. 403. Permitting Plaintiffs to reference Halvorsen's invocation in an unrelated case would invite the jury to infer that because he once asserted the Fifth Amendment on other matters, he must be a "bad guy" who did something wrong in connection with this investigation.

The prejudice is particularly acute here because Halvorsen is deceased and cannot respond to or contextualize the prior invocation. Allowing Plaintiffs to capitalize on Halvorsen's death would severely undermine the fairness of the proceedings and distort the jury's evaluation of the evidence relevant to this case. Accordingly, Plaintiffs should be barred from presenting evidence, arguing, or referencing Halvorsen's disavowed invocation of the Fifth Amendment in unrelated litigation.

17

**MIL 6. Motion to Bar Any Testimony Regarding Plaintiffs' Friends and Family's Personal Feelings, Emotional Status, or Suffering after Plaintiffs' Arrest.**

The Court should bar Plaintiffs from introducing testimony or evidence regarding the personal feelings, emotional status, or suffering of Plaintiffs' family members or friends following their arrest, prosecution, conviction, or incarceration. Defendants anticipate Plaintiffs may attempt to testify about the sadness, loneliness, emotional hardship, or similar reactions experienced *by third parties* because of Plaintiffs' criminal case but this evidence is irrelevant to the damages that Plaintiffs may permissibly recover in this action. *See* Fed. R. Evid. 401; *Gray v. City of Chicago*, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023) (excluding testimony about emotional distress of plaintiff's family members as irrelevant to plaintiff's damages). Even if marginally relevant, it should be excluded under Fed R. Evid. 403 because the emotional suffering of others would invite juror sympathy for non-parties, confuse the issues, and risk inflaming the jury's passions against Defendants.

**MIL 7. Motion to Bar Evidence or Argument Regarding Any Alleged Abuse or Illegal Conditions of Confinement Experienced or Witnessed by Plaintiff While Incarcerated.**

Plaintiffs should be barred from introducing any evidence or argument regarding any abuse, mistreatment or illegal conditions of confinement while incarcerated in the Cook County Jail or the Illinois Department of Corrections. When asked in discovery to identify the nature of the injuries he allegedly suffered because of Defendants' conduct, Plaintiffs did not disclose any physical abuse, sexual assault, specific threats, or unconstitutional conditions of his confinement during incarceration.

Similarly, Plaintiffs never testified that they were in any fights, were physically or sexually assaulted, or experienced serious medical issues. Because Plaintiffs failed to disclose any claims of abuse or unconstitutional conditions of confinement in his interrogatory responses or at his deposition—and did not supplement those responses—they may not introduce such evidence or

18

theories for the first time at trial. The Seventh Circuit has made clear that failure to disclose specific evidentiary theories in discovery bars reliance on those theories at trial. *Moran v. Calumet City*, 54 F.4th 483, 497–98 (7th Cir. 2022); *See Pursley v. City of Rockford*, 2024 WL 1050242, at *14 (N.D. Ill. 2024) ("It's not asking a lot of plaintiffs to explain their claims when they allege law enforcement officers framed them, resulting in decades of incarceration. Pursley failed to timely supplement his interrogatory answer, so in the Court's discretion, it limits his claim to the interrogatory answer."); (*see also* Ex. 1 *Rios v. Guevara, et al.,* 22 CV 3973, Dkt. No. 277 at 6, (Mot. Lim. No. 15).)

**MIL 8. Motion to Bar Any Evidence or Argument Concerning Sufficiency of Investigation.**

Plaintiffs should be barred from introducing any evidence, arguing or insinuating, including through lay or expert testimony, that the Soto investigation was insufficient, incomplete, inadequate, or otherwise unsatisfactory. Such evidence and argument are irrelevant to Plaintiffs' claims and, even if marginally relevant, should be excluded under Federal Rule of Evidence 403.

To put it succinctly, there is no constitutional right to a "complete," "thorough," or "perfect" police investigation. The Seventh Circuit has repeatedly and unequivocally rejected such theories. *See Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (a litigant has no "constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction); *United States v. Tadros*, 310 F.3d 999, 1005 (7th Cir. 2002) ("*Brady* prohibits suppression of evidence, it does not require the government to act as a private investigator and valet for the defendant, gathering evidence and delivering it to opposing counsel"). Illinois law likewise imposes no such duty. *See* 745 ILCS 10/4-102

Nor does a suspect have a right to have police investigate any potential alibi or pursue every conceivable exculpatory lead. *Jackson v. City of Peoria*, 825 F.3d 328, 330 (7th Cir. 2016) (no obligation to have police investigate potential alibi before arrest as "police may arrest and leave to the judicial process the question of whether a defense applies."); *Lee v. Harris*, 127 F.4th 666, 673

19

(7th Cir. 2025) ("police are not required to thoroughly investigate a suspect's alibi before an arrest."). In addition, police officers are not required to create a report for every witness interaction and/or investigative task. *See Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 719 (N.D. Ill. 2016) (police officers under no obligation to submit reports regarding every witness interaction); *Jones v. City of Chicago*, 856 F.2d 985, 995 (7th Cir. 1988) (police not required to keep written records of all their investigatory activities). Therefore, any evidence or argument that Defendants failed to take such investigative steps should be barred.

**MIL 9. Motion to Bar Chicago Police Department Policy or Practice Violations by Defendant Officers.**

Plaintiffs should be barred from introducing evidence or argument that Defendants Officers deviated from Chicago Police Department internal policies, regulations, procedures, or practices. Plaintiffs have not presented any evidence, through an expert or otherwise, that any Defendant Officer violated any specific CPD policy, rule, or practice. Proffering such testimony now must not be allowed. Plaintiffs have also not identified any trial exhibits that set forth any supposed policy or protocols that Defendants supposedly deviated from in connection to the homicide investigation. But, even if they had, such evidence has no probative value, would only impermissibly prejudice Defendant Officers, and would confuse the jury. Fed. R. Evid. 402, 403.

It is well established that the violation of internal police policies, procedures, and practices is immaterial to whether a constitutional violation occurred under Section 1983 and is therefore inadmissible. *See Thompson v. City of Chicago,* 472 F.3d 444, 455 (7th Cir. 2006) (holding that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established.") (emphasis added); *see also Whren v. U.S.*, 517 U.S. 806, 815 (1996) (internal police department rules are an unreliable guide to measuring the reasonableness of police conduct); *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.

2003) (Section 1983 "protects plaintiffs from constitutional violations, not violations of state laws, or, in this case, departmental regulations and police practices."); *Bruce v. City of Chicago*, 2011 WL 3471074, at *2-3 (N.D Ill. July 29, 2011) ("As to the constitutional violation, the Seventh Circuit categorically stated that 'the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established."). Although evidence of this type can be admissible to show intent (*see United States v. Proano*, 912 F.3d 431, 438-39 (7th Cir. 2019), Plaintiffs have not identified any CPD policy or rule violation that bears on Defendants' intent. Nor have Plaintiffs alleged any *Monell* policy or practice claim against Defendant City of Chicago.

Beyond being irrelevant, introduction of the violation of internal police protocols or regulations has been found to be unduly prejudicial under Fed. R. Evid. 403. *See Thompson,* 472 F.3d at 457–58. This evidence would be confusing and misleading—it would invite the jury to incorrectly equate the violation of an internal policy with a constitutional violation and obscure the actual liability issues in this case. Further, references to alleged violations of protocols and regulations during trial can only serve to inflame the jury against the police in general and against the Defendant Officers in particular. Thus, even if there was some arguable relevance to an alleged violation of an internal CPD policy, such evidence should be excluded because it would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. Accordingly, Plaintiffs should not be permitted to interject the possibility of CPD policy or rule violations into these proceedings. *Ratliff v. City of Chicago,* 2012 WL 5845551, at *2 (N.D. Ill. Nov. 19, 2012); Fed. R. Evid. 401, 402 and 403.

**MIL 10. Motion to Bar General Evidence or Argument Regarding Alleged Code of Silence.**

Plaintiffs must be barred from introducing evidence regarding an alleged police "code of silence" for its irrelevance and the certainty that any minimal probative value would be

21

substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 401, 402, and 403.

Here, the only relevant inquiry is whether Defendant Officers' conduct violated Plaintiffs' rights.

General evidence of a police "code of silence" or similar slander has no bearing on the jury's

assessment of Defendant Officers' conduct. It does not prove or disprove any of Plaintiffs

individual claims. Nor does it undermine any individuals' credibility in any specific instance.

Instead, Plaintiffs can only use it to generally paint CPD and its officers in a negative light, a

clearly impermissible purpose. *See Basile v. Ondrato*, 2003 WL 22953340, at *2 (N.D. Ill. Dec.

12, 2003) ("No evidence or argument may be offered regarding a police 'code of silence' or

widespread cover-ups of police misconduct, including the use of the phrase 'code of silence'").

*See also Carlson v. Banks*, 2007 WL 5711692, at *14 (N.D. Ill. Feb. 2, 2007).

Finally, even if general evidence of a police "code of silence" had some marginal relevance, it

would be substantially outweighed its unfair prejudicial effect. *See Jones v. City of Chicago,* 2017

WL 413613, at *2-3 (N.D. Ill. Jan. 31, 2017) (granting similar motion *in limine* and barring use of

terms like "code of silence", "blue wall", or similar terms). Indeed, given its lack of connection to

the specific issues and persons in this case, "'[i]ts probative value is very, very slim, and its

prejudicial [impact] is very, very high.'" *Shaw v. City of New York*, 1997 WL 187352, at *8

(S.D.N.Y Apr. 15, 1997) (citation omitted).

**MIL 11. Motion to Bar Prior Evidence or Argument Concerning Prior Claims of Misconduct, Citizen Complaints, and Lawsuits against Individual Officer Defendants and Non-Party CPD Witnesses.[2]**

Plaintiffs should be barred from introducing any evidence, testimony, or argument

concerning citizen complaints, prior disciplinary matters, lawsuits, or other allegations of

---

[2] Plaintiffs move affirmatively to admit Fed. R. Evid. 404(b) witnesses into evidence. CITE. For purposes of efficiency, Defendants will incorporate their arguments to exclude Plaintiff's designated 404(b) witnesses in Defendants' responses to Plaintiff's affirmative motion *in limine*, rather than cross-brief the motion. To be clear, Defendants seek affirmative relief to bar Plaintiff's 404(b) witnesses for the reasons set forth in Defendants' Responses to Plaintiff's Motions *in Limine*.

misconduct against the Individual Officer Defendants, or against any non-party CPD Officer who testifies at trial. Such evidence is irrelevant, constitutes improper character and propensity evidence and, even if marginally relevant, must be excluded under Rule 403.

During discovery Defendants produced the Defendant Officers' CPD disciplinary histories and related citizens complaint (Complaint Register or "CR") files. But evidence of prior complaints, allegations, discipline, or lawsuits against Defendants Officers have no bearing on whether they engaged in the specific conduct alleged in this case. The Federal Rules of Evidence prohibit using evidence of other crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

Introducing unrelated allegations would impermissibly invite the jury to conclude that Defendants' prior misconduct accusations made them more likely to have acted improperly here. That is precisely the inference Rule 404(b) forbids. Although the Defendants Officers have been the subject to CRs and lawsuits, only Rutherford received one sustained CR for inattention of duty in that a prisoner escaped custody, which is wholly unrelated to this issues here. No other Defendants have adverse civil judgments or sustained disciplinary findings against them. Unproven allegations are inappropriate for admission and carry no probative value. *See Lastre v. Leonard*, 1990 WL 37658, at *3 (N.D. Ill. Mar. 21, 1990) (civil complaint was "not evidence but merely unproven allegations").

While Rule 404(b)(2) permits "other acts" evidence for limited purposes such as intent, opportunity, preparation, and plan, the Seventh Circuit has made it crystal clear that the proponent must establish a propensity-free chain of reasoning such "that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *United States v. Gomez*, 763 F.3d 845, 855–60 (7th Cir. 2014) (*en banc*).

23

Plaintiffs cannot meet that burden here. Any relevance of prior complaints, discipline, or lawsuits necessarily depends on the forbidden inference that the accused had a propensity for misconduct, despite the allegations being disputed, and therefore acted similarly in this case. Courts in this District routinely exclude such evidence on that basis. *See, e.g.*, *Harris v. City of Chicago*, 2017 WL 2462197, *3 (N.D. Ill. June 7, 2017) (excluding prior discipline because plaintiff "failed to establish a propensity-free chain of reasoning for why similar acts in the past would be relevant to a permitted purpose"); *see also Burton v. City of Zion*, 901 F.3d 772, 783 (7th Cir. 2018). Accordingly, there is no permissible basis for admitting such evidence.

Even assuming *arguendo* that prior allegations had some minimal probative value (they do not), that value would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403. These risks are particularly acute as to Halvorsen, who is deceased and cannot personally deny or explain unrelated allegations. Allowing Plaintiffs to discredit a deceased defendant with unrelated accusations would invite the jury to draw improper and irreversible inferences based on accusations alone, depriving Halvorsen of a fair trial. As courts have recognized, juries may place undue weight on character evidence and decide cases on an improper basis when presented with unrelated allegations of misconduct. *See Young v. City of Harvey*, 2016 WL 4158952, at *4 (N.D. Ill. Aug. 4, 2016) ("[T]he concern is that juries will rely too heavily on character to decide the disputed issue.").

Allowing evidence of prior complaints, discipline, or lawsuits would also lead to time-consuming and confusing mini trials regarding the merits of each unrelated allegation. The Defendants Officer, particularly Halvorsen through other witnesses, would be forced to rebut collateral matters wholly divorced from Plaintiffs' claims, diverting the jury's attention from the actual issues in dispute. Courts exclude such evidence for that very reason. *See Kaufman v. City of Chicago*, 2021 WL 1885985, at *6 (N.D. Ill. May 11, 2021) (barring other bad acts evidence

because "unsubstantiated events from many years ago will lead to 'distracting and time consuming mini-trials regarding the merits of these other allegations.'") (quoting *Patterson v. City of Chicago*, 2017 WL 770991, at *4 (N.D. Ill. Feb. 28, 2017)).

The introduction of such evidence would be unfairly prejudicial, delay these proceedings, and improperly shift the focus of the trial away from Plaintiffs' claims. Therefore, this Court should exclude from trial any evidence or argument about CRs, prior disciplinary allegations, other lawsuits, or other allegations of misconduct against Defendant Officers.

**MIL 12. Motion to Bar References to Highly Publicized Cases of Police Misconduct.**

Plaintiffs should be barred from introducing evidence or argument concerning other instances of alleged police misconduct by Chicago police officers or other police officers across the country or federal law enforcement because it is irrelevant and only serves to inflame the jury against the police in general and against Defendant Officers. Fed. R. Evid. 401, 402, 403; *see e.g., Caldwell v. City of Chicago,* 2010 WL 380696, at *2 (N.D. Ill. Jan. 28, 2010) (barring evidence and testimony regarding misconduct of other officers); *Saunders v. City of Chicago,* 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004) same); *Moore v. City of Chicago,* 2008 WL 4549137, at *5 (N.D. Ill. Apr. 15, 2008) (same).

**MIL 13. Motion to Bar Plaintiffs from Arguing or Referring to "Constitutional Rights" as a Category of Damages.**

Plaintiffs should be barred from introducing any evidence or argument that a violation of "constitutional rights" constitutes a separate category of damages. This prohibition should include any suggestion that a violation of "constitutional rights" or the "importance of constitutional rights," can be valued in calculating a damages award or should increase any potential compensatory damages award. The Supreme Court has held that "[d]amages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in § 1983 cases" because it would focus on the jury's subjective and

25

abstract perception of the importance of constitutional rights, not on compensation for a provable injury *Memphis Cmty. Sch. Dist. V. Stachura*, 106 S.Ct. 2537, 2538 (1986).

While *Stachura* focused on jury instructions, its fundamental holding applies here: jurors should not be instructed via argument or suggestion of counsel to value constitutional rights in assessing damages. Damages based on the abstract "value" or "importance" of constitutional rights are not a permissible element of compensatory damages in § 1983 cases, and any argument or inference suggesting the jury place a value on constitutional rights in assessing damages is improper. *See* Seventh Cir. Fed. Jury Instruction 7.26, committee comment a (citing *Stachura* for damages recoverable under 42. U.S.C. § 1983); *see also Pesek v. Donahue*, 2006 WL 1049969, *11 (N.D. Ill. Feb. 9, 2006) ("Damages cannot be awarded for the mere fact of the constitutional violation, in absence of damage shown to have resulted from it").

**MIL 14. Motion to Bar Any "Golden Rule" Arguments.**

Plaintiffs should be barred from imploring jurors to place or imagine themselves (or their friends, family or loved ones) in Plaintiffs' positions in considering any issues at any stage (jury selection, opening statement, evidence, and closing argument). As the Seventh Circuit has explained, "it is universally recognized [that such appeals are] improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir.1989)); *Bruce v. City of Chicago*, 2011 WL 3471074, at *7 (N.D. Ill. July 29, 2011).

**MIL 15. Motion To Bar Evidence or Argument Contradicting Issues Determined Against Plaintiffs on Summary Judgment, for Appropriate Limiting Instruction Thereon, and to Judicially Admit Facts Admitted by Plaintiff on Summary Judgment.**

This Court must bar Plaintiffs from introducing any evidence or argument seeking to contradict, contravene, or otherwise cast doubt on legal and evidentiary issues determined in

26

favor of Defendants on summary judgment. On July 24, 2025, this Court issued its oral ruling on Defendants' motions for summary judgment. *See* Ex. 5, Hr'g Tr. *Reyes/Solache* (N.D. Ill. July 24, 2025). These motions were granted in part and denied in part. *Id.* The Court granted Defendants' motions for summary judgment on:

1. Plaintiffs' Fourteenth Amendment Due Process claims that they fabricated the confession of Adriana Mejia. *Id.* at 10:4–6, 40:20–49:2.

2. Plaintiffs' *Brady* claims based upon alleged suppression of the following evidence:

   a. That Norma Salazar was never excluded as a suspect and no lineup procedure occurred involving her (*Id.* at 56:14–59:17);

   b. Rosaura Mejia was physically abused during his interrogation (*Id.* at 59:18–61:18);

   c. Trevino suppressed that he had never seen Adriana Mejia demonstrate how she stabbed the victims despite documenting that she did (*Id.* at 62:2-68:3);

   d. Guevara suppressed a conversation with Lourdes Rodriguez (Sotos's neighbor) where she stated seeing victims on the morning of March 28. (*Id.* at 68:4-69:18);

   e. Guevara and Halvorsen suppressed evidence that before the murders, Jacinto Soto befriended a woman and her keys went missing, explaining how Adriana got into the apartment and contradicting plaintiffs' confessions (*Id.* at 69:21–70:13);

   f. Guevara engaged in misconduct in other cases (*Id.* at 72:12–73:6);

   g. Tactics used to procure confessions from Plaintiffs (*Id.* at 73:9–82:14);

   h. Suppressed that they fabricated Adriana's statement implicating Plaintiffs, and coerced Adriana to adopt the statement (*Id.* at 82:15–84:7);

   i. Guevara "suppressed that he got Guadalupe Mejia to give a false story about Reyes making incriminating statements over the phone, which he obtained only after detaining her for many hours and subjecting her to insults, mistreatment, and repeatedly accusing her of involvement in the crime" (*Id.* at 93:9-97:18).

This Court granted summary judgment on these claims because they were legally deficient and Plaintiffs waived their right to pursue such theories by failing to properly disclose them in discovery, including the theories referenced above in paragraphs 2(a), (b), (d), and (e). *Id.*

27

First, with respect to the claims which were adjudicated based on waiver (*see supra* Par. 2(a), (b), (d), (e)), the Seventh Circuit made clear that failure to disclose specific evidentiary theories in discovery bars reliance on those theories at trial. *Moran*, 54 F.4th at 497–98 (7th Cir. 2022).

Second, this Court's rulings in Defendants' favor on summary judgment are considered the "law of the case" and cannot be challenged at trial. The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618 (1983). "A ruling that evidence was insufficient to support some finding is the type of ruling that establishes the law of the case." *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir. 1998). This rule promotes the finality and efficiency of the judicial process by "protecting against the agitation of settled issues." *Christianson v. Colt. Indus. Operating Corp.,* 486 U.S. 800, 815–16 (1988). Because Defendants obtained a pretrial ruling entering partial summary judgment in its favor, these findings are binding for the remainder of the case through trial. *See, e.g.*, *Carr v. O'Leary*, 167 F.3d 1124, 1125 (7th Cir.1999); *Life Spine, Inc. v. Aegis Spine, Inc.,* 2023 WL 7919579, at *4 (N.D. Ill. 2023).

To ensure that this rule is followed by a jury when there remain unadjudicated factual and legal issues relating in some way to the adjudicated issues, courts provide an appropriate jury instruction advising the jury that certain specified issues have already been determined before trial and that they must consider those specified issues as having been established for the purposes of the trial. *See, e.g.*, *Ewing v. 1645 W. Farragut LLC,* 90 F.4th 876, 889 (7th Cir. 2024) (in case where partial summary judgment was entered prior to trial, trial court properly gave instruction before party testified instructing jury on matters established via summary judgment).

Even in cases where the Court has not necessarily previously decided a factual or legal issue,

28

the courts repeatedly hold that affirmatively instructing the jury on matters already established or not at issue is appropriate when there may be evidence which touches upon these issues for different purposes or simply where the arguments or evidence might invite inherent confusion based on the factual context of the case. *See, e.g.*, *Groth,* 1993 WL 388661, at \*2 ; *Valdez v. Lowry,* 2021 WL 5769533, at \*5–6 (N.D. Ill. 2021) (in false arrest and excessive force case, court provided instruction on outcome of criminal proceedings even though irrelevant because jury might speculate on such issues without such instruction). Indeed, in *Brown v. City*, the Court recently held that instructions on such issues to the jury were appropriate so the jury understood which precise issues were (and were not) at issue at the trial. 2024 WL 5438519, at \*7 (N.D. Ill. 2024).

Given the narrowed legal landscape, it is crucially important that this Court ensure that the integrity of its prior rulings is hewed to by Plaintiffs. This must include not only barring Plaintiffs from attempting to relitigate matters they lost on summary judgment through exclusion of evidence and arguments but also instructing the jury on the matters determined by this Court. This will ensure that the jury fully understands the scope of their role in this case and it will discourage Plaintiffs from attempting to take "another bite at the apple."

**MIL 16. Motion To Bar Evidence of Fifth Amendment Invocation, or Alternatively, Bar Live Elicitation of Fifth Amendment Invocation of Guevara or Limit the Number and Nature of Questions Designed to Elicit Such Invocation**

This Court should bar any evidence or argument regarding Guevara's invocation of his Fifth Amendment Rights. In the alternative, this Court must order that the jury in this case be informed of Guevara's Fifth Amendment invocation through jury instruction as opposed to live testimony. Given the high degree of prejudice and potential for abuse, this is the most fair and efficient manner to present such evidence at trial. In the alternative, this Court must limit the number of questions posed to Guevara seeking to elicit such invocation and order that the subject matter of

such questions be pre-screened by this Court to prevent prejudice at trial.

## A. Allowing Evidence of Guevara's Fifth Amendment Invocation Imposes Too High of an Economic Consequence on Guevara to Satisfy Constitutional Muster.

Given the unique circumstances in the litigation against Guevara, allowing evidence of his invocation of his Fifth Amendment Rights imposes too high of an economic consequence to pass Constitutional muster. While Guevara is, of course, aware that courts have allowed evidence of a civil defendant's invocation of his Fifth Amendment Rights and its attendant permissive negative inference, the peculiar circumstances of this case and the litigation facing Guevara render evidence of his Fifth Amendment invocation too costly to pass Constitutional muster.

As this Court is aware, Guevara is the subject of about 40 separate civil cases pending in this District.[3] Every case involves persons who were previously convicted of serious criminal offenses, served years (sometimes decades) in prison, had their convictions vacated, and who now are suing Guevara for a variety of alleged misconduct. These cases also seeks to impose punitive damages on Guevara which would be the personal financial responsibility of Guevara in each case.

Guevara is currently 82 years old, unemployed, and living essentially on a fixed income. Suffice it to say, the economic consequences of each of these cases to Guevara personally (and the combined weight of all of them) would have serious and dire economic consequences on him. While Guevara could, in theory, introduce evidence of his economic circumstances to

---

[3] *See Reyes v. Guevara,* 18-cv-01028; *Solache v. Guevara,* 18-cv-02312; *Bouto v. Guevara,* 19-cv-02441; *Iglesias v. Guevara,* 19-cv-06508; *Johnson v. Guevara,* 20-cv-04156; *Rios v. Guevara,* 22-cv-03973; *Rodriguez v. Guevara,* 22-cv-06141; *Gonzalez v. Guevara,* 22-cv-06496; *Flores v. Guevara,* 23-cv-01736; *Hernandez v. Guevara,* 23-cv-01737; *Lugo v. Guevara,* 23-cv-01738; *Davila v. Guevara,* 23-cv-01739; *Abrego v. Guevara,* 23-cv-01740; *Gecht v. Guevara,* 23-cv-01742; *Rivera v. Guevara,* 23-cv-01743; *Mendoza v. Guevara,* 23-cv-02441; *Munoz v. Guevara,* 23-cv-03210; *Cruz v. Guevara,* 23-cv-04268; *Kwil v. Guevara,* 23-cv-04279; *Mulero v. Guevara,* 23-cv-04795; *Gonzalez v. Guevara,* 23-cv-14281; *Cain v. Guevara,* 23-cv-14282; *Andino v. Guevara,* 23-cv-14283; *Santiago v. Guevara,* 23-cv-14284; *Hernandez v. Guevara,* 23-cv-15375; *Robinson v. Guevara,* 24-cv-05954; *Soto v. Guevara,* 24-CV-10869; *Ortiz v. Guevara,* 24-CV-11057; *Rosario v. Guevara,* 24-CV-11278; *Ayala v. Guevara,* 24 -CV- 12800; *T. Gonzalez v. Guevara,* 25 cv 000566.

attempt to mitigate any punitive damage award in a particular case, this itself is fraught with practical problems given the weight of the litigation against him.

Specifically, to accurately reflect to the jury the weight of the economic issues facing him in a particular case, Guevara would in essence be forced to display to the jury the number of pending lawsuits and their possible economic consequences to him. In other words, to mitigate the dire economic consequences in any individual case, Guevara would be faced with a classic Catch-22 of equally serious negative economic consequences.

The firms suing Guevara have also not shied away from using his invocation as a cudgel in litigation. In essentially every case in which Guevara is deposed, attorneys use the opportunity to ask him about wide-ranging matters in other litigation to trigger this elicitation. Indeed, inquiring as to his alleged conduct in other cases often constitutes the majority of the deposition.

The Supreme Court has held explicitly that the Fifth Amendment protects a person's right "to remain silent unless [the concerned party] chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Spevack v. Klein,* 385 U.S. 511, 514 (1967). A "penalty" was described as "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Id.* at 515. Into that category the Court has placed sanctions with serious economic consequences. *See Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973) (architects may not be forced to choose between loss of state contracts and self-incrimination); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 392 U.S. 280 (1968) (public employees may not be forced to choose between discharge from employment and self-incrimination); *Nat'l Acceptance Co. v. Bathalter,* 705 F.2d 924, 927–28 (7th Cir.1983) ($8.6 million default judgment was too high of a consequence for Fifth Amendment invocation); *cf. Chan v. City of Chicago,* 916 F.Supp. 804, 808 (N.D.Ill.,1996) (loss of only 7.6% of one's income not costly enough to violate Fifth Amendment). As stated succinctly by the Supreme Court in *Lefkowitz,*

31

"waiver secured under threat of substantial economic sanction cannot be termed voluntary." 414 U.S. at 82–83.

In sum, while courts have allowed a Fifth Amendment invocation to be used against a litigant in a civil case, the law is clear that this is a fact specific inquiry that must take into account the specific facts and prejudice of the case to determine whether the invocation will impose too high a cost on using one's Constitutional rights. Given the nature of the litigation against Guevara, this is such a case. This Court should bar evidence Guevara's Fifth Amendment invocation at trial.

**B. Alternatively, this Court Should Only Permit Evidence of Guevara's Fifth Amendment Invocation Through Instruction or Limited Pre-Screened Questions.**

Alternatively, the jury should be informed of Guevara's invocation through Court instruction rather than live testimony or only permit Plaintiffs to elicit such invocation on a limited subset of questions pre-screened by this Court to ensure Guevara's rights are protected from potential abuse.

Permitting a civil jury to hear evidence of a civil litigant's invocation of his Fifth Amendment Rights is a delicate balancing act which requires a court to carefully consider the inherent cost that may inure to a person for invoking the rights afforded them as citizens under the United States Constitution. *See Spevack,* 385 U.S. at 514. The manner in which a Fifth Amendment invocation is introduced in a civil proceeding must "carefully balance the interests of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." *S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187, 192 (3d Cir. 1994). To this end, to protect invoking litigants from unduly prejudicial attempts at theatricality inherent to a live

32

invocation, courts have ordered such evidence be presented through instruction rather than live testimony. *See e.g. Evans v. City of Chicago,* 513 F.3d 735, 741 (7th Cir. 2008) (trial court properly barred plaintiff from eliciting Fifth Amendment invocation live at trial and ordered that such invocation be presented via instruction); *see also* Ex. 13, *Thompson v. City of Chicago, et. al,* No. 07 CV 01130, Dkt. 378 at 26 (N.D. Ill.) (instructing jury that "prior to trial, each of the Defendants…were asked questions under oath" and "asserted his Fifth Amendment privilege not to testify in response to those questions," which the jury "may, but are not required to, infer from each" invocation that "his testimony in response to those questions would have been adverse to him.").

The potential for abuse in allowing a live "free for all" cross-examination done with the knowledge that a witness will invoke across the board as to all matters relating to his work as a police officer is obvious. *E.g.*, *Doe ex rel. Rudy-Glanzer v. Glanzer,* 232 F.3d 1258, 1264 (9th Cir. 2000) (in minor sex abuse case, trial court properly barred questions about whether invoking defendant had underwent scientific penile testing to assess arousal by images of minors because plaintiff had no evidence this occurred and attempted to create evidence within questions).

At minimum, this Court should limit the number and scope of questions posed to Guevara to a pre-set limited series of questions pre-screened by this Court. Under Fed. R. Evid. 611(a), this Court has the discretion and duty "to exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a). In this case, there is an extreme risk of Guevara's examination devolving into harassment and prejudice. The subject matter Plaintiff can even arguably seek to elicit a Fifth Amendment invocation is limited both by (1) this Court's summary judgment ruling (which negated several material elements of the claims in this case) and (2) the

33

requirement that any Fifth Amendment invocation be supported by the admission of separate independent evidence on every point for which an invocation is sought to be elicited. Counsel routinely uses Guevara's Fifth Amendment invocation to craft their own factual narrative through wide-ranging and argumentative questions untethered to supportive evidence on both the issues in this case as well as claims and allegations made against Guevara in other cases. This is inappropriate and well-beyond the scope of Fed. R. Evid. 403 and 404 and the discovery answers and disclosures in this case.

**MIL 16. Motion To Bar Any Attempt To Elicit a Fifth Amendment Invocation From Guevara Without Establishing The Existence of Such Facts Through Independent Evidence**

If Plaintiff is permitted to elicit a Fifth Amendment invocation from Guevara, Plaintiff must be barred from eliciting an invocation on any topics that they have not established independent proof thereof by other competent and admissible evidence at trial. This includes evidence about the conduct in this case and other alleged acts of misconduct in any other case or investigation.

Plaintiffs have implied that they should be allowed to "introduce evidence" at trial which consists solely of asking Guevara questions and then attempting to draw an adverse inference from his answers without ever calling any witnesses or introducing evidence supporting the predicate claims of misconduct.[4] *See* Dkt. No. 824 at 17–31. In other words, Plaintiffs appear to believe that a Fifth Amendment invocation is admissible as evidence in the absence of other admissible corroborating evidence of the predicate facts. *Id.*

Plaintiffs are incorrect. It is well-established that the invocation of the Fifth Amendment may never be used standing alone as evidence to establish any fact at trial; rather, before applying any

---

[4] As this Court is aware, Defendants object strongly to any of the putative "other bad acts" evidence being admitted at trial in this case regardless of the form of this evidence. *See* Dkt. No. 837. However, regardless of the admissibility of evidence under Fed. R. Evid. 404(b), admitting evidence via cross-examination questions is plainly improper as set forth below.

34

adverse inference to a litigant's invocation, the opposing party must establish the existence of the facts forming the basis for such invocation by other independent evidence. *See, e.g.*, *LaSalle Bank Lake View v. Seguban,* 54 F.3d 387, 390 (7th Cir. 1995) ("[s]ilence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden"); *National Acceptance Co. of Am. v. Bathalter,* 705 F.2d 924 (7th Cir. 1983)("We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial."); *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999) (adverse inference alone cannot be used to establish existence of fact); *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991) (same); *Accord Rivera v. Guevara*, 2018 WL 11468922, at *1 (N.D. Ill. 2018) ("Under *Baxter, LaSalle Bank,* and a host of district court cases in this circuit, defendants' motions for summary judgment cannot be denied solely because Guevara has exercised his Fifth Amendment right to remain silent any more than the question of liability for damages could be sent to the jury on that basis alone. Instead, Rivera must identify additional evidence that would permit the jury to impose liability."); *Kluppelberg v. Burge,* 2017 WL 3142757, *4 (N.D. Ill. 2017)("When a defendant has invoked his Fifth Amendment right against self-incrimination, as Burge has consistently done during this case, adverse factual inferences may be drawn from the choice to remain silent. At the same time, a plaintiff may not rest solely on the defendant's assertion of privilege to establish liability based on refusal to answer a complaint or to testify at a disciplinary hearing if there is no other evidence supporting liability."); *Ruiz-Cortez v. City of Chicago,* 2016 WL 6270768, *7 (N.D.Ill. 2016)("[S]ilence, and adverse inferences drawn from it, cannot be the sole basis for finding liability."); *Cincinnati Ins. Co. v. Greene,* 2012 WL 3202962 at *3 (N.D. Ind. 2012)(before an adverse inference may be drawn, "there must be independent corroborative evidence to support the negative inference

35

beyond the invocation of the privilege."); *Barker v. International Union of Operating Engineers Local 150,* 2011 WL 6338800, *6 (N.D.Ill. 2011)("[A]n adverse inference based on silence pursuant to the assertion of the Fifth Amendment privilege is insufficient by itself…"); *McArdle v. Peoria School Dist. No. 150,* 833 F.Supp.2d 1020, 1030 (C.D.Ill. 2011)(same).

The Seventh Circuit in *Seguban* held that doing otherwise would be improper and unconstitutional. 54 F.3d at 391–92. This Court specifically recognized this limitation on evidence on which a Fifth Amendment invocation: "Plaintiffs argue that Guevara didn't deny that he used coercive tactics because he invoked the Fifth Amendment at deposition when asked if he used coercive tactics. But the mere invocation of the Fifth Amendment is not enough to win at summary judgment." (Ex. 5, Hr'g Tr., *Reyes/Solache,* at 96:8–97:3 (N.D. Ill. July 24, 2025).) And this identical motion was granted by Judge Daniel in January 2026 in another case that proceeded to trial . (Ex. 1, *Rios v. Guevara*, 22 CV 3973, Dkt. No. 277 at 5 (Def.'s Mot. Lim. No. 8).) During the course of that trial, Judge Daniel monitored the specific independent evidence that had been introduced about Guevara from other sources and limited the plaintiff's counsel to asking only specific questions where support existed in the record. This was the appropriate way to proceed under governing law and should be adopted in this case.

Finally, Plaintiffs' suggestion that they can introduce evidence by embedding factual information within a question is incorrect. It is basic trial work that attorney's questions are not evidence, a fact which jurors are explicitly instructed in the instruction conveniently entitled "What Is Not Evidence." *See* Sev. Cir. Patt. Jur. Instr. No. 1.06 ("Certain things are not to be considered as evidence.…[Q]uestions and objections or comments by the lawyers.").

Accordingly, Plaintiffs must be barred from attempting to elicit a Fifth Amendment invocation from Guevara on any topics that Plaintiffs have not submitted other independent admissible evidence to support a finding on the same topic. This includes topics pertaining to the

36

underlying issues relating to Plaintiffs' investigation, arrests, and prosecutions and to any attempts to establish that Guevara committed acts of misconduct in other cases.

**MIL 17: Motion To Bar Any Evidence, Argument, Or Reference To The Sidley Investigation Or Any Of Its Findings.**

Plaintiffs' must be barred from introducing evidence, argument, or references to the existence of or any findings made by Sidley Austin about Plaintiffs' underlying case or any other case.

In pleadings and other filings in this case, Plaintiffs referred to the fact that around 2014 or 2015, the City of Chicago commissioned Sidley and one of its partners, Scott Lassar, to conduct an internal investigation regarding various claims of misconduct against Guevara. *See e.g.* Dkt. No. 764 at ¶ 11. Plaintiff listed Lassar as a witness in this case and listed numerous documents in this case from the Sidley investigation, including various opinions reached during this investigation. (*See* Final Pretrial Order, Pl.'s Witness and Exhibit List). It is not clear what purpose Plaintiffs seek to admit this evidence. But based on various statements in pleadings, it appears Plaintiffs seek to admit this evidence substantively in this case as an admission by the City of Chicago or some other unknown theory. This is not permitted under governing law.

First, a similar motion to bar this same evidence was filed in *Rivera v. Guevara, et al.*, 12 CV 4428, another case that proceeded to trial against Guevara, the City of Chicago, and others on individual and *Monell* claims. (*See* Ex. 6 *Rivera v. Guevara, et al.*, 12 CV 4428; Dkt. No. 382). This evidence was barred. Ex. 7 (*Rivera v. Guevara, et al.*, 12 CV 4428; Dkt. No. 522).) The Court explained that the Sidley investigation was not the product of an attorney-client relationship but an independent investigation and, thus, there was no basis for any agency type of admission. *Id.* The Court added that the plaintiff had not offered another basis for the admission. *Id.*

Second, any findings made by Sidley or the existence of the investigation is barred by

37

established law, including, a case law decided by the Seventh Circuit last year. *See Arrington v. City of Chicago*, 147 F.4th 691, 703–04 (7th Cir. 2025). The Court explicitly held that internal disciplinary findings are "exactly the sort of information Rule 403 is intended to safeguard against." *Id.*; *see also Watson v. Fulton*, 2022 WL 21296130, *8 (N.D. Ill. 2022) (barring reference to outcome of investigation into incident); *Gonzalez v. Olson*, 2015 WL 3671641, at *12, 17 (N.D. Ill. 2015) (barring reference to outcome of investigation into shooting incident).

Defendants, of course, do not object to use of evidence generated during such investigation (i.e. witness statements, etc.) so long as they are otherwise admissible and are sanitized to remove any reference suggesting that it was gathered as part of an internal investigation by the City of Chicago. *See*, *e.g.*, *Gonzalez*, 2015 WL 3671641 at *17 (allowing use of statements made as part of the IPRA investigation but barring reference to the investigation under Rule 403 "); *Torres v. City of Chi.*, 2015 WL 12843889, at *7–8 (N.D. Ill. 2015) (same).

**MIL 18. Motion to Bar Any Testimony by Criminal Defense Attorneys or Other Witnesses Speculating on the Outcome of Criminal Trial.**

Plaintiff should be barred from introducing any testimony or evidence—whether from lay witnesses or experts—opining or speculating as to what the ultimate outcome of Plaintiff's criminal trial would have, could have, or might have been had certain allegedly suppressed information been disclosed or allegedly fabricated evidence not used.

Plaintiffs have named their criminal defense attorneys for their underlying criminal cases as witnesses.[5] Some of these witnesses were asked at their depositions to opine whether various pieces of fabricated or suppressed evidence were material or otherwise could have altered the

---

[5] This list includes Tom Verdun, Viola Rouse, Bernard Sarley, Naomi Bank, David Saunders, Andrew Vail, and Jeffrey Urdangen.

ultimate outcome of the criminal cases. Any such testimony should be barred.

First, it is for the jury in this civil case—not a witness—to decide whether any allegedly suppressed or fabricated evidence was material, i.e., whether there was a reasonable likelihood that it would have changed the outcome of Plaintiffs' criminal trial when viewed in the full context of the prosecution. *See* Sev. Cir. Patt. Jur. Instr. No. 7.14. Materiality is a *prima facie* element of Plaintiff's *Brady* and fabrication claims and is quintessentially a determination reserved for the jury. *See State of South Carolina v. Bailey*, 289 U.S. 412, 420 (1933)("It was wholly beyond the province of the judge to speculate, as he seems to have done, concerning the probable outcome of any trial which might follow rendition to the demanding state."); *Bolden v. Pesavento*, 2024 WL 1243004, at *8, n.5 (N.D. Ill. 2024) (noting the "Court did not allow witnesses to speculate that the outcome of the trial would have been different"); *Gray v. City of Chicago*, 2023 WL 7092992 at *13 (N.D. Ill. 2023) (excluding testimony on ultimate issues reserved for the jury).. Allowing these witnesses (or any other) to testify that the jury would have acquitted Plaintiffs had certain evidence been disclosed would impermissibly tell the jury how to resolve a prima facie element of Plaintiffs' claims.

Second, this testimony fails for lack of personal knowledge under Fed. R. Evid. 602. Materiality must be evaluated "in light of the full context of the weight and credibility of all evidence actually presented at trial." *United States v. Morales*, 746 F.3d 310, 315–17 (7th Cir. 2014). This is a subject which speaks to the decision-making process of the *criminal jury* not the hopes or beliefs of the *advocates at trial* presenting such evidence to the jury. Thus, witnesses are not permitted to testify or render opinions on the materiality of evidence in any underlying criminal trial. *See Fields v. City of Chicago*, 2014 WL 13110802, at *1 (N.D.Ill. 2014) (holding witnesses "may not testify regarding materiality or whether information is 'exculpatory'").

Even if such testimony were otherwise admissible, any marginal probative value would be

39

substantially outweighed by the danger of unfair prejudice, confusion of the issue, and misleading the jury. Fed. R. Evid. 403. Allowing to opine on what the jury "would have done"— risks cloaking speculation in the prestige and authority of legal expertise and improperly invading the jury's role as the sole arbiter of materiality and causation. Accordingly, Defendants respectfully request that the Court bar Plaintiffs from introducing any testimony or evidence from any witness speculating on the outcome of Plaintiffs' criminal trial.

**MIL 19. Motion To Bar Any Evidence Or Argument That Adriana Mejia Or Any Other Witness Was Physically Or Psychologically Abused Or Mistreated.**

Plaintiffs must be barred from introducing any evidence or making any argument regarding the alleged abuse or mistreatment of any third-party witness by any Defendant.

Plaintiffs claim certain witnesses were physically or emotionally mistreated by Defendants during questioning relating to the Soto murders. Such claims have been made regarding Adriana Mejia (Plaintiffs' criminal co-defendant who later plead guilty to involvement) as well as Guadalupe Mejia and Rosauro Mejia. None of these persons testified at either Plaintiffs' criminal trial. Adriana, while claiming she was mistreated, has repeatedly admitted that she truthfully implicated herself and Plaintiffs in the Sotos' murder. Neither Guadalupe nor Rosauro claimed any alleged abuse resulted in them making false statements about Plaintiffs.

Coercive interrogations of third parties are not actionable by a plaintiff unless such coercion results in a fabricated statement that is used against them at the criminal trial. *See Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014) (concluding that plaintiff's claim fails "because his claim is a 'coercion' case for which there is no cognizable due process claim, as opposed to an 'evidence fabrication' case where there is a cognizable claim."). Under *Petty*, there is no basis to introduce evidence of alleged mistreatment or coercion of third-party witness.

Beyond *Petty*, this would be propensity evidence. In the absence of a valid fabrication claim,

40

the only possible relevance of such evidence would be to suggest that Defendants *may also* have used abusive techniques against Plaintiffs to procure their confessions. Allowing evidence that one witness was allegedly abused to show that the Plaintiff were also abused is the definition of propensity evidence barred by Fed. R. Evid. 404(a). *See United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014); *Jackson v. Esser*, 105 F.4th 948, 963–64 (7th Cir. 2024) (trial court properly barred evidence of prior lawsuits and misconduct allegations against defendant officer because it would constitute propensity evidence); *Harris v. City of Chicago*, 2018 WL 2183992, at \*15–17 (N.D. Ill. 2018)(barring evidence of other allegations of evidence fabrication and coercing confessions by defendant officer).

**MIL 20. Motion To Bar Any Evidence or Argument Relating To Defendants' Use Of Lawful Interrogation Techniques.**

Plaintiffs must be barred from introducing evidence or argument regarding Defendants' use of interrogation techniques which are lawful under federal law. Such evidence is irrelevant to any issue relating to the underlying claims, unduly prejudicial to Defendants and confusing to the jury.

Plaintiffs allege that Defendants coerced and fabricated their confessions. In support, Plaintiffs make various claims about the tactics used to procure their confessions. Some of these claims, if true, implicate unlawful conduct (i.e. physical abuse, etc.). But Plaintiffs also with to interject lawful police tactics, and matters unrelated to police conduct in the first place, as putative evidence of the coercion. Indeed, they retained Dr. Richard Leo to parade these factors before the jury to attempt to establish the coercion of their confessions. Specifically, Plaintiffs, through Dr. Leo and others, want to interject tactics, such as the use of a "false evidence ploy" (i.e. being lied to by police about evidence), length of time in police custody (despite it being undisputed that Plaintiffs were not held in excess of constitutional requirements), isolation,

41

fatigue, guilt presumptive questioning, leading questions, and referencing criminal penalties for crimes under investigation. Permitting Plaintiff to introduce evidence and arguments insinuating wrongdoing or unconstitutional conduct by Defendants by way of factors that courts have deemed irrelevant or legally appropriate (or that have not specifically been deemed inappropriate) would be improper.

The United States Supreme Court has been clear that a confession may only be deemed unconstitutionally involuntary if they are the product of unlawful police coercion. *See Colorado v. Connelly*, 479 U.S. 157, 163-64 (1986) (A confession is involuntary under the Due Process Clause only if it results from coercive police conduct, as governmental coercion—not general psychological pressure—is a necessary predicate to finding a constitutional violation); *see also Dassey v. Dittmann*, 877 F.3d 297, 303 (7th Cir. 2017) ("[A] a person arguing his confession was involuntary must show that the police engaged in coercive practices.") In other words, *actual involuntariness* is wholly and completely irrelevant if not the product of some illegal conduct by the police. *Id.* Thus, immutable characteristics and things other than police action such language barriers, prior police contacts, etc. have no bearing on whether Defendants unconstitutionally coerced a confesssion for the purposes of civil liability.

In this regard, lawful police tactics and factors which cannot form the basis for unconstitutional involuntariness include many of the exact factors that Plaintiff relies on here including lying or presenting false evidence to a suspect *United States v. Montgomery*, 555 F.3d 623, 632 (7th Cir. 2009) ("precedent holds that a police officer may 'actively mislead' a suspect prior to obtaining a statement or confession so long as a rational decision remains possible."). It also applies to trickery or bluffing. *United States v. Rutledge*, 900 F.2d 1127, 1129 (7th Cir. 1990) ("The police are allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties..."). The same goes for accusatory questioning. *United States v. Hocking*, 860 F.2d

42

769, 775 (7th Cir.1988) (accusatory questioning not in itself coercive). And for informing or exaggerating criminal consequences of conduct. *Ray v. Duckworth*, 881 F.2d 512, 518 (7th Cir.1989) ("An interrogating officer's act of merely informing the accused of the nature of the evidence implicating him, without more, does not constitute coercive police conduct."); *U.S. v. Navarro*, 90 F.3d 1245, 1256 (7th Cir. 1996)(holding that even overstating consequences of criminal penalties was not coercive); *U.S. v. Gipson*, 2003 WL 23218114, at *3 (W.D.Wis. 2003); *United States v. Braxton*, 112 F.3d 777, 782 (4th Cir.1997)(truthful statements about sentence suspect faces do not render statement involuntary); *United States v. Schaeuble*, 2008 WL 4810079, at *8 (E.D. Wis. 2008)("Courts have generally held that the following practices are insufficiently coercive to constitute a Fifth Amendment violation: (1) promises of leniency; (2) confrontation of the accused with other evidence of guilt; and, (3) an interrogator's false or misleading statements.").

Insinuating that a jury should base their verdict on finding lawful conduct improper is jury nullification and not permitted. *See United States of America v. Darryl Sargent*, 2017 WL 11505360, *2 (N.D. Ill. 2017) ("Neither the court nor counsel should encourage jurors to exercise [nullification] power" and the courts preclude counsel from any attempts to present evidence or argument of nullification."). Indeed, interposing inconsistent standards to terms on which the jury will be instructed is not permissible because it leads to jury confusion. *See United States v. Neushwander*, 2017 WL 4572212, *3 (N.D. Ill. 2017)("If the terms an expert uses have a 'separate, distinct and specialized meaning in the law different from that present in the vernacular,' the opinion is a legal one and likely impermissible.").

Plaintiffs are free to pursue their theories regarding being physically mistreated and other factors that have been deemed constitutionally forbidden. However, Plaintiffs must not be allowed to introduce evidence or argument insinuating wrongdoing on any other bases including

43

use of "false evidence ploy," length of time in custody if within constitutional bounds, isolation, fatigue, guilt presumptive, accusatory, or leading questioning, referencing criminal penalties for crimes under investigation, and vulnerabilities of Plaintiffs unrelated to police conduct.

**MIL 21. Motion to Bar Plaintiff and Witnesses from Testifying as to Statements and Diagnoses Made by Medical Providers.**

Plaintiffs and lay witnesses must be barred from providing medical or scientific testimony regarding Plaintiffs' injuries, use of medical terms, or testifying about medical diagnoses. Plaintiffs seek damages for various physical and emotional injuries, but they are not medical doctors or some other medical professional. Accordingly, Plaintiffs must be barred from using medical or scientific terminology to describe their conditions and the cause of the alleged conditions. Fed. R. Evid. 701.

Similarly, Plaintiffs' witnesses, including their family members and friends, should be barred from testifying regarding any medical condition or scientific terminology describing Plaintiffs' conditions, and from testifying regarding the alleged cause of such conditions, if any. A witness may testify to relevant evidence that is "rationally based on the perception of the witness…and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also Frazier v. Indiana Dept. of Labor*, 2003 WL 21254424, *4 (S.D. Ind. 2003). Scientific and medical testimony and causation must be supported by competent medical testimony. Fed. R. Evid. 701 and 702.

Courts routinely bar plaintiffs from testifying as to medical diagnoses and causation of their injuries. *See, e.g.*, *Johnson v. Obaisi*, 2020 WL 433872 (N.D. Ill. 2020) (plaintiff's testimony that he was experiencing symptoms that "he believes were caused by active tuberculosis" was not enough to find that plaintiff had active tuberculosis without "a statement by a qualified expert"); *Simmons v. City of Chicago*, 2017 WL 3704844, *6 (N.D. Ill. 2017) ("Plaintiffs (and

44

perhaps other witnesses) may properly testify regarding plaintiffs' symptoms, when they began, their duration, and so on, and they may properly testify regarding their own perceptions," but they "may not self-diagnose" or "testify regarding what was communicated to them by medical personnel regarding their conditions or any diagnosis.").

**MIL 22. Motion to Bar Plaintiffs From Eliciting Testimony, Making Argument or Reference That Defendants Allegedly Violated Article 36 of the Vienna Convention on Consular Relations**

During the underlying criminal proceedings, Plaintiffs Solache and Reyes filed a joint motion to suppress evidence of their confessions based upon alleged violations of Article 36.[6] In sum, Plaintiffs argued that because they were not advised of their Article 36 rights – to speak with consular officers of their home country prior to their interrogations – suppression of their statements was warranted. After the matter was fully briefed, the trial court denied the motion. Defendants now seek to bar Plaintiffs from eliciting testimony, making reference to or argument that Defendants violated Plaintiffs' rights under Article 36 of the Vienna Convention.

Whether or not Plaintiffs' rights pursuant to Article 36 of the Vienna Convention were violated is not relevant to the remaining issues in these matters and will cause jury confusion. As an initial matter, even assuming Article 36 of the Vienna Convention bestowed any rights upon foreign nationals, the appropriate remedies for such a violation does not include suppression of evidence. *See United States v. Chaparro–Alcantara,* 226 F.3d 616, 621–22 (7th Cir. 2000) (explaining that "[b]ecause the Vienna Convention, by its terms, does not require the application of the exclusionary rule to violations of Articled 36, we cannot require the suppression of statements made by defendants who have not been informed of their Article 36 rights. We cannot attach the judicially

---

[6] Article 36(1)(b) of the Vienna Convention on Consular Relations, states that the authorities of a "receiving state"—in this case, the United States—shall, without delay, inform any detained foreign national of his right to have the consular post of the "sending state"—in this case, Mexico—notified of his detention. Vienna Convention, art. 36(1)(b).

created remedy of suppression to the Vienna Convention without some explicit support from the treaty itself."). Allowing Plaintiffs to elicit testimony concerning Article 36 of the Vienna Convention will is irrelevant and will only serve to cause confusion and mislead the jury as to the issues it ultimately needs to determine.

In addition, another basis exists warranting exclusion of this testimony. At the time Plaintiffs were arrested in 1998, the Chicago Police Department's Special Order regarding the arrests of foreign nationals specifically stated that the "arresting officers and/or their supervising officer" were to "notify the concerned Consular Post…" and "inform the foreign national in custody without delay of the charge(s) and his rights." (*See* Ex. 8, Dep't Special Order – Foreign Natl's and Aliens, at 3.) Here, Plaintiffs Solache and Reyes were arrested on April 3, 1998 not by any of the named Defendant Officers, but by Detectives Mohan and Kernan. (*See* Ex. 9, Solache Arrest Report; Ex. 10, Reyes Arrest Report.) Thus, any corresponding duty to ensure Plaintiffs' Article 36 rights fell upon non-defendant Detectives Kernan and Mohan. Accordingly, Plaintiffs should be barred from eliciting testimony, making any argument or reference to any alleged Vienna Convention violation.

**MIL 23. Motion to Bar *Monell* Opinion of Tiderington and Finnell**

Plaintiffs should be barred from introducing the expert testimony of Thomas J. Tiderington and Anthony Finnell in support of their *Monell* claims because any probative value from their testimony is substantially outweighed by the likelihood that their testimony will confuse and mislead the jury and unfairly prejudice Defendants. Fed. R. Evid. 403.[7] Tiderington and Finnell's testimony introduce speculative concepts that are unnecessary for resolving the central issues in dispute. Both offer opinions that go beyond objective analysis, instead offering ultimate issue conclusions, greatly increasing the risk of significant unfair prejudice. Their opinions purport to establish the City's

---

[7] This Court previously ruled on the City's *Daubert* motions related to these experts but invited the City to renew its 403 challenges to their testimony. *See* August 7, 2025, Transcript attached as Ex. 11.

46

culpability for its record keeping or disciplinary policies, by faulting the City for failing to meet the best practices as defined by today's standards and are based on flawed assumptions. Finally, their opinions confuse instead of clarity because none of their criticisms establish a link between the policies and the alleged constitutional violations.

**Tiderington**. Tiderington's *Monell* opinions fall into two buckets. The first bucket, that CPD's policies were "woefully inadequate" and "result[ed] in the *routine failure to document* and disclose the documents and information," does not rest on a single publication, research paper or policy standard from the relevant time frame, 1995-1998. Dkt. 759-2 at 33. Instead, his conclusions are based upon 1) his flawed historical analysis of *Jones v. City of Chicago* and 2) his purported analysis of the dataset provided to him by Plaintiffs' counsel. But the *Jones* litigation did not include *any* allegations that a detective *failed* to document investigative actions, rather, the allegations were that investigative actions (exculpatory ones) were documented but were withheld.[8] Further, the dataset provided by Plaintiffs' counsel did not include a "failure to document" column, and therefore, the dataset did not analyze whether there was evidence of a "failure to document" in the files. Dkt. 759-4. While this Court concluded that the flaws in Tiderington's opinions go to weight and not admissibility these methodologically unsound conclusions will only mislead, and not assist, the jury in their role as the ultimate finder of fact. *Pain v. Johnson,* 2010 U.S. Dist. LEXIS 16024, *10 (N.D. Ill. 2010).

The second bucket is that "crucial documents in the Soto homicide investigation" were not turned over to the defendants. Dkt. 759-2 at 62. The "crucial documents" identified were polaroid photos[9] taken of the victim's family members during the investigation that Tiderington unilaterally

---

[8] In light of this Court's standing order as well as the space limitations on motions in *limine,* the City has not included an in-depth analysis of *Jones v. City of Chicago,* 865 F.2d 985 (7th Cir. 1988), as it has been well briefed in the City's motion for summary judgment.

[9] This Court already found that the "Polaroid photos themselves don't seem to have any exculpatory or impeachment value" beyond a very limited scope. *See* Ex. 5, Hr'g Tr. *Reyes/Solache* at (N.D. Ill. July 24, 2025).

concluded were suspects. Specifically, Tiderington testified that because he did not see evidence of photographs taken of each witness interviewed, and because the family members subsequently claimed (in depositions 20 years later) they were "interrogated and … treated as suspects[]," he concluded "[p]erhaps that they were suspects in this investigation." Dkt. 759-3 at 413:22-414:9; 415:16-22. From this, he opined that the polaroids were both exculpatory and withheld, thereby trying to fit the claim within the "street file" rubric.

This opinion, like many others, is not only purely speculative, but is based upon Tiderington's fundamental lack of understanding of the criminal process in Cook County. In a recent deposition in another Guevara related case on the same *Monell* opinion, Tiderington admitted that he did not have even a basic understanding of what happens to the evidence used in a criminal trial after the trial concludes. Ex. 12 Tiderington Dep. at 183:16-18. When confronted with the fact that evidence he opined in that case was *withheld* was in fact impounded by the Circuit Court of Cook County when the trial concluded, he conceded that would be "an explanation as to why [documents] weren't in the [State's Attorney's File]." *Id*. at 184:15-185:1. Here, record evidence establishes that at least one of the polaroid photographs Tiderington claims was withheld was used during the criminal trial and is impounded with the State. Tiderington's opinion that this was somehow withheld by Defendants is demonstrably false. As such, any opinion that the remaining photographs of the victims' family were withheld will only serve to confuse the jury[10]. Expert testimony may properly be excluded where other evidence in the record is sufficient to allow jurors to "make a determination for themselves" as to the issue in dispute. *See Hoffman v. Caterpillar, Inc.,* 368 F.3d 709, 714 (7th Cir. 2004). This is such an instance. Again, these methodologically unsound conclusions will only mislead, and not

Accordingly, allowing Tiderington to testify that the photographs were *withheld* as a conduit for introducing hundreds of unrelated homicide investigations in support of a *Monell* claim grounded in Plaintiffs' "street file" would only serve to confuse and mislead the jury.

[10] For the full discussion on this issue, see City's *Daubert* Motion to Bar Tiderington, Dkt. 759 at 22-23.

assist, the jury in their role as the ultimate finder of fact. *Pain,* 2010 U.S. Dist. LEXIS 16024, *10 (N.D. Ill. 2010).

**Finnell**. Mr. Finnell's overarching opinion is that Defendant Officers "escaped accountability" throughout their careers due to a lack of supervisory oversight, inadequate investigations, and inadequate discipline is based upon a flawed qualitative analysis of historical information as well as a flawed statistical analysis. Dkt. 760-2 at 78. Finnell's report is riddled with inflammatory statements masked as opinions, including but not limited to CPD (1) engaged in a widespread pattern and practice that condoned unlawful, unreasonable and improper law enforcement practices; (2) had a practice of fabricating false statements from witnesses; and (3) failed to discipline and supervise the defendants *in this case,* creating a sense of impunity and facilitated, encouraged, and *allowed* abuses. Dkt. 760-2.

Finnell cites no evidence, research or policy standards from the relevant time frame, 1995-1998, to support his opinions that the City's disciplinary practices were below industry standards for the time. Rather, his opinions rely on inherently biased materials, flawed and incomplete data, as well as raw advocacy. This Court already found that Finnell's opinions on a culture of impunity were not based upon any valid methodology, but rather, raw argument because those beliefs could not be tested. Ex. 11 at 50:23–51:12. As with Tiderington before, these methodologically unsound conclusions will only mislead, and not assist, the jury in their role as the ultimate finder of fact. *Pain,* 2010 U.S. Dist. LEXIS 16024, *10. Moreover, evidence is unduly prejudicial if it creates a genuine risk that the emotions of the jury will be excited to irrational behavior, and the risk is disproportionate to the probative value of the offered evidence. *United States v. Loughry,* 660 F.3d 965, 971 (7th Cir. 2011). Allowing Finnell to testify risks doing just that. The purported historical context that spans 18 pages of his report will inflame the jury against Defendant Officers, despite there being no causal connection. Moreover, allowing the flawed statistical analysis poses the same

49

risks by allowing Plaintiffs to parade other incidents and purported allegations of misconduct that are untethered to the actual investigation at issue.

Date: March 25, 2026              Respectfully submitted,

                                      /s/ Josh M. Engquist
                                      JOSH M. ENGQUIST, Attorney No. 6242849
                                      Special Assistant Corporation Counsel

James G. Sotos *v*                    *One of the Attorneys for Defendant Officers*
Josh M. Engquist
Caroline P. Golden
Elizabeth R. Fleming
THE SOTOS LAW FIRM, **P.C.**
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jengquist@jsotoslaw.com

50

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on **March 25, 2026** I electronically filed the foregoing **Defendants' Motions in Limine 1-23** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

**Attorneys for Arturo Reyes:**
Jon Loevy
Steven Art
Anand Swaminathan
Rachel Brady
Sean Starr
Wallace Hilke
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
steve@loevy.com
anand@loevy.com
brady@loevy.com
sean@loevy.com
hilke@loevy.com

**Attorneys for City of Chicago:**
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Austin Rahe
Patrick R. Moran
Lauren Ferrise
Sabrina A. Scardamaglia
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654
(312) 494-1000
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com
pmoran@rfclaw.com
lferrise@rfclaw.com
sscardamaglia@rfclaw.com

**Attorneys for Gabriel Solache:**
Jan Susler
Ben H. Elson
Nora Snyder
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
jsusler@peopleslawoffice.com
ben.elson79@gmail.com
norasnyder@peopleslawoffice.com

**Attorneys for Defendant Guevara:**
Steven Blair Borkan
Timothy P Scahill
Whitney N. Hutchinson
Graham P. Miller
Emily E. Schnidt
Christiane E. Murray
Molly E. Boekeloo
Amanda Guertler
Krystal Gonzalez
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580-1030
sborkan@borkanscahill.com
tscahill@borkanscahill.com
whutchinson@borkanscahill.com
gmiller@borkanscahill.com
eschnidt@borkanscahill.com
cmurray@borkanscahill.com
mboekeloo@borkanscahill.com
aguertler@borkanscahill.com
kgonzalez@borkanscahill.com

/s/ Josh M. Engquist
JOSH M. ENGQUIST, Atty. No. 6242849
Special Assistant Corporation Counsel
*One of the Attorneys for Defendant Officers*

51