IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff*, | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 2312 |
| *Plaintiff*, | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' RESPONSES TO
DEFENDANTS' MOTIONS *IN LIMINE***

i

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES.............................................................................. iii

Introduction ..................................................................................................... 1

1.    Response to Motion No. 1 to Bar Certificates of Innocence.................................. 1

2.    Response to Motion No. 2 to Bar Reference to False Testimony ......................... 9

3.    Response to Motion No. 3 To Bar Evidence, Argument to Any Judicial
Commentary on the Credibility of Guevara or Other Matters and Cases Involving Guevara 13

4.    Response to Motions 4, 5, and 16 [sic] Regarding Assertions of the Fifth
Amendment...................................................................................................... 14

5.    Response to Motion 6 to Bar Testimony from Friends and Family.................... 14

6.    Response to Motion 7 to Bar Evidence About Conditions of Confinement....... 15

7.    Response to Motion 8 to Bar Evidence About Sufficiency of Investigation....... 17

8.    Response to Motion 9 to Bar Evidence of Policy and Practice Violations By the
Individual Defendants....................................................................................... 20

9.    Response to Motion 10 to Bar Code of Silence ................................................. 22

10.   Response to Motion 11 to Bar Prior Evidence or Argument Concerning Prior
Claims of Misconduct, Citizen Complaints, and Lawsuits against Individual Officers and
Non-Party CPD Witnesses ............................................................................... 25

11.   Response to Motion 12 to Bar Highly Publicized Cased of Police Misconduct 26

12.    Response to Motion 13 to Bar Argument Referring to "Constitutional Rights" As A Category of Damages ............................................................................................ 26

13.    Response to Motion 14 to Bar "Golden Rule" Arguments................................... 27

14.    Response to Motion 15 to Bar Evidence or Argument Contradicting Issues Determined Against Plaintiffs on Summary Judgment, for A Limiting Instruction, and to Judicially Admit Facts ............................................................................................... 28

15.    Response to Motion 17 to Bar Reference to the Sidley Investigation.................. 32

16.    Response to Motion 18 to Bar Testimony About Outcome of Criminal Trial.... 36

17.    Response to Motion 19 to Bar Evidence That Defendants Abused Witnesses .. 38

18.    Response to Motion 20 to Bar Evidence Relating to Defendants' Use of Lawful Interrogation Techniques ....................................................................................... 42

19.    Response to Motion 21 to Bar Plaintiffs and Witnesses from Testifying About Medical Diagnoses ................................................................................................. 45

20.    Response to Motion 22 to Bar References to Violations of the Vienna Convention ............................................................................................................. 46

21.    Response to Motion 23 to Bar Monell Opinions of Tiderington and Finnell..... 46

**TABLE OF AUTHORITIES**

**Cases**

*Aleman v. Vill. of Hanover Park*, 662 F.3d 897 (7th Cir. 2011) .................................................. 1

*Arrington v. City of Chicago*, 147 F.4th 691 (7th Cir. 2025) ...................................................... 14

*Arrington v. City of Chicago*, 2023 WL 3123729 (N.D. Ill. Apr. 27, 2023) ............................... 14

*Avery v. Milwaukee*, 847 F.3d 433 (7th Cir. 2017) ..................................................................... 1

*Bankers Tr. Co. v. Publicker Indus., Inc.*, 641 F.2d 1361 (2d Cir. 1981) ..................................... 4

*Baxter v. Anderson*, 277 F. Supp. 3d 860 (M.D. La. 2017) .................................................... 3, 4

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988) ................................................................. 12

*Bennett v. Thomas*, No. 12 cv 6060, 2014 WL 13110820 (N.D. Ill. Jan. 16, 2014) ................... 1

*Brady v. Maryland*, 373 U.S.83 (1963) ...................................................................................... 15

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ....................................................................................... 1

*Brown v. Chicago*, No. 19-cv-4082, 2023 WL 1070220 (N.D. Ill. Dec. 29, 2023) ................... 1

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) .............................................. 1

*Brown v. City of Chicago*, No. 18 C 7064, 2023 WL 2640317 (N.D. Ill. Mar. 22, 2023) ......... 1

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) ............................................................................. 1

*Cazares v. Frugoli*, No. 13-cv-5626, 2017 WL 4150719 (N.D. Ill. Sept. 19, 2017) ................. 2

*Charles v. Cotter*, 867 F. Supp. 648 (N.D. Ill. 1994) ................................................................. 1

*Chatman v. City of Chicago*, 2018 WL 11426432 (N.D. Ill. Oct. 11, 2018) .............................. 1

*Christmas v. Chicago*, 691 F. Supp. 2d 811 (N.D. Ill. 2010) ............................................... 1, 25

*Cook v. Hoppin*, 783 F.2d 684 (7th Cir. 1986) ........................................................................... 1

*Cooper v. Dailey*, No. 07-cv-2144, 2012 WL 1748150 (N.D. Ill. May 16, 2012) ..................... 1

*Costello v. Grundon*, 651 F.3d 614 (7th Cir. 2011) .................................................................... 1

iii

*Crespo v. Colvin*, 824 F.3d 667 (7th Cir. 2016) ................................................................................. 1

*Daniel v. Cook Cty.*, 833 F.3d 728 (7th Cir. 2016) ............................................................... 12

*Dassey v. Dittman*, 877 F.3d 297 (7th Cir.2017) ................................................................... 22

*Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) .................................... 21, 26, 27, 28

*Davies v. Benbenek*, 836 F.3d 887 (7th Cir. 2016) ................................................................. 1

*Delgado v. Mak*, No. 06-cv-3757, 2008 WL 4367458 (N.D. Ill. March 31, 2008) ............................... 1

*Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036, 510 N.E.2d 1208 (1987) .................................. 4

*England v. Allen*, No. 17-cv-8911, 2019 WL 2743481 (N.D. Ill. July 1, 2019) .................................... 1

*Fields v. Wharrie,* 740 F.3d 1107 (7th Cir. 2014) .................................................................... 1

*Galvan v. Norberg*, No. 04-cv-4003, 2006 WL 1343680 (N.D. Ill. May 10, 2006) .................................. 1

*Garcia v. Hudak*, 156 F. Supp. 3d 907 (N.D. Ill. 2016) ........................................................... 1

*Geinosky v. Chicago*, 675 F.3d 743 (7th Cir. 2012) ................................................................. 1

*Genesys Cloud Services, Inc. v. Strahan*, No. 119-cv-00695-TWP-MKK, 2023 WL 2139823 (S.D. Ind. Feb. 21, 2023) ...................................................................................... 7

*Giglio v. United States*, 405 U.S. 150 (1972) ....................................................................... 15

*Godinez v. City of Chicago,* No. 16-CV-07344, 2019 WL 5597190 (N.D. Ill. Oct. 30, 2019) ................ 12

*Gonzalez v. Olson*, 2015 WL 3671641 (N.D. Ill. June 12, 2015) ....................................................... 13

*Gray v. City of Chicago*, 2023 WL 7092992 (N.D. Ill. May 8, 2023) ................................................ 1

*Harris v. City of Chicago*, 2018 WL 2183992 (N.D. Ill. May 11, 2018) ............................................. 1

*Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398 (N.D. Ill. 1993) ............................. 1

*Hendrickson v. Cooper*, 589 F.3d 887 (7th Cir. 2009) .............................................................. 1

*Henry v. Ramos*, No. 97 C 4025, 1997 WL 610781 (N.D. Ill. Sep. 28, 1997) ....................................... 1

*Hill v. Chicago*, No. 06-cv-6772, 2011 WL 3205304 (N.D. Ill. July 28, 2011) ..................................... 1

*Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) ........................................................................... 1

*In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527 (N.D. Ill. 2005) ................................. 1

*Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436 (7th Cir. 1997) ........................... 4

*Jones v. Cannizzaro*, 514 F. Supp. 3d 853 (E.D. La. 2001) ...................................................... 8

*Jones v. Walters*, No. 12-cv-5283, 2016 WL 1756908 (N.D. Ill. Apr. 29, 2016) .................................... 1

*Kalina v. Fletcher*, 522 U.S. 118 (1997) ............................................................................... 1

*Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir. 1970) ....................................................... 22, 23

*Kluppelberg v. Burge*, 84 F. Supp. 3d 741 (N.D. Ill. 2015) ..................................................... 1

*Kyles v. Whitley*, 514 U.S. 419 (1995) ................................................................................ 15

*LaPorta v. City of Chi.*, 277 F. Supp. 3d 969 (N.D. Ill. 2017) ................................... 11, 12, 13

*Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019) .......................................................... 1

*Malley v. Briggs*, 475 U.S. 335 (1986) ................................................................................. 1

*Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) ............................................... passim

*Napue v. Illinois*, 360 U.S. 264 (1959) ................................................................................. 15

*Newsome v. McCabe*, No. 96-cv-7680, 2002 WL 548725 (N.D. Ill. Apr. 4, 2002) ................................. 1

*Norton v. Schmitz*, No. 08-cv-4365, 2011 WL 4984488 (N.D. Ill. May 27, 2011) ................................. 1

*O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996) ....................................... 11

*Palmer v. Robbins*, No. CV419-167, 2022 WL 1063607 (S.D. Ga. Apr. 8, 2022) ............................. 9

*Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012) ........................................ 1, 7, 17, 24

*Patrick v. City of Chicago*, 974 F.3d 824 (7th Cir. 2020) ......................................................... 1

*Patterson v. Dorrough*, 10 C 1491, 2012, 2012 WL 5381328 (N.D. Ill. Oct. 31, 2012) ........................... 1

*People v. Palmer*, 2021 IL 125621, 182 N.E.3d 672 (Ill. S. Ct. 2021) ...................................... 1

*Petrovic v. City of Chicago*, No. 06-cv-6111, 2008 WL 818309 (N.D. Ill. March 21, 2008) .................... 1

*Ratliff v. City of Chicago*, No. 10-cv-739, 2012 WL 5845551 (N.D. Ill. Nov. 19, 2012) ........................ 1

*Regalado v. City of Chicago*, No. 96-cv-3634, 1998 WL 919712 (N.D. Ill. 1998) ..................................... 1

Rehberg v. Paulk, 566 U.S. 356 (2012)...................................................................................... 1

*Rivera v. Guevara,* 12-CV-04428, 2018 WL 11468911 (N.D. Ill. May 30, 2018) ................................... 1

*Rivera v. Guevara*, No. 12-cv-4428, 2018 WL 11468910  (N.D. Ill. June 5, 2018) .............................. 14

*Rivera v. Lake County*, 974 F. Supp. 2d 1179 (N.D. Ill. 2013)............................................................... 1

*Sanders v. Chicago Heights*, No. 13-cv-0221, 2016 WL 2866097 (N.D. Ill. May 17, 2016) .................... 1

*Saunders v. City of Chicago*, 320 F. Supp. 2d 735 (N.D. Ill. 2003)......................................................... 1

*Shirrell v. Billing*, No. 17-cv-0567-MJR-DGW, 2018 WL 7252824 (S.D. Ill. May 11, 2018)................ 3

*Shroyer v. Kaufmann*, 426 F.2d 1032 (7th Cir. 1970)............................................................................ 4

*Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591 (7th Cir. 1985) ......................................................... 10

*Stinebower v. Scala*, 331 F.2d 366 (7th Cir. 1964) ............................................................................... 3

*Stinson v. Gauger*, 868 F.3d 516 (7th Cir. 2017).................................................................................. 1

*Swick v. Liautaud*, 169 Ill. 2d 504 (1996) ............................................................................................ 1

*Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, No. 09-cv-4008, 2012 WL 2953063 (N.D. Ill. July 19,

   2012).............................................................................................................................................. 1

*Thomas v. Sheahan,* 514 F. Supp. 2d 1083 (N.D. Ill. 2007) .................................................................. 7

*Thompson v. Chicago*, 472 F.3d 444 (7th Cir. 2006) ............................................................................. 1

*Torres v. City of Chicago*, 2015 WL 12843889 (N.D. Ill. Oct. 28, 2015)............................................... 13

*Townsend v. Benya*, 287 F. Supp. 2d 868 (N.D. Ill. 2003) .................................................................... 1

*U.S. v. Brown*, 871 F.3d 532 (7th Cir. 2017) ....................................................................................... 1

*U.S. v. Proano*, 912 F.3d 431 (7th Cir. 2019) ...................................................................................... 1

*U.S. v. Smartt*, 58 F.4th 358 (7th Cir. 2023) ....................................................................................... 9

*United States v. Agurs*, 427 U.S. 97 (1976) ........................................................................ 16

*United States v. Bagley*, 473 U.S. 667 (1985) .................................................................... 15

*United States v. Burrows*, 48 F.3d 1011 (7th Cir. 1995) ................................................... 20

*United States v. Cardena*, 842 F.3d 959 (7th Cir. 2016) ................................................... 19

*United States v. Chaverra-Cardona*, 879 F.2d 1551 (7th Cir. 1989) ................................ 20

*United States v. Cui*, 163 F.4th 1072 (7th Cir. 2026) ......................................................... 1

*United States v. Han*, 105 F.4th 986 (7th Cir. 2024) ......................................................... 19

*United States v. Harris,* 914 F.2d 927 (7th Cir.1990) ........................................................ 11

*United States v. Hernandez,* 84 F.3d 931 (7th Cir. 1996) ................................................... 20

*United States v. Jarigese*, 999 F.3d 464 (7th Cir. 2021) ..................................................... 19

*United States v. Joshua*, 648 F.3d 547 (7th Cir. 2011) ......................................................... 1

*United States v. Kozinski*, 16 F.3d 795 (7th Cir. 1994) ....................................................... 10

*United States v. Kreiser*, 15 F.3d 635 (7th Cir. 1994) ........................................................ 20

*United States v. Lindemann*, 85 F.3d 1232 (7th Cir. 1996) .................................................. 1

*United States v. McRae*, 593 F.2d 700 (5th Cir. 1979) .......................................................... 1

*United States v. Sanders,* 979 F.2d 87 (7th Cir.1992) ........................................................ 11

*United States v. Testa*, 548 F.2d 847 (9th Cir. 1977) ........................................................... 1

*United States v. Tylkowski*, 9 F.3d 1255 (7th Cir. 1993) .................................................... 20

*United States v. Walton*, 217 F.3d 443 (7th Cir. 2000) ...................................................... 15

*United States v. Wormick*, 709 F.2d 454 (7th Cir. 1983) .................................................... 20

*Vance v. Chandler*, 597 N.E.2d 233 (Ill. 1992) ................................................................... 1

*Via v. Lagrand*, No. 03-cv-3278, 2007 WL 495287 (N.D. Ill. Feb. 12, 2007) ..................... 1

*Volland-Golden v. City of Chicago*, No. 13-cv-1477, 2016 WL 4678299 (N.D. Ill. Sept. 7, 2016) ........... 1

*Walker v. White*, No. 16 CV 7024, 2021 WL 1058096 (N.D. Ill. Mar. 19, 2021) ................................. 1

*Watson v. Fulton*, 2022 WL 21296130 (N.D. Ill. Feb. 23, 2022) ........................................ 13

*Wearry v. Cain*, 577 U.S. 385 (2016) ............................................................... 15, 16

*Wilbon v. Plovanich*, No. 12-cv-1132, 2016 WL 890671 (N.D. Ill. Mar. 9, 2016) .................................. 1

*Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993) ..................................................... 19, 20

*Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001) ................................................... 22

*Young v. Rabideau*, 821 F.2d 373 (7th Cir. 1987) .............................................................. 20

### Statutes

42 U.S.C. § 1983 ..................................................................................................... 2, 5, 27

### Other Authorities

7th Cir. Pattern Civ. Instr. 7.04 ............................................................................. 22

### Rules

Federal Rule of Evidence 401 ........................................................................... 3, 19

Federal Rule of Evidence 403 ............................................................................ passim

Federal Rule of Evidence 404 ............................................................................ passim

Federal Rule of Evidence 801 ........................................................................... 10, 11, 12

Federal Rule of Evidence 803 ........................................................................... 1, 12, 13

## Introduction

**1.      Response to Motion No. 1 to Bar Certificates of Innocence**

This Court should deny Defendants' motion to bar Plaintiffs' Certificates of Innocence (COI). Dkt. 873 at 1-11. The law in this Circuit is uniform that in a §1983 wrongful conviction case, particularly one involving a state-law malicious prosecution claim, a COI granted after a conviction has been vacated is admissible on issues relating to both liability and damages. Many courts have considered this question, and every one of them has reached the same conclusion: evidence that the plaintiff has been granted a COI is admissible, just as it would be had the plaintiff received a pardon based expressly on innocence. Most recently, the Seventh Circuit reaffirmed this rule in *Patrick v. City of Chicago*, 974 F.3d 824, 832-34 (7th Cir. 2020); see also *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1170 (N.D. Ill. 2022) (noting that "several courts in this district have concluded that a COI is admissible evidence"). After Plaintiffs were exonerated, in November 2022, the Illinois state courts decided they were entitled to certificates of innocence, *People v. DeLeon-Reyes*, No. 98-CR-12440 (Exhibit 1), and *People v. Solache*, No. 98-CR-12440 (Exhibit 2), *People v. DeLeon-Reyes*, No. 23 CC 3643 (Ill. Court of Claims, Oct. 19, 2023) (Exhibit 19), and *People v. Solache*, No. 23 CC 3228 (Ill. Court of Claims, July 23, 2023) (Exhibit 20)and that evidence is admissible in this civil case.

### A.  The COIs Are Highly Relevant for Multiple Purposes

The Seventh Circuit held in *Patrick* that the grant of a certificate of innocence is relevant and admissible in a civil case alleging that police officer defendants maliciously prosecuted a plaintiff alleging he was wrongly convicted. 974 F.3d at 832-34. Following *Patrick*, certificates of innocence have routinely been admitted by federal trial judges presiding over cases where a plaintiff successfully petitioned to vacate his conviction, the State dropped the charges, and there was a subsequent federal civil rights lawsuit that included a state-law malicious prosecution claim, as this case does. See Ex. 3, *Bolden v. Chicago*, No. 17 C 417, Dkt. 467 at 25-26 (N.D. Ill. Sep. 22, 2021); see also Ex. 4, *Palmer v.*

*Decatur*, No. 17 C 3268, Dkt. 314 at 15 (C.D. Ill. May 8, 2025); Ex. 5, *Horton v. Rockford*, No. 18 C 6829, Dkt. 272 at 24-25 (N.D. Ill. Dec. 30, 2024); *Gray v. City of Chicago*, No. 1:18-CV-02624, 2023 WL 7092992, at *11-12 (N.D. Ill. May 8, 2023); *Brown v. City of Chicago*, No. 18 C 7064, 2023 WL 2640317, at *2 (N.D. Ill. Mar. 22, 2023); *Walker v. White*, No. 16 CV 7024, 2021 WL 1058096 at *13 (N.D. Ill. Mar. 19, 2021); *Chatman v. City of Chicago*, 2018 WL 11426432, at *3–6 (N.D. Ill. Oct. 11, 2018); *Rivera v. Guevara,* 12-CV-04428, 2018 WL 11468911, at *1 (N.D. Ill. May 30, 2018); *Harris v. City of Chicago*, 2018 WL 2183992, at *4 (N.D. Ill. May 11, 2018); *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 748 (N.D. Ill. 2015).

### (1) A COI Is Admissible to Establish Liability for Malicious Prosecution

At minimum, the uncontestable fact that COIs were granted by a state court is admissible to show that the underlying criminal proceedings were terminated in Plaintiffs' favor in a manner "indicative of innocence." *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996). This is a necessary element of Plaintiffs' Illinois state-law malicious prosecution claim. Significantly, a *nolle prosequi* by the State, in and of itself, does not establish the "indicative of innocence" element. *Id.* at 513. Accordingly, courts hold uniformly that a certificate of innocence is relevant to this element of a malicious prosecution claim. See *Walker*, 2021 WL 1058096 at *13 ("Though it lacks preclusive effect, a certificate of innocence may be 'directly relevant' at trial on a malicious-prosecution claim to prove that the criminal proceeding was terminated consistent with innocence."); see also *Brown*, 2023 WL 2640317, at *2 (holding that a certificate of innocence "may be the most probative piece of evidence for the termination element of Mr. Brown's malicious prosecution claim"); *Gray*, 2023 WL 7092992, at *11-12; *Harris*, 2018 WL 2183992, at *4; *Patterson v. Dorrough*, 10 C 1491, 2012 WL 5381328, at *5 (N.D. Ill. Oct. 31, 2012). This Court should admit Plaintiffs' COIs for this reason alone.

### (2) A COI Is Independently Admissible for Many Other Reasons As Well

A COI is independently admissible for many other reasons as well. First, the COI is essential to complete the story of Plaintiffs' criminal proceedings. "As a practical matter, it seems difficult to tell the story of the case without it." Ex. 3, *Bolden*, No. 17-cv-417, ECF No. 467, at 26 (denying defense motion to exclude COI). There is no question that the jury will learn about Plaintiffs' arrests, convictions, and post-conviction proceedings. It would be unfair and misleading to leave out the last chapter: Plaintiffs' receipt of COIs. If the jury will be told Plaintiffs were found guilty of the crime, explicitly or by implication, then it should also be told that Plaintiffs were later found innocent. See *Kluppelberg v. Burge*, 84 F. Supp. 3d 741, 746 (N.D. Ill. 2015) (the COI is "relevant to neutralizing the potential unfair prejudice to plaintiff" if defendants intend to argue that plaintiff committed the crime); *Newsome v. McCabe*, No. 96-cv-7680, 2002 WL 548725, at *6 (N.D. Ill. Apr. 4, 2002) (holding that excluding evidence of a pardon would have been "highly prejudicial to [plaintiff]" and would have "invited jurors to draw the impermissible inference that he was actually guilty, and, thus, absolve defendants of any misconduct"); *Brown*, 633 F. Supp. 3d at 1170 (quoting *Kluppelberg*, 84 F. Supp. 3d at 747) ("Because here, like in *Kluppelberg*, 'the application for the COI is part of the narrative of this case,' this court is inclined to follow suit" and allow its admission).

Second, the COI is relevant to Plaintiffs' due process claims, "insofar as it is needed to keep the jury's focus on the materiality issue as opposed to [Plaintiff's] actual guilt or innocence." *Kluppelberg*, 84 F. Supp. 3d at 747, (N.D. Ill. 2015) (citing *Newsome*, 256 F.3d-747 (7th Cir. 2001). Plaintiffs' COIs settle the jury's curiosity, and it thus sets aside the question of guilt or innocence so that the jury can focus on the actual question of *this* case: whether Defendants withheld exculpatory evidence, fabricated evidence, or coerced confessions in violation of Plaintiffs' constitutional rights. The COIs are essential to Plaintiffs' demonstration to the jury how Defendants' misconduct impacted their right to fairness in *that criminal trial*, without confusing the jury as to their role in determining the ultimate question in *this civil trial*.

3

Third, the COIs are admissible because they are probative of the nature of Defendants' conduct and their state of mind. They are admissible to support an intentional infliction of emotional distress claim, because the jury will have to decide whether the Defendants engaged in conduct that was extreme and outrageous, and that evaluation can turn on whether their conduct was focused on individuals found guilty or found innocent by state courts. *Henry v. Ramos*, No. 97 C 4025, 1997 WL 610781, at *2 (N.D. Ill. Sep. 28, 1997) ("An average member in the community would consider it outrageous for police officers to falsely frame, arrest and imprison an innocent citizen."). For the same reason, they are probative of the malice requirement of the malicious prosecution claim, see *Swick*, 169 Ill.2d at 512, and to prove punitive damages. A declaration of innocence adds weight to the theory that Defendants arrested Plaintiffs without justification or excuse.

### (3) A COI Is Admissible to Establish Damages

Last, and again separate from the above, the Seventh Circuit has held that the guilt or innocence of a plaintiff in a Section 1983 wrongful conviction case is always relevant to damages, and that evidence of innocence and guilt must be allowed from both sides. *Parish v. City of Elkhart*, 702 F.3d 997, 999 (7th Cir. 2012). Relying on this directive, district courts have concluded that a plaintiff's receipt of a COI is relevant to damages, including the effect of the wrongful conviction on a mental state. *Kluppelberg*, 84 F. Supp. 3d at 746 ("[T]he COI is relevant to damages because a jury may award damages based in part on whether [the plaintiff] is actually innocent."); *Ott*, No. 2:09-cv-00870, 2015 WL 1219587, at *9 (E.D. Wis. 2015) ("The [exculpatory] DNA evidence in this case is admissible on the issue of damages[.]"); Ex. 6, *Logan*, No. 09 C 5471, at 1 ("The certificate is relevant . . . to his damages."); *Rivera v. Guevara*, No. 12-cv-04428, 2018 WL 11468911, at *1 (N.D. Ill. May 30, 2018) ("[A]s plaintiff points out, his long incarceration as an innocent person undoubtedly increased his

4

suffering and is therefore probative on the issue of damages").[1] Plaintiffs both contend that they were innocent when they were wrongly convicted, and their COIs are relevant evidence probative of their innocence and thus their damages in this civil case.

### B. The COI is Admissible Under Hearsay Exceptions

Defendants contend that admitting Plaintiffs' COI for anything other than establishing the favorable termination element of a malicious prosecution claim would be obvious hearsay, however this argument has been rejected by numerous courts. See*, e.g.,* Ex. 3, *Bolden v. City of Chicago*, No. 17-cv-417, ECF No. 467, at 26 (N.D. Ill. Sept. 22, 2021) (holding that a COI meets the requirements of Rule 803(8)'s public records exception); *Chatman v. City of Chicago*, No. 14-cv-2945, 2018 WL 11426432, at *4 (N.D. Ill. Oct. 11, 2018) (same); Ex. 6, *Logan v. City of Chicago*, No. 09-cv-5471, ECF No. 423 (N.D. Ill. Oct. 19, 2012) (same); *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1170 (N.D. Ill. 2022) (rejecting hearsay objection under 803(8) and noting that "several courts in this district have concluded that a COI is admissible evidence"). Those courts have correctly held that a COI meets the elements of Rule 803(8)'s public records exception, because a COI "sets out the office's activities—namely, the activities of the Judge in the Circuit Court of Cook County—and there is no dispute about whether the State court's rulings were accurately recorded on the Certificate." *Brown v. City of Chicago*, No. 18-cv-7064, 2023 WL 2640317, at *2 (N.D. Ill. 2023).

---

[1] See also *Chatman*, No. 14-cv-2945, 2018 WL 11426432, at *3 (COI admissible because "[t]he COI is evidence supporting [plaintiff's] position that he did not commit the crime"); *Harris v. City of Chicago*, No. 14-cv-4391, 2018 WL 2183992, at *3 (N.D. Ill. May 11, 2018) (explaining that plaintiff's COI "is relevant and admissible . . . to her damages if Defendants argue that Plaintiff committed the crime"); *Lopez v. City of Chicago*, No. 01 C 1823, 2005 WL 563212, at *8 (N.D. Ill. Mar. 8, 2005) ("We agree with Lopez that evidence that . . . the charges against Lopez were dropped [is] relevant to allow an inference that he was innocent and thus suffered the anguish during detention that an innocent person would suffer when wrongfully accused of a crime."); *Patterson v. Burge*, No. 03 C 4433, 2007 WL 1498974, at *2 (N.D. Ill. May 17, 2007) (holding that in a section 1983 wrongful conviction case, a plaintiff's innocence or guilt may affect the damages he can recover); *Mayes v. City of Hammond*, No. 2:03-CV-379-PRC, 2006 WL 2054377, at *9 (N.D. Ind. July 21, 2006) (concluding that a plaintiff's "innocence is directly relevant to his damages, which . . . are premised on [his] suffering as an innocent man wrongly deprived of his liberty").

In the face of this overwhelming authority, Defendants offer only one case that discusses a COI on this point—Judge Shah's decision in *Walker v. White*, No. 16-cv-7024, 2021 WL 1058096 (N.D. Ill. Mar. 19, 2021). However, that decision to bar a COI was "based on the defense stipulation that the proceedings had been terminated in a manner of innocence." Def. Ex. 2, Hearing Tr. at 41:21-24. That reasoning is simply not applicable here.[2] Moreover, *Walker* overlooked that two of the bases for which a COI is admissible—(1) its relevance to issues of guilty and innocence, and (2) as rebuttal evidence if Defendants try "to negate the materiality of their alleged actions" by arguing that Plaintiffs are actually guilty—"avoid the problems associated with admitting civil judgments for the truth of their underlying facts." *Chatman v. City of Chicago*, No. 14-cv-2945, 2018 WL 11426432 at *4-5 (N.D. Ill. Oct. 11, 2018) (describing *Kuppelberg*'s reasoning on this point and finding it "persuasive").

In addition to the public records exception to the hearsay rule, Plaintiffs' should also be permitted to offer their COIs, not for the truth of its findings of innocence, but merely to set forth an important part of the procedural history of the criminal case. There is little question that the jury will learn about Plaintiffs' arrest, conviction, and post-conviction proceedings. If Defendants attempt to attack Plaintiffs' credibility in any way, and especially by painting them as "guilty" parties in the underlying case, then Plaintiffs should be permitted to enter their COIs to rehabilitate their credibility.

## C. The Probative Value of the COI is Not Outweighed by Unfair Prejudice

Nor should the COI be barred under Rule 403. "The Federal Rules of Evidence are rules of inclusion, not exclusion." *Kluppelberg*, 84 F. Supp. 3d 741, at 747, (N.D. Ill. 2015). Rule 403 bars evidence only when its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. Additionally, "[w]ell-crafted jury

---

[2] Indeed, Defendants go out of their way to say they "are not stipulating that Plaintiffs' criminal cases ended in a manner 'indicative of innocence,' or that the COI proves favorable termination[.]" Dkt. 873 at 8. Defendants suggest they will "waive the favorable termination element," *id.*, but that is not a thing recognized by the Rules. Either the Defendants are willing to stipulate that the proof supports and element or not, but there is no in between that allows Defendants to eliminate the probative value of an item of evidence while still arguing that Plaintiffs are guilty.

6

instructions can guard against the risk of unfair prejudice or confusion of the issues." *Patrick*, 974 F.3d at 833; see also *Brown v. City of Chicago*, No. 18-cv-7064, 2023 WL 2640317, at *2 (N.D. Ill. Mar. 22, 2023) (citing *Patrick*, 974 F.3d at 833, citing *Harris*, 2018 WL 2183992, at *5) ("The court also recognizes the possibility that admission of the COI could generate confusion but believes that risk can be addressed by way of appropriate jury instructions, like those the Seventh Circuit cited favorably in *Patrick*"); *Gray v. City of Chicago*, No. 1:18-cv-02624, 2023 WL 7092992, at *12 (N.D. Ill May 8, 2023); *Rivera v. Guevara,* No. 12-cv-04428, 2018 WL 11468911, at *1, (N.D. Ill. May 30, 2018); Ex. 7, *Taylor v. City of Chicago*, No. 14-cv-737, ECF No. 851, at 10-11 (N.D. Ill Oct. 1, 2021). There is a presumption that such an instruction would be effective, because we presume that "the jury follows the district court's instructions." *United States v. Joshua*, 648 F.3d 547, 554 (7th Cir. 2011).

On the other side of the coin, admitting the COI will serve to clear up potential jury confusion. As the *Rivera* court put it, "Jurors are almost certain to be distracted by questions about why plaintiff was released," and "[p]roof of the Certificate of Innocence . . . will eliminate this potential distraction and settle the issue of why he was released. Because it will quickly remove a source of distraction, for that reason alone its probative value vastly outweighs its prejudicial impact." *Rivera,* 2018 WL 11468911, at *1; see also *Chatman*, 2018 WL 11426432, at *3 ("Without [the COI], the jury might be led to believe mistakenly that the charges against [plaintiff] were dropped due to a procedural defect or other technicality"). Defendants will paint Plaintiffs as guilty throughout these proceedings. At the same time, Plaintiffs will have to contend with undue weight juries tend to place on officer testimony, and the fact that Plaintiffs were convicted of crimes in the past. To exclude the COIs would provide *Defendants* an unfair advantage, allowing them to paint Plaintiffs as guilty people based on honest police work, without any opportunity for Plaintiffs to rebut that evidence. Restricting the COI's admission, which would otherwise protect against Defendants' painting Plaintiffs' release as a "technicality," would substantially prejudice Plaintiffs. The Rule 403 balance tilts in Plaintiffs' favor.

7

### D. Defendants' Remaining Arguments for Exclusion Should Be Rejected

Finally, Defendants assert that there are important reasons to departing from this Court's decision in *Bolden* and the other precedents just discussed. They contend that the grant of COIs to Plaintiffs was not part of an adversarial process. But the only evidence in support of this contention is Defendants' own say-so. Dkt. 873 at 2-3 (citing only testimony from a prosecutor not involved in the decision to withdraw the State's Attorney's opposition saying that she "did not know who made the decision or why"). Indeed, in the middle of their motion the Defendants proclaim that they lack evidence about why the State's Attorney withdrew opposition to the COIs at summary judgment. See *id.* at 7 *("Defendant cannot meaningfully challenge the basis for the COIs."). But Defendants are not really lacking evidence, they are simply lacking evidence that supports their view. And they are wrong that the conclusion of the COI litigation indicated some lack of adversarial process.

On the contrary, the evidence demonstrates that Plaintiffs prevailed at summary judgment based on a huge volume of evidence, after lengthy disputed proceedings, and that the resulting COIs represent a state trial court's painstaking, procedurally safeguarded review and redetermination of Plaintiffs' innocence on the merits. The CCSAO fought Plaintiffs' COI petitions for years. *See generally* Exs. 21, 22 (Reyes & Solache Petitions for Certificate of Innocence); Exs. 23-25, 29 (Reyes Motion for Summary Judgment and subsequent briefing); Ex. 26 (CCSAO Subpoena Response). During that process, the CCSAO was hampered by a dearth of legitimate evidence implicating Plaintiffs in the Soto murders, and it was hampered by the fact that the real killer, Adriana Mejia, had changed her story entirely about how the crime occurred. *See, e.g.,* Ex. 29 at 7-8; Ex. 24 (State's Response Closing Arguments) at 25-27; Ex. 27 (A. Mejia Feb. 4, 2021 Dep.) at 20, 27, 33, 96, 99-100, 112; Ex. 28 (A. Mejia Feb. 5, 2021 Dep.) at 8-9, 74-75, 148-49, 151-52, 156-57, 219-20. As a result, in order to have any hope of showing that Plaintiffs were not innocent of the crime, the CCSAO would have had to litigate the COI proceedings on a theory of liability that would have contradicted the theory of liability

8

during the criminal case. Ex. 29 at 3-8; Ex. 24 at 25-27. Plaintiffs pointed out in legal briefing that the Illinois Supreme Court prohibits the State from attempting to establish that a COI petition is guilty on a new theory of guilt that contradicts the theory of guilt at trial, *People v. Palmer*, 2021 IL 125621, 182 N.E.3d 672 (Ill. S. Ct. 2021), and the State had no answer to that argument, instead conceding that Plaintiffs were entitled to summary judgment. Ex. 29 at 3-8; *see also* Ex. 1, 2. This is not some technicality or unexplained decision—it is a party prevailing because the evidence only permitted the conclusion that Plaintiffs were innocent of the crimes charged, and that there was no credible evidence of their guilt.

On a related point, Defendants conclude their motion by making the argument that exclusion of the COIs is warranted because introduction of the COIs will create the opportunity for Defendants to attack the COI process. Dkt. 873 at 10. This is a curious ending note, given that the Defendants spend the rest of the argument asserting that they have no evidence to attack the COIs and saying that there was no adversarial process. Put simply, admission of the COIs will not result in a prolonged trial over a side issue because Defendants by their own admission have nothing to contest the account set out by Plaintiffs above. The COIs were issued by a state court because the Defendants' (and the State's) theory of their guilt in the criminal case is contradicted by evidence so overwhelming that the State could not contest it within the confines of the law.

Plaintiffs' COIs are highly relevant for multiple purposes, they fall under an exception to the rule against hearsay, and they are not unfairly prejudicial to Defendants. In fact, exclusion of the COIs would cause extreme prejudice to Plaintiffs. Defendants' motion should be denied.

**2.      Response to Motion No. 2 to Bar Reference to False Testimony**

Defendants ask to bar any reference to the fact that Defendants, including Guevara, provided false and misleading testimony during criminal proceeding, citing the witness immunity doctrine of *Briscoe v. LaHue*, 460 U.S. 325 (1983). While Plaintiffs do not contest that Defendants cannot be liable

9

solely for their false testimony, that does not alter the fact that "[a]bsolute immunity does not attach where the plaintiff 'accused officers of behavior that goes well beyond the testimony given at trial.'" Ex. 8, *Fulton/Mitchell v. Bartik, et al.*, No. 20-cv-3118, Dkt. 405 at 9-10 (N.D. Ill. Jan. 31, 2025) (quoting *Garcia v. Hudak*, 156 F. Supp. 3d 907, 917 (N.D. Ill. 2016)). Here, as in *Fulton/Mitchell,* Plaintiffs' allegations involve conduct well "outside the courtroom," and thus "exceed the scope of perjury, or even conspiracy to commit perjury." *Id.* at 9.

Indeed, Plaintiffs allege that Defendants' misconduct began on the very day of the Soto murders and kidnappings, and continued for weeks, long before the criminal trial. In that time period, the Defendants suppressed that they investigated alternative suspects; they suppressed key witness accounts; they fabricated false statements; they coerced Plaintiffs to adopt them as their own; they fabricated false police reports; and the list goes on and on. Plaintiffs must be permitted to show and to argue that, by testifying consistently with this misconduct, Defendants' actions outside of the courtroom caused Plaintiffs' criminal prosecutions and wrongful convictions. "Absolute immunity does not attach in such circumstances." *Id.*

Nor does *Briscoe* come close to barring all references to false testimony in a civil case. On the contrary, at the same time that the Supreme Court recognized that witnesses have immunity for testimony in a grand jury, it made clear, "[W]e do not suggest that absolute immunity extends to *all* activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits . . . , and fabricate evidence concerning an unsolved crime." Rehberg v. Paulk, 566 U.S. 356, 370 n.1 (2012) (citing *Kalina v. Fletcher*, 522 U.S. 118 (1997); *Malley v. Briggs*, 475 U.S. 335, 340–345 (1986); *Buckley*, 509 U.S., at 272–276). *Rehberg* thus holds in no uncertain terms that officials are liable for pre-trial acts of fabrication later the subject of false testimony.

10

Consistent with this, the Seventh Circuit has repeatedly admonished that civil defendants cannot immunize their own misconduct by testifying about that misconduct in a subsequent proceeding, *Avery v. Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017) ("Here, the detectives testified about [plaintiff's] 'confession' and authenticated their false reports memorializing it; the reports were then introduced into the trial record. If an officer who fabricates evidence can immunize himself from liability by authenticating falsified documentary or physical evidence and then repeating the false 'facts' in his trial testimony, wrongful conviction claims premised on evidence fabrication would be a dead letter. . . . When the detectives falsified their reports of a nonexistent confession, it was entirely foreseeable that this fabricated 'evidence' would be used to convict Avery at trial for Griffin's murder. That was, of course, the whole point of concocting the confession."); see also *Fields v. Wharrie,* 740 F.3d 1107, 1114 (7th Cir. 2014) ("A prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity."). Defendants' attempt to bar evidence of their false testimony is an attempt to self-help themselves to an immunity that Supreme Court and Seventh Circuit precedents hold they do not enjoy. Consistent with those precedents, Plaintiffs must be allowed to demonstrate, using all evidence, including Defendants' testimony at trial, that Defendants engaged in pre-trial acts of fabrication and suppression, and again that their misconduct caused the wrongful prosecution and convictions.[3]

Moreover, Defendants' subsequent steps at trial are relevant to Plaintiff's conspiracy claim, including that the Defendants' actions are probative of an earlier conspiracy. See *United States v. Lindemann*, 85 F.3d 1232, 1240 (7th Cir. 1996) ("Even if a conspiracy has terminated, evidence of

---

[3] The part of this Court's decision in *Zambrano v. Joliet* cited by Defendants does not change the analysis. No. 21-CV-4496, 2024 WL 532175, at *10 (N.D. Ill. Feb. 9, 2024), aff'd, 141 F.4th 828 (7th Cir. 2025). That decision holds only that witnesses are entitled to immunity and that the immunity extends to preparation for testimony, which is consistent with all the cases just discussed.

11

subsequent acts may be admitted to elucidate the nature of the prior conspiracy.") (citing *United States v. Testa*, 548 F.2d 847, at 852 (9th Cir. 1977)). At most, a limiting instruction can be given that informs the jury that the officers may not be liable for their testimony during Plaintiff's criminal trial or before the grand jury, and only for their conduct outside of those contexts. Any potential for confusion (which seems minimal at best) can be resolved in this manner.

Taking a step back, Defendants seem to be asking this Court to shield them from cross-examination based on prior sworn statements made regarding the events at issue in this case—statements that are non-hearsay admissions by a party opponent and are standard fare for impeachment—because *Briscoe* immunizes them from liability for perjury. However, *Briscoe* itself provides that cross-examination about alleged perjury is the way to ferret out the perjury—not that any examination is improper. *Briscoe,* 460 U.S. at 333-34 ("But the truth-finding process is better served if the witness' testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies."). Plaintiffs are aware of no case that forbids a plaintiff from cross-examining a defendant with his own prior statements, and Defendants offer no authority for such a sweeping ruling.

Finally, Defendants assert without any development of the argument that even if relevant, this evidence should be excluded as inadmissible propensity evidence under Rule 404(b) or under Rule 403. Dkt. 873 at 11. The conclusory argument is forfeited. *Costello v. Grundon*, 651 F.3d 614, 635 (7th Cir. 2011). But there are several problems with the position. First, it is not propensity evidence at all, because it pertains not to some other act, but instead Defendants' acts at issue in this case itself. *United States v. Cui*, 163 F.4th 1072, 1088 (7th Cir. 2026) ("Of course, "Rule 404(b) only curtails the introduction of 'evidence of *other* acts.'") (cleaned up); *Davies v. Benbenek*, 836 F.3d 887, 890 (7th Cir. 2016) ("[The defendant's] words and actions at that time are central to the disputed circumstances

12

underlying his claim of excessive force; they are not 'other acts' used to establish a propensity inference in violation of Rule 404(b).'").

Second, while it is certainly prejudicial that Defendants lied under oath in criminal proceedings, there is nothing *unfairly* prejudicial about that evidence. See, *e.g.*, *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986) ("Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case"); *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979). Instead, there is no unfair prejudice, and any that did exist would be far outweighed by how highly probative Defendants' false testimony is of Plaintiffs' theories of their misconduct. This Court should deny the motion.

**3.      Response to Motion No. 3 To Bar Evidence, Argument to Any Judicial Commentary on the Credibility of Guevara or Other Matters and Cases Involving Guevara**

Defendants move to bar judicial commentary about Guevara's credibility and other bad acts, which includes a perfunctory argument to exclude all of Guevara's long history of misconduct. Dkt. 873 at 11-13. To the extent that Defendants argue that the Court should bar Judge Obbish's written or testimonial opinions that Guevara is a liar and that Plaintiffs' convictions had to be set aside because of Guevara's misconduct, Plaintiffs agree that those opinions are inadmissible—just the same as the opinions of prosecutors on similar subjects—for all of the reasons in Plaintiff's Motion *In Limine* No. 5. See Dkt. 872 at 15. Opinions from Judge Obbish about the post-conviction proceedings should be excluded, along with opinions from prosecutors about the post-conviction proceedings. If one comes in, then the other should.

To the extent that Guevara is advocating for exclusion of his other bad acts in general, Plaintiffs rest on their briefing on Rule 404(b) evidence already filed with the Court. See Dkts. 824 & 845. Unlike in that briefing, Defendants now add an undeveloped that the Rule 404(b) witnesses and other evidence were not properly disclosed. See Dkt. 873 at 12-13. They do not show how that is the case, again forfeiting the point, *Costello*, 651 F.3d at 635, but it is also not the case. These witnesses

were all disclosed during discovery, Dkts. 308-1, 352 at 1; there was litigation about the number of Rule 404(b) witnesses, Dkts. 303, 308, 309, 313; the parties took depositions of Rule 404(b) witnesses in this and other Guevara cases; much of the Rule 404(b) evidence is being litigated simultaneously by the same lawyers in other cases; documents about all of the Rule 404(b) incidents have been disclosed for years across all pending Guevara cases in this district. It would be difficult to identify a case in which other bad acts of a defendant are *more* disclosed than this one. Guevara's other acts should not be excluded outright.

4.      **Response to Motions 4, 5, and 16 [sic] Regarding Assertions of the Fifth Amendment[4]**

Defendants have filed four separate motions regarding Defendants' assertions of their Fifth Amendment rights. Dkt. 873 at 13-16 (No. 4 to bar Guevara's assertion of the Fifth to other officers); id. at 16-17 (No. 5 to bar Halvorsen's assertion of the Fifth); id. at 29-34 (No. 16 to bar Guevara's assertion of the Fifth or to limit the number of questions he is asked); id. at 34-37 (No. 16 [sic] to require all facts to be established by independent evidence before Guevara takes the Fifth in response to questions). Plaintiffs are filing a separate, consolidated response today addressing those motions.

5.      **Response to Motion 6 to Bar Testimony from Friends and Family**

Defendants ask the Court to bar Plaintiffs from seeking to recover the damages of third parties. Dkt. 873 at 18. The jury will be properly instructed on the compensatory damages it may award. Plaintiffs will not argue they are entitled to damages suffered solely by family or friends. Accordingly, this motion can be granted to the extent it seeks to bar Plaintiffs from recovering damages not allowed under the proposed compensatory damages instruction.

---

[4] Defendants have numbered two of their motions *in limine* 16, creating confusion. Plaintiff will address them referencing the page numbers on which they appear in this response.

14

However, granting that relief does not mean all testimony about harms from family and friends should be barred. On the contrary, "[a] lay witness is entitled to testify about his 'own perceptions, including the physical and emotional effects of the defendants' alleged conduct.'" *Bennett v. Thomas*, No. 12 cv 6060, 2014 WL 13110820, at *10 (N.D. Ill. Jan. 16, 2014) (citing *Christmas v. Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. 2010)). That means Plaintiffs' family and friends can testify about the damages they witnessed Plaintiffs suffer. As the only case that Defendants cite holds, "there is no general bar against witnesses (including friends and family) to testify to [the plaintiff's] suffering if he described it to them as a statement of his then-existing emotional condition," *Gray v. Chicago*, No. 1:18-cv-02624, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023). Moreover, family and friends will often testify about an experience that is common to a plaintiff and to the family member or friend—*e.g.*, "my dad missed all of my birthday parties while he was in prison"—but that does not make it excludable testimony. Instead, so long as the evidence is probative of Plaintiffs' properly claimed compensatory damages, it should be admitted.

This Court has "the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* The damages testimony that Plaintiffs' family and friends might provide is not the kind that can be resolved conclusively *in limine*. The motion should be granted as agreed on the subject of what damages Plaintiffs may claim, but it should be denied or alternatively deferred until the time of trial on the precise scope of family members' testimony.

**6.      Response to Motion 7 to Bar Evidence About Conditions of Confinement**

Defendants' ask the Court to bar Plaintiffs from presenting "any evidence or argument relating to any abuse, mistreatment, or illegal conditions of confinement" that either of them experienced

15

while incarcerated. Dkt. 873 at 18-19. In other words, Defendants want the Court to bar a large category of Plaintiffs' damages. The only reason they give for this sweeping relief is that such damages were not disclosed.

This argument does not pass the straight-face test. Remarkably, Defendants do not cite any of the pleadings or discovery in the case in their motion, which is enough again to forfeit the point. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (parties forfeit arguments that are perfunctory, undeveloped, and unsupported by pertinent authority). However, the Court can rest assured that these categories of damages have been disclosed: They were disclosed in the pleadings, *Reyes* Dkt. 396 ¶¶ 9, 87–94, 133, 139, 147, 157, 163, 170, 188, 195, 200; *Solache* Dkt. 224 ¶¶ 41, 49–51, 56, 60, 75, 81, 88, 92, 105, 111, 116; they were disclosed in response to interrogatories, Exs. 9 & 10, Responses to Interrogatory No. 3; they were disclosed during the several hours of damages testimony that each Plaintiff provided during their depositions, see, *e.g.*, Ex. 11 at 31:14-33:4 (testifying he rarely was able to speak to family and no family member was ever able to visit him in prison); Ex. 12 at 374:23–24 ("I was beaten, I was mistreated by gangs in prison several times."), *id.* at 389:19–21 ("There was a time when they beat me – they beat me a lot, and yes, I went to the hospital in the prison."); Ex. 13 at 100:21-103:5 (confirming his discovery responses about experiencing depression and anxiety while in prison); *id.* at 134:8-135:16 (testifying that he lost weight and experienced headaches in prison as a result of depression); *id.* at 136:1-15 (testifying that the headaches he experienced in prison were also from being hit in the head); *id.* at 141:21-142:21 (testifying he still suffers from pain related to injuries suffered in prison); Ex. 14 at 209:15–21 (testifying that he had to be constantly vigilant in the prison environment), *id.* at 196:1–4 (explaining that he began experiencing panic attacks while in prison), *id.* at 207:6–19 (explaining that he developed health issues while in prison including high cholesterol). To the extent that Defendants did not question Plaintiffs about these damages as much as they might have liked during their depositions, that was Defendants' litigation decision, and not one that can now

16

justify barring a whole category of evidence. *In re Sulfuric Acid Antitrust Litigation*, 230 F.R.D. 527, 532 (N.D. Ill. 2005).

Finally, the parties conducted document discovery on the damages that Plaintiffs suffered in this case, seeking prison records and medical records to explore the issue. Defendants' argument that Plaintiffs have presented no specific allegations about his conditions of confinement is without a factual basis. Plaintiffs will testify at trial regarding their conditions of their confinement, including the abuse or pain they suffered, which resulted from Defendants' unlawful conduct. This testimony goes directly to Plaintiffs' compensatory damages and also this proof of harm is a necessary element of a number of Plaintiffs' claims. Plaintiffs personally experienced the harsh conditions of their confinement, and they must be able to testify about those conditions. *Hendrickson v. Cooper*, 589 F.3d 887, at 892-93 (7th Cir. 2009) ("given the uniquely subjective nature of pain," a plaintiff can rely on her own testimony to prove pain and suffering). This Court should allow this plainly relevant and disclosed testimony and evidence.[5]

**7.      Response to Motion 8 to Bar Evidence About Sufficiency of Investigation**

---

[5] In other Guevara cases, these Defendants have argued that such evidence should be barred because the conditions or confinement are not their fault. They appear to rightly have abandoned this argument by not including it in their motion here, Dkt. 873 at 18-19, but to the extent they intend to raise it later, Plaintiffs note that the argument lacks merit.

As explained in connection with the proposed jury instructions submitted to the Court, for the act of another to cut of liability for damages, that act would have to be a "superseding" cause of Plaintiffs' prison injuries, which the conditions in the Cook County Jail or Illinois Department of Corrections are not. In sum, common-law causation principles apply to § 1983 cases, making Defendants liable for the foreseeable consequences of their actions. *Monroe v. Pape*, 365 U.S. 167, 81 S. Ct. 473, 5 L. Ed. 2d 492, at 187 (1961). This principle applies with full force when multiple actors contribute to a particular harm, because it is "common for injuries to have multiple proximate causes," *Staub v. Proctor Hospital*, 562 U.S. 411, at 419-420 (2011), and when one actor's misconduct sets off a chain of events, even if others later in the chain of causation also commit additional constitutional torts, *Herzog v. Village of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002). A later bad act can be deemed a *superseding* cause of a harm "*only* if it is a 'cause of independent origin that was *not* foreseeable.'" *Staub*, 562 U.S. at 420; *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, at 621 (7th Cir. 2002). The key to determining whether an independent event supersedes to limit liability is whether that event was a reasonably foreseeable consequence of the particular type of misconduct in which the alleged tortfeasor engaged. *Shadday v. Omni Hotels Management Corp.*, 477 F.3d 511, 513 (7th Cir. 2007). Applied here, one of the readily foreseeable results of committing intentional torts that cause a person's wrongful incarceration—indeed, the expected result—is that the victim will suffer harm while incarcerated that a free person would not suffer.

17

Defendants ask the Court to bar all evidence casting doubt upon the sufficiency of the police investigation. Dkt. 873 at 19-20. There is nothing to support granting this hail-Mary motion, which would exclude as irrelevant every unflattering part of Defendants' investigation, and every piece of evidence they failed to investigate, despite that evidence being centrally relevant to this case.

First, this is a case about investigative misconduct—in particular a conspiracy to fabricate and suppress evidence and to obtain false confessions by physical and psychological coercion. Accepting Defendants' argument would lead to an absurd result—if no evidence of investigative deficiency relating to the confession or the fabrication or suppression of evidence could be admitted at trial, it would defeat the purpose of having a trial at all. In this way, Defendants are essentially seeking a judgment in the case in the guise of a motion *in limine* ruling, which of course is not allowed. *Sys. Dev. Integration, LLC v. Computer Scis. Corp.*, No. 09-cv-4008, 2012 WL 2953063, at *6 (N.D. Ill. July 19, 2012) (motions *in limine* are not substitutes for dispositive motions).

Second, Defendants cite Fourth Amendment case law for the proposition that police officers are not generally required to conduct investigations to support or negate probable cause, and from that rule they argue that the post-arrest investigation conducted by police is inadmissible for all purposes. But the quality of Defendants' post-arrest investigation is centrally relevant to all issues in the case. It is relevant to their state of mind, which is an element of every one of Plaintiff's claims. *Brown v. Chicago*, 633 F. Supp. 3d 1122, 1156-57 (N.D. Ill. 2022) ("'Knowledge and intent must often be proven by circumstantial evidence.'") (quoting *Stinson v. Gauger*, 868 F.3d 516, 527 (7th Cir. 2017)). It is relevant to whether or not Defendants knowingly fabricated or suppressed evidence, and whether those acts were material to the criminal case, which is relevant to Plaintiff's due process claims. For example, here, as in other fabrication cases, evidence that "Defendant Officers did not investigate [alternative suspects]"—or let them go suppressing the fact that they had investigated them at all— can "lead to a reasonable inference that Defendant Officers ignored other perpetrators in order to pin

18

the murder on [the plaintiff]." *Sanders v. Chicago Heights*, No. 13-cv-0221, 2016 WL 2866097, at *7 (N.D. Ill. May 17, 2016). It is relevant to the falsity and fabrication of Plaintiffs' coerced confessions, which were contradicted by other evidence available to Defendants during the investigation. *Hurt v. Wise*, 880 F.3d 831, 838 (7th Cir. 2018) (noting the importance of the quality of the police investigation to the viability of Fourth and Fifth Amendment claims relating to false confessions). It is relevant to whether Defendants agreed with one another and others to frame Plaintiffs, which is relevant to Plaintiffs' state conspiracy claims. *Brown v. Chicago*, No. 19-cv-4082, 2023 WL 1070220, at *11 (N.D. Ill. Dec. 29, 2023) (citing *Vance v. Chandler*, 597 N.E.2d 233, 236 (Ill. 1992)); *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1191 (N.D. Ill. 2013) (noting that a "pattern of misconduct . . . can give rise to an inference . . . of a conspiratorial agreement") (citing *Geinosky v. Chicago*, 675 F.3d 743, 749 (7th Cir. 2012)). It is relevant to Plaintiff's other state law claims that Defendants intentionally inflicted emotional harm, and in the same vein it is relevant to whether punitive damages should be imposed. *Via v. Lagrand*, No. 03-cv-3278, 2007 WL 495287, at *6 (N.D. Ill. Feb. 12, 2007) (""[P]unitive damages may be awarded against a defendant if her actions were 'malicious or in reckless disregard of [p]laintiff's rights.""); see also *Aleman v. Vill. of Hanover Park*, 662 F.3d 897, at 907 (7th Cir. 2011) (noting that malice is shown by "any motive other than that of bringing a guilty party to justice"). And it is undoubtedly relevant to Plaintiff's innocence or guilt. Indeed, Defendants will contend at trial that Plaintiffs committed the Soto murder and kidnapping, and Plaintiffs must be permitted to offer all information and leads developed during the investigation that show the opposite. *Parish v. City of Elkhart*, 702 F.3d 997, 1003 (7th Cir. 2012).

Defendants' arguments to exclude all of this crucial evidence lack merit, and Courts have routinely rejected those arguments. See Ex. 15, *Fulton v. Bartik*, Dkt. 400 at 12-13 (N.D. Ill. Jan. 31, 2025) ("Individual Defendants' post-arrest conduct may also be probative of bias and their state of mind to fabricate evidence"); Ex. 16, *Brown v. Chicago*, Dkt. 343 at 13-14 (N.D. Ill. July 30, 2024)

19

("ignoring a promising lead is probative of whether Defendants had made up their minds about Plaintiff's guilt, which in turn could be relevant to whether they knowingly fabricated or suppressed evidence"). This Court should deny the motion as well.

**8.      Response to Motion 9 to Bar Evidence of Policy and Practice Violations By the Individual Defendants**

Defendants' next motion to bar any evidence regarding deviations from the Chicago Police Department's internal rules, regulations, orders, policies, and procedures should be denied, for it runs headlong into ample contrary authority. Dkt. 873 at 20-21. There is evidence and testimony in this case regarding a number of CPD policies and procedures concerning key factual issues—as well as Defendants' violations of those policies and procedures—including CPD policies and procedures governing canvassing crime scenes, writing reports and notes, maintaining records in investigative files, communicating information among lead investigators, documenting witness statements, disclosure of evidence, and the conduct of suspect interrogations.

Contrary to Defendants' argument, evidence that officers violated policy is not *per se* barred; such violations are relevant and admissible for several purposes. To be sure, a violation of policy or procedure may not by itself make out a constitutional violation, *Thompson v. Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), but such evidence is relevant to the reasonableness of Defendants' actions and state of mind, *U.S. v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019) (explaining that "[s]ince *Thompson*, however, we have clarified that there is no *per se* rule against the admission of police policies or training," and noting that it is admissible "where an officer's intent is at issue"); *U.S. v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017) ("Despite its strong language, *Thompson* should not be understood as establishing a rule that

20

evidence of police policy or procedure will never be relevant to the objective- reasonableness inquiry").[6]

Several of Plaintiffs' claims turn on whether Defendants acted knowingly or intentionally, and Defendants' departures from policy are probative of those questions. See *Ezell v. Chicago*, 2023 WL 5287919, at *20 (N.D. Ill. Aug. 16, 2023) (finding evidence of CPD policy violations relevant because "[t]o establish their due process claims, Plaintiff must show that Defendants acted knowingly," and "[e]stablishing this policy baseline will help Plaintiffs show . . . that Defendants' conduct was intentional"). Departures from CPD policies are also relevant to punitive damages. *England v. Allen*, No. 17-cv-8911, 2019 WL 2743481, at *5 (N.D. Ill. July 1, 2019) (violation of agency rules and procedures may be relevant to claim for punitive damages and not foreclosed by *Thompson*); *Jones v. Walters*, No. 12-cv-5283, 2016 WL 1756908, at *8 (N.D. Ill. Apr. 29, 2016); *Delgado v. Mak*, No. 06-cv-3757, 2008 WL 4367458, at *8 (N.D. Ill. March 31, 2008); *Via v. Lagrand*, No. 03-cv-3278, 2007 WL 495287, at *6 (N.D. Ill. Feb. 12, 2007).

Defendants fail to point to any prejudice substantial enough to outweigh the probative value of this evidence. They argue that the jury would confuse violations of policy with violations of constitutional law, but jury instructions can address that. Indeed, Seventh Circuit Pattern Civil Jury Instruction 7.04 recognizes that rules and regulations evidence is admissible in a §1983 case, and it explains that juries may "consider this evidence in [their] deliberations," but that the issue is whether the defendant violated the constitution, not whether he violated rules and regulations. 7th Cir. Pattern Civ. Instr. 7.04; see also Ex. 17, *Taylor v. Chicago*, No. 14-cv-737, ECF No. 867, at 3 (N.D. Ill. Dec. 10,

---

[6] See also *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("[A]lthough violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass."); *Martinez v. Chicago*, No. 14-cv-369, 2016 WL 3538823, at *6 (N.D. Ill. June 29, 2016) (there is no categorical bar preventing parties from introducing such evidence of violations of departmental regulations and police practices); see also *Jimenez v. Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) ("Expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights").

2021) (denying defendants' motion to bar reference to any alleged deviation from CPD internal policies in wrongful conviction case, and explaining that the Court "will consider a limiting instruction to be offered at the time of any testimony on these issues"); *Lopez v. Chicago*, No. 01-cv-1823, 2005 WL 563212, at *10 (N.D. Ill. Mar. 5, 2005) (denying defendants' request to bar evidence of non-compliance with department rules and regulations because "such evidence may be relevant and that confusion in this regard may be avoided with a proper jury instruction"); *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). Accordingly, Defendants' motion should be denied.

**9.      Response to Motion 10 to Bar Code of Silence**

Defendants' ask the Court to bar all evidence about a police officer "code of silence." Dkt. 873 at 21-22. The motion sweeps too broadly in its request to block Plaintiffs from referencing any abnormalities, rules violations, deception, dishonesty, or anything else that arguably qualifies as "misconduct" by officers who worked on Plaintiff's investigation. As in other cases like this one, Plaintiff must be able to present evidence and argument that Chicago police officers are biased towards one another and attempt to cover up their fellow officers' wrongful conduct, including the individual Defendants in this case. See *Bennett v. Thomas*, No. 12-cv-6060, 2014 WL 13110820, at *10 (N.D. Ill. Jan. 16, 2014) (Lefkow, J.) (citing to *Ratliff v. City of Chicago*, No. 10-cv-739, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012)).

On its face, Defendants' Motion is too broad as to both allegations of police misconduct and as to evidence of a code of silence among officers. The Court "exercise[s] broad discretion in controlling counsels' arguments and in ensuring that argument does not stray unduly from the mark." *Charles v. Cotter*, 867 F. Supp. 648, 664 (N.D. Ill. 1994). As to allegations of police misconduct, it is impossible to say definitively at this stage that any and all references to reports of police misconduct have no place whatsoever at trial. Courts routinely deny motions on this basis, showing "unwilling[ness] to muzzle [plaintiff's] counsel at this early phase" on a "subject that far better lends

22

itself to consideration in the trial environment." *Regalado v. City of Chicago*, No. 96-cv-3634, 1998 WL 919712, at *2 (N.D. Ill. 1998). Defendants' blanket Motion should therefore be denied, with Defendants remaining free to object at trial. See *Volland-Golden v. City of Chicago*, No. 13-cv-1477, 2016 WL 4678299, at *5 (N.D. Ill. Sept. 7, 2016).

As to evidence of a code of silence, granting Defendants' Motion would bar any inferences, even those supported by evidence, that witnesses who know and work with one another, and who may even be friends, can be biased and may even lie to help their compatriots. This is a perfectly legitimate inference when advanced regarding any definable group of people—co-workers in a company or hospital, people sharing the same profession, or members of a club or organization—and it does not become illegitimate when applied to police. It is common trial practice to impeach on the basis of bias—to suggest that the testimony of a witness is suspect because of that witness' relationship to a party. Jurors are explicitly told that they can rely on common sense, and bias is always relevant. See *Townsend v. Benya*, 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003) ("A party's and a witness's common group membership is probative of bias, even without proof that the party or the witness embrace the organization's tenets.") (citing *United States v. Abel*, 469 U.S. 45, 52 (1984)). Defendants are entitled to take a contrary position, but there is no legal basis to block Plaintiff's right to examine Defendants' biases.

There is ample evidence that Defendants subscribed to the code of silence in this case. The record shows that throughout their investigation, Defendants fabricated inculpatory witness statements and concealed exculpatory witness statements and police records. They participated in a single, massive interrogation, during which they fabricated Plaintiffs' confessions. To the extent the Defendants attempted to collude with one another and cover up their actions surrounding their investigation, Plaintiffs should be allowed to present that evidence. Evidence of a code of silence between and involving the specific Defendants in this case is relevant at least to bias, and courts have

23

consistently denied the motion Defendants have filed here for this same reason. See *Wilbon v. Plovanich*, No. 12-cv-1132, 2016 WL 890671, at *7 (N.D. Ill. Mar. 9, 2016) (allowing evidence of code of silence "to test the bias or motivation of any witness"); *Cooper v. Dailey*, No. 07-cv-2144, 2012 WL 1748150, at *4 (N.D. Ill. May 16, 2012) ("Plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another"); *Christmas v. Chicago*, 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (finding that plaintiffs may introduce evidence that the officers involved adhered to a code of silence because such evidence "would be probative of officers' bias, and that bias is always relevant"); *Galvan v. Norberg*, No. 04-cv-4003, 2006 WL 1343680, at *2-3 (N.D. Ill. May 10, 2006) (denying blanket motion *in limine* to bar evidence of "code of silence" because "evidence or argument of this type can go to the issue of the bias or motivation of witnesses"); *Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. Ill. 2003) ("Defendants' motion to bar testimony that police officers in general or these officers in particular conspire to cover up one another's bad acts through a 'code of silence' is denied as overly broad. The plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another").

Moreover, evidence of a code of silence is relevant to Plaintiff's conspiracy and failure to intervene claims. See, *e.g.*, *Cooper v. Dailey*, No. 07-cv-2144, 2012 WL 1748150, at *4 (N.D. Ill. May 16, 2012) (allowing plaintiff to use specific evidence of a code of silence to show bias and bolster the conspiracy claim); *Hill v. Chicago*, No. 06-cv-6772, 2011 WL 3205304, at *5 (N.D. Ill. July 28, 2011) (finding that specific evidence of a code of silence, in addition to being relevant to showing the witness' bias toward other officers, "may also be relevant to Plaintiff's conspiracy claim"); *Norton v. Schmitz*, No. 08-cv-4365, 2011 WL 4984488, at *2 (N.D. Ill. May 27, 2011).

Finally, Defendants claim that this evidence should be excluded because of its prejudicial effect. Given the widespread public acknowledgement of the code of silence—indeed the code of silence has repeatedly been recognized by the Department of Justice, the City's mayors, current and

24

former CPD officials, and the City's own panel of experts from the Police Accountability Task Force—there is no *unfair* prejudice from this evidence. *E.g.*, *Enforcement of the Chicago Police Department's Rules Requiring Members to Report Misconduct*, City of Chicago Office of Inspector General at 8 (August 3, 2023), https://perma.cc/QDA2-9ZBT ("The investigative report issued by DOJ in January 2017 reflected many of PATF's same concerns pertaining to the presence of a 'code of silence' within CPD and the lack of investigative fortitude in misconduct investigations"). And the probative value of this evidence far outweighs any prejudicial effect.

In short, Plaintiffs should not be barred from suggesting or arguing that the police officer witnesses are lying and covering up for each other in accordance with the code of silence, or that certain police misconduct is relevant and probative to Plaintiff's claims. If Defendants have a specific objection to how any evidence or argument plays out in a particular instance, they should raise that objection in context at trial. "Evidence may be excluded *in limine* only where it is clearly inadmissible for any purpose," and Defendants cannot show that either form of evidence they seek to bar in this Motion is wholly inadmissible here. *Petrovic v. City of Chicago*, No. 06-cv-6111, 2008 WL 818309, at *1 (N.D. Ill. March 21, 2008). Defendants' motion should be denied.

10.     **Response to Motion 11 to Bar Prior Evidence or Argument Concerning Prior Claims of Misconduct, Citizen Complaints, and Lawsuits against Individual Officers and Non-Party CPD Witnesses**

In response to Defendants' Motion *in Limine* No. 11, Plaintiffs state they do not intend to introduce other bad-acts evidence against Defendants Halvorsen, Trevino, Dickinson, Rutherford, or non-party CPD officers in support of claims against the individual Defendants. However, to the extent that Defendants' motion is aimed at *Monell* evidence, Plaintiffs state that they and their experts intend to rely upon the complaint registers lodged against Defendants, as detailed in Anthony Finnell's and Miroslava Meza's expert reports, and on other acts of non-party CPD officers, and other acts are

admissible for that purpose. *Cazares v. Frugoli*, No. 13-cv-5626, 2017 WL 4150719, at *9 (N.D. Ill. Sept. 19, 2017) (evidence of one officer's prior acts and especially the police department's "investigations into those accidents, are highly relevant to Plaintiffs' *Monell* claim, independent of any propensity chain of inference").

With respect to other acts evidence relating to Defendant Guevara, Plaintiffs have separately moved to admit evidence of his prior misconduct, which has been fully briefed, and they incorporate that briefing by reference here. *See* Reyes Dkt. Nos. 824, 837, 841, 845; Solache Dkt. Nos. 643, 656, 660, 664. That briefing explains that other acts evidence is admissible for non-propensity purposes (given defenses Guevara plainly intends to raise), including to impeach, to corroborate other witnesses, to support *Monell* theories, and to assist the jury in evaluating punitive damages. *Ibid.*

## 11. Response to Motion 12 to Bar Highly Publicized Cased of Police Misconduct

Plaintiffs do not intend to inflame the jury with references to other highly publicized cases of police misconduct, and the motion to exclude that evidence generally can be granted by agreement. However, such evidence may be admitted under Rule 404(b) or in support of Plaintiff's *Monell* claims. For example, other acts evidence in another case investigated by Guevara, or evidence that the City was on notice of its evidence suppression practice because of the *Jones* and *Palmer* litigation. Plaintiffs do not understand Defendants' motion to be aimed at those categories of evidence.

## 12. Response to Motion 13 to Bar Argument Referring to "Constitutional Rights" As A Category of Damages

Plaintiffs bring these lawsuits alleging that the Defendants violated their constitutional rights. The jury will be told that expressly. If Plaintiffs establish liability, they will be seeking damages for any violations of their constitutional rights. That is exactly what §1983 permits. The jury will also be informed, via a pattern jury instruction, how to measure damages, an instruction that defines—and expressly limits—the types of injuries that can be compensated. Violations of constitutional rights are

26

not among those categories of injuries. Plaintiffs will not argue otherwise. To that extent, and subject to those clarifications, the parties are in agreement. In a recent case that went to trial involving these same firms, *Fulton/Mitchell v. Bartik, et al.*, No. 20-cv-3118, 3119 (N.D. Ill. Jan. 31, 2025), a similar motion was filed, with a similar response, based on which the Court denied the motion. Ex. 18, *Fulton/Mitchell*, at Dkts. 285, 310, 377, 400. The same result is appropriate here.

**13.     Response to Motion 14 to Bar "Golden Rule" Arguments**

Defendants' next motion asks to bar Plaintiffs from presenting "golden rule" arguments, without citing any Rule of Evidence. Dkt. 873 at 26. Such a request is overly broad and speculative, and it should therefore be denied. See, *e.g.*, *Shirrell v. Billing*, No. 17-cv-0567-MJR-DGW, 2018 WL 7252824, at *2 (S.D. Ill. May 11, 2018) (denying the motion as "intelligible, unnecessary, speculative, overbroad, and downright bizarre" and instructing that "Rule 401 will govern the admissibility of the evidence"); *Stinebower v. Scala*, 331 F.2d 366, 367–68 (7th Cir. 1964) (recognizing Fed. R. Civ. P. 7(b)(1)'s particularity requirement for motions); *Baxter v. Anderson*, 277 F. Supp. 3d 860, 863–64 (M.D. La. 2017) ("The Court is being asked to rule on abstract and generalized hypotheticals. In the absence of something more specific, the Court is unable and unwilling to grant their motion").

The Court should further deny the motion because Defendants are seeking to preclude "trial tactics" rather than specific evidence, which is not the purpose of a motion *in limine*. Motions *in limine* permit the district court to eliminate evidence "that clearly ought not be presented to the jury," because it is "inadmissible for any purpose." *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

Moreover, contrary to Defendants' assertion in their Motion, "golden rule" arguments are not always improper. *E.g.*, *Shroyer v. Kaufmann*, 426 F.2d 1032, 1034 (7th Cir. 1970); *Baxter*, 277 F. Supp. 3d at 863–64. Rather than apply a bright-line rule, in the Seventh Circuit, courts consider "the nature of the remarks, their number and repetition," and whether "in light of the record as a whole . . . there

27

was a deliberate appeal to the jury to substitute sympathy for judgment." *Shroyer*, 426 F.2d at 1034 (7th Cir. 1970). This is also the rule in many other Circuits and state courts. For example, while a plea to the sympathy of a jury is improper, appeals to the jurors' common sense are entirely proper. *Bankers Tr. Co. v. Publicker Indus., Inc.*, 641 F.2d 1361, 1366 (2d Cir. 1981) (holding that plaintiff's summation was not improper for using the word "you" ten times in six sentences where such statements were not prejudicial but were an appeal to jurors' common sense); see also *Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036, 510 N.E.2d 1208, 1041–42 (1987). Defendants' motion should be denied.

**14.    Response to Motion 15 to Bar Evidence or Argument Contradicting Issues Determined Against Plaintiffs on Summary Judgment, for A Limiting Instruction, and to Judicially Admit Facts**

Defendants seek to bar Plaintiffs from presenting any evidence or argument that they say would "contradict, contravene or otherwise cast doubt on legal and evidentiary issues determined in favor of Defendants on summary judgment," including "through exclusion of evidence and arguments." Dkt. 873 at 26-29. If Defendants' motion merely seeks to affirm that Plaintiffs cannot now pursue claims or theories that were dismissed at summary judgment, of course that is true, and Plaintiffs do not seek to "revive" dismissed claims. But that is not a matter for motions in limine; any concerns are appropriately addressed as the claims instructions are finalized. To the extent Defendants' motion seeks anything more than this affirmation of what is obvious—dismissed claims are, indeed, dismissed—the motion is incomprehensibly vague, and an extreme overreach.

First, motions *in limine* are for identifying discrete, appropriate limitations around the presentation of evidence at trial; but Defendants do not identify a single specific item of evidence or testimony that they contend should be barred. Are Defendants saying that the Court's ruling denying a fabrication claim specifically based on Adriana's confession implicating Plaintiffs means Plaintiffs should be barred from presenting evidence about Adriana's first statement implicating Norma Salazar

28

(not Plaintiffs)? Her subsequent statements implicating Plaintiffs (in evolving fashion)? Are they talking about statements or testimony from various members of the Aranda or Soto families that were questioned during the case? Other than to provide their summary of the Court's previous rulings regarding fabrication and suppression theories (but notably, not Plaintiffs' surviving Fourth Amendment deprivation of liberty claims, and state law conspiracy claims), they do not say what specific factual issues or evidence they think should be barred. As such, their motion is impossibly vague, and Plaintiffs cannot meaningfully respond, nor can the Court meaningfully assess.

Second, Defendants' motion is an extreme overreach, effectively asking the Court to instruct the jury to accept their story, and to bar Plaintiffs from presenting evidence to the contrary. This is patently unfair as a practical matter, and also a complete misreading of the Court's summary judgment decision. In addition, it ignores that the evidence Defendants claim is now barred is relevant not just to the dismissed claims but also to Plaintiff's surviving claims in numerous ways.

Consider an example. As discussed above, it is not clear if, by referencing the Court's ruling on Plaintiffs' standalone fabrication claim based on Adriana's statement implicating Plaintiffs, Defendants are seeking to bar Plaintiffs from asserting that statement was false. In other words, are Defendants taking the position that this Court reached a factual finding, or that Plaintiffs must concede at trial, that Adriana was telling the truth when she implicated Plaintiffs in the Soto murder and kidnapping? If so, that would render the trial a farce. This is effectively a request for an instruction that the jury must treat Adriana's statement as true, and accordingly that Reyes and Solache are guilty. Of course, the Court reached no such factual finding, nor would it substitute its judgment for that of the jury on an issue so critical to resolving liability and damages issues at trial.

Ultimately, Defendants' Motion would seem to micro-manage the evidence that can be presented at trial, based on the false premises that the Court's summary judgment decision consisted

29

of a series of factual findings, and that any evidence that is relevant to the dismissed claims is no longer relevant for any other purpose and should be inadmissible. That is wrong.

At summary judgment the Court was not, and could not be, a fact finder. "[O]n summary judgment, a district court makes no factual findings of its own. Instead, it is required to construe the facts in the light most favorable to the nonmoving party and identify, but not resolve, material factual disputes." *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 965 (7th Cir. 2018); Defendants' Motion asks the Court to commit reversible error by treating the summary judgment decision as a series of factual findings, and for that reason alone the Motion should be denied.

Moreover, Defendants' Motion seeks to usurp the jury's role under the Seventh Amendment and Federal Rules of Civil Procedure to decide the facts. U.S. Const. amend. VII; Fed. R. Civ. P. 38. Excluding relevant evidence necessarily calls for an interpretation of the facts of this case that is in irreconcilable tension with the requirement imposed by the Seventh Amendment and the Federal Rules of Civil Procedure that facts be decided by a jury. See *Perttu v. Richards*, 145 S. Ct. 1793, 1802 (2025) ("[W]hen a factual dispute is intertwined with the merits of a claim that falls under the Seventh Amendment, that dispute should go to a jury."). Credibility determinations are for the jury, and the Seventh Amendment affords the jury considerable deference. *Latino v. Kaizer*, 58 F.3d 310, 317 (7th Cir. 1995) ("Judge [] usurped the jury's role in deciding the most reasonable inferences from the evidence. That flies in the face of the Seventh Amendment, and goes beyond the power of the district judge under Rule 59."). This Court should reaffirm that the job of deciding the facts in § 1983 cases is properly assigned to the jury under federal law.

Finally, because Defendants do not identify any specific evidence they seek to bar, they do not confront the question of whether that evidence is relevant to surviving claims and disputed issues at trial. "A motion *in limine* should only be granted where the evidence is clearly inadmissible for *any* purpose." *Thomas v. Sheahan,* 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007) (emphasis added). It is well

30

established that evidence relevant to dismissed claims is still admissible if it is also relevant to other claims in the case, as well as damages. *Genesys Cloud Services, Inc. v. Strahan*, No. 119-cv-00695-TWP-MKK, 2023 WL 2139823, at *2-4 (S.D. Ind. Feb. 21, 2023) (admitting evidence related to dismissed claims because it "goes to the Defendants' knowledge, substantial assistance, and meeting of the minds—relevant to the claims for trial" and is "probative of willfulness and knowledge with regard to punitive damages"). Indeed, it would be reversible error to bar evidence relevant to establishing innocence. See *Parish v. City of Elkhart*, 702 F.3d 997 (7th Cir. 2012) (explaining evidence of innocence is relevant to damages and finding it error to "prohibit[] evidence establishing the unreliability of the eyewitness identification as to the perpetrators of the crime . . . ."); see also *Jones v. Cannizzaro*, 514 F. Supp. 3d 853, 863-64 (E.D. La. 2001) ("Plaintiff contends that the jury award for a factually innocent man will be much higher than the award for a factually guilty one. This Court agrees").

Here, the evidence that relates to the dismissed claims remains highly relevant to many of Plaintiffs' surviving claims, and damages, and hence it must be admitted at trial. Again, using the example above, even if Adriana's statement implicating Plaintiffs does not support a standalone fabrication claim, the evidence that statement came only after prior statements in which she did not implicate Plaintiffs, after she had spent many hours in custody, and after physical and psychological abuse that she has testified to on multiple occasions, is all still highly relevant to a number of critical issues in the case. Among them, the basic sequence or timeline of events, Plaintiffs' innocence (and in turn, damages), and the credibility and veracity of her statement(s). It is also highly relevant to Plaintiffs' own fabrication claims, and Plaintiffs' surviving Fourth Amendment deprivation of liberty claim, as discussed in Plaintiffs' response to MIL 19, *infra*.

Similarly, a number of Plaintiffs' suppression theories were dismissed, for example related to the treatment of various other witnesses including Guadalupe Mejia, and various members of the Soto, Aranda and Mejia families. These rulings were based on waiver of the claim, or because the evidence

31

was or should have been known at trial. But that does not mean that, even if it cannot support an independent *Brady* claim, it is not evidence relevant to the surviving claims. Defendants do not contend with any of this, and on that basis alone their motion should be denied.

Finally, Defendants' request that the Court affirmatively instruct the jury on the issues it resolved at summary judgment is all the more extreme, and a non-starter for all the same reasons. Defendants cite no case law supporting the prejudicial instructions they seek, or any instance in which a court went so far in usurping the role of the jury by resolving central issues in dispute. The jury will be instructed about what claims are before them and on what basis they can impose liability on the Defendants. See *U.S. v. Smartt*, 58 F.4th 358, 363 (7th Cir. 2023)("The law presumes that jurors follow the judge's instructions"). There is no support for instructing a jury about every possible claim that a plaintiffs are not pursuing, or could not pursue; that would be impossible, and unnecessary.

Instead, what is appropriate is exactly what Plaintiffs will do and the Court can enforce: Plaintiffs will not argue that Defendants should be found liable based on the fabrication, suppression claims that the Court dismissed at summary judgment. The Court is perfectly capable of enforcing this limitation, without preemptively barring whole categories of evidence. See *Palmer v. Robbins*, No. CV419-167, 2022 WL 1063607, at *5 (S.D. Ga. Apr. 8, 2022) (precluding plaintiff from referring to dismissed claims, but holding "that exclusion is limited to *reference to the claims themselves*, *not to any general category of evidence*") (emphasis added).

## 15.    Response to Motion 17 to Bar Reference to the Sidley Investigation

In 2013, the City hired Sidley & Austin to investigate Guevara's misconduct on its behalf. The investigation was led by Scott Lassar, the former U.S. Attorney for the Northern District of Illinois. After conducting an exhaustive investigation, Lassar determined, *inter alia*, that Plaintiff Reyes and Plaintiff Solache had been physically abused by Defendant Guevara and other Defendants, and that four other men—Roberto Bouto, Jose Montanez, Armando Serrano and Roberto Almodovar—had

been wrongfully convicted. Lassar wrote investigative reports for the City in each of these cases. *See* Ex. 30 (Lassar Reports in Bouto, Montanez, Serrano, and Almodovar). Those reports, which are highly relevant to Plaintiffs' claims, are the only evidence from the Lassar investigation that Plaintiffs intend to use. Defendants' motion, which seeks to bar any reference whatsoever to the Lassar investigation, sweeps far too broadly and must be denied. Instead, the Court should make rulings on this evidence at trial, in the context of the record before it.

There are several ways in which the Lassar investigation, the findings and conclusions from the investigation, and the reports documenting those findings and conclusions could be both referenced at trial and admitted into evidence. For example, Plaintiffs could use the Lassar investigation as impeachment by contradiction for certain defense witnesses including the City's Rule 30(b)(6) witnesses, the City's expert witnesses, and the prosecutor witnesses, depending on what they testify to at trial. *United States v. Kozinski*, 16 F.3d 795, 805 (7th Cir. 1994) ("Impeachment by contradiction is a valid method of impeachment and 'simply involves presenting evidence that part or all of a witness' testimony is incorrect.'") (quoting *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 604 (7th Cir. 1985)). This will be especially important and appropriate with regard to the City witnesses, since it appears that the City will dispute Plaintiffs' claims of physical abuse at trial despite the findings of its own commissioned investigator. Furthermore, the reports would not be considered hearsay if they are not offered for the truth of the matter asserted, but instead are offered to show their effect on the decisions made by certain witnesses including in relation to Plaintiffs' post-conviction and COI petitions.

Aside from their use as potential impeachment, the Lassar reports are admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2)(D), which provides that "[a] statement is not hearsay if -- … the statement is offered against a party and is … a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the

existence of the relationship." Defendants cite *Rivera v. Guevara*, 12 C 4428 (N.D. Ill. May 30, 2018) for the proposition that there is "no basis for an agency type of admission," but that case is not controlling given the court's statement that the issue was "not adequately argued." See Ex. 31 at 1. Given the circumstances of this case—where the City hired a former U.S. Attorney to conduct an investigation into Guevara's misconduct, the investigation was indisputably thorough and trustworthy, the investigator found misconduct in this very case amongst others, and the City now intends to not only hide but contradict those findings at trial—any distinction between an agent and an independent contractor should not be determinative of whether this hearsay exception applies because to do so would invite manipulation by the government. *See, e.g., O'Hare Truck Service, Inc. v. City of Northlake*, 518 U.S. 712 (1996) ("Recognizing the distinction [between an agent and an independent contractor] in these circumstances would invite manipulation by government, which could avoid constitutional liability simply by attaching different labels to particular jobs.").

Regardless, Lassar's role as the City's attorney for purposes of its investigation into Guevara does in fact make him an agent of the City for purposes of Rule 801(d)(2)(D). *See, e.g., United States v. Harris,* 914 F.2d 927, 931 (7th Cir.1990) (affirming district court's admission of a statement attributed to defendant's attorney acting in his investigative capacity under Rule 801(d)(2)(D)); *United States v. Sanders,* 979 F.2d 87, 92 (7th Cir.1992) (affirming district court's admission of statements of defendant's former attorney under Rule 801(d)(2)(D) concerning his pre-indictment investigation). Further, Courts in this district have found similar reports to be admissible under Fed. R. Evid. 801(d)(2)(D). *See LaPorta v. City of Chi.*, 277 F. Supp. 3d 969, 989 (N.D. Ill. 2017) (considering the Police Accountability Task Force (PATF) report on summary judgment and explaining that "the contents of the City-commissioned PATF report constitute admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D)"); *Godinez v. City of Chicago,* No. 16-CV-07344, 2019 WL 5597190, at *4

(N.D. Ill. Oct. 30, 2019) (considering PATF report on summary judgment based, *inter alia*, on Rule 801(d)(2)(D), citing *LaPorta*.).

The Lassar reports are also admissible as factual findings from a legally authorized investigation under Federal Rule of Evidence 803(8)(A). Rule 803(8)(A)(iii) provides an exception to the rule against hearsay for "[a] record or statement of a public office if it sets out … in a civil case … factual findings from a legally authorized investigation," so long as "neither the source of information nor other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8)(A)(iii), (B). Courts interpret this language as favoring admissibility and therefore hold that investigative reports encompassed within Rule 803(8) are presumed to be trustworthy. *Daniel v. Cook Cty.*, 833 F.3d 728, 740 (7th Cir. 2016). This presumption in favor of admissibility applies to both "factual findings" and "opinions" contained in evaluative reports. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988); *Daniel*, 833 F.3d at 740 ("These findings can take the form of an evaluative report containing both opinions and conclusions."). If the minimal technical requirements of Rule 803(8) are satisfied, the party opposing the admission of the evidence has the burden to show that "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B); *Godinez v. City of Chi.*, No. 16-cv-07344, 2019 WL 5592721, at *9 (N.D. Ill. Oct. 30, 2019). The Lassar investigation reports constitute factual findings from a legally authorized investigation and there is no dispute regarding their trustworthiness. Courts in this district have found similar reports to be admissible under Rule 803(8). *See Estate of Loury v. City of Chi.,* 2019 U.S. Dist. LEXIS 38029, at *4-6 (N.D. Ill. Mar. 11, 2019) ("the PATF Report is admissible under Rule 803(8)(A)(iii), as the report includes factual findings made by a public office resulting from a legally authorized investigation."); *LaPorta v. City of Chi.*, 277 F. Supp. 3d 969, 989 (N.D. Ill. 2017) ("hearsay contents of the PATF and DOJ reports are admissible as 'factual findings from a legally authorized investigation.' Fed. R. Evid. 803(8)(A)(iii)"); *Godinez*, 2019 WL 5592721, at *11 (same).

35

The cases that Defendants rely on are not on point. In *Watson* and *Gonzalez*, the plaintiffs did not oppose the relevant portion of the motion, so the decisions have no persuasive value. *Watson v. Fulton*, 2022 WL 21296130, at *8 (N.D. Ill. Feb. 23, 2022); *Gonzalez v. Olson*, 2015 WL 3671641, at *17 (N.D. Ill. June 12, 2015). *Torres* is not remotely analogous: the plaintiffs sought to admit complaint register histories, not investigative documents. *Torres v. City of Chicago*, 2015 WL 12843889, at *7–8 (N.D. Ill. Oct. 28, 2015). In addition, the court denied the motion in part and ruled that the plaintiffs could use the investigation for impeachment or refreshing recollection. *Id.* at *8. In *Arrington*, the Seventh Circuit reviewed the district court's discretionary evidentiary ruling under the abuse of discretion standard and emphasized that its decision was mandated by the "the highly deferential standard of review that binds us." *Arrington v. City of Chicago*, 147 F.4th 691 (7th Cir. 2025). Moreover, the plaintiff in *Arrington* sought to admit a report solely based on a witness "opening the door" during their testimony (and plaintiff's counsel repeatedly failed to object to the offending testimony), whereas here Plaintiffs have presented multiple other bases for admissibility. *Arrington v. City of Chicago*, 2023 WL 3123729, at *4–5 (N.D. Ill. Apr. 27, 2023).

Based on all of the foregoing ways in which the Lassar reports could be referenced or admitted at trial, each of which turns on the particular witness's testimony and the record, Defendants' motion should be denied and the Court should make rulings at trial.

**16.      Response to Motion 18 to Bar Testimony About Outcome of Criminal Trial**

Defendants ask the Court to bar testimony from witnesses about what the outcome of Plaintiffs' criminal trial might have been had Defendants not engaged in misconduct. Dkt. 873 at 38-40. To the extent that Defendants seek to bar testimony from witnesses about whether or not the outcome of Plaintiff's criminal trial would have been different, Plaintiff agrees that criminal defense attorneys, prosecutors, and even expert witnesses should not be able to provide testimony about the ultimate question of whether or not the outcome would have been different. *Rivera v. Guevara*, No. 12-

cv-4428, 2018 WL 11468910, at *3 (N.D. Ill. June 5, 2018) ("Experts cannot express opinions on legal questions like . . . materiality under *Brady*"). As discussed in Plaintiffs' motions, this sort of opinion testimony is off limits. See Dkt. 872 at 15-18 and 18-20.

But the bar on testimony about the outcome of trial should not go further than that. Testimony that is probative of whether suppressed evidence or fabricated evidence was important to Plaintiffs' criminal case must be allowed into evidence, if it is not opinion testimony on the ultimate question of the outcome of that case. Police officers violate due process when they fail to disclose material exculpatory or impeachment evidence. *Kyles v. Whitley*, 514 U.S. 419, 432-34 (1995); *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Brady*, 373 U.S. at 87. This constitutional violation is established by showing that (1) the evidence was suppressed, (2) it was favorable to the defense, and (3) it was material. *United States v. Walton*, 217 F.3d 443, 450 (7th Cir. 2000). The Supreme Court holds that evidence "qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." *Wearry v. Cain*, 577 U.S. 385, 392 (2016) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972) (cleaned up); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)). A litigant "need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted . . . . He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Id.* (citing *Smith v. Cain*, 132 S. Ct. 627, 629-31 (2012)); *see also Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490, at 434 (1995). The question whether suppressed evidence was material must be answered considering all of the suppressed evidence together in the aggregate, and not by assessing evidence piece by piece. *Wearry*, 577 U.S. at 394. Whether evidence is material also depends on the strength of other evidence used in the criminal proceedings—it might take only a little evidence to disturb an already-weak conviction. *United States v. Agurs*, 427 U.S. 97, 113 (1976).

Criminal defense attorneys therefore must be allowed to testify about what they would have done if provided the evidence allegedly suppressed; or what they would have done had they known

37

that evidence used in the criminal case had been fabricated by police. That testimony might include an account of why the attorney might have viewed the item of evidence as important to the criminal case, how it might have been used to cross-examine state's witnesses, including the police, what additional investigation the revelation and suppressed or fabricated evidence might have prompted, whether that evidence would have affected strategic decisions made during the criminal trial, and so on. All of these inquiries are probative of the question of materiality, and they do not opine on the ultimate issue that the jury might decide. Accordingly, the Court should deny Defendants' motion to the extent it seeks to bar witness testimony probative of whether the suppressed or fabricated evidence was material to Plaintiffs' underlying criminal case.

**17.     Response to Motion 19 to Bar Evidence That Defendants Abused Witnesses**

At trial, Defendants will continue to insist that Plaintiffs are indeed guilty of the murder and kidnapping of the Soto family, and in turn, that the statements purportedly made by Adriana Mejia implicating Plaintiffs in the murder were truthful statements reflective of Plaintiffs' actual involvement in the murders. Of course, this is all hotly disputed.

For their part, Plaintiffs insist that the only reason Adriana Mejia implicated them in the crime (after not doing so when initially interrogated by Defendants) was because Defendants subjected her to physical and psychological abuse to obtain her false statements implicating Reyes and Solache. Adriana testified both at her suppression hearing, and again at her civil deposition in this case that she was subjected to physical and psychological abuse. See Dkt. 763-10 at 854-856, 859-860, 980-983. Indeed, this was the original sin from which Plaintiffs became Defendants' targets: Defendants used coercive tactics to obtain Adriana's fabricated statement implicating Plaintiffs, and then began their coercive interrogations of Plaintiffs to complete the frame-up. Plaintiffs must be permitted to present evidence of this timeline (contrary to the version of events Defendants tell in their police reports), and they must be allowed to show that the only reason Adriana changed her story after her first

38

interrogation and switched to implicating Plaintiffs was because of the abuse that Defendants inflicted. This is critical to demonstrating Plaintiffs' innocence, at the heart of both the liability and damages issues in this case. *Parish*, 702 F.3d at 999-1001.

In addition, the fabrication of Adriana's statement implicating Plaintiffs is centrally relevant to Plaintiffs' deprivation of liberty claim, as this Court concluded at summary judgment. Ex. 32 at 126 (Adriana's fabricated statement "can be a Fourth Amendment claim because it arguably led a pretrial deprivation of liberty").[7] For those reasons alone the motion *in limine* must be denied.

Relatedly, Defendants intend to defend themselves against liability and damages by suggesting that Plaintiffs are guilty and confessed to crimes they committed without coercion. Their abuse of Adriana Mejia is of course evidence that will impeach them by contradiction. See response to MIL 17. Of course, if Defendants agree that they will not seek to introduce any testimony or evidence that Adriana Mejia implicates them in this crime, Plaintiffs would agree not to elicit testimony that her implicating statements were the product of physical and psychological abuse. But so long as Defendants intend to rely on that evidence, Plaintiffs must be permitted to present the critical evidence of abuse undermining it.

Likewise, Guadalupe Mejia gave a statement in police custody that she overheard Reyes make incriminating statements in a conversation with Adriana. At trial Defendants will use this statement to bolster their claim that Reyes is guilty of the crime, and his confession was not coerced or fabricated. But Plaintiffs claim that Guadalupe's statement, too, was based on mistreatment, albeit less extreme than Adriana faced. Specifically, there is evidence that Guadalupe's statement was only obtained after detaining her for many hours and subjecting her to insults, mistreatment and repeatedly accusing her

---

[7] The only citation in Defendants' motion *in limine* related to this issue is a citation to *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014) for the proposition that coercive interrogation tactics against third parties cannot support a fabrication claim where they are not introduced at trial, Dkt. 873 at 40. But this ignores the Court's summary judgment ruling that the evidence is relevant to Plaintiffs' Fourth Amendment claims.

39

of involvement in the crime. Dkt. 763 at ¶¶76-78, 82. Again, Plaintiffs must be permitted to present the evidence that supports their side of the story. If Defendants intend to rely on Guadalupe's purported statement implicating Plaintiffs, they must be permitted to present critical evidence undermining it.

Next, in addition to being directly relevant to Plaintiffs' claims and damages, Defendants' abuse of Adriana and Guadalupe would be admissible anyway, because it corroborates strongly other evidence that Plaintiffs intend to present. Put simply, Plaintiffs claim they were physically and psychologically abused by Defendants. Corroborating evidence that Defendants did the same thing to Adriana and Guadalupe that they did to Plaintiffs is of course relevant to whether the jury should believe Plaintiffs' story or Defendants' story. Fed. R. Evid. 401.

The same is true of Rosauro Mejia, who will testify that Defendants physically abused him at Area 5 in rooms adjacent to Plaintiffs. Dkt. 763 at ¶¶74-75. The treatment of these three individuals— as part of the same investigation, at the same time, and in the same rooms—is highly probative of whether the same tactics and treatment (collectively, prolonged interrogation spanning many hours, insults, repeated accusations of guilt, and physical abuse) were used on Plaintiffs. Fed. R. Evid. 401. Rosauro's testimony is especially important, because Defendants will argue that Plaintiffs have extreme self-interest in asserting physical abuse; but Rosauro Mejia was never charged or convicted, and so his continued insistence that he was physically abused is powerful evidence corroborating Plaintiffs' claims of identical forms of physical abuse.

Defendants claim that the evidence of mistreatment of Adriana and other Soto homicide investigation witnesses is improper propensity evidence, but this misunderstands the scope of Federal Rule of Evidence 404(b). Rule 404(b) applies only to "other-acts evidence," but here Defendants' tactics used against these other witnesses is not other-acts evidence at all—it is "central to the disputed circumstances underlying his claim." *Davies*, 836 F.3d at 889 (words uttered during overall incident at

40

issue in officers' alleged use of excessive force were "central to the disputed circumstances underlying his claim of excessive force; they are not 'other acts' used to establish a propensity inference in violation of Rule 404(b)"); *Cui*, 163 F.4th at 1088 ("Of course, "Rule 404(b) only curtails the introduction of 'evidence of *other* acts.'").[8] Consider a case where police officers beat up five people on the street in a single incident. No court would accept an argument that the beating of Plaintiff 2 or Witness 3, 4, or 5 are other bad acts in a lawsuit brought by Plaintiff 1. They are all part of the same incident. *Davies*, 836 F.3d at 889.[9]

---

[8] See also *United States v. Han*, 105 F.4th 986, 994 (7th Cir. 2024) (evidence that defendant threatened a witness was properly admitted as direct evidence of his guilt, not as "other act" evidence under Rule 404(b)); *United States v. Jarigese*, 999 F.3d 464, 470 (7th Cir. 2021) (mayor's solicitation of bribes from other contractors was "directly relevant to proving the charged scheme" and did not implicate "evidence of other bad acts"); *United States v. Cardena*, 842 F.3d 959, 983 (7th Cir. 2016) (evidence of defendant's large cash spendings relevant to show "the chronological unfolding of events that led to an indictment").

[9] Even if this Court were to consider the evidence of mistreatment of other Soto suspects and witnesses under Fed. R. Evid. 404(b), the evidence is admissible on multiple non-propensity grounds:

- **Motive/opportunity**: Contrary to Defendants' arguments, evidence that Defendants subjected multiple other individuals to physical abuse in the same close quarters of the Area 5 Detective Division will show that Defendants had the opportunity, and motive, to subject Plaintiffs to physical abuse without being caught or reprimanded. *See Wilson*, 6 F.3d at 1238 (Burge's past abuse of suspects admissible to show opportunity to abuse suspect in the present case); *United States v. Burrows*, 48 F.3d 1011, 1018 (7th Cir. 1995) (evidence of prior bad acts involving handguns was admissible to show that defendant had the opportunity to possess a handgun); *United States v. Chaverra-Cardona*, 879 F.2d 1551, 1553 (7th Cir. 1989) (evidence of other acts by the defendant were admissible to show that she had the opportunity to commit the drug crimes at issue).

- **Absence of Mistake**: Contrary to Defendants' arguments, evidence that they did not innocently follow leads voluntarily provided by Adriana, Gaudalupe and others implicating Plaintiffs, but instead affirmatively fabricated it through coercion, will show the absence of mistake. *See, e.g.*, *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996) (evidence of prior drug crime was properly admitted to show absence of mistake); *United States v. Kreiser*, 15 F.3d 635, 640 (7th Cir. 1994) (permitted evidence showing defendant "was not some hapless fool mistakenly caught up in an overzealous law enforcement action"); *United States v. Tylkowski*, 9 F.3d 1255, 1262 (7th Cir. 1993).

- **Intent**: Similarly, evidence of the abuse of Adriana, Rosauro and others implicating Plaintiffs will show that Defendants did not follow the evidence where it took them, but instead affirmatively fabricated evidence through coercion, with the requisite intent required to establish liability under §1983. *See Wilson*, 6 F.3d at 1238 (reversing and ordering new trial because other acts of Jon Burge should have been admitted to demonstrate that Burge acted intentionally when he tortured Wilson and violated his rights); *Young v. Rabideau*, 821 F.2d 373, 379-80 (7th Cir. 1987); *United States v. Wormick*, 709 F.2d 454, 459-60 (7th Cir. 1983) (deciding that evidence that police officer had fabricated a false police report in the past was admissible under Rule 404(b) to show intent to create false reports in the present case); see also *United States v. Anzaldi*, 800 F.3d 872, 882 (7th Cir. 2015) (district judge did not abuse discretion in admitting evidence of other bad acts where they showed intent and "also helped negate [the defendant's] asserted defense that she had acted in good faith").

- **Preparation and Plan**: Contrary to the various claims of the individual Defendants that they were not involved in all of the interrogations resulting in the fabricated statements of Plaintiffs, evidence of the

41

Finally, even if this Court were to consider the evidence of mistreatment of other Soto suspects and witnesses under Fed. R. Evid. 404(b), the evidence is admissible on multiple non-propensity grounds.

**18.      Response to Motion 20 to Bar Evidence Relating to Defendants' Use of Lawful Interrogation Techniques**

Defendants' Motion to Bar Any Evidence or Argument Relating to Defendants' Use of Lawful Interrogation Techniques should be denied because it rests on the absurd notion that the only evidence that can be presented to the jury regarding Plaintiffs' interrogations is some dissected version that only includes the alleged unconstitutional conduct without any context. Defs' MIL No. 20, Dkt. 873 at 41-44. Defendants fail to cite any case where a court has imposed this sort of restriction in any type of lawsuit much less a coerced confession case. Defendants' motion conflates "evidence or argument" regarding Defendants' use of interrogation techniques that have not been deemed unlawful in an attempt to undermine Plaintiffs' ability to present the complete story regarding unconstitutionally coercive interrogations. Defendants' motion is also a back-door *Daubert* challenge to the opinions of Plaintiffs' coerced confession expert Dr. Leo and should be denied on this basis as well.

In cases involving allegations of coerced and fabricated confessions, evidence of the entire interrogation, including all of the interrogation techniques that were utilized, is crucial for the jury to

---

mistreatment of Adriana, Rosauro and other witnesses show preparation and planning on the part of these same officers engaging in the same type of misconduct regarding Plaintiffs, including their involvement in a conspiracy to violate their constitutional rights. *See Wilson*, 6 F.3d at 1238 (police officers' previous interrogation methods "admissible for other purposes, including . . . preparation, and plan"); *see also Hill v. City of Chicago*, 2011 WL 3840336 (N.D. Ill. Aug. 30, 2011) (granting in part and denying in part motion to exclude prior acts evidence on theory that they were sufficiently similar that they showed preparation and planning on the part of the defendant officers).

• **Knowledge**: For the same reasons, the evidence of the abuse of other witnesses will show that the individual Defendants had knowledge of Plaintiffs' misconduct as well. *See, e.g., United States v. Urena*, 844 F.3d 681, 683 (7th Cir. 2016) (other acts relevant after *Gomez* to show knowledge of misconduct when knowledge was denied); *United States v. White*, 68 Fed. App'x 707, 711 (7th Cir. 2003) (unpublished) (evidence of an officer's previous discipline for using excessive force relevant to charge that the officer used force knowingly)**;** *United States v. Harris*, 536 F.3d 798, 806 (7th Cir. 2008) (prior drug deals admissible to prove defendant knew about drugs).

42

understand the environment in which statements were made. Barring all "legal" techniques of the interrogation would create an incomprehensible, fractured narrative for the jury. The entire context is essential to determine whether a statement was truly voluntary or coerced. As explained in Leo's expert report, police "interrogation is a cumulative and time-sequenced process," in which interrogators utilize multiple differing techniques repeatedly and/or in succession when interrogating. Leo Report, p. 17-19. As such, any evidence of interrogative tactics utilized in the interrogation process is highly relevant to the context of the investigation and the voluntariness of statements. Arguments regarding interrogation methods directly relate to the reliability of any confessions or statements obtained.

Defendants set up a straw man and knock it down. In their Motion, Defendants isolate a variety of interrogation tactics, assert that each tactic alone cannot violate the Constitution, and then claim that Plaintiffs must be barred from proving his claims with evidence of these tactics.

Defendants' argument ignores the fact that whether a plaintiff's will was overborne must be judged by the totality of the circumstances. *See Kerr v. City of Chicago*, 424 F.2d 1134, 1138 (7th Cir. 1970) ("[t]o consider whether the confession was voluntary, it is necessary for the jury to be allowed to consider all relevant facts regarding the circumstances under which a confession from the plaintiff was obtained."); *Wilson v. Lawrence County*, 260 F.3d 946, 953 (8th Cir. 2001) ("[A] totality of the circumstances analysis does not permit state officials to cherry-pick cases that address individual potentially coercive tactics, isolated one from the other, in order to insulate themselves when they have combined all of those tactics in an effort to overbear an accused's will."). The Seventh Circuit explained this plainly in *Dassey v. Dittman*, 877 F.3d 297 (7th Cir.2017) noting that the Supreme Court "does not draw bright lines on this subject" and specifically explaining that "a tactic that might be deemed borderline tolerable under some circumstances could shift over into intolerably coercive territory when considering the subject's age, amount of sleep, deprivation of contact with family, or other factors. Although it is true that some tactics or factors cannot standing alone render an

43

interrogation fatally coercive, the whole point of the totality-of-the-circumstances inquiry is to consider the totality of the circumstances." *Id.* at 304.

Further, if the techniques employed were intimidating or coercive—even if argued to be "lawful" by Defendants—the jury must be allowed to consider that to determine the weight of the evidence. Whether a technique was "lawful" is a disputed question of fact, not a settled premise. Barring evidence about these techniques prevents the factfinder from determining if Defendants crossed legal or constitutional boundaries. Defendants' concerns here could more readily be addressed by limiting instructions to the jury, which will clearly define what is lawful and what is not. Further, even if some techniques are broadly considered legal, evidence showing that the Defendants deviated from commonly accepted practices is crucial to proving misconduct. Whether Defendants utilized a "false evidence ploy" or any other "legal" technique during the interrogations of Plaintiffs is part of the circumstances that the jury must assess to determine if Defendants crossed the line into Constitutionally impermissible territory.

There is nothing inherently unconstitutional, for instance, about lying to a suspect and holding him in a small windowless interrogation room. But the environment in which Plaintiffs were held and the information that was presented to Plaintiffs in that context is undeniably relevant to the totality of the circumstances. *See Kerr*, 424 F.2d at 1138. Under Defendants' view, however, Plaintiffs would only be entitled to testify as to misconduct that in and of itself violates the Constitution. That is not the law. If the interrogations of Plaintiffs had been video recorded, there is no question that the video recording of the entire interrogation would be admissible, it would not be presented to the jury in a dissected form that only includes the allegedly unconstitutional actions. Just as in a police deadly force case context, the evidence at trial would not be limited to the moment that the officer fired his gun. The entire incident would be presented to the jury, and the jury instructions would guide them as to what does and does not constitute unconstitutional conduct.

In addition, some of the evidence Defendants seek to bar is independently relevant to impeach Defendants. For example, Defendants deny that they fed information to Plaintiffs before Plaintiffs confessed. Defendants, nevertheless, seek to bar the fact that they provided Plaintiffs' purported statements before they confessed. Dkt. 873 at 13-14. Obviously, Plaintiffs are entitled to present evidence demonstrating that Defendants are lying about the circumstances in which their confessions were obtained. This fact also helps explain why Plaintiffs' confessions dovetail in certain respects, and Plaintiffs must be permitted to present this relevant evidence.

Finally, Defendants posit that "[a]ctual involuntariness is wholly and completely irrelevant if not the product of some illegal conduct by the police." Dkt. 873 at 42. But Defendants ignore that they are contesting Plaintiffs' innocence, which is highly relevant for damages purposes. *Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 1003 (7th Cir. 2012) ("Because the district court's rulings improperly limited the introduction of evidence relating to Parish's innocence, and that evidence was critical to the damages issue, the award of damages cannot stand."). The fact that Plaintiffs falsely and involuntarily confessed is independently relevant at trial to establish their innocence. Thus, Plaintiffs could potentially lose their coerced confession claims, but nevertheless, win on fabrication, in which case evidence of their innocence will be entirely relevant and admissible.

Accordingly, the Court should deny the motion because excluding the full context of the interrogations would confuse the jury, unfairly sanitize the interrogation process, and prevent the jury from being able to properly evaluate the reliability and voluntariness of the confessions.

**19.      Response to Motion 21 to Bar Plaintiffs and Witnesses from Testifying About Medical Diagnoses**

Defendants seek to bar Plaintiffs' and lay witnesses' use of medical terms or diagnoses to describe Plaintiffs' injuries. Dkt. 873 at 44-45. First, Plaintiffs do not intend for Plaintiffs or lay witnesses to testify about medical diagnoses or use scientific terms to describe the injuries occasioned

by Defendants' conduct, although they may use terms such as "hearing loss," "gastritis," and other such vernacular descriptions. Second, as Defendants rightly concede, witnesses may indeed testify to their own perceptions, symptoms, when they began, how long they lasted, etc. Indeed, courts routinely allow such testimony pursuant to Federal Rule of Evidence 701. See, *e.g.*, *Christmas v. Chicago*, 691 F. Supp. 2d 811, 821 (N.D. Ill. February 11, 2010) (Fed. R. Evid. 701 does not support limiting plaintiffs' description of their physical or psychological injuries merely because they are not medical experts; court allowed testimony about plaintiffs' own perceptions of the physical and emotional effects of defendants' conduct). Again, this Court can grant this motion to the extent it asks to bar lay witnesses from testifying about medical diagnoses and using scientific terms, but otherwise witnesses should be allowed to describe their experiences in lay terms.

20.     **Response to Motion 22 to Bar References to Violations of the Vienna Convention**

Defendants seek to bar all evidence about violations of Article 36 of the Vienna Convention. Dkt. 873 at 44-45. Plaintiffs do not intend to argue that Defendants can be found liable for violating the Vienna Convention in this case. However, Plaintiffs will introduce evidence that Defendants held Plaintiffs incommunicado, without access to judicial authorities, attorneys, family, or anyone else with whom they may have communicated, during their interrogations. Plaintiffs do not understand Defendants to be seeking to bar such evidence.

21.     **Response to Motion 23 to Bar Monell Opinions of Tiderington and Finnell**

Defendants previously moved at summary judgment to bar the *Monell* opinions of Plaintiffs' experts Thomas Tiderington and Anthony Finnell, which this Court rejected. Dkts. 801, 809. The Court found that their opinions had sufficient foundation, applied a reliable methodology, and were helpful to the jury. *Id.* Defendants now rehash many of the same arguments to again bar their *Monell* opinions, this time couched as Rule 403 challenges. The Court should reject Defendants' second bite at the same apple.

46

**Tiderington:** After spilling much ink at the summary judgment stage seeking to bar Tiderington's *Monell* opinions in their entirety, unsuccessfully, Defendants now seek the same complete bar on Tiderington's *Monell* opinions based on one and a half pages of additional briefing. Their arguments are both cursory, and a complete rehash of their prior arguments previously rejected by the Court, this time reframed as arguments that they will "only mislead, and not assist, the jury." Dkt. 873 at 48-49.

The arguments are the same. Defendants say that Tiderington's opinions are based upon "his flawed historical analysis of Jones v. City of Chicago," "his purported analysis of the dataset provided to him by Plaintiffs' counsel" that Defendants claim was flawed or deficient because it lacked a "failure to document" column, and his "fundamental lack of understanding of the criminal process in Cook County." All of these are rehashes of arguments Defendants made in their Daubert motion. Dkt. 759 at 5-7 (argument re *Jones/Palmer* arguments), 8-9 (argument re lack of "failure to document" column), 14-17 (argument re misunderstood use of criminal defense files to determine what was missing or undisclosed). The Court rejected these arguments and denied Defendants' *Daubert* motion. Dkt. 873-3 at 11-14, 16-19, 23-29. The Defendants all but concede that they are merely raising the same methodological challenges to Tiderington's opinions, saying "*Again, these methodologically unsound conclusions* will only mislead, and not assist the jury." Dkt. 873 at 38 (emphasis added). Rather than waste this Court's time repeating Plaintiffs' prior *Daubert* response, Plaintiffs instead reference and incorporate their response herein. This Court should reject Defendants' renewed motion for the same reasons, and because it is an improper attempt to obtain reconsideration of a prior ruling.[10]

---

[10] The only thing arguably new in Defendants' motion is a throwaway sentence that says his opinion "does not rest on a single publication, research paper or policy standard from the relevant time frame," Dkt. 873 at 47, but this ignores Tiderington's repeated references to his experience with model policies and national standards, and their application to this case, including (1) his decades of experience as an instructor on police practices and criminal investigations; (2) his development and approval of law enforcement policies and procedures in multiple police departments, including as a Deputy Chief and Chief of Police; (3) his reliance on

Defendants' effort to reframe it as a Rule 403 challenge is not that at all. As discussed above, they let slip that their argument is really just that Tiderington's opinions are "methodologically unsound." *Id.* Even to the extent it is reframed as an argument that it will not assist the trier of fact, that too is a complete rehash. Defendants dedicated five pages of their *Daubert* motion to making exactly this argument. Dkt. 759 at 20-24 (section entitled "Tiderington's Opinions Should be Excluded Because They Are Not Helpful to the Jury"). Indeed, they make the exact same arguments in that section, specifically referencing the withheld Polaroid photos featured in this motion *in limine. Id.* The Court rejected this argument, noting Defendants' argument that Tiderington "didn't identify any particular documents that were created and then withheld from the plaintiffs," rejecting it as really a "sufficiency of the evidence" argument, and concluding Tiderington's opinion "is helpful to the jury." Dkt. 873-3 at 31-32. It should do so again now.[11]

Moreover, Defendants' focus on Tiderington's opinions about the Polaroid photos of potential alternate suspects as a basis to find his opinions unhelpful to the jury is particularly odd. The Court expressly permitted Plaintiffs to pursue a *Brady* theory based on the failure to disclose alternate suspects, which the Court concluded included a theory (or sub-theory) concerning the withheld Polaroid photos. Dkt. 32 at 84-87, 98, 137. For all of these reasons, Defendants' motion in limine regarding Tiderington's *Monell* opinion should be denied.

**Finnell:** Again, after previously writing a 26-page brief seeking to bar Mr. Finnell's opinions in their entirety, Defendants now file a one-page re-hash seeking the same relief on the grounds that

---

his experience as an instructor and approver of policies and procedures and on model policies promulgated by the International Association of Chiefs of Police (IACP), Commission on Accreditation for Law Enforcement (CALEA), and Police Executive Resource Forum (PERF); (4) his reliance on foundational Supreme Court decisions "providing the guiding principles on which law enforcement policy and practices are based"; and (5) his references to national standards, foundational Supreme Court decisions and generally accepted investigatory practices throughout his report. Dkt. 33 (Expert Report of Thomas Tiderington) at 2-4, *passim.*

[11] And to the extent necessary, Plaintiffs reference and incorporate their prior responsive arguments herein.

his "methodologically unsound conclusions will only mislead, and not assist, the jury in their role as the ultimate finder of fact." They should be rejected again.

As with Mr. Tiderington, the arguments are the same foundational and methodological challenges previously presented and rejected. *E.g., compare* Dkt. 873 at 49 (current argument re no citation to national standards), *with* Dkt. 760 at 25 (prior *Daubert* motion arguing same). Plaintiffs provided a thorough response to these arguments, which they will not repeat again here. *E.g.*, Dkt. 768 at 24-25 (response identifying Finnell's reliance on national standards, national trainings, relevant commissions and task forces, etc.). The Court rejected these arguments previously, Dkt. 809 at 33-48, including specifically the argument that Finnell's opinions would not assist the trier of fact, *id.* at 47-48, and should do so again now.

Although the Court indicated that it would entertain additional arguments under Rule 403, Defendants chose not to present any. Defendants instead chose to repeat the same methodological challenges they tried earlier. *E.g.*, Dkt. 873 at 49 (repeating methodological challenges that opinions rely on "inherently biased materials," and "flawed and incomplete data"). Indeed, Defendants do not highlight a single opinion in Finnell's report, or engage in any meaningful Rule 403 analysis comparing its probative value and prejudicial effect. The closest they come is a single sentence in which Defendants assert that "[t]he purported historical context that spans 18 pages of his report will inflame the jury against Defendant Officers." *Id.* There is no discussion of what, in those 18 pages, would be prejudicial or inflame the jury, or why that would be the case. Thus, Plaintiffs cannot respond to explain, and the Court cannot weigh, the probative value, what the possible prejudice might be, and what limitations or boundaries could be fashioned to appropriately balance the probative and

prejudicial impact. Accordingly, such a conclusory assertion should be rejected. Defendants had an

opportunity to present actual, new Rule 403 arguments. They chose not to do so.[12]

Dated: April 3, 2026                          RESPECTFULLY SUBMITTED,

**ARTURO DeLEON-REYES**                       **GABRIEL SOLACHE**

By: /s/ Steve Art                             By: /s/ Ben H. Elson
One of DeLeon Reyes's Attorneys               One of Solache's Attorneys

Jon Loevy                                     Jan Susler
Anand Swaminathan                             Ben H. Elson
Steve Art                                     Nora Snyder
Sean Starr                                    **People's Law Office**
Alyssa Martinez                               1180 N. Milwaukee Ave.
**LOEVY & LOEVY**                             Chicago, IL 60642
311 N. Aberdeen St.                           (773)235-0070
Chicago, IL 60607                             ben@peopleslawoffice.com
(312) 243-5900
steve@loevy.com

---

[12] Defendants also assert in their motion that the Court barred Finnell's opinions about a culture of impunity as lacking a valid methodology. Dkt. 873 at 49. Not quite. The Court indicated that it was going to "keep [its] powder dry on this issue" and "want[ed] to hear more from the parties" on the issue. Dkt. 873-3 at 51. To be sure, the Court indicated that no such testimony would come in without the Court's clearance, *id.*, and of course Plaintiffs intend to abide by that ruling. But as trial approaches and the Court has the opportunity to consider the evidence presented in context, Plaintiffs intend to provide the Court with briefing explaining the factual underpinnings and framework from which Finnell seeks to testify on this issue, including the already existing findings of a code of silence in prior *Monell* verdicts against the City of Chicago and in public statements of former Chicago Mayors.

50