**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

| | | |
|---|---|---|
| GABRIEL SOLACHE, | ) | |
| | ) | Case No. 18 C 2312 |
| *Plaintiff,* | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| CITY OF CHICAGO, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* NOS. 4, 5, 16,
AND 16 REGARDING ASSERTIONS OF THE FIFTH AMENDMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ii

Introduction ............................................................................................................................1

A.  Defendants' Motions Are All Contrary to Governing Law ..........................................................1

B.  Plaintiffs' Response to Defendants' Motion *In Limine* No. 16 (Dkt. 873 at 29-34) ...................4

C.  Plaintiffs' Response to Defendants' Motion *In Limine* No. 16 (Dkt. 873 at 34-37) .................11

D.  Plaintiffs' Response to Defendants' Motion *In Limine* No. 4 (Dkt. 873 at 13-16)....................13

E.  Plaintiffs' Response to Defendants' Motion *In Limine* No. 5 (Dkt. 873 at 16-17)....................13

## TABLE OF AUTHORITIES

**Cases**

*Baxter v. Palmigiano*, 425 U.S. 308 (1976) ............................................................................ 2, 3

*Chicago v. Reliable Truck Parts Co.*, 822 F.Supp. 1288 (N.D. Ill. 1993) .................................2

*Daniels v. Pipefitter Ass'n Local Union No. 597*, 983 F.2d 800 (7th Cir. 1993) .....................4

*Empress Casino Joliet v. Balmoral Racing Club*, 831 F.3d 815 (7th Cir. 2016) ......................2

*Evans v. Chicago,* 434 F.3d 916 (7th Cir. 2006) .......................................................................9

*Evans v. City of Chicago*, 513 F.3d 735 (7th Cir. 2008) .............................................6, 9, 10, 14

*Harris v. Chicago*, 266 F.3d 750 (7th Cir. 2001) .......................................................................2

*Hillmann v. Chicago*, 834 F.3d 787 (7th Cir. 2016) ............................................................. 2, 3

*In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651 (7th Cir. 2002) ................2

*Jimenez v. Chicago,* 877 F. Supp. 2d 649 (N.D. Ill. 2012) .................................................... 7, 8

*LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995) .............................................2

*Logan v. City of Chicago*, 891 F. Supp. 2d 897 (N.D. Ill. 2012) .............................................12

*National Acceptance v. Bathalter*, 705 F.2d 924 (7th Cir. 1983) ............................................11

*Old Chief v. U.S.*, 519 U.S. 172 (1997) ......................................................................................7

*Ramirez v. Chicago*, No. 05-cv-317, 2009 WL 3852378 (N.D. Ill. November 17, 2009) ..........8

*Rivera v. Guevara*, No. 12-cv-4428, 2018 WL 11468922 (N.D. Ill. May 29, 2018) ........ 3, 8, 15

*Robinson v. Harvey*, No. 99-cv-3696, 2004 WL 2033714 (N.D. Ill. Aug. 13, 2004) .................8

*S.E.C. v. Graystone Nash, Inc.,* 25 F.3d 187 (3rd Cir. 1994) ....................................................6

*Soltys v. Costello*, 520 F.3d 737 (7th Cir. 2008) .....................................................................13

*Thompson v. Chicago*, 2009 WL 674353 (N.D. Ill. Mar. 12, 2009) ........................................12

*U.S. v. 4003-4005 5th Ave.*, 55 F.3d 78 (2d Cir. 1995) .............................................................2

*U.S. v. Crowder*, 141 F.3d 1202 (D.C. Cir. 1998) ....................................................................7

*White v. Chicago*, No. 17-cv-2877, 2024 WL 4818436 (N.D. Ill. Nov. 18, 2024) ....................4

*Wyatt v. Cole*, 504 U.S. 158 (1992) ...........................................................................................3

**Statutes**

42 U.S.C. § 1983 ...................................................................................................................... v, 3

**Rules**

Federal Rule of Civil Procedure 32 ..........................................................................................14

Federal Rule of Evidence 804 ..................................................................................................14

*Harris*, 266 F.3d 750 (7th Cir. 2001) .......................................................................................14

**Constitutional Provisions**

U.S. Const. amend. V .........................................................................................................passim

**Other Authorities**

H.R. Rep. 96-548 (1979) .............................................................................................................3

**Introduction**

Defendants have filed four motions seeking to conceal from the jury that Defendant Guevara will plead his Fifth Amendment right to remain silent at trial in response to questions about his misconduct in the investigation at issue in this case or to limit the impact of Defendants' invocation of the Fifth Amendment. Dkt. 873 at 13-16 (No. 4 to bar Guevara's assertion of the Fifth to other officers); *id.* at 16-17 (No. 5 to bar Halvorsen's assertion of the Fifth); *id.* at 29-34 (No. 16 to bar Guevara's assertion of the Fifth or to limit the number of questions he is asked); *id.* at 34-37 (No. 16 [sic] to require all facts to be established by independent evidence before Guevara takes the Fifth in response to questions).

Plaintiffs explained the rules governing assertions of the Fifth Amendment in civil cases in their motions in limine, Dkt. 872 at 1-9, and proposed that these rules require a simple approach to Guevara's assertion of the Fifth: The Court should treat Guevara like any other witness when he is called to testify, require him to answer questions, apply the normal Federal Rules of Evidence and Federal Rules of Civil Procedure to govern the scope of questioning, and instruct the jury, consistent with governing law, that it may, but is not required to, draw an adverse inference against Guevara if he asserts his Fifth Amendment rights. Defendants' arguments otherwise are contrary to Supreme Court and Seventh Circuit precedents, and adopting their position would cause reversible error in the upcoming trial.

## A. Defendants' Motions Are All Contrary to Governing Law

In civil cases, parties and witnesses may be called to testify and questioned about their knowledge and the evidence, subject to the Federal Rules of Evidence and the Federal Rules of Civil Procedure, circumscribed as appropriate by privilege assertions on a question-by-question basis. There is zero support in the law for Defendants' position that a different set of rules applies when a party elects to invoke their Fifth Amendment privilege.

The Court should not lose sight of the context here. Plaintiffs sued Guevara, accusing him of egregious misconduct. Defendants in that position face a choice: They can either settle the dispute or deny wrongdoing. But Guevara is choosing neither. When asked during discovery whether he framed Plaintiffs, Guevara declined to tell the truth and he also declined to deny doing so. Instead, he exercised his constitutional right to remain silent. But litigants cannot remain silent merely because they prefer not to participate. If that were the case, everyone would do it. Guevara could only assert the Fifth because he had a reasonable belief that truthful answers about what he did to Plaintiffs would subject him to criminal prosecution. *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 663-664 (7th Cir. 2002).

Guevara's decision to prioritize his own personal penal interests had huge consequences. Most seriously, it impeded Plaintiffs' ability to take discovery regarding what happened behind closed doors. Where Plaintiffs bear the burden of proof, Guevara's silence caused Plaintiff prejudice. Thus, while Guevara may have a constitutional right to avoid incriminating himself, his election not to do so in this civil case has corresponding costs: Supreme Court and Seventh Circuit precedent dictate that jurors must be expressly instructed that they may draw adverse inferences against the party asserting the Fifth Amendment. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Hillmann v. Chicago*, 834 F.3d 787, 793 (7th Cir. 2016); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995).[1]

In addition, as the Seventh Circuit explained in *Hillmann*, "in a civil case, the jury is permitted to hear evidence of a witness's invocation of the privilege and may draw an adverse inference from it." 834 F.3d at 793 (citing *Baxter*, 425 U.S. at 318; *Empress Casino Joliet v. Balmoral Racing Club*, 831 F.3d 815, 835 (7th Cir. 2016); *Harris v. Chicago*, 266 F.3d 750, 755 (7th Cir. 2001)). The court of appeals in

---

[1] As discussed in Plaintiffs' affirmative motion, this is the rule in civil cases because an adverse inference is the only inference available given the assertion of the Fifth, because a party who deprives their opponent of an essential source of information obstructs discovery and hinders the search for truth, and because a party cannot use the privilege as both shield and sword. *Seguban*, 54 F.3d at 390 n.4; *U.S. v. 4003-4005 5th Ave.*, 55 F.3d 78 (2d Cir. 1995); *Chicago v. Reliable Truck Parts Co.*, 822 F.Supp. 1288, 1293 (N.D. Ill. 1993).

*Hillmann* decided that a new trial was warranted when a district court improperly excused witnesses from testifying because they planned to assert their Fifth Amendment privilege in response to all questions, as Guevara plans to here. *Id.* To repeat the point: In ruling that the witnesses should have testified, the Seventh Circuit made clear not only that the jury is permitted to draw an adverse inference, but also that "*the jury is permitted to hear evidence of a witness's invocation of the privilege*[.]" *Id.* (emphasis added).[2]

This is because a defendant's assertion of the Fifth Amendment is "'extraordinarily relevant testimony.'" *Rivera v. Guevara*, No. 12-cv-4428, 2018 WL 11468922, at *3 (N.D. Ill. May 29, 2018) (Gottschall, J.) (quoting *LaPorta v. City of Chicago*, 14-cv-9665, Doc. No. 390-1, at 3 (N.D. Ill.)). There is no justification for permitting a party asserting the Fifth to avoid testifying or to limit their testimony during a civil trial. In fact, all legal and policy considerations weigh against that approach. It would make little sense to have a rule that a party could refuse to participate in civil discovery on the ground that it would incriminate them, and then to have the consequence of that decision be that they get to avoid the trial in the case, which would obfuscate their role in the case and hide their refusal to participate in the discovery of evidence and the search for the truth. If that were the rule, there would be nothing to ever stop a party who had committed misconduct from asserting the Fifth and sitting out of the case.[3]

---

[2] This rule in civil cases is of course different than in criminal cases, where *Griffin v. California*, 380 U.S. 609 (1965), holds that it is constitutional error to instruct a jury that it may draw an inference from a criminal defendant's silence. As *Baxter* explains, in criminal proceedings—"where the stakes are higher and the State's sole interest is to convict"—the parties and the court are prohibited from "suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt." In civil cases, however, juries are permitted to draw the inference that a truthful answer would have incriminated the witness. 425 U.S. at 318-19.

[3] Permitting a party to take this approach in a federal civil rights case would be even worse. Section 1983 was enacted to provide a remedy for persons deprived of their federal constitutional rights by an official's abuse of his power and position. See H.R. Rep. 96-548, at 1 (1979). One of its principal purposes is to permit lawsuits challenging the constitutionality of state-court criminal proceedings that are corrupted by state actors. *Id.*; 42 U.S.C. § 1983. Another chief purpose is to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). It would undermine the purpose of § 1983 and would pervert federal law for a court via evidentiary rulings before trial to allow a police officer who had committed official misconduct to avoid scrutiny under § 1983 by simply invoking a privilege to avoid criminal liability for that conduct. These considerations are

3

Instead, the jury in this case, as with any of the other witnesses, is entitled to observe Guevara's testimony, assess his demeanor, hear the questions posed, and consider the content and circumstances of any invocation of the Fifth Amendment. The Court will instruct the jury on the law and the permissible inferences it may draw, but neither the Court nor the parties can displace the jury's role as factfinder by altering the way that a party who asserts their Fifth Amendment rights testifies. Any other result would improperly tip the scales in favor of rewarding the recalcitrant witness, which is particularly unfair where the basis proffered for special treatment is that the witness is apparently concerned that telling the truth about his own conduct could send him to prison.[4]

The body of law and policy considerations just discussed are the reason Defendants cannot identify any binding legal authority supporting their motions. Indeed, as discussed below, at every trial in which Plaintiffs' counsel has ever participated where this issue has arisen, courts have permitted Plaintiff (or sometimes the Defendants) to call the witness who asserts the privilege. There are not even written decisions because most litigants do not even attempt to keep a witness off the stand on this basis. The lack of any legal support for Defendants' position that Guevara's assertion of the Fifth should be hidden from the jury is enough to deny their motions. Nonetheless, Plaintiffs address each particular argument below.

**B. Plaintiffs' Response to Defendants' Motion *In Limine* No. 16 (Dkt. 873 at 29-34)**

---

only amplified in a case like this one, where the party asking to be shielded from scrutiny is one of the most notorious Chicago police officers in the City's history.

[4] Indeed, Guevara's effort to assert the Fifth throughout this case and then to hide it from the jury at the last moment reeks of gamesmanship. As a court in this District recognized recently in the one of the *Watts* cases, a party may not use Fifth Amendment assertions to gain a strategic advantage in civil litigation, and therefore may not at the last minute withdraw an assertion of the Fifth Amendment in order to "swap his Fifth Amendment invocation—which carries with it potential adverse jury inferences . . . —with the less-damaging assertions that he does not recall the core events[.]" *White v. Chicago*, No. 17-cv-2877, 2024 WL 4818436, at *3 (N.D. Ill. Nov. 18, 2024) (citing *Daniels v. Pipefitter Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993)). A similar logic applies here. Just as a party may not sit out discovery and then attempt to avoid adverse inferences at trial by withdrawing an assertion of the Fifth, a party may not plead the Fifth and then attempt to avoid adverse inferences by arguing that they can sit out trial as well.

Defendants' first motion numbered 16 asks for the extreme and unjustifiable relief of excusing Guevara from testifying at all and barring all evidence that he has taken the Fifth, or alternatively excusing him from testifying and only instructing the jury that he has taken the Fifth in response to all questions. Dkt. 873 at 29-34. In support of exclusion, Guevara proffers a novel argument to this Court. To the extent Plaintiffs understand it, Guevara appears to be suggesting that it would be unfair to him if his privilege assertion caused him to lose the case. In fact, his decision not to testify could cause him to lose so badly, that a resulting verdict might allegedly carry constitutional implications. *Id.*

This argument could not be any more backwards. No one is forcing Guevara to take the Fifth. Guevara remains more than free to take the stand and deny anything that he thinks should be denied. He does not want to. He reasonably believes that truthful answers under oath would subject him to criminal liability. But the fact that he is depriving Plaintiffs of his testimony (or even the opportunity for cross-examination) inures to Plaintiffs' detriment, not Guevara's. Guevara may have a well-established constitutional right to avoid questioning, but he has no constitutional right to avoid bearing the consequences of that decision.

Moreover, Guevara's position is not supported by law. In fact, the law he cites refutes his position directly. If this Court looks carefully at this part of Guevara's argument on page 31-32 of his brief, it will see that Guevara has, without attribution, copied his argument (starting with the sentence "Into that category the Court has placed . . .") directly from the Seventh Circuit's decision in *LaSalle Bank Lake View v. Seguban*, 54 F.3d at 389 (7th Cir. 1995) ("Into that category the Court has placed . . ."). Dkt. 873 at 31-32. But Guevara omits that, in the very next paragraph of *Seguban* following that which Guevara copies, the Seventh Circuit said:

> The [Supreme] Court held that the rule it had articulated in the *Garrity–Lefkowitz* line of cases [about economic consequences] did not prohibit the drawing of an adverse inference from Fifth Amendment silence in a [civil proceeding] when incriminating evidence had also been presented. Such an inference did not, in other words, impose an unconstitutional cost on the exercise of the privilege. The rule that adverse inferences may be drawn from Fifth

5

Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own, in the two decades since *Baxter* was decided.

*Id.* 54 F.3d at 390. In other words, the case Guevara cuts and pastes in support of his economic consequences argument actually *expressly rejects the very argument he is making.* Guevara's lead argument is not a serious one, and it certainly does not justify permitting him to hide his assertion of the Fifth Amendment from the jury.

Guevara runs into the same problem when he argues that his privilege assertion should be presented only by jury instruction. He cites a Third Circuit case, *SEC v. Graystone Nash*, for the proposition that "the detriment to the party asserting [the Fifth] should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." Dkt. 873 at 32 (quoting 25 F.3d 187, 192 (3rd Cir. 1994)). But *Graystone Nash* squarely rejects the notion that a party invoking the Fifth is entitled to avoid meaningful consequences. It explains: "The principle that the invocation of the privilege may be too 'costly' does not mean that it must be 'costless.'" *Graystone,* 25 F.3d at 191. And it affirms that "[i]n *Baxter*, the Supreme Court gave an indication of a detriment that would not be too 'costly' when it held that it was permissible to draw adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Id.* Again, Guevara's position is refuted by the very case he invokes.

Guevara then cites two cases in which he claims courts have ruled that evidence about the Fifth Amendment should be limited to jury instructions, *Thompson v. City of Chicago*, No. 07-cv-1130, Dkt. 378 at 26, and *Evans*, 513 F.3d at 741 (7th Cir. 2008). Again, a misrepresentation. In *Thompson* the parties willingly *stipulated* that evidence about an assertion of the Fifth would be presented to the jury in writing instead of with a witness on the stand. (Guevara pointed out that this case involved a stipulation when he cited it in a similar pretrial motion in *Rivera*, Dkt. 412 at 5, attached as Ex. 1, but hid that detail in the present briefing.).

Stipulations, by definition, require agreement, and cannot be forced on an unwilling participant. *Old Chief v. U.S.*, 519 U.S. 172 (1997); *Jimenez v. Chicago,* 877 F. Supp. 2d 649, at 672 (N.D. Ill. 2012) (rejecting this very argument because plaintiff is not "required to accept a stipulation in lieu of proving a point at trial"). Here, Plaintiff does not agree to stipulate. "Even when coupled with a jury instruction that the fact stipulated must be considered proven, a stipulation cannot give [a party] everything the evidence could show." *U.S. v. Crowder*, 141 F.3d 1202, 1207 (D.C. Cir. 1998) (en banc) (internal quotation marks omitted). The problem is that a jury may discount the force of the stipulation because it is presented differently from all of the other evidence admitted in the case. *Id.* ("'If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, 'never mind what's behind the door,' and jurors may well wonder what they are being kept from knowing'"). *Thompson* does not advance Guevara's argument.

In fact, every district court to consider this issue has decided that the witness invoking the Fifth Amendment must testify and must respond to questions in front of the jury, even when they announce an intention to assert the Fifth across the board. For example, in *Jimenez v. City of Chicago*, another wrongful conviction case tried before Judge Kennelly, the Court denied a post-trial objection on this very issue in terms equally persuasive here:

> Defendants also argue that Jimenez should not have been allowed to call Torres to testify at trial. In this regard, they do not argue that testimony by Torres regarding whether he committed the murder was irrelevant–nor could they, given their freely-chosen strategy of injecting into the case the contention that Jimenez was guilty after all. Instead, defendants take issue with the manner in which Torres was presented. Before trial, Torres's criminal counsel made it clear that if called to testify, he would claim his privilege against self-incrimination. Defendants contend that for this reason, Jimenez should have been required to stipulate to what Torres would say if called to testify and should not have been permitted to present his self-incrimination claim live at trial.

> Defendants have offered two cases to support their argument. See *United States v. Mabrook*, 301 F.3d 503, 507 (7th Cir. 2002) (witness should not be forced to take the stand, because the jury cannot draw any inference from exercise of Fifth Amendment privilege); *United States v. Vandetti*, 623 F.2d 1144, 1147 (6th Cir.1980) (witness can be called even if he will assert Fifth Amendment privilege, but the potential for prejudice is very high). Both of these cases, however, are criminal cases in which it is impermissible to draw an inference from a witness's

7

invocation of his Fifth Amendment privilege. *Mabrook*, 301 F.3d at 507. In a civil case, by contrast, the jury can draw a negative inference from a party's invocation of his Fifth Amendment privilege, and defendants do not suggest that the rule for witnesses in civil cases is any different. See *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976) (recognizing general rule that parties in civil actions are subject to a negative inference if they refuse to testify). Thus the criminal cases that defendants cite are not controlling. "[Defendants] offer no authority to support the proposition that a party in a civil case is required to accept a stipulation in lieu of proving a point at trial."

*Jimenez*, 877 F. Supp. 2d at 671 (N.D. Ill. 2012).

Many cases have followed the same logic. In *Palmer v. Chicago*, 82-cv-2349, Judge Shadur permitted the plaintiff's counsel to call a Fifth Amendment defendant to the stand in a false arrest case involving Special Operations. In *Ramirez v. Chicago*, the defendant asserted the Fifth Amendment before the jury where appropriate. No. 05-cv-317, 2009 WL 3852378, at *5 (N.D. Ill. November 17, 2009). Notably, the defense nevertheless won that case. In *Robinson v. Harvey*, Judge Lefkow also allowed the plaintiff's counsel in a civil rights case to call a witness (Andrew Jeleniewski) who announced an intention to assert the Fifth. No. 99-cv-3696, 2004 WL 2033714, at *7 (N.D. Ill. Aug. 13, 2004). In *Logan v. Burge*, Judge Bucklo reached the same conclusion, rejected a similar motion for the defendants, and ruled that the plaintiff could call Jon Burge to the stand even though he intended to take the Fifth on all questions. Ex. 2, No. 1:09-cv-05471, Dkt. 423 at 8-9.

And in the last Guevara case to be tried by Plaintiffs' attorneys, *Rivera v. Guevara*, Judge Gottschall rejected a similar motion by Guevara seeking to avoid testifying and making many of the same arguments. In a lengthy opinion, that court explained why Guevara was required to take the stand to answer questions about his misconduct in the underlying criminal investigation, and it concluded that allowing him not to testify or to testify by instruction or stipulation "would lead to the reversible error that occurred in *Hillman v. City of Chicago*." *Rivera*, 2018 WL 11468922, at *2 (N.D. Ill. May 29, 2018) (citing *Hillman*, 834 F.3d at 792–93).[5]

---

[5] It is worth noting that in *Rivera,* Guevara attempted to avoid taking the stand based on a totally different excuse. There he was invoking his Fifth Amendment rights "for reasons other than guilty conduct associated with [that] civil

The *Evans* case cited by the Defendants is the only case to Plaintiffs' counsel's knowledge where the court refused to allow the party with the burden of proof to call a Defendant to the stand merely because that officer feared criminal prosecution if he answered questions truthfully. That case (litigated by the undersigned counsel's firm) exposes the flaw in proceeding that way. Without any briefing and basically no argument, Judge Coar ruled off-the-cuff at the pre-trial conference that the plaintiff could not call a defendant police officer to the stand where that officer intended to assert the Fifth. The result was somewhat bizarre. The jury never met defendant Officer Dignan, who, having been relieved of any obligation to testify, avoided showing up for trial altogether. Only after the entire case was over, and after the plaintiff had completed closing argument, did Judge Coar tell the jury that this particular defendant would have asserted the Fifth if he had been called to the stand. The jury declined to find against him.

While it is true that the Seventh Circuit affirmed Judge Coar's exercise of discretion (over a vigorous dissent), that decision is readily distinguishable. In *Evans*, the witness was at best a tangential figure in that homicide investigation. *Evans v. Chicago,* 434 F.3d 916 (7th Cir. 2006), (ruling on the parties' voluminous cross-motions for summary judgment without referring to or even discussing defendant Dignan, who refused to testify at trial). That is hardly the case here, where Guevara is the principal defendant in the case. Moreover, the Seventh Circuit in *Evans* explicitly rested its determination that there was no reversible error on the wide discretion granted to the district court and the extremely unique situation at issue in the case. See *Evans*, 513 F.3d at 741. In upholding this exercise of discretion as insufficient to justify a new trial, the Seventh Circuit expressly recognized that litigants may assert the Fifth in front of the jury: "A witness's answer could range from 'I refuse to answer on the ground that my answer may tend to incriminate me' to the more mundane 'On the

---

action[.]" *Rivera*, Dkt. 412 at 3, Ex. 1 (Guevara's Motion *in Limine* No. 19). It appears that Guevara will make any convenient argument to avoid testifying before a federal jury about his misconduct.

advice of counsel, I decline to answer.'" *Id.* at 740 n.4. And it decided that Judge Coar had not abused his discretion given the unique circumstances of Defendant Dignan's assertion of the Fifth Amendment–in particular Defendant Dignan had agreed to continue to assert his Fifth Amendment privilege through the trial in the case as part of an agreement that Evans would not seek punitive damages against him. *Id.* at 741 ("The situation presented here was *rather unique.* Evans candidly admits that he was "pleased" when Detective Dignan accepted his offer to rid himself of the punitive damage claim against him in exchange for a promise to continue to assert his Fifth Amendment privilege. Given this rather unusual scenario, it would be difficult to conclude that Judge Coar abused his discretion by not embracing this situation for its maximum effect."). There was no such deal made here.

The most that can be said is that the Seventh Circuit was not inclined to grant a new trial to defendant Dignan despite the manner in which Judge Coar had handled his non-testimony under "rather unique" circumstances. The matter was handled far more appropriately, however, by, among others, Judges Kennelly, Shadur, and Lefkow, Bucklo, and Gottschall, and Plaintiffs urge this Court to follow their approach instead. At the end of the day, Guevara cites just one distinguishable decision supporting his position, and there are many other cases that demonstrate why his proposal cannot hold water.

The motion concludes with the suggestion that perhaps the Court should limit the number of questions that Plaintiffs can ask Guevara. Some judges have taken that approach, including Judge Kennelly who to Plaintiffs' counsel's recollection once limited a witness asserting the Fifth to a few dozen questions. While by no means required by the Federal Rules or any other binding precedent,

10

that could help balance any potential prejudice asserted by the defense, should the Court deem such a limit appropriate.[6]

## C. Plaintiffs' Response to Defendants' Motion *In Limine* No. 16 (Dkt. 873 at 34-37)

Defendants' second motion numbered 16 erroneously argues that Guevara cannot be asked any question that has not already been established by "independent proof." Dkt. 873 at 34-37. Plaintiffs provided a fulsome argument about the reasons this is inappropriate in its affirmative motion, which they incorporate here as a response. Dkt. 872 at 1-9.

In summary, to make this argument Defendants twist cases that stand for the proposition that a court cannot enter a *judgment* against a party based solely on an assertion of the Fifth into an argument that a party asserting the Fifth cannot be asked *any question* unless that question has a basis in some proposition already established by other evidence. It is unclear how Guevara's proposed rule would work in a trial, but there is no need to figure it out because it is wrong and unsupported by the case law regardless.

At summary judgment, Plaintiffs explained that the cases Guevara cites in support of this motion stand for two relatively simple propositions: (1) judgment should not be entered on the pleadings against a party merely because that party asserts the Fifth Amendment privilege, *National Acceptance v. Bathalter*, 705 F.2d 924, 932 (7th Cir. 1983); and (2) judgment should not be entered against the non-moving party at summary judgment merely because that non-moving party asserted the Fifth Amendment, *LaSalle Bank Lake View v. Seguban*, 54 F.3d at 391 (7th Cir. 1995). Plaintiffs explained at summary judgment that some courts have read these cases incorrectly to say that summary judgment cannot be *denied* based solely on the *moving* party's assertion of the Fifth Amendment, and that some

---

[6] This Court should not, however, accept Defendants suggestion to pre-approve the questions. Other witnesses get no such accommodation, and Guevara should not be rewarded just because he refuses to participate in the process. In any event, if Guevara decides not to come to trial and thus forces reliance on his deposition, the Court will be effectively editing the questioning regardless.

11

additional evidence creating a dispute of fact must appear in the record for summary judgment to be denied. Dkt. 341 at 31-38 (citing *Rivera*, 319 F. Supp. 3d 1004, 1039-40 (N.D. Ill. 2018); *Logan v. City of Chicago*, 891 F. Supp. 2d 897, 901 (N.D. Ill. 2012); *Thompson v. Chicago*, 2009 WL 674353, at *3 (N.D. Ill. Mar. 12, 2009)).

But even if those cases are correct about what is required *at summary judgment*, at best for Guevara they stand for the proposition that his assertion of the Fifth Amendment trial is not enough alone for the jury to find him liable, such that some additional evidence is required. These cases do not even hint, however, that Plaintiffs must present evidence about every particular issue before asking Guevara a question about that issue. The jury will be instructed on what inferences it can properly draw from Guevara's assertion of the Fifth, and neither the Court nor the parties will suggest that he should be held liable based on an assertion of the Fifth alone.

Again, the normal Federal Rules prevent Plaintiffs' counsel from asking questions that have no evidentiary foundation. Familiar principles prevent questions that have no basis in the record, and the standard procedure for combatting such questions is to object to them. But there will be no such issue here, because Plaintiffs' questions of Guevara will be exactly what everyone can anticipate: whether he coerced confessions and fabricated and suppressed the evidence at issue. Moreover, Plaintiffs have no intention or interest in asking questions that are not rooted in the evidence presented at trial (of the "did you kill President Kennedy" variety), because to do so would stupidly create the appearance of gamesmanship or trickery, and thus water down any benefit Plaintiffs hope to gain from Guevara's invocation of the Fifth before the jury. There is no reason to depart from the standard rules of trial just because Guevara elects to assert privileges rather than provide substantive answers to some or all questions.

At the end of the day, Guevera's logic is circular. He blocked discovery into certain subjects by refusing to testify about them, including events he had knowledge about but Plaintiffs did not.

12

Then, having cut off discovery into these events (without ever denying they occurred) Guevara now turns around and asks the Court to block Plaintiffs from asking him about them, purportedly on the ground that Plaintiffs cannot prove what happened absent Guevara's testimony. To prevent exactly that type of machination, the law permits an adverse inference under these circumstances, and Guevara's argument turns that case law on its head.

### D. Plaintiffs' Response to Defendants' Motion *In Limine* No. 4 (Dkt. 873 at 13-16)

Defendants' Motion *in limine* No. 4 contends that the jury cannot draw an inference against any of the individual Defendants *other than Guevara* based on Guevara's assertion of the Fifth. Dkt. 873 at 13-16 (No. 4 to bar Guevara's assertion of the Fifth to other officers). To the extent the motion repeats arguments already addressed above–e.g., "lawyer abuse" of questions, Plaintiffs have already addressed those arguments above. Otherwise, Defendants' argument is easily addressed: consistent with the law, reflected in Plaintiffs' proposed jury instructions, the Court will instruct the jury that it may (but need not) draw an inference *against the witness* pleading the Fifth Amendment, in this circumstance Guevara. That permissive inference that the jury may draw is that a truthful answer would have been unfavorable to and would have incriminated *Guevara* and no one else. We presume the jury will follow its instructions. *Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008). There is nothing unusual, much less problematic, about calling upon jurors to consider certain evidence only against certain Defendants. Nor is there any reason to think that any unfair prejudice will result: the jury will consider the evidence, and consider how it affects their analysis of the case holistically, along with any other evidence in the record. Defendants' motion should therefore be denied.

### E. Plaintiffs' Response to Defendants' Motion *In Limine* No. 5 (Dtk. 873 at 16-17)

Last but not least, Halvorsen argues that his past assertions of the Fifth Amendment in response to questions in a deposition in a different Guevara case cannot be used against him in this civil case. Dkt. 873 at 16-17. He correctly does not attempt to argue there is something improper

13

about reading his past deposition testimony to the jury, because plainly that is permitted, given that Halvorsen is an unavailable party against whom Plaintiffs seek to introduce his own testimony. See Fed. R. Civ. P. 32; Fed. R. Evid. 804.

Instead, Halvorsen simply asserts that it would be unfair to use his past deposition testimony in which he asserted the Fifth Amendment against him because he gave that testimony and then later did not assert the Fifth Amendment in response to other questions in a deposition in another case. Understandably there is no legal authority cited in Halvorsen's motion for this invented theory. Instead, the only cases that Halvorsen cites are *Harris*, 266 F.3d 750 (7th Cir. 2001), which found that it was reversible error for a trial court's refusal to permit impeachment of a witness with his prior Fifth Amendment assertions, and *Evans*, 513 F.3d 735 (7th Cir. 2008), already discussed, which also held in a different part of the opinion that *Harris* was not violated in a situation where Defendants changed their minds about asserting the Fifth Amendment, and testified at depositions during discovery. The Seventh Circuit made clear that such a procedure would not be permitted if police officers were gaming the system. *Id.*; see also *Harris*, 266 F.3d at 74 ("A defendant cannot have it both ways . . . . [He may not] testify in attack . . . and at the same time seek refuge behind the shield of the Fifth Amendment.").

Accordingly, the usual presumption in well-settled law is that a defendant who asserts the Fifth Amendment must testify, that a defendant cannot use assertions of the Fifth strategically to gain a litigation advantage, that a defendant who has previously asserted the Fifth can be impeached with that assertion, except in narrow circumstances where the plaintiff has an opportunity to cure a defendant's decision to change from asserting the Fifth to not, and then only with particular findings and at the court's discretion, can a defendant assert the Fifth, then decide not to, and also avoid being impeached with an assertion of the Fifth Amendment.

14

Halvorsen does not fit into this narrow latter category. Unlike in *Evans,* he has not sat for or provided subsequent deposition testimony (he is dead) on the subjects on which he took the Fifth, which plaintiffs intend to introduce at trial. Namely, plaintiffs intend to present testimony that Halvorsen took the Fifth when he was questioned about: (1) his practice of fabricating and coercing false confessions; (2) his practice of making false reports; (3) his practice of suppressing testimony in criminal cases; and (4) his practice of giving false testimony in criminal cases. That testimony should be permitted. The fact that Halvorsen at one time held a good faith belief that truthful answers to those questions could subject him to criminal liability is undoubtedly of an "'extraordinarily relevant'" character. *Rivera*, No. 12-cv-4428, 2018 WL 11468922, at *3 (N.D. Ill. May 29, 2018) (Gottschall, J.). To be sure, Defendants are obviously entitled to offer testimony or explanation in response, subject to normal restrictions of the Rules that apply to past deposition testimony. But Halvorsen's Fifth Amendment assertion provides no reason to exclude this very probative prior testimony.

Importantly, because Halvorsen has passed away, any testimony from him will come by way of deposition testimony, and so the Court will have the opportunity to review the parties' designations and arguments in advance of trial, to decide admissibility with concrete evidence in mind. Halvorsen has not shown that his testimony would be inadmissible for all purposes, the motion should be denied, and rulings should be reserved for closer to or during trial.

15