**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ALTON LOGAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 09 C 5471 |
| **CITY OF CHICAGO, et al.,** | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**ORDER**

Now before me are the parties' motions in limine, which are resolved as follows:

Defendants' Motions in limine

1) *To bifurcate trial*. This motion is denied. I am not persuaded that bifurcation of this case would be more efficient, or less prejudicial, than a consolidated trial.

2) *To bar any reference to plaintiff's certificate of innocence.* This motion is denied. Defendants' discussion of *res judicata* is irrelevant. On the issue of relevance, defendants' assertion of the wholly inapposite *Rodriguez v. Cook County, Ill.*, 664 F.3d 627, 629 (7th Cir. 2011), borders on the frivolous. The certificate is relevant at least to the "indicative of innocence" element of plaintiff's malicious prosecution claim, as well as to his damages.

1

On the issue of admissibility, I may take judicial notice of the certificate's issuance (a fact not subject to reasonable dispute), as indeed defendants' own authority recognizes. *U.S. v. Jones*, 29 F.3d 1546, 1553 (11th Cir. 1994) (while it is inappropriate to take judicial notice of another court's factual findings, a court may take judicial notice of another court's order "for the limited purpose of recognizing the 'judicial act' that the order represents"). Defendants argue that the certificate does not fall within the scope of the public records exception to the hearsay rule, but I am not persuaded that their cited authorities, *Jones, supra; Nipper v. Snipes,* 7 F.3d 415 (4th Cir. 1993); *Hillard v. City of Chicago*, No. 09 C 2017, 2010 WL 1664941 (N.D. Ill. Apr. 23, 2010) (Conlon, J.); and *Taylor v. City of Chicago*, No. 09 C 5092, 2012 WL 669063 (N.D. Ill. Feb. 29, 2012) (Shadur, J.), none of which deals specifically with certificates of innocence, compels that conclusion. The thrust of *Jones* and *Nipper* is that judicial findings of fact (which were included in the orders at issue in those cases, and portions of which were read aloud to the jury in both cases) are not covered by Rule 803(8). But plaintiff's certificate of innocence does not, on its face, include any judicial findings.[1]  *Taylor,* which deals with a judicial finding

---

[1]The text of the order reads, in its entirety: "This matter coming to be heard on Alton Logan's Petition pursuant to 735 ISCS 5/2-702 *et seq.* for a Certificate of Innocence, due notice having

2

of no probable cause, relies on *Jones* (and a later 11th Circuit case citing *Jones*, *U.S. v. $125,938.62*, 537 F.3d 1287 (11th Cir. 2009)) without further analysis, while *Hillard,* which also addresses a judicial finding of no probable cause, holds only that that finding is not admissible under Rule 803(22), (judgments of previous convictions), which plaintiff does not rely upon here. Finally, on the issue of prejudice, defendants' argument that evidence of the certificate of innocence would unfairly prejudice defendants because "the jury may equate the court's finding with a determination as to the propriety of the defendant officers' actions" is without merit. *See Newsome v. McCabe*, No. 96 C 7680, 2002 WL 548725, at *5 (N.D. Ill. Apr. 4, 2002) (Plunkett, J.).

3) *To bar certain hearsay statements attributed to Andrew Wilson.* This motion is denied. I agree that Wilson's confession to his attorneys is an admissible statement against penal interest within the scope of Fed. R. Evid. 804(b)(3), as the Seventh Circuit has interpreted that Rule. *See U.S. v. Garcia*, 897 F.2d 1413, 1420 (7th Cir. 1990) (statement is against penal interest if it "would be probative in trial against the [declarant]"). Neither of the cases defendants cite--*U.S. v. Jones*, 600 F.3d 847 (7th Cir. 2010), and *U.S. v. Alvarez*, 266 F.3d 587 (6th Cir. 2001)--supports their

_____

been provided to the People of the State of Illinois, it is hereby Ordered that: Petitioner's request for a Certificate of Innocence is granted."

3

argument that privileged statements generally are treated differently under this rule. *Jones* is entirely inapposite, and *Alvarez* stands, at best, for the narrow proposition that an incriminating statement made by a witness after receiving affirmative promises that his statement would *not* subject him to criminal charges cannot later be admitted as a statement against penal interest. In this case, by contrast, there is no evidence that Wilson believed his statements to be anything other than incriminating--to the contrary, evidence that he directed his lawyers to keep his confession secret until his death indicates an awareness that his statements could subject him to further criminal charges. Moreover, as both the *Alvarez* and *Garcia* courts recognized, the rationale behind Rule 804(b)(3) is that "reasonable people...tend not to make self-inculpatory statements unless they believe them to be true." *Alvarez*, 266 F.3d at 593. *See also Garcia,* 897 F.2d at 1420 (statement against interest is one that "a reasonable person in the declarant's position would not have made...unless the declarant believed it to be true."). As for Wilson's statements to his fellow inmates McDowell and Bivens, defendants contend that they are too unreliable to qualify under Rule 804(b)(3). But all of defendants' arguments in this connection target the trustworthiness not of Wilson's statements, but of the individuals to whom the statements were allegedly made. Defendants are certainly entitled to challenge the credibility of

these individuals and may do so through cross-examination; exclusion of their testimony about Wilson's statements is not the appropriate response to the issues defendants raise. Finally, I disagree that Wilson's statements to Rhonda Howse, the mother of his children, are either too vague or too unreliable to qualify under Rule 804(b)(3).

4) *To bar hearsay statements during the testimony of Thomas Bennett.* This motion is granted. Bennett signed an affidavit stating that before his death, detective Grunhard told Bennett (his former partner) that Burge had told him (Grunhard) that "one of the guys convicted in the McDonald's shootings was the wrong guy," and that "the right guy was Andrew Wilson." Plaintiff seeks admission of Burge's statement under Rule 801(d)(2)(E), as the statement of a co-conspirator made to another co-conspirator in the course of the conspiracy. But plaintiff does not identify Grunhard as a participant in the alleged conspiracy. Plaintiff acknowledges that neither Grunhard nor Bennett is a defendant in this case. While the fact of Grunhard's death in 1990 explains his omission as a defendant, it does not explain why acts attributed to him are absent from the record, if indeed plaintiff believes that those acts form part of the basis for his allegations of a conspiracy. Plaintiff's argument that Grunhard's non-alleged (and unsupported) involvement in the McDonald's investigation qualifies Grunhard as

a co-conspirator is without legal support. Among other things, plaintiff points to nothing in the record to suggest that Grunhard affirmatively agreed with any defendant to conceal evidence of Logan's innocence. Because the record does not allow me to conclude that Grunhard was a co-conspirator, Burge's alleged statements to him do not qualify for admission under Rule 801(d)(2)(E).

5) *To admit certain former testimony*. This motion is denied as to Grunhard, Murray, Downs, Karl, Wilson, and Bennett. It is further denied as to Gorman, who may be deposed in Florida. As to Trent, Parker, Owen, and Hope, the motion is denied without prejudice, and I will consider a narrowly tailored motion that indicates specifically which testimony defendants seek to admit.

6) *To bar any reference to allegations of physical abuse*. This motion is granted in part. It is denied as to Donald White, who testified that he told defendants that he knew Andrew Wilson and Edgar Hope were involved in the McDonald's killing and told them that he didn't know plaintiff, "but they didn't want to hear that." White testified that he was then abused by defendants and thereafter identified plaintiff as the McDonald's shooter because he was afraid of further police brutality. White's testimony is plainly relevant to plaintiff's *Brady* claim. Moreover, defendants

intend to challenge White's credibility at trial, and plaintiff is entitled to offer his testimony about police brutality as an explanation for his previous inconsistent testimony. The motion is granted, however, as to Derrick Martin, the Wilson brothers, and Anthony Williams. Plaintiff has not identified any evidence that these witnesses provided defendants with any information to exculpate plaintiff with respect to the McDonald's murder.[2] Accordingly, their testimony is not relevant to plaintiff's *Brady* claim. Indeed, plaintiff essentially acknowledges that the purpose of these other witnesses' testimony is to support White's testimony and bolster his credibility. But its relevance for that purpose is simply too far removed from the central issues in this case. Meanwhile, the likelihood of unfair prejudice against defendants is high.

7) *To bar any reference to defendant Burge's 2010 conviction*. This motion is denied. Even assuming that there is merit, in theory, to defendants' argument that a conviction should not be permitted for

---

[2]Plaintiff argues, "other witnesses knew that Andrew Wilson was the true perpetrator, but were abused by police officers and did not come forward with what they knew," but offers no evidence for this argument. In a footnote, plaintiff states, "Williams did tell some but not all the police officers he interacted with about Andrew Wilson's guilt," citing to "Exhibit B at 83-85 (Deposition of Anthony Williams)." But Exhibit B is an excerpt of Derrick Martin's deposition testimony, not Anthony Williams's. And while Exhibit C contains an excerpt of Williams's deposition testimony, pages 83-85 do not support plaintiff's assertion.

impeachment where there is no testimony to impeach, the argument ignores that in this case, hearsay statements by Burge are apparently among the evidence the jury will weigh, and that these statements subject Burge's credibility to attack under Fed. R. Evid. 806, regardless of whether he takes the stand. And there remains the further issue of defendants' proffered expert, Anne Bremner, who explicitly discusses the charges leading up to Burge's 2010 conviction, then opines that it would be unfair to Burge to infer--as if it were an open question--that Burge was guilty of those charges on the basis of his invocation of the Fifth Amendment in that case. Her legal argument may be correct as far as it goes; but defendants are not entitled to use a factually incomplete picture of Burge's perjury case to defuse the possibility that the jury will draw an adverse inference (as all agree it is entitled to do) from his invocation of the Fifth Amendment in *this* case.

8) *To bar witnesses who intend to invoke the Fifth Amendment from being called to testify*. This motion is denied. As Judge Kennelly recently held, "plaintiff is not required to accept a stipulation in lieu of proving a point at trial." *Jimenez v. City of Chicago*, ---F. Supp. 2d---, 2012 WL 2863259, at *21 (July 11, 2012), distinguishing *Old Chief v. United States*, 519 U.S. 172 (1997), which defendants also cite here. Plaintiff's examination of each Fifth Amendment witness, however, will be limited to twenty

questions, and plaintiff must of course have a good faith basis for each.

9) *To bar reference to other lawsuits, other claimed incidents or defendants' disciplinary histories.* This motion is granted. Plaintiff does not claim to have been subjected to abusive police interrogations. He insists that evidence of defendants' other bad acts is relevant to *modus operandi*, intent, opportunity, preparation and plan–but with respect to what element of his claims? As discussed above with respect to defendants' sixth motion in limine, the claims asserted in this case are based on the non-disclosure and concealment of exclupatory evidence. The type of evidence at issue in this motion simply does not evince an intent (or plan, opportunity, or preparation etc.) to do anything relevant to these claims. The primary relevance of this evidence is, again, to support Donald White's explanation for his previous testimony incriminating plantiff.[3]

10) *To bar reference to evidence of prior bad acts, arrests, and*

---

[3]Plaintiff argues, for example, "[t]o the extent that the Defendants claim that they had no intent to coerce a statement from White, then Plaintiff is entitled to present evidence demonstrating otherwise," and continues: "In dispute is whether Defendants used physical violence, amongst other methods, to coerce a false statement from White, and if Defendants had an intention to use violence, then it makes it more likely that they did use violence." But the "dispute" referenced here is tangential to plaintiff's claims.

*general character attacks on witnesses Anthonette Dawson and Alvin Thompson.* This motion is granted as agreed by the parties.

11) *To bar testimony from Terrance Babers, Wilbur Cooley and Joseph Prendergast.* This motion is denied. The difficulties defendants describe in obtaining the depositions of these third-party witnesses are nothing like those that led the court to bar trial testimony in the cases defendants cite, *Johnson v. J.B. Hunt Transport, Inc.*, 280 F.3d 1125 (7th Cir. 2002) (testimony of witness barred as sanction for "unprofessional" and "abusive" conduct during discovery, including repeated failure to produce witness for deposition), and *Bronk v. Ineichen*, 54 F.3d 425 (7th Cir. 1995) (witnesses not disclosed in final pre-trial order). Here, by contrast, there is no indication (indeed, defendants do not even contend) that plaintiff or his counsel is responsible for defendants' alleged inability to depose these witnesses. Moreover, Prendergast has explicitly stated his willingness and availability to be deposed. As to the other two witnesses, defendants could have, but did not, raise, during discovery, the difficulties they apparently had in serving them with deposition subpoenas, which might have avoided the prejudice they now claim will result if these witnesses testify.

12) *To bar certain witnesses disclosed relative to the since*

dismissed *"widespread practice" claim.* This motion is granted for substantially the reasons discussed in my rulings above as to defendants' sixth and ninth motions in limine.

13) *To preclude evidence or argument regarding plaintiff's "street files" claim already dismissed on summary judgment.* This motion is granted as follows: I agree that plaintiff may not introduce evidence of a "street files" practice for the purpose of establishing, as plaintiff apparently intends to do, defendants' "regular practice of trying to hide things." As all agree, the "street file" at issue in this case was not, in fact, "hidden" from plaintiff's attorney. This ruling does not, however, necessarily preclude any reference to the "street file" in this case or the contents thereof, and, if referenced, plaintiff is entitled to introduce evidence necessary to enable the jury to understand what is meant by a "street file."

14) *To preclude speculative arguments concerning Wickliffe's .38 caliber revolver and an alleged lineup at Cook County Jail.* This motion is denied. There is sufficient evidence in the record to justify good-faith questions on these topics. Defendants are free to present the evidence they believe rebuts plaintiff's version of these issues.

11

15) *To bar evidence or argument inconsistent with the law of probable cause.* This motion is denied. If what defendants are really getting at is the admissibility of the so-called Celovsky memo, neither the formulation of their argument–which, I note, invokes no evidentiary rule or principle–nor their cited authorities establish any basis for its exclusion. I agree with plaintiff that defendants' argument is better suited to a dispute about jury instructions, not a dispute about the admissibility of evidence.

16) *To bar the proffered testimony of Dr. Jennifer Dysart on the issue of eyewitness identification.* This motion is granted. The thrust of Dr. Dysart's testimony is to cast doubt on the reliability of the testimony of the witnesses who identified plaintiff as Wickliffe's killer in his underlying criminal proceedings. But this case is not a retrial of plaintiff, and while I acknowledge that evidence pointing toward, or against, his guilt has some tangential relevance to the issues in this case, the examination of Dr. Dysart would take the case in a direction too far afield from the central issues to be decided. Moreover, to the extent Dr. Dysart's report opines on the central issue here–whether defendants deliberately orchestrated lineups in such a way as to incriminate plaintiff–plaintiff does not dispute that Dr. Dysart answered "no" to the question: "In your entire review of the

12

materials, were you able to find any record support for any allegation that either Jon Burge, George Basile, Joseph DiGiacomo, James Pienta, Thomas McKenna, Fred Hill, or Anthony Katalinic conducted an improper lineup?"[4]

17) *To bar the proffered police practices testimony of Russell Fischer.* This motion is denied. Unlike the proposed testimony of Dr. Dysart, discussed above, the proposed testimony of Mr. Fischer relates directly to the issue of whether defendants deliberately handled the McDonald's investigation in such a way as to inculpate plaintiff, regardless of his guilt. Defendants' lead argument that Mr. Fischer is not qualified to offer an expert opinion on whether defendants' investigation of the McDonald's murders was consistent with normal police practices is without merit. I am not persuaded that an understanding of how police investigations are carried out is within the ken of the average juror, and, in any event, "[i]f an expert's testimony is helpful to the jury, it is admissible even if it "'cover[s] matters that are within the average juror's comprehension.'" *Wells v. City of Chicago*, No. 09 C 1198, 2012 WL 116040, at *10 (N.D. Ill. Jan. 16, 2012) (Kennelly, J.) (expert

---

[4]Unhelpfully, defendants have omitted from the cited exhibit the page on which they say this testimony appears. Nevertheless, I presume that if the testimony were misquoted or otherwise mischaracterized, plaintiff would have brought this to my attention. Since he has not, I assume that the quotation in defendants' brief accurately reflects the record.

qualified on the basis of his "extensive background in law enforcement" to opine that "under the facts of the case, proper police procedure would require" certain actions) (citation omitted). Nor do I conclude that Fischer's opinions inappropriately make credibility determinations. While expert opinions must have some basis in the record, they need not rely only on undisputed facts. *Id*. at *11. Defendants' remaining objections to Fischer's opinions are without merit for reasons discussed elsewhere in this order.

18) *To bar any reference to the City as a party and to omit the City as a defendant on the verdict form.* This motion is granted. Plaintiffs object to the motion on the ground that, although all claims against the City have been dismissed, the City may yet be responsible, under the theory of *respondeat superior,* for unspecified tortious acts of unspecified agents other than Burge and Basile (who are named in the state law counts, and as to whose alleged acts the City agrees were within the scope of their employment). Any such claims were either dismissed at summary judgment, or have not been properly disclosed and pursued in the course of litigation. *Prate v. Village of Downers Grove*, 2011 WL 5374100, at *6 (N.D. Ill. Nov. 11, 2011) (St. Eve, J.), is not to the contrary. In that decision, the court merely declined to dismiss, at the pleading stage, *respondeat superior* claims against

the defendant city, even though the individual officers whose conduct was at issue could not be named as defendants because the limitations period as to claims against them had run. The problem here is not merely that plaintiff declined to name additional City agents in his pleading, it is that he failed to develop evidence as to the conduct of such agents over the course of this litigation. I agree that it would be unfair to defendants for plaintiff to claim, for the first time at trial, that such other City agents committed torts for which the City should be held liable.

## Plaintiff's motions in limine

1) *To bar argument or suggestion that Andrew Wilson's criminal defense lawyers are responsible for plaintiff's injuries.* This motion is granted. Wilson's former attorneys are not on trial. Even assuming that the lawyers' decision not to share exculpatory evidence with plaintiff's defense counsel was in some way culpable, that decision has no bearing on defendants' potential liability under *Brady* for their own failure to disclose exculpatory evidence allegedly in their possession. This is true regardless of how a jury may view the lawyers' credibility. In any event, the lawyers' silence cannot, as defendants argue, reasonably be deemed the "sole proximate cause" of the constitutional violations plaintiff asserts. Finally, because it is irrelevant whether ethical rules did, in fact, prevent Wilson's lawyers from coming forward with

15

exculpatory evidence, the testimony and report of Thomas Fitzpatrick, who opines on this issue, is not admissible.

2) *To bind defendants to their privilege assertions.* This motion is granted to the extent it seeks to prevent defendants from answering questions they previously declined to answer in reliance on their Fifth Amendment rights. Defendants are not, however, precluded from testifying that their decision to assert their Fifth Amendment rights was on the advice of their counsel.

3) *To admit statements of Andrew Wilson, Edgar Hope, and Jon Burge.* This motion is granted as to Wilson's statements for reasons discussed in relation to defendants' motion in limine no. 3. It is also granted as to Hope's statements to his attorney for similar reasons. Hope's statement to Ronald Kliner, "you know [plaintiff], he's innocent. He's on my case," is also admissible. While the statement does not amount to a confession, it nevertheless qualifies as a statement against Hope's penal interest because it reflects knowledge about the crime that Hope would have had because of his own involvement. *See U.S. v. York*, No. 86 CR 315, 1989 WL 65167, at *4 (N.D. Ill. Jun. 9, 1989) (Williams, J.). The motion is denied as to Burge's statement to Grunhard for reasons discussed in conjunction with defendants' motion in limine no. 4.

16

4) *To bar reference to street gangs*. This motion is granted. The parties dispute whether plaintiff was a member of the Gangster Disciples street gang thirty years ago. Defendants argue that evidence that plaintiff was a gang member is relevant to impeach plaintiff's testimony that he did not know Andrew Wilson (who the parties agree was "undoubtedly" a gang member) prior to the McDonald's murder, and that it further suggests a bias in Wilson's hearsay testimony. But any probative value this evidence may have is clearly outweighed by the risk of prejudice to plaintiff.

5) *To bar all references to Mr. Logan's arrests or criminal convictions.* This motion is granted in part. The parties do not appear to dispute that plaintiff's arrests that did not lead to convictions are inadmissible.[5] Defendants argue, however, that plaintiff's criminal record is relevant to establish 1) that plaintiff knew Wilson and Hope, 2) that defendants had probable cause to prosecute plaintiff, 3) that plaintiff had a motive to murder Lloyd Wickliffe, and 4) plaintiff's damages. I am persuaded only as to the damages issue. The opinion of plaintiff's expert Terry Kupers makes reference to plaintiff's experiences in prison

---

[5]Plaintiff seeks to carve out an exception for one incident, prior to the McDonald's murder, in which defendant Burge arrested plaintiff. Plaintiff asserts that this evidence is relevant to establish that Burge bore plaintiff animus, and that it should be admitted for that purpose and that purpose only. Defendants do not appear to object to the use of the evidence for that limited purpose.

prior to the sentence he served for the Wickliffe murder. Plaintiff cannot have it both ways, advancing a damages theory that relies on reference to his past prison experience, on the one hand, while barring any reference to his criminal record on the other. That said, while defendants are entitled to refer to plaintiff's previous incarceration, they will not be permitted to explore the details of his previous felony convictions, all of which are presumptively inadmissible under Fed. R. Evid. 609(b).

6) *To bar reference to various bad acts committed by Mr. Logan.* This motion seeks to bar reference to 1) various events plaintiff characterizes as "childhood infractions," 2) plaintiff's discharge from the Army, 3) plaintiff's possession of homemade knives while incarcerated, and 4) plaintiff's employment status before 1983. The motion is granted as to items 1 and 2 and denied as to items 3 and 4. Plaintiff's unemployment at the time of his conviction is relevant to his damages calculation. And, because plaintiff's own expert discusses, in the course of his analysis of the psychological damage plaintiff suffered as a result of his incarceration, plaintiff's possession of homemade knives or "shanks," it would be inappropriate to preclude defendants from referencing the same.

18

7) *To bar Thomas Durkin as a testifying expert for defendants.* This motion is granted.  Defendants do not claim that Mr. Durkin's proposed testimony is offered for any purpose other than to rebut the testimony of plaintiff's expert Dr. Dysart, which I have excluded for the reasons set forth in my discussion of defendants' motion in limine no. 16.

8) *To bar undisclosed and irrelevant witnesses from testifying at trial.*  This skeletal, three-page motion seeks a blanket ruling that thirty-four individuals on defendants' witness list are barred from testifying because they were not disclosed, have no relevant testimony to offer, or both.  With the exception of Charles Harris, whose testimony the parties agree is unnecessary, I decline to grant this motion on its present terms.  The record reveals that witnesses Hogan, Frum, Kapture, Leifheit, Wilson, and Meeks were, contrary to plaintiff's assertion, disclosed in a supplementary discovery response dated May 3, 2011, and that witness Madden was disclosed during the deposition of Derrick Martin.  Defendants agree that witness Hill, who was previously withdrawn from the witness list, will not be called unless for impeachment testimony. Although plaintiff states that the remaining witnesses identified in the motion are irrelevant, he makes no reasoned argument in this connection.

9) *To bar reference to defendants' allegations that Mr. Logan or his brother threatened defense counsel.* This motion is granted. No such reference would have any probative value as to any issue at this trial.

10) *To bar reference to a fight between Mr. Logan and his girlfriend and allegations that Mr. Logan was unfaithful.* This motion is granted for the same reason as the previous motion.

11) *To bar references to plaintiff's prison disciplinary history.* This motion is denied. Plaintiff intends to testify to the conditions of his incarceration in support of his claim for damages. Defendants are entitled to probe this topic, including with evidence of plaintiff's own conduct while incarcerated. Plaintiff claims that this evidence is unfairly prejudicial, but that is not necessarily true. Indeed, plaintiff himself observes, "details of Mr. Logan's prison disciplinary history will give the jury a better picture of how terrifying Mr. Logan's 26 years of wrongful incarceration were for him."

12) *To bar reference to collateral source payments.* This motion is granted. Defendants are free to press their construction of the certificate of innocence through legal argument based upon the text of the statute. Evidence that plaintiff was paid pursuant to the

statute is of no meaningful probative value to the issues in this case and is outweighed by the likelihood of prejudice.

13) *To refer at trial to certain former state's attorneys as "counselor" rather than "judge."* This motion is granted as unopposed.

14) *To bar reference to criminal convictions of third-party witnesses.* This motion is granted in part. I agree that the details of the crimes for which McDowell, Bivens, and Kliner were convicted are not relevant to any issue in this case. Defendants are, however, entitled to cross-examine these witnesses and test their credibility, including by asking questions relating, for example, to affidavits they signed in other cases. As for Jackie Wilson, it is impossible to determine on anything other than an issue- or question-specific basis whether reference to his convictions are, or are not, relevant to the issues in this case.

15) *To bar references to illegal drugs and alcohol.* This motion is granted.

16) *To bar Edgar Hope and Jerome Johnson from testifying and to bar reference to their invocation of the Fifth Amendment.* This motion is granted. It may, indeed, be permissible to draw an adverse

inference "*against a witness* who pleads the Fifth Amendment even if that witness is not a party."  *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993) (emphasis added). But no adverse inference that might be drawn against the witnesses who invoked the Fifth Amendment in response to the questions posed is relevant to the issues in this case.  For example, Hope was asked, "Isn't it true that the person who entered the McDonald's with the shotgun was Alton Logan?"  Hope's invocation of the Fifth Amendment could, in a civil case, be construed as evidence that a truthful answer would have revealed Hope's own involvement in the crime (even if the truthful answer were "no.").  But the permissible adverse inference that *Hope* was involved in the crime does not make it any more or less likely that *Logan* was. Accordingly, Hope's invocation of the Fifth Amendment is irrelevant to any issue here.  Defendants similarly fail to explain how any adverse inference that might be drawn against Smith from his invocation of the Fifth Amendment in response to the question: "Isn't it true, sir, that you witnessed Alton Logan at the McDonald's on January 11, 1982 shoot Lloyd Wickliffe with a shotgun?" is relevant to this case.

17) *To bar defendants from showing any videotaped portion of Gail Hillard's deposition.* This motion is granted as unopposed.

22

18) *To bar reference to jurors as taxpayers*. This motion is granted as unopposed.

19) *To bar reference to various bad acts committed by Donald White.* This motion is granted in part. Mr. White's testimony is a key element of plaintiff's case, and defendants are entitled, pursuant to Fed. R. Evid. 608 and 609, to impeach his credibility with evidence of his conviction for crimes involving dishonesty and evidence showing his character for untruthfulness. In this case, I conclude that all of Mr. White's convictions for crimes involving dishonesty are admissible. While it is true that Rule 609(b) presumptively bars convictions that are over ten years old, the jury in this case will be asked to assess Mr. White's credibility not only with respect to statements he makes on the stand, but also in considering statements he made in 1982, 1989, 2000, and 2010. Rule 403 considerations also do not require excluding this evidence. Mr. White is not a party in this case, so the relevance of the evidence to his credibility (and, indeed, the importance of his credibility to plaintiff's claims) is not substantially outweighed by the risk of unfair prejudice. The jury is not likely to conclude, improperly, that *plaintiff* is not entitled to relief simply because it may conclude, based on Mr. White's past convictions, that *Mr. White* is a bad person. Nor are these convictions needlessly cumulative to other evidence, since Mr.

White's "character for truthfulness" is at issue, and evidence of one conviction does not have the same weight, in this regard, as evidence of multiple convictions.

I also see no basis for excluding Mr. White's own testimony about his commission of uncharged crimes of dishonesty. The case plaintiff cites in this connection, *U.S. v. Davis*, No. 99 C 928, 2001 WL 1195729 (N.D. Ill. Oct 9, 2001) (Kennelly, J.), does not militate in favor of exclusion, since, among other distinctions, the uncharged crime in that case was defendant's own (so the risk of prejudice was significant), and the evidence of the crime was not the defendant's own admission, but instead the testimony of one of the state's witnesses.

Nevertheless, defendants overreach with the suggestion that Mr. White's "entire criminal history" is admissible.[6] I am not persuaded, for example, that evidence of Mr. White's arrests not leading to convictions, or convictions more than 10 years old for crimes not involving dishonesty, are sufficiently probative of his credibility to be admissible.

Finally, the parties appear to agree that incidents they vaguely refer to as occurring in Aurora are not relevant to any

---

[6]They caption their first argument, "Mr. White's Entire Criminal History is Relevant to the Jury's Assessment of his Credibility and not Defeated by Fed. R. Evid. 404(b) or 403," but their brief does not specifically address every item plaintiff seeks to bar in his motion. Accordingly, I assume they agree not to offer evidence of bad acts other than those addressed, and that I conclude here are admissible.

issue in this trial, so I presume that neither side intends to offer evidence relating to these incidents.

20) *To bar speculation from Donna Parker.* This motion is granted. Defendants argue that Parker's proffered testimony about the meaning of the phrase, "[plaintiff] states that he was under the influence of alcohol at the time of this offense," which she wrote in plaintiff's presentence investigation report, is akin to evidence held admissible in *Newton v. Ryder Transp. Services*, 206 F.3d 772 (8th Cir. 2000). In that case, the appellate court concluded that the lower court should have admitted the deposition testimony of a police officer in which he read the contents of an accident report he had written about the plaintiff's traffic accident. The Eighth Circuit held that it was error to exclude the contents of the report (which "indicated that [the plaintiff] stated that he fell asleep behind the wheel and that he was wearing a seat belt at the time of the accident"), rejecting the plaintiff's argument that the officer "had no knowledge" of the "origin of the statement," that is, whether the statement reflected in the report was based on information obtained from the plaintiff or from someone else. *Id*. at 774-75. The court concluded, based on the officer's credible testimony about his record-writing practices and his belief that the information could have come from only one source--the plaintiff--that the evidence met the

25

requirements of Fed. R. Evid 803(5). That rule, which defendants assert here, permits the admission of a "record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly." *Newton*, 206 F.3d at 774.

In this case, however, there is no dispute about the origin of the statement in Ms. Parker's report. Plaintiff does not deny making the statement it attributes to him. Indeed, I do not construe plaintiff's motion as seeking to exclude the statement itself. What plaintiff seeks to bar is Ms. Parker's testimony in which she interprets the statement's meaning. I agree that exclusion of this evidence is proper. Nothing Ms. Parker could properly testify to, i.e., about which she has personal knowledge, is relevant to what plaintiff meant by the statement.

21) *To bar the testimony of Erich Speckin.* Oral argument on this motion is set for October 31 at 10:30.

Dated: 10/19/2012

*Elaine E. Bucklo*

26