# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | 20-cv-3118 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| ROBERT BARTIK, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| | ) | |
| ANTHONY MITCHELL, | ) | |
| | ) | 20-cv-3119 |
| Plaintiff, | ) | |
| | ) | Judge Lefkow |
| v. | ) | |
| | ) | Jury Trial Demanded |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 46 TO ADMIT FULTON'S TESTIMONY THAT HE WAS SUED BY CHRISTOPHER COLLAZO'S ESTATE AND THAT FULTON MADE A PAYMENT <u>AS A RESULT OF THAT LAWSUIT</u>**

Individual City Defendants, by and through their undersigned counsel, move this Court *in limine* to Plaintiff John Fulton was sued by Christopher Collazo's estate for wrongful death, and that Fulton made a payment to Collazo's estate as part of that lawsuit. In support of its motion, Individual City Defendants state as follows:

By way of background, during Plaintiff John Fulton's September 19, 2022, deposition taken in this matter, Fulton testified that at the end of that wrongful death lawsuit, he paid $400,000 to Madilen Mercado, the executor of Christopher Collazo's estate, because it "was in my best

1

interest." (September 19, 2022, Deposition of John Fulton, attached hereto as Ex. 1 at 26:4-19; 34:3-13).

Under Fed. R. Evid. 408, "evidence from compromises or compromise negotiations 'to prove liability for or invalidity of the claim or its amount'" is inadmissible. *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 0736, 2004 WL 1899927, at *29 (N.D. Ill. Aug. 23, 2004) (quoting Fed. R. Evid. 408). However, Rule 408 does not contain "an absolute ban on all evidence regarding settlement negotiations." *Donovan v. Quade*, 830 F. Supp. 2d 460, 470 (N.D. Ill. 2011). Rather, "[c]ourts have admitted evidence of offers or agreements to compromise for purposes other than liability, such as to show bias or prejudice of a witness; rebuttal; impeachment; to show knowledge or intent; to show a continuing course of reckless conduct; and to prove estoppel." *Id.* In fact, the Tenth Circuit has commented on Fed. R. Evid. 408, stating that "[r]ead literally, the rule does not appear to cover compromises and compromise offers that do not involve the dispute that is the subject of the suit, even if one of the parties to the suit was also a party to the compromise." *Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1363 (10th Cir.1987); *see also United States v. McCorkle*, 1994 WL 329679, at *2 (N.D. Ill. July 7, 1994) ("[ ]Rule 408 does not bar settlement information in one case from admissibility in another case."); *Towerridge, Inc. v. T.A.O., Inc.,* 111 F.3d 758, 770 (10th Cir.1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated."). Courts, in determining whether to exclude evidence of settlements under Rule 408, "must consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005).

Here, Defendant Officers seek to admit John Fulton's deposition statements that he resolved the wrongful death lawsuit brought against him by making a $400,000 payment to Collazo's estate because it is relevant to the jury's determination of Plaintiff Fulton's claim that he was wrongfully arrested for the murder of Christopher Collazo as well as the jury's determination of Defendant Officer liability and potentially damages. Plaintiff Fulton claims that he was not in any way involved in the murder of Collazo however Individual City Defendants seek to introduce evidence of his payment to Collazo's estate and his statement during his deposition that he made the payment because it was in his "best interest" to dispute Plaintiff Fulton's claim.

Fulton's statement was made during his deposition in this matter, not during settlement negotiations for the wrongful death suit. Further, the settlement of the wrongful death suit is a claim different from the claims currently being litigated in this matter. *Towerridge, Inc.*, 111 F.3d at 770; *McCorkle*, 1994 WL 329679 at *2. Last, there is no evidence that Fulton's settlement in the wrongful death suit or his statements made during his deposition will have a chilling effect on settlement negotiations in this matter. As such, since Fulton's statements that he paid Collazo's estate $400,000 for the wrongful death of Collazo is relevant to the jury's determination of Defendant Officer liability in this case, evidence of the wrongful death suit settlement and Fulton's statements should be admitted into evidence.

WHEREFORE, Individual City Defendants respectfully request this Court to move *in limine* to admit testimony and evidence that Plaintiff John Fulton was sued by Christopher Collazo's estate for wrongful death, and that Fulton made a payment to Collazo's estate as part of that lawsuit, and for any other relief this Court deems just and proper.

Dated: December 18, 2024        Respectfully submitted,

       */s/ Natalie Y. Adeeyo*
       Shneur Nathan (snathan@nklawllp.com)

Avi Kamionski (akamionski@nklawllp.com)
Natalie Adeeyo (nadeeyo@nklawllp.com)
Breana Brill (bbrill@nklawllp.com)
John Cerney (jcerney@nklawllp.com)
Special Assistants Corporation Counsel
Nathan & Kamionski LLP
206 S. Jefferson Street
Chicago, IL 60661
(312) 957-6639

*Attorneys for Individual City Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Natalie Adeeyo, an attorney, hereby certify that on December 18, 2024, I caused the

foregoing document to be filed with the Court's CM/ECF system, which provided electronic

notice and a copy of the same to all counsel of record.


*/s/ Natalie Y. Adeeyo*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| *Plaintiff,* | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| *v.* | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, *et al.* | ) | Magistrate Judge |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | [Consolidated with *Fulton v. Bartik* for |
| *v.* | ) | pre-trial purposes] |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE
NO. 46 TO ADMIT FULTON'S TESTIMONY THAT HE WAS
SUED BY CHRISTOPHER COLLAZO'S ESTATE AND THAT FULTON
MADE A PAYMENT AS A RESULT OF THAT LAWSUIT**

Plaintiffs do not oppose Defendants' motion to admit evidence that Plaintiff Fulton was

sued by Collazo's estate and made a payment as a result. That payment is part of Mr. Fulton's

damages. Plaintiffs, however, object to the admission of any cumulative evidence on this subject,

meaning that if Plaintiffs present such evidence first, no additional evidence of the same should

be admitted.

Respectfully submitted,

**PLAINTIFF JOHN FULTON**
**PLAINTIFF ANTHONY MITCHELL**

BY: /s/ Fatima Ladha
*One of Plaintiffs' Attorneys*

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julia Rickert
Fatima Ladha
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900
russell@loevy.com

Andrea D. Lyon
LYON LAW
53 W. Jackson Blvd., Ste. 1650
Chicago, IL 60604
312-877-5543
andrea@andrealyon.com

## CERTIFICATE OF SERVICE

I, Fatima Ladha, an attorney, hereby certify that on January 8, 2025, I served the

foregoing document to be served on all counsel of record by using the Court's CM/ECF system.

/s/ Fatima Ladha

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20 C 3118 |
| | ) | |
| ROBERT BARTIK, et al., | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20 C 3119 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Rulings on Individual Defendants' Motions *in Limine* are as follows:[1]

- No. 1: Denied.
- No. 2: Ruling reserved.
- No. 3: Denied.
- No. 4: Granted in part and denied in part.
- No. 5: Ruling reserved.
- No. 6: Granted.
- No. 7: Granted in part and denied in part.
- No. 8: Granted.
- No. 9: Granted in part and denied in part.
- No. 10: Denied in part and reserved in part.
- No. 11: Denied in part and reserved in part.
- No. 12: Granted in part and denied in part.
- No. 13: Denied.
- No. 14: Granted in part, denied in part, and reserved in part.
- No. 15: Granted in part and reserved in part.

---

[1] The court has consolidated *Fulton* v. *Bartik et al.*, No. 20-cv-3118, and *Mitchell* v. *Bartik*, No. 20-cv-3119. For consistency, the court refers to docket entries and record citations in *Fulton*.

1

- No. 16: Granted.
- No. 17: Moot.
- No. 18: Ruling reserved.
- No. 19: Denied.
- No. 20: Granted in part and reserved in part.
- No. 21: Denied.
- No. 22: Granted in part and denied in part.
- No. 23: Granted in part and denied in part.
- No. 24: Granted in part and denied in part.
- No. 25: Granted.
- No. 26: Granted.
- No. 27: Granted.
- No. 28: Denied.
- No. 29: Granted in part.
- No. 30: Granted.
- No. 31: Denied.
- No. 32: Granted.
- No. 33: Granted.
- No. 34: Ruling reserved.
- No. 35: Denied.
- No. 36: Granted in part and denied in part.
- No. 37: Denied.
- No. 38: Granted.
- No. 39: Denied.
- No. 40: Granted in part and reserved in part.
- No. 41: Granted.
- No. 42: Ruling reserved.
- No. 43: Granted
- No. 44: Granted
- No. 45: Ruling reserved.
- No. 46: Granted
- No. 47: Granted

## **STATEMENT**

In related actions, Plaintiffs John Fulton and Anthony Mitchell filed complaints against the same defendants, alleging constitutional violations under 42 U.S.C. § 1983 and related state law claims. The core allegation is that they were deprived of their constitutional rights and wrongfully imprisoned because Chicago police officers fabricated witness testimony and coerced false confessions, leading to plaintiffs' eventual convictions for the murder of Christopher Collazo. Trial is set to begin on February 10, 2025.[2]

The following constitutional claims proceed to trial: false confession under the Fifth and Fourteenth Amendments (Count I); fabrication of false witness statements under the Fourteenth

---

[2] The court assumes familiarity with the relevant background facts, which are described fully in the court's summary judgment opinion. (Dkt. 256 at 2–12.)

Amendment (Count II); deprivation of liberty without probable cause under the Fourth and Fourteenth Amendments (Count III); failure to intervene (Count VI); and conspiracy (Count VII). Related state-law claims also proceed to trial: malicious prosecution (Count IX); intentional infliction of emotional distress (Count X); civil conspiracy (XI); *respondeat superior* against the City of Chicago (Count XII); and indemnification against the City of Chicago (XIII).

Before the court are Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Robert Girardi, and Stephen Franko (collectively, "Individual Defendants") motions *in limine* nos. 1–47. The rulings in this order are without prejudice and are subject to change should the evidence introduced at trial differ from that which is anticipated in these motions. *See Hawthorne Partners* v. *AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400–01 (N.D. Ill. 1993).

## LEGAL STANDARD

A ruling on a motion *in limine* is a preliminary decision on the admissibility of certain evidence. *See United States* v. *Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). It "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadm[i]ssible for any purpose." *Jonasson* v. *Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Where an evidentiary submission "cannot be evaluated accurately or sufficiently" before trial, ruling on its admissibility is deferred until during trial when the impact of the evidence can be better assessed. *Id.* The rulings in this order are without prejudice and are subject to change should the evidence introduced at trial be different from that anticipated in these motions. *See Perry* v. *City of Chicago*, 733 F.3d 248, 252 (7th Cir. 2013) ("Trial courts issue rulings on motions *in limine* to guide the parties on what evidence it will admit later in trial. As a trial progresses, the presiding judge remains free to alter earlier rulings.").

## ANALYSIS

### No. 1: Exclude evidence and argument relating solely to claims that were dismissed or never alleged[3]

Individual Defendants ask the court to exclude evidence relating only to those claims have been dismissed from this litigation. The court granted summary judgment in favor of Individual Defendants as to the following claims and individuals: false confession (Count I) against Bartik, Winstead, and Franko; fabrication of false witness statements (Count II) against Franko; and wrongful conviction and illegal confinement (Count IV) against all Individual Defendants. (Dkt. 256 at 72–73.) Accordingly, they seek to exclude "any evidence or argument that Defendants Bartik, Winstead or Franko coerced [plaintiffs'] confessions, or that Defendant Franko fabricated any evidence." (Dkt. 285 at 7.)

In their dismissed wrongful conviction and illegal confinement claim (Count IV), plaintiffs alleged that Individual Defendants withheld or destroyed the following pieces of evidence: (1) the existence of a backdoor camera at Fulton's apartment; (2) Fulton's key fob,

---

[3] Individual Defendants filed motions *in limine* nos. 1–23 in an omnibus document. (Dkt. 285.)

which allegedly recorded his entries and exits from his apartment building; (3) a license plate number; (4) allegedly coercive interrogation tactics used during the interviews of Antonio Shaw, Johnitta Griffin, and plaintiffs; and (5) phone records for Griffin, Marisol Caldero, Christopher Collazo, and Fulton. Individual Defendants argue that because they prevailed on that claim and Plaintiffs never alleged a *Brady* violation, plaintiffs "should not be permitted to re-assert this evidence" and argue that Individual Defendants withheld it. (Dkt. 285 at 7.)

Plaintiffs respond that such evidence "may very well be admissible to show Defendants' intent or to prove a different claim, such as conspiracy." (Dkt. 358 at 3.) For instance, they explain that evidence of Individual Defendants withholding exculpatory evidence is admissible to prove "their intent to frame Plaintiffs," regardless of whether it is sufficient to make out a *Brady* claim. (Dkt. 358 at 3.)

The evidence is not solely relevant to previously dismissed claims. As plaintiffs argue, it is probative of Individual Defendants' intent to fabricate evidence and the remaining conspiracy claims. *See Brown* v. *City of Chicago*, 633 F. Supp. 3d 1122, 1156–57 (N.D. Ill. 2022) (citation omitted) (evidence-fabrication claim requires proof that the defendant "knowingly fabricated evidence against the plaintiff" and "[k]nowledge and intent must often be proven by circumstantial evidence").

Plaintiffs "may not relitigate claims that the court previously rejected." *Lerman* v. *Turner*, No. 10 C 2169, 2014 WL 13110835, at *4 (N.D. Ill. June 20, 2014). To the extent Individual Defendants seek to exclude other evidence "relating only to those [dismissed] claims," however, they have failed to so specify. (Dkt. 285 at 6.) The motion is therefore denied. *Lerman*, 2014 WL 13110835 at *4 ("Unless and until defendants can inform the court which evidence, in particular, they seek to bar and illustrate to the court why it is not relevant to other of Lerman's claims, this motion is denied.").

**No. 2: Bar reference to other lawsuits, complaint register ("CR") files, or other disciplinary history events**

Individual Defendants next seek to bar any evidence or argument regarding (1) any lawsuits filed against Individual Defendants; (2) any complaints listed in their CR histories; (3) their CR/disciplinary histories; (4) internal affairs investigations; and (5) IPRA/COPA investigations produced in this case. They contend that such evidence could only be used for an inadmissible propensity purpose. Moreover, they argue, since plaintiffs' *Monell* claims against the City of Chicago have been bifurcated (dkt. 186), unrelated incidents of alleged misconduct are irrelevant—including those involving Individual Defendants. Plaintiffs intend to introduce evidence of Individual Defendants' sustained CRs at trial and the fact that Bartik was found liable for malicious prosecution at a prior civil trial. (*See* Dkt. 358 at 6.) They respond that such evidence is admissible for several non-propensity purposes.

Under Federal Rule of Evidence 404(b), evidence of "other crimes, wrongs, or acts" is inadmissible to prove propensity, but may be admissible for other purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, [or] absence of mistake or accident." *See Rothwell* v. *City of Chicago*, No. 10 C 1338, 2011 WL 5169419, at *2 (N.D. Ill. Oct. 31,

4

2011) (quoting *Duran* v. *Town of Cicero, Ill.*, 653 F.3d 632, 644–45 (7th Cir. 2011)). A proponent of such evidence, however, "must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *DeLeon-Reyes* v. *Guevara*, No. 1:18-CV-01028, 2020 WL 1429521, at *3 (N.D. Ill. Mar. 18, 2020) (quoting *United States* v. *Gomez*, 763 F.3d 845, 860 (7th Cir. 2014)). The relevance must not include the forbidden propensity inference. *Id*. If that initial showing is satisfied, then the court weighs the probative value of the evidence against the risk of unfair prejudice. *Id.*; Fed. R. Evid. 403. As part of this balancing test, the court considers the degree to which the other act is contested. *Guevara*, 2020 WL 1429521, at *3.

The court is without sufficient information to undertake the 404(b) inquiry. Individual Defendants ask the court to bar broad categories of evidence without identifying any specific examples. Likewise, plaintiffs do not identify the sustained CRs they wish to introduce, or the purpose for which Bartik's prior lawsuit would be admitted. The court therefore reserves ruling. *See Sabet* v. *City of N. Chicago, Illinois*, No. 16 C 10783, 2023 WL 11983110, at *4 (N.D. Ill. Oct. 17, 2023) ("Because the Court cannot determine the relevance of Sabet's prior lawsuits to the Defendants' cross-examination at this time, it reserves ruling on Sabet's motion *in limine*[.]"). Plaintiffs are to proffer all CR files, prior lawsuits, and other disciplinary history events outside the presence of the jury, at which time the court will rule on their admissibility.

**No. 3: Equal trial time as plaintiffs**

Individual Defendants next move the court to enter an order "limiting each party to an equal amount of trial time." (Dkt. 285 at 10.) They "anticipate Plaintiff[s] taking excessive time during their case in chief such that it will eat into Individual Defendants['] time to present their case." (*Id.*) As such, they argue, "It is only fair that each side be given an equal opportunity to present their respective positions." (*Id.*)

Plaintiffs bear the burden of proof at trial and may require more time to present their case-in-chief than Individual Defendants need to present their defense. *See Trustees of Chicago Plastering Inst. Pension Tr.* v. *Cork Plastering, Inc.*, No. 03 C 6867, 2008 WL 728897, at *4 (N.D. Ill. Mar. 18, 2008) ("[U]sually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant.") (quotation omitted). The motion is therefore denied. The court may, however, curtail the proceedings as necessary to promote efficiency. The parties are expected to work together to fairly allocate time to each witness who will be called only once and questioned by both sides.

**No. 4: Exclude any use of the terms "code of silence," "blue wall," and other similarly prejudicial terms**

Individual Defendants move to exclude use of the terms "code of silence," "blue wall," and similar terms relating to the Chicago Police Department and its officers. (Dkt. 285 at 10.) They argue such terms are irrelevant and unduly prejudicial because they carry a "risk that the jury would judge [Individual Defendants] based on the perceived action or inaction of others." (*Id.* at 11.) Plaintiffs respond that the terms are relevant to their claims and further note that the

motion is too broad because Defendants seek to bar "other similar generalizations or terms." (Dkt. 358 at 8.)

The motion is granted in part and denied in part. Plaintiffs "may not use the term 'code of silence' or 'blue wall' as these terms are unduly prejudicial." *Betts* v. *City of Chicago, Ill.*, 784 F. Supp. 2d 1020, 1029 (N.D. Ill. 2011); *Bennett* v. *Thomas*, No. 12-CV-6060, 2014 WL 13110820, at *10 (N.D. Ill. Jan. 16, 2014) (same). Plaintiffs also may not introduce evidence or argue that "law enforcement officers typically adhere to a 'code of silence' or 'blue wall' to cover up misconduct." *Betts*, 784 F. Supp. 2d at 1029. Similarly, "generalized allegations—separate and apart from what may be true of the officers named as defendants here—are not helpful and are akin to impermissible propensity evidence." *Id.* at 1028–29.

Plaintiffs otherwise may introduce evidence that Individual Defendants "are attempting to cover up the (allegedly) wrongful conduct arising from the incidents in this case or otherwise are biased toward one another." *Ratliff* v. *City of Chicago*, No. 10 C 739, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012); *Saunders* v. *City of Chicago*, 320 F.Supp.2d 735, 740 (N.D. Ill. 2004) ("The plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another."). To the extent Individual Defendants seek exclusion of similar terms, they may object at trial.

**No. 5: Bar reference to specific instances of alleged misconduct of Individual Defendants**

Individual Defendants next seek to bar any admission of evidence or exhibits "in the form of [CRs], past civil lawsuits, Summary Punishment Action Requests ('SPARs'), and other disciplinary matters that were exchanged during fact discovery, even if not identified as an exhibit in the Final Pre-Trial Order." (Dkt. 285 at 11.) Individual Defendants contend that such evidence is irrelevant for non-propensity purposes. Moreover, they argue that the CR files Plaintiffs seek to admit contain only allegations, not sustained findings.

Individual Defendants' motion closely resembles the broad relief sought in motion *in limine* no. 2 (seeking exclusion of prior lawsuits, complaints listed on CR histories, CR/disciplinary histories, internal affairs investigations, and IPRA/COPA investigations). For the reasons described in the order regarding that motion, the court reserves ruling.

**No. 6: Exclude evidence and argument relating to any other incident of alleged police misconduct in the media**

Individual Defendants seek to exclude evidence of other police misconduct incidents in the media that are "unrelated to the matters in this case." (Dkt. 285 at 15.) They argue that such evidence is irrelevant, unduly prejudicial, improper character evidence, and inadmissible hearsay. Plaintiffs seek to "reserve the right to raise instances of specific misconduct by the defendants in this case where they are relevant for non-propensity reasons." (Dkt. 358 at 9.)

The motion is granted. Plaintiffs may not introduce any evidence of police misconduct in unrelated matters, as it would be unduly prejudicial. *Saunders*, 320 F. Supp. 2d at 740 (barring evidence regarding other cases of police misconduct because it is "marginally probative at best,

and it is highly inflammatory and prejudicial”); *Redmond* v. *City of Chicago*, No. 06 C 3611, 2008 WL 539164, at *6 (N.D. Ill. Feb. 26, 2008) (excluding reference to instances of police misconduct that “are unrelated to this case and have been publicized in the media” because it would be “irrelevant and overly prejudicial”). To the extent plaintiffs contend that an instance of police misconduct is related to this action, they must preview the evidence outside the presence of the jury.

**No. 7: Exclude evidence and argument regarding the passage of time between the incident and the trial in this case**

Individual Defendants request that the court bar plaintiffs from using phrases that allude to the passage of time in in this matter such as: plaintiffs have been “waiting for their day in court,” or that the trial “was a long time coming.” (Dkt. 285 at 16.)

The motion is granted in part and denied in part. Plaintiffs may not “refer to the period of time that has elapsed in *litigation* up to trial, which would be an irrelevant and prejudicial reference.” *See Sanchez* v. *City of Chicago*, No. 12 C 06347, 2015 WL 14071885, at *9 (N.D. Ill. July 14, 2015) (emphasis in original). Nevertheless, plaintiffs may reference the length of time between the events and trial, as it is relevant to both “the effect of this period on [witnesses’] memory” and damages. *Sanchez*, 2015 WL 14071885, at *9; *Gray* v. *City of Chicago*, No. 1:18-CV-02624, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023) (“[Plaintiff] may testify about the length of time that he allegedly suffered emotional distress[.]”).

**No. 8: Exclude evidence and argument relating to any undisclosed witnesses or opinions**

The motion is unopposed and therefore granted. *See* Fed. R. Civ. P. 37(c)(1).

**No. 9: Exclude lay witness testimony regarding Plaintiffs’ alleged physical and emotional injuries**

Individual Defendants ask the court to bar evidence of lay witness testimony “regarding Plaintiffs’ alleged physical and emotional injuries.” (Dkt. 285 at 17.) They concede that plaintiffs may call damages witnesses but argue that testimony should not “cross the bounds of lay witness testimony and enter into expert opinion testimony.” (*Id.*) Plaintiffs agree that lay witnesses “may not offer expert opinions or the cause of plaintiffs’ mental and emotional distress,” but respond that lay witnesses are entitled to testify about their own perceptions, including the physical and emotional effects of Individual Defendants’ alleged conduct. (Dkt. 358 at 10.)

Injuries that “would not be obvious to a layman” and “may have been caused by a myriad of factors” require expert testimony to establish causation. *Bennett*, 2014 WL 13110820, at *9 (quoting *Myers* v. *Ill. Cen. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010)). Matters regarding “prognosis or the necessity for future treatment” also require “medical expertise outside of the lay person’s realm of knowledge.” *Id.* (quoting *Brandon* v. *Vill. of Maywood*, 179 F. Supp. 2d 847, 859–60 (N.D. Ill. 2001)).

Lay witnesses may provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Accordingly, a lay witness may testify about their "own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Christmas* v. *City of Chicago*, 691 F.Supp.2d 811, 821 (N.D. Ill. 2010).

The motion is therefore granted in part and denied in part. Lay witnesses may testify about their "perception of the injuries [plaintiffs] sustained," including "any pain, fear, or anxiety" plaintiffs experienced. *Bennett*, 2014 WL 13110820, at *10 (quotation omitted). They may not, however, opine that Individual Defendants "caused [plaintiffs'] mental and physical health problems." *Id.* Nor will lay witnesses be permitted to "offer medical opinions that require scientific, technical, or other specialized knowledge." *Christmas*, 691 F.Supp.2d at 821.

**No. 10: Exclude evidence and argument relating to police practices which insinuate wrongdoing but which are constitutional**

Individual Defendants next move to bar plaintiffs from presenting any evidence or argument suggesting that "legally permissible police tactics … are suggestive of wrongdoing by Individual Defendants." (Dkt. 285 at 18.) For example, Individual Defendants note that "false evidence ploys," lying to a suspect, and asking accusatory questions are constitutional practices. (*Id.*) Plaintiffs respond that such practices are relevant because whether they voluntarily confessed is based on the totality of the circumstances.

Plaintiffs' procedural due process claims based on coerced confession depend on whether the "statements to authorities were voluntary." *United States* v. *Outland*, 993 F.3d 1017, 1021 (7th Cir. 2021). A confession is voluntary where, "in the totality of circumstances, it is the product of rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States* v. *Sturdivant*, 796 F.3d 690, 695 (7th Cir. 2015) (quotation omitted). As part of this inquiry, the court considers "both the characteristics of the accused and the details of the investigation[.]" *Gilbert* v. *Merchant*, 488 F.3d 780, 791 (7th Cir. 2007) (quoting *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 226 (1973)). This includes "the length of the defendant's detention; the nature of the interrogations … and the use of physical punishment, including deprivation of food or sleep." *United States* v. *Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). This squarely encompasses the interrogation tactics Individual Defendants allegedly employed against plaintiffs.

Individual Defendants contend that "[a]ctual involuntariness is completely irrelevant if it is not the product of some illegal conduct by the police." (Dkt. 285 at 19) (citing *Johnson* v. *Trigg*, 28 F.3d 639, 641 (7th Cir. 1994)). While it may be true that deceit or other manipulative interrogation tactics are not inherently unconstitutional, such evidence remains relevant to the voluntariness of their confessions. *See Gray*, 2023 WL 7092992, at *16 ("Gray may not argue that the Defendants violate[] some legal entitlement to the presence of his family during the interrogation. But Gray may make the *factual* point that he asked for his family and was either

8

ignored or told no, and that [is] relevant to the totality-of-the-circumstances analysis on coercion.") (emphasis in original). The motion is therefore denied as to police tactics used against Plaintiffs.

Plaintiffs do not address the relevance of police practices used against other witnesses such as Griffin, Marinelli, and Shaw. Nevertheless, they continue to press an evidence-fabrication claim, for which a defendant's "[k]nowledge and intent must often be proven by circumstantial evidence." *Brown*, 633 F. Supp. 3d at 1157. Moreover, depending on Individual Defendants' testimony at trial, the evidence may be relevant for impeachment. The court therefore reserves ruling regarding the admissibility of police practices as to the other witnesses.

### No. 11: Exclude evidence and argument that any police officer falsely testified or provided misleading testimony at Plaintiffs' criminal trials or during any criminal proceedings

Individual Defendants next seek to bar any evidence or argument that a police officer provided false or misleading testimony during plaintiffs' criminal trials or related proceedings. They argue that such evidence "is irrelevant and has no probative value," and even if relevant, the court should exclude it as either inadmissible propensity evidence or as unduly prejudicial. They contend such evidence risks the suggestion that plaintiffs' conviction and habeas relief were "based on perjured testimony and that the Individual Defendants were and are lying." (Dkt. 285 at 21.) Individual Defendants also suggest that allowing such evidence or argument would violate immunity principles, as police officers testifying for the prosecution enjoy "absolute immunity from a later suit under 42 U.S.C. § 1983 based on their alleged perjury." (*Id.* at 20.)

Plaintiffs concede that Individual Defendants cannot be liable for false testimony, but argue that absolute immunity "does not preclude Plaintiffs from arguing that by testifying consistently with the evidence they fabricated, Defendants thereby testified falsely at Plaintiffs' criminal proceedings." (Dkt. 358 at 14.) They argue that this evidence "confirms that the Defendants committed the constitutional torts by testifying in accordance with their pre-trial fabrications at trial" and is "probative of an earlier conspiracy." (Dkt. 358 at 14–15.)

The motion is denied in part and reserved in part.[4] Absolute immunity does not attach where the plaintiff "accused officers 'of behavior that goes well beyond testimony given at trial.'" *Garcia* v. *Hudak*, 156 F. Supp. 3d 907, 917 (N.D. Ill. 2016) (quoting *Manning* v. *Miller*, 355 F.3d 1028, 1032–33 (7th Cir. 2004)). Here, plaintiffs "allege[] misrepresentations regarding conduct that happened outside the courtroom." *Id.* The allegations therefore exceed the scope of perjury, or even conspiracy to commit perjury: "[H]ere we are dealing with investigators creating false evidence rather than a prosecutor examining a witness." *Manning*, 355 F.3d at 1033. Absolute immunity does not attach in such circumstances. *Garcia*, 156 F. Supp. 3d at 917

---

[4] Plaintiffs briefly suggest that Individual Defendants "actively sought Plaintiffs' arrest" and thus fall under a "complaining witness" exception to absolute immunity. The Supreme Court has rejected this doctrine. *Rehberg* v. *Paulk*, 566 U.S. 356, 371 (2012) ("It is clear … that a complaining witness cannot be held liable for perjurious trial testimony.") (emphasis omitted); *see also Maxson* v. *Dwyer*, No. 16 C 9417, 2017 WL 1493712, at *5 (N.D. Ill. Apr. 26, 2017) ("Plaintiff argues that there is an exception to the rule of absolute testimonial immunity for 'complaining witnesses.' This argument was rejected by *Rehberg* v. *Paulk*, [566] U.S. 356 (2012). Defendants are absolutely immune from any false testimony claims."); *Wilson* v. *Est. of Burge*, 667 F. Supp. 3d 785, 837 (N.D. Ill. 2023) (citing *Maxson* for same proposition).

(denying motion to dismiss *Brady* claim where defendants raised absolute immunity defense for testimony they provided as witnesses). Such testimony is relevant to establishing Individual Defendants' claims. To the extent plaintiffs seek to introduce testimony for this purpose, the motion is denied.

Finally, "evidence of a witness providing false testimony may be admissible to attack that witness' character for truthfulness or to impeach Defendants' witnesses with prior inconsistent statements." *Fields* v. *City of Chicago*, No. 12 C 1306, 2018 WL 1652093, at *11 (N.D. Ill. Apr. 5, 2018). In the absence of specific statements plaintiffs seek to introduce for impeachment purposes, however, the court reserves ruling. *Id.* ("The Court reserves ruling on this motion without knowing the exact false statements Plaintiff seeks to introduce[.]").

**No. 12: Preclude Plaintiffs' from referring to themselves, Shaw, or Griffin as "kids" or other similar terms designed to evoke leniency**

Individual Defendants next move to bar any reference to plaintiffs, Shaw, and Griffin as "children," "kids," "minors," "teenagers," or similar terms "implying they should be treated in an especially lenient manner." (Dkt. 285 at 22.) They argue that such terms provide no evidentiary value and are inconsistent with the law.

When the murder underlying this case occurred, Fulton was 18 years old, Mitchell and Griffin were 17 years old, and Shaw was 15 years old. Accordingly, Individual Defendants argue that they were "legally adults in the eyes of the Illinois justice system." (citing 705 Ill. Comp. Stat. 405/5-120 (P.A. 90-590, eff. Jan. 1, 1999) (creating exclusive jurisdiction in juvenile courts for anyone under age 17, subject to certain exceptions); 705 Ill. Comp. Stat. 405/5-130(1)(a) (P.A. 92-665, eff. Jan. 1, 2003) (creating exception for first degree murder, in which case 15-year-olds and older may be charged as an adult)).

Plaintiffs respond that plaintiffs, Griffin, and Shaw were objectively teenagers at the time. Additionally, they argue that plaintiffs' ages are relevant to damages, as it bears on their time spent incarcerated and their mental and emotional harm. They further contend that the witnesses' ages bear on the wrongfulness of the alleged misconduct.[5]

The motion is granted in part and denied in part. The court agrees that plaintiffs' ages are relevant to their false confession claims and damages. *See, e.g.*, *Huerta*, 239 F.3d at 871 (factors relevant to false confession claim include the interrogated person's "age, education, intelligence level, and mental state"); *see Gray*, 2023 WL 7092992, at *15 (permitting plaintiff to testify as to the length of time he suffered emotional distress caused by incarceration). Because it is undisputed that plaintiffs, Griffin, and Shaw were teenagers at the time of the incident, there risks no prejudice in correctly referring to them as such. Plaintiffs may also use terms such as "young men" and "young women."

---

[5] Plaintiffs also note that the Illinois legislature has since raised the age limitations of the relevant statutes. 705 Ill. Comp. Stat. 405/5-120; (creating exclusive jurisdiction in juvenile courts for anyone under age 18, subject to certain exceptions); 705 Ill. Comp. Stat. 405/5-130(1)(a) (creating exception for first degree murder, in which case 16-year-olds may be charged as an adult).

Plaintiffs may not, however, use other diminutive terms such as "children," "kids," "minors," and "juveniles," as such terms are unduly prejudicial and have no relevance. As plaintiffs concede, "whether Plaintiffs and Shaw were investigated as juveniles or adults has nothing to do with this case." (Dkt. 358 at 17.) Accordingly, such terms would only serve to "garner emotional sympathy, which is an improper basis for the presentation of evidence or arguments at trial." *Ross* v. *City of Chicago*, No. 13 C 751, 2014 WL 1344279, at *4 (N.D. Ill. Apr. 3, 2014).

**No. 13: Exclude any evidence and argument relating to previously dismissed individuals**

Individual Defendants next seek to exclude evidence that concerns previously dismissed claims and individuals and is "unrelated to the surviving claims and defendants." (Dkt. 285 at 24.) Plaintiffs "do not oppose this motion only to the extent it bars any parties from mentioning dismissed defendants or claims." (Dkt. 358 at 18.)

Individual Defendants' argument closely resembles their motion *in limine* no. 1. As stated in that ruling, plaintiffs may not relitigate claims that the court previously rejected. Nevertheless, Individual Defendants fail to identify the specific evidence they seek to bar. Until they do so and explain why the evidence is not relevant to the remaining claims, the motion is denied. *Id.*

**No. 14: Bar any evidence and argument relating to or suggestive of burden-shifting**

Individual Defendants seek to preclude plaintiffs from offering evidence or argument "suggestive of burden-shifting." (Dkt. 285 at 24.) Plaintiffs agree that they will not suggest Individual Defendants bear the burden of proof but argue that "simply commenting on the evidence, and drawing reasonable inferences therefrom, is not improper." (Dkt. 358 at 19.)

The motion is therefore granted to the extent that plaintiffs are prohibited from "actually arguing that the Defendants have the burden of proof." *Gray*, 2023 WL 7092992, at *15. The motion is otherwise denied, as plaintiffs maintain "wide latitude to argue and point out weaknesses in the defense argument." *Id.*

Individual Defendants also express concern with potential arguments that "choos[ing] not to call a witness, regardless of whether or not that witness is under their control, reflects poorly on [their] case." (Dkt. 285 at 24–25.) The court reserves ruling on such arguments for trial. *Gray*, 2023 WL 7092992, at *15. If plaintiffs make the argument that a witness might have been called, if the witness was not under defendants' control, they may point out that plaintiffs could also have called the witness.

**No. 15: Bar evidence or argument that non-defendants committed misconduct**

Individual Defendants argue that plaintiffs and their counsel should be barred from offering any evidence or argument that any CPD or City of Chicago personnel who are not current defendants in this lawsuit committed misconduct in the underlying investigation into the Collazo murder. Plaintiffs respond that the motion, as written, "would literally bar Plaintiffs from 'any reference' to any 'non-party officer' or dismissed defendant such as Detective Rolston."

11

(Dkt. 358 at 19.) Additionally, plaintiffs emphasize that "lots of non-party officers … had some role in the investigation" and there still remains a conspiracy claim in this action. (*Id.*)

The motion is granted as to "any evidence or argument that Defendants may be held directly liable or be assessed damages based on the conduct of other non-defendant officers." *Gomez* v. *City of Chicago*, No. 13 C 05303, 2015 WL 13651138, at *8 (N.D. Ill. June 29, 2015). In the absence of specific examples of non-party misconduct, however, the court declines to bar all such evidence, as it may become relevant at trial. The court therefore reserves ruling, "so long as the misconduct bears on [Individual Defendants'] liability or some other relevant issue in the case." *Id.* Individual Defendants may object during trial.

**No. 16: Bar argument or suggestions that the jury should punish or "send a message" to the City of Chicago and Chicago Police Department by its verdict against Individual Defendants**

Individual Defendants request that the court bar plaintiffs' counsel from offering any argument or suggestion that the jury should "punish, admonish, warn, discourage, or send a message" with their verdict or damages award to the City and CPD, as it improperly suggests the City is liable for punitive damages. (Dkt. 285 at 26.) The motion is granted.

**No. 17: Bar Plaintiffs' counsel from breaking up Defendants' cross examination of Plaintiffs**

Individual Defendants request the court enter an order prohibiting plaintiffs' counsel from "interrupting and/or breaking up" their cross-examination of plaintiffs or any other witnesses "into multiple sections or days by scheduling other trial witnesses (including experts) to be presented while Defendants are in the middle of their cross-examination." (Dkt. 285 at 27–28.) They contend that introducing new witnesses would disrupt the flow of questioning and may confuse the jury.

The parties must work cooperatively to plan the order and timing of witnesses so as to avoid unnecessary interruptions of any witness. The motion is moot.

**No. 18: Bar any argument relating to sufficiency of underlying police investigation**

Individual Defendants next ask the court to exclude any evidence or argument that Individual Defendants, "after arresting Plaintiffs, failed to take further investigative actions." (Dkt. 285 at 29.) For example, they argue, plaintiffs allege that Individual Defendants did not seek to have Fulton's car tested for Collazo's blood or DNA; did not uncover evidence following plaintiffs' arrest such as travel logistics, phone records, and video evidence; and failed to investigate the La Raza street gang as potential suspects. Individual Defendants contend that their duty to investigate "ended once they established probable cause." (*Id.* at 28–29) (citing in part *Anderer* v. *Jones*, 385 F.3d 1043, 1049 (7th Cir. 2004) ("[O]nce probable cause has been established, officials have 'no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence.'") (citation omitted)).

12

This argument rests on the conclusional assertion that probable caused existed to initiate charges against plaintiffs. This remains a disputed fact to be resolved at trial. (Dkt. 256 at 53) ("Police Officer Defendants argue that they are entitled to summary judgment on Count III because they 'had probable cause to initiate charges' against plaintiffs. As the court has already determined, however, the Police Officer Defendants cannot establish probable cause as a matter of law.") (internal citation omitted).[6] Individual Defendants' conduct of the investigation is therefore relevant.

Individual Defendants' post-arrest conduct may also be probative of bias and their state of mind to fabricate evidence. *See Gomez*, 2015 WL 13651138, at *10 (plaintiff was not precluded "from eliciting facts about any flaws in the [police] investigation that would tend to show bias or to explain the presence or absence of certain evidence"); *see also Brown*, 633 F. Supp. 3d at 1157. The court reserves ruling.

### No. 19: Bar argument that the absence of DNA evidence is proof of police misconduct

Individual Defendants next seek to exclude any argument that a lack of DNA or fingerprint evidence serves as evidence of misconduct. Specifically, they note that plaintiffs, as part of their evidence-fabrication theory, allege that Individual Defendants failed to have Fulton's car tested for Collazo's blood or DNA. In plaintiffs' allegedly false confessions, they admitted to placing Collazo into Fulton's car trunk. Therefore, plaintiffs' theory is that Individual Defendants never collected DNA from the car because they knew plaintiffs' confessions were false.

Individual Defendants argue that such arguments require "too great" of an inferential leap because "'no evidence is no evidence … not affirmative evidence' of police misconduct," especially in light of testimony to the contrary." (Dkt. 285 at 30) (quoting *King* v. *Hendricks Cty. Commissioners*, 954 F.3d 981, 986 (7th Cir. 2020)).[7]

The insufficiency of evidence to state a claim does not necessarily render it irrelevant to a surviving claim. *See Hill* v. *City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *4 (N.D. Ill. July 28, 2011) ("[T]he dismissal of Hill's *Brady* claim does not necessarily mean that all evidence that formed the basis of his *Brady* claim is inadmissible."). As ruled in motion *in limine* no. 18, the sufficiency of Individual Defendants' investigation may be relevant to bias and their state of mind. *See Gomez*, 2015 WL 13651138, at *10; *Brown*, 633 F. Supp. 3d at 1157.

Individual Defendants' reliance on *Mitchell* v. *City of Chicago*, 862 F.3d 583 (7th Cir. 2017) is similarly unavailing. While the court affirmed exclusion of the failure of Illinois State

---

[6] Individual Defendants similarly argue that "police officers cannot be liable for failing to take additional investigatory actions after coming to a reasonable probable cause determination." (Dkt. 285 at 28) (emphasis added) (citing *Eversole* v. *Steele*, 59 F.3d at 718 (7th Cir. 1995)). Again, however, the court concluded otherwise at summary judgment: the undisputed facts did not establish "even arguable probable cause[] as a matter of law." (Dkt. 256 at 35.)

[7] This decision dealt with whether there were fingerprints of a defendant officer. The court ruled that the lack of fingerprint evidence was insufficient to create a genuine issue of material fact for trial. Whether it would have been admissible evidence at trial is a different question.

Police to conduct DNA swabs, the case involved excessive force by City of Chicago police officers. The court therefore ruled that the failure to conduct DNA testing was irrelevant to "whether the officers were reasonably fearful of Jackson at the time of the shooting." *Id.* at 587. Because the absence of DNA evidence is relevant here, the motion is denied.

**No. 20: Bar evidence regarding any alleged deviation from Chicago Police Department internal policies**

Individual Defendants next seek to bar any evidence or argument related to "any alleged deviation from CPD internal policies." (Dkt. 285 at 30.) They specifically contend that violations of CPD rules and regulations "cannot establish proof that a defendant violated a plaintiff's constitutional rights." (*Id.*) (citing *Hill*, 2011 WL 3205304, at \*3). Moreover, they argue that evidence of general orders is not relevant because plaintiffs' *Monell* claims have been bifurcated. (Dks. 185, 186.)

"[T]he violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson* v. *City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). Nevertheless, without insight into the specific CPD policies challenged, the court is unwilling to conclude that such evidence is categorially inadmissible. *See Bruce* v. *City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at \*3 (N.D. Ill. July 29, 2011) ("[T]he Court cannot conclude definitively that there is no scenario in which General Orders, rules, or regulations conceivably could come into this case."). For example, evidence of CPD policies "may be relevant for other purposes … including to prove state law claims" or punitive damages. *See Jones* v. *Walters*, No. 12-CV-5283, 2016 WL 1756908, at \*8 (N.D. Ill. Apr. 29, 2016); *Bruce*, 2011 WL 3471074, at \*3 ("*Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages.") (quotation omitted).

The motion is therefore granted in part and reserved in part. Plaintiffs may not use "violations of CPD General Orders or other policies and procedures as prima facie evidence of a constitutional violation." *Gonzalez* v. *Olson*, No. 11 C 8356, 2015 WL 3671641, at \*13 (N.D. Ill. June 12, 2015). The court otherwise reserves ruling. Plaintiffs are to raise any CPD policies outside the presence of the jury. The court notes that "the proponent … carries a heavy burden under Rules 401 and 403." *Walters*, 2016 WL 1756908, at \*8. To the extent this evidence overlaps with plaintiffs' police practices expert testimony, Plaintiffs should avoid unnecessary duplication.

Plaintiffs also mention that they seek to present "expert testimony about Chicago police practices, including what general police standards are and how Defendants deviated from those standards." (Dkt. 358 at 25.) They later clarify, however, that they "intend to focus their police practices experts' standards on the national standards of police practices." (Dkt. 358 at 27.) The court addresses Individual Defendants' *Daubert* motion as to plaintiffs' police practices expert separately. (Dkt. 278.) For purposes of this motion, the expert did not review specific CPD policies in rendering his report. (Dkt. 278-1 at 2–3.) Without more context as to the expert testimony, the court reserves ruling.

14

**No. 21: Bar evidence or argument that Antonio Shaw's confession was fabricated**

Individual Defendants next seek to bar any evidence or argument that they fabricated Shaw's confession. They contend that Shaw's handwritten statement cannot be used to support plaintiffs' false confession claims because Shaw's statement was never introduced against plaintiffs at their criminal trials, as it was suppressed. Plaintiffs respond by conceding that their evidence-fabrication claim cannot be based "solely on Shaw's fabricated confession," but they contend that the confession may be introduced "as evidence that their own confessions were fabricated." (Dkt. 358 at 27.)

At summary judgment, the court explained, "To state a due process violation based on fabricated evidence, a plaintiff must show that the fabricated evidence was used against him at his criminal trial." (Dkt. 256 at 44.)[8] The court agrees that Shaw's statement cannot independently support plaintiffs' evidence-fabrication claims because it was suppressed at plaintiffs' trial. (*Id.*); *Patrick* v. *City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). Even so, this does not render evidence regarding Shaw's statement entirely inadmissible. *See Hill*, 2011 WL 3205304, at *4 (denying request to bar evidence of missing or withheld police documents even though the court dismissed *Brady* claim at summary judgment). Whether Shaw's statement was fabricated remains relevant to whether Individual Defendants fabricated plaintiffs' own confessions. Because Individual Defendants have "failed to establish that this evidence is clearly inadmissible for any purpose," their motion is denied. *Id.*

**No. 22: Bar all references to police officers not making electronic recordings of interviews[9]**

Individual Defendants move to exclude all evidence relating to the lack of electronic interview recordings occurring prior to July 18, 2003—the date police became legally obligated to electronically record custodial interrogations. 725 Ill. Comp. Stat. 5/103–2.1(b). Because the investigation took place in March 2003, Individual Defendants argue that any evidence or argument that they "should have recorded the interview" or "that there was a deliberate choice by any of the Defendant Officers to not record the interviews" would be irrelevant and unduly prejudicial. (Dkt. 285 at 33.)

Plaintiffs respond by noting that Individual Defendants chose to record Mitchell's inculpatory statement but made no other recordings while plaintiffs were in custody. They seek permission to point out this selective recording, as the technology existed, and no law prevented them from doing so. While consistent with 725 Ill. Comp. Stat. 5/103–2.1(b), Individual Defendants' choice to record only portions of Mitchell's interview frames the evidence for the jury. *See United States* v. *Birdrattler*, No. CR-19-57-GF-BMM, 2019 WL 5887397, at *4 (D. Mont. Nov. 12, 2019) (cautioning that partially recording interviews "affects the reliability and fairness of presenting the recorded [summary confession] statements to the jury").

---

[8] The court added, however, that it "need not determine that there are genuine disputes with respect to every piece of allegedly fabricated evidence to advance plaintiffs' fabrication claims to trial." (Dkt. 256 at 45) (citing *Camm* v. *Faith*, 937, F.3d 1096, 1108–09 (7th Cir. 2019); *Goudy* v. *Cummings*, 922 F.3d 834, 838 (7th Cir. 2019)).

[9] The court anticipates that, if the jury learns that a videotape was made, they will want to see it or, at least, find it disturbing to know it was not presented. The parties should consider omitting this line of questioning and omitting reference to the video.

15

The motion is therefore granted in part and denied in part. Plaintiffs may not argue that Individual Defendants' failure to record their custodial interrogations was unlawful or creates liability. 725 Ill. Comp. Stat. 5/103–2.1(b). They may, however, present evidence that Individual Defendants only recorded Mitchell's inculpatory statement despite the larger interrogation. Individual Defendants may respond with evidence that they were under no legal obligation to record Mitchell's full interrogation, or any others.

**No. 23: Bar reference to how the City of Chicago trains, disciplines, monitors, or controls police officers**

Individual Defendants next move to bar reference to how the City of Chicago "trains, disciplines, monitors, or otherwise controls its police officers." (Dkt. 285 at 33.) The court has bifurcated plaintiffs' *Monell* claims pending resolution of their underlying substantive claims. (Dkts. 185, 186.) Individual Defendants argue that such information is not relevant to the claims in the upcoming trial and would be highly prejudicial, in part because the parties have not yet conducted *Monell* discovery. Plaintiffs respond that evidence of Individual Defendants' training regarding report writing, collecting physical evidence, documenting chain of custody, and conducting custodial interrogations bears directly on their claims, and should not be excluded merely because the *Monell* claim has been bifurcated.

Without a *Monell* claim proceeding to this trial, "evidence of training and supervision of officers is generally irrelevant[.]" *Martin* v. *City of Chicago*, No. 15-CV-04576, 2017 WL 2908770, at *7 (N.D. Ill. July 7, 2017) Nevertheless, training "can be relevant to what a reasonable officer would have done, which goes to the issue of whether there was probable cause." *Holmes* v. *City of Chicago*, No. 09-CV-2481, 2016 WL 6442117, at *11 (N.D. Ill. Nov. 1, 2016). Indeed, "[i]n making probable-cause determinations, law enforcement agents are entitled to draw reasonable inferences from the facts before them, based on their training and experience." *Martin*, 2017 WL 2908770, at *7 (quotation omitted). Plaintiffs may also rely on such evidence to prove their evidence-fabrication claims. *Brown*, 633 F. Supp. 3d at 1157.

Accordingly, the court "is unwilling to conclude at this juncture that the Defendant Officers' training—as distinguished from the Chicago Police Department's training policies in general—is necessarily irrelevant." *Martin*, 2017 WL 2908770, at *7. Certainly, inquiry may be made into an individual defendant's training and experience. Presumably, he could be asked whether a particular action was consistent with his training. The motion is therefore granted in part and denied in part. Plaintiffs may not introduce evidence of general practices regarding training, discipline, or monitorship, or control of police officers. If plaintiffs wish to raise an Individual Defendant's training, however, they must first do so outside the presence of the jury. *Id.*

**No. 24: To Exclude any Opinion Testimony Regarding Beliefs Regarding Plaintiffs Actual Innocence (Dkt. 287)**

Individual Defendants move to exclude any lay opinion testimony regarding any witness's belief as to the Plaintiffs' innocence or their credibility in describing their innocence. This motion is granted in part and denied in part.

Plaintiffs proffer that "Griffin can testify that she knows Plaintiffs are innocent because she never provided them with information about Collazo or where to find him, and she knows the police fabricated her statement. Shaw can also testify that he knows Plaintiffs did not kill Collazo, because he was not with them the night of the murder abducting Collazo and killing him." (Dkt. 381 at 1-2.)

Lay witnesses may provide opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Accordingly, a lay witness may testify about their "own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Christmas*, 691 F.Supp.2d at 821. Therefore, lay witnesses may testify about their own knowledge of the plaintiffs' innocence, based on their own observations and perception.

As for Griffin, her denial that she provided information about Collazo to the plaintiffs is circumstantial evidence of their innocence. Her opinion that they were innocent is not sufficiently based on her own perceptions or other knowledge that would permit her to so testify. Similarly, Shaw's testimony that he was not with plaintiffs on the night of the murder does not provide a foundation for his opinion that they were innocent. Ruling is reserved to the extent a proper foundation may be laid at trial.

Plaintiffs do not object to the motion to bar Marisol Cardero from testifying to their innocence. Plaintiffs do not object, so the motion is granted to that portion of the motion.

**No. 25: To Bar Plaintiffs' Inadequately Disclosed 404(b) Witness (Dkt. 288)**

Individual Defendants move to bar plaintiffs' inadequately disclosed Rule 404(b) witnesses. (*See* Dkt. 288 at 2 for list of sixteen such undisclosed witnesses). Plaintiffs represent that they would call three undisclosed Rule 404(b) witnesses to testify that Defendant Bartik fabricated their confessions, just as plaintiffs allege in this case. The court will bar these witnesses from testifying, as their testimony would be inadmissible propensity evidence under Fed. R. Evid. 404(b). The motion is granted.

Plaintiffs described in their Fed. R. Civ. P. 26(a)(1) disclosures that these witnesses "may have knowledge concerning the Defendants' history of committing similar misconduct in other cases, and the corrupt and deficient policies, customs and practices of the Chicago Police Department and the City of Chicago[.]" (Dkt. 288-1 at 4.) Individual Defendants argue that these remaining witnesses should be barred from testifying at trial because plaintiffs did not provide their contact information as required by Fed. R. Civ. P. 26(a).

17

Plaintiffs respond that Rule 26(a) only requires plaintiffs to provide such contact information if they "know it"; here, they say that they only failed to supplement their disclosures because they never obtained the contact information for these witnesses themselves. *Terry* v. *Cnty. of Milwaukee*, No. 17-CV-1112-JPS, 2018 WL 2561021, at *1 (E.D. Wis. June 4, 2018) (emphasis added) ("If they *know it*, the [defendants] must disclose the contact information for each of the witnesses they have identified, including each person's current or last known address and phone number.")

However, when a party fails to comply with Rule 26(a), "the party may not use an undisclosed witness at trial unless the failure is substantially justified or harmless." *Stewardson* v. *Cass Cnty.*, No. 3:18-CV-958 DRL, 2023 WL 2596730, at *1 (N.D. Ind. Mar. 22, 2023) (citing Fed. R. Civ. P. 37(c)(1)). The following factors guide the substantial justification or harmlessness determination: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David* v. *Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Plaintiffs represent that they would call no more than 3 of the 14 witnesses. There is no indication that plaintiffs knew at the time of their Rule 26 disclosures that they had contact information; but if they gained that information, they should have timely supplemented the disclosure. There is no indication of bad faith, nor likelihood of disruption at trial. If, however, plaintiffs intend to call witnesses for the purpose of Rule 404(b), they must disclose as they must disclose any non-rebuttal witness and demonstrate, as they argued at the pre-trial conference, that these witnesses have been known to the defendants all along and why their inability to depose the witnesses is not prejudicial.

**No. 26: To Bar Evidence and Theories that were Not Disclosed in Plaintiffs' Responses to Contention Interrogatories (Dkt. 289)**

Individual Defendants move to bar evidence and theories that were not disclosed in plaintiffs' responses to four "contention" interrogatories. This motion is granted. While contention interrogatories are "used to elicit a description of the opposing party's theory and proof to be employed," *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18 C 864, 2019 WL 6498081, at *5 (N.D. Ill. Dec. 3, 2019) (quotation omitted), Individual Defendants argue that plaintiffs failed to apprise them of legal theories. However, the objected-to interrogatory responses appear to be largely factual. Individual Defendants otherwise should not be surprised by the theories on which plaintiffs rely.

**No. 27: To Bar Plaintiffs from Introducing Evidence that the Appellate Court Overturned the Denials of Their Petitions for Certificates of Innocence (Dkt. 290)**

Individual Defendants move to bar evidence regarding the appellate court's decision on plaintiffs' pending petitions for Certificates of Innocence. This motion is granted.

**No. 28: To Bar Plaintiffs from Alleging Liability Against Officers Without Any Personal Involvement (Dkt. 291)**

Individual Defendants move to bar plaintiffs from alleging liability against Individual Defendants without specific allegations or discovery to support that Individual Defendant's personal involvement. This motion is denied.

Plaintiffs correctly state that this court held at summary judgment that there are disputed facts as to the personal involvement of each of the named defendants in violating plaintiffs' rights. Certainly, plaintiffs will have to meet their burden of establishing liability with each of the Individual Defendants at trial. But granting this motion at this stage is both improper and premature.

**No. 29: To Bar Plaintiffs from Introducing Evidence and Testimony Regarding the Suppression of Antonio Shaw's Confession and Related Hearings (Dkt. 292)**

Individual Defendants move to bar plaintiffs from mentioning or introducing (a) evidence or testimony regarding the trial court's decision to suppress Shaw's confession in the original criminal trial as well as (b) the trial court's decision to dismiss the charges against Shaw. The motion is granted in part.

Plaintiffs do not oppose Individual Defendants' motion as it pertains to the outcome and ruling of Shaw's suppression hearing. Plaintiffs maintain, however, that discussions of Shaw's confession or the interrogation that produced his confession should not be excluded. As the court noted in in its ruling with respect to Individual Defendants' motion *in limine* no. 21, whether Shaw's statement was fabricated remains relevant to whether Individual Defendants fabricated plaintiffs' confessions, so evidence or arguments that Shaw's confession was fabricated will not be barred at trial.

**No. 30: To Bar Plaintiffs and their Counsel from Mentioning the 2007 Civil Lawsuit and Shaw's Settlement Payment (Dkt. 332)**

Individual Defendants move to bar plaintiffs from mentioning or offering evidence of the 2007 civil lawsuit as well as that Shaw received a settlement payment from that lawsuit. Plaintiffs do not oppose the motion, and it is therefore granted. *See* Fed. R. Evid. 408.

**No. 31: To Bar Argument that Defendant Officers Exhibited Improper Police Conduct Relating to Antonio Shaw and Johnitta Griffin's Age (Dkt. 294)**

Individual Defendants seek to bar argument that they exhibited improper police conduct towards Shaw and Griffin based on their age. This motion is denied.

Individual Defendants particularly seek to bar arguments or evidence that it was improper for them to question Shaw and Griffin, who were both under eighteen at the time. With respect to Shaw, they argue that any such argument should be precluded because he is not a party to this litigation and has already settled a separate similar case with the Defendants. Similarly, they argue that "Griffin is not a party to this lawsuit and as such, Plaintiffs have no standing to allege

19

liability and claim damages." (Dkt. 294 at 3.) Plaintiffs are not seeking liability on behalf of either Shaw or Griffin.

Whether the Individual Defendants violated their own protocols is relevant to whether Shaw's confession was reliable. The settlement with Shaw does not preclude his testimony about his time in custody. Whether Shaw's confession was fabricated is also directly related to plaintiffs' claims and whether officers followed procedures with respect to his age is probative of the reliability of his confession. Contrary to Individual Defendants' contention, whether they followed proper procedures is a disputed fact for the jury to decide. Therefore, the motion is denied as it pertains to Shaw.

With respect to Griffin, Individual Defendants argue that they similarly followed the proper procedures because Griffin was 17 years old and was considered to be an adult at the time. Whether her statement was fabricated is still in dispute, so it is not prejudicial for plaintiffs to argue that Griffin's statement was unreliable. Therefore, the motion is also denied as it pertains to Griffin.

## No. 32: To Bar Argument that Plaintiffs Should Be Compensated for Being Detained for Longer than 48 Hours and Bar Evidence of Prior Settlement (Dkt. 295)

In this motion, Individual Defendants move to bar plaintiffs from presenting arguments that they should be compensated for being detained without a probable cause hearing for longer than permitted under *Gerstein* v. *Pugh*, 420 U.S. 103 (1975). They further move to exclude evidence of a class action settlement related to this violation of rights through which plaintiffs have already been compensated. As plaintiffs do not oppose the motion, it is granted. This decision does not preclude plaintiffs from arguing that their detentions were "unreasonably long and [] a factor in their false confessions." (Dkt. 366 at 1.)

## No. 33: To Bar Argument that the Underlying Police Investigation Was Racially Motivated (Dkt. 296)

Individual Defendants move to bar any argument or testimony suggesting that the alleged misconduct related to the police investigation was racially motivated. In particular, the motion seeks to exclude two pieces of evidence: General Progress Reports ("GPR") signed by defendant Winstead that refer to the murder victim as "Juan Doe" and Winstead's deposition testimony that he assumed that the males seen in the alley near Collazo's body were Black. For the reasons stated on the record at the pretrial conference, the motion is granted.

The proffered testimony of Winstead may be offered to show that he assumed the perpetrators were black and so indicated on his GPR. This is relevant to the conduct of the investigation. Plaintiffs may not argue on this basis alone that the investigation was racially motivated because the evidence is insufficient alone to overcome potential prejudice to the defendants.

**No. 34: To Bar Mention, Evidence, or Argument of Alternative Suspect Theories That Lack Foundation (Dkt. 297)**

Individual Defendants seek to bar alternative suspect theories, including plaintiffs' purported theory that Collazo was murdered by a rival gang, that allegedly lack foundation. Ruling is reserved on this motion.

Plaintiffs argue that Collazo's gang membership is relevant to rebut defendants' theory that no one other than Plaintiffs had a motive to murder him – but no cite no evidence in support. Individual Defendants are correct that plaintiffs need to lay the foundation for this and any alternative theories to be admissible at trial. "Accordingly, [even] if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy and prejudice to be resolved in context." *McGreal* v. *Vill. of Alsip*, No. 98 C 3958, 2004 U.S. Dist. LEXIS 18420, at *4–5 (N.D. Ill. Sep. 8, 2004).

Ruling is reserved. Plaintiffs may preview any such evidence with the court before it is presented to the jury.

**No. 35: To Admit Evidence of Fulton's Gang Affiliation (Dkt. 298)**

Individual Defendants move this court to admit evidence of Fulton's gang affiliation. For the reasons stated on the record, this motion is denied.

**No. 36: To Bar Plaintiffs from Offering Evidence or Argument for the Calculation of Damages According to a "Unit-Of-Time" Analysis (Dkt. 299)**

Individual Defendants move to prohibit plaintiffs from arguing that the jury should award damages on a unit-of-time time basis or calculate damages on such a basis. This motion is granted in part and denied in part.

In lieu of a unit-of-time based damages calculation, Individual Defendants argue that "juries should be allowed to rationally connect any damage award to competent evidence presented by these specific Plaintiffs regarding their particular injuries." (Dkt. 299 at 2-3.) While they are correct that there must be a "rational connection between the evidence presented and the damages awarded[,]" *Joan W.* v. *City of Chicago,* 771 F.2d 1020, 1025 (7th Cir. 1985), Individual Defendants have not identified why a unit-of-time computation of damages is categorically inappropriate.

The Seventh Circuit has allowed "per diem" arguments in relation to damages, particularly if the district court has given a cautionary instruction. *Crecy* v. *Kankakee Sch. Dist. #111*, No. 15-CV-1014, 2017 U.S. Dist. LEXIS 219158, at *18–19 (C.D. Ill. Feb. 6, 2017) (citing *Waldron* v. *Hardwick*, 406 F.2d 86, 89 (7th Cir. 1969); *see also Caletz ex rel. Est. of Colon* v. *Blackmon*, 476 F. Supp. 2d 946, 959 (N.D. Ill. 2007) ("[U]nder *Waldron*, we find that if a suitable cautionary instruction is given, plaintiff's counsel is free to suggest a lump sum non-economic award during closing argument.") In *Blackmon*, the court gave the following limiting instruction: "any figures proposed by counsel in their arguments are not evidence as to the amounts of damages you should award, but rather constitute arguments, which you are free to

21

disregard in your deliberations." *Id*. Accordingly*,* the court will not bar plaintiffs from presenting a unit-of-time analysis to the jury. If Individual Defendants believe a cautionary instruction beyond the Seventh Circuit pattern instruction on damages is necessary, they may proffer one for consideration. This portion of the motion is granted.

Individual Defendants further move to bar plaintiffs from arguing "that a certain dollar amount per year is 'the going rate'" in similar cases. (Dkt. 299 at 3.) Plaintiffs do not object to this portion of the motion, so it is therefore granted.

### No. 37: To Bar Plaintiffs' Counsel from Referring to His Own Family During Trial (Dkt. 300)

Individual Defendants move to bar plaintiffs' counsel from referring to their own families at trial. Argument referencing one's family is not categorically improper. If experienced counsel makes any unfairly prejudicial argument invoking his or her own family, experienced defense counsel may certainly object. The motion is denied.

### No. 38: To Bar Plaintiffs from Arguing a Fabrication Claim Based Upon Police Report Documenting Interview of Sid Taylor (Dkt. 301)

Individual Defendants move to bar plaintiffs from asserting a fabrication claim based on Officer Matthew Schmitz's police report about his interview of Sid Taylor on the night of Collazo's murder. Plaintiffs do not oppose this motion*,* insofar as it seeks to bar a fabrication claim based on Officer Schmitz's report. Thus, the motion is granted.

### No. 39: To Bar Plaintiffs and Their Counsel from Presenting Evidence or Arguments Regarding Alleged Abuse or of Conditions of Confinement Experienced While Detained in Jail and Prison (Dkt. 302)

Individual Defendants move to bar plaintiffs from arguing or presenting evidence regarding the conditions of their confinement in jail and prison or of alleged abuse they experienced while in confinement. This motion is denied.

Plaintiffs argue that the abuse their experienced and the harsh conditions of their confinement are natural and probable consequences of the defendants' actions. Individual Defendants argue that this evidence should be excluded because they should not be liable for damages their actions did not "cause" plaintiffs' injuries while detained or incarcerated. This argument is unavailing in light of the Seventh Circuit's view that Defendants can be liable for the foreseeable consequences of a plaintiff's illegal arrest, prosecution, and conviction. *See Berman* v. *Young*, 291 F.3d 976, 982 (7th Cir. 2002) (ordinary rules of causation apply to constitutional tort suits); *Herzog* v. *Village of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002) ("[W]hen an illegal arrest sets off a chain of indignities inflicted on the hapless victim, including offensive physical touchings that would be privileged if the arrest were lawful, she is entitled to obtain damages for these indignities whether or not they are independent violations of the Constitution. ... [T]hey are foreseeable consequences of the illegal arrest, and the ordinary rules of tort causation apply to constitutional tort suits."). Generally, evidence of superseding causes is

generally inadmissible at trial, as they cut off a defendant's liability. *See Hibma* v. *Odegaard,* 769 F.2d 1147, 1156 (7th Cir. 1985).

Because injuries plaintiffs may have sustained during their incarceration relate to their claim for damages and are foreseeable harms stemming from wrongful convictions, this evidence will be permitted at trial.

### No. 40: To Bar Evidence or Mention of Plaintiff Anthony Mitchell's Alibi (Dkt. 303)

Individual Defendants move to bar all evidence of Mitchell's alibi for the night of Collazo's murder. The court grants this motion in part and reserves ruling in part.

In this motion, Individual Defendants request that three pieces of evidence be excluded at trial: affidavits of two alibi witnesses for Mitchell; testimony from these alibi witnesses; and any evidence or theory of Mitchell's alibi. As plaintiffs agree, the affidavits are inadmissible hearsay under Fed. R. Evid. 802 and cannot be introduced at trial. Individual Defendants object to permitting the alibi witnesses to testify at trial because plaintiffs' counsel asserted privilege over questions posed to Mitchell's criminal defense attorney during his deposition. However, the fact that plaintiffs' counsel asserted privilege does not preclude a different witness from testifying at trial. Nevertheless, the court will reserve ruling on this motion until trial.

### No. 41: To Bar Mention or Evidence of the Monetary Amounts Plaintiffs Paid for their Criminal Defense Attorneys (Dkt. 304)

Individual Defendants move to bar any mention, testimony, or evidence of the monetary amounts that Fulton paid for both his and Mitchell's criminal defense attorneys in the underlying criminal trial. Plaintiffs do not oppose the motion, and it is therefore granted.

### No. 42: To Bar any Reference, Testimony, Evidence, or Argument about Lost Wages and Lost Career or Educational Opportunities (Dkt. 306)

Individual Defendants move to bar plaintiffs introducing into evidence any reference to Plaintiffs' lost wages or lost career and educational opportunities resulting from their allegedly wrongful convictions. Ruling is reserved.

In their response to Individual Defendants' motion, plaintiffs say they are not seeking damages based on lost wages. Because plaintiffs will not be submitting any evidence of lost wages, this portion of the motion is granted. Plaintiffs respond that they do intend to present evidence that their "wrongful arrests and convictions prevented them from seeking educational or career opportunities." (Dkt. 369 at 2.) Lost career or educational opportunities are relevant to damages if supported by foundational evidence.

**No. 43: To Bar Plaintiffs from Referencing that their Convictions Were Overturned Based on Innocence (Dkt. 307)**

Individual Defendants move to bar plaintiffs from claiming that their convictions were reversed on a finding of innocence. The motion is granted.

Accordingly, neither party should suggest that plaintiffs' convictions were or were not overturned based on a finding of innocence or lack thereof. Plaintiffs do not oppose this motion, as they "do not contest that their convictions were overturned on a finding of innocence." (Dkt. 307.) To avoid an improper inference, the jury may be told that the convictions were vacated because of procedural error, not a determination of innocence.

**No. 44: To Bar Plaintiffs from Presenting Evidence of Defendant Officer Franko's Involvement in the Laquan McDonald Incident (Dkt. 308)**

Individual Defendants move to bar plaintiffs from bringing evidence of Defendant Officer Franko's involvement in the Laquan McDonald shooting incident, the investigation of the incident, or his subsequent termination by the Chicago Police Department ("CPD"). The motion is granted.

Plaintiffs agree not to raise the shooting of McDonald as propensity evidence but reserve the right to raise it for a different purpose, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident outside the presence of the jury. Fed. R. Evid. 404(b)(2). Individual Defendants argue that Franko's involvement in the investigation of the McDonald shooting and his termination by the CPD are not relevant to the present matter and, even if somehow relevant, would be unduly prejudicial under Fed. R. Evid. 403. Plaintiffs argue that Franko's termination is relevant because of the reason he was discharged: he did not follow CPD rules and regulations.

The court agrees with Individual Defendants. As they argue, the McDonald incident occurred more than 10 years after the Collazo investigation, and the two incidents are hardly similar. Even if the court believed evidence relating to the McDonald shooting would be relevant for one of the non-propensity purposes plaintiffs identify, courts routinely bar evidence of unrelated high-profile police shootings for their prejudicial effect. *See, e.g.*, *Martin*, 2017 WL 2908770, at *6–7 (barring "any testimony or evidence of allegations of police misconduct unrelated to the present case, including highly publicized incidents such as the deaths of Michael Brown and Laquan McDonald" finding that "Defendants' knowledge about collateral matters is irrelevant" and that such evidence would "caus[e] distractions and unfair prejudice to Defendants."); *see also Simmons* v. *City of Chicago,* No. 14 C 9042, 2017 WL 3704844, at *5–6 (N.D. Ill. Aug. 28, 2017) (barring evidence regarding unrelated police shootings because it would "significantly divert attention from the issues the jury will have to decide.")

References to the circumstances surrounding Franko's termination are likewise inadmissible. Because Franko was discharged from the CPD in the wake of the McDonald investigation, raising the reasons for his termination without mentioning the McDonald incident would be challenging. Even if plaintiffs could raise Franko's termination from CPD without

24

mentioning the McDonald investigation, the evidence will likely lead the jury to make an inappropriate inference of Franko's propensity to commit bad acts.

### No. 45: To Bar Evidence that Christopher Collazo and Marcus Marinelli were Gang Members (Dkt. 309)

Individual Defendants move to bar plaintiffs from introducing into evidence that Christopher Collazo or Marcus Marinelli were gang members. The court reserves ruling. As stated on the record, if Plaintiffs lay the foundation at trial that Collazo was a member of a gang and that the police, based on their experience, would typically consider that fact in investigating a murder, then their gang affiliation is relevant in this case.

### No. 46:  To Admit Fulton's Testimony that He was Sued by Christopher Collazo's Estate and that Fulton Made a Payment as a Result of that Lawsuit (Dkt. 310)

Individual Defendants move to admit Fulton's deposition testimony that he was sued by Collazo's estate for wrongful death and that he made a payment to Collazo's estate as part of that lawsuit. Plaintiffs do not oppose the motion, so therefore it is granted. Per plaintiffs' objection, the court will determine at trial whether Individual Defendants' admission of this evidence would be cumulative at trial.

### No. 47: To Bar Mention of Pending Lawsuit Brought Against Assistant State Attorney Jacob Rubinstein (Dkt. 311)

Individual Defendants move to bar all references to and evidence of the pending lawsuit filed against Assistant State Attorney Jacob Rubinstein. *See generally Thomas Kelly* v. *Reynaldo Guevara*, et al., No. 24-cv-05354. The motion is granted.

Plaintiffs originally named Rubinstein as a defendant in this lawsuit, but he has since been dismissed from the case. (*See* Dkts. 126 and 129.) Given that he took the written statement of Griffin and was present for Fulton's and Mitchell's oral confessions, he will likely be a fact witness at trial. He is also a defendant in the *Kelly* lawsuit, in which the plaintiff there alleges that he conspired with police officers to fabricate incriminating statements. *See Kelly*, No. 24-cv-05354. These allegations are quite similar to those alleged in this case. However, Rubinstein's actions in a different case have no bearing on the issues being litigated here – especially as *Kelly* is still being litigated. Hearing about the *Kelly* case may lead the jury to make an improper propensity inference in violation of Fed. Rule. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.") Plaintiffs cite to *Gastineau* v. *Fleet Mortg. Corp.*, 137 F.3d 490 (7th Cir. 1998), which held that evidence of a party's prior lawsuits can be admissible for non-propensity reasons. However, they have not articulated how Rubinstein's alleged actions in *Kelly* demonstrate his knowledge, plan, or motive in this case. Moreover, references to *Kelly* may confuse the jury and are likely to be unduly prejudicial. *See Smith* v. *Nurse*, No. 14-cv-5514, 2016 WL 4539698, at *6 (N.D. Ill. Aug. 31, 2016) (barring mention of prior lawsuits, as such evidence is not relevant and unduly prejudicial).

25

As plaintiffs have not identified a specific non-propensity purpose for the admission of this lawsuit, the motion is granted.


Date: January 31, 2025

U.S. District Judge Joan H. Lefkow

26

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FULTON, | ) | |
| | ) | |
| Plaintiff, | ) | 20-cv-3118 |
| | ) | |
| v. | ) | Judge Lefkow |
| | ) | |
| ROBERT BARTIK, et al., | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ANTHONY MITCHELL, | ) | |
| | ) | 20-cv-3119 |
| Plaintiff, | ) | |
| | ) | Judge Lefkow |
| v. | ) | |
| | ) | Jury Trial Demanded |
| ROBERT BARTIK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## INDIVIDUAL CITY DEFENDANTS' OMNIBUS MOTION *IN LIMINE*

Defendants Robert Bartik, John Zalatoris, James Breen, Edward Winstead, Joseph Struck, Robert Girardi, and Stephen Franko ("Individual City Defendants"), by and through their undersigned counsel, move *in limine* to bar certain evidence from being introduced at trial.

**TABLE OF CONTENTS**

LEGAL STANDARD ................................................................................................................. 1

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING SOLELY TO CLAIMS THAT WERE DISMISSED OR NEVER ALLEGED ..................................................................................... 1

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO BAR REFERENCE TO OTHER LAWSUITS,COMPLAINT REGISTER ("CR") FILES, OR OTHER DISCIPLINARY HISTORY EVENTS .............................................................................. 3

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO HAVE EQUAL TRIAL TIME AS PLAINTIFFS .............................................................................................. 5

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE ANY USE OF THE TERMS "CODE OF SILENCE," "BLUE WALL," AND OTHER SIMILARLY PREJUDICIAL TERMS .................................................................................. 5

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO BAR REFERENCE TO SPECIFIC INSTANCES OF ALLEGED MISCONDUCT OF INDIVIDUAL CITY DEFENDANTS ..................................................................................................................... 6

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO EXCLUDE EVIDENCE AND AGUMENT RELATING TO ANY OTHER INCIDENT OF ALLEGED POLICE MISCONDUCT IN THE MEDIA .............................................................................. 10

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE PASSAGE OF TIME BETWEEN THE INCIDENT AND THE TRIAL IN THIS CASE ........................................................................ 11

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO ANY UNDISCLOSED WITNESSES OR OPINIONS ............................................................................................................................. 11

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING PLAINTIFFS' ALLEGED PHYSICAL AND EMOTIONAL INJURIES .................................................................................................... 12

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO POLICE PRACTICES WHICH INSINUATE WRONGDOING BUT WHCH ARE CONSTITUTIONAL ............................. 13

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 11 TO EXCLUDE EVIDENCE AND ARGUMENT THAT ANY POLICE OFFICER FALSELY TESTIFIED OR PROVIDED MISLEADING TESTIMONY AT PLAINTIFFS' CRIMINAL TRIALS OR DURING ANY CRIMINAL PROCEEDINGS ........................................................................ 15

i

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 12 TO PRECLUDE PLAINTIFFS FROM REFERRING TO THEMSELVES, SHAW, OR GRIFFIN AS "KIDS" OR OTHER SIMILAR TERMS DESIGNED TO EVOKE LENIENCY ................................ 17

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 13 TO EXCLUDE ANY EVIDENCE AND ARGUMENT RELATING TO PREVIOUSLY DISMISSED INDIVIDUALS .............................................................................................................. 19

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 14 TO BAR ANY EVIDENCE AND ARGUMENT RELATING TO OR SUGGESTIVE OF BURDEN-SHIFTING ................................................................................................................... 19

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 15 TO BAR EVIDENCE OR ARGUMENT THAT NON-DEFENDANTS COMMITTED MISCONDUCT ................ 20

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 16 TO BAR ARGUMENT OR SUGGESTIONS THAT THE JURY SHOULD PUNISH OR "SEND A MESSAGE" TO THE CITY AND CPD BY ITS VERDICT AGAINST INDIVIDUAL CITY DEFENDANTS ...................................................................................................................................... 21

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 17 TO BAR PLAINTIFFS' COUNSEL FROM BREAKING UP DEFENDANTS CROSS EXAMINATION OF PLAINTIFFS ........................................................................................................... 22

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 18 TO BAR ANY AGRUMENT RELATING TO SUFFICIENCY OF UNDERLYING POLICE INVESTIGATION ....................................................................................................... 23

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 19 TO BAR ARGUMENT THAT THE ABSENCE OF DNA EVIDENCE AS PROOF OF POLICE MISCONDUCT .. 24

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 20 TO BAR EVIDENCE REGARDING ANY ALLEGED DEVIATION FROM CHICAGO POLICE DEPARTMENT INTERNAL POLICIES ................................................................................................ 25

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 21 TO BAR EVIDENCE OR ARGUMENT THAT ANTONIO SHAW'S CONFESSION WAS FABRICATED ........ 26

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 22 TO BAR ALL REFERENCES TO POLICE OFFICERS NOT MAKING ELECTRONIC RECORDINGS OF INTERVIEWS .............................................................................................................. 27

INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 23 TO BAR REFERENCE TO HOW THE CITY OF CHICAGO TRAINS, DISCIPLINES, MONITORS, OR CONTROLS POLICE OFFICERS .................................................................................. 28

**CONCLUSION** ......................................................................................................... **29**

## **TABLE OF AUTHORITIES**

**Supreme Courts**

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ............................................................... 15, 16

*Imbler v. Pachtman*, 424 U.S. 409, 429, (1976) .......................................................... 16

*Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460 (1984) ................................ 1

*Pierson v. Ray*, 386 U.S. 547, 554 (1967) .................................................................. 16

**Appellate Courts**

*Anderer v. Jones,* 385 F.3d 1043, 1049 (7th Cir. 2004) ............................................. 23

*Barber v. City of Chi.,* 725 F.3d 702, 714 (7th Cir. 2013) ......................................... 18

*Dassey v. Dittmann*, 877 F.3d 297, 303 (7th Cir. 2017) ........................................... 14

*Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 644-45 (7th Cir. 2011) ........................... 3

*Empire Bucket, Inc. v. Contractors Cargo Co.*, 739 F.3d 1068, 1071 (7th Cir. 2014) .................. 1

*Eversole v. Steele*, 59 F.3d at 718 (7th Cir. 1995) ................................................... 23

*Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) .......................................... 26

*Johnson v. Trigg*, 28 F.3d 639, 641 (7th Cir. 1994) ................................................. 14

*Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) ......................... 1

*Khorrami v. Rolince*, 539 F.3d 782, 789 (7th Cir. 2008) ........................................... 15

*King v. Hendricks Cty. Commissioners,* 954 F.3d 981, 986 (7th Cir. 2020) .......................... 24, 25

*Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) ..................................... 27

*MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1171 (7th Cir. 1983) .................................... 5, 23

*Mitchell v. City of Chicago,* 862 F.3d 583, 587 (7th Cir. 2017) ................................. 25

*Musser v. Gentiva Health Services*, 356 F.3d 751, 759–760 (7th Cir. 2004) ........................... 11

*Myers* v. *Ill. Cen. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) ................................ 12

*Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020) .................................. 27

Thompson v. City of Chicago, 472 F.3d 444, 456–57 (7th Cir. 2006) ........................... 18, 25, 26

*U.S. v. Ceballos*, 302 F.3d 679, 694–95 (7th Cir. Aug. 27, 2002) ................................ 13

*United States v. Adames*, 56 F.3d 737, 746 (7th Cir. 1995) ...................................... 18

*United States v. Gomez*, 763 F.3d 845, 852 (7th Cir. 2014) .............................. 5, 7, 8, 9

*United States v. Hicks*, 368 F.3d 801, 807 (7th Cir. 2004) ...................................... 18

*United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001) ..................................... 13

*United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013) .......................................... 7

*Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014) ....................... 1

**District Courts**

*Akbar v. City of Chicago*, 06 C 3685, 2009 WL 3335364 (N.D. Ill. Oct. 14, 2009) ..................... 4

*Bennett v. Thomas*, No. 12-CV-6060, 2014 WL 13110820, at *10 (N.D. Ill. Jan. 16, 2014) . 6, 10, 12

*Betts v. City of Chi.*, 784 F. Supp. 2d 1020, 1033 (N.D. Ill. May 13, 2011) ..................... 22

*Brandon* v. *Vill. of Maywood*, 179 F. Supp. 2d 847, 859–60 (N.D. Ill. 2001) .................. 12

*Bruce v. City of Chicago*, 2011 WL 3471074, at *3 (N.D. Ill. July 29, 2011) ..................... 26

*Caldwell v. City of Chi.*, 2010 WL 380696, *3 (N.D. Ill., Jan. 28, 2010) ..................... 4, 9, 22

*Case v. Town of Cicero*, 2013 WL 5645780, at *10 (N.D. Ill. Oct. 16. 2023) ..................... 21

*Cazares v. Frugoli*, 2017 WL 4150719 at *9-10 (N.D. Ill. Sept. 19, 2017) ................... 4, 8, 9

*Cooper* v. *Dailey*, No. 07 C 2144, 2012 WL 1748150, at *7 (N.D. Ill. May 16, 2012) ................ 13

*DeLeon-Reyes v. Guevara*, 2020 WL 1429521, at *3 (N.D. Ill. March 18, 2020) ....................... 7

*Estate of Keys v. City of Harvey*, No. 92 C 2177, 1996 WL 34422, at *2 (N.D. Ill. Jan. 26, 1996) ................................................................................................................................................. 3

*Fields v. City of Chicago*, No. 12 C 1306, 2018 WL 1652093, at *10 (N.D. Ill. Apr. 5, 2018)... 20

*Fox-Martin v. County of Cook*, 2010 WL 4136174, *2–3 (N.D. Ill., Oct. 18, 2010) ..................... 9

*Gonzalez v. City of Elgin*, 2010 WL 3271272 (N.D. Ill. Aug. 16, 2010) ........................................ 4

*Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *21–25 (N.D. Ill. June 12, 2015) ....... 7

*Gray v. City of Chicago*, No. 1:18-CV-02624, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023) ................................................................................................................................................. 20

*Harris v. City of Chicago*, No. 14 C 4391, 2018 WL 2183992, at *16–17 (N.D. Ill. May 11, 2018) ............................................................................................................................................ 7

*Heflin v. City of Chicago*, No. 95 C 1900, 1996 WL 28238, at *1-2 (N.D. Ill. Jan. 22, 1996) ...... 3

*Hill v. City of Chicago*, 2011 WL 3205304, at *3 (N.D. Ill. July 28, 2011) ............................... 26

*Jones v. City of Chi.*, 2017 WL 413613, at *4 (N.D. Ill. Jan. 31, 2017).......................... 21, 22, 25

*Lerman v. Turner*, No. 10 C 2169, 2014 WL 13110835, at *5 (N.D. Ill. June 20, 2014) ........ 2, 19

*Martin v. City of Chicago*, No. 15-CV-04576, 2017 WL 2908770, at *6–7 (N.D. Ill. July 7, 2017) ...................................................................................................................................... 20, 21

*Martinez v. City of Chi.*, 2016 WL 3538823, at *14 (N.D. Ill. June 29, 2016) ........................... 22

*Moore v. City of Chicago*, No. 02 C 5130, 2008 WL 4549137, at *5 (N.D. Ill. Apr. 15, 2008) 3, 9

*Obrycka v. City of Chi.*, 2012 WL 4060293, at *2 (N.D. Ill. Sept. 14, 2012) ........................ 11, 22

*Pierce v. Ruiz*, 2016 WL 5912890, at *5, (N.D. Ill. Oct. 11, 2016) ........................................... 10

*Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012) 6, 21

*Rodriguez v. City of Chicago*, No. 15 C 6290, 2017 WL 11885372, at *4–5 (N.D. Ill. Jan. 10, 2017) ........................................................................................................................................ 21

*Saunders v. City of Chi.*, 320 F.Supp.2d 735, 739 (N.D. Ill. June 10, 2004) ................................ 4

*Shea v. Galaxie Lumber & Const. Co.*, 1996 WL 111890, at *1 (N.D. Ill. Mar. 12, 1996) ....... 4, 9

*Torres v. City of Chi.*, 2015 WL 12843889, at *7–8 ................................................................... 9

*Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *6 (N.D. Ill. Apr. 7, 2006)..... 11

**Rules**

Fed. R. Civ. P. 37(c) ..................................................................................................................... 11

Fed. R. Evid. 401 .......................................................................... 3, 5, 7, 10, 15, 22, 25, 26

Fed. R. Evid. 402 ........................................................................................... 1, 5, 7, 15, 19

Fed. R. Evid. 403 ................................... 1, 3, 4, 6, 7, 8, 9, 10, 11, 15, 16, 17, 19, 22, 25, 28

Fed. R. Evid. 404 ..................................................................................... 3, 4, 7, 8, 9, 10, 16

Fed. R. Evid. 701 .......................................................................................................................... 12

Fed. R. Evid. 801 .......................................................................................................................... 10

**Statutes**

20 ILCS 3930/7.5(a) ..................................................................................................................... 27

50 ILCS 705/10.3 .......................................................................................................................... 27

705 ILCS 405/5-120 ..................................................................................................................... 17

705 ILCS 405/5-130(1)(a) ............................................................................................................ 17

725 ILCS 5/103–2.1(b) ................................................................................................................. 27

745 ILCS 10/2-102 ................................................................................................................. 21, 22

## LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460 (1984). A motion *in limine* is an "important tool" which "sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). "Judges have wide discretion to make evidentiary rulings and manage the efficiency of trial." *Whitfield v. Int'l Truck & Engine Corp.*, 755 F.3d 438, 447 (7th Cir. 2014); *see also Empire Bucket, Inc. v. Contractors Cargo Co.*, 739 F.3d 1068, 1071 (7th Cir. 2014) (reviewing *in limine* rulings under abuse of discretion standard).

### INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING SOLELY TO CLAIMS THAT WERE DISMISSED OR NEVER ALLEGED

In their initial complaints, Plaintiffs advanced a number of allegations and claims that have since been dismissed at summary judgment. For example, the Court dismissed the following claims from this litigation in its ruling on Individual City Defendants' motion for partial summary judgment (Dkt. No. 202): coerced confession claim (Count I) against Individual City Defendants Bartik, Winstead, and Franko; fabrication claim (Count II) against Defendant Officer Franko; and the wrongful conviction and illegal confinement claim (Count IV) against all Individual City Defendants. (Dkt. No. 256 at 72).[1] Evidence relating only to those claims is irrelevant and inadmissible under Rule 402 and is excludable under Rule 403 as it has zero probative value and would only serve to prejudice Individual City Defendants and confuse the issues and mislead the

---

[1] Although Plaintiffs have separate cases – *Fulton v. Bartik, et al.*, 20-cv-3118 and *Mitchell v. Bartik, et al.*, 20-cv-3119, respectively – the filings in each case are nearly identical. Therefore, for ease of reference and to avoid duplicate citations, the docket entries referenced herein refer to the case docket for *Fulton v. Bartik, et al.*, 20-cv-3118.

jury. Therefore, Plaintiffs should not be allowed to present any evidence or argument relating to these claims, including any evidence or argument that Defendants Bartik, Winstead or Franko coerced their confessions, or that Defendant Franko fabricated any evidence. *See*, *e.g.*, *Lerman v. Turner*, No. 10 C 2169, 2014 WL 13110835, at *5 (N.D. Ill. June 20, 2014) (J. Lefkow).

Additionally, Plaintiffs did not assert a Fourteenth Amendment *Brady* claim against Individual City Defendants in this case. However, under Plaintiffs' "Wrongful Conviction and Illegal Confinement Claim" (Count IV), Plaintiffs alleged that Individual City Defendants intentionally withheld and/or destroyed the following evidence: (1) the existence of a back door camera at Fulton's apartment; (2) Fulton's key fob which allegedly recorded his entries and exits from the apartment building; (3) an exculpatory license plate number; (4) the allegedly coercive interrogation tactics used during the interviews of Antonio Shaw, Johnnitta Griffin, and Plaintiffs; and (5) phone records for Griffin, Marisol Caldero, Christopher Collazo, and Fulton. (Dkt. No. 1 at ¶¶ 29, 48, 64, 74, 78, 82-87, 159-168). At summary judgment, Individual City Defendants argued that Count IV of Plaintiffs' complaints should be dismissed as there was insufficient evidence to prove that any officer intentionally withheld or destroyed the evidence Plaintiffs allege. (Dkt. No. 202 at 18-28). After Plaintiffs failed to respond to Individual City Defendants' argument in their summary judgment responses, the Court granted summary judgment to all Individual City Defendants as to Count IV. (Dkt. No. 256 at 12-13).

Because Plaintiff never alleged a *Brady* claim and Individual City Defendants prevailed on Count IV, Plaintiffs should not be permitted to re-assert this evidence and argue that Individual City Defendants withheld evidence a back door camera; a key fob; a license plate; the allegedly coercive tactics used during the interviews of Shaw, Griffin, or Plaintiffs; or any phone records. Plaintiffs' claim of wrongful conviction and illegal confinement claim proceeds solely against

2

Defendant Eugene Shepherd for the alleged withholding of the existence of a backdoor camera. (Dkt. No. 256 at 52). Therefore, Plaintiffs should be barred from arguing or presenting any evidence at trial relating to the aforementioned claims that were resolved at the summary judgment stage.

### INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 2 TO BAR REFERENCE TO OTHER LAWSUITS,COMPLAINT REGISTER ("CR") FILES, OR OTHER DISCIPLINARY HISTORY EVENTS

Individual City Defendants seek to bar any evidence, testimony, or argument concerning: (1) any lawsuits filed against Individual City Defendants; (2) any complaints listed on Individual City Defendants' CR histories; (3) Individual City Defendants' CR/disciplinary histories; (4) any internal affairs investigations; and (5) any IPRA/COPA investigations produced in this case pursuant to Federal Rules of Evidence 401 and 403. This evidence is irrelevant, inadmissible hearsay, and is substantially more prejudicial considering the minimal probative value such evidence holds. Additionally, Plaintiffs' *Monell* claims against the City are bifurcated (Dkt. No. 186), and so any other unrelated incidents of alleged misconduct by Chicago police officers, including those incidents involving Individual City Defendants, is irrelevant to this case.

The only purpose Plaintiffs would have to introduce the aforementioned evidence would be for propensity. Under Rule 404(b), Individual City Defendants' CR histories involving unrelated cases is inadmissible to show propensity. *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 644-45 (7th Cir. 2011); *see also Estate of Keys v. City of Harvey*, No. 92 C 2177, 1996 WL 34422, at *2 (N.D. Ill. Jan. 26, 1996) (barring prior bad acts evidence to prove the character of a defendant); *Moore v. City of Chicago*, No. 02 C 5130, 2008 WL 4549137, at *5 (N.D. Ill. Apr. 15, 2008) (barring any evidence or testimony regarding unrelated complaint registers); *Heflin v. City of Chicago*, No. 95 C 1900, 1996 WL 28238, at *1-2 (N.D. Ill. Jan. 22, 1996) (barring unrelated

internal complaints of defendant police officers); *Akbar v. City of Chicago*, 06 C 3685, 2009 WL 3335364 (N.D. Ill. Oct. 14, 2009) (excluding CRs containing allegations of excessive force against police officers); *Gonzalez v. City of Elgin*, 2010 WL 3271272 (N.D. Ill. Aug. 16, 2010) (barring prior lawsuits against defendant police officers under Rule 404(b)); *Cazares v. Frugoli*, 2017 WL 4150719 at *9-10 (N.D. Ill. Sept. 19, 2017) (evidence of unrelated lawsuits were not "germane to Plaintiffs' claims, and given that the evidence would likely be unduly prejudicial and could confuse the jury[.]") (citing *Shea v. Galaxie Lumber & Const. Co.*, 1996 WL 111890, at *1 (N.D. Ill. Mar. 12, 1996) (excluding evidence of unrelated lawsuits against defendant under Rules 404(b) and 403); *Caldwell v. City of Chi.*, 2010 WL 380696, *3 (N.D. Ill., Jan. 28, 2010) (barring evidence of unrelated police misconduct).

Any testimony, evidence, or references regarding a CR investigation, an internal investigation with the Chicago Police Department, or lack thereof any investigation is not relevant to the claims at issue in this case because the question at trial is whether Individual City Defendants violated Plaintiff's rights, "not whether they violated standards of professional conduct." *Saunders v. City of Chi.*, 320 F.Supp.2d 735, 739 (N.D. Ill. June 10, 2004). Further, such evidence is unduly prejudicial and should be barred under Fed. R. Evid. 403 in that it could be used to improperly suggest the Individual City Defendants committed internal professional misconduct within the Chicago Police Department, which will confuse and mislead the jury to equating that to unconstitutional conduct. *Id.* As such, Individual City Defendants respectfully request this Court to enter an order barring any testimony, evidence, or reference to any CR investigation or lack thereof relating to this case.

4

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO HAVE EQUAL TRIAL TIME AS PLAINTIFFS

Individual City Defendants must be allotted an equal amount of trial time as Plaintiffs to ensure a fair trial for all parties involved. Individual City Defendants anticipate Plaintiff taking excessive time during their case in chief such that it will eat into Individual City Defendants time to present their case. It is only fair that each side be given an equal opportunity to present their respective positions. As such, Individual City Defendants respectfully request the Court to enter an order limiting each party to an equal amount of trial time. *See*, *e.g.*, *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1171 (7th Cir. 1983) (district courts must exercise strict control over the length of trials and are therefore may set reasonable deadlines in advance and hold the parties to them).

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE ANY USE OF THE TERMS "CODE OF SILENCE," "BLUE WALL," AND OTHER SIMILARLY PREJUDICIAL TERMS

Individual City Defendants move *in limine* to exclude any use of the terms "code of silence," "blue wall," and other similar generalizations or terms relating to the Chicago Police Department ("CPD") and their officers. Generalizations or terms, such as "code of silence" and "blue wall," relating to the conduct of the CPD, and any generalized evidence related to such terms, must be excluded due to their prejudicial effects and potential influences on the jury. Evidence must be relevant to be admissible, but not all relevant evidence is admissible. Fed. R. Evid. 402; *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (en banc). Evidence is relevant only if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Here, terms like "code of silence" and "blue wall" are not relevant because they do not have any tendency to make

5

any fact of consequence to the jury's determination of the issues more or less probable and such terms do not aid the jury in assessing the credibility of any witness.

Even if such terms were relevant, the Court should nonetheless exclude their use because the prejudicial effect of allowing the jury to hear such terms substantially outweighs the minimal probative value such terms may add to this trial. Fed. R. Evid. 403; *Bennett v. Thomas*, No. 12-CV-6060, 2014 WL 13110820, at *10 (N.D. Ill. Jan. 16, 2014) (J. Lefkow) (ordering that Plaintiff may not use the terms "code of silence" or "blue wall" as they are unduly prejudicial and may not introduce evidence or argue that law enforcement officers in general adhere to a "code of silence" or "blue wall" or seek to cover up misconduct in order to protect fellow officers). If the Court were to permit the use of such prejudicial terms, there is an undue risk that the jury would judge Individual City Defendants based on the perceived action or inaction of others. Such generalized allegations are not helpful and are impermissible propensity evidence. *Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012) (J. Dow). Therefore, Individual City Defendants respectfully request the Court to enter an order excluding the use of, including any references, questioning, evidence, and arguments relating to, terms like "code of silence," "blue wall," and other similar generalizations or terms, and any evidence used to support such terms.

**INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO BAR REFERENCE TO SPECIFIC INSTANCES OF ALLEGED MISCONDUCT OF INDIVIDUAL CITY DEFENDANTS**

By way of background, Individual City Defendants seek to bar any admission of evidence or exhibits in the form of complaint registers ("CRs"), past civil lawsuits, Summary Punishment Action Requests ("SPARs"), and other disciplinary matters that were exchanged during fact discovery, even if not identified as an exhibit in the Final Pre-Trial Order. The Court should

6

exclude such evidence as irrelevant, improper character evidence, improper hearsay evidence, and substantially more prejudicial than probative.

Fed. R. Evid. 404(b) "prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of proving a person's character or propensity to behave in a certain way[.]" *United States v. Gomez*, 763 F.3d 845, 852 (7th Cir. 2014) (en banc) (citing Fed. R. Evid. 404(b)). Specifically, the Seventh Circuit in *Gomez* announced a rules-based approach that first asks whether the other-act evidence is relevant under Fed. R. Evid. 401 and 402, and if, in the absence of a propensity inference, the proffered other-act evidence is relevant for a non-propensity purpose identified in Rule 404(b). 763 F.3d at 853. If the other-act evidence is relevant to a non-propensity purpose, the district court must then consider whether such relevance is outweighed by the myriad of issues enunciated in Rule 403, most notably unfair prejudice. *Id.* at 852–53. The Seventh Circuit has instructed district courts to "not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference." *Id.* at 856.

It is Plaintiffs' burden to demonstrate that evidence of Individual City Defendants' past disciplinary allegations "is supported by some propensity-free chain of reasoning." *Gomez*, 763 F.3d at 856 (citing *United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013)). Furthermore, district courts "faced with Rule 404(b) evidence in the wrongful conviction context post-*Gomez* have accordingly limited the use of Rule 404(b) evidence at trial." *DeLeon-Reyes v. Guevara*, 2020 WL 1429521, at *3 (N.D. Ill. March 18, 2020); *see, e.g.*, *Harris v. City of Chicago*, No. 14 C 4391, 2018 WL 2183992, at *16–17 (N.D. Ill. May 11, 2018) (denying motion for new trial finding no error in barring prior bad acts evidence of defendant police officer under *Gomez*); *Gonzalez v. Olson*, No. 11 C 8356, 2015 WL 3671641, at *21–25 (N.D. Ill. June 12, 2015) (granting motion

7

*in limine* to bar a plaintiff's proposed 404(b) witnesses who would testify about a defendant police officer's prior bad acts).

Here, Plaintiffs have proffered multiple exhibits which contain CR files that were brought against Individual City Defendants. Following the approach set in *Gomez*, the first step is to determine whether the proffered evidence has any relevancy other than propensity reasons. Here, the CR files are irrelevant to the extent they involve other cases and complaints. Given the CR files are unrelated, they are only relevant for propensity purposes and not for any of the permitted uses under Rule 404(b)(2). Such evidence therefore is excludable under Rule 404(b), and any relevance of such evidence is substantially outweighed by the risk of unfair prejudice. *Gomez*, 763 F.3d at 852–53.

Further, CR files contain only *allegations* against Individual City Defendants, none of the CR files that Plaintiff is seeking to enter as evidence in this case contain any "sustained" findings. *Cazares v. Frugoli*, 2017 WL 4150719, *10 (N.D. Ill. Sept. 19, 2017) ("[T]he fact that an allegation is not sustained lessens its probative value."). Similarly, Plaintiffs and their counsel should be barred from bringing up past lawsuits brought against Individual City Defendants because it will lead to improper propensity inferences and such evidence is not relevant for non-propensity purposes.

Additionally, even if this Court finds that a non-propensity inference can be drawn from the proposed exhibits as well as other evidence of past alleged misconduct, the next step in the rules-based approach established in *Gomez* is to determine whether the relevance of such evidence is outweighed by the concerns listed in Fed. R. Evid. 403. *Gomez*, 763 F.3d at 852-53. It does not. Allowing the jury to hear evidence of past specific instances of misconduct would prejudice Individual City Defendants. It would also require Individual City Defendants to defend against the

8

unrelated, not sustained or unfounded CR allegations, resulting in trials within this trial, risking serious jury confusion. Fed. R. Evid. 403. *See Cazares*, 2017 WL 4150719 ("Even though the complaints are relevant without relying on a 'propensity inference,' they may still be excluded if they run afoul of Rule 403.") (citing *Gomez*, 763 F.3d at 856-57). "Other-act evidence raises special concerns about unfair prejudice because it almost always carries some risk that the jury will draw the forbidden propensity inference." *Gomez*, 763 F.3d at 857.

Additional Rule 403 factors— for example, the "danger of 'confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence'" (*Id*. at 857, n.4, *quoting* Fed. R. Evid. 403)—also support the exclusion of Plaintiff's proffered 404(b) evidence. Since the CR complaints were neither sustained nor substantially similar, they cannot survive the Rule 403-balancing test. *See Cazares*, 2017 WL 4150719 at *9-10 (evidence of unrelated lawsuits were not "germane to Plaintiffs' claims, and given that the evidence would likely be unduly prejudicial and could confuse the jury[.]") (citing *Shea v. Galaxie Lumber & Const. Co.*, 1996 WL 111890, at *1 (N.D. Ill. Mar. 12, 1996) (excluding evidence of unrelated lawsuits against defendant under Rules 404(b) and 403)); *Torres v. City of Chi.*, 2015 WL 12843889, at *7–8 (barring plaintiffs from using "unrelated complaint registers or other disciplinary proceedings involving the Individual City Defendants to show that the Individual City Defendants violated the plaintiffs' constitutional rights."); *Fox-Martin v. County of Cook*, 2010 WL 4136174, *2–3 (N.D. Ill., Oct. 18, 2010) ("probative value of the Deputy Sheriffs' disciplinary records is substantially outweighed by the danger of unfair prejudice and confusion of the issues"); *Caldwell v. City of Chi.*, 2010 WL 380696, *3 (N.D. Ill., Jan. 28, 2010) (barring evidence of unrelated police misconduct); *Moore v. City of Chi.*, 2008 WL 4549137, *5 (N.D. Ill., April 15, 2008) ("The motion to bar any evidence or testimony regarding unrelated complaint registers is

granted."). Accordingly, these proffered exhibits should be barred from being presented as evidence in this case.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 6 TO EXCLUDE EVIDENCE AND AGUMENT RELATING TO ANY OTHER INCIDENT OF ALLEGED POLICE MISCONDUCT IN THE MEDIA

Evidence of other police misconduct incidents in the media is irrelevant under Rule 401, excludable as substantially more prejudicial than probative under Rule 403, improper character evidence under Rule 404, and inadmissible hearsay under Rule 801. Fed. R. Evid. 401, 403, 404, 801. Other police-involved incidents unrelated to the matters in this case are irrelevant and are not probative to any fact of consequence in this case. Fed. R. Evid. 401. Further, evidence of police conduct unrelated to the Individual City Defendants has minimal probative value and is "highly inflammatory and prejudicial." *Pierce v. Ruiz*, 2016 WL 5912890, at *5, (N.D. Ill. Oct. 11, 2016); *see also*, *Bennett*, 2014 WL 13110820, at *8 (excluding any reference to unrelated police misconduct incidents). Introduction of such evidence serves only to unduly prejudice and inflame the jury sensationalized evidence of unrelated misconduct, which substantially outweighs any minimal probative value such evidence may have. *Id.;* Fed. R. Evid. 403. Further, such evidence will either be offered for its truth, and will be inadmissible hearsay evidence under Fed. R. Evid. 801 and 802, or it will be used for improper propensity purposes and will be improper character evidence under Fed. R. Evid. 404(b). Therefore, Individual City Defendants respectfully request the Court to enter an order excluding any evidence and argument relating to any other incident of police misconduct in the media or any other forum.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 7 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE PASSAGE OF TIME BETWEEN THE INCIDENT AND THE TRIAL IN THIS CASE

Phrases such as Plaintiffs have been "waiting for their day in court," that this trial "was a long time coming," or any other phrases to the same effect, would be improper and unduly prejudicial under Rule 403. Fed. R. Evid. 403; *see*, *e.g.*, *Obrycka v. City of Chi.*, 2012 WL 4060293, at *2 (N.D. Ill. Sept. 14, 2012) (excluding Plaintiff from presenting evidence, argument, or comment about waiting for her day in court). Therefore, Individual City Defendants respectfully request the Court to enter an order excluding any testimony, evidence, or argument regarding the passage of time between the incident and the trial in this case; that Individual City Defendants or their attorneys or agents delayed trial; or any other evidence or argument to that effect.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 8 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO ANY UNDISCLOSED WITNESSES OR OPINIONS

Individual City Defendants move *in limine* to exclude any evidence referring or relating to any witnesses, exhibits, or opinions not previously produced or disclosed during discovery or through Plaintiffs' disclosures pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 37(c); *Musser v. Gentiva Health Services*, 356 F.3d 751, 759–760 (7th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.") Allowing the introduction of evidence that Plaintiff did not timely disclosed and/or produced would prejudice Individual City Defendants by inhibiting their ability to properly prepare for trial. Exclusion of such evidence at this stage would prevent gamesmanship, appearances of (or actual) unfairness, and "trial by ambush." *See*, *e.g.*, *Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *6 (N.D. Ill. Apr. 7, 2006) (J. Lefkow).

11

Therefore, Individual City Defendants respectfully request the Court to enter an order excluding any evidence, exhibits, or opinions that were not previously disclosed prior to trial.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 9 TO EXCLUDE LAY WITNESS TESTIMONY REGARDING PLAINTIFFS' ALLEGED PHYSICAL AND EMOTIONAL INJURIES

As part of their supplemental Rule 26(a)(1) disclosures, Plaintiffs disclosed sixteen (16) different family members who Plaintiffs claim have knowledge regarding their alleged damages while prosecuted and incarcerated. As such, Individual City Defendants anticipate that Plaintiffs will call these lay witnesses to testify to their physical and mental injuries. While Plaintiffs may be permitted to call damages witnesses, the testimony of those witnesses should not cross the bounds of lay witness testimony and enter into expert opinion testimony regarding medical conditions for which these witnesses have no specialized knowledge or background to testify.

Any lay witness opinion regarding Plaintiffs' alleged physical and emotional injuries is outside the realm of lay witness testimony because it requires expert knowledge. Under Rule 701 of the Federal Rules of Evidence, a lay witness is limited to offering opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Where an injury "would not be obvious to a layman" and may have been "caused by a myriad of factors," expert testimony is required to establish causation. *Bennett*, 2014 WL 13110820, at *9–10 (citing *Myers* v. *Ill. Cen. R.R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010)). Matters concerning prognosis or the necessity for future treatment also require medical expertise outside of the lay person's realm of knowledge. *Id.* (citing *Brandon* v. *Vill. of Maywood*, 179 F. Supp. 2d 847, 859–60 (N.D. Ill. 2001)). Courts have thus generally held that lay persons may not testify as to any diagnosis or condition, and only about

12

their own perceptions, including the physical and emotional effects of the defendants' alleged conduct. *Id.* (citing *Cooper* v. *Dailey*, No. 07 C 2144, 2012 WL 1748150, at *7 (N.D. Ill. May 16, 2012). As such, Plaintiffs should only testify as to their perception of their injuries, like any pain, fear, or anxiety experienced. *Id.* Other witnesses should only testify as to any physical conditions they observed, and not as to causation or medical diagnoses. *Id.* Therefore, Individual City Defendants respectfully request the Court to exclude any lay witness testimony regarding Plaintiffs' physical or emotional injuries.

### INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 10 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO POLICE PRACTICES WHICH INSINUATE WRONGDOING BUT WHCH ARE CONSTITUTIONAL

Individual City Defendants hereby move *in limine* to preclude Plaintiffs from offering any evidence or argument suggesting that legally permissible police tactics—such as interviewing juvenile suspects, conducting an interview in a custodial setting, aggressively questioning a suspect or witness, asking accusatory questions, and even lying to a suspect—are suggestive of wrongdoing by Individual City Defendants. For example, police officers often utilize tactics during criminal investigation like false evidence ploys. Although an uninformed jury may believe that deceit by the police in a custodial interview context is impermissible, such police tactics are constitutional. *See*, *e.g.*, *United States v. Kontny*, 238 F.3d 815, 817 (7th Cir. 2001) (noting trickery, deceit, and even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless government agents make threats or promises."); *see also*, *U.S. v. Ceballos*, 302 F.3d 679, 694–95 (7th Cir. Aug. 27, 2002) (noting officers may "actively mislead" defendants to obtain a confession, "so long as a rational decision remains possible."). Plaintiffs even concede in their response to Defendants' summary judgment motion that "it is true, as Defendants contend, that simply yelling at a witness and

13

threatening the witness might not amount to fabrication." (Dkt. 230 at pp. 8-9). To prove a confession was involuntary, Plaintiffs must show that the police engaged in coercive—not merely deceitful, but unconstitutional—practices. *Dassey v. Dittmann*, 877 F.3d 297, 303 (7th Cir. 2017). Actual involuntariness is completely irrelevant if it is not the product of some illegal conduct by the police. *Johnson v. Trigg*, 28 F.3d 639, 641 (7th Cir. 1994).

For example, Individual City Defendants anticipate that Plaintiffs may make arguments and ask questions in the same vein as the following "summary of facts" which Plaintiffs advanced in their global response to Defendants' summary judgment motions [Dkt. 230 at pp. 4-7] and in Plaintiffs' Statement of Additional Facts ("PSOF") in response to summary judgment [Dkt. 227]:

- Police handcuffed Marcus Marinelli and took him into custody, telling his mother he had killed his friend. (PSOF at ¶ 11)
- Marinelli was handcuffed to the wall in an interrogation room for the duration of his time at Area One. (PSOF at ¶ 12)
- Defendants Zalatoris and Breen drove Johnitta Griffin to Area One without her consent. (Dkt. 230 at p. 4)
- Defendants Zalatoris and Breen told Griffin that she set Collazo up to be assaulted. (Dkt. 230 at p. 4)
- Defendants Zalatoris and Breen told Griffin that she was lying and that when they came back, she had better have something for them. The detectives insisted that she had facilitated the kidnapping and murder of Collazo. (PSOF at ¶ 21)
- When John Fulton was arrested, he was handcuffed and told that he was being transported to the police station for investigation into a jewelry robbery. (PSOF at ¶ 36)
- Defendants Zalatoris and Breen told Fulton that he, Mitchell and Shaw used information from Griffin to intercept, abduct and murder Collazo. (Dkt. 230 at p. 5)
- After Fulton was arrested, Defendant Girardi told him that his car looked like the car implicated in the crime. (PSOF at ¶ 38)
- Defendants Zalatoris and Breen told Shaw that he and Plaintiffs had abducted the victim, beaten him, and set his body on fire. (Dkt. 230 at p. 6)
- Defendant Zalatoris screamed at Mr. Fulton and called him a liar. PSOF at ¶ 43
- Detectives told Mr. Mitchell that Mr. Fulton had implicated him, and they let him read the paperwork concerning Mr. Fulton's purported statements. PSOF at ¶ 78.

These examples of "facts" emphasized by Plaintiffs are in actuality valid and lawful police tactics that do not amount, in and of themselves, to unconstitutional conduct. Similarly, Plaintiff may

14

attempt to argue that it was somehow wrongful for Defendants to continue interviewing Plaintiffs after they initially denied killing Collazo and for Individual City Defendants to stop investigating after Plaintiffs confessed and criminal charges were approved by prosecutors. (Compl. at ¶¶ 41, 42 [Dkt. 1]) Such actions during a police investigation are constitutional, and therefore evidence of that conduct has no probative value and is irrelevant. Fed. R. Evid. 401, 402. Furthermore, such argument would only serve to unfairly prejudice Individual City Defendants, to confuse the issues, and to mislead the jury, and is therefore excludable under Rule 403. Fed. R. Evid. 403.

Finally, it is expected that Plaintiffs' counsel will make much hay of the ages of the persons they questioned regarding Collazo's murder, and will imply that the interviews were improper due to the fact that they were "kids" or "teenagers" or the like, and ranged in age from 15 to 18. Just because Johnitta Griffin was 17 years old, Mitchell was 17 years old, Fulton was 18 years old and Shaw was 15 years old at the time of the murder does not mean that interviewing them at these ages in and of itself amounted to constitutional wrongdoing by the police. Therefore, Individual City Defendants respectfully request the Court to enter an order excluding inference and argument suggesting that use of the constitutional police practices discussed above are in and of themselves suggestive of wrongdoing on their part.

**INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 11 TO EXCLUDE EVIDENCE AND ARGUMENT THAT ANY POLICE OFFICER FALSELY TESTIFIED OR PROVIDED MISLEADING TESTIMONY AT PLAINTIFFS' CRIMINAL TRIALS OR DURING ANY CRIMINAL PROCEEDINGS**

Witnesses in a criminal trial, including police officers testifying for the prosecution, have absolute immunity from a later suit under 42 U.S.C. § 1983 based on their alleged perjury. *Khorrami v. Rolince*, 539 F.3d 782, 789 (7th Cir. 2008) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983). It follows that any argument, testimony, references, or suggestions to the effect that a police officer provided false or misleading testimony at Plaintiffs' criminal trials or related

15

proceedings is irrelevant and has no probative value. Even if it were relevant, the Court should exclude it under Rule 404(b) as inadmissible propensity evidence and/or under Rule 403 because it confuses the issues, misleads the jury, and is highly prejudicial in that it suggests—without any basis—that Plaintiff's conviction and subsequent habeas relief were based on perjured testimony and that the Individual City Defendants were and are lying. Fed. R. Evid. 403, 404(b).

Finally, to allow such substance-less theories of perjurious testimony would violate the principles set forth by the U.S. Supreme Court to protect judges, prosecutors, and witnesses. *Briscoe*, U.S. at 345 (extending to witnesses the protections recognized in *Imbler v. Pachtman*, 424 U.S. 409, 429, (1976) (recognizing absolute immunity for prosecutors under § 1983 even though it may leave the genuinely wronged defendant without civil redress for malicious or dishonest action that deprives him of liberty) and *Pierson v. Ray*, 386 U.S. 547, 554 (1967) (recognizing the absolute immunity of judges from liability for damages for acts committed within their judicial jurisdiction even when the judge is accused of acting maliciously and corruptly)).

For example, Plaintiffs may attempt to argue at trial that Individual City Defendants lied during their testimony at the underlying criminal trial when they testified that they did not make any false promises of leniency or make any threats to Plaintiffs or Johnitta Griffin to coerce implicating statements from them. Plaintiffs may also attempt to argue at trial that Individual City Defendants James Breen and John Zalatoris presented false testimony during Plaintiffs' motion to suppress hearings because they did not initially provide testimony about taking John Fulton to Defendant Officer Robert Bartik for a polygraph exam. Plaintiffs should be barred from presenting these arguments or any similar arguments because Individual City Defendants have absolute immunity for their prior criminal trial testimony and such an argument would be substantially more prejudicial than probative. Therefore, Individual City Defendants respectfully request the Court to

16

enter an order excluding any evidence and argument to the effect that any witnesses falsely testified at Plaintiffs' criminal trials or during any related criminal proceedings.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 12 TO PRECLUDE PLAINTIFFS FROM REFERRING TO THEMSELVES, SHAW, OR GRIFFIN AS "KIDS" OR OTHER SIMILAR TERMS DESIGNED TO EVOKE LENIENCY

Individual City Defendants move this Court *in limine* to bar Plaintiffs, their attorneys, and any witnesses from making any reference to Plaintiffs, Antonio Shaw, and Johnitta Griffin as "children," "kids," "minors," "teenagers," or any other similar diminutive terms implying they should be treated in an especially lenient manner.

Referring to Plaintiffs, Griffin, and Shaw in such terms is impermissible because doing so is inconsistent with the law under which they were charged as adults and is intended only to enflame the jury or garner undue sympathy. Such references provide no evidentiary value but are highly prejudicial to Defendants. Fulton was 18 years old, Mitchell and Griffin were 17 years old, and Shaw was 15 years old when the murder underlying this case occurred on March 10, 2003, therefore, they were legally adults in the eyes of the Illinois justice system. *See* 705 ILCS 405/5-120 (P.A. 90-590, eff. Jan. 1, 1999) (those 17 years or older are under the jurisdiction of the adult criminal courts for any charge); 705 ILCS 405/5-130(1)(a) (P.A. 92-665, eff. Jan. 1, 2003) (those 15 years old or older charged with first-degree murder are under the jurisdiction of the adult criminal courts); Fulton Dkt. 1 ¶¶ 37, 59; Mitchell Dkt. 1 ¶¶ 10, 59. Thus, use of such diminutive terms would be an intentional misrepresentation of the law and the fact and could only be offered to evoke sympathy.

The Court in its discretion may exclude evidence if the probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice or mislead the jury. Fed. R. Evid. 403. "Evidence is unfairly prejudicial only if it will induce the

17

jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Hicks*, 368 F.3d 801, 807 (7th Cir. 2004). Here, use of the language of "child," "kid," "minor," or "juvenile" implies that Plaintiffs, Shaw, and Griffin were not considered adults for purposes of criminal prosecutions. The language will be used solely to evoke sympathy and does not accurately reflect the law. There is likely to be juror confusion when those terms are used, implying that the Individual City Defendants should have arrested or charged them as minors or somehow followed laws that applied to those under the jurisdiction of juvenile court.

"Evidence is unfairly prejudicial where 'its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.'" *Barber v. City of Chi.,* 725 F.3d 702, 714 (7th Cir. 2013) (quoting Thompson v. City of Chicago, 472 F.3d 444, 456–57 (7th Cir. 2006)); *United States v. Adames*, 56 F.3d 737, 746 (7th Cir. 1995) (Using terms simply to evoke sympathy from the jury in improper). In *Adames*, a criminal defendant sought to introduce videotapes showing his children. *Id*. The Court excluded the video because it was not relevant, but highly prejudicial. The court found the videos were "emotionally charged and may have induced the jury to feel sympathy for [the defendant] or his children, emotional reactions that should not factor into the jury's decision." Here, just as in *Adames*, references to Plaintiffs, Griffin, and Shaw as minors, juveniles, children or kids are irrelevant and solely intended to enflame the jury, especially considering they were legally adults.

Plaintiffs and Griffin were adults under Illinois criminal law when this crime was committed. Since Plaintiffs and Griffin were legally adults, referencing Plaintiffs and Griffin in such a manner deliberately misconstrues the facts, it will only be done to elicit sympathy from the

18

jury. Furthermore, even though Shaw was not considered an adult under Illinois law, referring to him as a kid or any other similar term would be solely to garner sympathy and induce the jury to decide the case on an emotional basis instead of based on the facts. As such any references of this kind would be unduly prejudicial and would confuse the issues in this case.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 13 TO EXCLUDE ANY EVIDENCE AND ARGUMENT RELATING TO PREVIOUSLY DISMISSED INDIVIDUALS

The Court previously dismissed various individuals from this litigation including Brian Skora, Michael Schmitz, Michael Kennedy, Estate of Richard Cervanka, Detective Aguirre, Leonard Rolston, and Jacob Rubinstein. Since the claims against the dismissed individuals were insufficient to survive dismissal, any further evidence relating to those claims and individuals which are unrelated to the surviving claims and defendants is irrelevant and inadmissible under Rule 402 and is excludable under Rule 403 as it has zero probative value and would only serve to confuse the issues and mislead the jury. Thus, the Court should exclude any evidence and argument solely relevant to the previously dismissed individuals. *See*, *e.g.*, *Lerman v. Turner*, No. 10 C 2169, 2014 WL 13110835, at *5 (N.D. Ill. June 20, 2014) (J. Lefkow).

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 14 TO BAR ANY EVIDENCE AND ARGUMENT RELATING TO OR SUGGESTIVE OF BURDEN-SHIFTING

Plaintiff may not offer evidence and argument resulting in or suggestive of burden-shifting, including that Individual City Defendants have any burden of proof as to the claims in this matter, any obligation to present evidence, that Defendants have failed to call an expert or present testimony during their case in chief, or that by choosing not to call a particular witness suggests that the Individual City Defendants are hiding evidence or somehow recognize or, worse, concede that such witness' testimony would be harmful to the defense of the case, or that if the Individual

19

City Defendants choose not to call a witness, regardless of whether or not that witness is under their control, reflects poorly on its case. In this trial, Plaintiffs have the burden of proof. Further, Plaintiffs will likely attempt to call every witness on the respective parties' witness lists (many of whom overlap) and will do so adversely, including the Individual City Defendants. The jury will be instructed that it should consider all the evidence, regardless of who introduces it and that the parties are not required to call people mentioned or discussed in the trial as witnesses. *See* Individual City Defendants' Proposed Jury Instruction No. 8, Dkt. No. 284-6 at 9. Any argument or suggestion that Defendants have somehow not put on defense must be barred. *See Gray v. City of Chicago*, No. 1:18-CV-02624, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023) ("[Plaintiff] may not argue that the defense has the burden of proof; obviously, [Plaintiff] bears the burden."). Plaintiffs have the burden of proving their case. The Individual City Defendants do not carry the burden to support a verdict in their favor.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 15 TO BAR EVIDENCE OR ARGUMENT THAT NON-DEFENDANTS COMMITTED MISCONDUCT

Plaintiffs and their counsel should be barred from offering any evidence, testimony, or argument that any Chicago Police Department ("CPD") or City of Chicago personnel that are not current defendants in this lawsuit, committed misconduct in the underlying criminal investigation into the Collazo murder because it is not relevant and unduly prejudicial.

Barring Plaintiffs from insinuating that non-parties committed misconduct is in line with the case law within this jurisdiction. *See Fields v. City of Chicago*, No. 12 C 1306, 2018 WL 1652093, at *10 (N.D. Ill. Apr. 5, 2018) (barring plaintiff from presenting any "evidence or argument that any non-Defendant engaged in misconduct."); *Martin v. City of Chicago*, No. 15-CV-04576, 2017 WL 2908770, at *6–7 (N.D. Ill. July 7, 2017) (granting motion *in limine* to bar plaintiff "from introducing any testimony, evidence, or suggestion that any non-Individual City

20

Defendants, CPD personnel, or City employees engaged in misconduct or caused injury to" plaintiff because such evidence is "irrelevant" and would "caus[e] distractions and unfair prejudice to Defendants."); *Rodriguez v. City of Chicago*, No. 15 C 6290, 2017 WL 11885372, at *4–5 (N.D. Ill. Jan. 10, 2017) (barring plaintiff from "'insinuat[ing] that any non-Individual City Defendants committed misconduct, since there are no claims against any such officers in this case.'") (quoting *Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 5845551, at *3 (N.D. Ill. Nov. 19, 2012)).

This Court should follow the case law such misconduct is irrelevant and prejudicial. Allowing Plaintiffs to insinuate or suggest that other CPD or City personnel, have since been dismissed since the filing of this lawsuit, committed any sort of misconduct in this case or others has no relevancy to whether these Defendants committed misconduct and prejudices these Defendants by suggesting guilt by association. *Rodriguez*, 2017 WL 11885372 at *4–5. It misleads, confuses, and distracts the jury from the actual questions of liability being considered at trial. *Martin*, 2017 WL 2908770 at *6–7.

<u>**INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 16 TO BAR ARGUMENT OR SUGGESTIONS THAT THE JURY SHOULD PUNISH OR "SEND A MESSAGE" TO THE CITY AND CPD BY ITS VERDICT AGAINST INDIVIDUAL CITY DEFENDANTS**</u>

Plaintiffs' counsel should be barred from offering any sort of argument or suggestion that the jury should punish, admonish, warn, discourage, or send a message with their verdict or damages award to the City because it improperly suggests to the jury that it could award punitive or exemplary damages against the City which is barred by 745 ILCS 10/2-102. *See Jones v. City of Chi.*, 2017 WL 413613, at *4 (N.D. Ill. Jan. 31, 2017) (barring plaintiff from "suggest[ing] that the City should be punished, as such an argument could only be relevant to punitive damages, and the City cannot be liable for punitive damages.") (citing *Case v. Town of Cicero*, 2013 WL 5645780, at *10 (N.D. Ill. Oct. 16. 2023); *Obrycka v. City of Chi.*, 2012 WL 4060293, at *2 (N.D.

Ill. Sept. 14, 2012)); *Betts v. City of Chi.*, 784 F. Supp. 2d 1020, 1033 (N.D. Ill. May 13, 2011) (barring plaintiff "from any argument that the jury should 'send a message' to the City" because that "is a punitive damages argument" and "compensatory damages are limited to actual losses[.]"); *Caldwell v. City of Chi.*, 2010 WL 380696, *2 (N.D. Ill., Jan. 28, 2010) (granting defense's motion *in limine* to bar plaintiff "from arguing that the jury should punish, admonish, warn, discourage, or send a message to the City" because "such an argument would be inappropriate" pursuant to 745 ILCS 10/2-102).

Similarly, Plaintiffs should also be barred from offering any sort of argument or suggestion that the jury should punish, admonish, warn, discourage, or send a message to the Chicago Police Department with their verdict or damages award. *See Jones*, 2017 WL 413613 at *4 (plaintiff barred from "referencing sending a message or punishing the Chicago Police Department ("CPD"), as '[i]nvoking the department is tantamount to invoking the city itself.'") (quoting *Martinez v. City of Chi.*, 2016 WL 3538823, at *14 (N.D. Ill. June 29, 2016)). Further, any argument that the jury should utilize their verdict and/or damages award to "send a message" to the City and/or CPD is irrelevant under Fed. R. Evid. 401 and its purpose would solely be to inflame the passions of the jury. Fed. R. Evid. 403. As such, pursuant to 745 ILCS 10/2-102 as well as Fed. R. Evid. 401 and 403, any testimony, evidence, or argument suggesting the jury to "send a message" to the City or CPD must be barred.

### INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 17 TO BAR PLAINTIFFS' COUNSEL FROM BREAKING UP DEFENDANTS CROSS EXAMINATION OF PLAINTIFFS

Individual City Defendants seek to have this Court enter an order prohibiting Plaintiffs' counsel from interrupting and/or breaking up the Defendants' cross examination of Plaintiffs John Fulton and Anthony Mitchell, or any other witness, into multiple sections or days by scheduling

22

other trial witnesses (including experts) to be presented while Defendants are in the middle of their cross-examination. Plaintiffs should not be allowed to introduce a new witness in the middle of the defense's cross-examination, as it disrupts the flow of questioning and can confuse the jury regarding the specific testimony of a witness. Once a witness takes the stand, the defense should be permitted to conduct a continuous examination without interruptions. This order is essential to ensure a fair trial for all parties involved. *See*, *e.g.*, *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1171 (7th Cir. 1983) (district courts must exercise strict control over the length of trials and are therefore may set reasonable deadlines in advance and hold the parties to them). The cross-examinations of Plaintiffs are critical components to the defense case. It is fundamentally unfair to permit Plaintiffs to engage in gamesmanship by scheduling their own expert witnesses to conflict with the cross-examinations of Plaintiffs by Defendants. As such, Individual City Defendants respectfully request the Court to enter an order prohibiting interruptions during the parties' cross-examinations of Plaintiffs or any other witness.

### INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 18 TO BAR ANY AGRUMENT RELATING TO SUFFICIENCY OF UNDERLYING POLICE INVESTIGATION

Police officers are not required to conduct unending investigations; once probable cause is established, police may arrest a suspect without abrogating their investigative duties. *Anderer v. Jones,* 385 F.3d 1043, 1049 (7th Cir. 2004) ("once probable cause has been established, officials have 'no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence'") (citation omitted). As such, even in Section 1983 cases that involve underlying accusations of misconduct, police officers cannot be liable for failing to take additional investigatory actions after coming to a reasonable probable cause determination. *Eversole v. Steele*, 59 F.3d at 718 (7th Cir. 1995) (holding detectives' reasonable belief in the

23

validity of evidence meant they were under no obligation to "conduct further investigation" or ask "any more questions.")

Plaintiffs intend to introduce evidence at trial that purports to show Individual City Defendants, after arresting Plaintiffs, failed to take further investigative actions. For example, Plaintiffs allege Individual City Defendants did not seek to have Plaintiff Fulton's car tested for Collazo's blood or DNA (Dkt. 1 at 50). Plaintiffs also allege Individual City Defendants, during the investigation, did not uncover evidence that later "emerged" after Plaintiffs' arrest, including travel logistics, phone records, and video evidence. *(Id.* at 78). In Plaintiff Fulton's Memorandum of Law in Support of Mr. Fulton's Verified Petition for Post-Conviction Relief, he cites "recently discovered expert evidence" from a Professor John Hagerdorn who opined that the La Raza street gang should have been investigated as suspects (page 27). The Court should exclude any evidence or argument to this effect because Individual City Defendants' duty to investigate ended once they established probable cause.

### INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 19 TO BAR ARGUMENT THAT THE ABSENCE OF DNA EVIDENCE AS PROOF OF POLICE MISCONDUCT

As part of their fabrication theory, Plaintiffs allege Individual City Defendants "did not seek to have Plaintiff's car tested for Collazo's blood or DNA." (Dkt. 1 at 50). Plaintiffs suggest this is evidence of misconduct since, in Plaintiffs' allegedly false confessions, they admit to placing Collazo into Plaintiff Fulton's car trunk. *Id.* Plaintiffs' theory is that, because Individual City Defendants knew Plaintiffs' confessions were false, they never collected DNA or fingerprint evidence from Plaintiff Fulton's car. *Id.*

However, the Seventh Circuit has rejected such arguments. *King v. Hendricks Cty. Commissioners,* 954 F.3d 981, 986 (7th Cir. 2020). *King* held plaintiff's claim that a lack of

24

fingerprints was evidence of fabrication required making "far too great" of an inferential leap given that "no evidence is no evidence . . . not affirmative evidence" of police misconduct, especially in light of officer testimony to the contrary. *Id.* Like *King,* Plaintiffs' arguments here are based on speculation, not evidence. Plaintiff presents no affirmative evidence that Individual City Defendants, or anyone else, intentionally failed to recover DNA or fingerprint evidence from Plaintiff Fulton's car as part of a conspiracy to fabricate evidence. Instead, Plaintiffs' inferential leaps are based solely on conjecture. As such, any argument about a lack of DNA or fingerprint evidence should be excluded under Rule 401. *See*, *e.g.*, *Mitchell v. City of Chicago,* 862 F.3d 583, 587 (7th Cir. 2017) (granting defendant's motion *in limine* to exclude argument regarding a post-investigation "cover-up" that involved a lack of DNA evidence, finding the "lack of DNA evidence would not be relevant and the evidence was properly excluded.").

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 20 TO BAR EVIDENCE REGARDING ANY ALLEGED DEVIATION FROM CHICAGO POLICE DEPARTMENT INTERNAL POLICIES

Individual City Defendants move this Court *in limine* to bar Plaintiffs, their witnesses, and/or their counsel from offering any evidence, argument, or testimony relating to any alleged deviation from CPD internal policies by the Individual City Defendants. Such evidence is irrelevant, has no probative value, and would only act to impermissibly prejudice and confuse the jury. Fed. R. Evid. 401, 403; *see also Jones v. City of Chicago*, 2017 WL 413613, at *3 (N.D. Ill. Jan. 31, 2017) ("[T]his evidence would be of little relevance and a limiting instruction could not sufficiently cure the 'unnecessary and detrimental jury confusion' that would arise from the introduction of any breach-of-department-protocol evidence.") (quoting *Thompson v. City of Chicago*, 472 F.3d 444, 457 (7th Cir. 2006)).

25

It is well settled "that violations of the Chicago Police Department Rules and Regulations cannot establish proof that a defendant violated a plaintiff's constitutional rights." *Hill v. City of Chicago*, 2011 WL 3205304, at *3 (N.D. Ill. July 28, 2011) (citing *Thompson*, 472 F.3d at 454-55). "[T]he Seventh Circuit 'has consistently held that 42 U.S.C. § 1983 protects plaintiffs from *constitutional violations*, not violations of … departmental regulations and police practices.'" *Id*. at *3 (quoting *Thompson*, 472 F.3d at 454).

Additionally, Plaintiffs' *Monell* claims were bifurcated pursuant to an agreed motions between the parties. *See* Dkt. No. 185, 186. Accordingly, any evidence of general orders are not relevant to this trial. Fed. R. Evid. 401. Furthermore, such evidence only risks potentially misleading the jury and causing the jury to confuse the issues, thus unfairly prejudicing Individual City Defendants. *Bruce v. City of Chicago*, 2011 WL 3471074, at *3 (N.D. Ill. July 29, 2011). Therefore, Plaintiffs should be barred from presenting any evidence, argument, or testimony that Individual City Defendants deviated from any internal policies.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 21 TO BAR EVIDENCE OR ARGUMENT THAT ANTONIO SHAW'S CONFESSION WAS FABRICATED

Individual City Defendants move *in limine* to bar any evidence or argument that co-defendant Antonio Shaw's confession was fabricated by Individual City Defendants. Individual City Defendants anticipate that Plaintiffs will argue at trial that Shaw's handwritten statement implicating himself, Fulton, and Mitchell in Collazo's murder was fabricated to support their claims of fabrication. However, Shaw's statement was never introduced against Plaintiffs at their criminal trials because it was suppressed, and so Plaintiffs' fabrication claims cannot be based on Shaw's confession. *See Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is, as we noted earlier, no tort"); *see also Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th

26

Cir. 2020) ("If fabricated evidence is later used at trial to obtain a conviction, the accused may have suffered a violation of his due-process right to a fair trial") (citing *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019)).

Individual City Defendants asserted this very argument as part of their summary judgment motion to dismiss Plaintiffs' fabrication claims. (*See* Dkt. No. 202 at 45-46). In its opinion and order, the Court dismissed Plaintiffs' fabrication claim based on Shaw's statement against Defendant Andrew Varga. (*See* Dkt. No. 256 at 50). However, the Court did not address in its ruling whether Plaintiffs' fabrication claim based on Shaw's statement was dismissed against Individual City Defendants. (*See* Dkt. No. 256 at 45-48). The fair understanding of the Court's ruling is that Shaw's statement cannot be the basis for Plaintiffs' fabrication claims. However, out of an abundance of caution, Plaintiffs should be barred from arguing that Shaw's confession was fabricated as support for their fabrication claims.

## INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 22 TO BAR ALL REFERENCES TO POLICE OFFICERS NOT MAKING ELECTRONIC RECORDINGS OF INTERVIEWS

Individual City Defendants move this Court *in limine* to exclude all evidence relating to the lack of electronic recordings of interviews that occurred prior to July 18, 2003. In Illinois, police were not legally required to electronically record custodial interrogations until July 18, 2003. 725 ILCS 5/103–2.1(b) (2003). On July 18, 2003, the Ninety-Third Illinois General Assembly effectuated legislation to encourage recording of custodial interviews by making statements from custodial interrogations that were not electronically recorded presumptively inadmissible in homicide cases and providing police officers with funding for and training on the technology used to electronically record interrogations. 20 ILCS 3930/7.5(a) (2003); 50 ILCS 705/10.3 (2003). It is undisputed that CPD did not electronically record suspects in custody, as

they do now, during the Collazo homicide investigation.  It was not required by CPD during the Collazo homicide investigation, and there was no legal requirement to record Fulton's and/or Mitchell's time at the police station or the interviews conducted by officers or ASAs working at the station.

Because the underlying criminal investigation took place in March 2003, prior to the above referenced legislation, Illinois police departments were neither under the legal requirement to electronically record interrogations, nor were they provided with state funding and training to make such recordings.  Consequently, the Court should exclude all evidence or argument suggesting to the jury that the Defendant Officers should have recorded the interviews or suggesting to the jury that there was a deliberate choice by any of the Defendant Officers to not record the interviews.  This type of argument and information is irrelevant to the parties' claims and/or defenses and unduly prejudicial under Rule 403 because referencing a lack of electronic recordings suggests the Individual City Defendants engaged in misconduct because of the absence of a contemporaneous video footage of the interviews.

### INDIVIDUAL CITY DEFENDANTS' MOTION *IN LIMINE* NO. 23 TO BAR REFERENCE TO HOW THE CITY OF CHICAGO TRAINS, DISCIPLINES, MONITORS, OR CONTROLS POLICE OFFICERS

Individual City Defendants move this Court *in limine* to bar any reference to how the City of Chicago trains, disciplines, monitors, or otherwise controls its police officers. Plaintiffs' *Monell* claims are bifurcated (*see* Dkt. No. 186); therefore, the only claims proceeding to trial are the claims alleged against Individual City Defendants and Cook County Defendants. Further, no *Monell* discovery was conducted in this case. Such information is not relevant to the issues in this case, is highly prejudicial, and would only serve to confuse the jury on the actual issues.

28

Accordingly, Plaintiffs should be barred from eliciting testimony or introducing evidence regarding the City or how the City trains, monitors, controls, and/or disciplines its police officers.

## <u>CONCLUSION</u>

WHEREFORE, Individual City Defendants respectfully request that Plaintiffs and his witnesses and attorneys be ordered not to mention, refer to, adduce, introduce any evidence concerning, or attempt to convey to the jury at any time during this trial the subject matter as stated above, and for any other relief this Court deems just and proper.

Dated: December 18, 2024

Respectfully submitted,

INDIVIDUAL CITY DEFENDANTS

*/s/ Natalie Y. Adeeyo*
Shneur Nathan, Avi Kamionski,
Natalie Adeeyo & Breana Brill
Special Assistant Corporation Counsel
Nathan & Kamionski LLP
206 S. Jefferson Street
Chicago, Illinois 60661
(312) 612-2255
snathan@nklawllp.com
akamionski@nklawllp.com
nadeeyo@nklawllp.com
bbrill@nklawllp.com

*Attorneys for Individual City Defendants*

29

## CERTIFICATE OF SERVICE

I, Natalie Adeeyo, an attorney, hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent electronic notification of the filing on the same day to all counsel of record.

*/s/ Natalie Adeeyo*