FILED
3/17/2022 7:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
98CR1244002
Martin, LeRoy K, Jr.
17137360

## IN THE CIRCUIT COURT OF COOK COUNTY
## COUNTY DEPARTMENT-CRIMINAL DIVISION

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | |
| | ) | |
| **Respondent** | ) | **CASE NO. 98CR12440-02** |
| | ) | **HONORABLE** |
| **VS** | ) | **Sophia Atcherson** |
| | ) | **Judge Presiding** |
| **Arturo Deleon-Reyes,** | ) | |
| **Petitioner** | | |

TO:    Anand Swaminathan
       Loevy & Loevy
       311 N Aberdeen St, 3rdFl
       Chicago, IL 60607
       anand@loevy.com

### <u>NOTICE OF FILING</u>

PLEASE TAKE NOTICE that on March 17, 2022, I filed the attached People's Response to Petitioner's Motion for Summary Judgment by efiling a copy with the Clerk of the Circuit Court. The matter is set before the Honorable Sophia Atcherson on April 14, 2022, at 9:30 a.m. in courtroom 205.

/s/ *Christa Bowden*
Assistant State's Attorney
2650 S. California, Room 12C42
Chicago, Illinois 60608
(773) 674-7537
christa.bowden@cookcountyil.gov

### PROOF OF SERVICE BY MAIL

I hereby certify that I have served a copy of this notice to the above addressee by Odyssey/efile and email.

/s/ *Christa Bowden*
Assistant State's Attorney

REYES 011971

FILED DATE: 3/17/2022 7:16 PM   98CR1244002

**IN THE CIRCUIT COURT OF COOK COUNTY**
**COUNTY DEPARTMENT-CRIMINAL DIVISION**

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | |
| **Respondent** | ) | |
| | ) | **CASE NO. 98CR12440-02** |
| **VS** | ) | **HONORABLE** |
| | ) | **Sophia Atcherson** |
| **Arturo Deleon-Reyes,** | ) | **Judge Presiding** |
| **Petitioner** | ) | |

**PEOPLE'S RESPONSE TO PETITIONER'S**
**MOTION FOR SUMMARY JUDGMENT**

NOW comes Kimberly M. Foxx, State's Attorney of Cook County, Illinois, through her assistant Christa Bowden, and respectfully ask this Honorable Court to deny petitioner's motion for summary judgment. In further support, the People state as follows:

The matter is before the Court on Arturo Deleon- Reyes'(Reyes) Petition for Certificate of Innocence (COI). Petitioner seeks summary judgment on his COI. Petitioner argues that there is no genuine issue of material fact because "[t]he State cannot meet the threshold of presenting admissible evidence on each prima facie element of any of the crimes of conviction." Motion, Section IV. C. This is not the legal standard of summary judgment.

Petitioner's motion for summary judgment falls short along many avenues. 1) Petitioner's motion for summary judgment is untimely. 2) Petitioner conflates the State's burden here with that in a criminal trial. 3) There are significant disputes between the parties concerning fact, admissibility of evidence, and inferences to be drawn from evidence. 4) Petitioner's case is not analogous to *People v. Palmer,* 2021 IL 125621.

1) Petitioner's motion for summary judgment is untimely. On December 3, 2021, Judge Thaddeus Wilson ordered petitioner to provide the State with "copies deposition transcripts when

REYES 011972

available." (Ex. 1 Court Sheet). To date the State has not received any depositions from petitioner other than those provided as part of petitioner's pleadings. The State has expressed to counsel for petitioner and the Court that the currently assigned assistant state's attorney anticipated filing additional pleadings to supplement those filed by her predecessor.

2) Petitioner conflates the State's burden here with that in a criminal trial. The State has no burden in a Certificate of Innocence. Petitioner's conviction has been vacated and the charges dismissed. Petitioner bears the burden of proving to the Court that he has met the conditions set forth in 735 ILCS 5/2-702(g)(1)-(g)(4).[1] This is the standard whether or not the State intervenes. *People v. Hood,* 220 IL App (1st) 162964,

> (1) [he] was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;
>
> (2) (A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;
>
> **(3)** [he] is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and
>
> **(4)** the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction.

735 ILCS 5/2-702(g) (West 2021).

Petitioner contends that on a motion for summary judgment on a petition for a COI, once petitioner has presented a prima facie case on each of the four elements of the COI statute the burden becomes the State's to "establish the *prima facie* elements of the crimes of conviction…"

---

[1] The State concedes and does not dispute that petitioner has met his burden regarding sections (g)(1), (2) and (4), but vigorously contests the assertion that he has met his burden with regard to section (g)(3).

REYES 011973

FILED DATE: 3/17/2022 7:16 PM   98CR1244002

FILED DATE: 3/17/2022 7:16 PM   98CR1244002

(Motion, section II). This is an improper interpretation of both the law governing summary judgment as well as the law governing COIs. The State has no obligation to prove any elements of the crimes for which petitioner was originally convicted. It is petitioner that must show by a preponderance of the evidence that he can meet his burden to prove the four elements set forth in 2-702. The issue is not one of guilt but rather innocence, if the State could provide evidence on the elements of the crimes for which petitioner was convicted, he would be guilty.

Petitioner cites to *People v. Williams,* 2017 IL App (1st) 152021, to support his position. The issues decided in *Williams* arose from the State's motion for directed finding pursuant to 735 ILCS 5/2-1110, after defendant presented his case in a third stage post-conviction hearing. *Id* at ¶27-31. *Williams* was a post-conviction matter, which has its own statutory evidentiary rules and is not a COI. Petitioner, in the instant case, has requested this court grant a motion for summary judgment on a COI prior to any hearing on the merits, presumably pursuant to 735 ILCS 5/1005 summary judgments, although a statutory citation is not made in petitioner's motion.

The standard for summary judgment in civil actions is set forth by the Illinois Supreme Court in *Beamen v. Freesmeyer,* 2021 IL 12567. "Summary judgment is proper when the "pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *735 ILCS 5/2-1005©* (West 2016). Summary judgment is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt. Where a reasonable person could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. In ruling on a motion for summary judgment, we must construe the pleadings, depositions, admissions and affidavits strictly against the movant and

REYES 011974

liberally in favor of the nonmoving party." *Beamen v. Freesmeyer,* 2021 IL 12567, ¶71 (internal citations omitted).

The intent of the statute is clear from its language. The statute does not contemplate that a COI should be granted because, for example, a criminal defendant's constitutional rights were violated. Rather, the plain language makes clear that a COI should issue only when a petitioner can meet his burden of proving that he is "innocent of all offenses charged in the indictment or information." *See* 735 ILCS 5/2-702 (g)(3). To that end, this Court has consistently held that the term "innocent" is to be given its common understanding. As such, the fact that a petitioner was acquitted will not suffice. As this Court has long held, "the plain language of Section 2-702 shows the legislature's intent to distinguish between a finding of not guilty at retrial and actual innocence of the charged offense." *People v. Fields,* 2011 IL App (1st) 100169, ¶ 19.

3) There are significant disputes between the parties, concerning facts, admissibility of evidence, and inferences to be drawn from evidence and facts. Petitioner cites 27 "undisputed facts." (Motion, section I). The State disputes many of these enumerated "undisputed facts," a large number of which contain commentary and argument; and responds to each as follows:

> 1. Disputed. The State asserts petitioner was charged on a theory of legal responsibility with the offenses in the indictment for which was convicted. The charging documents for counts 1,3,17,23 and 25 list the three offenders, Adriana Mejia, petitioner and Gabriel Solache by name and alias and charge that "**They**, without lawful justification intentionally or knowingly" committed the offenses of first degree murder of Jacinta Soto and Mariano Soto and the home invasion of the Soto family home and the aggravated kidnappings of Santiago Soto and Maria Soto. (pet. Ex. 2). The jury instructions given at trial included the language of legal responsibility and legal responsibility was argued by the trial lawyers to the jury. (Ex. 2, jury instruction transcript, Ex. 3 transcript closing arguments). It is agreed that petitioner's convictions were vacated.

> 2. Agreed

REYES 011975

3. Agreed

4. Agreed, petitioner has denied participation in the crimes, and alleged coercion by former detective Guevara caused him to sign an inculpatory statement in all of his testimony.

5. Agreed, petitioner has denied participation in the crimes, and alleged coercion by Mr. Guevara caused him to sign an inculpatory statement, in all of his testimony.

6. Agreed, Gabriel Solache has made similar allegations of coercion by Mr. Guevara and testified to the same.

7. Disputed. During the trial, evidence was received regarding multiple notes and notations in petitioner's pockets and personal calendar, which contained the name of the fictional parent of the kidnapped children, as well as general evidence regarding petitioner's living arrangements and relationships with his co-defendants. The sum of the testimony from the various witnesses at trial support his lack of innocence of the crimes for which he was convicted.

8. Petitioner's statements were suppressed. Their falsity is not conceded.

9. Agreed

10. Agreed

11. Agreed

12. Agreed

13. Petitioner's judgment of conviction was vacated; the State did dismiss all charges and petitioner was released from prison. The falsity of the confession is not conceded.

14. Agreed

15. The admissibility of this item is disputed.

16. The admissibility of this item is disputed.

REYES 011976

FILED DATE: 3/17/2022 7:16 PM   98CR1244002

17.    Agreed, however, petitioner's emphasis on the lack of his DNA on evidence recovered from the crime scene is misleading.  Jacinta Soto's DNA was also not found on any of the evidence recovered from the crime scene, despite her stabbing death.  This would favor the argument that the presence of a suspect's DNA would be indicative of guilt, but the reverse is not necessarily true.

18.  Ms. Mejia has asserted that she was physically abused by Mr. Guevara.  It is disputed that her statements implicating petitioner and Solache were false.

19.  Agreed

20.  Evidence was presented at trial that there was unidentified DNA in some of the evidence recovered during the investigation.

21.  Petitioner has been excluded as a contributor to the DNA **recovered** at the crime scene.  Petitioner's emphasis on the lack of his DNA on evidence recovered from the crime scene is misleading.  Jacinta Soto's DNA was also not found on any of the evidence recovered from the crime scene despite her stabbing death.  The presence of a suspect's DNA would be indicative of guilt, but the reverse is not necessarily true.

22. Dispute, see 7.

23.  Dispute, many witnesses have been deposed in this case (some of whom are unknown to the State at this time and until petitioner complies with Judge Wilson's order to provide the depositions to the State).  Known deponents include petitioner and Adriana Mejia, Guadalupe Mejia, ASA Healther Brualdi and former ASA Thomas O'Malley.

24/25/26/27.  Dispute.  The State disputes the inferential value of the limited selection of blurbs from hundred of pages of deposition testimony. Throughout her various depositions Adriana Mejia describe the actions of petitioner during the course of the crimes.  For example, that she was told by Solache in petitioner's presence that petitioner was present to help get the baby.  Mejia describes petitioner's actions waiting with her in the car until getting the signal to enter the Soto home. (Ex. 4 Mejia dep. 2-4-21).

The State submits additional documentation (Ex. 1-17) in addition to that already in in the record and anticipates the presentation of depositions that have been taken in the associated federal civil matter that have not yet been made available or have yet to be completed.  The State asserts that a full consideration of the record in conjunction with additionally submitted exhibits

REYES 011977

sufficiently rebuts petitioner's assertion of innocence. For a COI to be granted petitioner must prove his innocence not merely that he is not guilty. *People v.* Fields, 2011 IL App (1st) 100169 at par. 19.

4) Petitioner's case is not analogous to *People v. Palmer,* 2021 IL 125621. Petitioner asserts that he was not convicted on an "accountability theory," and pursuant to *Palmer,* the State is constrained from arguing "accountability" in the COI. This is a false premise. Petitioner was in fact convicted on a theory of his accountability for the crimes of his co-defendants. The indictment, the jury instructions as evidenced by the decisions made at the instruction conference and the closing arguments at trial all reference the concept of legal responsibility or "accountability." (pet. Ex. 2, States Ex. 2, 3).

The State's assertion that petitioner cannot meet the burden of proving his innocence by a preponderance of the evidence, specifically as to section 735 ILCS 5/2-702(g)(4) is supported when the cumulative testimony of the witnesses at trial and the more recent depositions including that of petitioner when viewed as a whole and not in individual blurbs. Petitioner has not shown that there are no disputes as to material facts, that there are no disputes as to the admissibility of tendered exhibits, that a reasonable person could not draw divergent inferences from the evidence received.

WHEREFORE, the People respectfully request that the motion for summary judgment be denied.

Respectfully submitted,

KIMBERLY M. FOXX

7

REYES 011978

FILED DATE: 3/17/2022 7:16 PM   98CR1244002

State's Attorney of Cook County

BY:

/s/ Christa Bowden
Assistant State's Attorney
2650 S. California, Room 12 C 42
Chicago, IL  60608
(773) 674-7537
christa.bowden@cookcountyil.gov

8

REYES 011979

| Sheet #<br>20 | CRIMINAL DISPOSITION SHEET<br>Defendant Sheet #1 | | Branch/Room/Location<br>Criminal Division, Courtroom 400<br>2650 South California Avenue, Chicago, IL, 60608 | | Court Intrerpreter |
|---|---|---|---|---|---|

| Case Number | Defendant Name | | Attorney Name | Session Date | Session Time |
|---|---|---|---|---|---|
| 98CR1244002 | REYES, ARTURO D | | Defender, Public  006224360 | 12/3/2021 | 09:00 AM - |

| CB/DCN# | IR # | EM | Case Flag | Bond # | Bond Type | Bond Amt |
|---|---|---|---|---|---|---|
| 011024352 | 1232215 | | | 0000000 | | 0.0000 |

| CHARGES | COURT ORDER ENTERED | CODES |
|---|---|---|
| **C001  720-5/9-1(A)(1)**<br>MURDER/INTENT TO KILL/INJ<br>12/21/2017 Nolle Prosequi | | |
| **C002  720-5/9-1(A)(2)**<br>MURDER/STRONG PROB KILL/I<br>12/21/2017 Nolle Prosequi | | |
| **C003  720-5/9-1(A)(1)**<br>MURDER/INTENT TO KILL/INJURE<br>12/21/2017 Nolle Prosequi | | |
| **C004  720-5/9-1(A)(2)**<br>MURDER/STRONG PROB KILL/I<br>12/21/2017 Nolle Prosequi | | |
| **C005  720-5/9-1(A)(3)**<br>MURDER/OTHER FORCIBLE FEL<br>12/21/2017 Nolle Prosequi | | |
| **C006  720-5/9-1(A)(3)**<br>MURDER/OTHER FORCIBLE FEL<br>12/21/2017 Nolle Prosequi | | |
| **C007  720-5/9-1(A)(3)**<br>MURDER/OTHER FORCIBLE FEL<br>12/21/2017 Nolle Prosequi | | |
| **C008  720-5/9-1(A)(3)**<br>MURDER/OTHER FORCIBLE FEL<br>12/21/2017 Nolle Prosequi | | |
| **C009  720-5/9-1(A)(3)**<br>MURDER/OTHER FORCIBLE FEL<br>12/21/2017 Nolle Prosequi | | |

*Handwritten court order:*

D/WE /D DEPORTED TO MEXICO
ATTY SWAMINATHAN VIA ZOOM
ASA BOWDEN VIA ZOOM

D TO PROVIDE STATE WITH
COPIES DEPOSITION TRANSCRIPT
WHEN AVAILABLE
DTF MTN FOR SUMMARY JUDGMENT BY 1-20-22
STF RESPONSE BY 3-3-22
DTF REPLY BY 3-17-22
COURTESY COPIES TO COURT UPON FILING
BY 4-4-21 @ 2PM IN-PERSON
FOR HRG ON MTN FOR
SUMMARY JUDGMENT

| JUDGE: Wilson, Thaddeus | JUDGE'S NO: 1976<br>1976 | RESPONSIBLE FOR CODING AND COMPLETION BY DEPUTY CLERK: | VERIFIED BY: |
|---|---|---|---|

REYES 011980

| Sheet #<br>20 | **CRIMINAL DISPOSITION SHEET**<br>Defendant Sheet #2 | Branch/Room/Location<br>Criminal Division, Courtroom 400<br>2650 South California Avenue, Chicago, IL, 60608 | Court Intrerpreter |
|---|---|---|---|

| Case Number | Defendant Name | Attorney Name | Session Date | Session Time |
|---|---|---|---|---|
| 98CR1244002 | **REYES, ARTURO D** | Defender, Public  006224360 | 12/3/2021 | 09:00 AM - |

| CB/DCN# | IR # | EM | Case Flag | Bond # | Bond Type | Bond Amt |
|---|---|---|---|---|---|---|
| 011024352 | 1232215 | | | 0000000 | | 0.0000 |

| CHARGES | COURT ORDER ENTERED | CODES |
|---|---|---|
| **C010  720-5/9-1(A)(3)**<br>MURDER/OTHER FORCIBLE FEL<br>12/21/2017 Nolle Prosequi | | |
| **C011  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017 Nolle Prosequi | | |
| **C012  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017 Nolle Prosequi | | |
| **C013  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017 Nolle Prosequi | | |
| **C014  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017 Nolle Prosequi | | |
| **C015  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017 Nolle Prosequi | | |
| **C016  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017 Nolle Prosequi | | |
| **C017  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017  Nolle Prosequi | | |
| **C018  720-5/12-11(A)(1)**<br>HOME INVASION/ARMED/FORCE<br>12/21/2017 Nolle Prosequi | | |

| JUDGE: Wilson, Thaddeus L | JUDGE'S NO: 1976 | RESPONSIBLE FOR CODING AND COMPLETION BY DEPUTY CLERK: | VERIFIED BY: |
|---|---|---|---|

REYES 011981

| Sheet #<br>20 | | **CRIMINAL DISPOSITION SHEET**<br>Defendant Sheet #3 | | **Branch/Room/Location**<br>Criminal Division, Courtroom 400<br>2650 South California Avenue, Chicago, IL, 60608 | | **Court Intrerpreter** |
|---|---|---|---|---|---|---|

| Case Number | Defendant Name | | Attorney Name | Session Date | Session Time |
|---|---|---|---|---|---|
| 98CR1244002 | **REYES, ARTURO D** | | Defender, Public  006224360 | 12/3/2021 | 09:00 AM - |

| CB/DCN# | IR # | EM | Case Flag | Bond # | Bond Type | Bond Amt |
|---|---|---|---|---|---|---|
| 011024352 | 1232215 | | | 0000000 | | 0.0000 |

| CHARGES | COURT ORDER ENTERED | CODES |
|---|---|---|
| **C019  720-5/12-11(A)(2)**<br>HOME INVASION/CAUSE INJUR<br>12/21/2017 Nolle Prosequi | | |
| **C020  720-5/12-11(A)(2)**<br>HOME INVASION/CAUSE INJUR<br>12/21/2017 Nolle Prosequi | | |
| **C021  720-5/12-11(A)(2)**<br>HOME INVASION/CAUSE INJUR<br>12/21/2017 Nolle Prosequi | | |
| **C022  720-5/12-11(A)(2)**<br>HOME INVASION/CAUSE INJUR<br>12/21/2017 Nolle Prosequi | | |
| **C023  720-5/10-2(A)(2)**<br>AGG KIDNAP/CHILD<13/RETAR<br>12/21/2017 Nolle Prosequi | | |
| **C024  720-5/10-2(A)(2)**<br>AGG KIDNAP/CHILD<13/RETAR<br>12/21/2017 Nolle Prosequi | | |
| **C025  720-5/10-2(A)(2)**<br>AGG KIDNAP/CHILD<13/RETAR<br>12/21/2017 Nolle Prosequi | | |
| **C026  720-5/10-2(A)(2)**<br>AGG KIDNAP/CHILD<13/RETAR<br>12/21/2017  Nolle Prosequi | | |
| **C027  720-5/10-2(A)(5)**<br>AGGRAVATED KIDNAPING/ARME<br>12/21/2017 Nolle Prosequi | | |

| JUDGE:  Wilson, Thaddeus L | JUDGE'S NO:  1976 | RESPONSIBLE FOR CODING AND COMPLETION BY DEPUTY CLERK: | VERIFIED BY: |
|---|---|---|---|

REYES 011982

| Sheet #<br>20 | CRIMINAL DISPOSITION SHEET<br>Defendant Sheet #4 | Branch/Room/Location<br>Criminal Division, Courtroom 400<br>2650 South California Avenue, Chicago, IL, 60608 | Court Intrerpreter |
|---|---|---|---|

| Case Number | Defendant Name | Attorney Name | Session Date | Session Time |
|---|---|---|---|---|
| 98CR1244002 | REYES, ARTURO D | Defender, Public  006224360 | 12/3/2021 | 09:00 AM - |

| CB/DCN# | IR # | EM | Case Flag | Bond # | Bond Type | Bond Amt |
|---|---|---|---|---|---|---|
| 011024352 | 1232215 | | | 0000000 | | 0.0000 |

| CHARGES | COURT ORDER ENTERED | CODES |
|---|---|---|
| C028  720-5/10-2(A)(5)<br>AGGRAVATED KIDNAPING/ARME<br>12/21/2017 Nolle Prosequi | | |
| C029  720-5/10-2(A)(5)<br>AGGRAVATED KIDNAPING/ARME<br>12/21/2017 Nolle Prosequi | | |
| C030  720-5/10-2(A)(5)<br>AGGRAVATED KIDNAPING/ARME<br>12/21/2017 Nolle Prosequi | | |
| C031  720-5/10-1(A)(1)<br>KIDNAPING/SECRETLY CONFIN<br>12/21/2017 Nolle Prosequi | | |
| C032  720-5/10-1(A)(1)<br>KIDNAPING/SECRETLY CONFIN<br>12/21/2017 Nolle Prosequi | | |
| C033  720-5/10-1(A)(2)<br>KIDNAPING/FORCE OR THREAT<br>12/21/2017 Nolle Prosequi | | |
| C034  720-5/10-1(A)(2)<br>KIDNAPING/FORCE OR THREAT<br>12/21/2017 Nolle Prosequi | | |
| C035  720-5/19-3<br>RESIDENTIAL BURGLARY<br>12/21/2017  Nolle Prosequi | | |
| C036  720-5/19-3<br>RESIDENTIAL BURGLARY<br>12/21/2017 Nolle Prosequi | | |

| JUDGE:  Wilson, Thaddeus L | JUDGE'S NO:  1976 | RESPONSIBLE FOR CODING AND COMPLETION BY DEPUTY CLERK: | VERIFIED BY: |
|---|---|---|---|

REYES 011983

| Sheet # 20 | CRIMINAL DISPOSITION SHEET Defendant Sheet #5 | Branch/Room/Location Criminal Division, Courtroom 400 2650 South California Avenue, Chicago, IL, 60608 | Court Interpreter |
|---|---|---|---|

| Case Number | Defendant Name | Attorney Name | Session Date | Session Time |
|---|---|---|---|---|
| 98CR1244002 | REYES, ARTURO D | Defender, Public 006224360 | 12/3/2021 | 09:00 AM - |

| CB/DCN# | IR # | EM | Case Flag | Bond # | Bond Type | Bond Amt |
|---|---|---|---|---|---|---|
| 011024352 | 1232215 | | | 0000000 | | 0.0000 |

| CHARGES | COURT ORDER ENTERED | CODES |
|---|---|---|
| **C037 720-5/19-3** RESIDENTIAL BURGLARY 12/21/2017 Nolle Prosequi | | |
| **C038 720-5/19-3** RESIDENTIAL BURGLARY 12/21/2017 Nolle Prosequi | | |
| **C039 720-5/19-3** RESIDENTIAL BURGLARY 12/21/2017 Nolle Prosequi | | |
| **C040 720-5/19-3** RESIDENTIAL BURGLARY 12/21/2017 Nolle Prosequi | | |

| JUDGE: Wilson, Thaddeus L | JUDGE'S NO: 1976 | RESPONSIBLE FOR CODING AND COMPLETION BY DEPUTY CLERK: | VERIFIED BY: |
|---|---|---|---|

REYES 011984

MR. VERDUN: No objection.

MS. LUQUE-ROSALES: We will withdraw the next one, Judge.

THE COURT: That's the definition of items not inherently dangerous. So, we will take that one out.

So, the next one becomes 11, IPI 5.03, the definition of accountability.

MR. VERDUN: No objection.

THE COURT: This is the one that Ms. Rouse wants combined regarding her client. Do you want this combined regarding your client?

MR. VERDUN: Yes, please.

THE COURT: So, one instruction that states one regarding Jacinta Soto and that the person combined unlawful act such as aggravated kidnapping or home invasion as opposed to being two. State instructions one with both underlying felonies into it. And that's 12. It's IPI 5.03. No objection, Mr. Verdun?

MR. VERDUN: That's correct Judge.

THE COURT: The next one is same thing with Mariano Soto, Instruction No. 13. It will talk about the aggravated kidnapping or home

REYES 011985

invasion.

MR. VERDUN: No objection when they are combined.

THE COURT: State will make it one instruction as opposed to two instructions.

MS. LUQUE-ROSALES: Yes, Judge.

THE COURT: 14 will then be person who commits the offense of first degree murder gives various alternatives, commits the offense of aggravated kidnapping or home invasion.

MR. VERDUN: No objection to that form, Judge.

THE COURT: This is regarding Jacinta Soto, the female victim and then according to the last changes we talked about it would then say committing the offense of home invasion, committing the offense of aggravated kidnapping or home invasion.

MR. VERDUN: No objection to that form.

THE COURT: That's regarding Jacinta Soto and it will be the same with Mariano, People's 16, will be 17.02A and final line committing the offense of aggravated kidnapping or home invasion.

CCSAO REYES/SOLACHE PC DOCUMENTS 009569

REYES 011986

MR. VERDUN: No objection to that combined form.

THE COURT: People's 17 is definition of kidnapping. Definition of kidnapping so probably do you want to make it his or her will opposed to her will or her will.

MR. VERDUN: No objection.

THE COURT: Make it his or her will and that will be People's No. 17. 18, IPI 8.03 confinement of a child under the age of thirteen is against, it should be I guess against his or her will.

MR. VERDUN: Yes.

THE COURT: If a parent has not consented.

MR. VERDUN: No objection to that form.

THE COURT: The next one would be 19. It's 8.04 the kidnapping becomes aggravated when a person has a dangerous weapon.

MR. VERDUN: No objection.

MS. LUQUE-ROSALES: We will withdraw the next one.

THE COURT: 4.07 we don't need.

MS. LUQUE-ROSALES: Right.

THE COURT: Charge of aggravating

CCSAO REYES/SOLACHE PC DOCUMENTS 009570

REYES 011987

kidnapping, 8.05 of the IPI, People's 20, state charged including the following propositions regarding Maria Guadalupe Soto, Maria Guadalupe Soto is the girl so it would be against her will. Defendant acted knowingly with a child under the age of thirteen and it should be the fourth part there that the offender was armed or was armed with a weapon.

MR. VERDUN: Judge, I have no objection to that form.

THE COURT: That still goes into Paragraph 3 talking about armed with a weapon aspect.

MR. VERDUN: Correct.

THE COURT: And it's accountability also with that aspect of it.

THE COURT: Then we have the aggravated kidnapping regarding the boy Santiago Soto, so in the third paragraph it will have the under the age of thirteen part or the accountability person armed with weapon.

MS. LUQUE-ROSALES: Yes, Judge.

MR. VERDUN: No objection to that form.

THE COURT: That was 21, People's 21.

People's 22 is the home invasion

CCSAO REYES/SOLACHE PC DOCUMENTS 009571

REYES 011988

instruction that instructs the defendant -- not the instruction but the definition of home invasion.

MR. VERDUN: No objection.

THE COURT: People's 23 is a 11.54 issues instruction for home invasion and then there is one regarding Jacinta Soto and one regarding Mariano.

THE COURT: 23 and 24 and they are both 11.04, one for each of the two victims.

THE COURT: 25, concluding instruction, IPI 26.01. We have to change the verdict forms so it will be twelve verdict forms instead of six.

MS. ROUSE: Didn't we decide ten?

THE COURT: Twelve. Home invasion regarding Mariano and one regarding his wife Jacinta. Two home invasion, two kidnapping two murder, that's twelve.

MS. LUQUE-ROSALES: Correct. Two each so that's twelve altogether he.

Then we will fix the verdict forms, Judge.

THE COURT: All right. Then the State

CCSAO REYES/SOLACHE PC DOCUMENTS 009572

REYES 011989

will correct the verdict forms, refer to each of the respective victims.

MS. LUQUE-ROSALES: That's correct, Judge. It will read the charge hyphen and then the victim's name or parenthesis?

Do you guys prefer parenthesis or hyphen?

MS. ROUSE: I don't care.

THE COURT: Mr. Verdun any instructions that you are offerring?

MR. VERDUN: No, sir.

THE COURT: We will do the same thing with the exhibits at this point. All the exhibits for both sides have been received. We will go through the ones regarding Mr. Solache first. I have them numbered here. I think they are properly numbered, but I'm not totally one hundred percent sure of that.

No. 1, photograph of the building.

MS. LUQUE-ROSALES: Judge, this is Solache?

THE COURT: Solache first. Any objection to that going back, photograph of the building?

CCSAO REYES/SOLACHE PC DOCUMENTS 009573

REYES 011990

062000

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CRIMINAL DIVISION

THE PEOPLE OF THE )
STATE OF ILLINOIS )
)
) No.98-CR-12440
vs. )
) Charge: Murder, etc.
ARTURO DELEON REYES )

EXCERPT OF REPORT OF PROCEEDINGS

at the trial of the above-entitled cause, before the

Honorable STANLEY J. SACKS, and a Jury, on the 20th

day of June 2000.

APPEARANCES:

        HON. RICHARD A. DEVINE,
        State's Attorney of Cook County, by
        MR. ARTHUR HILL and
        MS. MERCEDES LUQUE-ROSALES,
        Assistant State's Attorneys,
            appeared on behalf of the People
            of the State of Illinois;

        HON. RITA A. FRY,
        Public Defender of Cook County, by
        MR. THOMAS VERDUN and MS. DEANA BINSTOCK,
        Assistant Public Defenders,
            appeared on behalf of the Defendant
            Arturo Deleon Reyes.

Annette M. Golab, CSR
Official Court Reporter
2650 South California Avenue
Chicago, Illinois 60608

CCSAO REYES/SOLACHE PC DOCUMENTS 009601

REYES 011991

INDEX

Date of Hearing:  June 20, 2000

Page Numbers:  1 to 50

PROCEEDINGS

|                           |      | PAGE |
|---------------------------|------|------|
| Closing Arguments         |      |      |
|   By Ms. Luque-Rosales    |      | 3    |
|   By Mr. Verdun           |      | 18   |
|   By Mr. Hill             |      | 38   |

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009602

REYES 011992

* * *

CLOSING ARGUMENT

BY MS. LUQUE-ROSALES:

"Please let me in, I have no place to go." With those words Jacinta Soto opened the door of her home. With that act of compassion she insured the result of what occurred: The kidnapping of her three-year-old son, the kidnapping of her baby daughter, the brutal, heinous, mutilation of her and her husband, which resulted in their bodies being left in their home to rot, decompose and to ferment. Her act of compassion.

Unknown to Jacinta Soto outside her door that early morning hours of March 28th were three murderers. One of those murderers is Arturo Deleon Reyes, who sits before you today.

Back in February of 1998 Arturo Deleon Reyes had been approached by Adriana Mejia. "Will you help me steal a baby? I'll give you $600 if you help me steal a baby." "Yes, I'll do that." With that, Adriana Mejia gave him a $200 down payment. Three days later, "Are you still going to help me steal the baby?" "Yes." With that the final payment of $400 was given to Arturo Deleon Reyes.

CCSAO   REYES/SOLACHE   PC DOCUMENTS   009603

REYES 011993

You heard how Arturo Deleon Reyes participated in this crime with his co-defendants, with his partners in crime, how together they went to that apartment. How together they were present. How together Adriana Mejia knocked on that door and signaled them to come in. You heard what he specifically did and you heard what his partners did, together. "Are you going to help me?" "Yes." "Be ready tomorrow."

You heard how on that Friday in the early morning hours going into Saturday how Arturo Deleon Reyes was ready. He was ready to go to that house at 2071 North Leavitt.

At that house in Bucktown lived the Soto family. A little apartment building, they had the basement rear apartment. That was their home. You heard the size of that apartment. It was modest. You came in the door, the kitchen area, the bathroom and a living room/bedroom combination. This was all that the Sotos had, this and their little family.

You heard about Mariano Soto and Jacinta Soto, the parents of young Santiago and little baby Maria Guadalupe. You heard about them. You heard about how Mrs. Soto would take care of children, took

REYES 011994

care of Mr. Aranda's children. He told you that.

Then you heard from Dr. Lifschultz, who told us how graphically and brutally they were stabbed and mutilated. This is how they ended up. This is how they ended up at the hands of Arturo Deleon Reyes and his partners Adriana Mejia and Gabriel Solache.

Jacinta Soto, one stab wound to the chest penetrated her heart. There is the man that put the stab wound in her heart. There is the man that stabbed her in the chest as he went into the house. You will hear about his statement, about his confession.

Adriana knocks on the door, starts pushing her way in. The woman starts to yell, and Adriana tells him, "Kill her, kill her," and how he flips out that knife from his side and plunges it in her chest. That is what Arturo Deleon Reyes did.

But he acted together with others because you heard how he told you what happened to Mr. Soto, over 40 stab wounds to the body, to the face, the head, the hands, the chest. Defensive wounds, like Dr. Lifschultz told you. Defensive wounds, wounds to try to protect yourself, those were inflicted. Those were inflicted by the partner of Arturo Deleon Reyes.

CCSAO REYES/SOLACHE PC DOCUMENTS 009605

5

REYES 011995

You heard how as Gabriel is over the man stabbing him and how Adriana is over the woman stabbing her in the back because "we wanted to make sure we did whatever we had to do to get that baby." To get this baby, Maria Guadalupe Soto. You heard how Arturo Deleon wraps her up in a blanket and takes her and her little brother Santiago into the night and awaits for Adriana and Gabriel to complete their deed. You heard how he was responsible for those acts because when you act together, if you are in for a penny, you are in for a pound.

You heard how after Adriana tells Arturo to be ready on Friday, how Gabriel picks them up. Gabriel is the one that drives the car to 2071 North Leavitt. In the car the plan is discussed. In the car they get their assignments. Gabriel, you take out the man. Adriana is going to take out the woman. Arturo, get those babies. Get that baby. We were all ready to do what we had to do to get that baby.

You heard how after Arturo plunges his knife into Jacinta's chest, how she goes down. And she goes down towards the bedroom, the bedroom where her husband and her children were. And how Adriana Mejia in Arturo Deleon Reyes' own words is over the woman

CCSAO REYES/SOLACHE PC DOCUMENTS 009606

6

REYES 011996

stabbing her like an animal, stabbing her. 19, 19 stab wounds in the back; 19 stab wounds in the neck, the shoulders, the back, the buttocks. And you saw his own stab wound there.

You heard about the stab wounds on Mariano everywhere, all over his body as he laid there in his home, in his own home where he is supposed to be safe with his family, where they are supposed to be safe, lying next to his three-year-old son where he is supposed to be safe; that safety violated by Arturo Deleon Reyes and his partners.

You heard how after Arturo Deleon leaves the apartment he waits for Adriana and Gabriel to come with him and they drive home. And then Adriana Mejia begins her new life with her new baby. You heard about that.

But you see, ladies and gentlemen, the truth will find a way. No matter how difficult, the truth will find a way to come out.

And Guadalupe Mejia is up one night and she sees this on the news, and she recognizes the little boy. That's the little boy that Adriana brought with her from the hospital when I went to pick her up at the University of Illinois. That's the little boy, a

CCSAO REYES/SOLACHE PC DOCUMENTS 009607

7

REYES 011997

little boy whose parents had been murdered.

The truth was starting to come out. And you heard how Guadalupe goes to Adriana and says you have to take that boy to the police. His parents have been murdered. And you heard about Adriana's reaction.

And then you heard how Rosauro comes home and says we must take him to the police. And Arturo wants absolutely nothing to do with that. Oh, no, no, let's not take him to the police. Take him to a friend of mine who is going to be a police officer, not to the police because the truth is starting to come out.

You heard how they go to the 8th District, and how Sergeant Hanlon figures out it is the little boy. As he is coloring he goes behind him, "Santiago," and the little boy turns. The truth is starting to come out.

They go to Area 5. They are taken there as witnesses. You heard how the police start looking for a woman by the name of Norma Salizar. And they start investigating Norma Salizar. And they find Norma Salizar, and Norma Salizar is brought to the police station. And there is a lineup conducted with

CCSAO REYES/SOLACHE PC DOCUMENTS 009608

REYES 011998

Norma Salizar. All these things are things that take time, and the detectives are doing that investigation. And even though they got side-tracked on Norma Salizar, the truth has a way of coming out.

And you will hear how they started finding evidence. They find Adriana Mejia's shoes. At that time there appears to be blood on them. They find her pants. And they find some slips of paper in Arturo Deleon Reyes' pocket: Norma Salizar. These are pieces of paper that the police found, not that Arturo went oh, you know what, here you go. The police found them by checking his clothes. The truth is finding its way. You heard how they recovered a date book from Arturo Deleon Reyes. And lo and behold, Norma Salizar in his date book.

And you hear how Arturo Deleon Reyes makes a statement, and he admits his participation in the murders. He admits along with Adriana Mejia and Gabriel Solache to the kidnapping of those children. He admits invading that home with his partners Adriana and Gabriel. He admits plunging his knife into Jacinta while Adriana is taking care of her and while Gabriel is taking care of the man insuring that we do whatever we have to do to get that baby. That

CCSAO REYES/SOLACHE PC DOCUMENTS 009609

REYES 011999

is the case that's before you today.

Judge Sacks is going to instruct you in a few moments as to the law in this case, the law that you are to use in coming upon your verdict. He is going to tell you about a law called the law of accountability. The law of accountability is basically the law of legal responsibility.

It states that a person is legally responsible for the conduct of another person when either before or during the commission of an offense and with the intent to promote, or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid or attempts to aid the other person in the planning or commission of the offense.

The law holds people responsible when they work in consort. It doesn't matter if they actually entered the apartment. It doesn't matter if they actually stabbed. The purpose for this and the best example is an armed robbery. There is a get-away driver who waits outside, and there is the person that goes inside and robs the clerk. This law insures that the get-away driver is not found not guilty. He is held just as responsible as the person

REYES 012000

who went in and took the money.

It is this law that tells you how Arturo Deleon Reyes, even though he only plunged his knife into Jacinta, is just as responsible for the murder of Mariano, is as responsible as Adriana Mejia and Gabriel Solache and is responsible for his own acts.

Remember how he agreed to aid. He took the $600. $600, which he tells you in his confession, "I used $300 to buy clothes and $300 to try to pick up women." That's what he did with his $600. $600 to murder two parents and to steal their kids.

The Judge will instruct you as to what the State has to prove to prove an aggravated kidnapping. Ladies and gentlemen, we have to prove three things.

First, that the defendant or one for whose conduct he is legally responsible, that's the law of accountability, the law of legal responsibility, secretly confined Maria Guadalupe or Santiago Soto against their will. You heard that. He is the one that actually invaded their home and took them out into the night.

The second thing we have to show is that the defendant or one for whose conduct he is legally responsible acted knowingly. They are talking about

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009611

11

REYES 012001

the plan in the car, the plan to steal a baby.

And the third thing we have to prove, and there are two ways to prove this, is that Maria Guadalupe Soto or Santiago Soto is a child under the age of 13 and was confined without the consent of his or her parents or legal guardians. You heard little Santiago was three years old. You heard Maria Guadalupe Soto was about two months old. And you certainly know from everything that you heard that there was no consent from Mr. or Mrs. Soto for them to be taken.

The third we can also show is that the defendant or one for whose conduct he is legally responsible was armed with a dangerous weapon. And I submit to you, ladies and gentlemen, we have shown you that also because Arturo Deleon Reyes in his statement told you how he was armed with a dangerous weapon. He was armed with a knife. We have proven each and every element of aggravated kidnapping.

The next charge is home invasion, in order for the State to prove home invasion, we have to prove five things.

That the defendant or one for whose conduct he is legally responsible is not a police officer

REYES 012002

acting in the line of duty. You heard stipulated testimony and a stipulation as to what Arturo Deleon Reyes does for a living. He is not a police officer, and he certainly wasn't acting in the line of duty.

The second thing we have to show is that Arturo Deleon Reyes or one for whose conduct he is legally responsible knowingly and without authority entered the dwelling place of another. They had absolutely no authority to enter the Soto home and to do what they did. You heard the evidence about that. And you will see the pictures of the destruction that they caused in that home.

The third thing we have to show is that when he, Arturo Deleon Reyes, or one for whose conduct he is legally responsible entered the dwelling, he knew or had reason to know that one or more persons were present. They talked about it in the car. As Adriana Mejia directs Gabriel Solache where to go, she talks about we are going there to steal the baby. He certainly knew that, and we showed you that.

Fourth, that he or one for whose conduct he is legally responsible was armed with a dangerous weapon. Well, we know Arturo Deleon Reyes was armed with a dangerous weapon because he plunges his knife

REYES 012003

into Jacinta Soto's heart. We also know that while in the apartment Gabriel Solache has a knife and Adriana Mejia has a knife. And we certainly proved that.

Finally, while armed with a dangerous weapon the defendant or one for whose conduct he is legally responsible used force on Jacinta Soto and Mariano Soto.

I will not hold up those pictures again to show you the force that they did. You can see them in the back in the jury room if you want. We have proven home invasion.

The remaining charge is the charge of first degree murder. Judge Sacks will tell you this first. To sustain the charge of first degree murder it is not necessary for the State to show that it was or may have been the original intent of the defendant, Arturo Deleon Reyes, or one for whose conduct he is legally responsible, I submit to you Adriana Mejia and Gabriel Solache, that he is legally responsible, to kill the deceased Jacinta Soto. It is sufficient if the jury believes from the evidence beyond a reasonable doubt that the defendant and one for whose conduct he is legally responsible combined to do an

CCSAO REYES/SOLACHE PC DOCUMENTS 009614

14

REYES 012004

unlawful act, such as to commit home invasion or aggravated kidnapping, and that the deceased was killed by one of the parties committing that unlawful act.

We don't have to show you that it was their intent to commit murder. What we have to show you is that during the home invasion or during the aggravated kidnapping, they combined to do an unlawful act and it resulted in one of the individuals being killed. And I submit to you, ladies and gentlemen, we have not only shown you that they committed the home invasion, we have shown you how they committed the aggravated kidnapping.

Now, for first degree murder we have to show you two things.

The first proposition is that the defendant or one for whose conduct he is legally responsible performed the acts which caused the death of Jacinta Soto or Mariano Soto. Arturo Deleon Reyes plunged his knife into Jacinta's chest. Adriana Mejia, one for whose conduct he is legally responsible, put an additional 19. Gabriel Solache inflicted over 40 stab wounds into Mariano Soto. Certainly, we have shown the first

CCSAO REYES/SOLACHE PC DOCUMENTS 009615

REYES 012005

proposition.

The second proposition of first degree murder, we can show it to you one of four ways. We don't have to prove all four to you. But I submit to you, ladies and gentlemen, we have.

The first way to prove the second proposition is that when the defendant or one for whose conduct he is legally responsible did so, he intended to kill or do great bodily harm to Jacinta or Mariano Soto. Inflicting 20 stab wounds in one individual and over 40 in another, I submit to you is sufficient to show that the individual intended to kill or do great bodily harm. That's the first way we can prove the second proposition.

The second way is that he knew that his acts would cause death to Jacinta or Mariano Soto. Again, inflict that number of stab wounds, that is certainly what is going to occur. We have shown you that one.

Three, that he knew that his acts created a strong probability of death or great bodily harm. Again, I submit to you the number of stab wounds alone insures there was a great probability of death or great bodily harm to Jacinta and Mariano Soto.

The fourth way we can show the proposition

REYES 012006

to you is that he was committing the offense of home invasion or aggravated kidnapping. Again, ladies and gentlemen, I submit to you we have shown you that.

This was a crime that was beyond imagination. Alfredo Aranda heard it occur. He was in his bathroom at the time it occurred. He heard the murder happening. He heard a body being dragged. He heard moaning as if from a sick person. He heard the little boy cry out. He heard a person say, "Shut up, nothing's going to happen to you." He didn't call the police. I submit to you no one could have imagined what was happening in the rear basement home at 2071 North Leavitt.

This was a violent, graphic, brutal murder, a murder of two parents, a murder committed to steal a child. Only justice can be brought to this case now. Only some type of justice can make any sense to what occurred in that rear apartment.

It is for you to bring justice to this case now. You have heard the evidence. We have shown it to you. You now know I submit to you that Arturo Deleon Reyes is guilty of the murder of Jacinta Soto, the murder of Mariano Soto, the kidnapping of their two little children. And you will read his

REYES 012007

confession, how he tells you I am responsible.

Ladies and gentlemen, I submit to you hold him responsible. Find him guilty.

THE COURT: Thank you, Miss Rosales. Mr. Verdun?

MR. VERDUN: Thank you, Judge.

CLOSING ARGUMENT

BY MR. VERDUN:

Arturo, Counsel, your Honor. Good afternoon, ladies and gentlemen.

You have now been in this courtroom for approximately one week. You have heard the evidence that the State has brought forward over the three days that they put on their case in chief.

What exactly did they show you? What exactly did they prove with the 20-plus witnesses which they brought into this courtroom to testify? The police officers, the detectives, the mobile crime lab, the scientists that were brought in, the doctors, the civilians, what did those people prove? What did the State prove?

Let's look at the evidence that the State brought in. Most of this evidence, and I submit when you go back into this jury room and begin to discuss this evidence and deliberate about the evidence that

the State put on before you, the evidence which they must adduce to prove Arturo guilty beyond a reasonable doubt, a burden that they must meet, that they haven't done it.

Most of what you heard in this courtroom from all of those 20-plus witnesses didn't show the guilt of Arturo DeLeon Reyes. It was all fluff. It was filler. It was to camouflage the fact that they don't have a case against Arturo Deleon Reyes.

The only evidence I submit that the State has brought before you are these seven pieces of paper. That's it. This alleged confession of Arturo Deleon Reyes is all they have.

So let's talk about the statement and the circumstances surrounding it for a few moments. You know that Arturo came to the United States in late December 1997. He had never been here before. He didn't speak the language. He didn't know the customs. He moves in with some strangers. He rents a room.

And what does he do while he is here? He works. And you have heard what his work schedule is like. You know the kind of hours, the kind of work that he does. You heard Mr. Victor Herrera

CCSAO REYES/SOLACHE PC DOCUMENTS 009619

REYES 012009

testify just the other day. He was Arturo's supervisor at the Miniat Meat Packing Plant at 16250 South Vincennes down in South Holland. He told you the hours that Arturo worked. He told you that Arturo was a good employee. He was reliable. He was always there on time. He had nothing to gain by coming in here and telling you those things. He simply stated the facts to you, ladies and gentlemen.

You also heard from Mr. Salvador Alivas. Mr. Alivas met Arturo at the plant when they began working on the same line. Arturo asked him if he could get a ride back and forth to work with him. And you heard that Mr. Alivas on Monday, March 23rd, the 24th, 25th, 26th, 27th, the 28th, every day when he went to pick up Arturo, he was there, he was always on time and they drove to work together.

You also know that that entire week Arturo worked between 10 and 12 hours each one of those days at this meat packing plant. On March 27, 1998 Arturo went to work as usual. We know that he worked approximately 10 or 11 hours. And that when he got off work, Salvador had to go get milk for his babies.

Now if, look at the statement that the State wants you to believe, supposedly Arturo was supposed

REYES 012010

to be meeting Adriana at midnight. They didn't even leave the plant, according to Mr. Alivas, until after midnight. He didn't drop Arturo off until 1:30, 1:45 a.m. Again, when you look at the statement, according to the statement Arturo is meeting with Adriana at 1:30 in the alley behind the Mozart address. Additionally, you know that Gabriel Solache, who is supposed to be in on this, didn't even leave his job until 3:00 a.m. He worked up until 3:00 a.m. Mr. Alivas told you that because of the hour, he had to drive around looking for a store that was open for the milk. Arturo didn't try to hurry him up. He didn't seem upset that he was driving around. He was his old self as they drove home that night.

Arturo told you, I came home that night. I had some milk and cookies, and I went to bed like always. I didn't get up and go out. I didn't meet Adriana. I didn't go to the address on Leavitt. I stayed home. I slept that night, and I got up and I went to work again the next morning, another 11-plus hour day at the meat packing plant. You don't do that without any sleep. You don't do that when you are out home invading.

CCSAO REYES/SOLACHE PC DOCUMENTS 009621

REYES 012011

You know from both Mr. Alivas and Mr. Herrera, the supervisor, that when Arturo came to work on March 28th his performance was the same as it always was. There was nothing unusual about the way he acted. He wasn't nervous. And he worked a full day's work down at the plant.

You saw the demeanor of both of those men. The Judge will tell you that it is your responsibility to determine the believability of the witnesses. I submit to you that both Mr. Alivas and Mr. Herrera were believable witnesses.

Let's move on to March 30, 1998. That's the day that we start to hear about these papers. That's the day these papers came into existence. Mr. Alivas told you he came to pick up Arturo that day for work as usual. But when he came, Arturo had a young boy with him who had a truck with him. Arturo told him he couldn't go to work that day because he was taking care of this little boy because Adriana had asked him in a very nice way if he could do that.

What about these phone numbers? Adriana had a charade going. When you have someone babysit for you, what do you do? You give them the phone numbers if you need to contact someone, the phone numbers

CCSAO REYES/SOLACHE PC DOCUMENTS 009622

REYES 012012

where they can be contacted. If Arturo is in on this whole thing, this whole charade, what does he need these phone numbers for? He knows they don't go to anybody, so what is he carrying them around for?

Do you think if Arturo was involved with this horrendous crime that he would be out with this little boy parading him in front of other people?

Arturo again went to work the 31st, the 1st and the 2nd of April. On the 2nd of April again, as usual, he worked an eleven-plus hour day at the plant.

When he goes home that night he tries to go to sleep, but it isn't long before he hears a commotion in the living room. He tries to ignore it at first, but realizes he is not going to be able to go to sleep and he gets up to investigate. He goes out into the living room, and there is an argument going on among the members of the Mejia family. And they are arguing about this little boy.

Arturo says we will take him to the police station. Nobody else wants to do that, least of all Adriana. But Arturo suggests taking him to the police station. Now, the State says Arturo didn't want to. He wanted to take him to some friend who

CCSAO REYES/SOLACHE PC DOCUMENTS 009623

REYES 012013

was going to be a police officer. Well, that's just not believable. If he was concerned about that, why did he end up going to the 8th District? He didn't have to go with him. If he didn't want to become involved, all he had to do was go back to his room. He didn't have to go to the 8th District, but he went. He didn't have to stay at the 8th District, but he did. He didn't have to go to Area 5, but he did. Those are not the actions of someone that has something to hide.

In fact, if you recall the testimony of Officer Solis and Sergeant Hanlon, the three men that brought the little boy, Gabriel, Arturo and Rosauro Mejia, were being treated as witnesses. But boy, that sure changed at Area 5, didn't it? They are put in a room, the door is locked. And even by the State's evidence, Arturo sits in that little room for 13 hours. No one talks to him, if you believe the State's evidence. He is treated as a witness? I don't think so.

It isn't long before the three men are separated over at Area 5. Arturo is left in the same room. The other two men are taken out. And Arturo is locked in there. And you heard Arturo testify --

CCSAO REYES/SOLACHE PC DOCUMENTS 009624

REYES 012014

excuse me. Detective Guevara, go out of the room, go away, come back, interrogate him. And every time he said no. Every time he said I don't know what you are talking about. Detective Guevara slapped him.

You saw Detective Guevara testify up here. You saw his demeanor. You will decide amongst yourselves the believability of the testimony of the witnesses. But I submit to you when the State's Attorney was questioning Detective Guevara, he had the answers down. But when I started questioning him, well, I don't remember, I believe so. Detective Guevara I submit to you is not a believable witness.

Corroborating what Arturo told you was Rosauro Mejia. And what did Rosauro have to gain by coming in here and testifying? But he came in here and told you he was kept in the police station for two and a half, three days. And while someone held him down, Guevara hit him. What axe does he have to grind? He wasn't charged. He was ultimately released. He corroborates what Arturo told you about Detective Guevara.

And what Arturo told you was that during this interrogation it was always at the beginning just Arturo and Guevara. It wasn't until much later,

CCSAO REYES/SOLACHE PC DOCUMENTS 009625

REYES 012015

in fact, it wasn't until April 4th, the next day, that anyone else was involved in Arturo's interrogation.

Finally, on April 5th at about 2:00 in the morning Arturo is presented with this document, this seven-page document written in English, not Spanish, and directed to sign it. It wasn't his idea, Arturo's, to sign this statement.

The State talked about in his own words, in his own words. Ladies and gentlemen, these are not his own words. Although, Investigator Trevino told you that this statement was verbatim, it says right on the first page, "The following statement is a summary and not word for word."

Why wasn't this statement written in Spanish? Why didn't Trevino write out the statement in Spanish so that Arturo could read it? We know that they determined that he could read Spanish. So why not write it in the language that he can read? Better yet, if you want it in his own words, why don't you let him write it out? You know he can write in Spanish. The State said well, this may be used in court at some point, so we needed it to be in English for convenience sake. Convenience? What do

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009626

REYES 012016

you think this gentleman over here is doing and has been doing throughout this entire trial? This statement could have been translated for anybody to look at if they had wanted it in Arturo's words. But they didn't want it in Arturo's words, and they didn't want it in a language he understood, because these are not his words.

Mr. O'Malley, who at that time was a State's Attorney, told you that he didn't speak Spanish. He has no idea what Trevino was saying to Arturo during this interrogation, none whatsoever. For all he knows, they could have been talking about the weather.

By the way, do you remember yesterday when the State's Attorney was asking questions and they made a point to say well, did you hear him say this name or did you hear him say that name, because they sound the same in both English and Spanish. Adriana Mejia the same in English and in Spanish. Did you hear Mr. O'Malley say, you know, and I was listening because I understood the word se, and I heard Arturo say the name Adriana Mejia, or I heard Arturo say the name Gabriel Solache? They sound the same. You didn't hear that evidence. And you know whose burden

CCSAO REYES/SOLACHE PC DOCUMENTS 009627

REYES 012017

it is to bring the evidence forward.

When Arturo was on that stand yesterday, he was on there a long time. Counsel for the State conducted a vigorous and tough cross-examination. But I submit to you that like at his job he was reliable. I submit to you that his answers were truthful. You saw his demeanor on the stand.

As a final note about the statement, when you go through this statement back in the jury room, compare it to the other evidence that you have heard. You will notice that there is nothing in this statement that the police didn't already know from their investigation.

I would like to move on and discuss some of the other evidence which the State adduced during this trial. And I submit to you that there is no physical or no scientific evidence tying Arturo Deleon Reyes to this crime or the crime scene.

You heard from a lot of witnesses about the crime scene, the collection of evidence, about the mobile crime lab, the preservation of evidence, the importance of preserving the integrity of the scene, collecting the evidence so that if down the line it is needed, that it can be used.

CCSAO REYES/SOLACHE PC DOCUMENTS 009628

REYES 012018

You heard from the two women from the Illinois State Police Crime Lab, the scientists involved in this case. There is no evidence before you, ladies and gentlemen, tying Arturo to this crime or to the crime scene.

Officer Valentin, one of the scene officers, told you all about what it was like when he arrived at the Soto apartment. He described it for you. He told you that he made a very quick trip into the apartment and left again, and they secured the area to preserve whatever evidence was there.

And you know that the Chicago Police Department Mobile Crime Lab came that day, April 1st. They came there. And you heard the specialist Harvey testify here a few days ago what his job was. He had been trained to secure, preserve the integrity of a crime scene. Harvey and his partner spent hours there that day. They didn't leave until after midnight. And you heard him tell you that when he left, he was confident he had done his job. He stayed there until he felt his job was complete.

Let's ask ourselves a few questions about the evidence. Why weren't the bed clothes, the sheets, the covers where Mr. Soto is supposedly

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009629

REYES 012019

attacked, why aren't they recovered? Why isn't the blanket that's over Jacinta Soto recovered? Why isn't the pillow case that's taken from the apartment or the napkin, why aren't they scrutinized?

You know that there are no fingerprints in that apartment belonging to Arturo Deleon Reyes, not even on the broken glass. And remember how Officer Harvey kept saying it is one of the best surfaces for fingerprints. But not only were Arturo's prints not on there, but neither where Gabriel Solache's.

And the same is true for both of the knives. You saw the big, long knives, the box, the butcher block. None of those items had fingerprints belonging to Arturo Deleon Reyes. Where is the evidence that a body was being dragged? Where is the evidence -- strike that.

The statement that the State wants you to believe from Arturo indicates that as the back door opened, Jacinta was stabbed. That Mariano was in the bedroom in bed where he is stabbed. But the bodies aren't found in those locations. Mariano Soto is out here. If the statement were true, then the bodies would correspond. This vicious attack on these individuals, Mariano Soto is not going to get up and

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009630

REYES 012020

walk around.

Why wasn't there any testing of the clothing of Mariano or Jacinta Soto? Why was there no tests of the hairs, the fibers that were recovered in this case, not only from the clothing of the deceased, but even the pants that Arturo Deleon Reyes was wearing? You know that they took his pants and his shoes in the police station. The evidence indicates they are the same pants and shoes he was wearing on March 27th into the 28th.

This vicious attack, and in Valentin's words, there was blood all over. You don't walk out of that apartment if you were there when these people were killed without some blood on you.

And the State talked about the Medical Examiner, Dr. Lifschultz. He testified that he supervised the autopsies, and that evidence there was recovered. He told you how important it was when they took the combed hair from the two deceased. They were looking for something that didn't belong to those two people. That was the purpose of that. But you never heard any evidence that what was found there was ever compared to anything else.

And I think it was Dr. Wilson that explained

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009631

REYES 012021

what standards were.  Standards is what you compare the evidence to.  Well, you know that the blood standards were taken from Arturo for the DNA testing. Why wasn't there hair standards taken?  Why weren't they compared with the evidence from either of the deceased?

According to Dr. Lifschultz, it is likely that based on the injuries on Mariano Soto's hands, he was fighting with the person that attacked him. They took his fingernails, and Dr. Lifschultz told you why; because when you are fighting, you may take part of your attacker with you, a little bit of skin, a little bit of hair, something.

And you know from Dr. Wilson, the lady from the Illinois State Police Crime Lab, that if there is tissue under any of those fingernails, as she said there is DNA in every bit of human tissue.

If I could, let's talk about the DNA for a few moments.  Dr. Wilson came in along with Elizabeth Boedecker.  They had jobs that complimented each other at the Illinois State Police Crime Lab. Elizabeth Boedecker got the evidence first.  She tested it for human blood.  If there was blood present, the evidence went on to Dr. Wilson.

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009632

REYES 012022

And what did Dr. Wilson do? She explained to you she took the evidence and she extracted DNA and then compared that to the known standards. The known standards in this case were Arturo Deleon Reyes, Adriana Mejia, Gabriel Solache, Jacinta Soto and Mariano Soto. And you heard all of the testing that she did, all of the experience, the thousands of times she had done this. And she told you exactly what her results were.

With the knife, the knife, the knife in the box, she told you that she found DNA on that knife. The DNA profile that was identified belonged to Adriana Mejia. Arturo Deleon Reyes was excluded. They did not belong to him.

Secondly, the knife under Mariano Soto. Remember the knife that was found under his right arm. The DNA profile identified was Mariano Soto. Arturo Deleon Reyes was excluded.

The baby blanket that was recovered from the apartment. Again, Dr. Wilson found DNA profile on it which belonged to Mariano Soto. Arturo Deleon Reyes was excluded.

The green towel, I draw your attention to this. Dr. Wilson checked for DNA profile, and what

CCSAO REYES/SOLACHE PC DOCUMENTS 009633

REYES 012023

did she find? She found a DNA profile of Adriana Mejia and an unknown person. She didn't know who that unknown person was. She couldn't tell you who that unknown person was. But she could tell you that it wasn't Arturo Deleon Reyes. He was excluded. Also excluded were Gabriel Solache, Jacinta Soto and Mariano Soto. There is an unknown person's DNA at the scene of this crime, unknown person not identified.

The kitchen towel that is recovered at the apartment, again, Dr. Wilson tested it for DNA profile, and the DNA profile belongs to Mariano Soto. And again, Arturo Deleon Reyes is excluded.

The baby pants from the apartment, again, the DNA profile identified is that of Mariano Soto. Arturo Deleon Reyes is excluded. It can't be him. Not that it might not be him, it can't be him.

Adriana Mejia's shoes, again, Dr. Wilson finds the DNA profile of Mariano Soto and again an unknown person.

By the way, back to the green towel, remember she finds a Y chromosome on that. So it is an unknown male she is talking about.

On the shoes, Adriana's shoes, again we have

CCSAO REYES/SOLACHE PC DOCUMENTS 009634

REYES 012024

an unknown person. But we know that Arturo Deleon Reyes is excluded. And Dr. Wilson also told you that Gabriel Solache was excluded; that Adriana Mejia was excluded and Jacinta Soto was excluded. Another indication of an unknown person.

Adriana Mejia's pants that were recovered from her closet, again the DNA profile from Dr. Wilson is Mariano Soto. Again, Arturo Deleon Reyes is excluded.

The last three items were tested by Elizabeth Boedecker, if you recall. Arturo Deleon's pants, no human blood identified. Gabriel Solache's shoes, no human blood identified. Arturo Deleon Reyes' shoes, no human blood identified.

Now, the State is going to tell you well, this doesn't mean that they weren't there. But you have two separate DNA profiles of unknown persons. And it is not, it is not, Arturo Deleon Reyes, it is not Gabriel Solache. In the green towel's case, it is not Mariano or Jacinta Soto. And in the case of Adriana Mejia's shoes, it is not Arturo Deleon Reyes, it is not Gabriel Solache, it is not Adriana Mejia and it is not Mariano Soto.

And remember when the State's Attorney on

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009635

REYES 012025

redirect examination of Dr. Wilson went over and touched the bench over there and said does that mean I left DNA there? "Well, no," Dr. Wilson said, "that's not what it means." But ladies and gentlemen, in this case we are not talking about a touch. That's not what happened in the Sotos' apartment. No physical or scientific evidence connects Arturo Deleon to the crime or the crime scene.

Ladies and gentlemen, you have heard all of the evidence. You have heard all of the witnesses. And I suggest to you, I submit to you, that when you evaluate the witnesses, you evaluate the believability of the witnesses, I submit that you will determine that Detective Guevara was not credible, that Investigator Trevino is not credible when compared with the way that Arturo testified from that stand yesterday.

And the Judge will instruct you that the law says you will be the judges to determine whether or not this statement was even made by Arturo Deleon Reyes. But it is a two-step process the Judge will instruct you. First, you have to determine whether the statement was even made by him. Secondly, you

CCSAO REYES/SOLACHE PC DOCUMENTS 009636

REYES 012026

determine what if any weight to give it.

Your most important job lies ahead of you. Remember Arturo Deleon Reyes has the presumption of innocence on his side. And you may recall during jury selection there was an example given with the scales of justice. The example happened to be of a civil case where the scales started off balanced. That's not the case in a criminal case. They don't start off balanced in a criminal case. They are tilted in the favor of the defendant because he is presumed innocent. He does not have to prove his innocence.

The State bears the burden of proving a defendant's guilt beyond a reasonable doubt. I suggest to you that there is ample reasonable doubt in this case, both testimonial and scientific.

I submit to you when you go back into that jury room and you deliberate on these charges, that you will find Arturo Deleon Reyes not guilty of the murders of Mr. and Mrs. Soto, the home invasion of their home at 2071 North Leavitt, the aggravated kidnapping of their two small children, Santiago and Maria. Thank you, ladies and gentlemen.

THE COURT: Thank you, Mr. Verdun. Mr. Hill?

CCSAO REYES/SOLACHE PC DOCUMENTS 009637

REYES 012027

CLOSING ARGUMENT

BY MR. HILL:

You heard a lot from Mr. Verdun concerning issues about DNA. Well, we might as well start right there. DNA can be a wonderful thing. It can help to bring some items of evidence forward that the police didn't have before. Sometimes it can really really help you.

DNA played a particular role in this case, but I will tell you what. The way Mr. Verdun talked to you about what DNA was supposed to do in this case, I want you to please just listen to what he said. On one hand, he says specialist Harvey combed the entire apartment. They were there for hours. They did a great job. They did a great job. And they gathered everything that was necessary. They were there until past midnight.

DNA and the analyses that follows it is as good as the evidence collection process in the first place. If there are things that are missed on the ground level, you are not going to get them on DNA.

Harvey worked as hard as he could. He was a new forensic analyst at that time. Now, I believe it was his first job like that. He was new for that

CCSAO REYES/SOLACHE PC DOCUMENTS 009638

REYES 012028

particular assignment. No disrespect to him. He did the best that he could.

In the same sentence that Mr. Verdun praises the efforts of the evidence technicians as they go through that apartment, he then asks questions, why didn't they collect the bedspread? Whoops, they missed something. Why didn't they collect the paper? Whoops, they missed something.

That's not all they missed. You know the very next day when those detectives, some more detectives went back, April 2nd, back to 2071 North Leavitt, they found a bloody baby blanket still there at the scene, bloody baby clothes still there at the scene.

Please, please, please do not go down the path of I'm going to take a left turn and right turn all at the same time. You cannot praise the evidence collection process on one end and then criticize it on the other.

The reality is this, folks, things were missed. In an effort to try to find two missing children, that apartment was tossed. By the time the ETs got there, by the time Harvey got there, that apartment wasn't in the condition that the bad guys

CCSAO REYES/SOLACHE PC DOCUMENTS 009639

REYES 012029

left it in. Because there were police officers trying to save lives, the lives of two little kids, trying to find them, trying to locate them, trying to protect them.

So you start from that premise. Whatever the foundation is, whatever the foundation is, the DNA may follow. DNA is not the be all and the end all. You heard what Mr. Verdun said, Elizabeth Boedecker found things that had blood on them. And if she found things that had blood on them, they were given to Barb Wilson, who then did her analysis for DNA.

Did you ever hear any evidence at all that he bled at the scene? Is there any wonder that for the things that had matches, maybe his blood wasn't on there? Could it be that he didn't bleed? Please think about it. Please think about it.

DNA can be a wonderful thing. It gives you some things. It is not a panacea. It doesn't tell you everything. It is a tool. It can help. But it ain't the whole story.

And remember Mr. Verdun tried to do it. I can do it better because I did it here in court myself. Barb Wilson, if I touch this and move my

REYES 012030

hand, is it automatic that I will leave DNA there? The answer is, of course, no. Sometimes yes, sometimes no, never automatic. The fact that I put my hand there, moved it and didn't leave DNA there, does that mean I wasn't here? Her answer, "No, that's not what that means."

Please look at that evidence. Please evaluate and put DNA in the light that it belongs. Here is what it does do. That DNA evidence helps to prove that Adriana Mejia was in that apartment. The DNA evidence helps you to know that when he says that Adriana Mejia did X, Y or Z, well, yes, she was there. The statement is right about that.

And a little bit about the statement. According to Mr. Verdun, the Attorney for Arturo Deleon Reyes, this statement is as a result of Arturo Deleon Reyes being beaten by Detective Guevara. You notice how there is not a lot of focus on the fact that it is Investigator Trevino that is there when the handwritten statement is taken. He is not accused of anything. Investigator Trevino is the one that was with Assistant State's Attorney Tom O'Malley when the handwritten statement was taken.

And you heard how Tom O'Malley told you the

CCSAO REYES/SOLACHE PC DOCUMENTS 009641

REYES 012031

statement was taken, line by line. There is a sentence. Okay, let's talk about what that is, what that means, write it down and then it is read back. That was done line by line for each page. And then he told you when the whole thing was done and everybody signed it, the whole thing was read back to Arturo Deleon Reyes when it was over after it was signed.

During the course of the taking of the statement Arturo Deleon Reyes looked at and identified exhibits, pictures that were with the statement. You will get a chance to see this, a picture of Adriana Mejia. He identified her so that everybody was sure who he was talking about, and he did that of his own free will. Gabriel Solache, he identified that photograph as an exhibit on the handwritten statement. You will get a chance to see that in the back. And he identified the pictures of the little boy, the three-year-old boy, and the two-month-old baby girl, there while he was giving the handwritten statement.

That's not all. Arturo told Tom O'Malley that the lady he stabbed in the chest is the lady in this picture. He pointed to her. He signed it.

REYES 012032

There is no mistake. There is no mistake. He said he had seen the man who was in the bedroom, and he identified his picture while giving the handwritten statement, and he signed his name to it.

Mr. Verdun talked about the credibility of the witnesses who testified, among other things. And yesterday you saw something very very interesting. You saw a defendant on the witness stand who had great difficulty explaining some very important points.

My partner Merce when she was cross-examining Arturo Deleon Reyes asked him:

"Q. These are the papers that were in your pocket when the police asked you to turn your pockets inside out?

A. Yes."

You just happened to have these in your pocket? These papers say Norma Salizar; Adriana Martinez, that's Adriana's maiden name; hospital; Norma Salizar again, and what purports to be the little boy's name, Leonardo.

Mr. Verdun said if you are going to babysit for somebody, what is the best thing to do. Well, you keep the name of the mother and the telephone

CCSAO REYES/SOLACHE PC DOCUMENTS 009643

REYES 012033

number in your pocket. Who is going to look for that little boy? Arturo is out there with the little boy holding him by the hand outside in front of the residence at 6234 South Mozart. And they asked a rhetorical question, if he is in on this, why would he stand outside with this little boy for the whole world to see. Who is going to look for him? His parents? They can't.

It's rather amazing when the defendant tells you well, I had no idea what was happening in that conversation where I was having a conversation with the Assistant State's Attorney. I believe the cross-examination question was, weren't you just a little bit curious, just a little bit curious about what they were saying. Did you ever say to Investigator Trevino, what is that guy writing down?

You can't believe for one minute that he didn't know that he was in trouble. You can't believe for one minute that he didn't know that what was happening was so important to him. He knew that. How do you know he knew that? At the police station he is pacing back and forth. At the police station he is hitting the bars. At the police station he tells Rosauro, "Just give them the baby. There is

CCSAO  REYES/SOLACHE  PC DOCUMENTS  009644

REYES 012034

still time, give them the baby." What do you think that's about?

All this about new to this country, and I don't know the culture. Trouble knows no boundaries when it comes to language or culture. He knew. I don't care where he is from, I don't care how long he has been here. He knew he was in trouble. And he acted like he was in trouble. You should consider that.

Mr. Verdun tells you that Arturo Deleon Reyes was beaten, and that's why he gave a statement. You will get a chance to see this. Here is a photograph. Here is the photograph of him. He signed it after he gave the handwritten statement. I want you when you get back to the jury room, feel free, take it, hold it up close, look at his expression, look at his face. He was not beaten.

After he is done with the handwritten statement, he goes downstairs at Grand and Central to be booked and fingerprinted and photographed. There he is. And that's the way he looked when he was booked, fingerprinted and photographed.

Oh, but there is more. Because after that, he is taken to Cook County Jail, and they do their

45

REYES 012035

own photographing and their own intake process, and here is how he looked. Look closely when you get back there. This supposed savage beating that he took doesn't show up in here.

Mr. Verdun wants you to believe that the police somehow fed Arturo Deleon Reyes the story, somehow fed to him what to say, as if the police have to worry about getting anybody else at that particular time.

The Norma Salizar story has been broken. And one more thing about Norma Salizar. Because after it has been broken, it is very curious. Sure, okay, the babysitter has to have the telephone number of the mother in his pocket. So what? You have to put it in your calendar book too? Norma Salizar, front page of his calendar book. He was in on the lie. And he was in on the lie because he was a part of the murder. The police didn't have to feed him any information. He knew it all himself. Do you know why? Because he was paid $600 to do what he did.

He challenged Adriana Mejia. You will read in his statement, why are you giving me so much money for such a simple task. You will read that.

REYES 012036

In an interesting way this diagram helps us to understand issues about the truth. Mr. Verdun referred to this also, remember? And this is the victims' apartment right here. When the police first find the murder scene they come in the door. Mariano Soto's body is right here by the front door. Jacinta Soto's body is back here by the bedroom. For all the police know, Mariano answered the door. His body is closest to the front.

Yeah, folks, if we are going to do a conspiracy, if we are going to put words in his mouth, because this is all we know, this is how we find the bodies, yeah, the guy must have answered the door. Big strong man, he is going to take care of the family, he is going to take care of the home, he came in and he answered the door, didn't he? No, because that's not the truth.

What is the truth? You know now. And if you read that statement, you will see again Jacinta opened the door. Mariano was asleep in the bed face up. Santiago, the boy, was with him. That's the truth. If the police were going to feed him something, they would feed him something that was consistent with the physical evidence. They didn't

CCSAO REYES/SOLACHE PC DOCUMENTS 009647

REYES 012037

do it because they didn't have to. They didn't have to because he admitted to what he did.

There is no indication at all that Alfredo Aranda who -- well, okay, he was here in the bathroom at the time the crime occurred. No indication at all that Alfredo Aranda has ever seen Arturo Deleon Reyes in his life. And in many ways, in many ways, if you look at the statement of Arturo Deleon Reyes and what Alfredo Aranda told you, the truth comes out.

What did Alfredo tell you? He said that about 6:30 in the morning or so on March 28th he was right here next to this wall. He heard moaning like somebody was sick coming from the area where Mariano sleeps. You already know Alfredo was an ear witness to the murder. What does it say in the statement of that Arturo Deleon Reyes? Where does he say Mariano was when they invaded the home? In the bed asleep. It is the test of truth.

My partner and I believe that this courtroom is sacred ground. When you come in, we stand. When you leave, we stand. We don't sit until you sit.

Things that happened on this witness stand are important, and I know you have listened to everything and you have taken into account

everything. You have been doing your job, and you are going to continue to do your job.

The job Merce and I have is to bring the evidence before you. We think we have done that. Mr. Verdun and Ms. Binstock, their job is to defend their client, to give him a vigorous defense. They have done that. His Honor, Judge Sacks, is to rule on the law, rule on objections and rule on the law. He has done that. He has taken on his responsibility, we all have, as have you.

What about his responsibility? What about Arturo Deleon Reyes' responsibility? It is time for him to be held responsible for what he did. It is time for him to be held responsible for what his partners did. To hold him responsible, well, it would be a good day for justice.

Based on the law and based on the facts, you should find Arturo Deleon Reyes guilty of all charges.

THE COURT: Thank you, Mr. Hill.

* * *

(Further proceedings were reported but not transcribed at this time.)