**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

| | |
|---|---|
| **ARTURO De LEON-REYES,** )<br> )<br>*Petitioner,* )<br>v. )<br> )<br>**STATE OF ILLINOIS** )<br> )<br>*Respondent.* ) | **No. 98 CR 12440-02** |

**PETITIONER'S CORRECTED REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PETITION FOR CERTIFICATE OF INNOCENCE PURSUANT TO 735 ILCS 5/2-702**

Petitioner, Arturo De Leon-Reyes, through counsel, hereby replies in support of his Motion for Summary Judgment, as follows:

**INTRODUCTION**

In his opening brief, Mr. Reyes established that he is entitled to a certificate of innocence as a matter of law. Mr. Reyes presented ample evidence of innocence, including DNA showing he was not at the crime scene, his repeated and consistent testimony to his innocence, evidence that disgraced Detective Reynaldo Guevara coerced false inculpatory statements out of Mr. Reyes and his co-defendant, and a host of other testimony establishing innocence. The State's evidence in Response, on the other hand, even when construed in the State's favor, cannot overcome this evidence of innocence. In other words, there is no version of these facts in which Mr. Reyes does not meet his burden.

Keeping in mind the goal of the COI statute is to make it easier for petitioners to seek certificates of innocence and not impose additional burdens, and that this Court must interpret the statute in the petitioner's favor, 735 ILCS 5/2-701 *et seq.* & 735 ILCS 5/2-702 (including

1

COI statute in "Action For Declaratory Judgment"); *Illinois Gamefowl Breeders Ass'n v. Block*, 75 Ill. 2d 443, 452 (1979 ("The declaratory judgment remedy should be liberally applied and not restricted by unduly technical interpretations.")), this Court must grant Mr. Reyes a certificate of innocence ("COI").

## ARGUMENT

The State makes several critical concessions in its Response:

- Mr. Reyes has satisfied his burden under 735 ILCS 5/2-702(g)(1), (g)(2)(A), and (g)(4). The only element in dispute is whether Mr. Reyes has shown innocence by a preponderance of the evidence, as a matter of law. *Id.* at 5/2-702(g)(3).

- Mr. Reyes and Mr. Solache's statements, obtained based on physical and psychological abuse by Detective Guevara, are not admissible in these proceedings and cannot be considered.

- Ms. Mejia's original statement is also not admissible, for the same reasons.

- Detective Guevara has a pattern of engaging in gross misconduct during homicide investigations, including coercing false confessions from innocent people.

- Mr. Reyes's DNA was not found anywhere at the crime scene or on evidence related to the crime. Evidence that was collected contained the DNA of Adriana Mejia and an unknown person (and likely accomplice).

- Mr. Reyes has repeatedly and at every opportunity testified to his innocence.

- There is no evidence that Mr. Reyes committed murder or kidnapping as a principal.

The only remaining disputes are:

- Whether evidence that Guevara has a history of misconduct that includes coercing false confessions from innocent people is admissible;

- Whether inclusion of the word "they" in the indictment means Mr. Reyes was charged as an accomplice despite a lack of any statutory "accountability" language; and

- Whether the following evidence, when construed in the State's favor, could ever rebut the testimonial and DNA evidence showing Mr. Reyes's innocence, given that at most it establishes mere presence at the crime scene:

  o Mr. Reyes had a note in his pocket and a calendar entry listing the name of the woman whom Adriana Mejia told everyone she was babysitting for;

  o Adriana Mejia testified that she was told by Solache in Mr. Reyes's presence that Mr. Reyes was going to "help"; and that Mr. Reyes waited in the car while Mejia and Solache killed Mr. Soto, and then entered the home.

### I.  MR. REYES WAS CHARGED AS A PRINCIPAL, AND THE STATE DOES NOT ARGUE THAT MR. REYES HAS NOT SHOWN INNOCENCE OF PRINCIPAL CRIMES.

*People v. Palmer* holds that a COI petitioner must prove innocence of the specific factual theory of the offense charged in the indictment. 2021 IL 125621, ¶72 ("we hold that subsection (g)(3) requires a petitioner to prove by a preponderance of the evidence his or her innocence of the offense *as it was charged in the indictment or information* that resulted in the wrongful criminal conviction") (emphasis added). *Palmer* also holds that if the State acknowledges there is no evidence that the petitioner is not innocent of those crimes, then the petitioner is entitled to a certificate of innocence as a matter of law. *Id.* ¶73 ("The State does not contest petitioner's substantive argument that the new forensic DNA evidence demonstrates that petitioner did not repeatedly strike the victim on the head, as petitioner was originally charged and convicted. Thus, the State implicitly concedes that…petitioner has satisfied" subsection (g)(3)).

The Court's holding in *Palmer* is binding on the facts here. The language in Mr. Reyes's indictment clearly charges him only with principal crimes. And critically, the State does *not* argue that Mr. Reyes has failed to show innocence of principal crimes of which he was charged and convicted. In other words, the State cites no evidence that Mr. Reyes murdered the Soto parents or kidnapped the children. Therefore, this Court must grant Mr. Reyes a certificate of innocence as a matter of law, based on *Palmer*.

The State's only argument is that Mr. Reyes was also charged under an accountability theory, and that he has not shown innocence of accountability. This argument is flawed for several reasons. First, the indictment does not include any language suggesting an accountability charge, and thus *Palmer* bars the State from challenging Mr. Reyes's certificate of innocence by arguing there is evidence to support an accountability theory. Second, even if the indictment did

state an accountability theory—which it did not—the State has presented no evidence of Mr.

Reyes's guilt under an accountability theory, and thus failed to create a material dispute of fact

on that theory, as well. Accordingly, Mr. Reyes is still entitled to a COI as a matter of law.

### a. Mr. Reyes Was Charged as a Principal

Looking at the specific language in the indictment, as *Palmer* directs, 2021 IL 125621,

¶ 72, Mr. Reyes was charged only as a principal. For instance, to prove first-degree murder, the

State must have shown that the defendant killed an individual without lawful justification, and

"in performing the acts which cause the death":

> (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>
> (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
>
> (3) he is attempting or committing a forcible felony other than second degree murder.

720 ILCS 5/9-1(a); *see* Ill. Pattern Jury Inst. 7.01.

To have proven home invasion in 1998, the State must have shown that the Defendant, as

relevant here:

> (1) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present or he or she knowingly enters the dwelling place of another and remains in such dwelling place until he or she knows or has reason to know that one or more persons is present; and
>
> (2) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs….

720 ILCS 5/12-11(A)(1).

To have proven kidnaping in 1998, the State must have shown, as relevant here, that the Defendant knowingly:

(1) and secretly confine[d] another against his or her will;

(2) by force or threat of imminent force carries another from one place to another with intent secretly to confine that other person against his or her will; or

(3) by deceit or enticement induces another to go from one place to another with intent secretly to confine that other person against his or her will; and

(4) takes as his or her victim a child under the age of 13 years, or a person with a severe or profound intellectual disability.

720 ILCS 5/10-1, 5/10-2(a)(2).

This is the exact language of principal liability that appears in each count of the indictment. Ex. 2 (Counts 1, 3, 17, 23, 25).[1]

An accountability indictment, on the other hand, would have required completely different language. At the time of Mr. Reyes's criminal trial, a person would be legally accountable for the conduct of another if:

(a) having a mental state described by the statute defining the offense, he causes another to perform the conduct, and the other person in fact or by reason of legal incapacity lacks such a mental state;

(b) the statute defining the offense makes him so accountable; or

(c) either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense.

---

[1] Count 1: "intentionally or knowingly stabbed and killed Jacinta Soto with a knife"
Count 3: "intentionally or knowingly stabbed and killed Mariano Soto with a knife"
Count 17: "knowingly entered the dwelling place of Mariano Soto…while armed with a dangerous weapon, to wit: a knife, used force upon Mariano Soto"
Count 19: "knowingly entered the dwelling place of Jacinta Soto…and intentionally injured Jacinto Soto…to wit: stabbed Jacinto Soto with a knife"
Count 25: "knowingly and secretly confined Maria Soto…against her will"

5

720 ILCS 5/5-2 (1991); Ill. Pattern Jury Inst. 5.03; *People v. Ceasar*, 231 Ill. App. 3d 54, 56 (1992) (to prove guilt by accountability, prosecution must establish "that the defendant elicited, aided, abetted, agreed, or attempted to aid another person in planning or commission of offense").

The indictment does not so much as hint that Mr. Reyes caused someone else to commit the crime, or solicited, aided, or abetted a commission of the crime. The State argues, incorrectly, that Mr. Reyes was charged as an accomplice because he was charged in the same indictment with two co-defendants, and the indictment uses the word "they." Absent any language suggesting accountability, though, this does not mean he was charged with accountability; it means the three defendants were each charged as principals.

Indeed, the word "they" in the indictment does not provide Mr. Reyes with any notice that he needed to prepare a defense to an accountability charge. As the Illinois Supreme Court explained in *People v. Smith*, an indictment must include not only a statement of the offense and its elements, but also "allegations of the essential facts to enable the accused to prepare a defense which, if successful, would bar further prosecution for the same offense." 99 Ill.2d 467, 470-71 (1984); *see also People v. Lutz*, 73 Ill. 2d 204, 211-13 (1978) (charging instrument insufficient when it did not allege facts specifying any alternative methods of committing the offense); *People v. Trumbley*, 252 Ill. 29, 31 (1911) ("It is a fundamental rule of criminal pleading that an indictment must allege all of the facts necessary to constitute the crime with which the defendant is charged, and an indictment which does not set forth such facts with sufficient certainty will not support a conviction."); 725 ILCS 5/111-3 (requiring a charge to allege "the nature and elements of the offense as definitely as can be done").

6

To the State's argument that the jury was instructed on accountability and the State's closing arguments referred to accountability: it does not matter. *Palmer* clearly instructs the Court to look at the specific language in the indictment, not the jury instructions or closing arguments. *Palmer*, 2021 IL 125621 at ¶72. And even if this Court were to consider the theories at trial, the State's closing argument supports Mr. Reyes's argument that he was charged and convicted as a principal.

To be clear, the State's theory at trial was that Mr. Reyes planned the killing with Mejia and Mr. Solache, entered the Soto home and immediately stabbed Mrs. Soto, entered the bedroom, and grabbed both of the children. And to put a finer point on it, the State's theory was specifically that:

- Mr. Reyes spoke to Adriana Mejia and agreed to help her steal a baby for $600.
- Mr. Reyes pre-planned the crime with Solache and Adriana Mejia.
- Mr. Reyes rushed into the Soto home, pulled a knife, and immediately stabbed Mrs. Soto.
- Mr. Reyes went into the bedroom and grabbed the baby and the boy and carried them out to their getaway car.

*E.g.,* State's Ex. 3 (Closing Arguments) at 9605-07. In other words, the State unequivocally charged and convicted Mr. Reyes for acting as a principal in the murder and kidnapping.

What the State is doing now is attempting to infuse the indictment, and the trial, with an accountability theory that simply was not there. But comparing the theory in the indictment and the trial with the only theory available on the currently admissible evidence is revealing. Because the State concedes that the inculpatory statements of Mr. Reyes, Mr. Solache and Adriana Mejia are inadmissible—Judge Obbish granted a motion to suppress them given the evidence that Detective Guevara obtained them through the use of physical abuse—the only evidence available to it now is the current testimony of Adriana Mejia. That testimony does not support an accountability theory. Her testimony is as follows:

7

- She and Mr. Reyes barely knew each other, and she'd had almost no interaction with him. Ex. 20 at 74-75.

- She had no conversations with Mr. Reyes about a murder or a kidnapping, at any point, ever. Ex. 17 (Mejia Feb. 4, 2021, Dep.) at 20, 96; Ex. 20 (Mejia Feb. 5, 2021 Dep.) at 148-49.

- She was surprised Mr. Reyes was even in the car when she was picked up by Solache to get the baby. Ex. 17 at 27.

- She and Mr. Solache went to the Soto home and entered, while Reyes came later, after Mr. Soto had been killed. Ex. 17 at 112; Ex. 20 at 8-9, 151-52, 156-57, 219.

- She took the baby girl from the apartment. Ex. 17 at 33, 99-100.

- She does not remember who took the boy from the apartment. Ex. 17 at 33.

- Mr. Reyes tried to stop Mr. Solache from stabbing Mrs. Soto. Ex. 20 at 219-20.

This is the only arguably admissible evidence to which the State cites.[2] To suggest that this evidence supports Mr. Reyes's guilt—as a principal or on an accountability theory—is fanciful. But more relevant to the issue at hand, it is a theory of guilt that constitutes a complete rewriting of the indictment (and the theory at trial). *Palmer* clearly prohibits such an approach.

### b. The State Acknowledges There is No Evidence that Mr. Reyes Committed any Crime as Principal

To its credit, the State does not argue that there is any admissible evidence that Mr. Reyes is guilty of committing any crime as a principal, nor could it for the reasons discussed above. Given that Mr. Reyes was charged only as a principal, *Palmer* establishes that Mr. Reyes is entitled to a certificate of innocence as a matter of law.

### II. MR. REYES PRESENTS AMPLE EVIDENCE OF INNOCENCE THAT IS UNREBUTTED AND THUS SUFFICIENT AS A MATTER OF LAW

Even if this Court concludes that Mr. Reyes was charged as an accomplice, Mr. Reyes has firmly established that he is innocent as a matter of law.

---

[2] The State's only other evidence is the note in Mr. Reyes's pocket referencing a Norma Salazar. As discussed below, that reference is not inculpatory in the slightest.

### a. Testimony Supporting Innocence

The State agrees that Mr. Reyes has testified at every available opportunity that he is innocent. He testified about his own innocence in his suppression hearing in March 2000, his criminal trial in June 2000, and his evidentiary hearing in 2013. Evidence that a defendant has maintained his innocence since his arrest, by itself, is sufficient to state a claim of actual innocence. *People v. Lofton*, 2011 IL App (1st) 100118, ¶¶ 36-37. These statements of innocence are corroborated by testimony from Mr. Reyes's co-worker, Salvador Olivares, establishing that it would have been almost impossible for Mr. Reyes to have committed these crimes. Ex. 14 (Trial Tr.) at 1903, 2033-34, 2121, 2125-26; 2419-25; *see also* Ex. 10 (Timesheets) (showing Mr. Reyes's long workdays the day of the crime and the day before, without any unusual behavior whatsoever). This Court must consider this evidence of innocence. *See People v. Caine*, Case No. 86 CR 6091 (Order, March 27, 2012); *see also People v. Fields*, 2011 IL App (1st) 100169, ¶ 19 (2011).

### b. DNA Shows Mr. Reyes Is Innocent and Corroborates His Testimony

The State acknowledges that Mr. Reyes has been excluded as a contributor to all DNA from the crime scene but argues that it does not support Mr. Reyes's claim of innocence. As an initial matter, of course the fact that Mr. Reyes's DNA was not found on any one of numerous items of evidence in a violent, DNA-rich crime scene is evidence of innocence. DNA evidence is the most powerful, objective evidence of innocence possible. *People v. Rozo*, 2012 IL App (2d) 100308, ¶ 19 (DNA evidence found under victim's fingers could "significantly advance defendant's claim of actual innocence"). The State argues the fact that Mr. Reyes's DNA was not at the crime scene is not definitive proof of his innocence. But that does not negate the fact that it is additional evidence of innocence worthy of some weight. All the more so, given that the State

9

admits that the DNA of Adriana Mejia was found at the crime scene, the one person who everyone agrees committed the crime. The State's argument does not rebut Mr. Reyes's evidence of innocence, nor does it constitute affirmative evidence of guilt that would warrant denying Petitioner's motion for summary judgment.

Next, among the items tested was a green towel containing blood stains found in the perpetrator's getaway car. That towel contained the DNA of Adriana Mejia, as well as an additional unknown person (excluding Reyes, Solache, and the victims). Ex. 21 (Reyes_Jenner 9572; Ex. 13 (Report of Dr. Reich) at 4. The State acknowledges such evidence, yet claims it is not evidence of innocence. That argument borders on frivolous. Evidence that a defendant's DNA was not found at a crime scene and/or evidence that someone else's DNA was found at a crime scene has been the basis of 246 murder exonerations nationwide since 1987, including 42 in Illinois alone. *See* National Registry of Exonerations, Browse by Cases, Sort by: State (Illinois)/Crime/DNA[3]. DNA evidence has also been the basis of dozens of certificates of innocence. *See* Petitioner's Motion, at 11-12. Evidence of an alternative perpetrator is also powerful evidence of innocence. *People v. Robinson*, 2020 IL 123849, ¶80 (evidence of another likely perpetrator "is of such a conclusive character as to probably change the outcome at a retrial.").

Put simply, the DNA evidence in this case is powerfully corroborative of Mr. Reyes's own testimony about his innocence.

---

[3] http://www.law.umich.edu/special/exoneration/Pages/detaillist.aspx (last accessed April 6, 2022).

### c. Guevara Coerces False Confessions from Multiple People

In addition, Mr. Reyes has presented evidence that the false confessions Guevara coerced in this case are consistent with his pattern of coercing false confessions from other innocent people in other cases. The State does not dispute this evidence, but asserts, without argument, that evidence is not admissible. This undeveloped argument is waived. *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("failure to assert a well-reasoned argument supported by legal authority [in appellate brief] is a violation of Supreme Court Rule 341(h)(7)..., resulting in waiver.")

In any event, case law clearly establishes that this evidence is admissible. Courts routinely consider pattern and practice evidence in addressing claims of innocence. "Illinois courts have consistently held that a 'pervasive pattern of criminal conduct by police officers'" is not only relevant but "enough," on its own, to permit a court to reach a finding of actual innocence. *People v. Tyler,* 2015 IL App (1st) 123470, ¶189 (quoting *People v. Mitchell,* 2012 IL App (1st) 100907, ¶63, and citing *People v. Patterson,* 192 Ill.2d 93, 139-45 (2000); *People v. King,* 192 Ill.2d 189, 193-99 (2000); *People v. Cannon,* 293 Ill.App.3d 634, 640 (1997)). The First District Appellate Court held in *Tyler* that "evidence of systemic police misconduct is sufficient to support defendant's claim of actual innocence." *Id*. ¶200. Albeit in the context of a petition for post-conviction relief, based on allegations of police misconduct alone the *Tyler* court remanded for an evidentiary hearing on petitioner's actual innocence claim. *Tyler* at ¶¶200-02; *see also People v. Almodovar,* 2013 IL App (1st) 101476, ¶¶77-79 (concluding the court need not rule on the issue but stating that "a strong argument could be made" that evidence of Guevara's "history of improperly influencing witnesses" would satisfy the actual innocence standard in light of the questionable inculpatory evidence and the import of Guevara's

credibility). This holding is not surprising: Of course evidence of an officer's pattern of committing a particular kind of misconduct in a number of cases is relevant to whether he committed the same misconduct in the case at bar. Courts have repeatedly affirmed this axiomatic principle, including in cases involving Guevara specifically. *See People v. Montanez,* 2016 IL App (1st) 133726, ¶34 ("As we stated in another case concerning Guevara's misconduct, 'In our view, any allegation that Guevara coerced a person to provide evidence is relevant to whether defendants in the case at bar were similarly coerced.'" (quoting *People v. Reyes,* 369 Ill. App. 3d 1, 21 (2006)). In *Almodovar* at ¶68, the First Appellate District explained why that is so obviously the case:

> [I]n the instant case, we find that defendant's allegations that Detective Guevara influenced witnesses to provide identifications are relevant to whether witnesses in the case at bar were similarly influenced, since such allegations, if true, would damage Detective Guevara's credibility. As was the case in *Reyes,* the credibility of Detective Guevara is directly at issue with regard to the crucial question of how he procured the evidence that led to defendant's conviction. New evidence that attacks his credibility on that crucial question would be highly material.

The First Appellate District again affirmed the principle—in another Guevara case—that evidence of an officer's pattern of misconduct is relevant to whether that officer committed similar misconduct in the case at bar. *Martinez,* 2021 IL App (1st) 190490. The appellate court first had strong language about Guevara's pattern, noting that the State "does not dispute that Detective Guevara has a history of misconduct," that the First Appellate District "has recognized Guevara's well-documented history of influencing and manipulating witnesses," and calling Guevara "a malignant blight on the Chicago Police Department and the judicial system." *Martinez* at ¶64. The Court cataloged Guevara's common forms of misconduct and summarized the pattern evidence by saying Guevara's "toolbox of coercion was well-stocked with a wide variety of tools." *Id.* ¶80. The Court ultimately held that "evidence of Guevara's misdeeds in

12

other cases would clearly be admissible in this case to show a pattern and practice of misconduct." *Id.* (emphasis added). Indeed, undersigned counsel has presented pattern evidence regarding Guevara's misconduct at multiple COI hearings in the last few months (*e.g.*, COI hearings of Mr. Thomas Sierra and Mr. Geraldo Iglesias, before Judge Reddick). And the only reason Mr. Reyes is in this situation to begin with is because Guevara fabricated his involvement out of whole cloth. Evidence that Mr. Reyes's conviction is based on evidence that was concocted through physical abuse, and thus inadmissible, is further evidence of Mr. Reyes's innocence.

To summarize, Mr. Reyes has presented ample evidence of innocence, including his own testimony, alibi evidence, and DNA, combined with a swath of evidence that it was Guevara's practice to coerce false confessions out of innocent people. This is more than sufficient. The COI statute cautions:

> It is the intent of the General Assembly that the court, in exercising its discretion as permitted by law regarding the weight and admissibility of evidence submitted pursuant to this Section, shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such persons or those acting on their behalf.

735 ILCS 5/2-702(a). Against this mandate, what other evidence could Mr. Reyes present 24 years after the fact to show innocence?

### III. EVEN IF THE COURT READS ACCOUNTABILITY INTO THE INDICTMENT, THERE IS STILL NO EVIDENCE THAT MR. REYES IS NOT INNOCENT

Even if this Court chooses to evaluate the evidence of accountability crimes, despite that accountability language does not appear in the indictment, the State has failed to point to any evidence to rebut the evidence of innocence. Mr. Reyes is still entitled to a certificate of innocence as a matter of law.

13

### a. The State Must Present Evidence to Establish Its Defense

If this Court chooses to evaluate the evidence of innocence of an accountability charge versus the evidence of non-innocence, it must first consider whether Mr. Reyes, as the movant, has established a *prima facie* case of innocence. He has done that. Next, the Court must consider whether the State has presented evidence to establish a *prima facie* case of non-innocence. *People v. Williams*, 2017 IL App (1st) 152021, at ¶ 30 (citing *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42, 52 (2010)[4]. Where the nonmovant presents no evidence on each essential element of its defense (non-innocence), the Court must find for the petitioner. *Stenger v. Swartwout*, 62 Ill. 257, 257 (1871) ("Where as to any essential element of a cause of action or defense there is no evidence at all…this court will interfere and set it aside.").

The State spends a portion of its brief explaining the difference between an affirmative showing of innocence and a lack of guilt. To be clear, Mr. Reyes does not argue that the State has the initial burden to show guilt. Mr. Reyes understands that his burden is to prove innocence by a preponderance of the evidence. The State fails to recognize, however, that once Mr. Reyes presents evidence of innocence—which he has—the burden then shifts to the state to disprove Mr. Reyes's evidence of innocence by 51%. There is a fine line between non-guilt and innocence.[5] And the defense to evidence of innocence is evidence of guilt. Therefore, in order to

---

[4] The State asserts that it does not need to present evidence of each element of the crimes it asserts Mr. Reyes is not innocent of, and attempts to distinguish *People v. Williams*, 2017 IL App (1st) 152020. The State says that *Williams* involves a motion for a directed finding rather than a motion for summary judgment, and that it involves a post-conviction matter. Though *Williams* involves a different procedural posture, at its core it discusses parties' burdens and a court's task of balancing evidence. Here it does not matter that there has not been a hearing, because at this stage, the Court must draw all reasonable inferences in the State's favor. *Beaman v. Freesmeyer*, 2021 IL 125617, ¶ 106, reh'g denied (Sept. 27, 2021). The principle remains: when a Court is balancing evidence, it first looks at whether the movant has provided evidence to establish a *prima facie* case. After so finding, it then looks to see whether the nonmovant has satisfied the elements of its defense. *Stenger v. Swartwout*, 62 Ill. 257, 257 (1871).

[5] In fact, it is up for debate whether the Constitution allows an innocence statute to require a petitioner to prove innocence in the first place. *See People v. Fields*, 2017 IL App (1st) 140988-U, ¶ 93

successfully rebut Mr. Reyes's evidence of innocence, the State must present at least some evidence that Mr. Reyes is guilty. As a matter of law, it has not, and cannot do that.

### b. The State's Evidence Cannot, as a Matter of Law, Satisfy the Elements of a Defense

Even construing all inferences in the State's favor, there is no version of events in which Mr. Reyes *does not* meet his burden of showing innocence. This is because the State has no evidence of its own. Indeed, even when construing the evidence in the State's favor, as the Court must at this stage, the State cannot meet its burden of presenting evidence on each essential element of its defense.

As a threshold matter, the State refers to 17 exhibits, most of which are duplicates of Mr. Reyes's exhibits, or hearsay. And of those 17 exhibits and the rest of the record, the state points to no actual evidence that undermines Mr. Reyes's claims of innocence. To the extent that the State expects this Court to wade through all those materials itself looking for evidence, "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991). The State has waived any argument about the substance of these materials beyond what it identifies in its brief. *Sakellariadis*, 391 Ill. App. 3d at 804.

As for the evidence the State has proffered, the relevant inquiry now is whether the evidence of non-innocence, even if taken in the State's favor, establishes non-innocence of *any crime at all*. As a matter of law, it does not. Out of the entire record in this case, the State identifies only four pieces of evidence that it says outweighs the powerful DNA and evidence of coerced confession: (1) Mr. Reyes's living arrangements; (2) a note in Mr. Reyes's pocket and a

---

(Pucinski, J., dissenting). The U.S. Supreme Court observed in *Nelson v. Colorado*, a state may not presume that a person who has been acquitted or exonerated is not entitled to statutory relief provided to innocent people by the state. 137 S. Ct. 1249, 1256 ("Colorado may not presume a person, adjudged guilty of no crime, nonetheless guilty *enough* for monetary exactions.").

name on a calendar; and Ms. Mejia's testimony that (3) she was told by Solache in Mr. Reyes's presence that Mr. Reyes was present to help get the baby, and (4) that Mr. Reyes waited in the car until getting the "signal" to enter the Soto home.

The State does not explain what it means by "living arrangements and relationships with his co-defendants" or "the sum of the testimony from the various witnesses at trial." To the extent it asserts that the fact that he rented a room from Mr. and Mrs. Mejia is evidence of guilt of murder and kidnapping on an accountability theory, that is preposterous. Indeed, if that is the case, then the 5-6 others who lived in that home who were Adriana's family members are equally guilty of accountability.

Likewise, the note in Mr. Reyes's pocket and a calendar entry listing Norma Salazar's name is not inculpatory in any way. According to the trial testimony of Adriana Mejia's husband, Rosauro Mejia, Adriana told him that she had given birth to the baby girl and was babysitting the older boy for a woman named Norma Salazar, who was in the hospital having another baby of her own. Ex. 14 (Trial Tr., Testimony of Rosauro Meija) at 1928. Mr. Reyes similarly testified that Adriana told him she was babysitting the boy for Norma Salazar and gave him Salazar's phone number when she asked him to look after the older boy for a time. Ex. 5 (Reyes Trial Testimony) at 2037-38, 2066. And, as it turns out, "Norma Salazar's" involvement is apparently made up; no Norma Salazar was ever charged or convicted. So, Adriana made up a lie and told it to both her husband Rosauro and Mr. Reyes. If it was inculpatory in any way, then Rosauro is implicated as well; but no one in this proceeding to date—certainly not the State—has asserted that he is not innocent. Moreover, the fact that a made-up person's name and phone number was in Mr. Reyes's possession—a name that no one says came from Mr. Reyes (and the State has not and cannot present any evidence to suggest otherwise)—is plainly exculpatory:

16

why would Mr. Reyes write down the name and phone number of someone he knew did not exist or had nothing to do with the crime? Put simply, the State has simply stated a fact—Mr. Reyes had a note—without citation to any other evidence that would make it evidence of guilt. This evidence neither rebuts Mr. Reyes's evidence of innocence, nor provides any support for his guilt.

That leaves just two statements from Adriana Mejia on which the State relies: that Solache told her that Reyes was in the car to help get the baby, and that Reyes waited in the car until "getting the signal to enter the Soto home." For one, the State cites nothing to support its characterizations of Mejia's testimony, and instead sends this Court on a truffle hunt. More critically, however, the State does not accurately characterize Mejia's testimony. Mejia did not testify that Mr. Solache told her that Mr. Reyes was present to "help get the baby." Her testimony is much more nebulous. She testified that Mr. Solache told her that Reyes "wasn't going to say anything and that he was going to help us," Ex. 17 at 27, and that Solache told her that he had told Reyes "what was going on" with her and that Reyes "knew." Ex. 20 at 149. She also did not testify that Mr. Reyes waited in the car until "getting a signal." She testified that he waited in the car alone and did not enter the home until after Mr. Soto had been killed, and then tried to stop the killing of Mrs. Soto. Ex. 17 at 112; Ex. 20 at 8-9, 151-52, 156-57, 219-20. She never says anything about a "signal."

That evidence, even for the sake of argument accepting it as true and construing it in the light most favorable to the State is insufficient as a matter of law to support a finding of guilt on accountability murder or kidnapping. It is long established that mere presence at a crime scene and knowledge that a crime is being committed is insufficient to establish accountability. *People v. Ceasar*, 231 Ill.App.3d 54, 56 (1992) ("mere presence at scene of crime, even with knowledge

17

that crime is being committed, is not enough to prove participation"); *see also People v. Reid*, 136 Ill.2d 27, 61 (1990) ("Mere presence of a defendant at the scene of the crime does not render him or her accountable for the offense."); *see also Brumley v. DeTella*, 83 F.3d 856, 863 (7th Cir. 1996) (In Illinois, "proof of accountability requires more than consent to the commission of a crime; more than knowledge of the commission of a crime; and more than presence at the scene of a crime, even when coupled with flight from the scene").

So, even accepting these two statements from Ms. Mejia, they do not as a matter of law rebut Mr. Reyes's evidence of innocence, nor do they constitute evidence of guilt of accountability even as a matter of law. Notably absent from the State's evidence, of course, is any assertion that Mr. Reyes participated in the planning or commission of the crime. That is because in the same deposition testimony the State relies on, Adriana Mejia stated that she had not had any planning conversations with Reyes, that she had no idea he would be there, that he did not enter the home with Adriana and Solache, that he did not kill Mr. or Mrs. Soto, that he did not grab the baby, and that she does not know who grabbed the boy. The only affirmative act she describes him committing is to try to stop Solache from stabbing Mrs. Soto upon arriving and seeing what was happening. Ex. 20 (Mejia Feb. 5, 2021 Dep.) at 219-220.[6] The State's only evidence, the testimony of Adriana, cannot possibly support guilt on an accountability theory, or any other. While the State attempts to dispute some of Mr. Reyes's facts, there is no dispute on a *material* issue, because all of the State's evidence combined cannot as a matter of law rebut Mr. Reyes's evidence of innocence.

---

[6] To be clear, Mr. Reyes disputes all of this vehemently; he has always maintained that he had absolutely no knowledge or involvement in the crime whatsoever. The factual presentation Petitioner presents is exclusively at summary judgment, construing the facts in the State's favor.

Mr. Reyes understands that the State believes he is guilty of this crime, regardless of what decades of new evidence have revealed about the corruption of this police investigation (and so many other Guevara investigations). That is a pity. But the only legitimate thing that ever connected him to the crime was his and his co-defendants' coerced statements. Stripping those away, and *truly* removing them from consideration as this Court must do, there is no possible way that a note in his pocket and the fact that he lived with Ms. Mejia and several others, rebuts Mr. Reyes's evidence of innocence, or constitutes affirmative evidence of guilt. Indeed, that meager evidence is insufficient *as a matter of law* to support guilt of murder or kidnapping on an accountability theory.

Even assuming the State could change course now and pursue an accountability theory, contrary to Palmer, it has failed to present evidence to support such a theory. Mr. Reyes is entitled to a COI as a matter of law.

## IV.     MR. REYES'S MOTION IS TIMELY

The State makes one additional argument, but it requires little attention at this point. The State asserts that this motion for summary judgment was not timely because the State did not have some depositions from Mr. Reyes's civil proceedings. The bulk of these depositions are neither relevant nor admissible (such as depositions of various prosecutors over the years, which contain multiple layers of hearsay). Indeed, the COI statute does not contemplate that the State can rely on any and all testimony ever generated in connection with a case. Subsection (c) says that the Court can consider materials attached to the petition, and subsection (f) makes clear that the State can rely on "prior sworn testimony or evidence admitted in the criminal proceedings related to the convictions." COI proceedings are not retrials and they are not evaluations of every shred of evidence under the sun. They are designed to be quick adjudications based on materials

the *Petitioner* has presented. *See* 95th Ill. Gen. Assem., House Proceedings, May 18, 2007, at 5-6 (statements of Representative Flowers (explaining that the language in the statute allowing judicial notice of prior proceedings, 735 ILCS 5/2-702(f), was placed in the statute to address concerns "that the process of petitioning for a COI would force the court to try…the original case over again")). In any event, Mr. Reyes has now provided all outstanding depositions to the State, and so the State's argument is moot.[7]

## CONCLUSION

Mr. Reyes was charged with principal crimes, and the State agrees there is no evidence that he committed any crime as a principal. This entitles him to a certificate of innocence as a matter of law under the binding holding of *Palmer*. Even assuming *arguendo* that the State had charged Mr. Reyes under an accountability theory, the State cannot rebut Mr. Reyes's evidence of innocence or to present affirmative evidence sufficient to meet the elements of its defense. For these reasons, the other reasons discussed herein, and the reasons raised in Mr. Reyes's petition for a certificate of innocence and motion for summary judgment, Mr. Reyes respectfully requests that this Court grant his motion for summary judgment and issue a certificate of innocence.

---

[7] Petitioner inadvertently did not attach the transcript from the second half of Ms. Mejia's February 2021 deposition. He provided a copy to the State on April 7, 2022 and has no objection if the State wishes to file a sur-reply to address this testimony.

Respectfully Submitted,

*/s/ Rachel Brady*
Rachel Brady
*Attorney for Arturo De Leon-Reyes*

Jon Loevy
Anand Swaminathan
Steve Art
Rachel Brady
Sean Starr
Loevy & Loevy
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900
brady@loevy.com

*Counsel for Petitioner Arturo De Leon-Reyes*

21

## <u>CERTIFICATE OF SERVICE</u>

I, Rachel Brady, an attorney, hereby certify that on this 7th day of April 2022, I caused a

copy of the foregoing to be served by electronic mail and USPS mail to:

Assistant State's Attorney
c/o Christa Bowden
Cook County State's Attorney's Office
2650 S. California Avenue
Chicago, IL 60608

Dated: April 7, 2022

Respectfully Submitted,


*/s/ Rachel Brady*
Rachel Brady
*Attorney for Arturo De Leon-Reyes*

Loevy & Loevy
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900
brady@loevy.com

22