**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN FULTON, | ) | Case No. 20-cv-3118 |
| | ) | |
| *Plaintiff,* | ) | Hon. Joan H. Lefkow |
| | ) | District Judge |
| *v.* | ) | |
| | ) | Hon. Maria Valdez |
| ROBERT BARTIK, *et al.* | ) | Magistrate Judge |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| ANTHONY MITCHELL, | ) | Case No. 20-cv-3119 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | [Consolidated with *Fulton v. Bartik* |
| *v.* | ) | for pre-trial purposes] |
| | ) | |
| ROBERT BARTIK, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | JURY TRIAL DEMANDED |

**PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS *IN LIMINE* NOS. 1-23**

**TABLE OF CONTENTS**

Response to City Defendants' MIL No. 1 ...................................................................................... 1

Response to City Defendants' MIL Nos. 2 and 5.............................................................................2

Response to Defendants' MIL No. 3................................................................................................5

Response to Defendants MIL No. 4................................................................................................6

Response to Defendants' MIL No. 6 ...............................................................................................7

Response to Defendants' MIL No. 7................................................................................................7

Response to Defendants' MIL No. 8................................................................................................8

Response to Defendants' MIL No. 9................................................................................................8

Response to City Defendants' MIL No. 10......................................................................................8

Response to Defendants' MIL No. 11............................................................................................11

Response to Defendants' MIL No. 12............................................................................................14

Response to Defendants' MIL No. 13............................................................................................16

Response to Defendants' MIL No. 14............................................................................................16

Response to Defendants' MIL No. 15............................................................................................17

Response to Defendants' MIL No. 16............................................................................................19

Response to Defendants' MIL No. 17............................................................................................19

Response to Defendants' MIL No. 18............................................................................................20

Response to Defendants' MIL No. 19............................................................................................21

Response to Defendants' MIL No. 20 ...........................................................................................21

Response to Defendants' MIL No. 21............................................................................................25

Response to Defendants' MIL No. 22............................................................................................26

Response to Defendants' MIL No. 23............................................................................................27

1

8NOW COMES Plaintiffs John Fulton and Anthony Mitchell for their response to Defendants' Omnibus Motions *in Limine* Nos. 1-23 (Fulton Dkt. 285, Mitchell Dkt. 289), and state as follows:

## I. Response to City Defendants' MIL No. 1 to Exclude Evidence and Argument Relating Solely to Claims That Were Dismissed or Never Alleged

Plaintiffs oppose City Defendants' Motion *in Limine* No. 1 because it goes too far. Defendants seek to bar evidence of wrongdoing by certain Defendants because Plaintiffs did not prevail on various claims against them at summary judgment. But simply because Plaintiffs' evidence may be insufficient to state a claim against Defendants is no reason to exclude it. That same evidence may very well be admissible to show Defendants' intent or to prove a different claim, such as conspiracy. *See Robinson v. Village of Matteson*, 1999 WL 1270685, at *2 (N.D. Ill. Dec. 23, 1999) (admitting evidence of how the plaintiff was treated, despite the fact that the evidence had been unsuccessfully used to support independent claims against defendants, because "the dismissal of a claim for relief under § 1983 does not mean that all evidence which formed the basis for such a claim is inadmissible"); *Hobley v. Burge*, No. 03 C 3678, 2006 WL 1308628, at *3 (N.D. Ill. May 9, 2006). As but one example, evidence that Defendants withheld exculpatory evidence from Plaintiffs is admissible to prove their intent to frame Plaintiffs, even if Plaintiffs could not prove at summary judgment that the evidence satisfied *Brady*'s materiality element. *See Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *4 (N.D. Ill. July 28, 2011) ("the dismissal of Hill's *Brady* claim does not necessarily mean that all evidence that formed the basis of his *Brady* claim is inadmissible") (J. St. Eve).

Plaintiffs agree that they will not seek to prevail on previously dismissed claims. But because evidence of Defendants' wrongdoing may nevertheless still be admissible, Defendants' Motion *in Limine* No. 1 should be denied. *See Jonasson v. Lutheran Child & Fam. Servs.*, 115

F.3d 436, 440 (7th Cir. 1997) (motions in limine are only properly granted if the evidence sought to be barred "clearly would be [inadmissible] for any purpose").

**II.    Response to City Defendants' MIL Nos. 2 to Bar Reference to Other Lawsuits, Complaint Register Files or Other Disciplinary History Events and 5 to Bar Reference to Specific Instances of Alleged Misconduct of Individual City Defendants**

## INTRODUCTION

In these two motions, Defendants seek to bar reference to lawsuits and citizen complaints brought against the Defendant Officers and other Chicago police personnel. Defendants argue that this evidence is improperly prejudicial under Rule 403 and constitutes improper character evidence disallowed by Rule 404. These motions should be denied because they are vague and overbroad, and Defendants do not satisfy their obligation to demonstrate that this evidence is inadmissible for all purposes. Contrary to Defendants' suggestion, evidence of past complaints against police officers have many permissible purposes under Rule 404(b), and evidence of sustained complaint registers (CRs) filed against the Defendants speak to many issues in this matter apart from propensity. Courts routinely admit sustained CRs at trial, and Plaintiffs seek to rely on sustained CRs here. This Court should deny the Defendants' motion.

## DISCUSSION

**A.    Defendants' Motions Should be Denied Because They Are Vague and Ask for Exclusion of a Huge Category of Evidence**

Defendants' motions should be denied as vague and overly broad. Defendants have asked this Court to bar all evidence of prior lawsuits, prior discipline, and complaint registers against all City Defendants. The Defendants do not identify specific evidence that they seek to have excluded, or specific complaints to which they object. Rather, Defendants are simply attempting to impose a general proposition over evidence they have summarily labeled as "irrelevant."

2

But the parties cannot before trial anticipate all of the different contexts in which evidence of prior misconduct, specifically, evidence of sustained complaint registers, may be relevant to these proceedings. For example, Plaintiffs could seek to introduce past CRs to impeach the Defendants or refresh the recollections of witnesses. *Torres v. City of Chicago*, 2015 WL 12843889 (N.D. Ill. Oct. 28, 2015) (evidence of CRs may be used to impeach or refresh the recollection of witnesses). Or the evidence might be admissible for a variety of permissible purposes under Rule 404(b), as discussed in the next section.

In *Austin v. Cook County*, defendants asked the court to bar any argument or testimony regarding the prior conduct or reputation of the defendants or defendants' witnesses. No. 07-c-3184, 2009 WL 7999488, at *4 (N.D. Ill. March 25, 2009). As in this case, the defendants in *Austin* asserted that such evidence was irrelevant and outweighed by the danger of unfair prejudice under Rule 404(b). *Id.* Reviewing the motion, the Court stated that "the defendants do not explain or describe what specific evidence they are referring to," and dismissed the motion as "vague and undefined." *Id.* The Defendants in this matter have been similarly vague and undefined. They have not objected to specific evidence, or alleged that specific claims levied against the Defendant Officers are irrelevant. As in *Austin*, the Defendants' requests are "so vague the court has no basis on which to rule." *Id.* The Defendants have asked the Court to summarily exclude large and undefined categories of evidence.

Defendants have fallen far short of their burden to demonstrate that the evidence they seek to exclude is inadmissible for all purposes. *Noble v. Sheahan*, 116 F. Supp. 2d 966, 969 (N.D. Ill. 2000) ("[A] motion *in limine* should be granted only if the evidence sought to be excluded is clearly inadmissible for any purpose."). Their general request to exclude a huge category of evidence is not an appropriate request for a motion *in limine*. *Gonzalez v. Olson*, No.

3

11 C 8356, 2015 WL 3671641, at *26 (N.D. Ill. June 12, 2015) (in the absence of more specific information, the court will not bar an entire category of evidence at this juncture).

**B.      Evidence of Civil Liability and Sustained Complaint Registers Are Admissible for a Variety of Non-Propensity Reasons**

Plaintiffs intend to introduce evidence of Defendants' sustained CRs at trial and the fact that Defendant Bartik was found liable for malicious prosecution at a prior civil trial. Evidence of sustained CRs against Defendants and successful civil suits are admissible under Rule 404(b)(2). Rule 404(b) bars evidence of other prior acts offered "to prove a person's character in order to show that on a particular occasion the person in acted in accordance with the character." FED. R. EVID. 404(b)(1). Rule 404(b)(2) allows for the introduction of other-act evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). Evidence of defendant officers' sustained CRs has been deemed admissible for the abovementioned non-propensity reasons and for additional reasons in numerous cases. *E.g.*, *Petrovic v. City of Chicago*, 2008 WL 818309, at *2 (N.D. Ill. Mar. 21, 2008); *Edwards v. Thomas*, 31 F.Supp.2d 1069, 1074 (N.D.Ill.1999). Moreover, sustained CRs have been distinguished from unsubstantiated complaints as more likely to be found admissible. *Moore v. City of Chicago*, No. 02 C 5130, 2008 WL 4549137, at *5 (N.D. Ill. Apr. 15, 2008).

Defendants' prior discipline is admissible for a variety of reasons including, but not limited to: intent, absence of mistake or accident, knowledge, opportunity, identity, and impeachment. Contained within the sustained complaint reports levied against the Defendants is a substantial history of misconduct. Within these reports is evidence similar in kind and type to the alleged acts currently brought against the Defendants.

As this evidence addresses a variety of relevant, non-propensity related issues, it should not be barred from trial as a category. Instead, Plaintiffs will identify particular sustained CRs

4

that they intend to use at trial, outside of the presence of the jury, and explain why those CRs are admissible under Rule 404(b). At that point, the Court can assess whether there is any danger of *unfair* prejudice from the CRs identified. *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matters under Rule 403.")

**III.     Response to Defendants' MIL No. 3 to Have Equal Trial Time as Plaintiffs**

Defendants' third MIL requests equal trial time as both Plaintiffs to ensure a "fair trial." But the amount of time a party will need to present its side will depend on the testimony of witnesses, objections raised by the other side, admitted exhibits, and other elements outside the parties' control. Moreover, there are two plaintiffs in this case, each of whom will testify and present their own witnesses to present their claims as well as the impact of Defendants' wrongful conduct on each of their lives. Since the Court has broad discretion to determine the pacing of a trial, Plaintiffs respectfully request that the Court deny Defendants' motion given that there are two plaintiffs or, at the very least, withhold ruling on this motion until trial begins and in the event the Court deems it necessary to set time limits for either side. Withholding ruling on this matter will also ensure Plaintiffs are not unduly prejudiced and may present their case efficiently and fairly. *See Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 720 (7th Cir. 2001) ("A district court that fixes a period of time for the trial as a whole does not per se commit an abuse of discretion so long as the time limit is flexible enough to accommodate adjustment if it appears during the trial that the court's initial assessment was too restrictive.") (quoting *MCI Communications Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1171 (7th Cir.1983)).

5

## IV. Response to Defendants MIL No. 4 to Exclude Any Use of the Terms "Code of Silence" "Blue Wall" and Other Similar Prejudicial Terms

Defendants' next move *in limine* to bar Plaintiffs from use of the terms "code of silence" or "blue wall" to describe Chicago police officers' practice of covering up misconduct to protect fellow officers because the terms are irrelevant and unduly prejudicial. Plaintiffs object to this motion on the basis that it is too broad as written. While the terms "code of silence" or "blue wall" themselves may be unduly prejudicial, Plaintiffs should be able to present an argument that Chicago police officers are biased towards each other or attempt to cover up their fellow officers' wrongful conduct, including the individual city defendants in this case. *See Bennett v. Thomas, No.* 12-CV-6060, 2014 WL 13110820, at *10 (N.D. Ill. Jan. 16, 2014) (J. Lefkow) (citing to *Ratliff v. City of Chicago*, No. 10 C 739, 2012 WL 5845551, at *4 (N.D. Ill. Nov. 19, 2012)). This case includes two conspiracy claims, and to prevail Plaintiffs will need to prove that the officers agreed to violate Plaintiffs' constitutional rights or the state law claims advanced, which includes the argument that the individual city defendants have a practice of covering up each other's wrongful conduct. Therefore, these terms, at the very least, are relevant to Plaintiffs' claims. However, if the Court agrees that the terms are unduly prejudicial despite their relevance, Plaintiffs can present their arguments without use of the terms "code of silence" or "blue wall."

This motion is too broad as written for the additional reason that Defendants seek to bar the terms "code of silence" and "blue wall" as well as "other similar generalizations or terms." Dkt. 285 at 11 of 35. It is unclear which terms (other than "code of silence" and "blue wall") Defendants object to specifically, and granting the motion as written to include all hypothetical terms Defendants do not like will hamper Plaintiffs' ability to present their argument. If Plaintiffs use a term during trial to describe the individual city defendants' practice of covering up their fellow officers' wrongful conduct that Defendants find unduly prejudicial, Defendants may

object at that point, but granting such a broad motion preemptively would hurt Plaintiffs' ability to present a thorough argument about the Defendants' wrongful conduct.

**V.      Response to Defendants' MIL No. 6 to Exclude Evidence and Argument Relating to Any Other Incident of Alleged Misconduct in the Media**

Defendants' sixth motion seeks to bar all references to unrelated police misconduct cases in media. Plaintiffs oppose and seek to reserve the right to raise instances of specific misconduct by the defendants in this case where they are relevant for non-propensity reasons. Plaintiffs agree to raise those cases outside the presence of the jury for the Court to determine whether they are admissible. If the Court were to agree with Defendants that unrelated police misconduct cases should be barred from mention in this trial, Plaintiffs reserve the right to raise any examples of police misconduct cases at trial should they be relevant to Plaintiffs' claims.

**VI.     Response to Defendants' MIL No. 7 to Exclude Evidence and Argument Regarding the Passage of Time Between the Incident and the Trial in This Case**

Defendants move to exclude phrases that allude to the passage of time between the events that led to Plaintiffs' wrongful arrest and this trial, including such phrases as Plaintiffs have been "waiting for their day in court," or that this trial "was a long time coming." Defendants argue that these phrases are prejudicial. However, it is objectively true that more than two decades have passed since the underlying incident and the trial, and no matter how Defendants slice it, that is a significant amount of time. Defendants cite to *Obrycka v. City of Chi.,* 2012 WL 4060293, at *2 (N.D. Ill. Sept. 14, 2012), but in that case, the plaintiff was "presenting evidence, argument, or comment about waiting for her day in court" because her federal civil case was stayed pending a party's criminal prosecution and because the plaintiff's attorneys repeatedly requested extensions of time. Unlike in that case, Defendants are not seeking to bar mention that the trial in this case was delayed, but instead are seeking to bar any mention of the passage of time between the

incident and this trial. Defendants have not explained how they will suffer undue prejudice if Plaintiffs mention that a significant number of years have passed since the Collazo murder investigation and this trial. Accordingly, this motion should be denied.

**VII. Response to Defendants' MIL No. 8 to Exclude Evidence and Argument Relating to Any Undisclosed Witnesses or Opinions**

Plaintiffs do not oppose Defendants' MIL No. 8.

**VIII. Response to Defendants' MIL No. 9 To Exclude Any Lay Witness Testimony Regarding Plaintiffs' Alleged Physical and Emotional Injuries**

Plaintiffs object to Defendants' ninth motion in *limine* for being overbroad. Plaintiffs agree that lay witnesses may not offer expert opinions or the cause of Plaintiffs' mental and emotional distress, *see Bennet*, 2014 WL 13110820 at *9, but lay witnesses are "entitled to testify about [their] own perceptions, including the physical and emotional effects of the defendants' alleged conduct." *Id*. (quoting *Watson v. Allen Cnty. Sheriff's Officers*, No. 1:12-CV-55, 2013 WL 4540597, at *4 (N.D. Ind. Aug. 27, 2013)). Defendants' request that "the Court … exclude any lay witness testimony regarding Plaintiffs' physical or emotional injuries," Dkt. 285 at 13, is therefore overbroad, and this motion should be denied on that basis.

**IX. Response to City Defendants' MIL No. 10 to Exclude Evidence and Argument Relating to Police Practices Which Insinuate Wrongdoing But Which Are Constitutional**

Defendants set up a straw man and knock it down. In their Motion, Defendants isolate a variety of interrogation tactics, assert that each tactic alone cannot violate the Constitution, and then claim that Plaintiffs must be barred from proving his claims with evidence of these tactics. Defendants' argument ignores the fact that whether a plaintiff's will was overborne must be judged by the totality of the circumstances. *See Kerr v. City of Chicago*, 424 F.2d 1134, 1138 (7th Cir. 1970) ( "[t]o consider whether the confession was voluntary, it is necessary for the jury to be

allowed to consider all relevant facts regarding the circumstances under which a confession from the plaintiff was obtained." ; *Wilson v. Lawrence County*, 260 F.3d 946, 953 (8th Cir. 2001) ("[A] totality of the circumstances analysis does not permit state officials to cherry-pick cases that address individual potentially coercive tactics, isolated one from the other, in order to insulate themselves when they have combined all of those tactics in an effort to overbear an accused's will.").

The Seventh Circuit explained this plainly in *Dassey v. Dittman,* 877 F.3d 297 (7th Cir. 2017), noting that the Supreme Court "does not draw bright lines on this subject." *Id.* at 304.

> Thus, a tactic that might be deemed borderline tolerable under some circumstances could shift over into intolerably coercive territory when considering the subject's age, amount of sleep, deprivation of contact with family, or other factors. Although it is true that some tactics or factors cannot *standing alone* render an interrogation fatally coercive, the whole point of the totality-of-the-circumstances inquiry is to consider the totality of the circumstances.

As far back as 1948 courts have recognized that interrogation techniques such as holding a suspect incommunicado, lying to the suspect, interrogating the suspect late at night, and using multiple teams of interrogators could violate a suspect's right, even if each individual tactic is not unconstitutional:

> A 15-year old lad, questioned through the dead of night by relays of police, is a ready victim of the inquisition. Mature men possibly might stand the ordeal from midnight to 5 a.m. But we cannot believe that a lad of tender years is a match for the police in such a contest. He needs counsel and support if he is not to become the victim first of fear, then of panic. He needs someone on whom to lean lest the overpowering presence of the law, as he knows it, may not crush him. No friend stood at the side of this 15-year old boy as the police, working in relays, questioned him hour after hour, from midnight until dawn. No lawyer stood guard to make sure that the police went so far and no farther, to see to it that they stopped short of the point where he became the victim of coercion. No counsel or friend was called during the critical hours of questioning.

*Haley v. State of Ohio*, 332 U.S. 596, 599–600, 68 S. Ct. 302, 303–04, 92 L. Ed. 224 (1948). Or, to take a more recent example, an officer's failure to provide *Miranda* warnings does not

automatically violate a suspect's rights. *Vega v. Tekoh*, 597 U.S. 134, 152 (2022). But it does not follow that the failure to provide *Miranda* warnings is irrelevant to the question whether the totality of the circumstances indicate that the Fifth Amendment was violated.

Similarly, as yet another example, handcuffing a suspect is not, in itself, improper or unconstitutional. But whether a plaintiff is handcuffed during his interrogation is part of the circumstances that the jury must assess to determine if Defendants crossed the line into Constitutionally impermissible territory. And while yelling at a suspect may not, by itself, violate the Constitution, yelling at a suspect on the third day of his interrogation while handcuffing him to a wall might be unconstitutional.

A moment's reflection demonstrates the absurdity of Defendants' gambit. There is nothing inherently unconstitutional about holding a suspect in a small windowless interrogation room. But the environment in which Plaintiffs were held is undeniably relevant to the totality of the circumstances. *See Kerr*, 424 F.2d at 1138. Under Defendants' view, however, Plaintiffs would only be entitled to testify as to misconduct that in and of itself violates the Constitution. That is not the law.

In addition, some of the evidence Defendants seek to bar is independently relevant to impeach Defendants. For example, Defendants deny that they fed information to Plaintiffs before Plaintiffs confessed. Defendants, nevertheless, seek to bar the fact that they provided Mr. Mitchell with Mr. Fulton's purported statements before he confessed. Dkt. 285 at 19 of 35 (the last bullet point). Obviously, Plaintiffs are entitled to present evidence demonstrating that Defendants are lying about the circumstances in which their confessions were obtained. This fact also helps explain why Mr. Mitchell and Mr. Fulton's confessions dovetail in certain respects, and Plaintiffs must be permitted to present this relevant evidence.

10

Moreover, Defendants are wrong that certain of the enumerated facts are *per se* Constitutional. Defendants insist that Griffin was only a witness, and claim they treated her accordingly, including by not providing her with *Miranda* warnings. Thus, Defendants seek to bar evidence they brought Griffin to the police station against her will, accused her of lying, told her she better have something for them when they returned to her interrogation room, and told her what they wanted to hear: that she facilitated Collazo's murder. But these tactics are wholly improper to use on a witness. Police cannot seize a witness absent probable cause to believe she committed a crime. None of the cases Defendants cite authorize this misconduct.

Finally, Defendants posit that "[a]ctual involuntariness is complete irrelevant if it is not the product of some illegal conduct by the police." Dkt. 285 at 19 of 35. But Defendants ignore that they are contesting Plaintiffs' innocence, which is extremely relevant for damages purposes. *Parish v. City of Elkhart, Ind.*, 702 F.3d 997, 1003 (7th Cir. 2012) ("Because the district court's rulings improperly limited the introduction of evidence relating to Parish's innocence, and that evidence was critical to the damages issue, the award of damages cannot stand."). The fact that Plaintiffs falsely and involuntarily confessed is independently relevant at trial to establish their innocence. Thus, Plaintiffs could potentially lose their coerced confession claims, but nevertheless win on fabrication, in which case evidence of their innocence will be entirely relevant and admissible.

### X. Response to Defendants' MIL No. 11 to Exclude Evidence and Argument That Any Police Officer Falsely Testified or Provided Misleading Testimony at Plaintiffs' Criminal Trials or During Any Criminal Proceedings

Defendants seek to bar any argument that they provided false or misleading testimony at any criminal proceeding, citing the fact they are entitled to absolute immunity for any such testimony under *Briscoe v. LaHue*, 460 U.S. 325 (1983). The motion should be denied.

11

While it is of course undisputed Defendants cannot be *liable* for their false testimony against Plaintiffs under federal law, that fact does not preclude Plaintiffs from arguing that by testifying consistently with the evidence they fabricated, Defendants thereby testified falsely at Plaintiffs' criminal proceedings. *Briscoe* does not reach so far, and the Seventh Circuit has explicitly rejected the notion that defendants can immunize their misconduct by testifying in a subsequent proceeding. *Avery v. City of Milwaukee*, 847 F.3d 433, 441 (7th Cir. 2017) ("Here, the detectives testified about [plaintiff's] 'confession' and authenticated their false reports memorializing it; the reports were then introduced into the trial record. If an officer who fabricates evidence can immunize himself from liability by authenticating falsified documentary or physical evidence and then repeating the false 'facts' in his trial testimony, wrongful-conviction claims premised on evidence fabrication would be a dead letter.... When the detectives falsified their reports of a nonexistent confession, it was entirely foreseeable that this fabricated 'evidence' would be used to convict Avery at trial for Griffin's murder. That was, of course, the whole point of concocting the confession."); *cf. Fields v. Wharrie,* 740 F.3d 1107, 1114 (7th Cir. 2014) ("A prosecutor cannot retroactively immunize himself from conduct by perfecting his wrong-doing through introducing the fabricated evidence at trial and arguing that the tort was not completed until a time at which he had acquired absolute immunity.").

The flipside of the rule in *Avery* and *Fields* is that Plaintiffs must be permitted to contend that the Defendants gave false testimony at their criminal proceedings. Doing so does not mean Plaintiffs are attempting to hold them liable for that testimony; it merely confirms that the Defendants committed the constitutional torts by testifying in accordance with their pre-trial fabrications at trial.

12

Moreover, Defendants' subsequent steps at trial are relevant to Plaintiffs' conspiracy claim, including that the Defendants' actions are probative of an earlier conspiracy. *See United States v. Lindemann*, 85 F.3d 1232, 1240 (7th Cir. 1996) ("Even if a conspiracy has terminated, evidence of subsequent acts may be admitted to elucidate the nature of the prior conspiracy.") (citing *United States v. Testa*, 548 F.2d 847, 852 (9th Cir. 1977)).

At most, a limiting instruction can be given that informs the jury that the officers may not be liable for their testimony during Plaintiff's criminal trial or before the grand jury, and only for their conduct outside of those contexts. Any potential for confusion (which seems minimal at best) can be resolved in this manner.

In addition, because Defendants actively sought Plaintiffs' arrests, and allegedly fabricated the evidence used to charge them, they cannot claim immunity for their testimony regardless. The Seventh Circuit has recognized that an "exception to this wall of immunity for trial and pretrial testimony exists for a 'complaining witness.'" *Cervantes v. Jones,* 188 F.3d 805, 809–10 (7th Cir. 1999), *rev'd on other grounds, Newsome v. McCabe,* 256 F.3d 747, 752 (7th Cir. 2001). To be considered a complaining witness (and thereby be disqualified from absolute immunity), the witness "must play a sufficient role in initiating the prosecution," which requires that the witness "actively instigated or encouraged the prosecution of the plaintiff." *Id.* at 810. Under the facts as alleged by Plaintiffs, Defendants fall squarely under the complaining witness exception and cannot claim their testimony against Plaintiffs is immunized. This is an independent basis on which to deny Defendants' motion.

Finally, taking a step back, Defendants seem to be asking this Court to shield them from cross-examination based on prior sworn statements made regarding the events at issue in this case—statements that are non-hearsay admissions by a party opponent and are standard fare for

13

impeachment—because *Briscoe* immunizes them from damages for perjury. However, *Briscoe* itself provides that cross-examination about alleged perjury is the way to ferret it out; not that any examination is improper. 460 U.S. at 333-34 ("But the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.") (citation omitted). There is no case that Plaintiff is aware of that forbids a plaintiff from cross-examining a defendant with his own prior statements, and Defendants offer no authority for such a sweeping ruling. The motion should be denied.

XI. **Response to Defendants' MIL No. 12 to Preclude Plaintiffs from Referring to Themselves, Shaw, or Griffin as "Kids" or Other Similar Terms Designed to Evoke Leniency**

Defendants next move to bar Plaintiffs from referring to themselves, Shaw, and Griffin as "children, kids, minors, teenagers, or any other similar diminutive terms implying they should be treated in an especially lenient manner." Dkt. 285 at 17. Defendants argue that such terms, while objectively true, will cause them undue prejudice. In support of their argument, they argue that because "Fulton was 18 years old, Mitchell and Griffin were 17 years old, and Shaw was 15 years old when the murder underlying this case occurred on March 10, 2003…they were legally adults in the eyes of the Illinois justice system." In support, they cite to 705 ILCS 405/5-120 (P.A. 90-590, eff. Jan. 1, 1999) and 705 ILCS 405/5-130(1)(a) (P.A. 92-665, eff. Jan. 1, 2003) (those 15 years old or older charged with first-degree murder are under the jurisdiction of the adult criminal courts).

References to outdated statutes have no relevance here. The Illinois legislature has since changed 705 ILCS 405/5-120 to reflect that anyone under the age of 18 is under the jurisdiction of the juvenile courts and 705 ILCS 405/5-130(1)(a) now places anyone under the age of 16

charged with murder under the adult criminal court jurisdiction. But whether Plaintiffs and Shaw were investigated as juveniles or adults has nothing to do with this case. It is objectively true that all four were teenagers at the time of the incident. Moreover, Griffin was never charged with murder, so the statutes Defendants cite above have no relevance to her *a fortiori*. And Shaw was only 15 years old when he was arrested, and his age was a factor in the ultimate suppression of his statement.

Regardless, Plaintiffs should be permitted to refer to the age of Plaintiffs, Shaw, and Griffin in the course of this trial because their ages are relevant to the amount of time they spent incarcerated and the particular mental and emotional impact their wrongful convictions had on them. The probative value of that age goes to Plaintiffs' claims for damages.

Defendants rely on *United States v. Adames,* where the Seventh Circuit upheld the exclusion of video evidence showing a criminal defendant's children. 56 F.3d 737, 746 (7th Cir. 1995). The Court held that the videos were "emotionally charged and may have induced the jury to feel sympathy for [the defendant] or his children, emotional reactions that should not factor into the jury's decision." That case is inapplicable. Unlike here, the Seventh Circuit in *Adames* held that the video evidence was irrelevant, but as explained above, Plaintiffs, Shaw, and Griffin's ages at the time of the underlying criminal investigation is relevant to show damages and to show the wrongfulness of Defendants' alleged misconduct. For example, in considering the voluntariness of their statements, the jury will be instructed to consider their ages, even according to Defendants' own proposed jury instruction. See Dkt. 284-6 at 29 ("A suspect's age and intelligence are factors you may consider when evaluating the totality of the circumstances surrounding a suspect's confession."); see also Dkt 284-5 at 22-23 ("The various factors you may consider [in evaluating the voluntariness of a confession] include, but are not limited to: the

15

Plaintiff's age, experience, education, deprivation of sleep or food, background, intelligence, vulnerabilities known to the officers at the time, and whether he understood his rights and the consequences of waiving those rights."). Moreover, unlike in *Adames*, Plaintiffs, Shaw, and Griffin's ages and the fact that they were teenagers when the underlying incident occurred is not being proffered to "induce [the] jury to decide the case on an improper, [emotional] basis," *Adames*, 56 F.3d at 746, but is being introduced to show the degree of wrongfulness of the Defendants' conduct and, importantly, bears directly on the damage Plaintiffs have suffered as a result of Defendant's alleged misconduct. Therefore, this motion should be denied.

### XII. Response to Defendants' MIL No. 13 to Exclude Any Evidence and Argument Relating to Previously Dismissed Individuals

Plaintiffs do not oppose this motion only to the extent it bars any parties from mentioning dismissed defendants or claims. *See* Plaintiffs' MIL No. 9.

### XIII. Response to Defendants' MIL No. 14 to Bar Any Evidence and Argument Relating to or Suggestive of Burden-Shifting

Defendants' only citation in support of their 14th motion in *limine* stands for the non-controversial proposition that plaintiffs may not argue that defendants bear the burden of proof. Dkt. 285 at 25 of 35, citing *Gray v. City of Chicago*, No. 1:18-CV-02624, 2023 WL 7092992, at *15 (N.D. Ill. May 8, 2023). From there, Defendants contend that Plaintiffs may not point out that Defendants failed to call a witness, or suggest that Defendants have no evidence to rebut Plaintiffs'. Such is not the law, and Defendants' failure to cite any case in support of their argument is telling. To begin with, even in the criminal context where a defendant's liberty is at stake, "commenting on a defendant's failure to call a witness does not have the effect of shifting the burden of proof unless it taxes the exercise of the defendant's right not to testify." *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988). Moreover,

16

> A prosecutor who comments on a defendant's failure to call a witness may mean one of three things: (1) the case stands unrebutted, which influences the weight jurors should give to the evidence; (2) each side can call witnesses, implying that neither side's failure to call a witness supports an adverse inference; (3) the defendants' failure to call the witness supports an inference that the witness would not have supported the defendants' version of events. The defendants, who complain that the prosecutor's comments here "shifted the burden of proof", apparently believe that any of these three meanings is forbidden ground. Now none of these meanings actually changes the burden.

*United States v. Sblendorio*, 830 F.2d 1382, 1391 (7th Cir. 1987). The Court will instruct the jury regarding the burden of proof, and Plaintiffs will not suggest that Defendants bear the burden. But simply commenting on the evidence, and drawing reasonable inferences therefrom, is not improper. Defendants' motion should be denied.

## XIV. Response to Defendants' MIL No. 15 to Bar Evidence or Argument that Non-Defendants Committed Misconduct

Defendants seek to bar evidence that non-defendants committed any misconduct to avoid a "guilt by association" effect. Dkt. 285 at 25-26 of 35. This motion should be denied as overbroad. Plaintiffs will not reference the fact that there were claims in the case or defendants in the case which have been dismissed. If Defendants' motion were granted as written, however, it would literally bar Plaintiffs from "any reference" to any "non-party officer" or dismissed defendant such as Detective Rolston. That is not going to work because there are lots of non-party officers who had some role in the investigation. More to the point, Plaintiffs have a claim against Defendants for conspiring to frame them. Plaintiffs are certainly entitled to present evidence that additional co-conspirators, including Rolston, contributed to the plot against them. Defendants' motion should be denied. If there is a specific issue that arises at trial, this Court is well-equipped to handle it then.

17

**XV.  Response to Defendants' MIL No. 16 to Bar Argument or Suggestions That the Jury Should Punish or "Send a Message" to the City and CPD By Its Verdict Against Individual City Defendants**

Defendants seek to bar Plaintiffs from arguing that the jury should "send a message" or punish the City with its verdict because punitive damages are not available against it. Plaintiffs agree that they will not argue that they seek to punish the City before the jury. Plaintiffs, however, are entitled to argue that the jury's verdict should deter police officers, including Chicago police officers, from the future misconduct.  *See, e.g.*, *Jones v. City of Chicago*, No. 14-CV-4023, 2017 WL 413613, at *5 (N.D. Ill. Jan. 31, 2017) ("Jones is entitled to ask the jury to award punitive damages and send a message to Defendants or to other police officers generally to deter the type of misconduct Jones alleges in this case."); *Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at *6 (N.D. Ill. July 29, 2011) ("Given that compensatory damages are limited to actual losses, this Court agrees that Plaintiff's argument that the jury should "send a message" is a punitive damages argument. Nevertheless, the Court is not persuaded that Plaintiff should not be able to argue that he is attempting to deter Defendant officers and other Chicago police officers from future misconduct. . . . Defendants' motion *in limine* is denied insofar as Plaintiff will be permitted to argue that he is attempting to deter Defendant officers and other Chicago police officers from future misconduct."  *See also Betts v. City of Chicago*, No. 2011 WL 1837805, at *9–10 (N.D. Ill. May 13, 2011) ("Betts will be permitted to argue that he is attempting to deter the defendant officers and other Chicago police officers from future misconduct."); *Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 738 (N.D. Ill. 2004) (permitting "send a message" argument against the City even in the absence of punitive damages).

18

XVI.    **Response to Defendants' MIL No. 17 to Bar Plaintiffs' Counsel from Breaking Up Defendants Cross Examination of Plaintiffs**

In this motion, Defendants seek to prohibit Plaintiffs from breaking up Defendants' cross examination. Defendants are concerned that Plaintiffs will seek to introduce witnesses or experts in the midst of defendants' cross-examinations to "game" the trial. It is unclear how this would "game" the trial in Plaintiffs' favor. Moreover, when witnesses can testify depends on several factors, including the availability of those witnesses and how long Defendants' cross-examination takes. Accordingly, Plaintiffs suggest the Court either deny the motion as it has the discretion to control the flow of trial, or, at least, reserve ruling on this motion and the parties can inform the Court about the availability of certain witnesses during the trial.

XVII.   **Response to Defendants' MIL No. 18 to Bar Any Argument Relating to Sufficiency of Underlying Police Investigation**

Defendants' motion to bar argument regarding the sufficiency (or insufficiency) of their post-arrest conduct is a non-starter. Defendants rely on Fourth Amendment cases holding that officers are not obligated to conduct additional investigation after establishing probable cause, but Plaintiffs have several non-Fourth Amendment claims in this case. Accordingly, Defendants' case citations are no bar to Plaintiffs' inquiry into Defendants post-arrest conduct.

Plaintiffs are entitled to inquire as to Defendants' failure to conduct relevant forensic tests after their arrests, as this evidence is germane to Defendants' state of mind. One inference from Defendants' refusal to conduct relevant forensic testing is that Defendants knew Plaintiffs' confessions were false and thus did not want to develop additional exculpatory evidence that would further disprove their confessions. Of course, Defendants can contest that the testing was relevant, as well as the reason it was not conducted, but that is no basis to bar evidence on this point.

19

Moreover, Plaintiffs' contention is that Defendants never established probable cause. The Fourth Amendment case law on which Defendants rely is thus potentially inapplicable, and, therefore, Defendants' motion must be denied. *See Thomas v. Sheahan*, 514 F. Supp. 2d 1083, 1087 (N.D. Ill. 2007) ("A motion in *limine* should only be granted where the evidence is clearly inadmissible for any purpose.").

## XVIII. Response to Defendants' MIL No. 19 to Bar Argument That the Absence of DNA Evidence As Proof of Police Misconduct

Defendants misrepresent the law in moving to bar Plaintiffs from using Defendants' failure to seek DNA testing as evidence of their misconduct. Defendants state that the Seventh Circuit in *King v. Hendricks Cty. Commissioners*, 954 F.3d 981 (7th Cir. 2020), barred such evidence. That is not *King*'s holding. Instead, King simply stated that the absence of fingerprint evidence was insufficient on its own to defeat summary judgment on the plaintiff's claim that the defendant police officer used unjustified deadly force. *Id*. at 986. Nowhere in *King* does the court hint that the lack of fingerprint evidence is irrelevant and inadmissible at trial.

Defendants' reliance on *Mitchell v. City of Chicago*, 862 F.3d 583 (7th Cir. 2017) is equally misplaced. In *Mitchell*, the decision not to test was made by non-defendant members of the Illinois State Police, not the defendants in the civil case. *Id*. at 586 ("evidence reflecting the investigatory decisions of the Illinois State Police *after* the City officers' shooting could not shed light" on the officers' state of mind at the time of the shooting).

As stated in response to Defendants' motion in *limine* no. 16, one inference from Defendants' refusal to conduct relevant forensic testing is that Defendants knew Plaintiffs' confessions were false and thus did not want to develop additional exculpatory evidence that would further disprove their confessions. The evidence is thus relevant and admissible, and Defendants proffer no legitimate basis to bar it.

20

**XIX.    Response to Defendants' MIL No. 20 to Bar Evidence Regarding Any Alleged Deviation from Chicago Police Department Internal Policies**

Defendants' motion *in limine* no. 20 seeks to exclude any evidence, argument or reference of Defendants' deviation from any internal Chicago Police Department policies on the basis of relevance and undue prejudice. Defendants do not explain *which* internal Chicago Police Department policy should be barred from mention by Plaintiffs, and the motion is overbroad.

Defendants contend that because Plaintiff's *Monell* claim was bifurcated, any references to the rules and practices of the Chicago Police Department are automatically irrelevant. That is plainly incorrect. Even though it is true that violations of rules and regulations do not by themselves establish constitutional liability, *e.g., Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006), that by no means compels a conclusion that deviations and departures from the Department's rules and protocols during this investigation have no relevance to any issue at trial. And, contrary to Defendants' misrepresentation, the Seventh Circuit has made clear that *Thompson* did not establish that evidence of internal policies is inadmissible.

> Despite its strong language, *Thompson* should not be understood as establishing a rule that evidence of police policy or procedure will never be relevant to the objective-reasonableness inquiry. We recently clarified that expert testimony concerning police policy is not categorically barred. *See Florek v. Village of Mundelein*, 649 F.3d 594, 602–03 (7th Cir. 2011). Even though jurors can understand the concept of reasonableness, in some cases they may not fully grasp particular techniques or equipment used by police officers in the field. In those instances an expert's specialized knowledge can "help the trier of fact to understand the evidence or to determine a fact in issue," as Rule 702 requires. Fed. R. Evid. 702(a).

*United States v. Brown*, 871 F.3d 532, 537 (7th Cir. 2017); *see also Cazares v. Frugoli*, No. 13 CV 5626, 2017 WL 4150719, at *6 (N.D. Ill. Sept. 19, 2017) (Kendall, J.) (citing *Brown*, at *6 for the proposition that *Thompson* did not hold that "police policies, including expert testimony, [were] *per se* inadmissible."). And, while the Seventh Circuit noted that "purely localized police

21

procedure is less likely to be helpful than nationally or widely used policy," it did not create a bar to such evidence but rather explained that it was in the trial court's discretion to determine if the testimony would assist the trier of fact. *Brown*, 871 F.3d at 538; *id.* at 537 ("[I]f it's standard practice across the country to train officers to handle a given situation in a particular way, expert testimony about that training might aid a jury tasked with evaluating the conduct of an officer in that specific situation. The legal standard contemplates a reasonable officer, not a reasonable person, so it may be useful in a particular case to know how officers typically act in like cases.").

Additionally, *Thompson* was decided prior to the Seventh Circuit's decision in *Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013), in which it made clear that in constitutional tort cases, expert testimony regarding defendants' departure from accepted police practices is relevant to proving intent:

> In constitutional tort cases, expert testimony regarding sound professional standards governing a defendant's actions can be relevant and helpful. Liability for constitutional torts is more limited in scope than common law tort liability. Negligence is not sufficient. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Expert testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to constitutional rights.

*Id.* at 721–22. The Seventh Circuit upheld admission of the plaintiff's police practice expert's testimony regarding "the steps a reasonable police investigator would have taken to solve the Morro murder, as well as the information that a reasonable police investigator would have taken into account as the investigation progressed." *Id.* at 722. The court concluded that "McCrary's testimony thus would have helped the jury conclude that the departures from reasonable police practices were so important, severe, and numerous that they supported an inference that Bogucki acted deliberately to violate Jimenez's rights." *Id.* While the *Jimenez* decision did not specifically address admission of CPD General Order because that trial included a *Monell* claim and CPD

22

policies and practices were admitted into evidence, the analysis of *Jimenez* about the relevance of departures from accepted practices—along with *Brown's* clarification that *Thompson* did not create a *per se* bar to their admission—supports a more nuanced analysis of when admission would be appropriate.

Here, Plaintiffs seek to introduce expert testimony about Chicago police practices, including what general police standards are and how Defendants deviated from those standards. Defendants are correct that those deviations are not automatically unconstitutional but could be relevant to show the Defendants' practice of covering up for their fellow officers, or their knowledge or plan to commit other misconduct. The fact that a violation of the usual practices for creating police reports does not by itself conclusively prove a constitutional violation does not justify an order barring the subject entirely. Indeed, courts in this district have grappled with this same issue and some have determined that such evidence is admissible. *See, e.g., Montanez v. Fico*, No. 10 C 4708, 2012 WL 2129396, at *9 (N.D. Ill. June 11, 2012) ("[T]he parties accepted this Court's proposal to allow witnesses to be questioned about [CPD] general orders, rules and regulations that are sufficiently related to the issue of excessive force, including the Use of Force Model, as long as they will not be admitted into evidence and the jury will be given limiting instruction 7.04."); *Jones v. Walters*, No. 12-cv-5283, 2016 WL 1756908, at *8 (N.D. Ill. Apr. 29, 2016) (explaining that evidence of a violation of a police department rule "may be relevant" for some purposes, including "to prove state law claims" or punitive damages); *Holmes v. City of Chicago*, No. 09-CV-2481, 2016 WL 6442117, at *11 (N.D. Ill. Nov. 1, 2016) ("[A]ny alleged violation of a particular general order is not relevant, as it sheds no light on whether Defendant violated Plaintiff's constitutional rights. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (the text of a specific CPD General Order regarding the use of force was not

23

relevant in determining whether the officer violated the plaintiff's Fourth Amendment rights by using excessive force). However, the parties may still argue generally about training and practices without referring directly to specific orders, as Defendant concedes that how officers are trained can be relevant to what a reasonable officer would have done, which goes to the issue of whether there was probable cause. . . the parties are permitted to elicit relevant testimony about training and practices in general."); *Bruce v. City of Chicago*, No. 09 C 4837, 2011 WL 3471074, at *3 (N.D. Ill. July 29, 2011) ("The Court reserves its decision as to any such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances not foreclosed by *Thompson* [*v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006)] and *Morton* [*v. City of Chicago*, 286 Ill. App. 3d 444 (1997)]."); *Christmas v. City of Chicago*, 691 F.Supp.2d 811, 818 (N.D. Ill. 2010) ("However, if developments at trial make evidence about police department rules and regulations relevant to an issue other than the plaintiffs' constitutional rights, the court will address at that time whether the proffered evidence is admissible."); *Richman v. Sheahan*, 415 F. Supp. 2d 929, 951 (N.D. Ill. 2006) ("The opinions that the defendants' conduct was within the appropriate Illinois statute and that the guidelines mirror Illinois law present a closer question. In terms, they certainly appear to be legal conclusions and moreover, require an expertise that Mr. Johnson does not have. It will be for Judge Gottschall to determine and to instruct the jury on the provisions of Illinois law. However, an expert may identify the standard of care upon which their opinions are based subject to the court's control if they are stated erroneously or inadequately. This principle is broad enough to allow Mr. Johnson to explain to the jury that the professional standards conform to relevant law, so long as the court concludes that there is indeed a match."); *Cazares*, No. 13 CV 5626, 2017

24

WL 4150719, at *7 (deferring for trial the admissibility of "CPD General Orders and Rules of Conduct during cross" examination).

Moreover, to the extent that Defendants intend to put on testimony or evidence that their conduct was proper or open the door by testifying that their conduct was consistent with their training or the CPD's orders and regulations, Plaintiffs should be permitted to demonstrate the ways in which their conduct departed from those same rules and regulations. *See also Holmes*, 2016 WL 6442117, at *11 (admitting generalized testimony of officers' training and practices as relevant to whether officers acted reasonably in false arrest and malicious prosecution case). While Plaintiffs intend to focus their police practices experts' standards on the national standards of police practices, CPD's General Orders are relevant and admissible and should not be per se barred. Accordingly, Plaintiffs should be permitted from proffering evidence regarding the internal policies that Defendants deviated from in support of their claims.

## XX. Response to Defendants' MIL No. 21 to Bar Evidence or Argument that Antonio Shaw's Confession Was Fabricated

Defendants seek to bar Plaintiffs from basing their fabrication claim on evidence that Shaw's confession was fabricated, because Shaw's confession was not admitted against them. Plaintiffs agree they cannot base their fabrication claim solely on Shaw's fabricated confession. Plaintiffs wish to clarify, however, that they can certainly introduce evidence that Defendants fabricated Shaw's confession as evidence that their own confessions were fabricated. Simply because they do not have a freestanding legal claim based on Shaw's confession does not render evidence relating to Shaw inadmissible. *See Robinson v. Village of Matteson*, 1999 WL 1270685, at *2 (N.D. Ill. Dec. 23, 1999) (admitting evidence of how the plaintiff was treated, despite the fact that the evidence had been unsuccessfully used to support independent claims against

25

defendants, because "the dismissal of a claim for relief under § 1983 does not mean that all evidence which formed the basis for such a claim is inadmissible").

**XXI.    Response to Defendants' MIL No. 22 to Bar All References to Police Officers Not Making Electronic Recordings of Interviews**

Defendants argue that Plaintiffs should be barred from making any reference to the fact that Plaintiffs' interrogations were not recorded. Such references should be barred, Defendants contend, because Defendants were not legally required to record interrogations in March 2003. But this argument has no basis in law and should be rejected. The fact that Defendants were not legally required to do something does not automatically render their failure to do it inadmissible, and Defendants have cited no authority to the contrary.

Unquestionably, Defendants could have recorded the interrogations. The technology to do so existed and no law or regulation that Defendants have identified prevented them from recording. And, in fact, they *did* record the inculpatory statement of Anthony Mitchell but did not record what came before it. Plaintiffs thus should be permitted to point out to the jury that the recording of Anthony Mitchell's "confession" is the only recording that Defendants chose to make while Plaintiffs were in their custody. Defendants will them be free to counter that they were not legally required to record the interrogations.

To be clear, Plaintiffs will not and could not argue that the failure to record the interrogations itself creates liability for Defendants. But the jury in this case will be left to decide what happened in those interrogations based on the testimony of those present during them, and Plaintiffs should not be barred from arguing that the reason they must rely on testimony is that Defendants chose to record selectively. This argument would be available to Plaintiffs even if Illinois had never passed a law requiring recording, and Defendants have offered no rationale for

26

barring the argument simply because Illinois ultimately did pass such a law. The motion should be denied.

### XXII. Response to Defendants' MIL No. 23 to Bar Reference to How the City of Chicago Trains, Disciplines, Monitors, or Controls Police Officers

Defendants seek to bar all reference to how the City of Chicago trains, disciplines, monitors, or controls its police officers on the basis that the Monell claims are bifurcated. However, as mentioned above, the City of Chicago is still a defendant in this case.

Defendants' motion should be denied and has been rejected by other courts. *See, e.g.*, *Holmes v. City of Chicago*, No. 09-CV-2481, 2016 WL 6442117, at *11 (N.D. Ill. Nov. 1, 2016) ("[A]ny alleged violation of a particular general order is not relevant, as it sheds no light on whether Defendant violated Plaintiff's constitutional rights. *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (the text of a specific CPD General Order regarding the use of force was not relevant in determining whether the officer violated the plaintiff's Fourth Amendment rights by using excessive force). However, the parties may still argue generally about training and practices without referring directly to specific orders, as Defendant concedes that how officers are trained can be relevant to what a reasonable officer would have done, which goes to the issue of whether there was probable cause. . . the parties are permitted to elicit relevant testimony about training and practices in general.").

In *Holmes v. City of Chicago*, No. 09-CV-2481, 2016 WL 6442117 (N.D. Ill. Nov. 1, 2016), Judge Dow denied this same motion *in limine* in a case in which he had bifurcated the plaintiff's *Monell* claim from false arrest and malicious prosecution claims. Judge Dow determined that the defendants' training was relevant evidence of whether they had acted reasonably in arresting the plaintiff. *Id.* at *2 & *19. In so doing, Judge Dow observed that bifurcation had resulted in certain complications:

The Court is cognizant of the complications arising from the bifurcation of the *Monell* claim. The Court agrees with Defendant that the jury should not be informed that there is a parallel *Monell* claim against the City, as that would cause confusion about what the jury's role is in the case at hand. However, Plaintiff is permitted to elicit testimony about how Defendant and her fellow officers set up the prostitution sting operation and whether their actions and decisions about the location of the operation and other details are consistent with their understanding of the department's policies and their own training as police officers. As noted above, Defendant acknowledges that how officers are trained can be relevant to what a reasonable officer would have done, which goes to the issue of whether there was probable cause. Thus, Plaintiff can offer evidence of Defendant's training or lack of formal training in prostitution arrests, and Defendant can challenge this evidence on cross-examination.

*Id.* at *19. The same analysis applies here. Plaintiffs should be permitted to elicit testimony from Defendants regarding their training with respect to report writing and what information they were trained to include in their reports, how they were trained to collect physical evidence and document a chain of custody and their training regarding custodial interrogations. Defendants' training on these specific issues bears directly on Plaintiffs' claims and is not excluded simply because there will be no *Monell* claim tried herein. For the reasons stated herein as well as those set forth in response to Defendants' motion *in limine* No. 20, Defendants' motion *in limine* No. 23 should be denied.

**CONCLUSION**

For all of the foregoing reasons, the Court should rule on the Individual City Defendants' omnibus MILs in conformity with Plaintiffs' positions as detailed above.

28

Respectfully submitted,

**PLAINTIFF JOHN FULTON**
**PLAINTIFF ANTHONY MITCHELL**

BY: /s/ Russell Ainsworth
One of Plaintiffs' Attorneys

Arthur Loevy
Jon Loevy
Russell Ainsworth
Julia Rickert
Fatima Ladha
LOEVY & LOEVY
311 N. Aberdeen Street
Chicago, IL 60607
312-243-5900
russell@loevy.com

Andrea D. Lyon
LYON LAW
53 W. Jackson Blvd., Ste. 1650
Chicago, IL 60604
312-877-5543
andrea@andrealyon.com

## CERTIFICATE OF SERVICE

I, Russell Ainsworth, an attorney, hereby certify that on January 8, 2024, I served the

foregoing document to be served on all counsel of record by using the Court's CM/ECF system.

/s/ Russell Ainsworth

29