**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 C 1028 |
| *Plaintiff*, | ) | |
| | ) | Hon. Steven C. Seeger, |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFF'S TRIAL BRIEF**

Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Alyssa Martinez
Annalise Wagner
**LOEVY & LOEVY**
311 N. Aberdeen St.
Chicago, IL 60607
312-243-5902
jon@loevy.com

Plaintiff files this Trial Brief to raise four points for the Court's consideration.

### A.  Guevara's Fifth Amendment Assertion

This is an unusual trial in an important respect. Plaintiff accuses the main Defendant (Reynaldo Guevara) of extremely serious misconduct: intentionally framing him for a crime he did not commit. What makes the case unique is that Guevara does not deny any of it. When asked at trial if he did what is alleged, Guevara will decline to dispute it.

To be clear, every defendant would be thrilled to be able to opt out of the obligation to answer any questions during discovery. And many would very much prefer not to have answer uncomfortable trial questions under oath. The system generally does not permit that luxury.

With one exception. If a truthful answer to question would genuinely subject a defendant to criminal liability, he has a constitutional right not to incriminate himself, and is permitted to assert a privilege. This is not a formality. If Guevara admitted to framing more than forty innocent men and women, he could go to prison. Notorious Chicago Police Officer Jon Burge, for example, once answered questions in a Section 1983 case, and was then prosecuted (and convicted) for perjury for denying the abuse the plaintiff alleged, which the prosecutors proceeded to prove at a trial before Judge Lefkow by calling Burge-abused witnesses.

Like all defendants, Guevara has choices here. No one is forcing him to do anything. He faces personal exposure for punitive damages, and is perfectly free to deny framing Plaintiff. He has instead made the calculation that his penal interests trump his financial interests, and that he is better off not denying what is alleged.

As discussed at length in the parties' motions in limine, where a defendant in a civil case (unlike a criminal one) asserts a privilege on the grounds that a truthful answer to questioning could subject him to criminal liability, familiar law permits the jury to draw an adverse inference from his silence. That much is not even disputed, and already addressed in the motions in limine. The purpose of mentioning

it here is to urge the Court to keep a tight leash on how this plays out.

If everyone plays it straight, it might well be very hard for the defense to win a trial where the main Defendant does not deny the main accusations. Judges generally tend to have an instinct for a "fair fight" where everyone has an even chance to win. Plaintiff submits that the Court should not bail out Guevara for his own choices by permitting him more indulgence than he is due.

Specifically, instead of settling the case,[1] defense counsel apparently aspires to mitigate the sting of Guevara's privilege assertion by suggesting to the jury (or at least hinting) that Guevara may be asserting the Fifth for other legitimate reasons unrelated to the fear that the truth would be incriminating. One can hardly fault defense counsel for wishing that were permissible. But it is not. There is one, and only one, legitimate justification for asserting this privilege. The witness must have a well-grounded fear that the truth will subject him to criminal prosecution.

If Guevara's counsel does nonetheless try to somehow offer the jury (directly or indirectly) an explanation for Guevara's assertion other than that sole permissible justification, it should not be permitted. If counsel does do it (as happened recently at the *Rios* trial, without objection), then Plaintiff should have the opportunity to respond and cross-examine. For example, if defense counsel suggests that Guevara is asserting the privilege only because his criminal defense attorney advised him to do so, then the door is open; Plaintiff must be entitled to cross-examine Guevara about what that advice was, including admitting that he was advised that telling the truth about his abuse would realistically trigger a prosecution given the massive amount of evidence available. If Defendants do not want Plaintiff to

---

[1] One might think the City would try to settle where the main Defendant is not denying the misconduct, particularly given the size of recent jury verdicts, but negotiations have broken down over a fairly small delta that the City refuses to bridge. It is certainly the City's prerogative to draw a line in the sand, and no one is suggesting otherwise. But the City cannot also expect this Court to mitigate its risks of proceeding by bending the law to benefit the City in order to better level the field. The City is going to trial with its eyes open to what the law means for its defense.

probe the nature of the attorney-client advice he received, they should not assert attorney device as part of their defense.

In summary, the defense undeniably has a huge problem in defending this case, but that reality should not lead the Court to improperly allow defense counsel to try to explain away Guevara's refusal to deny the misconduct in a manner that distorts the law.

### B. Guevara's Prior Pattern of Misconduct

As argued in the motions in limine, the law plainly allows at least some Rule 404(b) pattern evidence here. Over a period of many years, Guevara did the same types of improper things, over and over again, to dozens of powerless suspects during interrogations. The testimony is undeniably powerful, and it is admissible, not to show a propensity to commit misconduct, but instead for permissible purposes under Federal Rule of Evidence 404(b). As the Court will see, defense counsel is going to imply or argue to the jury that what is alleged here did not happen, never could happen, and never would happen. According to the defense, there were too many good police and assistant State's Attorneys part of the process to get away with brow-beating suspects into confessing. The allegations of outright abuse in a police station, their story will go, is too fanciful and counter-intuitive to be believed. The truth, however, is that what happened here happened because it was allowed to happen, and it was no mistake, accident, or one-off aberration. In fact, the misconduct here was Guevara's modus operandi. The law permits the admission of his Guevara's acts so long as propensity is not the reason that it is offered, even if it is damaging to one side.

Again, Plaintiff urges the Court not to save Defendants from themselves just because it makes the case harder for them to win. The case is harder to win because the evidence is bad for the Defendants, not because the evidence is inadmissible. The proper way to meet damaging but admissible evidence is to beat it, or to resolve the case, not to try to bar it on the grounds not recognized by the

3

law.

As a practical matter, Plaintiff is sensitive to the logistics. As described in accompanying filings, he would seek to call at most two Rule 404(b) witnesses live. The real action is in the cross-examination of Guevara. Because Guevara is not even denying the well-documented Rule 404(b) allegations it will take very little trial time to introduce this evidence through adverse questioning.

### C. The *Rios* Trial

There have now been three Guevara wrongful conviction trials, the most recent being *Rios* before Judge Daniel. Undersigned Plaintiff's counsel tried the first two, before Judges Grady and Gotschall. *See Johnson v. Guevera,* No. 20 C 2156, and *Rivera v. Guevera,* No. 12 C 2488.

The Court asked the parties if there was anything they wished to say about anything, and Plaintiff wishes to say this. From their perspective, the *Rios* trial was prosecuted by an inexperienced attorney who did not raise many of the arguments that should have been raised. Judge Daniel, therefore, ruled on myriad issues without the benefit of an effective advocate making the necessary arguments.[2] In that respect, rulings from *Johnson* and *Rivera* are much more relevant to this Court, because both sides were represented at those trials by experienced counsel, not just the defense.

### D. Circumstances Around The Certificate of Innocence

Just about every judge in this District to have considered the question (including Judge Daniel in *Rios,* and the Seventh Circuit in *Patrick)* has permitted introduction of the fact that a Certificate of Innocence (COI) has been granted as probative to the issues on trial.

---

[2] In some ways, the *Rios* trial became a fiasco, with defense counsel making extreme arguments that went unchallenged, such as *, e.g.,* arguing without objection that State's Attorney Kim Foxx had "blood on her hands" for granting the Certificate of Innocence.

As with Guevara's Fifth Amendment assertion, a COI undoubtedly makes it harder for the Defendants to win. The defense is trying a wrongful conviction case where Plaintiff was first found guilty, but later adjudicated innocent. However, the Defendants do not want to settle, and they obviously have to put on a defense. But the defense has to be legally permissible. The fact that the evidence is unfavorable is no license to be more creative than the Federal Rules allow.

At the *Rios* trial, for example -- unlike at *Johnson, Rivera,* or any other trial Plaintiff's counsel is aware of -- the plaintiff's attorney did not object to the City's efforts to litigate *why* the COI was granted. Witnesses were permitted to speculate, for example, about the motives of the then-State's Attorney and her office.

That should not be allowed at this trial. It is not probative, or admissible, and it is unfairly prejudicial and will confuse the jury. If a criminal jury acquits, for example, the *fact of* the acquittal is what comes in at the civil trial. The jurors who acquitted do not testify about *why* they did what they did (much less speculation by other witnesses on that question). The same is true for the COI.

Alternatively, if the Court is going to allow the Defendants to talk about the circumstances leading up to the COI being granted, then it would have to be a two-way street. During discovery, Defendants (desperate to have something to say) fixated on the circumstances by which the SAO the came to reverse its position on the COI. If testimony about that is permitted over Plaintiff's objection, Plaintiff would meet it by pointing out that Guevara's record of framing people was part of the calculation too. In Plaintiff's view, it all should be left at the fact of the COI was granted.

Respectfully submitted,

Jon Loevy
*One of Reyes's attorneys*

5