**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

| | |
|---|---|
| ARTURO De LEON-REYES, | ) |
| | ) |
| *Petitioner,* | ) |
| | ) |
| v. | )   No. 98 CR 12440-02 |
| | ) |
| STATE OF ILLINOIS | ) |
| | ) |
| *Respondent.* | ) |

**NOTICE OF FILING**

TO:   Attorney General
State of Illinois
100 W. Randolph Street
Chicago, IL 60601

Assistant State's Attorney
Cook County State's Attorney's Office
2650 S. California Avenue
Chicago, IL 60608

Please take notice that on January 20, 2022, I caused to be filed with the Clerk of the Circuit Court of Cook County, 2650 S. California Avenue, Chicago, IL 60608, the original of the attached MOTION FOR SUMMARY JUDGMENT ON PETITION FOR CERTIFICATE OF INNOCENCE, a copy of which is hereby served upon you.

Dated: January 20, 2022

Respectfully Submitted,

Rachel Brady
*Attorney for Arturo De Leon-Reyes*

Loevy & Loevy
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900
brady@loevy.com

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

| | | |
|---|---|---|
| ARTURO De LEON-REYES, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| v. | ) | **No. 98 CR 12440-02** |
| | ) | |
| STATE OF ILLINOIS | ) | |
| | ) | |
| *Respondent.* | ) | |

---

**MOTION FOR SUMMARY JUDGMENT ON PETITION FOR CERTIFICATE OF
INNOCENCE PURSUANT TO 735 ILCS 5/2-702**

---

Jon Loevy
Anand Swaminathan
Steven Art
Sean Starr
Rachel Brady
Loevy & Loevy
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900
anand@loevy.com

*Counsel for Petitioner Arturo De Leon Reyes*

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND...................................................................1

I.     UNDISPUTED FACTS .......................................................................3

II.    LEGAL STANDARD .........................................................................9

III.   MR. REYES HAS PRESENTED EVIDENCE OF INNOCENCE ...........................10

IV.   THERE IS NO EVIDENCE OF MR. REYES'S GUILT...........................................12

       A.    This Court Can Consider Only Sworn Testimony or Evidence that Was Admitted in Underlying Criminal Proceedings in Evaluating the State's Opposition, and Cannot Consider Suppressed Statements.............................13

            1.    Law of the Case and Equitable Principles Preclude this Court from Considering the False, Coerced Statements.................................................13

            2.    This Court Cannot Consider Hearsay about Ms. Mejia............................14

       B.    The Only Other Evidence the State Can Possibly Try to Rely on Does Not Make a *Prima Facie* Case of Guilt of the Offenses Charged in the Indictment.................................................................................... 15

            1.    Any evidence discussing Mr. Reyes's alleged presence at the crime scene does not establish that he is not innocent of the factual theory of the offenses detailed in the indictment. ...........................................16

            2.    To the extent this Court does consider tortured and involuntary statements, it should afford them no weight.................................................18

       C.    A Preponderance of the Evidence Establishes that Mr. Reyes is Innocent ....20

V.    MR. REYES SATISFIES THE OTHER STATUTORY REQUIREMENTS TO RECEIVE A CERTIFICATE OF INNOCENCE. .........................................................21

CONCLUSION .................................................................................22

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CRIMINAL DIVISION**

| | | |
|---|---|---|
| **ARTURO De LEON-REYES,** | ) | |
| | ) | |
| *Petitioner,* | ) | |
| v. | ) | **No. 98 CR 12440-02** |
| | ) | |
| **STATE OF ILLINOIS** | ) | |
| | ) | |
| *Respondent.* | ) | |

**MOTION FOR SUMMARY JUDGMENT ON PETITION FOR**
**CERTIFICATE OF INNOCENCE PURSUANT TO 735 ILCS 5/2-702**

Petitioner, ARTURO DeLEON- REYES, by his attorneys LOEVY & LOEVY, respectfully petitions this Court to enter an order granting him a certificate of innocence pursuant to 735 ILCS 5/2-702. In support of this request, Petitioner states as follows:

**INTRODUCTION AND BACKGROUND**

Arturo De Leon-Reyes spent nearly 18 years in prison for a crime he did not commit. On December 21, 2017, Mr. Reyes's conviction was vacated and he was released from prison. The State's case against Mr. Reyes at his criminal trial in 2000 was based exclusively on his false, fabricated, and involuntary inculpatory statement, which the court suppressed during post-conviction proceedings. Without the confession, the State had no evidence against Mr. Reyes, and declined to retry him. Indeed, there was never a shred of physical or other evidence implicating Mr. Reyes in the crime, and DNA evidence, as well as sworn testimony, shows that he is innocent. Mr. Reyes now seeks a certificate from this Court acknowledging his innocence.

This case stems from the tragic stabbing murder of Mariano and Jacinta Soto, and the kidnapping of their infant daughter and three-year old son. As the narrative unfolded,

investigators learned that a woman named Adriana Mejia and her husband had been unable to conceive children, and that in the early morning hours of March 28, 1998, she stabbed the Sotos to death and kidnapped their young son and infant girl. She then claimed that she had given birth to the infant and was babysitting the boy. A few days after the murders, Mr. Reyes heard Mejia arguing with her husband and another roommate about the older child, and, fearing for the boy's safety, offered to bring him to the police station. Mr. Reyes, a roommate named Gabriel Solache, and Mejia's husband brought the boy to the police station, where they were immediately detained. They remained in custody for days, enduring physical and psychological abuse at the hands of disgraced Chicago Detective Reynaldo Guevara.

Despite his complete lack of knowledge about the crimes and wholesale innocence, Mr. Reyes succumbed to the pressure and agreed to sign a false statement, written in a language he did not understand, implicating himself in the murders and kidnapping. Guevara tortured Mr. Solache and Ms. Mejia until they agreed to implicate themselves in the murders and kidnappings, as well. Mr. Reyes and Mr. Solache were tried and convicted based only on those false inculpatory statements, and Ms. Mejia pleaded guilty.

Mr. Reyes and Mr. Solache tried for years to convince courts that their statements were false and coerced, and eventually succeeded after uncovering scores of evidence that Guevara had similarly tortured false confessions out of other suspects. Guevara pleaded his Fifth amendment right against self-incrimination in response to questions in post-conviction proceedings about his misconduct, and the trial court vacated Mr. Reyes and Mr. Solache's convictions, explaining that Guevara had told "bald faced lies" about this case and had "eliminated any possibility of [] being considered a credible witness in any proceeding." The State dismissed the charges against Mr. Solache and Mr. Reyes, and after nearly two decades of

2

wrongful incarceration, they were finally free. Mr. Reyes petitioned this Court for a certificate of innocence, and now moves this Court to grant his petition because the undisputed facts establish that he is innocent as a matter of law.

## I.     UNDISPUTED FACTS[1]

1.     Mr. Reyes was convicted of two counts of first-degree principal murder by stabbing Mariano Soto and Jacinta Soto with a knife; one count of home invasion for entering the dwelling place of Mariano Soto…knowing "that one or more persons were present therein and while armed with a dangerous weapon, to wit: a knife" and "used force upon Mariano Soto"; and two counts of aggravated kidnapping for knowingly and secretly confining Santiago Soto and Maria Soto. *See* Ex. 1 (Amended Mittimus); Ex. 2 (Counts 1, 3, 17, 23, 25). Those convictions have been vacated. Ex. 3 (Order Vacating Convictions).

2.     Mr. Solache was convicted of the same crimes, and his convictions were also vacated. Ex. 3 (Order Vacating Convictions).

3.     Mr. Reyes and Mr. Solache made contemporaneous outcries in 1998 that their false inculpatory statements were the product of physical and psychological coercion by Detective Guevara, and that statements themselves are false.

4.     In his pretrial and trial testimony, and every opportunity since, Mr. Reyes has testified that he is entirely innocent of the crimes. For instance, he has consistently testified that he never left the house on the night the Sotos were killed; did not offer to help Ms. Mejia steal a baby; did not know she was pretending to be pregnant; never told Ms. Mejia that he found a baby for her; was not involved in kidnapping any children; and was not involved in any deaths. Ex. 4 (Reyes 2000 Supp. Hrg. Testimony) at 643, 655-656, 660, 746-48; Ex. 5 (Reyes Trial

---

[1] If this Court concludes that disputed issues of fact preclude summary judgment, Mr. Reyes intends to proceed with a hearing.

Testimony) at 2134-36, 2044, 2051, 2055, 2069-71; Ex. 6 (E. Hearing) at 14-18, 20-21, 23, 25-27.[2] In other words, Mr. Reyes has always disavowed all knowledge of and participation in the kidnappings and murders. He has also always maintained that he agreed to sign an inculpatory statement only because Detective Guevara beat him; and further, that he did not provide the facts about the crime that were included in the confession. Ex. 14 (ROP) at 643, 655-656, 660, 746-48, 2134-36, 2044, 2051, 2055, 2069-71[3]; Ex. 6 (E. Hearing) at 14-18, 20-21, 23, 25-27.

5.      Indeed, Mr. Reyes has consistently maintained that he did not understand the substance of his "confession," and that he agreed to sign the false inculpatory statement only after extreme sleep deprivation and 40 hours of physical and psychological abuse by Guevara. In addition, the statement he signed was handwritten in English, a language he could not read or understand. The details of Mr. Reyes's abuse and coercion are listed in his Petition at ¶¶ 33-46.

6.      Mr. Solache has also consistently testified about similar abuse and coercion during the suppression hearing. Ex. 7 (Solache Record Excerpts) at 716, 722-23, 746, 852, 909, 2051-52, 2055, 2066; Ex. 8 (S. Hearing) at 46-52, 54.[4] The details of the abuse and coercion Mr. Solache endured are detailed in Mr. Reyes's Petition at ¶ 48.

7.      The only evidence introduced at Mr. Reyes's trial implicating him in the crime is the handwritten statement he signed, and Detective Guevara's testimony. *See* Ex. 14 (ROP) at 1273-2277.

---

[2] A transcript of the relevant evidentiary hearing testimony is included on a disk as Exhibit 4, and referred to herein as "E. Hearing." The page numbers in the E. Hearing are at the bottom of each page with the prefix E. Hearing COMBINED.

[3] The complete trial record is included on a disk as Exhibit 14, and referred to herein as "ROP." The page numbers in the ROP are in the bottom footer and do not have a prefix.

[4] A transcript of the relevant suppression hearing testimony is included on a disk as Exhibit 8, and referred to herein as "S. Hearing." The page numbers in the S. Hearing are at the top of each page with the prefix S. Hearing COMBINED.

8. Mr. Reyes and Mr. Solache's false inculpatory statements have been suppressed in the underlying criminal proceedings. Ex. 6 (E. Hearing) at 302.

9. For years after they were convicted, Mr. Reyes and Mr. Solache petitioned courts for relief. On June 13, 2008, Mr. Reyes and Mr. Solache filed amended petitions for post-conviction relief, presenting evidence that Guevara had used similar abusive and coercive tactics in many other instances. The post-conviction court determined that a third-stage evidentiary hearing was warranted on their claims that newly discovered evidence indicated that Detective Guevara engaged in abuse and coercion in other instances, indicating that the confessions of Mr. Reyes and Mr. Solache were involuntary and procured through abuse and coercion. Ex. 9 (Order on Post-Conviction Petition).

10. In post-conviction proceedings, the trial court wrote in an order granting Reyes and Solache's motions for new suppression hearings: "After reviewing the evidence in third stage evidentiary proceedings, it is abundantly clear that, the uncontradicted accounts of these specific interactions entailing abuse, coercion and improper influence in addition to the negative inference drawn from Det. Guevara's assertion of his 5th amendment privilege against self-incrimination lend credence to petitioners' allegations of abuse and coercion." Ex. 9 (Order on Post-Conviction Petition) at 35.

11. In the evidentiary hearing, in response to questions about whether he physically abused Mr. Reyes during his interrogation, Detective Guevara invoked his Fifth Amendment right not to incriminate himself. *See* Ex. 8 (S. Hearing) at 227-228. After being granted immunity, Guevara then denied abusing Mr. Reyes and Mr. Solache. Evaluating that testimony, Cook County Judge James Obbish said that Guevara had told "bald face lies" and further stated

that Guevara had "eliminated any possibility of [] being considered a credible witness in any proceeding." Ex. 8 (S. Hearing) at 300-301.

12. On December 13, 2017, Judge Obbish granted Mr. Reyes's motion to suppress his confession. Ex. 6 (E. Hearing) at 302.

13. On December 21, 2017, without the false and coerced confession, Mr. Reyes's judgment of conviction was vacated, the State dismissed all charges, and Mr. Reyes was released from prison.

14. Judge Obbish ordered the same relief for Mr. Solache. *See* Ex. 3 (Order Vacating Conviction).

15. Illinois Appellate Courts have on numerous occasions acknowledged that Guevara engaged in a pattern of investigative misconduct similar to that long-alleged by Mr. Reyes and Mr. Solache. *See, e.g., People v. John Martinez*, 2021 IL App (1st) 190490 at ¶ 80 ("Detective Guevara is a malignant blight on the Chicago Police Department and the judicial system"); *People v. Serrano*, 2016 IL App (1st) 133493, generally & at ¶¶35-36; *People v. Montanez*, 2016 IL App (1st) 133726, generally & at ¶¶36-37; *People v. Almodovar*, 2013 IL App (1st) 101476; *People v. Ricardo Rodriguez*, 2021 IL App (1st) 200173, at ¶51; *People v. Ariel Gomez*, 2021 IL App (1st) 192020, at ¶58.

16. The State does not dispute that Guevara has a history of committing misconduct in homicide investigations. *Martinez*, 2021 IL App (1st) 190490 at ¶ 64 ("The State does not dispute that Detective Guevara has a history of misconduct. Nor could it…."); Ex. 11 (Order in *People v. Demetrius Johnson*, 91 CR 19833(01)); Ex. 12 (Transcript from *People v. Munoz*, 85 CR 12403(01)) at 93, 103.

6

17. Evidence from the crime scene, car, and clothing, that does not belong to the victims, matches Ms. Mejia and an unidentified person. No DNA or physical evidence has ever tied Mr. Reyes or Mr. Solache to the crime. Their DNA was not present on any of the items tested, and their fingerprints were not found at the scene. Mr. Reyes's shoes were confiscated during his interrogation, but no blood was found on them. Ex. 14 (ROP) at 1377-83, 1553-64, 1570, 2054; Ex. 13 (Report of Dr. Karl Reich) at 4-8.

18. Ms. Mejia has asserted that the inculpatory statement she signed, which falsely implicates Mr. Reyes and Mr. Solache as her accomplices, was the result of physical and psychological abuse and coercion by Detective Guevara. *See, e.g.,* Ex. 14 (ROP) at 643, 655-656, 660, 746-48, 958, 1917, 2134-36, 2044, 2051-52, 2055, 2066, 2069-71, 2084; Ex. 6 (E. Hearing) at 14-18, 20-21, 23, 25-27.

19. Substantial physical evidence linked Ms. Mejia to the crime. Among other things, her DNA was found on the knife recovered from behind the couch in the Soto apartment and on the green towel that was recovered from the car that the prosecution believed was used in the crime. Further, Mariano Soto's blood was found on Ms. Mejia's shoes and pants. Ex. 14 (ROP) at 1544-49, 1564-65.

20. After Mr. Reyes's conviction, DNA testing was performed on the physical evidence recovered from the crime scene; the testing excluded Mr. Reyes and instead revealed the presence of the DNA profile of an unidentified person. Ex. 13 (Report of Dr. Karl Reich).

21. Mr. Reyes has been excluded as a contributor to the DNA at the crime scene. Ex. 13 (Report of Dr. Karl Reich).

22. The only evidence admitted at trial regarding Mr. Reyes's involvement in the crimes was the confessions themselves—which were suppressed based on physical abuse—and

7

Guevara's testimony about those confessions—which Judge Obbish found to be thoroughly not credible. Ex. 14 (Entire Trial Tx.); Ex. 15 (Mejia June 2019 Dep.); Ex. 8 (S. Hearing) at 296-302.

23.     The only other sworn testimony or evidence that exists about the crimes comes from Ms. Mejia. Ms. Mejia has testified four times in connection with these cases: the March 2000 suppression hearing, and three civil depositions related to Mr. Solache and Mr. Reyes's civil cases. Ex. 14 (ROP) at 951- 88, 2582-2633; Ex. 15 (Mejia June 2019 Dep.); Ex. 16 (Mejia Oct. 2019 Dep.); Ex. 17 (Mejia Feb. 2021 Dep.).

24.     Ms. Mejia has never testified that Mr. Reyes participated in planning a murder or kidnapping; had any beforehand knowledge that a murder and kidnapping would occur; had a weapon, participated in the homicide, or took any affirmative step to take either Soto child.[5] Ex. 14 (ROP) at 951-88, 2582-2633; Ex. 15 (Mejia June 2019 Dep.); Ex. 16 (Mejia Oct. 2019 Dep.); Ex. 17 (Mejia Feb. 2021 Dep.).

25.     Ms. Mejia testified at her deposition that Mr. Reyes did not participate in the murder of Mr. or Mrs. Soto, did not participate in planning the murders or kidnapping, and did not know that she was faking her pregnancy. Ex. 17 (Mejia Feb. 2021 Dep.) at 11, 21, 22, 24, 56, 96.

26.     Ms. Mejia also testified that Mr. Reyes was unexpectedly in the car when she was picked up to go to the Sotos' home, but he arrived at the apartment after Mr. Solache and Ms.

---

[5] The State says in its response to Reyes's COI petition that Mejia testified as a witness for codefendant Solache that Mr. Reyes participated in the murders. This is patently false. The transcript the State cites to support its statement says nothing of the sort. She has never given a shred of sworn or admissible testimony suggesting that Mr. Reyes committed the murders.

Mejia, did not know about the murders until they had occurred, and did not have a knife. Ex. 17 (Mejia Feb. 2021 Dep.) at 27, 56, 96, 112, 176.

27.     Ultimately, Ms. Mejia testified that Mr. Reyes is innocent of the murders. Ex. 17 (Mejia Feb. 2021 Dep.) at 98.

## II.     LEGAL STANDARD

To receive a certificate of innocence, Mr. Reyes must show by a preponderance of the evidence that he is innocent of the specific factual theory of the crimes of conviction enumerated in the indictment. 735 ILCS 5/2-702(g)(3); *People v. Palmer*, 2021 IL 125621, ¶¶ 64, 72, 78. He must also show by a preponderance of the evidence that he was convicted of one or more felonies, was sentenced to a term of imprisonment, and has served all or any part of the sentence, 735 ILCS 5/2-702(g)(1); the judgment of conviction was reversed or vacated and the charges were subsequently dismissed, *id.* § 5/2-702(g)(2)(A); and he did not by his own conduct voluntarily cause or bring about his conviction, *id.* § 5/2-702(g)(4).

The State may rely on evidence introduced during the underlying criminal proceedings and sworn testimony in its response. 735 ILCS 5/2-720(f); *Palmer*, 2021 IL 125621 at ¶67. Only once the State has presented evidence to establish the essential elements of the crimes of conviction may this Court begin weighing the evidence. *People v. Williams*, 2017 IL App (1st) 152021, ¶ 30 (Ill. 2017), reh'g denied (July 24, 2017), appeal denied, 93 N.E.3d 1068 (citing *Zannini v. Reliance Ins. Co. of Ill., Inc.*, 147 Ill. 2d 437, 448-49 (1992); *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42, 52 (2010).) If the State does not present evidence to establish the *prima facie* elements of the crimes of conviction, this Court must grant Mr. Reyes a certificate of innocence as a matter of law. *Cf. Tucker v. New York, C. & St. L.R. Co.*, 12 Ill. 2d 532, 534 (1957).

Applied here, Mr. Reyes must show innocence of stabbing Mariano and Jacinta Soto with a knife; entering Mariano Soto's home with a knife and using force upon Mr. Soto; and knowingly and secretly confining the Soto children. *See* Ex. 1 (Amended Mittimus); Ex. 2 (Counts 1, 3, 17, 23, 25). Mr. Reyes has presented evidence to establish his innocence, and the State can identify no admitted evidence or sworn testimony to the contrary. Thus, the undisputed facts in this case establish that Mr. Reyes is innocent of the factual offenses of which he was charged and convicted. This is what allows this Court to decide this petition as a matter of law rather than on the facts. Mr. Reyes is therefore entitled to a certificate of innocence as a matter of law.

### III. MR. REYES HAS PRESENTED EVIDENCE OF INNOCENCE

The substantial evidence of Mr. Reyes's innocence falls into two general categories: testimony and forensic evidence. As for the testimony: from the moment he was detained at the police station, Mr. Reyes has professed his innocence. He testified about his own innocence in his suppression hearing in March 2000, his criminal trial in June 2000, and his evidentiary hearing in 2013.[6] Thus, these repeated assertions are evidence of innocence, and this Court must consider them. *See People v. Caine*, Case No. 86 CR 6091 (Order, March 27, 2012); *see also People v. Fields*, 2011 IL App (1st) 100169, ¶ 19 (2011).

---

[6] These statements of innocence are corroborated by testimony from Mr. Reyes's coworker, Salvador Alivas, establishing that it would have been almost impossible for Mr. Reyes to have committed a violent double murder and double child abduction. Mr. Alivas drove Mr. Reyes home from work on the night of the murder. He testified that he left work in South Holland, Indiana (an approximate 40-minute drive from Mr. Reyes's apartment) with Mr. Reyes around 12:15 or 12:30 a.m. on the night of the killings, stopped at some stores, and then dropped Mr. Reyes off at his apartment; he also testified that when he picked up Mr. Reyes at 10:00 a.m. the next day, he was acting normally and did not appear tired. Ex. 14 (ROP) at 1903, 2033-34, 2121, 2125-26; 2419-25; *see also* Ex. 10 (Timesheets) (showing Mr. Reyes's long workdays the day of the crime and the day before).

Mr. Reyes also testified that when he learned the three-year old Soto boy was in danger, he accompanied Rosauro Mejia to bring the boy to the police station to ask for help. Ex. 6 (E. Hearing) at 52-53; Ex. 14 (ROP) at 2039-40, 2069-71. This, too, is evidence of innocence.

The other relevant testimony, as discussed above, comes from Detective Guevara, who pleaded the Fifth when asked whether he physically abused, coerced and framed Mr. Reyes.

Second, all available forensic evidence excludes him as a possible contributor to the DNA left all over the crime scene, and there has never been a shred of physical evidence connecting Mr. Reyes to the crime. Investigators conducted extensive forensic collection at the crime scene. *See generally* Ex. 13 (Report of Dr. Karl Reich). It is a tenet of forensic DNA science that "every contact leaves a trace." *Id.* at 8 (internal citation and quotation marks omitted). In a case where the victims were stabbed to death, the fact that the DNA points to Ms. Mejia and an unidentified perpetrator, yet none of the DNA left at the crime scene matches Mr. Reyes is powerful evidence of innocence. At a bare minimum, evidence of another likely perpetrator "is of such a conclusive character as to probably change the outcome at a retrial." *People v. Robinson*, 2020 IL 123849, ¶ 80. Illinois courts routinely grant certificates of innocence based on such undisputed DNA evidence. *See, e.g., People v. Patterson*, Case No. 02 CR 13473-01; *People v. Richardson*, Case No. 95 CR 09676 (Order, September 14, 2012); *People v. Saunders*, Case No. 95 CR 09676 (Order, September 14, 2012); *People v. Swift*, Case No. 95 CR 09676 (Order, September 14, 2012); *People v. Thames*, Case No. 95 CR 09676 (Order, September 14, 2012); *People v. Barr*, Case No. 95 CR 23475 (Order, April 17, 2012; *People v. Coleman*, Case No. 94 CR 1443301 (Agreed Order, March 8, 2018); *People v. Fulton*, Case No. 94 CR 1334402 (Agreed Order, March 9, 2018); *People v. Harden*, Case No. 92 CR 2247 (Order April 17, 2012); *People v. Rivera*, Case No. 92 CR 2751 (Order, May 15, 2013);

11

*People v. Carini*, Case No. 91 CF 2233 (Order, December 20, 2017); *People v. Gillard*, Case No. 81 CR 3979 (Agreed Order, August 27, 2009); *People v Andersen*, Case No. 80 C 1405 (Order, December 18, 2015).

The COI statute instructs that Courts should, "in the interest of justice, give due consideration to the difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destructions of evidence or other factors not caused by [the petitioner] or those acting on their behalf." 735 ILCS 5/2-702(a). Through that lens, it is difficult to imagine what other evidence beyond sworn testimony and DNA Mr. Reyes could possibly present at this point to show his innocence. [7] He has established his innocence.

## IV. THERE IS NO EVIDENCE OF MR. REYES'S GUILT

Now that Mr. Reyes has presented evidence of innocence, this Court must evaluate whether the State has presented evidence as a matter of law to establish the *prima facie* elements of the crimes of conviction: in this case first-degree murder as a principal, home invasion as a principal, and aggravated kidnapping as a principal. *Palmer*, 2021 IL 125621, ¶¶ 64, 72, 78 (petitioner must prove innocence of crime of conviction as specifically enumerated in indictment); *Williams*, 2017 IL App (1st) 152021, at ¶ 30 (court balancing evidence of innocence must "(1) determine as a matter of law whether the nonmovant has presented a *prima facie* case (some evidence on every element essential to the cause of action); and only after concluding that a *prima facie* case has been established, (2) consider and weigh the totality of the evidence presented, including evidence favorable to the movant"); *see* Ex. 1 (Amended Mittimus ); Ex. 2 (Counts 1, 3, 17, 23, 25). If a factfinder concludes there is not evidence on even one essential element of those crimes, it must find in favor of the side that did present evidence. *Tucker*, 12 Ill.

---

[7] Given that Mr. Reyes and Mr. Solache were falsely implicated in the crimes together, the evidence of Mr. Solache's innocence is also evidence of Mr. Reyes's innocence.

12

2d at 534 (a party's evidence is legally insufficient "if, when all the evidence is considered …

there is a total failure to prove one or more essential elements of the case"). In other words, if the

State cannot present at least some evidence of each essential element of the crimes of Mr.

Reyes's conviction, this Court must award Mr. Reyes a certificate of innocence as a matter of

law.

That is exactly what must happen here. The State can point to no evidence that Mr. Reyes

committed any crime whatsoever, let alone as a principal. The only evidence admitted at

Mr. Reyes's underlying criminal trial to secure his conviction was the handwritten statement that

he could not read, and Guevara's testimony about it; but as discussed below, that evidence may

no longer be considered based on Judge Obbish's ruling. The State also points to unsworn

hearsay that was never admitted in the underlying criminal proceedings—and this Court cannot

consider it, either. 735 ILCS 5/2-702(f); *Palmer*, 2021 IL 125621 at ¶ 67; *see also People v.

Hood*, 2021 IL App (1st) 162964, ¶ 30-32. Without that inadmissible hearsay, the only remaining

evidence the State can conceivably point to does not establish the *prima facie* elements of any of

the crimes of conviction. In other words, the State cannot meet the minimum threshold of

showing Mr. Reyes is not innocent of the crimes of conviction such that this Court may begin

weighing the evidence. Therefore, Mr. Reyes is entitled to a certificate of innocence as a matter

of law.

> **A.** **This Court Can Consider Only Sworn Testimony or Evidence that Was Admitted in Underlying Criminal Proceedings in Evaluating the State's Opposition, and Cannot Consider Suppressed Statements**

As an initial matter, the COI statute clearly spells out the evidence this Court can

consider in evaluating the State's opposition: new testimony adduced during COI hearings; prior

sworn testimony; and evidence admitted in the underlying criminal proceedings. 735 ILCS 5/2-

13

702(f). As applied here, this Court may consider only sworn statements and previously admitted evidence. This Court may not consider suppressed false statements or hearsay. 735 ILCS 5/2-702(f); *Palmer*, 2021 IL 125621 at ¶ 67; *Hood*, 2021 IL App (1st) 162964, ¶ 30-32 (court can consider admissible evidence or sworn testimony); *see also* Ill. R. Evid. 802.

1.  Law of the Case and Equitable Principles Preclude this Court from Considering the False, Coerced Statements.

The State does not appear to argue in its response to Mr. Reyes's petition that this Court should consider Mr. Reyes's or Mr. Solache's false, coerced, inculpatory statements. Nor should it. Those statements have been suppressed, and the law of the case doctrine precludes any consideration of those statements now. *People v. Patterson*, 154 Ill. 2d 414, 468–69 (1992); *People v. Tenner*, 206 Ill.2d 381, 395 (2002); Ex. 18 (Order Granting COI in *People v. Wilson*, No. 82 C 1211-02 & 88 CR 7771-01, ¶¶8-9 (Cook Cty. Dec. 18, 2020) (law of the case precludes consideration of suppressed inculpatory statements in COI proceedings)). The statute's plain language, along with equitable principles of estoppel preclude consideration of suppressed statements, as well. *See infra*, § IV(A)(2). To allow consideration of statements that a court has already concluded were the product of abuse and coercion would run afoul of the purpose of the law and implement additional procedural hurdles.

2.  This Court Cannot Consider Hearsay about Ms. Mejia.

In its response to Mr. Reyes's petition for a certificate of innocence, the State attaches two inadmissible documents: Ms. Mejia's handwritten statement, which is hearsay; and a write-up of an unsworn statement Mejia gave to an investigator from Jenner and Block, which is double hearsay. Neither of those statements was admitted in the underlying criminal proceedings, and they are not sworn. The State has chosen not to rely on Ms. Mejia's statements at any point during the two decades it has been litigating this case. It cannot do so now. *See Palmer*, 2021 IL

14

125621, ¶¶ 67, 74-77; *see also* 735 ILCS 5/2-702(f); *Hood*, 2021 IL App (1st) 162964, ¶ 30-32; Ill. R. Evid. 802.

The plain language of the statute, its legislative history, its placement in the code, and principles of estoppel preclude the State from relying on hearsay in these proceedings. 735 ILCS 5/2-702(f); *Palmer*, 2021 IL 125621 at ¶ 67; *see also People v. Hood*, 2021 IL App (1st) 162964, ¶ 30-32; Ill. R. Evid. 802. A court's "primary objective in construing a statute is to ascertain and give effect to the intent of the legislature, bearing in mind that the best evidence of such intent is the statutory language, given its plain and ordinary meaning." *People v. Johnson*, 2013 IL 114639, ¶ 9. Here legislators drafted a statute that gave judges the tools to make quick determinations on COI petitions based on evidence in the criminal case, and new evidence of innocence. *See* 95th Ill. Gen. Assem., House Proceedings, May 18, 2007, at 5-6 (statements of Representative Flowers (explaining that the language in the statute allowing judicial notice of prior proceedings, 735 ILCS 5/2-702(f), was placed in the statute to address concerns "that the process of petitioning for a COI would force the court to try…the original case over again")). That is, the COI statute allows Courts to take notice of evidence that already exists, and hearsay is not evidence. Ill. R. Evid. 802. Any interpretation of this statute that would require a petitioner to rebut unsworn testimony that is not admitted and inadmissible, and which lacks any indicia of reliability, would be highly prejudicial.

Indeed, if the State has not attempted to present the unsworn hearsay statement before, it is not allowed to do so now. *See Palmer*, 2021 IL 125621, ¶ 74-77 (the State may not take a position, benefit from that position, and then take a contrary position in a later proceeding). Thus, the only permissible construction of subsection (f) is one that limits the evidence this Court

15

can consider to evidence presented to this Court, sworn testimony, and evidence admitted in the underlying proceedings.

Because the only evidence implicating Mr. Reyes in the murder—the handwritten statement he signed under duress, Guevara's testimony about that statement, and Ms. Mejia's unsworn hearsay statements—are all inadmissible and otherwise precluded from consideration in this proceeding, Mr. Reyes's petition should be granted as a matter of law.

    **B.    The Only Other Evidence the State Can Possibly Try to Rely on Does Not Make a *Prima Facie* Case of Guilt of the Offenses Charged in the Indictment**

The State's response identified no sworn testimony or admitted evidence to counter the substantial evidence of innocence of factual offenses charged in the indictment. *See Palmer*, 2021 IL 125621 at ¶¶ 64, 72, 78. On that basis alone, the COI petition should be granted.

The only admissible evidence the State could conceivably rely on is the recent deposition testimony of Ms. Mejia, but that testimony does not satisfy each element of the *prima facie* case of the offenses charged in the indictment: first-degree murder as a principal for stabbing the Sotos, home invasion as a principal, and aggravated kidnapping as a principal. *Williams*, 2017 IL App (1st) 152021, ¶ 30 (Ill. 2017). To the contrary, that testimony, if anything, confirms Mr. Reyes's innocence. The only other admissible evidence or sworn statements before the Court are Mr. Reyes and Mr. Solache's repeated, sworn assertions of innocence.

        1.    Any evidence discussing Mr. Reyes's alleged presence at the crime scene does not establish that he is not innocent of the factual theory of the offenses detailed in the indictment.

Neither in the State's response to the Petition, nor otherwise, has it presented evidence that Mr. Reyes is not innocent of the factual offenses charged in the indictment. As discussed *supra*, Ms. Mejia has given testimony recently about Mr. Reyes's whereabouts during the murders. Contrary to the indictment and the State's theory of the case at trial, Ms. Mejia testified

16

that Mr. Reyes never stabbed Mr. or Mrs. Soto, and never had a weapon. Ex. 17 (Mejia Feb. 2021 Dep.) at 11, 56. She testified that she had never spoken with Mr. Reyes before; and that Mr. Reyes did not participate in the murders, did not know about the murders until after the fact, and did not arrive at the Soto home until after the fact. Ex. 17 (Mejia Feb. 2021 Dep.) at 11, 22, 96, 98, 112. The extent of her testimony is that Mr. Reyes was "just present," and that he was not involved in planning or participating in the crime. *Id.* at 11, 22, 24, 56, 96, 98.[8]

This comes nowhere close to satisfying the elements of the charges in the indictment. It is blackletter law that mere presence cannot satisfy the elements of any crime. *People v. Ceasar*, 231 Ill. App. 3d 54, at 56 (1992) ("mere presence at scene of crime, even with knowledge that crime is being committed, is not enough to prove participation"); *People v. Reid*, 136 Ill. 2d 27, 61 (1990) ("Mere presence of a defendant at the scene of the crime does not render him or her accountable for the offense."); *People v. Clark*, 30 Ill. 2d 67, 72 (1963) ("mere presence or negative acquiescence is not sufficient to constitute a person a principal to a crime."); *People v. Bell*, 96 Ill. App. 3d 857, 868, 421 N.E.2d 1351, 1360 (1981) (applying *Clark*, 30 Ill. 2d at 72, to kidnapping); *People v. Daniels*, 391 Ill. App. 3d 750, 794 (2009) (evidence that defendant was present inside the apartment or car where kidnapping occurred, without more, would not be evidence of principal liability). In other words, to satisfy the elements of any of the crimes of conviction would require more than testimony about mere presence. And conspicuously absent from Ms. Mejia's testimony is any claim that Reyes had any knowledge that a murder or kidnapping would be occurring, that he participated in any way, or that he had any requisite mental state. To the contrary, she acknowledges that he "arrived later," was not involved in any

---

[8] Mr. Reyes of course denies that he was present, as he has consistently testified, but that is not relevant for purposes of this motion.

17

planning, and "was innocent" of the crime. Ex. 17 (Mejia Feb. 2021 Dep.) at 11, 22, 24, 27, 96, 98, 112, 176. On this basis, the State cannot meet its burden to oppose the certificate.

Supposing this Court considers Ms. Mejia's testimony as anything other than showing Mr. Reyes's innocence, the testimony would at most, support a theory of accountability for the murder and kidnapping on which Reyes was charged. But Mr. Reyes was not charged or convicted on an accountability theory, and the State may not introduce a new theory of guilt at the COI stage. The plain language of the COI statute and principles of judicial estoppel preclude it from doing so. As the Illinois Supreme Court held unequivocally in *People v. Palmer*, the State may not oppose a certificate of innocence by arguing that a petitioner who was charged as a principal should be denied a certificate of innocence because he may have been an accomplice. 2021 IL 125621, ¶¶ 62-80.

Thus, because there is no evidence that Mr. Reyes participated in the crimes charged in the indictment, the uncontroverted evidence of innocence establishes that Mr. Reyes is entitled to a certificate of innocence as a matter of law.

> 2. To the extent this Court does consider tortured and involuntary statements, it should afford them no weight.

To the extent this Court does consider the tortured and involuntary statements from Reyes, Solache, and Mejia, it should afford them no weight. Where, as here, a petitioner's evidence is unrebutted, uncontradicted, and not inherently improbable, a court must take it as established. Ex. 19 (Order Granting COI in *Caine v. State*, 86 CR 6091(02) (March 27, 2012) (citing, amongst other cases, *Bucktown Partners v. Johnson*, 119 Ill. App. 3d 346 (1st Dist. 1983) (noting that)).

Mr. Reyes, Mr. Solache, and Ms. Mejia have consistently testified that Guevara psychologically and physically abused them until they agreed to sign false statements that they

18

Guevara's conduct, *see e.g., People v. John Martinez*, 2021 IL App (1st) 190490 at ¶¶64, 80

("The State does not dispute that Detective Guevara has a history of misconduct. Nor could

it....Detective Guevara is a malignant blight on the Chicago Police Department and the judicial

system); *People v. Serrano*, 2016 IL App (1st) 133493, generally & at ¶¶35-36; *People v.*

*Montanez*, 2016 IL App (1st) 133726, generally & at ¶¶36-37; *People v. Almodovar*, 2013 IL

App (1st) 101476; *People v. Ricardo Rodriguez*, 2021 IL App (1st) 200173, at ¶51; *People v.*

*Ariel Gomez*, 2021 IL App (1st) 192020, at ¶58, including some which the State itself does not

dispute, *see Martinez*, 2021 IL App (1st) 190490 at¶¶64; Ex. 11 (Order in *People v. Demetrius*

*Johnson*, 91 CR 19833(01)); Ex. 12 (Transcript from *People v. Munoz*, 85 CR 12403(01)) at 93,

103. It is also consistent with other exonerations in Illinois, *see also* National Registry of

Exonerations, Browse by Cases, Sort by State (Illinois)[9] (listing 373 Illinois exonerations,

including 105 where the wrongfully convicted individual falsely confessed (as of January 16,

2022)).

And while Ms. Mejia's allegations of abuse and misconduct were not challenged during

the post-conviction proceedings, the same undisputed facts and analysis regarding Guevara's

abuse and misconduct that caused Judge Obbish to suppress Mr. Solache and Mr. Reyes's

statements apply to Ms. Mejia's statement, as well. Thus, the evidence that the inculpatory

statements were coerced is unrebutted and not inherently improbable. This Court cannot afford

these statements any value. Ex. 19 (Order Granting COI in *Caine v. State*, 86 CR 6091(02)

(March 27, 2012)).

---

[9]http://www.law.umich.edu/special/exoneration/Pages/detaillist.aspx?SortField=FC&View={faf6
eddb-5a68-4f8f-8a52-2c61f5bf9ea7}&FilterField1=ST&FilterValue1=IL&SortDir=Desc (last accessed
January 16, 2022).

**C.     A Preponderance of the Evidence Establishes that Mr. Reyes is Innocent**

As discussed, Mr. Reyes has presented ample, unrebutted evidence of his innocence. He has presented powerful exonerating DNA evidence, evidence of an alternative perpetrator, and his own sworn testimony. *See supra*, § III. Mr. Reyes has discharged his initial burden to demonstrate innocence. In contrast, the State cannot meet the threshold of presenting admissible evidence on each prima facie element of any of the crimes of conviction. Thus, as a matter of law, Mr. Reyes satisfies subsection (g)(3) of the COI statute. 735 ILCS 5/2-702(g)(3); *Tucker*, 12 Ill. 2d at 534; *Stenger v. Swartwout*, 62 Ill. 257, 257 (1871) ("Where as to any essential element of a cause of action or defense there is no evidence at all…this court will interfere and set it aside.").

But even if this Court does consider the suppressed false confessions, or the hearsay or double hearsay statements about Ms. Mejia, there is ample evidence that these statements were coerced and false. A preponderance of the evidence analysis is a balancing test. It "requires the trier of fact to weigh the evidence presented by the parties and to find for the party who, overall, has the stronger evidence." *City of Chicago v. Ill. Workers' Comp. Com'n*, 373 Ill. App. 3d 1080, 1091 (1st. Dist. 2007). On the one side of the scale: Mr. Reyes's ample evidence of innocence, and significant evidence that Guevara engaged in a pattern and practice of coercing false confessions from innocent people, *see supra*, § IV(B)(2). On the other side of the scale: nothing other than unreliable, unsworn, inadmissible out-of-court statements that courts have determined were the product of abuse and coercion at the hands of Guevara. There can be no dispute that Mr. Reyes has shown by a preponderance of the evidence that he is innocent of the crimes charged in the indictment. 735 ILCS 5/2-702(g)(3); *Palmer*, 2021 IL 125621, at ¶¶ 64, 72, 78.

21

## V.     MR. REYES SATISFIES THE OTHER STATUTORY REQUIREMENTS TO RECEIVE A CERTIFICATE OF INNOCENCE.

Mr. Reyes also satisfies the remaining statutory requirements to receive a certificate of innocence. It is undisputed that he was convicted of one or more felonies, was sentenced to a term of imprisonment, and has served all or any part of the sentence, 735 ILCS 5/2-702(g)(1). It is also undisputed that the judgment of conviction was reversed or vacated and the charges were subsequently dismissed. *Id.* § 5/2-702(g)(2)(A).

As for the final element, Judge Obbish has already concluded that Mr. Reyes was convicted based on an involuntary, coerced and fabricated confession. Mr. Reyes has vigorously maintained his innocence, pleaded not guilty, was convicted after a contested trial, and pursued other forms of relief in the years since being convicted. *See* 735 ILCS 5/2-702(g)(4). A petitioner who is beaten into falsely confessing to a crime has not voluntarily brought about his conviction. *See* Ex. 18 (Order Granting COI in *People v. Wilson*, No. 82 C 1211-02 & 88 CR 7771-01, ¶¶8-9 (Cook Cty. Dec. 18, 2020).)

### Conclusion

In conclusion, Mr. Reyes respectfully requests that this Court grant his petition for a certificate of innocence.

Respectfully Submitted,

Rachel Brady
*Attorney for Arturo De Leon-Reyes*

Jon Loevy
Anand Swaminathan
Steve Art

22

Rachel Brady
Sean Starr
Loevy & Loevy
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900
brady@loevy.com

*Counsel for Petitioner Arturo De Leon-Reyes*

## CERTIFICATE OF SERVICE

I, Rachel Brady, an attorney, hereby certify that on this 20th day of January 2022, I

caused a copy of the foregoing MOTION FOR SUMMARY JUDGMENT ON PETITION FOR

CERTIFICATE OF INNOCENCE to be served by electronic mail and USPS mail to:

Attorney General
State of Illinois
100 W. Randolph Street
Chicago, IL 60601

Assistant State's Attorney
Cook County State's Attorney's Office
2650 S. California Avenue
Chicago, IL 60608

Dated: January 20, 2022

Respectfully Submitted,

_____
Rachel Brady
*Attorney for Arturo De Leon-Reyes*

Loevy & Loevy
311 N. Aberdeen St., 3rd floor
Chicago, IL 60607
(312) 243-5900
brady@loevy.com