**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 CV 1028 |
| Plaintiff, | ) | |
| | ) | Honorable Judge Steven C. Seeger |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## <u>DEFENDANTS' TRIAL BRIEF</u>

Dated: May 4, 2026            Respectfully submitted,

/s/Josh M. Engquist
JOSH M. ENGQUIST, Atty. No. 6242849
*One of the Attorneys for Defendant Officers*

James G. Sotos
Josh M. Engquist
Caroline P. Golden
Kyle T. Christie
Elizabeth R. Fleming
THE SOTOS LAW FIRM, P.C.
141 Jackson Blvd., #1240A
(630) 735-3300
cgolden@jsotoslaw.com

/s/Eileen E. Rosen
EILEEN E. ROSEN, Atty. No. 6217428
*One of the Attorneys for Defendant
City of Chicago*

Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Austin Rahe
Patrick R. Moran
Rock Fusco & Connelly, LLC
333 W. Wacker Drive, 19th Fl.

Chicago, IL 60606
(312) 494-1000
erosen@rfclaw.com

/s/ Timothy P. Scahil
TIMOTHY P. SCAHILL, Atty No. 6287296
One of the Attorneys for Defendant Guevara

Steven Blair Borkan
Timothy P Scahill
Whitney N. Hutchinson
Graham P. Miller
Emily E. Schnidt
Christiane E. Murray
Molly E. Boekeloo
Amanda Guertler
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312) 580-1030
tscahill@borkanscahill.com

Defendants' trial brief addresses two issues for the Court's consideration. First, Reyes's attempt to add 18 witnesses to his witness list on the eve of trial by taking almost every witness on Defendants' list that was not already on his own. Second, to address issues raised in Reyes's response to Defendants' *Daubert* motion to bar Dr. Leo for providing false testimony in this case.

**A. Reyes improperly added 18 witnesses to his witness list.**

On March 25, 2026, the parties submitted the final pretrial order with their respective witness list, (Dkt. 870), per this Court's scheduling order, (Order, Dkt. 904), and after the parties spent the prior weeks exchanging their witness lists as required by this Court's standing order. Seven days before trial, Reyes added 18 witnesses to his witness list by taking almost every witness on Defendants' list that was not already on his own, including: (1) felony review Assistant State's Attorneys Heather Brualdi, David Navarro, Tom O'Malley, Andrew Varga, and Karen Wehrle, who took statements from suspects and witnesses; (2) ASA Art Hill, who prosecuted Reyes, Solache, and Adriana Mejia; (3) ASAs Eric Sussman, Crista Bowden, Julia Nikolaevskaya, Krista Peterson, who handled the post-conviction and certificate of innocence proceedings; and (4) Guadalupe Mejia and Jorge Mejia, who lived in the apartment underneath Reyes, Solache, and Adriana and Rosaro Mejia. The list also includes police officers and other family members of the victims and suspects.

There is no justification for these sweeping, last-minute additions, which upend Defendants' trial preparation and prevent them from presenting a cohesive and logical defense. Under Rule 37(c), if a party fails to comply with pretrial disclosure requirements, "the party is not allowed to use that ... witness to supply evidence ... at trial, unless the failure was substantially justified or is harmless." Exclusion is "automatic and mandatory," unless Reyes demonstrates that his failure to comply with this Court's orders were substantially justified or harmless. *Musser v. Gentiva*

1

*Health Services*, 356 F.3d 751, 757 (7th Cir. 2004). He cannot do so. Therefore, the Court should prohibit Reyes's improper tactical maneuver.

**First**, Reyes's conduct is not substantially justified. Reyes had Defendants' witness list before filing the pretrial order on March 25. He had every opportunity to amend his own list before the pretrial order was finalized. He chose not to. Instead, he waited more than a month— seven days before trial—to add 18 witnesses wholesale from Defendants' list. Worse yet, this was done under the guise that the parties were instructed to narrow the witness list based on the Court's rulings on bifurcation, the Solache settlement, and to streamline trial.

Reyes' conduct is not mere oversight. It is a deliberate, tactical decision that lacks substantial justification. Indeed, Reyes's maneuver is internally inconsistent. For example, when Defendants disclosed Assistant State's Attorney Sussman and Bowden, Reyes objected that their "testimony regarding COI proceedings is irrelevant and prejudicial." (Dkt. 870.) But now Reyes intends to call these same witnesses in his case-in-chief. He cannot have it both ways.

**Second**, Reyes's violation is not harmless. For the past month, Defendants have relied on the pretrial order to structure their trial. They have planned their direct and cross-examinations, subpoenaed and coordinated with witnesses, and developed a strategic presentation to the jury. Reyes's last-minute additions disrupt that process entirely. Simply put, Defendants prepared to present these witnesses in their case-in-chief—not to defend against their use by Plaintiff— altering witness sequencing, examination strategy, and the structure of their trial presentation. If Reyes is permitted to proceed in this manner, the structure of the trial will be fundamentally altered, depriving Defendants of the ability to present these witnesses in their own case-in-chief.

This prejudice cannot be cured without derailing Defendants' trial preparations and rewarding Reyes's noncompliance. Indeed, the very purpose of pretrial disclosure rules "is to

allow for trial preparation and to avoid last-minute surprises or the proverbial 'trial by ambush.'" *Smith v. Nurse*, 2016 WL 4539698, at *11 (N.D. Ill. Aug. 31, 2016) (excluding witness disclosed less than two weeks before trial). This untimely disclosure "throws a wrench into the plans of opposing counsel." *NEXT Payments Solution, Inc., v. CLEAResult Consulting, Inc.*, 2023 WL 7196125, at *14 (N.D. Ill. April 17, 2023) (Seeger, J.).

The prejudice is also compounded by the scale of the violation. This is not the late disclosure of one or two witnesses but 18 witnesses that Reyes knew for over a month Defendants intended to call as part of their case-in-chief. *Altaa Investments, LLC v. Production Capital, LLC*, 2023 WL 4157365, at *11–12 (C.D. Cal. June 7, 2023) (finding that disclosures of three new witness a mere week before trial and a month after the agreed-upon pre-trial witness list exchange was "neither substantially justified nor harmless"). The fact that Defendants listed these 17 witnesses does not render the violation harmless considering its magnitude. *See Burney v. Rheem Mfg. Co.*, 196 F.R.D. 659, 692 (M.D. Ala. 2000) (explaining that the failure to list a witness listed by another party is harmless when the inadvertent disclosure is "an honest mistake"); *see also Farmers New Century Ins. v. Estate of Brown*, 2024 WL 2956796, at *4 (S.D. Ind. June 12, 2024) (rejecting the notion that mere awareness of a witness eliminates prejudice).

In sum, this Court's "power to manage trial includes the power to prevent parties from crossing the boundaries that the district court laid down in the run-up to trial." *NEXT Payments Solution, Inc.*, 2023 WL 7196125, at *14. The Court set clear boundaries for witness disclosures. Reyes ignored them. He should not be permitted to benefit from that choice.

**B.  Dr. Leo should be barred for providing false testimony in this case.**

Defendants raise a single, dispositive issue for the Court's consideration in connection with their *Daubert* motion to bar Dr. Leo. (Mot., Dkt. 868). Defendants explained that Dr. Leo

3

provided false testimony under oath about the materials he used to form and present his opinions. (*Id.* at 2–5.) In response, Plaintiffs advance two arguments to confuse and distract from this issue that warrant brief clarification: first, that Dr. Leo did not misrepresent the authorship of the notes; and second, that the notes were disclosed as having been prepared collaboratively with counsel. (Pls.' Resp. at 6–8.) Neither argument is supported by the record.

The facts are straightforward. At his September 29, 2022 deposition, Dr. Leo referenced and read directly from notes that he referred to as a "memory aid." (Leo 9-29-22 Dep. at 268:11–23.) The notes were withheld from Defendants until a month after Dr. Leo's deposition based on meritless objections that the materials Dr. Leo read from during his deposition were privileged. When finally produced, they totaled 91 pages. (Notes, Dkt. 868-3.) Of those, 81 pages consist of detailed case summaries "typed" and which Plaintiff's counsel now concedes they provided to Dr. Leo. (*Id*; *see also* Pl's Resp., Dkt. 899, at 5.) The remaining 10 pages that were authored by Dr. Leo do not contain any of the case-summary content reflected in the 81-page compilation. (*Id.*)

Dr. Leo's testimony makes clear that he repeatedly read from and relied on specific content that appears only in the 81 pages of notes prepared by Plaintiffs' counsel and not in his disclosed report. For example, his discussion of allegations involving Hood and Washington are from the typed case summaries, not his own notes or his report. (Leo 9-29-22 Dep. at 381:22–384:17.) That same pattern recurs throughout his testimony more than 13 times. (*See, e.g.*, *id*. at 385:2–387:16; 419:10–16; 426:23–426:21; 475:7–17.) And Dr. Leo represented under oath that he was reading from "notes that I prepared" and repeatedly referred to them as "my notes." (*Id.* at 382:3–7; 386:6–387:7.) There was nothing ambiguous about it. He claimed ownership of the very materials he was reading from, which were actually counsel's work. Reyes's attempt to now

4

limit those statements to the small subset of pages Dr. Leo authored is irreconcilable with the record.

Reyes's other argument that the notes were disclosed as being collaboratively created fares no better. During the deposition, Plaintiffs' counsel did not correct or clarify Dr. Leo's repeated statements that he prepared the notes. No, they repeatedly reinforced Dr. Leo's false assertion that he prepared the notes himself. (*See, e.g.*, *id.* at 387:22–388:20 ("In our view the notes that the witness has made in order to prepare himself for the deposition are not subject to discovery"); *see also id.* at 389:1–6; 390:4–8. Indeed, in a subsequent email, they continued with this misrepresentation by referring to the materials as "Dr. Leo's notes." (Email, Dkt. 899-6, at 2.)

Moreover, Reyes's assertion that this issue was "disclosed" in prior briefing is demonstrably false. The portions of the record they cite show the opposite. In the City's *Daubert* motion regarding Dr. Leo's *Monell* opinions, it raised serious concerns that Dr. Leo's notes appeared to have been created, at least in part, by counsel. (Mot., Dkt. 747, at 4–5.) Nowhere in Plaintiffs' response did they admit—let alone clearly disclose—that counsel drafted the 81 pages of notes that Dr. Leo read from under oath while claiming they were his own. (Resp., Dkt. 770, at 11–13.) Indeed, the City explained in reply that Plaintiffs "provide no response to that accusation" that counsel contributed to the notes, despite evidence that the notes tracked Plaintiffs' *Monell* theory, lacked expert analysis, and could have been prepared by a lawyer. (Dkt. 782 at 6.) This is not a "crystal clear" disclosure as Reyes claims. (Resp., Dkt. 899, at 6.) It is silence in the face of a direct challenge. Reyes's position is a post hoc attempt to recharacterize a record they previously declined to confront.

Thus, the conclusion remains the same: Plaintiffs' counsel typed and provided the 81 pages of case summaries that Dr. Leo read from under oath while claiming they were his own.

5