**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO DeLEON-REYES, | ) | |
| | ) | Case No. 18 CV 1028 |
| Plaintiff, | ) | |
| | ) | |
| | ) | Honorable Judge Steven C. Seeger |
| v. | ) | |
| | ) | |
| REYNALDO GUEVARA, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

**DEFENDANT GUEVERA'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL FILING
IN SUPPORT OF MOTION TO ADMIT
OTHER BAD ACTS OF DEFENDANT REYNALDO GUEVARA**

NOW COMES Defendant REYNALDO GUEVARA ("Defendant Guevara"), by and through the undersigned counsel, and submit the following response to Plaintiff's supplemental filing in support of motion to admit other bad acts of Defendant Reynaldo Guevara. In support thereof, Defendant Guevara state as follows:

**Introduction and Prefatory Comments**

Plaintiff's supplemental memorandum underscores precisely why the "other bad acts" evidence Plaintiff seeks to interject into this trial must be excluded. On this point, in addition to often wildly misstating the record in this case and the claims of their own client (and others)(including, among other things, blatantly misrepresenting the testimony of one of their supposed "other bad acts" witnesses, Jose E. Melendez, being mistreated by Defendant Guevara at all), two other matters are apparent from the face of this supplemental filing that are highly material for the purposes of this issue.

1

First, every single incident which Plaintiff seeks to interject in this case is being offered to show that because Defendant Guevara allegedly engaged in similar misconduct in other cases (i.e. physically abusing suspects, coercing confessions, etc.). *See* Dckt. No. 926 at 2-3, 6-10. To wit:

> Taking broad view first, as Plaintiff argued in the opening brief, a large part or all of the defense in this case will be that what Plaintiff alleged happened is implausible, and that Guevara was an honest cop getting a guilty murderer and kidnapper off the streets. Put bluntly, Guevara and his counsel will be arguing that the physical abuse and coercion alleged here never occurred, and that he and other Chicago Police officers who were with him would and could never have done the things that Plaintiff says they did. The following Rule 404(b) evidence establishes through a number of independent, propensity-free chains of reasoning why Plaintiff's accusations are not implausible in the least. *Id.*

As in his opening brief, Plaintiff promises that he will provide a "propensity-free chain of reasoning" to demonstrate admissibility but then fails to deliver in any meaningful respect. *Id.* Indeed, the supposed "propensity free chain of reasoning" consists of nothing more than a list of the factors contained within Fed. R. Evid. 404(b) (and some ones not within the rule) coupled with an undeveloped conclusion that these factors are satisfied. *Id.* at 6-10. That argument has been soundly foreclosed by *Gomez. See* Dckt. No. 837 at 11-19. Without exception, every single supposed "prior bad act" consists of a summary that contends that Defendant Guevara allegedly physically abused a suspect/witness and coerced/fabricated confessions or inculpatory statements in other cases followed by a summary of Plaintiff's contentions that Defendant Guevara did so in this case as well. *Id.* In other words, Plaintiff wants to introduce evidence that Defendant Guevara did something broadly similar in another case to bolster his claim that Defendant Guevara did something similar here. That is exactly what is *not* allowed. *Id.*

Second, Plaintiff expressly confirms Defendant Guevara's suspicions about what exactly Plaintiff logistically intends to do at trial. Specifically, Plaintiff withdraws all but two of his putative "live witnesses" on these matters (Jose E. Melendez and David Velasquez)(*see* Dckt. No. 926 at 1-2) and advises that the bulk of the "evidence" on these matters will be introduced entirely "via cross-

examination of Guevara." *See* Dckt. No. 926 at 2; *see also id.* at 8-10 (listing incidents which Plaintiff claims will be introduced via "Cross-Examination Only"). Thus, Plaintiff explains, "the presentation will remain succinct" and "this evidence will be an extremely modest addition to the trial." *Id.* In other words, Plaintiff admits that he does not intend to offer any actual evidence on the majority of his putative "other bad acts" other than representations made in the questions he will ask to Defendant Guevara on the stand. *Id.*

All of this is fraught with some rather elementary defects. The first is that there is no such thing as presenting evidence of misconduct by embedding external facts into questions "via cross examination" under the Federal Rules of Evidence. What Plaintiff appears to be suggesting is that his attorneys will lob cross-examination questions at Defendant Guevara laden with whatever facts they deem fit to include and that Defendant Guevara's invocation will suffice as evidence of the occurrence of these embedded facts. Such a farcical display finds no support in even the most basic rules of evidence. Juries are instructed that "questions…or comments by the lawyers are not evidence." *See* Sev. Cir. Patt. Jur. Instr. No. 1.06. Indeed, this very Court has a rather specific prohibition on the very practice Plaintiff suggests here. *See* Standing Order On Trial Conduct And Procedures For All Trials Before Judge Seeger at ¶ 5. This Court strictly directs that "[o]n direct or cross-examination of a witness, counsel must not…testify by improperly incorporating facts into their questions so as to put before the jury information that has not been received in evidence." *Id.* Moreover, as Plaintiff's counsel are quite well-aware, the Seventh Circuit has held that a Fifth Amendment invocation itself is *never* allowed as the sole source to support the occurrence or non-occurrence of any fact. *See* Dckt. No. 837 at 2-4 *citing LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995) and its progeny). Indeed, such a practice is not only improper but, indeed, unconstitutional. *Id.*

Even were such practice otherwise permissible (which it is certainly not), this would not be the "succinct" and "modest" presentation that Plaintiff suggests. Not by a long shot. While

Defendants have no doubt that Plaintiff would like to simply lob loaded questions at Defendant Guevara, on the one hand, and not have to contend with competing evidence, on the other hand, this is not how trials work in general nor how this trial would play out in particular. The presentation of evidence under Fed. R. Evid. 404(b) is not subject to a different set of rules than any other evidence. If Plaintiff places an incident at issue at this trial, Plaintiff can expect a counter-presentation of evidence on each incident at issue to impeach such evidence.

To this end, for both the two "live witnesses" as well as the numerous "cross-examination only" incidents, the incidents at issue spawned lengthy civil litigation (much of which remains pending) which included dozens upon dozens of depositions of parties, third party civilian witnesses, states attorneys, experts, and other police officers, and all sorts of other matters typically exchanged in discovery. *See* Dckt. No. 926 at 6-10; *see also Sierra v. Guevara*, 18 CV 3029; *Tinajero v. Guevara, et al,* 24 CV 1598; *Kelly v. Guevara, et al,* 24 CV 5354, *Martinez v. Guevara, et al,* 23 CV 1741; *Serrano v. Guevara, et al*, 17 CV 2869; *Montanez v. Guevara, et al,* 17 CV 2869; *Iglesias v. Guevara, et al*, 19 CV 6508; *Gecht v. Guevara, et al,* 23 CV 1742; *Kwil v. Guevara, et al, 20 CV 4279*. This is in addition to the hundreds of thousands of pages of document discovery at issue in these cases (i.e. criminal files, transcripts, prosecution files, defense files, post-conviction files, Department of Corrections files, police records, etc.). Even summarizing the breadth of the record in each one of these cases would likely take many dozens of pages of briefs and printing them would level a small rainforest. These cases combined included thousands of docket entries on the docket of the Northern District of Illinois which is particularly astounding because six of these cases remain in active discovery (*Tinajero, Kelly, Martinez, Iglesias, Gecht*, and *Kwil*) so the tally continues.

To be clear, Defendant Guevara has no desire whatsoever to present competing evidence on these issues at this trial. This will be lengthy, confusing, and a waste of juror and court time. But Defendant Guevara will have little choice because of the highly inflammatory nature of this evidence

and Plaintiff's pursuit of punitive damages against him based upon this evidence. This would entail things such as subpoenaing the witnesses at issue to cross examine them on inconsistent statements (i.e. calling the named plaintiffs in the underlying cases and the witnesses at issue), subpoenaing former state's attorneys and non-defendant officers to testify about their dealings with the involved parties and the lack of corroboration of claims of abuse, introducing documents and materials regarding the lack of substantiation of claims of physical abuse (i.e. other police personnel, lockup keepers, Cook County Jail personnel, etc.), and introducing evidence showing that the allegedly "false" inculpatory statements that were claimed to be coerced (i.e. proving up the validity of the underling investigation and prosecution). The courts routinely bar even otherwise relevant Rule 404(b) evidence that would spawn a mini-trial on an unrelated incident. Allowing this type of evidence on incidents which are premised upon the central allegations in nine other lawsuits would not even be a "mini-trial" but a full blown trial. This simply cannot be allowed to occur here.

### **Response To Plaintiff's Summary Of Allegations Against Defendant Guevara**

Defendant hereby responds to Plaintiff's summary of allegations against Defendant Guevara and provide his response thereto.

**Paragraph 1:** Not accurate. Contrary to this allegation, Plaintiff acknowledges there was evidence connecting Plaintiff to the crimes. Plaintiff lived with the woman, Adriana Mejia, who was in possession of the children who were kidnapped from their murdered parents, and then Plaintiff took possession of one of them and presented himself at the police station within days of the crimes. Dckt. No. 744 at ¶¶ 1, 19. Plaintiff was implicated by his co-offender, Adriana Mejia, as being involved in the crimes, plead guilty to these crimes, and maintains Plaintiff's involvement to this day. *Id.* at ¶¶ 45-52, 95. Indeed, not only was there probable cause to charge and prosecute Plaintiff but the Cook County State's Attorney's Office has continued to maintain that Plaintiff was, in fact, guilty of the commission of these crimes. *Id.* at ¶ 94.

**Paragraph 2:** Not accurate and not relevant. Mejia did initially implicate Norma Salazar, but Norma Salazar is a fictional person. She was made up by Mejia, Plaintiff, and Solache to shield that they murders the Sotos and kidnapped their children. *Id.* at ¶¶ 42, 48-50. Salazar has never been located. There is no connection between this allegation and the proposed Rule 404(b) witnesses' testimony anyway, making this allegation irrelevant. Plaintiff includes these allegations in Part I of his brief but then does not tie it up in any way with his proposed "other bad acts" evidence in Part II.

**Paragraph 3:** Not accurate and not relevant because there is no Rule 404(b) allegations connected to this issue Plaintiff includes these allegations in Part I of his brief but then does not tie it up in any way with his proposed "other bad acts" evidence in Part II.

**Paragraph 4:** Not accurate. *See* Dckt. No. 744 at ¶¶ 45-52, 95.

**Paragraph 5:** Not accurate. *See* Dckt. No. 744 at ¶¶ 45-52, 95.

**Paragraph 6:** Not accurate. While Plaintiff claims that he was abused by Defendant Guevara, he claims that he never confessed to him at all (nor anyone else) despite this alleged abuse. See Ex. 1 at 162-67, 191-200. Plaintiff has claimed that his handwritten statement is comprised of statements he did not make and that he never admitted any involvement in the crimes to Defendant Guevara or anyone else. *Id.* Defendant Guevara was also not even present in the room when any of this was allegedly going on. *Id.*

**Paragraph 7:** Not accurate. While Plaintiff claims that he was abused by Defendant Guevara, he claims that he never confessed to him at all (nor anyone else) despite this alleged abuse. *See* Ex. 1 at 162-67, 191-200.

**Paragraph 8:** Not accurate. While former Plaintiff Solache has claimed that Defendant Guevara abused him, this is contested and also the confession is not false. *See* Dckt. No. 744 at ¶¶ 45-52, 95.

**Paragraph 9:** Not accurate. Defendant Guevara was not involved in Plaintiff's statement and Plaintiff claims he did not even make the statements attributed to him. *See* Ex. 1 at 162-67, 191-200. Plaintiff claims that Defendant Trevino asked him questions unrelated to the murders/kidnappings and that Defendant Trevino simply made up inculpatory statements and attributed those to him (this, of course, is disputed but this is what Plaintiff has claimed). *Id.*

**Paragraph 10:** Fabrication of the record by Plaintiff and not relevant. Once again, Plaintiff is playing very "fast and loose" with the facts to an exceedingly troubling degree. While witness Rose Aranda testified about Jacinta having a friend and her keys going missing, there is no evidence whatsoever that she divulged this information to Defendant Guevara or any other police officer. *See* Dckt. No. 763 at Ex. FF. As with Plaintiff's blatant fabricated attribution of statements to Jose E. Melendez (discussed below), Plaintiff similarly states as fact that this specific information was specifically told to Guevera and "suppressed to avoid undermining the coerced confessions." *See* Dckt. No. 926 at 4. Again, this is just a fabrication of the record. The only piece of testimony even close to anything touching on this is a generalized question to Ms. Aranda about whether she told the police "everything that you could to help him find the real murderers and the real kidnappers." *See* Dckt. No. 763 at Ex. FF at 59:7-14. Plaintiff never asked whether information about Jacinta having a friend and her keys going missing was ever discussed with Defendant Guevara nor that this was information that fell within the scope of things she thought would help the police find the culprits. *Id.* In other words, Plaintiff's unequivocal statements to this effect appear to just be made up. Plaintiff also includes these allegations in Part I of his brief but then does not tie it up in any way with his proposed "other bad acts" evidence in Part II.

**Paragraph 11:** Not accurate and not relevant. Plaintiff includes these allegations in Part I of his brief but then does not tie it up in any way with his proposed "other bad acts" evidence in Part II. Moreover, again, Plaintiff states as fact that Lourdes Rodriguez has confirmed that her recollection of

seeing Mariano Soto and his son on March 28 (as opposed to March 26) was accurate. *See* Dckt. No. 926 at 5. Ms. Rodriguez admitted at her deposition that she was uncertain of the date this occurred. *See* Dckt. No. 763-15 at Ex. WWWW at 30:13-22. And, of course, the specific date is the entire crux of Plaintiff's claims of malfeasance. Thus, again, Plaintiff is taking exceedingly troubling liberties with the record in this case by making broad allegations of misconduct that simply are not supported by the evidence he cites.

**Paragraph 12:** Not accurate. Plaintiff and former Plaintiff Solache gave confessions to their involvement, their co-offender Adriana Mejia has continued to insist that both were involved, and the Cook County State's Attorney's Office has continued to maintain that Plaintiff was, in fact, guilty of the commission of these crimes. *See* Dckt. No. 744 at ¶¶ 45-52, 94-95.

**Paragraph 13:** This appears to be derivative of the above Paragraphs but directed toward other Defendants. *See* Dckt. No. 926 at 5. It is unclear what relevance this has to the instant issue because Plaintiff does not claim that the evidence at issue is admissible as "other bad acts" evidence against anyone but Defendant Guevara.

### <u>Response To Plaintiff's "Summary of Guevara's Bad Acts And Their Admissibility"</u>

Part II of Plaintiff's Brief consists of a chart whereby Plaintiff purports to compare the alleged "other bad acts" of Defendant Guevara in other cases with the claims and allegations in this case. *See* Dckt. No. 926 at 6-10. The entirety of these chart consists of: (1) a column summarizing claims that Defendant Guevara generally physically abused persons to attempt to coerce them into providing inculpatory statements; (2) a column claiming that Defendant Guevara did something similar to Plaintiff and others in this case; and (3) a column which lists every single possible category of allege admissibility under Fed. R. Evid. 404(b) as well as some other categories (e.g. impeachment, corroboration, proving punitive damages). *See* Dckt. No. 926 at 6-10.

All of this can be addressed summarily and collectively. Plaintiff does not present anything particularly idiosyncratic about any of these incidents of "other bad acts." Each one, in essence, is a claim that Defendant Guevara generally abused someone or other in another case accompanied by claims that he did it in this case as well. Specifically:

**Response to Part II.B:** Plaintiff claims Jose E. Melendez was physically abused to attempt to extract a confession and analogizes to Plaintiff, former Plaintiff Solache, and Adriana Mejia being abused to extract a confession. This is propensity evidence (i.e. Defendant Guevara beat one person to coerce a confession so he must have beat another as well). Plaintiff formulaically lists every conceivable category of admissibility under Rule 404(b) and several others not included and fails to explain how any apply to this case. This evidence fails as lacking a propensity-free chain of reasoning.

Moreover, Jose E. Melendez did not make those cited allegations against Guevara. Plaintiff cites Melendez's deposition in *Sierra v. Guevara* (*see* Dckt. No. 924 at 10 *citing* Dckt. No. 824-2 (Pl.'s Ex. 14) at 18-30. At no point during this deposition did Mr. Melendez identify Defendant Guevara as the person who mistreated him. *Id.* Melendez broadly describes the alleged transgressor as merely a male Hispanic (which covers a huge number of persons within the Chicago Police Department). *See* Dckt. No. 824-2 at 24-25. The attorney examining Melendez at the deposition (who was an employee of the same law firm as Plaintiff here, Loevy & Loevy) correct himself when he tried to insert that Guevara was the officer Melendez accused of abuse even though Melendez never said that. *Id.* at 33:18-24 ("Q So you said that eventually Guevara stopped hitting you, right? I'm sorry, let me strike that question and ask it again in a different way. You said eventually the police officer stopped hitting you, right?"). Plaintiff cannot use the testimony of someone who has not even identified Guevara as the aggressor to prove his allegations against Guevara.

**Response To Part II.D:** Plaintiff claims that David Velasquez was "physically and psychologically abused" to get him to implicate Daniel Rodriguez and analogizes that Plaintiff, former Plaintiff Solache, and Adriana Mejia were abused to extract a confession. This is propensity evidence (i.e. Defendant Guevara beat one person to coerce a confession so he must have beat another as well). Plaintiff formulaically lists every conceivable category of admissibility under Rule 404(b) and several others not included and fails to explain how any apply to this case. This evidence fails as lacking a propensity-free chain of reasoning. In addition, the summary of the prior bad acts includes allegations made by Rodriguez, not by Velasquez. Velasquez cannot testify about what happened in the interrogation room with Rodriguez. Velasquez was not there. That is hearsay. Thus, any alleged connection between Rodriguez's allegations and Plaintiff's cannot be considered.

**Response To Part II.E:** Plaintiff claims that David Gecht was physically abused to coerce a confession, that Defendant Guevara threatened a witness to provide a false statement, and threatened Richard Kwil into providing a false statement. Plaintiff analogizes that Plaintiff, former Plaintiff Solache, and Adriana Mejia being abused to extract a confession. This is propensity evidence (i.e., Defendant Guevara beat one person to coerce a confession so he must have beat another as well). Plaintiff formulaically lists every conceivable category of admissibility under Rule 404(b) and several others not included and fails to explain how any apply to this case. This evidence fails as lacking a propensity-free chain of reasoning. Plaintiff does not purport to have either of these individuals testify, so this is worse than hearsay Plaintiff wants to introduce with witness Velasquez – it is Plaintiff's counsel testifying through cross-examination about others' supposed allegations.

**Response To Part II.F:** Plaintiff alleges that John Martinez, Thomas Kelly, and Jose Tinajero were abused into confessing. Plaintiff analogizes this to Plaintiff, former Plaintiff Solache, and Adriana Mejia being abused to extract a confession. This is propensity evidence (i.e. Defendant Guevara beat one person to coerce a confession so he must have beat another as well). Plaintiff formulaically lists

every conceivable category of admissibility under Rule 404(b) and several others not included and fails to explain how any apply to this case. This evidence fails as lacking a propensity-free chain of reasoning. Again, Plaintiff will provide no evidence at trial to support these allegations. He will have his attorneys testify to these allegations through questioning Guevara.

**Response to Part II.H:** Plaintiff alleges that a third party witness was physically abused and given incentives to provide false inculpation of Geraldo Iglesias. Plaintiff analogizes this to Plaintiff, former Plaintiff Solache, and Adriana Mejia being abused to extract a confession. Plaintiff does not explain how allegations of providing any incentive relates to any issue in this case. This is propensity evidence (i.e. Defendant Guevara beat one person to coerce a confession so he must have beat another as well). Plaintiff formulaically lists every conceivable category of admissibility under Rule 404(b) and several others not included and fails to explain how any apply to this case. This evidence fails as lacking a propensity-free chain of reasoning. Plaintiff's allegations of improper incentives further appear to be an attempt to simply lodge generalized bad conduct without any connection to any issue in this lawsuit. Here too, this is offered as "cross-examination" evidence, which is simply Plaintiff's counsel testifying through questioning.

**Response to Part II.J:** Plaintiff alleges that Defendant Guevara physically abused a witness and promised incentives to give false inculpatory statement and fabricated a police report. Plaintiff analogizes this to Plaintiff, former Plaintiff Solache, and Adriana Mejia being abused to extract a confession and reports to the contrary being fabricated. Plaintiff does not explain how any promised incentives relate to any issue in this case. This is propensity evidence (i.e. Defendant Guevara beat one person to coerce a confession so he must have beat another as well and fabricated one police report so he must have fabricated another). Plaintiff formulaically lists every conceivable category of admissibility under Rule 404(b) and several others not included and fails to explain how any apply to

11

this case. This evidence fails as lacking a propensity-free chain of reasoning. Once again, the only "evidence" presented will be the bald accusations of Plaintiff's counsel during questioning.

Further, Plaintiff's allegations of improper incentives appear to be an attempt to simply lodge generalized bad conduct without any connection to any issue in this lawsuit.

Introducing evidence that a person engaged in generally similar conduct in one instance as proof that he engaged in such conduct in another is what propensity evidence is. *See Harris v. City of Chicago*, 2018 WL 2183992, at *15–17 (N.D. Ill. 2018) (barring evidence of other allegations of evidence fabrication and coercing confessions by defendant officer); *Kaufman v. City of Chicago*, 2021 WL 1885985, at *5 (N.D. Ill. 2021) (barring evidence of an officer's prior insubordination because it was being offered so that the jury would infer that the officer "engaged in misconduct on the night in question because he has allegedly done so on other occasions."); *Patterson v. City of Chicago*, 2017 WL 770991, at *4 (N.D. Ill., 2017) ("Patterson's modus operandi argument is a thinly veiled attempt to do precisely what Rule 404(b) forbids: ask the jury to make an inference that because the defendants committed battery or falsified police reports in the past (which may or may not be true), they did the same thing on the day in question in this lawsuit."); *Moriconi v. Koester*, 659 F. App'x 892, 894-95 (7th Cir. 2016) (affirming barring evidence that defendant officer had improperly tased other persons because such evidence was pure propensity evidence and not relevant to intent). This broad generality is precisely why Judge Daniel barred this evidence (indeed, many of the exact "other bad acts" at issue here) just three months ago in the last case to proceed to trial involving Defendant Guevara. *See* Dckt. No. 841-1.

If there is a non-propensity purpose for any of this evidence, Plaintiff has not articulated it here. Instead, Plaintiff formulaically just lists categories of admissibility without further explanation of how they could apply. *See* Dckt. No. 926 at 6-10. This is precisely the type of formulaic labeling that the Seventh Circuit instructed in *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) is not

permitted as a means to admit such evidence. *See also Harris*, 2018 WL 2183992, at *15–17 ("Plaintiff does not connect evidence of Defendant Bartik's plan, opportunity, motive, modus operandi, or state of mind to the witnesses' testimony without the propensity inference that Defendant Bartik's alleged misconduct in the past shows that he coerced and fabricated Plaintiff's confession in this matter."). Because Plaintiff has the burden here, this Court need go no further in excluding this evidence.

WHEREFORE Defendants prays this Court exclude Plaintiff's proffered evidence under Fed. R. Evid. 404(b) and for whatever other relief this Court deems fit.

Respectfully submitted,


By:     /s/ Timothy P. Scahill
        Timothy P. Scahill
        Special Assistant Corporation Counsel

Timothy P. Scahill
Emily Schnidt
Andrea F. Checkai
BORKAN & SCAHILL, LTD.
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
*Counsel for Reynaldo Guevara*